Chris Beatty, SBN 250040
LAW OFFICES OF ANDREW WOLFF, PC
1956 Webster St., Suite 275
Oakland, California 94612
(510) 834-3300
fax (510) 834-3377
chris@awolfflaw.com

Jesse Newmark, SBN 247488
Shira Levine, SBN 293080
CENTRO LEGAL DE LA RAZA
3400 East 12th Street
Oakland, California 94601
(510) 437-1554 x115
fax (510) 437-9164
jessenewmark@centrolegal.org

Attorneys for Plaintiffs/Relators Denika Terry and Roy Huskey III

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY and ROY HUSKEY III, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA,<br><br>        Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, and DOES 1-30,<br><br>        Defendants. | Case No. 2:15 CV 00799 KJM DAD<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>**CLASS ACTION**<br><br>Date:        November 4, 2016<br>Time:        10:00 a.m.<br><br>Hon. Kimberly J. Mueller |

## I.   <u>INTRODUCTION</u>

Qui tam Plaintiffs Denika Terry and Roy Huskey III ("Plaintiffs") respectfully submit this Opposition to the Motion to Dismiss filed by Defendants Wasatch Advantage Group LLC, Wasatch Property Management, Inc., Wasatch Pool Holdings, LLC, Chesapeake Commons

Holding, LLC, Logan Park Apartments, LLC, and Logan Park Apartments, LP ("Defendants").

Each cause of action in Plaintiffs' First Amended Complaint is based on Defendants' standard business practice of violating their Section 8 government contracts with Plaintiffs and other tenants by demanding and collecting mandatory additional rent payments for washer and dryer machines, renters' insurance, and covered parking.

Defendants make a single argument in their Motion to Dismiss: because Plaintiffs signed Defendants' lease and "additional service" agreements, separate from the Section 8 contracts, Plaintiffs "bargained for [these] amenities and services." Defendants contend that these additional charges therefore do not constitute extra rent or violate the Section 8 contracts.

Defendants are wrong as a matter of fact and law. First, as a matter of fact, Plaintiffs clearly allege in their Complaint that the additional charges were <u>not</u> optional service charges, but extra rent demanded by Defendants as a <u>mandatory</u> part of the tenancies. As Plaintiffs allege, Defendants recorded the additional charges in their <u>rent</u> ledgers, and used the charges to evict tenants for non-payment <u>rent</u>. That Defendants required Plaintiffs to sign lease agreements separate from the Section 8 contracts, purporting to label these charges as "additional services," in no way disproves Plaintiffs' allegations that they were in fact mandatory extra rent.

Second, as a matter of law, Defendants' additional charges constitute illegal extra rent in violation federal law and the Section 8 contracts, regardless of whether the services were optional, because: (1) the additional charges were part of the total expense for tenants' use of the rented premises; (2) the charges were for appliances not listed in the Section 8 contracts; (3) Defendants threatened Plaintiffs and other Section 8 tenants with eviction if they failed to pay these charges; and (4) the charges were for items customarily included in rent in the locality.

Indeed, if Defendants were correct that extra charges could be rendered lawful non-rent simply by writing them in a separate agreement and labeling them as an additional amenity, then Section 8 landlords could collect illegal side payments with impunity. They would simply require tenants to sign those agreements to remain in their homes, separating out charges for discrete items—from laundry machines to refrigerators, from parking to storage. That is precisely what Plaintiffs have alleged here. Such practices are not only clearly prohibited by the

HAP Contracts, but threaten the integrity and sound functioning of the Section 8 program.

For all of these reasons, Courts have consistently held that additional charges like those imposed by Defendants do constitute extra rent and violate the False Claims Act.  Accordingly, Plaintiffs have alleged valid causes of action for violations of the False Claims Act and California Consumer Legal Remedies Act, breach of contract, and unfair business practices, on behalf of themselves and a putative class of similarly situated tenants.  Plaintiffs therefore ask the court to deny Defendants' Motion to Dismiss, and allow this important action to proceed.

## II.   STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party."  *Sharkey v. O'Neal*, 778 F.3d 767, 768 n.1 (9th Cir. 2015).  When a complaint's allegations are capable of more than one inference, the court must adopt whichever plausible inference supports a valid claim.  *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011).

At this stage, any ambiguity in documents must be resolved in the plaintiffs' favor.  *See Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (documents not attached to complaint but properly before the court).  Moreover, courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).

If a complaint states facts constituting a cause of action entitling plaintiffs to relief, the motion to dismiss should be denied.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  If the court grants the motion, it should still grant plaintiffs leave to amend unless it is clear the deficiencies cannot be cured.  *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992)

As discussed below, Plaintiffs have sufficiently alleged facts showing that Defendants have required Plaintiffs and other Section 8 tenants to make illegal side payments in violation of the Housing Act, federal regulations, and Section 8 contracts.

## III.   MATERIAL FACTS

### A.  SECTION 8 PROGRAM OWNERS AND TENANTS

Defendants own or manage 69 apartment communities with 16,344 units across

1   California, Utah, Arizona, Colorado, and Washington.  (1st Am. Comp. ("FAC" ¶¶ 2, 12.)

2   Defendants' properties include four apartment complexes in Sacramento and Rancho Cordova,

3   California ("Subject Properties").  (FAC ¶¶ 3, 13-14.)  At the Subject Properties, Defendants

4   rent to over 150 tenant households receiving rental assistance through the federal government's

5   Section 8 Housing Choice Voucher Program ("Section 8 Program").  (FAC ¶ 7.)  At all

6   relevant times, Plaintiffs were Defendants' tenants at the Subject Properties and received rental

7   assistance through the Section 8 Program.  (FAC ¶¶ 16-22.)

8        Under the Section 8 Program, the federal government assists low-income tenants by

9   paying some or all of their rent, directly to their landlords.  42 U.S.C.A. § 1437f(a); 24 C.F.R.

10  § 982.1(a).  Section 8 tenants pay 30-40% of their income towards rent (including utilities), and

11  the government separately pays the remainder to the landlord.  42 U.S.C. § 1437f(o)(2)-(3).  The

12  portion paid by the government is called a "Housing Assistance Payment."  24 C.F.R. § 982.4(b).

13       The Section 8 Program is administered by the U.S. Department of Housing and Urban

14  Development ("HUD") and local public housing authorities such as the Sacramento Housing and

15  Redevelopment Agency ("SHRA").  24 C.F.R. § 982.1(a)(1).  To participate in the Program,

16  landlords enter into Housing Assistance Payment Contracts ("HAP Contracts") with the local

17  public housing authority.  24 C.F.R. § 982.451.

### B.  HOUSING ASSISTANCE PAYMENT CONTRACTS

18

19       In 2010 and 2011, respectively, Defendants and the SHRA entered into HAP Contracts

20  for Plaintiffs Terry and  Huskey.  (FAC Exhs. A at 2-12, E at 7-17.)  At the same time,

21  Defendants and Plaintiffs entered into HUD-prescribed Lease Supplemental Agreements,

22  including a Tenancy Addendum that mirrors Part C of the HAP Contracts.  (FAC Exhs. A at 1,

23  E at 1-5.)  Defendants also required that Plaintiffs sign various separate lease agreements and

24  addendums, written by Defendants.  (FAC Exhs. G-K.)

25       Pursuant to Plaintiff Terry's HAP Contract and Lease Supplemental Agreement, her

26  total monthly rent ranged from $860 to $939 per month.  Of this amount, Terry's portion of the

27  rent ranged from $0 to $210, with HUD and SHRA paying the remaining rent directly to

28  Defendants.  (FAC ¶¶ 59, 62.)  Similarly, Plaintiff Huskey's monthly rent was $840 per month,

with Huskey responsible for paying approximately $286 per month, and HUD and SHRA

paying the remainder directly to Defendants.  (FAC ¶¶  79, 82-83.)

      The HAP Contracts and Lease Supplemental Agreements further provide that:

> The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to rent to owner.  Rent to owner includes all housing services, maintenance, utilities, and appliances to be provided and paid by the owner in accordance with the lease.

(FAC Exhs. A at 9, E at 13, Part C(5)(e).)

      The HAP Contracts also clarify that "Part A of the HAP contract specifies what utilities and appliances are to be provided or paid by the owner or the tenant," and that the "lease shall be consistent with the HAP contract."  (FAC Exhs. A at 5, E at 9, Part B(5)(c).)  Likewise, for any conflict with "provisions of the lease or any other agreement between the owner and the tenant, the requirements of the HUD-required tenancy addendum shall control."  (FAC Exhs. A at 12, E at 16, Part C(14)(b).)

      In accordance with these provisions, Part A of the HAP Contracts, as well as the Lease Supplemental Agreements, state that "[u]nless otherwise specified below, the owner shall pay for all utilities and appliances provided by the owner," and then list all of the exceptions to be paid by tenants.  Here, the lists make no mention of washers or dryers, renters' insurance, or parking.  (FAC Exhs. A at 1, 3; E at 1, 7.)

      Part C(6) of the HAP Contracts further regulates "Other Fees and Charges," mandating that a landlord may not charge tenants for "items customarily included in rent to owner in the locality, or provided at no additional cost to unsubsidized tenants in the premises," and that nonpayment of extra charges cannot be a ground for eviction.  (FAC Exh. A at 9, E at 13.)

      As Defendants admit, however, they also entered into separate "Residential Rental Agreements" with Plaintiffs, which include "Additional Services Agreements."  These Agreements, written by Defendants, require additional charges for washers and dryers, covered parking, and renters' insurance, none of which are listed in the HAP Contracts.  The Agreements expressly provide that: "A default under this Agreement is a default under the lease . . . and shall cause [owners] to terminate the Residents tenancy."  (FAC Exh. G at 9-10.)

## C.  DEFENDANTS' ADDITIONAL CHARGES

In accord with these separate lease and service agreements, Defendants have in fact had an ongoing standard business practice of charging Plaintiffs and other Section 8 tenants additional monthly rent payments, including for laundry machines, renters' insurance, and covered parking.  (FAC ¶¶ 9, 44-50.)  Defendants bill for these additional charges on the same ledger as the official rent charges for each tenant.  (FAC Exhs. B & F.)

Each month of Plaintiffs' tenancies, Defendants demanded that they pay extra rent for washer and dryer rental, renter's insurance, and covered parking.  (FAC ¶¶ 66-69, 84-94.)  In Plaintiff Terry's first full month as a tenant, these charges increased the total rent for her apartment from $860 to $925.58.  (FAC Exh. B at 1.)  From September 2010 through March 2013, Defendants demanded, and Terry paid, a total of $1,953.89 in additional rent payments. These additional rent payments were therefore more than the $1,260.00 in total rent that Terry was responsible for during this time period, pursuant to the HAP Contract and subsequent subsidy adjustment notices.  (FAC ¶ 70.)  Likewise, Defendants demanded, and Plaintiff Huskey paid, $2,239.98 in additional rent payments from June 2011 through March 2014.  (FAC ¶ 89.)

Defendants threatened to evict Plaintiffs if they did not make these additional payments. (FAC ¶¶ 9, 71, 90.)  Defendants ultimately filed an eviction action against Plaintiff Terry for not paying the side payments.  (FAC ¶ 72.)  Plaintiffs agreed to Defendants' demands for additional rent payments so they would not lose their homes and Section 8 vouchers.  (FAC ¶¶ 75, 93.)

## IV.  <u>LEGAL ANALYSIS</u>

### A.  DEFENDANTS' ADDITIONAL CHARGES ARE ILLEGAL

Plaintiffs allege that Defendants have charged them, and all Defendants' Section 8 tenants at the Subject Properties, additional charges that violate the Section 8 statute and regulations, as well as Defendants' Housing Assistance Payment Contracts ("HAP Contracts").

Defendants' practice of putting the extra charges in separate contracts only demonstrates their illegality, and in no way immunizes Defendants from liability.

**1.     Demanding Additional Rent Violates the Housing Act and HUD Regulations.**

The Housing Act limits the rent that landlords can charge for an apartment under a

Section 8 contract.  "An assistance contract entered into pursuant to this section shall establish the maximum monthly rent (including utilities and all maintenance and management charges) which the owner is entitled to receive for each dwelling unit . . . ."  42 U.S.C. § 1437f(c)(1)(A).

HUD regulations similarly provide that "[t]he owner may not demand or accept any rent payment from the tenant in excess of the maximum and must immediately return any excess rent to the tenant."  24 C.F.R. § 982.451(b)(4)(ii).  In addition, HUD's "Housing Choice Voucher Program Guidebook . . . states that '[c]ollecting extra or "side" payments in excess of the family share of rent . . . qualifies as fraud or abuse.'"  *U.S. ex rel. Holmes v. Win Win Real Estate, Inc.*, No. 2:13-CV-02149APG-GWF, 2015 WL 6150594, at *4 (D. Nev. Oct. 19, 2015), *quoting* HUD, Voucher Program Guidebook: Housing Choice at 22-2 (April 2001); *see also U.S. v. Baran*, No. CV 14-02639 RGK (AJWx), 2015 WL 5446833, at *4-5 (C.D. Cal. Aug. 28, 2015) (citing HUD Guidebook in holding that side payments violated False Claims Act).[1]

Furthermore, in 2008, HUD's Inspector General issued a "Fraud Alert: Bulletin on Charging Excess Rent in the Housing Choice Voucher Program."  The Inspector General stated:

> Improperly requiring tenants to pay rent in excess of what is authorized by the applicable HAP contract represents both an actionable offense under the False Claims Act and deplorable behavior directed towards the very persons whom the HCV program was designed to serve.

HUD, OIG Fraud Alert: Bulletin on Charging Excess Rent in the Housing Choice Voucher Program, 73 Fed. Reg. 39,712 (July 1, 2008).[2]

As the Sixth Circuit has explained: "HUD is entitled to deference in its interpretation of the [Housing Act]."  *Velez v. Cuyahoga Metro. Hous. Auth.*, 795 F.3d 578, 583 n. 9 (6th Cir. 2015).

**2.      Rent Includes <u>All</u> Charges for Use of Property, with Limited Exceptions.**

As the Sixth Circuit explained in addressing this very issue:  "The definition of rent plainly includes the tenant's total expense for the use of land during the term of occupancy"; and

---

[1] The 2001 Guidebook remains current and is available at http://portal.hud.gov/hudportal/ HUD?src=/program_offices/public_indian_housing/programs/hcv/forms/guidebook.

[2] The Fraud Alert is available at https://www.federalregister.gov/documents/2008/07/10/E8-15663/oig-fraud-alert-bulletin-on-charging-excess-rent-in-the-housing-choice-voucher-program.

"encompasses all monies paid in consideration for the periodic use of property not simply the discrete charge labeled as rent in a lease agreement." *Velez*, 795 F.3d at 585-86; *see also United States v. Pileggi*, 192 F.2d 878, 879 (2d Cir. 1951) ("[I]t is settled that 'rent' is received or demanded when a tenant is required as a condition of rental to purchase or pay for a service he does not want regardless of the person to whom the money must be paid.").

Consistent with this definition, the Housing Act, and HUD regulations, Defendants' HAP Contracts with the government for Plaintiffs prohibit Defendants' additional charges. As discussed in detail above, the HAP Contracts provide that any additional charges:

(1) Must not be for utilities or appliances except as specified in the HAP Contracts;

(2) Must not be for items customarily included in rent;

(3) Must not be for items provided at no additional cost to unsubsidized tenants.

(4) Cannot be used as grounds for eviction.

(FAC Exhs. A at 5, E at 9.)

The HAP Contracts and HUD-issued Lease Supplemental Agreements also expressly trump any separate lease or agreements between owners and tenants. (FAC Exhs. A at 5, 9, E at 12, 16.)

For all of these reasons, courts have held that similar additional fees may constitute illegal side payments and fraud under the False Claims Act ("FCA"). *See, e.g.*, *U.S. ex rel. Price v. Peters*, 66 F. Supp. 3d 1141, 1149 (C.D. Ill. 2013) (extra payments for use of storage shed violated FCA, granting summary judgment for tenants); *U.S. ex rel. Sutton v. Reynolds*, 564 F. Supp. 2d 1183, 1187 (D. Ore. 2007) (additional fees for landscaping could be illegal side payments, denying summary judgment for landlord); *Coleman v. Hernandez*, 490 F. Supp. 2d 278, 280 (D. Conn. 2007) (fees for water usage not included in HAP contract were side payments and therefore violated FCA); *Win Win Real Estate*, 2015 WL 6150594, at *7 (homeowner association fees and property management fees were rent and violated FCA, granting in part summary judgment for tenants); *U.S. esx rel. Mathis v. Mr. Property, Inc.*, No. 2:14-cv-00245-GMN-NJK, 2015 WL 1034332, at *5 (D. Nev. Mar. 10, 2015) (additional fees for pool maintenance could violate FCA, denying landlord's motion to dismiss).

**3.     Defendants' Additional Charges Are Unlawful Extra Rent.**

Under these legal standards, Plaintiffs have more than adequately alleged that Defendants' additional charges do not meet the limited exceptions set forth above, and instead are illegal side payments for extra rent.  (*See* FAC ¶¶ 9, 48-50, 66-75, 85-94, 98.)  For purposes of this Motion, the court need only conclude that at least some of the charges may constitute rent.

For example, Defendants' Motion to Dismiss should be denied solely on the ground that Defendants charged Plaintiffs and other Section 8 tenants extra for laundry machines, since laundry machines are not listed as tenant-paid appliances, as expressly required, in the HAP Contracts and Lease Supplemental Agreements.  (*See, e.g.*, FAC, Exh. A at 1, 3, 5.)  Likewise, parking—covered or otherwise—is unquestionably part of a "tenant's total expense for the use of land" under *Velez*, and customarily included in rent throughout Northern California localities. For each of these reasons, independently, Defendants' additional charges constitute unlawful extra rent under the terms of the HAP Contracts, Housing Act, and HUD Regulations.

Moreover, Plaintiffs allege that Defendants threatened to evict them if they failed to pay the extra charges.  (FAC ¶¶ 9, 71, 72, 90.)  Indeed, Defendants listed these charges in their rent ledgers for each tenant, and Defendants' Additional Services Agreements themselves state: "A default under this Agreement is a default under the lease . . . and shall cause [owners] to terminate the Resident's tenancy."  (FAC Exh. G at 9-10.)  For this reason alone, the additional charges constitute unlawful extra rent under the HAP Contracts and federal law.

In other words, and for all of these reasons, Defendants' additional charges were effectively part of the "tenant's total expense for the use of land during the term of occupancy" and "monies paid in consideration for the periodic use of property."  *Velez*, 795 F.3d at 585-86.

**4.     Defendants' Separate Agreements with Tenants are Irrelevant.**

Defendants' Motion to Dismiss is premised entirely on the fact that they signed lease and additional service agreements with Plaintiffs, separate from their government-prescribed HAP Contracts and Lease Supplemental Agreements, requiring Plaintiffs to pay extra for certain appliances, property use, and services.  According to Defendants, Plaintiffs thereby "bargained for the amenities and services," and the additional charges are lawful non-rent.

1       There are two fatal defects in Defendants' reasoning.  First, for purposes of a Motion to

2   Dismiss, Plaintiffs' allegations must be taken as true, and Plaintiffs clearly allege in their

3   Complaint that the additional charges were a <u>mandatory</u> part of the tenancies, not optional

4   service charges.  As Plaintiffs allege, Defendants recorded the additional charges in their <u>rent</u>

5   ledgers, and used the charges to evict tenants for non-payment <u>rent</u>.  That Defendants required

6   Plaintiffs to sign separate agreements purporting to label these charges as "additional services,"

7   therefore in no way disproves Plaintiffs' allegations that they were in fact mandatory extra rent.

8       Second, Plaintiffs are wrong legally in arguing that a separate "bargained for" agreement

9   somehow immunizes them from liability.  As discussed above, most agreements for side

10  payments violate requirements of the Housing Act and HAP Contracts.  For instance, the HAP

11  Contracts expressly require that all tenant charges be listed in the HAP Contracts and Lease

12  Supplemental Agreements, both of which trump any contrary provisions of Defendants' lease or

13  any other agreements with Plaintiffs.  (FAC Exh. A at 1, 3, 5, 12.)  *See Win Win Real Estate*,

14  2015 WL 6150594, at *5 ("The HAP Contract states that when there are conflicts between the

15  terms of the lease agreement and the terms of the HAP Contract, the HAP Contract controls.").

16      For these reasons, courts have consistently held that extra charges, even when labeled as

17  additional amenities, can constitute illegal side payments.  *See Coleman*, 490 F.Supp.2d at 280;

18  *Reynolds*, 564 F. Supp. 2d at 1187; *Peters*, 66 F.Supp.3d at 1149; *Win Win Real Estate*, 2015

19  WL 6150594, at *7; *Mr. Property*, 2015 WL 1034332, at *5; *Baran*, 2015 WL 5446833, at *4-5.

20      Indeed, if Defendants were correct that extra charges could be rendered lawful non-rent

21  simply by writing them in a separate agreement and labeling them as an additional amenity, then

22  Section 8 landlords could collect illegal side payments with impunity.  They would simply tell

23  their tenants that they have to sign those agreements in order to remain in their homes, separating

24  out charges for discrete items—from laundry machines to refrigerators, from parking to storage.

25  That is precisely what Plaintiffs have alleged here.  Such practices are not only clearly prohibited

26  by the HAP Contracts, but threaten the integrity and sound functioning of the Section 8 program.

27  **5.    Defendants' Extra Charges Violate the Section 8 Program's Purpose and Integrity.**

28      The purpose of the Section 8 program is to protect low-income tenants from paying more

than 30-40% of their income for rent, including utilities.  42 U.S.C. § 1437f(a), (o)(2)-(3). Section 8 rules also protect tenants and the government by requiring the total rent paid to be reasonable.  42 U.S.C. § 1437f(c)(1)(A).  For these reasons, side payments to Section 8 landlords are illegal.  24 C.F.R. § 982.451(b)(4)(ii).  Defendants have violated these requirements by imposing mandatory extra charges for laundry machines, covered parking, and renters' insurance.  "Allowing a lessor the ability to divide out mandatory, discrete charges related to the usage cost of the rental unit is not only not authorized by the [Housing] Act, it would completely defeat the statutory subsidy scheme."  *Velez*, 795 F.3d at 586 n.13.

### B.  PLAINTIFFS HAVE PROPERLY PLEAD ALL CAUSES OF ACTION

Because Plaintiffs have properly alleged that Defendants' additional charges were illegal side payments for rent under their HAP Contracts and federal law, Plaintiffs have properly plead all of their causes of action.

**1.    Plaintiffs Have Properly Alleged Violations of the Federal False Claims Act.**

As to Plaintiffs' False Claims Act ("FCA") cause of action, Defendants' sole argument is that Plaintiffs cannot show Defendants presented any false or fraudulent claim, because Defendants' additional charges to Plaintiffs were set forth in separate leases including additional services agreements, written by Defendants.  As discussed in detail above, negotiating a separate agreement has no impact on the legality of additional charges.  Defendants do not otherwise dispute that Plaintiffs have adequately alleged a valid FCA claim.

**2.    Plaintiffs Have Properly Alleged Breach of Contract.**

Defendants' sole argument is that they never required Plaintiffs to pay rent in excess of the HAP Contracts, because Defendants' additional charges were lawful non-rent pursuant to separate lease and additional services agreements.  As discussed in detail above, Plaintiffs' HAP Contracts and Lease Supplemental Agreements trump any side agreements, and Plaintiffs have therefore validly alleged side payments for extra rent in violation of the HAP Contracts.

**3.    Plaintiffs Have Properly Alleged Violations of the Consumer Legal Remedies Act.**

Defendants claim only that Plaintiffs suffered no cognizable injury or damage because Defendants' additional charges were not extra rent.  As discussed in detail above, Defendants'

demands for side payments do in fact constitute unlawful extra rent, in violation of the HAP Contracts and federal law.  Plaintiffs have therefore adequately plead injury and damage to support this cause of action.

**4.     Plaintiffs Have Properly Alleged Unfair Business Practices.**

California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practice."  As with Plaintiffs' other causes of action, Defendants' sole argument is that their additional charges to Plaintiffs are lawful non-rent.  For all the reasons discussed above, Defendants are wrong.  Plaintiffs have therefore properly alleged that Defendants engaged in unfair, unlawful, and fraudulent business practices by demanding and collecting unlawful additional rent in violation of the Housing Act, the HAP Contracts, the False Claims Act, and the California Consumer Legal Remedies Act.

**5.     Plaintiffs Have Properly Alleged Class Violations.**

Defendants do not separately dispute Plaintiffs' class allegations; they simply argue that the class allegations cannot be sustained if Plaintiffs' other claims fail.  For all the reasons discussed, Plaintiffs' causes of action are properly plead and support their class allegations.

## V.     CONCLUSION

Plaintiffs respectfully ask the court to deny Defendants' Motion to Dismiss.  Plaintiffs have alleged that Defendants charged Plaintiffs and other Section 8 tenants illegal side payments that violate Section 8 rules and Defendants' government contracts.  These side payments are not in any way made legal simply because Defendants put them in separate contracts or labeled them for discrete items such as laundry machines, renters' insurance, or covered parking.  In fact, that Defendants used separate agreements to impose and threaten eviction for charges not listed in the HAP Contracts, only confirms their violations.  Plaintiffs have therefore properly alleged causes of action for violations of the False Claims Act and California Consumer Legal Remedies Act, breach of contract, and unfair business practices.

In the event the court determines any of Plaintiffs' claims are not adequately plead, Plaintiffs request leave to amend.

1

Respectfully submitted,

2

**LAW OFFICES OF ANDREW WOLFF, PC**

Date: October 14, 2016

3

/s/

4

_____

By:

5

6

CHRIS BEATTY
Attorney for Plaintiffs/Relators
Denika Terry and Roy Huskey III

7

8

**CENTRO LEGAL DE LA RAZA**

9

Date: October 14, 2016

10

/s/

_____

11

By:

12

JESSE NEWMARK
Attorney for Plaintiffs/Relators
Denika Terry and Roy Huskey III

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am employed in the County of Alameda, State of California. I am over the age of 18 and not a party to the within action. My business address is 1956 Webster Street, Ste. 275, Oakland, CA 94612. I served the following documents:

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

on the following interested parties in this action:

[  ] (BY FACSIMILE) The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2008 (e) (4), I caused the machine to print a record of the transmission.

[  ] (BY PERSONAL SERVICE) I delivered such envelope to an authorized courier or driver authorized by the express service carrier to receive documents in an envelope or package designated by the express service carrier with delivery fees provided for.

[ X ] (FEDERAL) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

[ X ] (BY MAIL, 1013A, 2015.5 C.C.P), the original thereof enclosed in sealed envelopes addressed as follows:

Joseph Salazar, Esq.                                Phillip A. Talbert, Esq.
Yoon-Woo Nam, Esq.                          Vincente A. Tennerelli, Esq.
Lewis Brisbois Bisgaard & Smith          United States Attorney's Office
2020 West El Camino Ave, Ste. 700       2500 Tulare Street, Ste. 4401
Sacramento, CA 95833                           Fresno, CA 39721


[ X ] I am readily familiar with the firm s practice for collection and processing correspondence for mailing. Under that practice, this document will be deposited with the US Postal Service on this date with postage thereon fully prepaid at Oakland, California in the ordinary course of business. I am aware that service is presumed invalid it postal cancellation date or postage meter date is more than one day after of deposit for mailing in the affidavit.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct.  Executed on October 14, 2016, at Oakland, California.

/s/_____
Yaneth Calzada