**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH A. SALAZAR JR., SB# 169551
  E-Mail: Joe.Salazar@lewisbrisbois.com
YOON-WOO NAM, SB# 284644
  E-Mail: Yoon-Woo.Nam@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
Sacramento, California 95833
Telephone: 916.564.5400
Facsimile: 916.564.5444

Attorneys for Wasatch Advantage Group, LLC; Wasatch Property Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC; Logan Park Apartments, LLC; Logan Park Apartments, LP

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. DENIKA TERRY and ROY HUSKEY III, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA, <br><br>           Plaintiffs/Relators, <br><br> vs. <br><br> WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC; LOGAN PARK APARTMENTS, LP, <br><br>           Defendants. | CASE NO. 2:15-CV-00799 KJM DAD <br><br> **DEFENDANTS' REPLY TO PLAINTIFFS' OPPPOSITION TO MOTION TO DISMISS** <br><br> **[F.R.C.P. 12(b)(6)]** <br><br> Date:  November 4, 2016 <br> Time:  10:00 a.m. <br> Dept.:  Courtroom 3, 15th Floor <br> Judge:  Hon. Kimberly J. Mueller <br><br> Trial Date:  None Set |

Defendants Wasatch Advantage Group, LLC; Wasatch Property Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC; Logan Park Apartments, LLC; Logan Park Apartments, LP ("Defendant") respectfully submit this Reply Brief in opposition to Plaintiff UNITED STATES OF AMERICA, ex rel. DENIKA TERRY and ROY HUSKEY III, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA's ("Plaintiffs") support of its

Motion to Dismiss pursuant to Federal Rules of Civil Procedure section 12(b)(6).

## I. INTRODUCTION

Plaintiffs failed to allege sufficient facts to support their First Amended Complaint ("FAC") and to mask these defects they go to great lengths in their Opposition to Defendants' Motion to Dismiss to characterize payments made by DENIKA TERRY and ROY HUSKEY III ("Qui tam plaintiffs") for each of their exclusive use of a washer and dryer, covered parking and access to renter's insurance through their apartment as "illegal", "extra", "additional" and "side" payments in violation of Section 8 housing rules. Because Plaintiffs' own exhibits to their complaint directly contradict the allegations in the FAC, and because Plaintiffs' new allegations in their opposition are not permissible to correct the deficiencies in the FAC, the Court should dismiss all causes of action against Defendants without leave to amend.

## II. PLAINTIFFS FREELY CONTRACTED FOR ADDITIONAL AMENITIES

The Qui tam plaintiffs elected to enter into contracts to pay additional monies in consideration for additional amenities as clearly demonstrated in the exhibits to Plaintiffs' First Amended Complaint. In their opposition, Plaintiffs raised for the first time an allegation that the Qui tam plaintiffs DENIKA TERRY and ROY HUSKEY III were required to sign separate lease agreements and addendums that included the Additional Services Agreements. (Pls.' Opp., 4:23-24). However, in ruling on motion to dismiss, a district court generally "may not consider any material beyond the pleadings." *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). While the court has some discretion to consider extrinsic evidence, Plaintiffs' should not be permitted to cure a defect in the pleading by asserting a baseless allegation for the first time in its Opposition.

Plaintiffs' FAC alleges that Defendants had a policy of unlawfully demanding and collecting additional rent payments, or "side payments" from their Section 8 tenants. (First Am. Compl. at ¶¶ 44, 49). Plaintiffs support their conclusion with two pieces of evidence: (1) that the HAP Contracts do not permit Defendants to charge extra rent; and (2) that the Resident Ledger utilized by Defendants to maintain records of rent and other payments shows that the Qui tam plaintiffs paid for their additional amenities. Unfortunately for Plaintiffs, the sum of this evidence

4835-4975-4939.1

2

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

does not support the conclusion that Defendants required extra rent payments from the Qui tam plaintiffs in violation of the HAP. The mere fact that the Qui tam plaintiffs' payments for their additional amenities appeared on the Resident Ledger does not support the conclusion that the payment was for extra rent. It is clear the ledger simply details a tenant's accounting of a tenant's history of debits and credits including rent, rental charges for items other than rent and deposits. (First Am. Compl., Ex. F at 1). Plaintiffs have failed to demonstrate that the Additional Services Agreements are in fact extra rental charges because the charges for washer and dryer, covered parking and renter's insurance are amenities not covered by the base lease or HAP Contracts.

Plaintiffs attempt to avoid this issue by instead pointing to the HAP Contracts that Defendants signed with the Qui tam plaintiffs and allege that because the amenities in the Additional Services Agreement do not appear on the first page of the HAP Contract's Lease Supplemental Agreement, then the owner cannot charge the tenant for any utility or appliance (or anything else) not appearing on this page. However, Addendum A on the Qui tam plaintiffs' leases lists the furnishings and included appliances offered to tenants in the apartment, e.g. refrigerator, oven, range, microwave, dishwasher, etc. (First Am. Compl., Exs. G at 12, K at 12). The sole fact that a washer and dryer, covered parking and renter's insurance through the Defendants are not listed on the HAP Contracts does not mean Defendants must provide these amenities free of charge to its tenants. Indeed, it would be ludicrous to expect Defendants to offer housekeeping services or rental furniture free of charge and categorized as customarily included items in the rent to tenants simply because they do not appear on the HAP Contract but on the Additional Services Agreement instead. (First Am. Compl., Ex. K at 11).

Next, Plaintiffs appear to advance a secondary theory – again, for the first time in its Opposition – that the Qui tam plaintiffs did not agree to the charges for the additional amenities of a private use washer and dryer, covered parking or easily available renter's insurance because they did not want them. (Pls.' Opp., 8:3-7). Again, no such allegation has previously been pleaded by Plaintiffs, and the Additional Services Agreements and their terms and conditions – signed by the Qui tam plaintiffs – directly conflict with the allegation. The tenants wanted these additional amenities of their own volition and entered into agreements to obtain them.

1          Another theory Plaintiffs attempt to advance for the first time in their Opposition is that the amenities at issue – the washer and dryer, covered parking and renter's insurance through the property owner/manager – are items customarily included in rent in the locality, and because Defendants charged the Qui tam plaintiffs for these items, Defendants are in breach of the HAP Contracts. (Pls.' Opp'n, 8:10; 9:9-11). Without any support, Plaintiffs boldly conclude that covered parking "is unquestionably part of a 'tenant's total expense for the use of land' . . . . and customarily included in rent throughout Northern California localities." (Pls.' Opp'n, 9:9-11). There is no evidence in the record as to the customarily included items in Northern California in the pleadings, and the Court should disregard this evidence.

          Finally, Plaintiffs create a hypothetical scenario to speculate as to the possible illegal conduct by Defendants but this also fails. Plaintiffs state that "extra charges could be rendered lawful non-rent simply by writing them in a separate agreement and labeling them as an additional amenity" and allow Section 8 landlords to collect illegal side payments with impunity, and that landlords would tell the tenants that they have to sign those agreements in order to remain in their homes. (Pls.' Opp'n, 10:20-24). This hypothetical misses the mark for several reasons. First, as discussed, *supra*, Plaintiffs have never once pleaded that Defendants mandated that the Qui tam plaintiffs enter into the Additional Services Agreements or else lose their Section 8 housing, nor does any such evidence exist because this was never the case. Second, Plaintiffs cannot logically conclude that Qui tam plaintiffs paid extra charges in violation of the HAP Contracts without more evidence, because the alleged facts and exhibits in the FAC including the signed Additional Services Agreements clearly demonstrates that the Qui tam plaintiffs wished to enter into these agreements to pay extra in consideration for additional amenities. Third, labeling a charge as extra rent, extra charge, side payment, illegal payment, additional rent, extra rent or illegal side payments does not make it so. Thus, while the term "extra charge" is correct in that the Qui tam plaintiffs had to pay for these items and they were "extra" in the sense they were not part of the base lease and HAP Contract, Plaintiffs deliberately conflate this charge with improper extra rent payments over and beyond the amount in the HAP Contracts, which never occurred.

///

## III. CONCLUSION

For the foregoing reasons, and because Plaintiffs fail to state a claim upon which relief may be granted, Defendants respectfully request this Court to dismiss the entire claim and all causes of action pursuant to F.R.C.P. 12(b)(6) without leave to amend.

DATED: October 28, 2016        LEWIS BRISBOIS BISGAARD & SMITH LLP


By:    /s/ Yoon-Woo Nam
Joseph A. Salazar Jr.
Yoon-Woo Nam
Attorneys for Wasatch Advantage Group, LLC; Wasatch Property Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC; Logan Park Apartments, LLC; Logan Park Apartments, LP