July 3, 2017

Hon. Deborah Barnes
United States Magistrate Judge
Eastern District of California
501 I Street, Suite 4200
Sacramento, CA 95814

    Re: <u>Protective Order in *Terry, et al. v. Wasatch Advantage Group, et al.*, No. 2:15-CV-00799</u>

Dear Judge Barnes:

The parties seek the Court's telephonic guidance toward resolution of a discovery dispute.

<u>Plaintiffs' Position</u>: As the parties approach the already-once-continued class certification discovery cut-off, Defendants have just indicated that they plan to subpoena 16 non-party deponents, all from regional housing authorities across many Western states, for depositions pursuant to a dizzying schedule in the second half of July and into early August. These 16 non-party depositions are redundant, wasteful, and, most important, not strategically designed to elicit evidence reflecting on the certifiability of the proposed class of Defendants' tenants. Plaintiffs therefore seek a protective order denying or limiting the number of these non-party depositions pursuant to Fed.R.Civ.P. 26(b)(2) (authorizing the court to limit depositions), Rule 26(c)(1) (providing for issuance of a protective order to limit discovery), and Rule 30(a)(2)(A)(i) (requiring [as-of-yet-unrequested] leave of court for more then ten depositions to be taken by defendants). Plaintiffs attempted to meet and confer with Defendants toward a limit on and proffer of relevance for these depositions, but to no avail. By way of comparison, Defendants have limited Plaintiffs' depositions of Defendants to three PMKs, to cover the entire Western-states region for which Defendants have proposed the 16 non-party depositions.

By way of brief background: Plaintiffs' case seeks certification of a class comprised of Defendants' Housing Choice Voucher Program ("Section 8") tenants across its properties who were forced by Defendants to pay side payments for additional services, at significant cost to them, in violation of Housing and Urban Development (HUD) regulations and the resulting Housing Assistance Payments (HAP) contracts governing how much these tenants could be required to pay. The HAP contract's pertinent provisions include, *inter alia,* that "the HAP contract specifies what utilities and appliances are to be provided or paid by the owner or the tenant, and that the "lease shall be consistent with the HAP contract." When the HUD regulations and the HAP contract requirements are read together, it is clear that any side agreements serving to increase monthly housing cost for Section 8 tenants are not allowed unless they are included in the HAP contract as allocated to tenant cost. Those at issue were not.

Defendants claim that they need to depose the 16 local housing agencies in an effort to defeat the commonality of claims prong of the class certification analysis. Though pressed by Plaintiffs, Defendants have provided no rationale for the need for testimony from the local housing authorities - let alone 16 of them. Indeed, when asked for a telephone call to meet and confer following Plaintiffs' receipt of a schedule with the many depositions included in it, Defendants refused to arrange a call to discuss the schedule or the need for each and all of the 16 non-party depositions. Plaintiffs would listen if Defendants could articulate how the role of the regional housing authorities tend to undermine Plaintiffs' theory that the extra costs not allocated to tenants by their HAP contracts are strictly illegal under HUD regulations. Defendants have not done so. Instead, Defendants state in conclusory fashion that the local housing authority testimony will serve to undermine the commonality of class member claims, without stating how, or to what extent. Nor do they answer the question of why 16 depositions are needed. Even if Defendants had a coherent theory of how the local housing authority testimony would serve to undermine commonality of the class member claims, at no time have Defendants proffered what

1

it is they expect to be different in the rent calculation approach or other administration across the 16 local housing authorities - and why any such differences cannot be gleaned from the party discovery of the many HAP contracts, lease agreements, and supporting documents Defendants are providing pursuant to the Court's last discovery order. Defendants' approach, in short, is non-targeted, non-strategic third-party class certification discovery run amok, which serves no useful purpose, but which promises to be exceedingly time consuming, expensive and redundant.

Accordingly, Plaintiffs respectfully request that the Court elicit from Defendants a coherent argument of how 16 local housing authority depositions will tend to influence the class certification decision, and then why all 16 are needed and justified as to time and cost. Failing a suitable response, Plaintiffs would request a protective order denying those depositions, or limiting Defendants to two strategically-selected local housing authority depositions before permitting any further ones, and then only upon sufficient predication of their need.

Defendants' position: Plaintiffs Denika Terry and Roy Huskey, III ("Plaintiffs") seek to define a class of Plaintiffs that extends across four states, 16 localities and 53 former and current apartment complexes owned by Defendants. The proposed class is well over 4,000 former and current Section 8 tenants going back to 2009. At issue is the legality of an "Additional Services Agreement" whereby tenants may obtain additional services (washer/dryer, covered parking, etc.) in exchange for a set monthly price. In their discovery requests, Plaintiffs sought and received a ruling by the Court to compel production of the tenant files for each of the Defendants' 53 properties, and Defendants have worked feverishly to produce in excess of 43,900 pages and will produce approximately 35,800 more by next week.

With the scope so framed by Plaintiffs, Defendants are entitled to depose members of the local public housing authorities ("PHA") to determine whether the use of the Additional Services Agreements are acceptable in that locality. Under the HAP lease contracts "[t]he owner may not charge the tenant extra amounts for items customarily included in rent to the owner in the locality ..." Ex. A to 1st Am. Compl., HAP contract, Part C, 6.c. What is and what is not included in the base rent is a question governed by the custom and practice in the particular locality and the deposition of the local PHA is the best way to develop admissible evidence on that key point. Based on Defendants' experience working with local PHAs for each of its 53 properties implicated in Plaintiffs' lawsuit, Defendants believe each local PHA applies a different standard in the approval of the HAP contracts and Additional Services Agreements. HUD requires owners to provide certain utilities that meet the HQS, or housing quality standards, but there is also a degree of flexibility built into the program. Ex. A to 1st Am. Compl., HAP contract, Part B, 3.b. The HQS consists of multiple criteria including "site and neighborhood", and HUD may approve criteria variations consistent with local housing codes or other codes adopted by the PHA. 24 CFR 982.401 (a)(2)(ii)(K), (4)(ii)(A).

In the parties' Joint Status Report filed with the Court on October 28, 2016, Defendants stated their intention to seek discovery of "all parties and witnesses to [HAP] contracts." Also, Plaintiffs' assertion that Defendants refused to engage in a meet and confer telephone call regarding the taking of these depositions is simply untrue. On Wednesday June 28, 2017, counsel for the parties discussed at length in a telephone conference the proposed depositions of all of the PHAs and reasons for taking each of the depositions. Counsel for Plaintiffs expressed an understanding of Defendants' need for the depositions and requested a proposed schedule, as well as stating Plaintiffs' desire to schedule their proposed depositions. Ironically, after having no qualms about compelling expensive discovery and demanding copies of tenant files from each of Wastach's 53 apartments, Plaintiffs now cry foul about the possibility of incurring their own expenses.

Respectfully Submitted,

LAW OFFICES OF ANDREW WOLFF, P.C.    LEWIS, BRISBOIS, BISGAARD & SMITH, LLP

/s/ David Lavine
Counsel for Plaintiffs and Putative Class

/s/ Yoon-Woo Nam
Counsel for Wasatch Defendants