Hon. Deborah Barnes                                    July 14, 2017
United States Magistrate Judge
United States District Court, Eastern District of
California
501 I Street, Suite 4200
Sacramento, CA 95814

      Re:     <u>Terry et al. v. Wastach Advantage Group et al.; Case No. 2:15-cv-00799 KJM DB;</u> Joint
              Statement re Discovery Disagreement

Dear Judge Barnes:

      The parties request the Court's guidance to resolve a discovery dispute following multiple unsuccessful conferences by the parties.

<u>Defendants' Position</u>: Defendants Wasatch Advantage Group et al. ("Defendants") need to take additional depositions prior to the class certification discovery deadline on August 14, 2017. The depositions of 17 public housing agencies ("PHAs") are necessary to discover evidence that Defendants will use to oppose class-certification. The scope of Plaintiffs' claims which include over 4,000 putative plaintiffs who live or lived in 53 properties owned by Defendants across four states and in 17 distinct housing regions compel the need for additional depositions of third-party witnesses. Because deposition testimony is the only effective method by which this discovery may be obtained, Defendants respectfully request the Court to grant leave to take additional depositions.

      Plaintiffs Denika Terry and Roy Huskey, III ("Plaintiffs") seek to define a class of plaintiffs that extends across four states, 16 localities and 53 former and current apartment complexes owned by Defendants. The proposed class is well over 4,000 former and current Section 8 tenants going back to 2009. At issue is the legality of an "Additional Services Agreement" whereby tenants may obtain additional services (washer/dryer, covered parking, etc.) in exchange for a set monthly price.

      With the scope so framed by Plaintiffs, Defendants are entitled to depose members of the local public housing authorities ("PHA") to determine whether the use of the Additional Services Agreements are acceptable in that locality. Under the Section 8 lease contracts "[t]he owner may not charge the tenant extra amounts for items customarily included in rent to the owner in the locality …" Ex. A to 1st Am. Compl., HAP contract, Part C, 6.c. What is and what is not included in the base rent is a question governed by the custom and practice in the particular locality and the deposition of the local PHA is the best way to develop admissible evidence on that key point.  Based on Defendants' experience working with local PHAs for each of its 53 properties implicated in Plaintiffs' lawsuit, Defendants believe each local PHA applies a different standard in the approval of the HAP contracts and Additional Services Agreements. HUD requires owners to provide certain utilities that meet the HQS, or housing quality standards, but there is also a degree of flexibility built into the program. Ex. A to 1st Am. Compl., HAP contract, Part B, 3.b. The HQS consists of multiple criteria including "site and neighborhood", and HUD may approve criteria variations consistent with local housing codes or other codes adopted by the PHA. 24 CFR 982.401 (a)(2)(ii)(K), (4)(ii)(A).

      Finally, Defendants have endeavored to limit the number of essential depositions during this phase of discovery. For example, instead of seeking depositions of PHA employees who work with each of Defendants' 53 properties, Defendants seek to take 17 third-party depositions. While some of the testimony of the PHAs will likely overlap since each administers their respective Section 8 Program under the same federal regulations, the proposed depositions and anticipated testimony regarding the housing quality standards and additional services offered by a Wastach apartment in the locality will not be cumulative or duplicative.

<u>Plaintiffs' Position</u>: As the parties approach the already-once-continued class certification discovery cut-off, defendants have only just indicated that they plan to subpoena 18 non-party deponents, all from regional housing authorities around many western states.  Defendants proposed a dizzying schedule for these depositions, together with the remaining party depositions, in the second half of July and into early August. These 18 non-party depositions are redundant, wasteful, and, most important, not strategically designed to elicit evidence reflecting on the certifiability of the proposed class of defendants' tenants.  Plaintiffs therefore

Hon. Deborah Barnes
July 14, 2017
Page 2


seek a protective order denying or limiting the number of these non-party depositions pursuant to Fed.R.Civ.P. 26(b)(2) (authorizing the court to limit depositions), 26(c)(1) (providing for issuance of a protective order to limit discovery), and 30(a)(2)(A)(i) (requiring [as-of-yet-unrequested] leave of court for more then ten depositions to be taken by plaintiffs or defendants).  Plaintiffs attempted to meet and confer with defendants toward a limit on these depositions, but to no avail.  By way of comparison, defendants have limited plaintiffs' depositions of defendants to three persons-most-knowledgeable, to cover the entire western states regions for which defendants have proposed 16 third-party depositions (in addition to the two class representative depositions).

By way of brief background, plaintiffs' case seeks certification of class of defendants' Housing Choice Voucher Program beneficiary ("Section 8") tenants across its properties who were subject to side agreements for additional services, at significant cost to them, in violation of Housing and Urban Development (HUD) regulations and the resulting Housing Assistance Payments (HAP) contracts governing how much these tenants could be required to pay.  Plaintiffs' theory of liability has consistently been that "The owner may not demand or accept any rent payment from the tenant in excess of the maximum and must immediately return any excess rent to the tenant." 24 C.F.R. § 982.451(b)(4)(ii). Further, HUD's "Housing Choice Voucher Program Guidebook … states that '[c]ollecting extra or "side" payments in excess of the family share of rent or requiring the family to perform extraordinary services in lieu of payments qualifies as fraud or abuse.'" *U.S. ex rel. Holmes v. Win Win Real Estate, Inc.*, No. 213CV02149APGGWF, 2015 WL 6150594, at *4 (D. Nev. Oct. 19, 2015), quoting Dept. of Housing and Urban Development, Voucher Program Guidebook: Housing Choice, p. 22-2 (April 2001); see also *U.S. v. Baran*, No. CV1402639RGKAJWX, 2015 WL 5446833, at *4-5 (C.D. Cal. Aug. 28, 2015) [citing HUD Guidebook, held side payments violated False Claims Act].

The HAP contract's pertinent provisions include (emphasis added):

[Part A, 8.] **Unless otherwise specified below, the owner shall pay for all utilities and appliances** provided by the owner.

[Part B, 5.c.] Part A of the HAP contract specifies what utilities and appliances are to be provided or paid by the owner or the tenant. The lease shall be consistent with the HAP contract.

[Part B. 8. Owner Certification] d. **Except for the rent to owner, the owner has not received and will not receive any payments or other consideration (from the family, the PHA, HUD, or any other public or private source) for rental of the contract unit** during the HAP contract term.

[Part C, 5.e.] **The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to owner.  Rent to owner includes all housing services, maintenance, utilities and appliances** to be provided and paid by the owner in accordance with the lease.

When the HUD regulations and the HAP contract requirements are read together, as they must be, it is abundantly clear that any side agreements serving to increase monthly housing cost for Section 8 tenants are not allowed unless they are included in the HAP contract as allocated to tenant cost.  By way of example, in-unit laundry machines were not allocated to additional tenant cost in the HAP contracts, and thus cannot be allocated to tenant cost through a side agreement or in any other manner.  Further, required, non-optional rental insurance cannot be demanded from Section 8 tenants under the HUD regulations and the HAP contract terms.  The effect of these additional charges on financially-stressed tenants who have been approved for Section 8 rental assistance is to tip these tenants into an untenable long-term payment situation, and to undermine the carefully-calibrated rent affordability calculation performed pursuant to Section 8 eligibility.

Defendants claim that they need to depose each and all representatives of 18 local housing agencies in an effort to defeat the commonality of claims prong of the class certification analysis.  Though pressed by

4839-0510-1899.1

Hon. Deborah Barnes
July 14, 2017
Page 3

plaintiffs, defendants have provided no rationale for the need for testimony from the local housing authorities - let alone 18 of them.  If defendants could articulate how the role of the regional housing authorities tends to undermine plaintiffs' theory that the cost of appliances not allocated to Section 8 tenants in the HAP contract, and the cost of mandatory rental insurance imposed on tenants though it is a "housing service" appearing nowhere in the HAP contract as allocated to Section 8 tenants, are per se illegal under HUD regulations, plaintiffs would listen.  Defendants have not done so.  Instead, defendants state in conclusory fashion that somehow the local housing authority testimony will serve to undermine the commonality of class member claims, without stating how or to what extent.  Nor do they answer the obvious question of why 18 depositions are needed.  Even if defendants had a coherent theory of how the local housing authority testimony would serve to undermine the commonality of class member claims, at no time have they proffered what it is they expect to be meaningfully different in the rent calculation approach across the 18 local housing authorities - and why any such differences cannot be gleaned from the party discovery of the many HAP contracts, lease agreements, and supporting documents defendants are providing pursuant to the Court's last discovery order.  Defendants' approach, in short, is non-targeted, non-strategic third-party class certification discovery run amok, which serves no useful purpose, but which promises to be exceedingly time consuming, rushed, expensive and redundant.

Most important, by insisting on these 18 local housing authority depositions, defendants miss the point of this case.  It is not about how the local housing authorities determine the rent to be charged to Section 8 beneficiaries in their regions; it is about whether additional, often substantial, living costs are properly allocated to the Section 8 tenants in their HAP contracts.  The particular rent calculations are beside the point; whatever they are, what matters for this case is whether the HAP contracts properly allocated all tenant costs.  In a word, defendants charged more than they were allowed to, and nothing in the regional rent calculations defendants wish to inquire into, 18 times over, changes this conclusion.  Accordingly, plaintiffs respectfully request that the Court elicit from defendants a coherent argument of how 18 local housing authority depositions will tend to influence the class certification decision based on plaintiffs' theory of the case, and then why all 18 are needed and justified as to time and cost.  Failing a suitable response, plaintiff would request a protective order denying those depositions, or limiting defendants to several strategically-selected local housing authority depositions before permitting any further ones, and only then upon sufficient predication for their need or usefulness.

LAW OFFICES OF ANDREW WOLFF,          LEWIS BRISBOIS BISGAARD & SMITH LLP
P.C.                                                        /s/ Joseph A. Salazar, Jr.
/s/ David Lavine                                       /s/ Yoon-Woo Nam

4839-0510-1899.1