UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. DENIKA TERRY and ROY HUSKEY III, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA,<br><br>Plaintiffs/Relators,<br><br>v.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC; LOGAN PARK APARTMENTS, LP,<br><br>Defendants. | No. 2:15-CV-00799 KJM DB<br><br>ORDER |

In this False Claims Act action, plaintiffs are tenants who receive rental assistance through the federally subsidized Housing Choice Voucher Program commonly known as "Section 8." They claim defendant lessors improperly charged plaintiffs, as well as the putative class members they seek to represent, for washer and dryer rentals, renter's insurance, and covered parking. Plaintiffs argue these services constitute impermissible rent under the Section 8

1

contracts and regulations, and defendants therefore violated the Section 8 contracts and submitted false claims for reimbursement under the federal program. Defendants move to dismiss the complaint on the grounds that these services and appliances cannot constitute rent. For the reasons explained below, the court GRANTS defendants' motion in part and DENIES it in part.

I.   BACKGROUND

　　　A.   Procedural Background

　　　　　Plaintiffs filed their qui tam complaint on April 14, 2015. Compl., ECF No. 1. After two extensions of the election period, ECF Nos. 6, 10, the United States declined to intervene in June 2016. ECF No. 14. Plaintiffs filed their first amended complaint by stipulation on August 31, 2016. First Am. Compl. ("FAC"), ECF No. 25.

　　　　　On September 14, 2016, defendants moved to dismiss plaintiffs' first amended complaint. Mot., ECF No. 26. Plaintiffs oppose the motion, Opp'n, ECF No. 30, and defendants filed a reply, Reply, ECF No. 32. The court held a hearing on December 2, 2016, at which Joseph Salazar and Yoon Nam appeared for defendants; and Chris Beatty appeared for plaintiffs, with Centro Legal de la Raza Litigation Director Jesse Newmark present with plaintiffs' counsel. Hr'g Mins., ECF No. 38. Vincente Tennerelli appeared for the United States, although the United States did not take a position on the instant motion. *Id.*.

　　　B.   Factual Allegations

　　　　　Plaintiffs seek to represent a class of past, present and prospective tenants of residential apartments owned, rented, and managed by defendants. FAC ¶¶ 1–2. Defendants' properties include four apartment communities in the Sacramento area (the "Subject Properties"). *Id.* ¶ 3. And plaintiffs Denika Terry and Roy Huskey III live at two of them. *Id.* ¶¶ 4 ("Terry Residence"), 5 ("Huskey Residence"). Defendants rent numerous apartments to tenants who receive rental assistance through the federally subsidized Housing Choice Voucher Program, commonly known as "Section 8." *Id.* ¶ 6. The Section 8 program provides that participating tenants pay between thirty percent and forty percent of their adjusted monthly income toward rent and utility costs and the federal government and local housing agencies pay the balance of rent directly to the property owner. *Id.* Across the Subject Properties, there are at least 167 Section 8

tenants. *Id.* ¶ 7. Defendants were parties to Housing Assistance Payment Contracts ("HAP Contracts") with plaintiffs and the Sacramento County Housing and Development Agency as part of the Section 8 program. *Id.* ¶ 8. As part of their usual course of business, defendants demanded additional monthly rental payments from plaintiffs and other Section 8 tenants, in excess of the tenants' portion of the rent due under the HAP Contracts. *Id.* ¶ 9. These additional payment demands covered rental charges for washers and dryers, renters' insurance and covered parking. *Id.*

Plaintiffs' claims rely on the characterization of these additional payments as rent. The HAP Contracts, which are agreements between and among the tenant family, the landlord and the local housing authority, establish the initial lease term and the total amount of monthly rent due from the tenant. *Id.* ¶¶ 28–31. The sum of the housing assistance payment by the public housing agency and the tenant's share of rent under the HAP Contract is known as the contract rent, which is subject to change in limited circumstances and only after notice is given. *Id.* ¶¶ 34–35. The regulations governing rent under a HAP Contract, found at 24 C.F.R. § 982.451, provide in pertinent part, "[t]he owner may not demand or accept any rent payment from the tenant in excess of the maximum and must immediately return any excess rent to the tenant." *Id.* ¶ 36 (citing 24 C.F.R. § 982.451(b)(4)(ii)). Similarly, Part C of the Tenancy Addendum to the standard HAP Contract provides: "The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to owner." *Id.* ¶ 37.

Plaintiffs allege defendants repeatedly demanded payment of additional rent payments, or "side payments," all in violation of the HAP Contracts and without authorization of the local housing agency or HUD. *Id.* ¶¶ 47, 66–70, 85–89. Defendants' demand for "side payments" included payment for washer and dryer rentals, renter's insurance, and covered parking. *Id.* ¶¶ 66, 85. As an example, defendants' Resident Ledger for the Terry Residence for the month of January 2012 reflects a monthly charge of $40 for "Washer/Dryer Rental," $17.91 for "Renter's Insurance" and $10 for "Covered Parking Charges." *Id.* Ex. B. Similarly, defendants' Resident Ledger for the Huskey Residence for the month of January 2012 reflects a monthly charge of $50 for "Washer/Dryer Rental" and $17.91 for "Renter's Insurance." *Id.* Ex.

3

F.  Plaintiffs periodically entered into several Residential Rental Agreements, each of which included an Additional Services Agreement that addressed these additional charges.  *Id.* ¶ 110; *id.* Exs. G, H, I (Terry Agreements); *id.* Exs. J, K (Huskey Agreements).  In order to enforce additional rent payment requirements, defendants threatened Terry and Huskey each with eviction for nonpayment of the "side payments."  FAC ¶¶ 71, 90.  Defendants ultimately filed an eviction action against Terry for not making the unlawfully demanded "side payments."  *Id.* ¶ 72.

On the basis of these allegations, plaintiffs bring four claims against all defendants: (1) violation of the Federal False Claims Act, 31 U.S.C. § 3729(a), for "knowingly present[ing] a false or fraudulent claim for payment or approval" to the United States, *id.* ¶¶ 112–26; (2) Breach of Contract, Cal. Civ. Code §§ 3300 *et seq.*, for breaching the terms of the HAP Contracts that prohibit the charging of additional rent payments, *id.* ¶¶ 127–33; (3) violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, for engaging in deceptive practices in connection with the conduct of a business providing services, *id.* ¶¶ 134–45; and (4) Unfair Business Practices, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, for engaging in "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice," *id.* ¶¶ 146–60.  Plaintiffs seek damages, injunctive and other equitable relief.  *Id.* ¶¶ 39, 162.

C.     <u>Defendants' Motion</u>

Defendants argue plaintiffs improperly characterize charges for washer and dryer rentals, renter's insurance and covered parking as "side payments."  Mot. 2.  Defendants insist that plaintiffs repeatedly bargained for, and separately agreed to, these amenities and services.  *Id.* at 5.  As a result, they say, each of plaintiffs' claims must fail: the charges are not fraudulent (Claim 1); are consistent with the underlying HAP contracts (Claim 2); lead to no cognizable injury under the Consumer Legal Remedies Act (Claim 3); and cannot constitute an "unlawful, unfair, or fraudulent" business practice under state law (Claim 4).  *Id.* at 6–8.  The class allegations, which rely on the same underlying claims, must also necessarily fail.  *Id.* at 7.

In response, plaintiffs argue that the pleadings are sufficient, both as a matter of fact and as a matter of law, to characterize the additional payments as rent.  *See generally* Opp'n.  Specifically, plaintiffs argue the additional charges were mandatory and not optional service

charges, pointing to their allegations that the charges were recorded by defendants in their rent ledgers and, when unpaid, were used as a basis for eviction. *Id.* at 2. As a matter of law, plaintiffs argue, the additional charges constitute illegal rent, regardless of whether the services were optional, because the additional charges were part of the total expense for tenants' use of the rented premises; the charges were for appliances not listed in the Section 8 contracts; defendants threatened plaintiffs and other Section 8 tenants with eviction if they failed to pay these charges; and he charges were for items customarily included in rent in the surrounding locality. *Id.* Plaintiffs argue that, if extra charges were rendered lawful and not rent simply by writing them in a separate agreement and labeling them as an additional amenity, then Section 8 landlords could collect illegal side payments with impunity. *Id.* at 2–3.

II.     STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

1        In making this context-specific evaluation, this court must construe the complaint
2   in the light most favorable to the plaintiff and accept as true the factual allegations of the
3   complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "'a legal
4   conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted*
5   *in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to
6   judicial notice" or to material attached to or incorporated by reference into the complaint.
7   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001). A court's
8   consideration of documents attached to a complaint or incorporated by reference or matter of
9   judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United*
10  *States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d
11  1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977,
12  980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to
13  dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).
14  III.    DISCUSSION
15       At hearing, the parties agreed that if the additional charges can constitute
16  additional rent, then defendants' motion must fail. For the reasons explained below, the court
17  finds plaintiffs' allegations sufficient to construe the additional charges as rent at this stage of the
18  proceedings.
19       As an initial matter, defendants' argument that the additional charges cannot
20  constitute rent because they were part of a separate agreement may be rejected outright. *See*
21  Mot. 5. Courts consistently have held that extra charges, even when labeled as additional
22  amenities, can constitute illegal side payments. *See, e.g.*, *U.S. ex rel. Price v. Peters*, 66 F. Supp.
23  3d 1141, 1149 (C.D. Ill. 2013) (extra payments for use of storage shed violated FCA); *U.S. ex rel.*
24  *Sutton v. Reynolds*, 564 F. Supp. 2d 1183, 1187 (D. Or. 2007) (additional fees for landscaping
25  could be illegal side payments); *Coleman v. Hernandez*, 490 F. Supp. 2d 278, 280 (D. Conn.
26  2007) (fees for water usage not included in HAP contract were side payments and therefore
27  violated FCA); *U.S. ex rel. Holmes v. Win Win Real Estate, Inc.*, No. 13-02149, 2015 WL
28  6150594, at *5 (D. Nev. Oct. 19, 2015) (homeowner association fees and property management

6

1   fees were rent and violated FCA); *U.S. ex rel. Mathis v. Mr. Property, Inc.*, No. 14-00245, 2015
2   WL 1034332, at *5 (D. Nev. Mar. 10, 2015) (additional fees for pool maintenance could violate
3   FCA). The court next considers each of plaintiffs' five arguments for construing the additional
4   charges as rent.

5         A.      <u>Mandatory Charges</u>

6         Plaintiffs first argue the additional charges were mandatory and thus constituted
7   rent. Opp'n 2. The first amended complaint does not allege the additional payments were
8   mandatory or that plaintiffs were not given the opportunity to opt out of the services for which the
9   additional payments were demanded. *See generally* FAC. Moreover, material attached to the
10  first amended complaint may undermine that allegation, at least with respect to parking; the
11  Resident Ledger for the Terry Residence shows "Covered Parking" charges from August, 20,
12  2010, through July 1, 2012, but no parking charges after July 2012 until the end of Terry's
13  occupancy of the unit in March 2013, which suggests Terry chose to discontinue the service. *Id.*
14  Ex. B. Because plaintiffs' first amended complaint does not allege any of the additional charges
15  were mandatory, and because material attached to the first amended complaint may undermine
16  that allegation even if plaintiffs asserted it, plaintiffs' complaint cannot survive defendants'
17  motion on the basis of this theory.

18        Nonetheless, leave to amend is appropriate. The complaint already includes
19  several allegations consistent with plaintiffs' argument that the charges were mandatory. For
20  example, plaintiffs allege that the lease agreements were adhesion contracts not subject to any
21  negotiations or input by plaintiffs, *id.* ¶ 129; defendants never disclosed to plaintiffs that
22  defendants were prohibited from charging additional rent payments, *id.* ¶ 74; defendants recorded
23  payment of the additional charges in their ledger for rents, *id.* ¶¶ 67–68, 86–87; defendants used
24  nonpayment of the additional charges as a basis for threatening eviction, *id.* ¶¶ 71, 90, and for
25  instituting eviction proceedings, *id.* ¶ 72; and plaintiffs ultimately agreed to pay the additional
26  charges to ensure they would not lose their homes and their Section 8 vouchers, *id.* ¶¶ 75, 93. In
27  addition, plaintiffs point to the supplemental lease agreements, under which failure to pay for the
28  additional services was to be treated as a default under the HAP Contract for lease of the

1  property. *See id.* Ex. G at 9–10.  Given plaintiffs' ability to more clearly allege, as their
2  opposition argues, that the additional fees were mandatory, the court GRANTS them leave to
3  amend the complaint to do so.
4        The court next addresses plaintiffs' other theories for construing the additional
5  charges as rent.
6      B.    <u>Total Expense for Use of Rented Premises</u>
7        Plaintiffs next argue the additional charges were for "total expense for the use of
8  land" and thus constituted rent. Opp'n 2.  Plaintiffs rely here on a broad reading of the Sixth
9  Circuit's decision in *Velez v. Cuyahoga Metropolitan Housing Authority*, 795 F.3d 578 (6th Cir.
10  2015).  In that case, the Sixth Circuit considered whether additional fees imposed by the
11  Authority (or "CMHA")for short-term leases constituted rent for the purposes of Section 8.  *Id.* at
12  582.  The two plaintiffs had completed one-year leases and subsequently entered month-to-month
13  leases for which CMHA imposed short-term lease fees as a means of recovering the increased
14  turnover expenses, marketing costs and market risks associated with shorter-term leases.  *Id.* at
15  581.  Plaintiffs sought review on the grounds that these short-term lease fees necessarily
16  constitute rent.  The Sixth Circuit recognized that neither Section 8 nor the Housing Act of 1937
17  defined "rent" and looked to dictionary definitions of the term at the time the Act was passed.  *Id.*
18  at 582–83.  Based on this review, the court determined "[t]he definition of rent plainly includes
19  the tenant's total expense for the use of land during the term of occupancy."  *Id.* at 587.  The
20  Sixth Circuit concluded the short-term lease fees satisfied this definition and reversed the district
21  court's order granting summary judgment for CMHA.  *Id.*
22        Although *Velez* offers a broad definition of "rent" for the purposes of Section 8,
23  that definition does not easily encompass the additional charges here.  *Velez* considered additional
24  fees imposed to account for risks and costs associated with short-term leases.  Some lessors offset
25  these risks and costs by increasing the monthly rent charge in their leases, whereas CMHA
26  addressed them in the form of discrete fees associated with the holdover tenancy.  *Id.* at 581.  In
27  either case, the Sixth Circuit reasoned, these risks and costs are inherent in a short-term lease
28  arrangement and casting them as a short-term fee rather than a rent charge was immaterial.  *Id.* at

585–86.  In sum, the short-term fees were for the general use of the rented premises, unlike here where some of the additional charges are associated with discrete services, utilities or appliances. FAC ¶ 9.

Thus, even assuming *Velez* applies, plaintiffs have not alleged sufficient facts to support their "total expense for the use of land" theory.  Accordingly, plaintiffs' complaint cannot survive defendants' motion on this basis.  Moreover, because plaintiffs argue no additional facts that would change this analysis, the court will not grant leave to amend on this basis.

C.      Rent for Appliances Not Listed in Section 8 Contracts

Plaintiffs argue the additional charges constitute rent because they are for "appliances" not listed in the Section 8 contracts.  Opp'n 2.  Plaintiffs rely on an interpretation of the underlying HAP Contract that narrowly limits the appliances for which tenants may be charged.  More specifically, Part A of the HAP Contract provides the "owner shall provide for the utilities and appliances indicated below" and that "[u]nless otherwise specified below, the owner shall pay for all utilities and appliances provided by the owner."  FAC Ex. A at 3.  The Lease Supplemental Agreement of the HAP Contract is substantially similar.  *Id*. Ex. A at 1.  The "utilities and appliances" listed in both agreements include air conditioning, water, sewer and trash collection, but do not include laundry machines.  *Id.* Ex. A at 1, 3; Opp'n 9.  The HAP Contract clarifies the "lease shall be consistent" with it and, for any conflict with "the provisions of the lease or any other agreement between the owner and the tenant, the requirement of the HUD-required tenancy addendum shall control."  FAC Ex. A at 5, 12.

On this basis, plaintiffs have sufficiently alleged illegal rent for the charge of laundry machines.  The HAP Contract specifically requires the owner to pay for all "utilities and appliances" unless otherwise specified in the HAP Contract.  Defendants do not dispute that a laundry machine may constitute an "appliance," nor could they reasonably do so.  *See* Reply 3. The HAP Contract nowhere lists laundry machines as an appliance for which the tenant is responsible.  The Additional Services Agreements, which required Terry and Huskey to each pay $40 per month for laundry machines, FAC Exs. G, H, I, J, K, thereby conflicts with the HAP Contract and is superseded by it.  Defendants' charging for this appliance, then, is prohibited by

9

1 operation of the HAP Contract.  Other courts similarly have found these types of conflicts to
2 constitute a violation of HAP Contracts.  *See, e.g.*, *Sutton,* 564 F. Supp. 2d at 1185 (noting
3 additional fees for landscaping not listed among plaintiffs' responsibilities under HAP Contract);
4 *see also Coleman*, 490 F. Supp. 2d at 279–80 (noting conflict between HAP Contract, under
5 which landlord assumed responsibility for water, and additional charges imposed on tenant for
6 water usage).  Plaintiffs have sufficiently alleged illegal rent charges for laundry machines, and
7 defendants' motion is DENIED on this basis.

        D.        <u>Eviction and Threat of Eviction</u>

9         Plaintiffs next argue defendants' threats of eviction for failure to pay the additional
10 charges necessarily means those charges are rent.  Opp'n 2.  Under the Additional Services
11 Agreements, failure to pay for the additional services specified would be treated as a default
12 under the Residential Rental Agreement for lease of the property.  *See, e.g.*, FAC Ex. G at 9–10.
13 The language of the Additional Services Agreements inextricably links the two agreements.  *Id.* ¶
14 9 ("Default by Lessee on Agreement: A default under this Agreement is a default under the Lease
15 and a default under the Lease is a default under this Agreement.  If Lessee fails to pay any
16 Monthly Fee when due . . . the Lessor may terminate not only this Agreement, but . . . shall
17 terminate the Residency.").  Indeed, Terry and Huskey were both threatened with eviction for
18 their nonpayment of the additional services fees, and defendants actually filed an eviction action
19 against Terry for her nonpayment of the additional services fees.  *Id.* ¶¶ 71–72, 90.

20         The fact that the additional charges provided a basis for eviction supports
21 plaintiffs' claims that they were mandatory.  *See Velez*, 795 F.3d at 585–86 (reasoning that the
22 short-term lease fees, which were a basis for eviction, were not optional); *see also Coleman*, 490
23 F.Supp.2d at 280 (noting landlord's threat to evict tenant if she did not pay additional sums for
24 water usage); *Mathis*, 2015 WL 1034332 at *1 (finding additional fees for pool maintenance
25 could violate FCA where tenant was evicted on the basis of nonpayment of the fees).  Although it
26 may not be true that all fees whose nonpayment may lead to eviction constitute "rent," these
27 allegations further support plaintiffs' claims that the additional charges here were mandatory and
28 should be construed as rent at this stage.

Because the court finds a separate basis for denying defendants' motion, the court need not resolve whether the possibility of eviction for nonpayment of additional payments, standing alone, may convert those additional payments into rent.

### E. Charges for Items Customarily Included in Rent

Plaintiffs finally argue the additional charges constitute rent because they are for items customarily included in rent in the relevant locality. Opp'n 2. Plaintiffs' argument here relies on Part C(6)(c) of the HAP Contracts, which states, under a heading of "Other Fees and Charges," that "[t]he owner may not charge the tenant extra amount for items customarily included in rent to owner in the locality, or provided at no additional cost to unsubsidized tenants in the premises." *See* FAC Ex. A at 9; *id.* Ex. E at 13. At hearing, however, plaintiffs conceded the operative complaint nowhere includes the allegation that the additional charges were for items customarily included in rent in the locality. Because plaintiffs clarified at hearing that they could amend the complaint to include this allegation, the court GRANTS plaintiffs leave to amend the first amended complaint in this respect as well.

## IV. CONCLUSION

The court finds the additional charges for laundry machines could constitute impermissible rent because they were not listed as an "appliance" in the HAP Contracts. On this basis, the court DENIES in part defendants' motion.

The court also finds the first amended complaint inadequately alleges facts to support plaintiffs' claims that the additional charges were mandatory; that they constitute "total expense for tenants' use of the rented premises"; and that they were for "items customarily included in rent to owner in the locality." Accordingly, the court GRANTS defendants' motion in these respects.

The court GRANTS plaintiffs leave to amend the complaint to provide additional allegations to support two of these three theories. Because plaintiffs have not pointed to any additional facts they could allege to support their "total expense for the use of land" theory, the court DENIES plaintiffs leave to amend to continue assert that theory. Plaintiffs shall file an amended complaint within fourteen (14) days of this order.

1       IT IS ORDERED.

2       This order resolves ECF No. 26.

3 DATED: July 21, 2017.

                                      UNITED STATES DISTRICT JUDGE