1   **LEWIS BRISBOIS BISGAARD & SMITH LLP**
    JOSEPH A. SALAZAR JR., SB# 169551
2      E-Mail: Joe.Salazar@lewisbrisbois.com
    YOON-WOO NAM, SB# 284644
3      E-Mail: Yoon-Woo.Nam@lewisbrisbois.com
    2020 West El Camino Avenue, Suite 700
4   Sacramento, California 95833
    Telephone: 916.564.5400
5   Facsimile: 916.564.5444

6   Attorneys for Wasatch Advantage Group, LLC;
    Wasatch Property Management, Inc.; Wasatch
7   Pool Holdings, LLC, Chesapeake Commons
    Holdings, LLC; Logan Park Apartments, LLC;
8   Logan Park Apartments, LP

9

10              **UNITED STATES DISTRICT COURT**

11             **EASTERN DISTRICT OF CALIFORNIA**

12                 **SACRAMENTO DIVISION**

13

14  UNITED STATES OF AMERICA, ex rel.          CASE NO. 2:15-cv-00799-KJM-DB
    DENIKA TERRY and ROY HUSKEY III,
15  and each of them for themselves individually,  **DECLARATION OF YOON-WOO NAM**
    and for all other persons similarly situated and  **IN SUPPORT OF DEFENDANTS'**
16  on behalf of the UNITED STATES OF          **MOTION FOR LEAVE TO TAKE**
    AMERICA,                                    **ADDITIONAL DEPOSITIONS**
17
              Plaintiffs/Relators,              Judge:   Hon. Deborah Barnes
18                                              Date:    July 28, 2017
              vs.                               Time:    10:00 a.m.
19                                              Crtrm.:  27, 8th Floor
    WASATCH ADVANTAGE GROUP, LLC,
20  WASATCH PROPERTY MANAGEMENT,                The Hon. Kimberly J. Mueller
    INC., WASATCH POOL HOLDINGS, LLC,
21  CHESAPEAKE COMMONS HOLDINGS,                Trial Date:      None Set
    LLC, LOGAN PARK APARTMENTS, LLC;
22  LOGAN PARK APARTMENTS, LP,

23            Defendants.

24

25                 **DECLARATION OF YOON-WOO NAM**

26       I, Yoon-Woo Nam, declare as follows:

27       1.      I am an attorney duly admitted to practice in all of the courts of the State of

28  California and the United States District Court, Eastern District of California and I am an associate

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  with Lewis Brisbois Bisgaard & Smith LLP, attorneys of record for Wasatch Advantage Group,

2  LLC; Wasatch Property Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake Commons

3  Holdings, LLC; Logan Park Apartments, LLC; Logan Park Apartments, LP ("Defendants")

4  herein. The facts set forth herein are of my own personal knowledge, and if sworn I could and

5  would competently testify thereto.

6      2.      I met and conferred with counsel for plaintiffs pursuant to the Honorable Kimberly

7  J. Mueller's Standing Order. I exhausted meet and confer efforts before filing the motion herein.

8      3.      On July 11, 2017, I sent an e-mail to David Lavine, counsel for plaintiffs Denika

9  Terry and Roy Huskey, III ("Plaintiffs"). In the e-mail, I requested Plaintiffs to stipulate to

10  Defendants taking of up to 20 depositions to obtain necessary discovery, and if Plaintiffs would

11  not stipulate that Defendants would then seek the Court's approval.

12     4.      On July 12, 2017, Plaintiffs' counsel informed me that a Local Rule 251 Joint

13  Statement re Discovery Disagreement would be needed to resolve this dispute.

14     5.      On July 14, 2017, the parties attempted to file a Joint Statement re Discovery

15  Dispute and Defendants filed a Motion for Leave to Take Additional Depositions on July 14th.

16  However, the Court was not available for the corresponding hearing date.

17     6.      On July 17, 2017, I sent an e-mail request to Plaintiffs' counsel to send his draft for

18  a revised Joint Statement re Discovery Agreement to be filed on Friday July 21, 2017.

19     7.      On July 21, 2017, upon receiving almost no contribution for the preparation of a

20  revised Joint Statement re Discovery Dispute, Defendants filed the Affidavit of Yoon-Woo Nam

21  pursuant to Local Rule 251 (d) concurrently with this Motion and sought a July 28, 2017 hearing

22  before the Court.

23     8.      Attached hereto as "Exhibit 1" is a true and correct copy a Housing Assistance

24  Payments Contract entered into by Denika Terry with Defendants and a public housing agency.

25  This was also filed as Exhibit A to Plaintiffs' First Amended Complaint.

26     9.      Attached hereto as "Exhibit 2" is a true and correct copy of a rough draft of

27  excerpts of the transcript of the deposition of Jodi Parker of the Housing Authority of Salt Lake,

28  dated July 17, 2017 sent to me by the court reporter who attended and transcribed the testimony. I

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DECLARATION OF YOON-WOO NAM IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO TAKE
ADDITIONAL DEPOSITIONS

1  was not able to obtain a certified copy of the transcript by the time of filing of this Declaration.

2     10.    Attached hereto as "Exhibit 3" are true and correct copies of the objections to

3  Defendants' subpoenas to several PHAs served by Plaintiffs on our office

4     I declare under penalty of perjury under the laws of the United States of America that the

5  foregoing is true and correct and that this declaration was executed on July 21, 2017, at

6  Sacramento, California.

7

8

9                                    /s/ Yoon-Woo Nam
                                     Yoon-Woo Nam
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



DECLARATION OF YOON-WOO NAM IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO TAKE
ADDITIONAL DEPOSITIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

2:15-cv-00799-KJM-DB

DECLARATION OF YOON-WOO NAM IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO TAKE
ADDITIONAL DEPOSITIONS

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

From:SHRA Exec 1 916 443 8872 09/24/2010 15:53 #587 P.002/013
Case 2:15-cv-00799-KJM-DAD-SEALED Document 1 Filed 04/30/15 Page 5 of 30
Case 2:15-cv-00799-KJM-DAD Document 63-2 Filed 07/23/18 Page 30 of 82

(Page 1 of 76)

## SACRAMENTO HOUSING & REDEVELOPMENT AGENCY
### HOUSING CHOICE VOUCHER PROGRAM
#### Lease Supplemental Agreement

This is a Lease Supplemental Agreement that is a legal contract between the Owner and the Tenant in regards to lease of the property. It should be carefully read by both parties before signing. This Lease Supplemental Agreement, together with the HUD-prescribed tenancy addendum, will be part of the HA-approved lease form provided by the Owner, if any, and collectively will be the Lease between Owner and Tenant. In the event of a conflict between the terms and conditions set out in the documents comprising the Lease, this Lease Supplemental Agreement shall supersede any conflicting provisions.

**1. PARTIES TO THE AGREEMENT DEFINED:**            **OWNR SPEC 1**

As used in this lease, the terms 'Owner' and 'Tenant' refer to the following:

a. Tenant    **DENIKA TERRY**                    Tenant #    **t0006472**

b. Owner                                          Vendor #

**2. PERSONS AUTHORIZED TO RESIDE IN THE UNIT:**

**DENIKA G. TERRY**              **MIKIYAN C. LAMBERT**

**MIKOLE SERIYAH JENKINS**



**3. UNIT ADDRESS: 3600 DATA DR 391**
**RANCHO CORDOVA, CA 95670**

**4. INITIAL LEASE TERM:** Begins 9/20/2010 and ends 8/31/2011

**5. INITIAL CONTRACT RENT:**    **$860.00**    **INITIAL TENANT RENT:**    **$0.00**

After the initial one-year Lease term, the Lease shall automatically renew as a month-to-month tenancy unless the Lease is terminated by the Owner, the Tenant, or the Housing Authority for cause in accordance with the provisions of the Lease or for convenience. Under California law, Owner must provide Tenant with 90 days prior notice of Lease termination for convenience notwithstanding the month-to-month Lease term.

The owner shall provide or pay for the utilities and appliances indicated below by "Owner". The tenant shall provide or pay for the utilities or appliances indicated below by "Tenant". Unless otherwise specified below, the owner shall pay for all utilities and appliances provided by the owner.

| Item | Paid by |
| --- | --- |
| Air Conditioning | Tenant |
| Cooking Oil/Electric | Tenant |
| Flat Fee Electric | Tenant |
| Heating - Oil/Electric | Tenant |
| Other Electric | Tenant |
| Sewer | Tenant |
| Trash Collection | Tenant |
| Water | Tenant |
| Water Heat - Natural Gas | Tenant |

_DENIKA TERRY_                (916) 904-4534        10-18-2010

DENIKA TERRY                  Telephone Number       Date

_____            _____         10/18/2010

Owner / Agent                Telephone Number       Date

From:SHRA Exec.          1 916 443 8872          09/24/201   5:53     #587 P:003/013
Case 2:15-cv-00799-KJM-DAD Document 63-2 Filed 07/21/16 Page 6 of 30
Case 2:15-cv-00799-KJM-DAD  SEALED  Document 1  Filed 04/13/15  Page 31 of 82
(Page 2 of 76)

## Housing Assistance Payments Contract (HAP Contract)
## Section 8 Tenant-Based Assistance
## Housing Choice Voucher Program

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing

OMB Approval No. 2577-0169
(exp. 09/30/2012)

### Part A of the HAP Contract: Contract Information
(To prepare the contract, fill out all contract information in Part A.)

1. **Contents of Contract**
   This HAP contract has three parts:
   Part A: Contract Information
   Part B: Body of Contract
   Part C: Tenancy Addendum.



OCT 1 9 REC'D

RECEIVED IN OWNER SERVICES
OCT 21 2010
HCV PROGRAM

2. **Tenant**

   DENIKA TERRY

3. **Contract Unit**

   3600 DATA DR 391
   RANCHO CORDOVA, CA 95670

4. **Household**
   The following persons may reside in the unit. Other persons may not be added to the household without prior written approval of the owner and the PHA.

   DENIKA G TERRY
   MIKIYAN C LAMBERT
   MIKOLE SERIYAH JENKINS

5. **Initial Lease Term**
   The initial lease term begins on (mm/dd/yyyy): 09/20/2010.
   The initial lease term ends on (mm/dd/yyyy): 08/31/2011

6. **Initial Rent to Owner**
   The initial rent to owner is: $860
   During the initial lease term, the owner may not raise the rent to owner.

7. **Initial Housing Assistance Payment**
   The HAP contract term commences on the first day of the initial lease term. At the beginning of the HAP contract term, the amount of the housing assistance payment by the PHA to the owner is $860 per month.

   The amount of the monthly housing assistance payment by the PHA to the owner is subject to change during the HAP contract term in accordance with HUD requirements.

From:SHRA Exec 1 916 443 8872 09/24/201 5:54 #587 P.004/013
Case 2:15-cv-00799-KJM-DAD SEALED Document 1 Filed 04/15 Page 32 of 82

(Page 3 of 76)

## 8. Utilities and Appliances

The owner shall provide or pay for the utilities and appliances indicated below by an "O". The tenant shall provide or pay for the utilities or appliances indicated below by a "T". Unless otherwise specified below, the owner shall pay for all utilities and appliances provided by the owner.

| Item | Provided By | |
|---|---|---|
| | Owner | Tenant |
| Heating - Oil/Electric | | T |
| Cooking Oil/Electric | | T |
| Other Electric | | T |
| Air Conditioning | | T |
| Water Heat - Natural Gas | | T |
| Water | | T |
| Sewer | | T |
| Trash Collection | | T |
| Flat Fee Electric | | T |

## Signatures

**Public Housing Agency: Sacramento Housing Authority**

*Sacramento Housing*
Print or Type Name of PHA

*Sonia Ramirez*
Signature

*Sonia Ramirez*
Print or Type Name and Title of Signatory

10 / 26 / 2010
Date (mm/dd/yyyy)

**Owner:**

_____
Print or Type Name of Owner

_____
Signature

_____
Print or Type Name and Title of Signatory

10/14/10
Date (mm/dd/yyyy)

**Mail Payments to:**

_____
Name

3600 DATA DR - OFFICE

RANCHO CORDOVA, CA 95670

Address (Street, City, State, Zip)

From:SHRA Exec    1 916 443 8872    09/24/2012 5:54    #587 P.005/013
Case 2:13-cv-00709-KJM-DAD SEALED Document 1-3-2 Filed 04/21/15 Page 8 of 30
Case 2:15-cr-00709-KJM-DAD SEALED Document 1-3 Filed 04/21/15 Page 33 of 82

| Housing Assistance Payment Contract (HAP Contract) Section 8 Tenant-Based Assistance Housing Choice Voucher Program | U.S. Department of Housing and Urban Development Office of Public and Indian Housing | OMB Approval No. 2577-0169 (exp. 09/30/2012) |
|---|---|---|

**Part B of HAP Contract: Body of Contract**

1. **Purpose**

   a. This is a HAP contract between the PHA and the owner. The HAP contract is entered to provide assistance for the family under the Section 8 voucher program (see HUD program regulations at 24 Code of Federal Regulations Part 982).

   b. The HAP contract only applies to the household and contract unit specified in Part A of the HAP contract.

   c. During the HAP contract term, the PHA will pay housing assistance payments to the owner in accordance with the HAP contract.

   d. The family will reside in the contract unit with assistance under the Section 8 voucher program. The housing assistance payments by the PHA assist the tenant to lease the contract unit from the owner for occupancy by the family.

2. **Lease of Contract Unit**

   a. The owner has leased the contract unit to the tenant for occupancy by the family with assistance under the Section 8 voucher program.

   b. The PHA has approved leasing of the unit in accordance with requirements of the Section 8 voucher program.

   c. The lease for the contract unit must include word- for-word all provisions of the tenancy addendum required by HUD (Part C of the HAP contract).

   d. The owner certifies that:

      (1) The owner and the tenant have entered into a lease of the contract unit that includes all provisions of the tenancy addendum.
      (2) The lease is in a standard form that is used in the locality by the owner and that is generally used for other unassisted tenants in the premises.
      (3) The lease is consistent with State and local law.

   e. The owner is responsible for screening the family's behavior or suitability for tenancy. The PHA is not responsible for such screening. The PHA has no liability or responsibility to the owner or other persons for the family's behavior or the family's conduct in tenancy.

3. **Maintenance, Utilities, and Other Services**

   a. The owner must maintain the contract unit and premises in accordance with the housing quality standards (HQS).

   b. The owner must provide all utilities needed to comply with the HQS.

   c. If the owner does not maintain the contract unit in accordance with the HQS, or fails to provide all utilities needed to comply with the HQS, the PHA may exercise any available remedies. PHA remedies for such breach

   include recovery of overpayments, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract. The PHA may not exercise such remedies against the owner because of an HQS breach for which the family is responsible, and that is not caused by the owner.

   d. The PHA shall not make any housing assistance payments if the contract unit does not meet the HQS, unless the owner corrects the defect within the period specified by the PHA and the PHA verifies the correction. If a defect is life threatening, the owner must correct the defect within no more than 24 hours. For other defects, the owner must correct the defect within the period specified by the PHA.

   e. The PHA may inspect the contract unit and premises at such times as the PHA determines necessary, to ensure that the unit is in accordance with the HQS.

   f. The PHA must notify the owner of any HQS defects shown by the inspection.

   g. The owner must provide all housing services as agreed to in the lease.

4. **Term of HAP Contract**

   a. **Relation to lease term.** The term of the HAP contract begins on the first day of the initial term of the lease, and terminates on the last day of the term of the lease (including the initial lease term and any extensions).

   b. **When HAP contract terminates.**

      (1) The HAP contract terminates automatically if the lease is terminated by the owner or the tenant.
      (2) The PHA may terminate program assistance for the family for any grounds authorized in accordance with HUD requirements. If the PHA terminates program assistance for the family, the HAP contract terminates automatically.
      (3) If the family moves from the contract unit, the HAP contract terminates automatically.
      (4) The HAP contract terminates automatically 180 calendar days after the last housing assistance payment to the owner.
      (5) The PHA may terminate the HAP contract if the PHA determines, in accordance with HUD requirements, that available program funding is not sufficient to support continued assistance for families in the program.
      (6) The HAP contract terminates automatically upon the death of a single member household, including single member households with a live-in-aide.

---

(7) The PHA may terminate the HAP contract if the PHA determines that the contract unit does not provide adequate space in accordance with the HQS because of an increase in family size or a change in family composition.

(8) If the family breaks up, the PHA may terminate the HAP contract, or may continue housing assistance payments on behalf of family members who remain in the contract unit.

(9) The PHA may terminate the HAP contract if the PHA determines that the unit does not meet all requirements of the HQS, or determines that the owner has otherwise breached the HAP contract.

5. **Provision and Payment for Utilities and Appliances**
   a. The lease must specify what utilities are to be provided or paid by the owner or the tenant.
   b. The lease must specify what appliances are to be provided or paid by the owner or the tenant.
   c. Part A of the HAP contract specifies what utilities and appliances are to be provided or paid by the owner or the tenant. The lease shall be consistent with the HAP contract.

6. **Rent to Owner: Reasonable Rent**
   a. During the HAP contract term, the rent to owner may at no time exceed the reasonable rent for the contract unit as most recently determined or re-determined by the PHA in accordance with HUD requirements.
   b. The PHA must determine whether the rent to owner is reasonable in comparison to rent for other comparable unassisted units. To make this determination, the PHA must consider:

      (1) The location, quality, size, unit type, and age of the contract unit; and
      (2) Any amenities, housing services, maintenance and utilities provided and paid by the owner.

   c. The PHA must re-determine the reasonable rent when required in accordance with HUD requirements. The PHA may re-determine the reasonable rent at any time.
   d. During the HAP contract term, the rent to owner may not exceed rent charged by the owner for comparable unassisted units in the premises. The owner must give the PHA any information requested by the PHA on rents charged by the owner for other units in the premises or elsewhere.

7. **PHA Payment to Owner**
   a. **When paid**
      (1) During the term of the HAP contract, the PHA must make monthly housing assistance payments to the owner on behalf of the family at the beginning of each month.
      (2) The PHA must pay housing assistance payments promptly when due to the owner.
      (3) If housing assistance payments are not paid promptly when due after the first two calendar months of the HAP contract term, the PHA shall pay the owner penalties if all of the following circumstances apply: (i) Such penalties are in accordance with generally accepted practices and law, as applicable in the local housing market, governing penalties for late payment of rent by a tenant; (ii) It is the owner's practice to charge

such penalties for assisted and unassisted tenants; and (iii) The owner also charges such penalties against the tenant for late payment of family rent to owner. However, the PHA shall not be obligated to pay any late payment penalty if HUD determines that late payment by the PHA is due to factors beyond the PHA's control. Moreover, the PHA shall not be obligated to pay any late payment penalty if housing assistance payments by the PHA are delayed or denied as a remedy for owner breach of the HAP contract (including any of the following PHA remedies: recovery of overpayments, suspension of housing assistance payments, abatement or reduction of housing assistance payments, termination of housing assistance payments and termination of the contract).

      (4) Housing assistance payments shall only be paid to the owner while the family is residing in the contract unit during the term of the HAP contract. The PHA shall not pay a housing assistance payment to the owner for any month after the month when the family moves out.

   b. **Owner compliance with HAP contract.** Unless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract.

   c. **Amount of PHA payment to owner**
      (1) The amount of the monthly PHA housing assistance payment to the owner shall be determined by the PHA in accordance with HUD requirements for a tenancy under the voucher program.
      (2) The amount of the PHA housing assistance payment is subject to change during the HAP contract term in accordance with HUD requirements. The PHA must notify the family and the owner of any changes in the amount of the housing assistance payment.
      (3) The housing assistance payment for the first month of the HAP contract term shall be pro-rated for a partial month.

   d. **Application of payment.** The monthly housing assistance payment shall be credited against the monthly rent to owner for the contract unit.

   e. **Limit of PHA responsibility.**
      (1) The PHA is only responsible for making housing assistance payments to the owner in accordance with the HAP contract and HUD requirements for a tenancy under the voucher program.
      (2) The PHA shall not pay any portion of the rent to owner in excess of the housing assistance payment. The PHA shall not pay any other claim by the owner against the family.

   f. **Overpayment to owner.** If the PHA determines that the owner is not entitled to the housing assistance payment or any part of it, the PHA, in addition to other remedies, may deduct the amount of the overpayment from any amounts due the owner (including amounts due under any other Section 8 assistance contract).

8. **Owner Certification**
   During the term of this contract, the owner certifies that:
   a. The owner is maintaining the contract unit and premises in accordance with the HQS.

From:SHRA Exec                    1 916 443 8872          09/24/201? ?5:54    #587 P.007/013
Case 2:15-cv-00799-KJM-DAD   Document 63-2   Filed 07/27/17   Page 10 of 30
Case 2:15-cv-00799-KJM-DAD   SEALED   Document 1   Filed 04/1?-15   Page 35 of 82

b. The contract unit is leased to the tenant. The lease includes the tenancy addendum (Part C of the HAP contract), and is in accordance with the HAP contract and program requirements. The owner has provided the lease to the PHA, including any revisions of the lease.

c. The rent to owner does not exceed rents charged by the owner for rental of comparable unassisted units in the premises.

d. Except for the rent to owner, the owner has not received and will not receive any payments or other consideration (from the family, the PHA, HUD, or any other public or private source) for rental of the contract unit during the HAP contract term.

e. The family does not own or have any interest in the contract unit.

f. To the best of the owner's knowledge, the members of the family reside in the contract unit, and the unit is the family's only residence.

g. The owner (including a principal or other interested party) is not the parent, child, grandparent, grandchild, sister, or brother of any member of the family, unless the PHA has determined (and has notified the owner and the family of such determination) that approving rental of the unit, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.

**Prohibition of Discrimination.** In accordance with applicable equal opportunity statutes, Executive Orders, and regulations:

a. The owner must not discriminate against any person because of race, color, religion, sex, national origin, age, familial status, or disability in connection with the HAP contract.

b. The owner must cooperate with the PHA and HUD in conducting equal opportunity compliance reviews and complaint investigations in connection with the HAP contract.

## 10. Owner's Breach of HAP Contract

a. Any of the following actions by the owner (including a principal or other interested party) is a breach of the HAP contract by the owner:

   (1) If the owner has violated any obligation under the HAP contract, including the owner's obligation to maintain the unit in accordance with the HQS.

   (2) If the owner has violated any obligation under any other housing assistance payments contract under Section 8.

   (3) If the owner has committed fraud, bribery or any corrupt or criminal act in connection with any Federal housing assistance program.

   (4) For projects with mortgages insured by HUD or loans made by HUD, if the owner has failed to comply with the regulations for the applicable mortgage insurance or loan program, with the mortgage or mortgage note, or with the regulatory agreement; or if the owner has committed fraud, bribery or any other corrupt or criminal act in connection with the mortgage or loan.

   (5) If the owner has engaged in any drug-related criminal activity or any violent criminal activity.

b. If the PHA determines that a breach has occurred, the PHA may exercise any of its rights and remedies under the HAP contract, or any other available rights and remedies for such breach. The PHA shall notify the owner of such determination, including a brief statement of the reasons for the determination. The notice by the PHA to the owner may require the owner to take corrective action, as verified or determined by the PHA, by a deadline prescribed in the notice.

c. The PHA's rights and remedies for owner breach of the HAP contract include recovery of overpayments, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract.

d. The PHA may seek and obtain additional relief by judicial order or action, including specific performance, other injunctive relief or order for damages.

e. Even if the family continues to live in the contract unit, the PHA may exercise any rights and remedies for owner breach of the HAP contract.

f. The PHA's exercise or non-exercise of any right or remedy for owner breach of the HAP contract is not a waiver of the right to exercise that or any other right or remedy at any time.

## 11. PHA and HUD Access to Premises and Owner's Records

a. The owner must provide any information pertinent to the HAP contract that the PHA or HUD may reasonably require.

b. The PHA, HUD and the Comptroller General of the United States shall have full and free access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract, including the right to examine or audit the records and to make copies.

c. The owner must grant such access to computerized or other electronic records, and to any computers, equipment or facilities containing such records, and must provide any information or assistance needed to access the records.

## 12. Exclusion of Third Party Rights

a. The family is not a party to or third party beneficiary of Part B of the HAP contract. The family may not enforce any provision of Part B, and may not exercise any right or remedy against the owner or PHA under Part B.

b. The tenant or the PHA may enforce the tenancy addendum (Part C of the HAP contract) against the owner, and may exercise any right or remedy against the owner under the tenancy addendum.

c. The PHA does not assume any responsibility for injury to, or any liability to, any person injured as a result of the owner's action or failure to act in connection with management of the contract unit or the premises or with implementation of the HAP contract, or as a result of any other action or failure to act by the owner.

d. The owner is not the agent of the PHA, and the HAP contract does not create or affect any relationship between the PHA and any lender to the owner or any suppliers, employees, contractors or subcontractors used by the owner in connection with management of the contract unit or the premises or with implementation of the HAP contract.

## 13. Conflict of Interest

a. "Covered individual" means a person or entity who is a member of any of the following classes:

  (1) Any present or former member or officer of the PHA (except a PHA commissioner who is a participant in the program);

  (2) Any employee of the PHA, or any contractor, sub-contractor or agent of the PHA, who formulates policy or who influences decisions with respect to the program;

  (3) Any public official, member of a governing body, or State or local legislator, who exercises functions or responsibilities with respect to the program; or

  (4) Any member of the Congress of the United States.

b. A covered individual may not have any direct or indirect interest in the HAP contract or in any benefits or payments under the contract (including the interest of an immediate family member of such covered individual) while such person is a covered individual or during one year thereafter.

c. "Immediate family member" means the spouse, parent (including a stepparent), child (including a stepchild), grandparent, grandchild, sister or brother (including a stepsister or stepbrother) of any covered individual.

d. The owner certifies and is responsible for assuring that no person or entity has or will have a prohibited interest, at execution of the HAP contract, or at any time during the HAP contract term.

e. If a prohibited interest occurs, the owner shall promptly and fully disclose such interest to the PHA and HUD.

f. The conflict of interest prohibition under this section may be waived by the HUD field office for good cause.

g. No member of or delegate to the Congress of the United States or resident commissioner shall be admitted to any share or part of the HAP contract or to any benefits which may arise from it.

## 14. Assignment of the HAP Contract

a. The owner may not assign the HAP contract to a new owner without the prior written consent of the PHA.

b. If the owner requests PHA consent to assign the HAP contract to a new owner, the owner shall supply any information as required by the PHA pertinent to the proposed assignment.

c. The HAP contract may not be assigned to a new owner that is debarred, suspended or subject to a limited denial of participation under HUD regulations (see 24 Code of Federal Regulations Part 24).

d. The HAP contract may not be assigned to a new owner if HUD has prohibited such assignment because:

  (1) The Federal government has instituted an administrative or judicial action against the owner or proposed new owner for violation of the Fair Housing Act or other Federal equal opportunity requirements, and such action is pending; or

  (2) A court or administrative agency has determined that the owner or proposed new owner violated the Fair Housing Act or other Federal equal opportunity requirements.

e. The HAP contract may not be assigned to a new owner if the new owner (including a principal or other interested party) is the parent, child, grandparent, grandchild, sister or brother of any member of the family, unless the PHA has determined (and has notified the family of such determination) that approving the assignment, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.

f. The PHA may deny approval to assign the HAP contract if the owner or proposed new owner (including a principal or other interested party):

  (1) Has violated obligations under a housing assistance payments contract under Section 8;

  (2) Has committed fraud, bribery or any other corrupt or criminal act in connection with any Federal housing program;

  (3) Has engaged in any drug-related criminal activity or any violent criminal activity;

  (4) Has a history or practice of non-compliance with the HQS for units leased under the Section 8 tenant-based programs, or non-compliance with applicable housing standards for units leased with project-based Section 8 assistance or for units leased under any other Federal housing program;

  (5) Has a history or practice of failing to terminate tenancy of tenants assisted under any Federally assisted housing program for activity engaged in by the tenant, any member of the household, a guest or another person under the control of any member of the household that:

    (a) Threatens the right to peaceful enjoyment of the premises by other residents;

    (b) Threatens the health or safety of other residents, of employees of the PHA, or of owner employees or other persons engaged in management of the housing;

    (c) Threatens the health or safety of, or the right to peaceful enjoyment of their residents by, persons residing in the immediate vicinity of the premises; or

    (d) Is drug-related criminal activity or violent criminal activity;

  (6) Has a history or practice of renting units that fail to meet State or local housing codes; or

  (7) Has not paid State or local real estate taxes, fines or assessments.

g. The new owner must agree to be bound by and comply with the HAP contract. The agreement must be in writing, and in a form acceptable to the PHA. The new owner must give the PHA a copy of the executed agreement.

## 15. Foreclosure.
In the case of any for any foreclosure, the immediate successor in interest in the property pursuant to the foreclosure shall assume such interest subject to the lease between the prior owner and the tenant and to the HAP contract between the prior owner and the PHA for the occupied unit. This provision does affect any State or local law that provides longer time periods or other additional protections for tenants. **This provision will sunset on December 31, 2012 unless extended by law.**

**16. Written Notices.** Any notice by the PHA or the owner in connection with this contract must be in writing.

**17. Entire Agreement: Interpretation**

    a.   The HAP contract contains the entire agreement between the owner and the PHA.

    b.   The HAP contract shall be interpreted and implemented in accordance with all statutory requirements, and with all HUD requirements, including the HUD program regulations at 24 Code of Federal Regulations Part 982.

From:SHRA Exec                    1 916 443 8873   2    09/24/201  5:55   #837 P.010/013
Case 2:15-cv-00799-KJM-DAD  SEALED  Document 1  Filed 04/1  15  Page 13 of 30
Case 2:15-cv-00799-KJM-DAD  SEALED  Document 1  Filed 04/1 15  Page 38 of 82.

**Housing Assistance Payment Contract
(HAP Contract)
Section 8 Tenant-Based Assistance
Housing Choice Voucher Program**

**U.S. Department of Housing
and Urban Development**
Office of Public and Indian Housing

OMB Approval No. 2577-0169
(exp. 09/30/2012)

## Part C of HAP Contract: Tenancy Addendum

**1.   Section 8 Voucher Program**

   a.  The owner is leasing the contract unit to the tenant for occupancy by the tenant's family with assistance for a tenancy under the Section 8 housing choice voucher program (voucher program) of the United States Department of Housing and Urban Development (HUD).

   b.  The owner has entered into a Housing Assistance Payments Contract (HAP contract) with the PHA under the voucher program. Under the HAP contract, the PHA will make housing assistance payments to the owner to assist the tenant in leasing the unit from the owner.

**2.   Lease**

   a.  The owner has given the PHA a copy of the lease, including any revisions agreed by the owner and the tenant. The owner certifies that the terms of the lease are in accordance with all provisions of the HAP contract and that the lease includes the tenancy addendum.

   b.  The tenant shall have the right to enforce the tenancy addendum against the owner. If there is any conflict between the tenancy addendum and any other provisions of the lease, the language of the tenancy addendum shall control.

**3.   Use of Contract Unit**

   a.  During the lease term, the family will reside in the contract unit with assistance under the voucher program.

   b.  The composition of the household must be approved by the PHA. The family must promptly inform the PHA of the birth, adoption or court-awarded custody of a child. Other persons may not be added to the household without prior written approval of the owner and the PHA.

   c.  The contract unit may only be used for residence by the PHA-approved household members. The unit must be the family's only residence. Members of the household may engage in legal profit-making activities incidental to primary use of the unit for residence by members of the family.

   d.  The tenant may not sublease or let the unit.

   e.  The tenant may not assign the lease or transfer the unit.

**4.   Rent to Owner**

   a.  The initial rent to owner may not exceed the amount approved by the PHA in accordance with HUD requirements.

   b.  Changes in the rent to owner shall be determined by the provisions of the lease. However, the owner may not raise the rent during the initial term of the lease.

   c.  During the term of the lease (including the initial term of the lease and any extension term), the rent to owner may at no time exceed:

     (1)  The reasonable rent for the unit as most recently determined or re-determined by the PHA in accordance with HUD requirements, or

     (2)  Rent charged by the owner for comparable unassisted units in the premises.

**5.   Family Payment to Owner**

   a.  The family is responsible for paying the owner any portion of the rent to owner that is not covered by the PHA housing assistance payment.

   b.  Each month, the PHA will make a housing assistance payment to the owner on behalf of the family in accordance with the HAP contract. The amount of the monthly housing assistance payment will be determined by the PHA in accordance with HUD requirements for a tenancy under the Section 8 voucher program.

   c.  The monthly housing assistance payment shall be credited against the monthly rent to owner for the contract unit.

   d.  The tenant is not responsible for paying the portion of rent to owner covered by the PHA housing assistance payment under the HAP contract between the owner and the PHA. A PHA failure to pay the housing assistance payment to the owner is not a violation of the lease. The owner may not terminate the tenancy for nonpayment of the PHA housing assistance payment.

   e.  The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to owner. Rent to owner includes all housing services, maintenance, utilities and appliances to be provided and paid by the owner in accordance with the lease.

   f.  The owner must immediately return any excess rent payment to the tenant.

**6.   Other Fees and Charges**

   a.  Rent to owner does not include cost of any meals or supportive services or furniture which may be provided by the owner.

   b.  The owner may not require the tenant or family members to pay charges for any meals or supportive services or furniture which may be provided by the owner. Nonpayment of any such charges is not grounds for termination of tenancy.

   c.  The owner may not charge the tenant extra amounts for items customarily included in rent to owner in the locality, or provided at no additional cost to unsubsidized tenants in the premises.

**7.   Maintenance, Utilities, and Other Services**

   a.  **Maintenance**

     (1)  The owner must maintain the unit and premises in accordance with the HQS.

     (2)  Maintenance and replacement (including redecoration) must be in accordance with the standard practice for the building concerned as established by the owner.

b. **Utilities and appliances**
(1) The owner must provide all utilities needed to comply with the HQS.
(2) The owner is not responsible for a breach of the HQS caused by the tenant's failure to:
  (a) Pay for any utilities that are to be paid by the tenant.
  (b) Provide and maintain any appliances that are to be provided by the tenant.

c. **Family damage.** The owner is not responsible for a breach of the HQS because of damages beyond normal wear and tear caused by any member of the household or by a guest.

d. **Housing services.** The owner must provide all housing services as agreed to in the lease.

8. **Termination of Tenancy by Owner**
a. **Requirements.** The owner may only terminate the tenancy in accordance with the lease and HUD requirements.
b. **Grounds.** During the term of the lease (the initial term of the lease or any extension term), the owner may only terminate the tenancy because of:
(1) Serious or repeated violation of the lease;
(2) Violation of Federal, State, or local law that imposes obligations on the tenant in connection with the occupancy or use of the unit and the premises;
(3) Criminal activity or alcohol abuse (as provided in paragraph c); or
(4) Other good cause (as provided in paragraph d).

c. **Criminal activity or alcohol abuse.**
(1) The owner may terminate the tenancy during the term of the lease if any member of the household, a guest or another person under a resident's control commits any of the following types of criminal activity:
  (a) Any criminal activity that threatens the health or safety of, or the right to peaceful enjoyment of the premises by, other residents (including property management staff residing on the premises);
  (b) Any criminal activity that threatens the health or safety of, or the right to peaceful enjoyment of their residences by, persons residing in the immediate vicinity of the premises;
  (c) Any violent criminal activity on or near the premises; or
  (d) Any drug-related criminal activity on or near the premises.

(2) The owner may terminate the tenancy during the term of the lease if any member of the household is:
  (a) Fleeing to avoid prosecution, or custody or confinement after conviction, for a crime, or attempt to commit a crime, that is a felony under the laws of the place from which the individual flees, or that, in the case of the State of New Jersey, is a high misdemeanor; or
  (b) Violating a condition of probation or parole under Federal or State law.

(3) The owner may terminate the tenancy for criminal activity by a household member in accordance with this section if the owner determines that the household member has committed the criminal activity, regardless of whether the household member has been arrested or convicted for such activity.
(4) The owner may terminate the tenancy during the term of the lease if any member of the household has engaged in abuse of alcohol that threatens the health, safety or right to peaceful enjoyment of the premises by other residents.

d. **Other good cause for termination of tenancy**
(1) During the initial lease term, other good cause for termination of tenancy must be something the family did or failed to do.
(2) During the initial lease term or during any extension term, other good cause may include:
  (a) Disturbance of neighbors,
  (b) Destruction of property, or
  (c) Living or housekeeping habits that cause damage to the unit or premises.
(3) After the initial lease term, such good cause may include:
  (a) The tenant's failure to accept the owner's offer of a new lease or revision;
  (b) The owner's desire to use the unit for personal or family use or for a purpose other than use as a residential rental unit; or
  (c) A business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, the owner's desire to rent the unit for a higher rent).
(4) The examples of other good cause in this paragraph do not preempt any State or local laws to the contrary.
(5) In the case of an owner who is an immediate successor in interest pursuant to foreclosure during the term of the lease, requiring the tenant to vacate the property prior to sale shall not constitute other good cause, except that the owner may terminate the tenancy effective on the date of transfer of the unit to the owner if the owner: (a) will occupy the unit as a primary residence; and (b) has provided the tenant a notice to vacate at least 90 days before the effective date of such notice. This provision shall not affect any State or local law that provides for longer time periods or additional protections for tenants. **This provision will sunset on December 31, 2012 unless extended by law.**

e. **Protections for Victims of Abuse.**
(1) An incident or incidents of actual or threatened domestic violence, dating violence, or stalking will not be construed as serious or repeated violations of the lease or other "good cause" for termination of the assistance, tenancy, or occupancy rights of such a victim.
(2) Criminal activity directly relating to abuse, engaged in by a member of a tenant's household or any guest or other person under the tenant's control, shall not be cause for termination of assistance, tenancy, or occupancy rights if the tenant or an immediate member of the tenant's family is the victim or threatened victim of domestic violence, dating violence, or stalking.

From:SHRA Exec                    1 916 443 8872           09/24/201    15:56    #587 P.012/013
Case 2:15-cv-00799-KJM-DAD    Document 63-2    Filed 07/21/17    Page 15 of 30
Case 2:15-cv-00799-KJM-DAD    SEALED    Document 1    Filed 04/  15    Page 40 of 82

(3) Notwithstanding any restrictions on admission, occupancy, or terminations of occupancy or assistance, or any Federal, State or local law to the contrary, a PHA, owner or manager may "bifurcate" a lease, or otherwise remove a household member from a lease, without regard to whether a household member is a signatory to the lease, in order to evict, remove, terminate occupancy rights, or terminate assistance to any individual who is a tenant or lawful occupant and who engages in criminal acts of physical violence against family members or others. This action may be taken without evicting, removing, terminating assistance to, or otherwise penalizing the victim of the violence who is also a tenant or lawful occupant. Such eviction, removal, termination of occupancy rights, or termination of assistance shall be effected in accordance with the procedures prescribed by Federal, State, and local law for the termination of leases or assistance under the housing choice voucher program.

(4) Nothing in this section may be construed to limit the authority of a public housing agency, owner, or manager, when notified, to honor court orders addressing rights of access or control of the property, including civil protection orders issued to protect the victim and issued to address the distribution or possession of property among the household members in cases where a family breaks up.

(5) Nothing in this section limits any otherwise available authority of an owner or manager to evict or the public housing agency to terminate assistance to a tenant for any violation of a lease not premised on the act or acts of violence in question against the tenant or a member of the tenant's household, provided that the owner, manager, or public housing agency does not subject an individual who is or has been a victim of domestic violence, dating violence, or stalking to a more demanding standard than other tenants in determining whether to evict or terminate.

(6) Nothing in this section may be construed to limit the authority of an owner or manager to evict, or the public housing agency to terminate assistance, to any tenant if the owner, manager, or public housing agency can demonstrate an actual and imminent threat to other tenants or those employed at or providing service to the property if the tenant is not evicted or terminated from assistance.

(7) Nothing in this section shall be construed to supersede any provision of any Federal, State, or local law that provides greater protection than this section for victims of domestic violence, dating violence, or stalking.

f.  **Eviction by court action.** The owner may only evict the tenant by a court action.

g.  **Owner notice of grounds**

(1) At or before the beginning of a court action to evict the tenant, the owner must give the tenant a notice that specifies the grounds for termination of tenancy. The notice may be included in or combined with any owner eviction notice.

(2) The owner must give the PHA a copy of any owner eviction notice at the same time the owner notifies the tenant.

(3) Eviction notice means a notice to vacate, or a complaint or other initial pleading used to begin an eviction action under State or local law.

## 9.  Lease: Relation to HAP Contract
If the HAP contract terminates for any reason, the lease terminates automatically.

## 10. PHA Termination of Assistance
The PHA may terminate program assistance for the family for any grounds authorized in accordance with HUD requirements. If the PHA terminates program assistance for the family, the lease terminates automatically.

## 11. Family Move Out
The tenant must notify the PHA and the owner before the family moves out of the unit.

## 12. Security Deposit

a.  The owner may collect a security deposit from the tenant. (However, the PHA may prohibit the owner from collecting a security deposit in excess of private market practice, or in excess of amounts charged by the owner to unassisted tenants. Any such PHA-required restriction must be specified in the HAP contract.)

b.  When the family moves out of the contract unit, the owner, subject to State and local law, may use the security deposit, including any interest on the deposit, as reimbursement for any unpaid rent payable by the tenant, any damages to the unit or any other amounts that the tenant owes under the lease.

c.  The owner must give the tenant a list of all items charged against the security deposit, and the amount of each item. After deducting the amount, if any, used to reimburse the owner, the owner must promptly refund the full amount of the unused balance to the tenant.

d.  If the security deposit is not sufficient to cover amounts the tenant owes under the lease, the owner may collect the balance from the tenant.

## 13. Prohibition of Discrimination
In accordance with applicable equal opportunity statutes, Executive Orders, and regulations, the owner must not discriminate against any person because of race, color, religion, sex, national origin, age, familial status or disability in connection with the lease.

## 14. Conflict with Other Provisions of Lease

a. The terms of the tenancy addendum are prescribed by HUD in accordance with Federal law and regulation, as a condition for Federal assistance to the tenant and tenant's family under the Section 8 voucher program.

b. In case of any conflict between the provisions of the tenancy addendum as required by HUD, and any other provisions of the lease or any other agreement between the owner and the tenant, the requirements of the HUD-required tenancy addendum shall control.

## 15. Changes in Lease or Rent

a. The tenant and the owner may not make any change in the tenancy addendum. However, if the tenant and the owner agree to any other changes in the lease, such changes must be in writing, and the owner must immediately give the PHA a copy of such changes. The lease, including any changes, must be in accordance with the requirements of the tenancy addendum.

b. In the following cases, tenant-based assistance shall not be continued unless the PHA has approved a new tenancy in accordance with program requirements and has executed a new HAP contract with the owner:

(1) If there are any changes in lease requirements governing tenant or owner responsibilities for utilities or appliances;

(2) If there are any changes in lease provisions governing the term of the lease;

(3) If the family moves to a new unit, even if the unit is in the same building or complex.

c. PHA approval of the tenancy, and execution of a new HAP contract, are not required for agreed changes in the lease other than as specified in paragraph b.

d. The owner must notify the PHA of any changes in the amount of the rent to owner at least sixty days before any such changes go into effect, and the amount of the rent to owner following any such agreed change may not exceed the reasonable rent for the unit as most recently determined or redetermined by the PHA in accordance with HUD requirements.

## 16. Notices

Any notice under the lease by the tenant to the owner or by the owner to the tenant must be in writing.

## 17. Definitions

**Contract unit.** The housing unit rented by the tenant with assistance under the program.

**Family.** The persons who may reside in the unit with assistance under the program.

**HAP contract.** The housing assistance payments contract between the PHA and the owner. The PHA pays housing assistance payments to the owner in accordance with the HAP contract.

**Household.** The persons who may reside in the contract unit. The household consists of the family and any PHA-approved live-in aide. (A live-in aide is a person who resides in the unit to provide necessary supportive services for a member of the family who is a person with disabilities.)

**Housing quality standards (HQS).** The HUD minimum quality standards for housing assisted under the Section 8 tenant-based programs.

**HUD.** The U.S. Department of Housing and Urban Development.

**HUD requirements.** HUD requirements for the Section 8 program. HUD requirements are issued by HUD headquarters, as regulations, Federal Register notices or other binding program directives.

**Lease.** The written agreement between the owner and the tenant for the lease of the contract unit to the tenant. The lease includes the tenancy addendum prescribed by HUD.

**PHA.** Public Housing Agency.

**Premises.** The building or complex in which the contract unit is located, including common areas and grounds.

**Program.** The Section 8 housing choice voucher program.

**Rent to owner.** The total monthly rent payable to the owner for the contract unit. The rent to owner is the sum of the portion of rent payable by the tenant plus the PHA housing assistance payment to the owner.

**Section 8.** Section 8 of the United States Housing Act of 1937 (42 United States Code 1437f).

**Tenant.** The family member (or members) who leases the unit from the owner.

**Voucher program.** The Section 8 housing choice voucher program. Under this program, HUD provides funds to an PHA for rent subsidy on behalf of eligible families. The tenancy under the lease will be assisted with rent subsidy for a tenancy under the voucher program.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

DECLARATION OF YOON-WOO NAM IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO TAKE
ADDITIONAL DEPOSITIONS

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*** UNEDITED ROUGH DRAFT ***

UNEDITED, UNPROOFREAD, UNCERTIFIED ROUGH DRAFT

**PLEASE NOTE -**

This transcript is a realtime production. Because this instant transcript has not been edited, proofread, finalized, indexed, or certified, **THERE WILL BE DISCREPANCIES in this form and the final transcript.  There WILL ALSO BE DISCREPANCIES in page and line numbers** appearing on the instant transcript and the edited, proofread, finalized and certified transcript.

**I UNDERSTAND THAT BY ACCEPTING THIS ROUGH DRAFT, I AM ORDERING AND AGREEING TO PAY FOR THE FINAL TRANSCRIPT**.

I agree that upon receipt of the certified transcript, this instant transcript will be destroyed.

I agree not to cite from the uncertified transcript for any proceeding, and will not file any portion of this transcript with any court.

I further agree to use the instant transcript of the proceedings only within my office or for use by my experts, and not to share it with opposing counsel.

Signature: _____ Date:_____

Witness Name: _____

CitiCourt, LLC

801.532.3441

*** UNEDITED ROUGH DRAFT ***                    2

1          P R O C E E D I N G S

2

3              JODI PARKER,

4     called as a witness, being first duly sworn,

5          was examined and testified as follows:

6

7              EXAMINATION

8  BY MR. SALAZAR:

9     Q.    Would you please state your name for the

10 record, please.

11    A.    Jodi Parker.

12    Q.    Ms. Parker, by way of introduction, my

13 name is Joe Salazar, Junior.  I'm an attorney in

14 Sacramento, and I represent the defendants, multiple

15 Wasatch defendants, in this action.

16          MR. SALAZAR:  And, Mr. Levine, would you

17 like to state your appearance?

18          MR. LEVINE:  Sure.  I'm David Levine,

19 appearing remotely by phone.  I represent the

20 plaintiffs in the same action.

21    Q.    (BY MR. SALAZAR)  Ms. Parker, before we

22 get going, what we typically do is go through some of

23 the basic ground rules of a deposition so you

24 understand the process going on today.

25          First of all, you understand that even

1     A.     So it's us, Montana, Colorado -- I can't

2  remember.  There's a few other housing authorities in

3  the region.

4     Q.     Okay.  Is it state specific or does it

5  even go down to the county level?

6     A.     No.  It's state specific.

7     Q.     Now, you are currently employed with whom?

8     A.     Salt Lake County Housing Authority.

9     Q.     And how long have you been with the Salt

10  Lake County Housing Authority?

11     A.     Twenty-four and a half years.

12     Q.     And currently what position are you in?

13     A.     I'm the Section 8 manager.

14     Q.     And can you tell me what -- what does the

15  Section 8 manager do?

16     A.     So I ensure that we're spending all of our

17  funds, I make sure that we're incorporating all the

18  new rules and regulations into the program, I oversee

19  a staff of 15, I update our administrative plan,

20  which guides -- so when HUD gives us the flexibility

21  on running our program, that dictates what those

22  flexibilities are.

23     Q.     Okay.  And with respect to your staff of

24  15, are these people who are people in the field

25  working with the various properties or are you

*** UNEDITED ROUGH DRAFT ***

1    correct?

2         A.    Yes.

3         Q.    So, for example, what a reasonable rent

4    might be in Manhattan would probably differ than what

5    the reasonable rent to owner would be here in Salt

6    Lake?

7         A.    Yes.

8         Q.    Okay.  I guess what I'm getting around to

9    is that the market force is figured differently

10   locality by locality?

11        A.    Yes.

12        Q.    And under the head rate -- excuse me, the

13   HUD regulations there's also variability based upon

14   locality as what particular amenities are provided in

15   a contract unit.  Is that also true?  Let me give you

16   a for example.

17              In certain localities perhaps a stove is

18   included, at other localities perhaps a stove is not

19   included.  Is that your understanding that there's

20   that flexibility within the HUD regulations according

21   to what the locality provides?

22        A.    Yes.

23        Q.    And I use stove just as an example.  I'm

24   sure there are other variabilities as well.

25              And when you're doing a rent to owner

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# EXHIBIT 3

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4812-2795-3995.1                                3                      2:15-cv-00799-KJM-DB

DECLARATION OF YOON-WOO NAM IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO TAKE
ADDITIONAL DEPOSITIONS

Andrew Wolff, Esq. (SBN 195092)
David Lavine, Esq. (SBN 166744)
LAW OFFICES OF ANDREW WOLFF, PC
1956 Webster Street, Ste. 275
Oakland, California 94612
T(510) 834-3300
F(510) 834-3377

Jesse Newmark, Esq. (SBN 247488)
Shira Levine, Esq. (SBN 293080)
CENTRO LEGAL DE LA RAZA
3400 E. 12th Street
Oakland, California 94601
(510) 437-1554 x115

Attorneys for Plaintiffs Denika Terry and Roy Huskey III

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. DENIKA TERRY and ROY HUSKEY III, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA, <br><br> Plaintiffs, <br><br> v. <br><br> WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC; LOGAN PARK APARTMENTS, LP, <br><br> Defendants. | **Case No.** 2:15-CV-00799 KJM DB <br><br> **PLAINTIFFS' OBJECTIONS TO DEFENDANT WASATCH ADVANTAGE GROUP, LLC'S DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE** |

Terry, et al. v. Wasatch Advantage Group, LLC., et al., 2:15-CV-00799 KJM DB
Plaintiff's Objections to Defendant's Deposition Subpoena

1

Pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure, Plaintiffs Denika

Terry, et al., hereby object to Defendant Wasatch Advantage Group, LLC's deposition subpoena

for personal appearance issued to Jessica Taylor, Housing Authority of the County of Alameda,

as follows.

**OBJECTIONS TO DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE**

(1) Plaintiffs object pursuant to Fed.R.Civ.P. 30(a)(2)(A)(i) that this deposition notice would

cause the total number of depositions taken by the noticing party to exceed ten depositions, and

the noticing party has not requested leave of court to exceed this limitation.

(2) Plaintiffs object that this deposition notice was not timely served to Plaintiffs' counsel.

(3) Plaintiffs object that the deposition, as noticed, creates an undue burden for Plaintiffs

inasmuch as the noticing party's counsel has refused, after timely request by Plaintiffs, to provide

copies of exhibits planned to be entered during deposition at least thirty minutes prior to the start

of each deposition, to aid counsel attending the depositions by remote connection.

(4) Plaintiffs object that the deposition, as noticed, creates an undue burden for Plaintiffs

inasmuch as the noticing party's counsel has refused, after timely request by Plaintiffs, to

commence the depositions one hour later to account for the time zone difference between the

deposition location and the location of Plaintiff's counsel attending the depositions by remote

connection.

Dated: July 14, 2017                    LAW OFFICES OF ANDREW WOLFF, P.C.

David Lavine, Esq.
Attorney for Plaintiffs Denika Terry
and Roy Huskey III

Terry, et al. v. Wasatch Advantage Group, LLC., et al., 2:15-CV-00799 KJM DB
Plaintiff's Objections to Defendant's Deposition Subpoena

2

**PROOF OF SERVICE**

I am employed in the County of Alameda, State of California. I am over the age of 18 and not a party to the within action. My business address is 1956 Webster Street, Ste. 275, Oakland, CA 94612. I served the following documents:

**PLAINTIFFS' OBJECTIONS TO DEFENDANT WASATCH ADVANTAGE GROUP, LLC'S DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE**

on the following interested parties in this action:

[  ] (BY FACSIMILE) The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2008 (e) (4), I caused the machine to print a record of the transmission.

[  ] (BY PERSONAL SERVICE) I delivered such envelope to an authorized courier or driver authorized by the express service carrier to receive documents in an envelope or package designated by the express service carrier with delivery fees provided for.

[ X ] (FEDERAL) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

[ X ] (BY MAIL, 1013A, 2015.5 C.C.P), the original thereof enclosed in sealed envelopes addressed as follows:

Joseph Salazar, Esq.
Yoon-Woo Nam, Esq.
Lewis Brisbois Bisgaard & Smith
2020 West El Camino Ave, Ste. 700
Sacramento, CA 95833

Phillip A. Talbert, Esq.
Vincente A. Tennerelli, Esq.
United States Attorney's Office
2500 Tulare Street, Ste. 4401
Fresno, CA 39721

Jessica Taylor
Housing Authority of the County of Alameda
22941 Atherton Street
Hayward, CA 94541

[ X ] I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, this document will be deposited with the US Postal Service on this date with postage thereon fully prepaid at Oakland, California in the

Terry, et al., v. Wasatch, et al. 2:15-cv-00799-KJM-AC
Proof of Service

1

ordinary course of business. I am aware that service is presumed invalid it postal cancellation date or postage meter date is more than one day after of deposit for mailing in the affidavit.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct. Executed on July 14, 2017, at Oakland, California.

Jesse Gentilin

Brenda Falcon Ramos

1  Andrew Wolff, Esq. (SBN 195092)
   David Lavine, Esq. (SBN 166744)
2  LAW OFFICES OF ANDREW WOLFF, PC
   1956 Webster Street, Ste. 275
3  Oakland, California  94612
   T(510) 834-3300
4  F(510) 834-3377

5  Jesse Newmark, Esq. (SBN 247488)
   Shira Levine, Esq. (SBN 293080)
6  CENTRO LEGAL DE LA RAZA
   3400 E. 12th Street
7  Oakland, California 94601
   (510) 437-1554 x115

8
   Attorneys for Plaintiffs Denika Terry and Roy Huskey III
9

10

                    **UNITED STATES DISTRICT COURT**
11
        **EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**
12

13

14 | UNITED STATES OF AMERICA, ex          **Case No.**  2:15-CV-00799 KJM DB
   | rel. DENIKA TERRY and ROY
15 | HUSKEY III, and each of them for       **PLAINTIFFS' OBJECTIONS TO**
   | themselves individually, and for all other  **DEFENDANT WASATCH ADVANTAGE**
16 | persons similarly situated and on behalf   **GROUP, LLC'S DEPOSITION SUBPOENA**
   | of the UNITED STATES OF              **FOR PERSONAL APPEARANCE**
17 | AMERICA,

18
   |            Plaintiffs,
19
   | v.
20
21 | WASATCH ADVANTAGE GROUP,
   | LLC, WASATCH PROPERTY
22 | MANAGEMENT, INC., WASATCH
   | POOL HOLDINGS, LLC,
23 | CHESAPEAKE COMMONS
   | HOLDINGS, LLC, LOGAN PARK
24 | APARTMENTS, LLC; LOGAN PARK
   | APARTMENTS, LP,
25
26 |            Defendants.

27

28

Terry, et al. v. Wasatch Advantage Group, LLC., et al., 2:15-CV-00799 KJM DB
Plaintiff's Objections to Defendant's Deposition Subpoena

1

Pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure, Plaintiffs Denika Terry, et al., hereby object to Defendant Wasatch Advantage Group, LLC's deposition subpoena for personal appearance issued to Jessica Taylor, Housing Authority of the County of Alameda, as follows.

**OBJECTIONS TO DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE**

(1) Plaintiffs object pursuant to Fed.R.Civ.P. 30(a)(2)(A)(i) that this deposition notice would cause the total number of depositions taken by the noticing party to exceed ten depositions, and the noticing party has not requested leave of court to exceed this limitation.

(2) Plaintiffs object that this deposition notice was not timely served to Plaintiffs' counsel.

(3) Plaintiffs object that the deposition, as noticed, creates an undue burden for Plaintiffs inasmuch as the noticing party's counsel has refused, after timely request by Plaintiffs, to provide copies of exhibits planned to be entered during deposition at least thirty minutes prior to the start of each deposition, to aid counsel attending the depositions by remote connection.

(4)  Plaintiffs object that the deposition, as noticed, creates an undue burden for Plaintiffs inasmuch as the noticing party's counsel has refused, after timely request by Plaintiffs, to commence the depositions one hour later to account for the time zone difference between the deposition location and the location of Plaintiff's counsel attending the depositions by remote connection.

Dated: July 14, 2017

LAW OFFICES OF ANDREW WOLFF, P.C.

David Lavine, Esq.
Attorney for Plaintiffs Denika Terry
and Roy Huskey III

## PROOF OF SERVICE

I am employed in the County of Alameda, State of California. I am over the age of 18 and not a party to the within action. My business address is 1956 Webster Street, Ste. 275, Oakland, CA 94612. I served the following documents:

**PLAINTIFFS' OBJECTIONS TO DEFENDANT WASATCH ADVANTAGE GROUP, LLC'S DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE**

on the following interested parties in this action:

[ ] (BY FACSIMILE) The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2008 (e) (4), I caused the machine to print a record of the transmission.

[ ] (BY PERSONAL SERVICE) I delivered such envelope to an authorized courier or driver authorized by the express service carrier to receive documents in an envelope or package designated by the express service carrier with delivery fees provided for.

[ X ] (FEDERAL) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

[ X ] (BY MAIL, 1013A, 2015.5 C.C.P), the original thereof enclosed in sealed envelopes addressed as follows:

Joseph Salazar, Esq.                    Phillip A. Talbert, Esq.
Yoon-Woo Nam, Esq.                   Vincente A. Tennerelli, Esq.
Lewis Brisbois Bisgaard & Smith    United States Attorney's Office
2020 West El Camino Ave, Ste. 700  2500 Tulare Street, Ste. 4401
Sacramento, CA 95833                 Fresno, CA 39721

Jessica Taylor
Housing Authority of the County of Alameda
22941 Atherton Street
Hayward, CA 94541

[ X ] I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, this document will be deposited with the US Postal Service on this date with postage thereon fully prepaid at Oakland, California in the

1  ordinary course of business. I am aware that service is presumed invalid it postal cancellation

2  date or postage meter date is more than one day after of deposit for mailing in the affidavit.

3      I declare under penalty of perjury under the laws of the State of California the

4  foregoing is true and correct.  Executed on July 14, 2017, at Oakland, California.

Jesse Gentilin

Brenda Falcon Ramos