LEWIS BRISBOIS BISGAARD & SMITH LLP
JOSEPH A. SALAZAR JR., SB# 169551
  E-Mail: Joe.Salazar@lewisbrisbois.com
YOON-WOO NAM, SB# 284644
  E-Mail: Yoon-Woo.Nam@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
Sacramento, California 95833
Telephone: 916.564.5400
Facsimile: 916.564.5444

Attorneys for Wasatch Advantage Group, LLC; Wasatch Property Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC; Logan Park Apartments, LLC; Logan Park Apartments, LP

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. DENIKA TERRY and ROY HUSKEY III, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA,<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC; LOGAN PARK APARTMENTS, LP,<br><br>Defendants. | CASE NO. 2:15-cv-00799-KJM-DB<br><br>**AFFIDAVIT OF YOON-WOO NAM RE JOINT STATEMENT RE DISCOVERY DISAGREEMENT**<br><br>Judge:   Hon. Deborah Barnes<br>Date:    August 11, 2017<br>Time:    10:00 a.m.<br>Crtrm.:   27, 8th Floor<br><br>Hon. Kimberly J. Mueller<br><br>Trial Date:   None Set |

### AFFIDAVIT OF YOON-WOO NAM

I, Yoon-Woo Nam, declare as follows:

1. I am an attorney duly admitted to practice in all of the courts of the State of California and the United States District Court, Eastern District of California and I am an associate

1  with Lewis Brisbois Bisgaard & Smith LLP, attorneys of record for Wasatch Advantage Group,
2  LLC; Wasatch Property Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake Commons
3  Holdings, LLC; Logan Park Apartments, LLC; Logan Park Apartments, LP ("Defendants")
4  herein. The facts set forth herein are of my own personal knowledge, and if sworn I could and
5  would competently testify thereto.

6    2.    I conferred with counsel for Plaintiffs pursuant to Local Rule 251 (b) and exhausted
7  meet and confer efforts before filing this affidavit, pursuant to Local Rule 251 (b) and the
8  Honorable Kimberly J. Mueller's Standing Order.

9    3.    **DETAILS OF CONFERENCES**

10    After numerous attempts and in a good faith effort, I was unable to secure the cooperation
11  of counsel for Plaintiffs DENIKA TERRY et al. ("Plaintiffs") in the preparation and execution of
12  the required joint statement.

13    On June 22, 2017, I sent notice to David Lavine, counsel for Plaintiffs, of the need to take
14  the depositions of public housing agencies ("PHAs") prior to the class certification hearing. On
15  June 27, 2017, Mr. Lavine and I met and conferred over the telephone because he disputed
16  Defendants' need for the PHA depositions prior the class certification hearing. Mr. Lavine and I
17  continued to meet and confer over e-mail on June 28th, June 29th and June 30th, ultimately
18  deciding that the Court's guidance would be needed to resolve the discovery dispute.

19    After an informal letter brief filed by the parties and the subsequent hearing date was
20  vacated by the Court, the Mr. Lavine and I continued to meet and confer by e-mail to resolve the
21  dispute. These e-mails were exchanged on July 11th, July 12th, July 13th and July 14th. The
22  parties again concluded that the Court's guidance was necessary and attempted to file a Joint
23  Statement re Discovery Dispute and Defendants filed a Motion for Leave to Take Additional
24  Depositions on July 14th. However, the Court was not available for the corresponding hearing
25  date and after speaking with the court clerk, I decided it would be best to re-file a revised Joint
26  Statement re Discovery Dispute and Defendants' motion for a July 28, 2017 hearing.

27    On July 17, 2017, I sent an e-mail request to Mr. Lavine for Plaintiffs' draft portion for the
28  revised Joint Statement by Friday July 21, 2017 for a 3:00 p.m. that day.

1    On July 18, 2017, I requested Mr. Lavine to confer over the telephone following his presumed review of our Motion for Leave for Taking Additional Depositions and the testimony in the July 17th and 18th depositions of the Utah PHAs.

2    On July 19, 2017, Mr. Lavine and I conferred over the telephone in an attempt to resolve the ongoing dispute. Not having received any contribution to the revised Joint Statement, I requested Mr. Lavine to send me Plaintiffs' portion as soon as possible. Mr. Lavine stated that he needed to attend depositions during the day on July 20th and July 21th and that he would not likely be available to contribute to the Joint Statement. Mr. Lavine also requested that I use Plaintiff's portion from the prior informal letter brief for the revised Joint Statement. The parties were unable to resolve the underlying discovery dispute in this telephone conference. After the telephone call ended, I sent via e-mail to Mr. Lavine a draft of the revised Joint Statement and requested him to review it before the July 21st filing. Mr. Lavine responded via e-mail that he believed the factual dispute section I drafted was overly biased in favor of Defendants and that he did not approve of it. However, Mr. Lavine did not propose or send any revisions. I immediately sent him another e-mail requesting that he contribute to the factual dispute section.

3    On July 20, 2017, after not receiving any notice from Mr. Lavine for almost 24 hours, I again sent him an e-mail to request his revisions for the Joint Statement. In a response e-mail, Mr. Lavine reiterated his disapproval of the unchanged factual dispute section and stated that the facts must be "right out of the complaint and answer." I disputed his contention and once more requested Plaintiffs' revisions to the facts section that I had drafted for the Joint Statement.

4    On July 21, 2017, Mr. Lavine sent me an e-mail of his approval of only two (2) sentences that I drafted for the revised Joint Statement. He has provided no other contribution to or approval for the conferences or factual dispute sections of the revised Joint Statement as of the filing of this Affidavit.

5    On July 25, 2017, the Court continued the July 28, 2017 hearing date for Defendants' motion to August 11, 2017 and requested the parties to file a Joint Statement re Discovery Disagreement on or before August 4, 2017.

6    On July 25, 2017, the I spoke with Mr. Lavine once more in a telephone conference in an

attempt to resolve the ongoing discovery dispute. I offered to reduce the total number of requested depositions to 14 (from 19) and to withdraw their pending motion. The next day on July 26, 2017, Mr. Lavine sent via e-mail his counter-offer that would agree to Defendants taking of 12 total depositions if Defendants also agreed to:

1. Provide Plaintiffs with deposition exhibits in advance of the PHA depositions (which Defendants were already doing) since Plaintiffs would be attending them by telephone only;

2. Re-subpoena and re-schedule the PHA deposition start times;

3. Withdraw the Motion for Leave to Take Additional Depositions;

4. Produce Defendants' out-of-state corporate witnesses from Utah and Arizona in Sacramento for Plaintiffs' depositions; and

5. Stipulate to extend the class discovery deadline by two weeks to allow Plaintiffs to take Defendants' corporate witness depositions if Plaintiffs could not be complete them in the final three days of discovery before the cut-off.

I determined Mr. Lavine's offer to be unreasonable and immediately requested that he prepare to file a Joint Statement re Discovery Disagreement on August 3, 2017 at 5:00 p.m. I notified Mr. Lavine of this deadline on July 26th at 9:00 a.m., which was eight days' advance notice, because Mr. Lavine had alerted me previously that he would be attending a family event July 31st through August 2nd, and because neither I or my colleague Joseph Salazar expected to be available to file the joint statement on Friday August 4th during office hours.

On July 31st, Mr. Lavine authorized me via e-mail to re-use his previous joint statement argument for the latest joint statement. To avoid a similar prior outcome wherein I was compelled to file an affidavit due to Mr. Lavine's refusal to participate in the drafting of the joint statement, I requested that he meet his obligation to contribute to the Conference and Facts sections, again. However, Mr. Lavine responded in the same manner as before – that he opined the factual dispute section I drafted was slanted in favor of Defendants and that he did not approve of it.

On August 1st, I sent Mr. Lavine a draft of the joint statement to be filed on August 3rd. It

1  contained no contribution from Mr. Lavine or Plaintiffs other than their recycled argument section
2  that I had copied from a prior joint statement.
3      On August 3rd, Mr. Lavine sent an e-mail to me objecting to the draft of the joint
4  statement I had sent two days earlier. I reminded Mr. Lavine of our 5:00 p.m. filing and requested
5  that he send revisions to my draft joint statement. Mr. Lavine responded by identifying two
6  sentences from the Facts section of the prior joint statement I had drafted and stated that he
7  approved of those. He did not sent revisions or additions to my draft of the latest joint statement. I
8  responded by reducing the Facts section to the two sentences Mr. Lavine approved and sent the
9  revised draft to him.
10     In response, Mr. Lavine requested that I amend the caption for his law firm on the joint
11 statement and that I delete portions of the Conferences section that he did not agree with. I
12 requested Mr. Lavine to send the pertinent information to amend the caption for him and that he
13 suggest revisions to the Conferences section by amending my latest draft of the joint statement. He
14 refused to revise the document and reiterated his disapproval of the joint statement in its current
15 form. I responded by reminding him of the 5:00 p.m. filing time.
16     Less than an hour from the filing time, Mr. Lavine sent revisions for the Conferences
17 section and we successfully exchanged versions and appeared to be working towards a final joint
18 statement. However, Mr. Lavine insisted on a final change in the Conferences section that would
19 have inaccurately quoted the factual content of an e-mail he had written to me a week earlier.
20 Upon learning of my refusal to re-characterize this nearly verbatim fact, Mr. Lavine refused to
21 further cooperate on the joint statement. He stated that I should file an affidavit in lieu and voiced
22 his complaint to the 5:00 p.m. filing time. I offered to extend the filing time but Mr. Lavine
23 declined and instead demanded that I insert a three sentence position statement he wrote on behalf
24 of Plaintiffs for this Affidavit. I declined this demand.
25     I have concluded that Mr. Lavine's lack of cooperation was not in good faith and
26 insufficient in the preparation and execution of the Joint Statement re Discovery Dispute, and I
27 have filed this Affidavit in lieu thereof pursuant to Local Rule 251 (d).
28 / / /

4. **STATEMENT OF NATURE OF ACTION AND FACTUAL DISPUTES**

Plaintiffs Denika Terry and Roy Huskey, III seek to define a class of plaintiffs that extends across four states, 16 localities and 53 former and current apartment complexes owned by Defendants. The proposed class is comprised of over 4,000 former and current Section 8 tenants going back to 2009. At issue in the case is the legality of an "Additional Services Agreement" whereby tenants may obtain additional services (washer/dryer, covered parking, etc.) in exchange for a fixed monthly price.

Plaintiffs and the putative class of plaintiffs receive or received rental assistance through the federal government's Section 8 Housing Choice Voucher Program ("Section 8 Program") at Defendants' properties. Under the Section 8 Program, the federal government assists low income tenants by paying some or all of their rent, directly to their landlords. 42 U.S.C.A. § 1437f(a); 24 C.F.R. § 982.1(a). Section 8 tenants pay 30-40% of their income towards rent including some utilities, and the government separately pays the remainder to the landlord. 42 U.S.C. § 1437f(o)(2) (3). The portion paid by the government is called a Housing Assistance Payment ("HAP"), 24 C.F.R. § 982.4(b), and is governed by what are known as HAP Contracts.

The Section 8 Program and HAP Contracts are administered and enforced by the local public housing agency in the locality ("PHA"). Under the HAP Contracts "[t]he owner may not charge the tenant extra amounts for items customarily included in rent to the owner in the locality …" Ex. A to 1st Am. Compl., HAP contract, Part C, 6.c. The local PHAs ensure that federally regulated items required to be included in the apartment are provided by the owner when determining "rent to owner" a specifically defined term in the federal regulations. 24 C.F.R. § 982.507 (a), (b)(2). Items that are often provided to the tenant as part of the HAP payment are services and utilities such as heating, cooling, water heating, electricity, water, sewer, trash collection, air conditioning, refrigerator and range/microwave. The landlord and tenant fill out the HAP Contract, advising the PHA who is financially responsible for payment of each service and utility. The PHA helps the tenant negotiate the "rent to owner" as needed. 24 C.F.R. § 982.506.

Defendants have taken six (6) PHA depositions and the deposition of Ms. Terry to date and anticipate taking two (2) more PHA depositions and the deposition of Mr. Huskey, which will

have exhausted Defendants' ten depositions under F.R.C.P. 30 by the date of the hearing on this Joint Statement. Defendants request leave from the Court take eight (8) additional depositions of PHAs prior to the class certification hearing. Based on deposition testimony of prior PHA witnesses, Defendants believe that variability in the "rent to owner" calculation takes into account specific issues in each "locality" as recognized by the regulations cited above. In other words, what item may be included in "rent to owner" in one region or locality may not be included in another, hence the reason why the specific regional housing authority depositions are needed. Defendants contend this recognized variability goes directly and explicitly to the commonality prong of the class certification analysis.

5.  **DEFENDANTS' CONTENTIONS**

Defendants Wasatch Advantage Group *et al*. ("Defendants") need to take additional depositions prior to the class certification discovery deadline on August 14, 2017. The depositions of 13 additional public housing agencies ("PHAs") are necessary to discover evidence that Defendants will use to oppose class-certification. The scope of Plaintiffs' claims which include over 4,000 putative plaintiffs who live or lived in 53 properties owned by Defendants across four states and in 17 distinct housing regions or localities compel the need for additional depositions of third-party witnesses. Because deposition testimony is the only effective method by which this discovery may be obtained, Defendants respectfully request the Court to grant leave to take additional depositions.

With the scope so framed by Plaintiffs, Defendants are entitled to depose members of the local public housing authorities ("PHA") to determine whether the use of the Additional Services Agreements are acceptable in that locality. The broad scope of discovery allows a party to obtain discovery relevant to its defense. Fed. R. Civ. P. 26(b)(1). A court may alter the limit of ten depositions taken by a party when taking into consideration the issues at stake, the party's relative access to relevant information, the importance of the discovery in resolving the issues, and where the benefit of the discovery outweighs the burden or expense. *Id*.; Fed. R. Civ. P. 30(A)(i).

If a party makes a particularized showing why additional depositions are necessary, the Court should grant leave to allow more than ten depositions under the Federal Rules of Civil

Procedure. *Couch v. Wan*, 2011 U.S. Dist. LEXIS 110342 (E.D. Cal. 2011) (citing *C & C Jewelry Mfg., Inc. v. West*, 2011 U.S. Dist. LEXIS 24706 (N.D. Cal.2011)).

The testimony Defendants will obtain from each PHA includes their individual interpretation, application and enforcement of the HAP Contracts. Under the Section 8 lease contracts "[t]he owner may not charge the tenant extra amounts for items customarily included in rent to the owner in the locality …" Ex. A to 1st Am. Compl., HAP contract, Part C, 6.c. What is and what is not included in the base rent is a question governed by the custom and practice in the particular locality and the deposition of the local PHA is the best way to develop admissible evidence on that key point.

Recently, Defendants have taken six of the proposed 16 public housing agency depositions and the testimony underscored the need for taking additional depositions to obtain discovery regarding the variability of additional services permitted outside of a HAP Contract. For instance on July 17, 2017, Jodi Parker of the Housing Authority of the County of Salt Lake (Utah) testified that the federal Department of Housing and Urban Development ("HUD") which oversees the national Section 8 Program allows that PHA "flexibility on running our [Section 8] program" in the region. (Rough copy of Deposition of Jodi Parker, 11: 16-22; 22:12-22). She agreed that under the HUD regulations, there is variability based upon locality as to what particular amenities and services are provided in the HAP Contract. *Id*. at 22:12-22. Defendants will utilize this testimony to oppose class certification by Plaintiffs, and Defendants should be allowed the opportunity to ask similar questions in depositions of the other PHAs to defend against Plaintiffs' class allegations. As a matter of fairness, Defendants should not be limited to only ten depositions where Plaintiffs alleged in their First Amended Complaint that Defendants violated the Section 8 Program regulations administered by 17 PHAs.

Lastly, Defendants' request to take additional depositions prior to exhaustion of the limit of ten depositions is necessary due to the impending August 14, 2017 class certification discovery deadline. Although some courts have not granted leave to expand the number of depositions until the moving party has exhausted the ten depositions, other courts – including this Court on at least one occasion – have departed from this "exhaustion rule" where the complexity of the case clearly

1  warrants more than ten depositions. See, *id*. (citing *Del Campo v. American Corrective Counseling*
2  *Servs., Inc.*, 2007 U.S. Dist. LEXIS 87150 (N.D. Cal. Nov. 6, 2007) The court stated that "[i]t
3  would be inefficient to require an additional motion for each additional deposition sought.
4  Additionally, it would be prejudicial to require Plaintiffs to choose the ten depositions to take
5  before they know whether they will be granted more." *Id*. at 17.
6  　　　Defendants should be permitted to take eight (8) additional depositions of public housing
7  agencies to adequately prepare their opposition to Plaintiffs' class certification motion, and
8  respectfully request the Court to grant leave to take these depositions. Because the class
9  certification discovery deadline of August 14, 2017 will have effectively passed by the time the
10 Court hears and rules on this continued Motion, Defendants also request the Court to re-open the
11 discovery period for the limited purpose of conducting these eight (8) PHA depositions.
12 　　　Because the class action allegations encompass a geographically expansive scope of
13 putative class members and implicate the PHAs in 17 regions or localities, and Plaintiffs have
14 stated their intention to amend the complaint to increase the geographic scope of their claims, the
15 request to take additional depositions is reasonable, necessary and in the furtherance of justice.
16 　　　I declare under penalty of perjury under the laws of the United States of America that the
17 foregoing is true and correct and that this affidavit was executed on August 4, 2017, at
18 Sacramento, California.

　　　　　　　　　　　　　　　　　　　　　　/s/ Yoon-Woo Nam
　　　　　　　　　　　　　　　　　　　　　　Yoon-Woo Nam

