Andrew Wolff, SBN 195092
David Lavine, SBN 166744
LAW OFFICES OF ANDREW WOLFF, PC
1956 Webster St., Suite 275
Oakland, California 94612
Tel: (510) 834-3300
Fax: (510) 834-3377
andrew@awolfflaw.com; david@awolfflaw.com

Jesse Newmark, SBN 247488
CENTRO LEGAL DE LA RAZA
3400 East 12th Street
Oakland, California 94601
Tel: (510) 437-1554 x115
Fax: (510) 437-9164
jessenewmark@centrolegal.org

Attorneys for Plaintiffs and Relators Denika Terry and Roy Huskey III

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY and ROY HUSKEY III, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA,<br><br>         Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, and DOES 1-30,<br><br>         Defendants. | Case No. 2:15 CV 07799 KJM DB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**<br><br>**CLASS ACTION**<br><br>Date:        September 22, 2017<br>Time:        10:00 a.m.<br>Judge:       Kimberly J. Mueller<br>Dept.:        Courtroom 3, 15th Floor |

## TABLE OF CONTENTS

Table of Authorities ..................................................................................................... ii

I.  INTRODUCTION ....................................................................................................1

II.  FACTUAL AND LEGAL BACKGROUND..............................................................2

    A.  The Parties.......................................................................................................2

    B.  The Section 8 Housing Program ....................................................................2

    C.  Defendants' Standard Form Contracts with Plaintiffs and the Putative Class................3

    D.  Defendants Impose Additional Charges That They Treat as Rent...................4

        1.  Defendants Treat Additional Charges as Rent in Their Standard Forms...............5

        2.  Defendants Treat Additional Charges as Rent by Using Nonpayment of Additional Charges as Grounds for Eviction ..........................................................6

        3.  While Not All Additional Charges Are Preconditions to Tenancy, All Are Treated as Rent Once the Tenancy Starts ...............................................................7

III.  BRIEF ROCEDURAL BACKGROUND.....................................................................7

IV.  ARGUMENT ............................................................................................................8

    A.  Legal Standard Governing Class Certification ...............................................8

    B.  The Requirements of Class Certification Are Satisfied ...................................9

        1.  The Proposed Class Satisfies Numerosity......................................................9

        2.  The Plaintiffs' Claims Are Typical ................................................................9

        3.  Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class ...................................................................................10

        4.  Common Questions Predominant over Individual Questions...............................11

            a.  Breach of Contract ............................................................................12

            b.  Consumers Legal Remedies Act.........................................................15

            c.  Unfair Competition Law.....................................................................16

        5.  A Class Action Is Superior to Other Litigation Methods...........................18

        6.  Conditional Certification of a Rule 23(b)(2) Class Is Proper ...............................19

V.  CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

**Federal Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 45 (2013).............................8, 12

*Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252 (N.D. Cal. 2015) .........................................15

*Brown v. Hain Celestial Grp., Inc.*, No. C 11-03082 LB, 2014 U.S. Dist.
   LEXIS 162038 (N.D. Cal. Nov. 18, 2014) ................................................13, 14

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) .....................................10

*Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB, 2014 U.S. Dist. LEXIS 81646
(N.D. Cal. June 13, 2014) ...................................................................................14

*Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011)................................12

*Farms v. Calcot, Ltd.*, No. CV-F-07-0464 LJO DLB, 2010 U.S. Dist.
   LEXIS 93548 (E.D. Cal. Aug. 23, 2010).............................................................20

*Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx),
   2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) .....................................16

*Friedman v. AARP, Inc.*, 855 F.3d 1047 (9th Cir. 2017)..................................16, 17, 18

*Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-cv-01063-KJM-CKD, 2017 U.S. Dist.
   LEXIS 57165 (E.D. Cal. Apr. 12, 2017) .............................................................19

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992).........................................10

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015), *aff'd*,
   *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ........................16

*In Re Med. Capital Secs. Litig.*, No. SAML 10-2145 DOC (RNBx), 2011 U.S. Dist.
   LEXIS 126659 (C.D. Cal. Jul. 26, 2011).............................................................14

*In re Sony Vaio Computer Notebook Trackpad Litig.*, No. AJB 09cv2109 AJB (MDD),
2013 U.S. Dist. LEXIS 194010 (S.D. Cal. Sep. 25, 2013) .............................................16

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) ...............................................10

*Leyva v. Medline Indus.*, 716 F.3d 510 (9th Cir. 2013) .....................................8, 14, 19

*Lindell v. Synthes USA*, No. 11-cv-02053-LJO-BAM, 2014 U.S. Dist. LEXIS 27706
   (E.D. Cal. Mar. 4, 2014), R&R adopted by 2014 U.S. Dist. LEXIS 62620
   (E.D. Cal. May 6, 2014)..............................................................................11, 14

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ............................................................... 19

*Menagerie Prods. v. Citysearch*, No. CV 08-4263 CAS (FMO), 2009 U.S. Dist.
   LEXIS 108768 (C.D. Cal. Nov. 9, 2009) ......................................... 14, 19

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590 (C.D. Cal. 2015) ............... 13

*Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185 (N.D. Cal. 2007) ...................... 20

*Nozzi v. Hous. Auth.*, 806 F.3d 1178 (9th Cir. 2015) ................................................. 2

*Nozzi v. Housing Auth. of L.A.*, No. CV 07-380 PA (FFMx), 2016 U.S. Dist.
   LEXIS 62996 (C.D. Cal. May 6, 2016) ................................................. 20

*O'Donovan v. Cashcall, Inc.*, 278 F.R.D. 479 (N.D. Cal. 2011) ................................. 17

*Parsons v. Ryan*, 754 F.3d 657, 676  (9th Cir. 2014) ......................................... 8

*Patel v. Trans Union, LLC*, 308 F.R.D. 292 (N.D. Cal. 2015) ................................. 12

*Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197 (E.D. Cal. 2015),
   *aff'd*, 2017 U.S. App. LEXIS 7882 (9th Cir. May 3, 2017) ...................... 11, 14, 18, 19

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807 (9th Cir. 2014) ........... 12

*Rose v. Stephens Inst.*, No. 09-cv-05966-PJH, 2016 U.S. Dist.
   LEXIS 149936 (N.D. Cal. Oct. 28, 2016) ................................................. 17

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 & n.11 (9th Cir. 2016) .................. 10, 11, 13

*Spann v. J.C. Penney Corp.*, 307 F.R.D. 508 (C.D. Cal. 2015) ................................. 16

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) ................................. 15, 16

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) ......................... 16

*Tyson Foods, Inc. v. Bouaphakeo*, _ U.S. _, 136 S. Ct. 1036, 1042 (2016) ...................... 8, 11, 12

*United States v. Baran*, No. CV 14-02639 RGK (AJWx), 2015 U.S. Dist.
   LEXIS 125190 (C.D. Cal. Aug. 28, 2015) ................................................. 2

*United States ex rel. Holmes v. Win Win Real Estate, Inc.*, No. 2:13-CV-02149-APG-GWF,
   2015 U.S. Dist. LEXIS 142532 (D. Nev. Oct. 19, 2015) ......................... 3, 12, 13

*United States ex rel. Price v. Peters*, 66 F. Supp. 3d 1141 (C.D. Ill. 2013) ...................... 12

*Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150 (9th Cir. 2016) ......................... 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). ...................... 2, 8, 9 10, 11, 20

*Wilson v. Metals USA, Inc.*, No. 2:12-CV-00568-KJM-CKD, 2016 U.S. Dist.
   LEXIS 868616 (E.D. Cal. July 1, 2016) ................................................. 8, 9, 10, 11

*Zinser v. Accuflix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ...................... 18

**Federal Statutes, Regulations, and Rules**

24 C.F.R. § 982.1 ...............................................................................................2

24 C.F.R. § 982.4 ...............................................................................................3

24 C.F.R § 982.54 ..............................................................................................2

24 C.F.R. § 982.162 .........................................................................................2, 3

24 C.F.R. § 982.305 .........................................................................................3, 4

24 C.F.R. § 982.308 ............................................................................................3

24 C.F.R. § 982.451 ..........................................................................1, 2, 3, 15, 17

24 C.F.R. § 982.508 ............................................................................................3

31 U.S.C. § 3729 ................................................................................................1

31 U.S.C. § 3730 ................................................................................................1

42 U.S.C. § 1437f ..............................................................................1, 2, 3, 15, 17

Fed. R. Civ. P. 23 ........................................................................9, 10, 11, 18, 19

Fed. R. Civ. P. 30(b)(6) .......................................................................................4

**State Cases**

*Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App. 4th 990 (2010) ........................12

*Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217 (2013)................................18

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)............................................18

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) ..............................16

*Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282 (2002) ..................16

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) ..........................................15

*Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983 (2010), *disapproved on other grounds by Raceway Ford Cases*, 2 Cal. 5th 161 (2016) ....................................15

*Prata v. Superior Court*, 91 Cal. App. 4th 1128 (2001) ................................17

*Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390 (2013)......................................16

**State Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.* ..........................................................1, 16

Cal. Bus. & Prof. Code § 17203 ............................................................................17

Cal. Civ. Code § 1750 *et seq.* ................................................................................1

Cal. Civ. Code § 1760 ...........................................................................................15

Cal. Civ. Code § 1770 ...........................................................................................15

Cal. Civ. Code § 1780 ...........................................................................................16

**Other Authorities**

Cal. Civ. Jury Instr. 303 .......................................................................................12

# I.    INTRODUCTION

This action challenges Defendants' unlawful policy of charging and collecting additional rent from tenants who receive rent subsidies under the federal Housing Choice Voucher Program, known as "Section 8." The Section 8 program prohibits property owners from charging Section 8 tenants more rent than specified in federal Housing Assistance Payments Contracts ("HAP Contracts"). 42 U.S.C. § 1437f(c); 24 C.F.R. § 982.451(b)(4)(i)–(ii). The government determines how much rent the tenants can afford and the rest is subsidized, as set forth in the HAP Contract. Owners and Section 8 tenants enter into lease agreements consistent with the HAP Contract. Defendants, however, have charged their Section 8 tenants additional rent beyond the contract rent that the government has determined they can afford. Those additional rent charges are set forth in Defendants' standard form side agreements called Additional Services Agreements.

Plaintiffs allege that, by imposing additional charges beyond the total rent Defendants are authorized to charge, Defendants have violated federal law and breached the lease agreements. Those violations give rise to the claims here: (1) breach of contract; (2) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; and (3) unlawful, fraudulent, and unfair business practices under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* Plaintiffs also allege that Defendants have violated the False Claims Act, 31 U.S.C. § 3729(a), but do not seek certification of that claim that they bring as relators on behalf of the government. *Id.*, § 3730(b)(1).

Plaintiffs seek certification of a Rule 23(b)(3) class for damages/restitution. Class certification is proper because Defendants apply common classwide policies, and the core issue in the case is whether the additional charges constitute rent. The named Plaintiffs' claims are typical of those of the proposed class, and they and their counsel will fairly and adequately protect the interests of the class. Common issues predominate over individual ones: All Section 8 tenants are governed by the same federal law; Defendants and their Section 8 tenants enter into form contracts with materially identical terms; and in those form contracts, Defendants require additional side payments from their Section 8 tenants. A class action is superior to other methods of adjudication, particularly given that the individual damages are relatively small, and putative class members are

1   low-income individuals who lack the resources to bring their own lawsuits. Courts routinely

2   certify class actions like this one involving classwide policies where the defendant breaches form

3   contracts or engages in classwide deception.

4        Plaintiffs also seek certification of a Rule 23(b)(2) class for declaratory and injunctive relief,

5   conditioned on naming a new class representative. The Court should certify a Rule 23(b)(2) class

6   because "a single injunction or declaratory judgment would provide relief to each member of the

7   class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

8                   **II.  FACTUAL AND LEGAL BACKGROUND**

9        **A.     THE PARTIES**

10       Defendants own and/or manage more than 50 apartment communities with thousands of

11  units throughout several states, with many in California. Lavine Dec., ¶¶ 10–12, Ex. L, Tanforan

12  Depo. at 28:19–25; *id.*, Ex. M, Jarvis Depo. at 21:13–29:17; *id.*, Ex. N, Fetter Depo. at 32:21–

13  34:20. Plaintiffs Roy Huskey III and Denika Terry are Section 8 tenants who lived at Defendants'

14  California properties. Huskey Dec., ¶ 3; Terry Dec., ¶ 3. More than 150 Section 8 tenants have

15  lived at the California properties during the relevant time period. Defendants have not yet

16  produced a list of potential class members, Lavine Dec., ¶ 8, but there are approximately 150

17  potential class members in the Sacramento area alone. *Id.*, Ex. O, Gamboa Depo. at 31:14–32:12.

18       **B.     THE SECTION 8 HOUSING PROGRAM**

19       The Housing Choice Voucher Program, known as "Section 8," provides low-income people

20  with subsidized housing. 42 U.S.C. § 1437f(a); *Nozzi v. Hous. Auth.*, 806 F.3d 1178, 1184 (9th

21  Cir. 2015). The Section 8 program is funded and regulated by the U.S. Department of Housing

22  and Urban Development ("HUD"), and administered by local public housing agencies pursuant to

23  HUD regulations and requirements. *Id.*; *see also* 24 C.F.R. §§ 982.1(a)(1), 982.54(a).

24       There are two agreements to establish a tenancy: (1) the HAP Contract between the owner

25  and the public housing agency; and (2) the lease agreement between the owner and the Section 8

26  tenant. The HAP contract must be on a HUD form contract. 24 C.F.R. §§ 982.162(a)(2),

27  982.451(a)(1); *United States v. Baran*, No. CV 14-02639 RGK (AJWx), 2015 U.S. Dist. LEXIS

28  125190, at *3 (C.D. Cal. Aug. 28, 2015) (the HAP Contract is "a standard and uniform contract

1  promulgated by HUD").  Both the HAP contract and the lease must include the standard form

2  Tenancy Addendum.  24 C.F.R. §§ 982.162(a)(3), 982.305(a)(3), 982.308(f).

3       Federal law limits the rent that owners can charge Section 8 tenants.  The HAP Contract

4  "shall establish the maximum monthly rent (including utilities and all maintenance and

5  management charges) which the owner is entitled to receive for each dwelling unit." 42 U.S.C. §

6  1437f(c)(1)(A).  The public housing agency first determines the reasonable rent for the unit.  24

7  C.F.R. § 982.507(a)(1).  It then calculates the tenant's share of the rent, which is between 30–40%

8  of the tenant's monthly adjusted income. 42 U.S.C. § 1437f(o)(2)(A), (o)(3); 24 C.F.R.

9  § 982.508.  The public housing agency pays the balance (the "housing assistant payment").  42

10  U.S.C. § 1437f(c)(3); 24 C.F.R. § 982.4(b).  The total rent paid by the tenant and the government

11  cannot exceed the contract rent ("rent to owner").  24 C.F.R. § 982.451(b)(3); *see also id.* §

12  982.451(b)(4)(i) (tenant's share cannot exceed "rent to owner" minus agency's payment).

13       The owner is prohibited from imposing or collecting additional rent from the tenant beyond

14  the contract rent: "The owner may not demand or accept any rent payment from the tenant in

15  excess of this maximum, and must immediately return any excess rent payment to the tenant." *Id.*

16  § 982.451(b)(4)(ii).  As HUD explains, "[c]ollecting extra or 'side' payments in excess of the

17  family share of rent or requiring the family to perform extraordinary services in lieu of payments"

18  qualifies as fraud or abuse.  *United States ex rel. Holmes v. Win Win Real Estate, Inc.*, No. 2:13-

19  CV-02149-APG-GWF, 2015 U.S. Dist. LEXIS 142532, at *10 & n.3 (D. Nev. Oct. 19, 2015)

20  (quoting HUD, Voucher Program Guidebook: Housing Choice 22-1 (April 2001)).

21  **C.     DEFENDANTS' STANDARD FORM CONTRACTS WITH**
   **PLAINTIFFS AND THE PUTATIVE CLASS**

22
        The facts come primarily from the standard form HAP Contracts and standard forms used by

23  Defendants at all of their California properties.  Defendants use company-wide software at their

24  properties to generate identical standard forms.  Lavine Dec., Ex. L, Tanforan Depo. at 66:18–

25  67:8, 71:11–15, 223:22–224:24; *id.*, Ex. M, Jarvis Depo. at 148:2–13; *id.*, Ex. N, Fetter Depo. at

26  95:2–11.  Examples of those documents, grouped by category, are attached as exhibits to the

27  Declaration of David Lavine.  The citations below to the forms are to one or two documents in

28

each exhibit, but all documents in each exhibit are substantially identical as to all material terms.

Plaintiffs also rely on Rule 30(b)(6) deposition testimony from corporate witnesses selected by

Defendants: (1) Dave Tanforan, a regional manager, Lavine Dec., ¶ 10 & Ex. L; (2) Janae Jarvis, a

vice president, *id.*, ¶ 11 & Ex. M; and (3) Shawn Fetter, another vice president, *id.*, ¶ 12 & Ex. N.

Sylvia Gamboa, who managed several properties in Sacramento, also testified. *Id.*, ¶ 13 & Ex. O.

In accordance with the Section 8 program, Defendants and local public housing agencies have

entered into the standard form HAP Contract with Plaintiffs and hundreds of Section 8 tenants.

Lavine Dec., Ex. A at 1–12; *id.* at 1 ("Use of this HAP contract is required by HUD.").

By law, as noted, each Section 8 tenant's lease must incorporate the standard form HAP Tenancy

Addendum, which is Part C to the HAP Contract.  24 C.F.R. § 982.305(a)(3); Lavine Dec., Ex. A

at 9–12; Terry & Huskey Decs., Ex. A at 1 (top paragraph) & 9–12.

Consistent with the federal regulations prohibiting owners from charging additional rent

beyond the contract rent, the form Tenancy Addendum to the lease agreement provides:

> The owner may not charge or accept, from the family or from any other
> source, any payment for rent of the unit in addition to the rent to owner.  Rent
> to owner includes all housing services, maintenance, utilities and appliances to
> be provided and paid by the owner in accordance with the lease.

Lavine Dec., Ex. A at 9, ¶ 5(e).  The owner must pay for all utilities and appliances except those

specified in the HAP Contract and lease agreement.  *Id.* at 3, ¶ 8 & 5, ¶ 5.  The Tenancy

Addendum expressly provides Section 8 tenants "the right to enforce the tenancy addendum

against the owner."  If there is a conflict between the HUD-required Tenancy Addendum and any

other provision of the lease, the Tenancy Addendum controls.  *Id.* at 9, ¶ 2(b) & 12, ¶ 14(b).

### D.   DEFENDANTS IMPOSE ADDITIONAL CHARGES THAT THEY TREAT AS RENT

Defendants have a policy of charging and collecting additional side payments from Plaintiffs

and Section 8 tenants, and treating those additional charges as rent.  These charges are set forth in

Defendants' Additional Services Agreement (form LD 303.01), which is "part of the lease."

Lavine Dec., Ex. L, Tanforan Depo. at 65:13–66:4; *id.* at 139:11–140:2.

The Additional Services Agreements are standard form contracts that Defendants use for all

tenants.  Lavine Dec., Ex. B at 1 (form LD303.01); *id.*, Ex. L, Tanforan Depo. at 71:11–15.  The

1 | additional charges include charges for renter's insurance, in-unit washers and dryers, parking,
2 | garage rental, Rent Plus (a credit reporting service), pet rent and other pet fees, cable service, and
3 | other items. *Id.* at 1, 4, 10, 11, 14, 17. The Additional Services Agreement is for the "rental" of
4 | personal property and additional services, and "is made a part of" the lease. *Id.* at 1.

### 1. Defendants Treat Additional Charges as Rent in Their Standard Forms

Defendants have a policy of treating the additional charges as rent in their standard forms and contracts. Their form Residential Rental Agreement (LD302.01) provides for a total monthly amount due that expressly combines contract rent and additional charges. Lavine Dec., Ex. C at 1, ¶ III ("[R]ent") & 5. During all relevant times, that agreement has provided either that "[a]ll payments received for rent and additional charges shall first be applied to any past balance due and then to additional charges and then to current rent," or that "[r]ent received shall first be applied to all sums due and then to the current rent due." *Id.* at 1, ¶ III & 20, ¶ III. Confirming that policy, the corporate witnesses testified that when Section 8 tenants fail to pay additional charges, the amount due is deducted from their next monthly rental payment, and that this deduction results in a default in rent. *Id.*, Ex. L, Tanforan Depo. at 76:3–77:9, 129:4–10; *id.*, Ex. M, Jarvis Depo. at 158:2–18, 160:12–16, 162:7–17; *id.*, Ex. N, Fetter Depo. at 149:5–150:7.

Defendants' standard form Resident Ledgers and Move Out Statements accountings also show that Defendants treat contract rent and additional charges identically, combining them in the same running balance. *Lavine Dec.*, Ex. D at 1. These documents reflect that Defendants apply any payment to that balance, regardless of the nature of the charge or payment. *Id.* In other words, if a Section 8 tenant fails to pay an additional charge one month and pays the contract rent the next month, then Defendants subtract the past due additional charge from that payment and hold the tenant in default on their contract rent.

Defendants also treat additional charges as rent in numerous other standard forms:

- An initial move-in form, which totals contract rent and additional charges in **"First Month's Rent**," Lavine Dec., Ex. E at 1 (form LD101.06);

- The Renewal Notification, which provides that the contract rent and additional rental charges are part of the same total "rental rate": "When you renew your lease your new rental rate will be $ ___, this rate includes rent and any applicable service items (such as parking, renter's insurance, pet, etc.)," *id.*, Ex. G at 1 (form RS104.04);

- The Monthly Cost Breakdown, *id.*, Ex. F at 1 (form LD301.02);

- The Simplify Your Life form, which provides: "We are excited to offer you this lease at the rate of $ ___ per month, this rate includes rent and any applicable service items (such as parking, renter's insurance, pet, etc.)," *id.*, Ex. H at 1 (form RS104.02);

- The Monthly Statement of Rental Account, which totals contract rent and additional rental charges in informing Section 8 tenants when "rent will be due," and the consequences of failure to pay such rent, *id.*, Ex. F at 8; and

  - 30 or 60-Day Notices of Resident's Intent to Vacate, *id.*, Ex. I at 1 (form LD315.01).

*See also* Lavine Dec., Ex. L, Tanforan Depo. at 167:16–23, 186:8–187:9, 191:11–192:3; *id.*, Ex. M, Jarvis Depo. at 197:3–199:13, 223:8–24; Ex. O, Gamboa Depo. at 39:5–16.

Further, Defendants have a policy of deducting any unpaid additional charges from Section 8 tenants' security deposits, even though the Rental Agreements limit such deductions to defaults in "rent" and utilities. Lavine Dec., Ex. D at 11 (Move-Out Statement deducting charges for renter's insurance, Rent Plus); Ex. C at 1, ¶ V (Rental Agreement); *id.*, Ex. M, Jarvis Depo. at 166:12–16.

### 2.. Defendants Treat Additional Charges as Rent by Using Nonpayment of Additional Charges as Grounds for Eviction

Another way in which Defendants treat additional charges as rent is their policy and practice of using unpaid additional charges as grounds for terminating tenancies and evicting Section 8 tenants. The form Additional Services Agreement provided that "[a] default under this Agreement is a default under the Lease," and that defendant will terminate the tenancy for failure to pay any Monthly Fee. Lavine Dec., Ex. B at 2, ¶ 9 (form LD303.01). Corporate testimony confirmed that it is Defendants' policy to declare default of the lease if the tenant defaults on additional charges, because the Additional Services Agreement is part of the lease. Lavine Dec., Ex. M, Jarvis Depo. at 158:2–18; *id.*, Ex. N, Fetter Depo. at 136:22–137:3, 182:16–25.

Notably, Defendants may threaten Section 8 tenants with eviction for failure to pay additional charges by using standard form notices to quit. The notices declare a "breach of the lease agreement" for failure to pay additional charges, and demand that tenants comply with the lease or quit. Lavine Dec., Ex. J at 1 (form EC101.03). Defendants admitted to this policy for unpaid additional charges over $100. Lavine Dec., Ex. L, Tanforan Depo. at 76:3–78:10, 80:12–22; *id.*, Ex. M, Jarvis Depo. at 162:7–164:1, 234:24–235:7; Ex. O, Gamboa Depo. at 77:8–21.

### 3. <u>While Not All Additional Charges Are Preconditions to Tenancy, All Are Enforced as Rent Once the Tenancy Starts</u>

Some of the additional charges are preconditions of leasing an apartment. Those include renter's insurance, which was required of all tenants apart from those in low-income-designated properties. Lavine Dec., Ex. L, Tanforan Depo. at 84:15–24, 91:16–24, 109:23–110:2, 124:7–10, 129:15–130:1. 140:11–17; *id.*, Ex. M, Jarvis Depo. at 115:5–25; *id.*, Ex. N, Fetter Depo. at 126:2–15, 127:16–128:7. Under the form Residential Rental Agreement, Defendants "require[] each resident(s) to maintain Renters Insurance with a minimum [amount of] Personal Liability Coverage . . . . If at any time during the term of this lease, resident(s) is without coverage and in default of their lease, resident(s) agrees to automatically be enrolled in the 'pay along with rent' program and be charged accordingly." *Id.*, Ex. C at 3, ¶ XIII (form LD302.01); *see also* Ex. K at 1 (Applicant Consent form LC101.03); Ex. E at 1, final ¶ (initial move-in form, LD 101.06).

Other charges have been preconditions to tenancy, at least in certain times in some locations, including in-unit washer and dryers, covered parking, and cable services. Lavine Dec., Ex. L, Tanforan Depo. at 81:17–82:4, 83:25–84:2, 92:5–23, 95:23–96:8, 98:6–7, 99:1–5, 112:1–4 140:3–10 (laundry and parking); Lavine Dec., Ex. K at 1 (cable; form LC101.03).

Other charges were presented as optional. Lavine Dec., Ex. M, Jarvis Depo. at 104:17–25, 118:16–23; *id.*, Ex. N, Fetter Depo. at 119:8–20. But once a tenant elects an optional charge, Defendants have a policy of treating all additional charges as rent as explained above, including by combining contract rent and additional charges on standard forms and in accounting documents; applying rent payment from the following month to unpaid additional charges; and using unpaid additional charges as grounds for eviction. Tenants are "obliga[ted]" to pay additional services, just like the contract rent. Lavine Dec., Ex. L, Tanforan Depo. at 156:8–11.

## IV.  BRIEF PROCEDURAL BACKGROUND

Plaintiffs filed their original complaint commencing this *qui tam* and putative class action on April 14, 2015. Plaintiffs filed a First Amended Class Action Complaint on August 31, 2016, which Defendants moved to dismiss. In ruling on the motion, the Court rejected the argument that additional charges cannot constitute rent simply because the charges are set forth in side

1   agreements, reasoning that "[c]ourts consistently have held that extra charges, even when labeled

2   as additional amenities, can constitute illegal side payments." ECF No. 61 at 6:21–7:3 (collecting

3   cases). The Court then addressed Plaintiffs' arguments that the additional charges constitute rent.

4   It denied Defendants' motion in part and granted it in part with leave to amend. Plaintiffs filed a

5   Second Amended Class Action Complaint on August 4, 2017. ECF No. 66.

6       While the motion to dismiss was pending, discovery revealed that Section 8 tenants have

7   paid additional charges beyond those earlier identified. In light of the information obtained in

8   discovery, Plaintiffs have moved for leave to file the Third Amended Class Action Complaint.

9   That motion is set for the same hearing date as this motion for class certification.

10   **V.   ARGUMENT**

11   **A.   LEGAL STANDARD GOVERNING CLASS CERTIFICATION**

12       "Rule 23 permits one or more individuals to sue as 'representative parties on behalf of all

13   members' of a class if certain preconditions are met." *Tyson Foods, Inc. v. Bouaphakeo*, _ U.S. _,

14   136 S. Ct. 1036, 1042 (2016) (quoting Fed. Rule Civ. Proc. 23(a)). Plaintiffs must meet the four

15   Rule 23(a) requirements—numerosity, typicality, adequacy, and commonality—and one of the

16   Rule 23(b) requirements. *Leyva v. Medline Indus.*, 716 F.3d 510, 512 (9th Cir. 2013).

17       Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact

18   common to class members predominate over any questions affecting only individual members,

19   and that a class action is superior to other available methods for fairly and efficiently adjudicating

20   the controversy." Plaintiffs bear the burden of showing the Rule 23 requirements have been met,

21   and the Court must conduct a "'rigorous'" analysis. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,

22   568 U.S. 455, 465–66 (2013) (quoting *Wal-Mart*, 564 U.S. at 351).

23       "Merits questions may be considered to the extent—but only to the extent—that they are

24   relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

25   at 466. "Of course, this does *not* mean that the plaintiffs must show at the class certification stage

26   that they will prevail on the merits." *Parsons v. Ryan*, 754 F.3d 657, 676 n.19 (9th Cir. 2014)

27   (emphasis in original); *see also Wilson v. Metals USA, Inc.*, No. 2:12-CV-00568-KJM-CKD,

28   2016 U.S. Dist. LEXIS 86861, at *26 (E.D. Cal. July 1, 2016).

Plaintiffs also seek class certification under Rule 23(b)(2), which requires a showing that Defendants have "acted or refused to act on grounds that apply generally to the class" and that Plaintiffs are seeking "final injunctive relief or corresponding declaratory relief [that] is appropriate respecting the class as a whole." A Rule 23(b)(2) class can be certified where, as here, "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

## B.   THE REQUIREMENTS OF CLASS CERTIFICATION ARE SATISFIED

Plaintiffs seek certification of a Rule 23(b)(3) class for damages/restitution defined as:

> All persons who, in the time period starting four years prior to the date of filing this Complaint through the final resolution of this matter, (1) have been tenants at any of Defendants' California properties; (2) have participated in the "Section 8" Housing Choice Voucher Program in connection with their tenancies at the California properties; and (3) have paid additional charges set forth in Additional Services Agreements in excess of their individual portions of the contract rent set forth in the HAP Contracts.

Plaintiffs also seek certification of a Rule 23(b)(2) class for declaratory and injunctive relief defined as:

> All persons who: (1) are or will become tenants at any of Defendants' California properties; (2) participate or will participate in the "Section 8" Housing Choice Voucher Program in connection with their tenancies at the California properties; and (3) pay or will pay additional charges set forth in Additional Services Agreements in excess of their individual portions of the contract rent set forth in the HAP Contracts.

### 1.   The Proposed Class Satisfies Numerosity

The class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There are more than 150 Section 8 tenants in the proposed classes. This is sufficient to meet the numerosity requirement. *See, e.g., Wilson*, 2016 U.S. Dist. LEXIS 86861, at *16 (noting that the numerosity requirement is generally satisfied with forty or more class members).

### 2.   The Plaintiffs' Claims Are Typical

The typicality factor concerns whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Overlapping with commonality (and adequacy), "the test of typicality serves to ensure that the interest of the named representative aligns with the interests of the class. . . . [R]epresentative claims are typical if they

1   are reasonably coextensive with those of absent class members; they need not be substantially

2   identical." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 & n.11 (9th Cir. 2016) (citations

3   and internal quotation marks omitted); *see also Wal-Mart*, 564 U.S. at 349 n.5.

4        "Measures of typicality include 'whether other members have the same or similar injury,

5   whether the action is based on conduct which is not unique to the named plaintiffs, and whether

6   other class members have been injured by the same course of conduct.'" *Ruiz Torres*, 835 F.3d at

7   1141 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

8        Here, Plaintiffs' claims are "reasonably coextensive" with those of the proposed class.

9   Plaintiffs and proposed class members are subject to the same Section 8 rules governing rent; they

10   have nearly identical form contracts with Defendants; and they have all paid additional charges.

11   They have suffered the same injury from Defendants' unlawful actions: being charged more rent

12   than allowed under federal law and the HAP Contracts.  Variability in the type or amount of

13   additional charges that they have paid does not defeat typicality. *See Just Film, Inc. v. Buono*,

14   847 F.3d 1108, 1118 (9th Cir. 2017) ("The requirement of typicality is not primarily concerned

15   with whether each person in a proposed class suffers the same type of damages; rather, it is

16   sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

17        **3. Plaintiffs and Their Counsel Will Fairly and Adequately Protect Class Interests**

18        The class representatives must "fairly and adequately protect the interests of the class." Fed.

19   R. Civ. P. 23(a)(4).  The adequacy requirement is focused on the competence of class counsel,

20   and whether there are conflicts of interest between the named plaintiffs and the proposed class

21   members. *Wal-Mart*, 564 U.S. at 349 n.5.  "'Adequate representation depends on, among other

22   factors, an absence of antagonism between representatives and absentees, and a sharing of interest

23   between representatives and absentees.'" *Wilson*, 2016 U.S. Dist. LEXIS 86861, at *16 (quoting

24   *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)).  Class representatives and

25   members must generally have the same interests and have suffered the same injuries. *Id.* at *17.

26        Here, Plaintiffs and the putative class members share a common interest in challenging

27   Defendants' unlawful actions.  As noted, they have suffered the same injuries from Defendants'

28   unlawful actions: being charged more rent than allowed under federal law and the HAP Contracts.

1   There is no evidence that Plaintiffs have any interest that is antagonistic to the interests of the

2   class. Lavine Dec., ¶ 14.   In short, "each class member has the same problem." *Wilson*, 2016

3   U.S. Dist. LEXIS 86861, at *19; *see also Lindell v. Synthes USA*, No. 11-cv-02053-LJO-BAM,

4   2014 U.S. Dist. LEXIS 27706, at *44 (E.D. Cal. Mar. 4, 2014) (adequacy requirement met when

5   plaintiff's interests aligned with class members' interests in recovering unreimbursed expenses),

6   *R&R adopted by* 2014 U.S. Dist. LEXIS 62620 (E.D. Cal. May 6, 2014)

7        As to the competency of counsel, Plaintiffs' counsel are highly qualified, experienced, and

8   knowledgeable in the issues raised in this litigation, and have shown themselves to be fiercely

9   dedicated to the tenants they represent.   Lavine Dec., ¶¶ 3–7; Newmark Dec., ¶¶ 2-21. They also

10   have extensive experience in class action litigation and similar complex litigation, and have been

11   successful in many of the cases.   Lavine Dec., ¶¶ 4, 6; Newmark Dec., ¶¶ 6-16, 21.

12       **4.   Common Questions Predominant over Individual Questions**

13        This Court can consider Rule 23(a)(2)'s commonality and Rule 23(b)(3)'s predominance

14   requirements together, and they are addressed together here. *See Wilson*, 2016 U.S. Dist. LEXIS

15   86861, at *24; *Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 216 (E.D. Cal. 2015), *aff'd*, 2017

16   U.S. App. LEXIS 7882 (9th Cir. May 3, 2017) (Unpub. Dispo).

17        Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P.

18   23(a)(2).   "'What matters to class certification . . . is not the raising of common "questions"—

19   even in droves—but, rather the capacity of a classwide proceeding to generate common *answers*

20   apt to drive the resolution of the litigation.'" *Ruiz Torres*, 835 F.3d at 1133 (quoting *Wal-Mart*,

21   564 U.S. at 350) (emphasis in original).   Even just one common question will do. *Id.*

22        After identifying common issues, the Court makes "a global determination" of whether those

23   issues predominate over individual ones. *Ruiz Torres*, 835 F.3d at 1134.   Not all questions are

24   treated equally; "more important questions apt to drive the resolution of the litigation are given

25   more weight in the predominance analysis over individualized questions which are of

26   considerably less significance to the claims of the class." *Id.*   The "'predominance inquiry tests

27   whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"

28   *Tyson Foods*, 136 S. Ct. at 1045 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)).

1    The analysis is "pragmatic and qualitative and focuses on whether common questions present the

2    overriding issues in a suit." *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 308 (N.D. Cal. 2015).

3    When one or more core issues are common to the class and found to predominate, certification is

4    proper even if important issues have to be tried separately, such as damages or an affirmative

5    defense limited to some class members. *Tyson Foods*, 136 S. Ct. at 1045.

6         To assess commonality and predominance, the Court analyzes Plaintiffs' claims separately,

7    considering the elements of each claim. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S.

8    804, 809 (2011). As noted above, the merits are relevant only to determining whether the class

9    certification requirements have been met. *See, e.g., Amgen*, 568 U.S. at 466.

10        As discussed below, Plaintiffs will prove with common evidence that the additional charges

11   constitute rent, relying largely on standard forms generated by Defendants' uniform software.

12             **a.    Breach of Contract**

13        Breach of contract under California law requires: the existence of a contract; plaintiffs'

14   performance (or excuse for nonperformance); defendants' breach, and resulting damages.

15   *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 818 (9th Cir. 2014) (citing

16   *Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App. 4th 990, 999 (2010)). A breach occurs if defendants

17   "did something that the contract[s] prohibited [them] from doing." Cal. Civ. Jury Instr. 303.

18        Common questions will generate common answers that will drive the resolution of the

19   litigation. The core issue common to the class is whether the side payments for additional charges

20   constitute additional rent prohibited under the HAP Contracts and leases. All Section 8 tenants

21   were subject to substantially identical lease agreements with the same HUD-form Tenancy

22   Addendum. The Tenancy Addendum prohibits Defendants from "charg[ing] or accept[ing]"

23   additional rent beyond the tenant's share of the "rent to owner." Lavine Dec., Ex. A at 9, ¶ 5(e).

24   One question is whether, as a matter of law, Defendants have "charg[ed] or accept[ed]" additional

25   rent beyond "rent to owner" in breach of the lease. *See United States ex rel. Holmes*, 2015 U.S.

26   Dist. LEXIS 142532, at *12 (homeowner's association and property management fees constituted

27   "rent to owner"); *United States ex rel. Price v. Peters*, 66 F. Supp. 3d 1141, 1149 (C.D. Ill. 2013)

28   (Tenancy Addendum prohibited owner from imposing additional charges for use of storage shed).

1    There are also factual issues common to the class regarding whether the additional charges

2  set forth in the side agreements constitute unlawful rent in breach of the contract.  Plaintiffs will

3  show through common proof that Defendants' policy has been to treat the additional charges as

4  rent.  For example, as explained above, Defendants combine contract rent and additional charges

5  on their standard forms and in accounting documents, apply rent payments to previously unpaid

6  additional charges, and use unpaid additional charges as grounds for eviction.

7    Further common issues include whether Defendants breached the leases by (1) "charg[ing] or

8  accept[ing]" payment for appliances such as in-unit laundry machines, not listed as the tenant's

9  responsibility in the HAP Contract and lease agreement; and (2) imposing additional charges as a

10  precondition of tenancy.  To the extent these charges raise individualized damages calculations,

11  "those issues are easily tamed" because Defendants' records reflect who paid such charges, and

12  thus these issues "do not predominate over the several key shared issues that dominate this case."

13  *Brown v. Hain Celestial Grp., Inc.*, No. C 11-03082 LB, 2014 U.S. Dist. LEXIS 162038, at *49–

14  50 (N.D. Cal. Nov. 18, 2014).  Nor does this "create an impermissibly 'overbroad' class."  *Id.* at

15  *50 (collecting cases).  As the Ninth Circuit has explained, "such fortuitous non-injury to a subset

16  of class members does not necessarily defeat certification of the entire class, particularly as the

17  district court is well situated to winnow out those non-injured members at the damages phase of

18  the litigation, or to refine the class definition."  *Ruiz Torres*, 835 F.3d at 1137 (citation omitted).

19  And the Court may create a subclass if necessary.  *Moore v. Ulta Salon, Cosmetics & Fragrance,*

20  *Inc.*, 311 F.R.D. 590, 609–10 (C.D. Cal. 2015) (*sua sponte* splitting class into subclasses).

21    In addition to the common questions concerning whether Defendants breached the lease

22  agreements, their main defense raises a common issue that can also be determined classwide.

23  They have taken the position that federal law does not regulate the additional charges, the local

24  housing agencies do not prohibit these charges, and thus such charges are subject to arms-length

25  negotiations between Defendants and each Section 8 tenant.  Such an argument does not defeat

26  commonality.  Federal law is an issue for the Courts and the federal agency (here, HUD, not the

27  administering local bodies) to determine—as numerous cases addressing similar additional

28  charges have already held.  *See, e.g., United States ex rel. Holmes*, 2015 U.S. Dist. LEXIS

142532, at *10–11 (citing cases). What matters is the overarching issue of whether the side agreements are subject to federal regulation because they contain additional rent payments beyond the tenant's share of the contract rent, not local administration of those rent payments. *See, e.g., Brown*, 2014 U.S. Dist. LEXIS 162038, at *47 (predominance requirement met where there were common issues, including one of the defendant's "primary defenses" that could be adjudicated classwide); *Lindell*, 2014 U.S. Dist. LEXIS 27706, at *50 & n.17 (same).

All of these core common issues and defenses predominate over individual issues. Indeed, "courts routinely certify class actions regarding breaches of form contracts." *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB, 2014 U.S. Dist. LEXIS 81646, at *65 (N.D. Cal. June 13, 2014); *In Re Med. Capital Secs. Litig.*, No. SAML 10-2145 DOC (RNBx), 2011 U.S. Dist. LEXIS 126659, at *17–*19 (C.D. Cal. Jul. 26, 2011) (collecting cases); *Menagerie Prods. v. Citysearch*, 2009 U.S. Dist. LEXIS 108768, at *36 (C.D. Cal. Nov. 9, 2009) ("'claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such'" (citation omitted)).

While each Section 8 tenant has paid different types and different amounts of additional charges, this concerns damages only. "[T]he rule is clear: the need for individual damages calculations does not, alone, defeat class certification." *Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1155 (9th Cir. 2016). Moreover, damages can be determined by applying a common methodology: calculating the additional payments made, which are set forth in the side agreements and ledgers. *See, e.g., Leyva*, 716 F.3d at 514 (damages for unpaid wages could be calculated using defendant's payroll records); *Pena*, 305 F.R.D. at 219–20 ("Damages may also be susceptible to calculation through a common methodology on the basis of time records such as those already produced. Availability of timesheets and ease of damages calculations are relevant considerations and weigh in favor of class certification."); *Lindell*, 2014 U.S. Dist. LEXIS 27706, at *48 ("[S]o long as the damages can be determined and attributed to a plaintiff's theory of liability, damage calculations for individual class members do not defeat certification."). Accordingly, class certification is warranted on the breach of contract claim.

### b.   Consumers Legal Remedies Act

Common issues predominate for the CLRA claim.  Plaintiffs' theory is that Defendants are prohibited by law from charging additional rent beyond the contract rent, the additional charges in the side agreements constitute additional rent, and thus Defendants violated the statute.

The CLRA "'protect[s] consumers against unfair and deceptive business practices.'" *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 954 (2017) (quoting Cal. Civ. Code § 1760).  The statute sets forth an itemized list of prohibited "unfair or deceptive acts or practices," including "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." Cal. Civ. Code § 1770(a)(14).  To establish a violation of the CLRA, Plaintiffs must show that Defendants' conduct was deceptive and that it caused them harm.  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011).

Under § 1770(a)(14), a defendant is prohibited from misrepresenting in a contract that it may collect payment for charges that it is legally prohibited from charging.  For example, in *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983 (2010), a contract represented that the plaintiff was obligated to pay finance charges effective days before the contract was signed.  *Id.* at 995, 1023. The California Court of Appeal held that the defendant violated § 1770(a)(14) of the CLRA because the "contract represented [that defendant] had a legal right to collect finance charges effective October 2, an obligation prohibited by" law.  *Id.*[1]; *see also Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252, 1260–61 (N.D. Cal. 2015) (violation of law prohibiting liquidated damages in contract "can serve as a predicate offense for liability under the prohibited remedies prong of the CLRA [§ 1770(a)(14)], because such liquidated damages are remedies prohibited by law").

Common issues predominate.  Plaintiffs and putative class members signed the form side agreements.  Defendants are prohibited by law from charging additional rent beyond the contract rent.  42 U.S.C. § 1437f(c); 24 C.F.R. § 982.451(b)(4)(i)–(ii).  Plaintiffs' theory is that the additional charges constituted additional rent, and thus Defendants violated Section 1170(a)(14) "by misrepresenting an obligation that was prohibited by law." *Nelson*, 186 Cal. App. 4th at 1023.

---

[1] The California Supreme Court disapproved of *Nelson*'s holding that the finance charge was illegal, *Raceway Ford Cases*, 2 Cal. 5th 161 (2016), but *Nelson*'s discussion of the CLRA remains good law.

1   Causation under the CRLA is amenable to class treatment.  If a material misrepresentation is

2   made to the class, an "'inference of reliance arises as to the class.'" *Stearns*, 655 F.3d at 1022

3   (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009)); *see also, e.g., In re Sony*

4   *Vaio Computer Notebook Trackpad Litig.*, No. AJB 09cv2109 AJB (MDD), 2013 U.S. Dist.

5   LEXIS 194010, at *11 (S.D. Cal. Sep. 25, 2013) ("causation on a class-wide basis may be

6   established through materiality" (citing *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App.

7   4th 1282, 1292–93 (2002).  Reliance/causation turns on an objective standard: "what a reasonable

8   person would consider a material misrepresentation." *Forcellati v. Hyland's, Inc.*, No. CV 12-

9   1983-GHK (MRWx), 2014 U.S. Dist. LEXIS 50600, at *29 (C.D. Cal. Apr. 9, 2014).

10   Because of the classwide treatment of causation, "California [district] courts often find

11   predominance satisfied in CLRA cases." *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 522 (C.D.

12   Cal. 2015) (citing *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012)

13   (collecting district court cases)); *see also, e.g., In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919,

14   983 (C.D. Cal. 2015) ("'whether or not Defendants' claims are misleading is an objective,

15   classwide inquiry for purposes of. . . the CLRA'" (citation omitted)), *aff'd, Briseno v. ConAgra*

16   *Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).

17   Further support for class certification is that Defendants raise a defense common to the class:

18   that the charges do not constitute rent.  ECF No. 26 at 6:26–7:1 (moving to dismiss on the

19   grounds that defendants "did not cause . . . plaintiffs to pay excess or extra rent above and beyond

20   the amount in the HAP Contracts," and therefore did not violate the CLRA).

21   Plaintiffs seek restitution under the CLRA.  Cal. Civ. Code § 1780(a)(3).  The need for

22   individual calculations of restitution, like damages, does not defeat class certification under Rule

23   23(b)(3).  *See Spann*, 307 F.R.D. at 529.  Class certification is warranted on the CLRA claim.

24   **c.   Unfair Competition Law**

25   Like the CLRA claim, common issues predominate for the California UCL claim.  The UCL

26   prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §

27   17200.  UCL claims under the unlawful prong may be based on violations of federal or state law.

28   *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (9th Cir. 2017); *Rose v. Bank of Am., N.A.*, 57 Cal.

1   4th 390, 394, 396 (2013).  The UCL "borrows violations of other laws and treats them as

2   unlawful practices that the [UCL] makes independently actionable.'" *Rose*, 57 Cal. 4th at 396.

3       Plaintiffs allege that Defendants' policy of charging and collecting additional side payments

4   from Section 8 tenants is unlawful under the UCL because the policy violates federal law

5   prohibiting an owner from charging or accepting rent beyond the contract rent. *See* 42 U.S.C. §

6   1437f(c); 24 C.F.R. § 982.451(b)(4)(i)–(ii).  Common questions include whether federal law

7   prohibits Defendants from doing so, and whether the additional charges constitute rent.  Again,

8   Defendants raise the same defense common to the class: that the charges do not constitute rent.

9   ECF No. 26 at 7:10–11.  These common issues predominant over individual issues like the

10  amount of restitution. *See* Cal. Bus. & Prof. Code § 17203 (allowing recovery of restitution).

11      In addition to predicating the UCL claim on violations of federal law, Plaintiffs also rely on

12  the CRLA as a predicate statute.  If the Court certifies the CLRA claim, then an "unlawful" UCL

13  claim "is also appropriate for class treatment" because it is "premised on the same underlying

14  violations ..." *O'Donovan v. Cashcall, Inc.*, 278 F.R.D. 479, 499 (N.D. Cal. 2011).

15      The UCL claim can also be predicated on violations of the federal False Claims Act.  HUD

16  regulations and the HAP Contract prohibit Defendants from charging additional rent above the

17  contract rent.  42 U.S.C. § 1437f(c); 24 C.F.R. § 982.451(b)(4)(i)–(ii); Lavine Dec., Ex. A at 9, ¶

18  5(e); *see also id.* at 5, ¶ 6(a).  "[T]he owner does not have a right to receive housing assistance

19  payments" unless it "has complied with all provisions of the HAP contract." *Id.* at 5, ¶ 7(b).

20  Defendants submitted claims to the government for payment of rent while knowingly violating

21  these federal regulations and HAP Contracts, which caused the government to pay them money to

22  which they were not entitled. *See Rose v. Stephens Inst.*, No. 09-cv-05966-PJH, 2016 U.S. Dist.

23  LEXIS 149936, at *3 (N.D. Cal. Oct. 28, 2016) (elements of FCA claim).

24      Plaintiffs also rely on the "fraudulent" and "unfair" UCL prongs.  "To state a claim under

25  either prong, a plaintiff's 'burden of proof is modest: the representative plaintiff must show that

26  members of the public are likely to be deceived by the practice.'" *Friedman*, 855 F.3d at 1055

27  (quoting *Prata v. Superior Court*, 91 Cal. App. 4th 1128, 1144 (2001)).  This is an objective

28  standard. *Id.*  Actual reliance is required for a UCL fraud claim but, as under the CLRA, it can be

1  inferred from a material misrepresentation. *Id.* (citing *Chapman v. Skype, Inc.*, 220 Cal. App. 4th
2  217, 229 (2013), and *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009)).

3      In *Friedman*, the plaintiff alleged that the defendant violated the UCL by mislabeling a fee as
4  a "royalty" when it was actually an insurance commission prohibited by law. 855 F.3d at 1050.
5  In addition to stating a claim under the UCL's unlawful prong, the plaintiff stated a claim under
6  the unfair and fraudulent prongs based on the allegation that members of the public were likely to
7  be deceived into paying the fee based on the "royalty" label. *Id.* at 1055–56. Similarly here,
8  Plaintiffs' legal theory—common to the class—is that it was deceptive to label charges as
9  "additional charges" when they actually constituted additional rent prohibited by law.

10      Accordingly, class certification is also warranted as to the UCL claim.

11      **5.**    **A Class Action Is Superior to Other Litigation Methods**

12      A class action must be "superior to other available methods for fairly and efficiently
13  adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This factor also weighs in favor of
14  certification. Rule 23(b)(3) identifies several factors to consider in assessing superiority. First is
15  "the class members' interests in individually controlling the prosecution or defense of separate
16  actions." Fed. R. Civ. P. 23(b)(3)(A). This factor weighs in favor of certification where, as here,
17  the individual damages are relatively small. *Pena*, 305 F.R.D. at 220 ("when smaller dollar
18  amounts are in controversy, this factor generally favors certification" (citing *Zinser v. Accuflix
19  Research Inst., Inc.*, 253 F.3d 1180, 1190–91 (9th Cir. 2001))). Individual damages would be
20  outweighed by the expense and burden of separate lawsuits. Further, many if not most of the
21  putative class members are low-income individuals still receiving rent subsidies under Section 8,
22  and thus "lack the resources to finance and direct individual suits." *Id.* at 221.

23      The second factor is "the extent and nature of any litigation concerning the controversy
24  already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). Plaintiffs' counsel are
25  not aware of any other related litigation. Lavine Dec., ¶ 7. This factor thus does not weigh against
26  certification. *Pena*, 305 F.R.D. at 221.

27      Third is "the desirability or undesirability of concentrating the litigation of the claims in the
28  particular forum." Fed. R. Civ. P. 23(b)(3)(C). Concentrating the litigation will provide an

1   efficient method to adjudicate the action without risking inconsistent rulings, and "there is no

2   reason to think that this is an undesirable forum to litigate these claims." *Menagerie Prods.*, 2009

3   U.S. Dist. LEXIS 108768, at *64–65.

4   The fourth factor is "the likely difficulties in managing the class action." Fed. R. Civ. P.

5   23(b)(3)(D). Like many class actions, the trial can be conducted in two phases: a liability phase

6   and then the damages phase. Liability can be determined with common proof. And

7   "individualized damages questions are not fatal to certification; they may be susceptible of

8   reasonable focus during trial, and are less daunting in the presence of timekeeping data." *Pena*,

9   305 F.R.D. at 221 (citing *Leyva*, 716 F.3d at 513–14, and *Local Joint Exec. Bd. of*

10   *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001)).

11   Similarly here, damages can be easily determined based on the side agreements.

12   Finally, courts consider alternative litigation methods, including individual litigation,

13   joinder, multidistrict litigation, or administrative remedies. *Pena*, 305 F.R.D. at 221–22. As

14   discussed above, "individual litigation is unlikely to present the plaintiffs a viable means of

15   recovery." *Id.* at 222. There are too many potential plaintiffs to make joinder practicable. *See id.*

16   Nor can potential plaintiffs pursue administrative remedies. While "[m]ultidistrict litigation may

17   present an advantage, as some of the relevant evidence may exist in each of the California

18   districts, . . . the value of the claims is still small enough to suggest individual actions would be

19   inefficient." *Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-cv-01063-KJM-CKD, 2017 U.S.

20   Dist. LEXIS 57165, at *27 (E.D. Cal. Apr. 12, 2017). A class action would avoid a multiplicity

21   of lawsuits, undue hardship, and expense for the Court and litigants.

22   **6.   Conditional Certification of a Rule 23(b)(2) Class Is Proper**

23   In addition to class certification under Rule 23(b)(3), conditional class certification is also

24   proper under Rule 23(b)(2) as to the breach of contract claim (declaratory relief), and the CLRA

25   and UCL claims (declaratory and injunctive relief). After meeting the Rule 23(a) requirements,

26   certification under Rule 23(b)(2) requires a showing that "the party opposing the class has acted

27   or refused to act on grounds that apply generally to the class, so that final injunctive relief or

28   corresponding declaratory relief is appropriate respecting the class as a whole." A Rule 23(b)(2)

1    class can be certified where, as here, "a single injunction or declaratory judgment would provide

2    relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

3        As discussed above, there are many questions common to the class, including the core issue

4    of whether the additional charges constitute rent.  Certification is proper because of the common

5    issues to the class and the fact that the class "definition refers to acts generally applicable to the

6    class that may warrant injunctive relief for the class as a whole." *Nozzi v. Housing Auth. of L.A.*,

7    No. CV 07-380 PA (FFMx), 2016 U.S. Dist. LEXIS 62996, at *14 (C.D. Cal. May 6, 2016).

8        Plaintiffs have both moved from Defendants' properties, and thus request leave to amend the

9    complaint to name a current tenant as a new representative of the Rule 23(b)(2) class, to support

10   injunctive relief.  *Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1201 (N.D. Cal.

11   2007) ("court may certify the class conditioned upon the substitution of another named plaintiff").

12                               **V.    CONCLUSION**

13       For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for

14   class certification, and: (1) certify a Rule 23(b)(3) class for damages/restitution; (2) conditionally

15   certify a Rule 23(b)(2) class for declaratory and injunctive relief, with thirty (30) days' leave to

16   name a new class representative; (3) appoint Plaintiffs as class representatives; and (4) appoint

17   Law Offices of Andrew Wolff, P.C. and Centro Legal de la Raza as class counsel.

18       Finally, recently discovery has revealed that Defendants impose and collect payment for

19   additional charges from Section 8 tenants in three other states.  Defendants delayed in producing

20   this written discovery, backloading to near the discovery cut-off date nearly half of their

21   document production; and, as a result of the delay, corporate depositions were only just conducted

22   in August.  Plaintiffs are diligently reviewing newly received documents, and may request that the

23   Court consider expanding the scope of the class if the documents support uniformity of policy and

24   practice with respect to imposing additional service charges on Section 8 tenants across the states

25   where they operate, as it appears they may do.  *See, e.g., Farms v. Calcot, Ltd.*, No. CV-F-07-

26   0464 LJO DLB, 2010 U.S. Dist. LEXIS 93548, at *9 (E.D. Cal. Aug. 23, 2010) (addressing the

27   Court's "broad authority to modify" the class definition before final judgment).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

LAW OFFICES OF ANDREW WOLFF, P.C.

/s/

Date:  August 25, 2017

DAVID LAVINE
Attorneys for Plaintiffs Denika Terry and Roy Huskey III