Andrew Wolff, SBN 195092
David Lavine, SBN 166744
LAW OFFICES OF ANDREW WOLFF, PC
1956 Webster St., Suite 275
Oakland, California 94612
Tel: (510) 834-3300
Fax: (510) 834-3377
andrew@awolfflaw.com; david@awolfflaw.com

Jesse Newmark, SBN 247488
CENTRO LEGAL DE LA RAZA
3400 East 12th Street
Oakland, California 94601
Tel: (510) 437-1554 x115
Fax: (510) 437-9164
jessenewmark@centrolegal.org

Attorneys for Plaintiffs and Relators Denika Terry and Roy Huskey III

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY and ROY HUSKEY III, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA,<br><br>    Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, and DOES 1-30,<br><br>    Defendants. | Case No. 2:15 CV 07799 KJM DB<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**<br><br>**CLASS ACTION**<br><br>Date:        October 20, 2017<br>Time:       10:00 a.m.<br>Judge:      Kimberly J. Mueller<br>Dept.:        Courtroom 3, 15th Floor |

## I. INTRODUCTION

Defendants' opposition is in large part unresponsive to Plaintiffs' class certification motion. Defendants fail to address, let alone challenge, Plaintiffs' theory of liability or the case law in support of certification, and cite scarcely any case law in support of their opposing arguments.

First and foremost, Defendants ignore Plaintiffs' chosen theory of classwide liability: that Defendants' policy of charging side payments beyond the contract rent breaches Section 8 tenants' lease agreements and violates the CLRA and UCL, because Defendants treat these additional charges as rent, as shown by their standard forms and policies. Plaintiffs allege that the extra charges constitute "rent," in violation of clear federal law that landlords cannot charge Section 8 tenants *any* rent beyond the contract rent. Notably, this is the same theory of liability alleged and addressed in the numerous federal decisions concerning similar extra charges, as this Court highlighted in its order on the motion to dismiss.

Instead of responding to Plaintiffs' allegations and case law showing the predominance of common issues, Defendants create a straw man theory of liability to knock down. Defendants pretend that Plaintiffs ask the Court to look at HUD regulations concerning "rent reasonableness" for any particular unit, and whether items are customarily included in the contract rent in the locality. Although Defendants' extra charges could violate these HUD regulations, Plaintiffs do *not* seek classwide certification on these grounds. Plaintiffs' classwide theory focuses solely on the illegality of the extra charges as additional "rent."[1]

Second, Defendants do not challenge numerosity or adequacy of counsel, but raise a host of unpersuasive arguments concerning ascertainability, typicality, adequacy, and superiority. As to ascertainability, Defendants ignore the clear, objective class definition in the proposed Third Amended Complaint ("TAC") and moving papers: Section 8 tenants at Defendants' California properties who have paid additional charges during a specific time period. As to typicality and adequacy requirements, Defendants misleadingly question the class representatives' credibility, and rely on legally irrelevant, purported differences between them and the proposed class.

---

[1] Defendants claim that Plaintiffs "abandon[] the class claims under the [FCA]." Opp. at 1:15–16. As Plaintiffs explain, the FCA claim cannot be certified, as it is brought on behalf of the government. ECF No. 72, Pls.' Memo. of P. & A. In Supp. of Mot. ("Mot.") at 1:17–19.

1  Finally, citing to no authority and pointing to no administrative process to exhaust or pursue,
2  Defendants incorrectly claim that such an option would be superior to a class action.
3      In short, Defendants' opposition flies wide of Plaintiffs' arguments supporting class
4  certification, leaving them almost entirely unchallenged.  Plaintiffs have met all certification
5  requirements under Rule 23(b)(2) and (b)(3).  The proposed classes should be certified.

## II. THE TAC SHOULD BE OPERATIVE FOR CLASS CERTIFICATION

    Defendants ignore the proposed TAC, which defines the classes to include Section 8 tenants at Defendants' properties throughout California.  Defendants do so despite the liberal standard for amendment, and the lack of any prejudice following Court-ordered, geographically expansive discovery during a class discovery period that has just closed, as explained in more detail in Plaintiffs' concurrently filed reply brief in support of their motion to amend.

    Courts regularly certify broader classes than the class definition in the complaint where, as here, there is no prejudice to the defendant.  In *Stuart v. RadioShack Corp.*, 2009 U.S. Dist. LEXIS 12337 (N.D. Cal. Feb. 5, 2009), for example, the plaintiff sought leave to amend to expand the scope of the class and certify the broader class.  *Id*. at *4.  The court granted plaintiff's motion to amend, even though it was filed after defendant filed its opposition to class certification based on the narrower definition.  The court found no prejudice because defendant would likely have raised the same arguments in opposing the broader class definition.  *Id*. at *8; *see also Van Patten v. Vertical Fitness Grp., LLC*, No. 12cv1614-LAB (MDD), 2013 U.S. Dist. LEXIS 189845, at *10–11 (S.D. Cal. Nov. 8, 2013) (using definition in class certification motion even though it was not in operative complaint; defendant's "core argument against class certification . . . still addresses th[e] definition head-on"); *In re TFT-LCD Antitrust Litig*., 267 F.R.D. 583, 591 (N.D. Cal. 2010) (using new definition in the class certification motion where there was no prejudice to defendants, no additional discovery was required, and the modifications were minor).

    Here, there is no prejudice both for the reason provided in these decisions—*i.e.*, Defendants would likely raise the same arguments against certification of the class as defined in the TAC— and because Plaintiffs filed their motion to amend concurrent with their class certification motion, such that Defendants had every opportunity to address the expanded class definition in their

opposition. The only material difference between the definitions is that the new one includes Defendants' properties throughout California—not just Sacramento—to conform to the evidence recently obtained in discovery.[2] There are no new claims. Defendants offer no explanation of how adding materially identical class members from other California properties would change their defense to class certification, or why after months of geographically expanded discovery, they chose not to address the geographically expanded class definition. Accordingly, the Court should treat the TAC as the operative complaint for class certification.

## III. THE COURT SHOULD GRANT CLASS CERTIFICATION AS REQUESTED

### A. The Classes Are Ascertainable

Defendants incorrectly argue that the class definition "is so overbroad" that the class is unascertainable. The ascertainable requirement "is meant to ensure the proposed class definition will allow the court to efficiently and objectively ascertain whether a particular person is a class member." *Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 206 (E.D. Cal. 2015).

Defendants appear to challenge as overbroad only the phrase "additional rent payments" in the SAC's class definition. Opp. at 19:6–20:11. To the extent that the term "rent" arguably rendered the definition unclear, *see Luviano v. Multi Cable, Inc.*, No. CV 15-05592 BRO (FFM), 2017 U.S. Dist. LEXIS 32349, at *34 (C.D. Cal. Jan. 3, 2017) ("quasi-legal conclusion" in class definition raised ascertainability concerns), Plaintiffs clarified it by changing the definition in the TAC to: Section 8 tenants who have paid "additional charges" set forth in Additional Services Agreements. Proposed class members are therefore readily determined from Defendants' records. The Court could also modify the definition to address any lingering concern. *See id.* at *34–35 (sua sponte modifying class definition); *Morales*, 2015 U.S. Dist. LEXIS 177918, at *38 (same).

### B. Common Questions of Fact and Law Predominate

#### 1. Plaintiffs' Theory of Liability Controls

Defendants ignore Plaintiffs' theory of liability, claiming that there must be "a unit by unit,

---

[2] The new definition helpfully clarifies that the proposed class consists of Section 8 tenants who have paid "additional charges" set forth in Additional Services Agreements, rather than "additional *rent* payments." There is also a shorter limitations period in the modified definition. The six-year statute is for the FCA claim which, as noted, is not subject to class certification.

property by property, and area by area analysis that must take into consideration the relative housing market conditions during the relevant time period." Opp. at 2:3–5.  They discuss variability in the reasonable rent for a particular unit across localities, and items customarily included in the contract rent in a locality that might not be included in another.  *Id*. at 10:10–20.

Plaintiffs, however, do not challenge these issues or the HUD regulations governing them. The class certification analysis focuses on Plaintiffs'—not Defendants'—"chosen theory of liability."  *Ruiz Torres v. Mercer Canyons Inc*., 835 F.3d 1125, 1137 (9th Cir. 2016); *see also Californians for Disability Rights, Inc. v. Cal. DOT*, 249 F.R.D. 334, 344–45 (N.D. Cal. 2008) (rejecting defendants' argument that there were "highly individualized" issues and thus no commonality, because it "misconstrue[d] the nature of plaintiffs' claims and requested relief"). Plaintiffs' classwide theory is that the extra charges set forth in the Additional Services Agreements constitute additional "rent," in violation of clear HUD regulations that landlords cannot charge *any* rent beyond that specified in the HAP Contracts.

Based on this theory of liability, numerous courts have addressed the legality of similar extra charges, as this Court has noted, ECF No. 61 at 6:21-7:3, without any market or rent reasonableness analysis.  Mot. at 12:25–28 (citing cases).  Further, courts have certified classes of Section 8 tenants under similar circumstances.  *See Nozzi v. Hous. Auth. of L.A.*, No. CV 07-380 PA (FFMx), 2016 U.S. Dist. LEXIS 62996 (C.D. Cal. May 6, 2016); *Huynh v. Harasz*, No. 14-CV-02367-LHK, 2015 U.S. Dist. LEXIS 154078 (N.D. Cal. Nov. 12, 2015).

Plaintiffs' theory is that the additional charges constitute rent because of Defendants' common policy of treating such charges as rent, and failure to pay those charges as grounds for eviction, as shown in their standard forms.  Mot. at 4:21–6:28.  Defendants' claim that there is no classwide proof that tenants are "forced" to incur additional charges, Opp. at 13:21–22, ignores the common evidence that while some additional charges are presented as optional, Defendants treat them as rent uniformly across their properties once the tenant incurs the charges.  Thus, Defendants' claim that Plaintiff Huskey "sign[ed] up . . . voluntarily" for additional charges, Opp. at 15:10–11, is irrelevant to Plaintiffs' theory of liability.  Mot. at 7:1–23.

### 2. Common Issues Predominate for the Breach of Contract Claim

Defendants' only argument that there are no common issues of law or fact for the breach of contract claim is based on their impermissible reframing of Plaintiffs' theory of liability. Given Plaintiffs' theory of liability, common factual and legal issues clearly predominate as to whether the additional charges constitute rent in violation of the lease agreements. Mot. at 12:18–13:20. Defendants do not dispute that they use form contracts treating the extra charges as rent and failure to pay those charges as grounds for eviction, and they ignore that "'courts routinely certify class actions regarding breaches of form contracts.'" *Id*. at 14:7–14 (citing cases).

Moreover, Defendants raise common defenses. They claim that: additional charges are not prohibited by HUD regulations or the HAP Contracts; that such charges are legal if approved by the local public housing agencies; and, relatedly, that the Court should defer to these local agencies' interpretation of federal law. Opp. at 8:16–17, 18:17–19. These common defenses support class resolution. *See*, *e.g., Van Patten*, 2013 U.S. Dist. LEXIS 189845, at *16–17 (defendant is "either right or wrong, as a matter of law" on their defense, and "'all class members will prevail or lose together, making this another common issue to the class'" (citation omitted)); Mot. at 14:4–6 (citing cases explaining that common defenses support class certification).

### 3. Common Issues Predominate for the CLRA Claim

Plaintiffs rely on subdivision (a)(14) of the CLRA, Cal. Civ. Code § 1770, which prohibits Defendants from misrepresenting that they may collect payment for charges that they are legally prohibited from charging. Defendants ignore this statutory ground for liability, as well as the cases supporting Plaintiffs' theory. Mot. at 15:6–26. Just like here, in *Nelson v. Pearson Ford Co*., 186 Cal.App.4th 983, the court held that defendant was liable to a class under § 1770(a)(14) because it "misrepresent[ed] an obligation that was prohibited by law." *Id*. at 1022–23.

Defendants also ignore the cases showing that causation can be determined classwide. An objective standard applies to determine whether Defendants' misrepresentation that tenants must pay the additional charges has in fact caused them to pay the charges. As the Ninth Circuit has explained, if a material misrepresentation is made to the class, a classwide inference of reliance arises. Courts therefore "'often find predominance satisfied in CLRA cases.'" Mot. at 16:1–16.

Defendants cite *Caro v. Procter & Gamble Co.*, 18 Cal.App.4th 644 (1993), for the proposition that a "single determination of materiality is not possible here." Opp. at 13:10–11. But *Caro* does not "undermine[] the general rule permitting common reliance where material misstatements have been made to a class of plaintiffs. Rather, . . . *Caro* merely stands for the self-evident proposition that such an inference will not arise where the record will not permit it." *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1294 (2002). In *Caro*, the record showed that plaintiff did not believe the alleged misrepresentation that "Citrus Hill Fresh Choice" orange juice was "fresh" juice, and that materiality varied by customer. 18 Cal. App. 4th at 668. This is a far cry from a property owner's misrepresentation that tenants must pay for charges beyond their rent. No tenant, particularly a low-income tenant, would make additional payments if he or she believed the owner was prohibited from imposing such charges.

### 4. Common Issues Predominate for the UCL Claim

Defendants ignore the unlawful prong of the UCL altogether. Mot. at 16:25–17:23. That prong does not require a showing of materiality. *Compare Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (9th Cir. 2017) (addressing unlawful prong), *with id*. at 1055 (addressing the two other prongs); *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) ("[e]ach prong of the UCL is a separate and distinct theory of liability"). As to the unfair and fraudulent prongs, Defendants ignore Plaintiffs' discussion of *Friedman*, which addressed circumstances similar to those here in reversing a lower court's dismissal of a putative class action. Mot. at 18:3–9.

### C. Plaintiffs' Claims Are Typical, and They Will Adequately Represent the Class

Defendants do not dispute that Plaintiffs' claims are typical because they are "reasonably coextensive" with those of the proposed class. Mot. at 9:23–10:16. Instead, they argue that Plaintiffs fail to meet the typicality requirement on the ground that they are subject to unique defenses because they were evicted. Opp. at 14:20–15:23. But the circumstances of Plaintiffs' departures (whether by eviction or not) are not legal defenses to the claims in this lawsuit, which concern Defendants' unlawful additional charges while Plaintiffs were tenants. *O'Connor v. Uber Techs.*, No. C-13-3826 EMC, 2015 U.S. Dist. LEXIS 116482, at *33 (N.D. Cal. Sep. 1, 2015) (typicality does not concern "*legally irrelevant* differences between the representative

plaintiffs and the class members"). In fact, Terry's eviction for unpaid additional charges supports the class claims; it reflects Defendants' policy of treating such additional charges as rent by using nonpayment as grounds for eviction. Contrary to Defendants' assertion that Terry was evicted for unpaid rent but not unpaid charges, Opp. at 15:2–3, their own evidence shows that she was evicted for not paying contract rent *and* additional services. Terry Dec., ¶ 6, Ex. B (reflecting $310.25 due on February 4, 2013 for contract rent *and* unpaid additional charges); Opp., Tanforan Dec. ¶¶ 19-21 & Ex. 3 (three-day notice to pay rent or quit, demanding $310.25 in unpaid rent).

Nor is there any merit to Defendants' assertion that Terry's claims are subject to res judicata because she was evicted following settlement in a judicial proceeding. Unlawful detainer actions are summary proceedings involving only the right to possession, and thus a final judgment has preclusive effect only as to that right. *See, e.g.*, *Thomas v. Hous. Auth. of L.A.*, No. CV 04-6970 MMM (RCx), 2005 U.S. Dist. LEXIS 46427, at *18–19, 21–22 (C.D. Cal. June 2, 2005).

Defendants also attempt to defeat typicality by relying on tangential credibility issues, which are usually analyzed under the adequacy inquiry. It is only "[i]n rare circumstances" that "a plaintiff's lack of credibility may undermine his or her adequacy as a class representative." *Mendez v. R+L Carriers, Inc.*, No. C 11-2478 CW, 2012 U.S. Dist. LEXIS 165221, at *39 (N.D. Cal. Nov. 19, 2012); *see also In re Facebook Privacy Litig.*, No. 10-cv-02389-RMW, 2016 U.S. Dist. LEXIS 119293, at *17 (N.D. Cal. June 28, 2016). "There is 'inadequacy only where the representative's credibility is questioned on issues *directly relevant* to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud.'" *Harris v. Vector Mktg. Corp.,* 753 F.Supp.2d 996, 1015 (N.D. Cal. 2010) (emphasis added).

Defendants' challenges are not "directly relevant to the litigation," nor "confirmed examples of dishonesty." *Id.* Defendants claim that Terry lied by testifying that she was charged for parking despite not having a car, when she did have a car. The deposition testimony—which followed repeated, unfocused questioning on this issue by Defendants—is unclear as to when Terry owned a car, kept a car at the property, and relied on her mother's car. Regardless, Plaintiffs' theory is that the additional charges are unlawful irrespective of how they are imposed. Thus, Defendants' strained argument as to car ownership does not undermine Terry's adequacy.

Similarly, Defendants' accusation that proposed class representative Huskey made racial slurs is not directly relevant to the litigation. *See id.* Further, contrary to Defendant's contention, Huskey's denial of this accusation by a defense witness does not constitute a lie, let alone a disqualifying one.[3] Moreover, courts do not disqualify class representatives for credibility issues where, as here, most of the evidence will come from defendants' documents rather than plaintiff's testimony. *See In re Facebook Privacy Litig.*, 2016 U.S. Dist. LEXIS 119293, at *18.

Defendants also suggest that Terry is unfamiliar with the class claims. Opp. at 3:9–12. Terry meets the "'low'" threshold of knowledge to be a class representative. *Johnson v. Hartford Cas. Ins. Co.*, No. 15-cv-04138-WHO, 2017 U.S. Dist. LEXIS 77482, at *38 (N.D. Cal. May 22, 2017) (citations omitted). She testified that she understands the lawsuit involves "extra fees" beyond rent, that she "was charged with things that she shouldn't have been charged for," and that she represents others experiencing similar problems. Lavine Supp. Dec., ¶2, Ex. A, at 44:17–46:12, 201:22–202:13. *See Johnson*, at *39 (the class representative need only "be able explain the factual basis for the lawsuit and why he believes he was wronged," and need not have read the complaint). Terry's testimony shows that she understands the factual basis for the lawsuit, and therefore is a suitable representative. Indeed, the higher standard suggested by Defendants is particularly inappropriate for a class of Section 8 tenants, who receive subsidized housing as a result of disabilities and ongoing financial and emotional hardships. Lavine Dec., ¶7.

Finally, if the Court were to determine that neither Plaintiff is an adequate class representative or that their claims are not typical, Plaintiffs respectfully request leave to substitute new representatives. *See Luviano, Inc.*, 2017 U.S. Dist. LEXIS 32349, at *50-51 ("[T]he Court does not find Plaintiff Luviano's inadequacy renders the representation as a whole inadequate; an inadequate representative plaintiff may be replaced." (citations omitted)). Plaintiffs have already requested permission to do so for the Rule 23(b)(2) class.

### D. A Class Action Is Superior to Other Methods of Adjudication

Defendants do not dispute that the first three superiority factors weigh in favor of class

---

[3] Defendants also claim that Huskey was evicted for racist conduct, but the three-day notice refers only to loud music and noises at night. Opp., Smith Dec., Ex. 6.

certification. Mot. at 18:14–19:3. They dispute the fourth factor—"the likely difficulties in managing the class action"—and argue that an "informal" administrative solution is superior. The Court should reject both arguments.

**1. Liability Can Be Determined Classwide, and Individual Damages Determinations Do Not Defeat Class Certification**

Defendants incorrectly claim that litigation will require mini-trials for liability and damages. Opp. at 16:2–3. To the contrary, a class action is appropriate as to liability for the reasons stated above, and Defendants ignore clear law that the need for individual damages calculations does not defeat certification. Mot. at 14:15–18, 16:21–23; *see also Huynh*, 2015 U.S. Dist. LEXIS 154078, at *5 (rejecting defendants' similar arguments and certifying a class of Section 8 tenants because "the Ninth Circuit has unequivocally held that . . . 'the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)'" (citation omitted)).

Citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996), Defendants also claim that Plaintiffs are required to present a trial plan. Opp. at 16:13–15 & n.6. But "*Valentino* does not stand for th[e] proposition" that a trial plan is required, and "[n]othing in the Advisory Committee Notes [to Rule 23] suggests grafting a requirement for a trial plan onto the rule." *Chamberlan v. Ford Motor Co*., 402 F.3d 952, 961 n.4 (9th Cir. 2005). Moreover, Defendants ignore Plaintiffs' explanation that they will use common evidence to establish liability, and that damages can be determined by applying a common methodology using Defendants' own written records. Mot. at 12:10–11, 14:18–27. Plaintiffs will submit a proposed trial structure to assist the Court with its trial management duties should the Court later request one.

**2. There Is No Administrative Alternative or Exhaustion Requirement**

According to Defendants, Plaintiffs have "not exhausted administrative remedies" with local public housing agencies. Opp. at 18:26–27. However, they cite no authority for an exhaustion requirement, point to no available administrative procedures, and admit that resolution with local agencies is only "informal[]." *Id*. at 2:10–12. In fact, the Tenancy Addendum expressly confers the right to sue: "The tenant shall have the right to enforce the tenancy addendum against the owner." Lavine Dec., Ex. A at 9, ¶2(b). Moreover, as this Court has recognized, federal courts

1  routinely address whether additional charges constitute illegal rent.  ECF No. 61 at 6:21–7:3.

2       Defendants nevertheless assert that "the superior method for resolving" the dispute is with
3  the local housing agencies, but they rely on inapplicable cases that address formal administrative
4  remedies with a *federal* agency, and where most, if not all, class members had suffered no injury.
5  Opp. at 16:18–21 & n.7.  By contrast here, most tenants have paid additional charges, and local
6  public housing agencies have established no formal administrative channel for tenants to employ,
7  let alone exhaust.  Further, even if there were any administrative process, it would not be superior
8  to a class action.  *See Huynh*, 2015 U.S. Dist. LEXIS 154078, *37–38 (rejecting argument that an
9  available administrative process to address Section 8 tenants' disability claims was superior to a
10 class action, because low-income tenants lack the resources to go through the process).

11      Defendants also claim that local public housing agencies' interpretation of federal law is
12 entitled to deference.  Opp. at 17:12–18:16.  This argument shows another common defense
13 amenable to class treatment, even though it is likely to fail given that local agencies would not be
14 entitled to deference in interpreting HUD regulations.  Defendants rely only on decisions in which
15 courts defer to a *federal* agency's interpretation of federal law, where expertise is presumed.

16     **E.  Conditional Certification Should Be Granted Under Rule 23(b)(2)**

17      Contrary to Defendants' assertion, Plaintiffs seek class certification under Rule 23(b)(2)
18 "*[i]n addition* to class certification under  Rule 23(b)(3)," not in the alternative.  Notice of Mot. &
19 Mot. at 19:23–25, 20:13–17 (emphasis added).  "[I]t is appropriate for the Court to certify one
20 class for injunctive relief under Rule 23(b)(2) and a separate class for other remedies under Rule
21 23(b)(3)."  *Nozzi*, 2016 U.S. Dist. LEXIS 62996, at *14 (citing cases).

22      Finally, Defendants argue that Plaintiffs lack standing to represent the Rule 23(b)(2) class for
23 injunctive and declaratory relief.  Plaintiffs acknowledge that they have moved from Defendants'
24 properties, and thus have requested certification conditioned on naming a current tenant to
25 represent the class.  Mot. at 20:8–11.

26 **IV.  CONCLUSION**

27      For the foregoing reasons and the reasons set forth in the moving papers, Plaintiffs
28 respectfully request that the Court grant their motion for class certification.

1
2
3                                   Respectfully submitted,
4                                   LAW OFFICES OF ANDREW WOLFF, P.C.
5                                   /s/
   Date:  September 15, 2017        DAVID LAVINE
6                                   Attorneys for Plaintiffs Denika Terry and Roy Huskey III
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28