1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA, ex rel.        No.  2:15-cv-00799 KJM DB
     DENIKA TERRY and ROY HUSKEY III,
12   and each of them for themselves           ORDER
     individually, and for all other persons
13   similarly situated and on behalf of the
     UNITED STATES OF AMERICA,
14
                    Plaintiffs/Relators,
15
            v.
16
     WASATCH ADVANTAGE GROUP,
17   LLC, WASATCH PROPERTY
     MANAGEMENT, INC., WASATCH
18   POOL HOLDINGS, LLC, CHESAPEAKE
     COMMONS HOLDINGS, LLC, LOGAN
19   PARK APARTMENTS, LLC; LOGAN
     PARK APARTMENTS, LP,
20
                    Defendants.
21

22

23            Plaintiffs are tenants who receive rental assistance through the federally subsidized

24   Housing Choice Voucher Program commonly known as "Section 8."  They claim defendant

25   lessors improperly charged plaintiffs, as well as the putative class members they seek to

26   represent, for washer and dryer rentals, renter's insurance and covered parking.  Plaintiffs argue

27   these services constitute impermissible rent under the Section 8 contracts and regulations, and

28
                                              1

defendants therefore violated the Section 8 contracts and submitted false claims for reimbursement under the federal program.

Plaintiffs now move to amend their complaint and move for class certification on behalf of themselves and other similarly situated tenants at defendants' properties located in California in the past four years. Pls.' Mot. Class Cert. (Mot.), ECF No. 72-1; ECF No. 71 (motion to amend); *see, e.g.*, Lavine Decl. Exs. A-J, ECF No. 72-5 (including documents related to tenants at defendants' properties in Fresno, Hanford, Kingsburg, Norco, Rancho Cordova, Sacramento, San Diego and Spring Valley, California). Defendants oppose both motions. Defs.' Opp'n Class Cert. (Opp'n), ECF No. 78; ECF No. 77 (opposition to motion to amend). Plaintiffs have replied. Pls.' Reply Class Cert. (Reply), ECF No. 80; ECF No. 79 (reply to defendant's opposition to motion to amend). For the reasons discussed below, plaintiffs' motion to amend is GRANTED, plaintiffs' class certification motion is GRANTED as to the Rule 23(b)(3) class and plaintiffs' class certification motion is GRANTED CONDITIONALLY as to the Rule 23(b)(2) class, conditioned on plaintiffs substituting a new class representative who has standing to pursue declaratory and injunctive relief.

I.    BACKGROUND

      A.    Factual Background

Because the court grants plaintiffs' motion to amend, the facts below are taken primarily from the plaintiffs' third amended complaint (TAC), ECF No. 71-2. Although defendants are correct as a general matter that "it is the operative pleading that controls the scope of this litigation," Opp'n at 20, courts have considered class definitions differing from those in the operative complaint and relied on amended complaints filed after a motion for class certification was filed. *See, e.g.*, *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2009 WL 281941, at *1-4, 6, 13-14, 18 (N.D. Cal. Feb. 5, 2009) (granting leave to amend where plaintiff moved to file new complaint after moving for class certification and defendant "pointed out [plaintiff] was asking for certification of a class different from that alleged in his complaint," then relying on the new complaint when addressing the motion for class certification). Given the similarity between the

second and third amended complaints, and the absence of any prejudice to defendants if the court relies on the latter, the court does so here in the interests of efficiency and justice.

Plaintiffs seek to represent a class of past, present and prospective tenants of residential apartments owned, rented, and managed by defendants. TAC ¶¶ 1-2. Defendants' properties include four apartment communities in the Sacramento area. *Id.* ¶ 3. Plaintiffs Denika Terry and Roy Huskey III lived at two of them. *Id.* ¶¶ 4-5. Defendants rent numerous apartments to tenants who receive rental assistance through the federally subsidized Housing Choice Voucher Program, commonly known as "Section 8." *Id.* ¶ 6. The Section 8 program provides that participating tenants pay between thirty percent and forty percent of their adjusted monthly income toward rent and utility costs and the federal government and local housing agencies pay the balance of rent directly to the property owner. *Id.* Across defendants' properties, there are hundreds of Section 8 tenants. *Id.* ¶ 8. Defendants were parties to Housing Assistance Payment Contracts (HAP Contracts) with plaintiffs as part of the Section 8 program. *Id.* ¶ 9. As part of their usual course of business, defendants demanded additional monthly charges from plaintiffs and other Section 8 tenants; the additional charges were treated no differently from rent, and were in excess of the tenants' portion of the rent due under the HAP Contracts. *Id.* ¶ 10. The additional payment demands included rental charges for washers and dryers, renters' insurance and covered parking. *Id.*

Plaintiffs' claims rely on defendants' treating these additional charges no differently than rent. The HAP Contracts, which are agreements between and among the tenant family, the landlord and the local housing authority, establish the initial lease term and the total amount of monthly rent due from the tenant. *Id.* ¶¶ 31-34. The sum of the housing assistance payment by the public housing agency and the tenant's share of rent under the HAP Contract is known as the contract rent, which is subject to change in limited circumstances and only after notice is given. *Id.* ¶¶ 37-38. The regulations governing rent under a HAP Contract, found at 24 C.F.R. § 982.451, provide in pertinent part, "[t]he owner may not demand or accept any rent payment from the tenant in excess of the maximum and must immediately return any excess rent to the tenant." *Id.* ¶ 39 (citing 24 C.F.R. § 982.451(b)(4)(ii)). Similarly, Part C of the Tenancy

3

Addendum to the standard HAP Contract provides: "The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to owner." *Id.* ¶ 40.

Plaintiffs allege defendants repeatedly demanded payment of additional charges, rent payments or "side payments," all in violation of the HAP Contracts and without authorization of the local housing agency or the U.S. Department of Housing and Urban Development (HUD). *Id.* ¶¶ 50, 96-100, 117-21.  As noted, defendants' demand for "side payments" included payment for washer and dryer rentals, renter's insurance and covered parking.  *Id.* ¶¶ 96, 117.  As an example, defendants' Resident Ledger for the Terry residence for the month of January 2012 reflects a monthly charge of $40 for "Washer/Dryer Rental," $17.91 for "Renter's Insurance" and $10 for "Covered Parking Charges."  *Id.* Ex. B.  Similarly, defendants' Resident Ledger for the Huskey residence for the month of January 2012 reflects a monthly charge of $50 for "Washer/Dryer Rental" and $17.91 for "Renter's Insurance."  *Id.* Ex F.  Plaintiffs periodically entered into several Residential Rental Agreements, each of which included an Additional Services Agreement that addressed these additional charges.  *Id.* ¶¶ 55, 64, 88-89, 110-11; *id.* Exs. G, H, I (Terry Agreements); *id.* Exs. J, K (Huskey Agreements).  To enforce additional rent payment requirements, defendants threatened Terry and Huskey each with eviction for nonpayment of the "side payments."  TAC ¶¶ 96, 100-01, 117, 121-22.  Defendants ultimately filed an eviction action against Terry for not making the unlawfully demanded "side payments." *Id.* ¶ 102.

Based on these allegations, plaintiffs bring four claims against all defendants: (1) violation of the Federal False Claims Act, 31 U.S.C. § 3729(a), for "knowingly present[ing] a false or fraudulent claim for payment or approval" to the United States, *id.* ¶¶ 144-58; (2) Breach of Contract, Cal. Civ. Code §§ 3300 *et seq.*, for breaching the terms of the HAP Contracts that prohibit the charging of additional rent payments, *id.* ¶¶ 159-65; (3) violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, for engaging in deceptive practices in connection with the conduct of a business providing services, *id.* ¶¶ 166-77; and (4) Unfair Business Practices, Cal. Bus. & Prof. Code § 17200 *et seq.*, for engaging in "unfair competition," including

4

any "unlawful, unfair, or fraudulent business act or practice," *id.* ¶¶ 178-92. Plaintiffs seek damages and injunctive and other equitable relief. *Id.* ¶ 194.

B.  Procedural Background

Plaintiffs filed their initial complaint on April 14, 2015. ECF No. 1. After the court granted in part and denied in part defendants' motion to dismiss, the plaintiffs filed a second amended complaint. ECF No. 66.

Now plaintiffs have filed a motion to amend the complaint based not on new theories of liability, but on "evidence discovered." ECF No. 71-1. Defendants oppose this motion, ECF No. 77, and plaintiffs have replied. ECF No. 79.

On the same day as their motion to amend, plaintiffs filed a motion to certify two classes. ECF No. 72-1. Defendants oppose this motion, ECF No. 78, and plaintiffs replied. ECF No. 80.

Plaintiffs have not expressly requested a hearing on the question of preliminary class certification, which the court has submitted on the papers. Min. Order, ECF No. 81; *see also Merrill v. S. Methodist Univ.*, 806 F.2d 600, 608-09 (5th Cir. 1986) (noting district courts ordinarily should hold a hearing on the question of class certification if a plaintiff expressly requests one but observing Federal Rule of Civil Procedure 23 does not require an evidentiary hearing).

II.  LEGAL STANDARD

A.  Motion to Amend

Contrary to plaintiffs' assertions, ECF No. 79 at 3, when a party seeks to amend its complaint after a Rule 16 scheduling order has been issued, the party's ability to amend his complaint is governed by Rule 16(b). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); *see also Johnson v. St. Mary*, No. CIV S-06-0508 WBS EFB PS, 2007 WL 1100507, at *1 (E.D. Cal. Apr. 11, 2007), *findings and recommendations adopted*, No. CIV-S-06-0508-WBS EFB PS, 2007 WL 1365400 (E.D. Cal. May 9, 2007) ("[The Eastern District], applying *Johnson* [*v. Mammoth Recreations*], has confirmed that once the district court has filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16, a motion to amend the

pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a)"). Although plaintiffs have asserted the court "issued other, superseding scheduling orders that do not mention a deadline for any complaint amendments," ECF No. 79 at 3, the first amendment to the scheduling order in this case, which modified only three deadlines related to class certification and a status conference, clearly stated, "All other provisions in of the initial scheduling order (ECF No. 39) remain in effect," ECF No. 54. The initial scheduling order states, "No further joinder of parties or amendments to pleadings is permitted without leave of court, good cause having been shown." ECF No. 39 at 2 (citing Fed. R. Civ. P. 16(b) and *Johnson*, 972 F.2d 604). The court therefore analyzes plaintiffs' motion to amend under Rule 16(b), then under Rule 15(a).

Under Rule 16(b), a movant must demonstrate "good cause" to justify adding a new defendant. *Mammoth*, 975 F.2d at 608; *St. Mary*, 2007 WL 1100507, at *1 (citing *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999); *Roberts v. Beard*, No. 15cv1044-WQH-PCL, 2018 WL 454437, at *4 (S.D. Cal. Jan. 17, 2018). "The 'good cause' standard 'focuses on the diligence of the party seeking amendment.'" *St. Mary*, 2007 WL 1100507, at *1. "Relevant inquiries [into diligence] include: whether the movant was diligent in helping the court to create a workable Rule 16 order; whether matters that were not, and could not have been, foreseeable at the time of the scheduling conference caused the need for amendment; and whether the movant was diligent in seeking amendment once the need to amend became apparent." *Id.*

If good cause exists, the party next must satisfy Rule 15(a). *Cf. Johnson*, 975 F.2d at 608 (citing approvingly *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C.1987), for its explication of this order of operations). Federal Rule of Civil Procedure 15(a)(2) states "[t]he court should freely give leave [to amend its pleading] when justice so requires," and the Ninth Circuit has "stressed Rule 15's policy of favoring amendments." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989). "In exercising its discretion [to grant or deny leave to amend] 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981)). However, "the liberality in granting leave to amend is subject to several limitations. Leave need

not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Props.*, 866 F.2d at 1160 (internal citations omitted).

B.    <u>Motion for Class Certification</u>

Litigation by a class is "an exception to the usual rule" that only the individual named parties bring and conduct lawsuits. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation and internal quotation marks omitted). Only when a class action "promot[es] . . . efficiency and economy of litigation" should a motion for certification be granted. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983). A court considers whether class litigation promotes "economies of time, effort and expense, and . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment.

To be eligible for certification, the proposed class must be "precise, objective, and presently ascertainable." *Williams v. Oberon Media, Inc.*, No. 09-8764, 2010 WL 8453723, at *2 (C.D. Cal. Apr. 19, 2010); *see also* 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1760 (3d ed. 2018) ("If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist." (footnote with citations omitted)). The proposed class definition need not identify every potential class member from the very start. *See, e.g.*, *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 645 (4th Cir. 1975); *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). This requirement is a practical one. It is meant to ensure the proposed class definition will allow the court to efficiently and objectively ascertain whether a particular person is a class member, *see In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010), for example, so that each putative class member can receive notice, *O'Connor*, 184 F.R.D. at 319.

Class certification is governed by Federal Rule of Civil Procedure 23. The court must first determine whether to certify a putative class, and if it does, it must then define the class claims and issues and appoint class counsel. Fed. R. Civ. P. 23(c)(1), (g). To be certified, a putative class must meet the threshold requirements of Rule 23(a) and the requirements of one of

7

the subsections of Rule 23(b), which defines three types of classes. *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Here, plaintiffs seek certification under Rules 23(b)(2) and 23(b)(3). Rule 23(b)(2) requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." A Rule 23(b)(2) class can be certified where "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-mart*, 564 U.S. at 360. Rule 23(b)(3) provides for certification of a class where common questions of law and fact predominate and a class action is the superior means of litigation.

Rule 23(a) imposes four requirements on every class. First, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Second, questions of law or fact must be common to the class. *Id.* 23(a)(2). Third, the named representatives' claims or defenses must be typical of those of the class. *Id.* 23(a)(3). And fourth, the representatives must "fairly and adequately protect the interests of the class." *Id*. 23(a)(4). If the putative class meets these requirements, Rule 23(b)(3) imposes two additional requirements: first, "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and second, "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* 23(b)(3). The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).

"The party seeking class certification bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO C.L.C. v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010). This burden is real; Rule 23 embodies more than a "mere pleading standard." *Wal-Mart*, 564 U.S. at 350. The party must "prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original). The trial court must then conduct a "rigorous analysis" of whether the party has met its burden, *id.*, and

"analyze each of the plaintiff's claims separately," *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). The court must verify the putative class's "actual, not presumed, conformance with Rule 23(a) . . . ." *Wal-Mart*, 564 U.S. at 351 (alterations omitted) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). This inquiry often overlaps with considering the merits of the plaintiffs' substantive claims. *Wal-Mart*, 564 U.S. at 351-52. Indeed, "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original) (citing *Wal-Mart*, 564 U.S. at 351-52); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) ("[O]ur cases requir[e] a determination that Rule 23 is satisfied, even when that requires inquiry into the merits of the claim."). These same "analytical principles" also apply to the court's analysis of whether the plaintiff meets its burden under Rule 23(b). *Comcast*, 569 U.S. at 34.

III.   DISCUSSION

    A.   Motion to Amend

Plaintiffs move for leave to file the TAC located at ECF No. 71-2. *See* ECF No. 71-1. Plaintiffs assert the proposed amendments "do not substantially change the character of the plaintiffs' theories of liability, but rather seek to expand coverage under the TAC to all of the areas in which defendants own and operate properties accepting housing choice voucher (commonly known as "Section 8") tenants, rather than just to their Sacramento-area properties." ECF No. 71-1 at 2. Plaintiffs direct the court's attention to the assigned magistrate judge's having granted expanded "class discovery to cover all Wasatch-owned properties over the western states." *Id.* Plaintiffs note the proposed TAC "simply conforms the allegations to evidence discovered—a classic reason for amendment." *Id.* Additionally, plaintiffs contend there is no undue delay or other prejudice to defendants, "no trial date has been set, and class certification has yet to be decided . . . ." *Id.* at 3.

In opposition, defendants contend plaintiffs "offer no explanation for their failure to include the proposed expansion of their class in the Second Amended Complaint" and granting this motion would permit plaintiffs "a second opportunity to seek class certification." ECF

9

No. 77 at 3. Defendants contend granting leave to amend "would cause substantial delay" and expense, and plaintiffs had "full knowledge of [d]efendants' other properties" when they last amended their complaint. *Id.*

Plaintiffs reply that their second amended complaint was limited to the amendments "addressed in the order on" defendant's motion to dismiss, "and that a plaintiff is not free to further amend without being granted further leave to amend by the Court." ECF No. 79 at 2. Additionally, plaintiffs contend the deadline to file their prior amended complaint within 14 days was a relatively short time frame and fell ten days before the close of class discovery. *Id.* According to plaintiffs, "approximately half of [d]efendants' total [document] production" occurred "in the final two weeks of the class period." Plaintiffs moved for leave to file the TAC "just days later, on August 25, 2017." *Id.* at 3. Plaintiffs also assert defendants suffered no prejudice because the TAC "was filed concurrently with the class certification motion," which permitted defendants the "full briefing period and opposition brief to address the new, geographically expanded allegations in the proposed TAC." *Id.* Plaintiffs contend they have good cause for leave to file the TAC because it incorporates class discovery and they "could not reasonably have moved to amend any earlier, until the evidence was in." *Id.* at 4.

The court finds good cause to grant leave to plaintiffs to file the TAC. Plaintiffs have shown diligence by filing their motion to amend only 11 days after the close of class discovery, which was only 12 days after "depositions of [d]efendants' persons-most-knowledgeable." *Id.* at 2; ECF No. 54 (granting joint request to modify scheduling order in part to set class certification discovery deadline of August 14, 2017); *see Kendrick v. Cty. of San Diego*, No. 15-cv-2615-GPC (RBB), 2017 WL 2692903, at *4 (S.D. Cal. June 22, 2017) (party was diligent when it filed motion to amend when "less than a month passed"). Additionally, plaintiffs are correct that the magistrate judge ordered document production and discovery responses for all of defendants' properties, not just for defendants' properties in Sacramento. *See* ECF No. 48 (ordering that "defendants shall produce further responses and documents covering the past six (6) years for all of defendants' facilities," nearly five months before plaintiffs filed the motion to amend). Defendants did not move for reconsideration of the magistrate judge's ruling,

10

and additional discovery has occurred. Plaintiffs' new allegations in the TAC coincide with evidence supplied in their motion for class certification involving tenants at defendant properties throughout California. *Compare* TAC ¶¶ 44-45 (class definitions expanded to all of California), *and* Lavine Decl. Exs. A-J (including documents related to tenants at defendants' properties in Fresno, Hanford, Kingsburg, Norco, Rancho Cordova, Sacramento, San Diego and Spring Valley, California), *with* Second Amended Complaint (SAC) ¶ 41 (ECF No. 66) (class definition limited generally to "Northern California").

Because the court finds good cause to grant plaintiffs leave to file the TAC, the court next considers any "undue prejudice" to defendants, bad faith by plaintiffs, futility in amendment, or undue delay created. *See Ascon Props.*, 866 F.2d at 1160. Defendants contend granting this request would cause "substantial delay" and "undue delay and expense" throughout their opposition but do not actually explain what this means. ECF No. 2-3. The only argument resembling an explanation is defendants' position that they have already "invested substantial time and expense during this briefing process" and granting leave to amend would "essentially hit the reset button on the entire certification process." *Id.* at 3. But as plaintiffs noted, they filed their motion to amend and motion to certify class on the same day. *Compare* ECF No. 71 (filed August 25, 2017), *with* ECF No. 72 (filed August 25, 2017). The court's own examination of the TAC reveals nothing that would delay consideration of plaintiffs' motion for class certification, necessitate additional briefing by defendants or delay the case. Defendants' arguments against certification, discussed more fully below, *see generally* Opp'n, would not materially differ based on the new TAC allegations. *See, e.g.*, TAC ¶¶ 7-8 (modifying paragraphs and adding a new paragraph speaking more generally about Section 8 tenants located at defendants' properties); *id.* ¶¶ 41-42 (quoting HAP contract sections already at dispute from the onset of this case); *id.* ¶¶ 63-85 (outlining defendants' practices and standard forms). The new class definitions plaintiffs propose have three primary differences that do not prejudice defendants in their opposition to plaintiffs' motion for class certification. *Compare* TAC ¶¶ 44-45, *with* SAC ¶ 41. First, plaintiffs have shortened the proposed class period by two years. Second, plaintiffs have changed language from "additional rent payments" to "additional charges set forth in Additional Services

11

Agreements" to better clarify the claims at issue. Third, plaintiffs have split the singular, more convoluted class definition in the SAC to two separate definitions in the TAC to delineate between a Rule 23(b)(3) class for damages or restitution and a Rule 23(b)(2) class for declaratory and injunctive relief. And fourth, plaintiffs have expanded the class definition from Northern California to all of California. Defendants' arguments are somewhat more persuasive when applied to plaintiffs' new class definition covering all of California, but as explained below, those arguments do not create an insufficient obstacle to class certification.

Beyond the changes noted above, many other aspects of the TAC remain nearly identical to the SAC. *Compare*, *e.g.*, SAC ¶¶ 104-15 (class allegations), *with* TAC ¶¶ 128-39 (class allegations expanded to all of California); *compare* SAC ¶¶ 116-170 (relief and claims, causes of action, request for jury trial, and prayer for relief), *with* TAC ¶¶ 140-194 (substantially identical (relief claims, causes of action, request for jury trial, and prayer for relief). The same exhibits are attached to the SAC and TAC as well. *Compare* SAC Exs. A-K, *with* TAC Exs. A-K.

Because the court observes no prejudice, bad faith, futility or delay occasioned by the proposed amendment, plaintiffs' motion to amend is GRANTED.

The court therefore considers the motion for class certification as based on the TAC and construes defendants' opposition accordingly. *See Stuart*, 2009 WL 281941, at *1-4, 6, 13-14, 18 (granting leave to amend where plaintiff moved to file new complaint after moving for class certification and defendant "pointed out [plaintiff] was asking for certification of a class different from that alleged in his complaint," then relying on new complaint when addressing motion for class certification); *cf. In re TFT–LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 590-91 (N.D. Cal. 2010) (allowing modification of class definition during class certification briefing because "the proposed modifications are minor, require no additional discovery, and cause no prejudice to defendants"); *Patten v. Vertical Fitness Grp., LLC*, No. 12CV1614-LAB (MDD), 2013 WL 12069031, at *4 (S.D. Cal. Nov. 8, 2013) (considering the class definition embodied in a motion for class certification because defendant suffered no prejudice despite plaintiff's offering "one class definition in a complaint, a different class definition in a subsequent

12

motion for class certification, and essentially the original class definition in a *subsequent* first

amended complaint") (emphasis in original).

  B.  <u>Motion for Class Certification</u>

    Plaintiffs seek certification of two classes.  First, plaintiffs seek certification of a

Rule 23(b)(3) class for damages or restitution defined as:

> All persons who, in the time period starting four years prior to the
> date of filing this Complaint through the final resolution of this
> matter, (1) have been tenants at any of Defendants' California
> properties; (2) have participated in the "Section 8" Housing Choice
> Voucher Program in connection with their tenancies at the California
> properties; and (3) have paid additional charges set forth in
> Additional Services Agreements in excess of their individual
> portions of the contract set forth in the HAP Contracts.

Mot. at 9; TAC ¶ 44.

    Second, plaintiffs seek certification of a Rule 23(b)(2) class for declaratory and

injunctive relief defined as:

> All persons who: (1) are or will become tenants at any of Defendants'
> California properties; (2) participate or will participate in the
> "Section 8" Housing Choice Voucher Program in connection with
> their tenancies at the California properties; and (3) pay or will pay
> additional charges set forth in Additional Services Agreements in
> excess of their individual portions of the contract rent set forth in the
> HAP Contracts.

Mot. at 9; TAC ¶ 45.

    Plaintiffs seek to certify these classes as to plaintiffs' California state law claims

for breach of contract, violation of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et

seq.*) and violation of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*).  Mot.

at 12-18.  Plaintiffs do not seek class certification on their False Claims Act claim.  *Id.* at 1.

    Plaintiffs rely on several declarations.  *See* ECF Nos. 72-2, 72-3, 72-4, 72-5.  For

example, named plaintiff Roy Huskey III's declaration describes his own experience of paying

"additional rent payments, or 'side payments,' not set forth in [his] HAP Contract or yearly

subsidy adjustment notices," including "in-unit washer and dryer appliances, and for renter's

insurance, as reflected in [his] rent ledger . . . ."  Huskey Decl. ¶ 6, ECF No. 72-2.  Huskey's

declaration incorporates several attached documents, including Huskey's Lease Supplemental

Agreement with attached Tenancy Addendum, HAP Contract and Residential Rental Agreement. *See id.* Ex. A. Huskey refers to a Wasatch Property Management Resident Ledger, also attached to his declaration as an exhibit. *See id.* Ex. B.

Named plaintiff Denika Terry makes similar contentions in her own declaration, specifically referencing extra "rent payments, or 'side payments,'" in the form of "in-unit washer and dryer appliances, for covered parking, and for renter's insurance . . . ." Terry Decl. ¶ 6, ECF No. 72-3. Terry's declaration also contains a Lease Supplemental Agreement, HAP Contract and Wasatch Property Management Resident Ledger. *Id.* Exs. A-B.

Plaintiffs' attorneys have submitted declarations explaining their experience. Jesse Newmark has submitted a declaration as attorney of record for plaintiffs explaining his organization's experience and his own experience in "significant class action and complex litigation" as well as experience with low-income tenants. Newmark Decl. ¶ 3, ECF No. 72-4; *see also id.* ¶¶ 2-23. David Lavine has submitted a declaration that details in part his experience and his firm's experience with low-income tenant cases and class action suits. Lavine Decl. ¶¶ 3-6, ECF No. 72-5.

Lavine's declaration also attaches and authenticates a multitude of exemplar documents related to tenants at defendants' properties. *See id.* Exs. A-K (including HAP contract examples, Additional Services Agreements, Resident Ledgers and 3-Day Notices to Perform Financial Covenant of Lease or Quit that include parking charges, washer and dryer rental and rental insurance calculated as the amount owed).

Plaintiffs have submitted excerpts of Rule 30(b)(6) deposition transcripts of Dave Tanforan, the regional manager overseeing nine properties in the Sacramento area and "Bay Area," Janae Jarvis, a vice president, Shawn Fetter, another vice president, and Sylvia Gamboa, a property manager of multiple Sacramento properties. *Id.* Exs. L-O; Tanforan Decl. ¶ 1, ECF No. 78-1.

The core of plaintiffs' motion for class certification is their assertion that this case involves standard form contracts and additional side payments improperly and illegally treated as rent. Mot. at 3-5. Specifically, plaintiffs contend the HAP Contracts and other documents

attached to the Terry and Huskey declarations are "standard form HAP contracts and standard forms used by [d]efendants at all of their California properties." *Id.* at 3. According to plaintiffs, "[d]efendants use company-wide software at their properties to generate identical forms." *Id.* at 3. Among these forms are Additional Services Agreements, confirmed by deposition testimony as part of the lease. *Id.* at 4; *see* Tanforan Dep. at 65:13-66:4, 139:11-140:2 (confirming Additional Services Agreements are part of the lease throughout all of Tanforan's employment). The Additional Services Agreements include charges for items such as renter's insurance, in-unit washers and dryers and parking. Mot. at 5. Based on deposition testimony and defendants' own forms, defendants would subtract the amount past due on additional charges from the next monthly rental payment, resulting in a default in rent. *Id.*; *see, e.g.*, Tanforan Dep. at 76:3-77:9. Through standard 3-Day Notices to Perform Financial Covenant of Lease or Quit, defendants would demand tenants comply with the lease or quit for past due amounts, which included parking charges, washer and dryer rental and rental insurance. *See* Lavine Decl. Ex. J; Jarvis Dep. at 234:24-235:7 (noting if delinquency for payment "exceeded a hundred dollars, a 3-day notice to pay or quit would go out"). Whether the additional charges were preconditions of leasing an apartment or optional, defendants "had a policy of treating all additional charges as rent," which included "using unpaid additional charges as grounds for eviction." Mot. at 7; *see* Tanforan Dep. at 156:8-11; Lavine Decl. Ex. J (Three-Day Notices to Perform or Quit including parking charges, renter's insurance, and washer and dryer rental).

The court addresses the parties' specific contentions below to determine if plaintiffs have satisfied Rule 23(b)(3)'s requirements to certify a class, as to each class covered by their motion.

### 1. Numerosity

Plaintiffs contend they have satisfied the numerosity requirement of Rule 23(a). Mot. at 9. Defendants do not disagree.

Under the numerosity requirement, a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement is presumptively satisfied

when there are at least forty members. *See Jordan v. Los Angeles Cty.*, 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds by Cty. of Los Angeles v. Jordan*, 459 U.S. 810 (1982).

Plaintiffs have indicated an inability to compile a class list despite multiple discovery requests to defendants. Lavine Decl. ¶ 8. According to plaintiffs, "opposing counsel has replied that plaintiffs' counsel should compile such a class list ourselves based on the document production" despite "deposition testimony . . . that certain Section 8 tenant files could not be located, and thus were not provided." *Id.* Plaintiffs have therefore estimated class size "until the matter maybe pressed during merits discovery." *Id.* Regardless, plaintiffs assert the class size exceeds 150 members "in four Sacramento properties alone," and the court finds the evidence provided supports this assertion. *See* TAC ¶ 132; Lavine Decl. Exs. A-K. Plaintiffs have satisfied the numerosity requirement. *See Westfall v. Ball Metal Beverage Container Corp.*, No. 2:16-cv-02632 KJM GGH, 2018 WL 705534, at *5 (E.D. Cal. Feb. 5, 2018) (finding "approximately 140 to 150 members of the proposed class. . . . satisfies the numerosity requirement").

### 2. Typicality

Generally speaking, plaintiffs contend the HAP Contracts and other documents attached to the Terry and Huskey declarations are "standard form HAP contracts and standard forms used by [d]efendants at all of their California properties." Mot. at 3. According to plaintiffs, "[d]efendants use company-wide software at their properties to generate identical forms." Mot. at 3; *see* Tanforan Dep. at 66:18-67:8, 71:11-15, 223:22-224:24 (observing multiple standard forms including the Rental Agreement, Lease Agreement and Additional Services Agreements; confirming there are no differences in them property to property); Jarvis Dep. at 148:2-13 (confirming the Additional Services Agreement is a form out of a software system assigned code number "207.02"); Fetter Dep. at 95:2-11 (confirming software believed to be used "across Wasatch" and confirming the same software has been seen in California). In addition to these "nearly identical form contracts with [d]efendants," both named plaintiffs have paid "additional charges," and have suffered "the same injury" of "being charged more rent than allowed under federal law and HAP Contracts." Mot. at 10.

For the Rule 23(b)(3) class, defendants assert named plaintiffs' claims are not typical of the class because the named plaintiffs "are subject to unique defenses that other putative class members currently living in Wasatch properties would not be subject to." Opp'n at 14-15. For Terry, this would include "the affirmative defense of *res judicata*" because she was evicted in a judicial proceeding for failure to pay rent and perjury at her deposition. *Id.* at 15. For Huskey, unique defenses would include his eviction for "repeated racist conduct" and his voluntarily signing up for additional service or appliances. *Id.*

The "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The court finds the claims of the named plaintiffs typical of the claims and defenses of the class. Here, plaintiffs claim defendants treated additional charges as rent in violation of state law and contrary to standard form contracts between defendants and their Section 8 tenants. The contracts for Terry, Huskey and the other tenants are substantially identical. *Compare* Terry Decl. Ex. A, *and* Huskey Decl. Ex. A, *with* Lavine Decl. Exs. A-C. Defendants' use of standard forms for these contracts supports typicality. Defendants' treatment of Terry's and Huskey's additional charges does not appear to differ from defendants' treatment of additional charges for other potential class members. *Compare* Terry Decl. Ex. B (Resident Ledger not differentiating washer and dryer rental and renter's insurance from rent itself), *and* Huskey Decl. Ex. B (Resident Ledger), *with* Lavine Decl. Exs. D-E, J (example Resident Ledgers, Monthly Cost Breakdowns and Monthly Statements of Rental Accounts including additional service charges, and 3-Day Notices to Perform Financial Covenant of Lease or Quit including parking charges, washer/dryer rental and rental insurance). Here, there is no concern about variation in named plaintiffs' damages from class members' damages because "it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).

Defendants specifically contend Terry owed $316 for "rent to owner . . . distinct and separate from . . . additional services," Opp'n at 14, and review of Terry's Resident Ledger shows $310.25 was due on February 4, 2013 without differentiation between contract rent and unpaid additional charges, such as the washer/dryer rental charge from February 1, 2013 and

17

renter's insurance charge from February 1, 2013, Terry Decl. Ex. B. Defendants' Three-Day

Notice to Pay Rent or Quit does not differentiate the $310.25 between overdue rent or overdue

additional charges. *See* Tanforan Decl. Ex. 3, ECF No. 78-1 at 22. Defendants' asserted unique

defense, to the extent it has any merit, is therefore not relevant to plaintiffs' putative class claim.

*See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 n.9 (9th Cir. 2011) ("Differing factual

scenarios resulting in a claim of the same nature as other class members does not defeat

typicality."); *O'Connor v. Uber Techs.*, No. C-13-3826 EMC, 2015 WL 5138097, at *10 (N.D.

Cal. Sept. 1, 2015) ("Rule 23(a)(3)'s test of typicality is not whether there are *any* differences

between the representative plaintiffs and the class members they seek to represent. . . . the

typicality requirement simply measures whether the named [p]laintiffs' *legal claims* all arise from

essentially the same conduct . . . and whether their fellow class members suffered the same legal

injury.") (emphasis in original).

   Defendants' argument that Terry's eviction operates as *res judicata* here also is

unavailing because an unlawful detainer action would not preclude plaintiffs' putative class

action claims. *See Vella v. Hudgins*, 20 Cal. 3d 251, 255 (1977) (noting unlawful detainer actions

are "summary in character" and therefore usually have "very limited res judicata effect" bearing

only on the right of possession that "will not prevent one who is dispossessed from bringing a

subsequent action to resolve questions of title, . . . or to adjudicate other legal and equitable

claims between the parties"); *Malkoskie v. Option One Mortg. Corp.*, 188 Cal. App. 4th 968, 975-

76 (2010) (finding subsequent claims challenging the validity of a foreclosure sale barred where,

in the unlawful detainer action, bank based its right of possession of the property on its "duly

perfected" legal title obtained in the nonjudicial foreclosure sale). Plaintiffs' putative class action

claims do not involve the right of possession or any claims related to title.

   Additionally, Huskey's voluntary signing up for additional services would not and

did not change how defendants handled any past due amounts in relation to a tenant's rent

obligations, default, and notices to perform or quit. Nor would the defendants' basis for their 3

Day Notice to Perform or Quit serve as a "unique defense" that will "become the focus of the

litigation" over defendants' alleged treatment of additional charges as rent. *See Hanon*, 976 F.2d

18

at 508. These "legally irrelevant" differences, along with the legally irrelevant basis for Huskey's eviction, do not render Huskey's or Terry's claims atypical. *See O'Connor*, 2015 WL 5138097, at *10.

Finally, defendants' attacks on Terry and Huskey's credibility do not affect their status as typical representatives of the class. *See O'Connor*, 2015 WL 5138097, at *11 (deposition testimony was "far less damning than [defendant's] brief implies"; rejecting defendant's typicality argument on this basis). Named plaintiffs are inadequately typical based on questionable credibility only when, unlike here, credibility issues are "directly relevant to the litigation or there are confirmed examples of dishonesty, such as criminal conviction for fraud." *Harris v. Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010). Whether Terry owned a car or not is not relevant to plaintiffs' putative class claims; whether defendants treated Terry's additional charges for parking as rent is relevant.

Furthermore, the court does not find the Terry deposition testimony clear enough to establish Terry lied, much less engaged in dishonesty akin to a "criminal conviction for fraud." *Id.* Terry did testify that she purchased a car in 1999 and responded "Yes" when asked if she owned that car continuously until it was towed away in March 2013. Terry Dep. at 222:10-18, 225:9-15, ECF No. 78-3. But that testimony does not necessarily contradict Terry's assertions that she "had no car" but was still being charged for the parking. *Id.* at 125:19-20. Nor does Terry's testimony about owning a car from 1999 to 2013 necessarily contradict her statement that she "no longer had a vehicle," did not have a vehicle "at all" when she "first moved there, and never had a car but her "mother had a car." *Id.* at 47:18-21, 83:15-17. Nothing in Terry's testimony indicates her ownership of the car involved possession of that car at her residence or use of the parking spot for which she was charged.

Defendants' concerns about Huskey's credibility are not relevant because they involve the circumstances of his eviction, not additional charges treated as rent. Furthermore, Huskey has denied an accusation by a defense witness and the court at this time has no basis on which to determine who is correct. *Compare* Huskey Dep. at 66:23-67:4, ECF No. 78-3 (Huskey

denying he called downstairs tenant racial epithet or any names at all), *with* Smith Decl. ¶ 16-20, ECF No. 78-2.

Rather, Huskey's deposition testimony debatably squares with the stated reasons for his Three-Day Notice to Perform Covenant of Lease or Quit: loud music, playing instruments and other loud noise starting around 11:45 at night. *Compare* Huskey Dep. at 65:5-14 (admitting to purposely stomping around to make noise when he was told to leave), *with* Smith Decl. Ex. 6. If anything, Smith's declaration is not consistent with the Three-Day Notice to Huskey.

### 3. Adequacy

Plaintiffs contend putative class members "have suffered the same injuries from [d]efendants' unlawful actions" as named plaintiffs: "being charged more rent than allowed under federal law and the HAP Contracts." Mot. at 10. Additionally, plaintiffs contend no evidence shows named plaintiffs "have any interest that is antagonistic to the interests of the class." *Id.* at 11. Last, plaintiffs contend their counsel "are highly qualified, experienced, and knowledgeable in the issues raised in this litigation, and have shown themselves to be fiercely dedicated to the tenants they represent." *Id.* Defendants do not directly address adequacy in their opposition.

Class representatives must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

The court has reviewed declarations submitted by plaintiffs' counsel. *See* Newmark Decl. ¶¶ 2-23; Lavine Decl. ¶¶ 3-6. There are no conflicts of interest with other potential class members based on these declarations and the rest of the evidence before the court. Counsel's credentials reflect long-standing advocacy for low-income tenants and sufficient familiarity with class action litigation. *See, e.g.*, Newmark Decl. ¶¶ 2, 9-12, 17-18; Lavine Decl. ¶¶ 4, 6.

Although defendants do not expressly contend the named plaintiffs are not adequate to represent the class, defendants do refer to deposition testimony in which Terry admits

she did not read the complaint in this case and believed the class action complaint involved the same claims as her state habitability lawsuit. Opp'n at 3 (citing Terry Dep. at 36:7-40:21, 108:2-12, 201:22-202:17). Terry did testify that she understood this lawsuit to be mostly, if not completely, about her eviction from the apartment complex and the physical condition of the apartment complex. Terry Dep. at 36:7-40:21. Terry had not reviewed at least one document and appeared to be unfamiliar with Centro Legal de la Raza's representation of her. *Id.* at 108:2-110:15.

But supplemental deposition transcripts provided by plaintiffs provide the full context of Terry's understanding of her position as a class representative. For instance, Terry understood she was not "the only person that will possibly be going through the things that [she is] going through." Terry Dep. at 44:20-24, ECF No. 80-1. Terry also clearly stated an understanding of the lawsuit involving "Section 8, things like insurance." *Id.* at 45:7-13. Terry noted she paid for insurance, for "the washers, dryers, things of that nature that was required that . . . had nothing to do with Section 8—that they were charging us for . . . ." *Id.* at 45:8-12. Terry noted "more fees and more fees being added that had nothing to do with the fees that were requested underneath the contract of Section 8." *Id.* at 46:3-6. Terry even confirmed her understanding of questioning during the deposition as involving discussion of charges for things Terry did not think were correct, including the washer and dryer, parking and rental insurance. *Id.* at 201:1-12. Terry's knowledge of the facts therefore far exceeds that of someone "startlingly unfamiliar" with her case. *See Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004), *amended in part*, No. C 02-5849 PJH, 2012 WL 3070863 (N.D. Cal. July 26, 2012) ("The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim. . . . [The party] will be deemed inadequate only if she is 'startlingly unfamiliar' with the case."). Terry sufficiently explained "the factual basis for the lawsuit and why [she] believed [she] was wronged." *Johnson v. Hartford Cas. Ins. Co.*, No. 15-CV-04138-WHO, 2017 WL 2224828, at *14 (N.D. Cal. May 22, 2017) (citation omitted).

The court further finds Terry likely will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. At deposition, Terry testified she is looking at being a

21

potential class representative as "a person trying to just say the truth and basically be a head of something." Terry Dep. at 202:5-7. Terry is "kind of here to really get the justice." *Id.* at 202:16-17.

Plaintiffs have satisfied the adequacy requirement.

4.     Commonality and Predominance

For their breach of contract claim, plaintiffs contend the "core issue common to the class is whether the side payments for additional charges constitute additional rent prohibited under the HAP Contracts and leases." Mot. at 12. Additionally, common factual issues are "whether the additional charges set forth in the side agreements constitute unlawful rent in breach of the contract." *Id.* at 13. Additional common issues include whether defendants breached the leases by charging or accepting payment for appliances such as in-unit laundry machines, or by imposing additional charges as a precondition to tenancy. *Id.* According to plaintiffs, defendants raise a common issue in their "main defense" when asserting "that federal law does not regulate additional charges, the local housing agencies do not prohibit these charges, and thus such charges are subject to arms-length negotiations between [d]efendants and each Section 8 tenant." *Id.*

For their CLRA claim, plaintiffs contend defendants violated the statute because they were "prohibited by law from charging additional rent beyond the contract rent" and therefore misrepresented an obligation to tenants prohibited by law. *Id.* at 15 (citing Cal. Civ. Code § 1770(a)(14)). Plaintiffs also direct the court's attention to defendants' assertion of a defense "common to the class: that the charges do not constitute rent." *Id.* at 16 (citing ECF No. 26 at 6-7).

For their UCL claim, plaintiffs assert common issues predominate in part because the UCL claims here are based on defendants' unlawful business act or practice of "charging and collecting additional side payments from Section 8 tenants," a policy that "violates federal law prohibiting an owner from charging or accepting rent beyond the contract rent." *Id.* at 17 (citing 42 U.S.C. § 1437 f(c); 24 C.F.R. § 982.451(b)(4)(i)-(ii)); *see also* Cal. Bus. & Prof. Code § 1700 (prohibiting any "unlawful, unfair, or fraudulent business act or practice"). Common questions

therefore include "whether federal law prohibits" defendants from charging or accepting rent beyond the contract rent and whether the additional charges constitute rent. *Id.* Plaintiffs also contend their UCL claim relies on their federal False Claims Act claim because defendants "submitted claims to the government for payment of rent while knowingly violating these federal regulations and HAP Contracts . . . ." *Id.* Plaintiffs also rely on the "fraudulent" and "unfair" UCL prongs. *Id.*; *see* Cal. Bus. & Prof. Code § 17200.

Defendants argue that making the determination "as to whether the additional charges agreed to in the [Additional Services Agreements] constitute added rent that is prohibited under the HAP Contracts and leases" would require "answers to dozens of individualized questions" that would only apply "to the specific tenant and question, and that specific unit for a finite period of time." Opp'n at 10. According to defendants, "a particular item within an [Additional Services Agreement] might be valid for a unit one day, and yet be different a month or two later." *Id.* Market changes could require an owner to "include or remove certain amenities into a base rent to stay consistent with the market for that locality." *Id.* Defendants assert these individual issues reveal no common issue common to the class for all three of plaintiffs' putative class action claims. *Id.* at 12. Additionally, defendants contend showing materiality or actual reliance by tenants on any purportedly deceptive, unlawful, unfair or fraudulent acts—required elements for a CLRA or UCL claim—would involve individualized showings not appropriate for class certification. *Id.* at 12-13. Defendants assert "there is no classwide proof that all tenants who purchased the additional services were forced to do so" and that tenants might have signed up for additional services "because they wanted them." *Id.* at 13-14 (footnote omitted).

Plaintiffs contend individualized damages calculations are not a bar to class certification on the common issues predominating in this case. Mot. at 13. Plaintiffs argue that showing likely deception under the UCL "is an objective standard" with a modest burden of proof, and actual reliance maybe inferred from a material misrepresentation to establish both the CLRA and UCL claims. *Id.* at 17-18. In reply, plaintiffs contend defendants ignore plaintiffs' chosen theory of liability. Reply at 4. Additionally, that some tenants voluntarily chose some optional charges is irrelevant to plaintiffs' theories because defendants treat additional charges

"as rent uniformly across their properties once the tenant incurs the charges." *Id.* Additionally, defendants "ignore[d] the cases showing that causation can be determined classwide." *Id.* at 5.

As explained below, the court finds plaintiffs have shown questions of law and fact common to the class and shown these questions predominate over any questions affecting only individual class members.

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). These questions exist where class members suffer the same alleged injury, *Falcon*, 457 U.S. at 156, such that simultaneous litigation is productive, *Wal-Mart*, 564 U.S. at 350. "This does not mean merely that [class members] have all suffered a violation of the same provision of law." *Id.* Rather, the claims "must depend upon a common contention," the nature of which "is capable of classwide resolution." *Id.* Common litigation must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Although just one common question could suffice to establish commonality, *id.* at 359, the true inquiry is into "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation," *id.* at 350 (emphasis in original) (citation and internal quotation marks omitted). But "[d]issimilarities within the proposed class . . . have the potential to impede the generation of common answers." *Id.* (citation and internal quotation marks omitted).

After establishing the existence of common questions of law or fact, the proponent of a putative class also must establish that these questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). Some variation is permitted among individual plaintiffs' claims, *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 963 (9th Cir. 2013), but Rule 23(b)(3) is "more demanding than Rule 23(a)," *Comcast*, 569 U.S. at 34. Courts are thus required "to take a 'close look' at whether common questions predominate over individual ones," *id.* (citation omitted), "begin[ning] . . . with the elements of the underlying

cause of action," *Erica P. John Fund, Inc.*, 563 U.S. at 809. Plaintiffs need not show at the threshold certification stage predominant questions will be answered in their favor. *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013). The court considers the merits of the plaintiff's underlying claim only to the extent required by Rule 23. *Id*. at 466 (citing *Wal-Mart*, 564 U.S. at 351 n.6); *Comcast*, 569 U.S. at 33-34 ("Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim'. . . because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'") (quoting *Falcon*, 457 U.S. at 160).

To prevail on a motion to certify a class under Rule 23(b)(3), the party seeking certification must show: "(1) that the existence of individual injury resulting from the alleged . . . violation . . . [is] capable of proof at trial through evidence that is common to the class rather than individual to its members; and (2) that the damages resulting from that injury [are] measurable on a class-wide basis through use of a common methodology." *Comcast*, 569 U.S. at 30 (citation and internal quotation marks omitted). "Rule 23(b)(3), however, does not require a plaintiff . . . to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof." *Amgen*, 568 U.S. at 469 (emphasis and alterations in *Amgen*) (citation and internal quotation marks omitted). Similarly, because "'individualized monetary claims belong in Rule 23(b)(3),'" "the presence of individual damages cannot, by itself, defeat class certification . . . ." *Leyva*, 716 F.3d at 514 (quoting *Wal-Mart*, 564 U.S. at 362).

Here, plaintiffs have established common questions of law that apply to all class members' claims. Plaintiffs' claims all involve the resolution of whether defendants' "additional charges set forth in Additional Services Agreements" violated defendants' HAP Contract provisions with Section 8 tenants or federal law. *See* TAC ¶¶ 44-45. Resolving this issue would resolve plaintiffs' breach of contract claim, CLRA claim, UCL claim under any prong, and even the non-class False Claims Act claim. Defendants have not contested plaintiffs' substantial evidence that defendants used the same standard forms for the various agreements that apply to all potential class members. *See, e.g.*, Lavine Decl. Exs. A-K; Tanforan Dep. at 65:13-66:4, 139:11-140:2 (confirming Additional Services Agreements are part of the lease throughout all of

Tanforan's employment); Tanforan Dep. at 76:3-77:9 (confirming regular practice of defendants subtracting the amount past due on additional charges from the next monthly rental payment, resulting in a default in rent); Jarvis Dep. at 234:24-235:7 (noting if delinquency for payment "exceeded a hundred dollars, a 3-day notice to pay or quit would go out"); Tanforan Dep. at 156:8-11; Lavine Decl. Ex. J (Three-Day Notices to Perform or Quit including parking charges, renter's insurance, and washer and dryer rental); Lavine Decl. Ex. J (standard 3-Day Notices to Perform Financial Covenant of Lease or Quit demanding tenants comply with the lease or quit for past due amounts, which included parking charges, washer and dryer rental and rental insurance).

Defendants' assertion that resolving the above question would involve individualized assessments on a tenant-by-tenant and unit-by-unit basis does not hold up under close examination of the record. *See, e.g.*, Lavine Decl. Ex. D (examples of defendants' Resident Ledgers, detailing defendants' tracking of additional charges such as washer/dryer rental, renter's insurance and parking charges as part of the same running total along with rent); *id.* Ex. F (examples of monthly statements including additional charges with monthly rent charges); *id.* Ex. J (examples of Three-Day Notice to Perform Financial Covenant of Lease or Quit including renter's insurance, parking charges and washer/dryer rental as part of the obligation "to cure the breach of the lease agreement"). Defendants' treatment of these additional charges is consistent in the record before the court. And federal law prohibits an owner from exceeding the maximum monthly rent laid out in the HAP Contract, a contract that is a constant (among other agreement forms) for the proposed class. *See* 42 U.S.C. § 1437f(c)(1)(A) (HAP Contract "shall establish the maximum monthly rent (including utilities and all maintenance and management charges) which the owner is entitled to receive . . . ."); 24 C.F.R. § 982.451(b)(3), (b)(4)(i) (total rent paid by tenant plus government housing assistance paid by owner may not be more than rent to owner). In the record before the court, whether the market dictated providing free parking at one location or additional charges for parking at another location does not alter how defendants treated those additional charges. Lavine Declaration exhibits D, F and J all serve as examples of "proof at trial through evidence that is common to the class rather than individual to its members . . ." *Comcast*, 569 U.S. at 30 (citation and internal quotation marks omitted). As plaintiffs have noted, "What

matters is the overarching issue of whether the side agreements are subject to federal regulation because they contain rent payments beyond the tenant's share of the contract rent, not the local administration of those rent payments."  Mot. at 14 (citations omitted).

To the extent calculations would vary across tenants and different properties, those calculations would reflect differences in entitlement to damages.  Because "'individualized monetary claims belong in Rule 23(b)(3),'" "the presence of individual damages cannot, by itself, defeat class certification . . . ." *Leyva*, 716 F.3d at 514 (quoting *Wal-Mart*, 564 U.S. at 362).  "[T]he rule is clear: the need for individual damages calculations does not, alone, defeat class certification."  *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016).  Defendants' own records will facilitate any individual damages calculations.  *See, e.g.*, *Brown v. Hain Celestial Grp., Inc.*, No. C 11-03082 LB, 2014 WL 6483216, at *16 (N.D. Cal. Nov. 18, 2014) (observing defendant's records "allow the parties to readily tell which products meet the [relevant] threshold," observing "[t]o the extent that this raises individual issues, then, those issues are easily tamed" and reasoning those issues "do not predominate over the several key shared issues that dominate this case").

Regardless, any "fortuitous non-injury to a subset of class members does not necessarily defeat certification of the entire class" in part because "the district court is well situated to winnow out those non-injured members at the damages phase of the litigation, or to refine the class definition."  *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016); *see also Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 609-10 (C.D. Cal. 2015).

Plaintiffs have shown that any "damages resulting from th[eir] injury [are] measurable on a class-wide basis through use of a common methodology."  *Comcast*, 569 U.S. at 30 (citation and internal quotation marks omitted).  Here, damages are measurable based on reference to defendants' own records and any eventual determinations whether, if any, additional charges were prohibited under federal law.  *See, e.g.*, Lavine Decl. Ex. D; *Leyva*, 716 F.3d at 514 (calculating damages "based on the wages each employee lost due to [defendant's] unlawful practices"); *Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 219 (E.D. Cal. 2015), *order*

27

*clarified*, No. 2:13-cv-01282-KJM-AC, 2015 WL 12550898 (E.D. Cal. Mar. 30, 2015), *aff'd*, 690 F. App'x 526 (9th Cir. 2017), *and cert denied sub nom. Taylor Farms Pac., Inc. v. Del Carmen Pena*, 138 S. Ct. 976 (2018) ("Damages may also be susceptible to calculation through a common methodology on the basis of time records such as those already produced.").

California district courts commonly certify classes for breach of contract claims. *See, e.g.*, *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB, 2014 WL 2734953, at *1, 22 (N.D. Cal. June 13, 2014) (granting motion to certify class based in part on "breach of [plaintiffs'] form mortgage contracts by [defendant]" and observing "[t]hese are identical form mortgage contracts involving identical harm with relatively small damages, precisely the sort of contract claims that lend[] themselves to class treatment"); *In re Med. Capital Secs. Litig.*, No. SAML 10-2145 DOC (RNBx), 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) ("[c]ourts routinely certify class actions involving breaches of form contracts"; collecting cases); *Menagerie Prods. v. Citysearch*, No. CV 08-4263 CAS (FMO), 2009 WL 3770668, at *9 (C.D. Cal. Nov. 9, 2009) ("'When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.'") (citing *Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983)).

Defendants rely on *Caro v. Proctor & Gamble*, 18 Cal. App. 4th 644 (1993), to support their contention that "[a] single determination of materiality is not possible here." Opp'n at 13 (internal quotation marks omitted). But defendants' reliance on this case is misplaced. There, a California Court of Appeal affirmed the lower court's denial of class certification for claims including a CLRA claim. *Caro*, 18 Cal. App. 4th at 653-55. The *Caro* court acknowledged that "a misrepresentation's materiality involves an objective inquiry susceptible to common proof." *Id.* at 667. The named plaintiff himself did not believe defendants' product to be fresh, as it was advertised to be. *Id.* at 668. The court reasoned "it would be a matter of individualized proof" whether class members believed defendants' product was fresh or whether class members who actually read portions of the label stating "from concentrate" found misleading a claim that the product contained "no additives." *Id.* at 668.

The California Court of Appeal has clarified the meaning of *Caro*, stating "nothing we said in *Caro* undermines the general rule permitting common reliance where material misstatements have been made to a class of plaintiffs." *Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1294 (2002), *as modified on denial of reh'g* (May 29, 2002). Instead, "our holding in *Caro* merely stands for the self-evident proposition that such an inference [of common reliance] will not arise where the record will not permit it." *Id.*

Here, there are no such issues precluding an inference of common reliance. Nothing in the record indicates class members read only some portions of their series of standard form agreements. Additionally, California courts do not view "failure to read a contract before signing" as a reason alone "to refuse its enforcement." *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal. App. 3d 668, 671 (1971); *see also Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 423 (1996) (negligent failure to read a contract will not eliminate the signing party's assent to the contract). The alleged misrepresentations of tenant obligations prohibited by law were in the agreements themselves. Nothing in the record indicates class members paid for additional charges despite not believing they had a legal obligation to pay.

Rather, "California courts often find predominance satisfied in CLRA cases because 'causation, on a classwide basis, may be established by materiality, meaning that if the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to that class[.]'" *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 522 (C.D. Cal. 2015), *modified*, 314 F.R.D. 312 (C.D. Cal. 2016) (citing *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (collecting cases)); *see In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 982 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), and *aff'd*, 674 F. App'x 654 (9th Cir. 2017) (observing California's UCL, CLRA and False Advertising Law allow "plaintiffs to establish materiality and reliance (i.e., causation and injury) by showing that a reasonable person would have considered the defendant's representation material"). Here, plaintiffs allege the misrepresentations occurred in the standard form agreements and other documents, including Three-Day Notices to Perform Financial Covenant of Lease or Quit, misrepresenting to class members their obligation to pay additional

charges prohibited by federal law.  *See* Lavine Decl. Exs. A-K.  All evidence before the court indicates all members of plaintiffs' proposed class received these same standard forms, including deposition testimony from defendants' witnesses.  *See, e.g.*, Tanforan Dep. at 65:13-66:4, 139:11-140:2.

No issues pertaining to commonality preclude class certification of plaintiffs' UCL claim.  To the extent plaintiffs' claims rely on the UCL's unlawful prong, the court has already addressed common issues above because the breach of contract claim overlaps with asserted federal law violations and defendants' violating the CLRA would satisfy the unlawful prong.  Plaintiffs' False Claims Act claim involves the same issue, namely conduct violating the HAP Contract provisions prohibiting defendants from charging additional rent above the contract rent.  *See* Mot. at 17.

Defendants' contentions about materiality and reliance related to the CLRA are unavailing as well when applied to plaintiffs' UCL claims.  *See, e.g.*, *ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 at 982.  Claims under the fraudulent and unfair prongs of the UCL statute require a plaintiff to satisfy a "modest" burden of proof: "the representative plaintiff must show that members of the public are likely to be deceived by the practice."  *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017) (quoting *Prata v. Superior Court*, 91 Cal.App.4th 1128, 1144 (2001)).  Courts "assess likelihood of deception under a 'reasonable consumer standard.'"  *Id.* at 1055 (citation omitted).  All evidence currently before the court indicates named plaintiffs, class members and defendants all expected the tenant class members to pay their additional charges or face eviction.  No evidence suggests class members believed they were not obligated to pay additional charges, including mandatory additional charges or optional charges once the tenant chose those options.

5.      Superiority: Rule 23(b)(3) Class

Plaintiffs contend a class action suit is superior to other methods here in part because "the individual damages are really small" and "would be outweighed by the expense and burden of separate lawsuits" that cannot be sustained by low-income individuals receiving rent subsidies under Section 8.  Mot. at 18.  Plaintiffs' counsel are not aware of any other related

litigation, concentrating the litigation will be efficient and avoid inconsistent rulings, and any difficulties in managing the class action may be mitigated by a separate liability phase and separate damages phase for trial. *Id.* at 18-19.

Defendants contest plaintiffs' claims that the litigation "would devolve into a series of individualized mini-trials" and would involve presentation of "historic market data, comparable property data, what was considered the 'locality,' vacancy rates, 30 day notice rates," and other evidence that "would be daunting for even the most enthusiastic juror." Opp'n at 16. Defendants argue plaintiffs have failed to provide "any roadmap for how their claims would be litigated." *Id.* Additionally, defendants contend "the superior method for resolving the [Additional Services Agreement] issue lies with" the local housing and redevelopment agency, for example the Sacramento Housing and Redevelopment Agency, for relevant defendant properties. *Id.* Defendants assert the court should defer to the local housing and redevelopment agency's review and approval of Section 8 tenants' leases. *Id.* at 17.

Because predominance of common questions does not alone justify approval of a Rule 23(b)(3) class action, a court must determine if "another method of handling the [case] may be available which has greater practical advantages." Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment. Rule 23(b)(3) requires a court find a class action is the "superior" method of resolution. *Id.* This constraint is meant to lead the court "to assess the relative advantages of alternative procedures for handling the total controversy." *Id.* Rule 23(b)(3) provides that superiority is determined by considering, for example,

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing the class action.

*Id.*; *see also Zinser v. Accuflix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

The Supreme Court has acknowledged that Rule 23(b)(3) contemplates the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617 (citation and internal quotation marks omitted). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem by aggregating the relatively paltry potential recoveries . . . ." *Id.*

The court first assesses the proposed Rule 23(b)(3) class against the factors described in Rule 23(b)(3). For the first factor, "the class members' interests in individually controlling the prosecution or defense of separate claims," Fed. R. Civ. P. 23(b)(3)(A), when smaller dollar amounts are in controversy, this factor generally favors certification. *Zinser*, 253 F.3d at 1190- 91. Resolution of this factor takes into account the policy noted above of incentivizing legitimate claims even when, as here, individual damages are modest. *Amchem, 521 U.S. at 617*; *see* Mot. at 18 ("[H]ere, the individual damages are relatively small."). Large, complex claims do not fit so well in a class as do smaller, simpler claims. *See Zinser*, 253 F.3d at 1190-91.

Here, the individual damages are quite low. *See* TAC ¶¶ 100, 121 ("additional rent payments" of $1,953.89 for named plaintiff Terry and "at least $2,239.98" for named plaintiff Huskey); *Pena*, 305 F.R.D. at 221 (finding damages estimates of $224, less than $5,528 and less than $16,168 "small claims" that "do not make individual litigation attractive or sustainable, especially when success will require analysis of large volumes of electronic timekeeping data"). Additionally, putative class members, as members of the Section 8 program, are low-income tenants who likely "lack the resources to finance and direct individual suits." *Pena*, 305 F.R.D. at 221; *see* Mot. at 18. This factor favors certification.

The second factor, the "extent and nature of any litigation concerning the controversy already commenced by or against members of the class," Fed. R. Civ. P. 23(b)(3)(B), is meant to "assur[e] judicial economy and reduc[e] the possibility of multiple lawsuits." *Zinser, 253 F.3d at 1191* (quoting 7A Charles Alan Wright, et al., *Federal Practice and*

*Procedure* § 1780 (2d ed. 1986)); *see* 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1780 (3d ed. 2018) (same). Here, "[p]laintiffs' counsel are not aware of any other related litigation." Mot. at 18 (citing Lavine Decl. ¶ 7). Defendants do not assert any concerns about related litigation. This factor favors certification.

The third factor is "the desirability or undesirability of concentrating the litigation" in this forum. Fed. R. Civ. P. 23(b)(3)(C). The putative Rule 23(b)(3) class comprises only those current and former tenants located in California, coinciding with California state law claims. Mot. at 9; TAC ¶ 44. This factor favors certification.

The fourth factor weighs the "likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(D). As discussed previously, defendants' concerns about "individualized mini-trials" in essence repeat their concerns about individualized damages, not individual determinations of liability. *See Leyva*, 716 F.3d at 514 ("[T]he presence of individual damages cannot, by itself, defeat class certification . . . ."). As recognized by other federal courts, the fourth factor "overlaps with the [c]ourt's commonality and typicality analysis." *Huynh v. Harasz*, No. 14-CV-02367-LHK, 2015 WL 7015567, at *12 (N.D. Cal. Nov. 12, 2015). Here, the court's commonality and typicality analyses identify no difficulties in managing the class action that would cause this factor to weigh against certification.

Additionally, defendants' contention that the Ninth Circuit requires a "trial plan" is not accurate. Defendants' cited case, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996), does not refer to a "trial plan." There, the Ninth Circuit observed there was "no showing by [p]laintiffs of how the class trial could be conducted." *Id.* The Ninth Circuit has clarified *Valentino* when it rejected a defendant's "suggestion that the district court's failure to adopt a trial plan or articulate how the class action would be tried was an abuse of discretion." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 n.4 (9th Cir. 2005). "*Valentino* does not stand for this proposition. . . . Nothing in the Advisory Committee Notes suggests grafting a requirement for a trial plan onto the rule." *Id.* Here, plaintiffs have taken the position that liability "can be determined with common proof" and "damages can be easily determined based on the side agreements." Mot. at 19. Without predetermining the question, the court's ability to

33

bifurcate a liability phase from a damages phase appears sufficient to ameliorate defendants' concerns.  *See id.*

On balance, the four factors suggest a class action is the superior means to try the common questions of law and fact that predominate here.

The Ninth Circuit also requires district courts to consider alternative means of litigating a proposed class action.  *See Valentino*, 97 F.3d at 1234-35 ("A class action is the superior method for managing litigation if no realistic alternative exists.").  In particular, individual litigation, joinder, multidistrict litigation or an administrative or other non-judicial solution may be superior.  *See* 7A Charles A. Wright, et al., *Federal Practice and Procedure* § 1779 (3d ed. 2018).

Because class members here have modest claims, individual litigation is unlikely to present a viable means of recovery.  The number of potential plaintiffs, more than 150, also makes joinder impracticable.  Although multidistrict litigation could theoretically "present an advantage," the court finds "the value of the claims is still small enough to suggest individual actions would be inefficient."  *Greer v. Dick's Sporting Goods, Inc.*, No. 215CV01063KJMCKD, 2017 WL 1354568, at *10 (E.D. Cal. Apr. 13, 2017), *pet. denied*, No. 17-80075, 2017 WL 5053965 (9th Cir. July 28, 2017).  And as the *Greer* plaintiff relied on company policy as evidence, so too do plaintiffs here rely on standard form documents produced by defendants that do not differ throughout the geographic limits of the proposed class.  Even if multidistrict litigation were a superior option, the court is aware of no activity related to this case on behalf of the judicial panel on multidistrict litigation or any motion requesting transfer filed by defendants on the docket.  *See* 28 U.S.C. § 1407(c)(i)-(ii).

Defendants' proposal that local housing and redevelopment agencies are alternative fora for litigating plaintiff's claims also is not a viable alternative.  Defendants rely on "evidence of this remedy" as "past dialog between the [housing and redevelopment agency] and Wasatch management, which resulted in a fair, fast and efficient resolution—including cash reimbursement to tenants—when [housing and redevelopment agency] had a concern about Wasatch's advertising."  Opp'n at 16-17.  Defendants also direct the court's attention to approvals

34

of Section 8 tenant's leases, and argue these agency approvals "represent an established practice of permitting these [Additional Services Agreements] . . . ." *Id.* at 17. Defendants contend this court should afford agency deference to these approvals and the perspective of Shannon Fox, an employee with the Sacramento Housing and Redevelopment Agency. *Id.* at 18.

But defendants point to no resolution mechanism made available to the parties by local housing and redevelopment agencies. For instance, Shannon Fox does not indicate tenants have any formal recourse through the Sacramento Housing and Redevelopment Agency. *See, e.g.*, Fox Decl. ¶ 5, ECF No. 78-5 (explaining agency's rights and legal options based on what the agency "believes" or "determines"). Defendants themselves refer to having "a history of working with" their local housing and redevelopment agency to at most "informally resolve issues." Opp'n at 2. This court has already provided multiple examples of courts handling the type of claims at issue here, and holding "that extra charges, even when labeled as additional amenities, can constitute illegal side payments." ECF No. 61 at 6-7 (citations omitted). And Fox's mere declaration does not address a core issue in this case: defendants' alleged treatment of charges for parking, renter's insurance and washer and dryer rental as part of a tenant's rent in documents generated after a tenant's lease begins. *Compare* Lavine Decl. Ex. D (examples of defendants' Resident Ledgers, detailing defendants' tracking of additional charges such as washer/dryer rental, renter's insurance and parking charges as part of the same running total along with rent), *id.* Ex. F (examples of monthly statements including additional charges with monthly rent charges), *and id.* Ex. J (examples of Three-Day Notice to Perform Financial Covenant of Lease or Quit including renter's insurance, parking charges and washer/dryer rental as part of the obligation "to cure the breach of the lease agreement"), *with* Fox Decl. ¶¶ 5-9 (referring to "a proposed lease," "separate agreements," "a written agreement" and "Additional Service Agreements" but not to defendants' documents generated after the lease begins to track amounts tenants owe). The court need not resolve whether any deference is owed to the agency here in order to certify plaintiffs' Rule 23(b)(3) class, and the court declines to do so. *See Amgen*, 568 U.S. at 466 ("Merits questions may be considered to the extent—but only to the extent—that they

1  are relevant to determining whether the Rule 23 prerequisites for class certification are

2  satisfied.").

3         The court finds the Rule 23(b)(3) class satisfies the superiority requirement.

4         6.      Ascertainability

5         Defendants contend the class definition is "so overbroad it violates the

6  ascertainability requirement of a certifiable class."  Opp'n at 19.  According to defendants, HUD

7  regulations permit the Additional Services Agreements "so long as they do not charge for items

8  customarily included in base rent in the locality."  Id. at 20 (citing 24 C.F.R. § 982.510).  Thus,

9  "[d]etermining which class members, if any, were party to invalid [Additional Services

10  Agreements] would be problematic . . . ."  Id.  Plaintiffs contend defendants "ignore the clear,

11  objective class definition in the proposed [TAC] and moving papers: Section 8 tenants at

12  [d]efendants' California properties who have paid additional charges during a specific time

13  period."  Reply at 1.  "Proposed class members are therefore readily determined from

14  [d]efendants' records."  Id. at 3.

15         The court finds plaintiffs' definition satisfies the ascertainability requirement.

16  Plaintiffs' proposed class definition "will allow the court to efficiently and objectively ascertain

17  whether a particular person is a class member" based on defendants' records.  See Westfall, 2018

18  WL 705534, at *2.  And defendants' concerns about "additional rent payments" as part of the

19  definition is already resolved by plaintiffs' change in the definition to "additional charges set

20  forth in Additional Services Agreements."  TAC ¶¶ 44-45.

21         7.      Injunctive Relief Class under Rule 23(b)(2)

22         Plaintiffs acknowledge they have both moved from defendant's properties, "and

23  thus request leave to amend the complaint to name a current tenant as a new representative of the

24  Rule 23(b)(2) class, to support injunctive relief."  Mot. at 20.  Plaintiffs contend the court may

25  grant certification conditioned on substituting a named plaintiff who is a current tenant.  Id.

26  Defendants argue neither named plaintiff has standing to seek injunctive relief.  Opp'n at 2, 9 n.3,

27  15.  In reply, plaintiffs confirm that they seek class certification under both Rule 23(b)(2) and

28  Rule 23(b)(3).  Reply at 10 (citing Mot. at 19-20).

36

Defendants are correct that the named plaintiffs cannot serve as representative plaintiffs for a Rule 23(b)(2) class here. *See Wal-Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."). But as plaintiffs request, courts may condition the grant of a motion to certify a class on plaintiffs' substituting an appropriate class representative. *See Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1209 (N.D. Cal. 2007) (granting motion to certify class but ordering plaintiffs "to substitute a new class representative with respect to one claim within thirty (30) days of this order" because "the court may certify the class condition upon the substitution of another plaintiff") (citing *Kremens v. Bartley*, 431 U.S. 119 (1977) and *Gibson v. Local 40*, 543 F.2d 1259, 1263 (9th Cir. 1976)). Additionally, "it is appropriate for the [c]ourt to certify one class for injunctive relief under Rule 23(b)(2) and a separate class for other remedies under Rule 23(b)(3)." *Nozzi v. Hous. Auth. of the City of Los Angeles*, No. CV 07-380 PA (FFMX), 2016 WL 2647677, at *5 (C.D. Cal. May 6, 2016) (citing *Kartman v. State Farm Mut. Auto Ins. Co.*, 634 F.3d 883, 895 (7th Cir. 2011)); *ConAgra Foods, Inc.*, 90 F. Supp. 3d at 977 ("[T]he court can separately certify an injunctive relief class and, if appropriate, also certify a Rule 23(b)(3) damages class."). The court finds plaintiffs' proposed definition for a Rule23(b)(2) class satisfies the requirements of Rule 23(b)(2) because plaintiffs' definition refers to "additional charges set forth in Additional Services Agreements in excess of their individual portions of the contract rent set forth in the HAP Contracts," which generally apply to the Section 8 tenants who would compose the members of this class and be eligible for injunctive relief if plaintiffs prevail on the merits. *See* TAC ¶ 45.

The court therefore CONDITIONALLY GRANTS plaintiffs' motion for class certification as to its proposed Rule 23(b)(2) class, conditioned on plaintiffs substituting a new class representative who has standing for injunctive or declaratory relief under Rule 23(b)(2), within thirty (30) days.

IV.     CONCLUSION

Plaintiffs' motion to amend is GRANTED. Plaintiffs' motion for class certification as to the Rule 23(b)(3) class is GRANTED. Plaintiffs' motion for class certification

37

as to the Rule 23(b)(2) class is CONDITIONALLY GRANTED, conditioned on plaintiffs substituting a new class representative who has standing for injunctive or declaratory relief under Rule 23(b)(2) within thirty (30) days.

This order resolves ECF Nos. 71 and 72.

IT IS SO ORDERED.

DATED: July 30, 2018.

_____
UNITED STATES DISTRICT JUDGE