Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Beth Holtzman (SBN 316400)
bholtzman@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 763-9800; (510) 835-1417 (Fax)

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
Tony Ruch (SBN 242717)
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
(510) 834-3300; (510) 834-3377 (Fax)

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
Micaela Alvarez (SBN 319908)
malvarez@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
(510) 437-1863; (510) 437-9164

Attorneys for Plaintiffs and Relators

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, and DOES 1-30,<br><br>Defendants. | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION AND MOTION SEEKING (1) CLARIFICATION, OR IN THE ALTERNATIVE, AMENDMENT OF THE CLASS DEFINITION, (2) COMPILATION OF THE CLASS LIST, (3) APPROVAL OF PROPOSED CLASS NOTICE, AND (4) AMENDMENTS TO THE SCHEDULING ORDER**<br><br>Date:   July 12, 2019<br>Time:   10 a.m.<br>Dept:   Courtroom 3, 15th Floor<br>Before:  Hon. Kimberly J. Mueller<br><br>Trial Date:   None Set |

NOTICE OF MOT. & MOT. SEEKING (1) CLARIFICATION, OR IN THE ALTERNATIVE, AMENDMENT OF THE CLASS DEFINITION, (2) COMPILATION OF THE CLASS LIST, (3) APPROVAL OF PROPOSED CLASS NOTICE, AND (4) AMENDMENTS TO THE SCHEDULING ORDER – CASE NO. 2:15-CV-00799 KJM-DB

757374.12

1

**NOTICE OF MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on July 12, 2019 at 10:00 a.m., or as soon thereafter as the

4

matter may be heard, in the Courtroom of the Honorable Kimberly J. Mueller, located at 501 I Street,

5

Sacramento, CA 95814, Plaintiffs and Relators Denika Terry, Roy Huskey III, and Tamera Livingston,

6

on behalf of themselves and the Certified Classes, and on behalf of the United States as to the

7

scheduling order ("Plaintiffs"), will and hereby do move this Court under Rules 23 and 16 of the

8

Federal Rules of Civil Procedure for an order (1) clarifying the definition of the damages or restitution

9

class ("Reimbursement Class") certified by this Court on July 30, 2018 (ECF No. 92), or in the

10

alternative, amending the definition of the Reimbursement Class to establish that the class period

11

begins on April 14, 2011; (2) directing Defendants Wasatch Advantage Group, LLC, Wasatch Property

12

Management, Inc., Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC, Logan Park

13

Apartments, LLC, and Logan Park Apartments, LP ("Defendants") to compile and produce the class

14

list for the Reimbursement Class no later than July 26, 2019; (2) approving Plaintiffs' proposed class

15

notice form and procedures; and (3) amending the scheduling order for good cause shown.

16

*Summary of Meet & Confer Efforts Pursuant to the Court's Standing Order.* The undersigned

17

certifies that meet and confer efforts have been exhausted. Counsel for Plaintiffs and Defendants have

18

met by phone repeatedly and exchanged detailed correspondence regarding each of the items addressed

19

in this Motion, including, most recently, phone calls dated April 5, 2019, May 17, 2019, and May 31,

20

2019 and several letters and numerous emails over the same time period. The parties narrowed, but

21

were unable to fully resolve, their dispute regarding the class list. To address the parties' impasse

22

regarding the class period, Plaintiffs seek clarification, or in the alternative, amendment, of the

23

Reimbursement Class definition. Because the ongoing failure by Defendants to produce the class list

24

has resulted in further delays to the litigation, Plaintiffs also seek an order requiring Defendants to

25

produce the class list no later than two weeks after this Motion is heard, *i.e.*, July 26, 2019. As to the

26

other issues raised by this Motion, Defendants have indicated their agreement to the class notice form

27

and the amendments to the Scheduling Order proposed below.

28

1

NOTICE OF MOT. & MOT. SEEKING (1) CLARIFICATION, OR IN THE ALTERNATIVE, AMENDMENT OF THE CLASS DEFINITION,
(2) COMPILATION OF THE CLASS LIST, (3) APPROVAL OF PROPOSED CLASS NOTICE, AND (4) AMENDMENTS TO THE
SCHEDULING ORDER – CASE NO. 2:15-CV-00799 KJM-DB

757374.12

1

2

3    Dated:  June 14, 2019

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

/s/
Anne P. Bellows

Attorneys for Plaintiff and Relators

2

757374.12

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................... 1

II.     PROCEDURAL AND FACTUAL BACKGROUND ....................................................... 2

        A.      Pre-Certification Discovery and Meet and Confer Efforts Related to the Class List ............................................................................................................ 3

        B.      Relative Burden to Compile the Class List ...................................................... 4

        C.      Class Certification and the Third Amended Complaint ......................................... 5

        D.      Post-Certification Meet and Confer Efforts Related to the Class List & the Addition of Goldstein, Borgen, Dardarian & Ho as Class Counsel ........................ 7

        E.      Meet and Confer Efforts Regarding Class Notice and Amending the Scheduling Order ............................................................................................ 8

III.    ARGUMENT ........................................................................................................ 9

        A.      The Court Should Clarify that the Class Period for the Reimbursement Class Began on April 14, 2011. ............................................................................. 9

                1.      The Claims of the Statewide Class Relate Back to the Original Complaint. ......................................................................................... 9

                2.      The Reimbursement Class Definition Dates Back to 2011. ...................... 11

        B.      In the Alternative, the Court Should Amend the Class Definition to Begin on April 14, 2011 ......................................................................................... 12

        C.      Defendants Should Be Required to Produce the Class List By July 26, 2019. ...... 13

        D.      The Proposed Notice Form and Procedures Satisfy Rule 23's Requirements. ...... 15

        E.      Good Cause Exists to Amend the Scheduling Order ........................................... 16

IV.     CONCLUSION ..................................................................................................... 19

i

NOTICE OF MOT. & MOT. SEEKING (1) CLARIFICATION, OR IN THE ALTERNATIVE, AMENDMENT OF THE CLASS DEFINITION, (2) COMPILATION OF THE CLASS LIST, (3) APPROVAL OF PROPOSED CLASS NOTICE, AND (4) AMENDMENTS TO THE SCHEDULING ORDER – CASE NO. 2:15-CV-00799 KJM-DB

757374.12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Baehr v. Creig Northrop Team, P.C.*,
No. 1:13-cv-0933-RDB, 2015 U.S. Dist. LEXIS 24964 (D. Md. Mar. 2, 2015) ...........................14

*Castle v. Wells Fargo Financial, Inc.*,
No. 3:06-cv-04347-57I, 2008 U.S. Dist. LEXIS 120587 (N.D. Cal. May 15, 2008)..............9, 10, 11

*C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*,
654 F.3d 975 (9th Cir. 2011) ......................................................................................................16

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) .....................................................................................................................13

*In re Glacier Bay*,
746 F. Supp. 1379 (D. Alaska 1990) ......................................................................................10, 11

*Immigrant Assistance Project of the L.A. Cty. Fed'n of Labor v. INS*,
306 F.3d 842 (9th Cir. 2002) ......................................................................................................11

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ......................................................................................................16

*Ms. L. v. United States Immigration & Customs Enf't*,
330 F.R.D. 284 (S.D. Cal. 2019) ................................................................................................13

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
37 F. Supp. 3d 1126 (N.D. Cal. 2014)........................................................................................13

*In re Network Assocs. Sec. Litig.*,
No. 3:00-cv-04849-MJJ, 2003 U.S. Dist. LEXIS 14442 (N.D. Cal. Mar. 25, 2003).......................11

*Oppenheimer Fund v. Sanders*,
437 U.S. 340 (1978) ...........................................................................................................13, 14, 15

*Paskuly v. Marshall Field & Co.*,
646 F.2d 1210-1211 (7th Cir. 1981)............................................................................................10

*Schwarzschild v. Tse*,
69 F.3d 293 (9th Cir. 1995) ....................................................................................................15, 17

*Scott v. Chipotle Mexican Grill, Inc.*,
300 F.R.D. 193 (S.D.N.Y. 2014)................................................................................................17

ii

757374.12

*Stoddart v. Express Servs.*,
  No. 2:12-cv-01054-KJM-CKD, 2017 U.S. Dist. LEXIS 123688 (E.D. Cal. Aug. 4,
  2017) .................................................................................................................................. 17

*In re Syntex Corp. Sec. Litig.*,
  95 F.3d 922 (9th Cir. 1996) .............................................................................................. 9, 10

*Teets v. Great-West Life & Annuity Ins. Co.*,
  No. 14-cv-2330-WJM-NYW, 2016 U.S. Dist. LEXIS 180283 (D. Colo. Dec. 29,
  2016) .................................................................................................................................. 14

*Van Lith v. iHeartmedia + Entm't, Inc.*, No. 1:16-cv-066-LJO-SKO, 2016 U.S. Dist.
  LEXIS 96853, at *16-21 (E.D. Cal. July 25, 2016) ........................................................... 11

**Federal Statutes**

False Claims Act, 31 U.S.C. §§ 3279, *et seq.*.......................................................................... 2

**State Statutes**

California Civil Code
  § 1750 .................................................................................................................................. 2
  §§ 3300 et seq. ..................................................................................................................... 2

Unfair Competition Law, California Business and Professions Code §§ 17200 *et seq.* ........... 2

**Rules**

Federal Rule of Civil Procedure
  15(c) ............................................................................................................................... 9, 11
  16 ................................................................................................................................. 16, 17
  30(b)(6) ............................................................................................................................... 4

Rule
  23 .................................................................................................................... 6, 12, 13, 14
  23(b)(2) ............................................................................................................................ 5, 6
  23(b)(3) ............................................................................................................................ 1, 5
  23(c)(2) ................................................................................................................... 15, 16, 17
  23(c)(3) .............................................................................................................................. 16
  23(d) ............................................................................................................................. 13, 14
  23(f) ..................................................................................................................................... 6
  26 ....................................................................................................................................... 14

**Other Authorities**

California, *Procedural Guidance for Class Action Settlements* ¶ 9 (Updated Nov. 1,
  2018 and Dec. 5, 2018), available online at
  https://www.cand.uscourts.gov/ClassActionSettlementGuidance (last accessed June
  10, 2019).............................................................................................................................. 16

757374.12

# I.   <u>INTRODUCTION</u>

The parties have met and conferred extensively on the issues Plaintiffs now bring to the Court, and have worked out many, but not all, of their differences surrounding the provision of notice and an opportunity to opt out for the Rule 23(b)(3) class certified by the Court (the "Reimbursement Class") before any disposition is reached on the merits of their claims.  After much back and forth, Defendants have agreed to produce a list of the members of the Reimbursement Class along with their last known contact information, agreed on the contents of the proposed notice, and agreed on a modification of the case management schedule to allow sufficient time for class notice, merits discovery, and classwide dispositive motion practice.  The only issue that the Parties have not been able agree upon is the start date of the Reimbursement Class – Plaintiffs contend it can be nothing other than four years prior to the filing of the initial Complaint (April 14, 2011), while Defendants contend that it should be four years prior to the filing of the Fourth Amended Complaint or maybe the date the Court permitted the Third Amended Complaint (2014).  Defendants' position is meritless.

Plaintiffs filed their initial Complaint on April 14, 2015, and set forth the same basic allegations and legal theories in all of their subsequent amended complaints – and never once stated that they were shortening the period covered by the case.  The parties' litigation, including a court order compelling Defendants to produce of information back to April 14, 2011, always contemplated the 2011 date as the start of the liability period.  When the Court certified the Reimbursement Class, it did so on a record extending back to 2011.  Defendants did not question the start of the Reimbursement Class until just three days before the filing of the instant motion – even though they had just weeks before agreed to a class notice that set the start of the Reimbursement Class as April 14, 2011.  Defendants' last-minute litigation tactic cannot be used to further delay the required class notice and the litigation of this already certified class action.

Plaintiffs thus respectfully request that the Court order Defendants to compile and produce the class list for the Reimbursement Class, dating back to April 14, 2011, by no later than July 26, 2019.  Additionally, Plaintiffs ask the Court to approve Plaintiffs' proposed class notice form and procedures, which Defendants have already agreed to, and amend the scheduling order for good cause shown.

757374.12

## II.   **PROCEDURAL AND FACTUAL BACKGROUND**

On April 14, 2015, Plaintiffs Denika Terry and Roy Huskey III filed a False Claims Act, 31 U.S.C. §§ 3279, *et seq.* ("False Claims Act") and putative class action complaint challenging Defendants' practice of charging tenants participating in the Housing Choice Voucher or Section 8 program ("Section 8") for housing services separate from and in addition to their portion of the total rent under the Housing Assistance Program Contracts ("HAP Contracts") that govern their leases. ECF No. 1.

The complaint disclosed that "Plaintiffs seek to represent a class of past, present, and prospective tenants of Defendants Wasatch Advantage Group LLC, Wasatch Property Management, Inc., Wasatch Pool Holdings, LLC, Chesapeake Commons Holding, LLC, Logan Park Apartments, LP, and Does 1-30." *Id.* ¶ 1.  It alleged that "Defendants rent numerous apartments at their properties to tenants who receive rental assistance through the federally subsidized Housing Choice Voucher program, commonly known as "Section 8," and that "[a]s part of their usual course of business, Defendants violated and continue to violate federal and state laws by demanding additional monthly rental payments from Plaintiffs and Defendants' other Section 8 tenants, in excess of the tenants' portion of the rent due under their HAP contracts."  *Id.* ¶¶ 6, 9.  Although the complaint proposed a class definition focused on four properties in the Sacramento area, *id.* at ¶ 3 (defining "Subject Properties"), ¶ 39 (defining a putative class of Section 8 tenants at the "Subject Properties" who were charged additional rent payments), it also clearly stated that "Plaintiffs reserve the right to amend the Class, and to add subclasses, if discovery and further investigation reveals such action is warranted," *id.* at ¶ 42.  Additionally, the complaint highlighted the size of Defendants' residential full rental portfolio—"69 apartment communities with 16,344 units across five western states"—in its allegations supporting numerosity.  *Id.* at ¶ 100.  The complaint asserted claims under the False Claims Act, breach of contract, California Civil Code sections 3300 et seq., Consumers Legal Remedies Act, California Civil Code section 1750; and the Unfair Competition Law, California Business and Professions Code sections 17200 *et seq.*

2
NOTICE OF MOT. & MOT. SEEKING (1) CLARIFICATION, OR IN THE ALTERNATIVE, AMENDMENT OF THE CLASS DEFINITION, (2) COMPILATION OF THE CLASS LIST, (3) APPROVAL OF PROPOSED CLASS NOTICE, AND (4) AMENDMENTS TO THE SCHEDULING ORDER – CASE NO. 2:15-CV-00799 KJM-DB

757374.12

## A.    Pre-Certification Discovery and Meet and Confer Efforts Related to the Class List

Plaintiffs sought a list of putative class members during class certification discovery. Interrogatory 2 propounded by Plaintiff Terry on January 9, 2017 requested Defendants to "[i]dentify (by name, address, and telephone number) all individuals who are putative members in the present action." *See* Joint Statement Re Disc. Disagreement, 8, ECF No. 47 (quoting Terry Interrogatory 2). Plaintiffs also requested a list of all Defendants' Section 8 tenants across their portfolio of rental properties, *id.* at 5 (quoting Terry Interrogatory 1), a list of all properties where Defendants had charged Section 8 tenants charges under Additional Services Agreements, *id.* at 10 (quoting Terry Interrogatory 5), and documents relating to Section 8 tenants across Defendants' properties, *id.* at 12-15 (quoting Requests for Production 1-6, 8-10, and 12-25).

Defendants objected to each of these requests on the basis of (1) the privacy interests of the putative class members, (2) the proposition that the request was overbroad and unduly burdensome "because it seeks discovery of hundreds of tenants who do not have similar rental histories as Plaintiff Denika Terry and is not narrowly tailored," and (3) attorney-client and attorney work product privileges. *See id.* at 5, 8-10, and 15-16 (quoting Defendants' responses).   Plaintiffs met and conferred with Defendants in an effort to obtain a class list, without success. *See* Newmark Decl. ¶ 5 & Ex. 1, Lavine February 24, 2017 Letter.

Both in Plaintiffs' meet and confer correspondence, and in the Joint Statement on Discovery Dispute filed by the parties on March 20, 2017, Plaintiffs explained that they needed discovery regarding Section 8 tenants at all of Defendants' properties to determine the size and membership of the class. *Id.*; ECF No. 47 at 5-6.  Defendants argued that named Plaintiffs' claims were not proper for class treatment.  ECF No. 47 at 7-8.   Although they argued that the requests were overbroad in terms of geography, they did not rely on the putative class definition from the complaint, instead taking the position that Plaintiffs' discovery should be limited to the two buildings where the named Plaintiffs lived. *Id.*  Defendants also argued that the temporal scope of the requests (covering 10 years) was overbroad. *Id.*

757374.12

1    On March 27, 2017, Magistrate Judge Barnes granted Plaintiffs' request to compel additional

2 discovery responses and production, ordering that "[o]n or before April 14, 2017, defendants shall

3 produce further responses and documents covering the past six (6) years for all of defendants'

4 facilities."  ECF No. 48 at 1-2.

5 **B.    <u>Relative Burden to Compile the Class List</u>**

6    Following the document production ordered by Judge Barnes, Defendants took the position that

7 Plaintiffs should compile the list themselves based on an unwieldy document production that, by the

8 admission of Defendants' own witnesses, is incomplete.  Newmark Decl. ¶ 15.

9    Defendants' production consisted of scanned copies of the entire contents of the tenant files for

10 all of their Section 8 tenants.  *Id.* Ex. 2, Tanforan Dep. 38:17-39:2 & Ex. 3, Fetter Dep. 74:24-75:6.

11 The tenant files were produced to Plaintiffs on a dozen CDs, each CD containing a single .pdf image

12 file; the entire production totaled more than 360,000 scanned, non-searchable pages.  Newmark Decl. ¶

13 8.  Defendants' corporate representative Shawn Fetter testified in his deposition that some of the files

14 for Defendants' Section 8 tenants "were not able to be located" and "nobody knew for a fact what had

15 happened to them."  *Id.* Ex. 3 Fetter Dep. 76:14-77:9.   In addition, a significant amount of time has

16 now passed since Plaintiffs received these documents, and Defendants have not updated their

17 production.  Compiling a class list based on the document production would be an extraordinarily

18 burdensome task—and one that would be certain to produce an incomplete list.  *Id.* ¶ 17.

19    Defendants have more direct, efficient, and reliable access to the information needed to

20 compile a class list.  Regional Supervisor Dave Tanforan, who also testified as a corporate

21 representative under Federal Rule of Civil Procedure 30(b)(6), stated that he could pull a list of Section

22 8 tenants at Defendants' properties from the company's records if asked and indicated that Defendants

23 use a central property management software.  *Id.* Ex. 2, Tanforan Dep. 21:7-25, 22:18-22; 126:12-22;

24 223:17-224:24.  Indeed, according to the testimony of another corporate representative, Regional Vice

25 President Janae Jarvis, Defendants conducted its search of paper files guided by a spreadsheet that

26 listed all the relevant Section 8 tenants.  *Id.* Ex. 4, Jarvis Dep. 80:11-25.

27

28

4

757374.12

1     Due to Defendants' refusal to provide a class list or a list of their Section 8 tenants throughout

2  California in response to Terry Interrogatories 1 and 2, Plaintiffs were forced to move for class

3  certification without being able to inform the Court of the total number of putative class members.

4  Pls.' Mot. for Class Certification, ECF No. 72.  Consistent with their overbreadth objection to Terry

5  Interrogatory 2, in opposing class certification Defendants argued that that the commonality and

6  predominance requirements were not met.  Opp'n to Mot. for Class Certification 10-14, ECF No. 78.

7  **C.**     **Class Certification and the Third Amended Complaint**

8     Plaintiffs moved for class certification on August 25, 2017, seeking certification of a damages

9  or injunctive relief class under Rule 23(b)(3) ("Reimbursement Class") and an injunctive or

10 declaratory relief class under Rule 23(b)(2) ("Injunctive Relief Class").  ECF No. 72.  They also

11 simultaneously moved to amend the complaint, proposing a Third Amended Complaint that conformed

12 the class definition to the evidence of Defendants' unlawful practices by expanding class coverage to

13 "all of the areas in which defendants own and operate properties accepting housing choice voucher

14 (commonly known as "Section 8") tenants, rather than just to their Sacramento-area properties."  ECF

15 No. 71-1 at 1. As Plaintiffs explained, and the Court found, the amendment conformed the complaint

16 to the evidence in the case.  *Id.* at 1-2; ECF No. 92 at 10-11.

17    Plaintiffs' evidence in support of their Motion for Class Certification included standardized

18 HAP Contracts, Additional Services Agreements, leases, ledgers, and monthly costs breakdowns

19 dating back to 2011.  See Lavine Decl., ECF No. 72-5, Ex. A at 13-20 (2011-2012 HAP contract), Ex.

20 B at 1-9, 18-22 (Additional Services Agreements from 2011 and 2012), Ex. C at 15-42 (leases from

21 2011 and 2012), Ex. D at 1-9 (2013 ledger encompassing charges from 2011), Ex. E at 2, 5, 8 (monthly

22 costs breakdowns from 2011 and 2012).

23    On July 30, 2018, the Court certified the Reimbursement Class under Federal Rule of Civil

24 Procedure 23(b)(3).  ECF No. 92 at 37.  The Rule 23(b)(3) class includes:

25          All persons who, in the time period starting four years prior to the date of
           filing this Complaint through the final resolution of this matter, (1) have
26         been tenants at any of Defendants' California properties; (2) have
           participated in the "Section 8" Housing Choice Voucher Program in
27         connection with their tenancies at the California properties; and (3) have
           paid additional charges set forth in Additional Services Agreements in

28

757374.12

excess of their individual portions of the contract set forth in the HAP Contracts.

*Id.* at 13.  In finding that the Reimbursement Class satisfied the requirements of Rule 23, the Court cited the collections of standardized documents, which included documents dating from 2011 and 2012, submitted with Plaintiffs' Motion for Class Certification.  *See, e.g.*, ECF No. 92 at 17, 26, 27.

In the same order, the Court also conditionally certified the Injunctive Relief Class under Rule 23(b)(2).  *Id.* at 37-38. The Injunctive Relief Class is defined to include:

> All persons who: (1) are or will become tenants at any of Defendants' California properties; (2) participate or will participate in the "Section 8" Housing Choice Voucher Program in connection with their tenancies at the California properties; and (3) pay or will pay additional charges set forth in Additional Services Agreements in excess of their individual portions of the contract rent set forth in the HAP Contracts.

*Id.* at 13.  The Court ordered that certification of the Injunctive Relief Class was conditional on Plaintiffs substituting a new class representative who has standing for injunctive or declaratory relief within 30 days of the Court's order.  *Id*.at 37-38.

Within the 30-day deadline, the Parties submitted a joint stipulation to substitute Tamara Livingston, a current Section 8 tenant in one of Defendants' California properties, as the new class representative for the Rule 23(b)(2) class.  ECF No. 94.  On September 5, 2018, the Court granted the Parties' stipulation to substitute Livingston as the new class representative for the Rule 23(b)(2) class, ECF No. 95, and Plaintiffs filed their Fourth Amended Complaint naming Livingston as the class representative for the Rule 23(b)(2) class, ECF No. 98. The Reimbursement Class includes all current members of the Injunctive Relief Class.  See ECF No. 92 at 13 (setting out class definitions).

On August 13, 2018, Defendants filed a Rule 23(f) petition in the United States Court of Appeals for the Ninth Circuit seeking review of the Court's class certification order.  Newmark Decl. ¶ 19 & Ex. 5.  In their petition, Defendants argued that the Court manifestly erred in certifying the two classes and again pressed their position that commonality and predominance were not established.  See *id.* On October 17, 2018, the Ninth Circuit denied Defendants' petition.  ECF No. 100.

6

NOTICE OF MOT. & MOT. SEEKING (1) CLARIFICATION, OR IN THE ALTERNATIVE, AMENDMENT OF THE CLASS DEFINITION, (2) COMPILATION OF THE CLASS LIST, (3) APPROVAL OF PROPOSED CLASS NOTICE, AND (4) AMENDMENTS TO THE SCHEDULING ORDER – CASE NO. 2:15-CV-00799 KJM-DB

757374.12

**D.**     **Post-Certification Meet and Confer Efforts Related to the Class List & the Addition of Goldstein, Borgen, Dardarian & Ho as Class Counsel**

Once Defendants had exhausted their challenges to the certification of the Reimbursement Class and the Injunctive Relief Class, Plaintiffs again requested that Defendants produce a list of Reimbursement Class members so that notice could be sent.  Newmark Decl. ¶ 20.  Defendants refused, maintaining that Plaintiffs should compile the class list based on the records produced to them. *Id.*

Recognizing the need for greater resources to overcome Defendants' intransigence and due to personnel changes at Plaintiffs' counsel's offices, in January 2019, Plaintiffs turned their efforts to recruiting additional class counsel.  Newmark Decl. ¶ 21.   In March 2019, the law firm Goldstein, Borgen, Dardarian & Ho ("GBDH") agreed to come onto the case.  Newmark Decl. ¶ 23; Bellows Decl. ¶ 2.  The parties submitted a stipulation for the appointment of GBDH as class counsel on May 15, 2019, and the Court signed the stipulation on May 21, 2019.  ECF Nos. 105, 106.

Meanwhile, Plaintiffs' counsel continued to press Defendants to produce the class list, addressing the issue in meet and confer calls on April 5, May 17, and May 30, and in correspondence sent on May 3, May 9, May 17, May 28, May 31, June 5, June 7, June 11, June 12, and June 13. Bellows Decl. ¶¶ 3-19.  Initially, Defendants continued to take the position that Plaintiffs had the responsibility for compiling the list from the previously produced scanned images of tenant files dating back to 2011; not once did Defendants suggest that Plaintiff only had to go back to 2014.  Bellows Decl. ¶ 3.

Instead, Defendants eventually conceded that they could efficiently compile the class list from their property management software, and that it was appropriate for them to do so based on concerns about the completeness of the list.  Bellows Decl. 12.  The parties were also able to resolve Defendants' hesitation about the privacy implications of disclosing class members' contact information.  *Id.* at  ¶¶ 15-16.

It was not until just two days before this motion was to be filed that Defendants first surfaced its position that the Restitution Class begins in 2014, not 2011. On June 11th,  Plaintiffs sent

7

757374.12

1  Defendants a proposed stipulation requesting the Court to order class notice and to amend the

2  scheduling order; the draft stipulation reflected a class period start date of April 14, 2011 (i.e., four

3  years prior to the filing of the original complaint).  Bellows Decl. ¶ 15.  On June 12th, in response to

4  Defendants' apparent agreement to all terms and proposed adjustments to the scheduling, Plaintiffs

5  sent a slightly revised stipulation and complete supporting documents.  Bellows Decl. ¶ 17.   Later on

6  June 12th, for the first time, Defendants responded that they could not agree to a class period for the

7  Reimbursement Class beginning on April 14, 2011, and asserted that the class period should begin on

8  September 20, 2014, four years prior to the filing of the Fourth Amended Complaint, or, at most, on

9  July 30, 2014, four years prior to the date the Court granted Plaintiffs' motion as to the Third Amended

10  Complaint.  *Id.* Ex. 12, Matthews Email June 12, 2019.  The parties fully explored their positions on

11  this issue by email, and quickly discovered that they had reached an impasse on June 13th.  *Id.* Ex. 13.

12  **E.**     **Meet and Confer Efforts Regarding Class Notice and Amending the Scheduling Order**

13          During this same period, Plaintiffs also met and conferred with Defendants regarding sending

14  class notice and amending the Scheduling Order, sending proposals for both by letter on May 3, 2019.

15  Bellows Decl. Ex. 1, Bellows May 3, 2019 Letter.  Plaintiffs specified that their proposed litigation

16  schedule relied on the assumption that the class list would be produced within weeks of the May 3,

17  2019 letter, and that they would seek additional time if the class list was delayed.

18          By email on May 13, 2019, Defendants indicated agreement with both Plaintiffs' proposed

19  class notice proposal and Plaintiffs' proposed revisions to the litigation schedule.  *Id.* Ex. 3, Matthews

20  May 13, 2019 Email. The proposed class notice form that Plaintiffs provided to Defendants had

21  included a class period start date of April 14, 2011, but Defendants did not raise any objection to that

22  date in their May 13, 2019 email approving the form.  See ¶ 7 & Ex. 3.

23          As the dispute over the class list continued throughout May and into the first half of June, the

24  parties amicably discussed several different iterations of proposed revisions to the Scheduling Order.

25  Defendants did not indicate any objections to any of the proposals put forward by Plaintiffs.  *Id.* ¶ 19.

26          On June 7, based on Defendants' failure to produce the class list the prior week (as Defendant

27  had indicated it would do), Plaintiffs notified Defendants of their further revised proposal for

28

757374.12

1   amendments to the Scheduling Order to be included in this Motion.  *Id.* Ex. 9, Bellows June 7, 2019

2   Email.  On June 13, after the parties reached a final impasse on the class list, Defendants indicated that

3   they stipulated to Plaintiffs' proposed amendments to the Scheduling Order regardless of the outcome

4   of this Motion with regard to the other issues.  *Id.* Ex. 13, Matthews June 13, 2019 Email.

### III.   ARGUMENT

**A.   The Court Should Clarify that the Class Period for the Reimbursement Class Began on April 14, 2011.**

Plaintiffs respectfully request that the Court issue an order clarifying that the class period for the Reimbursement Class runs from four years prior to the filing of this action, *i.e.*, from April 14, 2011.  To the extent the class definition is ambiguous, the Court should adopt Plaintiffs' proposed interpretation because it properly relates the class claims back to the filing of the original Complaint, and it is consistent with the evidence put forward by Plaintiffs and cited by the Court in support of class certification.

**1.   The Claims of the Statewide Class Relate Back to the Original Complaint.**

Relation back is governed by Federal Rule of Civil Procedure 15(c).  Under the federal standard applicable in this case, an amended pleading relates back to a prior pleading if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  In the Ninth Circuit, amendments adding a plaintiff or expanding the scope of a plaintiff class satisfy this test where "(1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; (2) the relation back does not unfairly prejudice the defendant; and (3) there is an identity of interests between the original and newly proposed plaintiff."  *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996) (citation omitted).

Courts applying this test have held that amendments to expanding the scope of a plaintiff class relate back to the filing of the initial complaint in circumstances comparable to this case.  For example, in *Castle v. Wells Fargo Financial, Inc.*, No. 3:06-cv-04347-57I, 2008 U.S. Dist. LEXIS 120587, at *6-8 (N.D. Cal. May 15, 2008), the court held that an amendment expanding the putative class to

9

757374.12

1   include employees in an additional job position (loan processor) satisfied all three of the *In re Syntex*

2   *Corp.* criteria.  The court explained that notice was satisfied because the original complaint "alleged

3   general conduct by defendants' store managers" that defendant knew would apply to the additional

4   employees, and therefore "the fact that plaintiffs now seek to add loan processors to the list of

5   employees who allegedly failed to receive overtime pay due to the same policies and practices should

6   come as no surprise." *Id.* at *6.  The court found that there was no prejudice to the defendants because

7   the loan processors' claims "depend on the same conduct by defendants set forth in the original

8   complaint," and therefore "defendants will not have to radically change litigation strategy to defend

9   against these additional plaintiffs."  *Id.*  Finally, the court found that "loan processors and credit

10  managers share an 'identity of interest,' as evidenced by the fact that loan processors seek to bring the

11  same claims brought by credit managers." *Id.* at 8.

12       The class definition in the Third Amended Complaint, which was the basis for the Court's class

13  certification order, relates back under *In re Syntex Corp.* for the same reasons.

14       *Notice.*  As in *Castle*, the notice requirement is satisfied because the original complaint in this

15  action alleged violations based on general conduct and practices by Wasatch that Wasatch knew

16  applied to its Section 8 tenants across California.  *See Castle*, 2008 U.S. Dist. LEXIS 120587, at *6;

17  ECF No. 1 at ¶ 9 ("As part of their usual course of business, Defendants violated and continue to

18  violate federal and state laws by demanding additional monthly rental payments from Plaintiffs and

19  Defendants' other Section 8 tenants, in excess of the tenants' portion of the rent due under the HAP

20  Contracts").  Moreover, the complaint directly referred to the scope of Defendants' entire portfolio of

21  residential rental properties and explicitly reserved the right to amend the class definition if supported

22  by discovery.  *Id.* at ¶¶ 12, 42, 100.

23       Other courts have also found notice satisfied in analogous cases.  *See, e.g.*,  *Paskuly v. Marshall*

24  *Field & Co.*, 646 F.2d 1210-1211 (7th Cir. 1981) (a subsequent complaint alleging class claims related

25  back to original, individual complaint because the plaintiff had alleged unlawful employment practices

26  by the defendant affecting herself and others); *In re Glacier Bay*, 746 F. Supp. 1379, 1390-91 (D.

27  Alaska 1990) (amendment adding plaintiffs who were not members of the original putative class

28

10

757374.12

1    related back because the class complaints related to the oil spill put the defendants on notice that "all

2    those involved in the fishing industry in Cook Inlet were potential plaintiffs") (cited with approval by

3    the Ninth Circuit in *Immigrant Assistance Project of the L.A. Cty. Fed'n of Labor v. INS*, 306 F.3d 842,

4    858 n.14 (9th Cir. 2002)); *Van Lith v. iHeartmedia + Entm't, Inc.*, No. 1:16-cv-066-LJO-SKO, 2016

5    U.S. Dist. LEXIS 96853, at *16-21 (E.D. Cal. July 25, 2016) (permitting an amended complaint stating

6    class allegations for the first time to relate back to original complaint that alleged Labor Code

7    violations stemming from a "uniform, company-wide policy").

8         *Prejudice.*  There is no prejudice to Defendants because the expanded class's claims are

9    identical to the claims set forth in the original complaint, and depend on common methods of proof, as

10   this Court already found in permitting the Third Amended Complaint and certifying the two classes.

11   *See Castle*, 2008 U.S. Dist. LEXIS 120587, at *6; ECF No. 92 at 11-12, 17, 25-30.  Permitting relation

12   back would not expand the scope of discovery which, pursuant to Judge Barnes' order, already

13   encompasses the period beginning on April 14, 2011.  *See* ECF No. 48.  And "[i]ncreased liability is

14   not sufficient prejudice to deny the relation back of [new] plaintiffs."  *In re Glacier Bay*, 746 F. Supp.

15   at 1391.

16        *Identity of Interests.*  Finally, members of the expanded, certified class based on the Third

17   Amended Complaint share an identity of interests with members of the putative class in the original

18   complaint because they are bringing identical claims.  *See Castle*, 2008 U.S. Dist. LEXIS 120587, at

19   *8; *see also Immigrant Assistance Project,* 306 F.3d at 858 ("Because the original individual plaintiffs

20   and the current individual plaintiffs are 'similarly situated,' the identity-of-interest requirement of Rule

21   15(c) is also met in the present case."); *In re Network Assocs. Sec. Litig.*, No. 3:00-cv-04849-MJJ,

22   2003 U.S. Dist. LEXIS 14442, at *22-23 (N.D. Cal. Mar. 25, 2003) (identity of interest satisfied where

23   new class members' claims were based on the same conduct by Defendants and resulting injury).

24        **2.    <u>The Reimbursement Class Definition Dates Back to 2011.</u>**

25        The Reimbursement Class is defined to include all Defendants' Section 8 tenants in California

26   "who, in the time period starting four years prior to the date of filing this Complaint through the final

27   resolution of this matter," paid charges pursuant to Additional Services Agreements in excess of the

28

---
11

757374.12

1   portions of the rent amount stated in the HAP Contracts.  *See* ECF No. 92 at 13 (quoting the Third

2   Amended Complaint).

3         To the extent the phrase "four years prior to the date of filing this Complaint" is ambiguous, the

4   phrase is best interpreted as referring to the four years predating the filing of the *original* complaint.

5   First, the use of the bare term "Complaint," which typically refers to the first complaint filed in an

6   action, rather than "Third Amended Complaint," supports this interpretation.  Defendants' position that

7   the term "this Complaint" can only be read to refer to the Third Amended Complaint, and therefore

8   must be interpreted as cutting short the class period, puts more weight on the word "this" than it can

9   reasonably bear.  It is more reasonable to read the word "this" as indicating the complaint that initiated

10  *the instant action or matter*, particularly as there is no reason that either Plaintiffs or the Court would

11  unnecessarily cut the class period short.

12        This interpretation is further supported by the class certification pleadings.  Plaintiffs' Motion

13  for Class Certification cited and relied on evidence dating back to 2011. *See, e.g.*, Lavine Decl., ECF

14  No. 72-5, Ex. A at 13-20 (2011-2012 HAP contract), Ex. B at 1-9, 18-22 (Additional Services

15  Agreements from 2011 and 2012), Ex. C at 15-42 (leases from 2011 and 2012), Ex. D at 1-9 (2013

16  ledger encompassing charges from 2011), Ex. E at 2, 5, 8 (monthly costs breakdowns from 2011 and

17  2012).  The Court cited this same evidence in granting class certification. *See, e.g.*, ECF No. 92 at 17,

18  26, 27.  Moreover, Defendants were on notice of the temporal scope of Plaintiffs' class claims based

19  on the parties' earlier discovery dispute, *see* ECF Nos. 47, 48, and although they discussed the

20  proposed class definition in their opposition to class certification, they did not suggest that it

21  temporally limited the class period to the four years preceding the motions for class certification and to

22  amend the complaint, *see* ECF No. 78 at 19-20.

23  **B.**   **In the Alternative, the Court Should Amend the Class Definition to Begin on April 14,**

24  **2011.**

25        In the alternative, if the Court determines that the Reimbursement Class as currently defined

26  limits membership to the four years predating the Third Amended Complaint, Plaintiffs request that the

27  Court exercise its discretion to amend the class definition.  Pursuant to its authority under Rule 23, a

28

757374.12

district court may alter or amend an order granting class certification at any time before final judgment. Fed. R. Civ. Pr. 23(c)(1)(C); *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Ms. L. v. United States Immigration & Customs Enf't*, 330 F.R.D. 284, 287 (S.D. Cal. 2019). "In considering the appropriateness of [modification or] decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." *Ms. L.*, 330 F.R.D. at 287 (quotation marks omitted).

Amendment is appropriate here, where modifying the definition of the Reimbursement Class to begin on April 14, 2011 would not change a single element of the Court's Rule 23 analysis from its July 30, 2018 order. Indeed, the evidence submitted with and relied on in Plaintiffs' motion for class certification established that Defendants' practices and the relevant contractual documents were substantially identical from 2011 forward. *See* Lavine Decl., Exs. A-E, ECF No. 72-5.

Amending the class definition would not prejudice Defendants, who, as discussed above, have long been on notice of the statewide class members' claims and have already produced voluminous documents dating back to 2011. Moreover, because the claims of class members who lived in Defendants' properties prior to 2014 and those who live in them today are identical, amending the class definition will not meaningfully affect the nature of the litigation. Finally, Plaintiffs have not delayed in seeking to amend the class definition, but rather acted as soon as they learned of Defendants' interpretation of the definition, which contradicted their previous agreement that 2011 marked the beginning of the Reimbursement Class. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 37 F. Supp. 3d 1126, 1152-53 (N.D. Cal. 2014) (permitting an amendment to the class definition to conform to the plaintiffs' preferred theory after determining that there was no prejudice to the defendants).

## C.   Defendants Should Be Required to Produce the Class List By July 26, 2019.

Defendant should bear the responsibility to compile the class list because they have direct access to the records and record-keeping systems that would permit a complete, accurate, and efficient identification of class members. *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 356-57 (1978). In *Oppenheimer*, the Supreme Court held that Rule 23(d) authorizes a district court to require a class

13

757374.12

1  action defendant to compile the class list for a certified class so that notice may be sent.[1]  *Id.*  The

2  Court explained:

> It is clear that Rule 23 (d) vests power in the district court to order one of
> the parties to perform the tasks necessary to send notice. [...] Since
> identification simply is another task that must be performed in order to
> send notice, we agree with the Court of Appeals for the Fifth Circuit that
> Rule 23 (d) also authorizes a district court in appropriate circumstances to
> require a defendant's cooperation in identifying the class members to
> whom notice must be sent.

7  *Id.* at 354-56.  The Court explained that an order directing a class action defendant to compile

8  the class list was appropriate where "the defendant may be able to perform a necessary task with less

9  difficulty or expense than could the representative plaintiff."  *Id.* at 356.  As to the case before it, the

10  Supreme Court held that because class members could only be identified by records under the

11  defendant's control, the district court acted within its authority under Rule 23(d) in requiring the

12  defendant to provide the necessary information.  *Id.* at 359-60.

13  Pursuant to *Oppenheimer*, district courts have ordered class action defendants to provide class

14  lists for certified classes to the representative plaintiffs.  *See, e.g.*, *Teets v. Great-West Life & Annuity*

15  *Ins. Co.*, No. 14-cv-2330-WJM-NYW, 2016 U.S. Dist. LEXIS 180283, at *6-7 (D. Colo. Dec. 29,

16  2016) (ordering the defendant to "provide Class Counsel with a list of all class members in

17  manipulable electronic form") (citing *Oppenheimer*, 437 U.S. at 355); *Baehr v. Creig Northrop Team,*

18  *P.C.*, No. 1:13-cv-0933-RDB, 2015 U.S. Dist. LEXIS 24964, at *23 (D. Md. Mar. 2, 2015) (ordering

19  the defendants to produce the class list because defendants "have access to all the records that identify

20  the class, and should therefore bear the burden of producing the class list").

21  Here, because Defendants alone have access to the records necessary to compile a complete and

22  accurate class list for the Reimbursement Class, and because they can use their electronic record-

23  keeping system to do so with "with less difficulty or expense" than Plaintiffs, this Court should

24  exercise its authority under Rule 23(d) to require Defendants to compile the class list and provide it to

25

26

27  [1] Although Plaintiffs originally sought production of the class list as a discovery matter prior to class
certification, following certification the proper authority for an order compelling production of the
class list is not Rule 26 but rather Rule 23.  *See Oppenheimer*, 437 U.S. at 350-56.

28

14

757374.12

1  Plaintiffs so that they may arrange for notice to be sent to members of the Reimbursement Class.  *See*

2  *Oppenheimer*, 437 U.S. at 356; Section II.B, *supra*.

3      The Court should order Defendants to produce the class list, including class members' names

4  and any available standard identifying information, in manipulable electronic form, such as Excel,  no

5  later than two weeks after this Motion is heard, *i.e.*, by July 26, 2019.[2]  "The purpose of Rule

6  23(c)(2) is to ensure that the plaintiff class receives notice of the action well before the merits of the

7  case are adjudicated." *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) (emphasis omitted)

8  (collecting authorities).  Given the significant time that has already elapsed since class certification due

9  to Defendants' refusal to produce the class list, there can be no more delay.

10  **D.      The Proposed Notice Form and Procedures Satisfy Rule 23's Requirements.**

11      Once the class list has been compiled from Defendants' records, Plaintiffs propose to retain a

12  qualified notice administrator, KCC Class Action Services, to administer class notice.  The Declaration

13  of Orlando Castillejos, filed herewith, provides information regarding KCC's experience and

14  qualifications.  KCC will use best available methods to locate current mailing addresses for each

15  member of the Reimbursement Class.  Bellows Decl. ¶ 20.  Plaintiffs propose that a long form notice,

16  substantially the same as the exemplar attached as Exhibit 14 to the Declaration of Anne Bellows filed

17  herewith, would then be sent by U.S. mail to every class member.  *See id*.¶ 22 & Ex. 14.

18  Reimbursement Class members would have 35 days from the date of mailing to opt out of the

19  Reimbursement Class.  *See id.*

20      These procedures and the proposed notice form conform to the requirements governing class

21  notice that are set out in Rule 23(c)(2)(B).  *First,* the Rule requires that the "the court must direct to

22  class members the best notice that is practicable under the circumstances, including individual notice

23  to all members who can be identified through reasonable effort."  Requiring Defendants to compile the

24  class list, complete with contact and identifying information, based on their up-to-date business records

25  will ensure that all members of the Reimbursement Class "who can be identified through reasonable

---

[2] Because membership in the Reimbursement Class is defined in a continuing manner, Plaintiffs
propose that class membership be cut off as of July 15, 2019, in order to notice a finite class.

757374.12

1    effort" are on the class list.  *See id.*  KCC will further ensure that this requirement is met by using the

2    best available methods for creating a mailing list for Reimbursement Class members.   Rule

3    23(c)(2)(B) expressly permits notice by U.S. mail.

4         *Second*, the Rule requires that the notice form must "clearly and concisely state, in plain, easily

5    understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class

6    claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the

7    member so desires; (v) that the court will exclude from the class any member who requests exclusion;

8    (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on

9    members under Rule 23(c)(3)."  The proposed notice form provides all of this information in clear and

10   understandable language.  *See* Bellows Decl. Ex. 14.  Defendants have agreed to Plaintiffs' proposed

11   notice form.  Bellows Decl. Ex. 13, Matthews May 13, 2019 Email.

12        Rule 23(c)(2)(B) does not address the length of the notice period; however, a notice period of

13   35 days is considered standard and acceptable.  *See, e.g.*, United States District Court for the Northern

14   District of California, *Procedural Guidance for Class Action Settlements* ¶ 9 (Updated Nov. 1, 2018

15   and Dec. 5, 2018) (requiring a notice period of at least 35 days for settlement notice).[3]

16   **E.**    **Good Cause Exists to Amend the Scheduling Order.**

17        The Court issued the most recent pre-trial scheduling order in this case on December 21, 2018.

18   ECF No. 103.   Under Federal Rule of Civil Procedure 16(b)(4), the Court has broad discretion to

19   modify a pretrial scheduling order on a showing of good cause.  The good cause inquiry focuses on the

20   diligence of the party seeking modification, and the party's reasons for requesting the modification.

21   *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *C.F. ex rel. Farnan v.*

22   *Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011).

23        Since the Court issued the most recent pre-trial scheduling order, Plaintiffs have been diligently

24   working to move the case forward.  Recognizing a need for additional resources to overcome

25   Defendants' intransigence and assist with litigating this complex class action and qui tam case,

26

27   _____

28   [3] These Guidelines are available online at
     https://www.cand.uscourts.gov/ClassActionSettlementGuidance (last accessed June 10, 2019).

16

757374.12

1  Plaintiffs' counsel sought and secured qualified co-counsel.  *See* ECF No. 104 (associating attorneys

2  from GBDH); ECF No. 106 (appointing GBDH class counsel).  Plaintiffs repeatedly met and conferred

3  with Defendants in an effort to resolve the parties' longstanding dispute regarding the method and

4  responsibility for compiling the class list.  *See* Bellows Decl. ¶¶ 2-19.

5       Despite Plaintiffs' diligence in seeking to resolve the parties' disputes regarding the class list,

6  the deadlines in the Court's December 21, 2018 pretrial Scheduling Order "cannot reasonably be met."

7  *See* Fed. R. Civ. P. 16 advisory committee's notes (1983) amendment (quoted in *Johnson*, 975 F.2d at

8  609).  Defendants' failure to produce the class list to date has unacceptably delayed notice to the

9  Reimbursement Class, threatening to undermine Rule 23(c)(2)'s purpose of ensuring that the plaintiff

10  class receive timely notice of the action as early in the litigation as is practicable.  *See Schwarzchild*,

11  69 F.3d at 295.  The current impasse regarding the class period now threatens to prolong that

12  unacceptable delay even further.

13       Plaintiffs have also been forced to divert their time and effort from merits discovery efforts to

14  procuring the class list from Defendants.  Notwithstanding Plaintiffs' extensive pre-class certification

15  discovery efforts, the three months of merits discovery remaining under the current scheduling order is

16  insufficient for a case of this magnitude and complexity.  *See, e.g.*, *Scott v. Chipotle Mexican Grill,*

17  *Inc.*, 300 F.R.D. 193, 198 (S.D.N.Y. 2014) (delay in obtaining class list and corresponding delays in

18  discovery supported modification of scheduling order under Rule 16(b)(4)); *Stoddart v. Express Servs.*,

19  No. 2:12-cv-01054-KJM-CKD, 2017 U.S. Dist. LEXIS 123688, at *5-8 (E.D. Cal. Aug. 4, 2017)

20  (same).  For example, Plaintiffs have requested that Defendants produce electronically stored

21  information sufficient to show charges and payments by class members, which is relevant to the

22  amount of restitution that may be due to the class members as well as to Defendants' treatment of

23  Additional Services charges as equivalent to rent.  Defendants have informed Plaintiffs that extracting

24  this data from their property management software will take some time and that they do not currently

25  have an estimated timeline for producing the data.  Bellows Decl. ¶ 24.  Moreover, based on the

26  detailed nature of the data sought and the opt-out rights of class members, Plaintiffs expect that the

27  data will not be fully produced until after the notice process is completed.  *Id.*

28

757374.12

1      Good cause for extending the deadlines in the scheduling order is further supported by the

2  recent addition of new counsel for the Plaintiffs.  Since joining the case, GBDH has devoted a

3  significant amount of time to gaining familiarity with the issues and evidence in this complex case, and

4  Plaintiffs' pre-existing counsel have necessarily dedicated time to bringing their new co-counsel up to

5  speed.  *See* Bellows Decl. ¶ 2; Newmark Decl. ¶ 23.

6      A further source of good cause for amending the Scheduling Order is that doing so will

7  facilitate settlement discussions.  The parties are actively exploring the possibility of mediation and

8  Plaintiffs believe that additional time is needed to permit the robust settlement discussions that would

9  be necessary to resolve this case.  *See* Bellows Decl. ¶ 25.  Due to the busy schedules of the mediators

10  that the parties have discussed, Plaintiffs anticipate that the parties may not be able to attend mediation

11  until September or October at the earliest.  *Id* .¶ 26.   Extending the deadlines in the Scheduling Order

12  may therefore serve the interests of judicial economy by creating an adequate opportunity for the

13  parties to settle this case.

14      Therefore, Plaintiffs request that the Court now amend the Scheduling Order, for good cause, to

15  reflect the following deadlines:

16   •   "All discovery shall be completed by ~~September 20, 2019~~ **March 27, 2020**" (ECF No.

17       103, 2:10)

18   •   "All counsel are to designate in writing and serve upon all other parties the name,

19       address, and area of expertise of each expert that they propose to tender at trial not later

20       than ~~October 11, 2019~~ **April 17, 2020**" (*id.* at 2:24-26)

21   •   "By ~~November 1, 2019~~ **May 8, 2020**, any party who previously disclosed expert

22       witnesses may submit a rebuttal list of expert witnesses who will express an opinion on

23       a subject covered by an expert designated by an adverse party if the party rebutting an

24       expert witness designation has not previously retained an expert to testify on that

25       subject." (*id.* at 2:27-3:3)

26   •   "All expert discovery shall be completed by ~~December 6, 2019~~ **June 12, 2020**" (*id.* at

27       3:25)

28

NOTICE OF MOT. & MOT. SEEKING (1) CLARIFICATION, OR IN THE ALTERNATIVE, AMENDMENT OF THE CLASS DEFINITION,
(2) COMPILATION OF THE CLASS LIST, (3) APPROVAL OF PROPOSED CLASS NOTICE, AND (4) AMENDMENTS TO THE
SCHEDULING ORDER – CASE NO. 2:15-CV-00799 KJM-DB

757374.12

- "All dispositive motions, except motion for continuances, temporary restraining orders or other emergency applications, shall be heard no later than ~~January 31, 2020~~ **July 10, 2020**" (*id.* at 4:2-3).

Defendants will not be prejudiced by these amendments.  To the contrary, Defendants have willingly stipulated to the proposed schedule.  Bellows Decl., Ex. 13.

## IV.    CONCLUSION

For the above-stated reasons, Plaintiffs hereby request that the Court (1) clarify, or in the alternative, amend, the definition of the Reimbursement Class to establish that the class period begins on April 14, 2011; (2) order Defendants to compile and produce a list of members of the Reimbursement Class no later than July 26, 2019; (3) approve Plaintiffs' proposed notice form and procedures and order that notice be sent accordingly to all members of the Reimbursement Class who can be reasonably identified; and (4) amend the Scheduling Order for good cause shown to reflect the dates set out above.

Dated:  June 14, 2019

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/*
Anne P. Bellows

Attorneys for Plaintiff and Relators

757374.12