Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 763-9800; (510) 835-1417 (Fax)

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
(510) 834-3300; (510) 834-3377 (Fax)

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
(510) 437-1863; (510) 437-9164 (Fax)

Jocelyn D. Larkin (SBN 110817)
jlarkin@impactfund.org
Lindsay Nako (SBN 239090)
lnako@impactfund.org
THE IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA  94701
(510) 845-3473; (510) 845-3654 (Fax)

Attorneys for Plaintiffs and Relators and the Certified Classes

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON APARTMENTS, LP, BENT TREE APARTMENTS, LLC, CALIFORNIA PLACE APARTMENTS, LLC, CAMELOT LAKES HOLDINGS, LLC, CANYON CLUB HOLDINGS, LLC, COURTYARD AT CENTRAL PARK APARTMENTS, LLC, CREEKSIDE HOLDINGS, LTD, HAYWARD SENIOR APARTMENTS, LP, HERITAGE PARK APARTMENTS, LP, OAK VALLEY APARTMENTS, LLC, OAK VALLEY | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>DISCOVERY MATTER<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISPUTE**<br><br>Date:       December 3, 2021<br>Time:      10:00 am<br>Dept:      Courtroom 27, 8th Floor<br>Before:   Hon. Magistrate Judge<br>                Deborah Barnes<br><br>Trial Date: None Set |

1   HOLDINGS, LP, PEPPERTREE APARTMENT
    HOLDINGS, LP, PIEDMONT APARTMENTS,
2   LP, POINT NATOMAS APARTMENTS, LLC,
    POINT NATOMAS APARTMENTS, LP,
3   RIVER OAKS HOLDINGS, LLC, SHADOW
    WAY APARTMENTS, LP, SPRING VILLA
4   APARTMENTS, LP, SUN VALLEY
    HOLDINGS, LTD, VILLAGE GROVE
5   APARTMENTS, LP, WASATCH QUAIL RUN
    GP, LLC, WASATCH PREMIER
6   PROPERTIES, LLC, WASATCH POOL
    HOLDINGS III, LLC, and DOES 1-4,
7
                                Defendants.
8

Plaintiffs-Relators Denika Terry, Roy Huskey III, and Tamera Livingston ("Plaintiffs") on behalf of themselves and the certified classes, and on behalf of the United States, and Defendants Wasatch Advantage Group, LLC, Wasatch Property Management, LLC, Wasatch Pool Holdings, LLC, Chesapeake Apartment Holdings, LLC, Logan Park Apartments, LLC, and Logan Park Apartments, LP ("Defendants"), submit this Joint Statement Regarding Discovery Disagreement under Local Rule 251(c).

## **INTRODUCTION**

With the close of discovery approaching on December 16, 2021, Plaintiffs seek Defendants' production of documents regarding mandatory additional charges imposed on tenants participating in the Section 8 program, including covered parking, internet and cable, washer and dryer rentals, and renters' insurance. Defendants agree that the documents are relevant to an important factual dispute in the case and do not oppose the production addressed in this Joint Statement in principle, but they are not able to commit to production nor to a date certain. Plaintiffs have proposed a targeted search protocol to identify the documents. Plaintiffs seek an order requiring production of the documents in question by December 16, 2021.

## **MEET AND CONFER EFFORTS**

On June 16, 2020, Plaintiffs served on Defendants Plaintiff Terry's Requests for Production, Set Two, which included a number of requests for production seeking email communications on topics relevant to the case. Among those, Request for Production No. 52 ("RFP 52") sought "[a]ll documents concerning or reflecting communications involving any of Defendants' property-level employees regarding whether and to what extent additional service charges are mandatory or optional." Defendants' response included no substantive objections and indicated that they anticipated producing substantive documents through an email production that the Parties were then meeting and conferring about.

On June 25, 2020, Plaintiffs sent a letter proposing a search protocol for the various document requests seeking email communications, including RFP 52. The Parties met and

1   conferred about the search protocol from July 2020 through April 2020 and ran iterations

2   intended to narrow the results to a manageable number of documents.  Defendants produced

3   documents from other portions of the search during that period.   On April 21, 2021, due to the

4   unwieldy number of documents and the lack of any means available to Plaintiffs to tailor the

5   search related to RFP 52 more narrowly, Plaintiffs further narrowed their proposed search

6   protocol for communications by property-level employees in part by eliminating terms related to

7   RFP 52.

8          On October 20, 2021, Plaintiffs received data from Defendants' centralized property

9   management database ("Yardi data") showing rates of enrollment in the various additional service

10   charges by charge code, property, and month.  Using that data, Plaintiffs developed a targeted list

11   of 39 properties and time periods where there may have been mandatory charges based on

12   enrollment rates.  The proposed search would involve developing a list of leasing or property-

13   management personnel at the listed properties, focusing on those custodians, and filtering emails

14   to the time periods and charges indicated on Plaintiffs' list.  On November 8, 2021, the parties

15   met and conferred via telephone regarding RFP 52 and then Plaintiffs provided their list to

16   Defendants via the attached meet and confer letter.  Ex. 1, Nov. 8 Meet and Confer Letter.

17          During the November 8 call, Plaintiffs' counsel requested that Defendants supplement

18   their document production and described their proposed search protocol.  Defendants' counsel

19   agreed that the request was reasonable and relevant to a key issue in this case.  *See id.* at 2.

20          In the November 8 meet and confer letter, Plaintiffs requested a follow-up meeting on

21   November 10, 2021, as well as a firm commitment by 5 pm on November 12, 2021, as to whether

22   Defendants would produce additional documents and a planned production date.  *Id.* at 3.

23          By email on November 11, 2021, Plaintiffs noted that the deposition of Chief Operating

24   Officer Jarom Johnson the day before had "reinforced the need" for a renewed email search for

25   documents responsive to RFP 52.  *See* Ex. 2.  The email referred Defendants to the proposed

26   search protocol sent on November 8 and reiterated Plaintiffs' request for a firm commitment by

27   November 12.  *See id*.  Plaintiffs informed defendants that they would file a motion to compel if

28   Defendants did not provide a commitment by the deadline.  *Id.*

2

4863-9893-4276.1

The parties met and conferred again on November 12, 2021, via telephone.  Plaintiffs reiterated their request for a commitment to production.  Defendants did not object nor raise concerns about Plaintiffs' request for supplemental production for RFP 52 or the proposed search protocol.  However, Defendants had not taken any steps toward implementing the search protocol and were unable to commit to the production or a date by which they would produce responsive documents.  Plaintiffs again informed Defendants of their intention to move to compel.  Defendants stated their plans to begin the steps necessary to implement the search protocol, and Plaintiffs agreed that if Defendants could secure the production in a timely way, then Plaintiffs would take this Motion off calendar.

Given the impending fact discovery deadline of December 16, 2021, and Defendants' failure to commit to production, Plaintiffs filed a motion to compel that same day.  ECF 152.

## CASE NATURE AND POSTURE

### I.    Case Background

Plaintiffs are tenants who receive rental assistance through the federally subsidized Housing Choice Voucher Program commonly known as "Section 8."  Defendants are Wasatch Advantage Group, LLC and its affiliates, a residential rental and property management company with residential apartments in five western states.  Plaintiffs allege Defendants improperly charged class members for additional service charges such as laundry machines, renters' insurance, and parking.

The Court denied Defendants' motion to dismiss in 2017, ECF 61, and certified damages and injunctive relief classes in 2018, ECF 92.  The classes comprise past, current, and future tenants at Defendants' California properties who participate in the Section 8 program and have paid additional service charges.  ECF 92 at 13.  Plaintiffs bring claims under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as well as certified class claims under California contract, business, and consumer laws.  Fifth Amended Class Action Complaint ("5AC") ¶¶ 212-260, ECF No. 136.

Under the Section 8 program, participants' rent portions are capped at 30 to 40 percent of their monthly income, while a local public housing agency pays the balance directly to the

1    landlord.  42 U.S.C. §§ 1437f(o).

2          Plaintiffs challenge Defendants' practice of charging Section 8 tenants for services that

3    are separate from, and in addition to, the tenants' portion of the approved rent amount under the

4    government contracts that govern their leases.  5AC ¶¶ 11-13, 57-58, 60.  The charges are for

5    items such as washers and dryers, parking, renters' insurance, or internet and cable, and are set

6    out in an "Additional Services Agreement" that is part of the tenants' lease.  *Id.* at ¶¶ 12, 119-20.

7          This case has significant financial stakes and will affect many of Defendants' current and

8    former tenants.  The certified damages class includes approximately 2,500 California tenants who

9    have each paid hundreds or thousands of dollars in service charges since 2011.  The scope of the

10   case goes beyond California; Plaintiffs allege that Defendants' practice extends across their

11   portfolio in four Western states (California, Washington, Arizona, and Utah), violating uniform

12   federal requirements.  Thus, in their qui tam claims, Plaintiffs seek damages and penalties for rent

13   subsidy amounts charged to the United States for Section 8 tenants who paid service charges in

14   any of the states where Defendants operate.

15   **II.     Factual Issues Relevant to Discovery Dispute**

16         As the Court has noted, Defendants' liability in this case will turn on whether their

17   additional service charges legally constitute "rent."  *See* ECF 61 at 3, 6 (denying Defendants'

18   motion to dismiss after noting "if the additional charges can constitute additional rent, then

19   Defendants' motion must fail").

20         Mandatory fees are considered rent because they are part of the "consideration paid by the

21   tenant for use of the rental unit."  *Velez v. Cuyahoga Metro. Hous. Auth.*, 795 F.3d 578, 585 (6th

22   Cir. 2015).  Thus, whether Defendants had mandatory charges at their properties—and whether

23   Section 8 tenants were subject to those charges—is a key issue in this case.  *See* ECF No. 61 at 7

24   (granting Plaintiffs leave to amend to add clear allegations that charges are mandatory);

25   5AC ¶¶ 13, 125-32 (alleging that some additional service charges are a condition of leasing at

26   some of Defendants' properties).

27         The question of whether Defendants imposed mandatory charges on Section 8 tenants, or

28   at all, is still heavily contested and has not been resolved through discovery efforts to date.  *See,*

                                          4

*e.g.*, Joint Letter re Discovery Dispute, ECF No. 154 (documenting contradictory discovery responses regarding mandatory charges).[1]

Fact discovery is set to close on December 16, 2021.

**III.    Discovery Items in Dispute and the Parties' Contentions**

The parties' discovery dispute concerns Plaintiff Terry's Request for Production 52, which was served as part of Plaintiff Denika Terry's Request for Production of Documents, Set Two, served on June 16, 2020.  The following is verbatim the content of Plaintiffs' request for production and Defendants' response:

> **REQUEST FOR PRODUCTION NO. 52:**
> All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of DEFENDANTS' PROPERTY-LEVEL EMPLOYEES regarding whether and to what extent ADDITIONAL SERVICE CHARGES are mandatory or optional.
>
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**
> Defendant objects to this request to the extent it seeks documents protected by the Attorney-Client and Attorney Work Product privileges. Further, these communications are likely to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for Production. Defendants will provide a privilege log as appropriate following review and production of those communications.

**A.   Plaintiffs' Position**

Plaintiffs respectfully request that the Court order Defendants to provide documents responsive to RFP 52, using Plaintiffs' proposed narrowed search protocol, by the December 16, 2021, discovery deadline.  Although Defendants did not lodge substantive objections to RFP 52 and have not expressed any reservations about Plaintiffs' proposed search protocol, Defendants have not committed to production nor a production date.  As the Court noted in its October 28, 2021, scheduling order, all discovery disputes in this case must be resolved and related orders complied with by the close of discovery.  ECF 144 at 2.

As an initial matter, Defendants have waived all substantive objections to RFP 52, objecting only to the extent the request seeks documents protected by attorney-client or work

---

[1] Plaintiffs have separately filed a Motion to Compel seeking a full response to Huskey Interrogatory 18, which asks Defendants to identify properties that have had mandatory charges.

5

product privileges.  *O.L. v. City of El Monte*, No. 2:20-cv-0797 RGK (JDEx), 2021 WL 926105, at *3 (C.D. Cal. Jan. 11, 2021) ("[O]bjections not raised in a written response to discovery may not be raised for the first time in a discovery motion.").  Indeed, Defendants agree that the request is reasonable and targeted to a key issue in the case.  *See* Ex. 1 at 2.

### 1.   Defendants have not provided reasonable assurance that responsive documents will be produced.

A party requesting production under Rule 34 of the Federal Rules of Civil Procedure may move for an order compelling production if the responding party fails to produce or permit inspection of the requested item.  Fed. R. Civ. P. 37(a)(3)(B)(iv).  "If a party responds to requests for production of documents by stating that responsive documents 'will be produced,' it is proper for the requesting party to file a motion to compel if there is no reasonable assurance either in the responses or through a meet and confer process as to when the documents will be produced." *Voggenthaler v. Maryland Square, LLC*, No. 2:08-CV-01618-RCJ-GWF, 2010 WL 11579075, at *2 (D. Nev. Mar. 2, 2010).

Here, Plaintiffs have requested a commitment to production and a production date, but Defendants have provided neither.  *See* Ex. 1.  Nor have Defendants indicated that they have taken any steps toward compiling a custodian list or implementing the proposed search. Plaintiffs' concerns about the timely production of these documents have been exacerbated by Defendants' repeated delays during the meet and confer process.  To preserve their right to responsive documents before the approaching deadline, Plaintiffs filed a motion to compel on November 12, 2021.  ECF 152.

### 2.   Plaintiffs provided Defendants a reasonable search protocol to facilitate production.

A party responding to a Rule 34 production request "is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control."  *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (quoting *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992)).  The responding party must make a "reasonable inquiry" in locating responsive documents.  *Id.* at 190.  While it was not Plaintiffs'

6

1   burden to create a reasonable search protocol, once they had adequate data to develop a targeted

2   list of custodians, Plaintiffs created the proposed search protocol to encourage production and

3   reduce the burden on Defendants.  *Cf. Oracle USA Inc. v. SAP AG*, 264 F.R.D. 541, 550-51 (N.D.

4   Cal. 2009) (noting "[i]t would be unfair . . . to put the burden on [the requesting party] to intuit

5   that such search terms would be necessary," given the producing party's greater knowledge of

6   documents in their possession and intricacies of their systems).

7           For electronic documents such as emails, courts have approved the use of search protocols

8   as a means of identifying responsive documents.  *See, e.g.*, *Freeman v. Dal-Tile Corp.*, No. 5:10-

9   CV-00522-BR, 2012 WL 4577718, at *3-4 (E.D.N.C. Oct. 2, 2012) (compelling defendant to use

10  keyword searches proposed by plaintiff); *EEOC v. McCormick & Schmick's Seafood Rests., Inc.*,

11  No. WMN-08-0984, 2012 WL 380048, at *4 (D. Md. Feb. 3, 2012) (noting the "[c]ommon

12  practice governing the discovery of electronically stored information requires the use of search

13  terms" and ordering the parties to confer on reasonable keywords).

14          From the outset, Plaintiffs sought to develop a search protocol that would identify a

15  manageable number of documents likely to be responsive to RFP 52.  Plaintiffs put that search on

16  hold earlier this year because they lacked a reasonable and accurate basis for targeting the search

17  to relevant custodians or time periods.  Defendants' recent production of Yardi data on October

18  20, 2021, has allowed Plaintiffs to develop a manageable list of target properties, charges, and

19  time periods.  Ex. 1 at 1-2.

20          Plaintiffs have proposed a reasonable and narrow search protocol to reduce the burden on

21  Defendants and help facilitate responsive production.  Ex. 1, Attachment A.  Defendants agree the

22  search is reasonable and have not offered any alternative nor requested changes.  *See* Ex. 1 at 2.

23  The proposal is a straightforward email search focused on 39 specific properties, charges, and

24  time periods.  Each item was carefully chosen by analyzing data from Yardi, Defendants'

25  property management software system.  The data allowed Plaintiffs to review tenant rates of

26  enrollment in service charges at Defendants' properties for both non-Section 8 and Section 8

27  tenants.  Plaintiffs identified properties and time periods with high enrollment rates that indicate

28  there may have been a service charge imposed as a condition of leasing.  The keyword terms are

7

4863-9893-4276.1

1  intended to capture any emails related to whether charges were mandatory or optional. *Id.*

2        **3.**  **Production is proportional to the needs of the case because the question of**

3             **whether Defendants impose mandatory charges at their properties is still heavily contested.**

4       "Relevance for purposes of discovery is defined very broadly." *Garneau v. City of*

5  *Seattle*, 147 F.3d 802, 812 (9th Cir. 1998).  To determine whether discovery is relevant and

6  proportional to the needs of the case, courts consider "the importance of the issues at stake in the

7  action, the amount in controversy, the parties' relative access to relevant information, the parties'

8  resources, the importance of the discovery in resolving the issues, and whether the burden or

9  expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

10       As Defendants acknowledged in meeting and conferring about this search, the documents

11  requested in RFP 52—property-level communications regarding whether and to what extent

12  additional service charges were mandatory—go to a key question in this case. *See* Ex. 1 at 2.

13  Plaintiffs seek information directly responsive to their allegations that Defendants' additional

14  service charges were a required condition of leasing and are therefore unlawful additional rent.

15  *See* 5AC ¶¶ 13, 125-32; ECF 61 at 3, 6.  By reviewing the requested documents, Plaintiffs seek to

16  determine (1) which of Defendants' properties have imposed mandatory fees on tenants, and

17  (2) whether Section 8 tenants have been subject to the same mandatory fees.

18       The question of whether Defendants had mandatory charges at their properties—and

19  whether Section 8 tenants were subject to those charges—remains in dispute.  Despite deposition

20  testimony by corporate officers and designees that some (largely unidentified) properties in

21  Defendants' portfolio required tenants to enroll in mandatory media charges, parking charges, and

22  washer and dryer charges as a condition of leasing, Defendants initially responded to an

23  interrogatory (Huskey Interrogatory 18) seeking a list of those properties by asserting that there

24  have never been mandatory charges.  Plaintiffs have not yet received a full response to Huskey

25  Interrogatory 18, despite repeated agreements from Defendants to provide additional information.

26  In depositions, Defendants have not been able to provide a full or coherent list of properties with

27  mandatory charges. *See, e.g.*, Ex. 3, Deposition of Janae Jarvis, Sept. 10, 2021, 15:7-22; 77:15-

28  82:14 (Defendants' person most knowledgeable responding "I don't know" over two dozen times

1   when asked to identify properties with mandatory parking charges).

2        The documents sought by Request for Production 52 are also significant because this

3   summer, years into active litigation, Defendants contended for the first time that they had always

4   had a policy of exempting Section 8 tenants from mandatory additional charges.  Defendants have

5   not been able to identify any documents to support this contention, and emails from property-

6   level employees about mandatory charges are likely to shed light on this issue.  *See* Ex. 4,

7   Defendants' Further Amended Response to Huskey Interrogatory 20.

8        Even if Defendants do provide a response to Huskey Interrogatory 18 listing properties

9   with mandatory charges, based on the conflicting record and shifting stories regarding this issue

10  to date, Plaintiffs believe that the response will require vetting.  Thus, Plaintiffs continue to find it

11  necessary to review property-level communications that illuminate conditions on the ground,

12  rather than to rely on any conclusory statements Defendants might provide.

13       Defendants voice, for the first time, a concern that the search protocol may produce a

14  large number of documents, requiring an arduous review process.  Defendants have elected to

15  produce large sets of email communications produced by previous agreed-upon search protocols

16  without reviewing them for relevance.  Defendants' full and complete objection to RFP 52 is set

17  forth above and does not include an objection on the basis of undue burden.

18  **IV.   Defendants' Position**

19       Counsel for Defendants agrees in principle with the facts as stated by Plaintiffs, and have

20  already begun the list of compiling the custodians necessary to facilitate the e-mail search.

21  Defendants note that Plaintiffs characterize the request as straightforward, which Defendants do

22  not necessarily agree with. Plaintiffs have demanded comprehensive employee lists from 30

23  properties over, at times, more than a decade and a half. The search is taking time, but is

24  underway.

25       Defendants' lone concern is that with this many custodians over this many years, the

26  search may produce a huge number of documents that will need to be reviewed prior to the

27  December 16, 2021 deadline. Plaintiffs have expressed their intention to avoid another massive

28  production request, and Defendants fully intend to work with Plaintiffs to avoid such a scenario.

1     Regardless, the bottom line is that Defendants have agreed to this search protocol and are

2   in the process of executing it. Should the burden of such a production be undue—an objection

3   Defendants made to this Request when it was propounded several years and millions of pages of

4   documents ago—Defendants are confident that the parties will cooperatively be able to resolve

5   the issue. Defendants reserve the right to update the Court on this issue should the parties not

6   have finalized the production prior to the hearing on this Motion.

7

8   Dated:  November 24, 2021          Respectfully submitted,

9                                     IMPACT FUND

10                                    By:   */s/ Lindsay Nako*
                                          Lindsay Nako

11                                    *Attorneys for Plaintiffs and Relators and the Certified Class*

12

13  Dated:  November 24, 2021          Respectfully submitted,

14                                    LEWIS BRISBOIS BISGAARD & SMITH LLP

15                                    By:  */s/ Ryan Matthews* (as authorized on 11/24/21)
                                          Ryan Matthews

16                                    *Attorneys for Defendant*

17

18

19

20

21

22

23

24

25

26

27

28

10

4863-9893-4276.1

Exhibit 1

# G B D H

## Goldstein, Borgen, Dardarian & Ho

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

November 8, 2021

**Via E-Mail Only**

Joseph Salazar                                    Joe.Salazar@lewisbrisbois.com
Ryan Matthews                              Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

    Re:  Meet and Confer – Terry's Request for Production 52

Dear Ryan:

    As I mentioned on this morning's meet and confer call, I write to request that Defendants supplement their document production in response to Terry Request for Production 52, which seeks documents "concerning or reflecting communications involving any of Defendants' property-level employees regarding whether and to what extent Additional Service Charges are mandatory or optional." Terry Requests for Production, Set 2 (served on June 16, 2020) (capitalization omitted).

    As you recall, we previously agreed to narrow our search for property-level emails to address the unwieldy number of responsive documents that Defendants were finding in their search. Among the search terms that we dropped at that time were terms related to whether charges were mandatory requirements of leasing.

    Now that we have had the opportunity to review the Yardi data produced by the Joint Expert reflecting rates of enrollment by Section 8 and non-Section 8 tenants in additional services by property & month, we have been able to develop a more targeted list of properties where there may have been charges that are required as a condition of leasing. With this information, we now propose a targeted email search focused on the following properties, time periods and charges:

1. 600 Lofts, Media, June 2017 to present
2. 600 Lofts, Washers/Dryers, April 2017 to present
3. Arcadia, Media, May 2017 to present
4. Arcadia, Washers/Dryers, May 2018 to present
5. Arcadia II, Media, January 2020 to present

155 Grand Avenue, Suite 900, Oakland, CA  94612  Tel 510. 763. 9800  Fax 510. 835. 1417  www.gbdhlegal.com

843168.3

6.   Arcadia II, Washers/Dryers, January 2021 to present
7.   Arroyo Vista Apartments, Alarm, April 2005 to September 2008
8.   Bellwood Park Apartments, Washers/Dryers, November 2015 to September 2018
9.   Brighton Place Apartments, Parking, April 2005 to November 2015
10.  Broadmoor Village Apartments, Cable, December 2017 to June 2021
11.  Broadmoor Village Apartments, Parking, April 2005 to April 2014
12.  Brookside Apartments, Alarm, April 2005 to July 2008
13.  California Place Apartments, Washers/Dryers, January 2006 to October 2009
14.  Chesapeake Commons Apartments, Washers/Dryers, April 2005 to May 2016
15.  Courtyard at Central Park, Cable, April 2005 to April 2012
16.  Crossroads Apartments, Parking, July 2006 to present
17.  Devonshire Court East, Media, October 2018 to present
18.  Devonshire Court West, Media, November 2018 to present
19.  Enclave at 1400 South, Washers/Dryers, July 2015 to present
20.  Falls at Hunters Pointe, Media, April 2018 to July 2021
21.  Florentine Villas, Washers/Dryers, March 2010 to present
22.  Garden Lofts, Media, May 2019 present
23.  Garden Lofts, Washers/Dryers, November 2019 to present
24.  Goldstone Place Apartments, Cable, April 2005 to December 2015
25.  Jerron Place, Washers/Dryers, November 2015 to September 2018
26.  Kimpton Square, Washers/Dryers, January 2017 to present
27.  Landing at Fancher Creek, Cable, April 2005 to June 2012
28.  Lofts at 7800, Media, February 2015 to present
29.  Promontory Point Apartments, Parking, April 2005 to February 2010
30.  Promontory Point Apartments, Parking, November 2019 to present
31.  Providence Place, Washers/Dryers, December 2011 to present
32.  Revo 225, Covered Garage, February 2014 to present
33.  River Oaks Apartments, Cable, April 2005 to June 2012
34.  The Reserve at View 78, Media, March 2019 to present
35.  The Reserve at View 78, Washers/Dryers, March 2020 to present
36.  The Sage, Media, August 2020 to present
37.  The Sage, Washers/Dryers, August 2021 to present
38.  Veranda, Media, February 2017 to present
39.  Veranda, Washers/Dryers, February 2018 to present

A search like this should be straightforward to implement.  The first step will be for Defendants to develop a list of leasing or property-management personnel at the properties listed above during the periods indicated.  Focusing on those custodians and filtering their emails to the time periods indicated, your ESI provider can then apply a keyword search along the lines of that proposed in the attached RFP 52 Narrowed Search Protocol.  *See* **Attachment A.**

On the call this morning you agreed that this was a reasonable request and that it is targeted to a key issue in the case.  We look forward to moving together on this.  In light of the approaching close of discovery, we propose that we plan to discuss this issue next on

*Denika Terry, et al. v. Wasatch*         -3-          November 8, 2021

Wednesday, November 10, 2021, and we request a firm commitment no later than 5pm on Friday, November 12, 2021 on whether Defendants agree to the production and a planned production date.

Sincerely,

Anne P. Bellows

APB/kbm

cc:      Andrew Wolff
         Brenna Wood-Fitzpatrick
         Jesse Newmark
         Henrissa Bassey
         Laura Ho
         Jocelyn Larkin
         Lindsay Nako

**Attachment A**

**RFP 52 Narrowed Search Protocol**

**Step 1:**  Defendants generate a list of leasing and property management personnel at the following properties for the time period indicate for each property:

1. 600 Lofts, Media, June 2017 to present
2. 600 Lofts, Washers/Dryers, April 2017 to present
3. Arcadia, Media, May 2018 to present
4. Arcadia, Washers/Dryers, May 2018 to present
5. Arcadia II, Media, January 2021 to present
6. Arcadia II, Washers/Dryers, January 2021 to present
7. Arroyo Vista Apartments, Alarm, April 2005 to September 2008
8. Bellwood Park Apartments, Washers/Dryers, November 2015 to September 2018
9. Brighton Place Apartments, Parking, April 2005 to November 2015
10. Broadmoor Village Apartments, Cable, December 2018 to June 2021
11. Broadmoor Village Apartments, Parking, April 2005 to April 2014
12. Brookside Apartments, Alarm, April 2005 to July 2008
13. California Place Apartments, Washers/Dryers, January 2006 to October 2009
14. Chesapeake Commons Apartments, Washers/Dryers, April 2005 to May 2016
15. Courtyard at Central Park, Cable, April 2005 to April 2012
16. Crossroads Apartments, Parking, July 2006 to present
17. Devonshire Court East, Media, October 2019 to present
18. Devonshire Court West, Media, November 2019 to present
19. Enclave at 1400 South, Washers/Dryers, July 2015 to present
20. Falls at Hunters Pointe, Media, April 2019 to July 2021
21. Florentine Villas, Washers/Dryers, March 2010 to present
22. Garden Lofts, Media, May 2020 present
23. Garden Lofts, Washers/Dryers, November 2019 to present
24. Goldstone Place Apartments, Cable, April 2005 to December 2015
25. Jerron Place, Washers/Dryers, November 2015 to September 2018
26. Kimpton Square, Washers/Dryers, January 2017 to present
27. Landing at Fancher Creek, Cable, April 2005 to June 2012
28. Lofts at 7800, Media, February 2015 to present
29. Promontory Point Apartments, Parking, April 2005 to February 2010
30. Promontory Point Apartments, Parking, November 2019 to present
31. Providence Place, Washers/Dryers, December 2011 to present
32. Revo 225, Covered Garage, February 2014 to present
33. River Oaks Apartments, Cable, April 2005 to June 2012
34. The Reserve at View 78, Media, March 2020 to present
35. The Reserve at View 78, Washers/Dryers, March 2020 to present
36. The Sage, Media, August 2021 to present
37. The Sage, Washers/Dryers, August 2021 to present
38. Veranda, Media, February 2018 to present
39. Veranda, Washers/Dryers, February 2018 to present

**Step 2:** ESI provider filters emails for the relevant personnel to focus on the period indicated.

**Step 3:** ESI provider applies the following search to those emails:

(Any term from List 1) w/30 (Any term from List 2)

| List 1 | List 2 |
|---|---|
| washer! | mandatory |
| dryer | oblig! |
| drier | compel! |
| "washing machine" | force! |
| parking | "have to" |
| garage | option! |
| storage | choice |
| internet | choose |
| cable | require! |
| "media package" | obligat! |
| intrusion | compulsory! |
| security | automatic! |
| alarm | request |
| | exception! |
| | "don't want" |
| | "do not want" |
| | cancel |
| | policy |
| | disagree |
| | "not agree" |
| | "every tenant" |
| | "all tenants" |
| | "comes with" |

Exhibit 2

| From: | Anne Bellows |
|---|---|
| To: | Matthews, Ryan |
| Cc: | Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey |
| Subject: | 11/8 and 11/10 meet and confer calls |

Dear Ryan,

The email below confirms and follows up on our meet and confer calls this week on Monday, 11/8 and Wednesday, 11/10.  I also include a couple items that we did not touch on this week, but which we have previously discussed, in order to make sure they are back on our agenda for our next call, which we planned for tomorrow after the informal discovery conference with Judge Barnes.

**_Depositions._**  You stated that Bradley Mishler was available on November 19.  We served an amended deposition notice for that date this morning.   Plaintiffs are continuing to review whether there are any additional depositions that we need to notice.

We agreed on the record to hold open Mr. Johnson's deposition pending a further email search for communications with Wasatch's attorneys related to Section 8 tenants and additional service charges, as addressed below.

We have our informal discovery conference regarding Mr. Raymond's deposition scheduled for tomorrow.  We look forward to the issue being resolved.

**_Renewed email search regarding mandatory charges._**  On Monday, we discussed the need to conduct a renewed email search related to whether charges were mandatory at the properties.  This email search will capture documents responsive to RFP 52.  Defendants at that time agreed that such a further search was reasonable and would address a key issue in the case.  Mr. Johnson's testimony yesterday has only reinforced the need for the search.  We sent you our proposed search protocol on Monday, and requested a firm commitment to the production by tomorrow (11/12).

If we do not receive the commitment tomorrow, we will file a protective motion to compel noticing a hearing on December 3.

**_Renewed email search for attorney communications._**  Yesterday Jarom Johnson testified that Defendants substantively consulted David Scharlach and a Mr. Cullimore in Utah regarding how Section 8 rules apply to additional service charges, and he specifically mentioned that he believes Mr. Scharlach's communications were in writing.  We have not received production of any emails from either of these attorneys.

Following Mr. Johnson's deposition, Defendants agreed to a further email search for emails with either of these two individuals during 2016.  Please complete that search as soon as possible so that we can review any additional documents and schedule Mr. Johnson's further deposition before the discovery cut off.

**_Huskey interrogatory responses._**  Defendants served an amended response to Huskey Interrogatory 18 on Monday.  We responded with a meet and confer letter the same day noting that the

interrogatory response did not address other charges that deposition testimony reflect have been requirements of leasing at some Wasatch properties.  (Bellows Nov. 8 letter.)

At the Johnson deposition yesterday, further insufficiencies came to light, including (1) the fact that according to Johnson the "Optional" column reflects policy towards Section 8 tenants, while the interrogatory asks about charges that have been mandatory for any tenants, resulting in a completely misleading response;  (2) Johnson was able to name off the top of his head 16 properties that had mandatory media packages, but that information was not reflected in the interrogatory responses; and (3) Defendants have not conducted due diligence to determine which properties have mandatory parking charge.  As to the third point, Mr. Johnson indicated that they were unable to determine which properties had mandatory parking charges from the company's yardi database.  That is inadequate.  Defendants also have at their disposal the personnel who work at those properties who would be in a position to provide the information, and they have data from the yardi database that indicates rates of enrollments to help them narrow down the properties that require investigation.

For your reference, these are the properties that Johnson named in his deposition as requiring tenants to enroll in media charges:

> Aztec Spring
> Burnett
> Canyon Ridge
> Cimmaron
> Falls at Hunter's Point
> Glen Oaks
> Goldstone Place
> Heron Point
> Landing at Fancher Creek
> Lofts at 7800
> Metropolitan Place
> Palladio
> Ranchwood
> Rio Seco
> River Point
> The Sands

These should be included in the interrogatory response, along with any others for which the media package was required or mandatory for any tenants, and any properties for which there have been required parking charges, or any other mandatory charges.

We agreed yesterday to set an informal discovery conference with Judge Barnes on this issue, and her deputy subsequently set it for Wednesday at 2:30pm.  Our deadline for filing the joint statement is now Monday at 10am.  Plaintiffs will provide our potion of the joint statement no later than noon tomorrow.

***Training documents.***  Defendants indicated that they are continuing to review the training documents and hope to provide a production shortly.  Please do so as soon as possible.  Please also note that Defendants have not yet provided a written list of the documents they are withholding or the reason for withholding them.  We request that Defendants provide that as soon as possible.

We have discussed including this issue in our second informal discovery conference with the Court. If necessary, we will do so.

***Status re: representation of new Defendants.***  Defendants reported that the retainer agreements with the new Defendants are in the gears of Lewis Brisbois bureaucracy and that they hoped to have the answer filed this week.  Given the approaching deadline for service, we have initiated service efforts.  We are also reviewing whether to request an extension of the service deadline from the Court.

***Supplemental disclosures.***  Defendants still have not served supplemental Rule 26 disclosures, despite the Court deadline. Please serve those as soon as possible.

***Updated class list.***  Defendants have previously agreed to produce an updated class list that includes class members' tenant identification numbers so that we can connect them to the yardi data.  We have not yet received that.  Please provide it as soon as possible.

***Delinquency tracker.***  On Monday we discussed Plaintiffs' meet and confer letter requesting production of the delinquency tracker, and Defendants assented to the production and asked Plaintiffs to notify the joint expert.  I did so, and my understanding is that they are now working on it.

***Relevant documents from personnel files.***  Defendants have reviewed the personnel files and will be serving a verification that they do not contain any responsive documents.

***Stipulation in lieu of tenant files production.***  Plaintiffs described our plan to put together a stipulation collecting documents from the tenant files that were produced in 2017, and asked Defendants to supplement the stipulation with documents postdating 2017.  Defendants were agreeable to this proposal.  Defendants also indicated an interest in potentially broadening the stipulation to address other uncontested facts in the case.  We agreed that might be productive; however, for purposes of moving this along, we plan to provide a draft of the narrower stipulation early next week.

***Stipulation re: modifications to the class certification order.***  Defendants indicated they were reviewing the stipulation to modify the class certification order and hoped to authorize filing this week.  We still have not received that authorization, please let me know as soon as possible what the status is on that.

***Housekeeping issues.***  We sent a letter addressing outstanding housekeeping issues, which Defendants indicated they are addressing.  On our call, we also discussed that we are still missing a verification for the RFA responses served on July 19, 2021 (Defendants' Responses to Plaintiff Denika

Terry's Request for Admissions, Set Two).

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

Exhibit 3

```
 1                UNITED STATES DISTRICT COURT
 2               EASTERN DISTRICT OF CALIFORNIA
 3                     SACRAMENTO DIVISION
 4    UNITED STATES OF AMERICA, ex )
      rel. DENIKA TERRY, ROY HUSKEY )
 5    III, and TAMERA LIVINGSTON,  )
      and each of them for         )    Case No. 2:15-CV-00799-KJM-DB
 6    themselves individually, and )
      for all other persons        )
 7    similarly situated and on     )
      behalf of the UNITED STATES  ) REMOTE VIDEOTAPED DEPOSITION OF
 8    OF AMERICA,                   )
                                    )              JANAE JARVIS
 9                    Plaintiffs,  )
                                    )         September 10, 2021
10    vs.                          )
                                    )
11    WASATCH ADVANTAGE GROUP, LLC, )
      WASATCH PROPERTY MANAGEMENT,  )
12    INC.; WASATCH POOL HOLDINGS,  )
      LLC, CHESAPEAKE APARTMENT     )
13    HOLDINGS, LLC, LOGAN PARK     )
      APARTMENTS, LLC, LOGAN PARK   )
14    APARTMENTS, LP, ASPEN PARK    )
      HOLDINGS, LLC, BELLWOOD       )
15    JERRON HOLDINGS, BELLWOOD     )
      HERRON APARTMENTS, BENT TREE  )
16    APARTMENTS, LLC, CALIFORNIA   )
      PLACE APARTMENTS, LLC CAMELOT )
17    LAKES HOLDINGS, LLC CANYON,   )
      CLUB HOLDINGS, COURTYARD AT   )
18    CENTRAL PARK APARTMENTS, LLC, )
      CREEKSIDE HOLDINGS, LTD,      )
19    HAYWARD SENIOR APARTMENTS,    )
      LP, Heritage Park APARTMENTS, )
20    LP, OAK VALLEY APARTMENTS,    )
      LP, OAK VALLEY HOLDINGS, LP,  )
21    PEPPERTREE APARTMENT          )
      HOLDINGS, LP., PIEDMONT       )
22    APARTMENTS, LP, POINT NATOMAS )
      APARTMENTS, LLC, POINT        )
23    NATOMAS APARTMENTS, LP, RIVER )
      OAKS HOLDINGS, LLC, SHADOW    )
24    WAY APARTMENTS, LP, SPRING    )
      VILLA APARTMENTS, LP, SUN     )
25    VALLEY HOLDINGS, LTD, VILLAGE )
```

Page 1

```
 1        GROVE APARTMENTS, LP, WASATCH )

 2     QUAIL RUN GP, LLC, WASATCH     )

 3      PREMIER PROPERTIES, LLC,      )

 4     WASATCH POOL HOLDINGS III,     )

 5      LLC, and DOES 1-4,            )

 6                                    )

 7                    Defendants.  ) Reported by

 8     _____) Amy E. Simmons, CSR, RPR, CRR, CRC

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                  REMOTE VIDEOTAPED DEPOSITION OF JANAE JARVIS

 2

 3           BE IT REMEMBERED that the remote videotaped deposition

 4     of JANAE JARVISwas taken via videoconference by the Plaintiffs

 5     before Veritext Legal Solutions, Amy E. Simmons, a Court

 6     Reporter and Notary Public in and for the County of Ada, State

 7     of Idaho, on Friday, the 10th day of September, 2021,ommencing

 8     at the hour of 10:34 a.m. Mountain Standard Time in the

 9     above-entitled matter.

10

11

12     APPEARANCES (Remotely):

13

       For the Plaintiffs:   GOLDSTEIN, BORGEN, DARDARIAN & HO

14                           By:  Anne Bellows, Esq.
                                  Stephanie Tilden, Esq.

15                           155 Grand Avenue, Suite 900
                             Oakland, California  94612

16                           Telephone:  (510) 763-9800
                             Facsimile:  (510) 835-1417

17                           abellows@gbdhlegal.com
                             stilden@gbdhlegal.com

18

19                           CENTRO LEGAL DE LA RAZA
                             By:  Jesse Newmark, Esq.

20                                Henrissa Bassey, Esq.
                             3022 International Boulevard, Suite 410

21                           Oakland, California  94601
                             Telephone:  (510) 437-1863

22                           Facsimile:  (510) 437-9164
                             jessenewmark@centrolegal.org

23

24

25

                                                          Page  3
```

```
 1    APPEARANCES (Contd.)

 2

      For the Defendants:   LEWIS BRISBOIS BISGAARD & SMITH, LLP
 3                          By:  Ryan Matthews, Esq.
                            2020 West El Camino Avenue, Suite 700
 4                          Sacramento, California  95833
                            Telephone:  (916) 564-5400
 5                          Facsimile:  (916) 564-5444
                            Ryan.Matthews@lewisbrisbois.com
 6

 7    Videographer:         Jon Burgess

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                        Page  4
```

```
 1              (Break taken from 10:42 a.m. to 10:44 a.m.)      10:43:57

 2              THE VIDEOGRAPHER:  We are going back on          10:43:57

 3      the record.  The time is 10:44 a.m.                      10:43:59

 4         Q.   (BY MS. BELLOWS)  Okay.  So I've just            10:44:09

 5      marked Exhibit 23 for the record, and we were able       10:44:10

 6      to confirm you pulled it up.                             10:44:13

 7              Have you seen this document before?              10:44:14

 8         A.   Yes.                                             10:44:15

 9         Q.   And is it your understanding that you are        10:44:17

10      testifying today pursuant to this notice?                10:44:20

11         A.   Yes.                                             10:44:23

12         Q.   Are you aware that you are being deposed          10:44:24

13      both in your individual capacity, that is, based         10:44:28

14      on your personal knowledge, and also that you have       10:44:31

15      been designated to testify on behalf of Wasatch          10:44:33

16      Property Management, Wasatch Advantage Group, and        10:44:37

17      Wasatch Pool Holdings regarding the topics listed        10:44:39

18      on this notice?                                          10:44:41

19         A.   Yes.                                             10:44:42

20         Q.   Would you read the first topic that's            10:44:42

21      listed under the Rule 30(b)(6) deposition                10:44:47

22      subjects?                                                10:44:54

23         A.   The first topic?                                 10:44:56

24         Q.   The number one.                                  10:44:57

25         A.   Laura, capital L, period?                        10:44:59
```

Page 14

| | | |
|---|---|---|
| 1 | Q.   Going down to the third page -- I thought | 10:45:05 |
| 2 | you could scroll for me.  I apologize.  Okay. | 10:45:05 |
| 3 | Usually it would be identified.  It takes a little | 10:45:15 |
| 4 | bit of getting used to. | 10:45:15 |
| 5 | A.   Topic 1, third page.  Please take notice | 10:45:16 |
| 6 | that pursuant to Federal -- | 10:45:19 |
| 7 | Q.   Sorry.  I'm referring to under the | 10:45:23 |
| 8 | heading it says "Rule 30(b)(6) Deposition | 10:45:25 |
| 9 | Subjects," the item in the list that's marked | 10:45:28 |
| 10 | No. 1. | 10:45:32 |
| 11 | Do you see that? | 10:45:33 |
| 12 | MR. MATTHEWS:  Page 1, line 23. | 10:45:41 |
| 13 | THE WITNESS:  Line 23.  Thank you.  I | 10:45:43 |
| 14 | appreciate that. | 10:45:45 |
| 15 | So No. 1, "Defendants' policies and | 10:45:46 |
| 16 | practices for encouraging or requiring Section 8 | 10:45:48 |
| 17 | tenants to enroll in or incur charges for the | 10:45:50 |
| 18 | appliances and services listed in Defendants' | 10:45:53 |
| 19 | additional services agreements." | 10:45:55 |
| 20 | Q.   (BY MS. BELLOWS)  Are you the person most | 10:45:59 |
| 21 | knowledgeable about that topic? | 10:46:00 |
| 22 | A.   Yes. | 10:46:02 |
| 23 | Q.   Okay.  Would you read the second one, | 10:46:02 |
| 24 | line 26, No. 2? | 10:46:07 |
| 25 | A.   "Defendants' policies and practices for | 10:46:09 |

Page 15

| | | |
|---|---|---|
| 1 | training employees to communicate with Section 8 | 10:46:11 |
| 2 | tenants regarding additional service agreements | 10:46:13 |
| 3 | and charges." | 10:46:18 |
| 4 | Q.   And are you the person most knowledgeable | 10:46:20 |
| 5 | about that topic? | 10:46:22 |
| 6 | A.   Yes. | 10:46:23 |
| 7 | Q.   Can you read No. 3? | 10:46:24 |
| 8 | A.   Yes.  Line 1, No. 3, "Defendants' | 10:46:25 |
| 9 | procedures, policies, and practices for ensuring | 10:46:31 |
| 10 | compliance with rules and regulations applicable | 10:46:34 |
| 11 | to the Section 8 program." | 10:46:36 |
| 12 | Q.   And are you the person most knowledgeable | 10:46:38 |
| 13 | about that topic? | 10:46:40 |
| 14 | A.   Yes. | 10:46:41 |
| 15 | Q.   And No. 4? | 10:46:41 |
| 16 | A.   Line 3, No. 4, "Defendants' procedures | 10:46:44 |
| 17 | policies, and practices regarding rent increases | 10:46:49 |
| 18 | and rent amounts for tenants in the Section 8 | 10:46:51 |
| 19 | program." | 10:46:54 |
| 20 | Q.   And are you the person most knowledgeable | 10:46:54 |
| 21 | about that topic? | 10:46:56 |
| 22 | A.   Yes. | 10:46:56 |
| 23 | Q.   And for No. 5? | 10:46:57 |
| 24 | A.   No. 5, line 5, "Defendants' procedures, | 10:46:59 |
| 25 | policies, and practices for making decisions | 10:47:04 |

Page 16

1        A.   Let me clarify that.  When we have an MDU        12:13:16

2    agreement, which is a multi-dwelling-unit               12:13:20

3    agreement, that means services are going to every       12:13:23

4    single household there.  They do not have to --         12:13:26

5    when the agreement goes to Section 8, if it is not      12:13:31

6    approved, they are exempt from that.  Section 8 is      12:13:34

7    not required at that point.                             12:13:37

8        Q.   Okay.  So I just want to make sure I           12:13:39

9    understand.                                             12:13:41

10        There is not a Wasatch policy to exempt            12:13:42

11    Section 8 tenants from those required charges, but     12:13:44

12    if the housing authority says you can't do it,         12:13:47

13    then Wasatch will exempt that tenant?                  12:13:49

14        A.   Yes.  Correct.  That's because that's a       12:13:52

15    part of their program, just like it's part of the      12:13:55

16    affordable program too, that they're exempt, or it     12:13:58

17    can be optional.                                        12:14:02

18        Q.   Okay.  And are you aware of a case where      12:14:02

19    the housing authority has said that tenants must       12:14:04

20    be exempt from mandatory media charges?                12:14:08

21        A.   I'm not aware of a blanket case like          12:14:11

22    that, no.                                               12:14:15

23        Q.   Any case?                                      12:14:16

24        A.   No.                                            12:14:16

25        Q.   Okay.  So as far as you know, no              12:14:17

                                                        Page 76

| | | |
|---|---|---|
| 1 | Section 8 tenants have ever been exempt from | 12:14:21 |
| 2 | mandatory media charges? | 12:14:24 |
| 3 | A.   No, let me clarify that question. | 12:14:25 |
| 4 | So we submit the agreements over. | 12:14:29 |
| 5 | Section 8 approves it.  If there is a charge in | 12:14:33 |
| 6 | there, if they exempt it, then that is out and | 12:14:36 |
| 7 | it's excluded from the agreement. | 12:14:39 |
| 8 | Q.   Okay.  I'm just saying you're not | 12:14:40 |
| 9 | aware -- I'm just saying you're not aware of a | 12:14:42 |
| 10 | case where that's happened? | 12:14:45 |
| 11 | A.   I am not aware, no, of a case where that | 12:14:46 |
| 12 | may have happened, no. | 12:14:49 |
| 13 | Q.   Okay.  All right.  Let's talk about | 12:14:50 |
| 14 | parking. | 12:14:57 |
| 15 | We've had some testimony in this case | 12:14:57 |
| 16 | previously that at some Wasatch properties, | 12:14:59 |
| 17 | tenants are required to pay mandatory parking | 12:15:02 |
| 18 | charges as a condition of leasing. | 12:15:04 |
| 19 | Are you familiar with that practice? | 12:15:06 |
| 20 | A.   At some locations, yes. | 12:15:08 |
| 21 | Q.   Okay.  And this is another thing that | 12:15:10 |
| 22 | varies from property to property? | 12:15:12 |
| 23 | A.   Yes. | 12:15:14 |
| 24 | Q.   Okay.  Can you identify the Wasatch | 12:15:15 |
| 25 | properties that have required tenants to sign up | 12:15:18 |

Page 77

| | | |
|---|---|---|
| 1 | for paid parking as a condition of leasing at any | 12:15:20 |
| 2 | time since 2005? | 12:15:24 |
| 3 | A.   I can't identify which specific ones. | 12:15:25 |
| 4 | Q.   Could you identify any? | 12:15:28 |
| 5 | A.   Not off the top of my head, no. | 12:15:29 |
| 6 | Q.   Okay.  I'm going to go ahead and list | 12:15:40 |
| 7 | them for you. | 12:15:43 |
| 8 | A.   Okay. | 12:15:44 |
| 9 | Q.   This is a long list.  I'll warn you. | 12:15:44 |
| 10 | So for each, if you can tell me if | 12:15:46 |
| 11 | they've had required parking charges, and, to the | 12:15:49 |
| 12 | best of your knowledge, the time period that those | 12:15:52 |
| 13 | charges have been in effect. | 12:15:55 |
| 14 | Aspen Park Apartments? | 12:15:57 |
| 15 | A.   I don't know. | 12:16:00 |
| 16 | Q.   Arroyo Vista Apartments? | 12:16:00 |
| 17 | A.   I don't know. | 12:16:04 |
| 18 | Q.   Aztec Springs? | 12:16:04 |
| 19 | A.   I don't know. | 12:16:06 |
| 20 | Q.   Brighton Place? | 12:16:08 |
| 21 | A.   I don't know. | 12:16:11 |
| 22 | Q.   Broadmoor? | 12:16:13 |
| 23 | A.   I don't know. | 12:16:15 |
| 24 | Q.   Brookside? | 12:16:16 |
| 25 | A.   I don't know. | 12:16:18 |

Page  78

| | | | |
|---|---|---|---|
| 1 | Q. | Bent tree? | 12:16:21 |
| 2 | A. | I don't know. | 12:16:23 |
| 3 | Q. | Bellwood Park? | 12:16:24 |
| 4 | A. | I don't know. | 12:16:27 |
| 5 | Q. | California Place? | 12:16:34 |
| 6 | A. | I don't know. | 12:16:34 |
| 7 | Q. | Canyon Club Apartments? | 12:16:36 |
| 8 | A. | I don't know. | 12:16:41 |
| 9 | Q. | Cimarron Place Apartments? | 12:16:43 |
| 10 | A. | I don't know. | 12:16:46 |
| 11 | Q. | Chesapeake Commons? | 12:16:47 |
| 12 | A. | I don't know. | 12:16:50 |
| 13 | Q. | Crossroads? | 12:16:55 |
| 14 | A. | I don't know. | 12:16:56 |
| 15 | Q. | Creekside Villa Apartments? | 12:16:57 |
| 16 | A. | I don't know. | 12:17:01 |
| 17 | Q. | Courtyard at Central Park? | 12:17:03 |
| 18 | A. | I don't know. | 12:17:07 |
| 19 | Q. | Enclave at 1400 South? | 12:17:07 |
| 20 | A. | I don't know. | 12:17:13 |
| 21 | Q. | Landing at Fancher Creek? | 12:17:17 |
| 22 | A. | I don't know. | 12:17:21 |
| 23 | Q. | Do you think there is going to be -- I'm | 12:17:22 |
| 24 | | halfway through the list. | 12:17:27 |
| 25 | | Do you think there is going to be any | 12:17:28 |

Page 79

```
 1    property for which your response is anything other      12:17:30

 2    than "I don't know"?                                    12:17:32

 3         A.   I don't know.                                 12:17:33

 4         Q.   Okay.                                         12:17:34

 5         A.   That's a lot of communities, so --           12:17:35

 6         Q.   Of course.  I'm just trying to get the       12:17:37

 7    information if you have it.  So I'll go through         12:17:40

 8    the list.  It doesn't take that long.                  12:17:42

 9              Bridges at Five Oaks?                         12:17:44

10         A.   I don't know.                                 12:17:46

11         Q.   Florentine Villas?                            12:17:48

12         A.   I don't know.                                 12:17:49

13         Q.   Glen Oaks Apartments?                         12:17:51

14         A.   I don't know.                                 12:17:53

15         Q.   Goldstone Place Apartments?                   12:17:55

16         A.   I don't know.                                 12:17:59

17         Q.   Lofts at 7800?                                12:18:00

18         A.   I don't know.                                 12:18:03

19         Q.   Logan Park?                                   12:18:04

20         A.   I don't know.                                 12:18:07

21         Q.   Metropolitan Place Apartments?               12:18:07

22         A.   I don't know.                                 12:18:12

23         Q.   Overlook at Pantano?                          12:18:13

24         A.   I don't know.                                 12:18:17

25         Q.   Oak Valley Apartments?                        12:18:17
```

Page 80

| | | | |
|---|---|---|---|
| 1 | A. | I don't know. | 12:18:19 |
| 2 | Q. | Palladio Apartments? | 12:18:22 |
| 3 | A. | I don't know. | 12:18:24 |
| 4 | Q. | Point Natomas Apartments? | 12:18:25 |
| 5 | A. | I don't know. | 12:18:28 |
| 6 | Q. | Piedmont Apartments? | 12:18:29 |
| 7 | A. | I don't know. | 12:18:31 |
| 8 | Q. | Point Natomas apartments? | 12:18:32 |
| 9 | A. | I think that was already repeated, but I | 12:18:37 |
| 10 | | don't know. | 12:18:39 |
| 11 | Q. | You're right.  It was. | 12:18:39 |
| 12 | | Promontory Point Apartments? | 12:18:41 |
| 13 | A. | I don't know. | 12:18:43 |
| 14 | Q. | Quail Run Apartments? | 12:18:45 |
| 15 | A. | I don't know. | 12:18:49 |
| 16 | Q. | Revo 225? | 12:18:51 |
| 17 | A. | I don't know. | 12:18:53 |
| 18 | Q. | Remington Apartments? | 12:18:54 |
| 19 | A. | I don't know. | 12:18:57 |
| 20 | Q. | River Oaks Apartments? | 12:18:58 |
| 21 | A. | I don't know. | 12:19:01 |
| 22 | Q. | River Point Apartments? | 12:19:02 |
| 23 | A. | I don't know. | 12:19:06 |
| 24 | Q. | Rio Seco Apartments? | 12:19:07 |
| 25 | A. | I don't know. | 12:19:09 |

Page 81

| | | | |
|---|---|---|---|
| 1 | Q. | The Reserve at View 78? | 12:19:10 |
| 2 | A. | I don't know. | 12:19:13 |
| 3 | Q. | Ranchwood Apartments? | 12:19:16 |
| 4 | A. | I don't know. | 12:19:19 |
| 5 | Q. | Sands Apartments? | 12:19:20 |
| 6 | A. | I don't know. | 12:19:22 |
| 7 | Q. | Springwood Apartments? | 12:19:23 |
| 8 | A. | I don't know. | 12:19:27 |
| 9 | Q. | Spring Villas Apartments? | 12:19:28 |
| 10 | A. | I don't know. | 12:19:30 |
| 11 | Q. | Shadow Way Apartments? | 12:19:31 |
| 12 | A. | I don't know. | 12:19:33 |
| 13 | Q. | Wasatch Hills Apartments? | 12:19:34 |
| 14 | A. | I don't know. | 12:19:36 |

15      Q.   Have any Wasatch properties ever required      12:19:37
16   tenants to rent storage space as a condition of      12:19:52
17   leasing?      12:19:55
18      A.   Not that I'm aware of.      12:19:56
19      Q.   Are there any other additional service      12:19:57
20   charges besides renter's insurance, which I      12:19:59
21   understand is a slightly different beast, that      12:20:01
22   have been required as a condition of leasing at      12:20:03
23   any Wasatch properties?      12:20:06
24      A.   Not that I'm aware of.      12:20:07
25      Q.   Okay.      12:20:08

Page 82

```
 1              MS. BELLOWS:  Okay.  So I've marked the        12:20:58

 2      next exhibit, this is Defendant 29.  This is          12:20:59

 3      Defendants' Response to Huskey Interrogatories,       12:21:02

 4      Set Five.                                             12:21:04

 5              (Deposition Exhibit No. 29 was marked.)       12:21:05

 6          Q.  (BY MS. BELLOWS)  Let me know when you        12:21:06

 7      have that up.                                         12:21:07

 8          A.  Yes.                                          12:21:22

 9          Q.  Have you seen this document before?          12:21:23

10          A.  I don't recall.                              12:21:24

11          Q.  You don't recall?                            12:21:37

12              I'd like to direct your attention to         12:21:44

13      Interrogatory No. 18.                                 12:21:45

14              MR. MATTHEWS:  For the record we do           12:21:55

15      intend to amend these responses, but go ahead.       12:21:58

16              MS. BELLOWS:  Let me ask this.  Do you        12:22:03

17      have a date that you're expecting to amend this,     12:22:04

18      Ryan?                                                 12:22:07

19              MR. MATTHEWS:  Hopefully next week.           12:22:07

20              MS. BELLOWS:  Hopefully next week?            12:22:08

21              MR. MATTHEWS:  Yeah.                          12:22:10

22              MS. BELLOWS:  All right.  Let's hold off      12:22:10

23      on this.  I'm hoping you'll be able to get that to   12:22:13

24      me early next week, in which case we can deal with   12:22:15

25      it then.                                             12:22:18
```

Page 83

California Code of Civil Procedure

Article 5. Transcript or Recording

Section 2025.520

(a) If the deposition testimony is
stenographically recorded, the deposition officer
shall send written notice to the deponent and to
all parties attending the deposition when the
Original transcript of the testimony for each
session of the deposition is available for reading,
correcting, and signing, unless the deponent and
the attending parties agree on the record that the
reading, correcting, and signing of the transcript
of the testimony will be waived or that the
reading, correcting, and signing of a transcript of
the testimony will take place after the entire
deposition has been concluded or at some other
specific time.

(b) For 30 days following each notice under
subdivision (a), unless the attending parties and
the deponent agree on the record or otherwise in
writing to a longer or shorter time period, the
deponent may change the form or the substance of
the answer to a question, and may either approve
the transcript of the deposition by signing it, or

refuse to approve the transcript by not signing it.

(c) Alternatively, within this same period, the deponent may change the form or the substance of the answer to any question and may approve or refuse to approve the transcript by means of a letter to the deposition officer signed by the deponent which is mailed by certified or registered mail with return receipt requested. A copy of that letter shall be sent by first-class mail to all parties attending the deposition.

(d) For good cause shown, the court may shorten the 30-day period for making changes, approving, or refusing to approve the transcript.

(e) The deposition officer shall indicate on the original of the transcript, if the deponent has not already done so at the office of the deposition officer, any action taken by the deponent and indicate on the original of the transcript, the deponent's approval of, or failure or refusal to approve, the transcript. The deposition officer shall also notify in writing the parties attending the deposition of any changes which the deponent timely made in person.

(f) If the deponent fails or refuses to approve the transcript within the allotted period, the

deposition shall be given the same effect as though it had been approved, subject to any changes timely made by the deponent.

(g) Notwithstanding subdivision (f), on a seasonable motion to suppress the deposition, accompanied by a meet and confer declaration under Section 2016.040, the court may determine that the reasons given for the failure or refusal to approve the transcript require rejection of the deposition in whole or in part.

(h) The court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to suppress a deposition under this section, unless the court finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust.

DISCLAIMER:  THE FOREGOING CIVIL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE STATE RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

Exhibit 4

1 | **LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH A. SALAZAR JR., SB# 169551
2 |    E-Mail: Joe.Salazar@lewisbrisbois.com
RYAN MATTHEWS, SB# 311674
3 |    E-Mail: Ryan.Matthews@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
4 | Sacramento, California 95833
Telephone: 916.564.5400
5 | Facsimile: 916.564.5444

6 | Attorneys for Wasatch Advantage Group, LLC;
Wasatch Property Management, Inc.; Wasatch
7 | Pool Holdings, LLC, Chesapeake Commons
Holdings, LLC; Logan Park Apartments, LLC;
8 | Logan Park Apartments, LP

9 |

10 | **UNITED STATES DISTRICT COURT**

11 | **EASTERN DISTRICT OF CALIFORNIA**

12 | **SACRAMENTO DIVISION**

13 |

14 | UNITED STATES OF AMERICA, ex rel. | CASE NO. 2:15-cv-00799-KJM-DB
DENIKA TERRY and ROY HUSKEY III,
15 | and each of them for themselves individually, | **DEFENDANTS FURTHER AMENDED**
and for all other persons similarly situated and | **RESPONSES TO PLAINTIFF ROY**
16 | on behalf of the UNITED STATES OF | **HUSKEY III'S INTERROGATORIES,**
AMERICA, | **SET FIVE**

17 |

18 |                    Plaintiffs/Relators, | The Hon. Kimberly J. Mueller

19 |          vs. | Trial Date:        None Set

20 | WASATCH ADVANTAGE GROUP, LLC,
WASATCH PROPERTY MANAGEMENT,
21 | INC., WASATCH POOL HOLDINGS, LLC,
CHESAPEAKE COMMONS HOLDINGS,
22 | LLC, LOGAN PARK APARTMENTS, LLC;
LOGAN PARK APARTMENTS, LP,

23 |                    Defendants.

24 |

25 | PROPOUNDING PARTY:        Plaintiff, Roy Huskey, III

26 | RESPONDING PARTY:        Defendants, Wasatch Advantage Group, LLC; Wasatch Property

27 |                        Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake

28 |                        Commons Holdings, LLC; Logan Park Apartments, LLC; Logan

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Park Apartments, LP

2    SET NO.:                    FIVE

3    **INTERROGATORY NO. 18:**

4    Please identify (by name, address, city, state, applicable time period, and relevant charges)

5    any SUBJECT PROPERTY that, for any period of time since April 14, 2005, made any

6    ADDITIONAL SERVICE CHARGE mandatory for any tenants.

7    **FURTHER AMENDED RESPONSE TO INTERROGATORY NO. 18:**

8    Defendants respond as follows: After diligent effort and inquiry, Defendants are unable to

9    verify time periods in which any Additional Service Charge was mandatory .This includes, but is

10   not limited to, charges for washers and dryers, covered parking, media packages, and renter's

11   insurance. Defendants' corporate policy is and always has been that for Section 8 tenants, no

12   Additional Service Charge is mandatory, and each and every one has always been optional. In

13   light of prior testimony regarding bulk media packages, Defendants list below each property that

14   Wasatch Property Management has managed in the times relevant to this case that has ever had a

15   media package of any kind, and the date it was added.

16

| PROPCODE | PROPERTY | MEDIA PACKAGE | DATE ADDED | |
|---|---|---|---|---|
| 6lt | 600 Lofts | Y | 04/2017 | |
| art | Arcadia | Y | 05/2018 | |
| art2 | Arcadia II | Y | 01/2021 | |
| az | Aztec Springs Apartments | Y | 09/2020 | |
| bu | Burnett Station Apartments | Y | 01/2020 | |
| cn | Canyon Ridge Apartments | Y | 09/2020 | |
| cm | Cimarron Place Apartments | Y | 09/2020 | |
| dw | Devonshire Court West | Y | 03/2019 | |
| enclave | Enclave at 1400 South | Y | 07/2015 | |
| falls | Falls at Hunters Pointe | Y | 09/2018 | |
| glt | Garden Lofts | Y | 11/2019 | |
| go | Glen Oaks Apartments | Y | 09/2020 | |
| gp | Goldstone Place Apartments | Y | 03/2000 | |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| hp | Heron Pointe Apartments | Y | 08/1998 | |
| fc | Landing at Fancher Creek | Y | 04/2003 | |
| lofts | Lofts at 7800 | Y | 08/2014 | |
| mp | Metropolitan Place Apartments | Y | 11/2019 | |
| p1 | Palladio Apartments-Phase 1 | Y | 10/2002 | |
| p3 | Palladio Apartments-Phase 1 | Y | 10/2002 | |
| rw | Ranchwood Apartments | Y | 09/2020 | |
| rs | Rio Seco Apartments | Y | 09/2020 | |
| rp | River Point Apartments | Y | 09/2020 | |
| sa | Sands Apartments | Y | 09/2020 | |
| rvt | The Reserve at View 78 | Y | 09/2019 | |
| vet | Veranda | Y | 01/2018 | |
| vit | Village Grove Apartments | Y | 02/2015 | Internet Provided as Free Service for all residents |

**INTERROGATORY NO. 20:**

Please identify (by author, date, title, and bates number) any and all DOCUMENTS reflecting a company-wide policy maintained by DEFENDANTS that tenants participating in SECTION 8 were exempt from otherwise mandatory ADDITIONAL SERVICE CHARGES.

**RESPONSE TO INTERROGATORY NO. 20:**

Defendants respond that they are unable to identify any such documents.


DATED: November 17, 2021          LEWIS BRISBOIS BISGAARD & SMITH LLP


By: _____
RYAN MATTHEWS
Attorneys for Wasatch Advantage Group, LLC;
Wasatch Property Management, Inc.; Wasatch
Pool Holdings, LLC, Chesapeake Commons
Holdings, LLC; Logan Park Apartments, LLC;
Logan Park Apartments, LP

# VERIFICATION

**STATE OF CALIFORNIA, COUNTY OF SACRAMENTO**

I have read the foregoing DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE and know its contents.

☐ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☒ I am Executive Vice President of Wasatch Property Management, Inc., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

   ☒ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

   ☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for Wasatch Property Management, Inc., a party to this action. Such party is absent from the county where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on November _17_, 2021, at Logan, Utah.


Jarom Johnson
Print Name of Signatory                          Signature

4811-8011-7502.1

1

DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

LEWIS BRISBOIS

## **FEDERAL COURT PROOF OF SERVICE**

USA-Terry v Wasatch Property Mgmt
2:15-cv-00799 KJM DB

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

At the time of service, I was over 18 years of age and not a party to the action.  My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On November 17, 2021, I served the following document(s):

-   DEFENDANTS FURTHER AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

### **SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒   (BY E-MAIL OR ELECTRONIC TRANSMISSION)  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on November 17, 2021, at Sacramento, California.

_____
Alicia Crespo



**SERVICE LIST**
**USA-Terry v Wasatch Property Mgmt**
**2:15-cv-00799 KJM DB**

| | |
|---|---|
| Andrew Wolff<br>Law Office of Andrew Wolff, PC<br>1956 Webster Street, Ste. 275<br>Oakland, CA 94612 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  510-834-3300<br>E-Mail  andrew@awolfflaw.com |
| Jesse Newmark<br>CENTRO LEGAL DE LA RAZA<br>3022 International Blvd, Ste. 410<br>Oakland, CA 94601 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  (510) 437-1554 x115<br>Fax:  (510) 437-9164<br>Email:  jessenewmark@centrolegal.org<br>Email: malvarez@centrolegal.org |
| Laura L. Ho<br>Anne Bellows<br>Kristen A. Burzynski<br>Goldstein, Borgen, Dardarian & Ho<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612 | *Co-Counsel for Plaintiffs*<br><br>Tel.: 519-763-9800<br>Fax: 510-835-1417<br>Email: lho@gbdhlegal.com<br>Email: abellows@gbdhlegal.com<br>Email: sgrimes@gbdhlegal.com<br>Email: dvaldez@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com |
| Vincente Antonio Tennerelli<br>United States Attorney's Office<br>2500 Tulare Street, Suite 4401<br>Fresno, CA 93721 | *Attorney for Intervenor Plaintiff*<br>*United States of America*<br><br>Tel.: (559) 497-4080<br>Email: Vincente.Tennerelli@usdoj.gov<br>Email: joni.jones@usdoj.gov |
| Jocelyn D. Larkin<br>Lindsay Nako<br>The Impact Fund<br>2080 Addison Street, Suite 5<br>Berkeley, CA 94704 | *Attorney for Plaintiffs*<br><br>T: 510-845-3473 x.306<br>F: 510-845-3654<br>E: jlarkin@impactfund.org<br>E: lnako@impactfund.org |


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANTS FURTHER AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S
INTERROGATORIES, SET FIVE