Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
(510) 763-9800; (510) 835-1417 (Fax)

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
(510) 834-3300; (510) 834-3377 (Fax)

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
(510) 437-1863; (510) 437-9164

Jocelyn D. Larkin (SBN 110817)
Lindsay Nako (SBN 239090)
lnako@impactfund.org
jlarkin@impactfund.org
THE IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94701
(510) 845-3473; (510) 845-3654 (Fax)

Attorneys for Plaintiffs and Relators and the Certified Classes

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>          Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**THE PARTIES' JOINT STATEMENT REGARDING THEIR DISCOVERY DISPUTES RELATED TO HUSKEY INTERROGATORY 18 AND REQUESTS FOR PRODUCTION NOS. 27, 28, 29, & 30**<br><br>Date:     December 10, 2021<br>Time:    10:00 a.m.<br>Dept:    Courtroom 27, 8th floor<br>Before:  Hon. Magistrate Judge Deborah Barnes<br><br>Trial Date:    None Set |

1  HOLDINGS, LLC, BELLWOOD JERRON
   HOLDINGS, LLC, BELLWOOD JERRON
2  APARTMENTS, LP, BENT TREE
   APARTMENTS, LLC, CALIFORNIA PLACE
3  APARTMENTS, LLC, CAMELOT LAKES
   HOLDINGS, LLC, CANYON CLUB HOLDINGS,
4  LLC, COURTYARD AT CENTRAL PARK
   APARTMENTS, LLC, CREEKSIDE HOLDINGS,
5  LTD, HAYWARD SENIOR APARTMENTS, LP,
   HERITAGE PARK APARTMENTS, LP, OAK
6  VALLEY APARTMENTS, LLC, OAK VALLEY
   HOLDINGS, LP, PEPPERTREE APARTMENT
7  HOLDINGS, LP, PIEDMONT APARTMENTS,
   LP, POINT NATOMAS APARTMENTS, LLC,
8  POINT NATOMAS APARTMENTS, LP, RIVER
   OAKS HOLDINGS, LLC, SHADOW WAY
9  APARTMENTS, LP, SPRING VILLA
   APARTMENTS, LP, SUN VALLEY HOLDINGS,
10 LTD, VILLAGE GROVE APARTMENTS, LP,
   WASATCH QUAIL RUN GP, LLC, WASATCH
11 PREMIER PROPERTIES, LLC, WASATCH
   POOL HOLDINGS III, LLC,
12 and DOES 1-4,

13         Defendants.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

845075.5

Plaintiffs-Relators Denika Terry, Roy Huskey III and Tamera Livingston ("Plaintiffs), on behalf of themselves and the certified classes, and on behalf of the United States, and Defendants Wasatch Advantage Group, LLC, Wasatch Property Management, LLC, Wasatch Pool Holdings, LLC, Chesapeake Apartment Holdings, LLC, Logan Park Apartments, LLC, and Logan Park Apartments, LP ("Defendants"), submit this Joint Statement Regarding Discovery Disagreement ("Joint Statement") under Local Rule 251(c).

## I.      INTRODUCTION

Plaintiffs seek a proper response to an interrogatory asking Defendants to list all properties where mandatory additional charges, including parking, media packages, washer and dryer rentals, and renters' insurance, were imposed on any tenants during the liability period.  Defendants have served responses to the interrogatory, including two amended responses, and have not stated any objections to the interrogatory.  Based on deposition testimony from Defendants' corporate representative and conflicting evidence in the record, Plaintiffs contend that Defendants' attempts to answer the interrogatory to date are insufficient.  Defendants do not disagree and have promised an additional amended response to address Plaintiffs' concerns set out in this Joint Statement, but they have not yet provided it.  In line with the Parties' discussion with this Court during the informal discovery conference held on November 17, 2021, Plaintiffs seek an order requiring a proper and complete response to the interrogatory by the close of discovery on December 17, 2021.

Plaintiffs also seek an order compelling Defendants to produce outstanding documents responsive to Plaintiff Denika Terry's Requests for Production of Documents ("RFPs") Nos. 27 through 30.  These RFPs, propounded in June 2020, seek documents related to Defendants' training of their employees related to the Section 8 program, leases and the leasing process, additional service agreements and additional service charges, and notices related to nonpayment of rent or other charges.  Defendants made partial productions in 2020 and the first half of 2021, but they have not yet produced documents from their online video training library, despite agreeing to do so.  Moreover, Defendants have indicated that they will withhold from production some documents that Plaintiffs identified as potentially responsive.  Plaintiffs seek an order requiring production of all responsive documents by the close of discovery on December 17, 2021.

845075.5

## II.     THE PARTIES' MEET AND CONFER EFFORTS

### A.     The Parties' Meet and Confer History Related to Huskey Interrogatory 18

Plaintiffs served Roy Huskey III's Fifth Set of Interrogatories to Defendants Wasatch Advantage Group, LLC, Wasatch Property Management, Inc., Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC, Logan Park Apartments, LLC, and Logan Park Apartments, LP on July 23, 2021.  Ex. 1, Huskey Interrogatory 18.  Plaintiff Huskey's Interrogatory Number 18 ("Huskey Interrogatory 18") seeks to discover which of Defendants' properties charged mandatory fees for additional services such as media packages, washers and dryers, renters' insurance, or covered parking for any tenants during the liability period.  Without making any objections, Defendants initially responded to Huskey Interrogatory 18 on August 27, saying, "[t]o the best of Defendants' knowledge, this had never occurred."  Ex. 2, Defendants' Response.

Plaintiffs sent a meet and confer letter on August 30, 2021, emphasizing that Huskey Interrogatory 18 applies to all tenants, not just tenants receiving Section 8 subsidies, and explaining that Defendants' response contradicts the existing record.  Ex. 3, Bellows Aug. 30, 2021 Letter.  Defendants agreed to amend their response on September 2, 2021.  Ex. 4, Bellows Sep. 7, 2021 Email.  Plaintiffs followed up repeatedly during September and October, and Defendants stated that they were working on gathering information for the amended response.  Ex. 5, Collection of Meet and Confer Emails.  On November 4, 2021, Plaintiffs requested an informal discovery conference with the Court to address the delay.  Defendants responded to Plaintiffs' email regarding the informal discovery conference by stating that they had finally received the verification and would serve the amended response that day.  Ex. 6, Matthews Nov. 4, 2021 Email.

Defendants served their amended response on November 8.  The response stated, "Defendants are unable to verify time periods in which any Additional Service Charge was mandatory."  The response then listed each of Defendants' properties that has had a media package, the date the package became available, and whether the package was optional.  Ex. 7, Defendants' Amended Response.  Plaintiffs sent a meet and confer letter regarding deficiencies in the amended response on the same day, pointing out that the amended response failed to address parking and washer and dryer charges that deponents had testified were in some cases mandatory.  Ex. 8, Bellows Nov. 8, 2021  Letter.  The

Parties agreed to an informal discovery conference to seek this Court's guidance on Huskey Interrogatory 18.

On November 10, 2021, during the deposition of Defendants' corporate officer Jarom Johnson, the former Chief Operating Officer (and a current Executive Vice President) of Wasatch Property Management, Inc., Johnson discussed Defendants' Amended Response to Huskey Interrogatory 18 and the efforts undertaken to gather information for the interrogatory.  Jarom Johnson explained that Defendants' amended response only provided information as to whether the media package charges were optional for Section 8 tenants, and not for any tenant.  See Ex. 9, Johnson Dep. 13:20-14:7, Nov. 10, 2021.  From his memory, Johnson was able to name multiple properties with mandatory media packages.  *Id.* at 15:16-25.  Johnson also testified that, in compiling an answer to Huskey Interrogatory 18, Defendants searched their property management database, which does not identify which charges are mandatory, and consulted with three high-level executives.  *Id.* at 10:1-4, 11:4-10.

On November 10, the Parties met and conferred via telephone.  Plaintiffs explained that Johnson's deposition testimony revealed further insufficiencies with Defendants' response to Huskey Interrogatory 18.  Ex. 10, Bellows Nov. 11, 2021 Email.  Namely, listing media packages as "optional" to reflect Defendants' policy towards Section 8 tenants was misleading because Huskey Interrogatory 18 asks for mandatory charges for all tenants and because Johnson's testimony affirmed that several properties on the list required media package charges for non-Section 8 tenants.  *Id.*  In their follow-up email, Plaintiffs also explained that the searches Johnson described in his deposition were inadequate.  *Id.*  The Parties agreed to proceed with an informal discovery conference, but Defendants promised to serve further amended responses that might obviate the need for the conference.  *Id.*

On November 17, shortly before the scheduled informal discovery conference, Defendants served a further amended response to Huskey Interrogatory 18.  Ex. 11, Defendants' Further Amended Responses.  Plaintiffs informed Defendants in an email that this response was not sufficient because it still did not identify properties with mandatory charges, and the informal discovery conference scheduled for that day should proceed.  Ex. 12, Nov. 17, 2021 Email Exchange.

Prior to the informal discovery conference, Defendants indicated in a response email that they agreed to obtain a list of properties where any tenants were subject to any mandatory additional service charges.  *Id.*  As of the filing of this Joint Statement, Defendants have not provided this response.

At the informal discovery conference held on November 17, 2021, the Parties discussed the delays that had transpired and Defendants indicated their intention to work on providing a full response.  In response to Plaintiffs' concerns about further delay, the Court indicated that if Plaintiffs were not confident they would receive a timely and adequate response from Defendants, Plaintiffs could file a motion to compel.  After the conference, Plaintiffs reached out to Defendants asking for a timeline related to the promised updated response.  Plaintiffs attempted to call Defendants once again on November 19, 2021, but, hearing no response, Plaintiffs filed their Notice of Motion and Motion to Compel Proper Interrogatory Response that day.  ECF No. 156.

**B.**     **The Parties' Meet and Confer Efforts Related to RFPs 27-30.**

The Parties' meet and confer efforts related to RFPs 27 through 30 date back to July 2020 and are too voluminous to be set out in full detail here.  The following summary addresses the highlights.

On July 16, 2020, Defendants served objections to RFPs 27 through 30.  Ex. 13, Defs.' Responses to Terry RFPs Set 2.  Defendants neither produced documents nor agreed to a production.  *Id.*  On July 28, 2020, Plaintiffs sent a meet and confer letter addressing each of the objections.  Ex. 14, Bellows July 28, 2020 Letter at 2-5.

Defendants subsequently agreed to a meet and confer process related to training documents and on August 6, 2020 provided Plaintiffs a spreadsheet listing "How-To" training documents on a variety of topics.  Ex. 15, Bellows August 18, 2020 Letter.  Plaintiffs responded on August 18, 2020, identifying documents from the spreadsheet that were either facially responsive to their RFPs, or likely to be responsive.  *Id.*  Defendants made a partial production of training documents on September 3, 2020 and supplemented that production on March 30, 2021.  Ex. 16, Bellows May 24, 2021 Letter.  Plaintiffs sent a further meet and confer letter identifying deficiencies in the production on May 24, 2021.  *Id.*  Defendants subsequently informed Plaintiffs that (a) some of the documents listed on the spreadsheet did not exist, and (b) Defendants were withholding some documents identified by

845075.5

Plaintiffs because they were not responsive, and they would provide a list.  Ex. 17, Bellows June 25, 2021 Email.  Defendants again supplemented their production on July 16, 2021.

On September 10, 2021, Defendants' corporate designee Janae Jarvis testified that Wasatch has a training resource had not been previously disclosed to Plaintiffs—a library of video trainings called "Wasatch University."  Ex. 18, Jarvis 2021 Dep. 138:20-139:8, Sept. 10, 2021.  Plaintiffs requested, and Defendants provided, a list of the Wasatch University trainings.  On October 8, 2021, Plaintiffs sent further meet and confer correspondence identifying Wasatch University trainings that appear to be responsive to Plaintiffs' RFPs.  Ex. 19, Bellows October 8, 2021 Email.

In subsequent meet and confer conversations, Defendants agreed to produce training documents from Wasatch University.  To date, Defendants have not done so, though they have assured Plaintiffs they are working on it.  Nor have Defendants provided Plaintiffs with a list of trainings they are withholding from production—either from Wasatch University or from the earlier catalogue.

### III.   CASE NATURE AND POSTURE

**A.   Case Background**

As described recently in the Parties' December 3, 2021 Joint Statement Regarding Discovery Dispute, ECF No. 165, this case was filed on April 14, 2015 as a False Claims Act (31 U.S.C. §§ 3279 *et seq.*) ("FCA") action and putative class case for California state law claims.  Compl., ECF No. 1. Defendants are Wasatch Advantage Group, LLC and its affiliates, a rental and property management company with residential apartments in California, Washington, Utah, Colorado, and Arizona. Plaintiffs are current and former tenants of Wasatch's properties and participants in the Housing Choice Voucher Program, a federally subsidized rental assistance program commonly known as "Section 8."  Under the Section 8 program, a participants' portion of the rent is capped at 30 to 40 percent of their monthly income, while a local public housing agency pays the balance of the rent directly to the landlord.  42 U.S.C. §§ 1437f(o).

Plaintiffs allege Defendants improperly charged Section 8 tenants for additional service charges, such as renters' insurance, media packages, washer and dryer rentals, and parking in addition to tenants' portion of the approved rent amount under the Housing Assistance Program Contracts that govern their leases.  Fifth Amended Class Action Complaint, ("5AC") ¶¶ 11-13, 57-58, 60, ECF No.

5

1   136.  The charges for these additional services are listed in an "Additional Services Agreement" that is

2   part of the tenants' lease.  *Id*. at ¶¶ 12, 119-20.

3   　　　　The United States declined to intervene in June 2016.  ECF No. 14.  The Court denied

4   Defendants' motion to dismiss in 2017, ECF No. 61, and certified damages and injunctive relief

5   classes in 2018.  ECF No. 92.  The classes consist of past, current, and future tenants at Defendants'

6   California properties who have participated in or will participate in the Section 8 program and have

7   paid or will pay additional service charges.  ECF No. 92 at 13, ECF No. 114, Order at 11-12.

8   **B.**　**Factual Issues Relevant to Discovery Dispute**

9   　　　　**1.**　　**Factual Issues Relevant to Huskey Interrogatory 18**

10   　　　　The outcome of this case depends on whether Defendants' additional service charges constitute

11   and are treated as rent.  *See* ECF No. 61, Order at 6 (noting that the "Plaintiffs' claims rely on the

12   characterization of these additional payments as rent").   Plaintiffs contend that mandatory charges for

13   additional services are legally considered rent.  *See* ECF No. 30, Plaintiffs' Opposition to Motion to

14   Dismiss at 7-8 (citing *Velez v. Cuyahoga Metro. Hous. Auth.*, 795 F.3d 578, 585-86 (6th Cir. 2015)).

15   Defendants do not disagree.  *See* Ex. 22, Johnson Dep. 58:19-21, July 19, 2021 ("If it's a required

16   charge, without option, I would say if you can't be in the space then, yes, that would be rent.").

17   Consequently, (1) where and when Defendants have required their tenants, as a condition of leasing, to

18   pay mandatory fees for additional services and (2) whether Section 8 tenants were also subject to those

19   fees, are central pieces of this litigation.

20   　　　　The question of where and when Defendants imposed mandatory charges remains disputed.

21   *See*, *e.g.*, Ex. 18, Jarvis Dep. 60:09-64:22, 77:13-82:14, Sept. 10, 2021  (agreeing that mandatory

22   media package and parking charges exist at some properties, though she was unable to identify which

23   ones); Ex. 20, Tanforan Dep. 86:10-20, Aug. 9, 2017 (recalling that some parking charges are required

24   for tenants at move in to several properties managed by Tanforan, though he was unable to remember

25   which ones).  Plaintiffs have separately filed a Motion to Compel related to Plaintiff Denika Terry's

26   Request for Production Number 52 ("RFP 52"), seeking documents related to mandatory additional

27   service charges.

28

845075.5

**2. Factual Issues Relevant to Terry RFPs 27-30**

Beyond whether additional service charges were mandatorily required as a condition of leasing, Plaintiffs also contend that the charges were unlawful because Defendants treat them like rent in their leasing, payment accounting, and collections and eviction practices. *See* ECF No. 92, Class Certification Order at 14-15, 30 (discussing this theory). Plaintiffs seek training documents related to these topics to further illuminate Defendants' practices in enrolling tenants in additional service charges, collecting those charges, and serving eviction notices and potentially initiating evictions based on the nonpayment of those charges. *See, e.g.*, Ex. 21, Defendants' Response to Request for Admission No. 14 (admitting to serving notices stating that tenants must pay additional service charges or face eviction).

**C. Huskey Interrogatory 18 and the Parties' Contentions**

Huskey Interrogatory 18 was served as Part of Plaintiff Roy Huskey III's Fifth Set of Interrogatories on July 23, 2021. Plaintiffs' interrogatory and Defendants' responses are as follows:

> **INTERROGATORY NO. 18:**
> Please identify (by name, address, city, state, applicable time period, and relevant charges) any SUBJECT PROPERTY that, for any period of time since April 14, 2005, made any ADDITIONAL SERVICE CHARGE mandatory for any tenants.
>
> **RESPONSE TO INTERROGATORY NO. 18 (Served Aug. 27, 2021):**
> To the best of Defendants' knowledge, this has never occurred.
>
> **AMENDED RESPONSE TO INTERROGATORY NO. 18 (Served Nov. 8, 2021):**
> Defendants respond as follows: After diligent effort and inquiry, Defendants are unable to verify time periods in which any Additional Service Charge was mandatory. Defendants' corporate policy is and always has been that for Section 8 tenants, no Additional Service Charge is mandatory, and each and every one has always been optional. In light of prior testimony regarding bulk media packages, Defendants list below each property that Wasatch Property Management has managed in the times relevant to this case that has ever had a media package of any kind, and the date it was added.

| PROPCODE | PROPERTY | MEDIA PACKAGE | OPTIONAL | DATE ADDED | |
|---|---|---|---|---|---|
| 6lt | 600 Lofts | Y | Y | 04/2017 | |
| art | Arcadia | Y | Y | 05/2018 | |
| art2 | Arcadia II | Y | Y | 01/2021 | |
| az | Aztec Springs Apartments | Y | Y | 09/2020 | |

7

| bu | Burnett Station Apartments | Y | Y | 01/2020 | |
|---|---|---|---|---|---|
| cn | Canyon Ridge Apartments | Y | Y | 09/2020 | |
| cm | Cimarron Place Apartments | Y | Y | 09/2020 | |
| dw | Devonshire Court West | Y | Y | 03/2019 | |
| enclave | Enclave at 1400 South | Y | Y | 07/2015 | |
| falls | Falls at Hunters Pointe | Y | Y | 09/2018 | |
| glt | Garden Lofts | Y | Y | 11/2019 | |
| go | Glen Oaks Apartments | Y | Y | 09/2020 | |
| gp | Goldstone Place Apartments | Y | Y | 03/2000 | |
| hp | Heron Pointe Apartments | Y | Y | 08/1998 | |
| fc | Landing at Francher Creek | Y | Y | 04/2003 | |
| lofts | Lofts at 7800 | Y | Y | 08/2014 | |
| mp | Metropolitan Place Apartments | Y | Y | 11/2019 | |
| p1 | Palladio Apartments-Phase 1 | Y | Y | 10/2002 | |
| p3 | Palladio Apartments-Phase 1 | Y | Y | 10/2002 | |
| rw | Ranchwood Apartments | Y | Y | 09/2020 | |
| rs | Rio Seco Apartments | Y | Y | 09/2020 | |
| rp | River Point Apartments | Y | Y | 09/2020 | |
| sa | Sands Apartments | Y | Y | 09/2020 | |
| rvt | The Reserve at View 78 | Y | Y | 09/2019 | |
| vet | Veranda | Y | Y | 01/2018 | |
| vit | Village Grove Apartments | Y | N | 02/2015 | Internet Provided as Free Service for all residents |

**FURTHER AMENDED RESPONSE TO INTERROGATORY NO. 18 (Served Nov. 17, 2021):**
Defendants respond as follows: After diligent effort and inquiry, Defendants are unable

8

845075.5

to verify time periods in which any Additional Service Charge was mandatory .This includes, but is not limited to, charges for washers and dryers, covered parking, media packages, and renter's insurance. Defendants' corporate policy is and always has been that for Section 8 tenants, no Additional Service Charge is mandatory, and each and every one has always been optional. In light of prior testimony regarding bulk media packages, Defendants list below each property that Wasatch Property Management has managed in the times relevant to this case that has ever had a media package of any kind, and the date it was added.

| PROPCODE | PROPERTY | MEDIA PACKAGE | DATE ADDED | |
|---|---|---|---|---|
| 6lt | 600 Lofts | Y | 04/2017 | |
| art | Arcadia | Y | 05/2018 | |
| art2 | Arcadia II | Y | 01/2021 | |
| az | Aztec Springs Apartments | Y | 09/2020 | |
| bu | Burnett Station Apartments | Y | 01/2020 | |
| cn | Canyon Ridge Apartments | Y | 09/2020 | |
| cm | Cimarron Place Apartments | Y | 09/2020 | |
| dw | Devonshire Court West | Y | 03/2019 | |
| enclave | Enclave at 1400 South | Y | 07/2015 | |
| falls | Falls at Hunters Pointe | Y | 09/2018 | |
| glt | Garden Lofts | Y | 11/2019 | |
| go | Glen Oaks Apartments | Y | 09/2020 | |
| gp | Goldstone Place Apartments | Y | 03/2000 | |
| hp | Heron Pointe Apartments | Y | 08/1998 | |
| fc | Landing at Francher Creek | Y | 04/2003 | |
| lofts | Lofts at 7800 | Y | 08/2014 | |
| mp | Metropolitan Place Apartments | Y | 11/2019 | |
| p1 | Palladio Apartments-Phase 1 | Y | 10/2002 | |
| p3 | Palladio | Y | 10/2002 | |

9

| | Apartments-Phase 1 | | | |
|---|---|---|---|---|
| rw | Ranchwood Apartments | Y | 09/2020 | |
| rs | Rio Seco Apartments | Y | 09/2020 | |
| rp | River Point Apartments | Y | 09/2020 | |
| sa | Sands Apartments | Y | 09/2020 | |
| rvt | The Reserve at View 78 | Y | 09/2019 | |
| vet | Veranda | Y | 01/2018 | |
| vit | Village Grove Apartments | Y | 02/2015 | Internet Provided as Free Service for all residents |

### 1.     Plaintiffs' Position Regarding Huskey Interrogatory 18

Plaintiffs respectfully request that the Court order Defendants to provide a response to Huskey Interrogatory 18 that identifies Defendants' properties with mandatory charges for any tenant for any time from April 2005 to the present and lists the associated additional service charges by the December 17, 2021 discovery deadline.[1]  An answer to this interrogatory will require a reasonable search for the requested information that goes beyond the efforts that Defendants have thus far provided.  Although Defendants have agreed to provide a complete response by listing all properties where additional service charges of any kind were required, they have not yet done so.  Moreover, Defendants have previously promised proper answers, only to follow up by serving incomplete responses.

Notably, Defendants have not asserted, and have consequently waived, any substantive objections to Huskey Interrogatory 18.  *O.L. v. City of El Monte*, No. 2:20-cv-0797 RGJK(JDEx), 2021 WL 926105, at *3 (C.D. Cal. Jan. 11, 2021) ("[O]bjections not raised in a written response to discovery may not be raised for the first time in a discovery motion.").

---

[1] Plaintiffs are open to compromise by allowing Defendants to respond without providing specific time periods when specific mandatory charges were enforced, which Plaintiffs understand would be more burdensome than identifying properties and mandatory charges that applied during the liability period.

10

845075.5

a.      **Defendants' Responses to Plaintiffs' Interrogatory Are Incomplete and Evasive.**

A party may move for an order compelling an answer to an interrogatory under Rule 33 of the Federal Rules of Civil Procedure if a responding party fails to answer the interrogatory.  Fed. R. Civ. P. 37(a)(3)(B)(iii).  An "evasive or incomplete" answer is treated as a failure to answer.  Fed. R. Civ. P. 37(a)(4).

Defendants' response to Huskey Interrogatory 18 is incomplete and evasive because it fails to provide the basic information requested by the interrogatory—*i.e.*, identification of properties that have had mandatory charges and a list of those mandatory charges at each property.  When corporate entities such as the Defendants respond to interrogatories, they must respond with information available to them.  Fed. R. Civ. P. 33(b)(1)(B).  "Information in the hands of a corporate party's agents and others within its control must be supplied."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Sharp Plumbing*, No. 2:09-CV-00783-GMN, 2012 WL 2502748, at *2 (D. Nev. June 27, 2012) (citing *Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D. 628, 632–33 (E.D. Pa. 1977)).

By responding, "Defendants are unable to verify time periods in which any Additional Service Charge was mandatory," and stating "[t]his includes, but is not limited to, charges for washers and dryers, covered parking, media packages, and renter's insurance," Defendants avoid identifying the relevant properties and mandatory charges by pointing to the difficulty of specifying the dates charges were in force.  But the record shows that properties with mandatory charges exist.  Jarom Johnson testified that that parking charges and media package charges are mandatory at several of Wasatch's properties and that a list could be generated indicating these properties.  Ex. 22, Johnson Dep. 187:7-20, 214:21-215:18, July 19, 2021; Ex. 9, Johnson Dep. 15:2-25, Nov. 10, 2021.  Defendants' other corporate officers have similarly testified to the existence of mandatory charges, including media packages, parking charges, and washer and dryer charges, and renters' insurance.  *See* Ex. 23, Jarvis Dep. 109:17-110:12, Aug. 10, 2017 (listing a set of properties in Utah with mandatory media packages as of 2017); Ex. 20, Tanforan Dep. 81:19-82:4 (describing covered parking charges required at move-in to Chesapeake Commons); Tanforan Dep. 86:10-20 (recalling that some parking charges are required for tenants at move in to several properties managed by Tanforan, though he was unable to

11

remember which ones); Tanforan Dep. 91:15-22, 95:13-96:14 (describing required washer and dryer charges for tenants at Chesapeake Commons); Tanforan Dep, 84:15-19 (explaining that renters' insurance is required at Chesapeake Commons).   Defendants' response conflicts with this testimony and evades any substantive answers to the interrogatory by focusing on their inability to verify time periods, which is only part of the interrogatory.

Furthermore, testimony from Johnson indicates that the Defendants' response is based on an insufficient search and is consequently incomplete.  In responding to an interrogatory, a party "is required to conduct a search for relevant information and answer interrogatories after that diligent search is complete."  *Shaw v. Davis*, No. 3:18-CV-0551-MMD-CLB, 2021 WL 3889980, at *5 (D. Nev. Aug. 31, 2021).  "If a party cannot furnish details, it should say so under oath, say why and set forth the efforts it used to obtain the information."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2012 WL 2502748, at *2.  Defendant's response does not set forth its search efforts, and Johnson's testimony indicates these efforts were limited to looking in their property management database and consulting with three high-level executives. Ex. 9, Johnson Dep. 10:1-4, 11:4-10, Nov. 10, 2021  It is also unclear if Defendants requested information from these executives regarding all types of additional service charges or only media packages.  *See id*.  Defendants' failure to use other means to respond to Huskey Interrogatory 18 when their databases and high-level employees did not reveal an immediate answer means they fall short of their duties under Rule 33.  *See Equal Emp't Opportunity Comm'n v. Hickey-Mitchell Co.,* 372 F. Supp. 1117 (E.D. Mo. 1973) (finding interrogatory responses in discrimination case which stated that corporate records did not classify employees' race were inadequate and requiring defendant to use other reasonable means, such as personal observations, to reply to discovery request) (cited in 8B Charles Allan Wright & Arthur R. Miller, Federal. Practice. & Procedure, Federal Rules of Civil Procedure § 2177 (3d ed. 1998)).

Defendants have many other avenues within their control to provide a complete response, such as surveying their leasing agents, who likely have first-hand knowledge of any mandatory charges at particular properties.  Instead, Defendants provided a response based on an insufficient search and further failed to indicate what efforts they took to search for information.

845075.5

**b.      Requiring a Proper Response to Interrogatory 18 is Appropriate Given the Stakes of the Case and the Importance of this Factual Dispute.**

"Relevancy should be construed liberally and with common sense and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (internal quotations omitted).  When determining whether discovery is relevant and proportional to the needs of the case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the Parties' relative access to relevant information, the Parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Here, a proper response to the Huskey Interrogatory 18 will illuminate fundamental issues in this case, namely, whether Defendants' properties had mandatory charges and if these charges constitute impermissible additional rent for Section 8 tenants.  *See* ECF No. 61 at 3, 6.  Although Defendants recently began contending that they have a policy of exempting Section 8 tenants from mandatory additional charges, *see* Ex. 10, Defendants' Further Amended Responses, Defendants have not produced any evidence supporting the existence of this policy.  Moreover, Defendants only began contending that this policy existed in the summer of 2021, six years after this case was first filed.  A complete list of properties with mandatory charges will help the Parties further understand this issue.  For example, comparing the enrollment rates of Section 8 tenants in properties with mandatory charges versus properties without mandatory charges will provide relevant information as to whether Defendants in practice applied any exemption policy.

The extent of Defendants' imposition of mandatory charges at certain properties remains a heavily contested issue.  Deposition testimony and document productions indicate that mandatory charges exist, but these sources have not generated a full, consistent list of properties which required these charges.  *See e.g.,* Ex. 18, Jarvis Dep. 60:09-64:22, 77:13-82:14, Sept. 10, 2021 (responding "I don't know" repeatedly when asked if specific properties had mandatory media or parking charges); Ex. 9, Johnson Dep. 32:25-33:16, Nov. 10, 2021 (disagreeing with a leasing director's statement in an email that renters' insurance was mandatory).  And, despite agreeing to do so, Defendants have not yet

13

produced documents responsive to RFP 52 asking for communications involving property-level employees on this topic.  *See* ECF No. 165.  Even if Defendants do produce documents responsive to RFP 52, a proper response to Huskey Interrogatory 18 acknowledging the mandatory charges at properties where Defendants can verify them will narrow the Parties' factual disputes on this important issue.  Because Defendants' relative access to information about mandatory charges far exceeds Plaintiffs', a response to this interrogatory will allow the Parties to more efficiently focus on specific remaining factual conflicts regarding these charges.  Information on mandatory charges will, in turn, also go to the question of whether Defendants implemented charges in a way that subjected Section 8 tenants to mandatory fees as a condition of leasing.  (Defendants have already admitted they cannot identify any documents reflecting the purported exemption for Section 8 tenants. *See* Ex. 11, Defendants' Further Amended Responses.)

Since the issue of mandatory charges is important to this litigation, the burden of generating a proper and complete response to Huskey Interrogatory 18 is proportional to the needs of this complex False Claims Act and certified class action case, which encompasses Defendants' practices affecting thousands of Section 8 tenants across four states.  As noted above, in furnishing their most recent response Defendants did not make use of the sources available to them to conduct a search with due diligence.  For instance, Defendants did not consult property-level leasing agents.  Such efforts are both proportional to this case and required under Federal Rule of Civil Procedure 33.  *Johnson v. Cate*, No. 1:10-CV-02348-LJO-MJ, 2014 WL 4249141 (E.D. Cal. Aug. 27, 2014) (citing *Miller v. Pruneda*, 236 F.R.D. 277, 282 (N.D.W.Va.2004) ("A party responding to interrogatories is required to provide information that is available to it and can be produced without undue labor and expense.").

**2.**      **Defendants' Position Regarding Huskey Interrogatory 18**

Defendants have agreed to producing an amended response as requested, consistent with the parties' meet and confer efforts and are in the process of gathering additional information to formulate that response. Defendants expect the amended response to be served within the time frame specified by Plaintiffs.

**D.** **Terry Requests for Production 27 to 30 and the Parties' Contentions**

Terry RFPs 27 to 30 were served on June 16, 2020 as part of Plaintiff Denika Terry's Second Set of Requests for Production.  The requests, Defendants' responses, and the Parties' contentions are set out below.

      **1.** **Request for Production No. 27 (Training re: Section 8 Program)**

          **REQUEST FOR PRODUCTION NO. 27:**
          All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees regarding the SECTION 8 program at any time since April 2005.

          **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**
          After diligent search and reasonable inquiry, Defendants are not in possession of any responsive documents.  Discovery is ongoing, and DEFENDANTS reserve the right to supplement this response if any responsive documents are discovered.

      **a.** **Plaintiffs' Contentions Related to RFP 27**

Defendants do not state, and have consequently waived, any objections to this RFP.  *See O.L. v. City of El Monte*, 2021 WL926105, at *3.  Additionally, Plaintiffs do not understand Defendants to oppose production of any documents that are responsive to this RFP.

Defendants' assertion in their response that no responsive documents exist turned out to be incorrect.  *See, e.g.*, Ex. 22,  Johnson Dep. 115:12-116:1, July 19, 2021 (discussing a "How-To" training document related to Section 8 rents and their interaction with the Low-Income Housing Tax Credit Program).  Moreover, Defendants' corporate deponents have testified that Defendants' compliance personnel and contractors, whose jobs are focused on other affordable housing programs, may sometimes address Section 8 issues.  *See, e.g.*, Ex. 24, Jarvis Dep.  295:14-17, Sept. 14, 2021 (testifying that contractor Preferred Compliance may work on Section 8 compliance "where it impacts each individual file"). Therefore, Plaintiffs have requested Defendants to review, and produce if responsive, training documents related to their compliance processes and affordable housing programs. Plaintiffs have specifically requested that Defendants review and produce the following:

          <u>Wasatch University Training Videos</u>
          Preferred Compliance LIHTC
          WPM – Preferred Compliance Tax Credit Webinar, 11.2009
          WPM – Preferred Compliance Tax Credit Webinar, 08.2019

845075.5

1    Defendants have failed to identify any reason to withhold these videos.  Therefore, Plaintiffs

2  respectfully request that the Court order Defendants to produce them no later than December 17, 2021.

3          **b.      Defendants' Contentions Related to RFP 27**

4    Defendants have agreed to produce all responsive documents consistent with the parties' meet

5  and confer efforts.

6      **2.    Request for Production No. 28 (Training re: Leases and the Leasing Process)**

7          **REQUEST FOR PRODUCTION NO. 28:**
       All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees
8      regarding leases and the leasing process at any time since April 2005.

9          **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**
       Defendant objects to the instant request as being overbroad, unduly burdensome, and
10     calling for trade secrets.  Defendants are willing to meet and confer with respect to the
       specific trainings requested.

11

12          **a.      Plaintiffs' Contentions Related to RFP 28**

13     Defendants' failure to specifically state the grounds for their objections to RFP 28 constitute

14  waiver of those objections.  *See* Fed. R. Civ. P. 34(b)(2)(B); *Cengage Learning, Inc. v. Davis*

15  *Textbooks*, No. 2:15-cv-2401 TLN AC, 2016 WL 8730880, at *1 (E.D. Cal. Sep. 16, 2016) ("General

16  or boilerplate objections, e.g., those based on broad assertions of vagueness, overbreadth or

17  burdensomeness, are improper and do not meet this standard, especially when a party fails to submit

18  any evidentiary declarations supporting such objections.").

19     Production of training documents related to leases and the leasing process is appropriate

20  because tenants are pitched on and enrolled in additional service charges during the leasing process,

21  and the lease addresses specific additional service charges (renters' insurance, and a credit-reporting

22  service called "RentPlus") as well as aspects of Defendants' policies related to payments and the

23  failure to pay.  Plaintiffs have requested that Defendants review and produce, if responsive, the

24  following documents:

25          How-To Spreadsheet
          SM101 – Put Together a Leasing Notebook
26          SM102 – Leasing Duties-HT
          SM102.RD1 through SM102.RD10*
27              * These lack comprehensible titles, but appear to be related to SM102
          SM205 – Overcoming Objections-HT
28

16

SM206 – Closing the Sale-HT
SM210 – Move-In Cost Sheet – VQS
SM210.01 – Move-In Cost Sheet-F
RS102 – Resident Renewal Process-HT
RS102 – Lease Renewal Program-HT
RS102.RD1 through RS102.RD.6*
   * These lack comprehensible titles, but appear to be related to RS102
HR700-HR707 – assorted documents related to leasing bonuses

<u>Wasatch University Training Videos</u>
Leasing Kit
Renewals in RentCafe

Defendants have not identified any reason to withhold these documents.  Plaintiffs respectfully request

that the Court order the production of these documents no later than December 17, 2021.

**b.**    **Defendants' Contentions Related to RFP 28**

    Defendants have agreed to produce all responsive documents, consistent with the parties' meet

and confer efforts.

**3.**    **Request for Production No. 29 (Training Documents re: Additional Service**

**Charges)**

    <u>**REQUEST FOR PRODUCTION NO. 29:**</u>
All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees
regarding ADDITIONAL SERVICE AGREEMENTS and ADDITIONAL SERVICE
CHARGES at any time since April 2005.

    <u>**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**</u>
Defendant objects to the instant request on the grounds that it is overbroad and unduly
burdensome.  Without waiving that objection, Defendant responds that after diligent
search and reasonable inquiry, Defendants are not in possession of any responsive
documents.  Discovery is ongoing, and Defendants reserve the right to supplement this
response if any responsive documents are discovered.t has no responsive documents in
its possession.

**a.**    **Plaintiffs' Contentions Related to Request for Production 29**

    Defendants' failure to specifically state the grounds for their objections to RFP 29 constitute

waiver of those objections.  *See* Fed. R. Civ. P. 34(b)(2)(B); *Cengage Learning, Inc.*, 2016 WL

8730880, at *1.

    Defendants' practices related to additional service charges lie at the very heart of this case.

Liability turns on whether additional service charges were treated as rent.  How Defendants trained

17

their employees to implement additional service charges speaks to whether such charges are

consideration for use of the premises, whether tenants are given a realistic option to turn down the

services, and whether Defendants' treat the charges equivalently with rent.  Plaintiffs have asked

Defendants to review and produce, if responsive, the following documents:

> How-To Spreadsheet
> LD344.07 – Facts about rental insurance
> BTH301.01 – Facts About Renter's Insurance (Bond and Tax Credit Tab)
>
> Wasatch University Training Videos
> RentPlus: How to Enroll a Resident
> Assurant "Pay with Rent" Program Roll-out
> RentPlus Refresher Training Webinar 4.14.21

Defendants have not identified any reason to withhold these documents.  Plaintiffs respectfully

request that the Court order the production of these documents no later than December 17, 2021.

### b.      Defendants' Contentions Related to RFP 29

Defendants have agreed to produce all responsive documents consistent with the parties' meet

and confer efforts.

### 4.      Request for Production No. 30 (Training Documents re: Notices Based on Non-Payment of Rent and Other Charges)

**REQUEST FOR PRODUCTION NO. 30:**
All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees
regarding notices to tenants based on the non-payment of rent of any other charge at any
time since April 2005.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**
Defendant objects to this request to the extent it calls for trade secret information
protected by a Non-Disclosure Agreement, and on the grounds that there is no
reasonable need for the protected information requested.

### a.      Plaintiffs' Contentions Related to Request for Production No. 30

Plaintiffs understand that Defendants no longer object assert a trade secret objection, the sole

objection stated in their response. Defendants waived any other objections by failing to timely assert

them. *See O.L. v. City of El Monte*, 2021 WL 926105, at *3.

Defendants' practices related to non-payment notices are central to Plaintiffs' argument that

Defendants treat additional service charges like rent. *See, e.g.*, ECF No. 61, Order, at 6, ECF No. 92,

18

Class Certification Order at 14-15, 30.  There are numerous examples of pay-or-quit notices that Defendants have served on Section 8 tenants informing them that if they do not pay unpaid additional service charges, they will face eviction.  *See* Ex. 21, Defendants' Response to Request for Admission No. 14 (admitting to serving notices stating that tenants must pay additional service charges or face eviction).  Production of Defendants' training of their personnel on how to use these and related notices is appropriate to illuminate the company's policies and practices on this significant issue.

Defendants' How-To Spreadsheet had a tab entitled "Evictions/Collections/Legal" listing documents EC101 through EC126.01.CA, together with attachments and variations based on the state. Plaintiffs asked Defendants to review and produce all of those documents to the extent they are responsive.  Defendants have produced only a handful of documents from this tab.

Plaintiffs will not reproduce the list of outstanding documents from the How-To Spreadsheet here due to its length, but some illustrative entries include "EC101 Rent Collections & Legal Processes-HT"; a series of documents that appear to be form pay or quit notices (e.g., "EC101.01.FRE, Fresno 3-Day Notice to Pay-F" "EC101.01.SD "San Diego 3-Day Notice to Pay-F," EC101.03 "California 3-Day Notice to Perform Financial Covenant or Quit"); jurisdiction-specific guidance (e.g., EC101.FRE "Fresno Rent Collections & Legal Processes-HT"); "EC101.03 – California 3-Day Notice to Perform Financial Covenant or Quit," and "EC102.01 – 1st Small Balance Notice-F."

Plaintiffs have also requested that Defendants produce some selected entries from Wasatch University.

How-To Spreadsheet
All outstanding documents on the "Evictions/Collections/Legal" Tab

Wasatch University
WPM – The Delinquency Hero
HERO Coaching for Managers – "HERO Coaching Resident Rent Call"
Promise to Pay How To
AR Collections Best Practice Video

Defendants have not provided any reason for withholding production of any of these documents. Plaintiffs respectfully request that the Court order the production of these documents no later than December 17, 2021.

845075.5

1   **b.   Defendants' Contentions Related to RFP 30**

2   Defendants have agreed to produce all responsive documents consistent with the parties' meet

3   and confer efforts.

4

5   Dated:  December 3, 2021                  Respectfully submitted,

6                                            GOLDSTEIN, BORGEN, DARDARIAN & HO

7                                            */s/ Anne P. Bellows*

8                                            Anne P. Bellows

9                                            Attorneys for Plaintiffs and Relators

10  Dated:  December 3, 2021                 Respectfully submitted,

11                                           LEWIS BRISBOIS BISGAARD & SMITH LLP

12                                           */s/ Ryan Matthews* (as authorized 12/3/2021)

13                                           Ryan Matthews

14                                           Attorneys for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28

845075.5