# EXHIBIT 1

Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
(510) 763-9800 | (510) 835-1417 (Fax)

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
(510) 834-3300 | (510) 834-3377 (Fax)

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
(510) 437-1863 | (510) 437-9164 (Fax)

Attorneys for Plaintiffs and Relators

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>        Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, and DOES 1-30,<br><br>        Defendants. | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**PLAINTIFF ROY HUSKEY III'S FIFTH SET OF INTERROGATORIES TO DEFENDANTS WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, AND LOGAN PARK APARTMENTS, LP** |

PL. ROY HUSKEY III'S FIFTH SET OF INTERROGS. TO DEFS. WASATCH ADVANTAGE GROUP, LLC, *ET AL.*
CASE NO. 2:15-CV-00799 KJM-DB

833355.5

**PROPOUNDING PARTY:**    Plaintiff-Relator Roy Huskey III

**RESPONDING PARTIES:**    Wasatch Advantage Group, LLC, Wasatch Property Management, Inc., Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC, Logan Park Apartments, LLC, and Logan Park Apartments, LP

**SET NUMBER:**    Five (5)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff-Relator Roy Huskey requests that Defendants provide verified responses in writing and under oath to the following interrogatories at the offices of Goldstein, Borgen, Dardarian & Ho, 300 Lakeside Drive, Suite 1000 Oakland, CA 94612, within thirty (30) days from the date of service of these Interrogatories. These Interrogatories are ongoing and require timely supplementation up to and through the completion of trial in this action.

## **DEFINITIONS**

The following definitions will apply to each of the following Interrogatories:

1.    "DEFENDANT" or "DEFENDANTS" or "YOU" shall refer to all of the defendants in this action, and their respective officers, agents, servants, employees, independent contractors, attorneys, predecessors, successors and assigns, representatives, and all other persons acting or who have acted on their behalf, including entities under the direct or indirect ownership of Wasatch Advantage Group or any other Defendant without geographical limitation.

2.    "ADDITIONAL SERVICE CHARGES" as used in this interrogatory means any charges made to a tenant pursuant to DEFENDANTS' contracting document entitled "Additional Service Agreement."

3.    "SECTION 8" shall refer to the Housing Choice Voucher program, commonly called the Section 8 program, funded by the United States Department of Housing and Urban Development and administered by local public housing authorities.

4.    "DOCUMENT" shall have the most expansive possible meaning under the Federal Rules of Civil Procedure, and shall be construed broadly to include any medium upon which intelligence or information can be recorded or retrieved, and includes, without limitation, the following, whether printed, typewritten, recorded, filmed or reproduced by any mechanical process or written or

1

833355.5

produced by hand, and whether an original, master or copy, and whether or not claimed to be privileged from discovery, including: worksheets, agreements, books, records, letters, accounts, notes, summaries, forecasts, appraisals, surveys, estimates, diaries, desk calendars, reports, communications (including intra-company communications), correspondence, facsimiles, electronic mail messages, telegrams, memoranda (including intra-company memoranda), summaries, notes and records of telephone conversations (including voicemail messages), meetings, and conferences, notes in reference to personal conversations or interviews, contracts, notices, drafts of any document, business records, charts, schedules, diaries, computer printouts, computer-stored data (including e-mails), computer tapes or computer disks, microfilm, microfiche, photographs, slides, negatives, motion pictures, video recordings, tape or other voice recordings and transcriptions thereof, data compilations from which information can be obtained or translated and any other information contained on paper, in writing, in graphical media, in any computer readable media, or in any other physical form in your actual or constructive possession, custody or control.

5.     "HAP CONTRACT" shall refer to the Housing Assistance Program Contract that is required to be executed by the landlord and the applicable public housing authority for all SECTION 8 tenancies.

6.     "SUBJECT PROPERTIES" shall refer to all properties managed by Defendant Wasatch Property Management during all relevant times in this action and that had one or more Section 8 tenants who were charged ADDITIONAL SERVICE CHARGES beyond the RENT TO OWNER set forth in the Housing Assistance Payment Contracts.

## INSTRUCTIONS

The following instructions apply to each of the Interrogatories:

1.     These requests are being made pursuant to the Federal Rules of Civil Procedure, including, without limitation, Rules 26 and 33.  Accordingly, your responses to such Interrogatories must comply with the requirements set forth in the Rules, which are referred to and incorporated herein by reference.

2.     In responding to these Interrogatories, YOU are requested to furnish all information known or available to YOU regardless of whether such information is in your possession or that of your

agents, representatives, or experts, or your corporate affiliates or their agents, representatives, or experts, or anyone else acting on your behalf or otherwise subject to your control.

3. If any requested information would be found in documents or items that are no longer in your possession, custody or control, whether because they were deleted, destroyed, conveyed to custodians who are now outside of your control, or otherwise, then state the following:

a. What was done with the document or item;

b. When such document or item was created;

c. The identity and address of the current custodian, if any;

d. The reasons for transfer or disposal; and

e. The identity of the person who decided to transfer or dispose of the document or item.

4. If any of the Interrogatories cannot be answered fully and completely, answer it to the extent possible, specifying the reasons for your inability to answer the remainder.  Such a statement shall include the steps taken to locate the requested information.

5. If an objection is made on the basis of any claim of privilege, specify in your response the nature of the privileged information in sufficient detail that the Court may rule on the propriety of the objection.  Specifically, state the following:

a. If the information is found in a document, the title of the document;

b. If the information is found in a document, the type of document;

c. The author or sender of the information, if applicable;

d. The recipient to whom the information was provided, if applicable;

e. The date of the communication of the information, if applicable;

f. The name of each person to whom the information was revealed, if applicable;

g. The basis upon which privilege is claimed; and

h. A statement of the subject matter of the information in sufficient detail to permit the court to rule on the propriety of the objection.

Plaintiff demands that a privilege log, containing the foregoing information, be served on him no later than thirty (30) days from issuance of these Interrogatories.

833355.5

6.      Whenever appropriate in these Interrogatories, the singular form of a word shall include the plural, and vice versa.

## INTERROGATORIES

### INTERROGATORY NO. 18:

Please identify (by name, address, city, state, applicable time period, and relevant charges) any SUBJECT PROPERTY that, for any period of time since April 14, 2005, made any ADDITIONAL SERVICE CHARGE mandatory for any tenants.

### INTERROGATORY NO. 19:

Please identify (by author, date, title, and bates number) any and all DOCUMENTS reflecting a company-wide policy maintained by DEFENDANTS that tenants participating in SECTION 8 were exempt from an otherwise mandatory requirement that tenants maintain a rental insurance policy.

### INTERROGATORY NO. 20:

Please identify (by author, date, title, and bates number) any and all DOCUMENTS reflecting a company-wide policy maintained by DEFENDANTS that tenants participating in SECTION 8 were exempt from otherwise mandatory ADDITIONAL SERVICE CHARGES.

### INTERROGATORY NO. 21:

Terry Request for Admission 13 asked DEFENDANTS to "admit that at all times since April 14, 2005, DEFENDANTS, in all of their residential properties, had a practice of not including ADDITIONAL SERVICE CHARGES on the Request for Tenancy Approval form required to obtain approval of SECTION 8 tenancies."  DEFENDANTS' response was "Deny."  *See* Defendants' Responses to Terry's Request for Admissions, Set Two (July 19, 2021).

Please identify all material facts on which DEFENDANTS base their denial of Terry Request for Admission 13 by stating each fact and listing (by author, date, title, and bates number) any and all documents supporting that fact.

### INTERROGATORY NO. 22:

Terry Request for Admission 16 asks DEFENDANTS to admit "that DEFENDANTS have not received any COMMUNICATIONS from the U.S. Department of Housing and Urban Development indicating approval, in whole or in part, of DEFENDANTS' practice of charging SECTION 8 tenants

833355.5

1  for ADDITIONAL SERVICE CHARGES outside the RENT TO OWNER amount reflected in

2  applicable HAP CONTRACTS."

3      If DEFENDANTS' response to Terry Request for Admission 16 is anything but an unqualified

4  admission, please identify all material facts on which DEFENDANTS base their response by stating

5  each fact and listing (by author, date, title, and bates number) any and all documents supporting that

6  fact.

7   Dated:  July 23, 2021                                  Respectfully submitted,

8                                                          GOLDSTEIN, BORGEN, DARDARIAN & HO

9

10  _____

11                                                          Anne P. Bellows

12                                                          Attorneys for Plaintiff and Relators

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

833355.5

# EXHIBIT 2

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH A. SALAZAR JR., SB# 169551
  E-Mail: Joe.Salazar@lewisbrisbois.com
RYAN MATTHEWS, SB# 311674
  E-Mail: Ryan.Matthews@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
Sacramento, California 95833
Telephone: 916.564.5400
Facsimile: 916.564.5444

Attorneys for Wasatch Advantage Group, LLC;
Wasatch Property Management, Inc.; Wasatch
Pool Holdings, LLC, Chesapeake Commons
Holdings, LLC; Logan Park Apartments, LLC;
Logan Park Apartments, LP

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. DENIKA TERRY and ROY HUSKEY III, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA,<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC; LOGAN PARK APARTMENTS, LP,<br><br>Defendants. | CASE NO. 2:15-cv-00799-KJM-DB<br><br>**DEFENDANTS RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE**<br><br>The Hon. Kimberly J. Mueller<br><br>Trial Date:     None Set |

PROPOUNDING PARTY:     Plaintiff, Roy Huskey, III

RESPONDING PARTY:     Defendants, Wasatch Advantage Group, LLC; Wasatch Property

Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake

Commons Holdings, LLC; Logan Park Apartments, LLC; Logan

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 | Park Apartments, LP

2 | SET NO.: FIVE

3 | **INTERROGATORY NO. 18:**

4 | Please identify (by name, address, city, state, applicable time period, and relevant charges)

5 | any SUBJECT PROPERTY that, for any period of time since April 14, 2005, made any

6 | ADDITIONAL SERVICE CHARGE mandatory for any tenants.

7 | **RESPONSE TO INTERROGATORY NO. 18:**

8 | To the best of Defendants' knowledge, this has never occurred.

9 | **INTERROGATORY NO. 19:**

10 | Please identify (by author, date, title, and bates number) any and all DOCUMENTS

11 | reflecting a company-wide policy maintained by DEFENDANTS that tenants participating in

12 | SECTION 8 were exempt from an otherwise mandatory requirement that tenants maintain a rental

13 | insurance policy.

14 | **RESPONSE TO  INTERROGATORY NO. 19:**

15 | Defendants are unaware of any documents responsive to this Interrogatory. Defendants

16 | reserve the right to supplement this response should any documents be uncovered in the ongoing

17 | document review.

18 | **INTERROGATORY NO. 20:**

19 | Please identify (by author, date, title, and bates number) any and all DOCUMENTS

20 | reflecting a company-wide policy maintained by DEFENDANTS that tenants participating in

21 | SECTION 8 were exempt from otherwise mandatory ADDITIONAL SERVICE CHARGES.

22 | **RESPONSE TO INTERROGATORY NO. 20:**

23 | Defendants object to this Interrogatory as assuming a fact not in evidence. There have

24 | never been mandatory Additional Service Charges.

25 | **INTERROGATORY NO. 21:**

26 | Terry Request for Admission 13 asked DEFENDANTS to "admit that at all times since

27 | April 14, 2005, DEFENDANTS, in all of their residential properties, had a practice of not

28 | including ADDITIONAL SERVICE CHARGES on the Request for Tenancy Approval form



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4831-6811-5444.1

2

Case No. 2:15-cv-00799-KJM-DB

DEFENDANTS RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

1   required to obtain approval of SECTION 8 tenancies." DEFENDANTS' response was "Deny."

2   See Defendants' Responses to Terry's Request for Admissions, Set Two (July 19, 2021).

3       Please identify all material facts on which DEFENDANTS base their denial of Terry

4   Request for Admission 13 by stating each fact and listing (by author, date, title, and bates number)

5   any and all documents supporting that fact.

6   **RESPONSE TO INTERROGATORY NO. 21:**

7       Defendants have amended this Response such that this Interrogatory is no longer

8   applicable.

9   **INTERROGATORY NO. 22:**

10       Terry Request for Admission 16 asks DEFENDANTS to admit "that DEFENDANTS have

11   not received any COMMUNICATIONS from the U.S. Department of Housing and Urban

12   Development indicating approval, in whole or in part, of DEFENDANTS' practice of charging

13   SECTION 8 tenants for ADDITIONAL SERVICE CHARGES outside the RENT TO OWNER

14   amount reflected in applicable HAP CONTRACTS."

15       If DEFENDANTS' response to Terry Request for Admission 16 is anything but an

16   unqualified admission, please identify all material facts on which DEFENDANTS base their

17   response by stating each fact and listing (by author, date, title, and bates number) any and all

18   documents supporting that fact.

19   **RESPONSE TO INTERROGATORY NO. 22:**

20       The response is an unqualified admission, with the assertion that it may be amended should

21   any documents be discovered that necessitated amendment.

22   DATED: August 27, 2021          LEWIS BRISBOIS BISGAARD & SMITH LLP

23

24                       By: _____

25                       RYAN MATTHEWS

26                       Attorneys for Wasatch Advantage Group, LLC;
                    Wasatch Property Management, Inc.; Wasatch

27                       Pool Holdings, LLC, Chesapeake Commons
                    Holdings, LLC; Logan Park Apartments, LLC;

28                       Logan Park Apartments, LP

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 | **VERIFICATION**

2 | **STATE OF CALIFORNIA, COUNTY OF SACRAMENTO**

3 |     I have read the foregoing DEFENDANTS RESPONSES TO PLAINTIFF ROY HUSKEY
4 | III'S INTERROGATORIES, SET FIVE and know its contents.

5 | ☐    I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

6 |

7 | ☒    I am Chief Operating Officer of Wasatch Property Management, Inc., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

8 |

9 |     ☒    I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

10 |     ☐    The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those
11 |            matters I believe them to be true.

12 | ☐    I am one of the attorneys for Wasatch Property Management, Inc., a party to this action. Such party is absent from the county where such attorneys have their offices, and I make this
13 | verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

14 |

15 |     I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

16 |     Executed on August _27_, 2021, at Salt Lake City, Utah.

17 |

18 |

19 | Jarom Johnson

    Print Name of Signatory                Signature

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

LEWIS
BRISBOI
S

4831-6811-5444.1

1

Case No. 2:15-cv-00799-KJM-DB

DEFENDANTS RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

1

**FEDERAL COURT PROOF OF SERVICE**

2

USA-Terry v Wasatch Property Mgmt
2:15-cv-00799 KJM DAD

3

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

4

5

At the time of service, I was over 18 years of age and not a party to the action.  My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

6

7

On August 27, 2021, I served the following document(s):

8

-   DEFENDANTS RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

9

10

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

11

**SEE ATTACHED SERVICE LIST**

12

The documents were served by the following means:

13

☒   (BY E-MAIL OR ELECTRONIC TRANSMISSION)  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

14

15

16

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

17

Executed on August 27, 2021, at Sacramento, California.

18

19

20

_____
Alicia Crespo

21

22

23

24

25

26

27

28



4831-6811-5444.1

1

Case No. 2:15-cv-00799-KJM-DB

DEFENDANTS RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

1
2

**SERVICE LIST**
**USA-Terry v Wasatch Property Mgmt**
**2:15-cv-00799 KJM DAD**

| 3 4 5 | Andrew Wolff<br>Law Office of Andrew Wolff, PC<br>1956 Webster Street, Ste. 275<br>Oakland, CA 94612 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  510-834-3300<br>E-Mail:  andrew@awolfflaw.com |
|---|---|---|
| 6 7 8 9 | Jesse Newmark<br>CENTRO LEGAL DE LA RAZA<br>3022 International Blvd, Ste. 410<br>Oakland, CA 94601 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  (510) 437-1554 x115<br>Fax:  (510) 437-9164<br>Email:  jessenewmark@centrolegal.org<br>Email: malvarez@centrolegal.org |
| 10 11 12 13 14 15 | Laura L. Ho<br>Anne Bellows<br>Kristen A. Burzynski<br>Goldstein, Borgen, Dardarian & Ho<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612 | *Co-Counsel for Plaintiffs*<br><br>Tel.: 519-763-9800<br>Fax: 510-835-1417<br>Email: lho@gbdhlegal.com<br>Email: abellows@gbdhlegal.com<br>Email: sgrimes@gbdhlegal.com<br>Email: dvaldez@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com |
| 16 17 18 | Vincente Antonio Tennerelli<br>United States Attorney's Office<br>2500 Tulare Street, Suite 4401<br>Fresno, CA 93721 | *Attorney for Intervenor Plaintiff*<br>*United States of America*<br><br>Tel.: (559) 497-4080<br>Email: Vincente.Tennerelli@usdoj.gov<br>Email: joni.jones@usdoj.gov |

19
20
21
22
23
24
25
26
27
28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# EXHIBIT 3

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

# G B D H

## Goldstein, Borgen, Dardarian & Ho

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

August 30, 2021

<u>**VIA EMAIL ONLY**</u>

Joseph Salazar                                                                    Joe.Salazar@lewisbrisbois.com
Ryan Matthews                                                            Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

Re:      **Defendants' Deficient Response to Huskey Interrogatories 18 and 20**

Dear Ryan,

On Friday, we received Defendants' responses to Huskey Interrogatories Set 2.  I write to ask Defendants to cure their deficient responses to Huskey Interrogatories 18 and 20.

Huskey Interrogatory 18 asked Defendants to "identify (by name, address, city state, applicable time period, and relevant charges) any SUBJECT PROPERTY that, for any period of time since April 14, 2005, made any ADDITIONAL SERVICE CHARGE mandatory for *any tenants*." (emphasis added).  This Interrogatory applies to all tenants, not just tenants with Section 8.   Without making objections, Defendants stated, "to the best of Defendants' knowledge, this has never occurred." (Defs' Response to Huskey Interrogatory 18.)

This response contradicts the existing record.  The record is clear that Defendants have made some charges mandatory at some of their properties.  Jarom Johnson so testified in his deposition with regard to parking and media packages—and he testified that it would be possible to create a list of properties with those charges:

               **Mandatory Parking Charges – Johnson Dep. 187**
               7 Q Okay. Are you aware of any other
               8 residential properties managed by Wasatch that have
               9 mandatory parking charges?
               10 A For any tenant or for housing tenants?
               11 Q Is there a difference?
               12 A Yes. There is a difference.
               13 Q Okay. For housing tenants?
               14 A I'm not aware of any, no.
               15 Q What about for nonhousing tenants?
               16 A Yes. So some of our projects have
               17 required parking as a result of the building type or
               18 the parking allocation at the community.
               19 Q Okay. And could you provide me a list?

20 A I'm sure we could. Yes.
21 (Request for Production.)

**Mandatory Media Charges – Johnson Dep. 214-15**
21 Q Are any of these charges for Internet,
22 or cable, or media package mandatory at any of
23 Wasatch's properties currently?
24 A Yes, absolutely.
25 Q Which properties? And you can describe
1 it by characteristics if it would make that easier.
2 A Yeah. I mean, so any of our communities
3 that have -- like any or more recent communities --
4 it would be kind of a standard of living at the
5 community.
6 Q So the communities where it's going to
7 be mandatory are ones that have been brought into
8 the Wasatch portfolio more recently?
9 A Yeah. Constructed recently or those
10 that we could manage the delivery of. You know, so
11 ground-up construction, those are typically the
12 types of the communities that give you the ability
13 to provide the service at its optimum performance.
14 Q Okay. And would you be able to provide
15 a list of properties where some kind of media option
16 has been mandatory, you know, with the relevant time
17 periods, if asked to do so?
18 A Yes. Yeah.

Past deposition testimony also reflects the existence of mandatory charges.  *See* Jarvis 2017 Dep. 109:17-110:12 (listing some properties that had mandatory media packages as of 2017); Tanforan Dep. 81:19-82:5 (at Chesapeake Commons, tenants must reserve and pay for a covered parking space at move in); Tanforan Dep. 86:10-20 (parking charges are required for tenants at move-in at some other properties managed by Tanforan, but he cannot remember which ones); Tanforan Dep. 92:15-23, 95:13-96:14 (washer and dryers are required charges for all tenants at Chesapeake Commons).  Huskey Interrogatory 18 follows up on this testimony by requesting a list of properties with mandatory additional service charges, as Defendants' employees have previously testified that whether charges are mandatory or not varies by property.  *See, e.g.*, Jarvis 2017 Dep. 109:17-111:15 (media packages vary by property).

Huskey Interrogatory 20 asks Defendants to "identify (by author, date, title, and bates number) any and all DOCUMENTS reflecting a company-wide policy maintained by DEFENDANTS that tenants participating in Section 8 were exempt from otherwise mandatory ADDITIONAL SERVICE CHARGES."   Defendants refuse to respond based on their sole objection to that the Interrogatory "assum[es] a fact not in evidence" because "[t]here have never been mandatory Additional Service Charges."  (Defs' Response to Huskey Interrogatory 20.)  To the contrary, as set out above, the evidence does establish that there have been mandatory

Joseph Salazar                                    -3-                          August 30, 2021
Ryan Matthews

Additional Service Charges.  Plaintiffs therefore request a proper answer to this Interrogatory.  If there are no documents reflecting a company-wide policy exempting Section 8 tenants, Defendants can so state in their response.

Plaintiffs request that Defendants immediately supplement their response to Huskey Interrogatories 18 and 20 to provide the information requested.  As this information is relevant to Topic 1 on the Rule 30(b)(6) notice we issued for Janae Jarvis' upcoming deposition, we request that you provide the updated response no later than **Friday, September 3** so that we have time to review the information and use it to prepare for the deposition.

Sincerely,

Anne P. Bellows

cc:     Andrew Wolff
        Brenna Wood-Fitzpatrick
        Jesse Newmark
        Henrissa Bassey
        Laura Ho
        Kristen Burzynski

# EXHIBIT 4

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Tuesday, September 7, 2021 3:42 PM |
| **To:** | Matthews, Ryan |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; jessenewmark; hbassey; andrew@awolflaw.com; brenna |
| **Subject:** | 9/2/21 meet and confer call |

Hi Ryan,

This email confirms and follows up on our meet and confer call last week on Thursday, September 2, 2021.  Please let me know immediately if you believe I have misstated anything.

***Training documents.***  We still have not received a written description of the training documents that Defendants have withheld from production.  Please provide that as soon as possible.

***Yardi data.*** Defendants confirmed on the phone that they approved of our proposed email to Leslie Martin requesting her to pull the data sought by RFP 74.  As you saw, following our call I sent the email and then followed up again today.

I also closely reviewed the other datasets provided by GelbGroup, and as you have by now seen I found that many of them do not include all the fields we had originally discussed and requested from them.  I sent a follow up email requesting that those errors be fixed, and also asking a few follow up questions.

***Privilege waiver production.***  Defendants reported that they are still reviewing the documents that Plaintiffs had flagged from earlier productions as potentially privileged, as well as emails to and from outside counsel including Sheldon Chernove and David Scharlach.  They expected to complete that process imminently.  As discussed, for any documents that were already produced, an updated privilege log will be sufficient.  For any other documents that will be produced with redactions or that have not yet been produced, Plaintiffs will receive a fresh production.

Defendants stated that they have completed their search for memoranda, notes, and other documents beyond what was included in the email production, and they did not find anything.

***Depositions.***  Defendants are working on finding deposition availability for Fetter and Mishler in October.

***Written discovery.***  Defendants agreed to provide supplemental responses to Huskey Interrogatories 18 and 22.  Given that this information goes to one of the Rule 30(b)(6) issues on which Janae Jarvis will be deposed, we requested that the update be provided no later than Thursday September 9.  Defendants agreed to do so.

Additionally, I reviewed the verifications attached to the discovery responses served on August 27, 2021, and I still do not see a verification for the responses to Terry Requests for Admission Set 2, which were served on July 19, 2021.  Please do provide that verification.

***New litigation schedule.***  Defendants still have not executed the waiver of service, but expect to do so this week.  We agreed that we could begin discussing a new litigation schedule this week, and I look forward to doing so tomorrow.

***Stipulation re: 2017-2020 tenant files.***  Plaintiffs will provide a draft stipulation regarding the tenant files and documents therein.  Realistically, we are aiming to complete that closer to the end of this month, given the other things going on in the case.

***Scope of the complaint.***  On our 8/26 meet and confer call, you expressed some concern about whether charges that are a mandatory condition of leasing are within the scope of the case.  I responded to that concern in my 8/27 meet and confer email.  As of our call last week, you had not had a chance to review that email.  I am pasting that portion in here again for your review.  I think this should address the concern, but if you still think this is an issue, please let me know.

In response to a discussion about the Parties' dispute about whether Section 8 tenants were required to incur certain additional charges, Defendants stated that they believed this theory of liability was not articulated in the complaint.

Defendants are mistaken.  Please refer to paragraphs 13 and 125-32 in the Fifth Amended Complaint, which allege that certain charges were required as a condition of leasing (paragraphs 13 and 81 through 88 in the Fourth Amended Complaint).

In response to Defendants' concerns about whether the class representatives can represent the class on this issue, the deposition testimony in this case clearly resolves that issue against you.  Denika Terry was absolutely subject to mandatory parking and washer and dryer charges at Chesapeake, as were other tenants.  *See* Tanforan Dep. at 952:15-23, 95:13-96:14 (W/D required of all Chesapeake Commons tenants, including Section 8 tenants, in order to move in) *id.* 81:10-84:5 (tenants are required to have a covered parking space to move in).  And Huskey was told that renters insurance "mandatory" to live in the apartment, Huskey Dep. 92:6-17, and the washer and dryer was automatically included on his lease agreement when he moved in and he "had no choice" about it, *id.* at 88:2-90:11.

Even apart from class issues, charges required as a condition of tenancy are relevant to our False Claims Act claim.  The existence of requirements that Section 8 tenants incur additional charges as a condition of tenancy render those additional charges "rent," and the result is that Wasatch falsely certified its compliance with HAP Contracts and regulations without disclosing those rent amounts.

***Follow-up items from Jarom Johnson's deposition.***  We are still waiting on the following items from Jarom Johnson's deposition:
- Katie Dao's recommendations re: compliance with the HAP Contract in 2016, related to the SHRA complaint
- Notes from Johnson's conversations with Vicente Tennerelli
- List of Johnson's direct reports for the period that he was controller

Additionally, for the list of tenants who received reimbursements, please produce that document with a bates designation.

***Other housekeeping.***  We have previously noted that Defendants have not produced the letter from Vince Tennerelli with Jarom Johnson's notes on it with a bates designation.  Please do so at your earliest convenience.

Thanks,
Anne


Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

# EXHIBIT 5

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Wednesday, September 15, 2021 12:03 PM |
| **To:** | Matthews, Ryan |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; hbassey; andrew@awolfflaw.com; brenna; jessenewmark |
| **Subject:** | Re: 9/2/21 meet and confer call |

Hi Ryan, can you provide a written update on the items discussed in my last two meet and confer emails below?

Sent from my mobile device. Please excuse brevity and typos.

---

**From:** Anne Bellows
**Sent:** Wednesday, September 8, 2021 10:16:02 PM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Cc:** Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; Jesse Newmark <jessenewmark@centrolegal.org>; hbassey <hbassey@centrolegal.org>; andrew@awolfflaw.com <andrew@awolfflaw.com>; brenna <brenna@awolfflaw.com>
**Subject:** RE: 9/2/21 meet and confer call

Hi Ryan,

You were going to get me a response to my last meet and confer email by this evening.  I have not seen anything yet, so I wanted to follow up on two particularly time-sensitive issues:

- Will Defendants serve the updated responses to Huskey Interrogatories 18 and 22 tomorrow?
- Have Defendants completed their review of potentially privileged documents and documents that may be subject to the waiver of privilege?

Let me know, and thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Tuesday, September 7, 2021 3:42 PM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>

Cc: Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; Jesse Newmark <jessenewmark@centrolegal.org>; hbassey <hbassey@centrolegal.org>; andrew@awolfflaw.com; brenna <brenna@awolfflaw.com>
**Subject:** 9/2/21 meet and confer call

Hi Ryan,

This email confirms and follows up on our meet and confer call last week on Thursday, September 2, 2021.  Please let me know immediately if you believe I have misstated anything.

***Training documents.***  We still have not received a written description of the training documents that Defendants have withheld from production.  Please provide that as soon as possible.

***Yardi data.***  Defendants confirmed on the phone that they approved of our proposed email to Leslie Martin requesting her to pull the data sought by RFP 74.  As you saw, following our call I sent the email and then followed up again today.

I also closely reviewed the other datasets provided by GelbGroup, and as you have by now seen I found that many of them do not include all the fields we had originally discussed and requested from them.  I sent a follow up email requesting that those errors be fixed, and also asking a few follow up questions.

***Privilege waiver production.***  Defendants reported that they are still reviewing the documents that Plaintiffs had flagged from earlier productions as potentially privileged, as well as emails to and from outside counsel including Sheldon Chernove and David Scharlach.  They expected to complete that process imminently.  As discussed, for any documents that were already produced, an updated privilege log will be sufficient.  For any other documents that will be produced with redactions or that have not yet been produced, Plaintiffs will receive a fresh production.

Defendants stated that they have completed their search for memoranda, notes, and other documents beyond what was included in the email production, and they did not find anything.

***Depositions.***  Defendants are working on finding deposition availability for Fetter and Mishler in October.

***Written discovery.***  Defendants agreed to provide supplemental responses to Huskey Interrogatories 18 and 22.  Given that this information goes to one of the Rule 30(b)(6) issues on which Janae Jarvis will be deposed, we requested that the update be provided no later than Thursday September 9.  Defendants agreed to do so.

Additionally, I reviewed the verifications attached to the discovery responses served on August 27, 2021, and I still do not see a verification for the responses to Terry Requests for Admission Set 2, which were served on July 19, 2021.  Please do provide that verification.

***New litigation schedule.***  Defendants still have not executed the waiver of service, but expect to do so this week.  We agreed that we could begin discussing a new litigation schedule this week, and I look forward to doing so tomorrow.

***Stipulation re: 2017-2020 tenant files.***  Plaintiffs will provide a draft stipulation regarding the tenant files and documents therein.  Realistically, we are aiming to complete that closer to the end of this month, given the other things going on in the case.

***Scope of the complaint.***  On our 8/26 meet and confer call, you expressed some concern about whether charges that are a mandatory condition of leasing are within the scope of the case.  I responded to that concern in my 8/27 meet and confer email.  As of our call last week, you had not had a chance to review that email.  I am pasting that portion in here again for your review.  I think this should address the concern, but if you still think this is an issue, please let me know.

In response to a discussion about the Parties' dispute about whether Section 8 tenants were required to incur certain additional charges, Defendants stated that they believed this theory of liability was not articulated in the complaint.

Defendants are mistaken.  Please refer to paragraphs 13 and 125-32 in the Fifth Amended Complaint, which allege that certain charges were required as a condition of leasing (paragraphs 13 and 81 through 88 in the Fourth Amended Complaint).

In response to Defendants' concerns about whether the class representatives can represent the class on this issue, the deposition testimony in this case clearly resolves that issue against you.  Denika Terry was absolutely subject to mandatory parking and washer and dryer charges at Chesapeake, as were other tenants.  *See* Tanforan Dep. at 952:15-23, 95:13-96:14 (W/D required of all Chesapeake Commons tenants, including Section 8 tenants, in order to move in) *id.* 81:10-84:5 (tenants are required to have a covered parking space to move in).  And Huskey was told that renters insurance "mandatory" to live in the apartment, Huskey Dep. 92:6-17, and the washer and dryer was automatically included on his lease agreement when he moved in and he "had no choice" about it, *id.* at 88:2-90:11.

Even apart from class issues, charges required as a condition of tenancy are relevant to our False Claims Act claim.  The existence of requirements that Section 8 tenants incur additional charges as a condition of tenancy render those additional charges "rent," and the result is that Wasatch falsely certified its compliance with HAP Contracts and regulations without disclosing those rent amounts.

***Follow-up items from Jarom Johnson's deposition.***  We are still waiting on the following items from Jarom Johnson's deposition:
- Katie Dao's recommendations re: compliance with the HAP Contract in 2016, related to the SHRA complaint
- Notes from Johnson's conversations with Vicente Tennerelli
- List of Johnson's direct reports for the period that he was controller

Additionally, for the list of tenants who received reimbursements, please produce that document with a bates designation.

***Other housekeeping.***  We have previously noted that Defendants have not produced the letter from Vince Tennerelli with Jarom Johnson's notes on it with a bates designation.  Please do so at your earliest convenience.

Thanks,
Anne


Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Thursday, September 23, 2021 4:06 PM |
| **To:** | Matthews, Ryan |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; jessenewmark; hbassey; brenna; andrew@awolfflaw.com; Lindsay Nako |
| **Subject:** | 9/22/21 meet and confer call |

Ryan,

This email confirms and follows up on our meet and confer call yesterday afternoon (9/22/2021).  Please let me know immediately if you believe I have misstated anything.

*New Defendants.*  You stated that you have approval from the newly added Defendants for your representation and execution of the waiver of service form, however you were still waiting on sign off from the AIG adjuster.   This morning, you confirmed that you received approval from the AIG adjuster but still "need to handle a few details."  Please confirm as soon as possible when you will be executing the waiver of service form, or if we need to serve the new Defendants individually.

*Joint Status Report.*  We discussed the joint status report, which Plaintiffs are currently drafting.  We will provide you a full draft by tomorrow. Additionally, as I will be in deposition on September 30, we agreed to complete revisions and have the report ready to file on September 29.

Here are the dates we are proposing in the draft status report.  Please let me know if you would like to suggest any changes.

| Event | Date |
|---|---|
| Exchange of updated Rule 26 disclosures | November 4, 2021 |
| Close of fact discovery regarding liability<br><br>*(expert-related discovery and data discovery to remain open)* | December 16, 2021 |
| Initial expert disclosures | January 20, 2022 |
| Rebuttal expert disclosures | February 17, 2022 |
| Close of expert-related discovery and data discover regarding liability | March 10, 2022 |
| Dispositive motions hearing date | May 13, 2022 |
| Further scheduling hearing | July 14, 2022 |

*Depositions.*  Plaintiffs have recently served deposition notices for Fetter and Mishler.  As discussed, we will change the second day of Fetter's deposition to October 15 instead of October 14.

We discussed that extending Jarom Johnson's deposition by a half day is warranted by the fact that Defendants' waived privilege late in the afternoon of his deposition, thereafter produced privileged documents, and according to other witnesses Johnson is the person who would have sought or received legal advice on this issue.  Additionally, Johnson was the Chief Operating Officer for more than five years of the relevant period and according to his own testimony he was the final authority and decision-maker on many issues central to the case.  Given the size and stakes of this litigation, an additional half day is more than warranted.  Defendants did not disagree.  The Parties discussed stipulating to the half day in the joint status report.

As previously requested, Plaintiffs ask that Defendants confirm the deposition dates for Raymond and Johnson by the end of this week (Oct. 27 and Nov. 10, respectively).

Defendants have still not determined who will be designated for the two additional Rule 30(b)(6) topics, but suggested it was likely to be either Tanforan or Johnson.  If it is going to be Johnson, we can address those issues on November 10.  If it is going to be Tanforan, please let us know as soon as possible so we can begin scheduling that deposition.

**Yardi data.**  Defendants reported that they had not received any further data from the joint expert.  We will be following up again.

**Privilege waiver production.**  Defendants indicated that they will be serving three privilege logs today.  The first will be a complete updated privilege log indicating the documents that have been withheld on the basis of privilege.  The second will be a separate log for documents we identified as potentially privileged in our review, so that we can determine what documents we are able to review. And the third will identify 100 documents that Defendants continue to analyze, so that we have transparency about what is remaining.

**Training documents.**  Defendants still have not identified the training documents they withheld.  This is long, long overdue, please provide that as soon as possible.

Separately, Defendants have not yet provided Plaintiffs the list of documents and videos maintained in the Wasatch University library.  We requested that Defendants provide that list as soon as possible, and that they also go ahead and produce any responsive videos.   Because these requests for production have been pending for more than a year, and Defendants' failure to identify the videos and the Wasatch University library is really inexcusable, this needs to happen immediately.

With regard to the format for production of the videos, we do request that they be provided with a load file.  If you foresee that that would cause any delay, please also send them informally with a bates designation while you are awaiting the ESI vendor.

Finally, Defendants agreed to find out what is in the packet of resource documents, and if there are any documents responsive to Plaintiffs' requests for production to provide them.

**Huskey Interrogatories 18 and 22.**  Defendants are working on developing the list of mandatory charges for Huskey Interrogatories 18.

**Scope of the complaint/mandatory charges.**  Defendants did not express further concerns about whether mandatory charges are within the scope of the complaint, but we did discuss how the issue could be tried.  Defendants expressed a concern that the mandatory charges theory would raise individual issues.  Plaintiffs pointed out that according to the testimony, whether charges are mandatory as a condition of leasing is the same for an entire property, and that Defendants' deponents have recently asserted that there is a company-wide policy of exempting Section 8 tenants from mandatory charges (an alleged policy that is not reflected in any documents and is inconsistent with other evidence in the record).  In other words, this theory turns on property-level and company-wide proof.  We do not believe this creates any individual issues or concerns about manageability.  Plaintiffs requested that if Defendants continue to perceive an issue there, that they set out their concerns in writing.

**Stipulation re: 2017-2020 tenant files.**  Plaintiffs do not yet have a draft stipulation to share, but continue to plan to put one together.

**Housekeeping and other outstanding items.**  Plaintiffs are still waiting on the following:
- A verification for the responses to Terry RFAs set 2 served on July 19, 2021
- Production of the list of tenants who received reimbursements following the SHRA complaint

- Plaintiffs will provide a draft stipulation in the coming days to add Impact Fund as class counsel

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Wednesday, October 6, 2021 4:19 PM |
| **To:** | Matthews, Ryan |
| **Cc:** | Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey; Lindsay Nako; jlarkin@impactfund.org; brenna; andrew@awolfflaw.com |
| **Subject:** | 10/1 meet and confer summary |

Dear Ryan,

The email below summarizes and follows up on our meet and confer call from last Friday, 10/1.  Please let me know immediately if you believe I have misstated anything.

As a preface, I'd like to reiterate the point that I made on the call, which is that too many of these items are long overdue and we have seen little or no progress from Defendants. On our call tomorrow, let's discuss our availability for an informal discovery call with Magistrate Judge Barnes to set a schedule for the production of the outstanding documents and the completion of outstanding written discovery (see http://www.caed.uscourts.gov/caednew/assets/File/Tele%20Conf%20re%20Discovery.pdf).

I've grouped the items in this email into three categories – case status and scheduling issues, issues ripe for Court assistance, and ongoing meet and confer issues.

**Case Status & Scheduling Issues**

***New Defendants.***  We are rapidly approaching the scheduling conference with the Court, and we have not seen a waiver of serve form filed on behalf of the new Defendants. On Friday, you indicated that you believed it would be addressed within a couple days (which is also what we jointly told the Court, per your information, almost a week ago). Please handle this as soon as possible so we know what schedule we are working with.  Thank you.

***Depositions.***  On our call last Friday you informed us that Fetter was not available for his noticed deposition on 10/13.  (We discussed alternatives in an attempt to accommodate Defendants' schedule—though I note we only took the step of noticing his deposition after weeks if not months of requesting availability.)   We discussed the proposed schedule:  Mishler on  10/13, Raymond on 10/20, Fetter on 10/27 and 10/28, Dao on 11/3, and Johnson day 2 on 11/10.

Earlier today you confirmed Tyler Raymond for 10/20 and Shawn Fetter for 10/27.  Please confirm that Fetter is available on 10/28 as well should we need a second day.

Please also confirm Mishler and Johnson as soon as possible.

**Items Plaintiffs Will Present to the Court if Not Immediately Resolved**

***Privilege log and list of documents that Defendants have determined to be within the privilege waiver.***  Defendants have repeatedly promised to complete and provide the privilege log in the near future.  Defendants indicated on Sep. 22nd that they would serve the privilege log that day.  Last Friday 10/1, you reiterated that it was ready to be served.  We still have not received it.

***Training Documents and Videos.***  We have now been meeting and conferring about Defendants' training documents for over a year—and for most of that time, Plaintiffs have been waiting for Defendants to assemble and produce those

documents.  In July, Defendants informed us that they were withholding as-yet unspecified training documents on as-yet unspecified grounds.  We cannot wait any longer.

Moreover, on September 10, 2021—a year into our efforts to collaborate with you in identifying responsive training documents—Defendants' Rule 30b6 witness Janae Johnson testified that there is another repository of training materials that we have never been informed of, called "Wasatch University."  She testified that it would be a simple matter to provide a index of the videos and documents available there.  On a meet and confer call later that day, Plaintiffs requested that Defendants provide that index immediately, and Defendants agreed to do so.  On subsequent calls, including the call on 10/1, we reiterated that request and, given the passage of time, asked that Defendants also to ahead and produce videos that are responsive to our RFPs related to training documents and company policies (RFPs 29 through 33).

Now, nearly a month after Ms. Jarvis' deposition, Defendants have not taken the first step of providing us the Wasatch University index, much less producing relevant documents.  Defendants reiterated on 10/1 that they understood the request and they agreed to it and were working on getting us the information.

We request that you provide the index no later than close of business tomorrow (10/7).  We can discuss a schedule for production of the actual documents and videos on our call tomorrow, but basically I would like to see this production completed within a week at the most, given the extreme and unjustified delay we have already experienced.

***Huskey Interrogatories 18 and 22.***  On August 27, Defendants served responses to Huskey Interrogatories 18 and 20, which asked, respectively for a list of mandatory charges by property for the FCA liability period, and for Defendants to identify any documents reflecting the company-wide policy of exempting Section 8 tenants from mandatory charges that Johnson testified to in his deposition. To both, Defendants responded that there had never been any mandatory charges.

On August 30, Plaintiffs sent a meet and confer letter quoting deposition testimony from three deponents in this case that the company does have and has had mandatory charges at some properties.  (Bellows letter 8/3/2021.)   On September 2, 2021, Defendants agreed to provide the information sought by Interrogatories 18 and 22, and agreed to do so by September 9, 2021, as the Parties agreed that the information was relevant to Janae Jarvis' deposition set for September 10.  (Bellows email, 9/2/21 meet and confer call (sent 9/7/21).)  Plaintiffs followed up on this issue on September 8th and September 15th, and received no response.  (Bellows email, re: 9/2/21 meet and confer call (sent 9/8/21); Bellows email, re: 9/2/21 meet and confer call (sent 9/15/21).)   Defendants reported on Sep. 22 that they were working on it.  (Bellows email, 9/22/21 meet and confer call (sent 9/23/21).)  Last Friday on October 1, 2021, you did not yet have an update.

This information is overdue.  Of course, Defendants should have provided the information when they served the interrogatory responses on August 27.  Now they have had more than a month to remedy their mistake.  Plaintiffs request a date certain by which we will receive the supplemental interrogatory responses.  If you are unable to provide one, we will need to ask the Court to help set a schedule.

## Ongoing Meet and Confer / Projects

***Relevant documents in personnel files.***  On Friday (10/1) we discussed Defendants' objections to Plaintiffs' requests for documents in the personnel files of some of the key decisionmakers and supervisors in this case related to Section 8, affordable housing compliance, and additional service charges.

Defendants argued they were not required to produce the entire personnel file, and Plaintiffs pointed out that is not what we are asking for.  Defendants also expressed a doubt that relevant documents exist in the personnel files.  Plaintiffs requested that Defendants actually review the files to make that determination.  If the documents do not exist, please amend your responses to so state.

In response to Defendants' questions about the relevance of compliance issues beyond Section 8, Plaintiffs pointed out that such documents could be illustrative and lead to the discovery of relevant evidence about Wasatch's approach to compliance with affordable housing programs in general, contrasts or disparities between its compliance efforts in other programs and its lack of compliance efforts with regard to Section 8, and compliance with overlapping requirements.

***Stipulation in Lieu of Updated Tenant Files Production.***  Plaintiffs are still working on a draft stipulation in lieu of the tenant files production.

***Yardi data.***  Based on the emails from John Bailey at FitechGelb, Defendants have been provided the following datasets that require their approval:

- Data2_TenantRoommateLIst100121.csv
- Data4_TenantLeaseCharges100121.csv
- Data8_TenantAttachments100121.csv
- Data10_TenantEvictionActivity100321.csv
- Data15_PropertySalesTax.csv

Please review that data and provide authorization as soon as you can, or explain in writing why you are not able to.

***Housekeeping items.***  We continue to wait for Defendants to clean up the following house-keeping items:

- A verification for the responses to Terry RFAs set 2 served on July 19, 2021
- Production of the list of tenants who received reimbursements following the SHRA complaint

Looking forward to discussing more tomorrow.

Best,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

# Stephanie Tilden

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Wednesday, October 20, 2021 11:07 AM |
| **To:** | Matthews, Ryan |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey; brenna; Lindsay Nako; jlarkin@impactfund.org |
| **Subject:** | RE: 10/7 & 10/8 meet and confer calls |

Hi Ryan,

In lieu of our meet and confer call today, could you provide a written update regarding the items addressed in my meet and confer emails of Oct. 11 and Oct. 14?

We did receive the privilege log and the yardi data.

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Thursday, October 14, 2021 1:27 PM
**To:** 'Matthews, Ryan' <Ryan.Matthews@lewisbrisbois.com>
**Cc:** 'Salazar, Joe' <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; 'Brenna Wood Fitzpatrick' <brenna@awolfflaw.com>; 'Lindsay Nako' <lnako@impactfund.org>; 'Jocelyn Larkin' <jlarkin@impactfund.org>
**Subject:** RE: 10/7 & 10/8 meet and confer calls

Hi Ryan,

Yesterday you canceled our meet and confer call and asked to reschedule it to this morning.  I told you I was open in the morning, then after you did not indicate a time, I sent a calendar invite for 10am.  I called at 10am and left a voicemail, and did not receive a call back.  I called again at 1pm and left another voicemail.

If you are unable to talk today, please provide a written update on each of the items in my last meet and confer email, which is below.

Last week we agreed that we would determine today whether we needed an informal discovery conference with the court to set a schedule for Defendants to make outstanding productions and serve the updated discovery responses.  It appears that we need to go ahead and set that up.  <u>Please let me know your availability for next week so that I can set up the call</u>.

Here are the items we believe are overdue and for which we will seek Court assistance:

- Production of the training documents, and identification of training documents you are withholding
- Supplemental responses to Huskey Interrogatories 18 and 20 that Defendants have agreed to provide
- Outstanding yardi datasets that FitechGelb has already pulled and sought Defendants' approval to produce, including:
    - *Data2_TenantRoommateList100121.csv*
    - *Data4_TenantLeaseCharges100121.csv*
    - *Data8_TenantAttachments100121.csv*
    - *Data10_TenantEvictionActivity100321.csv*
    - *Data15_PropertySalesTax.csv*
    - *Data21_ChargeTypeAnalysis.csv*

As you can see in the email below, there are many other moving pieces as well.  We are still waiting for you finalize your representation of the new Defendants and execute the waiver of service.  Please take care of that as soon as possible.

I sent you a couple questions regarding the privilege log yesterday, and have not heard back.

Additionally, now that the scheduling conference has been set for October 28, we will need to find an alternative second day for Shawn Fetter's deposition.  Our preference is November 1, please let me know if that will work for you all.

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
[www.gbdhlegal.com](www.gbdhlegal.com)

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Monday, October 11, 2021 11:44 AM
**To:** Matthews, Ryan <[Ryan.Matthews@lewisbrisbois.com](Ryan.Matthews@lewisbrisbois.com)>
**Cc:** Salazar, Joe <[Joe.Salazar@lewisbrisbois.com](Joe.Salazar@lewisbrisbois.com)>; Laura Ho <[lho@gbdhlegal.com](lho@gbdhlegal.com)>; Kristen Burzynski <[kburzynski@gbdhlegal.com](kburzynski@gbdhlegal.com)>; jessenewmark <[jessenewmark@centrolegal.org](jessenewmark@centrolegal.org)>; Henrissa Bassey <[hbassey@centrolegal.org](hbassey@centrolegal.org)>; Brenna Wood Fitzpatrick <[brenna@awolfflaw.com](brenna@awolfflaw.com)>; Lindsay Nako <[lnako@impactfund.org](lnako@impactfund.org)>; Jocelyn Larkin <[jlarkin@impactfund.org](jlarkin@impactfund.org)>
**Subject:** 10/7 & 10/8 meet and confer calls

Ryan,

The email below confirms and follows up on our meet and confer calls last Thursday and Friday (Oct. 7 and Oct. 8, 2021).  Please let me know immediately if you believe I have misstated anything.

***New Defendants.***  Lewis Brisbois is still waiting on signed engagement letters from some of the newly identified Defendants—although they have orally communicated their agreement to the representation.  We agreed that if the representation was not formalized by tomorrow (10/12), we may need to seek a continuance from the court so that all Defendants can be represented at the scheduling conference.

***Depositions.***  We confirmed Mishler's deposition would remain on October 20, and Tyler Raymond's deposition would take place on October 21. We also confirmed that Day 2 of Johnson's deposition will take place on November 10, to start at 9:30am Pacific Time.

We have not received confirmation from you that Fetter will be available for a second day on October 28 (following the first day of his deposition on October 27).  Please confirm as soon as possible.

Last – an update from the over the weekend.  Katie Dao has been served with the deposition subpoena, and we are set to go forward with that deposition on November 3, 2021.  We are planning to start that deposition at 9:30am Pacific, and as with the others, it will take place remotely.  Please let us know if you will be attending.

***Privilege log.*** Defendants agreed on Thursday to make sure the outstanding privilege log was produced.  It was not produced on Thursday, and when we discussed it on Friday you said that your assistant may have left for the day, but you would see to it that it was served Monday.  We have not yet received it.  Please provide it ASAP.

***Training documents and videos.***  On Thursday, Defendants provided additional indices of training documents.  On Friday, Plaintiffs responded with a list of the documents that are responsive to our requests for production, together with a list of documents that may be responses to our requests for production.

Plaintiffs requested that Defendants produce the relevant documents by October 14, and if they are not produced by that date, we will seek an informal discovery conference to help set a production schedule.

Plaintiffs also reiterated their request for Defendants to provide a written list of the training documents they are withholding from the How-To set, together with their reasoning.  Please provide that as soon as possible, and certainly no later than 10/14, so we understand if we have a dispute.

***Huskey Interrogatories 18 & 22.***  Defendants reported that they have made progress in that they have identified the list of properties that have had mandatory charges, but they are still working on the dates the mandatory charges were/have been in effect.  Defendants agree to provide the supplemental responses by 10/14.  If that deadline is not met, Plaintiffs will seek an informal discovery conference to address a schedule.

With regard to the two last items—or three, if the privilege log continues not to be served—we agreed that we would provide the Court with our availability for an informal discovery conference next week, so that we can make sure these issues are getting timely addressed.

***Personnel documents.***  Defendants are reviewing the personnel files, and by October 14 will provide an amended response stating either that no documents exist or that a production will be forthcoming.

***Stipulation in lieu of updated tenant files production.***  Plaintiffs are working on this and will provide a draft as soon as they are able.

***Yardi.***  Defendants confirmed that they received further files from the joint expert and they are reviewing.  You stated that you would work on getting approval for production of those files by the end of last week.  Please do provide that as soon as possible.

***Class list.***  Defendants agreed to update their class list production to include TenantIDs, they will mark it as a supplemental production of the class list.

***Housekeeping items.***  We continue to wait for Defendants to clean up the following house-keeping items:
- A verification for the responses to Terry RFAs set 2 served on July 19, 2021
- Production of the list of tenants who received reimbursements following the SHRA complaint

Thanks,
Anne


Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com> |
| **Sent:** | Wednesday, October 20, 2021 1:30 PM |
| **To:** | Anne Bellows |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey; brenna; Lindsay Nako; jlarkin@impactfund.org |
| **Subject:** | RE: 10/7 & 10/8 meet and confer calls |

Anne,
See updates below in red.

Thanks,

Ryan



**Ryan Matthews**
**Attorney**
Ryan.Matthews@lewisbrisbois.com

**T: 916.646.8213  F: 916.564.5444**

2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833  |  LewisBrisbois.com

Representing clients from coast to coast. View our locations nationwide.

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

**From:** Anne Bellows <abellows@gbdhlegal.com>
**Sent:** Wednesday, October 20, 2021 11:07 AM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Cc:** Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; brenna <brenna@awolfflaw.com>; Lindsay Nako <lnako@impactfund.org>; jlarkin@impactfund.org
**Subject:** [EXT] RE: 10/7 & 10/8 meet and confer calls

> **Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Ryan,

In lieu of our meet and confer call today, could you provide a written update regarding the items addressed in my meet and confer emails of Oct. 11 and Oct. 14?

We did receive the privilege log and the yardi data.

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Thursday, October 14, 2021 1:27 PM
**To:** 'Matthews, Ryan' <Ryan.Matthews@lewisbrisbois.com>
**Cc:** 'Salazar, Joe' <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; 'Brenna Wood Fitzpatrick' <brenna@awolfflaw.com>; 'Lindsay Nako' <lnako@impactfund.org>; 'Jocelyn Larkin' <jlarkin@impactfund.org>
**Subject:** RE: 10/7 & 10/8 meet and confer calls

Hi Ryan,

Yesterday you canceled our meet and confer call and asked to reschedule it to this morning.  I told you I was open in the morning, then after you did not indicate a time, I sent a calendar invite for 10am.  I called at 10am and left a voicemail, and did not receive a call back.  I called again at 1pm and left another voicemail.

If you are unable to talk today, please provide a written update on each of the items in my last meet and confer email, which is below.

Last week we agreed that we would determine today whether we needed an informal discovery conference with the court to set a schedule for Defendants to make outstanding productions and serve the updated discovery responses.  It appears that we need to go ahead and set that up.  Please let me know your availability for next week so that I can set up the call.

Here are the items we believe are overdue and for which we will seek Court assistance:
- Production of the training documents, and identification of training documents you are withholding

<span style="color:red">I have received outstanding training documents and am in the process of reviewing for responsiveness. I will produce a master list of documents you've identified that we have not produced on account of non-responsiveness ASAP. Nothing to this point has been withheld on the basis of trade secret protection.</span>

- Supplemental responses to Huskey Interrogatories 18 and 20 that Defendants have agreed to provide

We developed initial responses based on the information I received. Alternate sources last Friday clarified that the information was incorrect, and we are re-working responses this week. Unfortunately, Janae Jarvis is currently out of the office due to family circumstances, so it has been difficult to confirm the correct information. I hope to have it finalized ASAP.

- Outstanding yardi datasets that FitechGelb has already pulled and sought Defendants' approval to produce, including:
  - *Data2_TenantRoommateList100121.csv*
  - *Data4_TenantLeaseCharges100121.csv*
  - *Data8_TenantAttachments100121.csv*
  - *Data10_TenantEvictionActivity100321.csv*
  - *Data15_PropertySalesTax.csv*
  - *Data21_ChargeTypeAnalysis.csv*

These have been approved, though I understand there are issue with the datasets produced that you've identified.

As you can see in the email below, there are many other moving pieces as well.  We are still waiting for you finalize your representation of the new Defendants and execute the waiver of service.  Please take care of that as soon as possible.

I am still waiting on finalized engagement letters and intend to have an Answer filed prior to the status conference.

I sent you a couple questions regarding the privilege log yesterday, and have not heard back.

Additionally, now that the scheduling conference has been set for October 28, we will need to find an alternative second day for Shawn Fetter's deposition.  Our preference is November 1, please let me know if that will work for you all.

Not sure about this. I know it's the first day of trial in another matter for both Joe and me. We may need to look at bringing in extra help to defend if the second day pushes into November.

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Monday, October 11, 2021 11:44 AM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Cc:** Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; Brenna Wood Fitzpatrick <brenna@awolfflaw.com>; Lindsay Nako <lnako@impactfund.org>; Jocelyn Larkin <jlarkin@impactfund.org>
**Subject:** 10/7 & 10/8 meet and confer calls

Ryan,

The email below confirms and follows up on our meet and confer calls last Thursday and Friday (Oct. 7 and Oct. 8, 2021). Please let me know immediately if you believe I have misstated anything.

**New Defendants.** Lewis Brisbois is still waiting on signed engagement letters from some of the newly identified Defendants—although they have orally communicated their agreement to the representation. We agreed that if the representation was not formalized by tomorrow (10/12), we may need to seek a continuance from the court so that all Defendants can be represented at the scheduling conference.

**Depositions.** We confirmed Mishler's deposition would remain on October 20, and Tyler Raymond's deposition would take place on October 21. We also confirmed that Day 2 of Johnson's deposition will take place on November 10, to start at 9:30am Pacific Time.

We have not received confirmation from you that Fetter will be available for a second day on October 28 (following the first day of his deposition on October 27). Please confirm as soon as possible.

Last – an update from the over the weekend. Katie Dao has been served with the deposition subpoena, and we are set to go forward with that deposition on November 3, 2021. We are planning to start that deposition at 9:30am Pacific, and as with the others, it will take place remotely. Please let us know if you will be attending.

**Privilege log.** Defendants agreed on Thursday to make sure the outstanding privilege log was produced. It was not produced on Thursday, and when we discussed it on Friday you said that your assistant may have left for the day, but you would see to it that it was served Monday. We have not yet received it. Please provide it ASAP.

**Training documents and videos.** On Thursday, Defendants provided additional indices of training documents. On Friday, Plaintiffs responded with a list of the documents that are responsive to our requests for production, together with a list of documents that may be responses to our requests for production.

Plaintiffs requested that Defendants produce the relevant documents by October 14, and if they are not produced by that date, we will seek an informal discovery conference to help set a production schedule.

Plaintiffs also reiterated their request for Defendants to provide a written list of the training documents they are withholding from the How-To set, together with their reasoning. Please provide that as soon as possible, and certainly no later than 10/14, so we understand if we have a dispute.

**Huskey Interrogatories 18 & 22.** Defendants reported that they have made progress in that they have identified the list of properties that have had mandatory charges, but they are still working on the dates the mandatory charges were/have been in effect. Defendants agree to provide the supplemental responses by 10/14. If that deadline is not met, Plaintiffs will seek an informal discovery conference to address a schedule.

With regard to the two last items—or three, if the privilege log continues not to be served—we agreed that we would provide the Court with our availability for an informal discovery conference next week, so that we can make sure these issues are getting timely addressed.

**Personnel documents.** Defendants are reviewing the personnel files, and by October 14 will provide an amended response stating either that no documents exist or that a production will be forthcoming.

**Stipulation in lieu of updated tenant files production.** Plaintiffs are working on this and will provide a draft as soon as they are able.

*Yardi.*  Defendants confirmed that they received further files from the joint expert and they are reviewing.  You stated that you would work on getting approval for production of those files by the end of last week.  Please do provide that as soon as possible.

*Class list.*  Defendants agreed to update their class list production to include TenantIDs, they will mark it as a supplemental production of the class list.

*Housekeeping items.*  We continue to wait for Defendants to clean up the following house-keeping items:
- A verification for the responses to Terry RFAs set 2 served on July 19, 2021
- Production of the list of tenants who received reimbursements following the SHRA complaint

Thanks,
Anne


Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Thursday, November 4, 2021 11:09 AM |
| **To:** | Matthews, Ryan |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey; andrew@awolfflaw.com; brenna; jlarkin@impactfund.org; Lindsay Nako |
| **Subject:** | RE: 10/28 meet and confer |

Hi Ryan,

We agreed in our meet and confer call on October 28th that if we did not receive the training documents production by Tuesday this week, and if we did not receive the supplemental interrogatory responses by Wednesday this week, Plaintiffs would reach out to Judge Barnes' chambers to schedule an informal discovery conference, offering next Friday (11/12) as our availability.

We have not received either the training documents production or the interrogatory responses, so I am going to go ahead and reach out to the Court to set that up. I'll copy you on the emails.

Of course, we would love to get those outstanding items and take the discovery conference off calendar if you are able to get that taken care of before then.

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Friday, October 29, 2021 11:30 AM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Cc:** Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; andrew@awolfflaw.com; Brenna Wood Fitzpatrick <brenna@awolfflaw.com>; jlarkin@impactfund.org; Lindsay Nako <lnako@impactfund.org>
**Subject:** 10/28 meet and confer

Hi Ryan,

This email summarizes and follows up on what we discussed in our meet and confer call yesterday (10/28/21) after Shawn Fetter's deposition. Please let me know immediately if you believe I have stated anything incorrectly.

***Stipulation to modify scheduling order.*** Defendants do not expect that they will need the full 28 days provided by the Court to finalize the stipulation to modify the scheduling order. We look forward to finalizing that as soon as possible.

***Deposition scheduling.*** You confirmed that Defendants will have a representative at the Katie Dao deposition on Nov. 3. We will make sure you have all the information to join the deposition.

In regards to the outstanding depositions:

- Bradley Mishler – Defendants are working on new availability for Mr. Mishler. He is based in Carlsbad and will be traveling to San Diego to take the deposition at a Lewis Brisbois office. If Plaintiffs do not receive new dates for him in the coming days, in light of the approaching discovery deadline, we will need to issue a deposition notice with a date of our choosing.
- Tyler Raymond – Now that the Court has indicated that she will appoint Impact Fund as Class Counsel, we believe that the Parties' disagreement regarding whether Lindsay Nako can take Tyler Raymond's deposition has been mooted and we hope to proceed to take his deposition shortly. Plaintiffs reiterated that we need to know without further delay if Defendants will be offering new availability for Mr. Raymond or not. We requested Defendants clarify their position today.
- David Scharlach – Plaintiffs have served Mr. Scharlach with a deposition subpoena for December 8, 2021. We understand that Mr. Scharlach has sought representation by defense counsel for the suit. We are willing to accommodate Defendants and Mr. Scharlach on dates if need be.

***Training documents.*** We still have not received Defendants' write up of the training documents they are withholding. Nor have we received any of the training documents we requested from the Wasatch University materials.

Defendants assured us that the client was working on gathering the documents. You stated that you expect to be able to produce the outstanding training materials on Monday. Although you did not explicitly state this, we will also expect a write-up of the materials you are withholding no later than Monday.

If we do not receive them on Monday, we agreed that on Tuesday morning I will send an email to Judge Barnes' chambers seeking an informal discovery conference. Your availability is best on Fridays, and you have an open schedule both Friday Nov. 5 and Friday Nov. 12.

***Huskey Interrogatories 18 and 22.*** Defendants are still gathering the information they need to provide a proper response to Interrogatories 18 and 22. We noted that these have been outstanding far too long. If we do not receive the updated responses on Wednesday, we agreed that Plaintiffs will likewise seek an informal discovery conference with the Court.

***Relevant documents from personnel files.*** Defendants have not yet completed their review of the personnel files to determine if there are responsive documents. This too has been outstanding too long. We request that Defendants complete their review and produce responsive documents within the next week.

***Yardi data.*** Currently we do not believe we are waiting on Defendants for anything related to the yardi data.

***Stipulation in lieu of tenant files production.*** Plaintiffs are working on the draft stipulation in lieu of the tenant files production. We will provide as soon as we are able.

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Friday, November 5, 2021 9:42 AM |
| **To:** | Matthews, Ryan |
| **Subject:** | RE: Terry v. Wasatch - Discovery Call |

FYI, I have not received the supplemental Huskey interrogatory responses.  Can you have those served today?

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Sent:** Friday, November 5, 2021 9:12 AM
**To:** Anne Bellows <abellows@gbdhlegal.com>
**Subject:** RE: Terry v. Wasatch - Discovery Call

Sure. Thanks.

**From:** Anne Bellows <abellows@gbdhlegal.com>
**Sent:** Friday, November 5, 2021 9:11 AM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Subject:** [EXT] RE: Terry v. Wasatch - Discovery Call

**Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

I am available on Monday.  Shall we say 9:30am?

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612

(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Sent:** Friday, November 5, 2021 9:09 AM
**To:** Anne Bellows <abellows@gbdhlegal.com>
**Subject:** Terry v. Wasatch - Discovery Call

Anne,

Looks like Dept. 11B isn't dark today. I just saw our call on the calendar. I believe we are dark Monday. Are you available to discuss then?

Thanks,

Ryan



**Ryan Matthews**
**Attorney**
Ryan.Matthews@lewisbrisbois.com

**T: 916.646.8213  F: 916.564.5444**

2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

# EXHIBIT 6

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com> |
| **Sent:** | Thursday, November 4, 2021 12:44 PM |
| **To:** | Anne Bellows |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey; andrew@awolfflaw.com; brenna; jlarkin@impactfund.org; Lindsay Nako |
| **Subject:** | RE: 10/28 meet and confer |

Anne,

We should be able to scratch the interrogatories off the list, as I just received the verification and have instructed our staff to serve the response. I'm finalizing the training docs review. Some of these webinars are lengthy, so it's taken longer than I expected, particularly in light of trial. Hopefully that's off the list. Regardless, I think there will be value in keeping it on calendar with respect to Tyler Raymond's deposition tomorrow. He will not be produced, and to the extent the proceeding goes on as scheduled, we'll appear and move to terminate. If you'd prefer to take it off calendar and discuss it with Judge Barnes next week, we're very open to that.

Thanks,

Ryan Matthews



**Ryan Matthews**
**Attorney**
Ryan.Matthews@lewisbrisbois.com

**T: 916.646.8213  F: 916.564.5444**

2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

**From:** Anne Bellows <abellows@gbdhlegal.com>
**Sent:** Thursday, November 4, 2021 11:09 AM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Cc:** Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; andrew@awolfflaw.com; brenna <brenna@awolfflaw.com>; jlarkin@impactfund.org; Lindsay Nako <lnako@impactfund.org>
**Subject:** [EXT] RE: 10/28 meet and confer

Caution:This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Ryan,

We agreed in our meet and confer call on October 28th that if we did not receive the training documents production by Tuesday this week, and if we did not receive the supplemental interrogatory responses by Wednesday this week, Plaintiffs would reach out to Judge Barnes' chambers to schedule an informal discovery conference, offering next Friday (11/12) as our availability.

We have not received either the training documents production or the interrogatory responses, so I am going to go ahead and reach out to the Court to set that up. I'll copy you on the emails.

Of course, we would love to get those outstanding items and take the discovery conference off calendar if you are able to get that taken care of before then.

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Friday, October 29, 2021 11:30 AM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Cc:** Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; andrew@awolfflaw.com; Brenna Wood Fitzpatrick <brenna@awolfflaw.com>; jlarkin@impactfund.org; Lindsay Nako <lnako@impactfund.org>
**Subject:** 10/28 meet and confer

Hi Ryan,

This email summarizes and follows up on what we discussed in our meet and confer call yesterday (10/28/21) after Shawn Fetter's deposition.  Please let me know immediately if you believe I have stated anything incorrectly.

***Stipulation to modify scheduling order.***  Defendants do not expect that they will need the full 28 days provided by the Court to finalize the stipulation to modify the scheduling order.  We look forward to finalizing that as soon as possible.

***Deposition scheduling.***  You confirmed that Defendants will have a representative at the Katie Dao deposition on Nov. 3.  We will make sure you have all the information to join the deposition.

In regards to the outstanding depositions:

- Bradley Mishler – Defendants are working on new availability for Mr. Mishler.  He is based in Carlsbad and will be traveling to San Diego to take the deposition at a Lewis Brisbois office.  If Plaintiffs do not receive new dates for him in the coming days, in light of the approaching discovery deadline, we will need to issue a deposition notice with a date of our choosing.
- Tyler Raymond – Now that the Court has indicated that she will appoint Impact Fund as Class Counsel, we believe that the Parties' disagreement regarding whether Lindsay Nako can take Tyler Raymond's deposition has been mooted and we hope to proceed to take his deposition shortly.  Plaintiffs reiterated that we need to know without further delay if Defendants will be offering new availability for Mr. Raymond or not.   We requested Defendants clarify their position today.
- David Scharlach – Plaintiffs have served Mr. Scharlach with a deposition subpoena for December 8, 2021.  We understand that Mr. Scharlach has sought representation by defense counsel for the suit.  We are willing to accommodate Defendants and Mr. Scharlach on dates if need be.

*Training documents.*  We still have not received Defendants' write up of the training documents they are withholding.  Nor have we received any of the training documents we requested from the Wasatch University materials.

Defendants assured us that the client was working on gathering the documents.  You stated that you expect to be able to produce the outstanding training materials on Monday.  Although you did not explicitly state this, we will also expect a write-up of the materials you are withholding no later than Monday.

If we do not receive them on Monday, we agreed that on Tuesday morning I will send an email to Judge Barnes' chambers seeking an informal discovery conference.  Your availability is best on Fridays, and you have an open schedule both Friday Nov. 5 and Friday Nov. 12.

*Huskey Interrogatories 18 and 22.*  Defendants are still gathering the information they need to provide a proper response to Interrogatories 18 and 22.  We noted that these have been outstanding far too long.  If we do not receive the updated responses on Wednesday, we agreed that Plaintiffs will likewise seek an informal discovery conference with the Court.

*Relevant documents from personnel files.*  Defendants have not yet completed their review of the personnel files to determine if there are responsive documents.  This too has been outstanding too long.  We request that Defendants complete their review and produce responsive documents within the next week.

*Yardi data.*  Currently we do not believe we are waiting on Defendants for anything related to the yardi data.

*Stipulation in lieu of tenant files production.*  Plaintiffs are working on the draft stipulation in lieu of the tenant files production.  We will provide as soon as we are able.

Thanks,
Anne


Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

# EXHIBIT 7

1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   JOSEPH A. SALAZAR JR., SB# 169551
2     E-Mail: Joe.Salazar@lewisbrisbois.com
   RYAN MATTHEWS, SB# 311674
3     E-Mail: Ryan.Matthews@lewisbrisbois.com
   2020 West El Camino Avenue, Suite 700
4  Sacramento, California 95833
   Telephone: 916.564.5400
5  Facsimile: 916.564.5444

6  Attorneys for Wasatch Advantage Group, LLC;
   Wasatch Property Management, Inc.; Wasatch
7  Pool Holdings, LLC, Chesapeake Commons
   Holdings, LLC; Logan Park Apartments, LLC;
8  Logan Park Apartments, LP

9

10              **UNITED STATES DISTRICT COURT**

11            **EASTERN DISTRICT OF CALIFORNIA**

12                **SACRAMENTO DIVISION**

13

14  UNITED STATES OF AMERICA, ex rel.          CASE NO. 2:15-cv-00799-KJM-DB
    DENIKA TERRY and ROY HUSKEY III,
15  and each of them for themselves individually,  **DEFENDANTS AMENDED RESPONSES**
    and for all other persons similarly situated and  **TO PLAINTIFF ROY HUSKEY III'S**
16  on behalf of the UNITED STATES OF          **INTERROGATORIES, SET FIVE**
    AMERICA,
17                                             The Hon. Kimberly J. Mueller
              Plaintiffs/Relators,
18                                             Trial Date:      None Set
         vs.
19
    WASATCH ADVANTAGE GROUP, LLC,
20  WASATCH PROPERTY MANAGEMENT,
    INC., WASATCH POOL HOLDINGS, LLC,
21  CHESAPEAKE COMMONS HOLDINGS,
    LLC, LOGAN PARK APARTMENTS, LLC;
22  LOGAN PARK APARTMENTS, LP,

23           Defendants.

24

25  PROPOUNDING PARTY:        Plaintiff, Roy Huskey, III

26  RESPONDING PARTY:         Defendants, Wasatch Advantage Group, LLC; Wasatch Property

27                            Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake

28                            Commons Holdings, LLC; Logan Park Apartments, LLC; Logan

    4811-8011-7502.1                                      Case No. 2:15-cv-00799-KJM-DB
    ─────────────────────────────────────────────────────────────────
    DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET
    FIVE

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   Park Apartments, LP

2   SET NO.:                    FIVE

3   **INTERROGATORY NO. 18:**

4   Please identify (by name, address, city, state, applicable time period, and relevant charges)

5   any SUBJECT PROPERTY that, for any period of time since April 14, 2005, made any

6   ADDITIONAL SERVICE CHARGE mandatory for any tenants.

7   **AMENDED RESPONSE TO INTERROGATORY NO. 18:**

8   Defendants respond as follows: After diligent effort and inquiry, Defendants are unable to

9   verify time periods in which any Additional Service Charge was mandatory .Defendants'

10  corporate policy is and always has been that for Section 8 tenants, no Additional Service Charge is

11  mandatory, and each and every one has always been optional. In light of prior testimony regarding

12  bulk media packages, Defendants list below each property that Wasatch Property Management has

13  managed in the times relevant to this case that has ever had a media package of any kind, and the

14  date it was added.

| PROPCODE | PROPERTY | MEDIA PACKAGE | OPTIONAL | DATE ADDED | |
|---|---|---|---|---|---|
| 6lt | 600 Lofts | Y | Y | 04/2017 | |
| art | Arcadia | Y | Y | 05/2018 | |
| art2 | Arcadia II | Y | Y | 01/2021 | |
| az | Aztec Springs Apartments | Y | Y | 09/2020 | |
| bu | Burnett Station Apartments | Y | Y | 01/2020 | |
| cn | Canyon Ridge Apartments | Y | Y | 09/2020 | |
| cm | Cimarron Place Apartments | Y | Y | 09/2020 | |
| dw | Devonshire Court West | Y | Y | 03/2019 | |
| enclave | Enclave at 1400 South | Y | Y | 07/2015 | |
| falls | Falls at Hunters Pointe | Y | Y | 09/2018 | |
| glt | Garden Lofts | Y | Y | 11/2019 | |
| go | Glen Oaks Apartments | Y | Y | 09/2020 | |

15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-8011-7502.1                    2                    Case No. 2:15-cv-00799-KJM-DB
DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

| | | | | | |
|---|---|---|---|---|---|
| gp | Goldstone Place Apartments | Y | Y | 03/2000 | |
| hp | Heron Pointe Apartments | Y | Y | 08/1998 | |
| fc | Landing at Fancher Creek | Y | Y | 04/2003 | |
| lofts | Lofts at 7800 | Y | Y | 08/2014 | |
| mp | Metropolitan Place Apartments | Y | Y | 11/2019 | |
| p1 | Palladio Apartments-Phase 1 | Y | Y | 10/2002 | |
| p3 | Palladio Apartments-Phase 1 | Y | Y | 10/2002 | |
| rw | Ranchwood Apartments | Y | Y | 09/2020 | |
| rs | Rio Seco Apartments | Y | Y | 09/2020 | |
| rp | River Point Apartments | Y | Y | 09/2020 | |
| sa | Sands Apartments | Y | Y | 09/2020 | |
| rvt | The Reserve at View 78 | Y | Y | 09/2019 | |
| vet | Veranda | Y | Y | 01/2018 | |
| vit | Village Grove Apartments | Y | N | 02/2015 | Internet Provided as Free Service for all residents |

DATED: November 8, 2021          LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____

RYAN MATTHEWS
Attorneys for Wasatch Advantage Group, LLC;
Wasatch Property Management, Inc.; Wasatch
Pool Holdings, LLC, Chesapeake Commons
Holdings, LLC; Logan Park Apartments, LLC;
Logan Park Apartments, LP

DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

**VERIFICATION**

**STATE OF CALIFORNIA, COUNTY OF SACRAMENTO**

I have read the foregoing DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE and know its contents.

☐      I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☒      I am Executive Vice President of Wasatch Property Management, Inc., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

       ☒      I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

       ☐      The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐      I am one of the attorneys for Wasatch Property Management, Inc., a party to this action. Such party is absent from the county where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on November 3, 2021, at Logan, Utah.


Jarom Johnson
Print Name of Signatory                                    Signature

LEWIS
BRISBOIS

1

**FEDERAL COURT PROOF OF SERVICE**

2

USA-Terry v Wasatch Property Mgmt
2:15-cv-00799 KJM DB

3

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

4

5

At the time of service, I was over 18 years of age and not a party to the action.  My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

6

7

On November 8, 2021, I served the following document(s):

8

-   DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

9

10

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

11

**SEE ATTACHED SERVICE LIST**

12

The documents were served by the following means:

13

☒   (BY E-MAIL OR ELECTRONIC TRANSMISSION)  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

14

15

16

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

17

Executed on November 8, 2021, at Sacramento, California.

18

19

_____

20

Alicia Crespo

21

22

23

24

25

26

27

28



4811-8011-7502.1

1

DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

**SERVICE LIST**
**USA-Terry v Wasatch Property Mgmt**
Case No. 2:15-cv-00799-KJM-DB 2:15-cv-00799 KJM DB

| | |
|---|---|
| Andrew Wolff<br>Law Office of Andrew Wolff, PC<br>1956 Webster Street, Ste. 275<br>Oakland, CA 94612 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  510-834-3300<br>E-Mail:  andrew@awolfflaw.com |
| Jesse Newmark<br>CENTRO LEGAL DE LA RAZA<br>3022 International Blvd, Ste. 410<br>Oakland, CA 94601 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  (510) 437-1554 x115<br>Fax:  (510) 437-9164<br>Email:  jessenewmark@centrolegal.org<br>Email: malvarez@centrolegal.org |
| Laura L. Ho<br>Anne Bellows<br>Kristen A. Burzynski<br>Goldstein, Borgen, Dardarian & Ho<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612 | *Co-Counsel for Plaintiffs*<br><br>Tel.: 519-763-9800<br>Fax: 510-835-1417<br>Email: lho@gbdhlegal.com<br>Email: abellows@gbdhlegal.com<br>Email: sgrimes@gbdhlegal.com<br>Email: dvaldez@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com |
| Vincente Antonio Tennerelli<br>United States Attorney's Office<br>2500 Tulare Street, Suite 4401<br>Fresno, CA 93721 | *Attorney for Intervenor Plaintiff*<br>*United States of America*<br><br>Tel.: (559) 497-4080<br>Email: Vincente.Tennerelli@usdoj.gov<br>Email: joni.jones@usdoj.gov |
| Jocelyn D. Larkin<br>Lindsay Nako<br>The Impact Fund<br>2080 Addison Street, Suite 5<br>Berkeley, CA 94704 | *Attorney for Plaintiffs*<br><br>T: 510-845-3473 x.306<br>F: 510-845-3654<br>E: jlarkin@impactfund.org<br>E: lnako@impactfund.org |


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

# EXHIBIT 8

# G B D H

## Goldstein, Borgen, Dardarian & Ho

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

November 8, 2021

**Via E-Mail Only**

Joseph Salazar                                    Joe.Salazar@lewisbrisbois.com
Ryan Matthews                              Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

Re:    Meet and Confer – Insufficient Responses to Huskey Interrogatories 18 and 22

Dear Ryan:

Today we finally received Defendants' amended response to Huskey Interrogatory 18, which asks Defendants to identify properties that have made any additional charges mandatory for tenants. We previously wrote to you about this interrogatory on August 30, 2021. As you recall, that letter quoted and cited deposition testimony reflecting that some Wasatch properties have (or have in the past had) charges for media packages, parking, and washers & dryers that are mandatory for tenants at those properties. Bellows Aug. 30, 2021 Letter (citing Johnson Dep. at 187, 214-15, Jarvis 2017 Dep. 109:17-110:12; Tanforan Dep. 81:19-82:5; Tanforan Dep. 86:10-20; and Tanforan Dep. 92:15-23, 95:13-96:14).

The amended response to Huskey Interrogatory 18 served today only addresses media charges. It does not identify properties that have had mandatory parking or washer and dryer charges. Please supplement that response immediately to identify properties that have required parking or washer and dryer charges, or any other additional service charge, as a condition of leasing for any tenant.

Unfortunately, it appears we are still likely to have a dispute on this issue that we will need to address with the Court. On our call this morning, you indicated that November 17, 2021 was an available date for you for an informal discovery conference. Plaintiffs would like to meet and confer regarding these deficiencies after Jarom Johnson's deposition this Wednesday, and if we still have a dispute after that conversation, we will request a second informal discovery conference for November 17.

Sincerely,

Anne P. Bellows

843260.2

*Denika Terry, et al. v. Wasatch*                    -2-                    November 8, 2021

APB/gc

cc:     Andrew Wolff
           Brenna Wood-Fitzpatrick
           Jesse Newmark
           Henrissa Bassey
           Laura Ho
           Jocelyn Larkin
           Lindsay Nako

843260.2

# EXHIBIT 9

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 EASTERN DISTRICT OF CALIFORNIA
 3                      SACRAMENTO DIVISION
 4   _____
 5   UNITED STATES OF AMERICA,    )
     ex rel. DENIKA TERRY, ROY    )
 6   HUSKEY, III, and TAMERA      )
     LIVINGSTON, and each of      )
 7   then for themselves          )
     individually, and for all    )
 8   other persons similarly      )
     situated and on behalf of    )
 9   the UNITED STATES OF         )
     AMERICA,                     )
10                                )
        Plaintiffs/Realtors,      )
11                                )
     v.                           )No. 2:15-CV-00799-KJM-DB
12                                )
     WASATCH ADVANTAGE GROUP,     )
13   LLC, WASATCH PROPERTY        )
     MANAGEMENT, INC., WASATCH    )
14   POOL HOLDINGS, LLC,          )
     CHESAPEAKE COMMONS HOLDINGS,)
15   LLC, LOGAN PARK APARTMENTS, )
     LLC, LOGAN PARK APARTMENTS, )
16   LP, and DOES 1-30,           )
                                  )
17      Defendants.               )
     _____
18
                     VIDEOTAPED DEPOSITION OF
19                     JAROM JOHNSON, CPM,
                           VOLUME 2
20   _____
21                        9:30 a.m.
                      November 10, 2021
22                       Logan, Utah
23
                  YOM Full Service Reporting
24                     File #4842679
25          Reported By:  Judy Robinson, CCR #2171


                                           Page 1
```

```
 1              A P P E A R A N C E S
 2   FOR THE PLAINTIFFS/RELATORS:
 3   ANNE P. BELLOWS
     LAURA L. HO
 4   CARSON TURNER GOLDSTEIN BORGEN DARDARIAN & HO
     155 Grand Avenue, Suite #900
 5   Oakland, California 94612-3536
     510.763.9800
 6   abellows@gbdhlegal.com
     lho@gbdhlegal.com
 7
     FOR THE PLAINTIFFS/RELATORS:
 8
     JESSE NEWMARK
 9   CENTRO LEGAL DE LA RAZA
     3022 International Boulevard, Suite #40
10   Oakland, California 94601
     510.437.1863
11   jessenewmark@centrolegal.org
12   FOR THE DEFENDANTS:
13   RYAN MATTHEWS
     LEWIS BRISBOIS BISGAARD & SMITH, LLP
14   2020 West El Camino, Suite #700
     Sacramento, California 95833
15   916.646.8213
     ryan.matthews@lewisbrisbois.com
16
17   Also Present:  Richard Boling, Videographer
18
19
20
21
22
23
24
25
                                    Page  2
```

1       A    There's no -- there's no way to show a specific period

2   of time within the -- like, there's no way to show within the

3   system this was a period of mandated charges.   That's not how

4   it's structured in the system.

5       Q    And you're talking about the Yardi system?

6       A    Yes, yeah, correct.

7       Q    Okay.   Would the Yardi system be able to give more

8   approximate periods of time?

9       A    It would be able to show individuals in a role, you

10  know, individuals that were actively being charged or not being

11  charged.

12      Q    Okay.   Next, it reads, "Defendant's corporate policy is

13  and always has been, for Section 8 tenants, no additional

14  service charge is mandatory, and each one has always been

15  optional."

16          When it says that this has always been the policy, does

17  that mean since the beginning of Wasatch Property Management?

18      A    Yeah.   So, to my knowledge, yes, the Section 8

19  residents have -- have never been mandated to pay for additional

20  services.

21      Q    And when -- so when does that time period cover?

22      A    I've been with the company from -- since May of '07.

23      Q    So is this statement based on your knowledge based on

24  your time in the company?

25      A    Based on the information we were able to gather, yes.

                                                    Page 10

1      Q      Okay.  Is there any other information that you relied

2    on in making this statement?

3      A      No.  Just, like I say, discussion, internal.

4      Q      Who -- what -- what other discussion, besides your own

5    knowledge, did you rely on?

6      A      Just those that have access to the system to review the

7    system and have operated, so many of the individuals we've

8    spoken to the operators in -- in our company.

9      Q      Okay.  Can you list the names for me?

10     A      Janae Jarvis, Shawn Fetter, Daniel Lewis.

11     Q      And who's Mr. Lewis?

12     A      He's the controller.

13     Q      And when did he start working at Wasatch Property

14   Management?

15     A      I don't -- I don't know his specific start date.  We

16   could easily get that to you.

17     Q      Could you give me your best estimate?

18     A      I would say around 2009.

19     Q      Okay.  Has he held any -- well, you were controller for

20   a while, so he must have held other positions.  What other

21   positions has he held?

22     A      He was in our tax department, so he did tax filing, and

23   then he was in the accounting department of our management

24   company and then took my role when I vacated the --

25     Q      Has he ever worked in operations?

1      Q     Okay.  And then previously, we spoke a little -- a

2  little bit about the different kinds of contractual arrangements

3  that Wasatch enters into to provide media packages.  One of them

4  was a MDU or Multi-Dwelling Unit Agreement, if I am recalling

5  the term right.  Another one was a marketing agreement.  Are

6  both of those types agreements reflected on this list or just

7  the MDU?

8      A     Yeah.  This -- this would be specific to the MDU.

9      Q     And is that because under marketing agreements, Wasatch

10  does not directly charge the tenants for cable or media or

11  other --

12      A     Right.

13      Q     -- practices?

14      A     Yeah, correct.

15      Q     Okay.  Are there any other kind -- besides MDU, are

16  there any other kinds of arrangements that are reflected in this

17  list?

18      A     No.  This would be -- this would be media -- yeah,

19  media package, so it would be MDU.

20      Q     Okay.  So then if we look at the chart on Exhibit 38,

21  for all the properties listed except for the last one, the chart

22  shows that they are optional.  Can you tell me what "optional"

23  means here?

24      A     It's -- it's referring to the statement that's made

25  above in the policies that these have always been optional for

Page 13

1    housing tenants.

2        Q    But this does not reflect whether they're optional for

3    nonhousing tenants?

4        A    Correct.

5        Q    Okay.  So the column Optional is solely with regard to

6    Section 8 tenants?

7        A    Correct.

8        Q    And how did Wasatch determine that these charges were

9    optional for Section 8 tenants?

10       A    We -- in -- just in working with the administrative

11   agents of the program, so the -- the housing authorities over

12   the years, we've -- we've always had that be an option for both

13   tax credit and bond and housing tenants.  Anybody that's in the

14   federal program.

15       Q    Okay.  But sort of internally speaking, when you were

16   compiling this list, how did you determine -- or let me back up.

17   Do I -- am I understanding correctly that you were involved in

18   compiling this information?

19       A    I directed the compiling of this information, so...

20       Q    Okay.  So when Wasatch was compiling this information

21   as your directions, how did -- how did your team determine that

22   these charges were optional for Section 8 tenants as they were

23   applied at those properties?

24       A    What they did is just identified any location that has

25   a media package or an MDU at any of the properties that have had

                                                      Page 14

1    housing tenants, and our policy is that they are optional, have

2    been optional.  That's how it was identified in our policy.

3        Q    And directing this project, did you look at data from

4    defendant's Yardi database related to the rates of enrollment in

5    the media packages at different properties?

6        A    I did not.

7        Q    Would it surprise you that there are properties where

8    more than 90 percent of tenants are enrolled in a media package?

9        A    It would not surprise me, no.

10       Q    And why would that not surprise you?

11       A    Because internet is the lifeblood of our society.

12       Q    Does that also reflect that these charges were

13   mandatory at least for non-Section 8 tenants?

14       A    Yeah.  There are locations where they are mandatory for

15   non-Section 8, yes.

16       Q    Can you tell me which locations they -- for which

17   locations they are mandatory for non-Section 8 tenants?

18       A    On this list?

19       Q    Yes.

20       A    The ones I'm sure of are -- so the ones I believe that

21   are would be our market-rate properties, which is, like, Aztec

22   Springs, Burnett Canyon, Cimmaron, Devonshire, Balls at Hunter's

23   Point, Landing at Badger Creek, Lofts at 7800, Metropolitan

24   Place, then Palatio, Ranchwood, Rio Seko, River Point, and

25   Sam's?

1      A    I don't -- like I say, I don't recall the -- what the

2   communication was post, but yeah.  I'm not in any of the -- this

3   communication, my guess is that she could have, yes.

4   BY MS. BELLOWS:

5      Q    Okay.  Next, I've put Jarvis Exhibit 66 in your exhibit

6   share.  This is another email chain, the Bates for the first

7   page is WCDS300625, dated February 1st, 2016, and this is

8   another email sent by Katie Dao on that same morning to one of

9   the properties mentioned on -- in Mr. Tennerelli's letter,

10  correct?

11     A    Yes, Logan Park, yeah, uh-huh.

12     Q    And was Logan Park a tax credit property at the time?

13     A    Yes, yeah.

14     Q    Okay.  So the response is from Jackie Sue Moncada who

15  was a leasing director at Logan Park Apartments.  So is she a

16  Wasatch Property Management employee?

17     A    Yes, she was, uh-huh.

18     Q    And she says that renters insurance is required

19  correct?

20     A    It appears that way, yes.

21     Q    And there's no exceptions mentioned here, right?

22     A    Yeah.  I don't see any.

23     Q    Okay.  And Katie Dao likely shared this information

24  with you at the time, correct?

25     A    Yeah.  This is -- this renters insurance is never

                                                    Page 32

1    required for tax credit projects.

2        Q    Okay.  But Ms. Moncada, who's a leasing director, is

3    saying that it is?

4        A    That would be -- that would be in error because it's --

5    that's not the case.  Our policy is that it is always optional

6    for tax credit or housing program tenants.

7        Q    Do you contend that the leasing director did not know

8    which charges were mandatory at the property that she was

9    working at?

10           Are you -- are you suggesting that the leasing director

11   did not know which charges were required at the property that

12   she was working at?

13              MR. MATTHEWS:  Objection, calls for speculation.

14              Go ahead.

15       A    Based on what I'm looking at, yes, I would suggest

16   that.

17   BY MS. BELLOWS:

18       Q    And did someone who did not work at that property would

19   have better information about what charges were -- were required

20   of tenants at that property?

21              MR. MATTHEWS:  Objection, argumentative, overbroad,

22       incomplete hypothetical.

23       A    Yeah, having directed the program, yes.

24   BY MS. BELLOWS:

25       Q    Okay.  As the leasing director, she would have been

Page 33

```
 1                   C E R T I F I C A T E

 2

 3   STATE OF WASHINGTON )

                        )SS.

 4   COUNTY OF KING      )

 5

 6

 7          I, Judith A. Robinson, Certified Court Reporter and an

 8   officer of the Court under my commission as a Notary Public, in

 9   and for the State of Washington, do hereby certify that the

10   foregoing deposition was transcribed under my direction; that

11   the transcript of the deposition is a full, true and correct

12   transcript to the best of my ability; that I am neither attorney

13   for, nor a relative or employee of any of the parties to the

14   action or any attorney or Counsel employed by the parties

15   hereto, nor financially interested in its outcome.

16          IN WITNESS WHEREOF, I have hereunto set my hand

     and affixed my official seal this 23rd day of November,

17   2021.

18                         Judy Robinson

19

                           Judith A. Robinson, Notary Public

20                         in and for the State of Washington

                           residing at Seattle.

21                         My Commission expires November 4,

                           2024.

22                         CCR License #2171

23

24

25

                                                   Page 92
```

# EXHIBIT 10

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Thursday, November 11, 2021 1:16 PM |
| **To:** | Matthews, Ryan |
| **Cc:** | Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey |
| **Subject:** | 11/8 and 11/10 meet and confer calls |

Dear Ryan,

The email below confirms and follows up on our meet and confer calls this week on Monday, 11/8 and Wednesday, 11/10. I also include a couple items that we did not touch on this week, but which we have previously discussed, in order to make sure they are back on our agenda for our next call, which we planned for tomorrow after the informal discovery conference with Judge Barnes.

**Depositions.** You stated that Bradley Mishler was available on November 19. We served an amended deposition notice for that date this morning. Plaintiffs are continuing to review whether there are any additional depositions that we need to notice.

We agreed on the record to hold open Mr. Johnson's deposition pending a further email search for communications with Wasatch's attorneys related to Section 8 tenants and additional service charges, as addressed below.

We have our informal discovery conference regarding Mr. Raymond's deposition scheduled for tomorrow. We look forward to the issue being resolved.

**Renewed email search regarding mandatory charges.** On Monday, we discussed the need to conduct a renewed email search related to whether charges were mandatory at the properties. This email search will capture documents responsive to RFP 52. Defendants at that time agreed that such a further search was reasonable and would address a key issue in the case. Mr. Johnson's testimony yesterday has only reinforced the need for the search. We sent you our proposed search protocol on Monday, and requested a firm commitment to the production by tomorrow (11/12).

If we do not receive the commitment tomorrow, we will file a protective motion to compel noticing a hearing on December 3.

**Renewed email search for attorney communications.** Yesterday Jarom Johnson testified that Defendants substantively consulted David Scharlach and a Mr. Cullimore in Utah regarding how Section 8 rules apply to additional service charges, and he specifically mentioned that he believes Mr. Scharlach's communications were in writing. We have not received production of any emails from either of these attorneys.

Following Mr. Johnson's deposition, Defendants agreed to a further email search for emails with either of these two individuals during 2016. Please complete that search as soon as possible so that we can review any additional documents and schedule Mr. Johnson's further deposition before the discovery cut off.

**Huskey interrogatory responses.** Defendants served an amended response to Huskey Interrogatory 18 on Monday. We responded with a meet and confer letter the same day noting that the interrogatory response did not address other charges that deposition testimony reflect have been requirements of leasing at some Wasatch properties. (Bellows Nov. 8 letter.)

At the Johnson deposition yesterday, further insufficiencies came to light, including (1) the fact that according to Johnson the "Optional" column reflects policy towards Section 8 tenants, while the interrogatory asks about charges

1

that have been mandatory for any tenants, resulting in a completely misleading response;  (2) Johnson was able to name off the top of his head 16 properties that had mandatory media packages, but that information was not reflected in the interrogatory responses; and (3) Defendants have not conducted due diligence to determine which properties have mandatory parking charge.  As to the third point, Mr. Johnson indicated that they were unable to determine which properties had mandatory parking charges from the company's yardi database.  That is inadequate.  Defendants also have at their disposal the personnel who work at those properties who would be in a position to provide the information, and they have data from the yardi database that indicates rates of enrollments to help them narrow down the properties that require investigation.

For your reference, these are the properties that Johnson named in his deposition as requiring tenants to enroll in media charges:

> Aztec Spring
> Burnett
> Canyon Ridge
> Cimmaron
> Falls at Hunter's Point
> Glen Oaks
> Goldstone Place
> Heron Point
> Landing at Fancher Creek
> Lofts at 7800
> Metropolitan Place
> Palladio
> Ranchwood
> Rio Seco
> River Point
> The Sands

These should be included in the interrogatory response, along with any others for which the media package was required or mandatory for any tenants, and any properties for which there have been required parking charges, or any other mandatory charges.

We agreed yesterday to set an informal discovery conference with Judge Barnes on this issue, and her deputy subsequently set it for Wednesday at 2:30pm.  Our deadline for filing the joint statement is now Monday at 10am.  Plaintiffs will provide our potion of the joint statement no later than noon tomorrow.

*Training documents.*  Defendants indicated that they are continuing to review the training documents and hope to provide a production shortly.  Please do so as soon as possible.  Please also note that Defendants have not yet provided a written list of the documents they are withholding or the reason for withholding them.  We request that Defendants provide that as soon as possible.

We have discussed including this issue in our second informal discovery conference with the Court. If necessary, we will do so.

*Status re: representation of new Defendants.*  Defendants reported that the retainer agreements with the new Defendants are in the gears of Lewis Brisbois bureaucracy and that they hoped to have the answer filed this week.  Given the approaching deadline for service, we have initiated service efforts.  We are also reviewing whether to request an extension of the service deadline from the Court.

*Supplemental disclosures.*  Defendants still have not served supplemental Rule 26 disclosures, despite the Court deadline. Please serve those as soon as possible.

**Updated class list.**  Defendants have previously agreed to produce an updated class list that includes class members' tenant identification numbers so that we can connect them to the yardi data.  We have not yet received that.  Please provide it as soon as possible.

**Delinquency tracker.**  On Monday we discussed Plaintiffs' meet and confer letter requesting production of the delinquency tracker, and Defendants assented to the production and asked Plaintiffs to notify the joint expert.  I did so, and my understanding is that they are now working on it.

**Relevant documents from personnel files.**  Defendants have reviewed the personnel files and will be serving a verification that they do not contain any responsive documents.

**Stipulation in lieu of tenant files production.**  Plaintiffs described our plan to put together a stipulation collecting documents from the tenant files that were produced in 2017, and asked Defendants to supplement the stipulation with documents postdating 2017.  Defendants were agreeable to this proposal.  Defendants also indicated an interest in potentially broadening the stipulation to address other uncontested facts in the case.  We agreed that might be productive; however, for purposes of moving this along, we plan to provide a draft of the narrower stipulation early next week.

**Stipulation re: modifications to the class certification order.**  Defendants indicated they were reviewing the stipulation to modify the class certification order and hoped to authorize filing this week.  We still have not received that authorization, please let me know as soon as possible what the status is on that.

**Housekeeping issues.**  We sent a letter addressing outstanding housekeeping issues, which Defendants indicated they are addressing.  On our call, we also discussed that we are still missing a verification for the RFA responses served on July 19, 2021 (Defendants' Responses to Plaintiff Denika Terry's Request for Admissions, Set Two).

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

# EXHIBIT 11

1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
    JOSEPH A. SALAZAR JR., SB# 169551
2      E-Mail: Joe.Salazar@lewisbrisbois.com
    RYAN MATTHEWS, SB# 311674
3      E-Mail: Ryan.Matthews@lewisbrisbois.com
    2020 West El Camino Avenue, Suite 700
4  Sacramento, California 95833
    Telephone: 916.564.5400
5  Facsimile: 916.564.5444

6  Attorneys for Wasatch Advantage Group, LLC;
    Wasatch Property Management, Inc.; Wasatch
7  Pool Holdings, LLC, Chesapeake Commons
    Holdings, LLC; Logan Park Apartments, LLC;
8  Logan Park Apartments, LP

9

10              **UNITED STATES DISTRICT COURT**

11            **EASTERN DISTRICT OF CALIFORNIA**

12                **SACRAMENTO DIVISION**

13

14  UNITED STATES OF AMERICA, ex rel.          CASE NO. 2:15-cv-00799-KJM-DB
    DENIKA TERRY and ROY HUSKEY III,
15  and each of them for themselves individually,   **DEFENDANTS FURTHER AMENDED**
    and for all other persons similarly situated and   **RESPONSES TO PLAINTIFF ROY**
16  on behalf of the UNITED STATES OF          **HUSKEY III'S INTERROGATORIES,**
    AMERICA,                                    **SET FIVE**
17
                    Plaintiffs/Relators,       The Hon. Kimberly J. Mueller
18
            vs.                                 Trial Date:       None Set
19
    WASATCH ADVANTAGE GROUP, LLC,
20  WASATCH PROPERTY MANAGEMENT,
    INC., WASATCH POOL HOLDINGS, LLC,
21  CHESAPEAKE COMMONS HOLDINGS,
    LLC, LOGAN PARK APARTMENTS, LLC;
22  LOGAN PARK APARTMENTS, LP,

23                  Defendants.

24

25  PROPOUNDING PARTY:       Plaintiff, Roy Huskey, III

26  RESPONDING PARTY:        Defendants, Wasatch Advantage Group, LLC; Wasatch Property

27                            Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake

28                            Commons Holdings, LLC; Logan Park Apartments, LLC; Logan

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1                              Park Apartments, LP

2 SET NO.:                      FIVE

3 **INTERROGATORY NO. 18**:

4        Please identify (by name, address, city, state, applicable time period, and relevant charges)

5 any SUBJECT PROPERTY that, for any period of time since April 14, 2005, made any

6 ADDITIONAL SERVICE CHARGE mandatory for any tenants.

7 **FURTHER AMENDED RESPONSE TO INTERROGATORY NO. 18**:

8        Defendants respond as follows: After diligent effort and inquiry, Defendants are unable to

9 verify time periods in which any Additional Service Charge was mandatory .This includes, but is

10 not limited to, charges for washers and dryers, covered parking, media packages, and renter's

11 insurance. Defendants' corporate policy is and always has been that for Section 8 tenants, no

12 Additional Service Charge is mandatory, and each and every one has always been optional. In

13 light of prior testimony regarding bulk media packages, Defendants list below each property that

14 Wasatch Property Management has managed in the times relevant to this case that has ever had a

15 media package of any kind, and the date it was added.

| PROPCODE | PROPERTY | MEDIA PACKAGE | DATE ADDED | |
|---|---|---|---|---|
| 6lt | 600 Lofts | Y | 04/2017 | |
| art | Arcadia | Y | 05/2018 | |
| art2 | Arcadia II | Y | 01/2021 | |
| az | Aztec Springs Apartments | Y | 09/2020 | |
| bu | Burnett Station Apartments | Y | 01/2020 | |
| cn | Canyon Ridge Apartments | Y | 09/2020 | |
| cm | Cimarron Place Apartments | Y | 09/2020 | |
| dw | Devonshire Court West | Y | 03/2019 | |
| enclave | Enclave at 1400 South | Y | 07/2015 | |
| falls | Falls at Hunters Pointe | Y | 09/2018 | |
| glt | Garden Lofts | Y | 11/2019 | |
| go | Glen Oaks Apartments | Y | 09/2020 | |
| gp | Goldstone Place Apartments | Y | 03/2000 | |

DEFENDANTS FURTHER AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S
INTERROGATORIES, SET FIVE

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| hp | Heron Pointe Apartments | Y | 08/1998 | |
| fc | Landing at Fancher Creek | Y | 04/2003 | |
| lofts | Lofts at 7800 | Y | 08/2014 | |
| mp | Metropolitan Place Apartments | Y | 11/2019 | |
| p1 | Palladio Apartments-Phase 1 | Y | 10/2002 | |
| p3 | Palladio Apartments-Phase 1 | Y | 10/2002 | |
| rw | Ranchwood Apartments | Y | 09/2020 | |
| rs | Rio Seco Apartments | Y | 09/2020 | |
| rp | River Point Apartments | Y | 09/2020 | |
| sa | Sands Apartments | Y | 09/2020 | |
| rvt | The Reserve at View 78 | Y | 09/2019 | |
| vet | Veranda | Y | 01/2018 | |
| vit | Village Grove Apartments | Y | 02/2015 | Internet Provided as Free Service for all residents |

**INTERROGATORY NO. 20:**

Please identify (by author, date, title, and bates number) any and all DOCUMENTS reflecting a company-wide policy maintained by DEFENDANTS that tenants participating in SECTION 8 were exempt from otherwise mandatory ADDITIONAL SERVICE CHARGES.

**RESPONSE TO INTERROGATORY NO. 20:**

Defendants respond that they are unable to identify any such documents.

DATED: November 17, 2021          LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
RYAN MATTHEWS
Attorneys for Wasatch Advantage Group, LLC;
Wasatch Property Management, Inc.; Wasatch
Pool Holdings, LLC, Chesapeake Commons
Holdings, LLC; Logan Park Apartments, LLC;
Logan Park Apartments, LP

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4884-2500-4804.1                                  3                    Case No. 2:15-cv-00799-KJM-DB
DEFENDANTS FURTHER AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S
INTERROGATORIES, SET FIVE

1                               **VERIFICATION**

2   **STATE OF CALIFORNIA, COUNTY OF SACRAMENTO**

3        I have read the foregoing DEFENDANTS AMENDED RESPONSES TO PLAINTIFF
ROY HUSKEY III'S INTERROGATORIES, SET FIVE and know its contents.

4

☐     I am a party to this action.  The matters stated in the foregoing document are true of my
5 own knowledge except as to those matters which are stated on information and belief, and as to
those matters I believe them to be true.

6

☒     I am Executive Vice President of Wasatch Property Management, Inc., a party to this
7 action, and am authorized to make this verification for and on its behalf, and I make this
verification for that reason.

8

        ☒     I am informed and believe and on that ground allege that the matters stated in the
9                  foregoing document are true.

10         ☐     The matters stated in the foregoing document are true of my own knowledge except
                 as to those matters which are stated on information and belief, and as to those
11                  matters I believe them to be true.

12 ☐     I am one of the attorneys for Wasatch Property Management, Inc., a party to this action.
Such party is absent from the county where such attorneys have their offices, and I make this
13 verification for and on behalf of that party for that reason.  I am informed and believe and on that
ground allege that the matters stated in the foregoing document are true.

14

       I declare under penalty of perjury under the laws of the United States of America and the
15 State of California that the foregoing is true and correct.

16        Executed on November 17, 2021, at Logan, Utah.

17

18

  Jarom Johnson
19 Print Name of Signatory                         Signature

20

21

22

23

24

25

26

27

28

DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET
FIVE

LEWIS
BRISBOIS

1

## FEDERAL COURT PROOF OF SERVICE

2

USA-Terry v Wasatch Property Mgmt
2:15-cv-00799 KJM DB

3

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

4

5   At the time of service, I was over 18 years of age and not a party to the action.  My
business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833.  I am
employed in the office of a member of the bar of this Court at whose direction the service was

6   made.

7   On November 17, 2021, I served the following document(s):

8   -   DEFENDANTS FURTHER AMENDED RESPONSES TO PLAINTIFF ROY
HUSKEY III'S INTERROGATORIES, SET FIVE

9

10   I served the documents on the following persons at the following addresses (including fax
numbers and e-mail addresses, if applicable):

11   **SEE ATTACHED SERVICE LIST**

12   The documents were served by the following means:

13   ☒   (BY E-MAIL OR ELECTRONIC TRANSMISSION)  Based on a court order or an
agreement of the parties to accept service by e-mail or electronic transmission, I caused the

14   documents to be sent to the persons at the e-mail addresses listed above.  I did not receive,
within a reasonable time after the transmission, any electronic message or other indication

15   that the transmission was unsuccessful.

16   I declare under penalty of perjury under the laws of the United States of America and the
State of California that the foregoing is true and correct.

17

Executed on November 17, 2021, at Sacramento, California.

18

19

20   Alicia Crespo

21

22

23

24

25

26

27

28



1                 Case No. 2:15-cv-00799-KJM-DB

DEFENDANTS FURTHER AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S
INTERROGATORIES, SET FIVE

**SERVICE LIST**
**USA-Terry v Wasatch Property Mgmt**
**2:15-cv-00799 KJM DB**

| | |
|---|---|
| Andrew Wolff<br>Law Office of Andrew Wolff, PC<br>1956 Webster Street, Ste. 275<br>Oakland, CA 94612 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  510-834-3300<br>E-Mail:  andrew@awolfflaw.com |
| Jesse Newmark<br>CENTRO LEGAL DE LA RAZA<br>3022 International Blvd, Ste. 410<br>Oakland, CA 94601 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  (510) 437-1554 x115<br>Fax:  (510) 437-9164<br>Email:  jessenewmark@centrolegal.org<br>Email: malvarez@centrolegal.org |
| Laura L. Ho<br>Anne Bellows<br>Kristen A. Burzynski<br>Goldstein, Borgen, Dardarian & Ho<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612 | *Co-Counsel for Plaintiffs*<br><br>Tel.: 519-763-9800<br>Fax: 510-835-1417<br>Email: lho@gbdhlegal.com<br>Email: abellows@gbdhlegal.com<br>Email: sgrimes@gbdhlegal.com<br>Email: dvaldez@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com |
| Vincente Antonio Tennerelli<br>United States Attorney's Office<br>2500 Tulare Street, Suite 4401<br>Fresno, CA 93721 | *Attorney for Intervenor Plaintiff*<br>*United States of America*<br><br>Tel.: (559) 497-4080<br>Email: Vincente.Tennerelli@usdoj.gov<br>Email: joni.jones@usdoj.gov |
| Jocelyn D. Larkin<br>Lindsay Nako<br>The Impact Fund<br>2080 Addison Street, Suite 5<br>Berkeley, CA 94704 | *Attorney for Plaintiffs*<br><br>T: 510-845-3473 x.306<br>F: 510-845-3654<br>E: jlarkin@impactfund.org<br>E: lnako@impactfund.org |


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANTS FURTHER AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S
INTERROGATORIES, SET FIVE

# EXHIBIT 12

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Wednesday, November 17, 2021 3:33 PM |
| **To:** | Matthews, Ryan; Alec.Rishwain@lewisbrisbois.com |
| **Subject:** | RE: [EXT] Re: Terry - Huskey ROGs 18 and 20 - Meet and Confer |

Alec, it was nice to meet you on the call today.  Below is the email from Ryan that I mentioned.

Ryan, I'm sure you'll be getting a debrief from Alec on the informal discovery conference.  One thing I expressed on the call is that I'm worried about timeline.  What is your availability tomorrow to discuss the timeline, as well as the other outstanding discovery issues that we have?

I am available if need be after hours.

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Sent:** Wednesday, November 17, 2021 12:19 PM
**To:** Anne Bellows <abellows@gbdhlegal.com>
**Subject:** Re: [EXT] Re: Terry - Huskey ROGs 18 and 20 - Meet and Confer

I'll work on that. Shouldn't be a difficult list to get.


On Nov 17, 2021, at 8:50 AM, Anne Bellows <abellows@gbdhlegal.com> wrote:


**Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.


Hi Ryan,

I think we should go ahead with the informal discovery conference as this response still does not identify any properties where particular charges have been mandatory.

Thanks,
Anne

Sent from my mobile device. Please excuse brevity and typos.

---

**From:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Sent:** Wednesday, November 17, 2021 6:42:30 AM
**To:** Anne Bellows <abellows@gbdhlegal.com>
**Subject:** Terry - Huskey ROGs 18 and 20 - Meet and Confer

Anne,

As I said last week, I'm attaching proposed amended responses for these interrogatories. These should solve the problems you identified. Assuming you're satisfied, I expect to have these verified and served either later today or first thing tomorrow. I'm in court all day today, but we'll get somebody to attend the IDC if you decide it still needs to go forward.

Thanks,

Ryan

<Logo_e6253148-26a1-47a9-b861-6ac0ff0bc3c4.png>

**Ryan Matthews**
**Attorney**
Ryan.Matthews@lewisbrisbois.com

**T: 916.646.8213  F: 916.564.5444**

2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

# EXHIBIT 13

1   **LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH A. SALAZAR JR., SB# 169551
2     E-Mail: Joe.Salazar@lewisbrisbois.com
RYAN MATTHEWS, SB# 311674
3     E-Mail: Ryan.Matthews@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
4   Sacramento, California 95833
Telephone: 916.564.5400
5   Facsimile: 916.564.5444

6   Attorneys for Wasatch Advantage Group, LLC;
Wasatch Property Management, Inc.; Wasatch
7   Pool Holdings, LLC, Chesapeake Commons
Holdings, LLC; Logan Park Apartments, LLC;
8   Logan Park Apartments, LP

9

10                    **UNITED STATES DISTRICT COURT**

11                 **EASTERN DISTRICT OF CALIFORNIA**

12                      **SACRAMENTO DIVISION**

13

14   UNITED STATES OF AMERICA, ex rel.          CASE NO. 2:15-cv-00799-KJM-DB
DENIKA TERRY and ROY HUSKEY III,
15   and each of them for themselves individually,   **DEFENDANTS' RESPONSE TO**
and for all other persons similarly situated and   **PLAINTIFF DENIKA TERRY'S**
16   on behalf of the UNITED STATES OF           **REQUEST FOR PRODUCTION OF**
AMERICA,                                        **DOCUMENTS, SET TWO**
17
              Plaintiffs/Relators,             The Hon. Kimberly J. Mueller
18
         vs.                                    Trial Date:      None Set
19
WASATCH ADVANTAGE GROUP, LLC,
20   WASATCH PROPERTY MANAGEMENT,
INC., WASATCH POOL HOLDINGS, LLC,
21   CHESAPEAKE COMMONS HOLDINGS,
LLC, LOGAN PARK APARTMENTS, LLC;
22   LOGAN PARK APARTMENTS, LP,

23              Defendants.

24

25   PROPOUNDING PARTY:        Plaintiff, DENIKA TERRY

26   RESPONDING PARTY:         Defendants, WASATCH ADVANTAGE GROUP, LLC,

27                             WASATCH PROPERTY MANAGEMENT, INC., WASATCH

28                             POOL HOLDINGS, LLC, CHESAPEAKE COMMONS

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1                            HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC,

2                            LOGAN PARK APARTMENTS, LP

3 SET NO.:                    TWO

4 **REQUEST FOR PRODUCTION NO. 27:**

5        All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees

6 regarding the SECTION 8 program at any time since April 2005.

7 **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

8        After diligent search and reasonable inquiry, Defendants are not in possession of any

9 responsive documents. Discovery is ongoing, and Defendants reserve the right to supplement this

10 response if any responsive documents are discovered.

11 **REQUEST FOR PRODUCTION NO. 28:**

12        All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees

13 regarding leases and the leasing process at any time since April 2005.

14 **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

15        Defendant objects to the instant request as being overbroad, unduly burdensome, and

16 calling for trade secrets. Defendants are willing to meet and confer with respect to the specific

17 trainings requested.

18 **REQUEST FOR PRODUCTION NO. 29:**

19        All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees

20 regarding ADDITIONAL SERVICE AGREEMENTS and ADDITIONAL SERVICE CHARGES

21 at any time since April 2005.

22 **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

23        Defendant objects to the instant request on the grounds that it is overbroad and unduly

24 burdensome. Without waiving that objection, Defendant responds that after diligent search and

25 reasonable inquiry, Defendants are not in possession of any responsive documents. Discovery is

26 ongoing, and Defendants reserve the right to supplement this response if any responsive

27 documents are discovered.t has no responsive documents in its possession.

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  **REQUEST FOR PRODUCTION NO. 30:**

2       All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees

3  regarding notices to tenants based on the non-payment of rent of any other charge at any time

4  since April 2005.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

6       Defendant objects to this request to the extent it calls for trade secret information protected

7  by a Non-Disclosure Agreement, and on the grounds that there is no reasonable need for the

8  protected information requested.

9  **REQUEST FOR PRODUCTION NO. 31:**

10       All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees

11  regarding eviction actions or unlawful detainer actions based on the non-payment of rent or any

12  other charge at any time since April 2005.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

14       Defendant objects to this request on the grounds that it is overbroad, unduly burdensome,

15  and calls for trade secret information. Further, it is not reasonably calculated to lead to the

16  discovery of admissible evidence.

17  **REQUEST FOR PRODUCTION NO. 32:**

18       All DOCUMENTS concerning or reflecting DEFENDANTS' policies, procedures, or

19  practices in effect at any time since April 2005 related to the " Pay Order" applicable to all

20  payments made by a tenant, including any documents related to Exhibit 3 to the Janae Jarvis

21  Deposition conducted on August 10, 2017 or the Pay Sequence exceptions referenced on page 2 of

22  the exhibit.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

24       Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome,

25  calls for trade secret information protected by a Non-Disclosure Agreement, and on the grounds

26  that there is no reasonable need for the protected information requested.

27  **REQUEST FOR PRODUCTION NO. 33:**

28       All DOCUMENTS concerning or reflecting DEFENDANTS' policies, procedures, or

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  practices in effect at any time since April 2005 related to collecting past due ADDITIONAL

2  SERVICE CHARGES.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

4      After diligent search and reasonable inquiry, Defendants are not in possession of any

5  responsive documents. Discovery is ongoing, and Defendants reserve the right to supplement this

6  response if any responsive documents are discovered.

7  **REQUEST FOR PRODUCTION NO. 34:**

8      A copy of any non-disclosure agreement that applies to DEFENDANTS' Yardi property

9  management database.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

11      Defendants will produce the Non-Disclosure Agreement.

12  **REQUEST FOR PRODUCTION NO. 35:**

13      DOCUMENTS sufficient to describe the tables, fields and codes contained in

14  DEFENDANTS' Yardi property management database related to leases, Housing Assistance

15  Payment contracts, charges, payments, balances, eviction notices, and eviction actions, including a

16  schema of the database and any relevant data dictionaries or look-up tablets.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

18      Defendant objects to this Request on the grounds that it is not reasonably calculated to lead

19  to the discovery of admissible evidence, that it is overbroad, that it calls for trade secrets protected

20  by a Non-Disclosure Agreement, and it requests the same information that was the subject of

21  Plaintiffs' Motion to Compel, which was denied with respect to this information by the Court.

22  **REQUEST FOR PRODUCTION NO. 36:**

23      All data or electronic records contained in DEFENDANTS' Yardi property management

24  database related to Housing Assistance Payment Contracts for all of Defendants' Section 8 tenants

25  who, since April 2005, have paid Additional Service Charges.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

27      Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome,

28  and is duplicative of information that Defendants have already agreed to produce pursuant to


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Plaintiffs' Requests for Production, Set Two. Defendants' assertion of undue burden is

2  substantiated by the Declaration of Mike Christiansen, submitted in Opposition to Plaintiffs'

3  Motion to Compel, which was denied as to this information.

4  **REQUEST FOR PRODUCTION NO. 37:**

5          All data or electronic records contained in DEFENDANTS' Yardi property management

6  database related to leases for all of Defendants' Section 8 tenants who, since April 2005, have paid

7  Additional Service Charges.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

9          Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome,

10  and is duplicative of information that Defendants have already agreed to produce pursuant to

11  Plaintiffs' Requests for Production, Set Two. Defendants' assertion of undue burden is

12  substantiated by the Declaration of Mike Christiansen, submitted in Opposition to Plaintiffs'

13  Motion to Compel, which was denied as to this information.

14  **REQUEST FOR PRODUCTION NO. 38:**

15          All data or electronic records contained in DEFENDANTS' Yardi property management

16  database related to resident ledgers for all of Defendants' Section 8 tenants who, since April 2005,

17  have paid Additional Service Charges, including charge codes, balances, and the application of

18  payments to charges.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

20          Defendants have already agreed to produce tenant ledgers. Defendant objects to the

21  production of charge codes, which are specific to the Yardi database and are trade secrets

22  protected by a Non-Disclosure Agreement. The Request for these charge codes is not reasonably

23  calculated to lead to the discovery of admissible evidence. Defendant further object to the request

24  to the extent it seeks information relating to the application of payments to charges. Such

25  information is not related to resident ledgers, and Defendant objects to their production as being

26  unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

27  Defendants' assertion of undue burden is substantiated by the Declaration of Mike Christiansen,

28  submitted in Opposition to Plaintiffs' Motion to Compel, which was denied as to this information.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   **REQUEST FOR PRODUCTION NO. 39:**

2       All data or electronic records contained in DEFENDANTS' Yardi property management

3   database related to notices to tenants based on the non-payment of rent or any other charge for all

4   of Defendants' Section 8 tenants who, since April 2005, have paid Additional Service Charges.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

6       Defendants object to this request on the grounds that it is unduly burdensome, and requests

7   documents that have already been produced. Defendants further object on the grounds that this

8   request is not reasonably calculated to lead to the discovery of admissible evidence.

9   **REQUEST FOR PRODUCTION NO. 40:**

10      All data or electronic records contained in DEFENDANTS' Yardi property management

11  data base related to communications with any of Defendants' Section 8 tenants who, since April

12  2005, have paid Additional Service Charges.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

14      Defendants object to this request on the grounds that it is overbroad, unduly burdensome,

15  and not reasonably calculated to lead to the discovery of admissible evidence. The request seeks

16  communications over 15 years with thousands of tenants, with no limitation as to the subject

17  matter of those communications.

18  **REQUEST FOR PRODUCTION NO. 41:**

19      All data or electronic records contained in DEFENDANTS' Yardi property management

20  database related to communications with any of Defendants' Section 8 tenants who, since April

21  2005, have paid Additional Service Charges.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

23      Defendants object to this request on the grounds that it is overbroad, unduly burdensome,

24  and not reasonably calculated to lead to the discovery of admissible evidence. The request seeks

25  communications over 15 years with thousands of tenants, with no limitation as to the subject

26  matter of those communications. Defendant further objects to this request as duplicative to

27  Request 41.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANTS' RESPONSE TO PLAINTIFF DENIKA TERRY'S REQUEST FOR PRODUCTION OF
DOCUMENTS, SET TWO

1 **REQUEST FOR PRODUCTION NO. 42:**

2        All DOCUMENTS concerning or reflecting COMMUNICATIONS between any of

3 DEFENDANTS' employees or personnel and any local housing authority at any time since

4 DEFENDANTS began using ADDITIONAL SERVICE AGREEMENTS.

5 **RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

6        Defendant objects to this request as being overbroad and unduly burdensome, and not

7 being reasonably calculated to lead to the discovery of admissible evidence. The request makes no

8 effort to particularize the subject matter of the communications it seeks.

9 **REQUEST FOR PRODUCTION NO. 43:**

10        All DOCUMENTS concerning or reflecting COMMUNICATIONS with any official or

11 employee of the federal government related DEFENDANTS' practice of charging ADDITIONAL

12 SERVICE CHARGES to SECTION 8 tenants.

13 **RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

14        Defendants object to this request on the grounds that it calls for documents protected by

15 the attorney-client and work product privileges. Subject to and without waiving that objection,

16 Defendants will produce all responsive documents in their possession. Defendants note that such

17 production will include only those communications with employees of federal agencies. Such a

18 production has no bearing on any future legal arguments relating to who may constitute an official

19 of the United States Government in the context of delegation of authority by federal agencies.

20 **REQUEST FOR PRODUCTION NO. 44:**

21        All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

22 DEFENDANTS' CORPORATE EMPLOYEES related to the leasing or lease renewal process for

23 SECTION 8 tenants.

24 **RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

25        Defendant objects to this request as being overbroad, unduly burdensome, and vague and

26 ambiguous as to its use of "the leasing or lease renewal process." Any of Defendants' conduct is

27 inherently related to the leasing process. Further, these communications are likely to be

28 encompassed by the e-mail production in response to Plaintiffs' prior Requests for Production.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 **REQUEST FOR PRODUCTION NO. 45:**

2      All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

3 DEFENDANTS' CORPORATE EMPLOYEES related to the application of ADDITIONAL

4 SERVICE AGREEMENTS or ADDITIONAL SERVICE CHARGES to SECTION 8 tenants.

5 **RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

6      Defendant objects to this request as being overbroad and unduly burdensome. Defendant

7 also objects to the extent this request seeks documents protected by the Attorney-Client and

8 Attorney Work Product privileges. Further, these communications are likely to be encompassed by

9 the e-mail production in response to Plaintiffs' prior Requests for Production. Defendants will

10 provide a privilege log as appropriate following review and production of those communications.

11 **REQUEST FOR PRODUCTION NO. 46:**

12      All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

13 DEFENDANTS' CORPORATE EMPLOYEES related to any evaluation or analysis of

14 DEFENDANTS' use of ADDITIONAL SERVICE AGREEMENTS or ADDITIONAL SERVICE

15 CHARGES.

16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

17      Defendant objects to this request to the extent it seeks documents protected by the

18 Attorney-Client and Attorney Work Product privileges.  Further, these communications are likely

19 to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for

20 Production. Defendants will provide a privilege log as appropriate following review and

21 production of those communications.

22 **REQUEST FOR PRODUCTION NO. 47:**

23      All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

24 DEFENDANTS' CORPORATE EMPLOYEES related to benefits to DEFENDANTS from

25 ADDITIONAL SERVICE AGREEMENTS or ADDITIONAL SERVICE CHARGES, including

26 but not limited to revenue, profit, marketing, or legal benefits.

27 **RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

28      Defendant objects to this request to the extent it seeks documents protected by the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   Attorney-Client and Attorney Work Product privileges. Further, these communications are likely

2   to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for

3   Production. Defendants will provide a privilege log as appropriate following review and

4   production of those communications.

5   **REQUEST FOR PRODUCTION NO. 48:**

6         All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

7   DEFENDANTS' CORPORATE EMPLOYEES relating to pricing, marketing, or sales connected

8   to ADDITIONAL SERVICE AGREEMENTS or ADDITIONAL SERVICE CHARGES,

9   including but not limited to policies, strategies, or practices for obtaining tenants' agreement to

10  ADDITIONAL SERVICE CHARGES.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

12        Defendant objects to this request to the extent it seeks documents protected by the

13  Attorney-Client and Attorney Work Product privileges. Further, these communications are likely

14  to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for

15  Production. Defendants will provide a privilege log as appropriate following review and

16  production of those communications.

17  **REQUEST FOR PRODUCTION NO. 49:**

18        All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

19  DEFENDANTS' CORPORATE EMPLOYEES related to ADDITIONAL SERVICE CHARGES

20  OR ADDITIONAL SERVICE AGREEMENTS and notices or eviction actions based on

21  nonpayment of rent or other charges.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

23        Defendant objects to this request to the extent it seeks documents protected by the

24  Attorney-Client and Attorney Work Product privileges. Further, these communications are likely

25  to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for

26  Production. Defendants will provide a privilege log as appropriate following review and

27  production of those communications.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4815-2268-4097.1
9
Case No. 2:15-cv-00799-KJM-DB
DEFENDANTS' RESPONSE TO PLAINTIFF DENIKA TERRY'S REQUEST FOR PRODUCTION OF
DOCUMENTS, SET TWO

1  **REQUEST FOR PRODUCTION NO. 50:**

2      All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

3  DEFENDANTS' CORPORATE EMPLOYEES regarding DEFENDANTS' policies, procedures,

4  or practices related to collecting past due ADDITIONAL SERVICE CHARGES.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

6      Defendant objects to this request to the extent it seeks documents protected by the

7  Attorney-Client and Attorney Work Product privileges. Further, these communications are likely

8  to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for

9  Production. Defendants will provide a privilege log as appropriate following review and

10 production of those communications.

11 **REQUEST FOR PRODUCTION NO. 51:**

12      All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

13 DEFENDANTS' PROPERTY-LEVEL EMPLOYEES related to the application of

14 ADDITIONAL SERVICE AGREEMENTS or ADDITIONAL SERVICE CHARGES to

15 SECTION 8 tenants.

16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

17      Defendant objects to this request to the extent it seeks documents protected by the

18 Attorney-Client and Attorney Work Product privileges. Further, these communications are likely

19 to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for

20 Production. Defendants will provide a privilege log as appropriate following review and

21 production of those communications.

22 **REQUEST FOR PRODUCTION NO. 52:**

23      All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

24 DEFENDANTS' PROPERTY-LEVEL EMPLOYEES regarding whether and to what extent

25 ADDITIONAL SERVICE CHARGES are mandatory or optional.

26 **RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

27      Defendant objects to this request to the extent it seeks documents protected by the

28 Attorney-Client and Attorney Work Product privileges. Further, these communications are likely

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for

2  Production. Defendants will provide a privilege log as appropriate following review and

3  production of those communications.

4

5  DATED:  July 16, 2020                   LEWIS BRISBOIS BISGAARD & SMITH LLP

6

7                                          By: _____

8                                               RYAN MATTHEWS
                                                Attorneys for Wasatch Advantage Group, LLC;
9                                               Wasatch Property Management, Inc.; Wasatch
                                                Pool Holdings, LLC, Chesapeake Commons
10                                              Holdings, LLC; Logan Park Apartments, LLC;
                                                Logan Park Apartments, LP
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

**VERIFICATION**

2

**STATE OF CALIFORNIA, COUNTY OF SACRAMENTO**

3

     I have read the foregoing DEFENDANTS' RESPONSE TO PLAINTIFF DENIKA
TERRY'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO and know its

4

contents.

5

☐     I am a party to this action.  The matters stated in the foregoing document are true of my
own knowledge except as to those matters which are stated on information and belief, and as to

6

those matters I believe them to be true.

7

☒     I am Chief Operating Officer of Wasatch Property Management, Inc., a party to this action,
and am authorized to make this verification for and on its behalf, and I make this verification for

8

that reason.

9

     ☒     I am informed and believe and on that ground allege that the matters stated in the
           foregoing document are true.

10

     ☐     The matters stated in the foregoing document are true of my own knowledge except

11

           as to those matters which are stated on information and belief, and as to those
           matters I believe them to be true.

12

☐     I am one of the attorneys for Wasatch Property Management, Inc., a party to this action.

13

Such party is absent from the county where such attorneys have their offices, and I make this
verification for and on behalf of that party for that reason.  I am informed and believe and on that

14

ground allege that the matters stated in the foregoing document are true.

15

     I declare under penalty of perjury under the laws of the United States and the State of
California that the foregoing is true and correct.

16

17

     Executed on July 15, 2020, at Salt Lake City, Utah.

18

19

  Jarom Johnson_____

20

Print Name of Signatory                        Signature

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS

# FEDERAL COURT PROOF OF SERVICE

USA-Terry v Wasatch Property Mgmt
2:15-cv-00799 KJM DAD

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

At the time of service, I was over 18 years of age and not a party to the action.  My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On July 16, 2020, I served the following document(s):

- DEFENDANTS' RESPONSE TO PLAINTIFF DENIKA TERRY'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒ (BY E-MAIL OR ELECTRONIC TRANSMISSION)  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on July 16, 2020, at Sacramento, California.

_____
Alicia Rios



**SERVICE LIST**
**USA-Terry v Wasatch Property Mgmt**
**2:15-cv-00799 KJM DAD**

| | | |
|---|---|---|
| 1 | | |
| 2 | | |

3  Andrew Wolff
   Law Office of Andrew Wolff, PC
4  1956 Webster Street, Ste. 275
   Oakland, CA 94612
5

*Attorney for Plaintiffs*
*Denika Terry and Roy Huskey, III*

Tel.:  510-834-3300
E-Mail:  Andrew@awolfflaw.com

6  Jesse Newmark
   CENTRO LEGAL DE LA RAZA
7  3022 International Blvd, Ste. 410
   Oakland, CA 94601
8
9

*Attorney for Plaintiffs*
*Denika Terry and Roy Huskey, III*

Tel.:  (510) 437-1554 x115
Fax:  (510) 437-9164
Email:  jessenewmark@centrolegal.org

   Laura L. Ho
10 Anne Bellows
   Beth Holtzman
11 Goldstein, Borgen, Dardarian & Ho
   300 Lakeside Drive, Suite 1000
12 Oakland, CA 94612
13

*Co-Counsel for Plaintiffs*

Tel.: 519-763-9800
Fax: 510-835-1417
Email: lho@gbdhlegal.com
Email: abellows@gbdhlegal.com
Email: bholtzman @gbdhlegal.com

   Vincente Antonio Tennerelli
14 United States Attorney's Office
   2500 Tulare Street, Suite 4401
15 Fresno, CA 93721
16

*Attorney for Intervenor Plaintiff*
*United States of America*

Tel.:  (559) 497-4080
Email:  Vincente.Tennerelli@usdoj.gov

17

18

19

20

21

22

23

24

25

26

27

28



Case No. 2:15-cv-00799-KJM-DB

DEFENDANTS' RESPONSE TO PLAINTIFF DENIKA TERRY'S REQUEST FOR PRODUCTION OF
DOCUMENTS, SET TWO

# EXHIBIT 14



**G | B | D | H**

**Goldstein, Borgen, Dardarian & Ho**

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

July 28, 2020

<u>**VIA EMAIL ONLY**</u>

Joseph Salazar                                               Joe.Salazar@lewisbrisbois.com
Ryan Matthews                                         Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

Re:     Defendants' Responses to Plaintiff Denika Terry's Second Set of RFPs

Dear Joe and Ryan:

We write to request the opportunity to meet and confer with you by phone regarding Defendants' Responses to Terry's Second Set of Requests for Production.  Below, we address the cross-cutting issue of Defendants' failure to identify a timeline by which it will produce the responsive documents, their failure to state whether documents are being withheld, and their improper trade secret objections.  Then, we address the training documents (RFPs 27 through 40), the requests related to Defendants' Yardi system (RFPs 34 through 41), and the requests related to communications (RFPs 42 through 52).

**1.      Defendants' Responses Fail to Provide a Timeline for Producing Documents**

Although Defendants indicate they will be producing responsive documents in response to RFPs 30 and 43 through 52, Defendants do not identify a timeline, and we have not received any documents.  Federal Rule of Civil Procedure 34(b)(2)(B) requires that the production be completed "no later than the time for inspection specified in the request, or another reasonable time specified in the response." We requested that the documents be produced within thirty days of the service of the RFPs, *i.e.*, July 16, 2020.  Defendants have neither produced documents by that deadline, nor have they specified "another reasonable time."

**2.      Defendants' Responses Fail to State Whether Documents Are Being Withheld**

In violation of Rule 34(b)(2)(C), Defendants' responses repeatedly fail to state "whether any responsive materials are being withheld on the basis" of each object asserted.  As the Advisory Committee notes to the 2015 amendments explain, "The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection."  We request that Defendants be prepared to discuss what documents are being held pursuant to the asserted objections during our meet and confer call, and for the purposes of a clean discovery record we also request that Defendants amend their responses to RFP Set Two to comply with this requirement.

Joseph Salazar                                          -2-                                        July 28, 2020
Ryan Matthews

**3.      Defendants' Objection that the Requests Call for Production of Trade Secret Information Does Not Justify their Refusal to Produce the Documents.**

Defendants object that RFPs 28, 30-32, 35, and 38 call for "trade secret information." Trade secrets and proprietary information "have widely been held to be discoverable upon appropriate findings and with an appropriate protective order." *MDK, Inc. v. Mike's Train House*, 27 F.3d 116, 120 (4th Cir. 1994). In the Ninth Circuit, "[w]here trade secrets or other confidential commercial information is involved, the court will balance the risk of disclosure to competitors against the risk that a protective order [or refusal to produce the information] will impair prosecution or defense of the claims." *Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D. 552, 554 (C.D. Cal. 2007) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)).

Here, there is no risk of disclosure to competitors, as Plaintiffs are not competitors, and we have a stipulated protective in place that can address any legitimate concerns Defendants may have regarding disclosure of the information in a litigated case. *See* ECF 53. Defendants' refusal to produce the information, on the other hand, significantly impairs the prosecution of the case, as set out immediately below.

- **RFP 28** (training documents related to leases or the leasing process). As you are aware, tenants agree to additional service charges during the leasing process and as part of the lease. Therefore, understanding Defendants' policies and instructions to its personnel regarding the leasing process, communications with prospective tenants, record keeping, and other related topics is necessary to shed light on the conditions under which tenants are asked to, and do, agree to the Additional Service charges, and the existence and nature of related data or documents.

- **RFP 30** (training documents related to notices based on the non-payment of rent or any other charge). Notices regarding the non-payment of rent or other charges constitute significant communications between Wasatch and its tenants that can shed light on whether, as company policy, payment of additional service charges is considered mandatory and a condition of continued occupancy in the unit. Plaintiffs have noted repeated examples of notices to quit that were served based, in whole or in part, on the tenant's non-payment of additional service charges. *See, e.g.* CV000502, CPC000654, CY002883. The requested training materials may reveal Defendants' official policies and practices on this subject matter and must be produced.

- **RFP 31** (training documents related to eviction actions or unlawful detainer actions based on the nonpayment of rent or any other charge). The same reasons stated regarding RFP 30 apply here as well.

- **RFP 32** (documents regarding policies, procedures or practices related to the Pay Order applicable to tenant payments). As you are aware, Plaintiffs contend that the additional service charges qualify as rent because, among other reasons, Defendants treat the charges equivalently to rent. Defendants have produced in

deposition a document showing that tenant payments will be applied first to additional service charges and then to rent, so that if any amounts are left over, then rent will be left owing.  *See* Jarvis. Dep. Exhibit 3; *see also, e.g.*, Tanforan Dep. at 79:8-80:18.  Plaintiffs are entitled to all versions of that document in effect since April 2005, and other related documents that can clarify the scope and application of the policy, including the apparent exceptions referenced on the second page of the document.

- **RFP 35** (documents sufficient to describe tables, fields and codes contained in Defendants' Yardi property management database related to leases, Housing Assistance Payment contracts, charges, payments, balances, eviction notices, an eviction actions).  Plaintiffs are entitled to this information to understand the scope and meaning of the data contained in the Defendants' centralized Yardi database relevant to the issues in this action.  Defendant cannot withhold centralized, manipulable, detailed, and complete data necessary for Plaintiffs to conduct analyses relevant to liability (*e.g.*, relevant to whether the additional service charges are excluded from the rent amounts in HAP contracts, whether they are mandatory, whether they are enforced by threat of eviction or institution of eviction proceedings) or to calculation of restitution, damages, and penalties due.

- **RFP 38** (data or electronic records related to ledgers for Section 8 tenants who have paid additional service charges, including charge codes, balances, and the application of payments to charges).  Defendants specifically object that the "charge codes" are trade secret information—notwithstanding the fact that Defendants have previously produced a document reflecting charge codes in this case.  *See* Jarvis. Dep. Exhibit 3.  The simplified ledger reports that Defendants have agreed to produce lack standardized charge codes, which are necessary for effective analysis of large datasets, and instead provide only variable text entries for charges and payments.

As to RFPs 30, 32, 25, and 38, Defendants' responses further state that the asserted trade secret information is "protected by a Non-Disclosure Agreement."  Given the relevance of the requested documents, it is of no moment that Defendants have chosen to enter into a software agreement containing a non-disclosure provision.  *See Pero v. Norfolk S. Ry.*, No. 3:14-cv-16-PLR-CCS, 2014 U.S. Dist. LEXIS 166121, at *8 (E.D. Tenn. Dec. 1, 2014) ("a party "cannot use its choice to enter into a software agreement as a shield against producing a relevant piece of discovery."); *I.S.E.L., Inc. v. Am. Synthol, Inc.*, No. 3:08-cv-00870-HLA-TEM, 2009 U.S. Dist. LEXIS 101126, at *10-12 (M.D. Fla. Oct. 15, 2009) (ordering disclosure of confidential information pursuant to protective order, notwithstanding an applicable NDA).

Moreover, Defendants have placed Plaintiffs at a distinct disadvantage in discussing the Non-Disclosure Agreement by dragging their feet on producing it.  *See* Defendants' Response to RFP 34 (indicating that Defendants will produce the Non-Disclosure Agreement).

Defendants must immediately produce the Non-Disclosure Agreement and specifically describe (1) the basis for any trade secret protection asserted in response to these requests,

Joseph Salazar                                    -4-                                    July 28, 2020
Ryan Matthews

particularly those that do not cite the Non-Disclosure Agreement; (2) the reasons Defendants believe disclosure in this case would be harmful to their protectable interests; and (3) why the stipulated protective order is insufficient.

**4.      Defendants Should Produce the Requested Documents Related to Defendants' Training of its Employees.**

Requests for Production 27, 28, 29, 30, and 31 request documents concerning or reflecting Defendants' training of their employees regarding, respectively, the Section 8 program, leases and the leasing process, additional service agreements and additional service charges, notices related to nonpayment of rent or other charges, and eviction actions based on nonpayment of rent or other charges. Request for Production 32 requests documents concerning or reflecting Defendants' policies, procedures, or practices related to the "pay order" applicable to tenant payments.  Each of these topics are relevant to whether the additional service charges legally qualify as rent, the issue on which liability in this case will turn.

Defendants state that they have no responsive documents reflecting training provided regarding the Section 8 program (RFP 27) or Additional Service charges (RFP 29).  This is difficult to believe, and at least as to Additional Service charges, demonstrably incorrect. Defendants have previously produced an excerpt from the "Yardi Voyager Training Manual" providing instructions on the payment priority applicable to Additional Service charges (among other charges).  *See* Jarvis Dep. Exhibit 3.  Please look again.

Defendants assert boilerplate objections to RFPs 28, 29, 31, and 32 that the requests are "overbroad" and "unduly burdensome," and in response to RFPs 30 and 32 objected that "there is no reasonable need for the protected information requested."  Defendants' failure to specifically state the grounds for the objection constitute waiver of the objection.  *See* Fed. R. Civ. P. 34(b)(2)(B); *Ramirez v. Cty. of L.A.*, 231 F.R.D. 407, 409 (C.D. Cal. 2005) ("Most of defendants' objections are too general to merit consideration and are therefore waived."); *Cengage Learning, Inc. v. Davis Textbooks*, No. 2:15-cv-2401 TLN AC, 2016 U.S. Dist. LEXIS 126686, at *3 (E.D. Cal. Sep. 16, 2016) ("General or boilerplate objections, e.g., those based on broad assertions of vagueness, overbreadth or burdensomeness, are improper and do not meet this standard, especially when a party fails to submit any evidentiary declarations supporting such objections.").

In any event, the RFPs are neither overbroad nor should they be unduly burdensome. Plaintiffs are entitled to training materials regarding company policy and practice on topics relevant to whether the Additional Service charges qualify as rent—including the leasing process (RFP 28), which is when tenants agree to the additional service charges as part of the lease; additional service agreements and additional service charges themselves (RFP 29); notices and eviction actions based on the non-payment of rent or other charges (RFP 30, 31), which are relevant to determining whether the charges are mandatory or described as mandatory; and Defendants' pay sequence policies treating additional service charges as rent (RFP 32).  *See* ECF 61 at 7-8, 9-11; ECF 92 at 15.

Defendants represent that they are "willing to meet and confer with respect to the specific trainings requested" regarding leases and the leasing process (RFP 28).  We look forward to

doing that as soon as may be arranged.  Plaintiffs are at a disadvantage in that conversation as Defendants have not described the universe of training documents regarding leases and the leasing process.  Certainly any training materials discussing any of the following would be relevant and should be produced:  strategies for obtaining agreement to rent amounts, additional service charges, or lease renewals; instructions regarding communications with tenants regarding leases or the leasing process; the documents that are part of the lease; the times at which different relevant documents are provided and executed; requirements as a condition of leasing; or recording of lease information in databases maintained by defendants.

**5.      Defendants Should Produce the Requested Database Information and Data from their Yardi Management Database.**

      Plaintiff Terry's Second Set of Requests for Production sought data and electronic records from Defendants' Yardi database regarding HAP contracts (RFP 36), leases (RFP 37), ledgers (RFP 38), and notices and eviction actions based on the non-payment of rent or other charges (RFPs 39, 40) for all of Defendants' Section 8 tenants who, since April 2005, have paid additional service charges.  As set out above, detailed, complete, and manipulable data encompassing each of these subjects is necessary for Plaintiffs to prosecute their case.  To facilitate the meet and confer and ultimate production of this data, Plaintiffs also requested the Non-Disclosure Agreement applicable to the Yardi database (RFP 34), and documents sufficient to describe the tables, fields and codes in that database relevant to each of the topics covered in RFPs 36 through 40 (RFP 35).

      Defendants' trade secret objections to RFPs 35 and 38 are addressed above.  Their remaining objections to the RFPs related to the Yardi system are without basis.  Defendants' repeated boilerplate objection that the data requested is "overbroad" is inadequate and therefore waives the objection.  *See* Fed. R. Civ. P. 34(b)(2)(B); *Ramirez*, 231 F.R.D. at 409.

      Defendants repeatedly cite the declaration of Mike Christiansen, submitted with the Joint Statement (ECF 118-4) to support their objection that the requests are unduly burdensome.  Mr. Christiansen's declaration contemplates a laborious manual process for compiling the information.  Plaintiffs' proposed method, however, is to extract the data from the database by means of an automated query, and Plaintiffs' expert explained that the burden on Defendants to complete this process would be minimal.  *See* ECF 118-2, Declaration of George Edwards, PhD.  If Defendants contend that it is not technically possible to extract the data as Plaintiffs propose, please explain in detail why it would not be possible.

      As to RFPs 35, 36, 37 and 38, Defendants also raise the objection that the Court previously denied a motion to compel on this information.  The Court's order on the motion to compel, however, addressed the preciseness of the underlying requests for production, not the propriety of any of the specific categories of data sought.  ECF 122 at 2-3.  The Court thought that Plaintiffs' requests for production were not narrowly tailored, based on an analysis of the wording of the requests for production.  *Id.*  That ruling does not foreclose Plaintiffs from seeking the same information with more specific and tailored requests for production.  *See id.*

Joseph Salazar                                    -6-                                July 28, 2020
Ryan Matthews

Plaintiffs address individualized issues related to each RFP below, and request Defendants to provide additional information regarding the data they are withholding on the basis of their objections:

**RFP 34** seeks the Non-Disclosure Agreement that Defendants assert is applicable to topics related to the Yardi database.  Defendants agreed to produce the non-disclosure agreement, *see* Defendants' Response to RFP 34, but they have failed to do so to date, even though they rely on that agreement for several of their objections.  Please produce it immediately.

**RFP 35** seeks "documents sufficient to describe the tables, fields and codes contained in Defendants' Yardi property management database related to leases, Housing Assistance Payment contracts, charges, payments balances, eviction notices, and eviction actions, including a schema of the database and any relevant data dictionaries or look-up tables. As explained above, this information is necessary for Plaintiffs to understand the scope and meaning of the data contained in the database.  As the Sedona Conference has explained, disclosure of information such as "relevant field names and values [and] the relational connections between data fields and tables" is a proper area for discovery because it may be "needed by the requesting party to obtain a basic requisite understanding of the structure, content and format of the data being produced," or sought to be produced.  15 Sedona Conf. J. 171.

**RFP 36** requests data related Housing Assistance Payment Contracts, also called HAP Contracts.  Defendants' compliance with their HAP Contracts, and the certifications therein, are directly at issue in this case.  Defendants object that this request is "duplicative of information Defendants have already agreed to produce," presumably in reference to Defendants' offer to produce the stripped-down ledger reports.  The sample ledger reports provided by Defendants show amounts charged to and paid by housing authorities, but they lack any other information about the HAP Contract, such as the agreed amount of "rent to owner" or a list of the utilities and appliances included in rent to owner.

Please clarify what data exists in the Yardi database regarding HAP Contracts and whether it is being withheld based on any of the objections stated by Defendants.

**RFP 37** requests dated related to leases.  Defendants again object that this request is "duplicative of information Defendants have already agreed to produce," which Plaintiffs again presume refers to Defendants' offer to produce the stripped-down ledger reports. While the ledger reports do show rent charges and charges made under the Additional Service charges, they do not show other important and basic information about the tenancy, including co-signors on the lease (which is necessary for an accurate analysis of charges owed and paid by the tenants), individual and group identifies for tenants on the lease (which is necessary to connect tables related to different topics), and the property and unit at issue (which is necessary to enable Plaintiffs to analyze property-level patterns in the data).

Please clarify what data exists in the Yardi database regarding leases and whether it is being withheld based on any of the objections stated by Defendants.

**RFP 38** requests data related to ledgers, including "charge codes, balances, and the application of payments to charges." Defendants do not object to the request for balances. Defendants' objections related to the charge codes are addressed in Section 3 above. Defendants also object to the request for data regarding the application of payments to charges, on the entirely illogical basis that "[s]uch information is not related to resident ledgers." It is self-evident that the way in which payments are applied to outstanding charges is information that is "related to resident ledgers" showing those charges and payments. Additionally, because one of Plaintiffs' contentions is that Defendants' treat additional service charges equivalently to rent in the way they apply payments, the request is plainly within the scope of necessary and reasonable discovery in this case.

Please clarify whether Defendants are withholding data on the basis of their objections to the request for data reflecting the application of payments to charges, and what other data "related to resident ledgers" exists and whether Defendants are withholding that data on the basis of any of this objections.

**RFP 40** seeks "all data or electronic records contained in Defendants' Yardi property management database related to eviction or unlawful detainer actions based on the non-payment of rent or any other charge for all of Defendants' Section 8 tenants who, since April 2005, have paid Additional Service Charges." *See* Plaintiff Terry's Second Set of Requests for Production, RFP 40. Defendants failed to respond to this RFP. Instead, Defendants provide objections twice to RFP 41, with one of them listed as RFP 40. Therefore, Defendants have waived their objections to RFP 40. *See, e.g., Smith v. Sergent*, No. 2:15-cv-0979 GEB DB P, 2017 U.S. Dist. LEXIS 38261, at *3-4 (E.D. Cal. Mar. 15, 2017) ("'It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.'") (citations omitted).

**RFP 41** requests data related to communications with Defendants' Section 8 tenants who have paid additional service charges. Defendants object that it is overbroad because it requests communications over 15 years with thousands of tenants, and because there is no limitation as to the subject matter of those communications. First, as to the scope in terms of years and tenants, each of those tenants was subjected to the practice challenged in this suit within the limitations period for the False Claims Act claim—so the RFP is thus matched to the scope of the violations.

Second, regarding the lack of subject matter limitation, the request seeks all communications in order to *reduce the burden on Defendants* by allowing all the communications data to be pulled at once without necessitating a complicated search or time-consuming review. That being said, Plaintiffs are amenable to working with Defendants to develop a search protocol to identify communications that are likely to be relevant and probative on the facts at issue in this action, such as communications regarding the additional service charges, Section 8 requirements, or notices or eviction actions based on non-payment of rent or other charges. To enable that discussion, please provide information about how these

Joseph Salazar                                          -8-                                        July 28, 2020
Ryan Matthews

communications are stored in the Yardi database, including what fields are associated with each entry, whether there is a search function, and whether there are standardized codes reflecting different topics.

**6.      Defendants Should Produce the Communications Sought by RFPs 42 through 52 Without Delay**

Requests for production 42 through 52 request a variety of communications relevant to the factual contentions in this case.

**RFP 42** requests communications between Defendants' employees or personnel and local housing authorities at any time since Defendants began using Additional Service Agreements.  Plaintiffs believe that these communications are likely to contain important evidence including (1) the documents and information submitted to the housing authorities, and the extent to which the included information about the additional service charges and Defendants' policies regarding the additional service charges; (2) questions and responses from the housing authorities regarding the same; (3) communications with housing authorities about notices and eviction actions based on the nonpayment of rent and other charges as applied to Section 8 tenants who are required to pay additional service charges.

Defendants object on the ground of overbreadth because the request does not particularize the subject matter of the communications. We framed it that way in order to reduce the reviewing burden on Defendants—particularly with the email search in mind, as Defendants should be able to quickly and easily identify communications to and from email addresses associated with the housing authorities.  However, if Defendants prefer to review that body of emails to narrow their production, we are happy to narrow our RFP.  We will provide a proposal after a conversation with you to understand Defendants' preferences here.

**RFP 43** requests communications with federal officials or employees related to Defendants' practice of charging additional service charges to Section 8 tenants.  Defendants agree to produce non-privileged materials.  However, Defendants have not produced any documents.  Please provide an update on the status and anticipated timeline for this production.

**RFP 44** requests documents "concerning or reflecting communications involving any of Defendants' corporate employees related to the leasing or lease renewal process for Section 8 tenants."  Defendants' objection that the request is vague and ambiguous as to the phrase "the leasing or lease renewal process" is without merit.  Defendants contend that "[a]ny of Defendants' conduct is inherently related to the leasing process."  This position contravenes the principal that parties "should exercise reason and common sense to attribute ordinary definitions to terms and phrases."  *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 310 (D. Kan. 1996).  The leasing process refers to the process of working with a prospective tenant to enter into a lease—in this case, a Section 8 tenant.  That process encompasses communications with the tenant, with the local housing authority, all steps that Wasatch takes to determine rent, additional service charges, and to complete required paperwork for Section 8 tenants (requests for tenancy

Joseph Salazar                                    -9-                                    July 28, 2020
Ryan Matthews

approval, HAP contracts, etc.).  Similarly, the lease renewal process for Section 8 tenants refers to the process of working with a current tenant to renew their lease, and would include the process of adjusting rent levels, seeking approval from the housing authority for rent increases, and any communications with housing authorities about additional service charges agreed to as part of the lease renewal.  RFP 44, then, seeks communications involving corporate employees regarding these processes.

**Email search.** Defendants state in response to RFPs 44 through 52 in relevant part, that the communications "are likely to be encompassed by the e-mail production in response to Plaintiffs' prior requests for production."  *See* Defendants' Responses to RFPs 44 through 52. We propounded these requests in response to Defendants' objections to the prior RFPs as overbroad, as reflected in my June 25, 2020 letter, so from here on out it would make more sense to discuss the email search (and production of other non-email communications) in the context of Terry's RFPs 42 through 52.   That being said, as Defendants' responses recognize, we have been communicating about this project since early this year.  We provided you a revised email search protocol on July 6th, and you indicated on July 8th that you planned to run the proposed searches to determine if they yielded a manageable body of emails.  Nearly three weeks have now passed.  Thus, Defendants should be in a position to provide a meaningful update on the search, review, and timeline for production.

Please note that in addition to responsive emails, we are also seeking other types of documents reflecting or concerning communications, such as memoranda, meeting notes, hard-copy letters, or faxes.

Sincerely,

Anne P. Bellows

APB/kbm

cc:     Andrew Wolff
        Jesse Newmark
        Micaela Alvarez
        Laura Ho
        Beth Holtzman

787393.4

# EXHIBIT 15

# G B D H

## Goldstein, Borgen, Dardarian & Ho

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

August 18, 2020

**VIA EMAIL ONLY**

Joseph Salazar                                   Joe.Salazar@lewisbrisbois.com
Ryan Matthews                                  Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

Re:     Training Documents Responsive to Plaintiff Denika Terry's Second Set of RFPs

Dear Ryan:

This letter follows up on our conversation last Tuesday, August 11, 2020, regarding training documents listed on the Excel spreadsheet you provided to me by email on August 6, 2020.

Let me first dispense with a couple preliminary matters.  First, we agree with your proposal to produce a placeholder document with the Bates stamp and the Excel spreadsheet in native format.  I suggest you title the Excel file with the Bates number.  Let me know if you would like us to make that change, or if you will be reproducing the Excel sheet.  Second, you indicated that you would ask your client if this is the full document, or if the blank fields (and in some cases, blank sheets) reflect information that has been removed.  Do you have an answer on this issue?

Below, going tab by tab from the Excel spreadsheet, we list and briefly discuss the documents that are or may be responsive to our requests for production. We have bolded those that are plainly responsive and indicated the relevant RFP.  For the other ones that we have listed, we request that you review the indicated documents and produce if they are responsive to any of our RFPs, in particular RFPs 27 through 33.

Budgets Purchasing & Contracts
BP101, BP101.01, and BP101.02 address signing contracts and authority to bind the company.  Please produce if responsive.  In particular, we believe that the documents may be responsive if the polices or procedures discussed therein apply to HAP Contracts and other Section 8 forms and documents, and would therefore be responsive to RFP 27.

Bond and Tax Credit
**BTH301.01, Facts About Renter's Insurance (RFP 29)**
**BTH301.02, Insurance Notice and Agreement (RFP 29)**
**BTH401.01, Rent Adjustment Notice (RFP 28)**

Please also review all remaining documents on this tab of the spreadsheet and produce if responsive to our RFPs. We are aware that tax credit properties or other properties that have benefited from public funding may be subject to a requirement to accept Section 8 tenants, and therefore we believe that materials specific to tax credit and bond properties may be likely to include a discussion of aspects of the Section 8 program.

Capital Improvements
CI103 addresses appliance purchasing. Please produce if it is responsive, *e.g.*, if it concerns appliances for which Defendants levy additional service charges, including washers and dryers, internet or cable systems, or security systems.

Community Manager
Please review all documents listed in this tab and produce if they are responsive to our RFPs. For example, documents related to budgets or financial matters (CM101, CM102, or CM105) may be responsive if they mention additional service charges.

**Evictions/Collections/Legal**
**Please produce all documents listed on this tab (RFPs 30, 31, 33).** We flagged these documents for you on our call last week.

**Financial Manager**
**Please produce all documents listed on this tab (RFPs 30, 31, 33).** We flagged these documents for you on our call last week.

Human Resources
HR700 through HR 707 address various aspects of the bonus program. Please produce if responsive. We are aware from our review of the tenant files that Wasatch has provided bonuses for aspects of a lease, including the rent level and whether the tenant has enrolled in any new additional services. Therefore, we believe these are likely to be responsive to RFPs 28 and 29.

Lease Documents & Other Residential Notices
**LD101 through LD102, application documents (RFP 28)**
**LD300 through LD302.01 (*i.e.*, lines 23-54 on the spreadsheet), leases (RFP 28)**
**LD303, LD 303.01, Additional Services Agreement (RFP 29)**
**LD304 through LD313, LD317-318, addenda (RFP 28)**
**LD344.04, Pet Registration (RFP 29)**
**LD344.05, Vehicle Registration (RFP 29)**
**LD344.07, Facts about rental insurance (RFP 29)**
**LD344.08, Insurance Notice and Agreement (RFP 29)**
LD500, LD501, LD501.01, LD501.02 address "resident information" and updating that resident information. Please review and produce if responsive.

Month End Review
Please review all documents in this tab and produce if responsive.

Joseph Salazar                                    -3-                          August 18, 2020
Ryan Matthews

<u>Property Information</u>
Please review all documents in this tab and produce if responsive.
.
<u>Risk Management</u>
**RM201 through RM211, related to renter's insurance (RFP 29)**

<u>Residential Services</u>
Please review all documents listed on this tab, which appear to be about leases and lease renewals, and produce if responsive (*see, e.g.*, RFP 28).

<u>**Service Income**</u>
**Please produce all documents listed on this tab (RFPs 28, 29).** We flagged these documents on our call last week.

<u>Sales and Marketing</u>
**SM101 through SM103 (lines 12-24 on the spreadsheet) re: leasing duties (RFP 28)**
**SM203 through SM209 (lines 33-40) re: the leasing process (RFP 28)**
**SM305.01, SM305.01.UT, SM305.01.CO, rental application (RFP 28)**
**SM210, SM2010.01, move-in cost sheet (RFPs 28, 29)**
**SM8050, re: short term leases (RFPs 29)**
Please also review the following documents and produce if they are responsive, for example, because they mention additional service items or charges  SM401, SM401.01, SM401.02, SM402 and associated documents, SM600, SM601, SM 602, SM 603, SM604, SM 607, SM609, SM620, SM700, SM 700.01, SM800.

<u>Training and development</u>
Please review all documents in this tab and produce if responsive.

<u>Yardi Enterprise System</u>
Please review all documents in this tab and produce if responsive.

<u>Yardi Voyager System</u>
Please review all documents in this tab and produce if responsive.

Plaintiffs are looking forward to discussing this is issue and any questions you may have on our call tomorrow, and thereafter to receiving the responsive documents.


Sincerely,

Anne P. Bellows

Joseph Salazar                              -4-                        August 18, 2020
Ryan Matthews

cc:     Andrew Wolff
        Jesse Newmark
        Micaela Alvarez
        Laura Ho
        Beth Holtzman

788876.1

# EXHIBIT 16

# G B D H

## Goldstein, Borgen, Dardarian & Ho

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

May 24, 2021

**VIA EMAIL ONLY**

Joseph Salazar                                   Joe.Salazar@lewisbrisbois.com
Ryan Matthews                              Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

Re:     Defendants' Insufficient Production in Response to Terry RFPs Set Two

Dear Ryan:

I have reviewed Defendants' production of training materials made on March 30, 2021, which I had anticipated would supplement the production previously made on September 3, 2020.  Defendants' production remains incomplete, conspicuously omitting documents that are plainly responsive to Plaintiff Denika Terry's Requests for Production Set Two.[1]

On August 6, 2020, you provided Plaintiffs with a spreadsheet that identified a host of "How-To" training documents prepared and maintained by Wasatch on a range of topics ("How-To Spreadsheet").  On August 18, 2020, I wrote back, identifying from the How-To Spreadsheet documents that were responsive to Plaintiffs' requests, or which Plaintiffs requested Defendants to review to determine if they were responsive (for example, if they addressed or dealt with additional service agreements or charges (RFP 29)).  That letter is attached for your reference as **Exhibit A.**  Plaintiffs reiterate their request that Defendants review and produce if responsive all of the documents addressed in that letter.

On September 3, 2020, Defendants made what Plaintiffs understood to be a partial production.  Plaintiffs immediately notified that the production was not compliant with the format Plaintiffs had requested for ESI.  Defendants agreed to remedy the issue, and they eventually did so (after addressing other document productions) on March 30, 2021.  Unfortunately, while Defendants remedied the formatting issue, Defendants did not produce the remainder of the documents that Plaintiffs had identified in the August 18, 2020 letter.

In particular, I would like to draw your attention to the documents listed in the sections below, which appear to be responsive to Plaintiffs' requests for production.  Please produce the

---

[1] While Defendants did assert objections to the RFPs at issue, those are without merit for the reasons outline in Plaintiffs' letter dated July 28, 2020.  Defendants have not indicated that they are withholding any documents based on those objections.  If you are withholding documents based on those objections, please clarify immediately what documents you are withholding and why.

Joseph Salazar                              -2-                        May 24, 2021
Ryan Matthews

documents, including all versions of the documents in effect since April 2005, without further delay and in any event no later than June 2, 2021. For any document identified below that Defendants do not produce, by June 2, 2021 please provide an explanation of why they were withheld so that we may determine if we have a dispute.

<u>Evictions Collections and Legal</u>

Plaintiff Denika Terry's Request for Production Nos. 30, 31, and 33 request training documents related to "notices to tenants based on the non-payment of rent or any other charges," "eviction actions or unlawful detainer actions based on the non-payment of rent or any other charge," and "collecting past due Additional Service Charges." Despite their obvious relevance to these requests, Defendants have not produced a single training document identified in the tab of the How-To Spreadsheet entitled "Evictions, Collections and Legal." Most if not all of the documents on this sheet should be produced as responsive to RFP Nos. 30, 31, or 33. At a minimum, the following documents appear to be directly responsive to those RFPs:

- EC101.03 – California Three-Day Notice to Perform Financial Covenant or Quit
- EC101.03.WA– Washington 14-Day Pay Rent or Vacate Notice
- EC101.04.WA – Washington Invoice of Payment for Non-Rent
- EC102.01 – 1st Small Balance Notice-F
- EC102.02 – 2nd Small Balance Notice-F
- EC102.03 – Notice of Credit Balance-F
- EC102.05 – Late Payers Notice of Credit Reporting-F
- EC103, EC103.01.AZ, EC103.01.CA, EC103.01.NV, EC103.01.UT – Partial Payment & Non-Waiver-HT (and state specific versions)
- EC113 – Agreement to Stay Eviction Process-HT
- EC114 – Demand Letter for Collections
- EC100 – Monthly Statement of Rental Account
- ECF115.01.CA – California 3-Day Notice to Perform Covenant of Lease or Quit
- EC115.01.WA – Washington 10-Day Notice to Comply with Lease or Quit Premises
- EC117.01.WA, EC117.02 – Washington 20-Day Notice to Terminate Tenancy (Conventional)-F
- EC118.01.WA, EC118.02.WA – Washington 10-Day Notice to Comply with lease or Quit Premises (Conventional)-F

<u>Financial Manager</u>

Similarly, the documents under the "Financial Manager" tab all appear to be responsive to RFP 33, which requests documents related to Defendants' policies and practices regarding collecting past-due additional service charges, and should be produced:

- FM201 – Completing the Delinquency Tracker-VQS
- FM201.01.R – Delinquency Tracker-Reg Size-F
- FM201.01.L – Delinquency Tracker-Large Size-F
- FM301 – In House Collections-Red Files-HT

- FM301.01 – Collections Payment Agreement-F
- FM301.02 – Collections Bonus Sheet-F
- FM302 – 3rd Party Collections-Red Files
- FM350 – Past Resident Collections w/Revenue Recovery (R2)
- FM302 – Past Resident Collections Process-HT

<u>Leases and Leasing Process</u>

The following documents from the "Lease Documents & Other Notices" tab, the "Residential Services" tab, and the "Sales & Marketing" tab are responsive to Request for Production 28, which seeks training documents related to "leases and the leasing process." Additionally, several of the following documents also relate to additional service charges, and are therefore responsive to RFP 29, which seeks training documents regarding "Additional Service Agreements" and "Additional Service Charges."

- LD101.02 – File Cover Commission Sheet
- LD101.03 – Rental Criteria
- LD101.05 – Move In Cost Sheet
- LD301.01 – Quality Move In Checklist
- LD302.01 series – Move in and renewal leases
- LD303.01 – Additional Service Agreement
- LD344.07 – Facts about Renters' Insurance
- LD344.08 – Insurance Notice and Agreement
- RS102 – Resident Renewal Process-HT
- RS102 – Lease Renewal Program-HT
- RS104 – Printing Renewal Program Notices-VQS
- RS104.01 – Resident Values 120-Day Notice-F
- RS104.02 – Resident Values 90-Day Notice-F
- RS104.03 – Resident Values Tune Up Worksheet-F
- RS104.04 – Renewal Notice w/Rubs-F
- RS104.05 – Renewal Notice Non-Rubs-F
- RS104.06 – MTM Notice-F
- RS104.01 – 90 Day—Just Checking in With You
- RS104.02 – 60 Day—Simplify Your Life
- RS104.03 – Personal Contact-Renewal Party
- RS104.04 – 30 Day—Renewal Notification
- RS104.05 – MTM-Renewal Follow Up Letter
- SM101 – Put Together a Leasing Notebook
- SM102 – Leasing Duties-HT
- SM103 – Leasing Consultant Do's & Don't's-HT
- SM205 – Overcoming objections
- SM206 – Closing the Sale-HT
- SM207 – Process Applicants

826637.2

Joseph Salazar                                    -4-                              May 24, 2021
Ryan Matthews

- SM210 – Move In Cost Sheet-VQS
- SM210.01 – Move In Cost Sheet-F

<u>Month End Review</u>

Plaintiffs also previously requested that Defendants review and provide the following documents listed in the "Month End Review" (among others) if they touch on additional service charges, and we reiterate that request today:

- ME233 – Completing Month End Workbook-VQS
- ME233.01 – Month End Review Workbook-F
- ME300 – Month End File Bonusing_VQS
- YVS600 – Month End Review-VQS
- YVS601 – Month End Review VQS
- YVS603 – Negative Charge Register Audit-VQS
- YVS603.01 – Negative Charge Register Report-VQS
- YVS604 – Lease Charges Audit-VQS
- YVS604.01 – Lease Charges Report-VQS
- YVS608 – Bad Debt Write Off Function-VQS
- YVS608.01 – Aged Receivable Past Owing Report-VQS

<u>Service Income</u>

Defendants have produced several documents from the Service Income tab, but they have failed to produce two other documents that are listed in the How-To Worksheet and relate to additional services provided under the Additional Services Agreements, and therefore are responsive to RFP 29.

- Renter's Insurance-HT
- Security Alarm Service-HT

<u>Yardi Training Documents</u>

The August 18, 2020 letter asked Defendants to review all documents identified on the "yardi" tabs of the How-To Worksheet and to produce if responsive.  In particular, Plaintiffs reiterate that request as to the documents identified below, which appear to be responsive to RFP 32 (documents regarding Defendants' policies, procedures or practices related to the "Pay Order" applicable to payments, including documents related to Exhibit 3 to the Janae Jarvis Deposition), RFP 29 (training documents regarding Additional Services Agreements and additional service charges), RFP 30 (training documents regarding notices to tenants based on nonpayment of rent or any other charge).

- YES106 – Post Manual Changes in Enterprise-VQS (RFP 32)
- YES106 – Post Manual Changes in Enterprise-HT (RFP 32)
- YES107 – Enter Payments in Enterprise-HT (RFP 32)

Joseph Salazar                              -5-                              May 24, 2021
Ryan Matthews

- YES108 – Enter Payments in Enterprise-VQS (RFP32)
- YES116 – Enter Lease Charges in Enterprise-VQS (RFP 29)
- YES202 – Printing Pay or Quit Notices in Enterprise-VQS (RFP 30)
- YES203 – Printing Small Balance Notices in Enterprise-VQS (RFP30)
- YVS206 – Charges and Adjustments-Visual Quick Step (RFP 32)

In particular, Jarvis Exhibit 3 contains a reference to certain exceptions to the Pay Sequence, but Defendants have not provided any documents to explain what those exceptions are, or what payment sequence would apply in those circumstances. If documents explaining those payments are not listed in the How-To Spreadsheet, please identify for Plaintiffs where such training documents are maintained and produce them pursuant to RFP 32. (Ms. Jarvis testified that Exhibit 3 itself was excerpted from a manual regarding Yardi Voyager. Jarvis Dep. 147:23-148:1.)

<u>Other</u>

Plaintiffs also requested the following documents in our August 18, 2020 letter, and we have neither received the documents nor any indication of why they have not been produced.

- BP101, BP101.01, and BP101.02 in the Budgets Purchasing & Contracts tab address signing contracts and authority to bind the company. Please produce if responsive. In particular, we believe that the documents may be responsive if the polices or procedures discussed therein apply to HAP Contracts and other Section 8 forms and documents, and would therefore be responsive to RFP 27.

- From the Bond and Tax Credit tab, BTH301.01 (Facts About Renter's Insurance) and BTH301.02 (Insurance Notice and Agreement) address one of the additional services provided via the Additional Services Agreement and therefore should be produced pursuant to RFP 29.

- Also from the Bond and Tax Credit tab, BT401.01 ("Rent Adjustment Notice") may be responsive to RFP 27 if it addresses Section 8 tenancies in any way. If it does, please produce.

We look forward to discussing this issue with you on our regularly scheduled meet and confer call on Wednesday and to receiving the outstanding documents shortly thereafter.

Sincerely,

Anne P. Bellows

Joseph Salazar                                                          -6-                                      May 24, 2021
Ryan Matthews

cc:      Andrew Wolff
         Brenna Wood-Fitzpatrick
         Jesse Newmark
         Micaela Alvarez
         Laura Ho
         Kristen Burzynski

# Exhibit A

**G B D H**

**Goldstein, Borgen,
Dardarian & Ho**

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

August 18, 2020

**VIA EMAIL ONLY**

Joseph Salazar                                      Joe.Salazar@lewisbrisbois.com
Ryan Matthews                                 Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

     Re:     Training Documents Responsive to Plaintiff Denika Terry's Second Set of RFPs

Dear Ryan:

     This letter follows up on our conversation last Tuesday, August 11, 2020, regarding training documents listed on the Excel spreadsheet you provided to me by email on August 6, 2020.

     Let me first dispense with a couple preliminary matters. First, we agree with your proposal to produce a placeholder document with the Bates stamp and the Excel spreadsheet in native format. I suggest you title the Excel file with the Bates number. Let me know if you would like us to make that change, or if you will be reproducing the Excel sheet. Second, you indicated that you would ask your client if this is the full document, or if the blank fields (and in some cases, blank sheets) reflect information that has been removed. Do you have an answer on this issue?

     Below, going tab by tab from the Excel spreadsheet, we list and briefly discuss the documents that are or may be responsive to our requests for production. We have bolded those that are plainly responsive and indicated the relevant RFP. For the other ones that we have listed, we request that you review the indicated documents and produce if they are responsive to any of our RFPs, in particular RFPs 27 through 33.

Budgets Purchasing & Contracts
BP101, BP101.01, and BP101.02 address signing contracts and authority to bind the company. Please produce if responsive. In particular, we believe that the documents may be responsive if the polices or procedures discussed therein apply to HAP Contracts and other Section 8 forms and documents, and would therefore be responsive to RFP 27.

Bond and Tax Credit
**BTH301.01, Facts About Renter's Insurance (RFP 29)**
**BTH301.02, Insurance Notice and Agreement (RFP 29)**
**BTH401.01, Rent Adjustment Notice (RFP 28)**

Joseph Salazar                                    -2-                           August 18, 2020
Ryan Matthews

Please also review all remaining documents on this tab of the spreadsheet and produce if responsive to our RFPs. We are aware that tax credit properties or other properties that have benefited from public funding may be subject to a requirement to accept Section 8 tenants, and therefore we believe that materials specific to tax credit and bond properties may be likely to include a discussion of aspects of the Section 8 program.

Capital Improvements
CI103 addresses appliance purchasing. Please produce if it is responsive, *e.g.*, if it concerns appliances for which Defendants levy additional service charges, including washers and dryers, internet or cable systems, or security systems.

Community Manager
Please review all documents listed in this tab and produce if they are responsive to our RFPs. For example, documents related to budgets or financial matters (CM101, CM102, or CM105) may be responsive if they mention additional service charges.

**Evictions/Collections/Legal**
**Please produce all documents listed on this tab (RFPs 30, 31, 33).** We flagged these documents for you on our call last week.

**Financial Manager**
**Please produce all documents listed on this tab (RFPs 30, 31, 33).** We flagged these documents for you on our call last week.

Human Resources
HR700 through HR 707 address various aspects of the bonus program. Please produce if responsive. We are aware from our review of the tenant files that Wasatch has provided bonuses for aspects of a lease, including the rent level and whether the tenant has enrolled in any new additional services. Therefore, we believe these are likely to be responsive to RFPs 28 and 29.

Lease Documents & Other Residential Notices
**LD101 through LD102, application documents (RFP 28)**
**LD300 through LD302.01 (*i.e.*, lines 23-54 on the spreadsheet), leases (RFP 28)**
**LD303, LD 303.01, Additional Services Agreement (RFP 29)**
**LD304 through LD313, LD317-318, addenda (RFP 28)**
**LD344.04, Pet Registration (RFP 29)**
**LD344.05, Vehicle Registration (RFP 29)**
**LD344.07, Facts about rental insurance (RFP 29)**
**LD344.08, Insurance Notice and Agreement (RFP 29)**
LD500, LD501, LD501.01, LD501.02 address "resident information" and updating that resident information. Please review and produce if responsive.

Month End Review
Please review all documents in this tab and produce if responsive.

788876.1

Joseph Salazar                                    -3-                           August 18, 2020
Ryan Matthews

<u>Property Information</u>
Please review all documents in this tab and produce if responsive.
.
<u>Risk Management</u>
**RM201 through RM211, related to renter's insurance (RFP 29)**

<u>Residential Services</u>
Please review all documents listed on this tab, which appear to be about leases and lease renewals, and produce if responsive (*see, e.g.*, RFP 28).

**<u>Service Income</u>**
**Please produce all documents listed on this tab (RFPs 28, 29).**  We flagged these documents on our call last week.

<u>Sales and Marketing</u>
**SM101 through SM103 (lines 12-24 on the spreadsheet) re: leasing duties (RFP 28)**
**SM203 through SM209 (lines 33-40) re: the leasing process (RFP 28)**
**SM305.01, SM305.01.UT, SM305.01.CO, rental application (RFP 28)**
**SM210, SM2010.01, move-in cost sheet (RFPs 28, 29)**
**SM8050, re: short term leases (RFPs 29)**
Please also review the following documents and produce if they are responsive, for example, because they mention additional service items or charges  SM401, SM401.01, SM401.02, SM402 and associated documents, SM600, SM601, SM 602, SM 603, SM604, SM 607, SM609, SM620, SM700, SM 700.01, SM800.

<u>Training and development</u>
Please review all documents in this tab and produce if responsive.

<u>Yardi Enterprise System</u>
Please review all documents in this tab and produce if responsive.

<u>Yardi Voyager System</u>
Please review all documents in this tab and produce if responsive.

   Plaintiffs are looking forward to discussing this is issue and any questions you may have on our call tomorrow, and thereafter to receiving the responsive documents.

                              Sincerely,

                              Anne P. Bellows

788876.1

Joseph Salazar                                    -4-                              August 18, 2020
Ryan Matthews

cc:    Andrew Wolff
       Jesse Newmark
       Micaela Alvarez
       Laura Ho
       Beth Holtzman

788876.1

# EXHIBIT 17

**Anne Bellows**

---

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Friday, June 25, 2021 3:58 PM |
| **To:** | Matthews, Ryan |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; jessenewmark; andrew@awolfflaw.com; Brenna Wood Fitzpatrick |
| **Subject:** | 6/23/21 and 6/24/21 meet and confer calls |

Hi Ryan,

This email summarizes and follows up on our meet and confer calls this week on June 23 and June 24.  Please let me know immediately if I have misstated anything.

***Stipulation to amend the complaint.***  After reviewing Plaintiffs' June 22nd meet and confer letter, Defendants responded as follows.  First, Defendants agree to stipulate to substitute the entities discussed in the June 22nd meet and confer letter for the Doe defendants.  Second, Defendants disagree that the pleadings in the complaint suffice for Plaintiffs to conduct discovery into and seek to prove that the entities are alter egos. Defendants are willing to stipulate for Plaintiffs to amend their complaint to add alter ego liability on the condition that Plaintiffs agree to bifurcate the proceedings to address alter ego liability, agency liability, and related issues only after a determination has been reached on whether Wasatch Property Managements' practices challenged by the lawsuit are unlawful.

After consideration, Plaintiffs believe that the parties will be able to reach a mutually agreeable stipulation to allow amendment of the complaint and bifurcating the proceedings along the lines that Defendants propose.  We will draft a proposed stipulation addressing these matters and provide it to you, along with our amended complaint, by next Wednesday.

On our meet and confer call, we began discussing the possibility of including an extension of the discovery deadlines in the stipulation.  Having considered this issue further, Plaintiffs propose that we stipulate to stay all deadlines until the new defendants are in the case and we can work out a mutually agreeable schedule with everyone at the table.

***Rule 30(b)(6) Designations.***  You said that you would provide Defendants' Rule 30(b)(6) designations later in the afternoon on June 23.  We still have not received those. You did share that the topics would be split between Jarom Johnson, Shawn Fetter, and Janae Jarvis. We asked to receive those designations as soon as possible, in particular so that we could work out how the designation may impact the Jarom Johnson's upcoming deposition.

***Other depositions.***  Defendants agreed that we are free to contact Katie Dao, who no longer works for Defendants.  We also agreed on July 19 as the preferred date for Duane Wiles' deposition, and you agreed to confirm that as soon as possible.  Please provide that confirmation.  I proposed targeting early August for Brad Mishler's deposition.  We will also need to determine dates for the Rule 30(b)(6) depositions, which we'll be in a better position to do once we have the designations.

***Training documents.***  Defendants are still working on gathering all of the documents requested by Plaintiffs.  By next Wednesday, Defendants will produce further responsive documents (several have already been identified) and explain in writing why any others were withheld.  You reported that some of the documents listed on the sheet were never created, and that Defendants intend to amend the RFP response to clarify the record.   We asked that the production not be delayed beyond the timeline currently contemplated, as a significant amount of time has already passed on this issue.

**Terry RFAs 5 and 6.**  You said that you are still waiting on client approval to provide the amended responses to Terry RFAs 5 and 6.  We requested that be completed as soon as possible.

**Email production.**  You said that we could expect the email production for the last search to be produced imminently, and indeed we received it earlier today.  Thank you.

**Update to tenant files from Yardi system.**  Defendants will be following up with GelbGroup to determine if GelbGroup can pull tenant documents from Yardi with a simple query, and to produce the information in a manner that is organized by tenant as requested by Plaintiffs.  We discussed that Defendants are obligated to update the tenant files due to the Court's order on the motion to compel.  Plaintiffs are considering whether they might be able to do with a smaller set, and how that smaller set might be identified.

**Yardi data.**  You are still waiting on approval to produce the one spreadsheet that you reviewed.  That spreadsheet listed every tenant, their move-in and move-out dates, their lease terms, the amount of rent they paid, the ASA charges they were signed up for, the ASA charges they paid.  Plaintiffs request that sheet be produced as soon as possible.  We do not understand any possible justification for the delay.

Additionally, as you have seen, I emailed Leslie, our new joint expert, to inform her of the data that is still outstanding and to request a call.

I know you are also frustrated by the delays here, but I just want to express that we are extremely anxious to get the data produced so that we can determine whether any adjustments need to be made (as sometimes happens with complex data productions) and so that we may begin analyzing it.

**RFAs re: Authenticity.**  Plaintiffs pointed out that some of the RFAs re: authenticity covered portions of the email production, and Defendants appear to have mistakenly believed that they were part of the tenant files.  Defendants said they would provide amended responses to the relevant Huskey RFAs, which are RFAs 60, 61, 62, and 64.

**Privilege log.**  Defendants agreed that they need to produce any correspondence with HUD and DOJ.  They also agreed to revisit the other documents highlighted by Plaintiffs' letter and to produce if, as it seems, they are not privileged.

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

# EXHIBIT 18

```
 1                  UNITED STATES DISTRICT COURT
 2                  EASTERN DISTRICT OF CALIFORNIA
 3                       SACRAMENTO DIVISION
 4    UNITED STATES OF AMERICA, ex )
      rel. DENIKA TERRY, ROY HUSKEY )
 5    III, and TAMERA LIVINGSTON,   )
      and each of them for          )   Case No. 2:15-CV-00799-KJM-DB
 6    themselves individually, and  )
      for all other persons         )
 7    similarly situated and on     )
      behalf of the UNITED STATES   ) REMOTE VIDEOTAPED DEPOSITION OF
 8    OF AMERICA,                    )
                                     )                JANAE JARVIS
 9                    Plaintiffs,    )
                                     )           September 10, 2021
10    vs.                            )
                                     )
11    WASATCH ADVANTAGE GROUP, LLC, )
      WASATCH PROPERTY MANAGEMENT,   )
12    INC.; WASATCH POOL HOLDINGS,   )
      LLC, CHESAPEAKE APARTMENT      )
13    HOLDINGS, LLC, LOGAN PARK      )
      APARTMENTS, LLC, LOGAN PARK    )
14    APARTMENTS, LP, ASPEN PARK     )
      HOLDINGS, LLC, BELLWOOD        )
15    JERRON HOLDINGS, BELLWOOD      )
      HERRON APARTMENTS, BENT TREE   )
16    APARTMENTS, LLC, CALIFORNIA    )
      PLACE APARTMENTS, LLC CAMELOT )
17    LAKES HOLDINGS, LLC CANYON,    )
      CLUB HOLDINGS, COURTYARD AT    )
18    CENTRAL PARK APARTMENTS, LLC, )
      CREEKSIDE HOLDINGS, LTD,       )
19    HAYWARD SENIOR APARTMENTS,     )
      LP, Heritage Park APARTMENTS, )
20    LP, OAK VALLEY APARTMENTS,     )
      LP, OAK VALLEY HOLDINGS, LP,   )
21    PEPPERTREE APARTMENT           )
      HOLDINGS, LP., PIEDMONT        )
22    APARTMENTS, LP, POINT NATOMAS )
      APARTMENTS, LLC, POINT         )
23    NATOMAS APARTMENTS, LP, RIVER )
      OAKS HOLDINGS, LLC, SHADOW     )
24    WAY APARTMENTS, LP, SPRING     )
      VILLA APARTMENTS, LP, SUN      )
25    VALLEY HOLDINGS, LTD, VILLAGE )
```

                                                        Page 1

```
 1       GROVE APARTMENTS, LP, WASATCH )

 2     QUAIL RUN GP, LLC, WASATCH     )

 3      PREMIER PROPERTIES, LLC,      )

 4     WASATCH POOL HOLDINGS III,     )

 5      LLC, and DOES 1-4,            )

 6                                    )

 7                    Defendants.  ) Reported by

 8     _____) Amy E. Simmons, CSR, RPR, CRR, CRC

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                             Page  2
```

```
 1              REMOTE VIDEOTAPED DEPOSITION OF JANAE JARVIS

 2

 3          BE IT REMEMBERED that the remote videotaped deposition

 4     of JANAE JARVISwas taken via videoconference by the Plaintiffs

 5     before Veritext Legal Solutions, Amy E. Simmons, a Court

 6     Reporter and Notary Public in and for the County of Ada, State

 7     of Idaho, on Friday, the 10th day of September, 2021,ommencing

 8     at the hour of 10:34 a.m. Mountain Standard Time in the

 9     above-entitled matter.

10

11

12     APPEARANCES (Remotely):

13

       For the Plaintiffs:   GOLDSTEIN, BORGEN, DARDARIAN & HO
14                            By:  Anne Bellows, Esq.
                                   Stephanie Tilden, Esq.
15                            155 Grand Avenue, Suite 900
                              Oakland, California  94612
16                            Telephone:  (510) 763-9800
                              Facsimile:  (510) 835-1417
17                            abellows@gbdhlegal.com
                              stilden@gbdhlegal.com
18
19                            CENTRO LEGAL DE LA RAZA
                              By:  Jesse Newmark, Esq.
20                                 Henrissa Bassey, Esq.
                              3022 International Boulevard, Suite 410
21                            Oakland, California  94601
                              Telephone:  (510) 437-1863
22                            Facsimile:  (510) 437-9164
                              jessenewmark@centrolegal.org
23
24
25
                                                        Page  3
```

```
 1      APPEARANCES (Contd.)

 2

        For the Defendants:    LEWIS BRISBOIS BISGAARD & SMITH, LLP
 3                             By:  Ryan Matthews, Esq.
                               2020 West El Camino Avenue, Suite 700
 4                             Sacramento, California  95833
                               Telephone:  (916) 564-5400
 5                             Facsimile:  (916) 564-5444
                               Ryan.Matthews@lewisbrisbois.com
 6

 7      Videographer:          Jon Burgess

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                            Page  4
```

```
 1    is that right?                                    11:45:03

 2         A.   That's incorrect.                       11:45:03

 3         Q.   Okay.  How is that incorrect?           11:45:05

 4         A.   So, for example, this asset cannot be   11:45:07

 5    mandatory.                                         11:45:10

 6         Q.   Right.  But I took it -- I understood it 11:45:11

 7    to say we can't do it as an MDU for that reason?  11:45:16

 8         A.   Yes.                                     11:45:19

 9         Q.   Okay.  So based on your experience, if  11:45:19

10    there is an MDU in place, is the media or cable   11:45:23

11    charge always mandatory?                           11:45:27

12         A.   No, not always mandatory.               11:45:29

13         Q.   Okay.  What are the exceptions?         11:45:31

14         A.   The exceptions would be if it's an      11:45:34

15    affordable community, or if the program wouldn't  11:45:36

16    allow it.                                          11:45:40

17         Q.   Okay.  So the affordable communities, can 11:45:42

18    you tell me what goes into that bucket?           11:45:44

19         A.   Yes, I would define -- sorry, the tax   11:45:47

20    credit communities are affordable communities.    11:45:51

21         Q.   Tax credit, okay.                        11:45:54

22              Anything else?                            11:45:55

23         A.   No.  That's the communities.            11:45:56

24         Q.   Okay.  So I'm going to list some        11:45:58

25    properties.  We talked about some; I just want to 11:46:05
```

Page 60

| | | |
|---|---|---|
| 1 | make sure I, sort of, touch on the others.  And if | 11:46:08 |
| 2 | you can tell me if each property has ever had a | 11:46:11 |
| 3 | requirement that tenants, you know, enroll in a | 11:46:13 |
| 4 | mandatory media charge, which would include | 11:46:17 |
| 5 | internet or cable, you know, depending on the | 11:46:21 |
| 6 | case, and if so, the time period, if you know, for | 11:46:24 |
| 7 | the requirement. | 11:46:27 |
| 8 | A.   Okay. | 11:46:28 |
| 9 | Q.   Aztec Springs? | 11:46:28 |
| 10 | A.   I don't know. | 11:46:33 |
| 11 | Q.   Cimarron place? | 11:46:34 |
| 12 | A.   I don't know. | 11:46:40 |
| 13 | Q.   Canyon Ridge Apartments? | 11:46:41 |
| 14 | A.   I don't know. | 11:46:45 |
| 15 | Q.   Courtyard at Central Park? | 11:46:48 |
| 16 | A.   I don't know. | 11:46:51 |
| 17 | Q.   Enclave at 1400 South? | 11:46:53 |
| 18 | A.   Yes. | 11:46:57 |
| 19 | Q.   The Landing at Fancher Creek? | 11:47:02 |
| 20 | A.   I don't know. | 11:47:07 |
| 21 | Q.   Garden Lofts? | 11:47:07 |
| 22 | A.   Yes. | 11:47:09 |
| 23 | Q.   I'm sorry.  Let me back up. | 11:47:11 |
| 24 | You said yes to Falls at Hunters Pointe. | 11:47:15 |
| 25 | Do you know when that -- well, first of all, is | 11:47:20 |

Page 61

1    that mandatory charge still in effect today at                11:47:24

2    Falls at Hunters Pointe?                                      11:47:27

3         A.   I don't know.                                       11:47:28

4         Q.   Okay.  Do you know the time period that             11:47:29

5    it was in place?                                              11:47:32

6         A.   I don't know when it was implemented, but           11:47:34

7    we have -- we've sold the asset.                              11:47:36

8         Q.   Got it.                                             11:47:39

9              And it was still in place when the asset            11:47:41

10   was sold?                                                     11:47:43

11        A.   Yes.                                                11:47:43

12        Q.   Okay.  And then for Garden Lofts, is the            11:47:44

13   mandatory media charge still in place?                        11:47:47

14        A.   It's not a mandatory media charge.  It's            11:47:50

15   an optional, but there is an optional internet               11:47:54

16   agreement there.                                              11:47:57

17        Q.   Got it.  Okay.  Let me back up.                     11:47:58

18             So I'm asking about mandatory media                 11:48:01

19   charges.                                                      11:48:04

20             So was the Falls at Hunters Pointe media            11:48:04

21   package mandatory when that was being managed by              11:48:07

22   Wasatch Property Management?                                  11:48:11

23        A.   Yes.                                                11:48:12

24        Q.   Okay.  But at Garden Lofts, it's                    11:48:12

25   optional?                                                     11:48:15

Page 62

| | | |
|---|---|---|
| 1 | A. Yes. Let me clarify that list you just | 11:48:16 |
| 2 | provided to me. Enclave was also optional. | 11:48:19 |
| 3 | Q. Okay. Optional, okay. | 11:48:22 |
| 4 | What about Glen Oaks Apartments? | 11:48:33 |
| 5 | A. I don't know. | 11:48:36 |
| 6 | Q. How about Goldstone Place Apartments? | 11:48:37 |
| 7 | A. Yes. | 11:48:41 |
| 8 | Q. Yes, there was a mandatory charge? | 11:48:44 |
| 9 | A. Yes. | 11:48:45 |
| 10 | Q. And do you know when that was in place? | 11:48:46 |
| 11 | A. I don't know. | 11:48:50 |
| 12 | Q. Metropolitan Place Apartments? | 11:48:52 |
| 13 | A. Yes. | 11:48:58 |
| 14 | Q. Yes, it was mandatory? | 11:48:58 |
| 15 | A. Yes. | 11:49:01 |
| 16 | Q. And when was that put in place? | 11:49:06 |
| 17 | A. I don't know. | 11:49:07 |
| 18 | Q. Is it still in place? | 11:49:08 |
| 19 | A. Yes. | 11:49:09 |
| 20 | Q. Palladio Apartments? | 11:49:15 |
| 21 | A. Palladio had a -- I don't recall on | 11:49:18 |
| 22 | Palladio. That was a mixed asset of both tax | 11:49:24 |
| 23 | credit and market rate communities -- properties. | 11:49:27 |
| 24 | Q. Okay. And that's no longer managed by | 11:49:31 |
| 25 | Wasatch Property Management? | 11:49:34 |

Page 63

| | | | |
|---|---|---|---|
| 1 | A. | Yes. | 11:49:35 |
| 2 | Q. | Yes, it's no longer managed? | 11:49:37 |
| 3 | A. | Yes, it's no longer managed by Wasatch. | 11:49:39 |
| 4 | Q. | River Oaks Apartments? | 11:49:41 |
| 5 | A. | I don't know. | 11:49:44 |
| 6 | Q. | Rio Seco Apartments? | 11:49:46 |
| 7 | A. | I don't know. | 11:49:51 |
| 8 | Q. | Ranchwood Apartments? | 11:49:52 |
| 9 | A. | I don't know. | 11:49:56 |
| 10 | Q. | Sands apartments? | 11:49:57 |
| 11 | A. | I don't know. | 11:50:03 |
| 12 | Q. | Veranda? | 11:50:03 |
| 13 | A. | Yes, they have an optional media package. | 11:50:06 |

14   Q.   Okay.  So for the ones that are required   11:50:10

15   that we've discussed today, you would be able to   11:50:24

16   find information showing the date that the   11:50:27

17   requirement went into effect, right?  Not during   11:50:31

18   this deposition, but if you went back to your   11:50:36

19   office and looked into it?   11:50:38

20       A.   Theoretically I should be able to find   11:50:41

21   the agreement, which would show when the -- when   11:50:44

22   the agreement was put into place.   11:50:49

23       Q.   Okay.   11:50:51

24           MR. MATTHEWS:  We've been going about an   11:50:56

25   hour and 20.  Do you want to take a quick   11:50:57

Page 64

| | | |
|---|---|---|
| 1 | Section 8 tenants have ever been exempt from | 12:14:21 |
| 2 | mandatory media charges? | 12:14:24 |
| 3 | A.   No, let me clarify that question. | 12:14:25 |
| 4 | So we submit the agreements over. | 12:14:29 |
| 5 | Section 8 approves it.  If there is a charge in | 12:14:33 |
| 6 | there, if they exempt it, then that is out and | 12:14:36 |
| 7 | it's excluded from the agreement. | 12:14:39 |
| 8 | Q.   Okay.  I'm just saying you're not | 12:14:40 |
| 9 | aware -- I'm just saying you're not aware of a | 12:14:42 |
| 10 | case where that's happened? | 12:14:45 |
| 11 | A.   I am not aware, no, of a case where that | 12:14:46 |
| 12 | may have happened, no. | 12:14:49 |
| 13 | Q.   Okay.  All right.  Let's talk about | 12:14:50 |
| 14 | parking. | 12:14:57 |
| 15 | We've had some testimony in this case | 12:14:57 |
| 16 | previously that at some Wasatch properties, | 12:14:59 |
| 17 | tenants are required to pay mandatory parking | 12:15:02 |
| 18 | charges as a condition of leasing. | 12:15:04 |
| 19 | Are you familiar with that practice? | 12:15:06 |
| 20 | A.   At some locations, yes. | 12:15:08 |
| 21 | Q.   Okay.  And this is another thing that | 12:15:10 |
| 22 | varies from property to property? | 12:15:12 |
| 23 | A.   Yes. | 12:15:14 |
| 24 | Q.   Okay.  Can you identify the Wasatch | 12:15:15 |
| 25 | properties that have required tenants to sign up | 12:15:18 |

Page 77

| | | | |
|---|---|---|---|
| 1 | | for paid parking as a condition of leasing at any | 12:15:20 |
| 2 | | time since 2005? | 12:15:24 |
| 3 | A. | I can't identify which specific ones. | 12:15:25 |
| 4 | Q. | Could you identify any? | 12:15:28 |
| 5 | A. | Not off the top of my head, no. | 12:15:29 |
| 6 | Q. | Okay.  I'm going to go ahead and list | 12:15:40 |
| 7 | | them for you. | 12:15:43 |
| 8 | A. | Okay. | 12:15:44 |
| 9 | Q. | This is a long list.  I'll warn you. | 12:15:44 |
| 10 | | So for each, if you can tell me if | 12:15:46 |
| 11 | | they've had required parking charges, and, to the | 12:15:49 |
| 12 | | best of your knowledge, the time period that those | 12:15:52 |
| 13 | | charges have been in effect. | 12:15:55 |
| 14 | | Aspen Park Apartments? | 12:15:57 |
| 15 | A. | I don't know. | 12:16:00 |
| 16 | Q. | Arroyo Vista Apartments? | 12:16:00 |
| 17 | A. | I don't know. | 12:16:04 |
| 18 | Q. | Aztec Springs? | 12:16:04 |
| 19 | A. | I don't know. | 12:16:06 |
| 20 | Q. | Brighton Place? | 12:16:08 |
| 21 | A. | I don't know. | 12:16:11 |
| 22 | Q. | Broadmoor? | 12:16:13 |
| 23 | A. | I don't know. | 12:16:15 |
| 24 | Q. | Brookside? | 12:16:16 |
| 25 | A. | I don't know. | 12:16:18 |

Page 78

| | | | |
|---|---|---|---|
| 1 | Q. | Bent tree? | 12:16:21 |
| 2 | A. | I don't know. | 12:16:23 |
| 3 | Q. | Bellwood Park? | 12:16:24 |
| 4 | A. | I don't know. | 12:16:27 |
| 5 | Q. | California Place? | 12:16:34 |
| 6 | A. | I don't know. | 12:16:34 |
| 7 | Q. | Canyon Club Apartments? | 12:16:36 |
| 8 | A. | I don't know. | 12:16:41 |
| 9 | Q. | Cimarron Place Apartments? | 12:16:43 |
| 10 | A. | I don't know. | 12:16:46 |
| 11 | Q. | Chesapeake Commons? | 12:16:47 |
| 12 | A. | I don't know. | 12:16:50 |
| 13 | Q. | Crossroads? | 12:16:55 |
| 14 | A. | I don't know. | 12:16:56 |
| 15 | Q. | Creekside Villa Apartments? | 12:16:57 |
| 16 | A. | I don't know. | 12:17:01 |
| 17 | Q. | Courtyard at Central Park? | 12:17:03 |
| 18 | A. | I don't know. | 12:17:07 |
| 19 | Q. | Enclave at 1400 South? | 12:17:07 |
| 20 | A. | I don't know. | 12:17:13 |
| 21 | Q. | Landing at Fancher Creek? | 12:17:17 |
| 22 | A. | I don't know. | 12:17:21 |
| 23 | Q. | Do you think there is going to be -- I'm | 12:17:22 |
| 24 | | halfway through the list. | 12:17:27 |
| 25 | | Do you think there is going to be any | 12:17:28 |

Page 79

| | | | |
|---|---|---|---|
| 1 | | property for which your response is anything other | 12:17:30 |
| 2 | | than "I don't know"? | 12:17:32 |
| 3 | A. | I don't know. | 12:17:33 |
| 4 | Q. | Okay. | 12:17:34 |
| 5 | A. | That's a lot of communities, so -- | 12:17:35 |
| 6 | Q. | Of course.  I'm just trying to get the | 12:17:37 |
| 7 | | information if you have it.  So I'll go through | 12:17:40 |
| 8 | | the list.  It doesn't take that long. | 12:17:42 |
| 9 | | Bridges at Five Oaks? | 12:17:44 |
| 10 | A. | I don't know. | 12:17:46 |
| 11 | Q. | Florentine Villas? | 12:17:48 |
| 12 | A. | I don't know. | 12:17:49 |
| 13 | Q. | Glen Oaks Apartments? | 12:17:51 |
| 14 | A. | I don't know. | 12:17:53 |
| 15 | Q. | Goldstone Place Apartments? | 12:17:55 |
| 16 | A. | I don't know. | 12:17:59 |
| 17 | Q. | Lofts at 7800? | 12:18:00 |
| 18 | A. | I don't know. | 12:18:03 |
| 19 | Q. | Logan Park? | 12:18:04 |
| 20 | A. | I don't know. | 12:18:07 |
| 21 | Q. | Metropolitan Place Apartments? | 12:18:07 |
| 22 | A. | I don't know. | 12:18:12 |
| 23 | Q. | Overlook at Pantano? | 12:18:13 |
| 24 | A. | I don't know. | 12:18:17 |
| 25 | Q. | Oak Valley Apartments? | 12:18:17 |

Page 80

| | | | |
|---|---|---|---|
| 1 | A. | I don't know. | 12:18:19 |
| 2 | Q. | Palladio Apartments? | 12:18:22 |
| 3 | A. | I don't know. | 12:18:24 |
| 4 | Q. | Point Natomas Apartments? | 12:18:25 |
| 5 | A. | I don't know. | 12:18:28 |
| 6 | Q. | Piedmont Apartments? | 12:18:29 |
| 7 | A. | I don't know. | 12:18:31 |
| 8 | Q. | Point Natomas apartments? | 12:18:32 |
| 9 | A. | I think that was already repeated, but I | 12:18:37 |
| 10 | don't know. | | 12:18:39 |
| 11 | Q. | You're right.   It was. | 12:18:39 |
| 12 | | Promontory Point Apartments? | 12:18:41 |
| 13 | A. | I don't know. | 12:18:43 |
| 14 | Q. | Quail Run Apartments? | 12:18:45 |
| 15 | A. | I don't know. | 12:18:49 |
| 16 | Q. | Revo 225? | 12:18:51 |
| 17 | A. | I don't know. | 12:18:53 |
| 18 | Q. | Remington Apartments? | 12:18:54 |
| 19 | A. | I don't know. | 12:18:57 |
| 20 | Q. | River Oaks Apartments? | 12:18:58 |
| 21 | A. | I don't know. | 12:19:01 |
| 22 | Q. | River Point Apartments? | 12:19:02 |
| 23 | A. | I don't know. | 12:19:06 |
| 24 | Q. | Rio Seco Apartments? | 12:19:07 |
| 25 | A. | I don't know. | 12:19:09 |

Page 81

| | | | |
|---|---|---|---|
| 1 | Q. | The Reserve at View 78? | 12:19:10 |
| 2 | A. | I don't know. | 12:19:13 |
| 3 | Q. | Ranchwood Apartments? | 12:19:16 |
| 4 | A. | I don't know. | 12:19:19 |
| 5 | Q. | Sands Apartments? | 12:19:20 |
| 6 | A. | I don't know. | 12:19:22 |
| 7 | Q. | Springwood Apartments? | 12:19:23 |
| 8 | A. | I don't know. | 12:19:27 |
| 9 | Q. | Spring Villas Apartments? | 12:19:28 |
| 10 | A. | I don't know. | 12:19:30 |
| 11 | Q. | Shadow Way Apartments? | 12:19:31 |
| 12 | A. | I don't know. | 12:19:33 |
| 13 | Q. | Wasatch Hills Apartments? | 12:19:34 |
| 14 | A. | I don't know. | 12:19:36 |

15          Q.   Have any Wasatch properties ever required      12:19:37

16     tenants to rent storage space as a condition of        12:19:52

17     leasing?                                                12:19:55

18          A.   Not that I'm aware of.                        12:19:56

19          Q.   Are there any other additional service        12:19:57

20     charges besides renter's insurance, which I            12:19:59

21     understand is a slightly different beast, that         12:20:01

22     have been required as a condition of leasing at        12:20:03

23     any Wasatch properties?                                12:20:06

24          A.   Not that I'm aware of.                        12:20:07

25          Q.   Okay.                                         12:20:08

Page 82

```
 1    discussion at any of these meetings on a regular      14:15:49

 2    basis?                                                14:15:51

 3          A.   Yeah.  I mean, not necessarily.  I mean,   14:15:52

 4    it's a sales industry, but I'm not a big, strong      14:15:56

 5    proponent of pushing that.  So for me                 14:15:59

 6    specifically, you know, there would be maybe,         14:16:02

 7    "Hey, do you want to do this," but that was not       14:16:04

 8    something I was always pushing in my portfolio,       14:16:07

 9    no.                                                   14:16:10

10          Q.   What meetings would it come up in?         14:16:10

11          A.   I don't know if it would come up in        14:16:12

12    meetings.  I mean, we have reports, top leasing       14:16:15

13    agent.  We want to reward people that way, right?     14:16:18

14    We've stopped doing that now, but in our monthly      14:16:21

15    newsletter is the person that leased the most         14:16:23

16    apartments.  That's probably the most common, but    14:16:28

17    we've stopped doing -- when we went to our green      14:16:30

18    initiative, we stopped doing newsletters a couple     14:16:32

19    years ago.                                            14:16:36

20          Q.   Okay.  So how are property-level people    14:16:37

21    trained in sales tactics, then?                       14:16:43

22          A.   We do have very specific training.  We     14:16:45

23    have, you know, our training videos.  We have our     14:16:48

24    Wasatch University platform.  We have evolved it      14:16:51

25    over the years.  We partner with Grace Hill, which    14:16:53
```

Page 138

1    is a national platform.                          14:16:58

2        Q.   Can I stop and ask you what the Wasatch   14:16:59

3    University program is?                           14:17:02

4        A.   Yeah, Wasatch University program just   14:17:02

5    houses all of our training videos.              14:17:04

6        Q.   Okay.  Do you have training videos on   14:17:06

7    sales on that program?                          14:17:11

8        A.   Yes.                                    14:17:13

9        Q.   And including sales for additional     14:17:14

10   service charges?                                14:17:16

11       A.   I don't know on that.  I don't know.   14:17:17

12       Q.   Would you be able to find out?         14:17:24

13       A.   In the library it would be available,  14:17:31

14   yeah.  It's never been -- I mean, ours has been 14:17:33

15   just leasing in general.  So, I mean, if it's in 14:17:37

16   the library, it would be in the library.        14:17:39

17       Q.   If it's in the library of videos on    14:17:41

18   Wasatch University?                             14:17:45

19       A.   Correct, yes.                          14:17:46

20       Q.   Okay.  What about Section 8?  Is there -- 14:17:47

21   are there any videos on Section 8?              14:17:51

22       A.   I don't -- I don't recall either.      14:17:53

23       Q.   That's something that could be checked by 14:18:03

24   looking at the library?                         14:18:09

25       A.   Yes.  I haven't specifically sat through 14:18:10

Page 139

```
 1                        REPORTER'S CERTIFICATE
 2

     STATE OF IDAHO   )
 3                    )  ss.
     COUNTY OF ADA    )
 4

 5         I, AMY E. SIMMONS, Certified Shorthand Reporter
 6   and Notary Public in and for the State of Idaho, do hereby
 7   certify:
 8         That prior to being examined, the witness named in
 9   the foregoing deposition was by me duly sworn remotely to
10   testify to the truth, the whole truth and nothing but the
11   truth;
12         That said deposition was taken down by me in
13   shorthand at the time and place therein named and
14   thereafter reduced to typewriting under my direction, and
15   that the foregoing transcript contains a full, true
16   and verbatim record of said deposition.
17         I further certify that I have no interest in the
18   event of the action.
19         WITNESS my hand and seal this 23 day of September,
20   2021.

21

22                          AMY E. SIMMONS
                            CSR, RPR, CRR, CRC and Notary
23                          Public in and for the
                            State of Idaho.
24

25   My Commission Expires: 06-13-2022
```

Page 250

# EXHIBIT 19

**Anne Bellows**

---

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Friday, October 8, 2021 11:12 AM |
| **To:** | Matthews, Ryan |
| **Cc:** | Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey; Lindsay Nako; Jocelyn Larkin; Brenna Wood Fitzpatrick |
| **Subject:** | RE: Terry - Wasatch University |

Hi Ryan,

Thanks for sharing the indices.  We believe the documents identified below are responsive to our Requests for Production. I've highlighted the ones that are facially responsive in yellow so you can first get those produced.  The others are documents related to Preferred Compliance, and would be responsive to the extent they relate to Section 8.  As we discussed yesterday on the call, Plaintiffs request that these documents be produced as soon as possible, and no later than Oct. 14.

**Campaigns for WPM**
Please review the following document and produce if it contains any information or reference to Section 8  (*see* Terry RFP 27; Jarvis 2021 Dep. at 295 (testifying that Preferred Compliance may work on Section 8 compliance "where it impacts each individual file")).
- Preferred Compliance LIHTC

**Video and Video How To List**

**Sheet 1**
For the same reasons mentioned above, please produce the following if they contain any information about or reference to Section 8 (*see* Terry RFP 27, Jarvis 2021 Dep. at 295)
- WPM – Preferred Compliance Tax Credit Webinar, 11.2009
- WPM – Preferred Compliance Tax Credit Webinary, 08.2019

Please produce the following as responsive to Terry RFPs 30 and 33:
- WPM – The Delinquency Hero

**Training How Tos & Forms**
Please produce the following as responsive to Terry RFPs 30 and 33:
- HERO Coaching for Managers – "HERO Coaching Resident Rent Call"
- Promise to Pay How To
- AR Collections Best Practice Video

Please produce the following as responsive to Terry RFP 29:
- RentPlus: How to Enroll a Resident
- Assurant "Pay with Rent" Program Roll-Out
- RentPlus Refresher Training Webinar 4.14.21

Please produce the following as responsive to Terry RFP 28:
- Leasing Kit
- Renewals in Rentcafe'

**Marketing How Tos & Forms**

Please produce the following as responsive to Terry RFP 29:
- Promoting & Selling Smart Apartments
- Selling Rent Plus to Prospects

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

---

**From:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Sent:** Thursday, October 7, 2021 10:35 AM
**To:** Anne Bellows <abellows@gbdhlegal.com>
**Subject:** Terry - Wasatch University

Anne,

Here's these two docs for your review. Please note that they're being produced informally to facilitate a meet and confer, and that they are confidential documents subject to the Court's protective order. Looking forward to discussing.

-Ryan

 **Ryan Matthews**
**Attorney**
Ryan.Matthews@lewisbrisbois.com

**T: 916.646.8213  F: 916.564.5444**

2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

# EXHIBIT 20

```
 1                    UNITED STATES DISTRICT COURT
 2                  EASTERN DISTRICT OF CALIFORNIA
 3                       SACRAMENTO DIVISION
 4
 5   UNITED STATES OF AMERICA,   )
     ex rel. DENIKA TERRY and    )
 6   ROY HUSKEY III, and each    )
     of them for themselves      )
 7   individualy, and for all    )
     other persons similarly     )
 8   situated and on behalf of   )
     the UNITED STATES OF        )
 9   AMERICA,                    )
10            Plaintiffs,        )
11   v.                          )   Case No.
12   WASATCH ADVANTAGE GROUP,    )   2:15-cv-00799-KJM-DB
     LLC, WASATCH PROPERTY       )
13   MANAGEMENT, INC., WASATCH   )
     POOL HOLDINGS, LLC,         )
14   CHESAPEAKE COMMONS HOLDINGS)
     LLC, LOGAL PARK APARTMENTS,)
15   LLC, LOGAL PARK APARTMENTS,)
     LP, and DOES 1-30,          )
16            Defendants.        )
     _____)
17
18                            DEPOSITION OF
19                            DAVE TANFORAN
20                   WEDNESDAY, AUGUST 9, 2017
21
22   Reported by:
23   TAMARA BERLIN, CSR 9706
24   Job No. 2674876
25   Pages 1 - 233
```

                                                    Page 1

```
 1                  UNITED STATES DISTRICT COURT
 2                 EASTERN DISTRICT OF CALIFORNIA
 3                     SACRAMENTO DIVISION
 4
    UNITED STATES OF AMERICA,   )
 5  ex rel. DENIKA TERRY and    )
    ROY HUSKEY III, and each    )
 6  of them for themselves      )
    individualy, and for all    )
 7  other persons similarly     )
    situated and on behalf of   )
 8  the UNITED STATES OF        )
    AMERICA,                    )
 9          Plaintiffs,         )
    v.                          )   Case No.
10  WASATCH ADVANTAGE GROUP,    )   2:15-cv-00799-KJM-DB
    LLC, WASATCH PROPERTY       )
11  MANAGEMENT, INC., WASATCH   )
    POOL HOLDINGS, LLC,         )
12  CHESAPEAKE COMMONS HOLDINGS )
    LLC, LOGAL PARK APARTMENTS, )
13  LLC, LOGAL PARK APARTMENTS, )
    LP, and DOES 1-30,          )
14          Defendants.         )
    _____ )
15
16          Deposition of DAVE TANFORAN, taken on behalf
17      of the Plaintiffs, at One Capitol Mall, Suite 240,
18      Sacramento, California, beginning at 10:35 a.m. and
19      ending at 5:31 p.m., on Wednesday, August 9, 2017,
20      before TAMARA BERLIN, Certified Shorthand Reporter
21      No. 9706.
22
23
24
25
```

Page  2

```
 1                     A P P E A R A N C E S

 2

 3    For the Plaintiffs:

 4         LAW OFFICES OF ANDREW WOLFF, PC

 5         BY:  DAVID LAVINE, ESQ.

 6         1956 Webster Street

 7         Suite 275

 8         Oakland, California  94612

 9         (510) 834-3300

10         david@awolfflaw.com

11

12    For the Defendant:

13         LEWIS, BRISBOIS, BISGAARD & SMITH, LLP

14         BY:  YOON-WOO NAM, ESQ.

15         2020 West El Camino Avenue

16         Suite 700

17         Sacramento, California  95833

18         (916) 646-8214

19         Yoon-Woo.Nam@lewisbrisbois.com

20

21

22

23

24

25

                                              Page  3
```

```
1    complain to any of the property managers or supervisor,

2    perhaps to yourself, that they didn't think that the

3    additional service charges were fair in their case?

4         A.   I haven't, no.

5         Q.   Have you heard any stories like that?

6         A.   Not until this came up.

7         Q.   Since have you -- I don't mean from the case, I mean

8    from tenants.

9         A.   No.  No, I haven't.

10        Q.   Have you heard about any tenants at Chesapeake or

11   other properties being charged for parking, even though they

12   didn't have a car?

13             MR. NAM:  Objection; outside the scope of this

14   deposition.

15             THE WITNESS:  They could be.

16   BY MR. LAVINE:

17        Q.   Is the parking charge -- let's start at Chesapeake,

18   since it's the biggest one, I guess.

19             Is a parking charge required at Chesapeake

20   Commons?

21             MR. NAM:  Objection; outside of scope of this

22   deposition.

23             THE WITNESS:  For a covered parking space.

24   BY MR. LAVINE:

25        Q.   Is every tenant at Chesapeake Commons required to
```

1    have a covered parking space?

2            MR. NAM:  Objection; outside of scope of this

3    deposition.

4            THE WITNESS:  Move in, yes.

5            MR. NAM:  Vague as to time.

6    BY MR. LAVINE:

7        Q.   How much is the covered parking charge?

8            MR. NAM:  Objection; vague as time, outside the

9    scope of this deposition.

10           THE WITNESS:  I've seen ten and fifteen dollars,

11    depending on when they moved in.

12    BY MR. LAVINE:

13       Q.   So it depends on time, not location?

14       A.   It could be either.

15       Q.   But it's always been, since your memory, either $10

16    or $15 for that charge?

17       A.   Yes.

18       Q.   And it is required of all tenants at move in?

19           MR. NAM:  Objection; outside the scope of his

20    deposition.

21           THE WITNESS:  Depending on the property --

22    BY MR. LAVINE:

23       Q.   How much at Chesapeake?

24       A.   -- if they have -- yes.

25       Q.   All right.  You said at move in.  At some point is

                                              Page 82

```
1    automatically be assessed?
2         A.   It's on there, yes.
3         Q.   And it will stay on there until -- unless and until
4    a reasonable accommodation request comes your way?
5         A.   Yes.
6              MR. NAM:  Again, I object that this is outside the
7    scope of his deposition.
8              MR. LAVINE:  Let me ask you about Renters Insurance
9    for a minute.
10        Q.   Are you aware if that is an item on the Additional
11   Service Agreements?
12        A.   Yes.
13             MR. NAM:  Objection; overbroad.
14   BY MR. LAVINE:
15        Q.   Is Renters Insurance required at Chesapeake
16   Commons?
17             MR. NAM:  Objection; outside the scope of this
18   deposition.
19             THE WITNESS:  Yes.
20   BY MR. LAVINE:
21        Q.   Is it required at all properties in your region?
22        A.   Yes.
23        Q.   And is that true of Section 8 tenants as well?
24        A.   I think it's optional at all properties.
25        Q.   Are you sure?
```

Page 84

1     BY MR. LAVINE:

2         Q.   Have you ever looked into that question?

3         A.   No.

4         Q.   As you sit here today, are you sure that, at least

5     at some of the properties you supervise, the Renters

6     Insurance is optional?

7         A.   I'm not positive.

8         Q.   I need to go back to parking for a minute, because I

9     forgot to close that loop.

10             Is a parking charge assessed at move in at the other

11    eight properties, apart from Chesapeake, that you manage?

12             MR. NAM:   Objection; outside the scope of his

13    deposition.

14             THE WITNESS:   I think it is.   I'm just trying to

15    think.   If it's not available, it may not be.

16    BY MR. LAVINE:

17        Q.   But if it is available, it's required at move in?

18        A.   Yes.

19        Q.   For Section 8 tenants as well?

20        A.   Yes.

21        Q.   Will the properties -- the non-Chesapeake

22    properties, the other properties -- entertain a request for

23    accommodation to not pay that charge later in the tenancy?

24        A.   Yes.

25             MR. NAM:   Objection to the extent it's outside the

Page 86

```
1        Q.   Would a tenant -- say a Section 8 tenant telling you

2   that they couldn't afford it be a good enough reason?

3             MR. NAM:  Objection; incomplete hypothetical.

4             THE WITNESS:  I would discuss that with my

5   supervisor.

6   BY MR. LAVINE:

7        Q.   Which supervisor, again?  Tell me.

8        A.   Shawn Fetter.

9        Q.   Right.  Have you ever had a request like that come

10  your way?

11       A.   For Renters Insurance?

12       Q.   Yes.

13       A.   No.

14       Q.   For any other charge, apart from parking?

15       A.   Not apart from parking.

16       Q.   And just to be clear, Renters Insurance can be

17  attained -- obtained through a Wasatch source that you use or

18  the rent -- the renter can get it separately?

19       A.   That's correct.

20       Q.   Does the renter have to show proof of obtaining it

21  separately if they go that way?

22       A.   Yes.

23       Q.   In what format?

24       A.   Copy of their policy.

25       Q.   Do you know how many tenants opt for the
```

Page 91

```
 1          A.    I believe so, yes.

 2          Q.    You're not sure?

 3          A.    No.

 4          Q.    Do you remember discussing it with Ms. Gamboa?

 5          A.    I don't remember the specific discussion, but it --

 6     that would -- that would be who I would have talked about it

 7     with.

 8          Q.    But you don't remember, firmly, what that decision

 9     was?

10          A.    I believe they were granted.

11          Q.    Just the one unit?

12          A.    Yes.

13          Q.    All right.  If a tenant at move in -- let's say

14     Section 8 tenant at move in didn't want that charge, could

15     they opt out of it at that point?

16          A.    At --

17                MR. NAM:  Vague as to time.

18                THE WITNESS:  At Chesapeake?

19                MR. LAVINE:  Yes.

20                THE WITNESS:  And what if they -- are you talking

21     about if it would be today?

22                MR. LAVINE:  Yes.

23                THE WITNESS:  They're moving in today?

24                MR. LAVINE:  Yes.

25                THE WITNESS:  And they wanted to not have a washer
```

Page 95

1    and dryer?

2              MR. LAVINE:   Yes.

3              THE WITNESS:   We -- we would require it.

4    BY MR. LAVINE:

5         Q.   You would require them to have it even so?

6         A.   Yes.

7         Q.   And charge them for it?

8         A.   Yes.

9         Q.   Has it ever been different since you've been there?

10        A.   I -- not since I've been here.

11        Q.   Have you heard in earlier times that it was

12   different?

13        A.   I don't -- I don't know if they've always had

14   washers and dryers.

15        Q.   Let me go over just to the other properties under

16   your supervision.  And I'm going to try to do them as a

17   group, then I'll break them out as need be.

18             Do all the units in all the other properties have

19   washer/dryer hookups in unit?

20             MR. NAM:  Objection; outside the scope of his

21   deposition with respect to any Bay Area residential

22   properties.

23             THE WITNESS:  No.

24   BY MR. LAVINE:

25        Q.   Do some of them?

Page 96

```
 1                      REPORTER'S CERTIFICATE

 2

 3                I, the undersigned, a Certified Shorthand

 4     Reporter of the State of California, do hereby certify:

 5                That prior to being examined, the witness

 6     named in the foregoing proceedings was previously sworn to

 7     testify to the truth, the whole truth, and nothing but the

 8     truth; that said proceedings were taken by me

 9     stenographically and were thereafter transcribed into

10     typewriting under my direction, said transcript being a true

11     and accurate transcription of my shorthand notes.

12                I further certify that I am neither

13     financially interested in the action nor a relative or

14     employee of any attorney of any of the parties.  In witness

15     whereof, I have this date subscribed my name.

16                Dated: August 23, 2017.

17

18

19

20

21

22

23

24          TAMARA BERLIN, CSR #9706

25          Certified Shorthand Reporter

                                             Page  233
```

# EXHIBIT 21

1   **iLEWIS BRISBOIS BISGAARD & SMITH LLP**
    JOSEPH A. SALAZAR JR., SB# 169551
2     E-Mail: Joe.Salazar@lewisbrisbois.com
    RYAN MATTHEWS, SB# 311674
3     E-Mail: Ryan.Matthews@lewisbrisbois.com
    2020 West El Camino Avenue, Suite 700
4   Sacramento, California 95833
    Telephone: 916.564.5400
5   Facsimile: 916.564.5444

6   Attorneys for Wasatch Advantage Group, LLC;
    Wasatch Property Management, Inc.; Wasatch
7   Pool Holdings, LLC, Chesapeake Commons
    Holdings, LLC; Logan Park Apartments, LLC;
8   Logan Park Apartments, LP

9

10                **UNITED STATES DISTRICT COURT**

11              **EASTERN DISTRICT OF CALIFORNIA**

12                    **SACRAMENTO DIVISION**

13

14   UNITED STATES OF AMERICA, ex rel.          CASE NO. 2:15-cv-00799-KJM-DB
     DENIKA TERRY and ROY HUSKEY III,
15   and each of them for themselves individually,   **DEFENDANTS' RESPONSES TO**
     and for all other persons similarly situated and   **PLAINTIFF DENIKA TERRY'S**
16   on behalf of the UNITED STATES OF           **REQUEST FOR ADMISSIONS, SET TWO**
     AMERICA,
17                                                The Hon. Kimberly J. Mueller
                Plaintiffs/Relators,
18                                                Trial Date:      None Set
                vs.
19
     WASATCH ADVANTAGE GROUP, LLC,
20   WASATCH PROPERTY MANAGEMENT,
     INC., WASATCH POOL HOLDINGS, LLC,
21   CHESAPEAKE COMMONS HOLDINGS,
     LLC, LOGAN PARK APARTMENTS, LLC;
22   LOGAN PARK APARTMENTS, LP,

23                Defendants.

24

25   PROPOUNDING PARTY:        Plaintiff, Denika Terry

26   RESPONDING PARTY:         Defendants, Wasatch Advantage Group, LLC; Wasatch Property

27                             Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake

28                             Commons Holdings, LLC; Logan Park Apartments, LLC; Logan

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1                         Park Apartments, LP

2   SET NO.:                  TWO

3   **REQUEST FOR ADMISSION NO. 11:**

4         Admit that at all times since April 14, 2005, DEFENDANTS, in all of their residential

5 properties, had a practice of not including ADDITIONAL SERVICE CHARGES in the amount of

6 RENT TO OWNER reflected on documents submitted to public housing authorities

7   **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

8      Admit.

9   **REQUEST FOR ADMISSION NO. 12:**

10         Admit that at all times since April 14, 2005, DEFENDANTS, in all of their residential

11 properties, had a practice of not including ADDITIONAL SERVICE CHARGES in the amount of

12 RENT TO OWNER reflected on the Request for Tenancy Approval form required to obtain

13 approval of SECTION 8 tenancies.

14   **RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

15      Admit.

16   **REQUEST FOR ADMISSION NO. 13:**

17         Admit that at all times since April 14, 2005, DEFENDANTS, in all of their residential

18 properties, had a practice of not including ADDITIONAL SERVICE CHARGES on the Request

19 for Tenancy Approval form required to obtain approval of SECTION 8 tenancies.

20   **RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

21      Deny.

22   **REQUEST FOR ADMISSION NO. 14:**

23         Admit that DEFENDANTS have served notices to SECTION 8 tenants stating that the

24 tenants must pay amounts allegedly owed or may be subject to eviction, where the amounts

25 demanded by the notice included unpaid ADDITIONAL SERVICE CHARGES, including the

26 notices contained in the tenant files produced in this case at AP002356, BT00189, BT000191,

27 BT000505, BT00519, 27     BT000602, BT000603, BT003846, BT003862, BT004182,

28 BT004290, BT004295, BT004421, BT004459, BT007015, BT008096, BT010946, BT010958,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  BT010966, BT011014, BT011017, CAP004390, CAP007193, CAP008222, CP009887-88,

2  CP009889-90, CPC000654-55, CPC000660-61, CPC009005, CPC010700, CPC015825,

3  CPC016159, CPC016980, CPC020517, CPC021867, CPC023341, CPC023344, CPC026384,

4  CPC028201, CPC033675, CPC033676, CPC033677, CPC03580, CPC03581, CPC034585,

5  CPC034586, CPC034660, CPC036853, CPC036904, CPC036928, CPC036933, CPC036945,

6  CPC036953, CPC036974, CPC038384, CPC038385, CPC039842-43, CR000522, CR001502,

7  CR001579, CR002292, CR002303, CR002306, CR002406, CR003352, CR003358, CR003583,

8  CR003699, CR003815, CR003815, CR004019, CR004397, CR004733, CR004939, CV000502-

9  03, CV002104-05, CV002536, CV002966, CV003577, CVV004056, CV004320, CV004356,

10  CV005701, CV005707, CV006060, CY017492, CY021234, CY021482, CY021493, CY023114,

11  CY026242, ENCLAVE000317, ENCLAVE000320, ENCLAVE001666, ENCLAVE001667,

12  ENCLAVE001669, ENCLAVE001671, ENCLAVE001672, ENCLAVE001674,

13  ENCLAVE001784, ENCLAVE001790, ENCLAVE001792, ENVLAVE002677,

14  ENCLAVE002833, ENCLAVE003290, ENCLAVE003896, ENCLAVE003898,

15  ENCLAVE003899, FOT001104, PP000518, SPW000805, SPW001675, SPW001975,

16  SPW001980, SPW001983, SPW001988, SPW001989, SPW002008, SPW002765, SPW003135,

17  SPW003185, SPW004039, SPW004039, SPW004085, SPW004951, SPW004971, SPW005455,

18  SPW005654, SPW005925, SPW005992, SPW006003, SPW006004, SPW006264, SPW006437,

19  SVT002679-80, SVT003884, SWT000374, SWT002357, SWT002824, SWT003139,

20  SWT003323, SWT003325, SWT003599, SWT003636, SWT004032, SWT004525, SWT004539,

21  SWT004576, SWT003582, SWT004586, SWT004588, SWT004607, SWT004615, SWT004617,

22  SWT004622, SWT004631, SWT004635, SWT004650, SWT004657, SWT004661, SWT004671,

23  SWT004674, SWT004675, SWT004679, SWT004684, SWT004975, SWT005015, SWT005018,

24  SWT005020, SWT005023, SWT005025, SWT005028, SWT005037, SWT005039, SWT005050

25  SWT005058, SWT005060, SWT005062, SWT005063, SWT005065, SWT005074, SWT005661,

26  SWT005668, SWT005683, SWT005684, SWT005710, SWT005747, SWT006370, SWT006371,

27  SWT006379, SWT006393, SWT006402, SWT006425, SWT006659, SWT006662, SWT006853,

28  SWT006876, SWT007480, SWT007481, SWT007484, SWT007485, SWT007499, SWT007684,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   SWT007689, SWT007693, SWT007696, SWT007698, SWT007703, SWT007710, SWT007711,

2   SWT007716, SWT007722, SWT007723, SWT007748, SWT007924, SWT007928, SWT007932,

3   SWT008223, SWT008279, SWT008589, SWT008594, SWT008598, SWT008601, SWT008608,

4   SWT008611, SWT008612, SWT008615, SWT008618, SWT008619, SWT008626, SWT008628,

5   SWT008635, SWT008638, SWT008643, SWT008644, SWT008644, SWT008657, SWT008661,

6   SWT008670, SWT008676, SWT008680, SWT009043, SWT009318, SWT009324, SWT009329,

7   SWT009337, SWT009340, SWT009341, SWT009359, SWT009364, SWT009364, SWT009366,

8   SWT009369, SWT009381, SWT009385, SWT009387, SWT009388, SWT009680, SWT009683,

9   SWT009688, SWT009694, SWT009697, SWT009701, SWT009705, SWT009716, SWT009718,

10  SWT009739, SWT009745, SWT010043, SWT010047, SWT010377, SWT010382, SWT010386,

11  SWT010390, SWT010394, SWT010400, SWT010403, SWT010411, SWT010518, SWT010530,

12  SWT010532, SWT010533, SWT010549, SWT011019, SWT011244, SWT011271, SWT011675,

13  SWT011676, SWT011677, SWT012386, SWT012414, SWT012421, SWT012957, SWT012982,

14  SWT012985, SWT012994, SWT013014, SWT013016, SWT013020, SWT013022, SWT013032,

15  SWT013368, SWT013654, SWT014378, SWT015070, SWT015090, SWT015996, VIT002190,

16  VIT004784.

17  **RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

18      Admit.

19  **REQUEST FOR ADMISSION NO. 15:**

20      Admit that at all times since April 14, 2005, DEFENDANTS have had a policy of raising

21  the BASE RENT for their SECTION 8 tenants to the maximum allowable under the applicable

22  rules governing the Section 8 program on at least an annual basis.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    **RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

2          Defendants object to this Request as being vague and ambiguous as to "the maximum

3    allowable under the applicable rules governing the Section 8 program". When Defendants seek to

4    increase the rent charged to a Section 8 tenant, they increase it to the market rate for a comparable

5    unit, and are required to seek approval for said increase from the local housing authority. Such

6    approval requires justifying the new market rate using comparable local units.

7

8    DATED:  July 19, 2021                    LEWIS BRISBOIS BISGAARD & SMITH LLP

9

10

11                                          By: _____
                                                RYAN J. MATTHEWS
12                                              Attorneys for Wasatch Advantage Group, LLC;
                                                Wasatch Property Management, Inc.; Wasatch
13                                              Pool Holdings, LLC, Chesapeake Commons
                                                Holdings, LLC; Logan Park Apartments, LLC;
14                                              Logan Park Apartments, LP

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFICATIONS TO FOLLOW

**FEDERAL COURT PROOF OF SERVICE**

USA-Terry v Wasatch Property Mgmt
2:15-cv-00799 KJM DAD

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

At the time of service, I was over 18 years of age and not a party to the action.  My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On July 19, 2021, I served the following document(s):

-   DEFENDANTS' RESPONSES TO PLAINTIFF DENIKA TERRY'S REQUEST FOR ADMISSIONS, SET TWO

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒  (BY E-MAIL OR ELECTRONIC TRANSMISSION)  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on July 19, 2021, at Sacramento, California.

_____
Alicia Crespo



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**SERVICE LIST**
**USA-Terry v Wasatch Property Mgmt**
**2:15-cv-00799 KJM DAD**

| | |
|---|---|
| Andrew Wolff<br>Law Office of Andrew Wolff, PC<br>1956 Webster Street, Ste. 275<br>Oakland, CA 94612 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  510-834-3300<br>E-Mail:  andrew@awolfflaw.com |
| Jesse Newmark<br>CENTRO LEGAL DE LA RAZA<br>3022 International Blvd, Ste. 410<br>Oakland, CA 94601 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  (510) 437-1554 x115<br>Fax:  (510) 437-9164<br>Email:  jessenewmark@centrolegal.org<br>Email: malvarez@centrolegal.org |
| Laura L. Ho<br>Anne Bellows<br>Goldstein, Borgen, Dardarian & Ho<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612 | *Co-Counsel for Plaintiffs*<br><br>Tel.: 519-763-9800<br>Fax: 510-835-1417<br>Email: lho@gbdhlegal.com<br>Email: abellows@gbdhlegal.com<br>Email: sgrimes@gbdhlegal.com<br>Email: dvaldez@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com |
| Vincente Antonio Tennerelli<br>United States Attorney's Office<br>2500 Tulare Street, Suite 4401<br>Fresno, CA 93721 | *Attorney for Intervenor Plaintiff*<br>*United States of America*<br><br>Tel.: (559) 497-4080<br>Email: Vincente.Tennerelli@usdoj.gov<br>Email: joni.jones@usdoj.gov |


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# EXHIBIT 22

```
 1                IN THE UNITED STATES DISTRICT COURT
 2                  EASTERN DISTRICT OF CALIFORNIA
 3                        SACRAMENTO DIVISION
 4
 5    UNITED STATES OF AMERICA,    )
      ex rel. DENIKA TERRY, ROY    )
 6    HUSKEY, III, and TAMERA      )
      LIVINGSTON, and each of them)
 7    for themselves individually,)
      and for all other persons    )
 8    similarly situated and on    )
      behalf of the UNITED STATES )
 9    OF AMERICA,                   )
                                    )
10         Plaintiffs/Relators,    )
                                    )
11            vs.                   )  Case No.
                                    )  2:15-CV-00799-KJM-DB
12    WASATCH ADVANTAGE GROUP,      )
      LLC, WASATCH PROPERTY         )
13    MANAGEMENT, INC., WASATCH     )
      POOL HOLDINGS, LLC,           )
14    CHESAPEAKE COMMONS HOLDINGS,)
      LLC, LOGAN PARK APARTMENTS, )
15    LLC, LOGAN PARK APARTMENTS, )
      LP, and DOES 1-30,            )
16                                  )
                    Defendants.    )
17                                  )
18
19        VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF
20                 JAROM JOHNSON, CPM
21           Taken in Behalf of the Plaintiffs
22                  July 19th, 2021
23
24    Reported by:
25    Robin Reger, RPR, CSR
```

Page 1

1        BE IT REMEMBERED That, pursuant to Federal
Rules of Civil Procedure, the videotaped
2  videoconference deposition of JAROM JOHNSON, CPM,
was taken in behalf of the Plaintiffs, before Robin
3  Reger, Registered Professional Reporter, on Monday,
the 19th day of July, 2021, commencing at the hour
4  of 9:30 a.m., all parties appearing by Zoom.

5

6                --o0o--
7             APPEARANCES:
8  For the Plaintiffs and Relators:
          Anne P. Bellows
9          Laura L. Ho
          Carson Turner
10         GOLDSTEIN, BORGEN, DARDARIAN & HO
          155 Grand Avenue
11         Suite 900
          Oakland, CA 94612-3536
12         510-763-9800
          abellows@gbdhlegal.com
13         lho@gbdhlegal.com
14  For the Plaintiffs and Relators:
          Jesse Newmark
15         CENTRO LEGAL DE LA RAZA
          3022 International Boulevard
16         Suite 40
          Oakland, CA 94601
17         510-437-1863
          jessenewmark@centrolegal.org
18

19  For the Defendants:
          Ryan Matthews
20         LEWIS BRISBOIS BISGAARD & SMITH, LLP
          2020 West El Camino
21         Suite 700
          Sacramento, CA 95833
22         916-646-8213
          ryan.matthews@lewisbrisbois.com
23

24  Also Present:  Sean Grant, Videographer
25

                                     Page  2

```
 1   BY MS. BELLOWS:
 2        Q     So if the tenant was required to pay the
 3   additional service charges as a condition of living
 4   in their unit, would that be qualify as rent, in
 5   your mind?
 6        A     If they are required to pay it in order
 7   to live there?
 8        Q     Yes.
 9        A     Yeah, I'm just trying to think of an
10   example of what that would be, but --
11             MR. MATTHEWS:  I'm going to register the
12        same objections.
13             THE WITNESS:  Rent would be the ability
14        to occupy the space.  So if you can't occupy
15        the space, you can't very well rent it.
16   BY MS. BELLOWS:
17        Q     So if you are told you have to pay this
18   amount or leave, that would qualify as rent?
19        A     If it's a required charge, without
20   option, I would say if you can't be in the space
21   then, yes, that would be rent.
22        Q     Can a tenant be evicted for failing to
23   pay an additional service charge?
24        A     No.
25        Q     What's your basis for saying that?
```

Page 58

1     Q     And then do you see what the attachment
2  is that's listed?
3     A     Yeah.  Is that the document we just
4  looked at?
5     Q     It is, at least a version of the
6  document.  Why don't you go ahead and -- do you want
7  to go ahead and read the name of the attachment
8  while I'm doing that, out loud for the record?
9     A     "Section 8 - How-To Instruction."
10                    (Exhibit No. 12 was marked.)
11  BY MS. BELLOWS:
12     Q     Okay.  So now I've marked Exhibit 12 for
13  the record, and this is -- it says, "How-To Voucher
14  Rents (i.e. Section 8 Rents)" is the title of the
15  document, and it's got a Bates of WCDS 035744.
16     A     Okay.
17     Q     I'll go ahead and represent to you that
18  based on the metadata produced by defendants this
19  was an attachment to that email.
20     A     Okay.
21     Q     Okay.  So this is a training document
22  that's provided to Wasatch Property Management
23  personnel; correct?
24     A     Yeah.  This would be, uh-huh.  It's not
25  in our traditional how-to structure, but, yeah, it

                                      Page 115

1    appears to be, yes.

2       Q      Okay.  And what's the objective of this

3    training, according to the document?

4       A      This is relative to something called

5    overhang.

6       Q      What's overhang?

7       A      Overhang is, on a tax credit community,

8    the ability to have a voucher rent exceed the

9    low-income housing tax credit rent.

10      Q      Okay.  And why is that?

11      A      It's the -- it's just a part of the

12   industry.  If you have a housing voucher, your rent

13   is set by the voucher rather than the low-income

14   housing rent.

15      Q      Okay.  Would you agree that the purpose

16   that's stated in sort of the very beginning of the

17   document is to maximize rents on the tax credit

18   property?

19      A      Yeah, absolutely.

20      Q      And that would have been a goal for

21   Wasatch Property Management?

22      A      Absolutely, yeah.  Yeah, I mean, I think

23   if you look at this, that would be -- this specific

24   procedure would be -- that would be the use of this

25   procedure would be the goal, yeah.

Page 116

```
 1        Q      This is inside YARDI?

 2        A      Correct.

 3        Q      Would it be in, like, the tenant ledgers

 4   or some other part of YARDI?

 5        A      No.  It would be -- it would just be

 6   more in, like, the configuration.

 7        Q      Okay.  Are you aware of any other

 8   residential properties managed by Wasatch that have

 9   mandatory parking charges?

10        A      For any tenant or for housing tenants?

11        Q      Is there a difference?

12        A      Yes.  There is a difference.

13        Q      Okay.  For housing tenants?

14        A      I'm not aware of any, no.

15        Q      What about for nonhousing tenants?

16        A      Yes.  So some of our projects have

17   required parking as a result of the building type or

18   the parking allocation at the community.

19        Q      Okay.  And could you provide me a list?

20        A      I'm sure we could.  Yes.

21                      (Request for Production.)

22        Q      And how would you put together that

23   list?

24        A      We would just -- it would go into that

25   designation.  So we could have Mike pull it.
```

Page 187

1    ownership of the project.

2         Q      I appreciate you keeping that clear.

3                And how does -- how did the property

4    owners make money; is it a percentage share or

5    something?

6         A      Right.  Yeah.  So it's just -- it would

7    be depending on how the structure of the agreement

8    is, you know, whether we're providing the bandwidth

9    ourselves, you know.  So if we're both purchasing

10   it, or if we're a dealer or -- you know, there's a

11   lot of ways to improve the net take on that because

12   if you become the provider, obviously you're going

13   to get a better margin than if you're using a third

14   party.

15        Q      Is there some kind of media package

16   offered at all of Wasatch's properties?

17        A      No.  Not every community.  It's become

18   more popular.  So obviously Internet has become a

19   necessity of life, and so it's more popular than it

20   used to be, but not every community.

21        Q      Are any of these charges for Internet,

22   or cable, or media package mandatory at any of

23   Wasatch's properties currently?

24        A      Yes, absolutely.

25        Q      Which properties?  And you can describe

Page 214

1    it by characteristics if it would make that easier.

2         A     Yeah.  I mean, so any of our communities

3    that have -- like any or more recent communities --

4    it would be kind of a standard of living at the

5    community.

6         Q     So the communities where it's going to

7    be mandatory are ones that have been brought into

8    the Wasatch portfolio more recently?

9         A     Yeah.  Constructed recently or those

10   that we could manage the delivery of.  You know, so

11   ground-up construction, those are typically the

12   types of the communities that give you the ability

13   to provide the service at its optimum performance.

14        Q     Okay.  And would you be able to provide

15   a list of properties where some kind of media option

16   has been mandatory, you know, with the relevant time

17   periods, if asked to do so?

18        A     Yes.  Yeah.

19        Q     Okay.

20        A     Yeah.  There is a distinction there,

21   too, though, between people that have a housing or

22   assisted payment and non.

23        Q     And that distinction is?

24        A     There's no -- there's a non requirement

25   of -- so if I have an agreement that's on

                                          Page 215

```
 1                        CERTIFICATE

 2

 3           I, ROBIN REGER, Certified Shorthand

 4    Reporter, do hereby certify that JAROM JOHNSON, CPM,

 5    appeared at the time and place set forth herein;

 6    that at said time and place I reported in stenotype

 7    all testimony adduced and other oral proceedings had

 8    in the foregoing matter; that thereafter my notes

 9    were transcribed using computer-aided transcription

10    under my direction; and the foregoing transcript,

11    Pages 1 to 262, constitutes a full, true and

12    accurate record of such testimony adduced and oral

13    proceedings had and of the whole thereof.

14           I further certify review of the transcript

15    was requested.

16           Witness my hand and stamp at Portland,

17    Oregon, this 28th day of July, 2021.

18

19

20

21

                    ROBIN REGER, RPR

22                  Certified Shorthand Reporter

                    Oregon Certificate No. 10-0416

23                  RPR Certificate No. 1461

                    Expires 6/30/2023

24

25

                                       Page 263
```

# EXHIBIT 23

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF CALIFORNIA
                    SACRAMENTO DIVISION
 3   UNITED STATES OF        )
 4   AMERICA, ex rel.        )
     DENIKA TERRY and ROY    )
 5   HUSKEY III, and each    )
     of them for themselves  )
 6   individually, and for   )
 7   all other persons       )  Case No.
     similarly situated and  )  2:15-cv-00799-KJM-DB
 8   on behalf of the        )
     UNITED STATES OF        )
 9   AMERICA,                )
10        Plaintiffs,        )
                             )
11   vs.                     )
                             )
12   WASATCH ADVANTAGE       )
13   GROUP, LLC, WASATCH     )
     PROPERTY MANAGEMENT,    )
14   INC., WASATCH POOL      )
15   HOLDINGS, LLC,          )
     CHESAPEAKE COMMONS      )
16   HOLDINGS, LLC, LOGAN    )
     PARK APARTMENTS, LLC,   )
17   LOGAN PARK APARTMENTS,  )
18   LP, and DOES 1-30,      )
          Defendants.        )
19   _____
            Deposition of: JANAE JARVIS, CPM,
20                  Rule 30(b)(6)
            August 10, 2017 * 10:24 a.m.
21
22
23   Reporter:  Ann Fleming, RPR
     Notary Public in and for the State of Utah
24   Job No. 2674870
25   Pages 1 - 256
```

                                             Page 1

```
 1                    A P P E A R A N C E S

 2

 3     FOR THE PLAINTIFFS:

 4                David Lavine

 5                LAW OFFICES OF ANDREW WOLFF, P.C.

 6                1956 Webster Street, Suite 275

 7                Oakland, California 94612

 8                Tel: (510) 834-3300

 9                Fax: (510) 834-3377

10                david@awolfflaw.com

11

12     FOR THE DEFENDANTS:

13                Joseph A. Salazar, Jr.

14                LEWIS BRISBOIS

15                2020 W. El Camino Avenue, Suite 700

16                Sacramento, California 95833

17                Tel: (916) 564-5400

18                Fax: (916) 564-5444

19                Joe.Salazar@lewisbrisbois.com

20

21

22

23

24

25
```

Page  2

1          Q.    (By Mr. Lavine) Did that change to your

2    knowledge?

3          A.    No.

4          Q.    If a tenant had cable and paid extra for

5    it through an additional services agreement, and, then,

6    decided they didn't want it, could they opt out of it

7    at that point?

8          A.    Yes.

9          Q.    Across all properties?

10         A.    Across the one location.

11         Q.    Okay.  Fair enough.  Now, moving forward,

12   your purview is expanded.  Is that true for all

13   properties that are under your purview?

14              MR. SALAZAR:  Objection.  Overbroad.  Go

15   ahead.

16              THE WITNESS:  No.

17         Q.    (By Mr. Lavine) Tell me how it varies.

18         A.    It varies by location.  It varies by

19   market.  We have some locations that have media

20   packages that are in addition to the rent and that

21   includes internet and could be DIRECTV, and, at that

22   point, then, the service comes with the unit.

23         Q.    When you say it "comes with the unit," in

24   other words, if the person, if the tenant wants that

25   unit, they have to accept the cable charge as well or

                                        Page 109

1    the media charge as well?

2         A.    Yes.

3         Q.    All right.  So, in other words, there was

4    no way for a tenant, who wanted a particular unit in

5    those properties, to opt out of that charge?

6         A.    Not on the media packages, no.

7         Q.    Do you know which properties have had or

8    now have that media package?

9         A.    Yes.  Talavera, Tropez West, just the one

10   phase, 600 Lofts, and the Parc at Day Dairy.

11        Q.    Any others that you remember?

12        A.    No.

13        Q.    Do you know why those properties require

14   tenants who want units in those properties to buy into

15   the media package?

16             MR. SALAZAR:  Objection.  Assumes facts.

17   Go ahead.

18             THE WITNESS:  They're new developments and

19   the software was put into the units.  It's very common

20   practice, with new developments, to have media

21   packages, which are in addition to rent.

22        Q.    (By Mr. Lavine) Was the mandatory extra

23   charge for the media package applicable to Section 8

24   tenants as well who lived in those buildings?

25        A.    We have not had any Section 8 tenants live

                                        Page 110

```
 1                   REPORTER'S CERTIFICATE
 2
    STATE OF UTAH              )
 3                             )  ss.
    COUNTY OF SALT LAKE        )
 4
 5             I, Ann Fleming, Registered Professional
    Reporter and Notary Public in and for the State of
 6  Utah, do hereby certify:
 7             That prior to being examined, the witness,
    Janae Jarvis, CPM, was by me duly sworn to tell the
 8  truth, the whole truth, and nothing but the truth;
 9             That said deposition was taken down by me
    in stenotype on August 10, 2017, at the place therein
10  named, and was thereafter transcribed and that a true
    and correct transcription of said testimony is set
11  forth in the preceding pages;
12             I further certify that, in accordance with
    Rule 30(e), a request having been made to review the
13  transcript, a reading copy was sent to Mr. Salazar for
    the witness to read and sign, and the original
14  transcript will be delivered to Mr. Lavine for
    safekeeping.
15             I further certify that I am not kin or
    otherwise associated with any of the parties to said
16  cause of action and that I am not interested in the
    outcome thereof.
17             WITNESS MY HAND this 16th day of August,
18  2017.
19
20
21
22
23  _____
24             Ann Fleming, RPR
25             Notary Public


                                          Page 256
```

# EXHIBIT 24

```
 1                UNITED STATES DISTRICT COURT

 2        EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

 3

 4    UNITED STATES OF AMERICA, ex rel.     ) Case No.

 5    DENIKA TERRY, ROY HUSKEY, III,        ) 2:15-CV-00799-KJM-DB

 6    and TAMERA LIVINGSTON, and each of    )

 7    them for themselves, individually,    )

 8    and for all other persons similarly   )

 9    situated and on behalf of the         )

10    UNITED STATES OF AMERICA,             )

11            Plaintiffs/Relators,          )

12    vs.                                   )  VOLUME II

13    WASATCH ADVANTAGE GROUP, LLC,         )

14    et al., and DOES 1-4,                 )

15            Defendants.                   )

16    _____)

17                 DEPOSITION OF JANAE JARVIS

18                    SEPTEMBER 14, 2021

19

20    REPORTED REMOTELY BY:

21    KAMRA TOALSON, CSR No. 756

22    Notary Public

23

24

25
```

Veritext Legal Solutions
866 299-5127

```
1                    THE DEPOSITION OF JANAE JARVIS was taken

2       on behalf of the Defendant via remote videoconference,

3       commencing at 9:03 a.m. on September 14, 2021, before

4       Kamra Toalson, Certified Shorthand Reporter and Notary

5       Public within and for the State of Idaho, in the

6       above-entitled matter.

7

8                         APPEARANCES:

9

10      For Plaintiffs/Relators and the Certified Classes:

11              (Present Remotely)

12              GOLDSTEIN, BORGEN, DARDARIAN & HO

13              BY MS. ANNE BELLOWS

14              155 Grand Avenue, Suite 900

15              Oakland, California 94612

16              abellows@gbdhlegal.com

17

18      For Plaintiffs/Relators and the Certified Classes:

19              (Present Remotely)

20              CENTRO LEGAL DE LA RAZA

21              BY MR. JESSE NEWMARK

22              3022 International Boulevard, Suite 410

23              Oakland, California 94601

24              jessenewmark@centrolegal.org

25
```

Page 251

```
1                    APPEARANCES (continued):

2

3        For Plaintiffs/Relators and the Certified Classes:

4                 (Present Remotely)

5                 CENTRO LEGAL DE LA RAZA

6                 BY MS. HENRISSA BASSEY

7                 3022 International Boulevard, Suite 410

8                 Oakland, California 94601

9                 hbassey@centrolegal.org

10

11       For Defendants:

12                (Present Remotely)

13                LEWIS BRISBOIS BISGAARD & SMITH, LLP

14                BY MR. RYAN MATTHEWS

15                2020 West El Camino Avenue, Suite 700

16                Sacramento, California 95833

17                ryan.matthews@lewisbrisbois.com

18

19       Also Appearing Remotely:

20                Neil George, Videographer

21

22

23

24

25

                                           Page  252
```

```
 1              A.   They are.                              10:07:25

 2              Q.   So what is their -- what -- what are they   10:07:34

 3      hired to do?                                       10:07:37

 4              A.   They are hired to review all tenant files for   10:07:38

 5      the tax credit program.                            10:07:42

 6              Q.   What about for the bond program?      10:07:52

 7              A.   Not the bond program.                 10:07:54

 8              Q.   And they are reviewing those files for   10:07:58

 9      compliance with the tax credit rules?             10:08:01

10              A.   Yes.                                  10:08:03

11              Q.   Anything else?                        10:08:03

12              A.   Yes, it could be home, again, any other   10:08:05

13      programs that are underneath those rules.         10:08:10

14              Q.   Do they -- do they have any role in Section 8   10:08:13

15      compliance?                                        10:08:19

16              A.   Where it impacts each individual file, yes, if   10:08:20

17      it's a Section 8 within that file.                10:08:26

18              Q.   Is there a contract or agreement that sets out   10:08:30

19      what they are hired to do?                         10:08:34

20              A.   There is.                             10:08:35

21              Q.   And they work within that -- the scope of that   10:08:44

22      contract?                                          10:08:48

23              A.   I believe so.  I haven't reviewed the   10:08:48

24      contract.                                          10:08:51

25              Q.   Have you ever consulted with them on a   10:08:53
```

Page 295

```
 1                    REPORTER'S CERTIFICATE

 2          I, KAMRA TOALSON, CSR No. 756, Certified

 3    Shorthand Reporter, certify:

 4          That the foregoing proceedings were taken before

 5    me at the time and place therein set forth, at which

 6    time the witness was put under oath by me;

 7          That the testimony and all objections made were

 8    recorded stenographically by me and transcribed by me or

 9    under my direction;

10          That the foregoing is a true and correct record

11    of all testimony given, to the best of my ability;

12          I further certify that I am not a relative or

13    employee of any attorney or party, nor am I financially

14    interested in the action.

15          IN WITNESS WHEREOF, I set my hand and seal this

16    23rd day of September, 2021.

17

18

19

20

21          KAMRA TOALSON, CSR NO. 756

22          Notary Public

23          Post Office Box 2636

24          Boise, Idaho 83701-2636

25
```

Page 437

Veritext Legal Solutions
866 299-5127