1  Laura L. Ho (SBN 173179)
   lho@gbdhlegal.com
2  Anne Bellows (SBN 293722)
   abellows@gbdhlegal.com
3  GOLDSTEIN, BORGEN, DARDARIAN & HO
   155 Grand Avenue, Suite 900
4  Oakland, CA 94612
   (510) 763-9800; (510) 835-1417 (Fax)
5
   Andrew Wolff (SBN 195092)
6  andrew@awolfflaw.com
   LAW OFFICES OF ANDREW WOLFF, PC
7  1615 Broadway, 4th Floor
   Oakland, CA 94612
8  (510) 834-3300; (510) 834-3377 (Fax)

9  Jesse Newmark (SBN 247488)
   jessenewmark@centrolegal.org
10 CENTRO LEGAL DE LA RAZA
   3022 International Blvd., Suite 410
11 Oakland, CA 94601
   (510) 437-1863; (510) 437-9164
12
   Jocelyn D. Larkin (SBN 110817)
13 Lindsay Nako (SBN 239090)
   lnako@impactfund.org
14 jlarkin@impactfund.org
   THE IMPACT FUND
15 2080 Addison Street, Suite 5
   Berkeley, CA 94701
16 (510) 845-3473; (510) 845-3654 (Fax)

17 Attorneys for Plaintiffs and Relators and the Certified Classes

18 **UNITED STATES DISTRICT COURT**
   **EASTERN DISTRICT OF CALIFORNIA**
19 **SACRAMENTO DIVISION**

20 | UNITED STATES OF AMERICA, *ex rel.* | Case No.: 2:15-CV-00799-KJM-DB |
21 | DENIKA TERRY, ROY HUSKEY III, and | |
   | TAMERA LIVINGSTON, and each of them for | CLASS ACTION |
22 | themselves individually, and for all other persons | |
   | similarly situated and on behalf of the UNITED | **THE PARTIES' JOINT STATEMENT** |
23 | STATES OF AMERICA | **REGARDING THEIR DISCOVERY** |
   | | **DISPUTES RELATED TO HUSKEY** |
24 | Plaintiffs/Relators, | **INTERROGATORY 18 AND REQUESTS** |
   | | **FOR PRODUCTION NOS. 27, 28, 29, & 30** |
25 | vs. | |
   | | Date:     December 17, 2021 |
26 | WASATCH ADVANTAGE GROUP, LLC, | Time:     10:00 a.m. |
   | WASATCH PROPERTY MANAGEMENT, INC., | Dept:     Courtroom 27, 8th floor |
27 | WASATCH POOL HOLDINGS, LLC, | Before:  Hon. Magistrate Judge Deborah Barnes |
   | CHESAPEAKE APARTMENT HOLDINGS, LLC, | |
28 | LOGAN PARK APARTMENTS, LLC, LOGAN | Trial Date:    None Set |
   | PARK APARTMENTS, LP, ASPEN PARK | |

1  HOLDINGS, LLC, BELLWOOD JERRON
   HOLDINGS, LLC, BELLWOOD JERRON
2  APARTMENTS, LP, BENT TREE
   APARTMENTS, LLC, CALIFORNIA PLACE
3  APARTMENTS, LLC, CAMELOT LAKES
   HOLDINGS, LLC, CANYON CLUB HOLDINGS,
4  LLC, COURTYARD AT CENTRAL PARK
   APARTMENTS, LLC, CREEKSIDE HOLDINGS,
5  LTD, HAYWARD SENIOR APARTMENTS, LP,
   HERITAGE PARK APARTMENTS, LP, OAK
6  VALLEY APARTMENTS, LLC, OAK VALLEY
   HOLDINGS, LP, PEPPERTREE APARTMENT
7  HOLDINGS, LP, PIEDMONT APARTMENTS,
   LP, POINT NATOMAS APARTMENTS, LLC,
8  POINT NATOMAS APARTMENTS, LP, RIVER
   OAKS HOLDINGS, LLC, SHADOW WAY
9  APARTMENTS, LP, SPRING VILLA
   APARTMENTS, LP, SUN VALLEY HOLDINGS,
10 LTD, VILLAGE GROVE APARTMENTS, LP,
   WASATCH QUAIL RUN GP, LLC, WASATCH
11 PREMIER PROPERTIES, LLC, WASATCH
   POOL HOLDINGS III, LLC,
12 and DOES 1-4,

13        Defendants.

845371.10

1    Plaintiffs-Relators Denika Terry, Roy Huskey III and Tamera Livingston ("Plaintiffs), on behalf

2    of themselves and the certified classes, and on behalf of the United States, and Defendants Wasatch

3    Advantage Group, LLC, Wasatch Property Management, LLC, Wasatch Pool Holdings, LLC,

4    Chesapeake Apartment Holdings, LLC, Logan Park Apartments, LLC, and Logan Park Apartments, LP

5    ("Defendants"), submit this Joint Statement Regarding Discovery Disagreement ("Joint Statement")

6    under Local Rule 251(c).

7    **I.    INTRODUCTION**

8    This Joint Statement is being filed in accordance with the Court's December 8 Order, requiring

9    the parties to engage in further meet and confer efforts before filing this statement on or before

10   December 10 if a dispute continued to exist.  ECF No. 191.  As set forth below, the Parties have met

11   and conferred repeatedly by phone and in writing regarding the discovery requests at issue here both

12   before and after the Court's Order.  But as of this date Defendants have not yet produced the agreed

13   upon discovery and it is not clear when the discovery will be produced despite repeated assurances that

14   production is imminent, including assurances in the Joint Statement filed on December 3, 2021.  ECF

15   No. 190.  Without a court-ordered deadline, Plaintiffs are doubtful the discovery responses will be

16   produced by the discovery cutoff date of December 17, 2021.  Accordingly, Plaintiffs seek a court

17   order requiring Defendants to produce the agreed upon discovery described below by no later than

18   December 17, 2021.  If Defendants provide the discovery prior to the hearing, as they state they intend

19   to do, Plaintiffs will file a notice withdrawing their Motion.

20   Plaintiffs seek a proper response to an interrogatory asking Defendants to list all properties

21   where mandatory additional charges, including parking, media packages, washer and dryer rentals, and

22   renters' insurance, were imposed on any tenants during the liability period.  Defendants have served

23   responses to the interrogatory, including two amended responses, and have not stated any objections to

24   the interrogatory.  Based on deposition testimony from Defendants' corporate representatives and

25   conflicting evidence in the record, Plaintiffs contend that Defendants' attempts to answer the

26   interrogatory to date are insufficient.  Defendants do not disagree and have promised an additional

27   amended response to address Plaintiffs' concerns set out in this Joint Statement, but they have not yet

28   provided it.  In line with the Parties' discussion with this Court during the informal discovery

1

845371.10

conference held on November 17, 2021, Plaintiffs seek an order requiring a proper and complete response to the interrogatory by the close of discovery on December 17, 2021.

Plaintiffs also seek an order compelling Defendants to produce outstanding documents responsive to Plaintiff Denika Terry's Requests for Production of Documents ("RFPs") Nos. 27 through 30. These RFPs, propounded in June 2020, seek documents related to Defendants' training of their employees related to the Section 8 program, leases and the leasing process, additional service agreements and additional service charges, and notices related to nonpayment of rent or other charges. Defendants made partial productions in 2020 and the first half of 2021, but they have not yet produced documents from their online video training library, despite agreeing to do so. Moreover, Defendants have previously indicated that they will withhold from production some documents that Plaintiffs identified as potentially responsive, though to date they have not provided a list of those documents or an explanation for their basis for withholding them. Plaintiffs seek an order requiring production of all responsive documents by the close of discovery on December 17, 2021.

## II.      THE PARTIES' MEET AND CONFER EFFORTS

### A.      The Parties' Meet and Confer History Related to Huskey Interrogatory 18

Plaintiffs served Roy Huskey III's Fifth Set of Interrogatories to Defendants Wasatch Advantage Group, LLC, Wasatch Property Management, Inc., Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC, Logan Park Apartments, LLC, and Logan Park Apartments, LP on July 23, 2021. Ex. 1, Huskey Interrog. 18. Plaintiff Huskey's Interrogatory Number 18 ("Huskey Interrogatory 18") seeks to discover which of Defendants' properties charged mandatory fees for additional services such as media packages, washers and dryers, renters' insurance, or covered parking for any tenants during the liability period. Without making any objections, Defendants initially responded to Huskey Interrogatory 18 on August 27, saying, "[t]o the best of Defendants' knowledge, this has never occurred." Ex. 2, Defs.' Resp.

Plaintiffs sent a meet and confer letter on August 30, 2021, emphasizing that Huskey Interrogatory 18 applies to all tenants, not just tenants receiving Section 8 subsidies, and explaining that Defendants' response contradicts the existing record. Ex. 3, Bellows Aug. 30, 2021 Letter. Defendants agreed to amend their response on September 2, 2021. Ex. 4, Bellows Sept. 7, 2021 Email.

Plaintiffs followed up repeatedly during September and October, and Defendants stated that they were working on gathering information for the amended response.  Ex. 5, Collection of Meet and Confer Emails.  Because the geographic distance between the Parties is prohibitive, and in light of the ongoing COVID-19 pandemic, the parties met and conferred by telephone in September and October, including calls on September 2, September 22, October 1, October 7, October 8, and October 28.  *Id.*  On November 4, 2021, Plaintiffs requested an informal discovery conference with the Court to address the delay.  Defendants responded to Plaintiffs' email regarding the informal discovery conference by stating that they had finally received the verification and would serve the amended response that day.  Ex. 6**,** Matthews Nov. 4, 2021 Email.

Defendants served their amended response on November 8, after a meet and confer call that day.  The response stated, "Defendants are unable to verify time periods in which any Additional Service Charge was mandatory."  The response then listed each of Defendants' properties that has had a media package, the date the package became available, and whether the package was optional.  Ex. 7, Defs.' Am. Resp.  Plaintiffs sent a meet and confer letter regarding deficiencies in the amended response on the same day, pointing out that the amended response failed to address parking and washer and dryer charges that deponents had testified were in some cases mandatory.  Ex. 8, Bellows Nov. 8, 2021 Letter.  The Parties agreed to an informal discovery conference to seek this Court's guidance on Huskey Interrogatory 18.

On November 10, 2021, during the deposition of Defendants' corporate officer Jarom Johnson, the former Chief Operating Officer (and a current Executive Vice President) of Wasatch Property Management, Inc., Johnson discussed Defendants' Amended Response to Huskey Interrogatory 18 and the efforts undertaken to gather information for the interrogatory.  Jarom Johnson explained that Defendants' amended response only provided information as to whether the media package charges were optional for Section 8 tenants, and not for any tenant.  See Ex. 9, Johnson Dep. 13:20-14:7, Nov. 10, 2021.  From his memory, Johnson was able to name multiple properties with mandatory media packages.  *Id.* at 15:16-25.  Johnson also testified that, in compiling an answer to Huskey Interrogatory 18, Defendants searched their property management database, which does not identify time periods when charges are mandatory, and consulted with three high-level executives.  *Id.* at 10:1-4, 11:4-10.

3

845371.10

On November 10, the Parties again met and conferred via telephone.  Plaintiffs explained that Johnson's deposition testimony revealed further insufficiencies with Defendants' response to Huskey Interrogatory 18.  Ex. 10, Bellows Nov. 11, 2021 Email.  Namely, listing media packages as "optional" to reflect Defendants' policy towards Section 8 tenants was misleading because Huskey Interrogatory 18 asks for mandatory charges for all tenants and because Johnson's testimony affirmed that several properties on the list required media package charges for non-Section 8 tenants.  *Id.*  In their follow-up email, Plaintiffs also explained that the searches Johnson described in his deposition were inadequate. *Id.*  The Parties agreed to proceed with an informal discovery conference, but Defendants promised to serve further amended responses that might obviate the need for the conference.  *Id.*

On November 17, shortly before the scheduled informal discovery conference, Defendants served a further amended response to Huskey Interrogatory 18.  Ex. 11, Defs.' Further Am. Resps. Plaintiffs informed Defendants in an email that this response was not sufficient because it still did not identify properties with mandatory charges, and the informal discovery conference scheduled for that day should proceed.  Ex. 12, Nov. 17, 2021 Email Exchange.

Prior to the informal discovery conference, Defendants indicated in a response email that they agreed to obtain a list of properties where any tenants were subject to any mandatory additional service charges.  *Id.*  As of the filing of this Joint Statement, Defendants have not provided this response.

At the informal discovery conference held on November 17, 2021, the Parties discussed the delays that had transpired, and Defendants indicated their intention to work on providing a full response.  In response to Plaintiffs' concerns about further delay, the Court indicated that if Plaintiffs were not confident they would receive a timely and adequate response from Defendants, Plaintiffs could file a motion to compel.  After the conference, Plaintiffs reached out to Defendants asking for a timeline related to the promised updated response.  Plaintiffs attempted to call Defendants once again on November 19, 2021, but, hearing no response, Plaintiffs filed their Notice of Motion and Motion to Compel Proper Interrogatory Response that day.  ECF No. 156.

On November 22, Plaintiffs emailed Defendants noting that they had attempted to contact Defendants by phone several times the prior week and explaining that the Notice of Motion and Motion to Compel Huskey Interrogatory 18 had been filed.  Ex. 25, Bellows Nov. 22, 2021 Email.

4

1  The Parties met and conferred by phone on November 30.  Ex. 26, Bellows Nov. 30, 2021 Email.
2  Defendants indicated that they had reached out to property managers at their properties and hoped to
3  respond by December 3.  *Id*.  The Parties also discussed the Joint Statement before they filed it on
4  December 3.  *Id.*

5  The parties met and conferred by telephone on December 10, 2021 prior to the filing of this
6  updated statement.  During the call, Defendants reported that they had compiled the information
7  necessary to provide a complete response to Huskey Interrogatory 18.  Plaintiffs stated that they
8  believed it was necessary to proceed with filing the Joint Statement because Plaintiffs are unable to
9  evaluate whether Defendants' planned response to Interrogatory 18 is adequate and Defendants have
10  served inadequate responses in past after similar assurances.  However, Plaintiffs stated they were
11  hopeful Defendants would provide complete and adequate responses prior to December 17, in which
12  case Plaintiffs will file a notice withdrawing their Motion.

13  The Parties' discovery dispute continues because, although Defendants have agreed to respond
14  to Huskey Interrogatory 18 in this Joint Statement, Defendants have not yet provided a proper
15  response, and Plaintiffs contend that they are not reasonably assured that complete response will be
16  forthcoming in light of similar promises Defendants have made in the past.  Plaintiffs contend that a
17  court order is proper to set a deadline for an adequate response, due to the delays that have already
18  transpired and the approaching discovery cut-off.

19  **B.**   **The Parties' Meet and Confer Efforts Related to RFPs 27-30.**

20  The Parties' meet and confer efforts related to RFPs 27 through 30 date back to July 2020 and
21  are too voluminous to be set out in full detail here.  The following summary addresses the highlights.

22  On July 16, 2020, Defendants served objections to RFPs 27 through 30.  Ex. 13, Defs.' Resps.
23  to Terry RFPs Set 2.  Defendants neither produced documents nor agreed to a production.  *Id.*  On July
24  28, 2020, Plaintiffs sent a meet and confer letter addressing each of the objections.  Ex. 14, Bellows
25  July 28, 2020 Letter at 2-5.

26  Defendants subsequently agreed to a meet and confer process related to training documents and
27  on August 6, 2020 provided Plaintiffs a spreadsheet listing "How-To" training documents on a variety
28  of topics.  Ex. 15, Bellows Aug. 18, 2020 Letter.  Plaintiffs responded on August 18, 2020, identifying

1   documents from the spreadsheet that were either facially responsive to their RFPs, or likely to be

2   responsive. *Id.* Defendants made a partial production of training documents on September 3, 2020

3   and supplemented that production on March 30, 2021. Ex. 16, Bellows May 24, 2021 Letter.

4   Plaintiffs sent a further meet and confer letter identifying deficiencies in the production on May 24,

5   2021. *Id.* Defendants subsequently informed Plaintiffs that (a) some of the documents listed on the

6   spreadsheet did not exist, and (b) Defendants were withholding some documents identified by

7   Plaintiffs because they were not responsive, and they would provide a list. Ex. 17, Bellows June 25,

8   2021 Email. Defendants again supplemented their production on July 16, 2021.

9          On September 10, 2021, Defendants' corporate designee Janae Jarvis testified that Wasatch has

10   a training resource had not been previously disclosed to Plaintiffs—a library of video trainings called

11   "Wasatch University." Ex. 18, Jarvis 2021 Dep. 138:20-139:8, Sept. 10, 2021. Plaintiffs requested,

12   and Defendants provided, a list of the Wasatch University trainings. On October 8, 2021, Plaintiffs

13   sent further meet and confer correspondence identifying Wasatch University trainings that appear to be

14   responsive to Plaintiffs' RFPs. Ex. 19, Bellows Oct. 8, 2021 Email.

15          In subsequent meet and confer conversations by telephone and email, Defendants agreed to

16   produce training documents from Wasatch University. *See* Ex. 5, Collection of Meet and Confer

17   Emails; Bellows. Ex. 25, Nov. 22, 2021 Email. To date, Defendants have not done so, though they

18   have assured Plaintiffs they are working on it. Nor have Defendants provided Plaintiffs with a list of

19   trainings they are withholding from production—either from Wasatch University or from the earlier

20   catalogue.

21          Plaintiffs filed their Notice of Motion and Motion to Compel RFPs 27 through 30 on November

22   19, 2021. ECF No. 156. The Parties met and conferred by phone on November 30, prior to filing their

23   Joint Statement on December 3, 2021. Ex. 26, Bellows Nov. 30, 2021 Email. Defendants agreed that

24   they would provide a list of training documents they were withholding on November 30. In addition,

25   Defendants agreed to inform Plaintiffs on November 30 whether they would be making a production

26   by December 2. *Id.* Defendants did not provide either but agreed to help prepare the December 3 Joint

27   Statement. Ex. 27, Matthews Dec. 2, 2021 Email.

28

1    The Parties met and conferred by telephone on December 10, 2021 prior to the filing of this

2    joint statement.   On that call, Defendants reiterated their intention to produce the outstanding

3    documents responsive to RFPs 27 through 30 during the week  beginning December 13, 2021.

4    Plaintiffs noted that Defendants have long promised that the production of training documents is

5    imminent, without results, and that Defendants still have not identified which, if any, documents they

6    are withholding from production. The Parties agreed that it was appropriate to move forward with the

7    Joint Statement on this issue today, and that if Defendants make a full production prior to the hearing,

8    Plaintiffs will file a notice withdrawing the Motion as to this issue.

9    The Parties' discovery dispute remains active because Defendants have yet to produce the

10    outstanding trainings or a list of trainings they are withholding from production.  Although Defendants

11    agree in this statement to produce unidentified "responsive documents," Plaintiffs contend that they do

12    not have reasonable assurance that the trainings will be produced.  Plaintiffs contend that a court order

13    to set a deadline for the production is appropriate in light of the delays that have already transpired and

14    the approaching close of discovery.

### III.    CASE NATURE AND POSTURE

**A.    Case Background**

17    As described recently in the Parties' December 3, 2021 Joint Statement Regarding Discovery

18    Dispute, ECF No. 165, this case was filed on April 14, 2015 as a False Claims Act (31 U.S.C. §§ 3279

19    *et seq.*) ("FCA") action and putative class case for California state law claims.  Compl., ECF No. 1.

20    Defendants are Wasatch Advantage Group, LLC and its affiliates, a rental and property management

21    company with residential apartments in California, Washington, Utah, Colorado, and Arizona.

22    Plaintiffs are current and former tenants of Wasatch's properties and participants in the Housing

23    Choice Voucher Program, a federally subsidized rental assistance program commonly known as

24    "Section 8."  Under the Section 8 program, a participants' portion of the rent is capped at 30 to 40

25    percent of their monthly income, while a local public housing agency pays the balance of the rent

26    directly to the landlord.  42 U.S.C. §§ 1437f(o).

27    Plaintiffs allege Defendants improperly charged Section 8 tenants for additional service

28    charges, such as renters' insurance, media packages, washer and dryer rentals, and parking in addition

7

845371.10

1   to tenants' portion of the approved rent amount under the Housing Assistance Program Contracts that

2   govern their leases.  Fifth Am. Class Action Compl., ("5AC") ¶¶ 11-13, 57-58, 60, ECF No. 136.  The

3   charges for these additional services are listed in an "Additional Services Agreement" that is part of the

4   tenants' lease.  *Id*. at ¶¶ 12, 119-20.

5          The United States declined to intervene in June 2016.  ECF No. 14.  The Court denied

6   Defendants' motion to dismiss in 2017, ECF No. 61, and certified damages and injunctive relief

7   classes in 2018.  ECF No. 92.  The classes consist of past, current, and future tenants at Defendants'

8   California properties who have participated in or will participate in the Section 8 program and have

9   paid or will pay additional service charges.  ECF No. 92 at 13, ECF No. 114, Order at 11-12.

10  **B.**     **Factual Issues Relevant to Discovery Dispute**

11         **1.**     **Factual Issues Relevant to Huskey Interrogatory 18**

12         The outcome of this case depends on whether Defendants' additional service charges constitute

13  and are treated as rent.  *See* ECF No. 61, Order at 6 (noting that the "Plaintiffs' claims rely on the

14  characterization of these additional payments as rent").   Plaintiffs contend that mandatory charges for

15  additional services are legally considered rent.  *See* ECF No. 30, Plaintiffs' Opposition to Motion to

16  Dismiss at 7-8 (citing *Velez v. Cuyahoga Metro. Hous. Auth.*, 795 F.3d 578, 585-86 (6th Cir. 2015)).

17  Defendants do not disagree.  *See* Ex. 22, Johnson Dep. 58:19-21, July 19, 2021 ("If it's a required

18  charge, without option, I would say if you can't be in the space then, yes, that would be rent.").

19  Consequently, (1) where and when Defendants have required their tenants, as a condition of leasing, to

20  pay mandatory fees for additional services and (2) whether Section 8 tenants were also subject to those

21  fees, are central pieces of this litigation.

22         The question of where and when Defendants imposed mandatory charges remains disputed.

23  *See*, *e.g.*, Ex. 18, Jarvis Dep. 60:09-64:22, 77:13-82:14, Sept. 10, 2021 (agreeing that mandatory media

24  package and parking charges exist at some properties, though she was unable to identify which ones);

25  Ex. 20, Tanforan Dep. 86:10-20, Aug. 9, 2017 (recalling that some parking charges are required for

26  tenants at move into several properties managed by Tanforan, though he was unable to remember

27  which ones).  Plaintiffs have separately filed a Motion to Compel related to Plaintiff Denika Terry's

28

Request for Production Number 52 ("RFP 52"), seeking documents related to mandatory additional service charges.

### 2.    Factual Issues Relevant to Terry RFPs 27-30

Beyond whether additional service charges were mandatorily required as a condition of leasing, Plaintiffs also contend that the charges were unlawful because Defendants treat them like rent in their leasing, payment accounting, and collections and eviction practices.  *See* ECF No. 92, Class Certification Order at 14-15, 30 (discussing this theory).  Plaintiffs seek training documents related to these topics to further illuminate Defendants' practices in enrolling tenants in additional service charges, collecting those charges, and serving eviction notices and potentially initiating evictions based on the nonpayment of those charges.  *See, e.g.*, Ex. 21, Defs.' Resp. to Req. for Admis. No. 14 (admitting to serving notices stating that tenants must pay additional service charges or face eviction).

## C.    Huskey Interrogatory 18 and the Parties' Contentions

Huskey Interrogatory 18 was served as Part of Plaintiff Roy Huskey III's Fifth Set of Interrogatories on July 23, 2021.  Plaintiffs' interrogatory and Defendants' responses are as follows:

### INTERROGATORY NO. 18:
Please identify (by name, address, city, state, applicable time period, and relevant charges) any SUBJECT PROPERTY that, for any period of time since April 14, 2005, made any ADDITIONAL SERVICE CHARGE mandatory for any tenants.

### RESPONSE TO INTERROGATORY NO. 18 (Served Aug. 27, 2021):
To the best of Defendants' knowledge, this has never occurred.

### AMENDED RESPONSE TO INTERROGATORY NO. 18 (Served Nov. 8, 2021):
Defendants respond as follows: After diligent effort and inquiry, Defendants are unable to verify time periods in which any Additional Service Charge was mandatory. Defendants' corporate policy is and always has been that for Section 8 tenants, no Additional Service Charge is mandatory, and each and every one has always been optional. In light of prior testimony regarding bulk media packages, Defendants list below each property that Wasatch Property Management has managed in the times relevant to this case that has ever had a media package of any kind, and the date it was added.

| PROPCODE | PROPERTY | MEDIA PACKAGE | OPTIONAL | DATE ADDED | |
|---|---|---|---|---|---|
| 6lt | 600 Lofts | Y | Y | 04/2017 | |
| art | Arcadia | Y | Y | 05/2018 | |
| art2 | Arcadia II | Y | Y | 01/2021 | |

845371.10

| az | Aztec Springs Apartments | Y | Y | 09/2020 | |
|---|---|---|---|---|---|
| bu | Burnett Station Apartments | Y | Y | 01/2020 | |
| cn | Canyon Ridge Apartments | Y | Y | 09/2020 | |
| cm | Cimarron Place Apartments | Y | Y | 09/2020 | |
| dw | Devonshire Court West | Y | Y | 03/2019 | |
| enclave | Enclave at 1400 South | Y | Y | 07/2015 | |
| falls | Falls at Hunters Pointe | Y | Y | 09/2018 | |
| glt | Garden Lofts | Y | Y | 11/2019 | |
| go | Glen Oaks Apartments | Y | Y | 09/2020 | |
| gp | Goldstone Place Apartments | Y | Y | 03/2000 | |
| hp | Heron Pointe Apartments | Y | Y | 08/1998 | |
| fc | Landing at Francher Creek | Y | Y | 04/2003 | |
| lofts | Lofts at 7800 | Y | Y | 08/2014 | |
| mp | Metropolitan Place Apartments | Y | Y | 11/2019 | |
| p1 | Palladio Apartments-Phase 1 | Y | Y | 10/2002 | |
| p3 | Palladio Apartments-Phase 1 | Y | Y | 10/2002 | |
| rw | Ranchwood Apartments | Y | Y | 09/2020 | |
| rs | Rio Seco Apartments | Y | Y | 09/2020 | |
| rp | River Point Apartments | Y | Y | 09/2020 | |
| sa | Sands Apartments | Y | Y | 09/2020 | |
| rvt | The Reserve at View 78 | Y | Y | 09/2019 | |
| vet | Veranda | Y | Y | 01/2018 | |
| vit | Village Grove Apartments | Y | N | 02/2015 | Internet Provided as Free Service for all residents |

10

845371.10

**FURTHER AMENDED RESPONSE TO INTERROGATORY NO. 18 (Served Nov. 17, 2021):**

Defendants respond as follows: After diligent effort and inquiry, Defendants are unable to verify time periods in which any Additional Service Charge was mandatory .This includes, but is not limited to, charges for washers and dryers, covered parking, media packages, and renter's insurance. Defendants' corporate policy is and always has been that for Section 8 tenants, no Additional Service Charge is mandatory, and each and every one has always been optional. In light of prior testimony regarding bulk media packages, Defendants list below each property that Wasatch Property Management has managed in the times relevant to this case that has ever had a media package of any kind, and the date it was added.

| PROPCODE | PROPERTY | MEDIA PACKAGE | DATE ADDED | |
|---|---|---|---|---|
| 6lt | 600 Lofts | Y | 04/2017 | |
| art | Arcadia | Y | 05/2018 | |
| art2 | Arcadia II | Y | 01/2021 | |
| az | Aztec Springs Apartments | Y | 09/2020 | |
| bu | Burnett Station Apartments | Y | 01/2020 | |
| cn | Canyon Ridge Apartments | Y | 09/2020 | |
| cm | Cimarron Place Apartments | Y | 09/2020 | |
| dw | Devonshire Court West | Y | 03/2019 | |
| enclave | Enclave at 1400 South | Y | 07/2015 | |
| falls | Falls at Hunters Pointe | Y | 09/2018 | |
| glt | Garden Lofts | Y | 11/2019 | |
| go | Glen Oaks Apartments | Y | 09/2020 | |
| gp | Goldstone Place Apartments | Y | 03/2000 | |
| hp | Heron Pointe Apartments | Y | 08/1998 | |
| fc | Landing at Francher Creek | Y | 04/2003 | |
| lofts | Lofts at 7800 | Y | 08/2014 | |
| mp | Metropolitan Place Apartments | Y | 11/2019 | |

11

845371.10

| p1 | Palladio Apartments-Phase 1 | Y | 10/2002 | |
| p3 | Palladio Apartments-Phase 1 | Y | 10/2002 | |
| rw | Ranchwood Apartments | Y | 09/2020 | |
| rs | Rio Seco Apartments | Y | 09/2020 | |
| rp | River Point Apartments | Y | 09/2020 | |
| sa | Sands Apartments | Y | 09/2020 | |
| rvt | The Reserve at View 78 | Y | 09/2019 | |
| vet | Veranda | Y | 01/2018 | |
| vit | Village Grove Apartments | Y | 02/2015 | Internet Provided as Free Service for all residents |

### 1.     Plaintiffs' Position Regarding Huskey Interrogatory 18

Plaintiffs respectfully request that the Court order Defendants to provide a response to Huskey Interrogatory 18 that identifies Defendants' properties with mandatory charges for any tenant for any time from April 2005 to the present and lists the associated additional service charges by the December 17, 2021 discovery deadline.[1]  An answer to this interrogatory will require a reasonable search for the requested information that goes beyond the efforts that Defendants have thus far provided.  Although Defendants have agreed to provide a complete response by listing all properties where additional service charges of any kind were required, they have not yet done so.  Moreover, Defendants have previously promised proper answers, only to follow up by serving incomplete responses.

Notably, Defendants have not asserted, and have consequently waived, any substantive objections to Huskey Interrogatory 18.  *O.L. v. City of El Monte*, No. 2:20-cv-00797-RGK-JDE, 2021 WL 926105, at *3 (C.D. Cal. Jan. 11, 2021) ("[O]bjections not raised in a written response to discovery may not be raised for the first time in a discovery motion.").

---

[1] Plaintiffs are open to compromise by allowing Defendants to respond without providing specific time periods when specific mandatory charges were enforced, which Plaintiffs understand would be more burdensome than identifying properties and mandatory charges that applied during the liability period.

845371.10

a.   **Defendants' Responses to Plaintiffs' Interrogatory Are Incomplete and Evasive.**

A party may move for an order compelling an answer to an interrogatory under Rule 33 of the Federal Rules of Civil Procedure if a responding party fails to answer the interrogatory.  Fed. R. Civ. P. 37(a)(3)(B)(iii).  An "evasive or incomplete" answer is treated as a failure to answer.  Fed. R. Civ. P. 37(a)(4).

Defendants' response to Huskey Interrogatory 18 is incomplete and evasive because it fails to provide the basic information requested by the interrogatory—*i.e.*, identification of properties that have had mandatory charges and a list of those mandatory charges at each property.  When corporate entities such as the Defendants respond to interrogatories, they must respond with information available to them.  Fed. R. Civ. P. 33(b)(1)(B).  "Information in the hands of a corporate party's agents and others within its control must be supplied."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Sharp Plumbing*, No. 2:09-cv-00783-GMN, 2012 WL 2502748, at *2 (D. Nev. June 27, 2012) (citing *Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D. 628, 632–33 (E.D. Pa. 1977)).

By responding, "Defendants are unable to verify time periods in which any Additional Service Charge was mandatory," and stating "[t]his includes, but is not limited to, charges for washers and dryers, covered parking, media packages, and renter's insurance," Defendants avoid identifying the relevant properties and mandatory charges by pointing to the difficulty of specifying the dates charges were in force.  But the record shows that properties with mandatory charges exist.  Jarom Johnson testified that that parking charges and media package charges are mandatory at several of Wasatch's properties and that a list could be generated indicating these properties.  Ex. 22, Johnson Dep. 187:7-20, 214:21-215:18, July 19, 2021; Ex. 9, Johnson Dep. 15:2-25, Nov. 10, 2021.  Defendants' other corporate officers have similarly testified to the existence of mandatory charges, including media packages, parking charges, and washer and dryer charges, and renters' insurance.  *See* Ex. 23, Jarvis Dep. 109:17-110:12, Aug. 10, 2017 (listing a set of properties in Utah with mandatory media packages as of 2017); Ex. 20, Tanforan Dep. 81:19-82:4 (describing covered parking charges required at move-in to Chesapeake Commons); Tanforan Dep. 86:10-20 (recalling that some parking charges are required for tenants at move in to several properties managed by Tanforan, though he was unable to

13

1    remember which ones); Tanforan Dep. 91:15-22, 95:13-96:14 (describing required washer and dryer

2    charges for tenants at Chesapeake Commons); Tanforan Dep, 84:15-19 (explaining that renters'

3    insurance is required at Chesapeake Commons).  Defendants' response conflicts with this testimony

4    and evades any substantive answers to the interrogatory by focusing on their inability to verify time

5    periods, which is only part of the interrogatory.

6            Furthermore, testimony from Johnson indicates that the Defendants' response is based on an

7    insufficient search and is consequently incomplete.  In responding to an interrogatory, a party "is

8    required to conduct a search for relevant information and answer interrogatories after that diligent

9    search is complete."  *Shaw v. Davis*, No. 3:18-cv-0551-MMD-CLB, 2021 WL 3889980, at *5 (D. Nev.

10   Aug. 31, 2021).  "If a party cannot furnish details, it should say so under oath, say why and set forth

11   the efforts it used to obtain the information."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2012 WL

12   2502748, at *2.  Defendant's response does not set forth its search efforts, and Johnson's testimony

13   indicates these efforts were limited to looking in their property management database and consulting

14   with three high-level executives. Ex. 9, Johnson Dep. 10:1-4, 11:4-10, Nov. 10, 2021.  It is also

15   unclear if Defendants requested information from these executives regarding all types of additional

16   service charges or only media packages.  *See id*.  Defendants' failure to use other means to respond to

17   Huskey Interrogatory 18 when their databases and high-level employees did not reveal an immediate

18   answer means they fall short of their duties under Rule 33.  *See Equal Emp't Opportunity Comm'n v.*

19   *Hickey-Mitchell Co.,* 372 F. Supp. 1117 (E.D. Mo. 1973) (finding interrogatory responses in

20   discrimination case which stated that corporate records did not classify employees' race were

21   inadequate and requiring defendant to use other reasonable means, such as personal observations, to

22   reply to discovery request) (cited in 8B Charles Allan Wright & Arthur R. Miller, Federal. Practice. &

23   Procedure, Federal Rules of Civil Procedure § 2177 (3d ed. 1998)).

24           Defendants have many other avenues within their control to provide a complete response, such

25   as surveying their leasing agents, who likely have first-hand knowledge of any mandatory charges at

26   particular properties.  Instead, Defendants provided a response based on an insufficient search and

27   further failed to indicate what efforts they took to search for information.

28

845371.10

1

**b.    Requiring a Proper Response to Interrogatory 18 is Appropriate Given the**

2

**Stakes of the Case and the Importance of this Factual Dispute.**

3      "Relevancy should be construed liberally and with common sense and discovery should be

4   allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of*

5   *Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (internal quotations omitted).  When determining

6   whether discovery is relevant and proportional to the needs of the case, courts consider "the

7   importance of the issues at stake in the action, the amount in controversy, the Parties' relative access to

8   relevant information, the Parties' resources, the importance of the discovery in resolving the issues,

9   and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.

10  Civ. P. 26(b)(1).

11      Here, a proper response to the Huskey Interrogatory 18 will illuminate fundamental issues in

12  this case, namely, whether Defendants' properties had mandatory charges and if these charges

13  constitute impermissible additional rent for Section 8 tenants.  *See* ECF No. 61 at 3, 6.  Although

14  Defendants recently began contending that they have a policy of exempting Section 8 tenants from

15  mandatory additional charges, *see* Ex. 10, Defendants' Further Amended Responses, Defendants have

16  not produced any evidence supporting the existence of this policy.  Moreover, Defendants only began

17  contending that this policy existed in the summer of 2021, six years after this case was first filed.  A

18  complete list of properties with mandatory charges will help the Parties further understand this issue.

19  For example, comparing the enrollment rates of Section 8 tenants in properties with mandatory charges

20  versus properties without mandatory charges will provide relevant information as to whether

21  Defendants in practice applied any exemption policy.

22      The extent of Defendants' imposition of mandatory charges at certain properties remains a

23  heavily contested issue.  Deposition testimony and document productions indicate that mandatory

24  charges exist, but these sources have not generated a full, consistent list of properties which required

25  these charges.  *See e.g.,* Ex. 18, Jarvis Dep. 60:09-64:22, 77:13-82:14, Sept. 10, 2021 (responding "I

26  don't know" repeatedly when asked if specific properties had mandatory media or parking charges);

27  Ex. 9, Johnson Dep. 32:25-33:16, Nov. 10, 2021 (disagreeing with a leasing director's statement in an

28  email that renters' insurance was mandatory).  And, despite agreeing to do so, Defendants have not yet

15

845371.10

1  produced documents responsive to RFP 52 asking for communications involving property-level

2  employees on this topic.  *See* ECF No. 165.  Even if Defendants do produce documents responsive to

3  RFP 52, a proper response to Huskey Interrogatory 18 acknowledging the mandatory charges at

4  properties where Defendants can verify them will narrow the Parties' factual disputes on this important

5  issue.  Because Defendants' relative access to information about mandatory charges far exceeds

6  Plaintiffs', a response to this interrogatory will allow the Parties to more efficiently focus on specific

7  remaining factual conflicts regarding these charges.  Information on mandatory charges will, in turn,

8  also go to the question of whether Defendants implemented charges in a way that subjected Section 8

9  tenants to mandatory fees as a condition of leasing.  (Defendants have already admitted they cannot

10  identify any documents reflecting the purported exemption for Section 8 tenants. *See* Ex. 11, Defs.'

11  Further Am. Resps.)

12      Since the issue of mandatory charges is important to this litigation, the burden of generating a

13  proper and complete response to Huskey Interrogatory 18 is proportional to the needs of this complex

14  FCA and certified class action case, which encompasses Defendants' practices affecting thousands of

15  Section 8 tenants across four states.  As noted above, in furnishing their most recent response

16  Defendants did not make use of the sources available to them to conduct a search with due diligence.

17  For instance, Defendants did not consult property-level leasing agents.  Such efforts are both

18  proportional to this case and required under Federal Rule of Civil Procedure 33.  *Johnson v. Cate*, No.

19  1:10-cv-02348-LJO-MJ, 2014 WL 4249141 (E.D. Cal. Aug. 27, 2014) (citing *Miller v. Pruneda*, 236

20  F.R.D. 277, 282 (N.D.W.Va.2004) ("A party responding to interrogatories is required to provide

21  information that is available to it and can be produced without undue labor and expense.").

22      **c.      Defendants Have a History of Producing Evasive Answers and Failing to**

23      **Provide Amended Answers When Promised.**

24      Although Defendants have agreed to produce an amended response consistent with the Parties'

25  meet and confer efforts, an order compelling a proper response is still necessary to ensure that

26  Defendants follow through.  When first given notice of deficiencies in their answers to Huskey

27  Interrogatory 18, Defendants took three months to serve an amended response.  *See* Ex. 5, Collection

28  of Meet and Confer Emails.  In prior instances, Defendants have promised answers that would avoid

1  the need for court intervention, only to serve answers that were facially deficient and substantially

2  similar to previous incomplete answers.  *See* Ex. 12, Nov. 17, 2021 Email Exchange; Ex. 11, Defs.'

3  Further Am. Resps.  Most recently, Defendants estimated that they could serve responses by December

4  3, before the filing of the December 3 Joint Statement.  Ex. 26, Bellows Nov. 30, 2021 Letter.

5  Defendants have yet to provide a response.

6        Given the approaching discovery cutoff date, Plaintiffs are concerned both that Defendants will

7  fail to respond and that any response will be evasive and incomplete.

8        **2.     Defendants' Position Regarding Huskey Interrogatory 18**

9        Defendants have agreed to producing an amended response as requested, consistent with the

10  Parties' meet and confer efforts and are in the process of gathering additional information to formulate

11  that response.  That process is complete, and has included reports received from each property

12  manager at each subject property.  Defendants expect the amended response to be served within the

13  time frame specified by Plaintiffs.

14  **D.   Terry Requests for Production 27 to 30 and the Parties' Contentions**

15        Terry RFPs 27 to 30 were served on June 16, 2020 as part of Plaintiff Denika Terry's Second

16  Set of Requests for Production.  The requests, Defendants' responses, and the Parties' contentions are

17  set out below.

18        **1.     Request for Production No. 27 (Training re: Section 8 Program)**

19        **REQUEST FOR PRODUCTION NO. 27:**
20        All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees
        regarding the SECTION 8 program at any time since April 2005.

21        **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**
22        After diligent search and reasonable inquiry, Defendants are not in possession of any
        responsive documents.  Discovery is ongoing, and DEFENDANTS reserve the right to
23        supplement this response if any responsive documents are discovered.

24             **a.     Plaintiffs' Contentions Related to RFP 27**

25        Defendants do not state, and have consequently waived, any objections to this RFP.  *See City of*

26  *El Monte*, 2021 WL926105, at *3.  Additionally, Plaintiffs do not understand Defendants to oppose

27  production of any documents that are responsive to this RFP.

28

845371.10

Defendants' assertion in their response that no responsive documents exist turned out to be incorrect. *See, e.g.*, Ex. 22, Johnson Dep. 115:12-116:1, July 19, 2021 (discussing a "How-To" training document related to Section 8 rents and their interaction with the Low-Income Housing Tax Credit Program). Moreover, Defendants' corporate deponents have testified that Defendants' compliance personnel and contractors, whose jobs are focused on other affordable housing programs, may sometimes address Section 8 issues. *See, e.g.*, Ex. 24, Jarvis Dep. 295:14-17, Sept. 14, 2021 (testifying that contractor Preferred Compliance may work on Section 8 compliance "where it impacts each individual file"). Therefore, Plaintiffs have requested Defendants to review, and produce if responsive, training documents related to their compliance processes and affordable housing programs. Plaintiffs have specifically requested that Defendants review and produce the following:

> Wasatch University Training Videos
> Preferred Compliance LIHTC
> WPM – Preferred Compliance Tax Credit Webinar, 11.2009
> WPM – Preferred Compliance Tax Credit Webinar, 08.2019

Defendants have failed to identify any reason to withhold these videos. Because, since September 2021, Defendants have repeatedly promised these videos during meet and confer conversations only to fail to produce them, Defendants have not provided reasonable assurance that responsive videos will be produced. *See Voggenthaler v. Maryland Square, LLC*, No. 2:08-cv-01618-RCJ-VCF, 2010 WL 11579075, at *2 (D. Nev. Mar. 2, 2010) ("If a party responds to requests for production of documents by stating that responsive documents 'will be produced,' it is proper for the requesting party to file a motion to compel if there is no reasonable assurance either in the responses or through a meet and confer process as to when the documents will be produced."). Moreover, Defendants have stated their intention to withhold some as-yet-unidentified documents from production, and Plaintiffs still do not know which documents or on what grounds Defendants believe they are not responsive. Therefore, Plaintiffs respectfully request that the Court order Defendants to produce them no later than December 17, 2021.

### b.   Defendants' Contentions Related to RFP 27

Defendants have agreed to produce all responsive documents consistent with the parties' meet and confer efforts.

18

2.    **Request for Production No. 28 (Training re: Leases and the Leasing Process)**

**REQUEST FOR PRODUCTION NO. 28:**
All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees regarding leases and the leasing process at any time since April 2005.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**
Defendant objects to the instant request as being overbroad, unduly burdensome, and calling for trade secrets.  Defendants are willing to meet and confer with respect to the specific trainings requested.

a.    **Plaintiffs' Contentions Related to RFP 28**

Defendants' failure to specifically state the grounds for their objections to RFP 28 constitute waiver of those objections.  *See* Fed. R. Civ. P. 34(b)(2)(B); *Cengage Learning, Inc. v. Davis Textbooks*, No. 2:15-cv-02401-TLN-AC, 2016 WL 8730880, at *1 (E.D. Cal. Sept. 16, 2016) ("General or boilerplate objections, e.g., those based on broad assertions of vagueness, overbreadth or burdensomeness, are improper and do not meet this standard, especially when a party fails to submit any evidentiary declarations supporting such objections.").

Production of training documents related to leases and the leasing process is appropriate because tenants are pitched on and enrolled in additional service charges during the leasing process, and the lease addresses specific additional service charges (renters' insurance, and a credit-reporting service called "RentPlus") as well as aspects of Defendants' policies related to payments and the failure to pay.  Plaintiffs have requested that Defendants review and produce, if responsive, the following documents:

How-To Spreadsheet
SM101 – Put Together a Leasing Notebook
SM102 – Leasing Duties-HT
SM102.RD1 through SM102.RD10*
        * These lack comprehensible titles, but appear to be related to SM102
SM205 – Overcoming Objections-HT
SM206 – Closing the Sale-HT
SM210 – Move-In Cost Sheet – VQS
SM210.01 – Move-In Cost Sheet-F
RS102 – Resident Renewal Process-HT
RS102 – Lease Renewal Program-HT
RS102.RD1 through RS102.RD.6*
        * These lack comprehensible titles, but appear to be related to RS102
HR700-HR707 – assorted documents related to leasing bonuses

19

845371.10

<u>Wasatch University Training Videos</u>
Leasing Kit
Renewals in RentCafe

Defendants have not identified any reason to withhold these documents.  Because Defendants have repeatedly promised to produce documents and videos during meet and confer conversations only to fail to produce them, Defendants have not provided reasonable assurance that responsive documents will be produced.  *See Voggenthaler*, 2010 WL 11579075, at *2.  Moreover, as stated above, Plaintiffs still do not know whether Defendants intend to withhold any of the listed documents, and if so, which documents and on what grounds.  Plaintiffs respectfully request that the Court order the production of these documents no later than December 17, 2021.

> **b.    Defendants' Contentions Related to RFP 28**

Defendants have agreed to produce all responsive documents, consistent with the parties' meet and confer efforts.

> **3.    Request for Production No. 29 (Training Documents re: Additional Service Charges)**

**REQUEST FOR PRODUCTION NO. 29:**
All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees regarding ADDITIONAL SERVICE AGREEMENTS and ADDITIONAL SERVICE CHARGES at any time since April 2005.
**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**
Defendant objects to the instant request on the grounds that it is overbroad and unduly burdensome.  Without waiving that objection, Defendant responds that after diligent search and reasonable inquiry, Defendants are not in possession of any responsive documents.  Discovery is ongoing, and Defendants reserve the right to supplement this response if any responsive documents are discovered.t has no responsive documents in its possession.

> **a.    Plaintiffs' Contentions Related to Request for Production 29**

Defendants' failure to specifically state the grounds for their objections to RFP 29 constitute waiver of those objections.  *See* Fed. R. Civ. P. 34(b)(2)(B); *Cengage Learning, Inc.*, 2016 WL 8730880, at *1.

Defendants' practices related to additional service charges lie at the very heart of this case.  Liability turns on whether additional service charges were treated as rent.  How Defendants trained their employees to implement additional service charges speaks to whether such charges are

845371.10

consideration for use of the premises, whether tenants are given a realistic option to turn down the

services, and whether Defendants' treat the charges equivalently with rent.  Plaintiffs have asked

Defendants to review and produce, if responsive, the following documents:

> How-To Spreadsheet
> LD344.07 – Facts about rental insurance
> BTH301.01 – Facts About Renter's Insurance (Bond and Tax Credit Tab)
>
> Wasatch University Training Videos
> RentPlus: How to Enroll a Resident
> Assurant "Pay with Rent" Program Roll-out
> RentPlus Refresher Training Webinar 4.14.21

Defendants have not identified any reason to withhold these documents.  Because Defendants

have repeatedly promised these documents and videos during meet and confer conversations only to

fail to produce them, Defendants have not provided reasonable assurance that responsive documents

will be produced.  *See Voggenthaler*, 2010 WL 11579075, at *2.  Moreover, as stated above, Plaintiffs

still do not know whether Defendants intend to withhold any of the listed documents, and if so, which

documents and on what grounds.  Plaintiffs respectfully request that the Court order the production of

these documents no later than December 17, 2021.

### b.    Defendants' Contentions Related to RFP 29

Defendants have agreed to produce all responsive documents consistent with the parties' meet

and confer efforts.

### 4.    Request for Production No. 30 (Training Documents re: Notices Based on Non-Payment of Rent and Other Charges)

**REQUEST FOR PRODUCTION NO. 30:**
All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees
regarding notices to tenants based on the non-payment of rent of any other charge at any
time since April 2005.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**
Defendant objects to this request to the extent it calls for trade secret information
protected by a Non-Disclosure Agreement, and on the grounds that there is no
reasonable need for the protected information requested.

21

845371.10

a.     **Plaintiffs' Contentions Related to Request for Production No. 30**

Plaintiffs understand that Defendants no longer object assert a trade secret objection, the sole objection stated in their response. Defendants waived any other objections by failing to timely assert them. *See City of El Monte*, 2021 WL 926105, at *3.

Defendants' practices related to non-payment notices are central to Plaintiffs' argument that Defendants treat additional service charges like rent. *See, e.g.*, ECF No. 61, Order, at 6, ECF No. 92, Class Certification Order at 14-15, 30.  There are numerous examples of pay-or-quit notices that Defendants have served on Section 8 tenants informing them that if they do not pay unpaid additional service charges, they will face eviction. *See* Ex. 21, Defs.' Resp. to Req. for Admis. No. 14 (admitting to serving notices stating that tenants must pay additional service charges or face eviction).  Production of Defendants' training of their personnel on how to use these and related notices is appropriate to illuminate the company's policies and practices on this significant issue.

Defendants' How-To Spreadsheet had a tab entitled "Evictions/Collections/Legal" listing documents EC101 through EC126.01.CA, together with attachments and variations based on the state. Plaintiffs asked Defendants to review and produce all of those documents to the extent they are responsive.  Defendants have produced only a handful of documents from this tab.

Plaintiffs will not reproduce the list of outstanding documents from the How-To Spreadsheet here due to its length, but some illustrative entries include "EC101 Rent Collections & Legal Processes-HT"; a series of documents that appear to be form pay or quit notices (e.g., "EC101.01.FRE, Fresno 3-Day Notice to Pay-F" "EC101.01.SD "San Diego 3-Day Notice to Pay-F," EC101.03 "California 3-Day Notice to Perform Financial Covenant or Quit"); jurisdiction-specific guidance (e.g., EC101.FRE "Fresno Rent Collections & Legal Processes-HT"); "EC101.03 – California 3-Day Notice to Perform Financial Covenant or Quit," and "EC102.01 – 1st Small Balance Notice-F."

Plaintiffs have also requested that Defendants produce some selected entries from Wasatch University.

<u>How-To Spreadsheet</u>
All outstanding documents on the "Evictions/Collections/Legal" Tab

<u>Wasatch University</u>
WPM – The Delinquency Hero
HERO Coaching for Managers – "HERO Coaching Resident Rent Call"

22

1  Promise to Pay How To
2  AR Collections Best Practice Video

3  Defendants have not provided any reason for withholding production of any of these documents.

4  Because Defendants have repeatedly promised these documents during meet and confer conversations

5  only to fail to produce them, Defendants have not provided reasonable assurance that responsive

6  documents will be produced. *See Voggenthaler*, 2010 WL 11579075, at *2.  Moreover, as stated

7  above, Plaintiffs still do not know whether Defendants intend to withhold any of the listed documents,

8  and if so, which documents and on what grounds. Plaintiffs respectfully request that the Court order

9  the production of these documents no later than December 17, 2021.

10            **b.    Defendants' Contentions Related to RFP 30**

11            Defendants have agreed to produce all responsive documents consistent with the parties' meet

12  and confer efforts.

13

14  Dated:  December 10, 2021              Respectfully submitted,

15                                        GOLDSTEIN, BORGEN, DARDARIAN & HO

16                                        */s/ Anne P. Bellows*
17                                        Anne P. Bellows
                                          Attorneys for Plaintiffs and Relators

18

19  Dated:  December 10, 2021              Respectfully submitted,

20                                        LEWIS BRISBOIS BISGAARD & SMITH LLP

21                                        */s/ Ryan Matthews* (as authorized 12/10/21)
                                          Ryan Matthews
22                                        Attorneys for Defendants

23

24

25

26

27

28

# EXHIBIT 1

1    Laura L. Ho (SBN 173179)
      lho@gbdhlegal.com
2    Anne Bellows (SBN 293722)
      abellows@gbdhlegal.com
3    GOLDSTEIN, BORGEN, DARDARIAN & HO
      155 Grand Avenue, Suite 900
4    Oakland, CA 94612
      (510) 763-9800 | (510) 835-1417 (Fax)
5
      Andrew Wolff (SBN 195092)
6    andrew@awolfflaw.com
      LAW OFFICES OF ANDREW WOLFF, PC
7    1615 Broadway, 4th Floor
      Oakland, CA 94612
8    (510) 834-3300 | (510) 834-3377 (Fax)

9    Jesse Newmark (SBN 247488)
      jessenewmark@centrolegal.org
10   CENTRO LEGAL DE LA RAZA
      3022 International Blvd., Suite 410
11   Oakland, CA 94601
      (510) 437-1863 | (510) 437-9164 (Fax)
12
      Attorneys for Plaintiffs and Relators
13

14                 **UNITED STATES DISTRICT COURT**
                   **EASTERN DISTRICT OF CALIFORNIA**
15                       **SACRAMENTO DIVISION**

16   UNITED STATES OF AMERICA, *ex rel.*       Case No.: 2:15-CV-00799-KJM-DB
      DENIKA TERRY, ROY HUSKEY III, and
17   TAMERA LIVINGSTON, and each of them for    CLASS ACTION
      themselves individually, and for all other persons
18   similarly situated and on behalf of the UNITED    **PLAINTIFF ROY HUSKEY III'S FIFTH**
      STATES OF AMERICA                          **SET OF INTERROGATORIES TO**
19                                **DEFENDANTS WASATCH ADVANTAGE**
            Plaintiffs/Relators,                 **GROUP, LLC, WASATCH PROPERTY**
20                                **MANAGEMENT, INC., WASATCH POOL**
      vs.                                   **HOLDINGS, LLC, CHESAPEAKE**
21                                **COMMONS HOLDINGS, LLC, LOGAN**
      WASATCH ADVANTAGE GROUP, LLC,      **PARK APARTMENTS, LLC, AND LOGAN**
22   WASATCH PROPERTY MANAGEMENT, INC.,   **PARK APARTMENTS, LP**
      WASATCH POOL HOLDINGS, LLC,
23   CHESAPEAKE COMMONS HOLDINGS, LLC,
      LOGAN PARK APARTMENTS, LLC, LOGAN
24   PARK APARTMENTS, LP, and DOES 1-30,

25           Defendants.

26

27

28

833355.5

| | |
|---|---|
| **PROPOUNDING PARTY:** | Plaintiff-Relator Roy Huskey III |
| **RESPONDING PARTIES:** | Wasatch Advantage Group, LLC, Wasatch Property Management, |
| | Inc., Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, |
| | LLC, Logan Park Apartments, LLC, and Logan Park Apartments, LP |
| **SET NUMBER:** | Five (5) |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff-Relator Roy Huskey requests that Defendants provide verified responses in writing and under oath to the following interrogatories at the offices of Goldstein, Borgen, Dardarian & Ho, 300 Lakeside Drive, Suite 1000 Oakland, CA 94612, within thirty (30) days from the date of service of these Interrogatories. These Interrogatories are ongoing and require timely supplementation up to and through the completion of trial in this action.

## **DEFINITIONS**

The following definitions will apply to each of the following Interrogatories:

1. "DEFENDANT" or "DEFENDANTS" or "YOU" shall refer to all of the defendants in this action, and their respective officers, agents, servants, employees, independent contractors, attorneys, predecessors, successors and assigns, representatives, and all other persons acting or who have acted on their behalf, including entities under the direct or indirect ownership of Wasatch Advantage Group or any other Defendant without geographical limitation.

2. "ADDITIONAL SERVICE CHARGES" as used in this interrogatory means any charges made to a tenant pursuant to DEFENDANTS' contracting document entitled "Additional Service Agreement."

3. "SECTION 8" shall refer to the Housing Choice Voucher program, commonly called the Section 8 program, funded by the United States Department of Housing and Urban Development and administered by local public housing authorities.

4. "DOCUMENT" shall have the most expansive possible meaning under the Federal Rules of Civil Procedure, and shall be construed broadly to include any medium upon which intelligence or information can be recorded or retrieved, and includes, without limitation, the following, whether printed, typewritten, recorded, filmed or reproduced by any mechanical process or written or

1

produced by hand, and whether an original, master or copy, and whether or not claimed to be privileged from discovery, including: worksheets, agreements, books, records, letters, accounts, notes, summaries, forecasts, appraisals, surveys, estimates, diaries, desk calendars, reports, communications (including intra-company communications), correspondence, facsimiles, electronic mail messages, telegrams, memoranda (including intra-company memoranda), summaries, notes and records of telephone conversations (including voicemail messages), meetings, and conferences, notes in reference to personal conversations or interviews, contracts, notices, drafts of any document, business records, charts, schedules, diaries, computer printouts, computer-stored data (including e-mails), computer tapes or computer disks, microfilm, microfiche, photographs, slides, negatives, motion pictures, video recordings, tape or other voice recordings and transcriptions thereof, data compilations from which information can be obtained or translated and any other information contained on paper, in writing, in graphical media, in any computer readable media, or in any other physical form in your actual or constructive possession, custody or control.

5.     "HAP CONTRACT" shall refer to the Housing Assistance Program Contract that is required to be executed by the landlord and the applicable public housing authority for all SECTION 8 tenancies.

6.     "SUBJECT PROPERTIES" shall refer to all properties managed by Defendant Wasatch Property Management during all relevant times in this action and that had one or more Section 8 tenants who were charged ADDITIONAL SERVICE CHARGES beyond the RENT TO OWNER set forth in the Housing Assistance Payment Contracts.

## INSTRUCTIONS

The following instructions apply to each of the Interrogatories:

1.     These requests are being made pursuant to the Federal Rules of Civil Procedure, including, without limitation, Rules 26 and 33.  Accordingly, your responses to such Interrogatories must comply with the requirements set forth in the Rules, which are referred to and incorporated herein by reference.

2.     In responding to these Interrogatories, YOU are requested to furnish all information known or available to YOU regardless of whether such information is in your possession or that of your

agents, representatives, or experts, or your corporate affiliates or their agents, representatives, or experts, or anyone else acting on your behalf or otherwise subject to your control.

3.      If any requested information would be found in documents or items that are no longer in your possession, custody or control, whether because they were deleted, destroyed, conveyed to custodians who are now outside of your control, or otherwise, then state the following:

       a.      What was done with the document or item;

       b.      When such document or item was created;

       c.      The identity and address of the current custodian, if any;

       d.      The reasons for transfer or disposal; and

       e.      The identity of the person who decided to transfer or dispose of the document or item.

4.      If any of the Interrogatories cannot be answered fully and completely, answer it to the extent possible, specifying the reasons for your inability to answer the remainder.  Such a statement shall include the steps taken to locate the requested information.

5.      If an objection is made on the basis of any claim of privilege, specify in your response the nature of the privileged information in sufficient detail that the Court may rule on the propriety of the objection.  Specifically, state the following:

       a.      If the information is found in a document, the title of the document;

       b.      If the information is found in a document, the type of document;

       c.      The author or sender of the information, if applicable;

       d.      The recipient to whom the information was provided, if applicable;

       e.      The date of the communication of the information, if applicable;

       f.      The name of each person to whom the information was revealed, if applicable;

       g.      The basis upon which privilege is claimed; and

       h.      A statement of the subject matter of the information in sufficient detail to permit the court to rule on the propriety of the objection.

Plaintiff demands that a privilege log, containing the foregoing information, be served on him no later than thirty (30) days from issuance of these Interrogatories.

3

833355.5

6.      Whenever appropriate in these Interrogatories, the singular form of a word shall include the plural, and vice versa.

**INTERROGATORIES**

**INTERROGATORY NO. 18:**

Please identify (by name, address, city, state, applicable time period, and relevant charges) any SUBJECT PROPERTY that, for any period of time since April 14, 2005, made any ADDITIONAL SERVICE CHARGE mandatory for any tenants.

**INTERROGATORY NO. 19:**

Please identify (by author, date, title, and bates number) any and all DOCUMENTS reflecting a company-wide policy maintained by DEFENDANTS that tenants participating in SECTION 8 were exempt from an otherwise mandatory requirement that tenants maintain a rental insurance policy.

**INTERROGATORY NO. 20:**

Please identify (by author, date, title, and bates number) any and all DOCUMENTS reflecting a company-wide policy maintained by DEFENDANTS that tenants participating in SECTION 8 were exempt from otherwise mandatory ADDITIONAL SERVICE CHARGES.

**INTERROGATORY NO. 21:**

Terry Request for Admission 13 asked DEFENDANTS to "admit that at all times since April 14, 2005, DEFENDANTS, in all of their residential properties, had a practice of not including ADDITIONAL SERVICE CHARGES on the Request for Tenancy Approval form required to obtain approval of SECTION 8 tenancies."  DEFENDANTS' response was "Deny."  *See* Defendants' Responses to Terry's Request for Admissions, Set Two (July 19, 2021).

Please identify all material facts on which DEFENDANTS base their denial of Terry Request for Admission 13 by stating each fact and listing (by author, date, title, and bates number) any and all documents supporting that fact.

**INTERROGATORY NO. 22:**

Terry Request for Admission 16 asks DEFENDANTS to admit "that DEFENDANTS have not received any COMMUNICATIONS from the U.S. Department of Housing and Urban Development indicating approval, in whole or in part, of DEFENDANTS' practice of charging SECTION 8 tenants

4

for ADDITIONAL SERVICE CHARGES outside the RENT TO OWNER amount reflected in applicable HAP CONTRACTS."

If DEFENDANTS' response to Terry Request for Admission 16 is anything but an unqualified admission, please identify all material facts on which DEFENDANTS base their response by stating each fact and listing (by author, date, title, and bates number) any and all documents supporting that fact.

Dated:  July 23, 2021

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

Anne P. Bellows

Attorneys for Plaintiff and Relators

833355.5

# EXHIBIT 2

1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
JOSEPH A. SALAZAR JR., SB# 169551
2    E-Mail: Joe.Salazar@lewisbrisbois.com
RYAN MATTHEWS, SB# 311674
3    E-Mail: Ryan.Matthews@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
4  Sacramento, California 95833
Telephone: 916.564.5400
5  Facsimile: 916.564.5444

6  Attorneys for Wasatch Advantage Group, LLC;
Wasatch Property Management, Inc.; Wasatch
7  Pool Holdings, LLC, Chesapeake Commons
Holdings, LLC; Logan Park Apartments, LLC;
8  Logan Park Apartments, LP

9

10                **UNITED STATES DISTRICT COURT**

11              **EASTERN DISTRICT OF CALIFORNIA**

12                  **SACRAMENTO DIVISION**

13

14  UNITED STATES OF AMERICA, ex rel.          CASE NO. 2:15-cv-00799-KJM-DB
DENIKA TERRY and ROY HUSKEY III,
15  and each of them for themselves individually,   **DEFENDANTS RESPONSES TO**
and for all other persons similarly situated and  **PLAINTIFF ROY HUSKEY III'S**
16  on behalf of the UNITED STATES OF           **INTERROGATORIES, SET FIVE**
AMERICA,
17                                              The Hon. Kimberly J. Mueller
          Plaintiffs/Relators,
18                                              Trial Date:      None Set
          vs.
19
WASATCH ADVANTAGE GROUP, LLC,
20  WASATCH PROPERTY MANAGEMENT,
INC., WASATCH POOL HOLDINGS, LLC,
21  CHESAPEAKE COMMONS HOLDINGS,
LLC, LOGAN PARK APARTMENTS, LLC;
22  LOGAN PARK APARTMENTS, LP,

23          Defendants.

24

25  PROPOUNDING PARTY:        Plaintiff, Roy Huskey, III

26  RESPONDING PARTY:         Defendants, Wasatch Advantage Group, LLC; Wasatch Property

27                            Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake

28                            Commons Holdings, LLC; Logan Park Apartments, LLC; Logan

1    Park Apartments, LP

2    SET NO.:                        FIVE

3    **INTERROGATORY NO. 18**:

4        Please identify (by name, address, city, state, applicable time period, and relevant charges)

5    any SUBJECT PROPERTY that, for any period of time since April 14, 2005, made any

6    ADDITIONAL SERVICE CHARGE mandatory for any tenants.

7    **RESPONSE TO INTERROGATORY NO. 18**:

8        To the best of Defendants' knowledge, this has never occurred.

9    **INTERROGATORY NO. 19**:

10       Please identify (by author, date, title, and bates number) any and all DOCUMENTS

11   reflecting a company-wide policy maintained by DEFENDANTS that tenants participating in

12   SECTION 8 were exempt from an otherwise mandatory requirement that tenants maintain a rental

13   insurance policy.

14   **RESPONSE TO  INTERROGATORY NO. 19**:

15       Defendants are unaware of any documents responsive to this Interrogatory. Defendants

16   reserve the right to supplement this response should any documents be uncovered in the ongoing

17   document review.

18   **INTERROGATORY NO. 20**:

19       Please identify (by author, date, title, and bates number) any and all DOCUMENTS

20   reflecting a company-wide policy maintained by DEFENDANTS that tenants participating in

21   SECTION 8 were exempt from otherwise mandatory ADDITIONAL SERVICE CHARGES.

22   **RESPONSE TO INTERROGATORY NO. 20**:

23       Defendants object to this Interrogatory as assuming a fact not in evidence. There have

24   never been mandatory Additional Service Charges.

25   **INTERROGATORY NO. 21**:

26       Terry Request for Admission 13 asked DEFENDANTS to "admit that at all times since

27   April 14, 2005, DEFENDANTS, in all of their residential properties, had a practice of not

28   including ADDITIONAL SERVICE CHARGES on the Request for Tenancy Approval form

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  required to obtain approval of SECTION 8 tenancies." DEFENDANTS' response was "Deny."

2  See Defendants' Responses to Terry's Request for Admissions, Set Two (July 19, 2021).

3       Please identify all material facts on which DEFENDANTS base their denial of Terry

4  Request for Admission 13 by stating each fact and listing (by author, date, title, and bates number)

5  any and all documents supporting that fact.

6  **RESPONSE TO INTERROGATORY NO. 21:**

7       Defendants have amended this Response such that this Interrogatory is no longer

8  applicable.

9  **INTERROGATORY NO. 22:**

10       Terry Request for Admission 16 asks DEFENDANTS to admit "that DEFENDANTS have

11  not received any COMMUNICATIONS from the U.S. Department of Housing and Urban

12  Development indicating approval, in whole or in part, of DEFENDANTS' practice of charging

13  SECTION 8 tenants for ADDITIONAL SERVICE CHARGES outside the RENT TO OWNER

14  amount reflected in applicable HAP CONTRACTS."

15       If DEFENDANTS' response to Terry Request for Admission 16 is anything but an

16  unqualified admission, please identify all material facts on which DEFENDANTS base their

17  response by stating each fact and listing (by author, date, title, and bates number) any and all

18  documents supporting that fact.

19  **RESPONSE TO INTERROGATORY NO. 22:**

20       The response is an unqualified admission, with the assertion that it may be amended should

21  any documents be discovered that necessitated amendment.

22  DATED: August 27, 2021         LEWIS BRISBOIS BISGAARD & SMITH LLP

23

24       By:

25       RYAN MATTHEWS

26       Attorneys for Wasatch Advantage Group, LLC;
    Wasatch Property Management, Inc.; Wasatch

27       Pool Holdings, LLC, Chesapeake Commons
    Holdings, LLC; Logan Park Apartments, LLC;

28       Logan Park Apartments, LP



**VERIFICATION**

**STATE OF CALIFORNIA, COUNTY OF SACRAMENTO**

I have read the foregoing DEFENDANTS RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE and know its contents.

☐    I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☒    I am Chief Operating Officer of Wasatch Property Management, Inc., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☒    I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

☐    The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐    I am one of the attorneys for Wasatch Property Management, Inc., a party to this action. Such party is absent from the county where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on August 27, 2021, at Salt Lake City, Utah.


Jarom Johnson
Print Name of Signatory                              Signature

LEWIS
BRISBOIS

4831-6811-5444.1                                  1                        Case No. 2:15-cv-00799-KJM-DB
DEFENDANTS  RESPONSES  TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

# FEDERAL COURT PROOF OF SERVICE

USA-Terry v Wasatch Property Mgmt
2:15-cv-00799 KJM DAD

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

At the time of service, I was over 18 years of age and not a party to the action.  My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On August 27, 2021, I served the following document(s):

- DEFENDANTS RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒   (BY E-MAIL OR ELECTRONIC TRANSMISSION)  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on August 27, 2021, at Sacramento, California.

_____
Alicia Crespo



DEFENDANTS RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

1

**SERVICE LIST**
**USA-Terry v Wasatch Property Mgmt**
**2:15-cv-00799 KJM DAD**

2

| 3 | Andrew Wolff<br>Law Office of Andrew Wolff, PC<br>1956 Webster Street, Ste. 275<br>Oakland, CA 94612 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  510-834-3300<br>E-Mail:  andrew@awolfflaw.com |
|---|---|---|
| 4 | | |
| 5 | | |
| 6 | Jesse Newmark<br>CENTRO LEGAL DE LA RAZA<br>3022 International Blvd, Ste. 410<br>Oakland, CA 94601 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  (510) 437-1554 x115<br>Fax:  (510) 437-9164<br>Email:  jessenewmark@centrolegal.org<br>Email: malvarez@centrolegal.org |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | Laura L. Ho<br>Anne Bellows<br>Kristen A. Burzynski<br>Goldstein, Borgen, Dardarian & Ho<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612 | *Co-Counsel for Plaintiffs*<br><br>Tel.: 519-763-9800<br>Fax: 510-835-1417<br>Email: lho@gbdhlegal.com<br>Email: abellows@gbdhlegal.com<br>Email: sgrimes@gbdhlegal.com<br>Email: dvaldez@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | Vincente Antonio Tennerelli<br>United States Attorney's Office<br>2500 Tulare Street, Suite 4401<br>Fresno, CA 93721 | *Attorney for Intervenor Plaintiff*<br>*United States of America*<br><br>Tel.: (559) 497-4080<br>Email: Vincente.Tennerelli@usdoj.gov<br>Email: joni.jones@usdoj.gov |
| 17 | | |
| 18 | | |

19

20

21

22

23

24

25

26

27

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# EXHIBIT 3

# G B D H

## Goldstein, Borgen, Dardarian & Ho

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

August 30, 2021

**VIA EMAIL ONLY**

Joseph Salazar                                    Joe.Salazar@lewisbrisbois.com
Ryan Matthews                              Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

**Re:    Defendants' Deficient Response to Huskey Interrogatories 18 and 20**

Dear Ryan,

On Friday, we received Defendants' responses to Huskey Interrogatories Set 2.  I write to ask Defendants to cure their deficient responses to Huskey Interrogatories 18 and 20.

Huskey Interrogatory 18 asked Defendants to "identify (by name, address, city state, applicable time period, and relevant charges) any SUBJECT PROPERTY that, for any period of time since April 14, 2005, made any ADDITIONAL SERVICE CHARGE mandatory for *any tenants*." (emphasis added).  This Interrogatory applies to all tenants, not just tenants with Section 8.   Without making objections, Defendants stated, "to the best of Defendants' knowledge, this has never occurred." (Defs' Response to Huskey Interrogatory 18.)

This response contradicts the existing record.  The record is clear that Defendants have made some charges mandatory at some of their properties.  Jarom Johnson so testified in his deposition with regard to parking and media packages—and he testified that it would be possible to create a list of properties with those charges:

> **Mandatory Parking Charges – Johnson Dep. 187**
> 7 Q Okay. Are you aware of any other
> 8 residential properties managed by Wasatch that have
> 9 mandatory parking charges?
> 10 A For any tenant or for housing tenants?
> 11 Q Is there a difference?
> 12 A Yes. There is a difference.
> 13 Q Okay. For housing tenants?
> 14 A I'm not aware of any, no.
> 15 Q What about for nonhousing tenants?
> 16 A Yes. So some of our projects have
> 17 required parking as a result of the building type or
> 18 the parking allocation at the community.
> 19 Q Okay. And could you provide me a list?

Joseph Salazar                                    -2-                          August 30, 2021
Ryan Matthews

20 A I'm sure we could. Yes.
21 (Request for Production.)

**Mandatory Media Charges – Johnson Dep. 214-15**
21 Q Are any of these charges for Internet,
22 or cable, or media package mandatory at any of
23 Wasatch's properties currently?
24 A Yes, absolutely.
25 Q Which properties? And you can describe
1 it by characteristics if it would make that easier.
2 A Yeah. I mean, so any of our communities
3 that have -- like any or more recent communities --
4 it would be kind of a standard of living at the
5 community.
6 Q So the communities where it's going to
7 be mandatory are ones that have been brought into
8 the Wasatch portfolio more recently?
9 A Yeah. Constructed recently or those
10 that we could manage the delivery of. You know, so
11 ground-up construction, those are typically the
12 types of the communities that give you the ability
13 to provide the service at its optimum performance.
14 Q Okay. And would you be able to provide
15 a list of properties where some kind of media option
16 has been mandatory, you know, with the relevant time
17 periods, if asked to do so?
18 A Yes. Yeah.

Past deposition testimony also reflects the existence of mandatory charges.  *See* Jarvis
2017 Dep. 109:17-110:12 (listing some properties that had mandatory media packages as of
2017); Tanforan Dep. 81:19-82:5 (at Chesapeake Commons, tenants must reserve and pay for a
covered parking space at move in); Tanforan Dep. 86:10-20 (parking charges are required for
tenants at move-in at some other properties managed by Tanforan, but he cannot remember
which ones); Tanforan Dep. 92:15-23, 95:13-96:14 (washer and dryers are required charges for
all tenants at Chesapeake Commons).  Huskey Interrogatory 18 follows up on this testimony by
requesting a list of properties with mandatory additional service charges, as Defendants'
employees have previously testified that whether charges are mandatory or not varies by
property.  *See, e.g.*, Jarvis 2017 Dep. 109:17-111:15 (media packages vary by property).

Huskey Interrogatory 20 asks Defendants to "identify (by author, date, title, and bates
number) any and all DOCUMENTS reflecting a company-wide policy maintained by
DEFENDANTS that tenants participating in Section 8 were exempt from otherwise mandatory
ADDITIONAL SERVICE CHARGES."   Defendants refuse to respond based on their sole
objection to that the Interrogatory "assum[es] a fact not in evidence" because "[t]here have never
been mandatory Additional Service Charges."  (Defs' Response to Huskey Interrogatory 20.)
To the contrary, as set out above, the evidence does establish that there have been mandatory

Joseph Salazar                                          -3-                              August 30, 2021
Ryan Matthews

Additional Service Charges.  Plaintiffs therefore request a proper answer to this Interrogatory.  If
there are no documents reflecting a company-wide policy exempting Section 8 tenants,
Defendants can so state in their response.

     Plaintiffs request that Defendants immediately supplement their response to Huskey
Interrogatories 18 and 20 to provide the information requested.  As this information is relevant to
Topic 1 on the Rule 30(b)(6) notice we issued for Janae Jarvis' upcoming deposition, we request
that you provide the updated response no later than **Friday, September 3** so that we have time to
review the information and use it to prepare for the deposition.


Sincerely,

Anne P. Bellows


cc:     Andrew Wolff
         Brenna Wood-Fitzpatrick
         Jesse Newmark
         Henrissa Bassey
         Laura Ho
         Kristen Burzynski

# EXHIBIT 4

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Tuesday, September 7, 2021 3:42 PM |
| **To:** | Matthews, Ryan |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; jessenewmark; hbassey; andrew@awolflaw.com; brenna |
| **Subject:** | 9/2/21 meet and confer call |

Hi Ryan,

This email confirms and follows up on our meet and confer call last week on Thursday, September 2, 2021.  Please let me know immediately if you believe I have misstated anything.

***Training documents.***  We still have not received a written description of the training documents that Defendants have withheld from production.  Please provide that as soon as possible.

***Yardi data.*** Defendants confirmed on the phone that they approved of our proposed email to Leslie Martin requesting her to pull the data sought by RFP 74.  As you saw, following our call I sent the email and then followed up again today.

I also closely reviewed the other datasets provided by GelbGroup, and as you have by now seen I found that many of them do not include all the fields we had originally discussed and requested from them.  I sent a follow up email requesting that those errors be fixed, and also asking a few follow up questions.

***Privilege waiver production.***  Defendants reported that they are still reviewing the documents that Plaintiffs had flagged from earlier productions as potentially privileged, as well as emails to and from outside counsel including Sheldon Chernove and David Scharlach.  They expected to complete that process imminently.  As discussed, for any documents that were already produced, an updated privilege log will be sufficient.  For any other documents that will be produced with redactions or that have not yet been produced, Plaintiffs will receive a fresh production.

Defendants stated that they have completed their search for memoranda, notes, and other documents beyond what was included in the email production, and they did not find anything.

***Depositions.***  Defendants are working on finding deposition availability for Fetter and Mishler in October.

***Written discovery.***  Defendants agreed to provide supplemental responses to Huskey Interrogatories 18 and 22.  Given that this information goes to one of the Rule 30(b)(6) issues on which Janae Jarvis will be deposed, we requested that the update be provided no later than Thursday September 9.  Defendants agreed to do so.

Additionally, I reviewed the verifications attached to the discovery responses served on August 27, 2021, and I still do not see a verification for the responses to Terry Requests for Admission Set 2, which were served on July 19, 2021.  Please do provide that verification.

***New litigation schedule.***  Defendants still have not executed the waiver of service, but expect to do so this week.  We agreed that we could begin discussing a new litigation schedule this week, and I look forward to doing so tomorrow.

***Stipulation re: 2017-2020 tenant files.***  Plaintiffs will provide a draft stipulation regarding the tenant files and documents therein.  Realistically, we are aiming to complete that closer to the end of this month, given the other things going on in the case.

***Scope of the complaint.***  On our 8/26 meet and confer call, you expressed some concern about whether charges that are a mandatory condition of leasing are within the scope of the case.  I responded to that concern in my 8/27 meet and confer email.  As of our call last week, you had not had a chance to review that email.  I am pasting that portion in here again for your review.  I think this should address the concern, but if you still think this is an issue, please let me know.

> In response to a discussion about the Parties' dispute about whether Section 8 tenants were required to incur certain additional charges, Defendants stated that they believed this theory of liability was not articulated in the complaint.

> Defendants are mistaken.  Please refer to paragraphs 13 and 125-32 in the Fifth Amended Complaint, which allege that certain charges were required as a condition of leasing (paragraphs 13 and 81 through 88 in the Fourth Amended Complaint).

> In response to Defendants' concerns about whether the class representatives can represent the class on this issue, the deposition testimony in this case clearly resolves that issue against you.  Denika Terry was absolutely subject to mandatory parking and washer and dryer charges at Chesapeake, as were other tenants.  *See* Tanforan Dep. at 952:15-23, 95:13-96:14 (W/D required of all Chesapeake Commons tenants, including Section 8 tenants, in order to move in) *id.* 81:10-84:5 (tenants are required to have a covered parking space to move in).  And Huskey was told that renters insurance "mandatory" to live in the apartment, Huskey Dep. 92:6-17, and the washer and dryer was automatically included on his lease agreement when he moved in and he "had no choice" about it, *id.* at 88:2-90:11.

> Even apart from class issues, charges required as a condition of tenancy are relevant to our False Claims Act claim.  The existence of requirements that Section 8 tenants incur additional charges as a condition of tenancy render those additional charges "rent," and the result is that Wasatch falsely certified its compliance with HAP Contracts and regulations without disclosing those rent amounts.

***Follow-up items from Jarom Johnson's deposition.***  We are still waiting on the following items from Jarom Johnson's deposition:

- Katie Dao's recommendations re: compliance with the HAP Contract in 2016, related to the SHRA complaint
- Notes from Johnson's conversations with Vicente Tennerelli
- List of Johnson's direct reports for the period that he was controller

Additionally, for the list of tenants who received reimbursements, please produce that document with a bates designation.

***Other housekeeping.***  We have previously noted that Defendants have not produced the letter from Vince Tennerelli with Jarom Johnson's notes on it with a bates designation.  Please do so at your earliest convenience.

Thanks,
Anne


Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com


**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

# EXHIBIT 5

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Wednesday, September 15, 2021 12:03 PM |
| **To:** | Matthews, Ryan |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; hbassey; andrew@awolfflaw.com; brenna; jessenewmark |
| **Subject:** | Re: 9/2/21 meet and confer call |

Hi Ryan, can you provide a written update on the items discussed in my last two meet and confer emails below?

Sent from my mobile device. Please excuse brevity and typos.

---

**From:** Anne Bellows
**Sent:** Wednesday, September 8, 2021 10:16:02 PM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Cc:** Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; Jesse Newmark <jessenewmark@centrolegal.org>; hbassey <hbassey@centrolegal.org>; andrew@awolfflaw.com <andrew@awolfflaw.com>; brenna <brenna@awolfflaw.com>
**Subject:** RE: 9/2/21 meet and confer call

Hi Ryan,

You were going to get me a response to my last meet and confer email by this evening.  I have not seen anything yet, so I wanted to follow up on two particularly time-sensitive issues:

- Will Defendants serve the updated responses to Huskey Interrogatories 18 and 22 tomorrow?
- Have Defendants completed their review of potentially privileged documents and documents that may be subject to the waiver of privilege?

Let me know, and thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Tuesday, September 7, 2021 3:42 PM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>

**Cc:** Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; Jesse Newmark <jessenewmark@centrolegal.org>; hbassey <hbassey@centrolegal.org>; andrew@awolfflaw.com; brenna <brenna@awolfflaw.com>
**Subject:** 9/2/21 meet and confer call

Hi Ryan,

This email confirms and follows up on our meet and confer call last week on Thursday, September 2, 2021. Please let me know immediately if you believe I have misstated anything.

*Training documents.*  We still have not received a written description of the training documents that Defendants have withheld from production. Please provide that as soon as possible.

*Yardi data.* Defendants confirmed on the phone that they approved of our proposed email to Leslie Martin requesting her to pull the data sought by RFP 74. As you saw, following our call I sent the email and then followed up again today.

I also closely reviewed the other datasets provided by GelbGroup, and as you have by now seen I found that many of them do not include all the fields we had originally discussed and requested from them. I sent a follow up email requesting that those errors be fixed, and also asking a few follow up questions.

*Privilege waiver production.*  Defendants reported that they are still reviewing the documents that Plaintiffs had flagged from earlier productions as potentially privileged, as well as emails to and from outside counsel including Sheldon Chernove and David Scharlach. They expected to complete that process imminently. As discussed, for any documents that were already produced, an updated privilege log will be sufficient. For any other documents that will be produced with redactions or that have not yet been produced, Plaintiffs will receive a fresh production.

Defendants stated that they have completed their search for memoranda, notes, and other documents beyond what was included in the email production, and they did not find anything.

*Depositions.*  Defendants are working on finding deposition availability for Fetter and Mishler in October.

*Written discovery.*  Defendants agreed to provide supplemental responses to Huskey Interrogatories 18 and 22. Given that this information goes to one of the Rule 30(b)(6) issues on which Janae Jarvis will be deposed, we requested that the update be provided no later than Thursday September 9. Defendants agreed to do so.

Additionally, I reviewed the verifications attached to the discovery responses served on August 27, 2021, and I still do not see a verification for the responses to Terry Requests for Admission Set 2, which were served on July 19, 2021. Please do provide that verification.

*New litigation schedule.*  Defendants still have not executed the waiver of service, but expect to do so this week. We agreed that we could begin discussing a new litigation schedule this week, and I look forward to doing so tomorrow.

*Stipulation re: 2017-2020 tenant files.*  Plaintiffs will provide a draft stipulation regarding the tenant files and documents therein. Realistically, we are aiming to complete that closer to the end of this month, given the other things going on in the case.

*Scope of the complaint.*  On our 8/26 meet and confer call, you expressed some concern about whether charges that are a mandatory condition of leasing are within the scope of the case. I responded to that concern in my 8/27 meet and confer email. As of our call last week, you had not had a chance to review that email. I am pasting that portion in here again for your review. I think this should address the concern, but if you still think this is an issue, please let me know.

In response to a discussion about the Parties' dispute about whether Section 8 tenants were required to incur certain additional charges, Defendants stated that they believed this theory of liability was not articulated in the complaint.

Defendants are mistaken.  Please refer to paragraphs 13 and 125-32 in the Fifth Amended Complaint, which allege that certain charges were required as a condition of leasing (paragraphs 13 and 81 through 88 in the Fourth Amended Complaint).

In response to Defendants' concerns about whether the class representatives can represent the class on this issue, the deposition testimony in this case clearly resolves that issue against you.  Denika Terry was absolutely subject to mandatory parking and washer and dryer charges at Chesapeake, as were other tenants.  *See* Tanforan Dep. at 952:15-23, 95:13-96:14 (W/D required of all Chesapeake Commons tenants, including Section 8 tenants, in order to move in) *id.* 81:10-84:5 (tenants are required to have a covered parking space to move in).  And Huskey was told that renters insurance "mandatory" to live in the apartment, Huskey Dep. 92:6-17, and the washer and dryer was automatically included on his lease agreement when he moved in and he "had no choice" about it, *id.* at 88:2-90:11.

Even apart from class issues, charges required as a condition of tenancy are relevant to our False Claims Act claim.  The existence of requirements that Section 8 tenants incur additional charges as a condition of tenancy render those additional charges "rent," and the result is that Wasatch falsely certified its compliance with HAP Contracts and regulations without disclosing those rent amounts.

***Follow-up items from Jarom Johnson's deposition.***  We are still waiting on the following items from Jarom Johnson's deposition:
- Katie Dao's recommendations re: compliance with the HAP Contract in 2016, related to the SHRA complaint
- Notes from Johnson's conversations with Vicente Tennerelli
- List of Johnson's direct reports for the period that he was controller

Additionally, for the list of tenants who received reimbursements, please produce that document with a bates designation.

***Other housekeeping.***  We have previously noted that Defendants have not produced the letter from Vince Tennerelli with Jarom Johnson's notes on it with a bates designation.  Please do so at your earliest convenience.

Thanks,
Anne


Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**Stephanie Tilden**

---

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Thursday, September 23, 2021 4:06 PM |
| **To:** | Matthews, Ryan |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; jessenewmark; hbassey; brenna; andrew@awolfflaw.com; Lindsay Nako |
| **Subject:** | 9/22/21 meet and confer call |

Ryan,

This email confirms and follows up on our meet and confer call yesterday afternoon (9/22/2021).  Please let me know immediately if you believe I have misstated anything.

*New Defendants.*  You stated that you have approval from the newly added Defendants for your representation and execution of the waiver of service form, however you were still waiting on sign off from the AIG adjuster.   This morning, you confirmed that you received approval from the AIG adjuster but still "need to handle a few details."  Please confirm as soon as possible when you will be executing the waiver of service form, or if we need to serve the new Defendants individually.

*Joint Status Report.*  We discussed the joint status report, which Plaintiffs are currently drafting.  We will provide you a full draft by tomorrow. Additionally, as I will be in deposition on September 30, we agreed to complete revisions and have the report ready to file on September 29.

Here are the dates we are proposing in the draft status report.  Please let me know if you would like to suggest any changes.

| Event | Date |
|---|---|
| Exchange of updated Rule 26 disclosures | November 4, 2021 |
| Close of fact discovery regarding liability<br><br>*(expert-related discovery and data discovery to remain open)* | December 16, 2021 |
| Initial expert disclosures | January 20, 2022 |
| Rebuttal expert disclosures | February 17, 2022 |
| Close of expert-related discovery and data discover regarding liability | March 10, 2022 |
| Dispositive motions hearing date | May 13, 2022 |
| Further scheduling hearing | July 14, 2022 |

*Depositions.*  Plaintiffs have recently served deposition notices for Fetter and Mishler.  As discussed, we will change the second day of Fetter's deposition to October 15 instead of October 14.

We discussed that extending Jarom Johnson's deposition by a half day is warranted by the fact that Defendants' waived privilege late in the afternoon of his deposition, thereafter produced privileged documents, and according to other witnesses Johnson is the person who would have sought or received legal advice on this issue.  Additionally, Johnson was the Chief Operating Officer for more than five years of the relevant period and according to his own testimony he was the final authority and decision-maker on many issues central to the case.  Given the size and stakes of this litigation, an additional half day is more than warranted.  Defendants did not disagree.  The Parties discussed stipulating to the half day in the joint status report.

As previously requested, Plaintiffs ask that Defendants confirm the deposition dates for Raymond and Johnson by the end of this week (Oct. 27 and Nov. 10, respectively).

Defendants have still not determined who will be designated for the two additional Rule 30(b)(6) topics, but suggested it was likely to be either Tanforan or Johnson.  If it is going to be Johnson, we can address those issues on November 10.  If it is going to be Tanforan, please let us know as soon as possible so we can begin scheduling that deposition.

*Yardi data.*  Defendants reported that they had not received any further data from the joint expert.  We will be following up again.

*Privilege waiver production.*  Defendants indicated that they will be serving three privilege logs today.  The first will be a complete updated privilege log indicating the documents that have been withheld on the basis of privilege.  The second will be a separate log for documents we identified as potentially privileged in our review, so that we can determine what documents we are able to review. And the third will identify 100 documents that Defendants continue to analyze, so that we have transparency about what is remaining.

*Training documents.*  Defendants still have not identified the training documents they withheld.  This is long, long overdue, please provide that as soon as possible.

Separately, Defendants have not yet provided Plaintiffs the list of documents and videos maintained in the Wasatch University library.  We requested that Defendants provide that list as soon as possible, and that they also go ahead and produce any responsive videos.   Because these requests for production have been pending for more than a year, and Defendants' failure to identify the videos and the Wasatch University library is really inexcusable, this needs to happen immediately.

With regard to the format for production of the videos, we do request that they be provided with a load file.  If you foresee that that would cause any delay, please also send them informally with a bates designation while you are awaiting the ESI vendor.

Finally, Defendants agreed to find out what is in the packet of resource documents, and if there are any documents responsive to Plaintiffs' requests for production to provide them.

*Huskey Interrogatories 18 and 22.*  Defendants are working on developing the list of mandatory charges for Huskey Interrogatories 18.

*Scope of the complaint/mandatory charges.*  Defendants did not express further concerns about whether mandatory charges are within the scope of the complaint, but we did discuss how the issue could be tried.  Defendants expressed a concern that the mandatory charges theory would raise individual issues.  Plaintiffs pointed out that according to the testimony, whether charges are mandatory as a condition of leasing is the same for an entire property, and that Defendants' deponents have recently asserted that there is a company-wide policy of exempting Section 8 tenants from mandatory charges (an alleged policy that is not reflected in any documents and is inconsistent with other evidence in the record).  In other words, this theory turns on property-level and company-wide proof.  We do not believe this creates any individual issues or concerns about manageability.  Plaintiffs requested that if Defendants continue to perceive an issue there, that they set out their concerns in writing.

*Stipulation re: 2017-2020 tenant files.*  Plaintiffs do not yet have a draft stipulation to share, but continue to plan to put one together.

*Housekeeping and other outstanding items.*  Plaintiffs are still waiting on the following:
- A verification for the responses to Terry RFAs set 2 served on July 19, 2021
- Production of the list of tenants who received reimbursements following the SHRA complaint

- Plaintiffs will provide a draft stipulation in the coming days to add Impact Fund as class counsel

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Wednesday, October 6, 2021 4:19 PM |
| **To:** | Matthews, Ryan |
| **Cc:** | Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey; Lindsay Nako; jlarkin@impactfund.org; brenna; andrew@awolfflaw.com |
| **Subject:** | 10/1 meet and confer summary |

Dear Ryan,

The email below summarizes and follows up on our meet and confer call from last Friday, 10/1.  Please let me know immediately if you believe I have misstated anything.

As a preface, I'd like to reiterate the point that I made on the call, which is that too many of these items are long overdue and we have seen little or no progress from Defendants. On our call tomorrow, let's discuss our availability for an informal discovery call with Magistrate Judge Barnes to set a schedule for the production of the outstanding documents and the completion of outstanding written discovery (see http://www.caed.uscourts.gov/caednew/assets/File/Tele%20Conf%20re%20Discovery.pdf).

I've grouped the items in this email into three categories – case status and scheduling issues, issues ripe for Court assistance, and ongoing meet and confer issues.

**Case Status & Scheduling Issues**

***New Defendants.***  We are rapidly approaching the scheduling conference with the Court, and we have not seen a waiver of serve form filed on behalf of the new Defendants. On Friday, you indicated that you believed it would be addressed within a couple days (which is also what we jointly told the Court, per your information, almost a week ago). Please handle this as soon as possible so we know what schedule we are working with.  Thank you.

***Depositions.***  On our call last Friday you informed us that Fetter was not available for his noticed deposition on 10/13.  (We discussed alternatives in an attempt to accommodate Defendants' schedule—though I note we only took the step of noticing his deposition after weeks if not months of requesting availability.)   We discussed the proposed schedule:  Mishler on  10/13, Raymond on 10/20, Fetter on 10/27 and 10/28, Dao on 11/3, and Johnson day 2 on 11/10.

Earlier today you confirmed Tyler Raymond for 10/20 and Shawn Fetter for 10/27.  Please confirm that Fetter is available on 10/28 as well should we need a second day.

Please also confirm Mishler and Johnson as soon as possible.

**Items Plaintiffs Will Present to the Court if Not Immediately Resolved**

***Privilege log and list of documents that Defendants have determined to be within the privilege waiver.***  Defendants have repeatedly promised to complete and provide the privilege log in the near future.  Defendants indicated on Sep. 22nd that they would serve the privilege log that day.  Last Friday 10/1, you reiterated that it was ready to be served.  We still have not received it.

***Training Documents and Videos.***  We have now been meeting and conferring about Defendants' training documents for over a year—and for most of that time, Plaintiffs have been waiting for Defendants to assemble and produce those

documents.  In July, Defendants informed us that they were withholding as-yet unspecified training documents on as-yet unspecified grounds.  We cannot wait any longer.

Moreover, on September 10, 2021—a year into our efforts to collaborate with you in identifying responsive training documents—Defendants' Rule 30b6 witness Janae Johnson testified that there is another repository of training materials that we have never been informed of, called "Wasatch University."  She testified that it would be a simple matter to provide a index of the videos and documents available there.  On a meet and confer call later that day, Plaintiffs requested that Defendants provide that index immediately, and Defendants agreed to do so.  On subsequent calls, including the call on 10/1, we reiterated that request and, given the passage of time, asked that Defendants also to ahead and produce videos that are responsive to our RFPs related to training documents and company policies (RFPs 29 through 33).

Now, nearly a month after Ms. Jarvis' deposition, Defendants have not taken the first step of providing us the Wasatch University index, much less producing relevant documents.  Defendants reiterated on 10/1 that they understood the request and they agreed to it and were working on getting us the information.

We request that you provide the index no later than close of business tomorrow (10/7).  We can discuss a schedule for production of the actual documents and videos on our call tomorrow, but basically I would like to see this production completed within a week at the most, given the extreme and unjustified delay we have already experienced.

***Huskey Interrogatories 18 and 22.***  On August 27, Defendants served responses to Huskey Interrogatories 18 and 20, which asked, respectively for a list of mandatory charges by property for the FCA liability period, and for Defendants to identify any documents reflecting the company-wide policy of exempting Section 8 tenants from mandatory charges that Johnson testified to in his deposition. To both, Defendants responded that there had never been any mandatory charges.

On August 30, Plaintiffs sent a meet and confer letter quoting deposition testimony from three deponents in this case that the company does have and has had mandatory charges at some properties.  (Bellows letter 8/3/2021.)   On September 2, 2021, Defendants agreed to provide the information sought by Interrogatories 18 and 22, and agreed to do so by September 9, 2021, as the Parties agreed that the information was relevant to Janae Jarvis' deposition set for September 10.  (Bellows email, 9/2/21 meet and confer call (sent 9/7/21).)  Plaintiffs followed up on this issue on September 8th and September 15th, and received no response.  (Bellows email, re: 9/2/21 meet and confer call (sent 9/8/21); Bellows email, re: 9/2/21 meet and confer call (sent 9/15/21).)   Defendants reported on Sep. 22 that they were working on it.  (Bellows email, 9/22/21 meet and confer call (sent 9/23/21).)  Last Friday on October 1, 2021, you did not yet have an update.

This information is overdue.  Of course, Defendants should have provided the information when they served the interrogatory responses on August 27.  Now they have had more than a month to remedy their mistake.  Plaintiffs request a date certain by which we will receive the supplemental interrogatory responses.  If you are unable to provide one, we will need to ask the Court to help set a schedule.

## Ongoing Meet and Confer / Projects

***Relevant documents in personnel files.***  On Friday (10/1) we discussed Defendants' objections to Plaintiffs' requests for documents in the personnel files of some of the key decisionmakers and supervisors in this case related to Section 8, affordable housing compliance, and additional service charges.

Defendants argued they were not required to produce the entire personnel file, and Plaintiffs pointed out that is not what we are asking for.  Defendants also expressed a doubt that relevant documents exist in the personnel files.  Plaintiffs requested that Defendants actually review the files to make that determination.  If the documents do not exist, please amend your responses to so state.

In response to Defendants' questions about the relevance of compliance issues beyond Section 8, Plaintiffs pointed out that such documents could be illustrative and lead to the discovery of relevant evidence about Wasatch's approach to compliance with affordable housing programs in general, contrasts or disparities between its compliance efforts in other programs and its lack of compliance efforts with regard to Section 8, and compliance with overlapping requirements.

***Stipulation in Lieu of Updated Tenant Files Production.***  Plaintiffs are still working on a draft stipulation in lieu of the tenant files production.

***Yardi data.***  Based on the emails from John Bailey at FitechGelb, Defendants have been provided the following datasets that require their approval:
- Data2_TenantRoommateLIst100121.csv
- Data4_TenantLeaseCharges100121.csv
- Data8_TenantAttachments100121.csv
- Data10_TenantEvictionActivity100321.csv
- Data15_PropertySalesTax.csv

Please review that data and provide authorization as soon as you can, or explain in writing why you are not able to.

***Housekeeping items.***  We continue to wait for Defendants to clean up the following house-keeping items:
- A verification for the responses to Terry RFAs set 2 served on July 19, 2021
- Production of the list of tenants who received reimbursements following the SHRA complaint

Looking forward to discussing more tomorrow.

Best,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Wednesday, October 20, 2021 11:07 AM |
| **To:** | Matthews, Ryan |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey; brenna; Lindsay Nako; jlarkin@impactfund.org |
| **Subject:** | RE: 10/7 & 10/8 meet and confer calls |

Hi Ryan,

In lieu of our meet and confer call today, could you provide a written update regarding the items addressed in my meet and confer emails of Oct. 11 and Oct. 14?

We did receive the privilege log and the yardi data.

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Thursday, October 14, 2021 1:27 PM
**To:** 'Matthews, Ryan' <Ryan.Matthews@lewisbrisbois.com>
**Cc:** 'Salazar, Joe' <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; 'Brenna Wood Fitzpatrick' <brenna@awolfflaw.com>; 'Lindsay Nako' <lnako@impactfund.org>; 'Jocelyn Larkin' <jlarkin@impactfund.org>
**Subject:** RE: 10/7 & 10/8 meet and confer calls

Hi Ryan,

Yesterday you canceled our meet and confer call and asked to reschedule it to this morning.  I told you I was open in the morning, then after you did not indicate a time, I sent a calendar invite for 10am.  I called at 10am and left a voicemail, and did not receive a call back.  I called again at 1pm and left another voicemail.

If you are unable to talk today, please provide a written update on each of the items in my last meet and confer email, which is below.

Last week we agreed that we would determine today whether we needed an informal discovery conference with the court to set a schedule for Defendants to make outstanding productions and serve the updated discovery responses. It appears that we need to go ahead and set that up. <u>Please let me know your availability for next week so that I can set up the call</u>.

Here are the items we believe are overdue and for which we will seek Court assistance:
- Production of the training documents, and identification of training documents you are withholding
- Supplemental responses to Huskey Interrogatories 18 and 20 that Defendants have agreed to provide
- Outstanding yardi datasets that FitechGelb has already pulled and sought Defendants' approval to produce, including:
    - *Data2_TenantRoommateList100121.csv*
    - *Data4_TenantLeaseCharges100121.csv*
    - *Data8_TenantAttachments100121.csv*
    - *Data10_TenantEvictionActivity100321.csv*
    - *Data15_PropertySalesTax.csv*
    - *Data21_ChargeTypeAnalysis.csv*

As you can see in the email below, there are many other moving pieces as well. We are still waiting for you finalize your representation of the new Defendants and execute the waiver of service. Please take care of that as soon as possible.

I sent you a couple questions regarding the privilege log yesterday, and have not heard back.

Additionally, now that the scheduling conference has been set for October 28, we will need to find an alternative second day for Shawn Fetter's deposition. Our preference is November 1, please let me know if that will work for you all.

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA 94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved! Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above. If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message. If you have received this E-mail in error, please notify the sender as soon as possible. In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Monday, October 11, 2021 11:44 AM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Cc:** Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; Brenna Wood Fitzpatrick <brenna@awolfflaw.com>; Lindsay Nako <lnako@impactfund.org>; Jocelyn Larkin <jlarkin@impactfund.org>
**Subject:** 10/7 & 10/8 meet and confer calls

Ryan,

The email below confirms and follows up on our meet and confer calls last Thursday and Friday (Oct. 7 and Oct. 8, 2021).  Please let me know immediately if you believe I have misstated anything.

***New Defendants.***  Lewis Brisbois is still waiting on signed engagement letters from some of the newly identified Defendants—although they have orally communicated their agreement to the representation.  We agreed that if the representation was not formalized by tomorrow (10/12), we may need to seek a continuance from the court so that all Defendants can be represented at the scheduling conference.

***Depositions.***  We confirmed Mishler's deposition would remain on October 20, and Tyler Raymond's deposition would take place on October 21. We also confirmed that Day 2 of Johnson's deposition will take place on November 10, to start at 9:30am Pacific Time.

We have not received confirmation from you that Fetter will be available for a second day on October 28 (following the first day of his deposition on October 27).  Please confirm as soon as possible.

Last – an update from the over the weekend.  Katie Dao has been served with the deposition subpoena, and we are set to go forward with that deposition on November 3, 2021.  We are planning to start that deposition at 9:30am Pacific, and as with the others, it will take place remotely.  Please let us know if you will be attending.

***Privilege log.*** Defendants agreed on Thursday to make sure the outstanding privilege log was produced.  It was not produced on Thursday, and when we discussed it on Friday you said that your assistant may have left for the day, but you would see to it that it was served Monday.  We have not yet received it.  Please provide it ASAP.

***Training documents and videos.***  On Thursday, Defendants provided additional indices of training documents.  On Friday, Plaintiffs responded with a list of the documents that are responsive to our requests for production, together with a list of documents that may be responses to our requests for production.

Plaintiffs requested that Defendants produce the relevant documents by October 14, and if they are not produced by that date, we will seek an informal discovery conference to help set a production schedule.

Plaintiffs also reiterated their request for Defendants to provide a written list of the training documents they are withholding from the How-To set, together with their reasoning.  Please provide that as soon as possible, and certainly no later than 10/14, so we understand if we have a dispute.

***Huskey Interrogatories 18 & 22.***  Defendants reported that they have made progress in that they have identified the list of properties that have had mandatory charges, but they are still working on the dates the mandatory charges were/have been in effect.  Defendants agree to provide the supplemental responses by 10/14.  If that deadline is not met, Plaintiffs will seek an informal discovery conference to address a schedule.

With regard to the two last items—or three, if the privilege log continues not to be served—we agreed that we would provide the Court with our availability for an informal discovery conference next week, so that we can make sure these issues are getting timely addressed.

***Personnel documents.***  Defendants are reviewing the personnel files, and by October 14 will provide an amended response stating either that no documents exist or that a production will be forthcoming.

***Stipulation in lieu of updated tenant files production.***  Plaintiffs are working on this and will provide a draft as soon as they are able.

***Yardi.***  Defendants confirmed that they received further files from the joint expert and they are reviewing.  You stated that you would work on getting approval for production of those files by the end of last week.  Please do provide that as soon as possible.

***Class list.***  Defendants agreed to update their class list production to include TenantIDs, they will mark it as a supplemental production of the class list.

***Housekeeping items.***  We continue to wait for Defendants to clean up the following house-keeping items:

- A verification for the responses to Terry RFAs set 2 served on July 19, 2021
- Production of the list of tenants who received reimbursements following the SHRA complaint

Thanks,
Anne


Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com> |
| **Sent:** | Wednesday, October 20, 2021 1:30 PM |
| **To:** | Anne Bellows |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey; brenna; Lindsay Nako; jlarkin@impactfund.org |
| **Subject:** | RE: 10/7 & 10/8 meet and confer calls |

Anne,
See updates below in red.

Thanks,

Ryan



**Ryan Matthews**
**Attorney**
Ryan.Matthews@lewisbrisbois.com

**T: 916.646.8213  F: 916.564.5444**

2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

**From:** Anne Bellows <abellows@gbdhlegal.com>
**Sent:** Wednesday, October 20, 2021 11:07 AM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Cc:** Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; brenna <brenna@awolfflaw.com>; Lindsay Nako <lnako@impactfund.org>; jlarkin@impactfund.org
**Subject:** [EXT] RE: 10/7 & 10/8 meet and confer calls

> **Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Ryan,

In lieu of our meet and confer call today, could you provide a written update regarding the items addressed in my meet and confer emails of Oct. 11 and Oct. 14?

We did receive the privilege log and the yardi data.

1

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Thursday, October 14, 2021 1:27 PM
**To:** 'Matthews, Ryan' <Ryan.Matthews@lewisbrisbois.com>
**Cc:** 'Salazar, Joe' <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; 'Brenna Wood Fitzpatrick' <brenna@awolfflaw.com>; 'Lindsay Nako' <lnako@impactfund.org>; 'Jocelyn Larkin' <jlarkin@impactfund.org>
**Subject:** RE: 10/7 & 10/8 meet and confer calls

Hi Ryan,

Yesterday you canceled our meet and confer call and asked to reschedule it to this morning.  I told you I was open in the morning, then after you did not indicate a time, I sent a calendar invite for 10am.  I called at 10am and left a voicemail, and did not receive a call back.  I called again at 1pm and left another voicemail.

If you are unable to talk today, please provide a written update on each of the items in my last meet and confer email, which is below.

Last week we agreed that we would determine today whether we needed an informal discovery conference with the court to set a schedule for Defendants to make outstanding productions and serve the updated discovery responses.  It appears that we need to go ahead and set that up.  <u>Please let me know your availability for next week so that I can set up the call</u>.

Here are the items we believe are overdue and for which we will seek Court assistance:
- Production of the training documents, and identification of training documents you are withholding

<span style="color:red">I have received outstanding training documents and am in the process of reviewing for responsiveness. I will produce a master list of documents you've identified that we have not produced on account of non-responsiveness ASAP. Nothing to this point has been withheld on the basis of trade secret protection.</span>

- Supplemental responses to Huskey Interrogatories 18 and 20 that Defendants have agreed to provide

We developed initial responses based on the information I received. Alternate sources last Friday clarified that the information was incorrect, and we are re-working responses this week. Unfortunately, Janae Jarvis is currently out of the office due to family circumstances, so it has been difficult to confirm the correct information. I hope to have it finalized ASAP.

- Outstanding yardi datasets that FitechGelb has already pulled and sought Defendants' approval to produce, including:
    - *Data2_TenantRoommateList100121.csv*
    - *Data4_TenantLeaseCharges100121.csv*
    - *Data8_TenantAttachments100121.csv*
    - *Data10_TenantEvictionActivity100321.csv*
    - *Data15_PropertySalesTax.csv*
    - *Data21_ChargeTypeAnalysis.csv*

These have been approved, though I understand there are issue with the datasets produced that you've identified.

As you can see in the email below, there are many other moving pieces as well.  We are still waiting for you finalize your representation of the new Defendants and execute the waiver of service.  Please take care of that as soon as possible.

I am still waiting on finalized engagement letters and intend to have an Answer filed prior to the status conference.

I sent you a couple questions regarding the privilege log yesterday, and have not heard back.

Additionally, now that the scheduling conference has been set for October 28, we will need to find an alternative second day for Shawn Fetter's deposition.  Our preference is November 1, please let me know if that will work for you all.

Not sure about this. I know it's the first day of trial in another matter for both Joe and me. We may need to look at bringing in extra help to defend if the second day pushes into November.

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Monday, October 11, 2021 11:44 AM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Cc:** Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; Brenna Wood Fitzpatrick <brenna@awolfflaw.com>; Lindsay Nako <lnako@impactfund.org>; Jocelyn Larkin <jlarkin@impactfund.org>
**Subject:** 10/7 & 10/8 meet and confer calls

Ryan,

The email below confirms and follows up on our meet and confer calls last Thursday and Friday (Oct. 7 and Oct. 8, 2021).  Please let me know immediately if you believe I have misstated anything.

***New Defendants.***  Lewis Brisbois is still waiting on signed engagement letters from some of the newly identified Defendants—although they have orally communicated their agreement to the representation.  We agreed that if the representation was not formalized by tomorrow (10/12), we may need to seek a continuance from the court so that all Defendants can be represented at the scheduling conference.

***Depositions.***  We confirmed Mishler's deposition would remain on October 20, and Tyler Raymond's deposition would take place on October 21. We also confirmed that Day 2 of Johnson's deposition will take place on November 10, to start at 9:30am Pacific Time.

We have not received confirmation from you that Fetter will be available for a second day on October 28 (following the first day of his deposition on October 27).  Please confirm as soon as possible.

Last – an update from the over the weekend.  Katie Dao has been served with the deposition subpoena, and we are set to go forward with that deposition on November 3, 2021.  We are planning to start that deposition at 9:30am Pacific, and as with the others, it will take place remotely.  Please let us know if you will be attending.

***Privilege log.*** Defendants agreed on Thursday to make sure the outstanding privilege log was produced.  It was not produced on Thursday, and when we discussed it on Friday you said that your assistant may have left for the day, but you would see to it that it was served Monday.  We have not yet received it.  Please provide it ASAP.

***Training documents and videos.***  On Thursday, Defendants provided additional indices of training documents.  On Friday, Plaintiffs responded with a list of the documents that are responsive to our requests for production, together with a list of documents that may be responses to our requests for production.

Plaintiffs requested that Defendants produce the relevant documents by October 14, and if they are not produced by that date, we will seek an informal discovery conference to help set a production schedule.

Plaintiffs also reiterated their request for Defendants to provide a written list of the training documents they are withholding from the How-To set, together with their reasoning.  Please provide that as soon as possible, and certainly no later than 10/14, so we understand if we have a dispute.

***Huskey Interrogatories 18 & 22.***  Defendants reported that they have made progress in that they have identified the list of properties that have had mandatory charges, but they are still working on the dates the mandatory charges were/have been in effect.  Defendants agree to provide the supplemental responses by 10/14.  If that deadline is not met, Plaintiffs will seek an informal discovery conference to address a schedule.

With regard to the two last items—or three, if the privilege log continues not to be served—we agreed that we would provide the Court with our availability for an informal discovery conference next week, so that we can make sure these issues are getting timely addressed.

***Personnel documents.***  Defendants are reviewing the personnel files, and by October 14 will provide an amended response stating either that no documents exist or that a production will be forthcoming.

***Stipulation in lieu of updated tenant files production.***  Plaintiffs are working on this and will provide a draft as soon as they are able.

*Yardi.*  Defendants confirmed that they received further files from the joint expert and they are reviewing.  You stated that you would work on getting approval for production of those files by the end of last week.  Please do provide that as soon as possible.

*Class list.*  Defendants agreed to update their class list production to include TenantIDs, they will mark it as a supplemental production of the class list.

*Housekeeping items.*  We continue to wait for Defendants to clean up the following house-keeping items:
- A verification for the responses to Terry RFAs set 2 served on July 19, 2021
- Production of the list of tenants who received reimbursements following the SHRA complaint

Thanks,
Anne


Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Thursday, November 4, 2021 11:09 AM |
| **To:** | Matthews, Ryan |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey; andrew@awolfflaw.com; brenna; jlarkin@impactfund.org; Lindsay Nako |
| **Subject:** | RE: 10/28 meet and confer |

Hi Ryan,

We agreed in our meet and confer call on October 28th that if we did not receive the training documents production by Tuesday this week, and if we did not receive the supplemental interrogatory responses by Wednesday this week, Plaintiffs would reach out to Judge Barnes' chambers to schedule an informal discovery conference, offering next Friday (11/12) as our availability.

We have not received either the training documents production or the interrogatory responses, so I am going to go ahead and reach out to the Court to set that up. I'll copy you on the emails.

Of course, we would love to get those outstanding items and take the discovery conference off calendar if you are able to get that taken care of before then.

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Friday, October 29, 2021 11:30 AM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Cc:** Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; andrew@awolfflaw.com; Brenna Wood Fitzpatrick <brenna@awolfflaw.com>; jlarkin@impactfund.org; Lindsay Nako <lnako@impactfund.org>
**Subject:** 10/28 meet and confer

Hi Ryan,

This email summarizes and follows up on what we discussed in our meet and confer call yesterday (10/28/21) after Shawn Fetter's deposition.  Please let me know immediately if you believe I have stated anything incorrectly.

***Stipulation to modify scheduling order.***  Defendants do not expect that they will need the full 28 days provided by the Court to finalize the stipulation to modify the scheduling order.  We look forward to finalizing that as soon as possible.

***Deposition scheduling.***  You confirmed that Defendants will have a representative at the Katie Dao deposition on Nov. 3.  We will make sure you have all the information to join the deposition.

In regards to the outstanding depositions:
- Bradley Mishler – Defendants are working on new availability for Mr. Mishler.  He is based in Carlsbad and will be traveling to San Diego to take the deposition at a Lewis Brisbois office.  If Plaintiffs do not receive new dates for him in the coming days, in light of the approaching discovery deadline, we will need to issue a deposition notice with a date of our choosing.
- Tyler Raymond – Now that the Court has indicated that she will appoint Impact Fund as Class Counsel, we believe that the Parties' disagreement regarding whether Lindsay Nako can take Tyler Raymond's deposition has been mooted and we hope to proceed to take his deposition shortly.  Plaintiffs reiterated that we need to know without further delay if Defendants will be offering new availability for Mr. Raymond or not.   We requested Defendants clarify their position today.
- David Scharlach – Plaintiffs have served Mr. Scharlach with a deposition subpoena for December 8, 2021.  We understand that Mr. Scharlach has sought representation by defense counsel for the suit.  We are willing to accommodate Defendants and Mr. Scharlach on dates if need be.

***Training documents.***  We still have not received Defendants' write up of the training documents they are withholding.  Nor have we received any of the training documents we requested from the Wasatch University materials.

Defendants assured us that the client was working on gathering the documents.  You stated that you expect to be able to produce the outstanding training materials on Monday.  Although you did not explicitly state this, we will also expect a write-up of the materials you are withholding no later than Monday.

If we do not receive them on Monday, we agreed that on Tuesday morning I will send an email to Judge Barnes' chambers seeking an informal discovery conference.  Your availability is best on Fridays, and you have an open schedule both Friday Nov. 5 and Friday Nov. 12.

***Huskey Interrogatories 18 and 22.***  Defendants are still gathering the information they need to provide a proper response to Interrogatories 18 and 22.  We noted that these have been outstanding far too long.  If we do not receive the updated responses on Wednesday, we agreed that Plaintiffs will likewise seek an informal discovery conference with the Court.

***Relevant documents from personnel files.***  Defendants have not yet completed their review of the personnel files to determine if there are responsive documents.  This too has been outstanding too long.  We request that Defendants complete their review and produce responsive documents within the next week.

***Yardi data.***  Currently we do not believe we are waiting on Defendants for anything related to the yardi data.

***Stipulation in lieu of tenant files production.***  Plaintiffs are working on the draft stipulation in lieu of the tenant files production.  We will provide as soon as we are able.

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Friday, November 5, 2021 9:42 AM |
| **To:** | Matthews, Ryan |
| **Subject:** | RE: Terry v. Wasatch - Discovery Call |

FYI, I have not received the supplemental Huskey interrogatory responses.  Can you have those served today?

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Sent:** Friday, November 5, 2021 9:12 AM
**To:** Anne Bellows <abellows@gbdhlegal.com>
**Subject:** RE: Terry v. Wasatch - Discovery Call

Sure. Thanks.

**From:** Anne Bellows <abellows@gbdhlegal.com>
**Sent:** Friday, November 5, 2021 9:11 AM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Subject:** [EXT] RE: Terry v. Wasatch - Discovery Call

> **Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

I am available on Monday.  Shall we say 9:30am?

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612

(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Sent:** Friday, November 5, 2021 9:09 AM
**To:** Anne Bellows <abellows@gbdhlegal.com>
**Subject:** Terry v. Wasatch - Discovery Call

Anne,

Looks like Dept. 11B isn't dark today. I just saw our call on the calendar. I believe we are dark Monday. Are you available to discuss then?

Thanks,

Ryan



**Ryan Matthews**
**Attorney**
Ryan.Matthews@lewisbrisbois.com

**T: 916.646.8213  F: 916.564.5444**

2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

# EXHIBIT 6

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com> |
| **Sent:** | Thursday, November 4, 2021 12:44 PM |
| **To:** | Anne Bellows |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey; andrew@awolfflaw.com; brenna; jlarkin@impactfund.org; Lindsay Nako |
| **Subject:** | RE: 10/28 meet and confer |

Anne,

We should be able to scratch the interrogatories off the list, as I just received the verification and have instructed our staff to serve the response. I'm finalizing the training docs review. Some of these webinars are lengthy, so it's taken longer than I expected, particularly in light of trial. Hopefully that's off the list. Regardless, I think there will be value in keeping it on calendar with respect to Tyler Raymond's deposition tomorrow. He will not be produced, and to the extent the proceeding goes on as scheduled, we'll appear and move to terminate. If you'd prefer to take it off calendar and discuss it with Judge Barnes next week, we're very open to that.

Thanks,

Ryan Matthews



**Ryan Matthews**
**Attorney**
**Ryan.Matthews@lewisbrisbois.com**

**T: 916.646.8213  F: 916.564.5444**

2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

**From:** Anne Bellows <abellows@gbdhlegal.com>
**Sent:** Thursday, November 4, 2021 11:09 AM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Cc:** Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; andrew@awolfflaw.com; brenna <brenna@awolfflaw.com>; jlarkin@impactfund.org; Lindsay Nako <lnako@impactfund.org>
**Subject:** [EXT] RE: 10/28 meet and confer

**Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Ryan,

We agreed in our meet and confer call on October 28th that if we did not receive the training documents production by Tuesday this week, and if we did not receive the supplemental interrogatory responses by Wednesday this week, Plaintiffs would reach out to Judge Barnes' chambers to schedule an informal discovery conference, offering next Friday (11/12) as our availability.

We have not received either the training documents production or the interrogatory responses, so I am going to go ahead and reach out to the Court to set that up. I'll copy you on the emails.

Of course, we would love to get those outstanding items and take the discovery conference off calendar if you are able to get that taken care of before then.

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Friday, October 29, 2021 11:30 AM
**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Cc:** Salazar, Joe <Joe.Salazar@lewisbrisbois.com>; Laura Ho <lho@gbdhlegal.com>; Kristen Burzynski <kburzynski@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; andrew@awolfflaw.com; Brenna Wood Fitzpatrick <brenna@awolfflaw.com>; jlarkin@impactfund.org; Lindsay Nako <lnako@impactfund.org>
**Subject:** 10/28 meet and confer

Hi Ryan,

This email summarizes and follows up on what we discussed in our meet and confer call yesterday (10/28/21) after Shawn Fetter's deposition.  Please let me know immediately if you believe I have stated anything incorrectly.

***Stipulation to modify scheduling order.***  Defendants do not expect that they will need the full 28 days provided by the Court to finalize the stipulation to modify the scheduling order.  We look forward to finalizing that as soon as possible.

***Deposition scheduling.***  You confirmed that Defendants will have a representative at the Katie Dao deposition on Nov. 3.  We will make sure you have all the information to join the deposition.

In regards to the outstanding depositions:

- Bradley Mishler – Defendants are working on new availability for Mr. Mishler.  He is based in Carlsbad and will be traveling to San Diego to take the deposition at a Lewis Brisbois office.  If Plaintiffs do not receive new dates for him in the coming days, in light of the approaching discovery deadline, we will need to issue a deposition notice with a date of our choosing.
- Tyler Raymond – Now that the Court has indicated that she will appoint Impact Fund as Class Counsel, we believe that the Parties' disagreement regarding whether Lindsay Nako can take Tyler Raymond's deposition has been mooted and we hope to proceed to take his deposition shortly.  Plaintiffs reiterated that we need to know without further delay if Defendants will be offering new availability for Mr. Raymond or not.   We requested Defendants clarify their position today.
- David Scharlach – Plaintiffs have served Mr. Scharlach with a deposition subpoena for December 8, 2021.  We understand that Mr. Scharlach has sought representation by defense counsel for the suit.  We are willing to accommodate Defendants and Mr. Scharlach on dates if need be.

*Training documents.*  We still have not received Defendants' write up of the training documents they are withholding.  Nor have we received any of the training documents we requested from the Wasatch University materials.

Defendants assured us that the client was working on gathering the documents.  You stated that you expect to be able to produce the outstanding training materials on Monday.  Although you did not explicitly state this, we will also expect a write-up of the materials you are withholding no later than Monday.

If we do not receive them on Monday, we agreed that on Tuesday morning I will send an email to Judge Barnes' chambers seeking an informal discovery conference.  Your availability is best on Fridays, and you have an open schedule both Friday Nov. 5 and Friday Nov. 12.

*Huskey Interrogatories 18 and 22.*  Defendants are still gathering the information they need to provide a proper response to Interrogatories 18 and 22.  We noted that these have been outstanding far too long.  If we do not receive the updated responses on Wednesday, we agreed that Plaintiffs will likewise seek an informal discovery conference with the Court.

*Relevant documents from personnel files.*  Defendants have not yet completed their review of the personnel files to determine if there are responsive documents.  This too has been outstanding too long.  We request that Defendants complete their review and produce responsive documents within the next week.

*Yardi data.*  Currently we do not believe we are waiting on Defendants for anything related to the yardi data.

*Stipulation in lieu of tenant files production.*  Plaintiffs are working on the draft stipulation in lieu of the tenant files production.  We will provide as soon as we are able.

Thanks,
Anne


Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

# EXHIBIT 7

1 | **LEWIS BRISBOIS BISGAARD & SMITH** LLP
JOSEPH A. SALAZAR JR., SB# 169551
2 |   E-Mail: Joe.Salazar@lewisbrisbois.com
RYAN MATTHEWS, SB# 311674
3 |   E-Mail: Ryan.Matthews@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
4 | Sacramento, California 95833
Telephone: 916.564.5400
5 | Facsimile: 916.564.5444

6 | Attorneys for Wasatch Advantage Group, LLC;
Wasatch Property Management, Inc.; Wasatch
7 | Pool Holdings, LLC, Chesapeake Commons
Holdings, LLC; Logan Park Apartments, LLC;
8 | Logan Park Apartments, LP

9 |

10 | **UNITED STATES DISTRICT COURT**

11 | **EASTERN DISTRICT OF CALIFORNIA**

12 | **SACRAMENTO DIVISION**

13 |

14 | UNITED STATES OF AMERICA, ex rel.
DENIKA TERRY and ROY HUSKEY III, | CASE NO. 2:15-cv-00799-KJM-DB
15 | and each of them for themselves individually, | **DEFENDANTS AMENDED RESPONSES**
and for all other persons similarly situated and | **TO PLAINTIFF ROY HUSKEY III'S**
16 | on behalf of the UNITED STATES OF | **INTERROGATORIES, SET FIVE**
AMERICA,
17 | | The Hon. Kimberly J. Mueller
     Plaintiffs/Relators,
18 | | Trial Date:    None Set
  vs.
19 |
WASATCH ADVANTAGE GROUP, LLC,
20 | WASATCH PROPERTY MANAGEMENT,
INC., WASATCH POOL HOLDINGS, LLC,
21 | CHESAPEAKE COMMONS HOLDINGS,
LLC, LOGAN PARK APARTMENTS, LLC;
22 | LOGAN PARK APARTMENTS, LP,

23 |     Defendants.

24 |

25 | PROPOUNDING PARTY:    Plaintiff, Roy Huskey, III

26 | RESPONDING PARTY:    Defendants, Wasatch Advantage Group, LLC; Wasatch Property

27 |     Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake

28 |     Commons Holdings, LLC; Logan Park Apartments, LLC; Logan

4811-8011-7502.1 | 1 | Case No. 2:15-cv-00799-KJM-DB

1                      Park Apartments, LP

2   SET NO.:                 FIVE

3   **INTERROGATORY NO. 18:**

4         Please identify (by name, address, city, state, applicable time period, and relevant charges)

5   any SUBJECT PROPERTY that, for any period of time since April 14, 2005, made any

6   ADDITIONAL SERVICE CHARGE mandatory for any tenants.

7   **AMENDED RESPONSE TO INTERROGATORY NO. 18:**

8         Defendants respond as follows: After diligent effort and inquiry, Defendants are unable to

9   verify time periods in which any Additional Service Charge was mandatory .Defendants'

10   corporate policy is and always has been that for Section 8 tenants, no Additional Service Charge is

11   mandatory, and each and every one has always been optional. In light of prior testimony regarding

12   bulk media packages, Defendants list below each property that Wasatch Property Management has

13   managed in the times relevant to this case that has ever had a media package of any kind, and the

14   date it was added.

| PROPCODE | PROPERTY | MEDIA PACKAGE | OPTIONAL | DATE ADDED | |
|---|---|---|---|---|---|
| 6lt | 600 Lofts | Y | Y | 04/2017 | |
| art | Arcadia | Y | Y | 05/2018 | |
| art2 | Arcadia II | Y | Y | 01/2021 | |
| az | Aztec Springs Apartments | Y | Y | 09/2020 | |
| bu | Burnett Station Apartments | Y | Y | 01/2020 | |
| cn | Canyon Ridge Apartments | Y | Y | 09/2020 | |
| cm | Cimarron Place Apartments | Y | Y | 09/2020 | |
| dw | Devonshire Court West | Y | Y | 03/2019 | |
| enclave | Enclave at 1400 South | Y | Y | 07/2015 | |
| falls | Falls at Hunters Pointe | Y | Y | 09/2018 | |
| glt | Garden Lofts | Y | Y | 11/2019 | |
| go | Glen Oaks Apartments | Y | Y | 09/2020 | |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-8011-7502.1                 2                 Case No. 2:15-cv-00799-KJM-DB
DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

| | | | | | |
|---|---|---|---|---|---|
| gp | Goldstone Place Apartments | Y | Y | 03/2000 | |
| hp | Heron Pointe Apartments | Y | Y | 08/1998 | |
| fc | Landing at Fancher Creek | Y | Y | 04/2003 | |
| lofts | Lofts at 7800 | Y | Y | 08/2014 | |
| mp | Metropolitan Place Apartments | Y | Y | 11/2019 | |
| p1 | Palladio Apartments-Phase 1 | Y | Y | 10/2002 | |
| p3 | Palladio Apartments-Phase 1 | Y | Y | 10/2002 | |
| rw | Ranchwood Apartments | Y | Y | 09/2020 | |
| rs | Rio Seco Apartments | Y | Y | 09/2020 | |
| rp | River Point Apartments | Y | Y | 09/2020 | |
| sa | Sands Apartments | Y | Y | 09/2020 | |
| rvt | The Reserve at View 78 | Y | Y | 09/2019 | |
| vet | Veranda | Y | Y | 01/2018 | |
| vit | Village Grove Apartments | Y | N | 02/2015 | Internet Provided as Free Service for all residents |

DATED: November 8, 2021

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
RYAN MATTHEWS
Attorneys for Wasatch Advantage Group, LLC; Wasatch Property Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC; Logan Park Apartments, LLC; Logan Park Apartments, LP



**VERIFICATION**

**STATE OF CALIFORNIA, COUNTY OF SACRAMENTO**

I have read the foregoing DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE and know its contents.

☐   I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☒   I am Executive Vice President of Wasatch Property Management, Inc., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

> ☒   I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

> ☐   The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐   I am one of the attorneys for Wasatch Property Management, Inc., a party to this action. Such party is absent from the county where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on November ☉, 2021, at Logan, Utah.

Jarom Johnson
_____
Print Name of Signatory

_____
Signature

DEFENDANTS  RESPONSES  TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

LEWIS
BRISBOI
S

1

## FEDERAL COURT PROOF OF SERVICE

2

USA-Terry v Wasatch Property Mgmt
2:15-cv-00799 KJM DB

3

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

4

5

At the time of service, I was over 18 years of age and not a party to the action.  My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

6

7

On November 8, 2021, I served the following document(s):

8

- DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

9

10

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

11

## SEE ATTACHED SERVICE LIST

12

The documents were served by the following means:

13

☒     (BY E-MAIL OR ELECTRONIC TRANSMISSION)  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

14

15

16

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

17

18

Executed on November 8, 2021, at Sacramento, California.

19

20

_____
Alicia Crespo

21

22

23

24

25

26

27

28



4811-8011-7502.1

1

DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

1

**SERVICE LIST**
**USA-Terry v Wasatch Property Mgmt**
Case No. 2:15-cv-00799-KJM-DB 2:15-cv-00799 KJM DB

2

| | |
|---|---|
| 3 Andrew Wolff<br>Law Office of Andrew Wolff, PC<br>4 1956 Webster Street, Ste. 275<br>Oakland, CA 94612<br>5 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  510-834-3300<br>E-Mail:  andrew@awolfflaw.com |
| 6 Jesse Newmark<br>CENTRO LEGAL DE LA RAZA<br>7 3022 International Blvd, Ste. 410<br>Oakland, CA 94601<br>8<br>9 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  (510) 437-1554 x115<br>Fax:  (510) 437-9164<br>Email:  jessenewmark@centrolegal.org<br>Email: malvarez@centrolegal.org |
| 10 Laura L. Ho<br>Anne Bellows<br>11 Kristen A. Burzynski<br>Goldstein, Borgen, Dardarian & Ho<br>12 155 Grand Avenue, Suite 900<br>Oakland, CA 94612<br>13<br>14<br>15 | *Co-Counsel for Plaintiffs*<br><br>Tel.: 519-763-9800<br>Fax: 510-835-1417<br>Email: lho@gbdhlegal.com<br>Email: abellows@gbdhlegal.com<br>Email: sgrimes@gbdhlegal.com<br>Email: dvaldez@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com |
| 16 Vincente Antonio Tennerelli<br>United States Attorney's Office<br>17 2500 Tulare Street, Suite 4401<br>Fresno, CA 93721<br>18 | *Attorney for Intervenor Plaintiff*<br>*United States of America*<br><br>Tel.: (559) 497-4080<br>Email: Vincente.Tennerelli@usdoj.gov<br>Email: joni.jones@usdoj.gov |
| 19 Jocelyn D. Larkin<br>Lindsay Nako<br>20 The Impact Fund<br>2080 Addison Street, Suite 5<br>21 Berkeley, CA 94704<br>22 | *Attorney for Plaintiffs*<br><br>T: 510-845-3473 x.306<br>F: 510-845-3654<br>E: jlarkin@impactfund.org<br>E: lnako@impactfund.org |

23

24

25

26

27

28



2

DEFENDANTS AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

# EXHIBIT 8

# G B D H

## Goldstein, Borgen, Dardarian & Ho

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

November 8, 2021

<u>**Via E-Mail Only**</u>

Joseph Salazar                                         Joe.Salazar@lewisbrisbois.com
Ryan Matthews                                     Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

Re:    Meet and Confer – Insufficient Responses to Huskey Interrogatories 18 and 22

Dear Ryan:

Today we finally received Defendants' amended response to Huskey Interrogatory 18, which asks Defendants to identify properties that have made any additional charges mandatory for tenants. We previously wrote to you about this interrogatory on August 30, 2021. As you recall, that letter quoted and cited deposition testimony reflecting that some Wasatch properties have (or have in the past had) charges for media packages, parking, and washers & dryers that are mandatory for tenants at those properties. Bellows Aug. 30, 2021 Letter (citing Johnson Dep. at 187, 214-15, Jarvis 2017 Dep. 109:17-110:12; Tanforan Dep. 81:19-82:5; Tanforan Dep. 86:10-20; and Tanforan Dep. 92:15-23, 95:13-96:14).

The amended response to Huskey Interrogatory 18 served today only addresses media charges. It does not identify properties that have had mandatory parking or washer and dryer charges. Please supplement that response immediately to identify properties that have required parking or washer and dryer charges, or any other additional service charge, as a condition of leasing for any tenant.

Unfortunately, it appears we are still likely to have a dispute on this issue that we will need to address with the Court. On our call this morning, you indicated that November 17, 2021 was an available date for you for an informal discovery conference. Plaintiffs would like to meet and confer regarding these deficiencies after Jarom Johnson's deposition this Wednesday, and if we still have a dispute after that conversation, we will request a second informal discovery conference for November 17.

Sincerely,

Anne P. Bellows

843260.2

APB/gc

cc:      Andrew Wolff
           Brenna Wood-Fitzpatrick
           Jesse Newmark
           Henrissa Bassey
           Laura Ho
           Jocelyn Larkin
           Lindsay Nako

843260.2

# EXHIBIT 9

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 EASTERN DISTRICT OF CALIFORNIA
 3                      SACRAMENTO DIVISION
 4    _____
 5    UNITED STATES OF AMERICA,    )
      ex rel. DENIKA TERRY, ROY    )
 6    HUSKEY, III, and TAMERA      )
      LIVINGSTON, and each of      )
 7    then for themselves          )
      individually, and for all    )
 8    other persons similarly      )
      situated and on behalf of    )
 9    the UNITED STATES OF         )
      AMERICA,                     )
10                                 )
        Plaintiffs/Realtors,       )
11                                 )
      v.                           )No. 2:15-CV-00799-KJM-DB
12                                 )
      WASATCH ADVANTAGE GROUP,     )
13    LLC, WASATCH PROPERTY        )
      MANAGEMENT, INC., WASATCH    )
14    POOL HOLDINGS, LLC,          )
      CHESAPEAKE COMMONS HOLDINGS,)
15    LLC, LOGAN PARK APARTMENTS, )
      LLC, LOGAN PARK APARTMENTS, )
16    LP, and DOES 1-30,           )
                                   )
17      Defendants.                )
      _____
18
                    VIDEOTAPED DEPOSITION OF
19                    JAROM JOHNSON, CPM,
                          VOLUME 2
20    _____
21                        9:30 a.m.
                      November 10, 2021
22                      Logan, Utah
23
                  YOM Full Service Reporting
24                     File #4842679
25        Reported By:  Judy Robinson, CCR #2171


                                              Page 1
```

```
 1                 A P P E A R A N C E S
 2   FOR THE PLAINTIFFS/RELATORS:
 3   ANNE P. BELLOWS
     LAURA L. HO
 4   CARSON TURNER GOLDSTEIN BORGEN DARDARIAN & HO
     155 Grand Avenue, Suite #900
 5   Oakland, California 94612-3536
     510.763.9800
 6   abellows@gbdhlegal.com
     lho@gbdhlegal.com
 7
     FOR THE PLAINTIFFS/RELATORS:
 8
     JESSE NEWMARK
 9   CENTRO LEGAL DE LA RAZA
     3022 International Boulevard, Suite #40
10   Oakland, California 94601
     510.437.1863
11   jessenewmark@centrolegal.org
12   FOR THE DEFENDANTS:
13   RYAN MATTHEWS
     LEWIS BRISBOIS BISGAARD & SMITH, LLP
14   2020 West El Camino, Suite #700
     Sacramento, California 95833
15   916.646.8213
     ryan.matthews@lewisbrisbois.com
16
17   Also Present:  Richard Boling, Videographer
18
19
20
21
22
23
24
25
                                       Page  2
```

1      A     There's no -- there's no way to show a specific period

2  of time within the -- like, there's no way to show within the

3  system this was a period of mandated charges.   That's not how

4  it's structured in the system.

5      Q     And you're talking about the Yardi system?

6      A     Yes, yeah, correct.

7      Q     Okay.  Would the Yardi system be able to give more

8  approximate periods of time?

9      A     It would be able to show individuals in a role, you

10  know, individuals that were actively being charged or not being

11  charged.

12     Q     Okay.  Next, it reads, "Defendant's corporate policy is

13  and always has been, for Section 8 tenants, no additional

14  service charge is mandatory, and each one has always been

15  optional."

16           When it says that this has always been the policy, does

17  that mean since the beginning of Wasatch Property Management?

18     A     Yeah.  So, to my knowledge, yes, the Section 8

19  residents have -- have never been mandated to pay for additional

20  services.

21     Q     And when -- so when does that time period cover?

22     A     I've been with the company from -- since May of '07.

23     Q     So is this statement based on your knowledge based on

24  your time in the company?

25     A     Based on the information we were able to gather, yes.

1      Q      Okay.  Is there any other information that you relied

2      on in making this statement?

3      A      No.  Just, like I say, discussion, internal.

4      Q      Who -- what -- what other discussion, besides your own

5      knowledge, did you rely on?

6      A      Just those that have access to the system to review the

7      system and have operated, so many of the individuals we've

8      spoken to the operators in -- in our company.

9      Q      Okay.  Can you list the names for me?

10     A      Janae Jarvis, Shawn Fetter, Daniel Lewis.

11     Q      And who's Mr. Lewis?

12     A      He's the controller.

13     Q      And when did he start working at Wasatch Property

14     Management?

15     A      I don't -- I don't know his specific start date.  We

16     could easily get that to you.

17     Q      Could you give me your best estimate?

18     A      I would say around 2009.

19     Q      Okay.  Has he held any -- well, you were controller for

20     a while, so he must have held other positions.  What other

21     positions has he held?

22     A      He was in our tax department, so he did tax filing, and

23     then he was in the accounting department of our management

24     company and then took my role when I vacated the --

25     Q      Has he ever worked in operations?

1        Q     Okay.  And then previously, we spoke a little -- a

2    little bit about the different kinds of contractual arrangements

3    that Wasatch enters into to provide media packages.  One of them

4    was a MDU or Multi-Dwelling Unit Agreement, if I am recalling

5    the term right.  Another one was a marketing agreement.  Are

6    both of those types agreements reflected on this list or just

7    the MDU?

8        A     Yeah.  This -- this would be specific to the MDU.

9        Q     And is that because under marketing agreements, Wasatch

10   does not directly charge the tenants for cable or media or

11   other --

12       A     Right.

13       Q     -- practices?

14       A     Yeah, correct.

15       Q     Okay.  Are there any other kind -- besides MDU, are

16   there any other kinds of arrangements that are reflected in this

17   list?

18       A     No.  This would be -- this would be media -- yeah,

19   media package, so it would be MDU.

20       Q     Okay.  So then if we look at the chart on Exhibit 38,

21   for all the properties listed except for the last one, the chart

22   shows that they are optional.  Can you tell me what "optional"

23   means here?

24       A     It's -- it's referring to the statement that's made

25   above in the policies that these have always been optional for

                                                        Page 13

1    housing tenants.

2        Q    But this does not reflect whether they're optional for

3    nonhousing tenants?

4        A    Correct.

5        Q    Okay.  So the column Optional is solely with regard to

6    Section 8 tenants?

7        A    Correct.

8        Q    And how did Wasatch determine that these charges were

9    optional for Section 8 tenants?

10       A    We -- in -- just in working with the administrative

11   agents of the program, so the -- the housing authorities over

12   the years, we've -- we've always had that be an option for both

13   tax credit and bond and housing tenants.  Anybody that's in the

14   federal program.

15       Q    Okay.  But sort of internally speaking, when you were

16   compiling this list, how did you determine -- or let me back up.

17   Do I -- am I understanding correctly that you were involved in

18   compiling this information?

19       A    I directed the compiling of this information, so...

20       Q    Okay.  So when Wasatch was compiling this information

21   as your directions, how did -- how did your team determine that

22   these charges were optional for Section 8 tenants as they were

23   applied at those properties?

24       A    What they did is just identified any location that has

25   a media package or an MDU at any of the properties that have had

                                                        Page 14

1    housing tenants, and our policy is that they are optional, have

2    been optional.  That's how it was identified in our policy.

3       Q    And directing this project, did you look at data from

4    defendant's Yardi database related to the rates of enrollment in

5    the media packages at different properties?

6       A    I did not.

7       Q    Would it surprise you that there are properties where

8    more than 90 percent of tenants are enrolled in a media package?

9       A    It would not surprise me, no.

10      Q    And why would that not surprise you?

11      A    Because internet is the lifeblood of our society.

12      Q    Does that also reflect that these charges were

13   mandatory at least for non-Section 8 tenants?

14      A    Yeah.  There are locations where they are mandatory for

15   non-Section 8, yes.

16      Q    Can you tell me which locations they -- for which

17   locations they are mandatory for non-Section 8 tenants?

18      A    On this list?

19      Q    Yes.

20      A    The ones I'm sure of are -- so the ones I believe that

21   are would be our market-rate properties, which is, like, Aztec

22   Springs, Burnett Canyon, Cimmaron, Devonshire, Balls at Hunter's

23   Point, Landing at Badger Creek, Lofts at 7800, Metropolitan

24   Place, then Palatio, Ranchwood, Rio Seko, River Point, and

25   Sam's?

```
 1      A    I don't -- like I say, I don't recall the -- what the

 2   communication was post, but yeah.  I'm not in any of the -- this

 3   communication, my guess is that she could have, yes.

 4   BY MS. BELLOWS:

 5      Q    Okay.  Next, I've put Jarvis Exhibit 66 in your exhibit

 6   share.  This is another email chain, the Bates for the first

 7   page is WCDS300625, dated February 1st, 2016, and this is

 8   another email sent by Katie Dao on that same morning to one of

 9   the properties mentioned on -- in Mr. Tennerelli's letter,

10   correct?

11      A    Yes, Logan Park, yeah, uh-huh.

12      Q    And was Logan Park a tax credit property at the time?

13      A    Yes, yeah.

14      Q    Okay.  So the response is from Jackie Sue Moncada who

15   was a leasing director at Logan Park Apartments.  So is she a

16   Wasatch Property Management employee?

17      A    Yes, she was, uh-huh.

18      Q    And she says that renters insurance is required

19   correct?

20      A    It appears that way, yes.

21      Q    And there's no exceptions mentioned here, right?

22      A    Yeah.  I don't see any.

23      Q    Okay.  And Katie Dao likely shared this information

24   with you at the time, correct?

25      A    Yeah.  This is -- this renters insurance is never
```

Page 32

1    required for tax credit projects.

2        Q    Okay.  But Ms. Moncada, who's a leasing director, is

3    saying that it is?

4        A    That would be -- that would be in error because it's --

5    that's not the case.  Our policy is that it is always optional

6    for tax credit or housing program tenants.

7        Q    Do you contend that the leasing director did not know

8    which charges were mandatory at the property that she was

9    working at?

10           Are you -- are you suggesting that the leasing director

11   did not know which charges were required at the property that

12   she was working at?

13               MR. MATTHEWS:  Objection, calls for speculation.

14               Go ahead.

15       A    Based on what I'm looking at, yes, I would suggest

16   that.

17   BY MS. BELLOWS:

18       Q    And did someone who did not work at that property would

19   have better information about what charges were -- were required

20   of tenants at that property?

21               MR. MATTHEWS:  Objection, argumentative, overbroad,

22       incomplete hypothetical.

23       A    Yeah, having directed the program, yes.

24   BY MS. BELLOWS:

25       Q    Okay.  As the leasing director, she would have been

                                              Page 33

```
 1                     C E R T I F I C A T E

 2

 3    STATE OF WASHINGTON )

                         )SS.

 4    COUNTY OF KING      )

 5

 6

 7           I, Judith A. Robinson, Certified Court Reporter and an

 8    officer of the Court under my commission as a Notary Public, in

 9    and for the State of Washington, do hereby certify that the

10    foregoing deposition was transcribed under my direction; that

11    the transcript of the deposition is a full, true and correct

12    transcript to the best of my ability; that I am neither attorney

13    for, nor a relative or employee of any of the parties to the

14    action or any attorney or Counsel employed by the parties

15    hereto, nor financially interested in its outcome.

16           IN WITNESS WHEREOF, I have hereunto set my hand

      and affixed my official seal this 23rd day of November,

17    2021.

18                           Judy Robinson

19

                             Judith A. Robinson, Notary Public

20                           in and for the State of Washington

                             residing at Seattle.

21                           My Commission expires November 4,

                             2024.

22                           CCR License #2171

23

24

25

                                                      Page 92
```

# EXHIBIT 10

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Thursday, November 11, 2021 1:16 PM |
| **To:** | Matthews, Ryan |
| **Cc:** | Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey |
| **Subject:** | 11/8 and 11/10 meet and confer calls |

Dear Ryan,

The email below confirms and follows up on our meet and confer calls this week on Monday, 11/8 and Wednesday, 11/10. I also include a couple items that we did not touch on this week, but which we have previously discussed, in order to make sure they are back on our agenda for our next call, which we planned for tomorrow after the informal discovery conference with Judge Barnes.

**Depositions.** You stated that Bradley Mishler was available on November 19. We served an amended deposition notice for that date this morning. Plaintiffs are continuing to review whether there are any additional depositions that we need to notice.

We agreed on the record to hold open Mr. Johnson's deposition pending a further email search for communications with Wasatch's attorneys related to Section 8 tenants and additional service charges, as addressed below.

We have our informal discovery conference regarding Mr. Raymond's deposition scheduled for tomorrow. We look forward to the issue being resolved.

**Renewed email search regarding mandatory charges.** On Monday, we discussed the need to conduct a renewed email search related to whether charges were mandatory at the properties. This email search will capture documents responsive to RFP 52. Defendants at that time agreed that such a further search was reasonable and would address a key issue in the case. Mr. Johnson's testimony yesterday has only reinforced the need for the search. We sent you our proposed search protocol on Monday, and requested a firm commitment to the production by tomorrow (11/12).

If we do not receive the commitment tomorrow, we will file a protective motion to compel noticing a hearing on December 3.

**Renewed email search for attorney communications.** Yesterday Jarom Johnson testified that Defendants substantively consulted David Scharlach and a Mr. Cullimore in Utah regarding how Section 8 rules apply to additional service charges, and he specifically mentioned that he believes Mr. Scharlach's communications were in writing. We have not received production of any emails from either of these attorneys.

Following Mr. Johnson's deposition, Defendants agreed to a further email search for emails with either of these two individuals during 2016. Please complete that search as soon as possible so that we can review any additional documents and schedule Mr. Johnson's further deposition before the discovery cut off.

**Huskey interrogatory responses.** Defendants served an amended response to Huskey Interrogatory 18 on Monday. We responded with a meet and confer letter the same day noting that the interrogatory response did not address other charges that deposition testimony reflect have been requirements of leasing at some Wasatch properties. (Bellows Nov. 8 letter.)

At the Johnson deposition yesterday, further insufficiencies came to light, including (1) the fact that according to Johnson the "Optional" column reflects policy towards Section 8 tenants, while the interrogatory asks about charges

that have been mandatory for any tenants, resulting in a completely misleading response;  (2) Johnson was able to name off the top of his head 16 properties that had mandatory media packages, but that information was not reflected in the interrogatory responses; and (3) Defendants have not conducted due diligence to determine which properties have mandatory parking charge.  As to the third point, Mr. Johnson indicated that they were unable to determine which properties had mandatory parking charges from the company's yardi database.  That is inadequate.  Defendants also have at their disposal the personnel who work at those properties who would be in a position to provide the information, and they have data from the yardi database that indicates rates of enrollments to help them narrow down the properties that require investigation.

For your reference, these are the properties that Johnson named in his deposition as requiring tenants to enroll in media charges:

      Aztec Spring
      Burnett
      Canyon Ridge
      Cimmaron
      Falls at Hunter's Point
      Glen Oaks
      Goldstone Place
      Heron Point
      Landing at Fancher Creek
      Lofts at 7800
      Metropolitan Place
      Palladio
      Ranchwood
      Rio Seco
      River Point
      The Sands

These should be included in the interrogatory response, along with any others for which the media package was required or mandatory for any tenants, and any properties for which there have been required parking charges, or any other mandatory charges.

We agreed yesterday to set an informal discovery conference with Judge Barnes on this issue, and her deputy subsequently set it for Wednesday at 2:30pm.  Our deadline for filing the joint statement is now Monday at 10am.  Plaintiffs will provide our potion of the joint statement no later than noon tomorrow.

*Training documents.*  Defendants indicated that they are continuing to review the training documents and hope to provide a production shortly.  Please do so as soon as possible.  Please also note that Defendants have not yet provided a written list of the documents they are withholding or the reason for withholding them.  We request that Defendants provide that as soon as possible.

We have discussed including this issue in our second informal discovery conference with the Court. If necessary, we will do so.

*Status re: representation of new Defendants.*  Defendants reported that the retainer agreements with the new Defendants are in the gears of Lewis Brisbois bureaucracy and that they hoped to have the answer filed this week.  Given the approaching deadline for service, we have initiated service efforts.  We are also reviewing whether to request an extension of the service deadline from the Court.

*Supplemental disclosures.*  Defendants still have not served supplemental Rule 26 disclosures, despite the Court deadline. Please serve those as soon as possible.

***Updated class list.***  Defendants have previously agreed to produce an updated class list that includes class members' tenant identification numbers so that we can connect them to the yardi data.  We have not yet received that.  Please provide it as soon as possible.

***Delinquency tracker.***  On Monday we discussed Plaintiffs' meet and confer letter requesting production of the delinquency tracker, and Defendants assented to the production and asked Plaintiffs to notify the joint expert.  I did so, and my understanding is that they are now working on it.

***Relevant documents from personnel files.***  Defendants have reviewed the personnel files and will be serving a verification that they do not contain any responsive documents.

***Stipulation in lieu of tenant files production.***  Plaintiffs described our plan to put together a stipulation collecting documents from the tenant files that were produced in 2017, and asked Defendants to supplement the stipulation with documents postdating 2017.  Defendants were agreeable to this proposal.  Defendants also indicated an interest in potentially broadening the stipulation to address other uncontested facts in the case.  We agreed that might be productive; however, for purposes of moving this along, we plan to provide a draft of the narrower stipulation early next week.

***Stipulation re: modifications to the class certification order.***  Defendants indicated they were reviewing the stipulation to modify the class certification order and hoped to authorize filing this week.  We still have not received that authorization, please let me know as soon as possible what the status is on that.

***Housekeeping issues.***  We sent a letter addressing outstanding housekeeping issues, which Defendants indicated they are addressing.  On our call, we also discussed that we are still missing a verification for the RFA responses served on July 19, 2021 (Defendants' Responses to Plaintiff Denika Terry's Request for Admissions, Set Two).

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

# EXHIBIT 11

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH A. SALAZAR JR., SB# 169551
   E-Mail: Joe.Salazar@lewisbrisbois.com
RYAN MATTHEWS, SB# 311674
   E-Mail: Ryan.Matthews@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
Sacramento, California 95833
Telephone: 916.564.5400
Facsimile: 916.564.5444

Attorneys for Wasatch Advantage Group, LLC;
Wasatch Property Management, Inc.; Wasatch
Pool Holdings, LLC, Chesapeake Commons
Holdings, LLC; Logan Park Apartments, LLC;
Logan Park Apartments, LP

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. DENIKA TERRY and ROY HUSKEY III, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA, | CASE NO. 2:15-cv-00799-KJM-DB |
| | **DEFENDANTS FURTHER AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE** |
| Plaintiffs/Relators, | The Hon. Kimberly J. Mueller |
| vs. | Trial Date:      None Set |
| WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC; LOGAN PARK APARTMENTS, LP, | |
| Defendants. | |

PROPOUNDING PARTY:      Plaintiff, Roy Huskey, III

RESPONDING PARTY:      Defendants, Wasatch Advantage Group, LLC; Wasatch Property

Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake

Commons Holdings, LLC; Logan Park Apartments, LLC; Logan

1                          Park Apartments, LP

2    SET NO.:                        FIVE

3    **INTERROGATORY NO. 18:**

4          Please identify (by name, address, city, state, applicable time period, and relevant charges)

5    any SUBJECT PROPERTY that, for any period of time since April 14, 2005, made any

6    ADDITIONAL SERVICE CHARGE mandatory for any tenants.

7    **FURTHER AMENDED RESPONSE TO INTERROGATORY NO. 18:**

8          Defendants respond as follows: After diligent effort and inquiry, Defendants are unable to

9    verify time periods in which any Additional Service Charge was mandatory .This includes, but is

10   not limited to, charges for washers and dryers, covered parking, media packages, and renter's

11   insurance. Defendants' corporate policy is and always has been that for Section 8 tenants, no

12   Additional Service Charge is mandatory, and each and every one has always been optional. In

13   light of prior testimony regarding bulk media packages, Defendants list below each property that

14   Wasatch Property Management has managed in the times relevant to this case that has ever had a

15   media package of any kind, and the date it was added.

| PROPCODE | PROPERTY | MEDIA PACKAGE | DATE ADDED | |
|---|---|---|---|---|
| 6lt | 600 Lofts | Y | 04/2017 | |
| art | Arcadia | Y | 05/2018 | |
| art2 | Arcadia II | Y | 01/2021 | |
| az | Aztec Springs Apartments | Y | 09/2020 | |
| bu | Burnett Station Apartments | Y | 01/2020 | |
| cn | Canyon Ridge Apartments | Y | 09/2020 | |
| cm | Cimarron Place Apartments | Y | 09/2020 | |
| dw | Devonshire Court West | Y | 03/2019 | |
| enclave | Enclave at 1400 South | Y | 07/2015 | |
| falls | Falls at Hunters Pointe | Y | 09/2018 | |
| glt | Garden Lofts | Y | 11/2019 | |
| go | Glen Oaks Apartments | Y | 09/2020 | |
| gp | Goldstone Place Apartments | Y | 03/2000 | |

DEFENDANTS FURTHER AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S
INTERROGATORIES, SET FIVE

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| hp | Heron Pointe Apartments | Y | 08/1998 | |
|----|------|---|---------|--|
| fc | Landing at Fancher Creek | Y | 04/2003 | |
| lofts | Lofts at 7800 | Y | 08/2014 | |
| mp | Metropolitan Place Apartments | Y | 11/2019 | |
| p1 | Palladio Apartments-Phase 1 | Y | 10/2002 | |
| p3 | Palladio Apartments-Phase 1 | Y | 10/2002 | |
| rw | Ranchwood Apartments | Y | 09/2020 | |
| rs | Rio Seco Apartments | Y | 09/2020 | |
| rp | River Point Apartments | Y | 09/2020 | |
| sa | Sands Apartments | Y | 09/2020 | |
| rvt | The Reserve at View 78 | Y | 09/2019 | |
| vet | Veranda | Y | 01/2018 | |
| vit | Village Grove Apartments | Y | 02/2015 | Internet Provided as Free Service for all residents |

**INTERROGATORY NO. 20:**

Please identify (by author, date, title, and bates number) any and all DOCUMENTS reflecting a company-wide policy maintained by DEFENDANTS that tenants participating in SECTION 8 were exempt from otherwise mandatory ADDITIONAL SERVICE CHARGES.

**RESPONSE TO INTERROGATORY NO. 20:**

Defendants respond that they are unable to identify any such documents.

DATED: November 17, 2021          LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
RYAN MATTHEWS
Attorneys for Wasatch Advantage Group, LLC;
Wasatch Property Management, Inc.; Wasatch
Pool Holdings, LLC, Chesapeake Commons
Holdings, LLC; Logan Park Apartments, LLC;
Logan Park Apartments, LP

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

**VERIFICATION**

2    **STATE OF CALIFORNIA, COUNTY OF SACRAMENTO**

3         I have read the foregoing DEFENDANTS AMENDED RESPONSES TO PLAINTIFF
ROY HUSKEY III'S INTERROGATORIES, SET FIVE and know its contents.

4

☐     I am a party to this action.  The matters stated in the foregoing document are true of my
5   own knowledge except as to those matters which are stated on information and belief, and as to
those matters I believe them to be true.

6

☒     I am Executive Vice President of Wasatch Property Management, Inc., a party to this
7   action, and am authorized to make this verification for and on its behalf, and I make this
verification for that reason.

8

           ☒     I am informed and believe and on that ground allege that the matters stated in the
9                  foregoing document are true.

10            ☐     The matters stated in the foregoing document are true of my own knowledge except
                as to those matters which are stated on information and belief, and as to those
11                 matters I believe them to be true.

12 ☐     I am one of the attorneys for Wasatch Property Management, Inc., a party to this action.
Such party is absent from the county where such attorneys have their offices, and I make this
13   verification for and on behalf of that party for that reason.  I am informed and believe and on that
ground allege that the matters stated in the foregoing document are true.

14

        I declare under penalty of perjury under the laws of the United States of America and the
15   State of California that the foregoing is true and correct.

16         Executed on November _17_, 2021, at Logan, Utah.

17

18

  Jarom Johnson
19  Print Name of Signatory                        Signature

20

21

22

23

24

25

26

27

28

## **FEDERAL COURT PROOF OF SERVICE**

USA-Terry v Wasatch Property Mgmt
2:15-cv-00799 KJM DB

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On November 17, 2021, I served the following document(s):

- DEFENDANTS FURTHER AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S INTERROGATORIES, SET FIVE

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒ (BY E-MAIL OR ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on November 17, 2021, at Sacramento, California.

_____
Alicia Crespo



1                                    Case No. 2:15-cv-00799-KJM-DB

DEFENDANTS FURTHER AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S
INTERROGATORIES, SET FIVE

**SERVICE LIST**
**USA-Terry v Wasatch Property Mgmt**
**2:15-cv-00799 KJM DB**

| | |
|---|---|
| Andrew Wolff<br>Law Office of Andrew Wolff, PC<br>1956 Webster Street, Ste. 275<br>Oakland, CA 94612 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  510-834-3300<br>E-Mail:  andrew@awolfflaw.com |
| Jesse Newmark<br>CENTRO LEGAL DE LA RAZA<br>3022 International Blvd, Ste. 410<br>Oakland, CA 94601 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  (510) 437-1554 x115<br>Fax:  (510) 437-9164<br>Email:  jessenewmark@centrolegal.org<br>Email: malvarez@centrolegal.org |
| Laura L. Ho<br>Anne Bellows<br>Kristen A. Burzynski<br>Goldstein, Borgen, Dardarian & Ho<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612 | *Co-Counsel for Plaintiffs*<br><br>Tel.: 519-763-9800<br>Fax: 510-835-1417<br>Email: lho@gbdhlegal.com<br>Email: abellows@gbdhlegal.com<br>Email: sgrimes@gbdhlegal.com<br>Email: dvaldez@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com |
| Vincente Antonio Tennerelli<br>United States Attorney's Office<br>2500 Tulare Street, Suite 4401<br>Fresno, CA 93721 | *Attorney for Intervenor Plaintiff*<br>*United States of America*<br><br>Tel.: (559) 497-4080<br>Email: Vincente.Tennerelli@usdoj.gov<br>Email: joni.jones@usdoj.gov |
| Jocelyn D. Larkin<br>Lindsay Nako<br>The Impact Fund<br>2080 Addison Street, Suite 5<br>Berkeley, CA 94704 | *Attorney for Plaintiffs*<br><br>T: 510-845-3473 x.306<br>F: 510-845-3654<br>E: jlarkin@impactfund.org<br>E: lnako@impactfund.org |


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

2                                        Case No. 2:15-cv-00799-KJM-DB

DEFENDANTS FURTHER AMENDED RESPONSES TO PLAINTIFF ROY HUSKEY III'S
INTERROGATORIES, SET FIVE

# EXHIBIT 12

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Wednesday, November 17, 2021 3:33 PM |
| **To:** | Matthews, Ryan; Alec.Rishwain@lewisbrisbois.com |
| **Subject:** | RE: [EXT] Re: Terry - Huskey ROGs 18 and 20 - Meet and Confer |

Alec, it was nice to meet you on the call today.  Below is the email from Ryan that I mentioned.

Ryan, I'm sure you'll be getting a debrief from Alec on the informal discovery conference.  One thing I expressed on the call is that I'm worried about timeline.  What is your availability tomorrow to discuss the timeline, as well as the other outstanding discovery issues that we have?

I am available if need be after hours.

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Sent:** Wednesday, November 17, 2021 12:19 PM
**To:** Anne Bellows <abellows@gbdhlegal.com>
**Subject:** Re: [EXT] Re: Terry - Huskey ROGs 18 and 20 - Meet and Confer

I'll work on that. Shouldn't be a difficult list to get.

On Nov 17, 2021, at 8:50 AM, Anne Bellows <abellows@gbdhlegal.com> wrote:

> **Caution:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Ryan,

I think we should go ahead with the informal discovery conference as this response still does not identify any properties where particular charges have been mandatory.

Thanks,
Anne

Sent from my mobile device. Please excuse brevity and typos.

---

**From:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Sent:** Wednesday, November 17, 2021 6:42:30 AM
**To:** Anne Bellows <abellows@gbdhlegal.com>
**Subject:** Terry - Huskey ROGs 18 and 20 - Meet and Confer

Anne,

As I said last week, I'm attaching proposed amended responses for these interrogatories. These should solve the problems you identified. Assuming you're satisfied, I expect to have these verified and served either later today or first thing tomorrow. I'm in court all day today, but we'll get somebody to attend the IDC if you decide it still needs to go forward.

Thanks,

Ryan

<Logo_e6253148-26a1-47a9-b861-6ac0ff0bc3c4.png>

**Ryan Matthews**
**Attorney**
Ryan.Matthews@lewisbrisbois.com

**T: 916.646.8213  F: 916.564.5444**

2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

**EXHIBIT 13**

1 | **LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH A. SALAZAR JR., SB# 169551
2 |    E-Mail: Joe.Salazar@lewisbrisbois.com
RYAN MATTHEWS, SB# 311674
3 |    E-Mail: Ryan.Matthews@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
4 | Sacramento, California 95833
Telephone: 916.564.5400
5 | Facsimile: 916.564.5444

6 | Attorneys for Wasatch Advantage Group, LLC;
Wasatch Property Management, Inc.; Wasatch
7 | Pool Holdings, LLC, Chesapeake Commons
Holdings, LLC; Logan Park Apartments, LLC;
8 | Logan Park Apartments, LP

9 |

10 | **UNITED STATES DISTRICT COURT**

11 | **EASTERN DISTRICT OF CALIFORNIA**

12 | **SACRAMENTO DIVISION**

13 |

14 | UNITED STATES OF AMERICA, ex rel.
DENIKA TERRY and ROY HUSKEY III,
15 | and each of them for themselves individually,
and for all other persons similarly situated and
16 | on behalf of the UNITED STATES OF
AMERICA,
17 |
            Plaintiffs/Relators,
18 |
            vs.
19 |
WASATCH ADVANTAGE GROUP, LLC,
20 | WASATCH PROPERTY MANAGEMENT,
INC., WASATCH POOL HOLDINGS, LLC,
21 | CHESAPEAKE COMMONS HOLDINGS,
LLC, LOGAN PARK APARTMENTS, LLC;
22 | LOGAN PARK APARTMENTS, LP,
23 |
            Defendants.
24 |

CASE NO. 2:15-cv-00799-KJM-DB

**DEFENDANTS' RESPONSE TO
PLAINTIFF DENIKA TERRY'S
REQUEST FOR PRODUCTION OF
DOCUMENTS, SET TWO**

The Hon. Kimberly J. Mueller

Trial Date:        None Set

25 | PROPOUNDING PARTY:        Plaintiff, DENIKA TERRY

26 | RESPONDING PARTY:        Defendants, WASATCH ADVANTAGE GROUP, LLC,

27 |        WASATCH PROPERTY MANAGEMENT, INC., WASATCH

28 |        POOL HOLDINGS, LLC, CHESAPEAKE COMMONS

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC,

2    LOGAN PARK APARTMENTS, LP

3  SET NO.:                    TWO

4  **REQUEST FOR PRODUCTION NO. 27:**

5        All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees

6  regarding the SECTION 8 program at any time since April 2005.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

8        After diligent search and reasonable inquiry, Defendants are not in possession of any

9  responsive documents. Discovery is ongoing, and Defendants reserve the right to supplement this

10  response if any responsive documents are discovered.

11  **REQUEST FOR PRODUCTION NO. 28:**

12        All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees

13  regarding leases and the leasing process at any time since April 2005.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

15        Defendant objects to the instant request as being overbroad, unduly burdensome, and

16  calling for trade secrets. Defendants are willing to meet and confer with respect to the specific

17  trainings requested.

18  **REQUEST FOR PRODUCTION NO. 29:**

19        All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees

20  regarding ADDITIONAL SERVICE AGREEMENTS and ADDITIONAL SERVICE CHARGES

21  at any time since April 2005.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

23        Defendant objects to the instant request on the grounds that it is overbroad and unduly

24  burdensome. Without waiving that objection, Defendant responds that after diligent search and

25  reasonable inquiry, Defendants are not in possession of any responsive documents. Discovery is

26  ongoing, and Defendants reserve the right to supplement this response if any responsive

27  documents are discovered.t has no responsive documents in its possession.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    **REQUEST FOR PRODUCTION NO. 30:**

2         All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees

3    regarding notices to tenants based on the non-payment of rent of any other charge at any time

4    since April 2005.

5    **RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

6         Defendant objects to this request to the extent it calls for trade secret information protected

7    by a Non-Disclosure Agreement, and on the grounds that there is no reasonable need for the

8    protected information requested.

9    **REQUEST FOR PRODUCTION NO. 31:**

10        All DOCUMENTS concerning or reflecting DEFENDANTS' training of its employees

11   regarding eviction actions or unlawful detainer actions based on the non-payment of rent or any

12   other charge at any time since April 2005.

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

14        Defendant objects to this request on the grounds that it is overbroad, unduly burdensome,

15   and calls for trade secret information. Further, it is not reasonably calculated to lead to the

16   discovery of admissible evidence.

17   **REQUEST FOR PRODUCTION NO. 32:**

18        All DOCUMENTS concerning or reflecting DEFENDANTS' policies, procedures, or

19   practices in effect at any time since April 2005 related to the " Pay Order" applicable to all

20   payments made by a tenant, including any documents related to Exhibit 3 to the Janae Jarvis

21   Deposition conducted on August 10, 2017 or the Pay Sequence exceptions referenced on page 2 of

22   the exhibit.

23   **RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

24        Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome,

25   calls for trade secret information protected by a Non-Disclosure Agreement, and on the grounds

26   that there is no reasonable need for the protected information requested.

27   **REQUEST FOR PRODUCTION NO. 33:**

28        All DOCUMENTS concerning or reflecting DEFENDANTS' policies, procedures, or

DEFENDANTS' RESPONSE TO PLAINTIFF DENIKA TERRY'S REQUEST FOR PRODUCTION OF
DOCUMENTS, SET TWO

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  practices in effect at any time since April 2005 related to collecting past due ADDITIONAL

2  SERVICE CHARGES.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

4      After diligent search and reasonable inquiry, Defendants are not in possession of any

5  responsive documents. Discovery is ongoing, and Defendants reserve the right to supplement this

6  response if any responsive documents are discovered.

7  **REQUEST FOR PRODUCTION NO. 34:**

8      A copy of any non-disclosure agreement that applies to DEFENDANTS' Yardi property

9  management database.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

11      Defendants will produce the Non-Disclosure Agreement.

12  **REQUEST FOR PRODUCTION NO. 35:**

13      DOCUMENTS sufficient to describe the tables, fields and codes contained in

14  DEFENDANTS' Yardi property management database related to leases, Housing Assistance

15  Payment contracts, charges, payments, balances, eviction notices, and eviction actions, including a

16  schema of the database and any relevant data dictionaries or look-up tablets.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

18      Defendant objects to this Request on the grounds that it is not reasonably calculated to lead

19  to the discovery of admissible evidence, that it is overbroad, that it calls for trade secrets protected

20  by a Non-Disclosure Agreement, and it requests the same information that was the subject of

21  Plaintiffs' Motion to Compel, which was denied with respect to this information by the Court.

22  **REQUEST FOR PRODUCTION NO. 36:**

23      All data or electronic records contained in DEFENDANTS' Yardi property management

24  database related to Housing Assistance Payment Contracts for all of Defendants' Section 8 tenants

25  who, since April 2005, have paid Additional Service Charges.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

27      Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome,

28  and is duplicative of information that Defendants have already agreed to produce pursuant to


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Plaintiffs' Requests for Production, Set Two. Defendants' assertion of undue burden is

2  substantiated by the Declaration of Mike Christiansen, submitted in Opposition to Plaintiffs'

3  Motion to Compel, which was denied as to this information.

4  **REQUEST FOR PRODUCTION NO. 37:**

5        All data or electronic records contained in DEFENDANTS' Yardi property management

6  database related to leases for all of Defendants' Section 8 tenants who, since April 2005, have paid

7  Additional Service Charges.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

9        Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome,

10 and is duplicative of information that Defendants have already agreed to produce pursuant to

11 Plaintiffs' Requests for Production, Set Two. Defendants' assertion of undue burden is

12 substantiated by the Declaration of Mike Christiansen, submitted in Opposition to Plaintiffs'

13 Motion to Compel, which was denied as to this information.

14 **REQUEST FOR PRODUCTION NO. 38:**

15       All data or electronic records contained in DEFENDANTS' Yardi property management

16 database related to resident ledgers for all of Defendants' Section 8 tenants who, since April 2005,

17 have paid Additional Service Charges, including charge codes, balances, and the application of

18 payments to charges.

19 **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

20       Defendants have already agreed to produce tenant ledgers. Defendant objects to the

21 production of charge codes, which are specific to the Yardi database and are trade secrets

22 protected by a Non-Disclosure Agreement. The Request for these charge codes is not reasonably

23 calculated to lead to the discovery of admissible evidence. Defendant further object to the request

24 to the extent it seeks information relating to the application of payments to charges. Such

25 information is not related to resident ledgers, and Defendant objects to their production as being

26 unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

27 Defendants' assertion of undue burden is substantiated by the Declaration of Mike Christiansen,

28 submitted in Opposition to Plaintiffs' Motion to Compel, which was denied as to this information.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  **REQUEST FOR PRODUCTION NO. 39:**

2      All data or electronic records contained in DEFENDANTS' Yardi property management

3  database related to notices to tenants based on the non-payment of rent or any other charge for all

4  of Defendants' Section 8 tenants who, since April 2005, have paid Additional Service Charges.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

6      Defendants object to this request on the grounds that it is unduly burdensome, and requests

7  documents that have already been produced. Defendants further object on the grounds that this

8  request is not reasonably calculated to lead to the discovery of admissible evidence.

9  **REQUEST FOR PRODUCTION NO. 40:**

10      All data or electronic records contained in DEFENDANTS' Yardi property management

11  data base related to communications with any of Defendants' Section 8 tenants who, since April

12  2005, have paid Additional Service Charges.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

14      Defendants object to this request on the grounds that it is overbroad, unduly burdensome,

15  and not reasonably calculated to lead to the discovery of admissible evidence. The request seeks

16  communications over 15 years with thousands of tenants, with no limitation as to the subject

17  matter of those communications.

18  **REQUEST FOR PRODUCTION NO. 41:**

19      All data or electronic records contained in DEFENDANTS' Yardi property management

20  database related to communications with any of Defendants' Section 8 tenants who, since April

21  2005, have paid Additional Service Charges.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

23      Defendants object to this request on the grounds that it is overbroad, unduly burdensome,

24  and not reasonably calculated to lead to the discovery of admissible evidence. The request seeks

25  communications over 15 years with thousands of tenants, with no limitation as to the subject

26  matter of those communications. Defendant further objects to this request as duplicative to

27  Request 41.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**REQUEST FOR PRODUCTION NO. 42:**

All DOCUMENTS concerning or reflecting COMMUNICATIONS between any of DEFENDANTS' employees or personnel and any local housing authority at any time since DEFENDANTS began using ADDITIONAL SERVICE AGREEMENTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Defendant objects to this request as being overbroad and unduly burdensome, and not being reasonably calculated to lead to the discovery of admissible evidence. The request makes no effort to particularize the subject matter of the communications it seeks.

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS concerning or reflecting COMMUNICATIONS with any official or employee of the federal government related DEFENDANTS' practice of charging ADDITIONAL SERVICE CHARGES to SECTION 8 tenants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Defendants object to this request on the grounds that it calls for documents protected by the attorney-client and work product privileges. Subject to and without waiving that objection, Defendants will produce all responsive documents in their possession. Defendants note that such production will include only those communications with employees of federal agencies. Such a production has no bearing on any future legal arguments relating to who may constitute an official of the United States Government in the context of delegation of authority by federal agencies.

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of DEFENDANTS' CORPORATE EMPLOYEES related to the leasing or lease renewal process for SECTION 8 tenants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Defendant objects to this request as being overbroad, unduly burdensome, and vague and ambiguous as to its use of "the leasing or lease renewal process." Any of Defendants' conduct is inherently related to the leasing process. Further, these communications are likely to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for Production.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   **REQUEST FOR PRODUCTION NO. 45:**

2       All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

3   DEFENDANTS' CORPORATE EMPLOYEES related to the application of ADDITIONAL

4   SERVICE AGREEMENTS or ADDITIONAL SERVICE CHARGES to SECTION 8 tenants.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

6       Defendant objects to this request as being overbroad and unduly burdensome. Defendant

7   also objects to the extent this request seeks documents protected by the Attorney-Client and

8   Attorney Work Product privileges. Further, these communications are likely to be encompassed by

9   the e-mail production in response to Plaintiffs' prior Requests for Production. Defendants will

10  provide a privilege log as appropriate following review and production of those communications.

11  **REQUEST FOR PRODUCTION NO. 46:**

12      All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

13  DEFENDANTS' CORPORATE EMPLOYEES related to any evaluation or analysis of

14  DEFENDANTS' use of ADDITIONAL SERVICE AGREEMENTS or ADDITIONAL SERVICE

15  CHARGES.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

17      Defendant objects to this request to the extent it seeks documents protected by the

18  Attorney-Client and Attorney Work Product privileges.  Further, these communications are likely

19  to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for

20  Production. Defendants will provide a privilege log as appropriate following review and

21  production of those communications.

22  **REQUEST FOR PRODUCTION NO. 47:**

23      All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

24  DEFENDANTS' CORPORATE EMPLOYEES related to benefits to DEFENDANTS from

25  ADDITIONAL SERVICE AGREEMENTS or ADDITIONAL SERVICE CHARGES, including

26  but not limited to revenue, profit, marketing, or legal benefits.

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

28      Defendant objects to this request to the extent it seeks documents protected by the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Attorney-Client and Attorney Work Product privileges. Further, these communications are likely

2  to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for

3  Production. Defendants will provide a privilege log as appropriate following review and

4  production of those communications.

5  **REQUEST FOR PRODUCTION NO. 48:**

6  　　All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

7  DEFENDANTS' CORPORATE EMPLOYEES relating to pricing, marketing, or sales connected

8  to ADDITIONAL SERVICE AGREEMENTS or ADDITIONAL SERVICE CHARGES,

9  including but not limited to policies, strategies, or practices for obtaining tenants' agreement to

10  ADDITIONAL SERVICE CHARGES.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

12  　　Defendant objects to this request to the extent it seeks documents protected by the

13  Attorney-Client and Attorney Work Product privileges. Further, these communications are likely

14  to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for

15  Production. Defendants will provide a privilege log as appropriate following review and

16  production of those communications.

17  **REQUEST FOR PRODUCTION NO. 49:**

18  　　All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

19  DEFENDANTS' CORPORATE EMPLOYEES related to ADDITIONAL SERVICE CHARGES

20  OR ADDITIONAL SERVICE AGREEMENTS and notices or eviction actions based on

21  nonpayment of rent or other charges.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

23  　　Defendant objects to this request to the extent it seeks documents protected by the

24  Attorney-Client and Attorney Work Product privileges. Further, these communications are likely

25  to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for

26  Production. Defendants will provide a privilege log as appropriate following review and

27  production of those communications.

28



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  **REQUEST FOR PRODUCTION NO. 50:**

2      All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

3  DEFENDANTS' CORPORATE EMPLOYEES regarding DEFENDANTS' policies, procedures,

4  or practices related to collecting past due ADDITIONAL SERVICE CHARGES.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

6      Defendant objects to this request to the extent it seeks documents protected by the

7  Attorney-Client and Attorney Work Product privileges. Further, these communications are likely

8  to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for

9  Production. Defendants will provide a privilege log as appropriate following review and

10  production of those communications.

11  **REQUEST FOR PRODUCTION NO. 51:**

12      All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

13  DEFENDANTS' PROPERTY-LEVEL EMPLOYEES related to the application of

14  ADDITIONAL SERVICE AGREEMENTS or ADDITIONAL SERVICE CHARGES to

15  SECTION 8 tenants.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

17      Defendant objects to this request to the extent it seeks documents protected by the

18  Attorney-Client and Attorney Work Product privileges. Further, these communications are likely

19  to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for

20  Production. Defendants will provide a privilege log as appropriate following review and

21  production of those communications.

22  **REQUEST FOR PRODUCTION NO. 52:**

23      All DOCUMENTS concerning or reflecting COMMUNICATIONS involving any of

24  DEFENDANTS' PROPERTY-LEVEL EMPLOYEES regarding whether and to what extent

25  ADDITIONAL SERVICE CHARGES are mandatory or optional.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

27      Defendant objects to this request to the extent it seeks documents protected by the

28  Attorney-Client and Attorney Work Product privileges. Further, these communications are likely

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   to be encompassed by the e-mail production in response to Plaintiffs' prior Requests for

2   Production. Defendants will provide a privilege log as appropriate following review and

3   production of those communications.

4

5   DATED:  July 16, 2020                    LEWIS BRISBOIS BISGAARD & SMITH LLP

6

7                                            By: _____

8                                                RYAN MATTHEWS
                                                 Attorneys for Wasatch Advantage Group, LLC;
9                                                Wasatch Property Management, Inc.; Wasatch
                                                 Pool Holdings, LLC, Chesapeake Commons
10                                               Holdings, LLC; Logan Park Apartments, LLC;
11                                               Logan Park Apartments, LP

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

**VERIFICATION**

2

**STATE OF CALIFORNIA, COUNTY OF SACRAMENTO**

3

I have read the foregoing DEFENDANTS' RESPONSE TO PLAINTIFF DENIKA TERRY'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO and know its contents.

4

5

☐   I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

6

7

☒   I am Chief Operating Officer of Wasatch Property Management, Inc., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

8

9

☒   I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

10

☐   The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

11

12

☐   I am one of the attorneys for Wasatch Property Management, Inc., a party to this action. Such party is absent from the county where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

13

14

15

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

16

Executed on July 15, 2020, at Salt Lake City, Utah.

17

18

19
 Jarom Johnson
Print Name of Signatory                                        Signature

20

21

22

23

24

25

26

27

28

4815-2268-4097.1

Case No. 2:15-cv-00799-KJM-DB

DEFENDANTS' RESPONSE TO PLAINTIFF DENIKA TERRY'S REQUEST FOR PRODUCTION OF
DOCUMENTS, SET TWO

**<u>FEDERAL COURT PROOF OF SERVICE</u>**

USA-Terry v Wasatch Property Mgmt
2:15-cv-00799 KJM DAD

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

      At the time of service, I was over 18 years of age and not a party to the action.  My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

      On July 16, 2020, I served the following document(s):

-   DEFENDANTS' RESPONSE TO PLAINTIFF DENIKA TERRY'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO

      I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

      The documents were served by the following means:

☒    (BY E-MAIL OR ELECTRONIC TRANSMISSION)  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

      I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

      Executed on July 16, 2020, at Sacramento, California.

_____
Alicia Rios



4815-2268-4097.1

Case No. 2:15-cv-00799-KJM-DB

DEFENDANTS' RESPONSE TO PLAINTIFF DENIKA TERRY'S REQUEST FOR PRODUCTION OF
DOCUMENTS, SET TWO

**SERVICE LIST**
**USA-Terry v Wasatch Property Mgmt**
**2:15-cv-00799 KJM DAD**

| | |
|---|---|
| Andrew Wolff<br>Law Office of Andrew Wolff, PC<br>1956 Webster Street, Ste. 275<br>Oakland, CA 94612 | ***Attorney for Plaintiffs***<br>***Denika Terry and Roy Huskey, III***<br><br>Tel.: 510-834-3300<br>E-Mail: Andrew@awolfflaw.com |
| Jesse Newmark<br>CENTRO LEGAL DE LA RAZA<br>3022 International Blvd, Ste. 410<br>Oakland, CA 94601 | ***Attorney for Plaintiffs***<br>***Denika Terry and Roy Huskey, III***<br><br>Tel.: (510) 437-1554 x115<br>Fax: (510) 437-9164<br>Email: jessenewmark@centrolegal.org |
| Laura L. Ho<br>Anne Bellows<br>Beth Holtzman<br>Goldstein, Borgen, Dardarian & Ho<br>300 Lakeside Drive, Suite 1000<br>Oakland, CA 94612 | ***Co-Counsel for Plaintiffs***<br><br>Tel.: 519-763-9800<br>Fax: 510-835-1417<br>Email: lho@gbdhlegal.com<br>Email: abellows@gbdhlegal.com<br>Email: bholtzman @gbdhlegal.com |
| Vincente Antonio Tennerelli<br>United States Attorney's Office<br>2500 Tulare Street, Suite 4401<br>Fresno, CA 93721 | ***Attorney for Intervenor Plaintiff***<br>***United States of America***<br><br>Tel.: (559) 497-4080<br>Email: Vincente.Tennerelli@usdoj.gov |



4815-2268-4097.1

Case No. 2:15-cv-00799-KJM-DB

DEFENDANTS' RESPONSE TO PLAINTIFF DENIKA TERRY'S REQUEST FOR PRODUCTION OF
DOCUMENTS, SET TWO

# EXHIBIT 14

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

# G B D H

## Goldstein, Borgen,
## Dardarian & Ho

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

July 28, 2020

**VIA EMAIL ONLY**

Joseph Salazar                                   Joe.Salazar@lewisbrisbois.com
Ryan Matthews                              Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

Re:    Defendants' Responses to Plaintiff Denika Terry's Second Set of RFPs

Dear Joe and Ryan:

We write to request the opportunity to meet and confer with you by phone regarding Defendants' Responses to Terry's Second Set of Requests for Production.  Below, we address the cross-cutting issue of Defendants' failure to identify a timeline by which it will produce the responsive documents, their failure to state whether documents are being withheld, and their improper trade secret objections.  Then, we address the training documents (RFPs 27 through 40), the requests related to Defendants' Yardi system (RFPs 34 through 41), and the requests related to communications (RFPs 42 through 52).

## 1.    Defendants' Responses Fail to Provide a Timeline for Producing Documents

Although Defendants indicate they will be producing responsive documents in response to RFPs 30 and 43 through 52, Defendants do not identify a timeline, and we have not received any documents.  Federal Rule of Civil Procedure 34(b)(2)(B) requires that the production be completed "no later than the time for inspection specified in the request, or another reasonable time specified in the response." We requested that the documents be produced within thirty days of the service of the RFPs, *i.e.*, July 16, 2020.  Defendants have neither produced documents by that deadline, nor have they specified "another reasonable time."

## 2.    Defendants' Responses Fail to State Whether Documents Are Being Withheld

In violation of Rule 34(b)(2)(C), Defendants' responses repeatedly fail to state "whether any responsive materials are being withheld on the basis" of each object asserted.  As the Advisory Committee notes to the 2015 amendments explain, "The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection."  We request that Defendants be prepared to discuss what documents are being held pursuant to the asserted objections during our meet and confer call, and for the purposes of a clean discovery record we also request that Defendants amend their responses to RFP Set Two to comply with this requirement.

Joseph Salazar                                    -2-                                    July 28, 2020
Ryan Matthews

3.      **Defendants' Objection that the Requests Call for Production of Trade Secret Information Does Not Justify their Refusal to Produce the Documents.**

Defendants object that RFPs 28, 30-32, 35, and 38 call for "trade secret information." Trade secrets and proprietary information "have widely been held to be discoverable upon appropriate findings and with an appropriate protective order." *MDK, Inc. v. Mike's Train House*, 27 F.3d 116, 120 (4th Cir. 1994).   In the Ninth Circuit, "[w]here trade secrets or other confidential commercial information is involved, the court will balance the risk of disclosure to competitors against the risk that a protective order [or refusal to produce the information] will impair prosecution or defense of the claims." *Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D. 552, 554 (C.D. Cal. 2007) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)).

Here, there is no risk of disclosure to competitors, as Plaintiffs are not competitors, and we have a stipulated protective in place that can address any legitimate concerns Defendants may have regarding disclosure of the information in a litigated case.  *See* ECF 53. Defendants' refusal to produce the information, on the other hand, significantly impairs the prosecution of the case, as set out immediately below.

- **RFP 28** (training documents related to leases or the leasing process). As you are aware, tenants agree to additional service charges during the leasing process and as part of the lease.  Therefore, understanding Defendants' policies and instructions to its personnel regarding the leasing process, communications with prospective tenants, record keeping, and other related topics is necessary to shed light on the conditions under which tenants are asked to, and do, agree to the Additional Service charges, and the existence and nature of related data or documents.

- **RFP 30** (training documents related to notices based on the non-payment of rent or any other charge).  Notices regarding the non-payment of rent or other charges constitute significant communications between Wasatch and its tenants that can shed light on whether, as company policy, payment of additional service charges is considered mandatory and a condition of continued occupancy in the unit. Plaintiffs have noted repeated examples of notices to quit that were served based, in whole or in part, on the tenant's non-payment of additional service charges. *See, e.g.* CV000502, CPC000654, CY002883.  The requested training materials may reveal Defendants' official policies and practices on this subject matter and must be produced.

- **RFP 31** (training documents related to eviction actions or unlawful detainer actions based on the nonpayment of rent or any other charge).  The same reasons stated regarding RFP 30 apply here as well.

- **RFP 32** (documents regarding policies, procedures or practices related to the Pay Order applicable to tenant payments).  As you are aware, Plaintiffs contend that the additional service charges qualify as rent because, among other reasons, Defendants treat the charges equivalently to rent.  Defendants have produced in

787393.4

Joseph Salazar                                    -3-                              July 28, 2020
Ryan Matthews

deposition a document showing that tenant payments will be applied first to additional service charges and then to rent, so that if any amounts are left over, then rent will be left owing.  *See* Jarvis. Dep. Exhibit 3; *see also, e.g.*, Tanforan Dep. at 79:8-80:18.  Plaintiffs are entitled to all versions of that document in effect since April 2005, and other related documents that can clarify the scope and application of the policy, including the apparent exceptions referenced on the second page of the document.

- **RFP 35** (documents sufficient to describe tables, fields and codes contained in Defendants' Yardi property management database related to leases, Housing Assistance Payment contracts, charges, payments, balances, eviction notices, an eviction actions).  Plaintiffs are entitled to this information to understand the scope and meaning of the data contained in the Defendants' centralized Yardi database relevant to the issues in this action.  Defendant cannot withhold centralized, manipulable, detailed, and complete data necessary for Plaintiffs to conduct analyses relevant to liability (*e.g.*, relevant to whether the additional service charges are excluded from the rent amounts in HAP contracts, whether they are mandatory, whether they are enforced by threat of eviction or institution of eviction proceedings) or to calculation of restitution, damages, and penalties due.

- **RFP 38** (data or electronic records related to ledgers for Section 8 tenants who have paid additional service charges, including charge codes, balances, and the application of payments to charges).  Defendants specifically object that the "charge codes" are trade secret information—notwithstanding the fact that Defendants have previously produced a document reflecting charge codes in this case.  *See* Jarvis. Dep. Exhibit 3.  The simplified ledger reports that Defendants have agreed to produce lack standardized charge codes, which are necessary for effective analysis of large datasets, and instead provide only variable text entries for charges and payments.

As to RFPs 30, 32, 25, and 38, Defendants' responses further state that the asserted trade secret information is "protected by a Non-Disclosure Agreement."  Given the relevance of the requested documents, it is of no moment that Defendants have chosen to enter into a software agreement containing a non-disclosure provision.  *See Pero v. Norfolk S. Ry.*, No. 3:14-cv-16-PLR-CCS, 2014 U.S. Dist. LEXIS 166121, at *8 (E.D. Tenn. Dec. 1, 2014) ("a party "cannot use its choice to enter into a software agreement as a shield against producing a relevant piece of discovery."); *I.S.E.L., Inc. v. Am. Synthol, Inc.*, No. 3:08-cv-00870-HLA-TEM, 2009 U.S. Dist. LEXIS 101126, at *10-12 (M.D. Fla. Oct. 15, 2009) (ordering disclosure of confidential information pursuant to protective order, notwithstanding an applicable NDA).

Moreover, Defendants have placed Plaintiffs at a distinct disadvantage in discussing the Non-Disclosure Agreement by dragging their feet on producing it.  *See* Defendants' Response to RFP 34 (indicating that Defendants will produce the Non-Disclosure Agreement).

Defendants must immediately produce the Non-Disclosure Agreement and specifically describe (1) the basis for any trade secret protection asserted in response to these requests,

Joseph Salazar                                        -4-                              July 28, 2020
Ryan Matthews

particularly those that do not cite the Non-Disclosure Agreement; (2) the reasons Defendants
believe disclosure in this case would be harmful to their protectable interests; and (3) why the
stipulated protective order is insufficient.

4.      **Defendants Should Produce the Requested Documents Related to Defendants'
        Training of its Employees.**

        Requests for Production 27, 28, 29, 30, and 31 request documents concerning or
reflecting Defendants' training of their employees regarding, respectively, the Section 8
program, leases and the leasing process, additional service agreements and additional service
charges, notices related to nonpayment of rent or other charges, and eviction actions based on
nonpayment of rent or other charges. Request for Production 32 requests documents concerning
or reflecting Defendants' policies, procedures, or practices related to the "pay order" applicable
to tenant payments.  Each of these topics are relevant to whether the additional service charges
legally qualify as rent, the issue on which liability in this case will turn.

        Defendants state that they have no responsive documents reflecting training provided
regarding the Section 8 program (RFP 27) or Additional Service charges (RFP 29).  This is
difficult to believe, and at least as to Additional Service charges, demonstrably incorrect.
Defendants have previously produced an excerpt from the "Yardi Voyager Training Manual"
providing instructions on the payment priority applicable to Additional Service charges (among
other charges).  *See* Jarvis Dep. Exhibit 3.  Please look again.

        Defendants assert boilerplate objections to RFPs 28, 29, 31, and 32 that the requests are
"overbroad" and "unduly burdensome," and in response to RFPs 30 and 32 objected that "there
is no reasonable need for the protected information requested."  Defendants' failure to
specifically state the grounds for the objection constitute waiver of the objection.  *See* Fed. R.
Civ. P. 34(b)(2)(B); *Ramirez v. Cty. of L.A.*, 231 F.R.D. 407, 409 (C.D. Cal. 2005) ("Most of
defendants' objections are too general to merit consideration and are therefore waived.");
*Cengage Learning, Inc. v. Davis Textbooks*, No. 2:15-cv-2401 TLN AC, 2016 U.S. Dist. LEXIS
126686, at *3 (E.D. Cal. Sep. 16, 2016) ("General or boilerplate objections, e.g., those based on
broad assertions of vagueness, overbreadth or burdensomeness, are improper and do not meet
this standard, especially when a party fails to submit any evidentiary declarations supporting
such objections.").

        In any event, the RFPs are neither overbroad nor should they be unduly burdensome.
Plaintiffs are entitled to training materials regarding company policy and practice on topics
relevant to whether the Additional Service charges qualify as rent—including the leasing process
(RFP 28), which is when tenants agree to the additional service charges as part of the lease;
additional service agreements and additional service charges themselves (RFP 29); notices and
eviction actions based on the non-payment of rent or other charges (RFP 30, 31), which are
relevant to determining whether the charges are mandatory or described as mandatory; and
Defendants' pay sequence policies treating additional service charges as rent (RFP 32).  *See* ECF
61 at 7-8, 9-11; ECF 92 at 15.

        Defendants represent that they are "willing to meet and confer with respect to the specific
trainings requested" regarding leases and the leasing process (RFP 28).  We look forward to

Joseph Salazar                                    -5-                            July 28, 2020
Ryan Matthews

doing that as soon as may be arranged.  Plaintiffs are at a disadvantage in that conversation as Defendants have not described the universe of training documents regarding leases and the leasing process.  Certainly any training materials discussing any of the following would be relevant and should be produced:  strategies for obtaining agreement to rent amounts, additional service charges, or lease renewals; instructions regarding communications with tenants regarding leases or the leasing process; the documents that are part of the lease; the times at which different relevant documents are provided and executed; requirements as a condition of leasing; or recording of lease information in databases maintained by defendants.

**5.      Defendants Should Produce the Requested Database Information and Data from their Yardi Management Database.**

Plaintiff Terry's Second Set of Requests for Production sought data and electronic records from Defendants' Yardi database regarding HAP contracts (RFP 36), leases (RFP 37), ledgers (RFP 38), and notices and eviction actions based on the non-payment of rent or other charges (RFPs 39, 40) for all of Defendants' Section 8 tenants who, since April 2005, have paid additional service charges.  As set out above, detailed, complete, and manipulable data encompassing each of these subjects is necessary for Plaintiffs to prosecute their case.  To facilitate the meet and confer and ultimate production of this data, Plaintiffs also requested the Non-Disclosure Agreement applicable to the Yardi database (RFP 34), and documents sufficient to describe the tables, fields and codes in that database relevant to each of the topics covered in RFPs 36 through 40 (RFP 35).

Defendants' trade secret objections to RFPs 35 and 38 are addressed above.  Their remaining objections to the RFPs related to the Yardi system are without basis.  Defendants' repeated boilerplate objection that the data requested is "overbroad" is inadequate and therefore waives the objection.  *See* Fed. R. Civ. P. 34(b)(2)(B); *Ramirez*, 231 F.R.D. at 409.

Defendants repeatedly cite the declaration of Mike Christiansen, submitted with the Joint Statement (ECF 118-4) to support their objection that the requests are unduly burdensome.  Mr. Christiansen's declaration contemplates a laborious manual process for compiling the information.  Plaintiffs' proposed method, however, is to extract the data from the database by means of an automated query, and Plaintiffs' expert explained that the burden on Defendants to complete this process would be minimal.  *See* ECF 118-2, Declaration of George Edwards, PhD.  If Defendants contend that it is not technically possible to extract the data as Plaintiffs propose, please explain in detail why it would not be possible.

As to RFPs 35, 36, 37 and 38, Defendants also raise the objection that the Court previously denied a motion to compel on this information.  The Court's order on the motion to compel, however, addressed the preciseness of the underlying requests for production, not the propriety of any of the specific categories of data sought.  ECF 122 at 2-3.  The Court thought that Plaintiffs' requests for production were not narrowly tailored, based on an analysis of the wording of the requests for production.  *Id.*  That ruling does not foreclose Plaintiffs from seeking the same information with more specific and tailored requests for production.  *See id.*

Joseph Salazar                                  -6-                                  July 28, 2020
Ryan Matthews

Plaintiffs address individualized issues related to each RFP below, and request Defendants to provide additional information regarding the data they are withholding on the basis of their objections:

**RFP 34** seeks the Non-Disclosure Agreement that Defendants assert is applicable to topics related to the Yardi database.  Defendants agreed to produce the non-disclosure agreement, *see* Defendants' Response to RFP 34, but they have failed to do so to date, even though they rely on that agreement for several of their objections.  Please produce it immediately.

**RFP 35** seeks "documents sufficient to describe the tables, fields and codes contained in Defendants' Yardi property management database related to leases, Housing Assistance Payment contracts, charges, payments balances, eviction notices, and eviction actions, including a schema of the database and any relevant data dictionaries or look-up tables. As explained above, this information is necessary for Plaintiffs to understand the scope and meaning of the data contained in the database.  As the Sedona Conference has explained, disclosure of information such as "relevant field names and values [and] the relational connections between data fields and tables" is a proper area for discovery because it may be "needed by the requesting party to obtain a basic requisite understanding of the structure, content and format of the data being produced," or sought to be produced.  15 Sedona Conf. J. 171.

**RFP 36** requests data related Housing Assistance Payment Contracts, also called HAP Contracts.  Defendants' compliance with their HAP Contracts, and the certifications therein, are directly at issue in this case.  Defendants object that this request is "duplicative of information Defendants have already agreed to produce," presumably in reference to Defendants' offer to produce the stripped-down ledger reports.  The sample ledger reports provided by Defendants show amounts charged to and paid by housing authorities, but they lack any other information about the HAP Contract, such as the agreed amount of "rent to owner" or a list of the utilities and appliances included in rent to owner.

Please clarify what data exists in the Yardi database regarding HAP Contracts and whether it is being withheld based on any of the objections stated by Defendants.

**RFP 37** requests dated related to leases.  Defendants again object that this request is "duplicative of information Defendants have already agreed to produce," which Plaintiffs again presume refers to Defendants' offer to produce the stripped-down ledger reports. While the ledger reports do show rent charges and charges made under the Additional Service charges, they do not show other important and basic information about the tenancy, including co-signors on the lease (which is necessary for an accurate analysis of charges owed and paid by the tenants), individual and group identifies for tenants on the lease (which is necessary to connect tables related to different topics), and the property and unit at issue (which is necessary to enable Plaintiffs to analyze property-level patterns in the data).

Joseph Salazar                                       -7-                              July 28, 2020
Ryan Matthews

Please clarify what data exists in the Yardi database regarding leases and whether it is being withheld based on any of the objections stated by Defendants.

**RFP 38** requests data related to ledgers, including "charge codes, balances, and the application of payments to charges." Defendants do not object to the request for balances. Defendants' objections related to the charge codes are addressed in Section 3 above. Defendants also object to the request for data regarding the application of payments to charges, on the entirely illogical basis that "[s]uch information is not related to resident ledgers." It is self-evident that the way in which payments are applied to outstanding charges is information that is "related to resident ledgers" showing those charges and payments. Additionally, because one of Plaintiffs' contentions is that Defendants' treat additional service charges equivalently to rent in the way they apply payments, the request is plainly within the scope of necessary and reasonable discovery in this case.

Please clarify whether Defendants are withholding data on the basis of their objections to the request for data reflecting the application of payments to charges, and what other data "related to resident ledgers" exists and whether Defendants are withholding that data on the basis of any of this objections.

**RFP 40** seeks "all data or electronic records contained in Defendants' Yardi property management database related to eviction or unlawful detainer actions based on the non-payment of rent or any other charge for all of Defendants' Section 8 tenants who, since April 2005, have paid Additional Service Charges." *See* Plaintiff Terry's Second Set of Requests for Production, RFP 40. Defendants failed to respond to this RFP. Instead, Defendants provide objections twice to RFP 41, with one of them listed as RFP 40. Therefore, Defendants have waived their objections to RFP 40. *See, e.g.*, *Smith v. Sergent*, No. 2:15-cv-0979 GEB DB P, 2017 U.S. Dist. LEXIS 38261, at *3-4 (E.D. Cal. Mar. 15, 2017) ("'It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.'") (citations omitted).

**RFP 41** requests data related to communications with Defendants' Section 8 tenants who have paid additional service charges. Defendants object that it is overbroad because it requests communications over 15 years with thousands of tenants, and because there is no limitation as to the subject matter of those communications. First, as to the scope in terms of years and tenants, each of those tenants was subjected to the practice challenged in this suit within the limitations period for the False Claims Act claim—so the RFP is thus matched to the scope of the violations.

Second, regarding the lack of subject matter limitation, the request seeks all communications in order to *reduce the burden on Defendants* by allowing all the communications data to be pulled at once without necessitating a complicated search or time-consuming review. That being said, Plaintiffs are amenable to working with Defendants to develop a search protocol to identify communications that are likely to be relevant and probative on the facts at issue in this action, such as communications regarding the additional service charges, Section 8 requirements, or notices or eviction actions based on non-payment of rent or other charges. To enable that discussion, please provide information about how these

Joseph Salazar                                        -8-                                  July 28, 2020
Ryan Matthews

communications are stored in the Yardi database, including what fields are associated with each entry, whether there is a search function, and whether there are standardized codes reflecting different topics.

**6.     Defendants Should Produce the Communications Sought by RFPs 42 through 52 Without Delay**

Requests for production 42 through 52 request a variety of communications relevant to the factual contentions in this case.

**RFP 42** requests communications between Defendants' employees or personnel and local housing authorities at any time since Defendants began using Additional Service Agreements.  Plaintiffs believe that these communications are likely to contain important evidence including (1) the documents and information submitted to the housing authorities, and the extent to which the included information about the additional service charges and Defendants' policies regarding the additional service charges; (2) questions and responses from the housing authorities regarding the same; (3) communications with housing authorities about notices and eviction actions based on the nonpayment of rent and other charges as applied to Section 8 tenants who are required to pay additional service charges.

Defendants object on the ground of overbreadth because the request does not particularize the subject matter of the communications. We framed it that way in order to reduce the reviewing burden on Defendants—particularly with the email search in mind, as Defendants should be able to quickly and easily identify communications to and from email addresses associated with the housing authorities.  However, if Defendants prefer to review that body of emails to narrow their production, we are happy to narrow our RFP.  We will provide a proposal after a conversation with you to understand Defendants' preferences here.

**RFP 43** requests communications with federal officials or employees related to Defendants' practice of charging additional service charges to Section 8 tenants. Defendants agree to produce non-privileged materials.  However, Defendants have not produced any documents.  Please provide an update on the status and anticipated timeline for this production.

**RFP 44** requests documents "concerning or reflecting communications involving any of Defendants' corporate employees related to the leasing or lease renewal process for Section 8 tenants."  Defendants' objection that the request is vague and ambiguous as to the phrase "the leasing or lease renewal process" is without merit.  Defendants contend that "[a]ny of Defendants' conduct is inherently related to the leasing process."  This position contravenes the principal that parties "should exercise reason and common sense to attribute ordinary definitions to terms and phrases."  *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 310 (D. Kan. 1996).  The leasing process refers to the process of working with a prospective tenant to enter into a lease—in this case, a Section 8 tenant.  That process encompasses communications with the tenant, with the local housing authority, all steps that Wasatch takes to determine rent, additional service charges, and to complete required paperwork for Section 8 tenants (requests for tenancy

Joseph Salazar                                    -9-                              July 28, 2020
Ryan Matthews

approval, HAP contracts, etc.).  Similarly, the lease renewal process for Section 8 tenants
refers to the process of working with a current tenant to renew their lease, and would
include the process of adjusting rent levels, seeking approval from the housing authority
for rent increases, and any communications with housing authorities about additional
service charges agreed to as part of the lease renewal.  RFP 44, then, seeks
communications involving corporate employees regarding these processes.

**Email search.** Defendants state in response to RFPs 44 through 52 in relevant part, that
the communications "are likely to be encompassed by the e-mail production in response
to Plaintiffs' prior requests for production."  *See* Defendants' Responses to RFPs 44
through 52. We propounded these requests in response to Defendants' objections to the
prior RFPs as overbroad, as reflected in my June 25, 2020 letter, so from here on out it
would make more sense to discuss the email search (and production of other non-email
communications) in the context of Terry's RFPs 42 through 52.   That being said, as
Defendants' responses recognize, we have been communicating about this project since
early this year.  We provided you a revised email search protocol on July 6th, and you
indicated on July 8th that you planned to run the proposed searches to determine if they
yielded a manageable body of emails.  Nearly three weeks have now passed.  Thus,
Defendants should be in a position to provide a meaningful update on the search, review,
and timeline for production.

Please note that in addition to responsive emails, we are also seeking other types of
documents reflecting or concerning communications, such as memoranda, meeting notes, hard-
copy letters, or faxes.

Sincerely,

Anne P. Bellows

APB/kbm

cc:    Andrew Wolff
       Jesse Newmark
       Micaela Alvarez
       Laura Ho
       Beth Holtzman

787393.4

# EXHIBIT 15

# G B D H

## Goldstein, Borgen, Dardarian & Ho

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

August 18, 2020

**VIA EMAIL ONLY**

Joseph Salazar                                    Joe.Salazar@lewisbrisbois.com
Ryan Matthews                               Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

    Re:    Training Documents Responsive to Plaintiff Denika Terry's Second Set of RFPs

Dear Ryan:

    This letter follows up on our conversation last Tuesday, August 11, 2020, regarding training documents listed on the Excel spreadsheet you provided to me by email on August 6, 2020.

    Let me first dispense with a couple preliminary matters. First, we agree with your proposal to produce a placeholder document with the Bates stamp and the Excel spreadsheet in native format. I suggest you title the Excel file with the Bates number. Let me know if you would like us to make that change, or if you will be reproducing the Excel sheet. Second, you indicated that you would ask your client if this is the full document, or if the blank fields (and in some cases, blank sheets) reflect information that has been removed. Do you have an answer on this issue?

    Below, going tab by tab from the Excel spreadsheet, we list and briefly discuss the documents that are or may be responsive to our requests for production. We have bolded those that are plainly responsive and indicated the relevant RFP. For the other ones that we have listed, we request that you review the indicated documents and produce if they are responsive to any of our RFPs, in particular RFPs 27 through 33.

Budgets Purchasing & Contracts
BP101, BP101.01, and BP101.02 address signing contracts and authority to bind the company. Please produce if responsive. In particular, we believe that the documents may be responsive if the polices or procedures discussed therein apply to HAP Contracts and other Section 8 forms and documents, and would therefore be responsive to RFP 27.

Bond and Tax Credit
**BTH301.01, Facts About Renter's Insurance (RFP 29)**
**BTH301.02, Insurance Notice and Agreement (RFP 29)**
**BTH401.01, Rent Adjustment Notice (RFP 28)**

Joseph Salazar                                          -2-                              August 18, 2020
Ryan Matthews

Please also review all remaining documents on this tab of the spreadsheet and produce if responsive to our RFPs. We are aware that tax credit properties or other properties that have benefited from public funding may be subject to a requirement to accept Section 8 tenants, and therefore we believe that materials specific to tax credit and bond properties may be likely to include a discussion of aspects of the Section 8 program.

Capital Improvements
CI103 addresses appliance purchasing. Please produce if it is responsive, *e.g.*, if it concerns appliances for which Defendants levy additional service charges, including washers and dryers, internet or cable systems, or security systems.

Community Manager
Please review all documents listed in this tab and produce if they are responsive to our RFPs. For example, documents related to budgets or financial matters (CM101, CM102, or CM105) may be responsive if they mention additional service charges.

**Evictions/Collections/Legal**
**Please produce all documents listed on this tab (RFPs 30, 31, 33).** We flagged these documents for you on our call last week.

**Financial Manager**
**Please produce all documents listed on this tab (RFPs 30, 31, 33).** We flagged these documents for you on our call last week.

Human Resources
HR700 through HR 707 address various aspects of the bonus program. Please produce if responsive. We are aware from our review of the tenant files that Wasatch has provided bonuses for aspects of a lease, including the rent level and whether the tenant has enrolled in any new additional services. Therefore, we believe these are likely to be responsive to RFPs 28 and 29.

Lease Documents & Other Residential Notices
**LD101 through LD102, application documents (RFP 28)**
**LD300 through LD302.01 (*i.e.*, lines 23-54 on the spreadsheet), leases (RFP 28)**
**LD303, LD 303.01, Additional Services Agreement (RFP 29)**
**LD304 through LD313, LD317-318, addenda (RFP 28)**
**LD344.04, Pet Registration (RFP 29)**
**LD344.05, Vehicle Registration (RFP 29)**
**LD344.07, Facts about rental insurance (RFP 29)**
**LD344.08, Insurance Notice and Agreement (RFP 29)**
LD500, LD501, LD501.01, LD501.02 address "resident information" and updating that resident information. Please review and produce if responsive.

Month End Review
Please review all documents in this tab and produce if responsive.

Joseph Salazar                                    -3-                         August 18, 2020
Ryan Matthews

<u>Property Information</u>
Please review all documents in this tab and produce if responsive.
.
<u>Risk Management</u>
**RM201 through RM211, related to renter's insurance (RFP 29)**

<u>Residential Services</u>
Please review all documents listed on this tab, which appear to be about leases and lease renewals, and produce if responsive (*see, e.g.*, RFP 28).

**<u>Service Income</u>**
**Please produce all documents listed on this tab (RFPs 28, 29).** We flagged these documents on our call last week.

<u>Sales and Marketing</u>
**SM101 through SM103 (lines 12-24 on the spreadsheet) re: leasing duties (RFP 28)**
**SM203 through SM209 (lines 33-40) re: the leasing process (RFP 28)**
**SM305.01, SM305.01.UT, SM305.01.CO, rental application (RFP 28)**
**SM210, SM2010.01, move-in cost sheet (RFPs 28, 29)**
**SM8050, re: short term leases (RFPs 29)**
Please also review the following documents and produce if they are responsive, for example, because they mention additional service items or charges  SM401, SM401.01, SM401.02, SM402 and associated documents, SM600, SM601, SM 602, SM 603, SM604, SM 607, SM609, SM620, SM700, SM 700.01, SM800.

<u>Training and development</u>
Please review all documents in this tab and produce if responsive.

<u>Yardi Enterprise System</u>
Please review all documents in this tab and produce if responsive.

<u>Yardi Voyager System</u>
Please review all documents in this tab and produce if responsive.

Plaintiffs are looking forward to discussing this is issue and any questions you may have on our call tomorrow, and thereafter to receiving the responsive documents.

Sincerely,

Anne P. Bellows

788876.1

Joseph Salazar                                   -4-                          August 18, 2020
Ryan Matthews

cc:     Andrew Wolff
        Jesse Newmark
        Micaela Alvarez
        Laura Ho
        Beth Holtzman

788876.1

# EXHIBIT 16

**G B D H**

Goldstein, Borgen,
Dardarian & Ho

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

May 24, 2021

<u>**VIA EMAIL ONLY**</u>

Joseph Salazar                                    Joe.Salazar@lewisbrisbois.com
Ryan Matthews                            Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

Re:     Defendants' Insufficient Production in Response to Terry RFPs Set Two

Dear Ryan:

I have reviewed Defendants' production of training materials made on March 30, 2021, which I had anticipated would supplement the production previously made on September 3, 2020.  Defendants' production remains incomplete, conspicuously omitting documents that are plainly responsive to Plaintiff Denika Terry's Requests for Production Set Two.[1]

On August 6, 2020, you provided Plaintiffs with a spreadsheet that identified a host of "How-To" training documents prepared and maintained by Wasatch on a range of topics ("How-To Spreadsheet").  On August 18, 2020, I wrote back, identifying from the How-To Spreadsheet documents that were responsive to Plaintiffs' requests, or which Plaintiffs requested Defendants to review to determine if they were responsive (for example, if they addressed or dealt with additional service agreements or charges (RFP 29)).  That letter is attached for your reference as **Exhibit A.**  Plaintiffs reiterate their request that Defendants review and produce if responsive all of the documents addressed in that letter.

On September 3, 2020, Defendants made what Plaintiffs understood to be a partial production.  Plaintiffs immediately notified that the production was not compliant with the format Plaintiffs had requested for ESI.  Defendants agreed to remedy the issue, and they eventually did so (after addressing other document productions) on March 30, 2021.  Unfortunately, while Defendants remedied the formatting issue, Defendants did not produce the remainder of the documents that Plaintiffs had identified in the August 18, 2020 letter.

In particular, I would like to draw your attention to the documents listed in the sections below, which appear to be responsive to Plaintiffs' requests for production.  Please produce the

---

[1] While Defendants did assert objections to the RFPs at issue, those are without merit for the reasons outline in Plaintiffs' letter dated July 28, 2020.  Defendants have not indicated that they are withholding any documents based on those objections.  If you are withholding documents based on those objections, please clarify immediately what documents you are withholding and why.

Joseph Salazar                                    -2-                          May 24, 2021
Ryan Matthews

documents, including all versions of the documents in effect since April 2005, without further delay and in any event no later than June 2, 2021. For any document identified below that Defendants do not produce, by June 2, 2021 please provide an explanation of why they were withheld so that we may determine if we have a dispute.

<u>Evictions Collections and Legal</u>

Plaintiff Denika Terry's Request for Production Nos. 30, 31, and 33 request training documents related to "notices to tenants based on the non-payment of rent or any other charges," "eviction actions or unlawful detainer actions based on the non-payment of rent or any other charge," and "collecting past due Additional Service Charges." Despite their obvious relevance to these requests, Defendants have not produced a single training document identified in the tab of the How-To Spreadsheet entitled "Evictions, Collections and Legal." Most if not all of the documents on this sheet should be produced as responsive to RFP Nos. 30, 31, or 33. At a minimum, the following documents appear to be directly responsive to those RFPs:

- EC101.03 – California Three-Day Notice to Perform Financial Covenant or Quit
- EC101.03.WA– Washington 14-Day Pay Rent or Vacate Notice
- EC101.04.WA – Washington Invoice of Payment for Non-Rent
- EC102.01 – 1st Small Balance Notice-F
- EC102.02 – 2nd Small Balance Notice-F
- EC102.03 – Notice of Credit Balance-F
- EC102.05 – Late Payers Notice of Credit Reporting-F
- EC103, EC103.01.AZ, EC103.01.CA, EC103.01.NV, EC103.01.UT – Partial Payment & Non-Waiver-HT (and state specific versions)
- EC113 – Agreement to Stay Eviction Process-HT
- EC114 – Demand Letter for Collections
- EC100 – Monthly Statement of Rental Account
- ECF115.01.CA – California 3-Day Notice to Perform Covenant of Lease or Quit
- EC115.01.WA – Washington 10-Day Notice to Comply with Lease or Quit Premises
- EC117.01.WA, EC117.02 – Washington 20-Day Notice to Terminate Tenancy (Conventional)-F
- EC118.01.WA, EC118.02.WA – Washington 10-Day Notice to Comply with lease or Quit Premises (Conventional)-F

<u>Financial Manager</u>

Similarly, the documents under the "Financial Manager" tab all appear to be responsive to RFP 33, which requests documents related to Defendants' policies and practices regarding collecting past-due additional service charges, and should be produced:

- FM201 – Completing the Delinquency Tracker-VQS
- FM201.01.R – Delinquency Tracker-Reg Size-F
- FM201.01.L – Delinquency Tracker-Large Size-F
- FM301 – In House Collections-Red Files-HT

Joseph Salazar                                     -3-                          May 24, 2021
Ryan Matthews

- FM301.01 – Collections Payment Agreement-F
- FM301.02 – Collections Bonus Sheet-F
- FM302 – 3rd Party Collections-Red Files
- FM350 – Past Resident Collections w/Revenue Recovery (R2)
- FM302 – Past Resident Collections Process-HT

Leases and Leasing Process

The following documents from the "Lease Documents & Other Notices" tab, the "Residential Services" tab, and the "Sales & Marketing" tab are responsive to Request for Production 28, which seeks training documents related to "leases and the leasing process." Additionally, several of the following documents also relate to additional service charges, and are therefore responsive to RFP 29, which seeks training documents regarding "Additional Service Agreements" and "Additional Service Charges."

- LD101.02 – File Cover Commission Sheet
- LD101.03 – Rental Criteria
- LD101.05 – Move In Cost Sheet
- LD301.01 – Quality Move In Checklist
- LD302.01 series – Move in and renewal leases
- LD303.01 – Additional Service Agreement
- LD344.07 – Facts about Renters' Insurance
- LD344.08 – Insurance Notice and Agreement
- RS102 – Resident Renewal Process-HT
- RS102 – Lease Renewal Program-HT
- RS104 – Printing Renewal Program Notices-VQS
- RS104.01 – Resident Values 120-Day Notice-F
- RS104.02 – Resident Values 90-Day Notice-F
- RS104.03 – Resident Values Tune Up Worksheet-F
- RS104.04 – Renewal Notice w/Rubs-F
- RS104.05 – Renewal Notice Non-Rubs-F
- RS104.06 – MTM Notice-F
- RS104.01 – 90 Day—Just Checking in With You
- RS104.02 – 60 Day—Simplify Your Life
- RS104.03 – Personal Contact-Renewal Party
- RS104.04 – 30 Day—Renewal Notification
- RS104.05 – MTM-Renewal Follow Up Letter
- SM101 – Put Together a Leasing Notebook
- SM102 – Leasing Duties-HT
- SM103 – Leasing Consultant Do's & Don't's-HT
- SM205 – Overcoming objections
- SM206 – Closing the Sale-HT
- SM207 – Process Applicants

Joseph Salazar                                    -4-                              May 24, 2021
Ryan Matthews

- SM210 – Move In Cost Sheet-VQS
- SM210.01 – Move In Cost Sheet-F

<u>Month End Review</u>

Plaintiffs also previously requested that Defendants review and provide the following documents listed in the "Month End Review" (among others) if they touch on additional service charges, and we reiterate that request today:

- ME233 – Completing Month End Workbook-VQS
- ME233.01 – Month End Review Workbook-F
- ME300 – Month End File Bonusing_VQS
- YVS600 – Month End Review-VQS
- YVS601 – Month End Review VQS
- YVS603 – Negative Charge Register Audit-VQS
- YVS603.01 – Negative Charge Register Report-VQS
- YVS604 – Lease Charges Audit-VQS
- YVS604.01 – Lease Charges Report-VQS
- YVS608 – Bad Debt Write Off Function-VQS
- YVS608.01 – Aged Receivable Past Owing Report-VQS

<u>Service Income</u>

Defendants have produced several documents from the Service Income tab, but they have failed to produce two other documents that are listed in the How-To Worksheet and relate to additional services provided under the Additional Services Agreements, and therefore are responsive to RFP 29.

- Renter's Insurance-HT
- Security Alarm Service-HT

<u>Yardi Training Documents</u>

The August 18, 2020 letter asked Defendants to review all documents identified on the "yardi" tabs of the How-To Worksheet and to produce if responsive. In particular, Plaintiffs reiterate that request as to the documents identified below, which appear to be responsive to RFP 32 (documents regarding Defendants' policies, procedures or practices related to the "Pay Order" applicable to payments, including documents related to Exhibit 3 to the Janae Jarvis Deposition), RFP 29 (training documents regarding Additional Services Agreements and additional service charges), RFP 30 (training documents regarding notices to tenants based on nonpayment of rent or any other charge).

- YES106 – Post Manual Changes in Enterprise-VQS (RFP 32)
- YES106 – Post Manual Changes in Enterprise-HT (RFP 32)
- YES107 – Enter Payments in Enterprise-HT (RFP 32)

Joseph Salazar                                    -5-                                    May 24, 2021
Ryan Matthews

- YES108 – Enter Payments in Enterprise-VQS (RFP32)
- YES116 – Enter Lease Charges in Enterprise-VQS (RFP 29)
- YES202 – Printing Pay or Quit Notices in Enterprise-VQS (RFP 30)
- YES203 – Printing Small Balance Notices in Enterprise-VQS (RFP30)
- YVS206 – Charges and Adjustments-Visual Quick Step (RFP 32)

In particular, Jarvis Exhibit 3 contains a reference to certain exceptions to the Pay Sequence, but Defendants have not provided any documents to explain what those exceptions are, or what payment sequence would apply in those circumstances. If documents explaining those payments are not listed in the How-To Spreadsheet, please identify for Plaintiffs where such training documents are maintained and produce them pursuant to RFP 32. (Ms. Jarvis testified that Exhibit 3 itself was excerpted from a manual regarding Yardi Voyager. Jarvis Dep. 147:23-148:1.)

<u>Other</u>

Plaintiffs also requested the following documents in our August 18, 2020 letter, and we have neither received the documents nor any indication of why they have not been produced.

- BP101, BP101.01, and BP101.02 in the Budgets Purchasing & Contracts tab address signing contracts and authority to bind the company. Please produce if responsive. In particular, we believe that the documents may be responsive if the polices or procedures discussed therein apply to HAP Contracts and other Section 8 forms and documents, and would therefore be responsive to RFP 27.

- From the Bond and Tax Credit tab, BTH301.01 (Facts About Renter's Insurance) and BTH301.02 (Insurance Notice and Agreement) address one of the additional services provided via the Additional Services Agreement and therefore should be produced pursuant to RFP 29.

- Also from the Bond and Tax Credit tab, BT401.01 ("Rent Adjustment Notice") may be responsive to RFP 27 if it addresses Section 8 tenancies in any way. If it does, please produce.

We look forward to discussing this issue with you on our regularly scheduled meet and confer call on Wednesday and to receiving the outstanding documents shortly thereafter.

Sincerely,

Anne P. Bellows

Joseph Salazar                                    -6-                              May 24, 2021
Ryan Matthews

cc:      Andrew Wolff
         Brenna Wood-Fitzpatrick
         Jesse Newmark
         Micaela Alvarez
         Laura Ho
         Kristen Burzynski

# Exhibit A



Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

August 18, 2020

**VIA EMAIL ONLY**

Joseph Salazar                                    Joe.Salazar@lewisbrisbois.com
Ryan Matthews                              Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

     Re:    Training Documents Responsive to Plaintiff Denika Terry's Second Set of RFPs

Dear Ryan:

    This letter follows up on our conversation last Tuesday, August 11, 2020, regarding training documents listed on the Excel spreadsheet you provided to me by email on August 6, 2020.

    Let me first dispense with a couple preliminary matters. First, we agree with your proposal to produce a placeholder document with the Bates stamp and the Excel spreadsheet in native format. I suggest you title the Excel file with the Bates number. Let me know if you would like us to make that change, or if you will be reproducing the Excel sheet. Second, you indicated that you would ask your client if this is the full document, or if the blank fields (and in some cases, blank sheets) reflect information that has been removed. Do you have an answer on this issue?

    Below, going tab by tab from the Excel spreadsheet, we list and briefly discuss the documents that are or may be responsive to our requests for production. We have bolded those that are plainly responsive and indicated the relevant RFP. For the other ones that we have listed, we request that you review the indicated documents and produce if they are responsive to any of our RFPs, in particular RFPs 27 through 33.

Budgets Purchasing & Contracts
BP101, BP101.01, and BP101.02 address signing contracts and authority to bind the company. Please produce if responsive. In particular, we believe that the documents may be responsive if the polices or procedures discussed therein apply to HAP Contracts and other Section 8 forms and documents, and would therefore be responsive to RFP 27.

Bond and Tax Credit
**BTH301.01, Facts About Renter's Insurance (RFP 29)**
**BTH301.02, Insurance Notice and Agreement (RFP 29)**
**BTH401.01, Rent Adjustment Notice (RFP 28)**

Joseph Salazar                                      -2-                        August 18, 2020
Ryan Matthews

Please also review all remaining documents on this tab of the spreadsheet and produce if
responsive to our RFPs. We are aware that tax credit properties or other properties that
have benefited from public funding may be subject to a requirement to accept Section 8
tenants, and therefore we believe that materials specific to tax credit and bond properties
may be likely to include a discussion of aspects of the Section 8 program.

Capital Improvements
CI103 addresses appliance purchasing. Please produce if it is responsive, *e.g.*, if it
concerns appliances for which Defendants levy additional service charges, including
washers and dryers, internet or cable systems, or security systems.

Community Manager
Please review all documents listed in this tab and produce if they are responsive to our
RFPs. For example, documents related to budgets or financial matters (CM101, CM102,
or CM105) may be responsive if they mention additional service charges.

**Evictions/Collections/Legal**
**Please produce all documents listed on this tab (RFPs 30, 31, 33).** We flagged these
documents for you on our call last week.

**Financial Manager**
**Please produce all documents listed on this tab (RFPs 30, 31, 33).** We flagged these
documents for you on our call last week.

Human Resources
HR700 through HR 707 address various aspects of the bonus program. Please produce if
responsive. We are aware from our review of the tenant files that Wasatch has provided
bonuses for aspects of a lease, including the rent level and whether the tenant has enrolled
in any new additional services. Therefore, we believe these are likely to be responsive to
RFPs 28 and 29.

Lease Documents & Other Residential Notices
**LD101 through LD102, application documents (RFP 28)**
**LD300 through LD302.01 (*i.e.*, lines 23-54 on the spreadsheet), leases (RFP 28)**
**LD303, LD 303.01, Additional Services Agreement (RFP 29)**
**LD304 through LD313, LD317-318, addenda (RFP 28)**
**LD344.04, Pet Registration (RFP 29)**
**LD344.05, Vehicle Registration (RFP 29)**
**LD344.07, Facts about rental insurance (RFP 29)**
**LD344.08, Insurance Notice and Agreement (RFP 29)**
LD500, LD501, LD501.01, LD501.02 address "resident information" and updating that
resident information. Please review and produce if responsive.

Month End Review
Please review all documents in this tab and produce if responsive.

788876.1

Joseph Salazar                                     -3-                          August 18, 2020
Ryan Matthews

<u>Property Information</u>
Please review all documents in this tab and produce if responsive.
.
<u>Risk Management</u>
**RM201 through RM211, related to renter's insurance (RFP 29)**

<u>Residential Services</u>
Please review all documents listed on this tab, which appear to be about leases and lease renewals, and produce if responsive (*see, e.g.*, RFP 28).

**<u>Service Income</u>**
**Please produce all documents listed on this tab (RFPs 28, 29).**  We flagged these documents on our call last week.

<u>Sales and Marketing</u>
**SM101 through SM103 (lines 12-24 on the spreadsheet) re: leasing duties (RFP 28)**
**SM203 through SM209 (lines 33-40) re: the leasing process (RFP 28)**
**SM305.01, SM305.01.UT, SM305.01.CO, rental application (RFP 28)**
**SM210, SM2010.01, move-in cost sheet (RFPs 28, 29)**
**SM8050, re: short term leases (RFPs 29)**
Please also review the following documents and produce if they are responsive, for example, because they mention additional service items or charges  SM401, SM401.01, SM401.02, SM402 and associated documents, SM600, SM601, SM 602, SM 603, SM604, SM 607, SM609, SM620, SM700, SM 700.01, SM800.

<u>Training and development</u>
Please review all documents in this tab and produce if responsive.

<u>Yardi Enterprise System</u>
Please review all documents in this tab and produce if responsive.

<u>Yardi Voyager System</u>
Please review all documents in this tab and produce if responsive.

Plaintiffs are looking forward to discussing this is issue and any questions you may have on our call tomorrow, and thereafter to receiving the responsive documents.

Sincerely,

Anne P. Bellows

788876.1

Joseph Salazar                            -4-                        August 18, 2020
Ryan Matthews

cc:     Andrew Wolff
        Jesse Newmark
        Micaela Alvarez
        Laura Ho
        Beth Holtzman

# EXHIBIT 17

**Anne Bellows**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Friday, June 25, 2021 3:58 PM |
| **To:** | Matthews, Ryan |
| **Cc:** | Salazar, Joe; Laura Ho; Kristen Burzynski; jessenewmark; andrew@awolfflaw.com; Brenna Wood Fitzpatrick |
| **Subject:** | 6/23/21 and 6/24/21 meet and confer calls |

Hi Ryan,

This email summarizes and follows up on our meet and confer calls this week on June 23 and June 24.  Please let me know immediately if I have misstated anything.

***Stipulation to amend the complaint.***  After reviewing Plaintiffs' June 22nd meet and confer letter, Defendants responded as follows.  First, Defendants agree to stipulate to substitute the entities discussed in the June 22nd meet and confer letter for the Doe defendants.  Second, Defendants disagree that the pleadings in the complaint suffice for Plaintiffs to conduct discovery into and seek to prove that the entities are alter egos. Defendants are willing to stipulate for Plaintiffs to amend their complaint to add alter ego liability on the condition that Plaintiffs agree to bifurcate the proceedings to address alter ego liability, agency liability, and related issues only after a determination has been reached on whether Wasatch Property Managements' practices challenged by the lawsuit are unlawful.

After consideration, Plaintiffs believe that the parties will be able to reach a mutually agreeable stipulation to allow amendment of the complaint and bifurcating the proceedings along the lines that Defendants propose.  We will draft a proposed stipulation addressing these matters and provide it to you, along with our amended complaint, by next Wednesday.

On our meet and confer call, we began discussing the possibility of including an extension of the discovery deadlines in the stipulation.  Having considered this issue further, Plaintiffs propose that we stipulate to stay all deadlines until the new defendants are in the case and we can work out a mutually agreeable schedule with everyone at the table.

***Rule 30(b)(6) Designations.***  You said that you would provide Defendants' Rule 30(b)(6) designations later in the afternoon on June 23.  We still have not received those. You did share that the topics would be split between Jarom Johnson, Shawn Fetter, and Janae Jarvis. We asked to receive those designations as soon as possible, in particular so that we could work out how the designation may impact the Jarom Johnson's upcoming deposition.

***Other depositions.***  Defendants agreed that we are free to contact Katie Dao, who no longer works for Defendants.  We also agreed on July 19 as the preferred date for Duane Wiles' deposition, and you agreed to confirm that as soon as possible.  Please provide that confirmation.  I proposed targeting early August for Brad Mishler's deposition.  We will also need to determine dates for the Rule 30(b)(6) depositions, which we'll be in a better position to do once we have the designations.

***Training documents.***  Defendants are still working on gathering all of the documents requested by Plaintiffs.  By next Wednesday, Defendants will produce further responsive documents (several have already been identified) and explain in writing why any others were withheld.  You reported that some of the documents listed on the sheet were never created, and that Defendants intend to amend the RFP response to clarify the record.   We asked that the production not be delayed beyond the timeline currently contemplated, as a significant amount of time has already passed on this issue.

***Terry RFAs 5 and 6.*** You said that you are still waiting on client approval to provide the amended responses to Terry RFAs 5 and 6. We requested that be completed as soon as possible.

***Email production.*** You said that we could expect the email production for the last search to be produced imminently, and indeed we received it earlier today. Thank you.

***Update to tenant files from Yardi system.*** Defendants will be following up with GelbGroup to determine if GelbGroup can pull tenant documents from Yardi with a simple query, and to produce the information in a manner that is organized by tenant as requested by Plaintiffs. We discussed that Defendants are obligated to update the tenant files due to the Court's order on the motion to compel. Plaintiffs are considering whether they might be able to do with a smaller set, and how that smaller set might be identified.

***Yardi data.*** You are still waiting on approval to produce the one spreadsheet that you reviewed. That spreadsheet listed every tenant, their move-in and move-out dates, their lease terms, the amount of rent they paid, the ASA charges they were signed up for, the ASA charges they paid. Plaintiffs request that sheet be produced as soon as possible. We do not understand any possible justification for the delay.

Additionally, as you have seen, I emailed Leslie, our new joint expert, to inform her of the data that is still outstanding and to request a call.

I know you are also frustrated by the delays here, but I just want to express that we are extremely anxious to get the data produced so that we can determine whether any adjustments need to be made (as sometimes happens with complex data productions) and so that we may begin analyzing it.

***RFAs re: Authenticity.*** Plaintiffs pointed out that some of the RFAs re: authenticity covered portions of the email production, and Defendants appear to have mistakenly believed that they were part of the tenant files. Defendants said they would provide amended responses to the relevant Huskey RFAs, which are RFAs 60, 61, 62, and 64.

***Privilege log.*** Defendants agreed that they need to produce any correspondence with HUD and DOJ. They also agreed to revisit the other documents highlighted by Plaintiffs' letter and to produce if, as it seems, they are not privileged.

Thanks,
Anne


Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA 94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved! Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above. If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message. If you have received this E-mail in error, please notify the sender as soon as possible. In addition, please delete the erroneously received message from any device/media where the message is stored.

# EXHIBIT 18

```
 1                    UNITED STATES DISTRICT COURT
 2                   EASTERN DISTRICT OF CALIFORNIA
 3                        SACRAMENTO DIVISION
 4     UNITED STATES OF AMERICA, ex  )
       rel. DENIKA TERRY, ROY HUSKEY )
 5     III, and TAMERA LIVINGSTON,   )
       and each of them for          )   Case No. 2:15-CV-00799-KJM-DB
 6     themselves individually, and  )
       for all other persons         )
 7     similarly situated and on     )
       behalf of the UNITED STATES   ) REMOTE VIDEOTAPED DEPOSITION OF
 8     OF AMERICA,                    )
                                      )              JANAE JARVIS
 9                    Plaintiffs,     )
                                      )          September 10, 2021
10     vs.                           )
                                      )
11     WASATCH ADVANTAGE GROUP, LLC, )
       WASATCH PROPERTY MANAGEMENT,  )
12     INC.; WASATCH POOL HOLDINGS,  )
       LLC, CHESAPEAKE APARTMENT     )
13     HOLDINGS, LLC, LOGAN PARK     )
       APARTMENTS, LLC, LOGAN PARK   )
14     APARTMENTS, LP, ASPEN PARK    )
       HOLDINGS, LLC, BELLWOOD       )
15     JERRON HOLDINGS, BELLWOOD     )
       HERRON APARTMENTS, BENT TREE  )
16     APARTMENTS, LLC, CALIFORNIA   )
       PLACE APARTMENTS, LLC CAMELOT )
17     LAKES HOLDINGS, LLC CANYON,   )
       CLUB HOLDINGS, COURTYARD AT   )
18     CENTRAL PARK APARTMENTS, LLC, )
       CREEKSIDE HOLDINGS, LTD,      )
19     HAYWARD SENIOR APARTMENTS,    )
       LP, Heritage Park APARTMENTS, )
20     LP, OAK VALLEY APARTMENTS,    )
       LP, OAK VALLEY HOLDINGS, LP,  )
21     PEPPERTREE APARTMENT          )
       HOLDINGS, LP., PIEDMONT       )
22     APARTMENTS, LP, POINT NATOMAS )
       APARTMENTS, LLC, POINT        )
23     NATOMAS APARTMENTS, LP, RIVER )
       OAKS HOLDINGS, LLC, SHADOW    )
24     WAY APARTMENTS, LP, SPRING    )
       VILLA APARTMENTS, LP, SUN     )
25     VALLEY HOLDINGS, LTD, VILLAGE )
```

Page 1

```
 1       GROVE APARTMENTS, LP, WASATCH )

 2     QUAIL RUN GP, LLC, WASATCH      )

 3      PREMIER PROPERTIES, LLC,       )

 4     WASATCH POOL HOLDINGS III,      )

 5      LLC, and DOES 1-4,             )

 6                                     )

 7                    Defendants.  ) Reported by

 8     _____) Amy E. Simmons, CSR, RPR, CRR, CRC

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Veritext Legal Solutions
866 299-5127

```
 1                REMOTE VIDEOTAPED DEPOSITION OF JANAE JARVIS

 2

 3           BE IT REMEMBERED that the remote videotaped deposition

 4      of JANAE JARVISwas taken via videoconference by the Plaintiffs

 5      before Veritext Legal Solutions, Amy E. Simmons, a Court

 6      Reporter and Notary Public in and for the County of Ada, State

 7      of Idaho, on Friday, the 10th day of September, 2021,ommencing

 8      at the hour of 10:34 a.m. Mountain Standard Time in the

 9      above-entitled matter.

10

11

12      APPEARANCES (Remotely):

13

        For the Plaintiffs:   GOLDSTEIN, BORGEN, DARDARIAN & HO
14                            By:  Anne Bellows, Esq.
                                   Stephanie Tilden, Esq.
15                            155 Grand Avenue, Suite 900
                              Oakland, California  94612
16                            Telephone:  (510) 763-9800
                              Facsimile:  (510) 835-1417
17                            abellows@gbdhlegal.com
                              stilden@gbdhlegal.com
18
19                            CENTRO LEGAL DE LA RAZA
                              By:  Jesse Newmark, Esq.
20                                 Henrissa Bassey, Esq.
                              3022 International Boulevard, Suite 410
21                            Oakland, California  94601
                              Telephone:  (510) 437-1863
22                            Facsimile:  (510) 437-9164
                              jessenewmark@centrolegal.org
23

24

25

                                                          Page  3
```

```
1      APPEARANCES (Contd.)

2

       For the Defendants:     LEWIS BRISBOIS BISGAARD & SMITH, LLP
3                              By:  Ryan Matthews, Esq.
                               2020 West El Camino Avenue, Suite 700
4                              Sacramento, California  95833
                               Telephone:  (916) 564-5400
5                              Facsimile:  (916) 564-5444
                               Ryan.Matthews@lewisbrisbois.com
6

7      Videographer:           Jon Burgess

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

                                                    Page  4

```
 1    is that right?                                    11:45:03

 2         A.   That's incorrect.                       11:45:03

 3         Q.   Okay.  How is that incorrect?           11:45:05

 4         A.   So, for example, this asset cannot be   11:45:07

 5    mandatory.                                        11:45:10

 6         Q.   Right.  But I took it -- I understood it 11:45:11

 7    to say we can't do it as an MDU for that reason?  11:45:16

 8         A.   Yes.                                    11:45:19

 9         Q.   Okay.  So based on your experience, if  11:45:19

10    there is an MDU in place, is the media or cable   11:45:23

11    charge always mandatory?                          11:45:27

12         A.   No, not always mandatory.               11:45:29

13         Q.   Okay.  What are the exceptions?         11:45:31

14         A.   The exceptions would be if it's an      11:45:34

15    affordable community, or if the program wouldn't  11:45:36

16    allow it.                                         11:45:40

17         Q.   Okay.  So the affordable communities, can 11:45:42

18    you tell me what goes into that bucket?           11:45:44

19         A.   Yes, I would define -- sorry, the tax   11:45:47

20    credit communities are affordable communities.    11:45:51

21         Q.   Tax credit, okay.                       11:45:54

22              Anything else?                           11:45:55

23         A.   No.  That's the communities.            11:45:56

24         Q.   Okay.  So I'm going to list some        11:45:58

25    properties.  We talked about some; I just want to 11:46:05
```

Page 60

| | | |
|---|---|---|
| 1 | make sure I, sort of, touch on the others.   And if | 11:46:08 |
| 2 | you can tell me if each property has ever had a | 11:46:11 |
| 3 | requirement that tenants, you know, enroll in a | 11:46:13 |
| 4 | mandatory media charge, which would include | 11:46:17 |
| 5 | internet or cable, you know, depending on the | 11:46:21 |
| 6 | case, and if so, the time period, if you know, for | 11:46:24 |
| 7 | the requirement. | 11:46:27 |
| 8 | A.   Okay. | 11:46:28 |
| 9 | Q.   Aztec Springs? | 11:46:28 |
| 10 | A.   I don't know. | 11:46:33 |
| 11 | Q.   Cimarron place? | 11:46:34 |
| 12 | A.   I don't know. | 11:46:40 |
| 13 | Q.   Canyon Ridge Apartments? | 11:46:41 |
| 14 | A.   I don't know. | 11:46:45 |
| 15 | Q.   Courtyard at Central Park? | 11:46:48 |
| 16 | A.   I don't know. | 11:46:51 |
| 17 | Q.   Enclave at 1400 South? | 11:46:53 |
| 18 | A.   Yes. | 11:46:57 |
| 19 | Q.   The Landing at Fancher Creek? | 11:47:02 |
| 20 | A.   I don't know. | 11:47:07 |
| 21 | Q.   Garden Lofts? | 11:47:07 |
| 22 | A.   Yes. | 11:47:09 |
| 23 | Q.   I'm sorry.   Let me back up. | 11:47:11 |
| 24 | You said yes to Falls at Hunters Pointe. | 11:47:15 |
| 25 | Do you know when that -- well, first of all, is | 11:47:20 |

Page 61

| | | |
|---|---|---|
| 1 | that mandatory charge still in effect today at | 11:47:24 |
| 2 | Falls at Hunters Pointe? | 11:47:27 |
| 3 | A.   I don't know. | 11:47:28 |
| 4 | Q.   Okay.  Do you know the time period that | 11:47:29 |
| 5 | it was in place? | 11:47:32 |
| 6 | A.   I don't know when it was implemented, but | 11:47:34 |
| 7 | we have -- we've sold the asset. | 11:47:36 |
| 8 | Q.   Got it. | 11:47:39 |
| 9 | And it was still in place when the asset | 11:47:41 |
| 10 | was sold? | 11:47:43 |
| 11 | A.   Yes. | 11:47:43 |
| 12 | Q.   Okay.  And then for Garden Lofts, is the | 11:47:44 |
| 13 | mandatory media charge still in place? | 11:47:47 |
| 14 | A.   It's not a mandatory media charge.  It's | 11:47:50 |
| 15 | an optional, but there is an optional internet | 11:47:54 |
| 16 | agreement there. | 11:47:57 |
| 17 | Q.   Got it.  Okay.  Let me back up. | 11:47:58 |
| 18 | So I'm asking about mandatory media | 11:48:01 |
| 19 | charges. | 11:48:04 |
| 20 | So was the Falls at Hunters Pointe media | 11:48:04 |
| 21 | package mandatory when that was being managed by | 11:48:07 |
| 22 | Wasatch Property Management? | 11:48:11 |
| 23 | A.   Yes. | 11:48:12 |
| 24 | Q.   Okay.  But at Garden Lofts, it's | 11:48:12 |
| 25 | optional? | 11:48:15 |

Page 62

| | | | |
|---|---|---|---|
| 1 | A. | Yes.  Let me clarify that list you just | 11:48:16 |
| 2 | provided to me.  Enclave was also optional. | | 11:48:19 |
| 3 | Q. | Okay.  Optional, okay. | 11:48:22 |
| 4 | | What about Glen Oaks Apartments? | 11:48:33 |
| 5 | A. | I don't know. | 11:48:36 |
| 6 | Q. | How about Goldstone Place Apartments? | 11:48:37 |
| 7 | A. | Yes. | 11:48:41 |
| 8 | Q. | Yes, there was a mandatory charge? | 11:48:44 |
| 9 | A. | Yes. | 11:48:45 |
| 10 | Q. | And do you know when that was in place? | 11:48:46 |
| 11 | A. | I don't know. | 11:48:50 |
| 12 | Q. | Metropolitan Place Apartments? | 11:48:52 |
| 13 | A. | Yes. | 11:48:58 |
| 14 | Q. | Yes, it was mandatory? | 11:48:58 |
| 15 | A. | Yes. | 11:49:01 |
| 16 | Q. | And when was that put in place? | 11:49:06 |
| 17 | A. | I don't know. | 11:49:07 |
| 18 | Q. | Is it still in place? | 11:49:08 |
| 19 | A. | Yes. | 11:49:09 |
| 20 | Q. | Palladio Apartments? | 11:49:15 |
| 21 | A. | Palladio had a -- I don't recall on | 11:49:18 |
| 22 | Palladio.  That was a mixed asset of both tax | | 11:49:24 |
| 23 | credit and market rate communities -- properties. | | 11:49:27 |
| 24 | Q. | Okay.  And that's no longer managed by | 11:49:31 |
| 25 | Wasatch Property Management? | | 11:49:34 |

Page 63

| | | | |
|---|---|---|---|
| 1 | A. | Yes. | 11:49:35 |
| 2 | Q. | Yes, it's no longer managed? | 11:49:37 |
| 3 | A. | Yes, it's no longer managed by Wasatch. | 11:49:39 |
| 4 | Q. | River Oaks Apartments? | 11:49:41 |
| 5 | A. | I don't know. | 11:49:44 |
| 6 | Q. | Rio Seco Apartments? | 11:49:46 |
| 7 | A. | I don't know. | 11:49:51 |
| 8 | Q. | Ranchwood Apartments? | 11:49:52 |
| 9 | A. | I don't know. | 11:49:56 |
| 10 | Q. | Sands apartments? | 11:49:57 |
| 11 | A. | I don't know. | 11:50:03 |
| 12 | Q. | Veranda? | 11:50:03 |
| 13 | A. | Yes, they have an optional media package. | 11:50:06 |

```
14      Q.   Okay.  So for the ones that are required      11:50:10
15  that we've discussed today, you would be able to      11:50:24
16  find information showing the date that the            11:50:27
17  requirement went into effect, right?  Not during      11:50:31
18  this deposition, but if you went back to your         11:50:36
19  office and looked into it?                            11:50:38
20      A.   Theoretically I should be able to find       11:50:41
21  the agreement, which would show when the -- when      11:50:44
22  the agreement was put into place.                     11:50:49
23      Q.   Okay.                                        11:50:51
24           MR. MATTHEWS:  We've been going about an     11:50:56
25  hour and 20.  Do you want to take a quick             11:50:57
```

Page 64

| | | |
|---|---|---|
| 1 | Section 8 tenants have ever been exempt from | 12:14:21 |
| 2 | mandatory media charges? | 12:14:24 |
| 3 | A.   No, let me clarify that question. | 12:14:25 |
| 4 | So we submit the agreements over. | 12:14:29 |
| 5 | Section 8 approves it.  If there is a charge in | 12:14:33 |
| 6 | there, if they exempt it, then that is out and | 12:14:36 |
| 7 | it's excluded from the agreement. | 12:14:39 |
| 8 | Q.   Okay.  I'm just saying you're not | 12:14:40 |
| 9 | aware -- I'm just saying you're not aware of a | 12:14:42 |
| 10 | case where that's happened? | 12:14:45 |
| 11 | A.   I am not aware, no, of a case where that | 12:14:46 |
| 12 | may have happened, no. | 12:14:49 |
| 13 | Q.   Okay.  All right.  Let's talk about | 12:14:50 |
| 14 | parking. | 12:14:57 |
| 15 | We've had some testimony in this case | 12:14:57 |
| 16 | previously that at some Wasatch properties, | 12:14:59 |
| 17 | tenants are required to pay mandatory parking | 12:15:02 |
| 18 | charges as a condition of leasing. | 12:15:04 |
| 19 | Are you familiar with that practice? | 12:15:06 |
| 20 | A.   At some locations, yes. | 12:15:08 |
| 21 | Q.   Okay.  And this is another thing that | 12:15:10 |
| 22 | varies from property to property? | 12:15:12 |
| 23 | A.   Yes. | 12:15:14 |
| 24 | Q.   Okay.  Can you identify the Wasatch | 12:15:15 |
| 25 | properties that have required tenants to sign up | 12:15:18 |

Page 77

| | | |
|---|---|---|
| 1 | for paid parking as a condition of leasing at any | 12:15:20 |
| 2 | time since 2005? | 12:15:24 |
| 3 | A.   I can't identify which specific ones. | 12:15:25 |
| 4 | Q.   Could you identify any? | 12:15:28 |
| 5 | A.   Not off the top of my head, no. | 12:15:29 |
| 6 | Q.   Okay.   I'm going to go ahead and list | 12:15:40 |
| 7 | them for you. | 12:15:43 |
| 8 | A.   Okay. | 12:15:44 |
| 9 | Q.   This is a long list.   I'll warn you. | 12:15:44 |
| 10 | So for each, if you can tell me if | 12:15:46 |
| 11 | they've had required parking charges, and, to the | 12:15:49 |
| 12 | best of your knowledge, the time period that those | 12:15:52 |
| 13 | charges have been in effect. | 12:15:55 |
| 14 | Aspen Park Apartments? | 12:15:57 |
| 15 | A.   I don't know. | 12:16:00 |
| 16 | Q.   Arroyo Vista Apartments? | 12:16:00 |
| 17 | A.   I don't know. | 12:16:04 |
| 18 | Q.   Aztec Springs? | 12:16:04 |
| 19 | A.   I don't know. | 12:16:06 |
| 20 | Q.   Brighton Place? | 12:16:08 |
| 21 | A.   I don't know. | 12:16:11 |
| 22 | Q.   Broadmoor? | 12:16:13 |
| 23 | A.   I don't know. | 12:16:15 |
| 24 | Q.   Brookside? | 12:16:16 |
| 25 | A.   I don't know. | 12:16:18 |

Page  78

| 1 | Q. | Bent tree? | 12:16:21 |
| 2 | A. | I don't know. | 12:16:23 |
| 3 | Q. | Bellwood Park? | 12:16:24 |
| 4 | A. | I don't know. | 12:16:27 |
| 5 | Q. | California Place? | 12:16:34 |
| 6 | A. | I don't know. | 12:16:34 |
| 7 | Q. | Canyon Club Apartments? | 12:16:36 |
| 8 | A. | I don't know. | 12:16:41 |
| 9 | Q. | Cimarron Place Apartments? | 12:16:43 |
| 10 | A. | I don't know. | 12:16:46 |
| 11 | Q. | Chesapeake Commons? | 12:16:47 |
| 12 | A. | I don't know. | 12:16:50 |
| 13 | Q. | Crossroads? | 12:16:55 |
| 14 | A. | I don't know. | 12:16:56 |
| 15 | Q. | Creekside Villa Apartments? | 12:16:57 |
| 16 | A. | I don't know. | 12:17:01 |
| 17 | Q. | Courtyard at Central Park? | 12:17:03 |
| 18 | A. | I don't know. | 12:17:07 |
| 19 | Q. | Enclave at 1400 South? | 12:17:07 |
| 20 | A. | I don't know. | 12:17:13 |
| 21 | Q. | Landing at Fancher Creek? | 12:17:17 |
| 22 | A. | I don't know. | 12:17:21 |
| 23 | Q. | Do you think there is going to be -- I'm | 12:17:22 |
| 24 | halfway through the list. | | 12:17:27 |
| 25 | Do you think there is going to be any | | 12:17:28 |

Page 79

| | | |
|---|---|---|
| 1 | property for which your response is anything other | 12:17:30 |
| 2 | than "I don't know"? | 12:17:32 |
| 3 | A.   I don't know. | 12:17:33 |
| 4 | Q.   Okay. | 12:17:34 |
| 5 | A.   That's a lot of communities, so -- | 12:17:35 |
| 6 | Q.   Of course.  I'm just trying to get the | 12:17:37 |
| 7 | information if you have it.  So I'll go through | 12:17:40 |
| 8 | the list.  It doesn't take that long. | 12:17:42 |
| 9 | Bridges at Five Oaks? | 12:17:44 |
| 10 | A.   I don't know. | 12:17:46 |
| 11 | Q.   Florentine Villas? | 12:17:48 |
| 12 | A.   I don't know. | 12:17:49 |
| 13 | Q.   Glen Oaks Apartments? | 12:17:51 |
| 14 | A.   I don't know. | 12:17:53 |
| 15 | Q.   Goldstone Place Apartments? | 12:17:55 |
| 16 | A.   I don't know. | 12:17:59 |
| 17 | Q.   Lofts at 7800? | 12:18:00 |
| 18 | A.   I don't know. | 12:18:03 |
| 19 | Q.   Logan Park? | 12:18:04 |
| 20 | A.   I don't know. | 12:18:07 |
| 21 | Q.   Metropolitan Place Apartments? | 12:18:07 |
| 22 | A.   I don't know. | 12:18:12 |
| 23 | Q.   Overlook at Pantano? | 12:18:13 |
| 24 | A.   I don't know. | 12:18:17 |
| 25 | Q.   Oak Valley Apartments? | 12:18:17 |

Page 80

| | | | |
|---|---|---|---|
| 1 | A. | I don't know. | 12:18:19 |
| 2 | Q. | Palladio Apartments? | 12:18:22 |
| 3 | A. | I don't know. | 12:18:24 |
| 4 | Q. | Point Natomas Apartments? | 12:18:25 |
| 5 | A. | I don't know. | 12:18:28 |
| 6 | Q. | Piedmont Apartments? | 12:18:29 |
| 7 | A. | I don't know. | 12:18:31 |
| 8 | Q. | Point Natomas apartments? | 12:18:32 |
| 9 | A. | I think that was already repeated, but I | 12:18:37 |
| 10 | don't know. | | 12:18:39 |
| 11 | Q. | You're right.   It was. | 12:18:39 |
| 12 | | Promontory Point Apartments? | 12:18:41 |
| 13 | A. | I don't know. | 12:18:43 |
| 14 | Q. | Quail Run Apartments? | 12:18:45 |
| 15 | A. | I don't know. | 12:18:49 |
| 16 | Q. | Revo 225? | 12:18:51 |
| 17 | A. | I don't know. | 12:18:53 |
| 18 | Q. | Remington Apartments? | 12:18:54 |
| 19 | A. | I don't know. | 12:18:57 |
| 20 | Q. | River Oaks Apartments? | 12:18:58 |
| 21 | A. | I don't know. | 12:19:01 |
| 22 | Q. | River Point Apartments? | 12:19:02 |
| 23 | A. | I don't know. | 12:19:06 |
| 24 | Q. | Rio Seco Apartments? | 12:19:07 |
| 25 | A. | I don't know. | 12:19:09 |

Page 81

| | | | |
|---|---|---|---|
| 1 | Q. | The Reserve at View 78? | 12:19:10 |
| 2 | A. | I don't know. | 12:19:13 |
| 3 | Q. | Ranchwood Apartments? | 12:19:16 |
| 4 | A. | I don't know. | 12:19:19 |
| 5 | Q. | Sands Apartments? | 12:19:20 |
| 6 | A. | I don't know. | 12:19:22 |
| 7 | Q. | Springwood Apartments? | 12:19:23 |
| 8 | A. | I don't know. | 12:19:27 |
| 9 | Q. | Spring Villas Apartments? | 12:19:28 |
| 10 | A. | I don't know. | 12:19:30 |
| 11 | Q. | Shadow Way Apartments? | 12:19:31 |
| 12 | A. | I don't know. | 12:19:33 |
| 13 | Q. | Wasatch Hills Apartments? | 12:19:34 |
| 14 | A. | I don't know. | 12:19:36 |

15    Q.    Have any Wasatch properties ever required    12:19:37

16  tenants to rent storage space as a condition of    12:19:52

17  leasing?    12:19:55

18    A.    Not that I'm aware of.    12:19:56

19    Q.    Are there any other additional service    12:19:57

20  charges besides renter's insurance, which I    12:19:59

21  understand is a slightly different beast, that    12:20:01

22  have been required as a condition of leasing at    12:20:03

23  any Wasatch properties?    12:20:06

24    A.    Not that I'm aware of.    12:20:07

25    Q.    Okay.    12:20:08

Page 82

```
 1    discussion at any of these meetings on a regular          14:15:49

 2    basis?                                                    14:15:51

 3         A.    Yeah.   I mean, not necessarily.   I mean,     14:15:52

 4    it's a sales industry, but I'm not a big, strong          14:15:56

 5    proponent of pushing that.   So for me                    14:15:59

 6    specifically, you know, there would be maybe,             14:16:02

 7    "Hey, do you want to do this," but that was not           14:16:04

 8    something I was always pushing in my portfolio,           14:16:07

 9    no.                                                       14:16:10

10         Q.    What meetings would it come up in?             14:16:10

11         A.    I don't know if it would come up in            14:16:12

12    meetings.   I mean, we have reports, top leasing          14:16:15

13    agent.   We want to reward people that way, right?        14:16:18

14    We've stopped doing that now, but in our monthly          14:16:21

15    newsletter is the person that leased the most            14:16:23

16    apartments.   That's probably the most common, but        14:16:28

17    we've stopped doing -- when we went to our green          14:16:30

18    initiative, we stopped doing newsletters a couple         14:16:32

19    years ago.                                                14:16:36

20         Q.    Okay.   So how are property-level people       14:16:37

21    trained in sales tactics, then?                           14:16:43

22         A.    We do have very specific training.   We       14:16:45

23    have, you know, our training videos.   We have our       14:16:48

24    Wasatch University platform.   We have evolved it        14:16:51

25    over the years.   We partner with Grace Hill, which      14:16:53
```

Page 138

| | | |
|---|---|---|
| 1 | is a national platform. | 14:16:58 |
| 2 | Q.   Can I stop and ask you what the Wasatch | 14:16:59 |
| 3 | University program is? | 14:17:02 |
| 4 | A.   Yeah, Wasatch University program just | 14:17:02 |
| 5 | houses all of our training videos. | 14:17:04 |
| 6 | Q.   Okay.  Do you have training videos on | 14:17:06 |
| 7 | sales on that program? | 14:17:11 |
| 8 | A.   Yes. | 14:17:13 |
| 9 | Q.   And including sales for additional | 14:17:14 |
| 10 | service charges? | 14:17:16 |
| 11 | A.   I don't know on that.  I don't know. | 14:17:17 |
| 12 | Q.   Would you be able to find out? | 14:17:24 |
| 13 | A.   In the library it would be available, | 14:17:31 |
| 14 | yeah.  It's never been -- I mean, ours has been | 14:17:33 |
| 15 | just leasing in general.  So, I mean, if it's in | 14:17:37 |
| 16 | the library, it would be in the library. | 14:17:39 |
| 17 | Q.   If it's in the library of videos on | 14:17:41 |
| 18 | Wasatch University? | 14:17:45 |
| 19 | A.   Correct, yes. | 14:17:46 |
| 20 | Q.   Okay.  What about Section 8?  Is there -- | 14:17:47 |
| 21 | are there any videos on Section 8? | 14:17:51 |
| 22 | A.   I don't -- I don't recall either. | 14:17:53 |
| 23 | Q.   That's something that could be checked by | 14:18:03 |
| 24 | looking at the library? | 14:18:09 |
| 25 | A.   Yes.  I haven't specifically sat through | 14:18:10 |

Page 139

```
 1                    REPORTER'S CERTIFICATE

 2

     STATE OF IDAHO   )

 3                    )  ss.

     COUNTY OF ADA    )

 4

 5        I, AMY E. SIMMONS, Certified Shorthand Reporter

 6   and Notary Public in and for the State of Idaho, do hereby

 7   certify:

 8        That prior to being examined, the witness named in

 9   the foregoing deposition was by me duly sworn remotely to

10   testify to the truth, the whole truth and nothing but the

11   truth;

12        That said deposition was taken down by me in

13   shorthand at the time and place therein named and

14   thereafter reduced to typewriting under my direction, and

15   that the foregoing transcript contains a full, true

16   and verbatim record of said deposition.

17        I further certify that I have no interest in the

18   event of the action.

19        WITNESS my hand and seal this 23 day of September,

20   2021.

21

22                       AMY E. SIMMONS

                         CSR, RPR, CRR, CRC and Notary

23                       Public in and for the

                         State of Idaho.

24

25   My Commission Expires: 06-13-2022

                                                  Page 250
```

# EXHIBIT 19

**Anne Bellows**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Friday, October 8, 2021 11:12 AM |
| **To:** | Matthews, Ryan |
| **Cc:** | Laura Ho; Kristen Burzynski; jessenewmark; Henrissa Bassey; Lindsay Nako; Jocelyn Larkin; Brenna Wood Fitzpatrick |
| **Subject:** | RE: Terry - Wasatch University |

Hi Ryan,

Thanks for sharing the indices.  We believe the documents identified below are responsive to our Requests for Production. I've highlighted the ones that are facially responsive in yellow so you can first get those produced.  The others are documents related to Preferred Compliance, and would be responsive to the extent they relate to Section 8.  As we discussed yesterday on the call, Plaintiffs request that these documents be produced as soon as possible, and no later than Oct. 14.

**Campaigns for WPM**
Please review the following document and produce if it contains any information or reference to Section 8  (*see* Terry RFP 27; Jarvis 2021 Dep. at 295 (testifying that Preferred Compliance may work on Section 8 compliance "where it impacts each individual file")).
- Preferred Compliance LIHTC

**Video and Video How To List**

**Sheet 1**
For the same reasons mentioned above, please produce the following if they contain any information about or reference to Section 8 (*see* Terry RFP 27, Jarvis 2021 Dep. at 295)
- WPM – Preferred Compliance Tax Credit Webinar, 11.2009
- WPM – Preferred Compliance Tax Credit Webinary, 08.2019

Please produce the following as responsive to Terry RFPs 30 and 33:
- WPM – The Delinquency Hero

**Training How Tos & Forms**
Please produce the following as responsive to Terry RFPs 30 and 33:
- HERO Coaching for Managers – "HERO Coaching Resident Rent Call"
- Promise to Pay How To
- AR Collections Best Practice Video

Please produce the following as responsive to Terry RFP 29:
- RentPlus: How to Enroll a Resident
- Assurant "Pay with Rent" Program Roll-Out
- RentPlus Refresher Training Webinar 4.14.21

Please produce the following as responsive to Terry RFP 28:
- Leasing Kit
- Renewals in Rentcafe'

**Marketing How Tos & Forms**

1

Please produce the following as responsive to Terry RFP 29:
- Promoting & Selling Smart Apartments
- Selling Rent Plus to Prospects

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

---

**From:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Sent:** Thursday, October 7, 2021 10:35 AM
**To:** Anne Bellows <abellows@gbdhlegal.com>
**Subject:** Terry - Wasatch University

Anne,

Here's these two docs for your review. Please note that they're being produced informally to facilitate a meet and confer, and that they are confidential documents subject to the Court's protective order. Looking forward to discussing.

-Ryan



**Ryan Matthews**
**Attorney**
Ryan.Matthews@lewisbrisbois.com

**T: 916.646.8213  F: 916.564.5444**

2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

# EXHIBIT 20

```
 1                    UNITED STATES DISTRICT COURT
 2                  EASTERN DISTRICT OF CALIFORNIA
 3                      SACRAMENTO DIVISION
 4
 5   UNITED STATES OF AMERICA,   )
     ex rel. DENIKA TERRY and    )
 6   ROY HUSKEY III, and each    )
     of them for themselves      )
 7   individualy, and for all    )
     other persons similarly     )
 8   situated and on behalf of   )
     the UNITED STATES OF        )
 9   AMERICA,                    )
10            Plaintiffs,        )
11   v.                          )   Case No.
12   WASATCH ADVANTAGE GROUP,    )   2:15-cv-00799-KJM-DB
     LLC, WASATCH PROPERTY       )
13   MANAGEMENT, INC., WASATCH   )
     POOL HOLDINGS, LLC,         )
14   CHESAPEAKE COMMONS HOLDINGS )
     LLC, LOGAL PARK APARTMENTS, )
15   LLC, LOGAL PARK APARTMENTS, )
     LP, and DOES 1-30,          )
16            Defendants.        )
     _____ )
17
18                         DEPOSITION OF
19                         DAVE TANFORAN
20                   WEDNESDAY, AUGUST 9, 2017
21
22   Reported by:
23   TAMARA BERLIN, CSR 9706
24   Job No. 2674876
25   Pages 1 - 233
```

                                                    Page 1

1                  UNITED STATES DISTRICT COURT

2                 EASTERN DISTRICT OF CALIFORNIA

3                     SACRAMENTO DIVISION

4

   UNITED STATES OF AMERICA,    )
5  ex rel. DENIKA TERRY and     )
   ROY HUSKEY III, and each     )
6  of them for themselves       )
   individualy, and for all     )
7  other persons similarly      )
   situated and on behalf of    )
8  the UNITED STATES OF         )
   AMERICA,                     )
9          Plaintiffs,          )
   v.                           )  Case No.
10 WASATCH ADVANTAGE GROUP,     )  2:15-cv-00799-KJM-DB
   LLC, WASATCH PROPERTY        )
11 MANAGEMENT, INC., WASATCH    )
   POOL HOLDINGS, LLC,          )
12 CHESAPEAKE COMMONS HOLDINGS  )
   LLC, LOGAL PARK APARTMENTS,  )
13 LLC, LOGAL PARK APARTMENTS,  )
   LP, and DOES 1-30,           )
14         Defendants.          )
   _____)

15

16         Deposition of DAVE TANFORAN, taken on behalf

17     of the Plaintiffs, at One Capitol Mall, Suite 240,

18     Sacramento, California, beginning at 10:35 a.m. and

19     ending at 5:31 p.m., on Wednesday, August 9, 2017,

20     before TAMARA BERLIN, Certified Shorthand Reporter

21     No. 9706.

22

23

24

25

                                            Page  2

```
 1                    A P P E A R A N C E S

 2

 3   For the Plaintiffs:

 4        LAW OFFICES OF ANDREW WOLFF, PC

 5        BY:  DAVID LAVINE, ESQ.

 6        1956 Webster Street

 7        Suite 275

 8        Oakland, California  94612

 9        (510) 834-3300

10        david@awolfflaw.com

11

12   For the Defendant:

13        LEWIS, BRISBOIS, BISGAARD & SMITH, LLP

14        BY:  YOON-WOO NAM, ESQ.

15        2020 West El Camino Avenue

16        Suite 700

17        Sacramento, California  95833

18        (916) 646-8214

19        Yoon-Woo.Nam@lewisbrisbois.com

20

21

22

23

24

25
```

1    complain to any of the property managers or supervisor,

2    perhaps to yourself, that they didn't think that the

3    additional service charges were fair in their case?

4         A.   I haven't, no.

5         Q.   Have you heard any stories like that?

6         A.   Not until this came up.

7         Q.   Since have you -- I don't mean from the case, I mean

8    from tenants.

9         A.   No.  No, I haven't.

10        Q.   Have you heard about any tenants at Chesapeake or

11   other properties being charged for parking, even though they

12   didn't have a car?

13             MR. NAM:  Objection; outside the scope of this

14   deposition.

15             THE WITNESS:  They could be.

16   BY MR. LAVINE:

17        Q.   Is the parking charge -- let's start at Chesapeake,

18   since it's the biggest one, I guess.

19             Is a parking charge required at Chesapeake

20   Commons?

21             MR. NAM:  Objection; outside of scope of this

22   deposition.

23             THE WITNESS:  For a covered parking space.

24   BY MR. LAVINE:

25        Q.   Is every tenant at Chesapeake Commons required to

Veritext Legal Solutions
866 299-5127

1    have a covered parking space?

2         MR. NAM:   Objection; outside of scope of this

3    deposition.

4              THE WITNESS:   Move in, yes.

5         MR. NAM:  Vague as to time.

6    BY MR. LAVINE:

7    Q.   How much is the covered parking charge?

8         MR. NAM:  Objection; vague as time, outside the

9    scope of this deposition.

10            THE WITNESS:  I've seen ten and fifteen dollars,

11   depending on when they moved in.

12   BY MR. LAVINE:

13   Q.   So it depends on time, not location?

14   A.   It could be either.

15   Q.   But it's always been, since your memory, either $10

16   or $15 for that charge?

17   A.   Yes.

18   Q.   And it is required of all tenants at move in?

19            MR. NAM:  Objection; outside the scope of his

20   deposition.

21            THE WITNESS:  Depending on the property --

22   BY MR. LAVINE:

23   Q.   How much at Chesapeake?

24   A.   -- if they have -- yes.

25   Q.   All right.  You said at move in.  At some point is

Page 82

 1    automatically be assessed?

 2        A.   It's on there, yes.

 3        Q.   And it will stay on there until -- unless and until

 4    a reasonable accommodation request comes your way?

 5        A.   Yes.

 6             MR. NAM:   Again, I object that this is outside the

 7    scope of his deposition.

 8             MR. LAVINE:   Let me ask you about Renters Insurance

 9    for a minute.

10        Q.   Are you aware if that is an item on the Additional

11    Service Agreements?

12        A.   Yes.

13             MR. NAM:   Objection; overbroad.

14    BY MR. LAVINE:

15        Q.   Is Renters Insurance required at Chesapeake

16    Commons?

17             MR. NAM:   Objection; outside the scope of this

18    deposition.

19             THE WITNESS:   Yes.

20    BY MR. LAVINE:

21        Q.   Is it required at all properties in your region?

22        A.   Yes.

23        Q.   And is that true of Section 8 tenants as well?

24        A.   I think it's optional at all properties.

25        Q.   Are you sure?

1    BY MR. LAVINE:

2         Q.   Have you ever looked into that question?

3         A.   No.

4         Q.   As you sit here today, are you sure that, at least

5    at some of the properties you supervise, the Renters

6    Insurance is optional?

7         A.   I'm not positive.

8         Q.   I need to go back to parking for a minute, because I

9    forgot to close that loop.

10             Is a parking charge assessed at move in at the other

11   eight properties, apart from Chesapeake, that you manage?

12             MR. NAM:   Objection; outside the scope of his

13   deposition.

14             THE WITNESS:   I think it is.   I'm just trying to

15   think.   If it's not available, it may not be.

16   BY MR. LAVINE:

17        Q.   But if it is available, it's required at move in?

18        A.   Yes.

19        Q.   For Section 8 tenants as well?

20        A.   Yes.

21        Q.   Will the properties -- the non-Chesapeake

22   properties, the other properties -- entertain a request for

23   accommodation to not pay that charge later in the tenancy?

24        A.   Yes.

25             MR. NAM:   Objection to the extent it's outside the

Page 86

1     Q.    Would a tenant -- say a Section 8 tenant telling you

2    that they couldn't afford it be a good enough reason?

3          MR. NAM:  Objection; incomplete hypothetical.

4          THE WITNESS:  I would discuss that with my

5    supervisor.

6    BY MR. LAVINE:

7     Q.    Which supervisor, again?  Tell me.

8     A.    Shawn Fetter.

9     Q.    Right.  Have you ever had a request like that come

10   your way?

11    A.    For Renters Insurance?

12    Q.    Yes.

13    A.    No.

14    Q.    For any other charge, apart from parking?

15    A.    Not apart from parking.

16    Q.    And just to be clear, Renters Insurance can be

17   attained -- obtained through a Wasatch source that you use or

18   the rent -- the renter can get it separately?

19    A.    That's correct.

20    Q.    Does the renter have to show proof of obtaining it

21   separately if they go that way?

22    A.    Yes.

23    Q.    In what format?

24    A.    Copy of their policy.

25    Q.    Do you know how many tenants opt for the

1      A.    I believe so, yes.

2      Q.    You're not sure?

3      A.    No.

4      Q.    Do you remember discussing it with Ms. Gamboa?

5      A.    I don't remember the specific discussion, but it --

6  that would -- that would be who I would have talked about it

7  with.

8      Q.    But you don't remember, firmly, what that decision

9  was?

10      A.    I believe they were granted.

11      Q.    Just the one unit?

12      A.    Yes.

13      Q.    All right.  If a tenant at move in -- let's say

14  Section 8 tenant at move in didn't want that charge, could

15  they opt out of it at that point?

16      A.    At --

17            MR. NAM:  Vague as to time.

18            THE WITNESS:  At Chesapeake?

19            MR. LAVINE:  Yes.

20            THE WITNESS:  And what if they -- are you talking

21  about if it would be today?

22            MR. LAVINE:  Yes.

23            THE WITNESS:  They're moving in today?

24            MR. LAVINE:  Yes.

25            THE WITNESS:  And they wanted to not have a washer

                                              Page 95

1   and dryer?

2           MR. LAVINE:  Yes.

3           THE WITNESS:  We -- we would require it.

4   BY MR. LAVINE:

5       Q.   You would require them to have it even so?

6       A.   Yes.

7       Q.   And charge them for it?

8       A.   Yes.

9       Q.   Has it ever been different since you've been there?

10      A.   I -- not since I've been here.

11      Q.   Have you heard in earlier times that it was

12  different?

13      A.   I don't -- I don't know if they've always had

14  washers and dryers.

15      Q.   Let me go over just to the other properties under

16  your supervision.  And I'm going to try to do them as a

17  group, then I'll break them out as need be.

18           Do all the units in all the other properties have

19  washer/dryer hookups in unit?

20           MR. NAM:  Objection; outside the scope of his

21  deposition with respect to any Bay Area residential

22  properties.

23           THE WITNESS:  No.

24  BY MR. LAVINE:

25      Q.   Do some of them?

Page 96

```
 1                    REPORTER'S CERTIFICATE

 2

 3            I, the undersigned, a Certified Shorthand

 4   Reporter of the State of California, do hereby certify:

 5            That prior to being examined, the witness

 6   named in the foregoing proceedings was previously sworn to

 7   testify to the truth, the whole truth, and nothing but the

 8   truth; that said proceedings were taken by me

 9   stenographically and were thereafter transcribed into

10   typewriting under my direction, said transcript being a true

11   and accurate transcription of my shorthand notes.

12            I further certify that I am neither

13   financially interested in the action nor a relative or

14   employee of any attorney of any of the parties.  In witness

15   whereof, I have this date subscribed my name.

16            Dated: August 23, 2017.

17

18

19

20

21

22

23

24        TAMARA BERLIN, CSR #9706

25        Certified Shorthand Reporter

                                             Page  233
```

# EXHIBIT 21

1  **iLEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH A. SALAZAR JR., SB# 169551
2     E-Mail: Joe.Salazar@lewisbrisbois.com
RYAN MATTHEWS, SB# 311674
3     E-Mail: Ryan.Matthews@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
4  Sacramento, California 95833
Telephone: 916.564.5400
5  Facsimile: 916.564.5444

6  Attorneys for Wasatch Advantage Group, LLC;
Wasatch Property Management, Inc.; Wasatch
7  Pool Holdings, LLC, Chesapeake Commons
Holdings, LLC; Logan Park Apartments, LLC;
8  Logan Park Apartments, LP

9

10                 **UNITED STATES DISTRICT COURT**

11              **EASTERN DISTRICT OF CALIFORNIA**

12                    **SACRAMENTO DIVISION**

13

14  UNITED STATES OF AMERICA, ex rel.        CASE NO. 2:15-cv-00799-KJM-DB
   DENIKA TERRY and ROY HUSKEY III,
15  and each of them for themselves individually,  **DEFENDANTS' RESPONSES TO**
   and for all other persons similarly situated and  **PLAINTIFF DENIKA TERRY'S**
16  on behalf of the UNITED STATES OF         **REQUEST FOR ADMISSIONS, SET TWO**
   AMERICA,
17                                            The Hon. Kimberly J. Mueller
              Plaintiffs/Relators,
18                                            Trial Date:      None Set
           vs.
19
   WASATCH ADVANTAGE GROUP, LLC,
20  WASATCH PROPERTY MANAGEMENT,
   INC., WASATCH POOL HOLDINGS, LLC,
21  CHESAPEAKE COMMONS HOLDINGS,
   LLC, LOGAN PARK APARTMENTS, LLC;
22  LOGAN PARK APARTMENTS, LP,

23           Defendants.

24

25  PROPOUNDING PARTY:      Plaintiff, Denika Terry

26  RESPONDING PARTY:      Defendants, Wasatch Advantage Group, LLC; Wasatch Property

27                         Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake

28                         Commons Holdings, LLC; Logan Park Apartments, LLC; Logan

1                      Park Apartments, LP

2   SET NO.:                    TWO

3   **REQUEST FOR ADMISSION NO. 11:**

4         Admit that at all times since April 14, 2005, DEFENDANTS, in all of their residential

5   properties, had a practice of not including ADDITIONAL SERVICE CHARGES in the amount of

6   RENT TO OWNER reflected on documents submitted to public housing authorities

7   **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

8      Admit.

9   **REQUEST FOR ADMISSION NO. 12:**

10        Admit that at all times since April 14, 2005, DEFENDANTS, in all of their residential

11   properties, had a practice of not including ADDITIONAL SERVICE CHARGES in the amount of

12   RENT TO OWNER reflected on the Request for Tenancy Approval form required to obtain

13   approval of SECTION 8 tenancies.

14   **RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

15      Admit.

16   **REQUEST FOR ADMISSION NO. 13:**

17        Admit that at all times since April 14, 2005, DEFENDANTS, in all of their residential

18   properties, had a practice of not including ADDITIONAL SERVICE CHARGES on the Request

19   for Tenancy Approval form required to obtain approval of SECTION 8 tenancies.

20   **RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

21      Deny.

22   **REQUEST FOR ADMISSION NO. 14:**

23        Admit that DEFENDANTS have served notices to SECTION 8 tenants stating that the

24   tenants must pay amounts allegedly owed or may be subject to eviction, where the amounts

25   demanded by the notice included unpaid ADDITIONAL SERVICE CHARGES, including the

26   notices contained in the tenant files produced in this case at AP002356, BT00189, BT000191,

27   BT000505, BT00519, 27      BT000602, BT000603, BT003846, BT003862, BT004182,

28   BT004290, BT004295, BT004421, BT004459, BT007015, BT008096, BT010946, BT010958,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-7501-3616.1                    2                Case No. 2:15-cv-00799-KJM-DB
DEFENDANTS' RESPONSES TO PLAINTIFF DENIKA TERRY'S REQUEST FOR ADMISSIONS, SET TWO

1  BT010966, BT011014, BT011017, CAP004390, CAP007193, CAP008222, CP009887-88,

2  CP009889-90, CPC000654-55, CPC000660-61, CPC009005, CPC010700, CPC015825,

3  CPC016159, CPC016980, CPC020517, CPC021867, CPC023341, CPC023344, CPC026384,

4  CPC028201, CPC033675, CPC033676, CPC033677, CPC03580, CPC03581, CPC034585,

5  CPC034586, CPC034660, CPC036853, CPC036904, CPC036928, CPC036933, CPC036945,

6  CPC036953, CPC036974, CPC038384, CPC038385, CPC039842-43, CR000522, CR001502,

7  CR001579, CR002292, CR002303, CR002306, CR002406, CR003352, CR003358, CR003583,

8  CR003699, CR003815, CR003815, CR004019, CR004397, CR004733, CR004939, CV000502-

9  03, CV002104-05, CV002536, CV002966, CV003577, CVV004056, CV004320, CV004356,

10  CV005701, CV005707, CV006060, CY017492, CY021234, CY021482, CY021493, CY023114,

11  CY026242, ENCLAVE000317, ENCLAVE000320, ENCLAVE001666, ENCLAVE001667,

12  ENCLAVE001669, ENCLAVE001671, ENCLAVE001672, ENCLAVE001674,

13  ENCLAVE001784, ENCLAVE001790, ENCLAVE001792, ENVLAVE002677,

14  ENCLAVE002833, ENCLAVE003290, ENCLAVE003896, ENCLAVE003898,

15  ENCLAVE003899, FOT001104, PP000518, SPW000805, SPW001675, SPW001975,

16  SPW001980, SPW001983, SPW001988, SPW001989, SPW002008, SPW002765, SPW003135,

17  SPW003185, SPW004039, SPW004039, SPW004085, SPW004951, SPW004971, SPW005455,

18  SPW005654, SPW005925, SPW005992, SPW006003, SPW006004, SPW006264, SPW006437,

19  SVT002679-80, SVT003884, SWT000374, SWT002357, SWT002824, SWT003139,

20  SWT003323, SWT003325, SWT003599, SWT003636, SWT004032, SWT004525, SWT004539,

21  SWT004576, SWT003582, SWT004586, SWT004588, SWT004607, SWT004615, SWT004617,

22  SWT004622, SWT004631, SWT004635, SWT004650, SWT004657, SWT004661, SWT004671,

23  SWT004674, SWT004675, SWT004679, SWT004684, SWT004975, SWT005015, SWT005018,

24  SWT005020, SWT005023, SWT005025, SWT005028, SWT005037, SWT005039, SWT005050

25  SWT005058, SWT005060, SWT005062, SWT005063, SWT005065, SWT005074, SWT005661,

26  SWT005668, SWT005683, SWT005684, SWT005710, SWT005747, SWT006370, SWT006371,

27  SWT006379, SWT006393, SWT006402, SWT006425, SWT006659, SWT006662, SWT006853,

28  SWT006876, SWT007480, SWT007481, SWT007484, SWT007485, SWT007499, SWT007684,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4842-7501-3616.1                 3                 Case No. 2:15-cv-00799-KJM-DB
DEFENDANTS' RESPONSES TO PLAINTIFF DENIKA TERRY'S REQUEST FOR ADMISSIONS, SET TWO

1   SWT007689, SWT007693, SWT007696, SWT007698, SWT007703, SWT007710, SWT007711,

2   SWT007716, SWT007722, SWT007723, SWT007748, SWT007924, SWT007928, SWT007932,

3   SWT008223, SWT008279, SWT008589, SWT008594, SWT008598, SWT008601, SWT008608,

4   SWT008611, SWT008612, SWT008615, SWT008618, SWT008619, SWT008626, SWT008628,

5   SWT008635, SWT008638, SWT008643, SWT008644, SWT008644, SWT008657, SWT008661,

6   SWT008670, SWT008676, SWT008680, SWT009043, SWT009318, SWT009324, SWT009329,

7   SWT009337, SWT009340, SWT009341, SWT009359, SWT009364, SWT009364, SWT009366,

8   SWT009369, SWT009381, SWT009385, SWT009387, SWT009388, SWT009680, SWT009683,

9   SWT009688, SWT009694, SWT009697, SWT009701, SWT009705, SWT009716, SWT009718,

10   SWT009739, SWT009745, SWT010043, SWT010047, SWT010377, SWT010382, SWT010386,

11   SWT010390, SWT010394, SWT010400, SWT010403, SWT010411, SWT010518, SWT010530,

12   SWT010532, SWT010533, SWT010549, SWT011019, SWT011244, SWT011271, SWT011675,

13   SWT011676, SWT011677, SWT012386, SWT012414, SWT012421, SWT012957, SWT012982,

14   SWT012985, SWT012994, SWT013014, SWT013016, SWT013020, SWT013022, SWT013032,

15   SWT013368, SWT013654, SWT014378, SWT015070, SWT015090, SWT015996, VIT002190,

16   VIT004784.

17   **RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

18       Admit.

19   **REQUEST FOR ADMISSION NO. 15:**

20       Admit that at all times since April 14, 2005, DEFENDANTS have had a policy of raising

21   the BASE RENT for their SECTION 8 tenants to the maximum allowable under the applicable

22   rules governing the Section 8 program on at least an annual basis.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Defendants object to this Request as being vague and ambiguous as to "the maximum allowable under the applicable rules governing the Section 8 program". When Defendants seek to increase the rent charged to a Section 8 tenant, they increase it to the market rate for a comparable unit, and are required to seek approval for said increase from the local housing authority. Such approval requires justifying the new market rate using comparable local units.

DATED:  July 19, 2021                    LEWIS BRISBOIS BISGAARD & SMITH LLP

By:  _____
RYAN J. MATTHEWS
Attorneys for Wasatch Advantage Group, LLC;
Wasatch Property Management, Inc.; Wasatch
Pool Holdings, LLC, Chesapeake Commons
Holdings, LLC; Logan Park Apartments, LLC;
Logan Park Apartments, LP

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

VERIFICATIONS TO FOLLOW

**FEDERAL COURT PROOF OF SERVICE**

USA-Terry v Wasatch Property Mgmt
2:15-cv-00799 KJM DAD

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

At the time of service, I was over 18 years of age and not a party to the action.  My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On July 19, 2021, I served the following document(s):

- DEFENDANTS' RESPONSES TO PLAINTIFF DENIKA TERRY'S REQUEST FOR ADMISSIONS, SET TWO

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒ (BY E-MAIL OR ELECTRONIC TRANSMISSION)  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on July 19, 2021, at Sacramento, California.

_____
Alicia Crespo



DEFENDANTS' RESPONSES TO PLAINTIFF DENIKA TERRY'S REQUEST FOR ADMISSIONS, SET TWO

**SERVICE LIST**
**USA-Terry v Wasatch Property Mgmt**
**2:15-cv-00799 KJM DAD**

| | |
|---|---|
| Andrew Wolff<br>Law Office of Andrew Wolff, PC<br>1956 Webster Street, Ste. 275<br>Oakland, CA 94612 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  510-834-3300<br>E-Mail  andrew@awolfflaw.com |
| Jesse Newmark<br>CENTRO LEGAL DE LA RAZA<br>3022 International Blvd, Ste. 410<br>Oakland, CA 94601 | *Attorney for Plaintiffs*<br>*Denika Terry and Roy Huskey, III*<br><br>Tel.:  (510) 437-1554 x115<br>Fax:  (510) 437-9164<br>Email:  jessenewmark@centrolegal.org<br>Email: malvarez@centrolegal.org |
| Laura L. Ho<br>Anne Bellows<br>Goldstein, Borgen, Dardarian & Ho<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612 | *Co-Counsel for Plaintiffs*<br><br>Tel.: 519-763-9800<br>Fax: 510-835-1417<br>Email: lho@gbdhlegal.com<br>Email: abellows@gbdhlegal.com<br>Email: sgrimes@gbdhlegal.com<br>Email: dvaldez@gbdhlegal.com<br>Email: kburzynski@gbdhlegal.com |
| Vincente Antonio Tennerelli<br>United States Attorney's Office<br>2500 Tulare Street, Suite 4401<br>Fresno, CA 93721 | *Attorney for Intervenor Plaintiff*<br>*United States of America*<br><br>Tel.: (559) 497-4080<br>Email: Vincente.Tennerelli@usdoj.gov<br>Email: joni.jones@usdoj.gov |



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# EXHIBIT 22

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                EASTERN DISTRICT OF CALIFORNIA
 3                     SACRAMENTO DIVISION
 4
 5   UNITED STATES OF AMERICA,    )
     ex rel. DENIKA TERRY, ROY    )
 6   HUSKEY, III, and TAMERA      )
     LIVINGSTON, and each of them)
 7   for themselves individually,)
     and for all other persons    )
 8   similarly situated and on     )
     behalf of the UNITED STATES )
 9   OF AMERICA,                   )
                                   )
10        Plaintiffs/Relators,    )
                                   )
11            vs.                  ) Case No.
                                   ) 2:15-CV-00799-KJM-DB
12   WASATCH ADVANTAGE GROUP,     )
     LLC, WASATCH PROPERTY        )
13   MANAGEMENT, INC., WASATCH    )
     POOL HOLDINGS, LLC,          )
14   CHESAPEAKE COMMONS HOLDINGS,)
     LLC, LOGAN PARK APARTMENTS, )
15   LLC, LOGAN PARK APARTMENTS, )
     LP, and DOES 1-30,           )
16                                 )
                    Defendants.   )
17                                 )
18
19       VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF
20                 JAROM JOHNSON, CPM
21          Taken in Behalf of the Plaintiffs
22                  July 19th, 2021
23
24   Reported by:
25   Robin Reger, RPR, CSR
```

Page 1

JAROM JOHNSON, CPM - 7/19/2021

```
 1            BE IT REMEMBERED That, pursuant to Federal
    Rules of Civil Procedure, the videotaped
 2  videoconference deposition of JAROM JOHNSON, CPM,
    was taken in behalf of the Plaintiffs, before Robin
 3  Reger, Registered Professional Reporter, on Monday,
    the 19th day of July, 2021, commencing at the hour
 4  of 9:30 a.m., all parties appearing by Zoom.
 5
 6                      --o0o--
 7                   APPEARANCES:
 8  For the Plaintiffs and Relators:
                Anne P. Bellows
 9              Laura L. Ho
                Carson Turner
10              GOLDSTEIN, BORGEN, DARDARIAN & HO
                155 Grand Avenue
11              Suite 900
                Oakland, CA 94612-3536
12              510-763-9800
                abellows@gbdhlegal.com
13              lho@gbdhlegal.com
14  For the Plaintiffs and Relators:
                Jesse Newmark
15              CENTRO LEGAL DE LA RAZA
                3022 International Boulevard
16              Suite 40
                Oakland, CA 94601
17              510-437-1863
                jessenewmark@centrolegal.org
18
19  For the Defendants:
                Ryan Matthews
20              LEWIS BRISBOIS BISGAARD & SMITH, LLP
                2020 West El Camino
21              Suite 700
                Sacramento, CA 95833
22              916-646-8213
                ryan.matthews@lewisbrisbois.com
23
24  Also Present:  Sean Grant, Videographer
25
```

Page 2

```
 1   BY MS. BELLOWS:
 2       Q     So if the tenant was required to pay the
 3   additional service charges as a condition of living
 4   in their unit, would that be qualify as rent, in
 5   your mind?
 6       A     If they are required to pay it in order
 7   to live there?
 8       Q     Yes.
 9       A     Yeah, I'm just trying to think of an
10   example of what that would be, but --
11              MR. MATTHEWS:  I'm going to register the
12        same objections.
13              THE WITNESS:  Rent would be the ability
14        to occupy the space.  So if you can't occupy
15        the space, you can't very well rent it.
16   BY MS. BELLOWS:
17       Q     So if you are told you have to pay this
18   amount or leave, that would qualify as rent?
19       A     If it's a required charge, without
20   option, I would say if you can't be in the space
21   then, yes, that would be rent.
22       Q     Can a tenant be evicted for failing to
23   pay an additional service charge?
24       A     No.
25       Q     What's your basis for saying that?
```

Page 58

```
 1        Q       And then do you see what the attachment
 2   is that's listed?
 3        A       Yeah.  Is that the document we just
 4   looked at?
 5        Q       It is, at least a version of the
 6   document.  Why don't you go ahead and -- do you want
 7   to go ahead and read the name of the attachment
 8   while I'm doing that, out loud for the record?
 9        A       "Section 8 - How-To Instruction."
10                        (Exhibit No. 12 was marked.)
11   BY MS. BELLOWS:
12        Q       Okay.  So now I've marked Exhibit 12 for
13   the record, and this is -- it says, "How-To Voucher
14   Rents (i.e. Section 8 Rents)" is the title of the
15   document, and it's got a Bates of WCDS 035744.
16        A       Okay.
17        Q       I'll go ahead and represent to you that
18   based on the metadata produced by defendants this
19   was an attachment to that email.
20        A       Okay.
21        Q       Okay.  So this is a training document
22   that's provided to Wasatch Property Management
23   personnel; correct?
24        A       Yeah.  This would be, uh-huh.  It's not
25   in our traditional how-to structure, but, yeah, it
```

Page 115

1   appears to be, yes.

2        Q      Okay.  And what's the objective of this

3   training, according to the document?

4        A      This is relative to something called

5   overhang.

6        Q      What's overhang?

7        A      Overhang is, on a tax credit community,

8   the ability to have a voucher rent exceed the

9   low-income housing tax credit rent.

10       Q      Okay.  And why is that?

11       A      It's the -- it's just a part of the

12   industry.  If you have a housing voucher, your rent

13   is set by the voucher rather than the low-income

14   housing rent.

15       Q      Okay.  Would you agree that the purpose

16   that's stated in sort of the very beginning of the

17   document is to maximize rents on the tax credit

18   property?

19       A      Yeah, absolutely.

20       Q      And that would have been a goal for

21   Wasatch Property Management?

22       A      Absolutely, yeah.  Yeah, I mean, I think

23   if you look at this, that would be -- this specific

24   procedure would be -- that would be the use of this

25   procedure would be the goal, yeah.

Page 116

1      Q      This is inside YARDI?

2      A      Correct.

3      Q      Would it be in, like, the tenant ledgers

4   or some other part of YARDI?

5      A      No.  It would be -- it would just be

6   more in, like, the configuration.

7      Q      Okay.  Are you aware of any other

8   residential properties managed by Wasatch that have

9   mandatory parking charges?

10      A      For any tenant or for housing tenants?

11      Q      Is there a difference?

12      A      Yes.  There is a difference.

13      Q      Okay.  For housing tenants?

14      A      I'm not aware of any, no.

15      Q      What about for nonhousing tenants?

16      A      Yes.  So some of our projects have

17   required parking as a result of the building type or

18   the parking allocation at the community.

19      Q      Okay.  And could you provide me a list?

20      A      I'm sure we could.  Yes.

21                    (Request for Production.)

22      Q      And how would you put together that

23   list?

24      A      We would just -- it would go into that

25   designation.  So we could have Mike pull it.

Page 187

1    ownership of the project.

2         Q      I appreciate you keeping that clear.

3                And how does -- how did the property

4    owners make money; is it a percentage share or

5    something?

6         A      Right.  Yeah.  So it's just -- it would

7    be depending on how the structure of the agreement

8    is, you know, whether we're providing the bandwidth

9    ourselves, you know.  So if we're both purchasing

10   it, or if we're a dealer or -- you know, there's a

11   lot of ways to improve the net take on that because

12   if you become the provider, obviously you're going

13   to get a better margin than if you're using a third

14   party.

15        Q      Is there some kind of media package

16   offered at all of Wasatch's properties?

17        A      No.  Not every community.  It's become

18   more popular.  So obviously Internet has become a

19   necessity of life, and so it's more popular than it

20   used to be, but not every community.

21        Q      Are any of these charges for Internet,

22   or cable, or media package mandatory at any of

23   Wasatch's properties currently?

24        A      Yes, absolutely.

25        Q      Which properties?  And you can describe

Page 214

1    it by characteristics if it would make that easier.

2        A    Yeah.  I mean, so any of our communities

3    that have -- like any or more recent communities --

4    it would be kind of a standard of living at the

5    community.

6        Q    So the communities where it's going to

7    be mandatory are ones that have been brought into

8    the Wasatch portfolio more recently?

9        A    Yeah.  Constructed recently or those

10   that we could manage the delivery of.  You know, so

11   ground-up construction, those are typically the

12   types of the communities that give you the ability

13   to provide the service at its optimum performance.

14       Q    Okay.  And would you be able to provide

15   a list of properties where some kind of media option

16   has been mandatory, you know, with the relevant time

17   periods, if asked to do so?

18       A    Yes.  Yeah.

19       Q    Okay.

20       A    Yeah.  There is a distinction there,

21   too, though, between people that have a housing or

22   assisted payment and non.

23       Q    And that distinction is?

24       A    There's no -- there's a non requirement

25   of -- so if I have an agreement that's on

Page 215

```
1                        CERTIFICATE

2

3            I, ROBIN REGER, Certified Shorthand

4     Reporter, do hereby certify that JAROM JOHNSON, CPM,

5     appeared at the time and place set forth herein;

6     that at said time and place I reported in stenotype

7     all testimony adduced and other oral proceedings had

8     in the foregoing matter; that thereafter my notes

9     were transcribed using computer-aided transcription

10    under my direction; and the foregoing transcript,

11    Pages 1 to 262, constitutes a full, true and

12    accurate record of such testimony adduced and oral

13    proceedings had and of the whole thereof.

14            I further certify review of the transcript

15    was requested.

16            Witness my hand and stamp at Portland,

17    Oregon, this 28th day of July, 2021.

18

19

20

21

              ROBIN REGER, RPR

22            Certified Shorthand Reporter

              Oregon Certificate No. 10-0416

23            RPR Certificate No. 1461

              Expires 6/30/2023

24

25

                                       Page  263
```

# EXHIBIT 23

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF CALIFORNIA
                     SACRAMENTO DIVISION
 3    UNITED STATES OF        )
 4    AMERICA, ex rel.        )
      DENIKA TERRY and ROY    )
 5    HUSKEY III, and each    )
      of them for themselves  )
 6    individually, and for   )
 7    all other persons       )  Case No.
      similarly situated and  )  2:15-cv-00799-KJM-DB
 8    on behalf of the        )
      UNITED STATES OF        )
 9    AMERICA,                )
10         Plaintiffs,        )
                              )
11    vs.                     )
                              )
12    WASATCH ADVANTAGE       )
13    GROUP, LLC, WASATCH     )
      PROPERTY MANAGEMENT,    )
14    INC., WASATCH POOL      )
15    HOLDINGS, LLC,          )
      CHESAPEAKE COMMONS      )
16    HOLDINGS, LLC, LOGAN    )
      PARK APARTMENTS, LLC,   )
17    LOGAN PARK APARTMENTS,  )
18    LP, and DOES 1-30,      )
           Defendants.        )
19    _____
            Deposition of: JANAE JARVIS, CPM,
20                    Rule 30(b)(6)
            August 10, 2017 * 10:24 a.m.
21
22
23    Reporter:  Ann Fleming, RPR
      Notary Public in and for the State of Utah
24    Job No. 2674870
25    Pages 1 - 256
```

                                              Page 1

```
1                A P P E A R A N C E S

2

3    FOR THE PLAINTIFFS:

4               David Lavine

5               LAW OFFICES OF ANDREW WOLFF, P.C.

6               1956 Webster Street, Suite 275

7               Oakland, California 94612

8               Tel: (510) 834-3300

9               Fax: (510) 834-3377

10              david@awolfflaw.com

11

12   FOR THE DEFENDANTS:

13              Joseph A. Salazar, Jr.

14              LEWIS BRISBOIS

15              2020 W. El Camino Avenue, Suite 700

16              Sacramento, California 95833

17              Tel: (916) 564-5400

18              Fax: (916) 564-5444

19              Joe.Salazar@lewisbrisbois.com

20

21

22

23

24

25
```

Page 2

1        Q.    (By Mr. Lavine) Did that change to your

2    knowledge?

3        A.    No.

4        Q.    If a tenant had cable and paid extra for

5    it through an additional services agreement, and, then,

6    decided they didn't want it, could they opt out of it

7    at that point?

8        A.    Yes.

9        Q.    Across all properties?

10       A.    Across the one location.

11       Q.    Okay.  Fair enough.  Now, moving forward,

12   your purview is expanded.  Is that true for all

13   properties that are under your purview?

14             MR. SALAZAR:  Objection.  Overbroad.  Go

15   ahead.

16             THE WITNESS:  No.

17       Q.    (By Mr. Lavine) Tell me how it varies.

18       A.    It varies by location.  It varies by

19   market.  We have some locations that have media

20   packages that are in addition to the rent and that

21   includes internet and could be DIRECTV, and, at that

22   point, then, the service comes with the unit.

23       Q.    When you say it "comes with the unit," in

24   other words, if the person, if the tenant wants that

25   unit, they have to accept the cable charge as well or

                                              Page 109

1    the media charge as well?

2         A.    Yes.

3         Q.    All right.  So, in other words, there was

4    no way for a tenant, who wanted a particular unit in

5    those properties, to opt out of that charge?

6         A.    Not on the media packages, no.

7         Q.    Do you know which properties have had or

8    now have that media package?

9         A.    Yes.  Talavera, Tropez West, just the one

10   phase, 600 Lofts, and the Parc at Day Dairy.

11        Q.    Any others that you remember?

12        A.    No.

13        Q.    Do you know why those properties require

14   tenants who want units in those properties to buy into

15   the media package?

16             MR. SALAZAR:  Objection.  Assumes facts.

17   Go ahead.

18             THE WITNESS:  They're new developments and

19   the software was put into the units.  It's very common

20   practice, with new developments, to have media

21   packages, which are in addition to rent.

22        Q.    (By Mr. Lavine) Was the mandatory extra

23   charge for the media package applicable to Section 8

24   tenants as well who lived in those buildings?

25        A.    We have not had any Section 8 tenants live

Page 110

```
 1                  REPORTER'S CERTIFICATE
 2
    STATE OF UTAH              )
 3                             )  ss.
    COUNTY OF SALT LAKE        )
 4
 5            I, Ann Fleming, Registered Professional
    Reporter and Notary Public in and for the State of
 6  Utah, do hereby certify:
 7            That prior to being examined, the witness,
    Janae Jarvis, CPM, was by me duly sworn to tell the
 8  truth, the whole truth, and nothing but the truth;
 9            That said deposition was taken down by me
    in stenotype on August 10, 2017, at the place therein
10  named, and was thereafter transcribed and that a true
    and correct transcription of said testimony is set
11  forth in the preceding pages;
12            I further certify that, in accordance with
    Rule 30(e), a request having been made to review the
13  transcript, a reading copy was sent to Mr. Salazar for
    the witness to read and sign, and the original
14  transcript will be delivered to Mr. Lavine for
    safekeeping.
15            I further certify that I am not kin or
    otherwise associated with any of the parties to said
16  cause of action and that I am not interested in the
    outcome thereof.
17            WITNESS MY HAND this 16th day of August,
18  2017.
19
20
21
22
23     _____
24            Ann Fleming, RPR
25            Notary Public


                                         Page 256
```

# EXHIBIT 24

```
 1                  UNITED STATES DISTRICT COURT

 2        EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

 3

 4    UNITED STATES OF AMERICA, ex rel.   ) Case No.

 5    DENIKA TERRY, ROY HUSKEY, III,      ) 2:15-CV-00799-KJM-DB

 6    and TAMERA LIVINGSTON, and each of  )

 7    them for themselves, individually,  )

 8    and for all other persons similarly )

 9    situated and on behalf of the       )

10    UNITED STATES OF AMERICA,           )

11            Plaintiffs/Relators,        )

12    vs.                                 )  VOLUME II

13    WASATCH ADVANTAGE GROUP, LLC,       )

14    et al., and DOES 1-4,               )

15            Defendants.                 )

16    _____)

17              DEPOSITION OF JANAE JARVIS

18                 SEPTEMBER 14, 2021

19

20    REPORTED REMOTELY BY:

21    KAMRA TOALSON, CSR No. 756

22    Notary Public

23

24

25
```

Veritext Legal Solutions
866 299-5127

```
 1                    THE DEPOSITION OF JANAE JARVIS was taken

 2      on behalf of the Defendant via remote videoconference,

 3      commencing at 9:03 a.m. on September 14, 2021, before

 4      Kamra Toalson, Certified Shorthand Reporter and Notary

 5      Public within and for the State of Idaho, in the

 6      above-entitled matter.

 7

 8                         APPEARANCES:

 9

10      For Plaintiffs/Relators and the Certified Classes:

11              (Present Remotely)

12              GOLDSTEIN, BORGEN, DARDARIAN & HO

13              BY MS. ANNE BELLOWS

14              155 Grand Avenue, Suite 900

15              Oakland, California 94612

16              abellows@gbdhlegal.com

17

18      For Plaintiffs/Relators and the Certified Classes:

19              (Present Remotely)

20              CENTRO LEGAL DE LA RAZA

21              BY MR. JESSE NEWMARK

22              3022 International Boulevard, Suite 410

23              Oakland, California 94601

24              jessenewmark@centrolegal.org

25
```

Page 251

```
 1                    APPEARANCES (continued):

 2

 3      For Plaintiffs/Relators and the Certified Classes:

 4              (Present Remotely)

 5              CENTRO LEGAL DE LA RAZA

 6              BY MS. HENRISSA BASSEY

 7              3022 International Boulevard, Suite 410

 8              Oakland, California 94601

 9              hbassey@centrolegal.org

10

11      For Defendants:

12              (Present Remotely)

13              LEWIS BRISBOIS BISGAARD & SMITH, LLP

14              BY MR. RYAN MATTHEWS

15              2020 West El Camino Avenue, Suite 700

16              Sacramento, California 95833

17              ryan.matthews@lewisbrisbois.com

18

19      Also Appearing Remotely:

20              Neil George, Videographer

21

22

23

24

25

                                          Page  252
```

```
 1          A.  They are.                                10:07:25

 2          Q.  So what is their -- what -- what are they  10:07:34

 3     hired to do?                                      10:07:37

 4          A.  They are hired to review all tenant files for  10:07:38

 5     the tax credit program.                           10:07:42

 6          Q.  What about for the bond program?         10:07:52

 7          A.  Not the bond program.                    10:07:54

 8          Q.  And they are reviewing those files for   10:07:58

 9     compliance with the tax credit rules?             10:08:01

10          A.  Yes.                                     10:08:03

11          Q.  Anything else?                           10:08:03

12          A.  Yes, it could be home, again, any other  10:08:05

13     programs that are underneath those rules.         10:08:10

14          Q.  Do they -- do they have any role in Section 8  10:08:13

15     compliance?                                       10:08:19

16          A.  Where it impacts each individual file, yes, if  10:08:20

17     it's a Section 8 within that file.                10:08:26

18          Q.  Is there a contract or agreement that sets out  10:08:30

19     what they are hired to do?                        10:08:34

20          A.  There is.                                10:08:35

21          Q.  And they work within that -- the scope of that  10:08:44

22     contract?                                         10:08:48

23          A.  I believe so.  I haven't reviewed the    10:08:48

24     contract.                                         10:08:51

25          Q.  Have you ever consulted with them on a   10:08:53
```

```
 1                    REPORTER'S CERTIFICATE

 2            I, KAMRA TOALSON, CSR No. 756, Certified

 3      Shorthand Reporter, certify:

 4            That the foregoing proceedings were taken before

 5      me at the time and place therein set forth, at which

 6      time the witness was put under oath by me;

 7            That the testimony and all objections made were

 8      recorded stenographically by me and transcribed by me or

 9      under my direction;

10            That the foregoing is a true and correct record

11      of all testimony given, to the best of my ability;

12            I further certify that I am not a relative or

13      employee of any attorney or party, nor am I financially

14      interested in the action.

15            IN WITNESS WHEREOF, I set my hand and seal this

16      23rd day of September, 2021.

17

18

19

20

21      KAMRA TOALSON, CSR NO. 756

22      Notary Public

23      Post Office Box 2636

24      Boise, Idaho 83701-2636

25
```

Page 437

# EXHIBIT 25

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Monday, November 22, 2021 9:01 AM |
| **To:** | Matthews, Ryan |
| **Cc:** | Laura Ho; Lindsay Nako; jessenewmark; jlarkin@impactfund.org; brenna; andrew@awolfflaw.com; Henrissa Bassey; Kristen Burzynski |
| **Subject:** | 11/12 meet and confer and subsequent developments |

Hi Ryan,

I tried to reach you multiple times last week to discuss some of the outstanding discovery issues, but you did not pick up or return my calls.  The email below summarizes and follows up on where things stand.  At the bottom of the email, I also raise a deficiency in Defendants' responses to Huskey Interrogatories 23 and 24. .

*Tyler Raymond deposition.*   Defendants have not provided deposition dates for Tyler Raymond.  Lindsay Nako followed up about this on Friday.  Please provide deposition availability for Mr. Raymond as soon as possible.  If we do not hear from you by noon tomorrow, we will issue a deposition notice for Mr. Raymond for December 7.

*Renewed email search regarding mandatory charges.*   Although we had discussed on Nov. 8, 2021, the renewed email search for communications related to mandatory charges, and I had sent you an email later that day setting out our proposed protocol, as of Nov. 12 you had not yet looked at that protocol. In our call on Nov. 12, you said you would work on it as quickly as possible and stated a hope that you could turn the production around this past week.  You did not express any concerns about the production, except that you said we would need to revisit it if the search protocol turned up an unmanageable number of documents.  We reiterated our willingness to adjust the search parameters if the numbers are too high.

Given the approaching discovery cut-off, on November 12 we also discussed that Plaintiffs would need to file a protective motion to compel, which we can take off calendar if Defendants complete the production.  We filed that motion later on Nov. 12.

We did not hear anything from you this past week, much less receive any indication that the production is in the works.  Lindsay Nako sent you Plaintiffs' portion of a joint statement for that motion to compel on Friday 11/19.  Please provide Defendants' portion of that letter to her by COB tomorrow.

*Huskey Interrogatory 18.*   You provided a draft response to Huskey Interrogatory 18 on November 17.  I responded that the draft was still inadequate because it did not identify the properties that had particular mandatory charges.   Notwithstanding this concern, Defendants served that response to Huskey Interrogatory 18 that day.

Early afternoon on Wednesday, Nov. 17, shortly before the scheduled informal discovery conference with Magistrate Judge Barnes, you agreed by email to work on getting a list of properties that have had mandatory charges.  As you did not respond to my email after the informal discovery conference attempting to following on the timeline for that list, and as Mr. Rishwain was unable to provide any insight about the prospective timeline during the informal discovery conference, Plaintiffs went ahead and filed a motion to compel for this interrogatory on Nov. 19.  We are working on our portion of the joint statement.  Of course, if Defendants are able to provide an adequate response to Interrogatory 18 in the coming days, that would be easier on everyone.

*Training documents.*   On our meet and confer call on November 12, you stated that you had finished reviewing the training documents and sent them to the ESI vendor to be prepared for production.  You also said that the list of training documents you were withholding, and the grounds for withholding them, would be provided with that production.  We

have not received any production at all.  This issue is also encompassed in the motion to compel we filed on Nov. 19.  Please make that production as soon as possible to confirm that we do not have a dispute.

***Status of new defendants.***  On November 12, Defendants again stated that they hoped to finalize their representation the coming week, in which case they would be in a position to execute the waiver of service.

I sent a request for more up to date addresses for Mr. Nielson and Mr. Mishler.  While we were able to discuss service with Mr. Mishler at his deposition, we would still appreciate up to date contact information for Mr. Nielson.

***Modification to class certification order.***  Once the new Defendants have been served or waived service, we hope to be able to file the stipulation to modify the class certification order as soon as possible.  Please let us know as soon as you are able if you see a need for any revisions to that stipulation.

***Class list with tenant number.***  Defendants had agreed to provide a version of the current class list that includes the tenant code used in the Yardi system.  Please let me know the status of that effort.

***Fact stipulation in lieu of tenant files.***  Plaintiffs provided our proposed fact stipulation in lieu of the tenant files production last week.  We look forward to hearing your thoughts on it.

***Inadequate discovery responses to Huskey Interrogatories Set 6***.  Defendants' responses to Huskey Interrogatories 23 and 24 are inadequate.  Those interrogatories ask, respectively for a list of properties subject participating in the tax credit and bond programs – identified by "name, address, city, state, and applicable time period."  Defendants' response provides only the property code and property name.  This is insufficient.  Please supplement to provide the remaining information, and in particular the time period each property participated in the respective programs, as soon as possible.

Thanks,
Anne


Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

# EXHIBIT 26

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Anne Bellows |
| **Sent:** | Tuesday, November 30, 2021 2:30 PM |
| **To:** | Matthews, Ryan |
| **Cc:** | Laura Ho; Stephanie Tilden; jessenewmark; Henrissa Bassey; Lindsay Nako; jlarkin@impactfund.org; andrew@awolfflaw.com; brenna |
| **Subject:** | 11/30/21 meet and confer call |

Ryan,

The email below summarizes our meet and confer call this morning.  In addition, I'd like to note here that although I forgot to raise it on the call, Plaintiffs are still waiting on Defendants' updated Rule 26 disclosures.   Please let me know immediately if you believe anything in this email is incorrect.

***Renewed email search re: mandatory charges.***  Defendants expect to have a compiled list of personnel at the properties identified in our letter no later than tomorrow close of business, which would put you in a position to complete the production by Friday assuming no changes are needed to the search protocol.  We are both expecting that this search protocol should yield a manageable number of documents.

***Training documents.***  Defendants agreed to provide us with a list of the training documents they are withholding today.  We still have not received that.  As to the document production, Defendants explained that the delay in producing the outstanding training videos is due to the fact that the videos are hosted on websites, and it is not possible to download the video.  Plaintiffs agreed that Defendants could provided recorded versions of the video, although that will eliminate the metadata, and asked that Defendants provide their best information regarding the date the videos were created.

Defendants agreed to inform Plaintiffs today whether they will be making the production tomorrow or Thursday so that Plaintiffs can eliminate that issue from the joint statement due for the motion to compel filed on November 19.

***Huskey Interrogatory 18.***  Defendants reported that last week, they sent out emails to every property manager asking for a list of charges that had been mandatory at that property at any point.  They've received responses from most, but are still waiting on about a half dozen properties.  Defendants hope to be able to provide a full response by the end of the week.

Plaintiffs are working on their portion of the joint statement regarding this issue.  We are aiming to send you our portion of the joint statement by tomorrow at noon, though it may get pushed back if we need to include the training documents issue.

***David Scharlach response to document subpoena.***  You informed Plaintiffs a couple weeks ago that Lewis Brisbois is representing David Scharlach in connection with the document subpoena and deposition subpoena because he is a Wasatch officer.  His responses to the subpoena were due yesterday, but we did not receive them.  On the call, you said you would direct your assistant to serve the responses today.  We still have not received them.  Please provide them as soon as possible.

***New Entities.***  Lewis Brisbois filed an answer for two of the new entities under a temporary authorization.  They are moving towards finalizing the representation.  Lewis Brisbois has run conflicts and sent out its engagement letter, and it expects to be able to execute the waiver of service next week.  Lewis Brisbois is considering getting temporary authorization to agree to the stipulation to amend class certification order.

Plaintiffs will continue with their service efforts.  Defendants were not able to provide any further information regarding Jeff Nielsen or Kipling Sheppard, including whether Kipling Sheppard is an employee or officer of any entities currently represented by Lewis Brisbois. Plaintiffs communicated their intention to reach out to him to attempt to arrange service, and Defendants did not object.

***Fact stipulation in lieu of the tenant files.***  Defendants have not had a chance to review this yet.  We discussed the goal of adding additional sample form documents from 2017 forward.  We also discussed adding samples of the covid-era collections notices that Wasatch has created, as mentioned in Shawn Fetter's testimony.  Defendants agreed that would make sense, while noting that they have not yet determined whether any such forms exist.

Defendants also said that the tenant files for witnesses on Plaintiffs' disclosures is on their radar.

***Huskey Interrogatories 23 and 24.***  Defendants are working on amended responses to Huskey Interrogatories 23 and 24 to provide the time period that the properties were involved in the tax credit and bond programs, respectively.  They have already gathered the necessary information.  Defendants hope to provide that in the next couple days.

***Production of emails with the joint Yardi expert.***  Defendants have no objection to producing their emails with the joint Yardi expect, and they are working on gathering them. Please produce no later than next week.

***Yardi data.***  I will send a separate email reflecting our call with the joint expect today.  Two things to note here—first, Leslie Martin & John Bailey have requested that Defendants provide the script files for the pay or quit notices; second, the Parties agreed on our call today that we will continue to work on the yardi data and complete the production and definition process even if the project is not completed by December 17.

Thanks,
Anne

Anne P. Bellows
(pronouns: she/her)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 287-4344 (direct)
www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**EXHIBIT 27**

**Stephanie Tilden**

| | |
|---|---|
| **From:** | Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com> |
| **Sent:** | Thursday, December 2, 2021 10:40 AM |
| **To:** | Anne Bellows |
| **Cc:** | Laura Ho; Stephanie Tilden; jessenewmark; Henrissa Bassey; Lindsay Nako; jlarkin@impactfund.org; andrew@awolfflaw.com; brenna |
| **Subject:** | Re: 11/30/21 meet and confer call |

Hi, Anne. Sorry—I'm in court this morning. We have the custodian list and it has been forwarded to the vendor. I will also get you the joint statement response during the lunch break. I need to follow up with my assistant re the Scharlach subpoena, but I expect that to come out today.

Thanks,

Ryan

Sent from my iPhone

**LEWIS BRISBOIS**

**Ryan Matthews**
**Attorney**
Ryan.Matthews@lewisbrisbois.com

**T: 916.646.8213  F: 916.564.5444**

2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

On Dec 2, 2021, at 10:07 AM, Anne Bellows <abellows@gbdhlegal.com> wrote:

Hi Ryan,

I just left you a voicemail.  On Tuesday you thought you would be able to talk either today or tomorrow—has your schedule clarified?

Please note that we are especially concerned about the following items which you said would be complete by now –

1. Scharlach subpoena response, which was due on 11/29 and which you said on Tuesday would be served that day.  We have not received it.
2. Custodian list for email searches re: RFP 52, which you said Defendants would have by close of business yesterday.  Please provide a status update.

You also said that production of the training documents and service of a full response to Huskey Interrogatory 18 were slated for this week.  Please either serve those today or provide Defendants' portion of the joint statement by close of business.

And of course we would like to touch base on the other outstanding items in my letter below.

Thanks,

Anne

Anne P. Bellows

(pronouns: she/her)

Goldstein, Borgen, Dardarian & Ho

155 Grand Avenue, Suite 900

Oakland, CA  94612

(510) 287-4344 (direct)

www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.

**From:** Anne Bellows
**Sent:** Tuesday, November 30, 2021 2:30 PM

**To:** Matthews, Ryan <Ryan.Matthews@lewisbrisbois.com>
**Cc:** Laura Ho <lho@gbdhlegal.com>; Stephanie Tilden <stilden@gbdhlegal.com>; jessenewmark <jessenewmark@centrolegal.org>; Henrissa Bassey <hbassey@centrolegal.org>; Lindsay Nako <lnako@impactfund.org>; jlarkin@impactfund.org; andrew@awolfflaw.com; Brenna Wood Fitzpatrick <brenna@awolfflaw.com>
**Subject:** 11/30/21 meet and confer call

Ryan,

The email below summarizes our meet and confer call this morning.  In addition, I'd like to note here that although I forgot to raise it on the call, Plaintiffs are still waiting on Defendants' updated Rule 26 disclosures.   Please let me know immediately if you believe anything in this email is incorrect.

***Renewed email search re: mandatory charges.***  Defendants expect to have a compiled list of personnel at the properties identified in our letter no later than tomorrow close of business, which would put you in a position to complete the production by Friday assuming no changes are needed to the search protocol.  We are both expecting that this search protocol should yield a manageable number of documents.

***Training documents.***  Defendants agreed to provide us with a list of the training documents they are withholding today.  We still have not received that.  As to the document production, Defendants explained that the delay in producing the outstanding training videos is due to the fact that the videos are hosted on websites, and it is not possible to download the video.  Plaintiffs agreed that Defendants could provided recorded versions of the video, although that will eliminate the metadata, and asked that Defendants provide their best information regarding the date the videos were created.

Defendants agreed to inform Plaintiffs today whether they will be making the production tomorrow or Thursday so that Plaintiffs can eliminate that issue from the joint statement due for the motion to compel filed on November 19.

***Huskey Interrogatory 18.***  Defendants reported that last week, they sent out emails to every property manager asking for a list of charges that had been mandatory at that property at any point.  They've received responses from most, but are still waiting on about a half dozen properties.  Defendants hope to be able to provide a full response by the end of the week.

Plaintiffs are working on their portion of the joint statement regarding this issue.  We are aiming to send you our portion of the joint statement by tomorrow at noon, though it may get pushed back if we need to include the training documents issue.

***David Scharlach response to document subpoena.*** You informed Plaintiffs a couple weeks ago that Lewis Brisbois is representing David Scharlach in connection with the document subpoena and deposition subpoena because he is a Wasatch officer. His responses to the subpoena were due yesterday, but we did not receive them. On the call, you said you would direct your assistant to serve the responses today. We still have not received them. Please provide them as soon as possible.

***New Entities.*** Lewis Brisbois filed an answer for two of the new entities under a temporary authorization. They are moving towards finalizing the representation. Lewis Brisbois has run conflicts and sent out its engagement letter, and it expects to be able to execute the waiver of service next week. Lewis Brisbois is considering getting temporary authorization to agree to the stipulation to amend class certification order.

Plaintiffs will continue with their service efforts. Defendants were not able to provide any further information regarding Jeff Nielsen or Kipling Sheppard, including whether Kipling Sheppard is an employee or officer of any entities currently represented by Lewis Brisbois. Plaintiffs communicated their intention to reach out to him to attempt to arrange service, and Defendants did not object.

***Fact stipulation in lieu of the tenant files.*** Defendants have not had a chance to review this yet. We discussed the goal of adding additional sample form documents from 2017 forward. We also discussed adding samples of the covid-era collections notices that Wasatch has created, as mentioned in Shawn Fetter's testimony. Defendants agreed that would make sense, while noting that they have not yet determined whether any such forms exist.

Defendants also said that the tenant files for witnesses on Plaintiffs' disclosures is on their radar.

***Huskey Interrogatories 23 and 24.*** Defendants are working on amended responses to Huskey Interrogatories 23 and 24 to provide the time period that the properties were involved in the tax credit and bond programs, respectively. They have already gathered the necessary information. Defendants hope to provide that in the next couple days.

***Production of emails with the joint Yardi expert.*** Defendants have no objection to producing their emails with the joint Yardi expect, and they are working on gathering them. Please produce no later than next week.

***Yardi data.*** I will send a separate email reflecting our call with the joint expect today. Two things to note here—first, Leslie Martin & John Bailey have requested that Defendants provide the script files for

the pay or quit notices; second, the Parties agreed on our call today that we will continue to work on the yardi data and complete the production and definition process even if the project is not completed by December 17.

Thanks,

Anne

Anne P. Bellows

(pronouns: she/her)

Goldstein, Borgen, Dardarian & Ho

155 Grand Avenue, Suite 900

Oakland, CA  94612

(510) 287-4344 (direct)

www.gbdhlegal.com

**We've moved!  Please note our new address.**

Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored.