1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH A. SALAZAR JR., SBN 169551

2
  E-Mail: Joe.Salazar@lewisbrisbois.com
RYAN MATTHEWS, SBN 311674

3
  E-Mail: Ryan.Matthews@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700

4
Sacramento, California 95833
Telephone:  916.564.5400

5
Facsimile:   916.564.5444

6
Attorneys for Defendants,

7
Wasatch Advantage Group, LLC; Wasatch Property Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings,

8
LLC; Logan Park Apartments, LLC; Logan Park Apartments, LP

9

10
              **UNITED STATES DISTRICT COURT**

11
    **EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION**

12

13
UNITED STATES OF AMERICA, ex rel. DENIKA TERRY and ROY HUSKEY III,

14
and each of them for themselves individually, and for all other persons similarly situated and

15
on behalf of the UNITED STATES OF AMERICA,

16
            Plaintiffs/Relators,

17
      vs.

18

19
WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT,

20
INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC;

21
LOGAN PARK APARTMENTS, LP,

22
          Defendants.

CASE NO. 2:15-cv-00799-KJM-DB

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION, OR IN THE FURTHER ALTERNATIVE, CLASS DECERTIFICATION**

Date:    May 27, 2022
Time:    10:00 a.m.
Crtrm.:  3, 15th Floor

23

24

25

26

27

28

4848-4329-3867.1

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION, OR IN THE FURTHER ALTERNATIVE, CLASS DECERTIFICATION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................................1

II.  STATEMENT OF FACTS ...........................................................................................3

    A.  Housing Choice Voucher Program ..............................................................3

        1.  HUD Regulations ...........................................................................3

        2.  Housing Assistance Payments Contract .........................................5

        3.  Obligations and Restrictions under a HAP Contract .....................5

        4.  Rent to Owner .................................................................................6

        5.  Owners Responsibilities and Rights under the Section 8 Program ...............6

    B.  Defendants' Use of Additional Service Agreements With Section 8 Tenants ...........7

III.  SUMMARY JUDGMENT ON PLAINTIFFS' FALSE CLAIMS ACT CAUSE OF ACTION IS APPROPRIATE BECAUSE THE EVIDENCE ESTABLISHES THAT DEFENDANTS DID NOT MAKE FALSE CLAIMS TO THE GOVERNMENT .................................................................................................8

IV.  SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT BECAUSE PLAINTIFFS LACK STANDING TO BRING SUCH A CLAIM .....................................................................................10

V.  SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS' CLRA CLAIM BECAUSE DEFENDANTS DID NOT MISREPRESENT ANY MATERIAL FACTS ........................................................................................................11

VI.  SUMMARY ADJUDICATION AS TO PLAINTIFFS' CAUSE OF ACTION UNDER THE UNFAIR COMPETITION LAW IS APPROPRIATE BECAUSE DEFENDANTS' USE OF ASA'S IS LAWFUL .......................................................13

VII.  TO THE EXTENT PLAINTIFFS' LEGAL THEORY OF LIABILITY REQUIRES A SHOWING THAT ASA CHARGES ARE MANDATORY CONDITIONS OF LEASING, CLASS DECERTIFICATION IS NECESSARY ..............................................13

VIII.  CONCLUSION ...........................................................................................................15


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dukes v. Wal-Mart, Inc.*,
    509 F.3d 1168 (9th Cir. 2007) ........................................................................ 14

*Dukes v. Wal-Mart Stores, Inc.*,
    603 F.3d 571 (9th Cir. 2010) .......................................................................... 14

*Marlo v. United Parcel Service, Inc.*,
    251 F.R.D. 476 (CD Cal. 2008) ...................................................................... 14

*O'Connor v. Boeing North American, Inc.*,
    197 F.R.D. 404 (CD Cal. 2000) ...................................................................... 15

**Statutes**

31 U.S.C. § 3729(a)(1) ........................................................................................ 8, 9

ACTION UNDER THE UNFAIR COMPETITION LAW ....................................... 12

Cal. Bus. & Prof. Code 17200 ................................................................................ 13

Cal. Civ. Code 1770(a)(2) ...................................................................................... 11

California Civil Code section 1770(a)(2) ................................................................ 11

California Consumer Legal Remedies Act ............................................................... 11

California's Unfair Competition Law ...................................................................... 13

California Unfair Competition Law .......................................................................... 1

False Claims Act ................................................................................................ 9, 12

federal False Claims Act. The False Claims Act .................................................... 8

federal False Claims Act, under the Consumer Legal Remedies Act ...................... 1

SUMMARY JUDGMENT ON PLAINTIFFS' FALSE CLAIMS ACT ..................... 8

**Other Authorities**

24 C.F.R § 982.456(b)(1). Paragraph (b)(2) ........................................................ 10

24 C.F.R § 982.456(b)(2) ..................................................................................... 10

24 CFR 982.1 (a) ..................................................................................................... 3

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24 CFR 982.4 (b) ........................................................................................................... 3, 6

24 CFR 982.4 (b), 982.451 (b)(1) ...................................................................................... 6

24 CFR 982.54 (a),(b) ........................................................................................................ 3

24 CFR 982.162 (a)(3), 982.308 (b) .................................................................................. 5

24 CFR 982.310 (a)(1) ....................................................................................................... 6

24 CFR 982.310 (d)(1) ....................................................................................................... 7

24 CFR 982.310 (f) ............................................................................................................ 7

24 CFR 982.401 ................................................................................................................. 4

24 CFR 982.401 (a)(2)(ii)(A),(B) ..................................................................................... 4

24 CFR 982.401 (b)(2)(i)-(iv) ........................................................................................... 4

24 CFR 982.401 (c)(2)(i)-(iv) ........................................................................................... 4

24 CFR 982.401 (e)(2)(i) ................................................................................................... 4

24 CFR 982.407 ................................................................................................................. 3

24 CFR 982.451 (a) ........................................................................................................... 5

24 CFR 982.451(b)(2) .................................................................................................... 5, 6

24 CFR 982.451 (b)(3) ....................................................................................................... 6

24 CFR 982.453 (b) ........................................................................................................... 6

24 CFR 982.453 (b)(2) (5), (6) .......................................................................................... 6

24 CFR 982.507 (a)(1-4) .................................................................................................... 6

24 CFR 982.510 (c) ........................................................................................................... 5

24 CFR § 982.451 (b)(2) .................................................................................................... 9

Federal Civil Procedure Rule 23 ................................................................................ 14, 15

Matthews Dec., Exh. 1 ..................................................................................................... 15

Matthews Dec., Exh. 2 ..................................................................................................... 15

Restatement (First) of Contracts § 133 (1932) ................................................................ 10


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

1    I.    **INTRODUCTION**

2        Plaintiffs UNITED STATES OF AMERICA ex. rel. DENIKA TERRY and ROY

3    HUSKEY III, et al., bring the instant lawsuit asserting causes of action for Breach of Contract,

4    under the federal False Claims Act, under the Consumer Legal Remedies Act, and under the

5    California Unfair Competition Law. The thrust of Plaintiffs' Complaint centers on Defendant

6    Wasatch Property Management, Inc.'s use of Additional Services Agreements with tenants who

7    participate in the Section 8 Housing Choice Voucher Program. Plaintiffs contend that Wasatch

8    Property Management's treatment of these Additional Services Agreements makes the charges

9    imposed thereunder de facto" Rent" in violation of the Housing Assistance Payment Contracts

10   ("HAP Contracts") that are the basis of the Housing Choice Voucher Program.

11       Plaintiffs have conducted extremely extensive discovery in this lawsuit. That discovery has

12   encompassed dozens of Defendants' properties, all of which offer a variety of floor plans and

13   amenities. These properties offer a number of additional services to their tenants, regardless of

14   whether those tenants participate in the Section 8 Housing Choice Voucher Program or not.

15   Plaintiffs have received millions of pages of documents, which cover communications from all of

16   these properties. The result of this discovery has been a variety of anecdotal evidence regarding

17   certain Additional Service Charges being, as Plaintiffs term it, a "mandatory condition of leasing"

18   at certain properties for certain tenants. Those charges include the following:

19           -Renter's Insurance

20           -Covered Parking

21           -In-Unit Washers and Dryers

22           -Media Package

23       The procedural posture of this case makes such limited anecdotal evidence effectively

24   irrelevant. Plaintiffs have brought this case as a class action. While limited evidence suggests that

25   certain charges may have been mandatory at individual properties for limited time periods, the

26   overwhelming evidence in this case shows that the imposition of mandatory Additional Service

27   Agreements was not a class-wide concern. It cannot seriously be argued based on the evidence that

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION, OR IN THE FURTHER
ALTERNATIVE, CLASS DECERTIFICATION

1  the imposition of ASA charges as a mandatory condition of leasing is a fact in common for

2  Plaintiffs' defined class. That class is defined as follows:

4      All persons who, in the time period starting on April 14, 2011 (four years

5      prior to the date of filing the initial Complaint in this action) through the

6      final resolution of this matter, (1) have been tenants at any of Defendants'

7      California properties; (2) have participated in the "Section 8" Housing

8      Choice Voucher Program in connection with their tenancies at the

9      California properties; and (3) have paid additional charges set forth in

10     Additional Services Agreements in excess of their individual portions of the

11     contract rent set forth in the HAP Contracts. ECF Nos. 92, 114.

13     Plaintiffs have a limited number of facts which are applicable to their entire class. Those

14  facts are as follows:

15     -Once a tenant enters into an Additional Service Agreement, they are required to pay the

16  charges they incur under the agreement.

17     -The additional service charges are itemized on tenant ledgers, and each month, the tenant

18  is required to pay a single amount that comprises their rent, utility charges, additional service

19  charges, and any additional amounts due under their lease.

20     -Defendants utilize a standardized payment priority sequence to apply tenant payments to

21  various outstanding charges. That payment priority sequence applies any tenant payment to all

22  outstanding charges other than rent first. All remaining funds are then applied to rent.

23     -The intended result of Defendants' payment priority sequence is to ensure to the extent

24  possible that any delinquent amounts due are rent charges, as opposed to additional service

25  charges or any other amounts.

26     Based on the unequivocal language of the HUD regulations relating to the Section 8

27  Housing Choice Voucher Program and standard industry practice, these common facts do not

28  establish liability. Defendants' use of Additional Services Agreements with the class Plaintiffs in



1  this case are lawful. To the extent that a closer, property-by-property analysis is required because
2  Plaintiffs legal theory of liability requires a showing that these charges were mandatory, class
3  decertification is appropriate. There are no facts to establish a class-wide imposition of mandatory
4  Additional Service charges. Either way, as a matter of law, Plaintiffs' claims in this action lack
5  merit, and Defendants are entitled to judgment as a matter of law.

6  **II.   STATEMENT OF FACTS**

7       The crux of this case is whether Defendants' policy of offering Additional Services
8  Agreements to all tenants, including those participating in the  Section 8 program, violates the
9  program's rules and regulations. This Statement of Facts will first discuss the Section 8 Housing
10 Choice Voucher Program generally. It will then delve into the specific facts pertaining to
11 Defendants' participation in the program.

12      **A.   Housing Choice Voucher Program**

13      The U.S. Department of Housing and Urban Development ("HUD") governs the Housing
14 Choice Voucher Program (better known as the "Section 8 Program") nationwide. (UMF 1.) HUD
15 delegates and authorizes a public housing agency ("PHA") to administer the Section 8 Program at
16 the local level. (UMF 2; 24 CFR 982.4 (b).) These PHAs adopt written administrative plans that
17 establish local polices of administration of the program and these plans must strictly follow HUD
18 requirements and regulations. (UMF 3; 24 CFR 982.54 (a),(b).) By applying the administrative
19 plans to the local Section 8 Program, PHAs serve as the enforcement wing of HUD's regulations
20 at the local level. (UMF 4; 24 CFR 982.407.) More broadly, PHAs promote the purpose of HUD's
21 Housing Choice Voucher Program: to provide subsidies to families so that they can live in
22 "decent, safe, and sanitary housing." (UMF 5; 24 CFR 982.1 (a).) Nothing in the HUD regulations
23 suggests that Section 8 is for assisting and educating families on how to manage their expenses,
24 where to live or what type of housing they should live in. (UMF 6.)

25      **1.   HUD Regulations**

26      The detailed and voluminous HUD regulations both prescribe and proscribe the actions of
27 an owner and tenant before, during and after a Section 8 Program tenancy.

28      Before a dwelling is approved for Section 8 Program tenancy and occupancy, HUD

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  requires owners of housing units to meet minimum housing quality standards ("HQS") to meet the

2  Program's purpose of providing decent, safe, and sanitary housing. The HQS consist of

3  performance requirements and acceptability criteria for key aspects of housing quality including

4  sanitary facilities, food preparation and thermal environment. 24 CFR 982.401 (a)(2)(ii)(A),(B).

5  While these requirements may vary with the local climatic or geographic conditions, the HQS in

6  California are consistent with HUD's HQS. 24 CRF 982.401 (a)(4)(ii)(B). Notably missing from

7  the HQS list of appliances, services and facilities required to meet HQS are the amenities offered

8  at Defendants' California properties. These include internet service, cable television,

9  housekeeping services, covered parking, in-unit washers and dryers, renter's insurance through a

10  third-party vendor and pets, among others. (Fifth Amended Complaint, Exh. G.) This is because

11  the aforementioned amenities are not required under the HQS.

12      According to HUD regulations, the sanitary facilities of a dwelling must include a

13  bathroom, fixed basin providing hot and cold water, shower or tub and a disposal system in order

14  to meet HQS. 24 CFR 982.401 (b)(2)(i)-(iv). With respect to food preparation, an HQS approved

15  unit must have an oven, stove or range, refrigerator, kitchen sink, and facilities and services for

16  disposal, e.g. garbage cans. 24 CFR 982.401 (c)(2)(i)-(iv). The thermal environment HQS is met if

17  the unit provides a heating system with cooling, if applicable to assure a healthy living

18  environment appropriate to the climate. 24 CFR 982.401 (e)(2)(i). These aspects, together with

19  other minimum criteria of a unit approved for Section 8 Housing, comprise the HQS under HUD

20  regulations. Defendants are not aware of any jurisdiction in which a washer or dryer were

21  considered essential appliances under HQS'.

22      These HQS appear on the face of the Request For Tenancy Approval ("RFTA"), which is

23  the initial document the Section 8 tenant and owner complete to commence the approval process.

24  The RFTA requires the tenant and owner to agree upon the appliances and utilities that each will

25  pay for during the tenancy. It is no coincidence that all of the appliances and utilities that must be

26  listed on the RFTA are the same ones that are listed in the HQS HUD regulations. *See*, 24 CFR

27  982.401. This is because the Section 8 Program's purpose is to provide the basic amenities and

28  services for decent, safe, and sanitary housing. As one PHA witness stated, a toaster is not an

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

appliance that would be listed on a RFTA. (Deposition of Barbara Cavey, 115:7-118:18.) More relevant to this case, the PHA witnesses from six different localities each testified that a washer or dryer, covered parking and renter's insurance would not be found on RFTA because these are amenities that are not required for a Section 8 tenant to have decent, safe, and sanitary housing. (UMF 43, 44.)

### 2.     Housing Assistance Payments Contract

Through its PHAs, HUD requires that an owner of a dwelling and local PHA enter into a contract called a Housing Assistance Payments contract ("HAP"). (UMF 7; 24 CFR 982.451 (a).) Concurrent with the HAP contract, the PHAs must receive the lease agreement and related documents for the housing unit between an owner and Section 8 tenant, and a tenancy addendum. (UMF 8; 24 CFR 982.162 (a)(3), 982.308 (b).)

The tenancy addendum (Part C of the HAP contract) lists in part the obligations and limitations of the owner and tenant for the term of the lease and HAP contract. (UMF 9.) Under section 2(a) titled, "Lease", an owner has to give the PHA a copy of the lease including any revisions agreed by the owner and the tenant for approval. (UMF 10.) Section 5 regulates the "Family Payment to Owner" and states that the family is responsible for paying the owner any portion of the rent to owner that is not covered by the PHA housing assistance payment. (UMF 11.) Also, "the monthly housing assistance payment shall be credited against the monthly rent to owner for the contract unit." 24 CFR 982.451(b)(2). (UMF 12.) Both the HAP contract and HUD regulations do not mandate how an owner must apply family rent to owner. (UMF 13.)

### 3.     Obligations and Restrictions under a HAP Contract

The HAP contract and HUD regulations forbid an owner from placing charges in the lease for certain, specified amenities. The regulations do not permit a lease to require a tenant or family members to pay charges for (1) meals or (2) supportive services. In the HAP contract, this proscription is extended to a third amenity for furniture provided by the owner. (UMF 14.) Both the HAP contract and HUD regulations also prohibit an owner from charging a tenant extra amounts *for items customarily included in rent in the locality* . . . ." (emphasis added) 24 CFR 982.510 (c); Section 6 (c) of Part C of HAP contract. Neither the HUD regulations nor the HAP

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  contract prohibit the lease from requiring other charges, so long as the owner does not charge extra

2  amounts for items customarily included in the rent in the locality.

### 4. Rent to Owner

4  The local PHA calculates the rent to owner and family rent to owner that a Section 8 tenant

5  pays (only if tenant's income calculation permits) in accordance with HUD regulations and other

6  requirements. (UMF 16; 24 CFR 982.4 (b), 982.451 (b)(1).)

7  Rent to owner covers payments for housing services, maintenance and utilities that the

8  owner is required to provide and pay for. (UMF 17; 24 CFR 982.4 (b).) Each month, the monthly

9  housing assistance payment by the PHA is credited to the monthly rent to owner under the tenant's

10  lease. (UMF 18; 24 CFR 982.451 (b)(2).) If the tenant also makes a monthly "family rent to

11  owner" in conjunction with the monthly PHA payment, the total rent amount received by the

12  owner cannot exceed the predetermined rent to owner amount. (UMF 19; 24 CFR 982.451 (b)(3).)

13  The PHA may not approve a lease between a Section 8 tenant and owner until it has

14  determined that the initial rent to owner is a reasonable rent.  To be reasonable, the PHA considers

15  the housing unit's (1) location, quality, size, unity type, and age of the contract unit; and (2) the

16  amenities, housing services, maintenance and utilities to be provided by the owner in accordance

17  with the lease. (UMF 20; 24 CFR 982.507 (a)(1-4).)

### 5. Owners Responsibilities and Rights under the Section 8 Program

19  An owner such as Wasatch must comply with the PHA administrative plan and HUD

20  regulations or risk being in breach of the HAP contract. This could lead to termination of housing

21  assistance payments or even termination of the HAP contract by the PHA. (UMF 21; 24 CFR

22  982.453 (b).) An owner must maintain the housing unit in accordance with HQS, collect the

23  family rent to owner and enforce the tenant's obligations under the lease. (UMF 22; 24 CFR

24  982.453 (b)(2) (5), (6).)

25  During the tenancy, the owner may terminate if the Section 8 tenant commits serious or

26  repeated violations of the terms and conditions of the lease. (UMF 23; 24 CFR 982.310 (a)(1).)

27  This includes termination for failure to pay rent *or other amounts due under the lease*. (UMF 23;

28  *Id*. (emphasis added).) Additionally, the owner can terminate a tenancy for good cause, which is

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   not limited by the HUD regulations. 24 CFR 982.310 (d)(1).

2       If an owner wishes to evict a tenant for good cause or other lawful reason under the HUD

3   regulations, the owner must institute a court action. (UMF 24; 24 CFR 982.310 (f).)

4       **B.       Defendants' Use of Additional Service Agreements With Section 8 Tenants**

5       Defendants operate dozens of multi-family rental properties across five states. (UMF 25.)

6   As part of their general business practices, Defendants offer tenants the opportunity to enter into

7   Additional Service Agreements ("ASA"). (UMF 26.) These ASAs allow tenants to select

8   additional amenities, according to their desire. (UMF 27.) These amenities include, but are not

9   limited to, covered parking, in-unit washers and dryers, renter's insurance, media packages, and

10  the Rent Plus service. (UMF 28.) Broadly speaking, these ASAs are optional for all tenants.

11  However, there have been limited instances in which tenants at particular properties were required

12  to enter into ASAs for one or more specific amenities as a condition of leasing. (UMF 29.)

13      Generally speaking, Section 8 tenants receive with the same opportunity to enter into

14  ASAs as non-Section 8 tenants.[1] (UMF 30.) Charges for ASA amenities are the same for all

15  tenants, irrespective of Section 8 participation. Which is to say, if a Section 8 tenant is charged

16  $10 for covered parking, a non-Section 8 tenant will be charged the same amount. (UMF 31.) On a

17  company-wide basis, the data bears out that ASAs are optional for Section 8 tenants. Of the

18  Section 8 tenants at Defendants' properties since 2014, the largest percentage of tenants requesting

19  any particular ASA amenity is 53%, undermining Plaintiffs' suggestion that these charges are

20  mandatory. (UMF 32, 33.) There is no single ASA charge that is universal to the entire class of

21  tenants. (UMF 32, 33.) Moreover, there are no ASA charges which were mandatory conditions of

22  leasing which the entire class of plaintiffs was required to incur. (UMF 33.)

23      Once a tenant chooses to enter into an ASA, the tenant is required to pay the charges for

24  the services they receive. (UMF 34.) Tenant ledgers itemize those charges, in addition to any other

25  _____

26  [11] There has been significant discovery on the issue of individual ASA charges being mandatory as a condition of
    leasing at specific properties during particular time periods. Wasatch Property Management, Inc. contends that they

27  have a general policy exempting Section 8 tenants from such requirements. Plaintiffs contend that no such policy
    exists in practice. Whether such a policy exists is not a component of either party's Motion for Summary Judgment.

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  amounts due under the lease, including utility charges and rent. (UMF 35.) Defendants utilize the

2  Yardi Voyager system to handle tenant accounting. (UMF 36.) This accounting software, utilized

3  across the industry, employs a payment priority sequence that applies tenant payments to all

4  outstanding charges. (UMF 37.) That payment priority sequence contains a large number of charge

5  codes, and it applies tenant payments in sequence to each outstanding charge. (UMF 38.) The final

6  charge in the payment priority sequence is Rent. (UMF 39.) That means that when a tenant makes

7  a payment, it is applied first to any non-rent amounts—i.e., past-due charges, utility charges, or

8  ASA charges—and then to rent. The result is that if a tenant makes a payment for less than the full

9  amount that the tenant owes, the delinquent amount will constitute remaining rent owed. (UMF

10  40.) This accounting practice is industry standard, and is taught to landlords by the Institute of

11  Real Estate Management. (UMF 41.) The purpose of leaving rent as the final charge in the

12  payment priority sequence is to allow landlords some viable recourse when tenants fail to uphold

13  lease obligations. (UMF 42.)

14      Housing authorities are aware of Defendants' use of Additional Services Agreements with

15  Section 8 tenants. (UMF 43.) Multiple representatives of housing authorities have expressed

16  approval of the use of ASAs in the context of the Housing Choice Voucher Program. (UMF 44.)

17  The housing authorities are aware of the use of ASAs because Wasatch generally submits the

18  ASAs to the housing authorities as part of the lease packets when entering into HAP Contracts.

19  (UMF 45.) The result is that housing authorities—and, constructively, HUD—are aware of the use

20  of ASAs, and are aware that the ASA charges are not included in the rent-to-owner amounts set

21  forth in HAP Contracts.

22  **III.    SUMMARY JUDGMENT ON PLAINTIFFS' FALSE CLAIMS ACT CAUSE OF
23         ACTION IS APPROPRIATE BECAUSE THE EVIDENCE ESTABLISHES THAT
           DEFENDANTS DID NOT MAKE FALSE CLAIMS TO THE GOVERNMENT**

24

25      Plaintiffs' primary cause of action in this case, and the claim that provides this Court with

26  subject matter jurisdiction, is brought under the federal False Claims Act. The False Claims Act

27  gives rise to a civil cause of action where a defendant "knowingly presents, or causes to be

28  presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). In the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-4329-3867.1                                    8                         2:15-cv-00799-KJM-DB
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

context of this lawsuit, the "claim[s] for payment or approval" in question are the submission of HAP Contracts, which entitle Defendants to partial rent payments from the Department of Housing and Urban Development. 24 CFR § 982.451 (b)(2).

Resolution of this claim is straightforward. Defendants have not submitted false claims to any PHA.[2] Whether allowing Section 8 tenants to enter into ASAs is lawful or not, the practice of entering into those ASAs has been consistently disclosed to PHAs. (UMF 43.) As such, it is impossible to conclude that, to the extent entering into a HAP Contract constitutes a "claim" under the False Claims Act, that such claims were in any way false. All of the facts relating to these leases and ASAs are disclosed to housing authorities. Housing authorities, at least implicitly, determined that these ASAs were permissible under the Section 8 regulations.

Claims for payment or approval are evaluated by government agencies across a broad spectrum of forums. Whether or not a claim for payment should be denied based on the particular terms of a government contract is a legitimate question. However, for purposes of the False Claims Act, a claim for payment being subject to denial is insufficient to create liability. The claim must be "false or fraudulent." 31 U.S.C. § 3729(a)(1). Nothing about the HAP Contracts between the various PHAs and Defendants in this case is false or fraudulent. Based on undisputed evidence, PHAs were perfectly aware of all of the facts relating to these ASAs.[3] As such, summary adjudication in favor of Defendants on the grounds that they did not submit false or fraudulent claims is appropriate.

///

///

///

---

[2] Plaintiffs have elicited evidence relating to whether ASA charges for washers and dryers were included in the Utilities and Appliances table in the HAP Contract. Defendants contend that those charges are not required to be listed in that section, because they are not HQS-mandated features of a dwelling unit. Regardless, the washer and dryer charges are disclosed when the lease packet, including the ASA, is sent to the PHA such that the HAP Contract can be approved.

[3] Defendants cannot establish as a matter of law that PHAs reviewed each and every ASA. However, undisputed evidence, including the Declaration of Shannon Fox, shows that PHAs are aware of these ASAs and do not consider them a violation of HUD regulations.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**IV.  SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT BECAUSE PLAINTIFFS LACK STANDING TO BRING SUCH A CLAIM**

Plaintiffs' claim for Breach of Contract seeks damages for purported breaches of the HAP Contract. Tenants are not parties to the HAP Contract. The HAP Contract is between the landlord of a given property and the local PHA. (UMF 7.) A non-party's ability to sue for breach of contract requires them to show that they are a third-party beneficiary and that they have suffered damages. Restatement (First) of Contracts § 133 (1932). In the case of the HAP Contract, however, the Section 8 regulations clearly establish that tenants are not third-party beneficiaries.

"The family is not a party to or third party beneficiary of the HAP contract. Except as provided in paragraph (b)(2) of this section, the family may not exercise any right or remedy against the owner under the HAP contract." 24 C.F.R § 982.456(b)(1). Paragraph (b)(2), referenced there, provides that a tenant may bring a claim against a landlord "under the lease between the tenant and the owner, including enforcement of the owner's obligations under the tenancy addendum." 24 C.F.R § 982.456(b)(2). The law is clear, then, that these Plaintiffs have no standing to bring a claim for breach of contract based on an alleged breach of the HAP Contract.

What is left for Plaintiffs, then, under section 982.456(b)(2), is a claim for breach of the lease agreement between the tenant and Defendants. Put simply, there is no evidence of any breaches of lease agreements on either an individual or class-wide basis. The gravamen of Plaintiffs' lawsuit concerns ASAs, and there are no facts to suggest that any tenant in the class of Plaintiffs did not receive the services they signed up for. (UMF 46.) The question is not whether the lease or ASAs were breached. The question is whether these leases and ASAs with Section 8 tenants are lawful under the HUD regulations. Absent any facts suggesting a breach of these lease agreements, which do not exist, summary adjudication in favor of Defendants as to this cause of action is appropriate.

The only document under which Plaintiffs can bring a breach of contract claim, per the HUD regulations, is the Tenancy Addendum. The only provision Plaintiffs can claim that was

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  breached was the provision which forbids Defendants from charging additional rent amounts in
2  excess of the "Rent to Owner" amount in the HAP Contract. The undisputed evidence provides
3  that the only amounts charged other than "Rent to Owner" were for non-rent payments. These
4  non-rent payments include those which the tenant incurs under ASAs. There was no breach of the
5  tenancy addendum. As has been established, non-rent amounts are treated differently on an
6  accounting basis because they are legally distinct from rent. (UMF 35-42.) As such, summary
7  judgment is appropriate as to this claim.

8  **V.      SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS' CLRA CLAIM**
9  **BECAUSE DEFENDANTS DID NOT MISREPRESENT ANY MATERIAL FACTS**

10 Plaintiffs' cause of action under the California Consumer Legal Remedies Act is brought
11 particularly under California Civil Code section 1770(a)(2). (Fifth Amended Complaint, p. 41, ln.
12 24-28.) Plaintiffs claim, effectively, that Defendants "[m]isrepresent[ed] the source, sponsorship,
13 approval, or certification of goods or services." Cal. Civ. Code 1770(a)(2). In this context,
14 Plaintiffs have alleged that Defendants "misrepresent[ed] their approval to demand and collect
15 additional rental amounts, or "side payments," by HUD and local public housing agencies."

16 To prevail on this claim, Plaintiffs have to make two separate showings. First, under this
17 legal theory, Plaintiffs must establish that the ASA charges in question did constitute "additional
18 rental amounts" or "side payments". If they are able to do so, they must then establish that
19 Defendants "misrepresent[ed] their approval to demand and collect" these "additional rental
20 amounts" or "side payments."

21 Summary adjudication is appropriate on this claim because Plaintiffs cannot clear the first
22 hurdle. Whether or not ASA charges constitute excess rent or "side payments" is a pure legal
23 question. On a class-wide basis, the undisputed facts are as follows:

24 (1) Once a tenant enters into an Additional Service Agreement, they are required to pay the
25 charges they incur under said agreement.

26 (2) The additional service charges are itemized on tenant ledgers, and each month, the
27 tenant is required to pay a single amount that comprises their rent, utility charges, additional
28 service charges, and any additional amounts due under said lease.

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

4848-4329-3867.1                                                11                           2:15-cv-00799-KJM-DB

1    (3) Defendants utilize a standardized payment priority sequence to apply tenant payments

2  to various outstanding charges. That payment priority sequence applies any tenant payment to all

3  outstanding charges other than rent first. All remaining funds are applied to rent last.

4    (4) The intended result of Defendants' payment priority sequence is to ensure to the extent

5  possible that any delinquent amounts due are rent charges, as opposed to additional service

6  charges or any other amounts.

7    These facts do not establish that ASA charges constitute rent amounts in excess of the

8  "Rent to Owner" amount listed in the HAP Contract. If anything, they establish that the ASA

9  charges are treated differently from rent because they are legally distinct from rent. Multiple

10 witnesses for Defendants have testified that rent is legally distinct from other charges with respect

11 to the ability to pursue eviction proceedings based on delinquent amounts. (UMF 42.) Put simply,

12 ASA charges are treated differently from rent because they are.

13    Plaintiffs' CLRA cause of action fails on the second prong as well. There is simply no

14 evidence that Defendants have made any misrepresentations with respect to housing authorities'

15 repeated approval of HAP Contracts based on leases that include ASAs. As discussed at length

16 with respect to the False Claims Act cause of action, Defendants do not conceal their use of ASAs

17 from housing authorities. The reality is precisely the opposite. Housing authorities are provided

18 with full lease packets, which include these ASAs. They have every opportunity to review the

19 ASA charges that Section 8 tenants sign up for. With said opportunity, they consistently approve

20 HAP Contracts. Defendants cannot speak for every employee of every housing authority, but to

21 suggest that PHA's do not at least implicitly approve of HAP Contracts that include the ASA's is

22 belies common experience. There is no basis for such a presumption in light of Defendants' utter

23 transparency. Moreover, the testimony of PHA employees confirms that Defendants' consistent,

24 transparent, and longstanding use of ASAs is lawful.

25    The bottom line, then, is that this cause of action fails for two reasons. First, Defendants do

26 not charge this class of tenants rent amounts in excess of the "Rent-to-Owner" amount in the HAP

27 Contract. Second, Defendants do not misrepresent PHA approval of their practices, because

28 PHAs, at least implicitly, have approved of such practices for years. (UMF 44.) As such, summary

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    adjudication in favor of Defendants is appropriate as to this cause of action.

2    **VI.    SUMMARY ADJUDICATION AS TO PLAINTIFFS' CAUSE OF ACTION UNDER**
     **THE    UNFAIR    COMPETITION    LAW    IS    APPROPRIATE    BECAUSE**
3    **DEFENDANTS' USE OF ASA'S IS LAWFUL**

4

5            California's Unfair Competition Law creates a civil remedy for plaintiffs where a business

6    commits an "unlawful, unfair or fraudulent business act." (Cal. Bus. & Prof. Code 17200.) The I

7    issue of whether imposing and collecting ASA charges to tenants who elected to enter into ASAs

8    is appropriate for summary judgment in favor of Defendants. As discussed at length above, the

9    HUD regulations relating to Section 8 Housing specifically contemplate amounts other than rent

10   being imposed on Section 8 tenants. (UMF 23.) Not only do they contemplate such non-rent

11   charges, but they specifically allow landlords to terminate a HAP Contract based on nonpayment

12   of such amounts. (UMF 23.)

13           Plaintiffs' UCL claim is a class claim. As articulated above, Plaintiffs cannot establish that

14   ASA charges were imposed as mandatory conditions of leasing on a class-wide basis. The 53%

15   participation rate discussed above clearly undermines any suggestion that Defendants have

16   imposed a mandatory program. The question before the Court for purposes of this Motion, then, is

17   whether allowing Section 8 tenants to enter into these ASAs in the same manner as non-Section 8

18   tenants is unlawful. Defendants contend that such a conclusion would *require* Defendants to

19   discriminate against Section 8 tenants by denying theme them the same opportunity given to non-

20   Section 8 tenants. Any reasonable interpretation of the HUD regulations concerning Section 8

21   allows for imposition of non-rent charges, assuming that those same charges are applied to non-

22   Section 8 tenants. (UMF 15; 23.) In light of this, summary adjudication in favor of Defendants as

23   to the question of whether the use of ASAs with Section 8 tenants is lawful is appropriate.

24   **VII.   TO THE EXTENT PLAINTIFFS' LEGAL THEORY OF LIABILITY REQUIRES**
     **A SHOWING THAT ASA CHARGES ARE MANDATORY CONDITIONS OF**
25   **LEASING, CLASS DECERTIFICATION IS NECESSARY**

26

27           Based on the meet and confer efforts between the parties, Plaintiffs do not intend to assert

28   evidence in support of their Motion for Summary Judgment relating to the question of whether and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  to what extent ASA charges were made mandatory as a condition of leasing for Section 8 tenants.

2  (Matthews Dec., par. 3.) Those facts are disputed, and based on the Yardi data available to both

3  sides, it is clear that fewer than half of the Section 8 tenants in the liability period had an ASA

4  charge of any kind.

5       What remains unclear is whether Plaintiffs believe that whether these ASA charges are

6  mandatory as a condition of leasing is necessary to establish liability. Defendants contend that,

7  necessarily, one of the following must be true:

8       (1) ASA charges must be mandatory as a condition of leasing to be unlawful; or

9       (2) ASA charges are unlawful whether they are a mandatory condition of leasing or not.

10      If the first is true, Plaintiffs have established that the predominant issue in this case—

11  whether or not these charges were a mandatory condition of leasing—is not a class-wide issue. As

12  a result, class decertification is not just appropriate, but necessary. Plaintiffs assured this Court

13  that a property-by-property, tenant-by-tenant analysis would be unnecessary. If ASA charges must

14  be mandatory as a condition of leasing to be unlawful, those contentions were erroneous, and class

15  decertification should follow.

16      If mandatory imposition of ASAs is not a factor, the analysis above controls. The entire

17  class of Plaintiffs lacks any viable avenue to recovery. Indeed, any recovery would be suspect.

18  These Plaintiffs paid for a service, and received said service. There has been no breach of any

19  agreement, and the parties have fully complied with their various obligations. Put simply, there is

20  no class-wide theory of liability. The only theories which might not be subject to summary

21  adjudication—whether they involve renter's insurance, washers and dryers, or Rent Plus—do not

22  apply to the whole class. As such, if those facts are necessary to establish liability, the only

23  resolution to these issues must be class decertification.

24      Federal Civil Procedure Rule 23 "provides district courts with broad discretion to … revisit

25  … certification throughout the legal proceedings before the court." *Dukes v. Wal-Mart, Inc*., 509

26  F.3d 1168, 1176 (9th Cir. 2007) and see *Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 579 (9th

27  Cir. 2010) (on rehearing en banc), and while strictly speaking, the decertification "standard of

28  review is the same as a motion for class certification: whether the Rule 23 requirements are met"

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   *Marlo v. United Parcel Service, Inc.*, 251 F.R.D. 476, 479 (CD Cal. 2008), only "'developments in

2   the litigation, such as the discovery of new facts or changes in the parties or in the substantive or

3   procedural law, will necessitate reconsideration of the earlier order and the granting or denial of

4   certification or redefinition of the class.'" *O'Connor v. Boeing North American, Inc.,* 197 F.R.D.

5   404, 410 (CD Cal. 2000).

6          In this case, when opposing Plaintiffs' Motion for Class Certification, Defendants argued

7   that evaluating the class claims would require a property-by-property analysis. (Matthews Dec.,

8   Exh. 1.) In their Reply, Plaintiffs assured this Court in their Motion for Class Certification that a

9   property-by-property analysis would be unnecessary, and this Court took Plaintiffs at their word.

10  (Matthews Dec., Exh. 2.) Now, hundreds of thousands of dollars of property-by-property

11  discovery later, Plaintiffs may (or may not) ask this Court to consider facts regarding specific

12  properties at specific times in order to establish liability. Defendants respectfully contend that if

13  such a granular analysis is necessary, this class should never have been certified in the first place,

14  and decertification is appropriate now. As such, the key inquiry is whether Plaintiffs contend that

15  the question of whether specific charges were, at individual properties over particular time

16  periods, mandatory conditions of leasing, is necessary to establish liability. If that inquiry is

17  necessary, this class should be decertified, as there are no facts to suggest that mandatory

18  imposition of such charges is typical of the class as a whole. Indeed, with fewer than half of

19  Defendants' Section 8 tenants for the liability period being party to an ASA at all, the necessary

20  conclusion is the opposite.

21  **VIII.   CONCLUSION**

22         For the reasons set forth above, Defendants respectfully request that the Court grant

23  summary judgment in their favor as to each and all of Plaintiffs' causes of action. If the Court

24  determines that facts relating to whether ASA charges were imposed as a mandatory condition of

25  leasing, Defendants request that the Court decertify Plaintiffs' class, on the grounds that class-

26  wide claims are not typical of the class as a whole, and the class no longer meets the requirements

27  of Rule 23.

28  ///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-4329-3867.1                                   15                              2:15-cv-00799-KJM-DB
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

1   DATED: April 22, 2022                    LEWIS BRISBOIS BISGAARD & SMITH LLP

2

3                                    By:   */s/Ryan Matthews*

4                                          Joseph A. Salazar, Jr.
                                           Ryan Matthews
5                                          Attorneys for Defendants,
                                           Wasatch Advantage Group, LLC; Wasatch
6                                          Property Management, Inc.; Wasatch Pool
                                           Holdings, LLC, Chesapeake Commons Holdings,
7                                          LLC; Logan Park Apartments, LLC; Logan Park
                                           Apartments, LP
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

## **FEDERAL COURT PROOF OF SERVICE**

USA-Terry v Wasatch Property Management, et al.
Case No. 2:15-cv-00799-KJM-DB

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On **April 22, 2022**, I served the following document(s):

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION, OR IN THE FURTHER ALTERNATIVE, CLASS DECERTIFICATION**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒ **(BY COURT'S CM/ECF SYSTEM)**  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on **April 22, 2022**, at Sacramento, California.


*/s/Roxy A. Chipak*
Roxy A. Chipak

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SERVICE LIST
### *USA-Terry v Wasatch Property Management, et al.*
### Case No. 2:15-cv-00799-KJM-DB

| | |
|---|---|
| Andrew Wolff<br>Law Office of Andrew Wolff, PC<br>1956 Webster Street, Suite 275<br>Oakland, CA 94612 | ***Attorney for Plaintiffs***<br>***Denika Terry and Roy Huskey, III***<br><br>Tel.: (510) 834-3300<br>Email: andrew@awolfflaw.com |
| Jesse Newmark<br>CENTRO LEGAL DE LA RAZA<br>3022 International Blvd., Suite 410<br>Oakland, CA 94601 | ***Attorney for Plaintiffs***<br>***Denika Terry and Roy Huskey, III***<br><br>Tel.: (510) 437-1554 x115<br>Fax: (510) 437-9164<br>Email: jessenewmark@centrolegal.org |
| Laura L. Ho<br>Anne Bellows<br>Stephanie Tilden<br>GOLDSTEIN, BORGEN, DARDARIAN &<br>HO<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612 | ***Attorneys for Plaintiffs and Relators and the***<br>***Certified Classes***<br><br>Tel: (510) 763-9800<br>Fax: (510) 835-1417<br>Email: ljo@gbdhlegal.com<br>Email: abellows@gbdhlegal.com<br>Email: stilden@gbdhlegal.com<br>Email: sgrimes@gbdhlegal.com<br>Email: dvaldez@gbdhlegal.com |
| Vincente Antonio Tennerelli<br>United States Attorney's Office<br>2500 Tulare Street, Suite 4401<br>Fresno, CA 93721 | ***Attorney for Intervenor Plaintiff***<br>***United States of America***<br><br>Tel.: (559) 497-4080<br>Email: Vincente.Tennerelli@usdoj.gov<br>Email: joni.jones@usdoj.gov |
| Jocelyn D. Larkin<br>Lindsay Nako<br>The Impact Fund<br>2080 Addison Street, Suite 5<br>Berkeley, CA 94704 | ***Attorney for Plaintiffs***<br><br>Tel: (510) 845-3473 x.306<br>Fax: (510) 845-3654<br>Email: jlarkin@impactfund.org<br>Email: lnako@impactfund.org |



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW