# Exhibit 10

```
 1                  UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF CALIFORNIA

 3                       _____

 4

 5     UNITED STATES OF AMERICA,      )

 6     et al.,                        )

 7                                    )

 8             Plaintiffs,            )

 9                                    )

10        vs.                         ) No. 2:15-cv-00799-KJM-DB

11                                    )

12     WASATCH ADVANTAGE GROUP, LLC,  )

13     et al.,                        )

14                                    )

15             Defendants.            )

16     _____)

17

18                 DEPOSITION OF BARBARA CAVEY

19                   Wednesday, August 2, 2017

20                      Fresno, California

21

22

23

24     Reported by:  Sandra L. Edmonson, CSR No. 7704, RMR, CRR

25     Pages 1 - 138

                                                        Page 1
```

```
 1        A.    Yes.
 2        Q.    Because any change would also change the
 3   calculations and rent?
 4        A.    Yes.
 5        Q.    All right.  Now, can you also turn to Exhibit
 6   No. 3, the second-to-last page, which is CY 151?  You'll
 7   see here that this is the "Additional Services
 8   Agreement" that's used by Wasatch --
 9        A.    Yes.
10        Q.    -- in the Section 8 program.
11              Now, these additional services you said are
12   fine as long as they're not part of the RFTA, correct?
13        A.    Right.
14        Q.    Okay.  Now, things like housekeeping services,
15   they're not part of what we would see here in the HAP
16   contract, Part A, is it?
17        A.    No.
18        Q.    Okay.  So that would be an additional service,
19   so to speak?
20        A.    Yes.
21        Q.    Intrusion and security alarm service, that
22   would also not be part of the HAP A contract?
23        A.    Right.  Right.
24        Q.    Now, if a tenant enters into this agreement
25   with the landlord, this is separate and apart from the
```

Page 43

```
 1   HAP contract, correct?
 2        A.   Yes.
 3        Q.   Have you ever disapproved of a HAP contract
 4   with Wasatch due to what's in the additional services
 5   agreement?
 6        A.   No.
 7        Q.   Do you know if any one of your coworkers or
 8   people in your housing authority have?
 9        A.   Not to my knowledge.
10        Q.   There's not going to be any kind of overlap
11   with what's in an additional services agreement and
12   utilities and appliances that are in the HAP Part A?
13        A.   There should not be.
14        Q.   Okay.  Have you had any discussions with other
15   agencies, sister agencies so to speak, other public
16   housing agencies regarding additional service
17   agreements?
18        A.   No.
19        Q.   Have you ever heard other public housing
20   agencies rejecting a HAP contract due to what's in an
21   additional services agreement or something similar from
22   a landlord?
23        A.   No.
24        Q.   Do you know if other landlords in the area also
25   offer additional services or something similar?
```

Page 44

1  utilities that wouldn't be listed here.  I mean, this
2  is -- these utilities are in -- in conjunction with the
3  unit, the habitability of the unit, HQS, housing quality
4  standards.  This is -- the utilities we're mentioning
5  here is in order to make the unit inhabitable.
6  BY MS. LEVINE:
7      Q.  And looking at this sentence, it says, "Unless
8  otherwise specified below, the owner shall pay for all
9  utilities and appliances provided by the owner."
10          So if there's an appliance that's not specified
11 below, the owner has to pay for it, right?
12          MR. NAM:  Objection; calls for a legal
13 conclusion.
14          MR. LOZADA:  Join.
15          THE WITNESS:  So you mean like a toaster?
16 BY MS. LEVINE:
17     Q.  I'm looking at this sentence and I'm
18 wondering --
19     A.  Because --
20     Q.  -- what you -- what does that mean --
21     A.  Because it --
22     Q.  -- "unless otherwise specified below, the owner
23 shall pay for all utilities and appliances provided by
24 the owner"?
25     A.  Well, most of that would go into "Other

Page 115

```
 1   Electric."
 2        Q.   Okay.  So who has to pay for utilities and
 3   appliances that aren't specified below?
 4             MR. NAM:  Calls for a legal conclusion.
 5             MR. LOZADA:  Join.
 6             THE WITNESS:  Appliances would go under "Other
 7   Electric" and utilities are listed there.  These are all
 8   the utilities that go along with a safe housing to house
 9   a client and make it habitable.
10   BY MS. LEVINE:
11        Q.   The instructions at the top of the page imply
12   that it would be possible that something is --
13        A.   But what it says, it says whatever is listed on
14   this paper.  It says, "Unless otherwise specified below,
15   the owner shall . . ."  Well, all the utilities are
16   listed here.  And if appliances is in the -- in the
17   unit, we wouldn't -- it would need to be operable, and
18   it would all be included in these -- these utilities
19   right here.  We're talking utilities, not services.
20        Q.   So are you saying that it's impossible that
21   something -- that a utility or appliance would be in the
22   unit that's not listed below?
23             MR. LOZADA:  Objection to the extent it may
24   misstate the witness's testimony.
25             MR. NAM:  Join.
```

Page 116

```
 1                THE WITNESS:  Well, I guess --
 2   BY MS. LEVINE:
 3        Q.   I'll repeat that.
 4             Could a utility or appliance be in the unit --
 5        A.   I guess --
 6        Q.   -- not listed below?
 7        A.   I guess -- I guess there could be, but I'm
 8   not -- you know, you would have to identify what that
 9   one is to make this unit habitable to live in.  What the
10   housing authority is looking for and HUD is looking for,
11   housing quality standards, what makes a unit habitable
12   for the client to be able to live.
13        Q.   To be clear, I'm not talking about what -- the
14   minimum requirements.  Clearly there are many extras
15   that a tenant could be charged for, correct?
16        A.   If they chose to have that amenity, I guess.
17        Q.   So they would have to choose it; is that right?
18        A.   It's -- if it's out of this scope of utilities
19   right here, yes.  This is -- this is -- this is what HUD
20   describes as making a unit habitable.  You would need
21   water, garbage, sewer, somebody needs to pay the PG&E,
22   and all that's determined with the contract rent.  So if
23   the owner determines that he's going to pay the PG&E --
24   which I have dealt with before, which I can't
25   understand, but they have done it -- we're going to give
```

Page 117

```
 1   them -- we're going to give them all the utility
 2   allowance, and we're going to make their contract rent
 3   higher.  It doesn't happen often, but that's what --
 4   that's what this is for, to determine who gets the
 5   utility allowance, and these are the allowances that HUD
 6   approved:  Water, garbage, and sewer, and PG&E.
 7        Q.   Am I correct that a washer/dryer in the unit is
 8   an appliance?
 9        A.   It is an appliance.
10        Q.   So if there is no washer/dryer listed on this
11   list --
12        A.   Right.
13        Q.   -- but it's in the unit --
14        A.   Right.
15        Q.   -- who pays for it?
16             MR. NAM:  Objection; incomplete hypothetical.
17             THE WITNESS:  That would become other electric.
18   So whoever's paying for the electric is going to --
19   BY MS. LEVINE:
20        Q.   So you're saying it should be listed, right?
21        A.   No, because the appliance is an amenity, not a
22   utility allowance.
23        Q.   Okay.  So if it's other electric but it's not
24   listed here, so it's not designated, who pays for that
25   other electric?
```

Page 118