# Exhibit 14

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH A. SALAZAR JR., SB# 169551
    E-Mail: Joe.Salazar@lewisbrisbois.com
YOON-WOO NAM, SB# 284644
    E-Mail: Yoon-Woo.Nam@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
Sacramento, California 95833
Telephone: 916.564.5400
Facsimile: 916.564.5444

Attorneys for Wasatch Advantage Group, LLC;
Wasatch Property Management, Inc.; Wasatch
Pool Holdings, LLC, Chesapeake Commons
Holdings, LLC; Logan Park Apartments, LLC;
Logan Park Apartments, LP

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. DENIKA TERRY and ROY HUSKEY III, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA,<br><br>　　　　Plaintiffs/Relators,<br><br>　　vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC; LOGAN PARK APARTMENTS, LP,<br><br>　　　　Defendants. | CASE NO. 2:15-cv-00799-KJM-DB<br><br>**DECLARATION OF SHANNON FOX**<br><br>The Hon. Kimberly J. Mueller<br><br>Trial Date:　　None Set |

## DECLARATION OF SHANNON FOX

I, Shannon Fox, make the following declaration of my own personal knowledge and if called upon could and would competently testify to the contents hereto:

1. I am an employee with the Sacramento Housing and Redevelopment Agency (SHRA). I have worked here for approximately three years and my job title is Housing Program Technician. In my current position, I oversee portions of the Federal Housing Choice Voucher (HCV) Program, commonly known as Section 8. I have been with this particular unit at SHRA the entire time I have worked for the agency, and I am familiar with the program and how it is administered at the local level.

2. As a broad overview, SHRA administers the HCV Program for Sacramento County as the local Public Housing Agency (PHA). In order to properly perform my job, I have to be familiar with the U.S. Department of Housing and Urban Development (HUD) regulations found at 24 CFR Part 982, the SHRA's HCV Administrative Plan, the Housing Assistance Payments (HAP) documents including the HAP contracts and how they are integrated into the lease agreements between HCV Tenants and property Owners.

3. As the PHA for this area, SHRA processes housing vouchers for eligible families. Once a client finds a rental unit, SHRA assists Tenants in filling out the documentation to get the Tenant into an eligible apartment or "contract unit" as it is called under the program. Part of that documentation includes a "rent reasonableness" analysis pursuant to the provisions found in 24 CFR §982.507. Among other items, that analysis takes into consideration the location, quality, size, unit type and age of the apartment in question. These factors are taken into consideration in comparison with rents being charged for other comparable unassisted units in the locality. Care is given to ensure that HCV tenants are charged no more than unassisted tenants for similar contract units. Similarly, I make sure that tenants are not separately charged for items that are typically included in base rent for that locality.

4. In performing its obligations, SHRA uses HUD required program contracts that includes the HAP Contract components (Parts A, B and C) as required by 24 CFR §982.162. SHRA is also required to comply with the HUD Regulations (see 24 CFR §982.153) and Administrative Plans adopted by a PHA and "must be in accordance with HUD regulations and requirements (24 CFR §982.54(b)).

5. If SHRA believes that a proposed lease fails to conform to the HAP Contract requirements, HUD Regulations or SHRA's Administrative Plan, its practice is to bring these issues to the attention of the tenant and the property owner in an attempt to resolve the matter informally. As set forth in Part B of the HAP Contract (Body of Contract) at Part 10 (b, c and d), if SHRA determines that a breach has occurred, it may exercise any of its rights and remedies under the HAP Contract or any other available rights and remedies for the breach. The Owners, in turn, are required to take corrective action and verify the same to SHRA. In addition, SHRA has the right to pursue recovery of over payments, suspension of housing assistance payments, abatement or other reduction of housing assistance payments including but not limited to the termination of the housing assistance payments and termination of the HAP contract itself. In addition to that, SHRA can seek and obtain judicial relief including specific performance, injunctive relief or the recovery of damages. This full suite of enforcement tools are delegated to SHRA by HUD in part by 24 CFR §982.453 and more fully by Part B of the HAP contract at Parts 10(b), (c), and (d).

6. The 2017 Administrative Plan for the Housing Authority of the County of Sacramento, California, specifically addresses separate agreements that exist between owners and tenants and their potential for abuse. (Attached is a true and correct portion of the 2017 Plan, pages 9-13 and 9-14 that discuss separate agreements.) The separate agreements can be illegal where the owner accepts from the tenant additional payment for rent and or utilities beyond that approved in the HAP Contract itself. There are also separate agreements that are acceptable to SHRA when the items in question are not those that are required by the Housing Quality Standards found at 24 CFR §982.401 and are not typically included in rent to non-HCV tenants. As the Administrative Plan tacitly acknowledges, a blanket statement concerning separate agreements cannot be made. Instead, SHRA looks at what is contemplated by the separate agreement, analyzes the items according to the HUD regulations and the local housing market (if the item is typically included in base rent) and then makes a determination of whether the separate agreement is acceptable. If SHRA determines that an owner seeks to use a separate agreement to

1 receive payment for additional items that are required by the HQS regulations, that are routinely
2 provided to unassisted families as part of the lease, or are permanently installed in the unit this
3 would be considered an illegal side agreement. Conversely, if the family and owner have
4 executed a written agreement for items that fall outside these confines and those charges are
5 reasonable, they will be allowed by SHRA.

6     7.    It is the practice of SHRA to require the owner to list all appliances that are
7 required under the HQS Guidelines on the HAP Contract and also to indicate who pays for the
8 various service and/or appliance- either the tenant or the owner. Items that are allowable under the
9 separate agreements provision of a written agreement do not need to be listed on the first page of
10 the HAP Contract and SHRA does not require this to be the case. For example, in-unit washers
11 and dryers, which are no doubt appliances, are items that can be provided for the convenience of
12 the tenant. Neither a washer or dryer are listed as required items under the HQS Regulations,
13 hence the agency does not require that they be listed in the HAP Contract. It is acceptable to
14 SHRA that washers and dryers be set forth in a separate agreement that lists the cost of the item so
15 the tenant is advised of the cost so long as those items are not typically included in base rent for
16 that locality, so long as they are not offered to unsubsidized tenants as part of the base rent, and so
17 long as the charge is reasonable.

18     8.    Under 24 CFR Part 982, the only limitation on requirements by the Owner upon
19 Tenants is found in 24 CFR §982.510(b). That section prohibits an Owner from requiring a tenant
20 to pay charges for meals or supportive services. Part C of the HAP contract repeats those two
21 prohibitions and adds that an owner cannot require the tenant to pay for furniture provided by the
22 Owner. To my knowledge, there is no prohibition to requiring tenants to provide proof of renter's
23 insurance under the HUD regulations (24 CFR Part 982) or the applicable Administrative Plan for
24 this area. If SHRA thought that this owner requirement violated the HCV Program, it would have
25 taken action to address that concern. To my knowledge, the SHRA has not taken such action.

26     9.    I am aware of the four Wasatch related or formerly related properties in
27 Sacramento. They are 6400 Data Drive in Rancho Cordova; 6633 Valley Hi Drive in Sacramento;
28

4719 50th Avenue in Sacramento; and 4141 Palm Avenue in Sacramento. I am also aware that these apartment complexes utilize Additional Service Agreements which are attached to the lease agreement between the Tenant and the Owner and which are provided to SHRA for review and approval. If SHRA thought that these particular lease agreements including the Additional Service Agreements violated any of the requirements that SHRA is required to enforce, it would advise the owner and take the necessary action. To the best of my knowledge, SHRA has not taken any action against the Wasatch defendants under the HCV Program.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on September 7, 2017, at Sacramento, California.

Shannon Fox, (Title) Housing Program Technician