**LEWIS BRISBOIS BISGAARD & SMITH** LLP
JOSEPH A. SALAZAR JR., SBN 169551
  E-Mail: Joe.Salazar@lewisbrisbois.com
RYAN MATTHEWS, SBN 311674
  E-Mail: Ryan.Matthews@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
Sacramento, California 95833
Telephone: 916.564.5400
Facsimile:  916.564.5444

Attorneys for Defendants,
Wasatch Advantage Group, LLC; Wasatch Property Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC; Logan Park Apartments, LLC; Logan Park Apartments, LP

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. DENIKA TERRY and ROY HUSKEY III, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA,<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC; LOGAN PARK APARTMENTS, LP,<br><br>Defendants. | CASE NO. 2:15-cv-00799-KJM-DB<br><br>**DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION OR IN THE FURTHER ALTERNATIVE FOR CLASS DECERTIFICATION**<br><br>Date:   May 27, 2022<br>Time:  10:00 a.m.<br>Crtrm.: 3, 15th Floor |

Defendants WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, and LOGAN PARK APARTMENTS, LP hereby submit this Separate Statement of Undisputed Material Facts in support of their Motion

for Summary Judgment.

1. The U.S. Department of Housing and Urban Development ("HUD") governs the Housing Choice Voucher Program (better known as the "Section 8 Program") nationwide.

Evidence: Plaintiffs' Fifth Amended Complaint, p. 13, ln. 14-16.

2. HUD delegates and authorizes a public housing agency ("PHA") to administer the Section 8 Program at the local level.

Evidence: 24 CFR 982.4 (b).

3. These PHAs adopt written administrative plans that establish local polices of administration of the program and these plans must strictly follow HUD requirements and regulations.

Evidence: 24 CFR 982.54 (a),(b).

4. By applying the administrative plans to the local Section 8 Program, PHAs serve as the enforcement wing of HUD's regulations at the local level.

Evidence: 24 CFR 982.407.

5. More broadly, PHAs promote the purpose of HUD's Housing Choice Voucher Program: to provide subsidies to families so that they can live in "decent, safe, and sanitary housing."

Evidence: 24 CFR 982.1 (a).

6. Nothing in the HUD regulations suggests that Section 8 is for assisting and educating families on how to manage their expenses, where to live or what type of housing they should live in.

Evidence: Declaration of Ryan Matthews ("Matthews Dec."), par. 2.

7. Through its PHAs, HUD requires that an owner of a dwelling and local PHA enter into a contract called a Housing Assistance Payments contract

Evidence: 24 CFR 982.451 (a).

8. Concurrent with the HAP contract, the PHAs must receive the lease agreement and related documents for the housing unit between an owner and Section 8 tenant, and a tenancy

addendum.

Evidence: 24 CFR 982.162 (a)(3), 982.308 (b).

9. The tenancy addendum (Part C of the HAP contract) lists in part the obligations and limitations of the owner and tenant for the term of the lease and HAP contract.

Evidence: Fifth Amended Complaint, Exh. A.

10. The tenancy addendum (Part C of the HAP contract) lists in part the obligations and limitations of the owner and tenant for the term of the lease and HAP contract.

Evidence: Fifth Amended Complaint, Exh. A.

11. Section 5 regulates the "Family Payment to Owner" and states that the family is responsible for paying the owner any portion of the rent to owner that is not covered by the PHA housing assistance payment.

Evidence: Fifth Amended Complaint, Exh. A.

12. "[T]he monthly housing assistance payment shall be credited against the monthly rent to owner for the contract unit."

Evidence: Fifth Amended Complaint, Exh. A.

13. Nothing in the HAP Contract or the HUD regulations concerning the Section 8 program mandate how a landlord must apply the family's rent to owner.

Evidence: Declaration of Ryan Matthews, par. 4.

14. The HAP contract and HUD regulations forbid an owner from placing charges in the lease for certain, specified amenities. The regulations do not permit a lease to require a tenant or family members to pay charges for (1) meals or (2) supportive services. In the HAP contract, this proscription is extended to a third amenity for furniture provided by the owner.

Evidence: Fifth Amended Complaint, Exh. A.

15. Both the HAP contract and HUD regulations also prohibit an owner from charging a tenant extra amounts for items customarily included in rent in the locality.

Evidence: 24 CFR 982.510 (c); Fifth Amended Complaint, Exh. A.

16. The local PHA calculates the rent to owner and family rent to owner that a Section



8 tenant pays (only if tenant's income calculation permits) in accordance with HUD regulations and other requirements.

Evidence: 24 CFR 982.4 (b), 982.451 (b)(1.

17. Rent to owner covers payments for housing services, maintenance and utilities that the owner is required to provide and pay for.

Evidence: 24 CFR 982.4 (b).

18. Each month, the monthly housing assistance payment by the PHA is credited to the monthly rent to owner under the tenant's lease.

Evidence: 24 CFR 982.451 (b)(2).

19. If the tenant also makes a monthly "family rent to owner" in conjunction with the monthly PHA payment, the total rent amount received by the owner cannot exceed the predetermined rent to owner amount.

Evidence: 24 CFR 982.451 (b)(3).

20. The PHA may not approve a lease between a Section 8 tenant and owner until it has determined that the initial rent to owner is a reasonable rent. To be reasonable, the PHA considers the housing unit's (1) location, quality, size, unity type, and age of the contract unit; and (2) the amenities, housing services, maintenance and utilities to be provided by the owner in accordance with the lease.

Evidence: 24 CFR 982.507 (a)(1-4).

21. An owner such as Wasatch must comply with the PHA administrative plan and HUD regulations or risk being in breach of the HAP contract. This could lead to termination of housing assistance payments or even termination of the HAP contract by the PHA.

Evidence: 24 CFR 982.453 (b).

22. An owner must maintain the housing unit in accordance with HQS, collect the family rent to owner and enforce the tenant's obligations under the lease.

Evidence: 24 CFR 982.453 (b)(2), (5), (6).

23. During the tenancy, the owner may terminate if the Section 8 tenant commits

1  serious or repeated violations of the terms and conditions of the lease. This includes termination

2  for failure to pay rent *or* other amounts due under the lease.

3      Evidence: 24 CFR 982.310 (a)(1).)

4      24.    If an owner wishes to evict a tenant for good cause or other lawful reason under the

5  HUD regulations, the owner must institute a court action.

6      Evidence: 24 CFR 982.310 (f).

7      25.    Defendants operate dozens of multi-family rental properties across multiple states.

8      Evidence: Yardi Data; Declaration of Mike Christiansen, Exh. A; par. 4.

9      26.    As part of their general business practices, Defendants offer tenants the opportunity

10  to enter into Additional Service Agreements ("ASA").

11      Evidence: Declaration of Jarom Johnson, par. 3.

12      27.    These ASAs allow tenants to select additional amenities which, in their estimation,

13  will enhance their living experience at one of Defendants' properties.

14      Evidence: Declaration of Jarom Johnson, par. 4.

15      28.    These amenities include, but are not limited to, covered parking, in-unit washers

16  and dryers, renter's insurance, media packages, and the Rent Plus service.

17      Evidence: Fifth Amended Complaint, Exh. G.

18      29.    Broadly speaking, these ASAs are optional for all tenants. However, there have

19  been limited instances in which tenants at particular properties were required to enter into ASAs

20  for one or more specific amenities as a condition of leasing.

21      Evidence: Deposition of Jarom Johnson, p. 187, ln. 7-18; Defendants' Third Further

22      Amended Responses to Plaintiff Roy Huskey III's Interrogatories, Set Five.

23      30.    Generally speaking, Section 8 tenants are provided with the same opportunities to

24  enter into ASAs as non-Section 8 tenants.

25      Evidence: Declaration of Jarom Johnson, par. 5.

26      31.    With respect to ASA amenities, non-Section 8 tenants do not receive any benefits

27  that Section 8 tenants are denied. Which is to say, if a Section 8 tenant is charged $10 for covered



28  4815-7770-0779.1      5      2:15-cv-00799-KJM-DB

1  parking, a non-Section 8 tenant will be charged the same amount.

2      Evidence: Declaration of Jarom Johnson, par. 6.

3      32.    On a company-wide basis, the data bears out that ASAs are optional for Section 8 tenants. Of the Section 8 tenants at Wasatch Property Management properties, only a fraction of the tenants have entered into an ASA of any kind.

    Evidence: Declaration of Mike Christiansen, par. 3-8; Exh. A.

33.    The data establishes that no ASA charges were incurred by all or even close to all of Wasatch's Section 8 tenants, which shows that there are no ASA charges which were mandatory conditions of leasing which the entire class of plaintiffs was required to incur.

    Evidence: Declaration of Mike Christiansen, par. 3-8; Exh. A.

34.    Once a tenant enters into an ASA, the tenant is required to pay the charges for the services they receive.

    Evidence: Deposition of Jarom Johnson, Vol. 1, p. 59, ln. 10-17.

35.    Tenant ledgers itemize those charges, in addition to any other amounts due under the lease, including utility charges and rent.

    Evidence: Declaration of Mike Christiansen, par. 9.

36.    Defendants utilize the Yardi Voyager system to handle tenant accounting.

    Evidence: Declaration of Mike Christiansen, par 10.

37.    The Yardi accounting software utilizes a payment priority sequence to apply tenant payments to all outstanding charges.

    Evidence: Exhibit 3 to the Deposition of Janae Jarvis.

38.    That payment priority sequence contains a large number of charge codes, and it applies tenant payments in sequence to each outstanding charge.

    Evidence: Exhibit 3 to the Deposition of Janae Jarvis

39.    The final charge in the payment priority sequence is Rent.

    Evidence: Exhibit 3 to the Deposition of Janae Jarvis

40.    The result is that if a tenant makes a payment for less than the full amount that said



4815-7770-0779.1      6      2:15-cv-00799-KJM-DB

DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION OR IN THE FURTHER ALTERNATIVE FOR CLASS DECERTIFICATION

1 tenant owes, the delinquent amounts will include any remaining rent owed for the month.

2       Evidence: Deposition of Jarom Johnson, Vol. 1, p. 121, ln. 16-p. 123, ln. 3.

3       41.    This accounting practice is industry standard, and is taught to landlords by the Institute of Real Estate Management.

      Evidence: Deposition of Robert Griswold, p. 173, ln. 6-21.

      42.    The purpose of leaving rent as the final charge in the payment priority sequence is to allow landlords to pursue evictions for delinquent amounts.

      Evidence: Deposition of Jarom Johnson, Vol. 1, p. 121, ln. 16-p. 123, ln. 3.

      43.    Housing authorities are generally aware of Defendants' use of Additional Services Agreements with Section 8 tenants.

      Evidence: Deposition of Mary Rizzo Shuman, p. 65, ln. 11-p. 66, ln. 14; Deposition of Barbara Cavey, p. 43, ln. 5-p. 44, ln. 9; Deposition of Cheryl Syme, p. 26, ln. 14-p. 27, ln. 22; Deposition of Jacqueline Rojas, p. 45, ln. 11-p. 46, ln. 13; Deposition of Jodi Parker, p. 55, ln. 10-p. 56, ln. 9; *see also* Declaration of Shannon Fox.

      44.    Multiple representatives of housing authorities have expressed approval of the use of ASAs in the context of the Housing Choice Voucher Program.

      Evidence: Deposition of Jodi Parker, p. 55, ln. 10-p. 56; Declaration of Shannon Fox

      45.    Wasatch generally submits the ASAs to the housing authorities as part of the lease packets when entering into HAP Contracts.

      Evidence: Declaration of Jarom Johnson, par. 7.

      46.    There are no facts in evidence to establish that any tenant did not receive the additional services that they signed up and paid for.

      Evidence: Declaration of Jarom Johnson, par. 8.



1 | DATED: April 22, 2022    LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/Ryan Matthews*
    Joseph A. Salazar, Jr.
    Ryan Matthews
    Attorneys for Defendants,
    Wasatch Advantage Group, LLC; Wasatch Property Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC; Logan Park Apartments, LLC; Logan Park Apartments, LP

DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION OR IN THE FURTHER ALTERNATIVE FOR CLASS DECERTIFICATION

# FEDERAL COURT PROOF OF SERVICE

USA-Terry v Wasatch Property Management, et al.
Case No. 2:15-cv-00799-KJM-DB

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On **April 22, 2022**, I served the following document(s):

**DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION OR IN THE FURTHER ALTERNATIVE FOR CLASS DECERTIFICATION**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on **April 22, 2022**, at Sacramento, California.

*/s/Roxy A. Chipak*
Roxy A. Chipak



# SERVICE LIST
### USA-Terry v Wasatch Property Management, et al.
### Case No. 2:15-cv-00799-KJM-DB

| | |
|---|---|
| Andrew Wolff<br>Law Office of Andrew Wolff, PC<br>1956 Webster Street, Suite 275<br>Oakland, CA 94612 | ***Attorney for Plaintiffs***<br>***Denika Terry and Roy Huskey, III***<br><br>Tel.:  (510) 834-3300<br>Email:  andrew@awolfflaw.com |
| Jesse Newmark<br>CENTRO LEGAL DE LA RAZA<br>3022 International Blvd., Suite 410<br>Oakland, CA 94601 | ***Attorney for Plaintiffs***<br>***Denika Terry and Roy Huskey, III***<br><br>Tel.:  (510) 437-1554 x115<br>Fax:  (510) 437-9164<br>Email:  jessenewmark@centrolegal.org |
| Laura L. Ho<br>Anne Bellows<br>Stephanie Tilden<br>GOLDSTEIN, BORGEN, DARDARIAN & HO<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612 | ***Attorneys for Plaintiffs and Relators and the Certified Classes***<br><br>Tel:  (510) 763-9800<br>Fax:  (510) 835-1417<br>Email:  ljo@gbdhlegal.com<br>Email:  abellows@gbdhlegal.com<br>Email:  stilden@gbdhlegal.com<br>Email:  sgrimes@gbdhlegal.com<br>Email:  dvaldez@gbdhlegal.com |
| Vincente Antonio Tennerelli<br>United States Attorney's Office<br>2500 Tulare Street, Suite 4401<br>Fresno, CA 93721 | ***Attorney for Intervenor Plaintiff***<br>***United States of America***<br><br>Tel.:  (559) 497-4080<br>Email: Vincente.Tennerelli@usdoj.gov<br>Email: joni.jones@usdoj.gov |
| Jocelyn D. Larkin<br>Lindsay Nako<br>The Impact Fund<br>2080 Addison Street, Suite 5<br>Berkeley, CA 94704 | ***Attorney for Plaintiffs***<br><br>Tel: (510) 845-3473 x.306<br>Fax: (510) 845-3654<br>Email: jlarkin@impactfund.org<br>Email: lnako@impactfund.org |

