Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | (Fax) (510) 835-1417

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Telephone: (510) 834-3300 | (Fax) (510) 834-3377

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Telephone: (510) 437-1863 | (Fax) (510) 437-9164

Jocelyn Larkin (SBN 110817)
jlarkin@impactfund.org
Lindsay Nako (SBN 239090)
lnako@impactfund.org
THE IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473 | (Fax) (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' AND RELATORS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:     July 8, 2022<br>Time:     10:00 a.m.<br>Dept:     Courtroom 3, 15th Floor<br>Before:  Hon. Chief Judge Kimberly J. Mueller<br><br>Trial Date:    None Set |

853945.19

Pls.' Statement of Undisputed Facts in Supp. Mot. Part. Summ. J. – Case No. 2:15-CV-00799 KJM-DB

1 | LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK
2 | HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON
3 | APARTMENTS, LP, BENT TREE APARTMENTS, LLC, CALIFORNIA PLACE
4 | APARTMENTS, LLC, CAMELOT LAKES HOLDINGS, LLC, CANYON CLUB HOLDINGS,
5 | LLC, COURTYARD AT CENTRAL PARK APARTMENTS, LLC, CREEKSIDE HOLDINGS,
6 | LTD, HAYWARD SENIOR APARTMENTS, LP, HERITAGE PARK APARTMENTS, LP, OAK
7 | VALLEY APARTMENTS, LLC, OAK VALLEY HOLDINGS, LP, PEPPERTREE APARTMENT
8 | HOLDINGS, LP, PIEDMONT APARTMENTS, LP, POINT NATOMAS APARTMENTS, LLC,
9 | POINT NATOMAS APARTMENTS, LP, RIVER OAKS HOLDINGS, LLC, SHADOW WAY
10 | APARTMENTS, LP, SPRING VILLA APARTMENTS, LP, SUN VALLEY HOLDINGS,
11 | LTD, VILLAGE GROVE APARTMENTS, LP, WASATCH QUAIL RUN GP, LLC, WASATCH
12 | PREMIER PROPERTIES, LLC, WASATCH POOL HOLDINGS III, LLC,
13 | and DOES 1-4,
14 |     Defendants.

853945.19

## I.   **PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS**

Plaintiffs and Relators ("Plaintiffs") provide the following Statement of Undisputed Facts in support of their Motion for Partial Summary Judgment (filed herewith).  For clarity and brevity, Plaintiffs provide the following definitions of terms used in the Statement.

1.     "Section 8" shall refer to the Housing Choice Voucher program, commonly called the Section 8 program, funded by the United Stated Department of Housing and Urban Development and administered by local public housing authorities.

2.     "HAP Contract" shall refer to the Housing Assistance Payment Contract that is required to be executed by the landlord and the applicable public housing authority for all Section 8 tenancies.

3.     "Relevant Period" shall refer to the period from April 14, 2005 to the present.

4.     "Class Members" shall refer to all members of the certified Rule 23(b)(3) class and all existing members of the Rule 23(b)(2) injunctive relief class.

5.     "Pay or Quit Notices" shall refer to notices, by varying titles, that notify tenants they must either pay an amount outstanding or vacate their apartment within a set number of days, or Wasatch will begin eviction proceedings.  "Pay or Quit Notices" encompasses notices served by Wasatch entitled "Pay or Vacate," "Pay Rent or Quit," "Comply with Financial Covenant of Lease or Quit," "Comply with Lease or Quit" (when the compliance requested is payment), and the untitled Arizona form notice to the same effect.

### A.   **Facts Relating to Wasatch's Practice of Collecting Additional Charges from Section 8 Tenants Beyond The "Rent to Owner" Authorized by Tenants' HAP Contracts**

| Statement of Undisputed Fact | Evidence |
| --- | --- |
| 1.  For each tenant participating in the Section 8 program ("Section 8 tenant") at a property managed by Wasatch throughout the Relevant Period, including all Class Members, Wasatch executed a HAP Contract with the local public housing authority ("PHA"). | Defs' Resp. to Terry Req. for Admis., Set 5. No. 44, Bellows Decl. Ex. 35; <br><br> Jt. Fact Stip. Re Yardi Data ("Yardi Stip;") ¶ 15, filed herewith (Section 8 tenants are identified in Defendants' Yardi data by the existence of a "rentHAP" charge on the tenants' ledger). |
| 2.  Wasatch has executed a Residential Rental Agreement for each Section 8 tenant, including all Class Members. | Defs.' Resp. to Terry Req. for Admis, (Set 5) No. 45, Bellows Decl. Ex. 35; <br><br> Fetter Dep. 210:1-211:4, Oct. 17, 2021, Bellows |

853945.19

| Statement of Undisputed Fact | Evidence |
|---|---|
| | Decl. Ex. 3 at 33-34; Exemplars of Residential Rental Agreements from the files of Section 8 tenants. Bellows Ex. 14. |
| 3. The Additional Services Agreement is a standard form that Wasatch has used throughout the Relevant Period to enroll tenants in fixed monthly charges including parking, in-unit washers and dryers, renters insurance, media packages, and/or a credit-reporting service called "RentPlus" ("additional service charges" or "additional charges"). | Additional Services Agreements, Bellows Decl. Ex. 15 & ¶ 16; Fetter Dep. 266:18-21, Oct. 27, 2021, Bellows Decl. Ex. 3 at 43 (confirming that the Additional Services Agreement is a standard Wasatch form). |
| 4. The additional charges are separate from and in addition to the amount that Wasatch describes as the "rent" or "base rent." | Fetter Dep. 499:11-501:9, Oct. 28, 2021, Bellows Decl. Ex. 3 at 58-60, ("base rent" refers to rent exclusive of additional service charges); Monthly Cost Breakdown forms Bellows Decl. Ex. 17. |
| 5. Throughout the Relevant Period, Wasatch has required tenants to pay the additional charges on the Additional Services Agreement throughout the terms covered by the tenants' leases. | Defs' Resp. to Terry Req. for Admis., Set 2, No. 11, Bellows Decl. Ex. 33; Johnson Dep. 156:23-157:23, July 19, 2021, Bellows Decl. Ex. 9 at 36-37. |
| 6. During the Relevant Period, Wasatch has charged thousands of Section 8 tenants, including all Class Members, additional charges pursuant to Wasatch's standard Additional Service Agreement. | Defs.' Resp. to Terry Req. for Admis., Set 5, No. 46, Bellows Decl. Ex. 35; Expert Report of David Breshears Report ¶¶ 29-32, filed herewith; Yardi Stip. ¶¶ 14-15, 23. |
| 7. Throughout the Relevant Period, Wasatch has never included additional service charges in the "rent to owner" amount submitted to local PHAs in HAP Contracts and other required Section 8 documents. | Defs' Resp. to Terry Req. for Admis., Set 2, Nos. 11 & 12, Bellows Decl. Ex. 33; Defs.' Am. Resp. to Terry Req. for Admis., Set 2, No. 13, Bellows Decl. 34; Johnson Dep. 56:4-25, July 19, 2021, Bellows Decl. Ex. 9 at 2; |

2

853945.19

| Statement of Undisputed Fact | Evidence |
|---|---|
| | "How-To Voucher Rents (i.e. Section 8 Rents)," Bellows Decl. Ex 26 (instructing personnel not to include "additional fees" when submitting rent increase notices to PHAs). |

**B.   Facts Regarding Wasatch's Standard Forms That Describe the Additional Charges as a Component of Rent.**

| Statement of Undisputed Fact | Evidence |
|---|---|
| 8.   Until a revision date of May 2012, Wasatch's Additional Services Agreement included a page entitled "Terms and Conditions of Additional Services Agreement" that included the following term:<br><br>"Default by the Lessee on Agreement:  A default under this Agreement is a default under the Lease and a default under the Lease is a default under this Agreement.   If Lessee fails to pay any Monthly Fee when due or if Lessee fails to perform any other obligation contained in the Agreement within the time required, the Lessor may terminate not only this Agreement, but shall cause the Community to terminate the Residents tenancy upon service and expiration of a Ten Day Notice to Perform Covenant or Quit for failure to pay said Monthly Fee(s) or for failure to perform any other obligation contained in the Agreement." | Additional Services Agreements, Bellows Decl. ¶14 & Ex. 15 at 2-3, 5-6, 8-10; *Note that a revision date is provided at the bottom right corner of the Additional Services Agreement.*<br><br>*See also* Defs.' Resp. to Terry Req. for Admis. (Set 5) No. 41, Bellows Decl. Ex. 36. |
| 9.   As part of the revision dated May 2012, Wasatch removed the "Terms and Conditions of Additional Services Agreement" page as part of an initiative to reduce the page count of the lease package. | Fetter Dep. 272:1-10, Oct. 27, 2021, Bellows Decl. Ex. 3 at 44;<br><br>Additional Services Agreements, Bellows Decl. ¶16 & Ex. 15 at 2-3, 5-6, 8-10. |
| 10. Even after removing the "Terms and Conditions of Additional Services Agreement" page from the lease, Wasatch has continued to view a failure to pay additional service charges as a default under the lease. | Jarvis Dep. 158:6-18, Aug. 10, 2017, Bellows Decl. Ex. 5 at 13;<br><br>Exemplars of pay or quit notices designating failure to pay additional service charges as a violation of the lease, Bellows Decl. Ex. 19. |

853945.19

| Statement of Undisputed Fact | Evidence |
|---|---|
| | Exemplars of pay or quit notices seeking additional charges without rent, Bellows Decl. Ex. 20. |
| 11. Since a revision date of May 2012, the section entitled "Rent" in Wasatch's "Residential Rental Agreement" has required tenants to pay the additional service charges along with their base rent, stating: "The sum of $____ plus additional services of $____ (*refer to Additional Services Agreement*), is due, in advance, on the first day of each calendar month commencing ____." | Residential Rental Agreements, Bellows Decl. Ex. 14 at 52, 56, 61, 65, 70, 77, 83, 88, 93 and 100. *Note that the revision date is marked at the bottom right corner on the last page of the Residential Rental Agreement.* |
| 12. Wasatch's lease includes a page entitled "Monthly Cost Breakdown" that includes "*base rent*" *and* the additional charges in the "Total Monthly Obligation." The form instructs tenants, "Your monthly payment is due and payable . . . on or before the 1st day of each month." | Monthly Cost Breakdown forms, Bellows Decl. Ex. 17; Fetter Dep. 499:11-500:18, Oct. 28, 2021, Bellows Decl. Ex. 3 at 58-59 (the Monthly Cost Breakdown is part of the lease); Jarvis Dep. 224:13-18, Aug. 10, 2017, Bellows Decl. Ex. 5 at 14. |
| 13. Wasatch's form "Renewal Notification Letter" describes additional service charges as part of the tenant's rent, stating: "When you renew your lease, your new rental rate will be $_____, this rate includes rent and any applicable service items (such as parking, renter's insurance, pet, etc)." | Renewal Notification Letters, Bellows Decl. Ex. 16; Fetter Dep. 510:2-512:23, Oct. 28, 2021, Bellows Decl. Ex. 3 at 63-64. |
| 14. Wasatch's form "Move-In Cost Sheets" combines rent and additional charges in several places: The form states: "Your total monthly obligation will be $____, not including utilities" (providing a number that combines rent and additional service charges) The form lists a single amount for "Rent and Additional Services" for the first month, frequently prorated, at the top of the left | Exemplars of Move-In Cost Sheets, Bellows Decl. Ex 24. |

4

853945.19

| Statement of Undisputed Fact | Evidence |
|---|---|
| column of the table.<br><br>The amount for "Total Move in & First Month's Rent" provided at the bottom of the left column of the table includes additional service charges. | |
| 15. Wasatch's form "Monthly Statement of Rental Account" informs tenants "[t]he first of the month is quickly approaching and rent will be due," then provides a "Total Due" that includes additional charges and informs tenants of that they will incur a late fee "[i]f rent is not paid by 5:00 pm on the 3rd." | Exemplars of Monthly Statements of Rental Account,  Bellows Decl. Ex.17. |

**C.**   **Facts Relating to Wasatch's Accounting Practices Converting Additional Charges into Rent.**

| Statement of Undisputed Fact | Evidence |
|---|---|
| 16. Throughout the Relevant Period, Wasatch has maintained the payment sequence (a.k.a. payment allocation) policy reflected in Exhibit 3 to the Jarvis Dep. August 10, 2017.<br><br>Under that payment sequence, tenant payments are applied first to additional service charges on the tenant's ledger, and only after the additional service charges are paid in full are any residual amounts applied to base rent charges. | Defs' Further Am. Resp. to Terry Req. for Admis. (Set 1) Nos. 5 & 6, Bellows Decl. Ex. 32;<br><br>"Payment Sequence" (Jarvis Dep. Ex. 3), Bellows Decl. Ex. 24;<br><br>Johnson Decl. in Supp. Defs.' Opp'n Mot. Class Cert. ¶ 8, ECF No. 78-4;<br><br>Johnson Dep. 120:2-11, July 19, 2021, Bellows Decl. Ex. 9 at 14;<br><br>Fetter Dep. 100:21-101:5, 102:9-12, 104:14-108:21, Oct. 27, 2021, Bellows Decl. Ex. 3. |
| 17. The purpose of Wasatch's payment allocation policy is to maximize its ability to collect any unpaid amounts (including unpaid additional service charges) by ensuring that any outstanding amounts are designated unpaid rent and can be sought through eviction proceedings. | "Payment Sequence" (Jarvis Dep. Ex. 3), Bellows Decl. Ex. 24;<br><br>Fetter Dep. 103:14-104:5, 109:6-111:20, 112:23-113:6, Oct. 27, 2021, Bellows Decl. Ex 3 at 6-7 15-19;<br><br>Johnson Dep. 120:2-123:3, July 19, 2021, Bellows Decl. Ex. 9 at 14-17. |

853945.19

| **Statement of Undisputed Fact** | **Evidence** |
|---|---|
| 18. Wasatch's internal policy document summarizing its payment allocation policy states:<br><br>"The computer is programmed to apply all payments to all items other than RENT first, leaving any delinquent portion as RENT owed. In most areas that Wasatch operates in, properties can only go to court for RENT and not for depositions, additional service items (pet, parking, storage, etc.)." | "Payment Sequence" (Jarvis Dep. Ex. 3) at 1, Bellows Decl. Ex. 24. |
| 19. Wasatch's corporate deponents have testified that it is their understanding that Wasatch would be unsuccessful in pursuing an eviction for unpaid additional service charges in all states where the company operates. | Johnson Dep. 58:22-59:9, 122:16-123:3, July 19, 2021, Bellows Decl. Ex. 9 at 4-5, 16-17;<br><br>Jarvis Dep. 285:14-287:11, Sept. 14, 2021, Bellows Decl. Ex. 7 at 14-16;<br><br>Fetter Dep. 109:6-110:2, Oct. 27, 2021, Bellows Decl. Ex. 3 at 16-17. |
| 20. Section 8 tenants who are evicted for non-payment of rent will lose their voucher. | Johnson Dep. 125:17-128:16, July 19, 2021, Bellows Decl. Ex. 9 at 18-21;<br><br>Johnson Decl. in Supp. Defs.' Opp'n to Mot. Class Cert. ¶ 8, ECF No. 78-4. |
| 21. For most of the Relevant Period, Wasatch's Residential Rental Agreements included a term describing the payment allocation policy, using one of the following formulations:<br><br>"All payments received for rent and additional services shall first be applied to any past balance due and then to additional charges and then to current rent."<br><br>"Rent received shall first be applied to all sums owed and then to the current rent due." | Fetter Dep. 214:16-220:1, Oct. 27, 2021, Bellows Decl. Ex. 3 at 35-41;<br><br>Exemplar of Residential Rental Agreements, Bellows Decl. Ex. 14 at 1 (CP000219), 6 (AV000110), 10 (CV000535), 14 (BR000914), 19 (CP000308), 25 (MP000052), 29 (CP000124), 34 (CV000473), 39 (RS000071), 43 (CV000412), 48 (MP000174), 52 (CP000263). |

853945.19

| Statement of Undisputed Fact | Evidence |
|---|---|
| 22. While the language regarding the payment allocation policy was removed from the lease sometime prior to 2018, the payment sequence in effect has remained the same throughout the Relevant Period. | Jarvis Dep. 352:12-353:9, Sept. 14, 2021, Bellows Decl. Ex. 7 at 17-18;<br><br>Fetter Dep. 218:23-221:1, Oct. 27, 2021, Bellows Decl. Ex. 3 at 39-42;<br><br>*See, e.g.*, Bellows Decl. Ex. 14 at 64 (WEAU00003566) (2018 lease omitting the language referenced in U.F. 21)<br><br>U.F. No. 16. |

**D.**   **Facts Relating to Wasatch's Rent Collection Policies Requiring Section 8 Tenants to Pay Additional Charges to Remain in Their Homes**

| Statement of Undisputed Fact | Evidence |
|---|---|
| 23. The Wasatch policy document, entitled "Rent Collections Best Practices-How To" sets out Wasatch's standard policies regarding the collection of "accounts receivable" from tenants. | "Rent Collections Best Practices – How to" (Johnson Dep. Ex. 16),  Bellows Decl. Ex. 27;<br><br>Johnson Dep. 134:25-137:4, July 19, 2021, Bellows Decl. Ex. 9 at 22-25;<br><br>Fetter Dep. 133:16-134:4, Oct. 27, 2021, Bellows Decl. Ex. 3 at 26-27. |
| 24. The policies set out in the "Rent Collections Best Practice-How To" policy document have been in place throughout the Relevant Period, setting aside changes required by federal, state, and local emergency measures during the COVID-19 pandemic. | Johnson Dep. 139:24-140:8, 141:5-142:9, July 19, 2021, Bellows Decl. Ex. 9 at 27-30;<br><br>Mishler Dep. 112:18-115:13, Bellows Ex. 10 at 2-5;<br><br>Fetter Dep. 133:16-135:5, Oct. 27, 2021, Bellows Decl. Ex. 3 at 26-28. |
| 25. When tenants have an outstanding balance of less than $100, Wasatch policy is to send tenants "notice that future rents will not be accepted unless paid in full," meaning tenants must pay all outstanding charges, including additional service charges, before Wasatch will accept future rent payments. | "Rent Collections Best Practices – How to" (Johnson Dep. Ex. 16) at 2, Bellows Decl. Ex. 27;<br><br>Johnson Dep. 141:5-142:9, July 19, 2021, Bellow Decl. Ex. 9 at 29-30;<br><br>Fetter Dep. 132:11-16, Oct. 27, 2021, Bellows Decl. Ex. 3 at 25. |

853945.19

| Statement of Undisputed Fact | Evidence |
|---|---|
| 26. Wasatch policy is to serve a "Pay or Quit Notice" on any resident with a balance of $100 or more, even where some or all of the $100 threshold is made up by additional service charges. | "Rent Collections Best Practices – How to" (Johnson Dep. Ex. 16) at 2, Bellows Decl. Ex. 27;<br><br>Johnson Dep. 137:16-138:6, 139:24-140:8, 146:20-147:9, July 19, 2021, Bellows Decl. Ex. 9 at 25-28, 31-32;<br><br>Fetter Dep. 126:13-127:7, 128:14-129:2, Oct. 27, 2021, Bellows Decl. Ex. 3 at 21-24. |
| 27. Throughout the Relevant Period and throughout Utah, Arizona, Washington, and California, Wasatch has served Pay or Quit Notices which state that tenants must pay amounts owed or be subject to eviction, where the amounts demanded by the notice included unpaid Additional Service Charges. | Defs.' Resp. to Terry Req. for Admis., Set 2, No. 14, Bellows Decl. Ex. 33.<br><br>Exemplars of pay or quit notices combining additional service charges with unpaid rent, Bellows Decl. Ex. 19.<br><br>Exemplars of pay or quit notices seeking additional charges without rent, Bellows Decl. Ex. 20. |
| 28. Pay or Quit Notices inform tenants that they will face eviction proceedings unless they either pay the full amount stated or vacate their unit within a certain number of days. | Exemplars of pay or quit notices combining additional service charges with unpaid rent, Bellows Decl. Ex. 19.<br><br>Exemplars of pay or quit notices seeking additional charges without rent, Bellows Decl. Ex. 20.<br><br>Fetter Dep. 194:8-197:25, Oct. 27, 2021, Bellows Decl. Ex. 3 at 29-32. |
| 29. Wasatch maintains a standard form Pay or Quit Notice for non-rent charges that is entitled "Three Day Notice to Perform Financial Covenant or Quit" (in California) and "10 Day Notice to Comply with Lease or Quit Premises" (in Washington). | Defs.' Resp. to Terry Req. for Admis., Set 5, No. 37, Bellows Decl. Ex. 35;<br><br>Exemplars of pay or quit notices seeking additional charges without rent, Bellows Decl. Ex. 20 at 1-10, 14-14, 17-18, 20-27;<br><br>Jarvis Dep. 280:3-282:20, Sep. 14, 2021, Bellows Decl. Ex. 7 at 11-13;<br><br>Tanforan Dep. 181:13-182:6, Bellows Decl. Ex. 11 at 11-12. |

8

853945.19

| Statement of Undisputed Fact | Evidence |
|---|---|
| 30. Wasatch collection practices include serving Pay or Quit notices to assist in collecting small balances (*i.e.*, those less than $100) from tenants. | Wiles Apr. 22, 2019 email (Johnson Ex. 17), Bellows Decl. Ex 28;<br><br>Johnson Dep. 147:23-150:5, July 19, 2021, Bellows Decl. Ex . 9 at 32-35;<br><br>Wiles Apr. 22, 2019 email (Fetter Dep. Ex. 39), Bellows Decl. Ex. 22;<br><br>Undisputed Fact No. 31 & record citations therein. |
| 31. Wasatch has served "Pay or Quit Notices" on Section 8 tenants for amounts including additional service charges where the total amount demanded is less than $100. | Exemplars of pay or quit notices combining additional service charges with unpaid rent, Bellows Decl. as Ex. 19 at 1-2, 23-26;<br><br>Exemplars of pay or quit notices seeking additional charges without rent, Bellows Decl. as Ex. 20 at 1-4, 6-10, 12-13, 18, 20-27. |

**E.  Facts Related to Wasatch's Failure to Disclose Washer and Dryer Charges on HAP Contracts**

| | |
|---|---|
| 32. At certain Wasatch properties, Wasatch charges Section 8 tenants for in-unit washers and dryers separately from the "base rent" that corresponds to the "rent to owner" set out in the HAP Contracts. | Johnson Dep. 172:16-173:5, July 19, 2021, Bellows Decl. Ex. 9 at 38-39;<br><br>*See also* Undisputed Fact No. 6, *supra*, and related record citations. |
| 33. Before a revised version of the HAP Contract was released in July 2019, the "Utilities and Appliances" section in Part A of the HAP Contract required that, "[u]nless otherwise specified" in the utilities and appliances section, "the owner shall pay for all utilities and appliances provide by the owner." | HAP Contracts, Bellows Decl. Ex. 13; |
| 34. Wasatch uniformly did not specify in Part A that tenants were required to pay fees for in-unit washers and dryers. | Exemplars HAP Contract, Part A Excerpts, Bellows Decl. Ex. 44;<br><br>Chart summarizing evidence regarding washer and dryer charges and HAP Contracts, Bellows Decl. Ex. 46. |

853945.19

| | |
|---|---|
| 35. Wasatch maintains data about individual tenants' charges and payments, including charges and payments for additional services, in their centrally maintained Yardi database. | Yardi Stip. ¶¶ 1-9, 14-23, 31-32 |
| 36. Class members who were charged and paid for in-unit washers and dryers are identifiable from classwide data, as are the periods of time during which they were charged and paid for in-unit washers and dryers. | Yardi Stip. ¶¶ 1-9, 14-23, 31-32; Expert Report of David Breshears, ¶¶ 4, 11, 15-18, 20, 25, 29 & Exs. 1-4. |

**F.    Facts Related to Wasatch's Requirement that Section 8 Tenants Purchase Renters Insurance**

| | |
|---|---|
| 37. Until around December 2019, Wasatch required tenants to purchase renters insurance as a condition of living in many Wasatch properties. | Jarvis Dep. 115:16-25, Aug. 10, 2017, Bellows Decl. Ex. 5 at 9; Tanforan Dep. 140:11-17, 173:14-174:7, Bellows Decl. Ex. 11 at 8-10; Fetter Dep. 125:7-128:7, Aug. 11, 2017, Bellows Decl. Ex. 1 at 9-12. |
| 38. For properties that did not participate in the Low-Income Housing Tax Credit ("LIHTC") program, standard Wasatch Residential Rental Agreements from before December 2019 contained a provision requiring tenants to maintain renters insurance and stated that if they were ever without coverage during their tenancy, "resident(s) agree[d] to be enrolled in the 'pay along with rent' program and being charged accordingly." | Excerpts from Residential Rental Agreements, Bellows Decl. Ex. 40; Chart of Properties with Residential Rental Agreements Requiring Renters Insurance, Bellows Decl. Ex. 41; Fetter Dep. 302:15-303:6, 307:7-25, Oct. 28, 2021, Bellows Decl. Ex. 3 (confirming that lease exemplars from market rate and bond properties require renters insurance). |
| 39. Tenants subject to the renters insurance requirement were required to make additional payments for renters insurance, either to Wasatch or to a third-party insurer. | Fetter Dep. 304:11-23, Oct. 28, 2021, Bellows Decl. Ex. 3; Excerpts from Residential Rental Agreements, Bellows Decl. Ex. 40. |

853945.19

| | |
|---|---|
| 40. Section 8 tenants were subject to a requirement to purchase renters insurance wherever the requirement was in place at Wasatch-managed properties. | Jarvis Dep. 115:16-25, Aug. 10, 2017, Bellows Decl. Ex. 5 at 9; <br><br> Tanforan Dep. 140:11-16, 173:14-174:7, Bellows Decl. Ex.11 at 8-10; <br><br> Fetter Dep. 125:7-128:7, Aug. 11, 2017, Bellows Decl. Ex. 3; <br><br> Excerpts from Residential Rental Agreements, Bellows Decl. 40. |
| 41. Before 2019, Wasatch's only exception to the renters insurance requirement applied to some tenants at properties participating in the LIHTC program. | Fetter Dep. 302:5-307:25, Oct. 28, 2021, Bellows Decl. Ex. 3. |
| 42. Beginning in fall 2011, Wasatch made renters insurance mandatory for any tenant who was under the max tax credit rent allowed under the LIHTC program, as long as the additional expense of renters insurance did not push the tenant over the max tax credit rent. | Email titled "FW: Renters Insurance on Tax Credit/Important!!!," Sept. 16, 2011 (Jarvis Dep. Ex. 33), Bellows Decl. Ex. 25; <br><br> Jarvis Dep. 100:9-102:8, Sept. 10, 2021, Bellows Decl. Ex. 7 at 6-8. |
| 43. Class Members who were subject to the renters insurance requirement and paid renters insurance fees to Wasatch are identifiable from classwide data. | Chart of Properties subject to Renters Insurance Requirement, Bellows Decl. Ex. 41; <br><br> Defs.' Am. Resp. to Huskey Interrog., Set 6, No. 23, Bellows Decl. Ex. 30 (identifying properties that have participated in the LIHTC program and the applicable time period); <br><br> Expert Report of David Breshears ¶¶ 38-41 & Exs. 7 & 9. |
| 44. Class Members who paid renters insurance fees to Wasatch are identifiable from classwide data, as are the periods of time during which they paid for renters insurance. | Yardi Stip. ¶¶ 1-9, 14-23, 31-32. <br><br> Expert Report of David Breshears, ¶¶ 4, 11, 15-18, 20, 25, 29, 38-41 & Exs. 7 & 9. |

PLS.' STATEMENT ON UNDISPUTED FACTS IN SUPP. MOT. PART. SUMM. J. - CASE NO. 2:15-CV-00799 KJM-DB

853945.19

**G.     Facts Related to Named Plaintiffs' and Class Members' Loss of Money as a Result of Wasatch's Practices**

| Statement of Undisputed Fact | Evidence |
|---|---|
| 45. Named Plaintiff Denika Terry paid additional services charges to Defendants separate from and in addition to her share of rent to owner under the HAP contract because of Wasatch's practice of charging Section 8 tenants for additional services. | Denika Terry ledger, Terry Decl. in Supp. Mot. Class Cert. ¶ 6 & Ex. B, ECF No. 72-3. |
| 46. Named Plaintiff Roy Huskey III paid additional services charges to Defendants separate from and in addition to his share of rent to owner under the HAP contract because of Wasatch's practice of charging Section 8 tenants for additional services. | Roy Huskey III ledger, Huskey Decl. in Supp. Mot. Class Cert. ¶ 6 & Ex. B, ECF No. 72-2. |
| 47. Named Plaintiff Tamera Livingston has paid additional services charges to Defendants separate from and in addition to her share of rent to owner under the HAP contract because of Wasatch's practice of charging Section 8 tenants for additional services. | Tamera Livingston ledger, Bellows Decl. Ex. 47. |
| 48. All Class Members paid additional service charges to Defendants separate from and in addition to the tenants' share of rent to owner under the HAP Contract. | Expert Report of David Breshears. ¶¶ 11, 29, 31, 34 (summing the additional charges paid by class members based on Wasatch's data);<br><br>Undisputed Fact No. 6, *supra*, and related record citations. |

Dated:  April 22, 2022

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO


*s/ Anne P. Bellows*
Anne P. Bellows

Attorneys for Plaintiffs and Relators