1   Laura L. Ho (SBN 173179)
    lho@gbdhlegal.com
2   Anne Bellows (SBN 293722)
    abellows@gbdhlegal.com
3   Stephanie Tilden (SBN 341486)
    stilden@gbdhlegal.com
4   GOLDSTEIN, BORGEN, DARDARIAN & HO
    155 Grand Avenue, Suite 900
5   Oakland, CA 94612
    Telephone: (510) 763-9800 | (Fax) (510) 835-1417
6
    Andrew Wolff (SBN 195092)
7   andrew@awolfflaw.com
    LAW OFFICES OF ANDREW WOLFF, PC
8   1615 Broadway, 4th Floor
    Oakland, CA 94612
9   Telephone: (510) 834-3300 | (Fax) (510) 834-3377

10  Jesse Newmark (SBN 247488)
    jessenewmark@centrolegal.org
11  CENTRO LEGAL DE LA RAZA
    3022 International Blvd., Suite 410
12  Oakland, CA 94601
    Telephone: (510) 437-1863 | (Fax) (510) 437-9164
13
    Jocelyn Larkin (SBN 110817)
14  jlarkin@impactfund.org
    Lindsay Nako (SBN 239090)
15  lnako@impactfund.org
    THE IMPACT FUND
16  2080 Addison Street, Suite 5
    Berkeley, CA 94704
17  Telephone: (510) 845-3473 | (Fax) (510) 845-3654

18  Attorneys for Plaintiffs and Relators and the Certified Classes

19              **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF CALIFORNIA**
20                   **SACRAMENTO DIVISION**

21  | | |
    |---|---|
22  UNITED STATES OF AMERICA, *ex rel.* | Case No.: 2:15-CV-00799-KJM-DB
    DENIKA TERRY, ROY HUSKEY III, and
    TAMERA LIVINGSTON, and each of them for | CLASS ACTION
23  themselves individually, and for all other persons
    similarly situated and on behalf of the UNITED | **PLAINTIFFS' AND RELATORS'**
24  STATES OF AMERICA | **REQUEST FOR JUDICIAL NOTICE IN**
                      | **SUPPORT OF MOTION FOR PARTIAL**
25          Plaintiffs/Relators, | **SUMMARY JUDGMENT**

26  vs. | Date:    July 8, 2022
        | Time:    10:00 a.m.
27  WASATCH ADVANTAGE GROUP, LLC, | Dept:    Courtroom 3, 15th Floor
    WASATCH PROPERTY MANAGEMENT, INC., | Before:  Hon. Kimberley J. Mueller
    WASATCH POOL HOLDINGS, LLC,
28  CHESAPEAKE APARTMENT HOLDINGS, LLC, | Trial Date:    None Set

PLS.' & RELATORS REQ. FOR JUDICIAL NOT. IN SUPP. OF MOT. FOR PART. SUMM. J. - CASE NO. 2:15-CV-00799 KJM-DB

1  LOGAN PARK APARTMENTS, LLC, LOGAN
   PARK APARTMENTS, LP, ASPEN PARK
2  HOLDINGS, LLC, BELLWOOD JERRON
   HOLDINGS, LLC, BELLWOOD JERRON
3  APARTMENTS, LP, BENT TREE
   APARTMENTS, LLC, CALIFORNIA PLACE
4  APARTMENTS, LLC, CAMELOT LAKES
   HOLDINGS, LLC, CANYON CLUB HOLDINGS,
5  LLC, COURTYARD AT CENTRAL PARK
   APARTMENTS, LLC, CREEKSIDE HOLDINGS,
6  LTD, HAYWARD SENIOR APARTMENTS, LP,
   HERITAGE PARK APARTMENTS, LP, OAK
7  VALLEY APARTMENTS, LLC, OAK VALLEY
   HOLDINGS, LP, PEPPERTREE APARTMENT
8  HOLDINGS, LP, PIEDMONT APARTMENTS,
   LP, POINT NATOMAS APARTMENTS, LLC,
9  POINT NATOMAS APARTMENTS, LP, RIVER
   OAKS HOLDINGS, LLC, SHADOW WAY
10 APARTMENTS, LP, SPRING VILLA
   APARTMENTS, LP, SUN VALLEY HOLDINGS,
11 LTD, VILLAGE GROVE APARTMENTS, LP,
   WASATCH QUAIL RUN GP, LLC, WASATCH
12 PREMIER PROPERTIES, LLC, WASATCH
   POOL HOLDINGS III, LLC,
13 and DOES 1-4,

14         Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Pursuant to Federal Rule of Evidence 201, Plaintiffs and Relators respectfully request that the

2   Court take judicial notice of the following documents in support of their Motion for Partial Summary

3   Judgment.

4   1.   A true and correct copy of a letter, dated March 29, 1977, from Charles P. Lucas to Mr.

5   Robert Fitzgerald, bearing the letterhead and seal of the U.S. Department of Housing and Urban

6   Development and signed by Charles P. Lucas, posted online by the National Housing Law Project to

7   accompany its treatise on federal housing programs at https://www.nhlp.org/wp-content/uploads/Ltr-fr-

8   Lucas-to-Fitzgerald-Mar.-29-1977.pdf (last accessed April 21, 2022) and attached hereto as Exhibit 1.

9   2.   A true and correct copy of a letter, dated October 21, 1985, from Frank Malone to

10  Kathryn F. Calhoon, bearing the letterhead and seal of the U.S. Department of Housing and Urban

11  Development, signed by Frank Malone, as well as the letter, dated September 5, 1985, from Kathryn F.

12  Calhoon, to which the October 21, 1985 responds, posted online by the National Housing Law Project

13  to accompany its treatise on federal housing programs at  https://www.nhlp.org/wp-

14  content/uploads/Corr.-btwn-Calhoon-Malone-Sept.-and-Oct.-1985.pdf (last accessed April 21, 2022)

15  and attached hereto as Exhibit 2.

16  3.   A true and correct copy of a letter, dated July 29, 1991, from Lionel J. Jenkins to Muriel

17  Varieur, bearing the letterhead and seal of the U.S. Department of Housing and Urban Development

18  and signed by Lionel J. Jenkins, posted online by the National Housing Law Project to accompany its

19  treatise on federal housing programs at https://www.nhlp.org/wp-content/uploads/Ltr-fr-Jenkins-to-

20  Varieur-Jul.-29-1991.pdf (last accessed April 21, 2022) and attached hereto as Exhibit 3.

21  Under Federal Rule of Evidence 201(b), a court may take judicial notice of facts that "can be

22  accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

23  Fed. R. Evid. 201(b)(2); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).

24  Courts may take judicial notice of documents that are self-authenticating.  *United States v.*

25  *Christensen*, 161 F.3d 15, 1998 WL 56791, at *2 (9th Cir. 1998) (table); *Pradhan v. Citibank, N.A.*,

26  No. 10-CV-03245-LHK, 2011 WL 90235, at *5 n.4 (N.D. Cal. Jan. 10, 2011) (taking judicial notice of

27  promissory note after concluding that it was self-authenticating under Fed. R. of Evid. 902(9)).

28  Federal Rule of Evidence 902(1) provides that documents are self-authenticating if they bear "a seal

1

purporting to be that of the United States ... or a department [or] agency" of the United States, and "a signature purporting to be an execution or attestation."  Each of the three exhibits listed above bear the seal of the U.S. Department of Housing and Urban Development ("HUD") and a signature executing the letter.  Exs. 1-3.  They therefore qualify as self-authenticating documents under Rule 902(1).  *See, e.g.*, *United States v. Perry*, No. 2:14-CV-537, 2018 WL 11356695, at *4 (S.D. Ohio Nov. 7, 2018) (signed letters on U.S. Forest Service letterhead were self-authenticating documents under Rule 902(1)).  The Court may properly notice the documents on these grounds.  *See Christensen*, 161 F.3d 15, 1998 WL 56791, at *2.

Alternatively, a court may also take judicial notice of "public records and government documents available from reliable sources on the Internet."  *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1084 n.1 (S.D. Cal. 2016); *see also, Labrador v. Seattle Mortg. Co.*, 681 F. Supp. 2d 1106, 1109 n.2, (N.D. Cal. 2010) (taking judicial notice of a "printout from Neighborhood Watch, a web site that displays data on lenders and appraisers"); *United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003), *aff'd sub nom. Dingle v. BioPort Corp.*, 388 F.3d 209 (6th Cir. 2004) (public records and government documents, including those available from reliable sources on the Internet, are subject to judicial notice).

The documents in Exhibits 1, 2, and 3 are official HUD correspondence and are cited in the National Housing Law Project's Green Book (also known as the "HUD Housing Programs: Tenants' Rights"), Fifth Edition (2018), a treatise on laws governing HUD's housing programs, and are available on the National Housing Law Project's companion website to the Green Book at https://www.nhlp.org/greenbookcompanionwebsite/.

The National Housing Law Project (NHLP) is a non-profit organization founded in 1968 and is not a party to this litigation.  Their treatise, which is authored by NHLP attorneys, was first published in 1981 and is currently in its fifth edition.  *Digital Green Book Brochure*, NHLP.org, https://www.nhlp.org/wp-content/uploads/greenbook-brochure.pdf.  The treatise is an authoritative source of information on HUD housing programs.  *See, e.g.*, *Fed. Prop. Mgmt. v. Brown,* No. 17424, 1999 WL 961275, at *4 (Ohio Ct. App., June 25, 1999) (citing to the second edition of NHLP's Green Book);  Robert G. Schwemm, *Housing Discrimination Law and Litigation* § 28.7 (2021) (citing to the

853924.12

fifth edition); Deborah Kenn, *The Legal Guide to Affordable Housing Development* § 14.11.B (2nd ed. 2011) (citing to the fourth edition).  The companion website to NHLP's publication is a reliable source for the public records contained in Exhibits 1, 2, and 3.


Dated: April 22, 2022                    Respectfully submitted,

                                         GOLDSTEIN, BORGEN, DARDARIAN & HO


                                          */s/Stephanie Tilden*
                                         Stephanie Tilden

                                         Attorneys for Plaintiffs and Relators

853924.12

# EXHIBIT 1



**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
FEDERAL HOUSING ADMINISTRATION
777 ROCKWELL
CLEVELAND, OHIO 44114

**REGION V**
300 South Wacker Drive
Chicago, Illinois 60606

March 29, 1977

IN REPLY REFER TO:
5.10:HEH:JM:jm

Mr. Robert Fitzgerald, Director
Cuyahoga Metro Housing Authority
1441 West 25 Street
Cleveland, Ohio 44113

Dear Mr. Fitzgerald:

We have reviewed your revised Dwelling Lease adopted by Resolution 26-77 and advise that we cannot concur in item 6 as written. Federal Regulations as published in Notice HM 75-56 (LHA) require that special charges and rent be treated as separate items. By requiring that tenant payments be allocated first toward special charges, then deposits, and finally rent you are circumventing federal regulation which we cannot condone.

Although collection of special charges and deposits may be difficult, the Authority should utilize the lease provisions and courts in order to collect these payments. Under no circumstances will we permit an Authority to allocate rent payments to special charges and then attempt to evict tenants for non-payment of rent, which is a possible outcome of your lease. This item must be revised in order to comply with the revised lease for the Low-Income Housing Program.

Sincerely,

Charles P. Lucas,
Director

# EXHIBIT 2



**U.S. Department of Housing and Urban Development**

Providence Office, Region I
330 John O Pastore Federal Building
U.S. Post Office
Kennedy Plaza
Providence, Rhode Island 02903-1785

JUL 2 9 1991

Muriel Varieur
Director of Management
PROMAC, Inc.
800 Clinton Place
Woonsocket, RI   02895

Dear Ms. Varieur:

The purpose of this correspondence is to address certain actions apparently taken with respect to occupancy in federally insured and assisted developments, in particular, Roger & Roger Apartments (Project No.: 016-35010).   We understand that this development is insured pursuant to Section 221(d)(3) (Market Rate) of the National Housing Act, as amended.   Additionally, the development is assisted pursuant to the Section 8 Loan Management Set-Aside Program under 24 CFR PART 886 (1989).

It has been brought to our attention that a questionable practice is being applied in rental collection/eviction policies and procedures.   We understand that the following situation exists. Tenant "X" is late in paying rent for month "A".   A late fee is charged in accordance with the HUD model lease (see HUD Handbook 4350.3 CHG-17 entitled <u>Occupancy Requirements of Subsidized Multifamily Housing Programs</u> at Chapter 4, paragraph 14a and Appendix 19a, paragraph 5). Tenant "X" pays the rent for month "A" although late.   Then, rent is due for month "B".   Tenant "X" pays its rent within the grace period permitted by the HUD model lease for month "B".   Management, however, applies the rental payment for month "B" as follows.   First, to, the accrued late fees, then the remaining balance to the rent due and payable in month "B".   Management declares that a rental delinquency exists for month "B" and moves to evict Tenant "X" for non-payment of rent in month "B".   Further, we understand that PROMAC, Inc., has stipulated to this process as the process normally utilized in application of rental collection/eviction procedures.

The Providence Office has consulted with both the Office of Counsel, Boston Regional Office and the Operations Division, Office of Multifamily Housing Management, Headquarters, in connection with the above set of facts.   HUD offers the following position in light of this set of facts.

First, since the development receives assistance pursuant to 24 CFR PART 886 (1989), it is subject to the regulation at

24 CFR PART 247.2(e) (1989). Accordingly, all decisions to terminate occupancy must be in accordance with the regulation (see 24 CFR 247.1 (1989)). Owners and managing agents are <u>prohibited</u> from terminating occupancy for other than <u>good cause</u> (see 24 CFR 247.3(a) (1989) (emphasis added)). Moreover, "...[a] tenant may rely on State or local law governing eviction procedures where such law provides the tenant procedural rights which are <u>in addition to those provided by this subpart</u>..." (24 CFR 247.6(c) (1989) (emphasis added)).

Second, it was <u>not</u> the intention of HUD in framing the model lease to permit, or cause to permit, or condone, or approve, the practice described above in the rental collection and eviction process. Accordingly, <u>this process must be ceased immediately</u>. Moreover, the model lease does not permit a tenant to be evicted for non-payment of late charges (see HUD Handbook 4350.3 CHG-17 at Chapter 4, paragraph 14d and Appendix 19a, paragraph 5).

Third, in the overall landlord tenant relationship, Rhode Island General Law at Title 34-18-1 controls the form of the eviction process. Contract law established in State Statute would govern the application of payment process. However, from the federal perspective, the stipulated practice of PROMAC, Inc., in the set of facts described above <u>will not be permitted</u> in federally assisted programs.

You must immediately modify to your rental collection and eviction policies and practices with respect to his issue. Moreover, we would not regard expenses associated with carrying-out the policy described in paragraph two of this correspondence as being reasonable operating expenses. As such, they may only be paid for from surplus cash.

This office will be monitoring compliance in this matter. Within thirty (30) days of the date of this correspondence, we expect to be in possession of modified rental collection and eviction policies relating to this issue.

Further, as this may be an action which conflicts with tenants protected civil rights under Title VIII, Civil Rights

Act of 1968 as amended (42 USC 3600-3620), we are referring this matter for investigation to our Regional Office of Fair Housing and Equal Opportunity.

Inquiries may be addressed to Michael Watson of my staff at (401) 528-5357.

Very sincerely yours,

Lionel J. Jenkins
Director, Housing Management

# EXHIBIT 3

*Ch. B, 5, 10*
*802A. 1. 4*



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, D.C. 20410

_CE OF THE ASSISTANT SECRETARY FOR
HOUSING-FEDERAL HOUSING COMMISSIONER

**OCT 21 1985**

Kathryn F. Calhoon, Esquire
Legal Services of Middle Tennessee, Inc.
800 Stahlman Building -
211 Union Street
Nashville, TN 37201

Dear Ms. Calhoon:

Thank you for your September 5, 1985 letter bringing to our attention
the improper lease provision in Ms. Janice Key's lease at Dellway Villa
Apartments. Our Nashville Office spoke to Dellway management and they
immediately agreed to delete the offending provision.

Thank you for bringing this matter to our attention:

Sincerely,

Frank Malone
Branch Chief
Operations Division



**LEGAL SERVICES OF MIDDLE TENNESSEE, INC.**
*800 Stahlman Building*
*211 Union Street, Nashville, Tennessee 37201  (615) 244-6610*

September 5, 1985

Mr. Conrad Egan, Director
Office of Multi Family Management
Room 6164
U. S. Department of Housing and
     Urban Development
451 Seventh Street, S.W.
Washington, D. C.  20410

              RE:  Lease Provision, Dellway Villa Apartments,
                   Nashville, Tennessee

Dear Mr. Egan:

     I am writing to you on behalf of my client Janice Key, a
tenant of Dellway Villa Apartments, a Section 8 New Construction
Complex here in Nashville, Tennessee.  Ms. Key has been aggrieved
by, and is concerned regarding the future application of a lease
provision added to the model lease for Dellway Villa Apartments
that has been approved by the local HUD office and that appears
to circumvent HUD rules.

     The lease provision in question, the third paragraph of
section 5 of the lease, states:

     Monies received from Tenant will be first applied to
     any outstanding balance of accrued late charges, next
     to any unpaid damage charges (per payment schedule if
     any), then to any delinquent rent, and finally to any
     current rent due.

This provision allows Dellway Villa Apartments in effect to evict
a tenant for non-payment of late charges, which is specifically
prohibited by both the lease and HUD Handbook No. 4350.3 CHG-1 ¶
4-14(d).

BOARD OF DIRECTORS  STAFF ATTORNEYS

Susan Emery McGannon
_President_
Frank S. Bloch
_Vice President_
Virginia Collier
_Secretary_
David B. Herbert
_Treasurer_

*Nashville*
G. Gordon Bonnyman
Kathryn F. Calhoon
Dot Dobbins
David Ettinger
Drake Holliday

Russell J. Overby
David J. Tarpley
Ashley T. Wiltshire, Jr.
    *Executive Director*

*Clarksville*
Judy L. Bond-McKissack
Marilyn J. Devine
Beverly D. Fisher
Patricia Mock

*Gallatin*
Kathy Skaggs

*Murfreesboro*
Alex J. Hurder
Mary W. Wrasman

RJN Ex. 3, Page 2 of 3

Mr. Conrad Egan
9/5/85
Page 2


    That is, a tenant, such as Ms. Key, may incur some late charges and then in subsequent months pay rent, only to have it applied to late charges.  This renders her delinquent in rent (as well as causes her to incur more late charges), subjecting her to termination of tanancy for non-payment of rent.  Obviously, there would be no "non-payment of rent", and consequent termination of tenancy, if the money were not applied to the outstanding late charges.  Thus, this lease provision allows Dellway Villa Apartments to get around the prohibition against termination of tenancies for non-payment of late charges.  The provision thereby falls within the type of model lease change that a HUD Field Office must not approve, under HUD Handbook 4350.3 CHG-1 ¶ 4-2 (d)(2).

    If you agree with this assessment, I would appreciate your letting me, as well as the Local Field Office and Dellway Villa Apartments know.  I am attaching for your reference a copy of the lease between Ms. Key and Dellway Villa Apartments.

    Thank you for your attention to this matter.  I look forward to hearing from you about it in the near future.

                            Sincerely yours,


                            KATHRYN F. CALHOON
                            Attorney

KFC/mjm

Enclosure