Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800 | Fax: (510) 835-1417

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Tel: (510) 834-3300 | Fax: (510) 834-3377

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Tel: (510) 437-1863 | Fax: (510) 437-9164

Jocelyn Larkin (SBN 110817)
jlarkin@impactfund.org
Lindsay Nako (SBN 239090)
lnako@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473 | Fax: (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

UNITED STATES OF AMERICA, *ex rel.*
DENIKA TERRY, ROY HUSKEY III, and
TAMERA LIVINGSTON, and each of them for
themselves individually, and for all other persons
similarly situated and on behalf of the UNITED
STATES OF AMERICA

        Plaintiffs/Relators,

vs.

WASATCH ADVANTAGE GROUP, LLC,
WASATCH PROPERTY MANAGEMENT, INC.,
WASATCH POOL HOLDINGS, LLC,
CHESAPEAKE APARTMENT HOLDINGS,
LLC, LOGAN PARK APARTMENTS, LLC,
LOGAN PARK APARTMENTS, LP, ASPEN
PARK HOLDINGS, LLC, BELLWOOD JERRON
HOLDINGS, LLC, BELLWOOD JERRON
APARTMENTS, LP, BENT TREE
APARTMENTS, LLC, CALIFORNIA PLACE
APARTMENTS, LLC, CAMELOT LAKES
HOLDINGS, LLC, CANYON CLUB
HOLDINGS, LLC, COURTYARD AT
CENTRAL PARK APARTMENTS, LLC,
CREEKSIDE HOLDINGS, LTD, HAYWARD
SENIOR APARTMENTS, LP, HERITAGE
PARK APARTMENTS, LP, OAK VALLEY
APARTMENTS, LLC, OAK VALLEY
HOLDINGS, LP, PEPPERTREE APARTMENT

Case No.: 2:15-CV-00799-KJM-DB

CLASS ACTION

**PLAINTIFFS AND RELATORS'
MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE SUMMARY
ADJUDICATION, OR IN THE FURTHER
ALTERNATIVE, CLASS
DECERTIFICATION**

Date:    July 8, 2022
Time:   10:00 a.m.
Dept:    Courtroom 3, 15th Floor
Before:  Hon. Kimberley J. Mueller

Trial Date:   None Set

1 | HOLDINGS, LP, PIEDMONT APARTMENTS,
LP, POINT NATOMAS APARTMENTS, LLC,
2 | POINT NATOMAS APARTMENTS, LP, RIVER
OAKS HOLDINGS, LLC, SHADOW WAY
3 | APARTMENTS, LP, SPRING VILLA
APARTMENTS, LP, SUN VALLEY
4 | HOLDINGS, LTD, VILLAGE GROVE
APARTMENTS, LP, WASATCH QUAIL RUN
5 | GP, LLC, WASATCH PREMIER PROPERTIES,
LLC, WASATCH POOL HOLDINGS III, LLC,
6 | and DOES 1-4,

7 |        Defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF FACTS ....................................................................................... 2

    A.   Relevant Undisputed Facts About Wasatch's Additional Service Charges ........... 2

    B.   Relevant Disputed Facts About Wasatch's Additional Service Charges ............... 4

        1.   Wasatch's Payment Priority Sequence Is Not a Default Setting. ............... 4

        2.   There Is No Evidence for Wasatch's Claimed Section 8 Exemption
            Other than Late-Stage Testimony in this Case. ............................................ 4

        3.   Wasatch Has Long Been Aware That They Risked Violating Section 8
            Program Rules. ........................................................................................... 5

        4.   Housing Authorities Are Not Aware of All Facts Relevant to Whether
            Wasatch's Additional Charges Are Rent. .................................................... 5

III.  LEGAL STANDARD ............................................................................................... 6

IV.   ARGUMENT ............................................................................................................ 7

    A.   Wasatch's Motion Is Based on a Bare Assertion that Their Additional Service
        Charges Are Not Rent. ......................................................................................... 7

        1.   Wasatch Treats All Additional Service Charges as Rent. ......................... 7

        2.   Washers and Dryers, Renters Insurance, and Mandatory Property
            Charges Are Also Rent for Additional Reasons. ....................................... 9

    B.   Wasatch's Policies and Practices Are Not Authorized by Any HUD
        Regulation or Term of the HAP Contract. ........................................................ 10

        1.   The HAP Contract's and HUD Regulations' Lists of Prohibited
            Charges Do Not Authorize Defendants' Additional Service Charges. ..... 10

        2.   The HUD Regulations Do Not Approve of All "Other Amounts Due
            Under the Lease" or of Evicting Section 8 Tenants for Failure to Pay
            Other Amounts. ....................................................................................... 11

    C.   Wasatch's Other Attacks on Plaintiffs' Claims Fail .......................................... 12

        1.   Wasatch's Motion for Summary Judgment on Plaintiffs and Relators'
            Cause of Action Under the False Claims Act Fails. ................................ 12

            a.   Wasatch Submitted False or Fraudulent Claims to the Federal
                Government…………………………………………………………12

            b.   Government Knowledge Is Not a Defense to False Statements and
                Housing Authority "Knowledge" of Wasatch's Additional Charges
                Is No Defense at All on This Record……………………………… 13

2.  Wasatch's Motion for Summary Judgment on the Classes' Breach of Contract Claim Fails Because Their Additional Service Charges Are Excess Rent and Violate the Terms of the Tenancy Addendum. ..............16

3.  Wasatch's Motion for Summary Judgment on the Classes' Consumer Legal Remedies Act Claim Fails Because Their Additional Service Charges Are Excess Rent and Wasatch Misrepresented Their Approval to Collect Them. .......................................................................................17

4.  Wasatch's Motion for Summary Judgment on the Classes' Unfair Competition Claim Fails Because Their Additional Service Charges Are Excess Rent and Violate the Terms of the HAP Contract, HUD Regulations, and Multiple Laws. ...............................................................18

D.  Decertification Is Not Warranted as Significant Common Questions Exist. ........19

V.  CONCLUSION ...............................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ................................................................................. 20

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................................... 20

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................. 7

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................. 6, 7

*Coleman v. Hernandez*,
  490 F. Supp. 2d 278 (D. Conn. 2007) ...................................................................... 8

*DeCambre v. Brookline Hous. Auth.*,
  826 F.3d 1 (1st Cir. 2016) .......................................................................... 13, 14, 15

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) ............................................................................................... 19

*Gonzalez v. Planned Parenthood of L.A.*,
  No. CV 05-8818, 2011 WL 1481398 AHM (FMOx) (C.D. Cal. Apr. 19, 2011) ...... 13

*Gutierrez v. Carmax Auto Superstores Cal.*,
  19 Cal. App. 5th 1234 (2018) ................................................................................ 17

*Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*,
  467 U.S. 51 (1984) ................................................................................................. 14

*Labrador v. Seattle Mortg. Co.*,
  No. 08-2270 SC, 2010 WL 3768378 (N.D. Cal. Sept. 22, 2010) ............................ 19

*Morford-Garcia v. Metro. Council Hous. & Redevelopment Auth.*,
  No. A08-2203, 2009 WL 4909435 (Minn. Ct. App. Dec. 22, 2009) ...................... 11

*U.S. ex rel. Benitez v. Galliano, LLC*,
  No. 2:15-cv-01688-LDG (NJK), 2018 WL 2247279 (D. Nev. Jan. 26, 2018) .......... 8

*U.S. ex rel. Campie v. Gilead Scis.*,
  862 F.3d 890 (9th Cir. 2017) ................................................................................. 12

*U.S. ex rel. Griffith v. Conn*,
  117 F. Supp. 3d 961 (E.D. Ky. 2015) ..................................................................... 14

*U.S. ex rel. Hagood v. Sonoma Cty. Water Agency*,
  929 F.2d 1416 (9th Cir. 1991) ............................................................................... 13

*U.S. ex rel. Holmes v. Win Win Real Est., Inc.*,
  No. 2:13-cv-02149-APG-GWF, 2015 WL 6150594 (D. Nev. Oct. 19, 2015) ...... 8, 11

iii

Pls.' Opposition to Defs.' Mot. for Summ. J. – Case No. 2:15-CV-00799 KJM-DB

*U.S. ex rel. Jordan v. Northrop Grumman Corp.,*
  No. CV 95-2985 ABC (Ex), 2002 WL 34251040 (C.D. Cal. Aug. 5, 2002) ............................. 15

*U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.,*
  985 F.2d 1148 (2d Cir. 1993) ............................................................................................ 15

*U.S. ex rel. Mathis v. Mr. Prop., Inc.,*
  No. 2:14-cv-00245-GMN-NJK, 2015 WL 1034332 (D. Nev. Mar. 10, 2015) ..................... 8, 14

*U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.,*
  No. 04-cv-01224-REB-CBS, 2009 WL 3161828 (D. Colo. Sept. 30, 2009) ........................ 13

*U.S. ex rel. Price v. Peters,*
  66 F. Supp. 3d 1141 (C.D. Ill. 2013) ............................................................................... 8, 11

*U.S. ex rel. Sutton v. Reynolds,*
  564 F. Supp. 2d 1183 (D. Or. 2007) .................................................................................... 8

*United States v. Bourseau,*
  531 F.3d 1159 (9th Cir. 2008) .......................................................................................... 13

*United States v. Pileggi,*
  192 F.2d 878 (2d Cir. 1951) ............................................................................................ 8, 9

*United States v. Rite Aid Corp.,*
  No. 12-CV-01699-KJM-EFB, 2018 WL 4214887 (E.D. Cal. Sept. 5, 2018) ..................... 13

*Velez v. Cuyahoga Metro. Hous. Auth.,*
  795 F.3d 578 (6th Cir. 2015) ...................................................................................... 8, 9, 10

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ......................................................................................................... 19

*Wilhite v. Scott Cty. Hous. & Redevelopment Auth.,*
  759 N.W.2d 252 (Minn. App. 2009) .................................................................................. 11

**Federal Statutes**

42 U.S.C. § 1437f(o)(7)(C) ...................................................................................................... 11

**Federal Regulations**

24 C.F.R. § 982.305(a) ...................................................................................................... 6, 14

24 C.F.R. § 982.308(c) ............................................................................................................ 6

24 C.F.R. § 982.310(a)(1) ................................................................................................ 11, 18

24 C.F.R. § 982.401 ................................................................................................................ 9

24 C.F.R. § 982.451(b)(4)(ii) ................................................................................................ 10

24 C.F.R. § 982.452 .................................................................................... 6, 14

24 C.F.R. § 982.510(c) .................................................................................... 10

**Federal Rules**

Fed. R. Civ. P. 23 .............................................................................................. 20

Fed. R. Civ. P. 23(c)(1) ..................................................................................... 20

Fed. R. Civ. P. 56(a) .......................................................................................... 6

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ....................................................................... 18

Cal. Civ. Code § 1760 ....................................................................................... 17

Cal. Civ. Code § 1770(a) ................................................................................... 17

Cal. Civ. Code § 1770(a)(2) .............................................................................. 17

Cal. Civ. Code § 1780(a) ................................................................................... 17

**Other Authorities**

Section 8 Tenant-Based Assistance, Statutory Merger of Section 8 Certificate and Voucher
    Programs, Housing Choice Voucher Program, 64 Fed. Reg. 56894 (Oct. 21, 1999) ................... 11

# I.      INTRODUCTION

The Motion for Summary Judgment filed by Defendants Wasatch Advantage Group, LLC, *et al.*, ("Wasatch," "the company," or "Defendants") fails to demonstrate an entitlement to judgment as a matter of law.  As set out in the Motion for Partial Summary Judgment filed by Plaintiffs and Relators ("Plaintiffs"), it is undisputed that Wasatch requires Section 8 tenants to pay additional service charges for the full term of their leases or face eviction from their homes.  Eviction will terminate tenants' housing vouchers and potentially leave them homeless.[1]  Wasatch also combines rent and service charges in tenant notices and ledgers and uses a payment allocation policy that turns outstanding additional charges into unpaid rent.  Regardless of whether they were mandatory at move-in or elected by tenants, Wasatch makes payment of additional service charges a requirement of continued tenancy—*pay or you are out.*

Wasatch seeks summary judgment on the bare assertion that charges for services and amenities simply cannot be rent.  To the contrary, the Court's 2017 Order on the Motion to Dismiss recognized that "[c]ourts consistently have held that extra charges, even when labeled as additional amenities, can constitute illegal side payments."  Order Mot. Dismiss 6-7, ECF No. 61 (collecting cases).  Wasatch makes no attempt to address the Court's ruling or distinguish their additional service charges from amenities charges found to be unlawful excess rent by previous courts.

Instead, Wasatch offers legally irrelevant arguments based on disputed facts or nothing at all—citations to inapposite pieces of regulatory language and unsupported assertions that housing authorities approved Wasatch's method of administering additional services.  Defendants have failed to meet their burden at summary judgment.  Their alternative Motion for Decertification also fails, given the predominant common questions that continue to drive this litigation.

Defendants' Motion should be denied in its entirety.

---

[1] Plaintiffs-Relators and the Certified Classes have separately moved for partial summary judgment on three legal issues: (1) whether the additional charges Wasatch imposes on class members and other Section 8 tenants pursuant to the company's Additional Services Agreements violate the provisions of the Housing Assistance Payment Contract and federal law governing the Section 8 program; (2) whether the additional charges violate the Unfair Competition Law on a class basis, and (3) whether the additional charges constitute a breach of contract on a class basis.  Plaintiffs' Motion for Partial Summary Judgment ("Pls.' MPSJ"), ECF No. 242.

## II.     STATEMENT OF FACTS

### A.     Relevant Undisputed Facts About Wasatch's Additional Service Charges

Throughout the relevant time period, Wasatch has collected additional charges from tenants participating in the Housing Choice Voucher ("Section 8") program beyond the "rent to owner" approved in their Housing Assistance Payment ("HAP") Contracts.  Plaintiffs' Statement of Undisputed Facts ("UF") Nos. 1-7, ECF No. 242-2.  These monthly charges, documented in a standard Wasatch "Additional Services Agreement," include parking, in-unit washers and dryers, renters insurance, media packages, and a credit-reporting service called "RentPlus."  UF No. 3.

While Wasatch does not include these charges in "rent to owner," UF No. 7, it is undisputed that they require Section 8 tenants to pay the additional charges throughout the terms of their leases or face threat of eviction.  UF No. 5.  Standard tenant communications, such as lease agreements and renewal notifications, combine "base rent" and additional charges into one "total Monthly obligation" or "rental rate," the total monthly payment required to maintain tenancy.  UF No. 11-15.  The Terms and Conditions of the Additional Services Agreement describe failure to pay additional service charges as a default under the lease that "shall cause the Community to terminate the Residents [sic] tenancy upon service and expiration of a Ten Day Notice to Perform Covenant or Quit for failure to pay said Monthly Fee(s)[.]"[2]  UF No. 8.

To maximize its collections leverage, Wasatch has adopted a payment allocation policy specifically designed to convert unpaid amounts on tenant ledgers—including unpaid additional charges—into unpaid rent.  UF No. 16-18, 21-22; Defendants' Separate Statement of Undisputed Material Facts ("Defs.' UMF") Nos. 40, 42, ECF No. 241-17.  According to Wasatch:

> The computer is programmed to apply all payments to all items other than RENT first, leaving any delinquent portion as RENT owed. In most areas that Wasatch operates, properties can only go to court for RENT and not for deposits, additional service items (pet parking, storage, etc).

UF No. 18.  Wasatch created and programmed this payment sequence to ensure that any unpaid

---

[2] Even after the Terms and Conditions sheet was removed from the Additional Services Agreement in May 2012, Wasatch continued to consider failure to pay additional service charges a default under the lease.  UF Nos. 9, 10.

amounts are "rent" so the company can use them to initiate eviction proceedings.  UF Nos. 17, 19;

Defs.' UMF Nos. 40, 42.  Wasatch's former Chief Operating Officer, Jarom Johnson, confirmed that

Wasatch's payment priority sequence is particularly useful for obtaining payments from low-income

Section 8 tenants, who are highly motivated to pay because eviction will lead to termination of their

vouchers.  Johnson Decl. in Supp. Of Opp'n Mot. Class Cert. ¶ 8, ECF No.78-4; UF 20.

Wasatch has followed these policies and served "Pay or Quit" notices—a precondition to

eviction proceedings—on Section 8 tenants with outstanding additional service charges.  *See* UF 23-

31.  These notices inform tenants that they must pay in full or vacate their units to avoid eviction.[3]

UF No. 27.  Wasatch's internal policy document, titled "Rent Collection Best Practices-How To,"

states that notices should be served for balances of $100 or more, but Wasatch also encouraged

personnel to serve these notices to help collect small balances under $100, including for unpaid

additional service charges specifically.  UF Nos. 23, 24, 26, 30, 31.  Though Wasatch executives

acknowledge that Wasatch cannot evict tenants for nonpayment of non-rent charges, *see* UF No. 19,

Wasatch has a standard pay-or-quit notice that is tailored to demand payment of additional service

charges and other miscellaneous charges.  Bellows Decl. Ex. 20, *cited in* UF No. 27.  Wasatch also

refuses to accept future rent payments until tenants pay all outstanding charges, including small

additional service charges.  UF No. 25.

Wasatch has additional policies related to specific charges that are unlawful for independent

reasons.  First, Wasatch routinely charges Section 8 tenants for in-unit washers and dryers without

disclosing them on the HAP Contract as an "appliance" that tenants are required to pay for.  UF No.

32-34.  In July 2017, this Court ruled that collecting fees for washer and dryer charges that were not

authorized in the "Utilities and Appliances" section violated the HAP Contract, but Wasatch has

taken no steps to change its practice.  Order Mot. Dismiss 9-10, ECF No. 61; Plaintiffs' Statement of

Disputed Facts ("DF"), No. 10, filed herewith.

---

[3] Exemplars of "Pay or Quit" notices are attached as Exhibits 19 and 20 to the Declaration of Anne
P. Bellows in Support of Plaintiffs' and Relators' Motion for Partial Summary Judgment ("Bellows
Decl."), ECF No. 245.  Exhibit 19 contains Pay or Quit Notices combining unpaid additional service
charges with unpaid rent.  ECF No. 249-5.  Exhibit 20 contains Pay or Quit Notices seeking unpaid
additional service charges alone.  ECF No. 249-6.

Second, until December 2019, standard Wasatch Residential Rental Agreements required tenants to pay for renters insurance as a condition of leasing.  UF Nos. 37, 40.  Tenants were required to maintain renters insurance throughout their tenancy and, if their coverage ever lapsed, "resident(s) agree[d] to be enrolled in the 'pay along with rent' program and being charged accordingly."  UF No. 38.  All tenants subject to that requirement—even those with housing vouchers—were required to make additional payments beyond the approved "rent to owner" amount either to Wasatch or a third-party insurer.  UF Nos. 39, 40.

Third, Wasatch concedes "that certain charges may have been mandatory at individual properties for limited time periods[.]"  Defendants' Motion for Summary Judgment ("Defs.' MSJ"), p. 1, ECF No. 241; *see also* Defs.' MSJ, Ex. 6, ECF No. 241-8.  These mandatory charges were required as a condition of initially leasing units and include media packages, in-unit washers and dryers, parking, and cable.  Defs.' MSJ, Ex. 6, ECF No. 241-8.

**B.      Relevant Disputed Facts About Wasatch's Additional Service Charges**

**1.      Wasatch's Payment Priority Sequence Is Not a Default Setting.**

Wasatch implies that their "payment sequence" policy—the order in which tenant payments are applied to outstanding charges—is the default setting of their tenant accounting system, Yardi Voyager.  Defs.' MSJ at 8; Defs.' UMF Nos. 36-39.  To the contrary, Wasatch adopted a custom payment sequence that pays rent last "to allow landlords to pursue evictions for delinquent amounts[.]"  *See* Declaration of Geoffrey Gelb ¶¶ 6-10, filed herewith; Defs.' UMF No. 42; Plaintiffs' Response to Defendants' Separate Statement of Undisputed Material Facts ("Pls. Resp.") Nos. 37, 41, filed herewith.  That said, Wasatch's use of a custom payment sequence is not material to the questions presently before the Court.

**2.      There Is No Evidence for Wasatch's Claimed Section 8 Exemption Other than Late-Stage Testimony in this Case.**

Wasatch's own corporate employees testified that mandatory charges—those required as a condition of the initial lease—are not permitted under the Section 8 program.  DF No. 1.  In the face of their own admittedly mandatory charges, Wasatch now claims that there is a "corporate policy" exempting Section 8 tenants from such charges.  *See* Defs.' MSJ at 7 n.1.  This exemption was never

4

mentioned in standard documents, contemporaneous communications, Wasatch's response to the 2016 investigation by the Department of Justice, depositions taken in 2017, or in any prior filing in this case.  DF Nos. 2-7.  The first reference to the exemption was in the July 2021 deposition of former Chief Operating Officer Jarom Johnson.  *See* DF No. 8.

### 3.   Wasatch Has Long Been Aware that They Risked Violating Section 8 Program Rules.

Over the last decade, Wasatch has been notified multiple times that their treatment of additional service charges likely conflicts with the terms of the HAP Contract and HUD regulations. Starting in November 2011, internal corporate emails stated that "we have been warned of a possible class action suit charging for bulk cable."  DF No. 9 (Johnson Dep. Ex. 6).  This lawsuit was filed a few years later in April 2015, ECF No. 1, leading to an inquiry from the U.S. Department of Justice in January 2016 "investigating whether [Wasatch] imposed charges, including charges for appliances and parking, on certain tenants in violation of Housing Assistance Payment Contracts relating to such tenants."  DF No. 9 (Johnson Dep. Ex. 8).  Multiple internal and external communications raised similar concerns over subsequent years.  *See* DF No. 9.  Despite these red flags, Wasatch has not conducted any kind of investigation or implemented any policy changes.  DF No. 10.

### 4.   Housing Authorities Are Not Aware of All Facts Relevant to Whether Wasatch's Additional Charges Are Rent.

Wasatch has entered into HAP Contracts with local housing authorities for each of the many Section 8 tenants housed during the relevant time period.  UF No. 1.  As part of the application process, Wasatch provides housing authorities with its standard Residential Rental Agreement.  The company does not, however, always provide housing authorities with copies of Additional Services Agreements, *see* Pls.' Resp. No. 45, and they do not provide housing authorities with Additional Services Agreements signed after the HAP Contract is approved.  *Id.*

Even when Wasatch includes Additional Services Agreements in their submissions, the company does not inform housing authorities of their internal policies and practices related to additional service charges.  Pls.' Resp. Nos. 43, 45.  For example, housing authorities do not see Wasatch's standard tenant communications combining additional services with base rent, which

documents the true cost of a tenant's continued residency.  *See, e.g.*, UF Nos. 14, 15.  Nor are they informed of Wasatch's aggressive rent collection practices that include additional services as part of a tenant's required monthly payment for their unit.  *See, e.g.*, UF Nos. 23-25, 30.  In addition, Wasatch does not disclose additional service charges that are required as a condition of leasing, *see, e.g.*, Defs.' MSJ, Ex. 6, ECF No. 241-8, and uniformly omits in-unit washers and dryers from the "Utilities and Appliances" table in Part A of the HAP Contract, while requiring tenants to pay monthly charges for them.  UF No. 34.

Housing authorities approve HAP Contracts when the applications meet specific program requirements enumerated in the HUD regulations.  24 C.F.R. § 982.305(a).  The housing authority is not responsible for ensuring that owners' documents, policies, and practices conform to the terms of the HAP Contract and HUD regulations.  *See id.*; *see also* Pls.' Resp. No. 44.  The HUD regulations place responsibility for ensuring that owners are performing all obligations under the HAP contract and the lease on the owners themselves.[4]  24 C.F.R. § 982.452.

Deponents from various housing authorities subpoenaed by Defendants confirmed that they generally do not review lease terms, additional services agreements, or other documents provided by owners in detail.  Pls.' Resp. No. 43.  Nor do they "approve" additional services agreements as compliant with HUD regulations or legal on any other basis.  Pls.' Resp. No. 44.  Perhaps for that reason, President Janae Jarvis testified that Wasatch has never relied on housing authority approval of their Additional Services Agreement in determining company policies and practices.  *Id.*

## III.    LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of showing an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the nonmovant, who can defeat summary judgment by "designat[ing] 'specific facts showing that there

---

[4] Housing authorities "may"—but are not required to—review the lease for compliance with state and local law.  24 C.F.R. § 982.308(c).

is a genuine issue for trial.'"  *Id.* at 324.  The court must view the evidence in the light most

favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).


## IV.    ARGUMENT

### A.    Wasatch's Motion Is Based on a Bare Assertion that Their Additional Service Charges Are Not Rent.

As a blanket defense to all claims, Wasatch argues their additional service charges are not

rent.  Wasatch's argument is pure *ipse dixit*, without any attempt to define rent or explain why the

company's additional charges do not qualify as rent.  At one point, Wasatch attempts to distinguish

their additional service charges from rent by describing them as "[b]roadly speaking, . . . optional,"

but then admits that their properties do impose certain charges as a condition of leasing and that

there are disputes of fact as to whether Section 8 tenants have been subject to them.  Defs.' MSJ at 1,

7 n.1.  At no point does the company attempt to defend the practices that treat additional charges as

rent and make payment of additional service charges a requirement of continued tenancy.

The record supports, or at the very least permits, a finding that Wasatch's additional service

charges are unlawful excess rent, which contradicts the company's certifications to the federal

government, breaches the terms of their contracts with Section 8 tenants, and constitutes deceptive

business practices and unfair competition.

### 1.    Wasatch Treats All Additional Service Charges as Rent.

The undisputed facts outlined in Plaintiffs' Motion for Partial Summary Judgment and above

demonstrate that Wasatch's internal policies and practices require tenants to pay additional service

charges to continue living at Wasatch properties, whether those charges were required as a condition

of leasing or selected by the tenant.  Wasatch's standard forms, accounting practices, and rent

collections policies blend additional services and base rent into tenants' "total monthly obligation"

or "rental rate" and require tenants to stay current on additional charges or risk losing their homes.

UF Nos. 8-15, 16-22, 23-31.  A Section 8 tenant's failure to pay even one or two dollars of

additional charges can cause Wasatch properties to serve "Pay or Quit" notices informing them of

1   imminent eviction proceedings.  *See* UF No. 31; Bellows Decl. Ex. 20 at 22, 24, 26, ECF No. 249-6.

2   If a tenant is current on their base rent but fails to pay an additional service charge, they will end up

3   with unpaid rent, be prevented from paying future rent, and ultimately receive a "Pay or Quit"

4   notice.  If the charge remains unpaid, they will be evicted.  *See generally* Pls.' MPSJ at 12-18.

5        Courts, including this one, have consistently held that "non-rent" charges are prohibited

6   when they constitute illegal demands for excess rent.  Order Mot. Dismiss 6, ECF No. 61 (extra

7   charges can constitute illegal side payments); *U.S. ex rel. Benitez v. Galliano, LLC*, No. 2:15-cv-

8   01688-LDG (NJK), 2018 WL 2247279, at *6 (D. Nev. Jan. 26, 2018) (sewer and trash fees that

9   exceeded rent to owner were illegal excess rent); *U.S. ex rel. Holmes v. Win Win Real Est., Inc.*, No.

10   2:13-cv-02149-APG-GWF, 2015 WL 6150594, at *4-5 (D. Nev. Oct. 19, 2015) (property

11   management and HOA fees were illegal excess rent; granting summary judgment to relator); *U.S. ex*

12   *rel. Mathis v. Mr. Prop., Inc.*, No. 2:14-cv-00245-GMN-NJK, 2015 WL 1034332, at *4-5, *7 (D.

13   Nev. Mar. 10, 2015) (pool maintenance fees could constitute excess rent and violate HAP Contract;

14   denying summary judgment to defendant); *U.S. ex rel. Price v. Peters*, 66 F. Supp. 3d 1141, 1149,

15   1151 (C.D. Ill. 2013) (extra charges for storage shed were illegal excess rent, even when optional

16   and elected by tenant; granting summary judgment to relator); *U.S. ex rel. Sutton v. Reynolds*, 564 F.

17   Supp. 2d 1183, 1187-88, 1189 (D. Or. 2007) (side charges for landscaping services could constitute

18   excess rent and violate HAP Contract; denying partial summary judgment to defendants); *Coleman*

19   *v. Hernandez*, 490 F. Supp. 2d 278, 280 (D. Conn. 2007) (extra charges for water usage were illegal

20   excess rent).

21        Charges that tenants must pay to use and occupy property are excess rent and not permitted

22   by Section 8 program rules, as Wasatch's own witnesses recognize. DF 1; *Velez v. Cuyahoga Metro.*

23   *Hous. Auth.*, 795 F.3d 578, 585, 586 n.13 (6th Cir. 2015) (citing *United States  v. Pileggi*, 192 F.2d

24   878, 879 (2d Cir. 1951) (per curiam)).  "[A] monthly charge that the tenants [are] required to pay to

25   continue occupying the rental unit" qualifies as "rent" under the ordinary meaning of the term,

26   whether or not tenants are required to agree to a charge at the outset of the lease.  *Velez*, 795 F.3d at

27   586; *see also* Order Mot. Dismiss 7-8, 10-11, ECF No. 61.

28        Wasatch does not discuss or distinguish these cases nor make any effort to explain why their

8

Pls.' Opposition to Defs.' Mot. for Summ. J. – Case No. 2:15-CV-00799 KJM-DB

1   additional service charges differ from those found illegal by these courts.

2          **2.     Washers and Dryers, Renters Insurance, and Mandatory Property**
3                   **Charges Are Also Rent for Additional Reasons.**

4          In addition to Wasatch's company-wide policies and practices that treat additional service

5   charges as rent, washers and dryers, renters insurance, and mandatory property charges required as a

6   condition of the initial lease each constitute rent for additional and independent reasons.

7          *Washers and Dryers*:  Until recently, the HAP Contract's "Utilities and Appliances" table

8   required that "the owner shall pay for all . . . appliances provided by the owner," unless otherwise

9   specified.[5]  UF No. 33; HAP Contract Part A.[6]  Wasatch uniformly failed to list in-unit washers and

10  dryers in the table.  UF No. 34.  In its 2017 Order, the Court held that Wasatch's omission meant that

11  their "charging for this appliance, then, is prohibited by operation of the HAP Contract."  Order Mot.

12  Dismiss 9-10, ECF No. 61.  In its Motion, Wasatch seems to argue that they can charge tenants for

13  appliances not listed in Part A of the HAP Contract so long as the appliance is not required by the

14  Housing Quality Standards.  Defs.' MSJ at 4-5, 9 n.2; *see generally* 24 C.F.R. § 982.401.  This

15  argument ignores the Court's ruling on this exact issue and the plain language of Part A, which

16  makes unlisted appliances the responsibility of the owner.

17         *Renters Insurance*:  Because Wasatch required tenants, including Section 8 tenants, to pay

18  for renters insurance as a condition of initially leasing a unit, UF Nos. 37-40, renters insurance was

19  "an expense payable by the lessee for the occupancy of the rental unit."  *Velez*, 795 F.3d at 579.

20  This is true even though tenants could purchase insurance through a third party.  *See Pileggi*, 192

21  F.2d at 879 ("[I]t is settled that 'rent' is received or demanded when a tenant is required as a

22  condition of rental to purchase or pay for a service he does not want regardless of the person to

23  whom the money must be paid."), cited by *Velez*, 795 F.3d at 585.  Wasatch's renters insurance

24

25  _____

26  [5] In 2019, HUD removed this language from the HAP Contract.  *See* Form HUD-52641 (7/2019),
    https://www.hud.gov/sites/dfiles/OCHCO/documents/52641.pdf.  However, PHA implementation of
27  the revised form for new Section 8 move-ins was not immediate.  *See, e.g.*, WEAU00027683-84,
    Bellows Decl. Ex. 44 at 41-42, ECF No. 252-4.

28  [6] A complete exemplar HAP Contract can be found at pages 47-58 of Exhibit 13 of the Bellows
    Declaration.  ECF No. 247-3.

1   requirement, therefore, constituted unlawful excess rent for this additional and independent reason.

2       *Mandatory Property Charges as a Condition of the Initial Lease*:  Wasatch also required

3   tenants at certain properties to pay additional service charges as a condition of initially leasing a unit,

4   such as media packages, in-unit washers and dryers, parking, and cable.  *See, e.g.*, Defs.' MSJ, Ex. 6,

5   ECF No. 241-8.  These charges are unlawful excess rent, *see Velez*, 795 F.3d at 579, and were not

6   disclosed to housing authorities.  UF 7.  Wasatch makes no argument that these charges are not rent.

7   Instead, the company claims that they maintained a universal exemption for Section 8 tenants from

8   property-wide mandatory charges.  Defs.' MSJ at 7 n.1.  However, as described above, Wasatch

9   provides no evidence of any such exemption, save the recent testimony of corporate witnesses, and

10  Plaintiffs strongly dispute that it has ever existed.  *See* Section II.B.2 *supra*; DF Nos. 2-8.

11      **B.     Wasatch's Policies and Practices Are Not Authorized by Any HUD Regulation or**
12      **Term of the HAP Contract.**

13      Wasatch dedicates space in the fact section of their Motion to two different HUD regulations

14  and corresponding terms of the HAP Contract that reference rent.  Neither regulation explains why

15  Wasatch's additional service charges are not rent or otherwise exempt Wasatch from liability.

16      **1.      The HAP Contract's and HUD Regulations' Lists of Prohibited Charges**
17      **Do Not Authorize Defendants' Additional Service Charges.**

18      First, Wasatch identifies the HAP Contract's and HUD regulations' prohibition on required

19  payments for meals, supportive services, furniture, and "items customarily included in rent in the

20  locality," Defs.' MSJ at 5, *citing* 24 C.F.R. § 982.510(c); HAP Contract, Part C, ¶ 6(c).  They

21  conclude, "[N]either the HUD regulations nor the HAP Contract prohibit the lease from requiring

22  other charges, so long as the owner does not charge extra amounts for items customarily included in

23  the rent in the locality."  Defs.' MSJ at 5-6.  This is wrong.

24      The question is not whether the items on Wasatch's Additional Services Agreements are

25  prohibited charges specifically listed in the HUD regulations and the HAP Contract, but whether the

26  charges, as administered under Wasatch policies, constitute unlawful excess rent.  Both HUD

27  regulations and the HAP Contract specifically prohibit owners from collecting excess rent charges.

28  24 C.F.R. § 982.451(b)(4)(ii); HAP Contract Part B, ¶ 8d, Part C, ¶ 5e.  As described in Section

1   IV.A.1 above, courts across the country, including this Court, have held that charges beyond those

2   enumerated are prohibited when they constitute illegal demands for excess rent.

3              **2.      The HUD Regulations Do Not Approve of All "Other Amounts Due Under the Lease" or of Evicting Section 8 Tenants for Failure to Pay**
4                       **Other Amounts.**

5       Second, Wasatch cites 24 C.F.R. § 982.310(a)(1), which provides that an "owner may not

6   terminate the tenancy except [for] . . . [s]erious violation (including but not limited to failure to pay

7   rent or other amounts due under the lease) . . . ." Defs.' MSJ at 6-7.  In their Motion, Wasatch

8   italicized the phrase "*or other amounts due under the lease*." *Id.* at 6.

9       If Wasatch intends to read the regulation as broadly authorizing owners to charge Section 8

10  tenants for additional services, that interpretation is undermined by the cases cited above in Section

11  IV.A.1.  Charges that are required for continued use of the property are rent and are prohibited by

12  the HAP Contract, regardless of how they are labeled in the lease.  *See, e.g.*, *Holmes*, 2015 WL

13  6150594, at \*4 ("The defendants do not dispute that from at least January 2012 to January 2013, the

14  Chaudhrys charged Ms. Holmes for additional HOA and property management fees above the 'rent

15  to owner' amount listed in the HAP Contract."); *Price*, 66 F. Supp. 3d at 1149 ("The language in

16  Parts B and C of the [HAP] Contract expressly prohibited Defendant from collecting payments

17  above $370 per month for Relator's use of the premises[.]").

18       If Wasatch intends to read the regulation as broadly authorizing owners to evict tenants for

19  failing to pay *any* "other amounts due under the lease," that interpretation is undermined by the

20  threshold requirement of a "serious violation" of the lease.  *See* 24 C.F.R. § 982.310(a)(1); 42 U.S.C.

21  § 1437f(o)(7)(C).  In adopting the regulation, HUD clarified that this does not include "minor

22  violations."  Section 8 Tenant-Based Assistance, Statutory Merger of Section 8 Certificate and

23  Voucher Programs, Housing Choice Voucher Program, 64 Fed. Reg. 56894, 56904 (Oct. 21, 1999);

24  *accord Wilhite v. Scott Cty. Hous. & Redevelopment Auth.*, 759 N.W.2d 252, 255 (Minn. App. 2009)

25  ("serious violations" do not include "minor economic harms or inconvenience" where "neither the

26  landlord's property nor economic interest is significantly affected"); *see, e.g.*, *Morford-Garcia v.*

27  *Metro. Council Hous. & Redevelopment Auth.*, No. A08-2203, 2009 WL 4909435, at \*2-3 (Minn.

28  Ct. App. Dec. 22, 2009) (finding serious violation where the tenant's failure to keep up with utilities

and waste threatened to "significantly affect" the landlord's property).

Wasatch cites no authority for its contrary interpretation, which contradicts the admissions of its corporate deponents that the company cannot evict tenants for unpaid additional services under state law, which requires proof of a lesser "material" lease violation.  *See* UF No. 19; Pls.' MPSJ at 17 & citations therein.  No federal regulation or other rule authorizes Wasatch's illegal practices.

### C.   Wasatch's Other Attacks on Plaintiffs' Claims Fail.

#### 1.   Wasatch's Motion for Summary Judgment on Plaintiffs and Relators' Cause of Action Under the False Claims Act Fails.

Wasatch seeks summary judgment on Plaintiffs-Relators' *qui tam* action under the False Claims Act based solely "on the grounds that they did not submit false or fraudulent claims" for payment or approval to the federal government.  Defs.' MSJ at 9.  They do not challenge the three remaining elements of Plaintiffs' FCA claim.[7]  Though the company does not say directly, their position is presumably based on their argument that additional service charges are not rent.  In defense, they assert "PHAs were perfectly aware of all of the facts relating to these ASAs."  *Id.* However, Wasatch has admitted that its disclosures to housing authorities omitted relevant information, such as whether charges were a condition of tenancy and internal policies and practices treating charges as rent.  Pls.' Resp. Nos. 43, 45.  Housing authority deponents confirmed that they do not certify owner compliance with governing rules and regulations.  Pls.' Resp. Nos. 44. Defendants' Motion fails to demonstrate that their certifications were true and also fails to establish that housing authority knowledge or approval of HAP Contracts protects them from FCA liability.

##### a.   Wasatch Submitted False or Fraudulent Claims to the Federal Government.

When they submitted HAP Contracts for approval and payment, Wasatch falsely certified that they complied with HUD regulations and HAP Contract provisions, specifically the program's prohibitions on accepting payments of rent beyond the approved rent to owner.  *See, e.g.*, HAP

---

[7] The elements of a claim under the False Claims Act are "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due."  *U.S. ex rel. Campie v. Gilead Scis.*, 862 F.3d 890, 902 (9th Cir. 2017).

Contract, Part B, ¶ 8d ("Except for the rent to owner, the owner has not received and will not receive any payments or other consideration . . . for rental of the contract unit during the HAP contract term.").  In moving for summary judgment, Wasatch makes no meaningful attempt to defend their certifications.  *See* Defs.' MSJ at 8-9.

False certification "occurs when an entity seeking payment affirmatively certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted, despite noncompliance."  *United States v. Rite Aid Corp.*, No. 12-CV-01699-KJM-EFB, 2018 WL 4214887, at *2 (E.D. Cal. Sept. 5, 2018).  Wasatch failed to comply with program rules prohibiting acceptance of excess rent payments when they adopted and maintained policies and practices that required Section 8 tenants to pay additional services as a condition of continued tenancy outside of the approved "rent to owner," as described in Section II.A above.

> **b.** **Government Knowledge Is Not a Defense to False Statements and Housing Authority "Knowledge" of Wasatch's Additional Charges Is No Defense at All on This Record.**

Wasatch's sole defense is that they did not submit false claims because "[a]ll of the facts relating to these leases and ASAs are disclosed to housing authorities."  Defs.' MSJ at 9.  This defense fails because the Ninth Circuit has held that government knowledge of facts underlying a federal claim is *not* a defense to the element of falsity.  *U.S. ex rel. Hagood v. Sonoma Cty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991); *see also Gonzalez v. Planned Parenthood of L.A.*, No. CV 05-8818, 2011 WL 1481398 AHM (FMOx), at *5 (C.D. Cal. Apr. 19, 2011) ("In the Ninth Circuit, the government's knowledge of the falsity of a claim does not preclude a finding of falsity.").  Falsity requires only "an objective falsehood" in the defendant's own certification.  *U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, No. 04-cv-01224-REB-CBS, 2009 WL 3161828, at *6 (D. Colo. Sept. 30, 2009).  "[C]ourts decide whether a claim is false or fraudulent by determining whether a defendant's representations are accurate in light of applicable law."  *United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008) (citation omitted).

Section 8 is a federal program governed by federal law.  Local housing authorities are intermediaries with no power to alter its regulations.  *See DeCambre v. Brookline Hous. Auth.*, 826 F.3d 1, 19 (1st Cir. 2016) (finding "no basis for assuming that Congress delegated any authority to

the [housing authority] to propound authoritative interpretations of either the statute or HUD's regulations."). Thus, "[e]ven if certain officials knew about the . . . false certifications . . . , that knowledge did not modify the relevant federal law and regulations," such that there was no falsity. *U.S. ex rel. Griffith v. Conn*, 117 F. Supp. 3d 961, 984 (E.D. Ky. 2015); *see, e.g.*, *Mathis*, 2015 WL 1034332, at *4 (finding that plaintiff sufficiently alleged fraudulent course of conduct even where housing authority explicitly approved pool service fee). Wasatch's obligation to avoid charging additional rent was not absolved by any "ignorance or acquiescence" on the part of local housing authorities. *Griffith*, 117 F. Supp. 3d at 984; *see Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 63 (1984) ("[T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.").

Moreover, as described above, federal regulations confirm that local housing authorities are not required to evaluate owner compliance with program rules at the time of tenancy approval or renewal. *Cf.* 24 C.F.R. § 982.305(a) (steps the housing authority must take before executing a HAP Contract do not include determination of compliance); *id.* § 982.452 ("The owner is responsible for performing all of the owner's obligations under the HAP contract and the lease."); *DeCambre*, 826 F.3d at 19 ("Congress did not authorize the [housing authority] to draft the pertinent regulations, nor does the [authority] have a nationwide perspective on implementation of the statute."). Accordingly, housing authority deponents testified that they do not provide legal advice, are not responsible for ensuring compliance with Section 8 program rules, and do not review additional service charges for legality. Pls.' Resp. Nos. 43-45. Housing authority deponents also testified that they do not review owner documents carefully, if at all, because the HAP Contract and Tenancy Addendum trump any terms to the contrary. *See* Rizzo-Shuman Dep. 36:9-37:9, 69:25-70:11, Nako Decl. Ex. 14 at 3-4, 6-7. Thus, even when certain aspects of Wasatch's unlawful policies appear in the lease—such as the company's payment sequence or renters insurance requirement—there is no support for a conclusion, much less a finding as a matter of law, that housing authorities were aware of and specifically approved these policies. Pls.' Resp. No. 43.

Government knowledge of all underlying facts may be relevant to whether a defendant "knowingly" submitted a false claim—i.e., scienter—but that is not what Wasatch argues here. And

14

1    even in that scenario, the mere fact of government knowledge does not preclude liability as a matter

2    of law.  *See U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1156 (2d Cir.

3    1993) ("[T]he statutory basis for an FCA claim is *the defendant's knowledge* of the falsity of its

4    claim, . . . , which is not automatically exonerated by any overlapping knowledge by government

5    officials.") (emphasis added); *U.S. ex rel. Jordan v. Northrop Grumman Corp.*, No. CV 95-2985

6    ABC (Ex), 2002 WL 34251040, at *18 (C.D. Cal. Aug. 5, 2002) (denying summary adjudication and

7    distinguishing Ninth Circuit cases "where the Government had received ***full disclosure*** of the

8    specific facts underlying the particular claim prior to submission of that claim").  Wasatch's

9    applications fell far short of "full disclosure."  Even when the company provided Additional

10   Services Agreements with their leases, which was not universal, Wasatch employees never disclosed

11   the company's internal policies and practices relating to additional charges.  Pls.' Resp. Nos. 45.

12   The company then continued to certify compliance with program rules even when they had reason to

13   believe those policies and practices violated the HAP Contract and HUD regulations.  DF No. 9.

14          Wasatch offers only two pieces of evidence for its claim that housing authorities "do not

15   consider [Additional Services Agreements] a violation of HUD regulations."  Defs.' MSJ at 9 n.3;

16   Defs.' UMF No. 44.  Housing authority deponent Jodi Parker, Section 8 Manager at the Salt Lake

17   County Housing Authority, was shown an Additional Services Agreement in her deposition and

18   testified that she believed offering the services listed there for a monthly charge would not violate

19   Section 8 rules as a general matter.  *See* Defs.' MSJ, Ex. 13, ECF No. 241-15.  But Plaintiffs have

20   never claimed that the charges are *per se* improper, which would be the only relevant purpose for

21   Ms. Parker's general testimony, uninformed by Wasatch's actual policies and practices.  Defendants

22   also rely on the Declaration of Shannon Fox, a Housing Technician with the Sacramento Housing

23   and Redevelopment Agency, who purports to offer legal opinions about additional services

24   agreements in general and states that, to her knowledge, her agency has not acted on any concerns

25   about Wasatch's Additional Services Agreements.  Defs.' MSJ, Ex. 14, ECF No. 241-16.  Fox's

26   deposition testimony one month before the date of her declaration, however, demonstrated that she

27   lacked the professional experience or knowledge to offer such testimony.  *See* Pls.' Resp. Nos. 43-

28   44; Plaintiffs' Objections to Evidence, filed herewith.  Even taken at face value, her declaration does

15

Pls.' Opposition to Defs.' Mot. for Summ. J. – Case No. 2:15-CV-00799 KJM-DB

1   not approve of mandatory charges or of policies that require tenants to pay additional charges as a

2   condition of continuing to occupy their unit.  *See generally* Defs.' MSJ, Ex. 14, ECF 241-16.

3        Summary judgment is not appropriate as there is a genuine issue for trial as to whether

4   Wasatch made false or fraudulent certifications when they submitted HAP Contracts for approval

5   and received federal rent subsidies as a result of those certifications.

6              **2.       Wasatch's Motion for Summary Judgment on the Classes' Breach of
                          Contract Claim Fails Because Their Additional Service Charges Are
7                          Excess Rent and Violate the Terms of the Tenancy Addendum.**

8        As Wasatch acknowledges, the Classes have standing to assert claims for breach of contract

9   under Part C of the HAP Contract, the Tenancy Addendum.[8]  Defs.' MSJ at 10-11.  The Tenancy

10  Addendum prohibits owners from charging or accepting "any payment for rent of the unit in addition

11  to the rent to owner," and requires that "[t]he owner must immediately return any excess rent

12  payment to the tenant."  HAP Contract, Part C ¶¶ 5e, 5f.  Wasatch argues that they have not violated

13  the Tenancy Addendum because "[t]he undisputed evidence provides that the only amounts charged

14  other than 'Rent to Owner' were for non-rent payments."  Defs.' MSJ at 11 (no citation).  Wasatch

15  states that "non-rent amounts are treated differently on an accounting basis because they are legally

16  distinct from rent," citing their payment priority sequence.  *Id.* (citing Defs.' UMF 35-42).

17       Wasatch's motion fails because the undisputed facts, including facts about Wasatch's

18  payment priority sequence, show that its additional charges are rent.  *See* Section II.A *supra*.  The

19  company openly states that their payment priority sequence is designed such that tenant payments

20  "for less than the full amount that said tenant owes," which includes both base rent and additional

21  charges, will result in unpaid rent.  Defs.' UMF No. 40.  They confirm that they record base rent and

22  additional service charges on the same ledger and that "[t]he purpose of leaving rent as the final

23  charge in the payment priority sequence is to allow landlords to pursue evictions for delinquent

24  amounts."  Defs.' UMF Nos. 35, 42.  Thus, there is no dispute that Wasatch has implemented

25  accounting policies and other practices designed to convert outstanding additional service charges

26

27  _____

28  [8] Because tenants can sue under the Tenancy Addendum, the company's remaining arguments
    regarding tenants' inability to sue for an owner's breach of Parts A and B of the HAP Contract and
    whether there is a breach of the lease agreement itself are inapposite.  *See* Defs.' MSJ at 10.

into outstanding rent, violating the terms of the Tenancy Addendum.

> **3.** **Wasatch's Motion for Summary Judgment on the Classes' Consumer Legal Remedies Act Claim Fails Because Their Additional Service Charges Are Excess Rent and Wasatch Misrepresented Their Approval to Collect Them.**

The Consumer Legal Remedies Act provides a cause of action to consumers who suffer "any damage" as a result of "unfair methods of competition and unfair or deceptive acts or practices[.]" Cal. Civ. Code §§ 1770(a), 1780(a).  The Act is intended to "be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices[.]" *Id*. § 1760.  Wasatch's continued representations that additional service charges are part of tenants' monthly obligation in violation of the terms of the HAP Contract and HUD regulations is a prohibited unfair and deceptive act.

Wasatch moves for summary judgment on the Classes' Consumer Legal Remedies Act claim first arguing—still without support—that their additional service charges are not rent.  Defs.' MSJ at 11.  Wasatch's policies and practices have made their additional service charges into rent, as described in Section II.A above.  Second, Wasatch asserts that they did not misrepresent housing authorities' approval of their ability to demand payment of additional service charges as a condition of continued tenancy.  *Id*. at 12.  Plaintiffs allege that Defendants misrepresented their ability to collect additional service charges in at least two instances—first, when they improperly certified to the housing authority and Section 8 tenants that they would not collect excess rent and, second, when they failed to inform Section 8 tenants that their additional service charges were unlawful excess rent prohibited under program rules.  *See* Cal. Civ. Code § 1770(a)(2); *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1258 (2018) ("failures to disclose material facts are actionable under the CRLA").  As described in Section II.B.4 above, housing authorities' approval of HAP Contracts does not equate to approval of Wasatch's policies and practices requiring payment of additional service charges as a condition of continued tenancy.  Defendants' reliance on their purported disclosures to housing authorities fails here for the same reasons.

Wasatch misrepresented the propriety of their policies and practices.  Wasatch deponents testified that they were aware that mandatory charges are not permitted under the Section 8 program,

17

DF No. 1, yet they continued to make payment of additional service charges a requirement of continued tenancy.  *See* Section II.A *supra*.  Wasatch was also aware that their practices regarding additional service charges risked violating Section 8 program rules, yet they continued their policies and practices without change.  DF No. 10.

> **4.  Wasatch's Motion for Summary Judgment on the Classes' Unfair Competition Claim Fails Because Their Additional Service Charges Are Excess Rent and Violate the Terms of the HAP Contract, HUD Regulations, and Multiple Laws.**

Wasatch offers a grab bag of baseless arguments on the Classes' unfair competition claim under California Business & Professions Code § 17200.  First, the company argues that "HUD regulations relating to Section 8 Housing specifically contemplate amounts other than rent being imposed on Section 8 tenants" and also "allow landlords to terminate a HAP Contract based on nonpayment of such amounts."   Defs.' MSJ at 13 (citing Defs.' UMF No. 23, 24 CFR § 982.310(a)(1)).  As discussed in Section IV.B.2 above, this regulation does not authorize *all* charges outside of "rent to owner" and permits eviction only for "serious violations" of the lease.

Second, Wasatch argues that because the unfair competition claim is a class claim, Plaintiffs are required to establish that "ASA charges were imposed as mandatory conditions of leasing on a class-wide basis."  *Id*.  However, in their own brief, Wasatch identifies multiple class-wide facts and issues, *see id.* at 2, and raises class-wide defenses (for example, whether references to "amounts other than rent" in the HUD regulations authorize Wasatch's additional services charges).  The Classes' claims do not require proof of class-wide mandatory charges, so the absence of such proof is not a suitable basis for summary judgment.

Finally, Wasatch argues that denying Section 8 tenants the ability to enter into ASAs in the same manner as non-Section 8 tenants would be discriminatory and unlawful, *id.* at 13, which focuses on the wrong question altogether.  The Classes do not seek to limit the ability of Section 8 tenants to enter into Additional Services Agreements.  They only ask that Wasatch offer additional services in a manner that complies with the HAP Contract and HUD regulations, i.e., not requiring payment as a condition of initial or continued tenancy, and that the company return additional service charges that were unlawfully collected.

**D.**                         **Decertification Is Not Warranted as Significant Common Questions Exist.**

Wasatch's alternative motion for decertification fails because common questions continue to predominate.  In 2018, the Court concluded that class members shared a common question of law because "Plaintiffs' claims all involve the resolution of whether defendants' 'additional charges set forth in Additional Services Agreements' violated defendants' HAP Contract provisions with Section 8 tenants or federal law."  Order Granting Class Cert. 25, ECF No. 92.  The question of whether Wasatch's additional charges are unlawful excess rent continues to be a central issue in this case, as demonstrated by the motions currently before the Court.  Resolution of the common questions presented in the Parties' motions will provide just the type of "common *answers* apt to drive the resolution of the litigation" that continue to make class certification appropriate.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quotation marks and citation omitted).

Common evidence—the testimony, documents, and admissions brought to light by merits discovery—confirms the numerous classwide policies and practices at issue, including Wasatch's practice of excluding additional charges from approved "rent to owner" amounts (*see* UF No. 7) and the company's universal policies treating additional charges as rent (*see* UF Nos. 8-31).  Defendants themselves have also identified material facts common to the certified classes.  Defs.' MSJ at 2.

Wasatch has failed to meet the threshold step of identifying "subsequent developments in the litigation" warranting reconsideration of the Court's 2018 class certification order.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Labrador v. Seattle Mortg. Co.*, No. 08-2270 SC, 2010 WL 3768378, *3 n.5 (N.D. Cal. Sept. 22, 2010) ("The Court notes that decertification is appropriate in light of changes in the law, subsequent developments in the litigation, and evidence not available at the time of certification. . . .  It does not provide a defendant with the opportunity to challenge class certification on its own schedule." (citation omitted)).  On that basis alone, their request for decertification should be denied.

Even if the Court were to find that Wasatch did not violate the HAP Contract by treating additional service charges as rent, common questions would still exist and predominate, including:

- Does requiring payment of additional charges as a condition of leasing violate  ¶ 5(e) of Part C of the HAP Contract?

19

Pls.' Opposition to Defs.' Mot. for Summ. J. – Case No. 2:15-cv-00799 KJM-DB

- Does Wasatch's newly asserted exemption from mandatory charges for Section 8 tenants exist or is it being advanced only for purposes of this litigation?

- Does reference to "amounts other than rent" in the HUD regulations authorize Wasatch's additional services charges?

- Does enumeration of prohibited charges in the HUD regulations authorize Wasatch's additional service charges?

The class members who paid mandatory charges will all need these common questions answered to resolve their claims.  It is well established that Federal Rule of Civil Procedure 23 "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (editing and internal quotations omitted); *see also Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 963 (9th Cir. 2013)) ("Some variation is permitted among individual plaintiffs' claims[.]").  Though the kind of mandatory charges may vary between properties, they do not vary on a tenant-by-tenant or unit-by-unit basis.  *See* Defs.' MSJ, Ex. 6, ECF No. 241-8.

The Court retains the discretion to amend the class definition to conform to the facts before it.  *See* Fed. R. Civ. P. 23(c)(1); *Amgen*, 568 U.S. at 479 n. 9 ("Rule 23 empowers district courts to 'alte[r] or amen[d]' class-certification orders based on circumstances developing as the case unfolds.").  However, any consideration of amendments to the class definition before the Court's ruling on the present motions is premature, as Defendants agree that there are material class-wide issues to be resolved.  *See* Defs.' MSJ at 2 (listing facts common to the classes).

Under any of the theories of liability presented by Plaintiffs, proceeding as a class remains the most efficient way to resolve the class claims.

## V.    CONCLUSION

For over a decade, Wasatch has required Section 8 tenants to pay additional service charges under threat of eviction, treating those charges exactly like rent.  Far from supporting summary judgment for Defendants, the undisputed facts compel a finding that Wasatch has violated the terms of the HAP Contract and HUD regulations.  Defendants' Motion for Summary Judgment should be denied on all claims.

Dated: May 13, 2022

Respectfully submitted,

IMPACT FUND

Lindsay Nako

*Attorneys for Plaintiffs and Relators
and the Certified Classes*

21