**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH A. SALAZAR JR., SBN 169551
  E-Mail: Joe.Salazar@lewisbrisbois.com
RYAN MATTHEWS, SBN 311674
  E-Mail: Ryan.Matthews@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
Sacramento, California 95833
Telephone: 916.564.5400
Facsimile:  916.564.5444

Attorneys for Defendants,
Wasatch Advantage Group, LLC; Wasatch Property Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC; Logan Park Apartments, LLC; Logan Park Apartments, LP

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. DENIKA TERRY and ROY HUSKEY III, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA,<br><br>　　　　Plaintiffs/Relators,<br><br>　　vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE COMMONS HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC; LOGAN PARK APARTMENTS, LP,<br><br>　　　　Defendants. | CASE NO. 2:15-cv-00799-KJM-DB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' AND RELATORS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:　July 8, 2022<br>Time:　10:00 a.m.<br>Crtrm.:　3, 15th Floor |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. PLAINTIFFS CANNOT ESTABLISH THAT DEFENDANTS IMPOSED ANY MANDATORY ADDITIONAL SERVICE CHARGE ON A CLASS-WIDE BASIS ..................................................................................................................................2

III. THERE IS NO BASIS TO CONCLUDE THAT ASSERTING A RIGHT TO BE PAID FOR LAWFUL CHARGES OWED IS ILLEGAL .......................................................4

IV. DEFENDANTS' ACCOUNTING POLICY IS INDUSTRY STANDARD, AND PLAINTIFFS CITE NO AUTHORITY TO CONCLUDE THAT IT SOMEHOW CONVERTS NON-RENT CHARGES TO RENT ...............................................................6

V. PROVIDING TENANTS WITH A COMPREHENSIVE TOTAL AMOUNT OWED CANNOT ALTER THE NATURE OF CHARGES IMPOSED ON SAID TENANTS ..............................................................................................................................7

VI. THERE IS NO LEGITIMATE PUBLIC POLICY BASIS TO PRECLUDE THE USE OF ADDITIONAL SERVICE AGREEMENTS WITH SECTION 8 TENANTS ............................................................................................................................10

VII. CONCLUSION ....................................................................................................................11



**TABLE OF AUTHORITIES**

**Page**



Defendants hereby submit their Opposition to Plaintiffs' and Relators' Motion for Partial Summary Judgment.

I. **INTRODUCTION**

Plaintiffs' Motion for Partial Summary Judgment seeks summary judgment on two causes of action: Breach of Contract and the California Unfair Competition Law. Both of these are class claims. The legal theory at the core of Plaintiffs' Motion is that the non-rent charges contained within the Additional Services Agreements Defendant Wasatch Property Management, Inc. constitute improper excess rent because of how Wasatch Property Management, Inc. ("WPM") treats those charges. The claimed activity or "treatment" by WPM that transforms permissible additional service charges into impermissible excess rent is summarized as follows:

(1) Requiring tenants who enter into Additional Services Agreements to pay for the services they receive;

(2) Providing tenants with documents containing a sum total of the amounts they owe under their lease and Additional Services Agreement;

(3) Utilizing an industry-standard form of accounting designed to ensure that in the event of partial payments by tenants, any delinquent amounts are unpaid rent, rather than legally distinct non-rent charges;

(4) Not including charges for washers and dryers in the table of utilities and appliances contained in Section A of the HAP Contract; and

(5) Requiring tenants at some properties to obtain renter's insurance.

This Opposition will discuss each of these unsupported legal alchemy theories individually. In doing so, this Opposition will make reference to the moving papers filed as part of Defendant's Motion for Summary Judgment, which was filed and will be heard concurrently with Plaintiffs' Motion.[1] Ultimately, Plaintiffs ask this Court to make a highly improbable finding: that because Defendants use a separate form for additional service charges, account for legally distinct

---

[1] This particularly applies to items 4 and 5 in the above list, which by any measure are not class-wide issues, and cannot form a basis for a finding of class-wide liability.

non-rent charges separately from rent when processing tenant payments, and actually require tenants to make the payments they agree to, the legally distinct non-rent payments transform themselves into excess rent that violates HUD regulations. Plaintiffs' arguments also fail to account for the fact that both HUD regulations and the HAP Contract Tenancy Addendum *specifically contemplate* landlords charging tenants for items other than rent.

Plaintiffs seek to bolster these tenuous arguments with public policy concerns. They contend that allowing Section 8 tenants to pay for amenities above and beyond the Housing Quality Standards laid out in the Section 8 regulations in the same way as non-subsidized tenants undermines the purposes of the Section 8 Housing Choice Voucher Program. As discussed below, these concerns are backwards. Class-wide, these Section 8 tenants were provided with a choice of amenities which they could choose if they wanted them. Plaintiffs' proffered position would preclude landlords from offering Section 8 tenants presumably desirable amenities offered to non-subsidized tenants, or effectively force landlords to offer them to Section 8 tenants free of charge. The law requires neither.

Based on the undisputed evidence, Plaintiffs' contentions regarding Defendants' treatment of non-rent charges do not magically transform charges for non-rent amounts into excess rent. Defendants have not breached the tenancy addenda—the only portion of the HAP Contract for which Plaintiffs have standing to bring a claim for Breach of Contract. Moreover, there is no class-wide set of circumstances that establishes that Defendants have acted unlawfully such that Defendants can be found liable under the Unfair Competition Law. As such, Defendants respectfully request that the Court deny Plaintiffs' Motion for Partial Summary Judgment. This Opposition is supported by the concurrently filed Declaration of Ryan Matthews and the evidence attached thereto, as well as the Response to Plaintiffs' Separate Statement of Undisputed Material Facts.

## II. PLAINTIFFS CANNOT ESTABLISH THAT DEFENDANTS IMPOSED ANY MANDATORY ADDITIONAL SERVICE CHARGE ON A CLASS-WIDE BASIS.

A significant portion of Plaintiffs' Motion for Partial Summary Judgment concerns the idea that Defendants forced Section 8 tenants to incur additional service charges. At best, the facts

relating to this issue appear contested, but on closer examination they really are not. Plaintiffs do not make the argument that the imposition of additional service charges as a mandatory condition of leasing is a class-wide issue, nor could they. As detailed in the moving papers from Defendants' Motion for Summary Judgment, the most popular additional service among Section 8 tenants was renter's insurance.  Fifty-three percent (53%) of Section 8 tenants during the relevant period incurred an additional service charge for renter's insurance. The participation rates for the majority of services were far lower—washer and dryer charges, for instance, were only ever incurred by seventeen percent (17%) of tenants during the relevant period.  If Defendants did have a mandatory, class-wide policy of forcing Section 8 tenants into signing Additional Service Agreements, they have done a stunningly poor job implementing it.

Regardless, the facts make it clear: if the lawfulness of Defendants' imposition of additional service charges rests on whether entering into the Additional Service Agreement was a mandatory condition of leasing, then this class of Plaintiffs are not entitled to summary judgment. The class definition is as follows:

> All persons who, in the time period starting on April 14, 2011 (four years prior to the date of filing the initial Complaint in this action) through the final resolution of this matter, (1) have been tenants at any of Defendants' California properties; (2) have participated in the "Section 8" Housing Choice Voucher Program in connection with their tenancies at the California properties; and (3) have paid additional charges set forth in Additional Services Agreements in excess of their individual portions of the contract rent set forth in the HAP Contracts. ECF Nos. 92, 114.

There are no facts establishing that all—or even most—members of this broadly defined class were required to enter into Additional Service Agreements as a condition of leasing.  The actual facts are that some Section 8 tenants want to participate and do, and others do not. (Christianson Dec., Exh. A.) As such, arguments relating to mandatory charges for renters' insurance and washers and dryers cannot be a basis for liability on a class-wide basis, and if those arguments are an integral part of Plaintiffs' theory of liability, summary judgment must be denied.

///

///

### III. THERE IS NO BASIS TO CONCLUDE THAT ASSERTING A RIGHT TO BE PAID FOR LAWFUL CHARGES OWED IS ILLEGAL.

A primary argument contained in Plaintiffs' Motion is that Defendants' insistence that their tenants pay for the additional services they receive makes the charges for those services tantamount to excess rent. This argument fails. As Plaintiffs acknowledge, the Section 8 regulations specifically contemplate collecting amounts other than rent from Section 8 tenants, and explicitly define non-payment of such amounts as grounds for termination of a HAP Contract. 24 C.F.R. § 982.310(a)(1); Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment, p. 17, fn. 8. In addition, the Tenancy Addendum—the agreement under which Plaintiffs claim breach of contract—also explicitly contemplates landlords charging Section 8 tenants for items other than rent. "The owner may not charge the tenant extra amounts for items customarily included in rent to owner in the locality, or provided at no additional cost to unsubsidized tenants in the premises." (Part C of HAP Contract: Tenancy Addendum, par. 6(c), Declaration of Anne Bellows in Support of Plaintiffs' Partial Motion for Summary Judgment, Exh. 13, p. 19, Dkt. #247-3.)

The only reasonable conclusion is that owners may charge tenants for items that (a) are not customarily included in rent to owner in the locality[2]; and (b) are not provided to unsubsidized tenants at no additional cost. Plaintiffs do not argue that the additional service charges in question violate either condition in the Tenancy Addendum.

Plaintiffs seek to circumvent the Section 8 regulations' explicit approval of these additional charges beyond rent by citing case law which states that landlords cannot necessarily terminate a HAP Contract due to small balances. (*See* Memorandum in Support of Plaintiffs'

---

[2] The customary inclusion prong was the basis for the ruling Plaintiffs cite in *United States ex rel. Price v. Peters*, 66 F.Supp.3d 1141, 1149 (C.D. Ill. 2013). The Court held that charging a Section 8 tenant extra for a storage shed that was "part of the dwelling unit premises." *Id.* The Court did not reach the issue of whether the same was true for a washer and dryer. Also notable: that the local PHA reduced the landlord's requested rent by $280 when the HAP contract was executed. The charges for the storage shed? $280. The Court determined that this was not a coincidence. *Id.* at 1150. Regardless, charges like renter's insurance, cable, and covered parking cannot reasonably be called "part of the dwelling unit premises," rendering the instant case easily distinguishable from *Peters*.

1  Motion for Partial Summary Judgment, p. 17, fn. 8. "While 24 C.F.R. § 982.310(a)(1)
2  contemplates that "serious violation[s]" could include "failure to pay rent or other amounts due
3  under the lease," HUD clarified in adopting the regulation that "minor violations" are not
4  encompassed by this language. Section 8 Tenant-Based Assistance; Statutory Merger of Section 8
5  Certificate and Voucher Programs; Housing Choice Voucher Program, 64 Fed. Reg. 56894, 56904
6  (Oct. 21, 1999); *accord Wilhite v. Scott Cnty. Hous. & Redev. Auth.*, 759 N.W.2d 252, 256 (Minn.
7  Ct. App. 2009) ("serious" violations exclude those causing the landlord "minor economic harms or
8  inconvenience, but neither the landlord's property nor economic interest is significantly
9  affected").)

10  Defendants' practices align with HUD's clarification. Plaintiffs do not, and cannot, point to
11  a single class member whose lease or HAP Contract was terminated because of a small delinquent
12  balance. (Declaration of Ryan Matthews, Exh. C (Deposition of Jarom Johnson, July 19, 2021,
13  131, ln. 3-133, ln. 2.) As Jarom Johnson testified, "[y]ou know, our goal isn't to put people on the
14  street. Our goal is to provide housing. That's what we do." (Declaration of Ryan Matthews, Exh. C
15  (Deposition of Jarom Johnson, July 19, 2021, 131, ln. 3-133, ln. 2.) Plaintiffs seek a judicial ruling
16  outlawing a practice based on a hypothetical injustice that has, to Defendants' knowledge, never
17  occurred at their properties. That hypothetical injustice is an eviction based on a small balance
18  created by an Additional Service Agreement. Plaintiffs cite no examples, and certainly cannot
19  show a class-wide set of damages.

20  The policy in question is fundamentally basic. These Plaintiffs sign up to receive a service
21  that is separate and apart from base rent. That service is above and beyond the Housing Quality
22  Standards that Defendants are required to provide under the Section 8 program. The tenants
23  receive the requested service. Defendants then demand that the tenants pay the amount agreed
24  upon. Nothing about this process is unlawful. It is a fundamentally basic transaction, and Plaintiffs
25  have cited no authority suggesting that such a basic transaction is impermissible – especially when
26  HUD's regulations and the Tenancy Addendum provide for it.

27  ///
28  ///

IV. **DEFENDANTS' ACCOUNTING POLICY IS INDUSTRY STANDARD, AND PLAINTIFFS CITE NO AUTHORITY TO CONCLUDE THAT IT SOMEHOW CONVERTS NON-RENT CHARGES TO RENT.**

Plaintiffs next contend that Defendants' industry-standard accounting method magically converts non-rent amounts into unlawful excess rent. (Defendants' Memorandum in Support of Motion for Summary Judgment, p. 8, ln. 2-11 (citing the Defendant's Undisputed Material Facts 37-41.) In support of this argument, Plaintiffs cite *Sager v. Housing Commission*—a Magistrate Judge's opinion from Maryland. (Plaintiffs' Memorandum, p. 17, ln .18.) This opinion is inapposite, as it does not even concern the Section 8 Housing Choice Voucher Program. *Sager v. Housing Commission*, 957 F. Supp. 2d 627, 629 (2013) ("Plaintiff is a public housing tenant living in property owned and operated by the Housing Commission of Anne Arundel County.")

Among other items in the opinion, the Court in *Sager* finds that what is termed an "allocation clause"—in essence, an accounting practice like the one employed by Defendants—is "unworthy of an agency dedicated to the provision of decent, affordable housing to those of low income, and inconsistent with the purpose and provisions of housing law." *Sager*, 957 F.Supp.2d at 632. Defendants, of course, are private landlords. They are not public agencies, and nothing in the law suggests they should be treated as such. There is nothing in the *Sager* opinion that suggests that the ruling should be applied wholesale to the Section 8 program—particularly where the regulations in question are entirely different from the Section 8 framework.

The final, and again crucial, distinction between this case and *Sager* is the class action nature of the instant matter. The defendant in *Sager* instituted an eviction action for failure to pay the $380 in unpaid charges. *Id.* at 631. To the extent a wrongful eviction is in play, that is absolutely not a class-wide claim here. No serious argument can be made to that effect.

There is no dispute that the Section 8 regulations allow Defendants to impose charges other than rent. There is no dispute that each and every class Plaintiff agreed to pay to receive services pursuant to Additional Services Agreements. Plaintiffs raise no triable issue disputing this. Finally, Plaintiffs have not cited, and Defendants have not found authority to suggest that Defendants' industry-standard accounting policies can be a basis for liability, either under breach

of contract or under California's Unfair Competition Law. This accounting method is taught nationwide by the Institute of Real Estate Management. (Defendants' Memorandum in Support of Motion for Summary Judgment, p. 8, ln. 2-11 (citing the Defendant's Undisputed Material Facts 37-41.) There is no authority to support what Plaintiffs ask this Court to do: to essentially declare an industry-standard accounting practice unlawful when it is applied to Section 8 tenants. Such a ruling would upend the affordable housing industry. As such, Defendants submit that their use of standard accounting practices does not alchemically transform additional service charges into excess rent.

## V. PROVIDING TENANTS WITH A COMPREHENSIVE TOTAL AMOUNT OWED CANNOT ALTER THE NATURE OF CHARGES IMPOSED ON SAID TENANTS.

Plaintiffs' final class-wide argument concerns language in certain standard forms. This argument belies an entirely correct statement contained in Plaintiffs' Memorandum—that the "definition of rent turns not on labels, but on substance." (Plaintiffs Memorandum in Support of Motion for Partial Summary Judgment, p. 17, ln. 16-17.) Plaintiffs' Separate Statement of Undisputed Material Facts identifies several of Defendants' standard forms which, according to Plaintiffs, establish that the non-rent additional service charges are, in fact, rent. Those Undisputed Material Facts are as follows:

> **11. Since a revision date of May 2012, the section entitled "Rent" in Wasatch's "Residential Rental Agreement" has required tenants to pay the additional service charges along with their base rent, stating: "The sum of $\_\_\_ plus additional services of $\_\_\_ (*refer to Additional Services Agreement*), is due, in advance, on the first day of each calendar month commencing \_\_\_."**

This language, of course, distinguishes between "Rent" and the additional service charges. To the extent requiring payment of non-rent additional service charges is a basis for liability, that concern is addressed above.

> **12. Wasatch's lease includes a page entitled "Monthly Cost Breakdown" that includes "base rent" *and* the additional charges in the "Total Monthly Obligation." The form instructs tenants, "Your monthly payment is due and**



1 | payable . . . on or before the 1st day of each month."

This "Total Monthly Rent Obligation" is, quite literally, a contractual obligation. This language does nothing more than conveniently consolidate the amounts owed under the lease and Additional Service Agreement for the tenant. Demanding such other amounts under the lease is, again, contemplated specifically by the Section 8 regulations. 24 C.F.R. § 982.310(a)(1); Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment, p. 17, fn. 8.

> 13. Wasatch's form "Renewal Notification Letter" describes additional service charges as part of the tenant's rent, stating:
> "When you renew your lease, your new rental rate will be $_____, this rate includes rent and any applicable service items (such as parking, renter's insurance, pet, etc)."

This is virtually identical to UMF 12.

> 14. Wasatch's form "Move-In Cost Sheets" combines rent and additional charges in several places: The form states: "Your total monthly obligation will be $____, not including utilities" (providing a number that combines rent and additional service charges). The form lists a single amount for "Rent and Additional Services" for the first month, frequently prorated, at the top of the left column of the table. The amount for "Total Move in & First Month's Rent" provided at the bottom of the left column of the table includes additional service charges.

Once again, Plaintiffs apparently object to consolidation of the total amount of a given tenant's contractual obligation for the tenant's convenience.

> 15. Wasatch's form "Monthly Statement of Rental Account" informs tenants "[t]he first of the month is quickly approaching and rent will be due," then provides a "Total Due" that includes additional charges and informs tenants of that they will incur a late fee "[i]f rent is not paid by 5:00 pm on the 3rd."

Finally, once again, Defendants provide tenants with a form that informs them of the total amount of their contractual obligation. It is unclear what Plaintiffs' counsel believes these forms

should say. Each of these forms distinguishes between rent charges and additional service charges. This makes sense because, of course, they are legally distinct. This class of Plaintiffs has paid for additional services. In exchange, they have received additional services. That Defendants provide a total amount to pay benefits everyone because nobody wants to execute a separate transaction for each component of the total.

This case is entirely different from the *Velez* case, which Plaintiffs cite a whopping 18 times. *Velez* involved a landlord who was charging Section 8 tenants "month-to-month and short-term lease fees." *Velez v. Cuyahoga Metro Housing Authority, et al.*, 795 F.3d 578, 581 (2015). That case did not involve payments for amenities beyond the components of, as the Section 8 regulations say, "decent, safe, and sanitary housing" required by the Section 8 Housing Quality Standards. 24 C.F.R. § 982.1(a)(1). Instead, that case involved a landlord who was concerned about excessive tenant turnover. That landlord imposed month-to-month lease charges on Section 8 tenants. These charges were described by the Court as "short-term rental fees" and provided no additional benefit to the tenants. Tellingly, these fees were never revealed to the pertinent local housing authority. *Velez*, 395 F.3d at 581. The rationale for such charges was explained by the Court—"as a means of recovering the increased turnover expenses, marketing costs, and market risks associated with shorter-term leases." *Id.*

The prohibited *Velez* charges are entirely different from those at issue in this case. Defendants are not imposing additional service charges to recoup unit turnover costs, or to reduce marketing risks and costs. These charges here are, undisputedly, for actual and tangible additional services. Which is to say, again, for services and amenities above and beyond those required by the Housing Quality Standards. Plaintiffs do not argue that the items encompassed by Defendants' Additional Services Agreements should be included within the Housing Quality Standards. The charges in *Velez* are dissimilar. There is no legal basis to require Defendants to offer these services for free, nor is there any legal basis to preclude any Section 8 tenant from choosing to pay for an amenity that will improve their quality of life. Put simply, these practices are not unlawful.

///

///

## VI. THERE IS NO LEGITIMATE PUBLIC POLICY BASIS TO PRECLUDE THE USE OF ADDITIONAL SERVICE AGREEMENTS WITH SECTION 8 TENANTS.

Plaintiffs' final argument is based on their view of public policy—that the imposition of additional service charges on Section 8 tenants somehow makes these ostensibly affordable housing units somehow untenable for the people the program is intended to help. This argument is misguided. Plaintiffs are correct that the Housing Choice Voucher Program is "clearly undermined when a program participant overcharges a beneficiary of the program." (Plaintiffs' Memorandum, p. 3, ln. 17.)  But that is about as far as the argument goes.

This argument ignores the fundamental point of the Section 8 Housing Choice Voucher Program—the element of choice. Defendants urge the Court to consider the inevitable outcomes of Plaintiffs' legal theories.[3] The first, and most obvious, is that Section 8 landlords would have to deny additional amenity options to Section 8 tenants, because to do so would be illegal. Non-Section 8 tenants would be able to pay extra for items like covered parking, cable packages, or renter's insurance, but Section 8 tenants would not have the same option.  That is not equal treatment and that is horrible public policy.

The second option would be a ruling that required landlords to provide additional amenities to Section 8 tenants for free if it wanted to offer non-Section 8 tenants these amenities for a fee.  There is nothing in the HUD regulations that even remotely approves of such a program and for good reason.   The effect would be a judicial requirement that landlords provide amenities beyond the Housing Quality Standards on an unequal basis. This is economic discrimination.

On a class-wide basis, these tenants are given the option to select amenities that they believe will make their living experience better. Wasatch Property Management, Inc. has provided housing to Section 8 tenants across five states. A ruling from this Court will fundamentally change the way in which not just Wasatch Property Management, Inc., but many other landlords can offer

---

[3] Defendants reiterate that Plaintiffs' defined class does not include a mandatory-imposition component. Plaintiffs intentionally sought a broader class definition, and in light of clear evidence, the Court need not reach the issue of whether mandatory imposition of Additional Service Agreement charges would be a violation of Section 8 regulations.



4854-3367-9135.1     10     2:15-cv-00799-KJM-DB
DEFENDANTS' OPPOSITION TO PLAINTIFFS' AND RELATORS' MOTION FOR PARTIAL SUMMARY JUDGMENT

housing to Section 8-eligible tenants. Plaintiffs' policy arguments are almost insultingly paternalistic—suggesting that a low-income tenant should not be *allowed* to pay for something like renter's insurance, and that a landlord should be punished for offering it.

## VII. CONCLUSION

On a class-wide basis, there is no basis to conclude that additional service charges have been made a mandatory condition of leasing. Absent that conclusion—and Defendants do not concede that such a conclusion would create liability—there is no basis for summary judgment on behalf of Plaintiffs. For those reasons, fully articulated above, Defendants respectfully request that the Court deny Plaintiffs' and Relators' Motion for partial Summary Judgment.

DATED: May 13, 2022               LEWIS BRISBOIS BISGAARD & SMITH LLP


By: */s/Ryan Matthews*
Joseph A. Salazar, Jr.
Ryan Matthews
Attorneys for Defendants,
Wasatch Advantage Group, LLC; Wasatch Property Management, Inc.; Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC; Logan Park Apartments, LLC; Logan Park Apartments, LP

# FEDERAL COURT PROOF OF SERVICE

USA-Terry v Wasatch Property Management, et al.
Case No. 2:15-cv-00799-KJM-DB

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On **May 13, 2022**, I served the following document(s):

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' AND RELATORS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on **May 13, 2022**, at Sacramento, California.

                                            */s/Roxy A. Chipak*
                                            Roxy A. Chipak



**SERVICE LIST**
*USA-Terry v Wasatch Property Management, et al.*
*Case No. 2:15-cv-00799-KJM-DB*

| | |
|---|---|
| Andrew Wolff<br>Law Office of Andrew Wolff, PC<br>1956 Webster Street, Suite 275<br>Oakland, CA 94612 | ***Attorney for Plaintiffs***<br>***Denika Terry and Roy Huskey, III***<br><br>Tel.: (510) 834-3300<br>Email: andrew@awolfflaw.com |
| Jesse Newmark<br>CENTRO LEGAL DE LA RAZA<br>3022 International Blvd., Suite 410<br>Oakland, CA 94601 | ***Attorney for Plaintiffs***<br>***Denika Terry and Roy Huskey, III***<br><br>Tel.: (510) 437-1554 x115<br>Fax: (510) 437-9164<br>Email: jessenewmark@centrolegal.org |
| Laura L. Ho<br>Anne Bellows<br>Stephanie Tilden<br>GOLDSTEIN, BORGEN, DARDARIAN & HO<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612 | ***Attorneys for Plaintiffs and Relators and the Certified Classes***<br><br>Tel: (510) 763-9800<br>Fax: (510) 835-1417<br>Email: ljo@gbdhlegal.com<br>Email: abellows@gbdhlegal.com<br>Email: stilden@gbdhlegal.com<br>Email: sgrimes@gbdhlegal.com<br>Email: dvaldez@gbdhlegal.com |
| Vincente Antonio Tennerelli<br>United States Attorney's Office<br>2500 Tulare Street, Suite 4401<br>Fresno, CA 93721 | ***Attorney for Intervenor Plaintiff***<br>***United States of America***<br><br>Tel.: (559) 497-4080<br>Email: Vincente.Tennerelli@usdoj.gov<br>Email: joni.jones@usdoj.gov |
| Jocelyn D. Larkin<br>Lindsay Nako<br>The Impact Fund<br>2080 Addison Street, Suite 5<br>Berkeley, CA 94704 | ***Attorney for Plaintiffs***<br><br>Tel: (510) 845-3473 x.306<br>Fax: (510) 845-3654<br>Email: jlarkin@impactfund.org<br>Email: lnako@impactfund.org |



4854-3367-9135.1                                    13                                    2:15-cv-00799-KJM-DB
DEFENDANTS' OPPOSITION TO PLAINTIFFS' AND RELATORS' MOTION FOR PARTIAL SUMMARY JUDGMENT