Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | (Fax) (510) 835-1417

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Telephone: (510) 834-3300 | (Fax) (510) 834-3377

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Telephone: (510) 437-1863 | (Fax) (510) 437-9164

Jocelyn Larkin (SBN 110817)
jlarkin@impactfund.org
Lindsay Nako (SBN 239090)
lnako@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473 | (Fax) (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**PLAINTIFFS AND RELATORS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: July 8, 2022<br>Time: 10:00 a.m.<br>Dept: Courtroom 3, 15th Floor<br>Before: Hon. Chief Judge Kimberly J. Mueller<br><br>Trial Date:     None Set |

Pls. & Relators' Reply In Supp. of Mot. for Partial Summ. J. - Case No. 2:15-CV-00799 KJM-DB

855497.15

| | |
|---|---|
| 1 | LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON APARTMENTS, LP, BENT TREE APARTMENTS, LLC, CALIFORNIA PLACE APARTMENTS, LLC, CAMELOT LAKES HOLDINGS, LLC, CANYON CLUB HOLDINGS, LLC, COURTYARD AT CENTRAL PARK APARTMENTS, LLC, CREEKSIDE HOLDINGS, LTD, HAYWARD SENIOR APARTMENTS, LP, HERITAGE PARK APARTMENTS, LP, OAK VALLEY APARTMENTS, LLC, OAK VALLEY HOLDINGS, LP, PEPPERTREE APARTMENT HOLDINGS, LP, PIEDMONT APARTMENTS, LP, POINT NATOMAS APARTMENTS, LLC, POINT NATOMAS APARTMENTS, LP, RIVER OAKS HOLDINGS, LLC, SHADOW WAY APARTMENTS, LP, SPRING VILLA APARTMENTS, LP, SUN VALLEY HOLDINGS, LTD, VILLAGE GROVE APARTMENTS, LP, WASATCH QUAIL RUN GP, LLC, WASATCH PREMIER PROPERTIES, LLC, WASATCH POOL HOLDINGS III, LLC, and DOES 1-4,<br><br>     Defendants. |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT ................................................................................................................. 1

    A.    Wasatch's Creation of a Strawman Fails ........................................................... 1

    B.    Wasatch's Opposition Confirms that the Material Facts Are Undisputed. .................... 2

    C.    Wasatch Is Unable to Substantively Distinguish Its Additional Charges from Rent ................................................................................................................. 3

        1.    Wasatch Does Not Offer Any Cogent Alternative Definition of Rent ............... 3

        2.    Neither the HAP Contract nor Federal Regulation Authorize Wasatch's Practices ............................................................................................ 5

        3.    Wasatch's Additional Service Charges Must be Deemed "Rent" Based on the Company's Undisputed Policies and Practices. ..................................... 6

            a.    The Undisputed Facts Show that Wasatch's Standard Forms Describe Additional Service Charges as a Part of Rent. ......................... 6

            b.    It Is Undisputed that Wasatch's Payment Sequence Is Designed to, and Does, Convert Unpaid Additional Service Charges into Unpaid Rent. ........................................................................................ 7

            c.    Wasatch Uses the Threat of Eviction to Require Section 8 Tenants to Pay Additional Service Charges. ......................................... 7

    D.    Wasatch Cannot Escape Partial Summary Judgment as to its Washer and Dryer Fees or its Renters Insurance Requirement. ................................................ 8

        1.    Wasatch Does Not Defend Its Washer and Dryer Charges on the Merits .......... 8

        2.    Wasatch Does Not Dispute that a Renters Insurance Requirement is Illegal ................................................................................................ 9

        3.    Wasatch's Arguments About Classwide Proof Are Not a Defense to Partial Summary Judgment on the Lawfulness of Washer and Dryer and Renters Insurance Charges. ............................................................. 9

III.    CONCLUSION .......................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
   731 F.3d 952 (9th Cir. 2013) ............................................................................................... 10

*Amgen v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ............................................................................................................ 10

*Barrientos v. 1801-1825 Morton LLC*,
   583 F.3d 1197 (9th Cir. 2009) ............................................................................................... 7

*Coleman v. Hernandez*,
   490 F. Supp. 2d 278 (D. Conn. 2007) ................................................................................... 5

*Doe v. Cnty. of Kern*,
   No. 1:15-CV-01641-, 2017 WL 1383282 (E.D. Cal. Apr. 18, 2017) ..................................... 9

*United States ex rel. Holmes v. Win Real Estate., Inc.*,
   No. 2:13-cv-02149, 2015 WL 6150594 (D. Nev. Oct. 19, 2015) ........................................... 4

*Kelly v. Denault*,
   374 F. Supp. 3d 884 (N.D. Cal. 2018) ............................................................................... 5, 8

*United States ex rel. Mathis v. Mr. Prop., Inc.*,
   No. 2:14-cv-00245, 2015 WL 1034332 (D. Nev. Mar. 10, 2015) .......................................... 5

*United States ex rel. Price v. Peters*,
   66 F. Supp. 3d 1141 (C.D. Ill. 2013) ................................................................................. 4, 5

*Sager v. Hous. Comm'n of Anne Arundel Cnty.*,
   957 F. Supp. 2d 627 (D. Md. 2013) ...................................................................................... 7

*United States ex rel. Sutton v. Reynolds*,
   564 F. Supp. 2d 1183 (D. Or. 2007) ...................................................................................... 4

*Velez v. Cuyahoga Metropolitan Housing Authority*,
   795 F.3d 578 (6th Cir. 2015) ............................................................................................. 3, 4

**Federal Statutes**

42 U.S.C. § 1437f(o)(7)(C) ...................................................................................................... 6, 7

False Claims Act ...................................................................................................................... 1, 10

Unfair Competition Law ............................................................................................................... 1


**Rules**

Fed. R. Civ. P.
  23 .................................................................................................................................... 10
  23(c)(1) ........................................................................................................................... 10

**Regulations**

24 C.F.R.
  § 982.310(a) ...................................................................................................................... 7
  § 982.310(a)(1) .............................................................................................................. 5, 6
  § 982.451(b)(4)(ii) ............................................................................................................ 3

## I.  INTRODUCTION

Defendants' Opposition largely ignores or mischaracterizes Plaintiffs and Relators' ("Plaintiffs") position and instead raises straw-man arguments. Wasatch begins by incorrectly claiming that Plaintiffs seek to ban owners from charging Section 8 tenants for additional services, when all Plaintiffs seek is for Wasatch to follow federal law when doing so. Wasatch also fails to cite case law or otherwise refute Plaintiffs' argument that Wasatch unlawfully treats services charges as rent in violation of HAP Contracts and federal law. Wasatch does not offer any legal defense of its washer and dryer charges or of its renters insurance requirement. Instead, Wasatch makes meritless arguments about classwide proof, and entirely ignores that the False Claims Act is not a class claim.

Wasatch has not proffered any real dispute of fact or legal argument in opposition to Plaintiffs' Motion. This Court should find that Wasatch's additional service charges are unlawful excess rent and that its conduct constitutes a breach of contract and a violation of the Unfair Competition Law.

## II.  ARGUMENT

### A.  Wasatch's Creation of a Strawman Fails.

Wasatch repeatedly accuses Plaintiffs of seeking a ruling either prohibiting the company from offering the services on its Additional Services Agreement to Section 8 tenants or requiring it to provide those services to Section 8 tenants for free. Defs.' Opp'n. 2, 9, 10-11, ECF No. 258. But Plaintiffs do not argue that charging Section 8 tenants for amenities is *per se* illegal. Rather, it is how Wasatch treats those charges—*i.e.*, as rent—that renders them unlawful. Wasatch may continue to offer the services on its Additional Services Agreement to Section 8 tenants in a manner that complies with the HAP Contract and federal law—that is, as optional charges that are not converted into rent by policies making payment a condition of either initial or continued tenancy. And Wasatch may require tenants to pay those charges by means that do not jeopardize the tenants' housing, *e.g.*, by withdrawing the service as a consequence of nonpayment, or by making recourse to small claims court.

Wasatch's principal response to its strawman opponent is that the HAP Contract contemplates charges for "items other than rent." Defs.' Opp'n 4. That is, the charges must be lawful because they are for services that are "separate and apart from base rent" and not expressly prohibited by the HAP

Contract. *Id.* at 4, 5. This is the same argument Wasatch made in its Motion to Dismiss. The Court has already rejected this position, and rightly so. *See* Order Mot. Dismiss 6-7, ECF No. 61.

### B. Wasatch's Opposition Confirms that the Material Facts Are Undisputed.

Turning to matters that *are* relevant to Plaintiffs' motion, Wasatch has now confirmed that there is no material dispute of fact. *See* Defs.' Resp. to Pls.' Statement of Undisputed Facts ("Def. Resp. to UF"), ECF No. 258-1. There is no dispute that all of the additional charges are above and beyond the "rent to owner" Wasatch agreed to in its HAP Contracts. *Id.* at Undisputed Facts ("UF") 4, 7. Wasatch admits that once tenants are enrolled in a service charge, Wasatch has always required them to pay that charge "throughout the terms covered the tenants' leases." *Id.* at UF 5. Wasatch admits the content of its standard forms. *Id.* at UF 8-15, 21, 22. Wasatch admits all facts related to its payment sequence, including its purpose of "ensuring that any outstanding amounts are designated unpaid rent and can be sought through eviction proceedings." *Id.* at UF 16-18.

Wasatch admits all of its collections policies and practices informing tenants that they must pay outstanding additional service charges or face eviction. *Id.* at UF 23-31. Wasatch quibbles only that a $100 balance (constituting a "large balance" requiring a pay or quit notice) made up solely of service charges would be "extremely improbable" given its payment sequence. *Id.* at UF 26. This is not a relevant dispute of fact; Plaintiffs agree that Wasatch's payment sequence does apply payments to additional service charges first. *Id.* at UF 16. Still, outstanding balances of only additional service charges do occur, for instance, because some Section 8 tenants pay $0 in rent.[1] Johnson Dep. 137:16-138:6, Bellows Decl. Ex. 9 at 25-26, ECF No. 246-9; *see also* Pay or Quit Notices, Bellows Decl. Ex. 20 at 1, 4, 6-8, 10, 13, 16, 20-26, ECF No. 249-6.

At the same time, Wasatch admits that it maintains standard pay or quit notices for non-rent charges, that it serves pay or quit notices even for balances under $100, and that it has served pay or quit notices demanding that Section 8 tenants pay additional service charges or face eviction (including

---

[1] Johnson's assertion that there is "no company-wide policy" specific to large balances made up only of additional charges does not create a dispute of fact with Wasatch's general policy (admitted by Wasatch to accurately reflect the policies in place for the relevant period, Defs.' Resp. to UF 23, 24) to serve a pay or quit notice for "large balances," which is not limited to balances including base rent. *See* Johnson Dep. 137:16-138:6, 139:24-140:8, Bellows Decl. Ex. 9 at 25-28, ECF No. 246-9 & Rent Collections Best Practices-How To, Bellows Decl. Ex. 27 at 2, ECF No. 250-7 (cited in UF No. 26).

for amounts under $100). Defs.' Resp. to UF 27-30. In addition, Wasatch admits its policy is to inform tenants with small balances they must pay *all* outstanding charges before future rent payments will be accepted. *Id.* at UF 25. Thus, it remains undisputed that Wasatch makes clear to its tenants that they must pay outstanding additional charges or face eviction. *See id.* at UF 23-31.

Wasatch also admits all material facts establishing that the washer and dryer fees it charged to Section 8 tenants are not authorized by the HAP Contract, which, until a July 2019 revision, made any unlisted appliances the responsibility of the owner. *Id.* at UF 32-36.

Finally, Wasatch admits the existence of its renters insurance requirement, but disputes that this requirement applied to Section 8 tenants. This alleged dispute must be disregarded, however, because Wasatch's designated corporate deponents all testified contemporaneously that Section 8 tenants *were* subject to the requirement. *See* Pls.' Obj. to Defs.' Opp'n. Evid. 1-2, filed herewith. Contrary testimony by a fact witness cannot create a dispute at summary judgment. *See id*. & citations therein.

### C. Wasatch Is Unable to Substantively Distinguish Its Additional Charges from Rent.

Wasatch entirely fails to address the meaning of "rent" in the Section 8 program, and in doing so avoids Plaintiffs' core argument that the additional charges must be deemed rent because Wasatch requires Section 8 tenants to pay the charges to continue occupying their homes. The few arguments Wasatch does make fail to identify any valid basis for its practices in the HAP Contract or federal law.

#### 1. Wasatch Does Not Offer Any Cogent Alternative Definition of Rent.

Wasatch offers no reason for this Court to depart from the meaning of "rent" in federal law as payment that is required for the use of property. *Cf.* MPSJ 13-14. In fact, Wasatch does not engage with the meaning of rent at all. Yet the meaning of "rent" is at the center of Plaintiffs' contention that Wasatch has violated the HAP Contract and federal regulation prohibiting it from charging or accepting "any payment for rent of the unit in addition to the rent to owner." *See* HAP Contract Part C, ¶ 5e, Bellows Decl. Ex. 13 at 55, ECF No. 247-3; *see also* 24 C.F.R. § 982.451(b)(4)(ii) (same).

Wasatch avoids the central issue with its cursory discussion of *Velez v. Cuyahoga Metropolitan Housing Authority*, 795 F.3d 578 (6th Cir. 2015), which Plaintiffs cite for its authoritative discussion of the meaning of "rent" in federal law. *See* MPSJ 12-14. Instead of engaging with that discussion,

3
PLS. & RELATORS' REPLY IN SUPP. OF MOT. FOR PARTIAL SUMM. J. - CASE NO. 2:15-CV-00799 KJM-DB
855497.15

Wasatch merely argues that the "short term rental fees" at issue in *Velez* are distinguishable,[2] and that the fees "were never revealed to the pertinent local housing authority." Defs.' Opp'n 9.

As to the first point, *Velez* gave little weight to the label attached to the fee, holding that "[m]erely recasting the charge as a short-term fee, rather than as a rent charge, does not change the fact that it is consideration paid by the tenant for use of the rental unit." 795 F.3d at 585. Rather, citing evidence that the lease "provid[ed] for short term fee payment with rent charge as one rental payment, the nonpayment of which shall be cause for eviction under the appropriate sections of the applicable code," the court found the fee was "a monthly charge that the tenants were required to pay to continue occupying the rental unit." *Id.* at 585-86 (quotation marks omitted). So too here, Wasatch's standard forms instruct tenants to pay a "rental rate" or "total monthly obligation" combining additional fees and base rent, and Wasatch's undisputed accounting and collection practices use the threat of eviction to require payment of those fees. *See* Defs.' Resp. to UF 12-13, 16-18, 25-31; MPSJ 5-8, 14-16.

As to the second point, Wasatch is flat out wrong to claim the local housing authority in *Velez* was unaware of the fees. The plaintiffs in that case sued the housing authority over its "policy not to treat these short-term rental fees as rent under the voucher program." 795 F.3d at 581. Thus, *Velez* stands for the proposition that additional fees beyond rent to owner, whether or not acceptable to the housing authority, are unlawful in the Section 8 program where they meet the federal definition of rent.

Wasatch also implies that items not listed in the Housing Quality Standards ("HQS") cannot be part of rent, regardless of how the charges are treated by the landlord. Wasatch does not and cannot cite authority or reasoning for this position. Indeed, courts have repeatedly found additional amenity charges to constitute unlawful side payments without any reference to the HQS. *See, e.g.*, *United States ex rel. Price v. Peters*, 66 F. Supp. 3d 1141, 1149 (C.D. Ill. 2013) (extra charges for storage shed were excess rent); *United States ex rel. Sutton v. Reynolds*, 564 F. Supp. 2d 1183, 1187 (D. Or. 2007) (side charges for landscaping services could violate HAP Contract); *United States ex rel. Holmes v. Win Real Estate., Inc.*, No. 2:13-cv-02149, 2015 WL 6150594, at *4 (D. Nev. Oct. 19, 2015) (property

---

[2] Wasatch has also charged Section 8 tenants month-to-month fees under its Additional Services Agreements. *See* Breshears Report 3, ECF No. 242-3. Plaintiffs agree with Wasatch that such fees are unlawful. In light of Wasatch's concession, partial summary judgment is proper as to these fees.

4

Pls. & Relators' Reply In Supp. of Mot. for Partial Summ. J. - Case No. 2:15-cv-00799 KJM-DB

855497.15

management and HOA fees were excess rent); *United States ex rel. Mathis v. Mr. Prop., Inc.*, No. 2:14-cv-00245, 2015 WL 1034332, at *4-5 (D. Nev. Mar. 10, 2015) (pool maintenance fees could violate HAP Contract). Even where the charges at issue are for utilities that are within the HQS, courts make no reference to the HQS in analyzing whether the charges are unlawful side payments. *See, e.g.*, *Kelly v. Denault*, 374 F. Supp. 3d 884, 892 (N.D. Cal. 2018); *Coleman v. Hernandez*, 490 F. Supp. 2d 278, 280 (D. Conn. 2007). The HQS are simply irrelevant to whether a charge is rent.

Of these cases, Wasatch only attempts to distinguish *United States ex rel. Price v. Peters*, but its arguments miss the mark. *See* Defs.' Opp'n 4 n.2. Like Wasatch, the defendant in *Price* argued that charges for an optional storage shed were lawful because the HAP Contract did not require provision of a storage shed. 66 F. Supp. 3d at 1148. The court rejected that argument, concluding that the charges constituted rent payments for use of the premises.[3] *Id.* at 1149. Here too, Plaintiffs argue that Defendants require payment of additional charges for continued occupancy of the unit.

### 2. Neither the HAP Contract nor Federal Regulation Authorize Wasatch's Practices.

Wasatch argues that additional charges are "explicitly contemplated" by the HAP Contract. Again, Plaintiffs do not challenge amenity charges *per se*, but rather Wasatch's policies that make those charges "rent" as that term is used in federal law and the Section 8 program. No language in the HAP Contract "explicitly contemplates" those policies and practices. *Cf.* Defs.' Opp'n 4. Rather, the HAP Contract confirms that "rent" means payment required for use of the property. *See, e.g.*, HAP Contract Part B, ¶ 8d (requiring certification that "[e]xcept for the rent to owner, the owner has not received and will not receive any payments ... for rental of the contract unit."). By requiring payment of service charges as a condition of continued occupancy, Wasatch converts the charges into rent.

Wasatch also argues that 24 C.F.R. § 982.310(a)(1) "specifically contemplate[s] collecting amounts other than rent from Section 8 tenants, and explicitly define[s] non-payment of such amounts as grounds for termination of a HAP Contract." Defs.' Opp'n 4. If Wasatch means to argue that this provision authorizes eviction (or threats of eviction) for nonpayment of amenity charges, it fails to

---

[3] Contrary to Wasatch's assertion, the court made no suggestion that the charges were customarily included in rent in the locality. *Price*, 66 F. Supp. 3d at 1149. And the amount of the charge, which Wasatch emphasizes, was relevant to scienter, not to whether the charge was rent. *Id.* at 1149-50.

support that reading with case law or other analysis. *Cf.* MPSJ 16-17 & n.8; Pls.' Opp'n to Def. Mot. Summ. J. 11-12, ECF No. 257. Any such interpretation is foreclosed by the "serious violation" standard set by § 982.310(a)(1) and 42 U.S.C. § 1437f(o)(7)(C), a standard Wasatch ignores. Wasatch does not and cannot contend "serious" lease violations under federal law are less demanding than the "material" breach standard in relevant state law, which Wasatch acknowledges to prohibit evictions for unpaid service charges. *See* Defs.' Resp. to UF 19; MPSJ 16-17 & n. 8. In fact, Wasatch concedes that the regulation prohibits termination for nonpayment that is only a "minor violation" of the lease, but argues that it complies with this requirement. Defs.' Opp'n 5. Wasatch does not address or dispute Plaintiffs' argument that nonpayment of additional service charges are the kind of "minor" lease violations HUD explained are not grounds for termination under § 982.310(a)(1). *Compare* Defs.' Opp'n 4-6 *and* MPSJ 17 n. 8. Wasatch thus offers no grounds for asserting that the regulatory provision authorizes the company's practices that threaten Section 8 tenants with loss of their homes for failure to pay the so-called "separate" charges.

3. **Wasatch's Additional Service Charges Must be Deemed "Rent" Based on the Company's Undisputed Policies and Practices.**

Wasatch's efforts to divert attention from its practices fail to overcome the undisputed evidence that Wasatch requires tenants to pay additional charges to avoid eviction.

a. **The Undisputed Facts Show that Wasatch's Standard Forms Describe Additional Service Charges as a Part of Rent.**

Wasatch's discussion of its standard forms glosses over inconvenient language and overlooks *what the forms communicate to tenants* about the additional charges. By requiring payment of additional service charges as a component of rent in the lease (Defs.' Resp. to UF at 11), combining charges with "base rent" to provide a "Total Monthly Obligation" (*id.* at UF 12), describing the additional charges as part of the "rental rate" (*id.* at UF 13), and obscuring the distinction between rent and additional charges in other forms (*id.* at UF 14, 15), Wasatch communicates to its tenants that the charges are a part of rent. The obligation to pay is the same, and the consequences will be the same. *See, e.g., id.* at UF 12, 16. In brief, payment of the charges is required for tenancy.

### b. It Is Undisputed that Wasatch's Payment Sequence Is Designed to, and Does, Convert Unpaid Additional Service Charges into Unpaid Rent.

Under Wasatch's payment sequence, an additional charge "effectively becomes rent: if it is not paid, [a tenant] may be evicted for a failure to pay rent." *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 957 F. Supp. 2d 627, 638 (D. Md. 2013). That is by design. Defs.' Resp. to UF No. 17.

Wasatch's attempt to distinguish *Sager* as inapposite to the Section 8 program fails. The heart of *Sager*'s analysis is that the payment sequence was used as a "work-around" of tenant's "procedural and substantive rights" in federal law. *Id.* at 34. Among those rights is the statutory right—identical to that secured in 42 U.S.C. § 1437f(o)(7)(C) for Section 8 tenants—not to be evicted except for "serious or repeated violation of the lease" or other good cause. *See* 957 F. Supp. 2d at 633 (citing 42 U.S.C. § 1437d(l)(5)). Moreover, *Sager*'s holding that the payment sequence violated the federal public housing rent ceiling represents a conclusion that the policy made charges "rent." *Id.* at 637-38.

To avoid *Sager*, Wasatch argues that it is a "private landlord[]" and its payment sequence is "industry-standard." This misses the point: Plaintiffs contend the additional charges qualify as "rent" under federal law, as applied in the Section 8 program—the program through which Wasatch has received over $100 million of government payments. *See* Breshears Report at 3. The Section 8 program is governed by federal laws and regulations that secure critical protections for qualifying low-income tenants. *See* 42 U.S.C. § 1437f(o)(7)(C); 24 C.F.R. § 982.310(a); HAP Contract, Part C ¶ 8; *Barrientos v. 1801-1825 Morton LLC*, 583 F.3d 1197, 1204, 1207, 1210-11 (9th Cir. 2009); MPSJ at 16-17. The federal agency administering the program has disapproved of comparable payment sequences as "circumventing federal regulation." RJN, Ex. 1, ECF No. 243; *see also id.* Exs. 2, 3. Wasatch cannot cite the alleged customs of the private market to overcome its tenants' federal rights.[4]

### c. Wasatch Uses the Threat of Eviction to Require Section 8 Tenants to Pay Additional Service Charges.

Wasatch's primary response to Plaintiffs' challenge to its collections policies is an assertion that it has never evicted Section 8 tenants for failure to pay additional charges. This assertion is both

---

[4] The weak evidence Wasatch cites for the proposition that the payment sequence is industry standard is thus irrelevant. *See* Griswold Dep. 173:6-21, Matthews Decl. iso Defs.' MSJ, ECF No. 241-10.

unremarkable (since Wasatch knows such an eviction would not succeed, *see* Defs.' Resp. to UF No. 19) and, again, beside the point.  Wasatch makes a tenant's right to continue living in their home contingent on payment of the additional charges in myriad ways—all of which are undisputed.  As addressed above, Wasatch's payment sequence is *designed* to place tenants at risk of eviction if they fail to pay an additional charge. *Id.* at UF 16-18.  Wasatch also requires tenants to pay all outstanding charges before accepting future rent payments—plainly conditioning the tenant's ability to remain in their home on payment of any additional charges. *Id.* at UF 25.  And the company acknowledges serving pay or quit notices requiring Section 8 tenants to pay outstanding additional service charges to avoid eviction, including for so-called "small balances" involving additional service charges. *Id*. at UF 27, 30, 31.  Although Wasatch cannot successfully evict a tenant for nonpayment of additional charges, it does not need a court order of eviction to achieve the desired coercive effect.[5]

### D. **Wasatch Cannot Escape Partial Summary Judgment as to its Washer and Dryer Fees or its Renters Insurance Requirement.**

Wasatch offers no legal defense of its washer and dryer charges or renters' insurance requirement.  Instead, it raises meritless class certification arguments that do not save it from partial summary judgment as to the legality of those charges.

#### 1. **Wasatch Does Not Defend Its Washer and Dryer Charges on the Merits.**

Wasatch fails to address Plaintiffs' argument, and this Court's holding, that charging Section 8 tenants for washers and dryers that are not listed on the HAP Contract "is prohibited by operation of the HAP Contract." Order Mot. Dismiss 9-10.  Wasatch admits it never disclosed the washer and dryer fees it charged tenants on the HAP Contract.  Defs.' Resp. to UF 32-34.

Unauthorized utility and appliance charges are considered excess rent. *See Coleman*, 490 F. Supp. 2d at 280.  Class members who paid washer and dryer fees are entitled to restitution of those payments.  The HAP Contract requires the lease to be consistent with the utilities and appliances allocation in Part A.   HAP Contract Part B ¶ 5c, Bellows Decl. Ex. 13 at 51, ECF No. 247-3.  The Tenancy Addendum incorporates the utilities and appliances allocation into the definition of rent to

---

[5] Wasatch policy is to persuade tenants to vacate in order to avoid an official eviction. *See* Bellows Decl. Ex. 27 at 6, ECF No. 250-7 ("It is best for both Wasatch and your delinquency if you are able to talk residents into returning possession of the apartment versus going through the eviction process").

owner. HAP Contract Part C ¶ 5e, *id.* at 55. Such charges listed in leases or in Additional Service Agreements, but not on Part A of the HAP Contract, are invalid. Order Mot. Dismiss 9 (Additional Service Agreements conflicted with the HAP Contract and therefore "is superseded by it.").

### 2. Wasatch Does Not Dispute that a Renters Insurance Requirement is Illegal.

Similarly, Defendants do not disagree that requiring Section 8 tenants to purchase renters insurance, whether from Wasatch or through another provider, is unlawful. Wasatch tries to conjure a fact dispute by citing the testimony of a fact witness, which it fails to introduce into the record, that directly contradicts earlier testimony from Wasatch's designated 30(b)(6) deponents on subjects for which they were designated. *See* Pls.' Objs. to Defs.' Opp'n. Evid. No. 1. Wasatch cannot create a dispute by rebutting its own 30(b)(6) testimony. *Doe v. Cnty. of Kern*, No. 1:15-CV-01641, 2017 WL 1383282 (E.D. Cal. Apr. 18, 2017). The undisputed facts thus show that, until recently, Wasatch required Section 8 tenants to purchase renters insurance. Defs.' Resp. to UF 37-42.

Nor does Johnson's statement that Wasatch has never required "all of its Section 8 tenants at LIHTC properties to obtain renters insurance," create a factual dispute. *See* Johnson Decl. ¶ 6, Matthews Decl. Ex. A, ECF No. 258-2; Defs.' Resp. to Pls.' UF 42. Plaintiffs do not claim that all Section 8 tenants at LIHTC properties were required to purchase renters insurance—only those who could purchase insurance while remaining under the rent limit for the LIHTC program.[6] *Id.* at UF 42.

### 3. Wasatch's Arguments About Classwide Proof Are Not a Defense to Partial Summary Judgment on the Lawfulness of Washer and Dryer and Renters Insurance Charges.

In the face of the actual undisputed facts and the undisputed law rendering its washer and dryer and required renters insurance charges illegal, Wasatch resorts to pointing out that Plaintiffs cannot show that all class members paid for these specific services.[7] Defs.' Opp'n 2-3. Wasatch's

---

[6] The late-filed spreadsheet and Christiansen declaration describing percentages of Section 8 tenants paying renters' insurance charges at LIHTC properties fail to create a dispute of fact for the same reason. *See* Defs.' Resp. to UF 42; Christiansen Decl., Ex. A, ECF No. 260. Moreover, the spreadsheet is rife with problems that preclude it from creating a dispute—it does not account for tenants who purchased insurance from a third party, it includes more than two years of data after the renters' insurance requirement ended in late 2019, and it obscures variations over time by improperly aggregating data for an eight-year period that begins, inexplicably, in the middle of the liability period.

[7] Contrary to Wasatch's characterization, Plaintiffs do not argue in their Motion that the washer and dryer charges were required charges. *Cf.* Defs.' Opp'n 3.

observation does not prevent summary judgment on the legality of these charges, which are relevant both to numerous class members and to Plaintiffs' non-class False Claims Act claim.

Plaintiffs argue that *all* additional service charges at issue in this case constitute unlawful excess rent based on Wasatch's undisputed practices that treat those charges as rent. *See* Sec. II.C, *supra*. That argument, together with Wasatch's cross motion contending that the charges are lawful, present numerous classwide issues confirming the predominance of common questions of fact and law.

Plaintiffs' additional and independent arguments that the washer and dryer charges and the renters insurance requirement were unlawful, MPSJ 1, 18-19, applies to properties spanning Wasatch's portfolio, including its California properties. By ruling on those legal theories, the Court will resolve questions of law common to numerous members of the certified classes. It is well established that Rule 23 allows classes with "some variation" among individual plaintiffs' claims. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 963 (9th Cir. 2013). If amendments to the class definition are appropriate after the Court's ruling on these motions, the Court has ample discretion to manage that process. *See* Fed. R. Civ. P. 23(c)(1); *Amgen v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 479 n.9 (2013). Moreover, it is undisputed that Wasatch uniformly failed to list washer and dryer fees on HAP Contracts wherever they imposed these charges and uniformly required Section 8 tenants to obtain renters insurance, with easily discernable exceptions at LIHTC properties. Defs.' Resp. to UF 32-34, 37-40, 44. These facts, combined with Wasatch's data, will make the calculations of damages and restitution entirely manageable for class members who paid these charges. *Id.* at UF 43, 44.

Wasatch's arguments also entirely ignore Plaintiffs' False Claims Act claim, which is not a class claim. 5th Am. Compl. ¶¶ 212-26, ECF No. 136. Plaintiffs, as Relators, allege that Wasatch received federal subsidies after certifying that it would not receive payments beyond the "rent to owner" from Section 8 tenants for rental of the contract unit. Whether, under the facts of this case, the washer and dryer charges and renters insurance fees constitute excess rent rendering those certifications false does not require any finding that these charges applied class wide.

### III. CONCLUSION

As Wasatch has identified no material disputes of fact or law in opposition to Plaintiffs' Motion for Partial Summary Judgment, the Motion should be granted.

| | | |
|---|---|---|
| 1 | Dated: May 27, 2022 | Respectfully submitted, |
| 2 | | GOLDSTEIN, BORGEN, DARDARIAN & HO |
| 3 | | |
| 4 | | */s/ Anne Bellows* <br> Anne Bellows |
| 5 | | Attorneys for Plaintiffs and Relators |

11