Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | (Fax) (510) 835-1417

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Telephone: (510) 834-3300 | (Fax) (510) 834-3377

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Telephone: (510) 437-1863 | (Fax) (510) 437-9164

Jocelyn Larkin (SBN 110817)
jlarkin@impactfund.org
Lindsay Nako (SBN 239090)
lnako@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473 | (Fax) (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**SUR-REPLY OF PLAINTIFFS AND RELATORS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    July 8, 2022<br>Time:   10:00 a.m.<br>Dept:   Courtroom 3, 15th Floor<br>Before: Hon. Kimberly J. Mueller<br>Trial Date:  None Set |

Sur-Reply of Pls. and Relators in Opposition to Defs.' Motion for Summary Judgment – Case No. 2:15-CV-00799 KJM-DB

856004.12

CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON APARTMENTS, LP, BENT TREE APARTMENTS, LLC, CALIFORNIA PLACE APARTMENTS, LLC, CAMELOT LAKES HOLDINGS, LLC, CANYON CLUB HOLDINGS, LLC, COURTYARD AT CENTRAL PARK APARTMENTS, LLC, CREEKSIDE HOLDINGS, LTD, HAYWARD SENIOR APARTMENTS, LP, HERITAGE PARK APARTMENTS, LP, OAK VALLEY APARTMENTS, LLC, OAK VALLEY HOLDINGS, LP, PEPPERTREE APARTMENT HOLDINGS, LP, PIEDMONT APARTMENTS, LP, POINT NATOMAS APARTMENTS, LLC, POINT NATOMAS APARTMENTS, LP, RIVER OAKS HOLDINGS, LLC, SHADOW WAY APARTMENTS, LP, SPRING VILLA APARTMENTS, LP, SUN VALLEY HOLDINGS, LTD, VILLAGE GROVE APARTMENTS, LP, WASATCH QUAIL RUN GP, LLC, WASATCH PREMIER PROPERTIES, LLC, WASATCH POOL HOLDINGS III, LLC, and DOES 1-4,

      Defendants.

**SUR-REPLY OF PLAINTIFFS AND RELATORS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs and Relators ("Plaintiffs") respectfully submit this brief sur-reply in support of their Opposition to Defendants' Motion for Summary Judgment, or in the Alternative Summary Adjudication, or in the Further Alternative, Class Decertification. ECF No. 257. This sur-reply responds to new evidence submitted via the Supplemental Declaration of Ryan Matthews in Support of Defendants' Motion for Summary Judgment, ECF No. 259, filed on May 26, 2022, nearly two weeks after Plaintiffs filed their opposition to summary judgment and the day before Defendants filed their reply in support of summary judgment. It also responds to Defendants' untimely Objections to Evidence Contained in Plaintiffs' Request for Judicial Notice, filed with their reply in support of summary judgment on May 27, 2022 ("Defs.' Objs. to Evid."). ECF No. 263-1.

## I. PLAINTIFFS' RESPONSE TO DEFENDANTS' NEWLY PRODUCED SPREADSHEET

The Supplemental Matthews Declaration attaches Exhibit A to the Declaration of Mike Christiansen in Support of Defendants' Motion for Summary Judgment, originally filed without exhibits on April 22, 2022. ECF No. 241-5. Defendants cite the data from Exhibit A to support their contention that Section 8 tenants have not been required to enroll in any additional service charges, or at least not on a classwide basis. Defs.' Mot. Summ. J. 7, 15, ECF No. 241; Defs.' Statement of Undisputed Facts at Undisputed Facts ("UF") 32-33, ECF No. 241-17.[1] Defendants do not rely on the data to seek summary judgment on the legality of any of the charges, and they acknowledge factual disputes about whether Section 8 tenants were required to agree to additional charges,[2] at any of their properties. *See* Defs.' Mot. Summ. J. 7 n.11; Defs.' Resp. to Pls.' Statement of Disputed Facts ("DF") 2, ECF No. 263-4. Rather, Defendants rely on the data to support their request for class

---

[1] Plaintiffs have disputed the contention that additional services have always been optional for Section 8 tenants. *See* Pls.' Resp. to Defs.' UF 32, 33, ECF No. 257-5.

[2] As Plaintiffs have explained, however, there is no real dispute that Section 8 tenants were required to purchase renters insurance prior to December 2019. Pls.' Reply Supp. Mot. Partial Summ. J. 3, 9 ECF No. 261.

decertification.  *See* Defs.' Mot. Summ. J. 15, ECF No. 241; Defs.' Opp'n Pls.' Mot. Partial Summ. J. 3, ECF No. 258.  The data does not support that request, however, due to its multiple significant flaws:

***Time Period:***  Exhibit A is titled, "S8 to ASA adoption -01_2014 to 01_2022.xlsx," Christiansen Decl. Ex. A, RG000043, ECF No. 259, indicating that it covers the period from January 2014 to January 2022.  This time period raises at least two problems.  First, the liability period for the class claims in this case starts on April 14, 2011, which means that the spreadsheet *excludes* three years of data, without explanation.[3]  Second, the spreadsheet contains data about the enrollment of Section 8 tenants in renters insurance, but the spreadsheet *includes* two years of data after Wasatch stopped mandating renters insurance as a condition of tenancy in December 2019, again without explanation.  *See* Defs.' Resp. to Pls.' UF No. 37, ECF No. 258-1.

***Consolidation of Charges:***  Exhibit A lumps all Section 8 tenants subject to a particular charge at a property for the entire eight-year period into one number.  The spreadsheet then totals the number of Section 8 tenants who paid that charge across all of their properties, then compares is to the total number of Section 8 at all of their properties to reach a company-wide percentage for each charge.  *See* Christiansen Decl. ¶ 5, ECF No. 259.  This calculation ignores evidence that Wasatch had mandatory charges at certain properties for discrete periods of time.  *See, e.g.*, Johnson Decl. Opp'n Pls.' Mot. Partial Summ. J.¶ 4, ECF No. 258-2 (stating that requirements that tenants agree to additional services "are temporally limited and existed at individual properties").  Simply looking at total numbers for the last eight years, without any effort to tailor the data to the periods for which charges were mandatory at specific properties, necessarily obscures periods of higher enrollment at those properties.

***Renters Insurance:***  Mr. Christiansen relied on the spreadsheet to conclude that 53 percent of Section 8 tenants paid additional service charges for renters insurance.  Christiansen Decl. ¶ 7, ECF No. 259.  The belatedly filed spreadsheet now confirms that this number was reached by simply dividing the total number of Section 8 tenants at all Wasatch properties enrolled in Wasatch's own renters insurance for the period January 2014 to January 2022 by the total number of Section 8 tenants

---

[3] The liability period for Plaintiffs' False Claims Act claim is from April 14, 2005 to the present, *i.e.*, beginning nine years before the data summarized in the spreadsheet.

2

living at Wasatch properties during the same period.  As discussed above, this time period includes two years where renters insurance was not required anywhere in Wasatch's portfolio.  It also *includes* tenants that were exempted from the renters insurance requirement in the denominator, Plaintiffs' Statement of Undisputed Facts, Nos. 41, 42, ECF No. 242-2, and *omits* tenants who purchased insurance from a third-party from the numerator, Defendants' Response to Plaintiffs' Statement of Undisputed Facts, No. 39, ECF No. 258-1, resulting in an artificially depressed percentage.

*Bottom-Line Percentages:*  Mr. Christiansen also relied on the spreadsheet to conclude that 53 percent was the highest enrollment rate of all additional services.  Christiansen Decl. ¶ 7, ECF No. 259.  Even with the significant flaws described above, individual properties on Exhibit A show much higher rates of enrollment in additional services.  For example, over 83 percent of Section 8 tenants at California Place Apartments and over 81 percent of Section 8 tenants at Chesapeake Commons Apartments paid Wasatch directly for renters insurance.  *See* Christiansen Decl. Ex. A, ECF No. 259.  These numbers do not include renters insurance paid to third parties.  Nearly 90 percent of Section 8 tenants at Enclave at 1400 South and over 83 percent of Section 8 tenants at Garden Lofts and Providence Place paid for washers and dryers.  *Id.*

In sum, Wasatch's late-filed Exhibit does nothing to advance its request for decertification.  The evidence in the case is that certain charges have been mandatory on a per-property basis for discrete periods of time.  Johnson Decl. Opp'n Pls.' Mot. Partial Summ. J. ¶ 4, ECF No. 258-2; Pls.' Resp. to Defs.' UF Nos. 27, 29, 32 & record citation therein, ECF No. 257-5.  Exhibit A offers the Court little information, beyond confirming that these charges are easily identifiable from Wasatch's own data.

II. **PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO EXHIBITS 1-3 OF PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE.**

Plaintiffs' Request for Judicial Notice in Support of Motion for Partial Summary Judgment ("RJN") sought notice of three opinion letters issued by officials from the U.S. Department of Housing and Urban Development ("HUD").  ECF No. 243.  Defendants do not appear to disagree that the

1 opinion letters are proper subjects of judicial notice, but rather object on other grounds, all without

2 merit.

3       Defendants' objection that the letters were not disclosed during fact discovery misunderstands

4 the nature of judicial notice.  Defs.' Objs. to Evid. 3, ECF No. 263-1.  The Court may take judicial

5 notice "at any stage of the proceeding."  Fed. R. Evid. 201(d).  Appellate courts may even take judicial

6 notice of facts beyond the trial court record.  *See, e.g.*, *Montana Green Party v. Jacobsen,* 17 F.4th

7 919, 927 (9th Cir. 2021) (on appeal from summary judgment, taking judicial notice of election results).

8 Defendants do not cite, and Plaintiffs are unaware of, any case law or other authority for the argument

9 that parties must disclose or produce documents subject to judicial notice prior to the close of fact

10 discovery.  *Cf.*, *e.g.*, Rutter Group, *Prac. Guide Fed. Civ. Trials & Evid.*, Judicial Notice, Ch. 8D-A

11 (treatise chapter on judicial notice does not describe a disclosure requirement).

12       The Court's discretion to consider the letters is particularly unfettered as they relate to

13 "legislative," rather than "adjudicative" facts.  *See*  Fed. R. Evid. 201, advisory committee note to 1972

14 Proposed Rules, Subdivision (a) ("In determining the content or applicability of a rule of domestic law,

15 the judge is unrestricted in his investigation and conclusion.").  Legislative facts are "those which have

16 relevance to legal reasoning" such as "the formulation of a legal principle."  *Id.* (contrasting with

17 adjudicative facts, "which are simply the facts of the particular case.").  The letters reflect HUD's

18 position that a payment sequence that applies tenant payments first to charges other than rent

19 "circumvent[s]" federal regulation and eviction protections.  RJN Ex. 1, ECF No. 243; *see also id.* Ex.

20 2, at 1-2, Ex. 3, at 1-3.  Plaintiffs cite them to support their legal argument that the same principle

21 applies in the context of the Section 8 program.  *See* Pls.' Mem. P.&A. Supp. Mot. Partial Summ. J.

22 15, ECF No. 242-1.

23       Defendants' other objections, that these documents are hearsay and are impermissible expert

24 testimony, are similarly misguided.  Plaintiffs do not offer these documents to prove the truth of any

25 facts (either about the present case or the facts at issue in the letter) or as expert testimony.  These

26 opinion letters reflect the official stance of HUD administrators and are relevant to the legal issues in

27 this case.  *See, e.g.*, RJN Ex. 2, at 1, ECF No. 243 (detailing a payment allocation process and

28

explaining, "HUD offers the following position in light of this set of facts"). As they reflect official agency interpretations of regulations, discovery into the authors' level of experience is unnecessary.

Nor are these letters "offered in a vacuum." Defs.' Objs. to Evid. 3, ECF No. 263-1. The letters bear the official seal of HUD and are written by HUD Regional Directors and the Branch Chief of HUD's Operations Division. RJN Ex. 1, at 1, Ex. 2, at 1-3, Ex. 3, at 1, ECF No. 243. The letters and their attachments describe the specific impermissible practices. RJN Ex. 1, at 1, Ex. 2, at 1-3, Ex. 3, at 2-3, ECF No. 243.

The exhibits to Plaintiffs' Request for Judicial Notice are authentic documents from a reliable source and Defendants have offered no viable argument against taking judicial notice.

Dated:  June 3, 2022

Respectfully submitted,

IMPACT FUND

_____
Lindsay Nako

Attorneys for Plaintiffs and Relators