UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Denika Terry et al., | No. 2:15-cv-00799-KJM-DB |
| Plaintiffs, | ORDER |
| v. | |
| Wasatch Advantage Group, LLC, et al., | |
| Defendants. | |

Plaintiffs are tenants who receive rental assistance through the federally subsidized Section 8 Housing Choice Voucher Program. They claim defendant lessors improperly charged plaintiffs, as well as the class members they represent, for additional services and required them to purchase renter's insurance. Plaintiffs argue these services and the insurance requirement constitute impermissible rent under the Section 8 contracts and applicable regulations, and defendants therefore violated the Section 8 contracts and submitted false claims for reimbursement under the federal program.

This matter is before the court on plaintiffs' and relators' motion for partial summary judgment, Pls.' Mot. for Summ. J. (MSJ), ECF No. 242-1, and defendants' cross motion for summary judgment, or, alternatively, class certification, Defs.' MSJ, ECF No. 241. Both parties oppose the other's motion, and the matter is fully briefed. *See generally* Pls.' Opp'n, ECF No. 257; Defs.' Opp'n, ECF No. 258; Pls.' Reply, ECF No. 261; Defs.' Reply, ECF No. 263;

1

1 Pls.' Surreply, ECF No. 267. On July 8, 2022, the court heard arguments on the motions, with Anne Bellows and Lindsay Nako appearing for plaintiffs and Ryan Matthews and Joseph Salazar for defendants.

For the reasons below, the court **grants plaintiffs' motion** and **denies defendants' motions**.

## I. SECTION 8 HOUSING CHOICE VOUCHER PROGRAM

The Section 8 Housing Choice Voucher Program "aid[s] low-income families in obtaining a decent place to live," 42 U.S.C. § 1437f(a), by subsidizing the cost of renting privately-owned housing units, *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1184 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016) (citing 42 U.S.C. § 1437f(o)). The federal Department of Housing and Urban Development (HUD) funds Section 8 while local public housing agencies administer the program. 24 C.F.R. § 982.1(a). The public housing agencies determine whether individuals are eligible for a voucher, 24 C.F.R. § 982.201, which entitles recipients to search for qualified privately-owned housing, 24 C.F.R. § 982.302. Once the voucher recipient finds a qualifying unit, the public housing agency and landlord negotiate and execute a housing assistance payment (HAP) contract. 42 U.S.C. § 1437f(c); *see also* 24 C.F.R. §§ 982.162(a), 982.451(a). The HAP contract includes a tenancy addendum listing the tenant's rights under the contract. 24 C.F.R. §§ 981.162(a)(2), 982.305(a)(3), 982.308(f). The addendum is controlling, so its terms "prevail over any other provision of the lease." *Id.* § 982.308(f)(2).

Each HAP contract also specifies the "maximum monthly rent (including utilities and all maintenance and management charges)" that the landlord may receive. 42 U.S.C. § 1437f(c)(1)(A). The maximum allowable rent must be "reasonable," 24 C.F.R. § 982.507(a),(b), as determined by the public housing agency and HUD regulations, *id.* § 982.501 et seq. Tenants pay a fixed share of their monthly income for rent, 42 U.S.C. § 1437a, with the federal government's subsidy covering the balance, *id.* § 1437f(c)(3). The total paid by the tenant and the government may not exceed the maximum rent specified in the contract. 24 C.F.R. § 982.451 et seq.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. Defendants operate dozens of multi-family rental properties in different states across the country. Pls.' Response to Defs.' Statement of Undisputed Material Facts (SUMF) ¶ 25, ECF No. 257-5. For each tenant participating in the Section 8 program at one of defendants' properties, defendants executed a standardized HAP contract with the local public housing authority, along with a standardized residential rental agreement with the tenant. Defs.' Response to Pls.' SUMF ¶¶ 1–2, ECF No. 258-1.

Defendants maintain additional services and amenities at their properties, which are listed in standardized Additional Services Agreements (ASAs). Pls.' Response to Defs.' SUMF ¶¶ 26–27. These amenities include, but are not limited to, covered parking, in-unit washers and dryers, renters' insurance, and media packages. *Id.* ¶ 28. The amenities are not always made available on an optional basis, i.e., some tenants have been "required to enter into ASAs for one or more specific amenities as a condition of leasing." *Id.* ¶ 29. Defendants treat Section 8 and non-section 8 tenants the same with respect to the cost and availability of ASA amenities. *Id.* ¶¶ 30–31. When negotiating and entering HAP contracts, defendants have not always submitted the ASAs to the public housing agencies as part of the lease packets. *Id.* ¶ 45. Furthermore, defendants have "never included additional charges in the 'rent to owner' amount submitted to local [public housing authorities] in HAP contracts and other required Section 8 documents." Defs.' Response to Pls.' SUMF ¶ 7.

Tenants pay ASA amenity charges monthly, *id.* ¶ 3, and they must pay the charges for the duration of their lease, Pls.' Response to Defs.' SUMF ¶ 34. Amenity charges are itemized on tenant ledgers, in addition to any other amounts due under the lease, including utility charges and base rent. Pls.' Response to Defs.' SUMF ¶ 35. The accounting software defendants employ to handle tenant accounting uses a payment priority sequence, which applies tenant payments in a specified sequence to each outstanding charge. *Id.* ¶¶ 37–38. Defendants' internal policy document specifies that base rent is the last charge in the payment priority sequence, meaning tenants' payments are applied first to non-base rent charges like amenities. *Id.* ¶ 39; Defs.' Response to Pls.' SUMF ¶ 18. "The purpose of leaving rent as the final charge in the payment

priority sequence is to allow landlords to pursue evictions for delinquent amounts." Pls.' Response to Defs.' SUMF ¶ 42. Section 8 tenants evicted for non-payment of rent lose their voucher. Defs.' Response to Pls.' SUMF ¶ 20.

From April 2011, the beginning of the relevant class period, through May 2012, the ASAs included a page detailing the terms and conditions of the agreement. Defs.' Response to Pls.' SUMF ¶ 8. One term provided that a failure to pay additional service charges constituted a default under the lease, and the tenant could be evicted within ten days of nonpayment. *Id.* Even after defendants revised the standard ASA in May 2012 and removed the terms and conditions page, *id.* ¶ 9, they "continued to view a failure to pay additional service charges as a default under the lease," *id.* ¶ 10. However, defendants' corporate deponents have conceded that in the states where defendants operate, they cannot successfully evict a tenant for unpaid amenity or service charges. *Id.* ¶ 19.

"When tenants have an outstanding balance of less than $100, [defendants'] policy is to send tenants 'notice that future rents will not be accepted unless paid in full,' meaning tenants must pay all outstanding charges, including additional service charges, before [defendants] will accept future rent payments." *Id.* ¶ 25. When a tenant's balance is over $100, defendants serve the tenant with a "Pay or Quit Notice," even where a portion of the balance comprises overdue amenity charges. *Id.* ¶ 26. The notice informs tenants they will face eviction proceedings unless they pay the full balance within three days or vacate their units within ten days. *Id.* ¶¶ 28–29. Defendants have served these notices on Section 8 tenants even where the balance is less than $100. *Id.* ¶ 31.

Until defendants revised their standard HAP contract in July 2019, it provided that "[u]nless otherwise specified" in the utilities and appliances section, the owner would pay for all utilities and appliances provided by the owner. *Id.* ¶ 33. While the utilities and appliances section did not specify tenants were required to pay fees for in-unit washers and dryers, *id.* ¶ 34, defendants charged Section 8 tenants for such units separately from the base rent set out in the HAP contracts, *id.* ¶ 32. Defendants' payment software database includes information about who

was charged for and paid for in-unit washers and dryers, and when they were charged. *Id.* ¶¶ 35–36. These tenants are identifiable from classwide data. *Id.* ¶ 36.

Defendants also required tenants to purchase renters' insurance as a condition of living in "many" of their properties up until December 2019. *Id.* ¶ 37. Specifically, for properties that did not participate in the Low-Income Housing Tax Credit program, defendants' standard residential rental agreements "contained a provision requiring tenants to maintain renters insurance and stated that if they were ever without coverage during their tenancy, 'resident(s) agree[d] to be enrolled in the "pay along with rent" program and being charged accordingly.'" *Id.* ¶ 38. Tenants subject to this requirement paid either defendants or a third-party insurer for this insurance. *Id.* ¶ 39. These tenants are identifiable from classwide data. *Id.* ¶ 44.

All three named plaintiffs and class members "paid additional service charges to Defendants separate from and in addition to the tenants' share of rent to owner under the HAP Contract." *Id.* ¶¶ 45–48.

This court previously granted in part and denied in part defendants' motion to dismiss, giving plaintiffs leave to file an amended complaint. Previous Order (July 21, 2017), ECF No. 61. This court also granted plaintiffs' motion to certify the Rule 23(b)(3) class for damages and conditionally granted their motion to certify the Rule 23(b)(2) class seeking declaratory and injunctive relief. Previous Order (July 30, 2018), ECF No. 92. After plaintiffs filed an amended complaint addressing the court's conditional grant under Rule 23(b)(2), the court certified the class and clarified the class period for damages. Previous Order (Jan. 14, 2020), ECF No. 114. Plaintiffs' operative complaint includes four claims:

(1) as relators on behalf of the United States, plaintiffs allege Wasatch's companywide practice in California, Utah, Arizona, and Washington of certifying their compliance with the terms of the HAP contract and HUD regulations, while also collecting additional rent in the form of charges, violated the Federal False Claims Act (FCA), 31 U.S.C. § 3729(a);

(2) on behalf of the certified California class and against all defendants, breach of contract in violation of California Civil Code § 3300 et seq.;

5

(3) on behalf of the certified California class and against all defendants, violation of the Consumer Legal Remedies Act (CLRA), Cal. Civil Code § 1750; and

(4) on behalf of the certified California class and against all defendants, unfair business practices in violation of California Business and Professions Code §§ 17200 et seq., i.e., California's Unfair Competition Law (UCL)

See Fifth Am. Compl. ¶¶ 212–260, ECF No. 136.

Plaintiffs offer three independent arguments in support of their motion for summary judgment on claim two for breach of contract and claim four under California's UCL, each of which they bring on a class basis. First, plaintiffs argue the charges outlined in the ASAs constitute unlawful excess rent in violation of the HAP contracts and federal law. Pls.' MSJ at 9.[1] Second, plaintiffs argue the undisputed facts show the additional charges for washers and dryers violate the plain language of the HAP contracts and constitute unlawful excess rent. Pls.' MSJ at 9–10. Third, plaintiffs argue a previous requirement that Section 8 tenants purchase renters' insurance as a precondition to signing their lease constituted unlawful excess rent. Id.[2]

Defendants move for summary judgment on all four of plaintiffs' claims, or, alternatively, class decertification. See generally Defs.' MSJ.

**III.   JUDICIAL NOTICE**

Plaintiffs request judicial notice of three letters HUD officials issued between 1977 and 1991. Pls.' Request for Judicial Not. (RJN), ECF No. 243. Defendants oppose the request. Defs.' Obj. to Pls.' RJN, ECF No. 263-1. Defendants argue these letters were not timely disclosed to defendants during the fact discovery period, constitute impermissible hearsay, and are offered as "de facto expert testimony." Id. at 2–3.

---

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

[2] Due to disputes of material fact, plaintiffs do not seek summary judgment insofar as plaintiffs contend defendants required tenants to enroll in media packages and parking charges, at some properties. Mot. at 10. Likewise, plaintiffs do not seek summary judgment or liability finding on their CLRA or FCA claims, as they argue triable issues of fact remain on these claims. Id.

A court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2). A court may also take judicial notice of self-authenticating documents, including those that bear "a seal purporting to be that of the United States . . . or a department [or] agency" and "a signature purporting to be an execution or attestation." Fed. R. Evid. 902(1); *see also United States v. Alvirez*, 831 F.3d 1115, 1123 (9th Cir. 2016). The court finds the three letters to be self-authenticating as they bear HUD's seal and are signed. *Cf. United States v. Perry*, No. 14-537, 2018 WL 11356695, at *4 (S.D. Ohio Nov. 7, 2018) (finding letters on U.S. Forest Service letterhead and signed to be self-authenticating documents under Rule 902(1)); *Alexander v. CareSource*, 576 F.3d 551, 561 (6th Cir. 2009) (finding EEOC letter signed by district director and containing agency's seal self-authenticated under Rule 902(1)). The court **grants** plaintiffs' request to take judicial notice of these documents without relying upon the legal conclusions or analysis contained in any of the letters.

## IV. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment must first show no material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). It can do so by showing the record establishes facts beyond genuine dispute, or it can show the adverse party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving must then "establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). Both must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The court views the record in the light most favorable to the

non-moving party and draws reasonable inferences in that party's favor. *Matsushita*, 475 U.S. at 587–88.

Cross-motions for summary judgment are evaluated separately under the same standard, "giving the nonmoving party in each instance the benefit of all reasonable inferences." *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

### B.   Breach of Contract

The elements of a claim for a breach of contract in California are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

### C.   California's Unfair Competition Law (UCL)

California's UCL generally prohibits (1) unlawful, (2) unfair, and (3) fraudulent acts or practices. Cal. Bus. & Prof. Code § 17200. "Each prong . . . is a separate and distinct theory of liability . . . offer[ing] an independent basis for relief." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Here, plaintiffs focus on the defendants' allegedly unlawful business practices. "[A] defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate section[ ] 17200 . . . ." *Abdali v. Agiliti Surgical, Inc.*, No. 19-2362, 2020 WL 5642355, at *2 (E.D. Cal. Sept. 22, 2020) (quoting *Emery v. Visa Internat. Service Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (internal quotation marks and citation omitted). The unlawful prong is satisfied by showing a "predicate violation" of state or federal statute or regulation. *Shelton v. Ocwen Loan Servicing, LLC*, No. 18-02467, 2019 WL 4747669, at *10 (S.D. Cal. Sept. 30, 2019); *see also Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1265 (2018).

### D.   Federal False Claims Act (FCA)

Under the FCA, plaintiffs must establish the following elements: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. Hendow v. Univ. of Phoenix*,

8

461 F.3d 1166, 1174 (9th Cir. 2006); 31 U.S.C. § 3729(a)(1).  "[C]ertain misleading omissions . . . can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided."  *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 187 (2016).

### E. California's Consumer Legal Remedies Act (CLRA)

California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale . . . of goods or services to any consumer."  Cal. Civ. Code § 1770.  The CLRA should "be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices . . . ."  *Id*. § 1760.

## V. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The court first addresses each of plaintiffs' three independent arguments supporting their motion for summary judgment on claims two and four and defendants' counterarguments before resolving defendants' motions for summary judgment, or, alternatively, class decertification.

### A. Defendants' Additional Services Agreement Charges Constitute "Rent," and thus Violate Federal Law and HAP Contracts

Plaintiffs first move for partial summary judgment on the ground defendants treat additional charges under the ASAs as rent.  *See generally* Pls.' MSJ.  Because the total rental amount paid by the tenant and the government may not exceed the maximum rent specified in the HAP contract, *see* 24 C.F.R. § 982.451 *et seq*., treating the charges under the ASAs as rent would violate federal law and HAP contracts, thus stating claims for breach of contract and under the UCL.

Defendants misconstrue plaintiffs' motion as arguing that defendants may not "assert[] a right to be paid for lawful charges owed."  Defs.' Opp'n at 7.  Plaintiffs do not "seek to ban owners from charging Section 8 tenants for additional services," but only that they "follow federal law when doing so."  Pls.' Reply at 6.  Both the HAP contracts and federal regulations are clear that lessors are prohibited from charging or accepting from Section 8 tenants "any payment for rent of the unit in addition to the rent to owner."  *See* HAP contract part C, ¶ 5e, Bellows

Decl. Ex. 13 at 31, ECF No. 247-3; 24 C.F.R. § 982.451(b)(4)(ii). Because defendants do not dispute collecting these additional charges outside of the "rent to owner" amount authorized and agreed to in the HAP contracts, *see* Defs.' Response to Pls.' SUMF ¶ 3, additional charges are unlawful if they constitute rental payments. Accordingly, the court addresses the question of what constitutes rent before evaluating whether defendants' ASA charges meet that definition.

First, in denying defendants' previous motion to dismiss, this court "rejected outright" defendants' argument that "the additional charges cannot constitute rent because they were part of a separate agreement . . . ." Previous Order (July 21, 2017) at 6. Indeed, "[c]ourts consistently have held that extra charges, even when labeled as additional amenities, can constitute illegal side payments." *Id.* (citing *U.S. ex rel. Price v. Peters*, 66 F. Supp. 3d 1141, 1149 (C.D. Ill. 2013) (extra payments for use of storage shed violated FCA); *U.S. ex rel. Sutton v. Reynolds*, 564 F. Supp. 2d 1183, 1187 (D. Or. 2007) (additional fees for landscaping could be illegal side payments); *Coleman v. Hernandez*, 490 F. Supp. 2d 278, 280 (D. Conn. 2007) (fees for water usage not included in HAP contract were side payments and therefore violated FCA); *U.S. ex rel. Holmes v. Win Real Estate, Inc.*, No. 13-02149, 2015 WL 6150594, at *5 (D. Nev. Oct. 19, 2015) (homeowner association fees and property management fees were rent and violated FCA); *U.S. ex rel. Mathis v. Mr. Property, Inc.*, No. 14-00245, 2015 WL 1034332, at *5 (D. Nev. Mar. 10, 2015) (additional fees for pool maintenance could violate FCA)). Defendants do not offer any reasons why this court should reconsider its earlier conclusion, *see generally* Defs.' Opp'n, so the court turns to consider the affirmative characteristics of rent.

Neither Section 8's governing statute nor implementing regulations define "rent". *Velez v. Cuyahoga Metropolitan Housing Authority*, 795 F.3d 578, 582–83 (6th Cir. 2015). In this court's previous order, it considered plaintiffs' "broad reading" of the Sixth Circuit's decision in *Velez* that additional charges could constitute rent because the charges were part of the "total expense for the use of land during the term of occupancy." Previous Order (July 21, 2017) at 8 (citing *Velez*, 795 F.3d at 585 (reasoning that short-term lease fees, which were basis for eviction, were not optional)). This court concluded that "even assuming *Velez* applies, plaintiffs have not alleged sufficient facts to support their 'total expense for the use of land' theory" because the

10

short-term fees at issue in *Velez* "were for the general use of rented premises, unlike here where some of the additional charges are associated with discrete services, utilities or appliances." *Id.* at 8–9. This court also left unresolved whether the possibility of eviction for nonpayment of additional charges, standing alone, may convert those charges into rent. *Id.* 10–11. However, it agreed that where unpaid additional charges provide a basis for eviction, this supports a claim that the charges were "mandatory." *Id.* at 10.

Plaintiffs now argue both the definition of rent in federal common law and the definition of rent in the HAP contracts turn on a "causal link between a payment and the tenant's right 'to live in and make use' of their rental unit." Pls.' MSJ at 21 (citing *Velez*, 795 F.3d at 584). Plaintiffs again cite *Velez*, but also reference *Sager v. Housing Commission of Anne Arundel County*, 957 F. Supp. 2d 627, 638 (D. Md. 2013) for the proposition that a purported non-rent charge "effectively becomes rent" where "if it is not paid, [the tenant] may be evicted for failure to pay rent." *Id.* at 23 (quoting *Sager*, 957 F. Supp. 2d at 638). At hearing, counsel for defendants argued *Sager* is inapposite because it involved a publicly owned housing project and concerned section 213(a) of the HUD Act of 1969, also known as the Brooke Amendment,[3] not the Housing Choice Voucher Program. Counsel for plaintiffs disagreed, arguing the *Sager* court's reasoning was unrelated to the housing authority's public ownership of the project, and noting the court relied on regulatory and statutory language mirroring the language in the Section 8 Housing Choice Voucher Program.

While not binding, *Sager*'s reasoning is applicable and persuasive. In *Sager*, the court disapproved of the defendant lessor's "formalistic view" that keeping rent and non-rent charges distinct for accounting purposes rendered them distinguishable because this view "ignores the

---

[3] The Brooke Amendment was enacted to "ensure that public housing rent is affordable for very low income families." Rep. No. 91–392 (1969), reprinted in 1969 U.S.C.C.A.N. 1524, 1541. It places a ceiling on rental prices at "30 per centum of the family's monthly adjusted income." 42 U.S.C. § 1437a(a)(1). The Amendment's governing regulations distinguish between "tenant rent" and "other charges," with rent defined as the "amount payable monthly by the family as rent to the Public Housing Authority." 24 C.F.R. § 5.603(b). Other charges do not count towards the maximum rent and include "charges to the tenant for maintenance and repair beyond normal wear and tear and for consumption of excess utilities." *Id.* § 966.4(b)(2).

11

practical effects of" applying plaintiff's payment to non-rent charges first, thus leaving rent due and plaintiff subject to eviction. *Sager*, 957 F. Supp. 2d at 638. The court's analysis of the functional effects of defendants' practice of applying a renter's payment first to non-rent charges translates to the facts here, regardless of whether the housing is public or private and irrespective of the law plaintiffs claim render this practice unlawful. The court agrees the definition of rent properly turns on a tenant's right "to live in and make use" of a unit, and conditioning living in a unit on the payment of ASA fees may convert those fees into unlawful rent. *See Velez*, 795 F.3d at 584.

The court now evaluates whether defendants' ASA charges meet the definition of rent described above. Plaintiffs point to three policies and practices whereby defendants purportedly treat additional charges as mandatory rent. Pls.' MSJ at 12–16. In addition to arguing defendants' forms describe the charges as a component of rent, plaintiffs maintain defendants' accounting practices effectively convert the charges into rent. *Id.* at 13–14. Plaintiffs also contend defendants' rent collection policies require their Section 8 tenants to pay the charges or face eviction. *Id.* at 15.

The undisputed facts support plaintiffs' argument that defendants describe and treat ASA charges as a component of rent, and these charges constitute rent. First, defendants do not dispute their standard rental agreements describe the additional charges as part of the total monthly obligation due, their renewal notification letters describe the charges as part of the "new rental rate" when tenants renew leases, and some forms combine rent and additional charges in several places. *See* Defs.' Response to Pls.' SUMF ¶¶ 11–15 (citing Residential Rental Agreements, Monthly Cost Breakdown forms, Renewal Notification Letters, Exemplars of Move-In Cost Sheets, and Exemplars of Monthly Statements of Rental Account). Second, defendants concede both the "additional charges are separate from and in addition to" the base rent defendants agreed to in the HAP contracts, *id.* ¶ 4, and they have never included these charges in the base rent described in the HAP contracts submitted to local public housing agencies, *id.* ¶ 7. Third, defendants agree tenants enrolled in ASAs must pay the charges for the duration of the lease, *id.* ¶ 5, and they view and treat failure to pay additional charges as a default under the lease, *id.* ¶¶

12

8– 10. Finally, while defendants aver the accounting software used to process payments defaults to apply payments to base rent last—and this is the standard industry practice, Pls.' Response to Defs.' SUMF ¶¶ 37, 41—they nonetheless concede this sequence also is company policy, Defs.' Response to Pls.' SUMF ¶ 16.

Defendants dispute the significance of their "Pay or Quit" notices, arguing a $100 or greater balance comprised exclusively of service charges would be "an extremely improbable scenario based on [their] accounting policies." Defs.' Response to Pls.' SUMF ¶ 26. However improbable, such a balance can accrue under defendants' policy. Johnson Dep. 137:16- 138:6, Bellows Decl. Ex. 9 at 25-26, ECF No. 246-9; *see also* Pay or Quit Notices, Bellows Decl. Ex. 20 at 1, 4, 6-8, 10, 13, 16, 20-26, ECF No. 249-6. Counsel for defendants also conceded this point at the hearing. Defendants further admit to serving pay or quit notices on Section 8 tenants demanding they pay additional charges or face evictions, even for amounts less than $100. Defs.' Response to Pls.' SUMF ¶ 27. For these reasons, the court finds the additional charges outlined in the Additional Services Agreements constitute impermissible rent in violation of both the HAP contracts and federal law. The court next addresses whether these practices warrant summary judgment on plaintiffs' breach of contract and UCL claims.

**1.    Breach of Contract**

Turning first to plaintiffs' claim for breach of contract, defendants acknowledge all class members executed valid HAP contracts, Defs.' Response to Pls.' SUMF ¶ 1 (citing Defs.' Resp. to Terry Req. for Admis., Set 5. No. 44, Bellows Decl. Ex. 35), each of which includes a tenancy addendum listing the tenant's rights under the contract, 24 C.F.R. §§ 981.162(a)(2), 982.305(a)(3), 982.308(f). Defendants also concede plaintiffs can bring a breach of contract claim under the tenancy addendum. Defs.' MSJ at 14. The addendum is controlling, 24 C.F.R. § 982.308(f)(2), and the total paid by the tenant and the government may not exceed the maximum rent specified in the contract. 24 C.F.R. § 982.451 *et seq.*; *see also* HAP Contract Part C ¶ 5. Because defendants breached the tenancy addendum by requiring tenants to pay excess rent in the form of charges contained in the ASAs, the court finds summary judgment is appropriate on plaintiffs' breach of contract class claims. Plaintiffs were damaged in the amount

13

of the excess rent they were required to pay, which the court will determine in the second phase of this litigation. The court thus **grants** plaintiffs' motion for partial summary judgment on their breach of contract claim on a class basis.

### 2. California's UCL

As for plaintiffs' UCL claim, defendants' practice of treating ASA charges as rent, including requiring tenants to pay the charges or face eviction, violate federal regulations governing the Section 8 program. *See* 24 C.F.R § 982.451(b)(4)(i)-(ii). Plaintiffs have suffered injury in the form of lost money or property as a result of defendants' unlawful practice of requiring plaintiffs to pay additional charges beyond their share of rent set out in the HAP contracts. Here as well, the court will determine exact damages in the second phase of this litigation. The court **grants** plaintiffs' motion for summary judgment on their UCL claim on a class basis.

### B.   Defendants' Charges for In-Unit Laundry Machines Violate the Plain Terms of the HAP Contracts

Plaintiffs also move for partial summary judgment on claims two and four on the separate and independent ground that undisputed facts show the additional charges for washers and dryers violate the plain terms of the HAP contracts and constitute unlawful rent. Pls.' MSJ at 9–10. Defendants do not dispute the washer and dryer fees are not authorized by the HAP contract, which until July 2019 made unlisted appliances defendants' responsibility. Defs.' Response to Pls.' SUMF ¶¶ 32–34. This court previously found plaintiffs sufficiently alleged defendants' charges for in-unit laundry machines constituted illegal rent charges, Previous Order (July 21, 2017) at 9–10, and the record before the court now supports these allegations. Prior to July 2019, defendants' standard HAP contract provided, "[u]nless otherwise specified" in the utilities and appliances section, the owner would pay for all utilities and appliances provided by the owner. Defs.' Response to Pls.' SUMF ¶ 33. While the utilities and appliances section did not state tenants were required to pay fees for in-unit laundry, *id.* ¶ 34, Section 8 tenants were charged for such units separately from the base rent set out in the HAP contracts, *id.* ¶ 32. These charges thus violated the plain terms of the HAP contracts and constitute unlawful rent. Accordingly,

summary judgment is appropriate on the breach of contract and UCL class claims on this separate ground, and for the same reasons outlined above. *See supra* section V.A.1–2.

### C. Defendants' Requiring Tenants to Purchase Renters' Insurance Violated HAP Contracts and Federal Law

Finally, plaintiffs move for partial summary judgment on claims two and four on the separate ground defendants' renters' insurance requirement constituted rent in violation of the HAP contracts and federal law. Pls.' MSJ at 9–10. It is undisputed defendants required tenants to purchase renters' insurance as a condition of living in "many" of their properties up until December 2019. Defs.' Response to Pls.' SUMF ¶ 37. Specifically, for properties that did not participate in the Low-Income Housing Tax Credit program, defendants' standard residential rental agreements "contained a provision requiring tenants to maintain renters insurance and stated that if they were ever without coverage during their tenancy, 'resident(s) agree[d] to be enrolled in the "pay along with rent" program and being charged accordingly.'" *Id.* ¶ 38. Tenants subject to this requirement paid either defendants or a third-party insurer for this insurance. *Id.* ¶ 39.

Defendants' Rule 30(b)(6)-designated corporate witnesses also testified their Section 8 tenants were subject to the renters' insurance requirement wherever this requirement was in place. *Id. See* Jarvis Dep. 115:16-25, Aug. 10, 2017, Bellows Decl. Ex. 5 at 9, ECF 246-5; *see also* Tanforan Dep. 140:11-16, 173:14-174:7, Bellows Decl. Ex.11 at 8-10, ECF No. 247-1. Defendants dispute this fact, citing the July 19, 2021 deposition of Jarom Johnson, defendant Wasatch's former Chief Operating Officer. Defs.' Response to Pls.' SUMF ¶ 40. However, as plaintiffs point out, "[d]efendants cannot create a dispute of fact for summary judgment by contradicting their Rule 30(b)(6) witnesses' testimony with a statement from their own corporate executive." Pls.' Obj. to Defs.' Evid. In Opp'n to Pls.' MSJ at 3–4, ECF No. 262. "Rule 30(b)(6) testimony can only be rebutted when there is an explanation for why the earlier testimony is mistaken." *Doe v. Cnty. of Kern*, No. 15- 01641, 2017 WL 1383282, at *9 (E.D. Cal. Apr. 18, 2017); *see also Snapp v. United Transp. Union*, 889 F.3d 1088, 1103-04 (9th Cir. 2018) (quoting 7 Moore's Fed. Practice – Civil § 30.25[3] (3d ed. 2016)) ("'[A] corporation generally cannot

15

present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative'" where the facts truly conflict absent "good reason or explanation" for the contradiction.). Here, defendants have not provided such a reason.

Thus, defendants' insurance requirement constitutes unlawful rent in violation of the HAP contracts and federal law because it was a mandatory condition of leasing defendants' property. Summary judgment is thus appropriate on the breach of contract and UCL claims on this separate ground, and for the same reasons outlined above. *See supra* section V.A.1–2.

## VI. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on all of plaintiffs' claims. *See generally* Defs.' MSJ. Because plaintiffs prevail on their breach of contract and unfair competition law claims, the court denies defendants' motions on these claims. The court addresses defendants' arguments as to the FCA and CLRA below.

### A. Federal False Claims Act (FCA)

Defendants argue summary judgment is appropriate on plaintiffs' claims under the FCA because defendants have "not submitted false claims to any [public housing agency]," because the agencies were "perfectly aware" of the ASAs and defendants have "consistently disclosed" the "practice of entering into those ASAs . . . ." Defs.' MSJ at 13. However, defendants' statement of undisputed material facts indicate they "*generally* submit[] the ASAs to the housing authorities," Pls. Response to Defs.' SUMF ¶ 45 (emphasis added), and plaintiffs point to multiple examples in the record where defendants omitted the ASAs from the lease packets. *Id.* (citing collection of communications with agencies administering the Section 8 program, Nako Decl. Ex. 44, ECF No. 257-2 at 359–457); *see also* Jarvis Dep. 46:1–23, Sept. 10, 2021, Nako Decl. Ex. 4, ECF No. 257-2 at 26. Plaintiffs also dispute defendants' contention that the record shows housing authorities were "generally aware" of defendants' use of ASAs with Section 8 tenants, *id.* ¶ 43 (citing Deps. of Mary Rizzo-Shuman, Barbara Cavey, and Julie Odlum, Nako Decl. Exs. 14, 13 and 16, ECF No. 257-2), or that "representatives of housing authorities have expressed approval of the use of ASAs in the context of the Housing Choice Voucher Program," *id.* ¶ 44 (citing Deps. of Barbara Cavey, Cheryl Syme, Mary Rivera, Jodie Parker, Jacqueline

Rojas, Julie Odlum, and Mary Rizzo-Sherman, Nako Decl. Exs. 13, 17, 15, 19, 16 and 14, ECF No. 257-2).

Construing the evidence in the light most favorable to the non-moving party, *Matsushita*, 475 U.S. at 587–88, there exists a dispute of material fact as to whether defendants made false statements or engaged in a fraudulent course of conduct by certifying they complied with regulations and HAP contract provisions, specifically the prohibition on accepting "payments or other consideration" beyond the agreed-upon rent. *See* HAP Contract, Part B, ¶ 8d ("Except for the rent to owner, the owner has not received and will not receive any payments or other consideration . . . for rental of the contract unit during the HAP contract term.").[4] Accordingly, the court **denies** defendants' motion as to the FCA claim.

### B. Consumer Legal Remedies Act (CLRA)

Defendants first argue summary judgment on the CLRA class claim is appropriate because plaintiffs cannot clear the hurdle of establishing the ASA charges constitute "additional rental amounts" or "side payments." Defs.' MSJ at 15. Because the court has already found the ASA charges constitute impermissible rent, it turns to defendants' second argument—that there "is simply no evidence that [d]efendants have made any misrepresentations with respect to housing authorities' repeated approval of HAP contracts based on leases that include ASAs." *Id.* at 16. However, this is the same argument this court considered and rejected in denying defendants' motion for summary judgment on plaintiffs' FCA claim above. Additionally, omission can show deception. *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006), *as modified* (Nov. 8, 2006) ("a claim may be stated under the CLRA in terms

---

[4] Plaintiffs also argue government knowledge is not a defense to false statements and the public housing agencies' knowledge of the ASAs is not a defense. Pls.' Opp'n at 20 (citing *Gonzalez v. Planned Parenthood of L.A.*, No. 5-8818, 2011 WL 1481398, at *5 (C.D. Cal. Apr. 19, 2011) ("In the Ninth Circuit, the government's knowledge of the falsity of a claim does not preclude a finding of falsity.")). The court need not address that argument now, as the record shows a dispute regarding whether the government had knowledge. *See* Pls. Response to Defs.' SUMF ¶ 43 (citing depositions). Furthermore, because defendants did not argue summary judgment on the FCA was warranted because plaintiffs cannot prove the second, third, and fourth elements of a FCA claim, the court does not address those elements.

constituting fraudulent omissions"). For these reasons, the court **denies** defendants' motion as to the CLRA claim.

## VII. DEFENDANTS' MOTION FOR CLASS DECERTIFICATION

"[D]ecertification is appropriate in light of changes in the law, subsequent developments in the litigation, and evidence not available at the time of certification." *Labrador v. Seattle Mortg. Co.*, No. 08-2270, 2010 WL 3768378, at *3 (N.D. Cal. Sept. 22, 2010) (citing *Dukes v. Wal–Mart Stores, Inc.* 603 F.3d 571, 579 (9th Cir.2010)). Defendants move, in the alternative, for class decertification "to the extent plaintiffs' legal theory of liability requires a showing that ASA charges are mandatory conditions of leasing . . . ." Defs. MSJ at 18–19. This court previously found class certification warranted because plaintiffs' claims "all involve the resolution of whether defendants' 'additional charges set forth in [ASAs] violated defendants' HAP Contract provisions with Section 8 tenants or federal law." Previous Order (July 30, 2018). Because this court now finds there is no material dispute defendants violated the HAP contracts and federal law by treating additional service charges as rent, class decertification is not warranted and the court **denies** defendants' motion.

## VIII. CONCLUSION

For the reasons discussed above, this court **grants plaintiffs' motion in its entirety and denies defendants' motions**.

This order resolves ECF Nos. 241, 242 and 243.

IT IS SO ORDERED.

DATED: November 23, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE