Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 763-9800; (510) 835-1417 (Fax)

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
(510) 834-3300; (510) 834-3377 (Fax)

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
(510) 437-1863; (510) 437-9164 (Fax)

Jocelyn D. Larkin (SBN 110817)
jlarkin@impactfund.org
Lindsay Nako (SBN 239090)
lnako@impactfund.org
THE IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA  94701
(510) 845-3473; (510) 845-3654 (Fax)

Attorneys for Plaintiffs and Relators and the Certified Classes

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON APARTMENTS, LP, BENT TREE APARTMENTS, LLC, CALIFORNIA PLACE APARTMENTS, LLC, CAMELOT LAKES HOLDINGS, LLC, CANYON CLUB HOLDINGS, LLC, COURTYARD AT CENTRAL PARK APARTMENTS, LLC, CREEKSIDE HOLDINGS, LTD, HAYWARD SENIOR APARTMENTS, LP, HERITAGE PARK APARTMENTS, LP, OAK VALLEY APARTMENTS, LLC, OAK VALLEY | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>DISCOVERY MATTER<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISPUTE (INSURANCE AGREEMENTS PURSUANT TO RULE 26)**<br><br>Date:     February 10, 2023<br>Time:    10:00 am<br>Dept:    Courtroom 27, 8th Floor<br>Before:  Hon. Magistrate Judge<br>              Deborah Barnes<br><br>Trial Date: None Set |

HOLDINGS, LP, PEPPERTREE APARTMENT
HOLDINGS, LP, PIEDMONT APARTMENTS,
LP, POINT NATOMAS APARTMENTS, LLC,
POINT NATOMAS APARTMENTS, LP,
RIVER OAKS HOLDINGS, LLC, SHADOW
WAY APARTMENTS, LP, SPRING VILLA
APARTMENTS, LP, SUN VALLEY
HOLDINGS, LTD, VILLAGE GROVE
APARTMENTS, LP, WASATCH QUAIL RUN
GP, LLC, WASATCH PREMIER
PROPERTIES, LLC, WASATCH POOL
HOLDINGS III, LLC, and DOES 1-4,

Defendants.

1   Plaintiffs and Class Representatives Denika Terry, Roy Huskey III, and Tamera

2   Livingston ("Plaintiffs") on behalf of themselves and the certified classes, and on behalf of the

3   United States, and Defendants Wasatch Advantage Group, LLC, Wasatch Property Management,

4   LLC, *et al.* ("Defendants"), submit this Joint Statement Regarding Discovery Disagreement under

5   Local Rule 251(c).

6

7   **INTRODUCTION**

8   Plaintiffs seek Defendants' complete production of "insurance agreements under which an

9   insurance business may be liable to satisfy all or part of a possible judgment in the action or to

10  indemnify or reimburse for payments made to satisfy the judgment" in advance of the settlement

11  conference scheduled with the Court on March 7, 2023.  *See* Fed. R. Civ. P. 26(a)(1)(A)(iv).

12  Defendants identified (but did not produce) one such document in their Rule 26 initial

13  disclosures.  *See* Ex. A.  Defendants produced a second insurance agreement on September 3,

14  2020.  Ex. B.  Defendants agree that they are obligated to produce relevant insurance agreements

15  but have not committed to a date for production.  Plaintiffs seek an order requiring production of

16  all relevant insurance agreements by 5 pm on February 13, 2023.

17

18  **MEET AND CONFER EFFORTS**

19  Plaintiffs filed the initiating Complaint in this case on April 14, 2015.  ECF No. 1.  The

20  Complaint named Defendants Wasatch Advantage Group, LLC, Wasatch Property Management,

21  Inc., Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC, Logan Park

22  Apartments, LLC, and Logan Park Apartments, LP (the "Original Defendants").  The parties met

23  for their Rule 26(f) conference on December 2, 2016, after the Complaint was unsealed.  ECF No.

24  38.  The six Original Defendants named in the original complaint provided their Rule 26 initial

25  disclosures on December 16, 2016.  Ex. A.  In their initial disclosures, Defendants stated that they

26  "have a Commercial General Liability policy issued by Lexington Insurance Company, 99 High

27  Street, Boston, Massachusetts 02110. The policy limits are $1,000,000/$2,000,000."  *Id*. at 6-7.

28  They produced a single page of the policy, which appears to show Wasatch Property Management

2

1  as the only insured.  *Id.* at 10.  They did not produce or otherwise make the policy document

2  available to Plaintiffs as required by Rule 26.

3        In summer 2020, Plaintiffs requested relevant insurance documents pursuant to Rule

4  26(a)(1)(A)(iv).  On September 3, 2020, Defendants provided one relevant liability insurance

5  agreement from AIG with a policy limit of $1,000,000.  Ex. B.  The agreement lists Defendant

6  Wasatch Property Management, Inc., as the insured company.  *Id.*  Plaintiffs have not received

7  any insurance agreements for the other five Original Defendants.

8        On August 17, 2021, pursuant to a stipulation and order, Plaintiffs filed the Fifth

9  Amended Complaint naming an additional twenty-five entities (the "New Defendants")

10  associated with the six Original Defendants.  ECF Nos. 135, 136.   By January 26, 2022, service

11  had been completed as to all of the New Defendants, who are each represented by the same

12  counsel as the six Original Defendants (with the exception of Defendant Hayward Senior

13  Apartments, LP, who has retained separate counsel).  The New Defendants have adopted the

14  original Rule 26(a) disclosures issued by the six Original Defendants.  None of the New

15  Defendants have produced any insurance agreements that may be applicable to this dispute.

16        On December 20, 2022, Plaintiffs again requested relevant insurance agreements pursuant

17  to Rule 26(a)(1)(A)(iv).  Ex. C.  Plaintiffs requested production by December 31, 2022, and

18  received no response from Defendants.  At Plaintiffs' request, the parties met and conferred by

19  phone on January 11, 2023.[1]  Counsel for Defendants stated that they would confer with their

20  clients and provide an update on January 13.  Ex. D.  They did not provide an update that day.

21  Ex. E (January 17, 2023 email).  Plaintiffs requested production by January 18, 2023.  *Id.*

22  Defendants provided no response.  The parties met and conferred by phone again on January 18

23  and 25.  *Id.* (January 18, 2023 email); Ex. F (January 25, 2023 email).  At the parties' January 25

24  meet and confer, counsel for Defendants stated that Defendant Wasatch Property Management

25  had identified and reviewed insurance agreements dated after 2013 and was preparing them for

26  production.  Ex. F.  As of the date of this filing, Plaintiffs have not received any additional

27  _____

28  [1] Counsel are unable to meet and confer in person because they live and work in different regions of California.

1  insurance agreements for Defendant Wasatch Property Management or any of the remaining

2  thirty Defendants.

3       Given the upcoming settlement conference on March 7, 2023, and Defendants' failure to

4  commit to the timing of production of relevant insurance documents, Plaintiffs filed a motion to

5  compel on January 20, 2023.

6

7                          **CASE NATURE AND POSTURE**

8  **I.     Case Background**

9       Plaintiffs are tenants who receive rental assistance through the federally subsidized

10  Housing Choice Voucher Program commonly known as "Section 8."  Defendants are Wasatch

11  Advantage Group, LLC, and its affiliates, a residential rental and property management company

12  with residential apartments in the western United States.  Plaintiffs allege Defendants improperly

13  charged class members for additional service charges such as laundry machines, renters'

14  insurance, and parking.  Plaintiffs bring claims under the False Claims Act, 31 U.S.C. § 3729 *et*

15  *seq.*, as well as certified class claims under California contract, business, and consumer laws. 5th

16  Am. Compl. ¶¶ 212-260, ECF No. 136; *see also* Order Granting Class Certification, ECF No. 92.

17       In November 2022, the Court granted Plaintiffs' Motion for Summary Judgment, finding

18  Defendants liable for breach of contract and violation of the California Unfair Competition Law.

19  ECF No. 278 at 14.  The Court denied Defendants' Cross-Motion for Summary Judgement or, in

20  the Alternative, Class Decertification.  *Id.* at 14-15.  The Court has ordered the parties to attend a

21  settlement conference with Magistrate Judge Carolyn K. Delaney on March 7, 2023.  ECF No.

22  281.

23

24  **II.    Factual Issues Relevant to Discovery Dispute**

25       This case has significant financial stakes.  In concluding that Defendants are liable to the

26  California classes for breach of the Housing Assistance Payment contract, the Court held,

27  "Plaintiffs were damaged in the amount of the excess rent they were required to pay[.]"  ECF No.

28  278 at 13-14.  In concluding that Defendants are liable to the California classes for unfair

business practices, the Court held, "Plaintiffs have suffered injury in the form of lost money or property as a result of defendants' unlawful practice of requiring plaintiffs to pay additional charges beyond their share of rent set out in the HAP contracts." *Id.* at 14.

Plaintiffs' expert David Breshears testified in his written report that the certified classes contain nearly 2,500 California tenants who have paid over $2,500,000 in additional services charges. ECF No. 242-3 at 3. Simple interest on the excess rent amounts paid by class members since the start of the Class Period in April 2011 totals over $1,000,000. *Id.*

The federal False Claim Act provides for treble damages and minimum mandatory penalties of $12,537 per violation. 28 C.F.R. § 85.5 (2022). Plaintiffs' False Claims Act claim spans four states – California, Washington, Utah, and Arizona. ECF No. 136 at 39-41. Mr. Breshears calculated that Defendants received over $103,000,000 in federal Section 8 payments that may be subject to the False Claims Act. ECF No. 242-3 at 3. This number does not take into account treble damages or associated penalties.

Plaintiffs are also entitled to attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5, as they are the prevailing party as to the class claims for breach of contract and unfair business practices.

## III.    Discovery Items in Dispute and the Parties' Contentions

The parties' discovery dispute concerns Defendants' obligation to provide insurance agreements as part of their initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(iv). Rule 26 requires:

> [A] party must, without awaiting a discovery request, provide to the other parties . . . for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

*Id.*

### A.    Plaintiffs' Position

Plaintiffs respectfully request that the Court order all Defendants to produce relevant insurance agreements as required by Fed. R. Civ. P. 26(a)(1)(A)(iv) by 5 pm on February 13, 2023. Specifically, Plaintiffs are seeking: (1) the Lexington insurance agreement for Wasatch

5

Property Management referenced in the Original Defendants' initial disclosures; (2) all other potentially applicable insurance agreements for Wasatch Property Management for the Class Period (April 4, 2011 to the present)[2]; (3) all potentially applicable insurance agreements for the remaining six Original Defendants for the Class Period; and (4) all potentially applicable insurance agreements for the New Defendants for the Class Period.  Although Defendants have not objected to producing these documents, they have not committed to a production date.

Defendants' obligation to produce relevant insurance agreements became effective on December 2, 2016, the date of the parties' Rule 26(f) conference.  The parties' initial disclosures were due "at or within 14 days after" the conference.  Fed. R. Civ. P. 26(a)(1)(C ); *see also* ECF No. 39 (order requiring the same).  For the defendants added in the Fifth Amended Complaint, their initial disclosures were due thirty days after service of the amended complaint, which was completed by January 26, 2022.  Fed. R. Civ. P. 26(a)(1)(D).  Thus, the New Defendants were required to provide their potentially applicable insurance policies to Plaintiffs for inspection and copying no later than February 25, 2022.

Plaintiffs renewed their requests for relevant insurance agreements following the Court's November 23, 2022, order on the parties cross-motions for summary judgment and the December 1, 2022, scheduling conference with the Court.  The parties are now just a month away from their March 7 settlement conference, making the production of all relevant insurance agreements urgent.  As the Advisory Committee Notes to the 1970 amendment to Rule 26 noted, "[d]isclosure of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation."

The parties' multiple attempts to meet and confer have been unsuccessful.  *See* Exs. C, D, E, F.  Plaintiffs request the Court order Defendants to produce all relevant insurance agreements by 5 pm on February 13, 2023.

---

[2] Plaintiffs contend that the Defendants should also provide insurance agreements for the longer FCA liability period relevant to this case—April 4, 2005 to present.  However, in the interests of narrowing the dispute for present purposes, Plaintiffs are focusing this Motion on the Class Period and will continue meeting and conferring with Defendants about older insurance policies.

**B.   Defendants' Position**

Defendants are actively gathering all potentially responsive insurance policies and intend to produce them. The extended time frame has rendered this a lengthy process, particularly where combined with numerous other outstanding discovery items. However, Defendants have no intention of withholding any potentially applicable insurance policy.

Dated:  February 3, 2023          Respectfully submitted,

IMPACT FUND

By: */s/ Lindsay Nako*
       Lindsay Nako

*Attorneys for Plaintiffs and Relators and the Certified Class*

Dated: February 3, 2023          Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/ Ryan Matthews* (as authorized on 2/3/23)
       Ryan Matthews

*Attorneys for Defendant*

JOINT STATEMENT RE DISCOVERY DISPUTE – CASE NO. 2:15-CV-00799 KJM-DB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   JOSEPH A. SALAZAR JR., SB# 169551
2     E-Mail: Joe.Salazar@lewisbrisbois.com
   YOON-WOO NAM, SB# 284644
3     E-Mail: Yoon-Woo.Nam@lewisbrisbois.com
   2020 West El Camino Avenue, Suite 700
4  Sacramento, California 95833
   Telephone: 916.564.5400
5  Facsimile: 916.564.5444

6  Attorneys for Wasatch Advantage Group, LLC;
   Wasatch Property Management, Inc.; Wasatch
7  Pool Holdings, LLC, Chesapeake Commons
   Holdings, LLC; Logan Park Apartments, LLC;
8  Logan Park Apartments, LP

9              UNITED STATES DISTRICT COURT

10      EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

11

12 | UNITED STATES OF AMERICA, ex rel.        CASE NO. 2:15-CV-00799 KJM DAD
   DENIKA TERRY and ROY HUSKEY III,
13 and each of them for themselves individually,   **DEFENDANTS' INITIAL DISCLOSURES**
   and for all other persons similarly situated and  **PURSUANT TO F.R.C.P. 26(a)(1)**
14 on behalf of the UNITED STATES OF
   AMERICA,
15                                           Trial Date:      None Set
            Plaintiffs/Relators,
16
       vs.
17
   WASATCH ADVANTAGE GROUP, LLC,
18 WASATCH PROPERTY MANAGEMENT,
   INC., WASATCH POOL HOLDINGS, LLC,
19 CHESAPEAKE COMMONS HOLDINGS,
   LLC, LOGAN PARK APARTMENTS, LLC;
20 LOGAN PARK APARTMENTS, LP,

21         Defendants.

22

23         Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendants Wasatch

24 Advantage Group, LLC; Wasatch Property Management, Inc.; Wasatch Pool Holdings, LLC,

25 Chesapeake Commons Holdings, LLC; Logan Park Apartments, LLC; Logan Park Apartments,

26 LP ("Defendants") serve the following initial disclosures:

27     A.    **Individuals Likely to Have Discoverable Information**

28     The following individuals are believed by counsel to be likely to have discoverable

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 information that Defendants may use to support their claims and defenses, unless solely for

2 impeachment. These persons may not necessarily have information on the subjects indicated,

3 and/or may have information in other areas. This will be clarified through the discovery process.

4

| NAME | ADDRESS & TELEPHONE | SUBJECT(S) |
|------|---------------------|------------|
| Denika Terry | Law Offices of Andrew Wolff, PC<br>1956 Webster Street, Ste. 275<br>Oakland, CA 94612<br>(510) 834-3300 | Plaintiffs' claims |
| Roy Huskey, III | Law Offices of Andrew Wolff, PC<br>1956 Webster Street, Ste. 275<br>Oakland, CA 94612<br>(510) 834-3300 | Plaintiffs' claims |
| Warren Smith, Regional Manager for Logan Park Apartments | 4215 Palm Ave. Sacramento, CA 95842<br>(916) 344-4494<br>May be contacted through counsel | Section 8 Housing, amenities, housing applications, eviction |
| Linda Grieve, Financial Manager at Logan Park Apartments | 4215 Palm Ave. Sacramento, CA 95842<br>(916) 344-4494<br>May be contacted through counsel | Housing contracts, Request for Tenancy Approval |
| Nora Padilla-Gutierrez, Compliance Manager at Logan Park Apartments | 4215 Palm Ave. Sacramento, CA 95842<br>(916) 344-4494<br>May be contacted through counsel | Section 8 Housing, rental applications |
| Patricia Camacho, employee at Logan Park Apartments | 4215 Palm Ave. Sacramento, CA 95842<br>(916) 344-4494<br>May be contacted through counsel | Section 8 Housing, rental applications |
| Dave Tanforan, Regional Manager for Chesapeake Commons | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Section 8 Housing, amenities, housing applications, eviction |

| NAME | ADDRESS & TELEPHONE | SUBJECT(S) |
|---|---|---|
| Alexandria Krist | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Alina Pinto | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Amanda Maxfield | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Brianna Brown | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Candace Amey | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Christine Hyne | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Christopher Curry | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Erica Schummer | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Erin Pritchett | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| NAME | ADDRESS & TELEPHONE | SUBJECT(S) |
|------|---------------------|------------|
| Isabel Arrellano | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Jameila Louisville | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Jonathan Bergstedt | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Lara Tabler | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Lashawn Pettit | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Lisa Visconti | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Lori Hassell | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Nadia Eldib | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |
| Patricia Garcia | 3600 Data Dr., Rancho Cordova CA, 95670<br>(916) 403-3079<br>May be contacted through counsel | Chesapeake Commons operations |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| NAME | ADDRESS & TELEPHONE | SUBJECT(S) |
|---|---|---|
| Sarah Duncan | 3600 Data Dr., Rancho Cordova CA, 95670 (916) 403-3079 May be contacted through counsel | Chesapeake Commons operations |
| Sylvia Gamboa | 3600 Data Dr., Rancho Cordova CA, 95670 (916) 403-3079 May be contacted through counsel | Chesapeake Commons operations |
| Yolanda Zavala | 3600 Data Dr., Rancho Cordova CA, 95670 (916) 403-3079 May be contacted through counsel | Chesapeake Commons operations |
| Katie Dao, Compliance Director at Wasatch Property Management | 1000 Aviara Parkway, Suite 220 Carlsbad, CA 92011 (801) 961-1000 May be contacted through counsel | Section 8 housing |
| Debi Baker, Compliance Manager at Wasatch Property Management | 1000 Aviara Parkway, Suite 220 Carlsbad, CA 92011 (801) 961-1000 May be contacted through counsel | Section 8 housing |
| Jarom Johnson, Chief Operation Officer at Wasatch Property Management | 299 Main St. #2400, Salt Lake City, UT 84111 (801) 961-1000 | General operations of all Wasatch properties in the Sacramento regions |
| Shannon Fox, Contract Specialist at Sacramento Housing and Redevelopment Agency | 630 I Street, Sacramento, CA 95814 (916) 440-1390 | Section Housing program and applications |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| NAME | ADDRESS & TELEPHONE | SUBJECT(S) |
|---|---|---|
| Cecilia Givens, Director Housing Choice Voucher Program at Sacramento Housing and Redevelopment Agency | 630 I Street, Sacramento, CA 95814 (916) 440-1390 | Section Housing program and applications |
| Sacramento Housing and Redevelopment Agency | 630 I Street Sacramento, CA 95814 Phone: (916) 440-1390 Fax: (916) 449-1285 | Section Housing program |
| Sun Vally 50th Ave LLC | 2851 Alvarado St., San Leandro, CA 94577 | Sun Valley Apartments |
| Chris Flynn, Director of Asset Management at The Reliant Group | 275 Battery St., Suite 500, San Francisco 94111 | Logan Park Apartments |

**B.**     **Documents and Things**

The documents and things in the possession, custody or control of Defendants and which Defendants may use to support their claims and defenses, unless solely for impeachment, are identified below:

1.     Tenant files for Section 8 tenants and unsubsidized tenants, including but not limited to: housing applications, lease agreements and addendums thereto, lease renewal agreements, Housing Choice Voucher Program documents, HAP Contracts, Resident Ledgers and additional services agreements.

2.     Correspondence and documents sent to and received from Sacramento Housing & Redevelopment Agency.

3.     California State Treasurer, Tax Credit – Compliance Manual.

**C.**     **Computation of Damages**

Not applicable to Defendants.

**D.**     **Insurance**

Defendants have a Commercial General Liability policy issued by Lexington Insurance

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Company, 99 High Street, Boston, Massachusetts 02110. The policy limits are

2  $1,000,000/$2,000,000.

3        Defendants reserve the right to correct and modify these disclosures as discovery continues

4  and more information becomes available.

5

6  DATED: December 16, 2016              LEWIS BRISBOIS BISGAARD & SMITH LLP

7

8                                        By: _____

9                                            Joseph A. Salazar Jr.
                                             Yoon-Woo Nam
10                                           Attorneys for Wasatch Advantage Group, LLC;
                                             Wasatch Property Management, Inc.; Wasatch
11                                           Pool Holdings, LLC, Chesapeake Commons
                                             Holdings, LLC; Logan Park Apartments, LLC;
12                                           Logan Park Apartments, LP

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   **FEDERAL COURT PROOF OF SERVICE**

2   USA-Terry v Wasatch Property Mgmt - Case No. 2:15-cv-00799 KJM DAD

3   STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

4   At the time of service, I was over 18 years of age and not a party to the action. My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833. I am

5   employed in the office of a member of the bar of this Court at whose direction the service was made.

6

7   On December 16, 2016, I served the following document(s): **DEFENDANTS' INITIAL DISCLOSURES PURSUANT TO F.R.C.P. 26(A)(1)**

8   I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

9

10   **SEE ATTACHED SERVICE LIST**

11   The documents were served by the following means:

☒   (BY U.S. MAIL)  I enclosed the documents in a sealed envelope or package addressed to
12   the persons at the addresses listed above and I deposited the sealed envelope or package with the U.S. Postal Service, with the postage fully prepaid.

13   I declare under penalty of perjury under the laws of the United States of America and the
14   State of California that the foregoing is true and correct.

15   Executed on December 16, 2016, at Sacramento, California.

16

17   _____
18   Charlotte D. Sterling

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANTS' INITIAL DISCLOSURES

**SERVICE LIST**
**USA-Terry v Wasatch Property Mgmt**
**2:15-cv-00799 KJM DAD**

| | |
|---|---|
| Christopher David Beatty<br>LAW OFFICE OF ANDREW WOLFF, PC<br>1956 Webster Street, Suite 275<br>Oakland, CA  94612<br>Telephone:  (510) 834-3300<br>Fax:  (510) 834-3377 | ***Attorney for Plaintiffs***<br>***Denika Terry and Roy Huskey, III***<br><br>Email:  chris@awolfflaw.com<br>chrisbeatty@hotmail.com |
| Jesse Newmark<br>CENTRO LEGAL DE LA RAZA<br>3400 East 12th Street<br>Oakland, CA  94601<br>Telephone:  (510) 437-1554 x115<br>Fax:  (510) 437-9164 | ***Attorney for Plaintiffs***<br>***Denika Terry and Roy Huskey, III***<br><br>Email:  jessenewmark@centrolegal.org |
| Vincente Antonio Tennerelli<br>United States Attorney's Office<br>2500 Tulare Street, Suite 4401<br>Fresno, CA 93721<br>Telephone:  (559) 497-4080 | Attorney for Intervenor Plaintiff<br>United States of America<br><br>Email:  Vincente.Tennerelli@usdoj.gov<br>joni.jones@usdoj.gov |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4848-9105-2094.1

DEFENDANTS' INITIAL DISCLOSURES

ENDORSEMENT #013

This endorsement, effective 12:01 AM, 08/01/2016
Forms a part of Policy No.: 020413325
Issued to: WASATCH PROPERTY MANAGEMENT, INC.
By: LEXINGTON INSURANCE COMPANY

## POLICY RENEWAL BY ENDORSEMENT

### SCHEDULE

**Named Insured:**   WASATCH PROPERTY MANGEMENT, INC.

**Address:**   299 SOUTH MAIN, STE 2400
SALT LAKE CITY, UT 84111

**Policy Period:**   From: 08/01/2016                    To: 08/01/2017
(Effective Date)                       (Expiration Date)
(At 12:01 AM Standard Time at the address of the Named Insured shown above.)

**Premium:**

| | |
|---|---|
| Total Premium: | $ |
| Terrorism Premium: | $ |
| Minimum Earned Premium: | $ |

In consideration of the premium shown in the above Schedule, this Endorsement constitutes a renewal of Policy Number 020413325 with the Effective Date of 08/01/2015 and Expiration Date of 08/01/2016 (hereinafter, the **expiring policy**) with respect to the above Named Insured on the same terms and conditions as contained in the **expiring policy** for the Policy Period shown in the above Schedule.

The Annual Aggregate sublimits shown on the Declarations of or contained within the **expiring policy** shall be reinstated for this Policy on the effective date shown in the above Schedule, but only with respect to **occurrences** which first commence on or after 12:01 AM on such effective date.

This Endorsement shall not be construed as an extension of the **expiring policy**; but rather, shall be understood to be a renewal of the **expiring policy** on the same terms and conditions of the **expiring policy**, except as set forth in this Endorsement or in any other Endorsement attached hereto and forming a part of this Endorsement.

All other terms and conditions of the **expiring policy** remain unchanged.

_____
**Authorized Representative**

PR4377 (11/14)             ©2014 American International Group, Inc.             Page 1 of 1
All Rights Reserved.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B



LEWIS BRISBOIS BISGAARD & SMITH LLP

Ryan Matthews
2020 West El Camino Avenue, Suite 700
Sacramento, California 95833
Ryan.Matthews@lewisbrisbois.com
Direct: 916.646.8213

September 3, 2020

File No. 6234.11666

Anne Bellows
Goldstein, Borgen, Dardarian & Ho
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
abellows@gbdhlegal.com

     Re:   <u>Denika Terry v. Wasatch Advantage Group, LLC</u>

Dear Ms. Bellows:

    As we discussed, enclosed herewith please find the a CD containing the beginning of two rolling productions—one of ESI (WESI000001-000099), and one of training materials (WTM000001-000092). There will be significantly more documents to follow, but we wanted to get these out as soon as possible.

Very truly yours,

Ryan Matthews for
LEWIS BRISBOIS BISGAARD & SMITH LLP

RM:asr

# FORMS SCHEDULE

| | |
|---|---|
| Policy Number: 27082029 | Effective Date: **November 30, 2015** |
| Division No: 39 | Expiration Date: **November 30, 2016** |
| Insured Name: WASATCH PROPERTY MANAGEMENT, INC. | |

Print date: **January 22, 2016**

Underwriter Name: **ALEXANDRA VANHORSSEN**

Printed by: ARGEL MARVIN MUGAR

Underwriter Phone# : 213-689-2715

Phone# : 632-863-5800

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ RTQD01 | (11/2006) | Risk Transfer |
| ☐ CLETR2 | | Regular Broker Cover Letter |
| ☐ COM001 | 91222 (04/13) | Policy Holder Notices |
| ☐ QE8942 | | EPL Pak Premier Insured Letter |
| ☐ QE6634 | | EPL PAK HIGHLIGHT SHEET |
| ☐ QD6026 | 95862 (09/07) | PrivateEdge Plus Declarations - Countrywide (Admitted) |
| ☐ QS6072 | 95862 (9/07) | Signature Page |
| ☐ QT0001 | 96555 (1/15) | TRIA Dec Disclosure Form |
| ☐ QP6020 | 95726 (9/07) | General Terms and Conditions (Admitted) |
| ☐ QP5997 | 95728 (9/07) | Employment Practices Liability Insurance ("Epl Coverage Section") |
| ☐ QP5975 | 95727 (09/07) | Directors, Officers And Private Company Liability Insurance ("D&O Coverage Section") |
| ☐ QE3338 | (6/08) | Employment Practices Claim Panel Counsel |
| ☐ QE6369 | 96311 (02/08) | Appendix D Crisis Management Coverage For D&O Coverage Section |
| ☐ QE1731 | APPMAN (6/08) | Securities Claim Panel Counsel List |
| ☐ QE5938 | 95737 (09/07) | Nuclear Energy Liability Exclusion Endorsement (All Coverage Sections) |
| ☐ QE0200 | 69105 (11/97) | Utah Cancellation/Nonrenewal Amendatory Endorsement |
| ☐ QE6387 | 95801 (09/07) | Utah Amendatory Endorsement |
| ☐ QE6604 | 97629 (03/08) | FLSA And Related Exclusions Amended (D&O and EPL Coverage Sections) |
| ☐ QE7215 | 99758(8/08) | Notice Of Claim (Reporting By E-Mail) |
| ☐ QE9529 | 89644 (6/13) | Economic Sanctions Endorsement |
| ☐ QF0794 | 102331 (08/09) | Conduct Exclusions Amended (Final Adjudication Other Than A Coverage Proceeding Initiated By Insurer) (D&O and EPL Coverage Sections) |

NUSFRM

WESI000001

| Policy Number: | 27082029 | | Effective Date: | **November 30, 2015** |
|---|---|---|---|---|

Policy Number: 27082029

Division No: 39

Insured Name: WASATCH PROPERTY MANAGEMENT, INC.

Effective Date: **November 30, 2015**

Expiration Date: **November 30, 2016**

Print date: **January 22, 2016**

Underwriter Name: **ALEXANDRA VANHORSSEN**

Underwriter Phone#: 213-689-2715

Printed by: ARGEL MARVIN MUGAR

Phone#: 632-863-5800

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ QF0404 | 100689 (11/08) | Tie-In Of Limits Endorsement (Common Claims) (All Coverage Sections) |
| ☐ QE6942 | 98966 (04/08) | Severability Of The Application Endorsement (Non-Rescindable - Full Individual Severability; Top 3 Company Positions Imputed To Company)(D&O and EPL Coverage Sections) |
| ☐ QE7515 | 101286 (03/09) | Liberalization Endorsement (D&O and EPL Coverage Sections) |
| ☐ QE5484 | 94039 (05/07) | State Amendatory Inconsistent |
| ☐ QF1858 | 118951 (1/15) | Terrorism Exclusion - Certified Acts |
| ☐ QF1459 | 105048 (04/10) | Insured V. Insured Exclusion (D&O Coverage Section) |
| ☐ QF1569 | 105118 (04/10) | Extradition Coverage(D&O Coverage Section) |
| ☐ QE6931 | 98962 (04/08) | Professional Errors & Omissions Exclusion Endorsement(With Securities Claim Carveback)(D&O Coverage Section) |
| ☐ QE7449 | 101082 (02/09) | Clause 7 Amended(Advancement Of Defense Costs - 90 Days)(D&O Coverage Section) |
| ☐ QE6938 | 99184 (05/08) | Securities Claims Separate Retention(D&O Coverage Section) |
| ☐ QE7448 | 101081 (2/09) | Defense Costs Provision Amendatory(Advancement Of Defense Costs - 90 Days)(Epl Coverage Section) |
| ☐ ASPOSE | M115712 (00/00) | SEPARATE RETENTION FOR MULTIPLE PLAINTIFF CLAIMS |
| ☐ QE9985 | M112262 | California Employment Practices Claims Separate Retention (Epl Coverage Section) |
| ☐ QE6958 | 99194 (5/08) | Third Party Violation Claims - Separate Retention(Epl Coverage Section) |
| ☐ QE2392 | 78859 (10/01) | Forms Index |
| ☐ QE3844 | 60378 (05/94) | UT Addendum To The Application |
| ☐ ASPOSE | | Application |

| Account Name: | *WASATCH PROPERTY MANAGEMENT, INC.* | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| **Policy Number:** | *27082029* | **Policy Effective Date:** | *November 30, 2015* |
| **Underwriter:** | *ALEXANDRA VANHORSSEN* | **Print Date:** | *January 22, 2016* |

| Initial Risk Transfer Assessment Date: | | *January 22, 2016* | |
|---|---|---|---|
| **Risk Assessment Date** | **Risk Transfer Qualification** | **Risk Assessment Date** | **Risk Transfer Qualification** |
| *November 30, 2015* | *Insurance Accounting - Safe Harbour applies to transaction, no Risk Transfer Worksheet necessary* | | |

**Risk Transfer Qualification Key:**

**R1** - Insurance Accounting - Safe Harbor applies to transaction, no Risk Transfer Worksheet necessary
**R2** - Insurance Accounting - Risk Transfer Worksheet completed, approved, and in UW file
**R3** - Deposit Accounting - Risk Transfer Worksheet completed, approved, and in UW file
**R4** - Bifurcated Accounting (Insurance/Deposit) - Risk Transfer Worksheet completed, approved, and in UW file.

If it has been determined that a Risk Transfer Worksheet needs to be completed, please indicate below the individuals whom are required to sign the worksheet:

_____                    _____
Underwriter                                        Division President


_____
Chief Financial Officer

Surplus Lines License No:         _____

WESI000003

**National Union Fire Insurance Company of Pittsburgh, PA**
777 South Figueroa Street
18TH FL
Los Angeles, CA 90017 5814
213-689-3500



January 22, 2016

Direct Dial:   213-689-2715

Deb Mirocha
USI COLORADO LLC
1515 WYNKOOP SUITE 200
DENVER, CO 80202

RE:  **WASATCH PROPERTY MANAGEMENT, INC.**

Policy Number: **27082029**

Dear  Deb

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

ALEXANDRA VANHORSSEN
Underwriter
Executive Liability
213-689-2715

Enc.

WESI000004

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation  or by calling 1-800-706-3102.

91222 (4/13)

WESI000005

*November 30, 2015*

Dear Insured:

Congratulations on purchasing your employment practices liability insurance policy from AIG, one of the premier writers of commercial insurance. Your policy offers many outstanding features, including coverage for claims arising from violations of Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act (ADA); the Age Discrimination in Employment Act (ADEA); the Equal Pay Act of 1963 (EPA); and the Rehabilitation Act of 1973 (REHAB ACT).

As a AIG policyholder, you have the confidence of knowing that your claims will be handled by experienced claims professionals. In addition, our panel counsel is comprised of leaders in employment practices law throughout the country. The services of these law firms are available to you at preferred AIG rates.

Additionally, our package includes loss-control services included automatically for all eligible insureds through **EPL Pak**® **Premier**. This insurance offering features access to our online EPL Risk Manager located at www.EPLriskmanager.com, designed exclusively for AIG EPL insureds by the attorneys at Littler Mendelson, the nation's largest labor and employment law firm. This web link is exclusive to AIG EPL insurance policyholders and is available at no additional cost. To register, you can log into the site with your policy number. The site offers tools and resources including:

- Human Resources Form Library
- Sample Employee Handbooks
- Employment Law Email Alerts
- Employment Law Policies
- Hire & Fire Manual

- Employment Law Reference Manuals (5000 + pages)
- 50 State Analysis of Key Employment Laws
- Preventing Unlawful Harassment Guide
- Preventing Employment Class Actions Manual
- Discounts on Employment Law Training

All forms and materials may be downloaded and customized. To view a short video tour of the risk management products and services available, please visit: **http://eplriskmanager.com/take_tour.php**. As a AIG policyholder, you also receive ten free seats to Littler Mendelson's monthly webinar series on preventing harassment in the workplace and discounts on over 40 employment law training courses.  For additional information on these services you may contact Brian McMillan at Littler Mendelson at bmcmillan@littler.com or visit www.littler.com.

To complement these offerings, we continue to offer our risk management solutions provided by Jackson Lewis, LLP, a premier employment law firm with offices throughout the United States, including:

- Unlimited Access to the Jackson Lewis Toll Free Risk Management Hotline: (866) 614-0744
- One hour legal consultation with a Jackson Lewis attorney on any topic
- Seminars on topical issues of employment law, recent litigation development, and training
- Email subscription to The Jackson Lewis Newsletter, which highlights employment practices developments and trends
- Email updates regarding significant legislative actions, judicial decisions, and other changes which may impact your business
- Access to a self-audit checklist and a pre-termination checklist, which will assist companies in identifying potential vulnerability to employment claims
- Attendance at CAAB 1825 sexual harassment training in California

To learn more, please contact Paul Siegel at siegelp@jacksonlewis.com, Wendy Mellk at mellkw@jacksonlewis.com or view a free demonstration of training at www.jacksonlewis.com, or under the online training section or at www.workplaceanswers.com

Your decision to purchase coverage through AIG has provided your organization with powerful advantages in managing your business.  We thank you for choosing AIG and look forward to a continuing successful relationship. If you have any questions or would like additional information, please contact your broker, a AIG representative or email us at executiveliability@aig.com.

AIG is the marketing name for the worldwide property-casualty and general insurance operations of AIG Property Casualty Inc. For additional information, please visit our website at www.aig.com.  All products are written by insurance company subsidiaries or affiliates of AIG Property Casualty Inc. Coverage may not be available in all jurisdictions and is subject to actual policy language. Non-insurance products and services may be provided by independent third parties. Certain coverage may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds.



# EPL Pak® Premier

## Employment Practices Training, Loss Prevention and Risk Management

Controlling employment practices liability exposures while keeping pace with employment litigation trends and regulatory changes is a major challenge for all employers. AIG gives its employment practices liability (EPL) policyholders a unique advantage with EPL Pak® Premier, industry-leading loss prevention offerings. The suite is a combination of training, loss control and risk management tools designed to help our clients manage employment practices risks. EPL Pak Premier's resources are exclusive to AIG, and provide our EPL policyholders with access to expertise and materials from two of the nation's foremost employment and labor law firms, Littler Mendelson, P.C. and Jackson Lewis LLP.

### Putting Experts By Your Side

EPL Pak Premier now includes instant access to www.eplriskmanager.com, which provides first-in-class risk management tools and resources from Littler Mendelson, a leading employment and labor law firm. Materials available include essentials to manage your workforce and reduce exposure to employment related liability including:

- **Handbooks and Policies:** Sample employee handbook and policies to help implement best employment practices, including supplemental information for all 50 states
- **Forms Library:** A library of commonly used human resource forms, which can be customized, to ease your administrative burden
- **Workforce Guides**: A hiring and firing guide to help employers mitigate the risks of these critical phases of the employment relationship and step-by-step guides to prevent harassment, including information to help address and resolve incidents and lessen potential liability
- **Legal Reference Materials:** Over 3,000 pages of employment law reference manuals providing insights on timely topics ranging from layoffs, downsizing, and furloughs, to workplace violence, discrimination, and employment class actions. Includes a state-by-state assessment of employment laws and regulations

EPL Pak Premier gives you access to expertise and resources from two of the nation's foremost employment and labor law firms, Littler Mendelson, P.C. and Jackson Lewis LLP.

WESI000007



# EPL Pak® Premier

## State of the Art Enhancements

These state-of-the-art enhancements complement EPL Pak Premier's original package of risk management solutions from Jackson Lewis, LLP, which include:

- **Legal Consultation:** A one-hour legal consultation on human resources and employment law issues, such as how specific laws impact personnel decisions and potential exposure to liability
- **Liability Updates:** Access to the Jackson Lewis e-Newsletter and e-updates spotlighting important workplace law news and trends. Alerts on significant legislative actions, judicial decisions and other changes with potential impact on our insured's business
- **Checklists:** Self-audit and pre-termination checklists to help insureds identify vulnerabilities and safely navigate risky terrain
- **Special California State Training:** CA AB 1825 training, enabling companies with 50 or more employees in California to fulfill their mandate of providing sexual harassment training for supervisors every two years

EPL Pak Premier also includes Alternative Employment Dispute Resolution Programs from EDR Systems at preferred rates. EDR Systems will assist to resolve employee disputes internally and prevent time and money in litigation. The professionals at EDR Systems have more than 50 years of combined experience in human resource management, strategic planning, change management, and employee relations. They support a wide variety of businesses of all sizes, from national, multi-unit retail operations, to single-facility manufacturers, to professional firms.

---

To learn more about EPL Pak Premier services:

| E-mail: | Visit: | Contact: |
|---|---|---|
| FinancialLines@aig.com | www.aig.com | Your insurance broker |

 Bring on tomorrow

American International Group, Inc. (AIG) is a leading international insurance organization serving customers in more than 130 countries. AIG companies serve commercial, institutional, and individual customers through one of the most extensive worldwide property- casualty networks of any insurer. In addition, AIG companies are leading providers of life insurance and retirement services in the United States. AIG common stock is listed on the New York Stock Exchange and the Tokyo Stock Exchange.

Additional information about AIG can be found at www.aig.com | YouTube: www.youtube.com/aig | Twitter: @AIG_LatestNews | LinkedIn: www.linkedin.com/company/aig

AIG is the marketing name for the worldwide property-casualty, life and retirement, and general insurance operations of American International Group, Inc. For additional information, please visit our website at www.aig.com. All products and services are written or provided by subsidiaries or affiliates of American International Group, Inc. Products or services may not be available in all countries, and coverage is subject to actual policy language. Non-insurance products and services may be provided by independent third parties. Certain property-casualty coverages may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds, and insureds are therefore not protected by such funds.

WESI000008

**AIG**

**National Union Fire Insurance Company of Pittsburgh, PA**

A capital stock company

# PrivateEdge Plus

POLICY NUMBER: *27082029*    REPLACEMENT OF POLICY NUMBER: *19107429*

## Management Liability, Professional Liability, Crime Coverage and Kidnap And Ransom/Extortion Coverage for Private Companies
### DECLARATIONS

---

**NOTICES**

[THESE NOTICES ARE APPLICABLE TO ALL COVERAGE SECTIONS OTHER THAN THE CRIME COVERAGE SECTION AND KIDNAP AND RANSOM/EXTORTION COVERAGE SECTION]

COVERAGE WITHIN THIS POLICY IS GENERALLY LIMITED TO LOSS FROM CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD AND REPORTED TO THE INSURER AS THE POLICY REQUIRES. DEFENSE COSTS REDUCE THE LIMITS OF LIABILITY (AND, THEREFORE, AMOUNTS AVAILABLE TO RESPOND TO SETTLEMENTS AND JUDGMENTS) AND ARE APPLIED AGAINST APPLICABLE RETENTIONS.

THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND UNLESS SUCH COVERAGE IS EXPRESSLY PROVIDED WITHIN A COVERAGE SECTION.  WHERE THE INSURER HAS NO DUTY TO DEFEND, IT WILL ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE RETENTION, PURSUANT TO THE TERMS OF THIS POLICY PRIOR TO THE FINAL DISPOSITION OF A CLAIM.  PLEASE REFER TO THE COVERAGE SECTIONS PURCHASED FOR DEFENSE RELATED DETAILS.

PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.

---

| ITEMS | | | |
|---|---|---|---|
| 1 | **NAMED ENTITY:** | (the "Named Entity") | *WASATCH PROPERTY MANAGEMENT, INC.* |
| | | MAILING ADDRESS: | *595 S Riverwoods Parkway, Suite 400 LOGAN, UT, 84321* |
| | | STATE OF INCORPORATION/FORMATION: | *Utah* |
| 2 | **POLICY PERIOD:** | Inception Date: *November 30, 2015* | Expiration Date: *November 30, 2016* |
| | | 12:01 A.M. at the address stated in Item 1 | |

95862 (09/07)                    1                    ® All rights reserved.

WESI000009

ITEMS (continued)

**3**

**COVERAGE SUMMARY**

| | Liability Coverage Section | Separate Limit of Liability | Shared Limit of Liability | Retention/ Deductible* | Continuity/ Retroactive Date | Premium |
|---|---|---|---|---|---|---|
| D&O | D&O Coverage Section | *Inapplicable* | *$1,000,000 Shared With: EPL* | *$50,000* | *Continuity Date: August 1, 2003* | *$5,725* |
| EPL | Employment Practices Coverage Section | *Inapplicable* | *$1,000,000 Shared With: D&O* | *$100,000* | *Continuity Date: August 1, 2003* | *$37,075* |
| FLI | Fiduciary Liability Coverage Section | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| MPL | Miscellaneous Professional Liability Coverage Section | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| | Professional Services: | | | | | |
| CCP | Employed Lawyers Coverage Section | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased*  *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Crime | Crime Coverage Section | See Section 5: | None | See Section 5: | N/A | *Coverage Section Not Purchased* |
| KRE | Kidnap And Ransom/ Extortion Coverage Section | See Section 6: | None | See Section 6: | N/A | *Coverage Section Not Purchased* |
| *With respect to the D&O, EPL, FLI and CCP Coverage Sections only, no Retention amount is applicable to Non-Indemnifiable Loss.  *No Retention amount is applicable to Costs of Investigation for Company Shareholder Derivative Investigations, Crisis Management Events, Voluntary Compliance Loss and HIPAA Penalties. | | | | | | N/A |

**4** **TOTAL PREMIUM** *$42,800*

© All rights reserved.

WESI000010

*Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act, as amended (TRIA): Not applicable, coverage rejected by insured.  Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 85% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.A copy of the TRIA disclosure sent with the original quote is attached hereto.*

**5** | **CRIME LIMITS OF LIABILITY AND DEDUCTIBLES**

| Insuring Agreement | Per Occurrence Limit of Liability | Deductible |
|---|---|---|
| Insuring Agreement 1.A.: "Employee Theft" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.B.: "Forgery or Alteration" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.C.: "Inside the Premises - Theft of Money or Securities" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.D.: "Inside the Premises - Robbery or Safe Burglary of Other Property" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.E.: "Outside the Premises" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.F.: "Computer Fraud" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.G.: "Funds Transfer Fraud" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.H.: "Money Orders and Counterfeit Paper Currency" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Coverage Endorsement "Clients Property" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Coverage Endorsement "Guest Property  " Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |

If "Not Covered" is inserted above opposite any specific Insuring Agreement, such Insuring Agreement in the Crime Coverage Section and any other reference thereto in this policy is hereby deleted.

**CANCELLATION OF PRIOR CRIME INSURANCE:** By acceptance of the Crime Coverage Section of this Policy, you give us notice of cancellation for the prior Policy Nos: *Not Applicable*.  Such cancellation shall be effective at the time the Crime Coverage Section of this Policy becomes effective.

© All rights reserved.

WESI000011

ITEMS (continued)

| 6 | KRE LIMITS OF INSURANCE \ INSURED PERSON(S) | | |
|---|---|---|---|
| | Loss Component: | Each Loss Component Limit | Annual Aggregate Limit |
| | A. Ransom Monies: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| | B. In-Transit/Delivery: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| | C. Expenses: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| | D. Consultant Expenses: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| | E. Judgments, Settlements and Defence Costs: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| | F. Death or Dismemberment: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| | Each Insured Event Limit: | | *Coverage Section Not Purchased* |
| | Coverage Section Aggregate: | | *Coverage Section Not Purchased* |
| | Deductible (Each Loss): | | *Coverage Section Not Purchased* |
| | Insured Person(s): *Coverage Section Not Purchased* | | |

| 7 | OTHER LIMITS OF LIABILITY | |
|---|---|---|
| | (a) POLICY AGGREGATE LIMIT OF LIABILITY (For all coverages combined other than the Crime and the KRE Coverage Sections): | *$1,000,000* |
| | (b) Crisis Management Fund For D&O: | *$25,000* |
| | (c) Punitive Damages Sublimit of Liability for D&O and/or EPL Coverage Sections: ☐ D&O Punitive Damages Sublimit of Liability: ☐ EPL Punitive Damages Sublimit of Liability: ☒ Shared Punitive Damages Sublimit of Liability (D&O and EPL): ☐ No Punitive Damages Sublimit of Liability for D&O or EPL | *$1,000,000        D&O* *$1,000,000        EPL* |
| | (d) Costs of Investigation Coverage Sublimit for D&O: | *$100,000* |
| | (e) Voluntary Compliance Loss Sublimit of Liability for FLI: | |
| | (f) HIPAA Penalties Sublimit of Liability for FLI: | |

| 8 | DISCOVERY PROVISIONS (Inapplicable to Crime and KRE Coverage Sections) | |
|---|---|---|
| | (a) Percentage of Full Annual Premium for; 1 Year: | *125%* |
| | (b) 2 Years: | *TBD* |
| | (c) 3 Years: | *TBD* |
| | (d) 4 Years: | *TBD* |
| | (e) 5 Years: | *TBD* |
| | (f) 6 Years: | *TBD* |
| | (g) Percentage of Full Annual Premium for unlimited duration: | *TBD* |

© All rights reserved.

WESI000012

| ITEMS (continued) | |
|---|---|
| **9(a)** | **NAME AND ADDRESS OF INSURER**<br><br>*National Union Fire Insurance Company of Pittsburgh, PA*<br>*175 WATER STREET, NEW YORK, NY, 10038*<br><br>This policy is issued only by the insurance company indicated in this Item 9(a). |
| **9(b)** | **NOTICE OF CLAIMS AND CIRCUMSTANCES SEND TO:**<br>AIG, Financial Lines Claims<br>P.O. Box 25947<br>Shawnee Mission, KS, 66225<br><br>**Reference:** *27082029*<br><br>Reference: **[Coverage Section]** |

PRODUCER: *USI COLORADO LLC*

PRODUCER LICENSE NO.:  On File with Carrier

ADDRESS:  *1515 WYNKOOP SUITE 200*
*DENVER, CO 80202*

© All rights reserved.

WESI000013

**IN  WITNESS  WHEREOF**, the **Insurer** has caused this policy to be signed on the Declarations by its President, a Secretary and its duly authorized representative.


---------------------------------
PRESIDENT


---------------------------------
AUTHORIZED REPRESENTATIVE


---------------------------------
SECRETARY


---------------------------------        ---------------------------------        ---------------------------------
COUNTERSIGNATURE                         DATE                                      COUNTERSIGNED AT


95862 (9/07)

WESI000014

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM INSURANCE COVERAGE**
(RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act:* The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING JANUARY 1, 2018; 81% BEGINNING JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE**

Insured Name: *WASATCH PROPERTY MANAGEMENT, INC.*

Policy Number: *27082029*
Policy Period Effective Date From: *November 30, 2015*     To: *November 30, 2016*

96555 (1/15)
© 2015 National Association of Insurance Commissioners

**AIG**

## National Union Fire Insurance Company of Pittsburgh, PA

### PRIVATEEDGE PLUS

A capital stock company

#### GENERAL TERMS AND CONDITIONS

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, which forms a part of this policy, the **Insurer** agrees as follows:

**1. TERMS AND CONDITIONS**

These **General Terms and Conditions** shall be applicable to all **Coverage Sections** except: (i) the **KRE Coverage Section**; and (ii) the **Crime Coverage Section**. Terms appearing in these **General Terms and Conditions** which are defined in a **Coverage Section** shall have the meaning provided for such terms in such **Coverage Section** for purposes of coverage provided under such **Coverage Section**. Any reference in these **General Terms and Conditions** to "all **Coverage Sections**" shall not refer to the **KRE Coverage Section** or the **Crime Coverage Section**. The terms and conditions set forth in each **Coverage Section** shall only apply to that particular **Coverage Section** and shall in no way be construed to apply to any other **Coverage Section** of this policy.

**2. DEFINITIONS**

(a) **"Application"** means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy, employment practices liability policy, professional liability policy, employed lawyers policy or crime policy issued by the **Insurer**, or any of its affiliates, of which this policy is in whole or part a renewal or replacement or which it succeeds in time.

(b) **"Company"** means the **Named Entity** and any **Subsidiary** thereof. In the event a bankruptcy proceeding shall be instituted by or against a **Company**, the term **"Company"** shall also mean the resulting debtor-in-possession (or equivalent status outside the United States of America), if any.

(c) **"Continuity Date"** means the date set forth in Item 3 of the Declarations with respect to each **Coverage Section**.

(d) **"Coverage Section"** means each **Coverage Section** that is purchased by the **Insured** as indicated in Item 3 of the Declarations.

(e) **"Discovery Period"** means **Discovery Period**, as that term is defined in Clause 8 of these **General Terms and Conditions**.

(f) **"Domestic Partner"** means any natural person legally recognized as a domestic or civil union partner under: (i) the provisions of any applicable federal, state or local law; or (ii) the provisions of any formal program established by the **Company**.

(g) **"Insurer"** means the insurance company indicated in the Declarations.

(h) **"Management Control"** means: (i) owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation, the management committee members of a joint venture or partnership, or the members of the management board of a limited liability company; or (ii) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the board of directors of a corporation, the management committee of a joint venture or partnership, or the management board of a limited liability company.

(i) **"Named Entity"** means the entity listed in Item 1 of the Declarations.

(j) **"Policy Aggregate Limit of Liability"** means the **Policy Aggregate Limit of Liability** stated in Item 7(a) of the Declarations.

© All rights reserved.

WESI000016

(k) **"Policy Period"** means the period of time from the inception date stated in Item 2 of the Declarations to the earlier of the expiration date stated in Item 2 of the Declarations or the effective date of cancellation of this policy.

(l) **"Related Wrongful Act(s)"** means **Wrongful Act(s)** which are the same, related or continuous, or **Wrongful Act(s)** which arise from a common nucleus of facts. **Claims** can allege **Related Wrongful Act(s)** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

(m) **"Separate Limit of Liability"** means the applicable **Separate Limit of Liability**, if any, stated in Item 3 of the Declarations.

(n) **"Shared Limit of Liability"** means the applicable **Shared Limit of Liability**, if any, stated in Item 3 of the Declarations, which limit of liability shall be shared between all of the **Coverage Sections** which are listed below such **Shared Limit of Liability** in the Declarations.

(o) **"Subsidiary"** means:

(i) any for-profit entity, whose securities are not publicly traded, of which the **Named Entity** has or had **Management Control** ("**Controlled Entity**") on or before the inception date of the **Policy Period**, either directly or indirectly through one or more other **Controlled Entities**;

(ii) any for-profit entity, whose securities are not publicly traded, of which the **Named Entity** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other **Controlled Entities**; and

(iii) any not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by a **Company**.

Notwithstanding the foregoing, coverage as is afforded under this policy with respect to a **Claim** made against any **Subsidiary** or any **Individual Insureds** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time that the **Named Entity** obtained **Management Control** of such **Subsidiary** and prior to the time that such **Named Entity** ceased to have **Management Control** of such **Subsidiary**.

3. **EXTENSIONS**

Subject otherwise to the terms hereof, this policy shall cover **Loss** arising from any **Claim** made against: (i) the estates, heirs, or legal representatives of deceased **Individual Insureds**, and the legal representatives of **Individual Insureds** in the event of incompetency, insolvency or bankruptcy, who were **Individual Insureds** at the time the **Wrongful Acts** upon which such **Claims** are based were committed; or (ii) the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) or **Domestic Partner** of an **Individual Insured** for all **Claims** arising solely out of his or her status as the spouse or **Domestic Partner** of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** and the spouse or **Domestic Partner**, or property transferred from the **Individual Insured** to the spouse or **Domestic Partner**; provided, however, this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** of the spouse or **Domestic Partner**, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Individual Insured**, subject to the policy's terms, conditions and exclusions.

4. **LIMITS OF LIABILITY (FOR ALL LOSS IN THE AGGREGATE UNDER THIS POLICY AND UNDER EACH INDIVIDUAL COVERAGE SECTION - INCLUDING DEFENSE COSTS)**

The **Policy Aggregate Limit of Liability** is the maximum limit of the **Insurer's** liability for all **Loss** under all **Coverage Sections** combined arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable); provided, however, the **Policy Aggregate Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** for the **Policy Period**.

If **Separate Limits of Liability** are stated in Item 3 of the Declarations, then each such **Separate Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** arising out of all **Claims** first

© All rights reserved.

WESI000017

made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to the applicable **Coverage Section** as stated on the Declarations; provided, however, the **Separate Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Separate Limit of Liability** for the **Policy Period**. Each **Separate Limit of Liability** shall be part of and not in addition to the **Policy Aggregate Limit of Liability** for all **Loss** under this policy and shall in no way serve to increase the **Insurer's Policy Aggregate Limit of Liability** as therein stated.

If **Shared Limits of Liability** are stated in Item 3 of the Declarations, then each such **Shared Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to all **Coverage Sections** for which such **Shared Limit of Liability** is applicable, as indicated on the Declarations; provided, however, with respect to all **Coverage Sections** that have a **Shared Limit of Liability**, the **Shared Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Shared Limit of Liability** for the **Policy Period**. Each **Shared Limit of Liability** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** for all **Loss** under this policy and shall in no way serve to increase the **Policy Aggregate Limit of Liability** as therein stated.

Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable) which pursuant to Clause 6(b) or 6(c) of these **General Terms and Conditions** is considered made during the **Policy Period** or **Discovery Period**, shall also be subject to the **Policy Aggregate Limit of Liability** and subject to any applicable **Separate Limit of Liability** or **Shared Limit of Liability**.

**Defense Costs** are not payable by the **Insurer** in addition to the **Policy Aggregate Limit of Liability** or any applicable **Separate Limit of Liability** or **Shared Limit of Liability**. **Defense Costs** are part of **Loss** and as such are subject to the **Policy Aggregate Limit of Liability** for **Loss** and any applicable **Separate Limit of Liability** or **Shared Limit of Liability**. Amounts incurred for **Defense Costs** shall be applied against the Retention.

## 5.   RETENTION CLAUSE

The Retentions stated in the Declarations are separate Retentions pertaining only to the **Coverage Section** for which they are stated in the Declarations. The application of a Retention to **Loss** under one **Coverage Section** shall not reduce the Retention under any other **Coverage Section**.

In the event a **Claim** triggers a Retention in multiple **Coverage Sections**, then the following shall apply:

(a) with regard to **Loss** which is payable under any **Coverage Section** which is subject to a **Separate Limit of Liability**, the Retention applicable to such **Loss** pursuant to the Retention Clause of such **Coverage Section** (or pursuant to any applicable endorsement) shall apply separately to such **Loss**, and the applicable Retention for such **Coverage Section** shall not be reduced by payments of **Loss** made towards the Retention required under any other **Coverage Section**; and

(b) with regard to **Loss** which is payable under any **Coverage Sections** which are subject to a **Shared Limit of Liability**, the highest applicable Retention shall be deemed the Retention applicable to **Loss** arising from such **Claim**.

## 6.   NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the addressee and at the address identified in Item 9(b) of the Declarations. Notice shall include and reference this policy number as indicated in the Declarations, as well as the **Coverage Sections** under which the **Claim** is being noticed. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

The following shall apply:

(a) The **Insureds** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of any **Claim** made against an **Insured** or a **Crisis Management Event** as soon as practicable after: (i) the **Company's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim**; or (ii) the **Crisis Management Event** commences, but in all events a **Claim** must be reported no later than either:

© All rights reserved.

WESI000018

(i)  anytime during the **Policy Period** or during the **Discovery Period** (if applicable); or

(ii)  within ninety (90) days after the end of the **Policy Period** or the **Discovery Period** (if applicable).

(b)  If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 6(a) above, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged in the **Claim** of which such notice has been given, shall be considered made at the time such notice was given.

(c)  If during the **Policy Period** or during the **Discovery Period** (if applicable) the **Insureds** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

(d)  Any matter which could involve the payment of **Voluntary Compliance Loss** under the **FLI Coverage Section** shall be reported to the **Insurer** in the same manner as a **Claim** under Clause 6(a)(i) and 6(a)(ii) above.

## 7.  CANCELLATION CLAUSE

This policy or any individual **Coverage Section** may be canceled by the **Named Entity** at any time by mailing prior written notice to the **Insurer** stating which **Coverage Sections** are to be canceled or that the entire policy is to be canceled and when thereafter such cancellation shall be effective, or by surrender thereof to the **Insurer** or its authorized agent. The mailing of such notice shall be sufficient notice and the effective date of cancellation shall be the date the **Insurer** received such notice or any later date specified in the notice, and such effective date shall become the end of the policy or applicable **Coverage Sections**.

This policy may be canceled by or on the behalf of the **Insurer** only in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified or other first class mail, at the **Named Entity's** address as stated in Item 1 of the Declarations, written notice stating when, not less than ten (10) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

If this policy or any **Coverage Section** shall be canceled by the **Named Entity**, the **Insurer** shall retain the pro rata proportion of the applicable premium herein. Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation.

If the period of limitation relating to the giving of notice as set forth above is also set forth in any law controlling the construction thereof, the period set forth above shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

## 8.  DISCOVERY CLAUSE

If the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew this policy or any **Coverage Section**, then, solely with regard to the policy or **Coverage Section** which was canceled or nonrenewed, the **Named Entity** shall have the right, upon payment of the applicable "**Additional Premium Amount**" described below, to a period of up to six (6) years or of unlimited duration following the effective date of such cancellation or nonrenewal (herein referred to as the "**Discovery Period**"), in which to give the **Insurer** written notice of **Claims** first made against any **Insured** during said **Discovery**

 © All rights reserved.

WESI000019

**Period** for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by the canceled or nonrenewed policy or **Coverage Section**, as applicable. The rights contained in this Clause 8 shall terminate, however, unless written notice of such election together with the **Additional Premium Amount** due is received by the **Insurer** within thirty (30) days of the effective date of cancellation or nonrenewal.

The **Additional Premium Amount** for the elected **Discovery Period** shall be the **"Full Annual Premium"** (as defined below) multiplied by the applicable percentage amount indicated in Item 8 of the Declarations for the length time of elected for the **Discovery Period**. If the applicable subsection of Item 8 of the Declaration states "to be determined", then the **Additional Premium Amount** for such **Discovery Period** shall be an amount determined by the **Insurer** in its sole and absolute discretion.

As used herein, **"Full Annual Premium"** means:

(a) with regard to a canceled or nonrenewed policy, the total annual premium charged for this policy; or

(b) with regard to a canceled or nonrenewed **Coverage Section**, the total annual premium charged for such **Coverage Section**.

In the event of a **Transaction**, as defined in Clause 9 of these **General Terms and Conditions**, the **Named Entity** shall have the right, within thirty (30) days before the end of the **Policy Period**, to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**) for a period of up to six (6) years or for such longer or shorter period as the **Named Entity** may request. The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions and premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable, except that the **Insurer** may cancel the **Discovery Period** for non-payment of premium. This Clause 8 and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

9.  **CHANGE IN CONTROL OF NAMED ENTITY**

If during the **Policy Period**:

(a) the **Named Entity** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(b) any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

(either of the above events herein referred to as the **"Transaction"**),

then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**.

This policy and any purchased **Coverage Section** may not be canceled after the effective time of the **Transaction**. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in Clause 8 of these **General Terms and Conditions**.

The **Named Entity** shall give the **Insurer** written notice of the **Transaction** as soon as practicable, but not later than thirty (30) days after the effective date of the **Transaction**.

10. **SUBROGATION**

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to each **Insured's** rights of recovery thereof, and each **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of the **Insured**. In no event, however, shall subrogation be had against any **Individual Insured** under this policy, unless such **Individual Insured** has been convicted of a criminal act, or been determined by a final adjudication to have committed a dishonest, fraudulent act or willful violation of any statute, rule or law, or  determined

WESI000020

by a final adjudication to have obtained any profit or advantage to which such **Individual Insured** was not legally entitled.

In the event that the **Insurer** shall for any reason pay **Indemnifiable Loss** on behalf of an **Individual Insured**, the **Insurer's** subrogation rights shall include, but not be limited to, the assertion of indemnification or contribution rights with respect to any such payments it makes or advances. Additionally, upon the **Insurer** making any payment of **Loss** within the Retention, the **Insurer** shall have a direct contractual right under this policy to recover from the **Company**, or in the event of the bankruptcy of the **Company**, from the debtor-in-possession (or equivalent status outside the United States) such **Loss** which was paid within the Retention. Such direct contractual right of recovery against the **Company** shall be in addition to and independent of the **Insurer's** subrogation right pursuant to this Clause 10 and any other rights the **Insurer** may have under applicable law.

## 11. OTHER INSURANCE

With respect to all **Coverage Sections**, other than the **EPL Coverage Section**, such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly written to be excess over the **Policy Aggregate Limit of Liability** or any applicable **Separate Limit of Liability** or **Shared Limit of Liability** provided by this policy. This policy specifically shall be excess of any other policy pursuant to which any other **Insurer** has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

Such insurance as is provided by the **EPL Coverage Section** shall be primary unless expressly written to be excess over other applicable insurance.

With respect to all **Coverage Sections**, in the event of a **Claim** against an **Insured** arising out of his or her service as an **Outside Entity Executive**, or a **Claim** against an **Insured** for the **Insured's** liability with respect to a leased **Employee** or independent contractor **Employee** as described in the definition of "**Employee**" in the applicable **Coverage Section**, coverage as is afforded by this policy shall be specifically excess of any: (i) indemnification provided by such **Outside Entity** or leasing company; and (ii) any other insurance provided to such **Outside Entity**, leasing company or independent contractor.

Further, in the event other insurance is provided to the **Outside Entity**, leasing company or independent contractor referenced in the above paragraph, or is provided under any pension trust or employee benefit plan fiduciary liability insurance policy, and such other insurance is provided by the **Insurer** or any member company of AIG Property Casualty Inc. ("**AIG**") (or would be provided but for the application of the Retention, exhaustion of the limit of liability or failure to submit a notice of a **Claim**), then the **Insurer's** maximum aggregate limit of liability for all **Loss** combined in connection with a **Claim** covered, in part or in whole, by this policy and such other insurance policy issued by **AIG**, shall not exceed the greater of (i) the **Policy Aggregate Limit of Liability** or any applicable **Separate Limit of Liability** or **Shared Limit of Liability** of this policy, or (ii) the limit of liability of such other **AIG** insurance policy.

## 12. NOTICE AND AUTHORITY

Except for the giving of a notice of **Claim**, which shall be governed by the provisions of Clause 6 of these **General Terms and Conditions**, all notices required under this policy to be given by the **Insured** to the **Insurer** shall be given in writing to the **Insurer** at the address stated in Item 9(a) of the Declarations. It is agreed that the **Named Entity** shall act on behalf of its **Subsidiaries** and all **Insureds** with respect to the giving of notice of a **Claim**, the giving and receiving of notice of cancellation and nonrenewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a **Claim** to the **Insurer** and the exercising or declining to exercise any right to a **Discovery Period**.

## 13. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**, which consent shall be in the sole and absolute discretion of the **Insurer**.

## 14. DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, must first be submitted to the non-binding mediation process as set forth in this Clause.

© All rights reserved.

WESI000021

The non-binding mediation will be administered by any mediation facility to which the **Insurer** and the **Named Entity** mutually agree, in which all implicated **Insureds** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the American Arbitration Association's (**"AAA"**) then-prevailing Commercial Mediation Rules. The parties shall mutually agree on the selection of a mediator. The mediator shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator shall also give due consideration to the general principles of the law of the state where the **Named Entity** is incorporated in the construction or interpretation of the provisions of this policy. In the event that such non-binding mediation does not result in a settlement of the subject dispute or difference:

(a)  either party shall have the right to commence a judicial proceeding; or

(b)  either party shall have the right, with all other parties consent, to commence an arbitration proceeding with the **AAA** that will be submitted to an arbitration panel of three (3) arbitrators as follows: (i) the **Insured** shall select one (1) arbitrator; (ii) the **Insurer** shall select one (1) arbitrator; and (iii) said arbitrators shall mutually agree upon the selection of the third arbitrator. The arbitration shall be conducted in accordance with the **AAA's** then prevailing Commercial Arbitration Rules.

Notwithstanding the foregoing, no such judicial or arbitration proceeding shall be commenced until at least ninety (90) days after the date the non-binding mediation shall be deemed concluded or terminated. Each party shall share equally the expenses of the non-binding mediation.

The non-binding mediation may be commenced in New York, Atlanta, Georgia, Chicago, Illinois, Denver, Colorado or in the state indicated in Item 1 of the Declarations as the mailing address for the **Named Entity**. The **Named Entity** shall act on behalf of each and every **Insured** in connection with any non-binding mediation under this Clause, the selection of arbitration or judicial proceeding or the selection of mediators or arbitrators.

## 15. ACTION AGAINST INSURER

Except as provided in Clause 14 above, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against the **Insured** or the **Company** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by the **Insured** or the **Company** or their legal representatives. Bankruptcy or insolvency of the **Company** or any **Insured** or of their estates shall not relieve the **Insurer** of any of its obligations hereunder.

## 16. WORLDWIDE TERRITORY

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

## 17. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

[The balance of this page is intentionally left blank.]

WESI000022

**AIG**

## National Union Fire Insurance Company of Pittsburgh, PA

A capital stock company

## PrivateEdge Plus

### Employment Practices Liability Insurance
### ("EPL COVERAGE SECTION")

**Notice**: Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to this EPL Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this EPL Coverage Section.

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, which forms a part of this policy, the **Insurer** agrees as follows:

**1. INSURING AGREEMENTS**

With respect to the Insuring Agreement and the Defense Provisions of this Clause 1, solely with respect to **Claims** first made during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this **EPL Coverage Section** affords the following coverage:

This **EPL Coverage Section** shall pay the **Loss** of an **Insured** arising from a **Claim** first made against such **Insured** for any **Wrongful Act**. The **Insurer** shall, in accordance with and subject to Clause 6 of this **EPL Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

**DEFENSE PROVISIONS**

The **Insurer** does not assume any duty to defend; provided, however, the **Named Entity** may at its sole option tender to the **Insurer** the defense of a **Claim** for which coverage is provided by this **EPL Coverage Section** in accordance with Clause 6 of this **EPL Coverage Section**. Regardless of whether the defense is so tendered, the **Insurer** shall advance **Defense Costs** of such **Claim**, excess of the applicable Retention amount, prior to its final disposition. Selection of counsel to defend a **Designated Employment Practices Claim** shall be made in accordance with Clause 7 of this **EPL Coverage Section**.

**2. DEFINITIONS**

(a) **"Claim"** means:

(i) a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations);

(ii) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

(1) service of a complaint or similar pleading;

(2) return of an indictment, information or similar document (in the case of a criminal proceeding); or

(3) receipt or filing of a notice of charges; or

(iii) an administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission (**"EEOC"**), or similar state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**.

However, in no event shall the term **"Claim"** include any labor or grievance proceeding which is subject to a collective bargaining agreement.

(b) **"Defense Costs"** means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond)

95728 (9/07)                                        1

© All rights reserved.

WESI000023

resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against the **Insureds**, but excluding compensation of any **Individual Insured**. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

(c)  **"Designated Employment Practices Claim"** means a **Claim**: (i) alleging discrimination or **Retaliation**; or (ii) that is certified as, or which is seeking certification as, a class action.

(d)  **"EPL Punitive Damages Sublimit of Liability"** means the **EPL Punitive Damages Sublimit of Liability**, if any, stated in Item 7(c) of the Declarations.

(e)  **"Employee"** means any past, present or future employee, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, volunteer, seasonal and temporary employee in his or her capacity as such. An individual who is leased to the **Company** shall also be an **Employee**, but only if the **Company** provides indemnification to such leased individual in the same manner as is provided to the **Company's** employees. Any other individual who is contracted to perform work for the **Company**, or who is an independent contractor for the **Company**, shall also be an **Employee**, but only if the **Company** provides indemnification to such individual in the same manner as that provided to the **Company's** employees, pursuant to a written contract.

(f)  **"Employment Practices Violation"** means any actual or alleged:

   (i)  wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

   (ii)  harassment (including sexual harassment whether "quid pro quo", hostile work environment or otherwise);

   (iii)  discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

   (iv)  **Retaliation**;

   (v)  employment-related misrepresentation(s) to an **Employee** of the **Company** or applicant for employment with the **Company** or an **Outside Entity**;

   (vi)  employment-related libel, slander, humiliation, defamation or invasion of privacy;

   (vii)  wrongful failure to employ or promote;

   (viii)  wrongful deprivation of career opportunity with the **Company**, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

   (ix)  wrongful discipline;

   (x)  failure to grant tenure; or

   (xi)  with respect to any of the foregoing items (i) through (x) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of  an individual's civil rights;

but only if the **Employment Practices Violation** relates to an **Employee** of a **Company** or an **Outside Entity**, or applicants for employment with a **Company** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally.

(g)  **"Executive"** means:

   (i)  any past, present or future duly elected or appointed director, officer, management committee member or member of the Board of Managers;

   (ii)  any past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in Definition (g)(i); or

   (iii)  any past, present or future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**.

EPL COVERAGE SECTION
© All rights reserved.

WESI000024

(h) **"Financial Insolvency"** means the: (i) appointment by any government official, agency, commission, court or other governmental authority of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate an insolvent **Company**; (ii) the filing of a petition under the bankruptcy laws of the United States of America; or (iii), as to both (i) or (ii), any equivalent events outside the United States of America.

(i) **"Foreign Jurisdiction"** means any jurisdiction, other than the United States of America or any of its territories or possessions.

(j) **"Indemnifiable Loss"** means **Loss** for which a **Company** has indemnified or is permitted or required to indemnify an **Individual Insured** pursuant to law, contract or the charter, bylaws, operating agreement or similar documents of a **Company**.

(k) **"Individual Insured"** means any:

(i) **Executive** of a **Company**;

(ii) **Employee** of a **Company**; or

(iii) **Outside Entity Executive**.

(l) **"Insured"** means:

(i) an **Individual Insureds**; or

(ii) a **Company**.

(m) **"Loss"** means damages (including back pay and front pay), judgments, settlements, pre-and post-judgment interest and **Defense Costs**; provided, however, **Loss** shall not include: (i) civil or criminal fines or penalties imposed by law; (ii) taxes; (iii) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; (iv) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (v) any liability or costs incurred by any **Insured** to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar; (vi) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. **Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (m)(i) through (m)(vi) above of this Definition, subject to the other terms, conditions and exclusions of this policy.

**Loss** shall specifically include, subject to the other terms, conditions and exclusions of this **EPL Coverage Section**, including, but not limited to, Exclusion 3(a) of this **EPL Coverage Section**, punitive, exemplary and multiple damages (including the multiple or liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act). As more fully set forth in Clause 4. "PUNITIVE DAMAGES SUBLIMIT OF LIABILITY" of this **EPL Coverage Section**, coverage under this **EPL Coverage Section** for punitive, exemplary and multiple damages is subject to any applicable **EPL Punitive Damages Sublimit of Liability** or **Shared Punitive Damages Sublimit of Liability**. The enforceability of the first sentence of this paragraph shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.

(n) **"Outside Entity"** means:

(i) any not-for-profit organization; or

(ii) any other corporation, partnership, joint venture or other organization listed by endorsement to this policy or **EPL Coverage Section**.

(o) **"Outside Entity Executive"** means any **Executive** of the **Company** serving in the capacity as director, officer, trustee or governor of an **Outside Entity**, but only if such service is at the specific request or direction of the **Company**. It is understood and agreed that, in the event of a disagreement between the **Company** and an individual as to whether such individual was acting "at the specific request or direction of the **Company**," this **EPL Coverage Section** shall abide by the determination of the **Company** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** is first reported to the **Insurer** pursuant to the terms of the policy. In the event no determination is made within such period, this **EPL Coverage Section** shall apply as

95728 (9/07)            3

EPL COVERAGE SECTION
© All rights reserved.

WESI000025

if the **Company** determined that such **Individual Insured** was not acting at the **Company's** specific request or direction.

(p)  "**Retaliation**" means a retaliatory act of an **Insured** alleged to be in response to any of the following activities: (i) the disclosure or threat of disclosure by an **Employee** of the **Company** or an **Outside Entity** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; (ii) the actual or attempted exercise by an **Employee** of the **Company** or an **Outside Entity** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (iii) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (iv) strikes of an **Employee** of the **Company** or an **Outside Entity**.

(q)  "**Settlement Opportunity**" means an **Insurer** recommended settlement that is within the **Policy Aggregate Limit of Liability**, **Separate Limit of Liability** or **Shared Limit of Liability**, if any, and that is acceptable to the claimant.

(r)  "**Shared Punitive Damages Sublimit of Liability**" means the **Shared Punitive Damages Sublimit of Liability**, if any, stated in Item 7(c) of the Declarations.

(s)  "**Third Party Violation**" means any actual or alleged harassment or unlawful discrimination, as described in subparagraphs 2(f)(ii) and 2(f)(iii) of the definition of **Employment Practices Violation**, or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Individual Insured** or applicant for employment with the **Company** or an **Outside Entity**, including, but not limited to, students, patients, members, customers, vendors and suppliers.

(t)  "**Wrongful Act**" means any actual or alleged (i) **Employment Practices Violation**, or (ii) **Third Party Violation**.

## 3.  EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(a)  arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act by the **Insured** if any final adjudication establishes that such deliberate criminal or deliberate fraudulent act was committed;

(b)  alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Acts** alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this **EPL Coverage Section** is a renewal or replacement of in whole or in part or which it may succeed in time;

(c)  alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (i) litigation; or (ii) **EEOC** (or similar state, local or foreign agency) proceeding or investigation of which an **Insured** had notice, or alleging any **Wrongful Act** which is the same or **Related Wrongful Act** to that alleged in such pending or prior litigation or EEOC (or similar state, local or foreign agency) proceeding or investigation;

(d)  with respect to an **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if the **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this **EPL Coverage Section**;

(e)  alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Individual Insured** serving in any capacity, other than as an **Executive** or **Employee** of a **Company**, or as an **Outside Entity Executive** of an **Outside Entity**;

(f)  for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to, loss of use of or destruction of any tangible property;

EPL COVERAGE SECTION
© All rights reserved.

WESI000026

(g) for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to the extent that a **Claim** is for **Retaliation**;

(h) alleging, arising out of, based upon, attributable to or in any way relating to:

    (i) the refusal, failure or inability of any **Insured** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered (as opposed to tort-based back pay or front pay damages for torts other than conversion);

    (ii) improper payroll deductions taken by any **Insured** from any **Employee** or purported **Employee**; or

    (iii) failure to provide or enforce legally required meal or rest break periods;

    provided, however, this exclusion shall not apply to the extent that a **Claim** is for **Retaliation**;

(i) alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, however, this exclusion shall not apply to the extent that a **Claim** is for **Retaliation**;

(j) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any **Insured** under any express contract or agreement; provided, however, this exclusion shall not apply to:

    (i) liability which would have attached in the absence of such express contract or agreement; or

    (ii) **Loss** constituting **Defense Costs**;

(k) alleging, arising out of, based upon or attributable to any **Claim** brought by a securities holder of a **Company**, an **Outside Entity** or an affiliate of the **Named Entity** in their capacity as such in the form of a shareholder class, direct or derivative action on behalf of such **Company**, **Outside Entity** or affiliate.

For the purpose of determining the applicability of the foregoing Exclusions, other than exclusions 3(b), 3(c), and 3(d): (i) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured**; and (ii) only facts pertaining to and knowledge possessed by any past, present or future chief executive officer, chief operating officer or chief financial officer (or equivalent positions) of the **Company** shall be imputed to the **Company**.

## 4.   PUNITIVE DAMAGES SUBLIMIT OF LIABILITY

The following provisions shall apply in addition to the provisions of Clause 4. of the **General Terms and Conditions**:

If Item 7(c) of the Declarations indicates that the **EPL Punitive Damages Sublimit of Liability** was elected, then the **EPL Punitive Damages Sublimit of Liability** is the limit of the **Insurer's** liability for punitive, exemplary and multiple damages under this **EPL Coverage Section**. If Item 7(c) of the Declarations indicates that a **Shared Punitive Damages Sublimit of Liability** was elected, then the **Shared Punitive Damages Sublimit of Liability** is the limit of the **Insurer's** liability under both this **EPL Coverage Section** and the **D&O Coverage Section** combined for punitive, exemplary and multiple damages. If Item 7(c) of the Declarations indicates that no sublimit of liability is applicable to punitive damages, then neither the **EPL Punitive Damages Sublimit of Liability** nor the **Shared Punitive Damages Sublimit of Liability** is applicable to punitive, exemplary and multiple damages under this **EPL Coverage Section**. The **EPL Punitive Damages Sublimit of Liability** and the **Shared Punitive Damages Sublimit of Liability**, if applicable, shall be a part of and not in addition to **Policy Aggregate Limit of Liability** stated in the Item 7(a) of the Declarations and any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **EPL Coverage Section** as set forth in Item 3 of the Declarations.

EPL COVERAGE SECTION
© All rights reserved.

WESI000027

**5.  RETENTION CLAUSE**

The following provision shall apply in addition to the provisions of Clause 5. RETENTION of the **General Terms and Conditions**:

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount stated in Item 3 of the Declarations for this **EPL Coverage Section**, such Retention amount to be borne by the **Company** or the **Insureds** and shall remain uninsured, with regard to all: (1) **Indemnifiable Loss**; or (2) **Loss** of the **Company**. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**.

It is further understood and agreed that in the event the **Company** is unable to pay an applicable Retention amount due to **Financial Insolvency**, then the **Insurer** shall commence advancing **Defense Costs** and pay any other covered **Loss** within the Retention; provided, however, that the **Insurer** shall be entitled to recover the amount of **Defense Costs** and any other **Loss** advanced within the Retention from the **Company** pursuant to Clause 10. SUBROGATION of the **General Terms and Conditions**.

**6.  DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of the **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Entity** on behalf of all **Insureds** to the **Insurer** pursuant to the notice provisions of Clause 12 of the **General Terms and Conditions**. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against the **Insureds** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of the **Insureds** or the **Insurer** with respect to such **Claim**. Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent. The assumption of the defense of the **Claim** shall be effective upon written confirmation sent thereof by the **Insurer** to the **Named Entity**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of any **Claim**, subject to the provisions of this Clause 6; provided, however, the **Insurer** shall not be obligated to defend such **Claim** after the **Policy Aggregate Limit of Liability**, **Separate Limit of Liability** or **Shared Limit of Liability**, if any, has been exhausted, or after an **Insured's** rejection of (or failure or refusal to accept within the time prescribed in this Clause 6, below) a **Settlement Opportunity**.

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 6, the **Insurer** nevertheless shall advance, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds** or the **Company**, severally according to their respective interests, in the event and to the extent that the **Insureds** or the **Company** shall not be entitled under the terms and conditions of this **EPL Coverage Section** to payment of such **Loss**.

The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer**, in writing, shall be recoverable as **Loss** under the terms of this **EPL Coverage Section**. The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer**, when it has not assumed the defense of a **Claim** pursuant to this Clause 6, shall be entitled to fully and effectively associate in the defense and negotiation of any settlement of any **Claim**, and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Loss** is not covered under the terms of this **EPL Coverage Section**.

The **Insurer** shall have the right to effectively associate with the **Company** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. The **Company** and the **Insureds** shall give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require.

EPL COVERAGE SECTION
© All rights reserved.

WESI000028

In the event the **Insureds** do not consent to the first **Settlement Opportunity** within thirty (30) days of the date the **Insureds** are first made aware of the **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then, subject to the **Policy Aggregate Limit of Liability** and **Separate Limit of Liability** or **Shared Limit of Liability**, if any, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity Amount**"), plus (2) eighty percent (80%) of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining twenty percent (20%) of such **Loss** excess of the **Settlement Opportunity Amount** shall be carried by the **Company** and the **Insureds** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the **Settlement Opportunity Amount** exceeds the applicable Retention amount stated in Item 3 of the Declarations.

## 7. PRE-AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED EMPLOYMENT PRACTICES CLAIMS

This Clause applies only to **Designated Employment Practices Claims**.

Affixed as Appendix B hereto and made a part of this **EPL Coverage Section** is a list of Panel Counsel law firms ("**Panel Counsel Firms**") from which a selection of legal counsel shall be made to conduct the defense of any **Designated Employment Practices Claim** against an **Insured** pursuant to the terms set forth in this Clause.

In the event the **Insurer** has assumed the defense pursuant to Clause 6 of this **EPL Coverage Section**, then the **Insurer** shall select a **Panel Counsel Firm** to defend the **Insureds**. In the event the **Insureds** are already defending a **Designated Employment Practices Claim**, then the **Insureds** shall select a **Panel Counsel Firm** to defend the **Insureds**.

The selection of the **Panel Counsel Firm**, whether done by the **Insurer** or the **Insureds**, shall be from the list of **Panel Counsel Firms** designated for the type of **Claim** and be from the jurisdiction in which the **Designated Employment Practices Claim** is brought. In the event a **Designated Employment Practices Claim** is brought in a jurisdiction not included on the appropriate list, the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the **Designated Employment Practices Claim** is maintained or where the corporate headquarters or state of formation of the **Named Entity** is located. In such instance, however, the **Insurer** shall, at the written request of the **Named Entity**, assign a non-**Panel Counsel Firm** of the **Insurer's** choice in the jurisdiction in which the **Designated Employment Practices Claim** is brought to function as "local counsel" on the **Designated Employment Practices Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Designated Employment Practices Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select (in the case of the **Insured** defending the **Claim**), or cause the **Insurer** to select (in the case of the **Insurer** defending the **Claim**), a **Panel Counsel Firm** different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made during the **Policy Period** to the **Panel Counsel Firms** listed in Appendix B without the consent of the **Named Entity**.

## 8. REPRESENTATIONS AND SEVERABILITY

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application** for this **EPL Coverage Section** as being accurate and complete. All such statements and representations are the basis of this **EPL Coverage Section** and are to be considered as incorporated into this **EPL Coverage Section**.

The **Insureds** agree that in the event that the particulars and statements contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under the policy, then this **EPL Coverage Section** shall be void *ab initio* as to any **Insured**

95728 (9/07)                                                    7

EPL COVERAGE SECTION
© All rights reserved.

WESI000029

who knew as of the inception date of the **Policy Period** of the facts that were not accurately and completely disclosed in the **Application** (whether or not such **Insured** knew that such facts were not accurately and completely disclosed in the **Application**). Solely for purposes of determining whether this **EPL Coverage Section** shall be void *ab initio* as to an **Insured**, such aforesaid knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

[The balance of this page is intentionally left blank.]

EPL COVERAGE SECTION
© All rights reserved.

WESI000030

**AIG**

### National Union Fire Insurance Company of Pittsburgh, PA

## PrivateEdge Plus

A capital stock company

### Directors, Officers and Private Company Liability Insurance
### ("D&O COVERAGE SECTION")

**Notice**: Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to this D&O Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this D&O Coverage Section.

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, which forms a part of this policy, the **Insurer** agrees as follows:

**1. INSURING AGREEMENTS**

With respect to Coverage A, B and D and the Defense Provisions, solely with respect to **Claims** first made during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this **D&O Coverage Section** affords the following coverage:

**COVERAGE A: INDIVIDUAL INSURED INSURANCE**

This **D&O Coverage Section** shall pay the **Loss** of an **Individual Insured** of the **Company** arising from a **Claim** made against such **Individual Insured** for any **Wrongful Act** of such **Individual Insured**, except when and to the extent that the **Company** has indemnified such **Individual Insured**. The **Insurer** shall, in accordance with and subject to Clause 7 of this **D&O Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

**COVERAGE B: PRIVATE COMPANY INSURANCE**

This **D&O Coverage Section** shall pay the **Loss** of the **Company** arising from a:

(i)   **Claim** made against the **Company**, or

(ii)  **Claim** made against an **Individual Insured**,

for any **Wrongful Act**, but, in the case of Coverage B(ii) above, only when and to the extent that the **Company** has indemnified the **Individual Insured** for such **Loss**. The **Insurer** shall, in accordance with and subject to Clause 7 of this **D&O Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

**COVERAGE C: CRISISFUND ®INSURANCE**

This **D&O Coverage Section** shall pay the **Crisis Management Loss** of a **Company** solely with respect to a **Crisis Management Event** occurring during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, up to the amount of the **Crisis Management Fund**; provided that payment of any **Crisis Management Loss** under this **D&O Coverage Section** shall not waive any of the **Insurer's** rights under this **D&O Coverage Section** or at law. This Coverage C shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis Management Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the **Claim** being first made.

**COVERAGE D: COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND**

This **D&O Coverage Section** shall pay the **Costs of Investigation** of the **Company** arising from a **Company Shareholder Derivative Investigation** in response to a **Derivative Demand**, up to the amount set forth in Item 7(d) of the Declarations. Payment of **Costs of Investigation** to a **Company** shall be made in accordance with and subject to Clause 8 of this **D&O Coverage Section**.

© All rights reserved.

WESI000031

**DEFENSE PROVISIONS**

The **Insurer** does not assume any duty to defend; provided, however, the **Named Entity** may at its sole option tender to the **Insurer** the defense of a **Claim** for which coverage is provided by this **D&O Coverage Section** in accordance with and subject to Clause 7 of this **D&O Coverage Section**. Regardless of whether the defense is so tendered, the **Insurer** shall advance **Defense Costs** of such **Claim**, excess of the applicable Retention amount, prior to its final disposition. Selection of counsel to defend a **Securities Claim** shall be made in accordance with Clause 9 of this **D&O Coverage Section**.

With respect to Coverage D above, it shall be the duty of the **Company** and not the duty of the **Insurer** to conduct, investigate and evaluate any **Company Shareholder Derivative Investigation** against its own **Executives**; provided, however, that the **Insurer** shall be entitled to effectively associate in the investigation and evaluation of, and the negotiation of any settlement of, any such **Company Shareholder Derivative Investigation**.

2. **DEFINITIONS**

   (a) **"Affiliate"** means: (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

   (b) **"Claim"** means:

      (i)  a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations);

      (ii) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

         (1) service of a complaint or similar pleading;

         (2) return of an indictment, information or similar document (in the case of a criminal proceeding); or

         (3) receipt or filing of a notice of charges; or

      (iii) a civil, criminal, administrative or regulatory investigation of an **Individual Insured**:

         (1) once such **Individual Insured** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition 2(b)(ii) may be commenced; or

         (2) in the case of an investigation by the Securities Exchange Commission ("**SEC**") or a similar state or foreign government authority, after:

            (a) the service of a subpoena upon such **Individual Insured**; or

            (b) the **Individual Insured** is identified in a written "Wells" or other notice from the **SEC** or a similar state or foreign government authority that describes actual or alleged violations of laws by such **Individual Insured**.

   The term "**Claim**" shall also include any **Securities Claim** and any **Derivative Demand**.

   (c) **"Cleanup Costs"** means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

   (d) **"Company Shareholder Derivative Investigation"** means the investigation by the **Company** or, on behalf of the **Company** by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body), as to whether or not the **Company** should bring the civil proceeding demanded in a **Derivative Demand**.

D&O COVERAGE SECTION
© All rights reserved.

WESI000032

(e) **"Costs of Investigation"** means the reasonable and necessary costs, charges, fees and expenses consented to by the **Insurer** (including but not limited to attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any compensation or fees of any **Individual Insured**) incurred by the **Company** or its board of directors (or any equivalent management body), or any committee of the board of directors (or any equivalent management body), solely in connection with a **Company Shareholder Derivative Investigation**.

(f) **"Crisis Management Event"** means **Crisis Management Event**, as that term is defined in Appendix D attached to this policy.

(g) **"Crisis Management Fund"** means the dollar amount set forth in Item 7(b) of the Declarations.

(h) **"Crisis Management Loss"** means **Crisis Management Loss**, as that term is defined in Appendix D attached to this policy.

(i) **"Crisis Management Services"** means **Crisis Management Services**, as that term is defined in Appendix D attached to this policy.

(j) **"D&O Punitive Damages Sublimit of Liability"** means the **D&O Punitive Damages Sublimit of Liability**, if any, stated in Item 7(c) of the Declarations.

(k) **"Defense Costs"** means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding compensation of any **Individual Insured**. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

(l) **"Derivative Demand"** means a written demand by shareholders upon the board of directors (or equivalent management body) of a **Company** requesting that it file, on behalf of the **Company**, a civil proceeding in a court of law against any **Executive** of the **Company** for a **Wrongful Act** of such **Executive** in order to obtain relief from damages arising out of such **Wrongful Acts**.

(m) **"Employee"** means any past, present or future employee, other than an **Executive** of a **Company**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, volunteer, seasonal and temporary employee. An individual who is leased to the **Company** shall also be an **Employee**, but only if the **Company** provides indemnification to such leased individual in the same manner as is provided to the **Company's** employees. Any other individual who is contracted to perform work for the **Company**, or who is an independent contractor for the **Company** shall also be an **Employee**, but only if the **Company** provides indemnification to such individual in the same manner as that provided to the **Company's** employees, pursuant to a written contract.

(n) **"Executive"** means:

(i) any past, present or future duly elected or appointed director, officer, management committee member or member of the Board of Managers;

(ii) any past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in Definition (n)(i); or

(iii) any past, present or future General Counsel and Risk Manager (or equivalent position) of the **Named Entity.**

(o) **"Financial Insolvency"** means the: (i) appointment by any government official, agency, commission, court or other governmental authority of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate an insolvent **Company**; (ii) the filing of a petition under the bankruptcy laws of the United States of America; or (iii), as to both (i) or (ii), any equivalent events outside the United States of America.

3

D&O COVERAGE SECTION
© All rights reserved.

WESI000033

(p) **"Foreign Jurisdiction"** means any jurisdiction, other than the United States or any of its territories or possessions.

(q) **"Foreign Policy"** means the **Insurer's** or any other company of AIG Property Casualty Inc.'s (**"AIG"**) standard executive managerial liability policy (including all mandatory endorsements, if any) approved by **AIG** to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this **D&O Coverage Section**. If more than one such policy exists, then **"Foreign Policy"** means the standard basic policy form typically offered for sale in that **Foreign Jurisdiction** for comparable risks by the **Insurer** or any other company of **AIG**. The term **"Foreign Policy"** shall not include any partnership managerial, pension trust or professional liability coverage.

(r) **"Indemnifiable Loss"** means **Loss** for which a **Company** has indemnified or is permitted or required to indemnify an **Individual Insured** pursuant to law, contract or the charter, bylaws, operating agreement or similar documents of a **Company**.

(s) **"Individual Insured** " means any:

   (i) **Executive** of a **Company**;

   (ii) **Employee** of a **Company**; or

   (iii) **Outside Entity Executive**.

(t) **"Insured"** means:

   (i) an **Individual Insured** ; or

   (ii) a **Company**.

(u) **"Loss"** means damages, judgments, settlements, pre-judgment and post-judgment interest, **Crisis Management Loss** and **Defense Costs**; provided, however, **Loss** shall not include: (i) civil or criminal fines or penalties imposed by law; (ii) taxes; (iii) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; or (iv) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. **Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (u)(i) through (u)(iv) above of this Definition, subject to the other terms, conditions and exclusions of this policy.

**Loss** shall specifically include, subject to the other terms, conditions and exclusions of this **D&O Coverage Section**, including, but not limited to, exclusions 4(a), 4(b) and 4(c) of this **D&O Coverage Section**, punitive, exemplary and multiple damages. As more fully set forth in Clause 5. "LIMIT OF LIABILITY" of this **D&O Coverage Section**, coverage under this **D&O Coverage Section** for punitive, exemplary and multiple damages is subject to any applicable **D&O Punitive Damages Sublimit of Liability** or **Shared Punitive Damages Sublimit of Liability**. The enforceability of the first sentence of this paragraph shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.

(v) **"Non-Indemnifiable Loss"** means **Loss** for which a **Company** has neither indemnified nor is permitted or required to indemnify an **Individual Insured** pursuant to law or contract or the charter, bylaws, operating agreement or similar document of a **Company**.

(w) **"Outside Entity"** means:

   (i) any not-for-profit organization; or

   (ii) any other corporation, partnership, joint venture or other organization listed as an **"Outside Entity"** in an endorsement to this **D&O Coverage Section**.

(x) **"Outside Entity Executive"** means any: (i) **Executive** of the **Company** serving in the capacity as director, officer, trustee or governor of an **Outside Entity**, but only if such service is at the specific request or direction of the **Company**; or (ii) any other person listed as an **Outside Entity Executive** in an endorsement to this **D&O Coverage Section**. It is understood and agreed that, in the event of a disagreement between the **Company** and an individual as to whether such individual was acting "at the specific request or direction of the **Company**," this **D&O Coverage Section** shall abide by the

95727 (9/07)

4

WESI000034

determination of the **Company** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** is first reported to the **Insurer** pursuant to the terms of the policy. In the event no determination is made within such period, this **D&O Coverage Section** shall apply as if the **Company** determined that such **Individual Insured** was not acting at the **Company's** specific request or direction.

(y) **"Pollutants"** means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and **Waste**. **"Waste"** includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(z) **"Securities Claim"** means a **Claim** made against any **Insured**:

    (i) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:

        (1) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of a **Company**; or

        (2) brought by a security holder of a **Company** with respect to such security holder's interest in securities of such **Company**; or

    (ii) brought derivatively on the behalf of a **Company** by a security holder of such **Company**.

(aa) **"Shared Punitive Damages Sublimit of Liability"** means the **Shared Punitive Damages Sublimit of Liability**, if any, stated in Item 7(c) of the Declarations.

(bb) **"Third Party Violation"** means any actual or alleged harassment (including sexual harassment, whether "quid pro quo", hostile work environment or otherwise) or unlawful discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability), or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Individual Insured** or applicant for employment with the **Company** or an **Outside Entity**.

(cc) **"Wrongful Act"** means:

    (i) with respect to any **Executive** or **Employee** of a **Company**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Executive** or **Employee** in their respective capacities as such, or any matter claimed against such **Executive** or **Employee** of a **Company** solely by reason of his or her status as an **Executive** or **Employee** of a **Company**;

    (ii) with respect to a **Company**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by a **Company**; or

    (iii) with respect to service on an **Outside Entity**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by an **Outside Entity Executive** in his or her capacity as such.

## 3. WORLDWIDE EXTENSION

For **Claims** made and maintained in a **Foreign Jurisdiction** for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claims** the provisions of the **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to such **Insured** in the **Foreign Jurisdiction**; provided however, that this paragraph shall apply only to provisions more favorable by virtue of insuring clauses, extensions, definitions, exclusions, pre-authorized securities or other defense counsel, discovery or extended reporting period, notice and authority, dispute resolution process or order of payments provisions, if any, of the **Foreign Policy** when compared to the same or similar clauses of this **D&O Coverage Section**. This paragraph shall not apply to excess provisions or policy provisions that address non-renewal, duty to defend, defense within or without limits, taxes, claims made and reported provisions or any other provision of this policy intended to govern coverage worldwide.

© All rights reserved.

WESI000035

All premiums, limits, retentions, **Loss** and other amounts under this **D&O Coverage Section** are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this **D&O Coverage Section** (subject to the terms, conditions and limitations of this **D&O Coverage Section**) will be made either in such other currency (at the option of the **Insurer**  and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in <u>The Wall Street Journal</u> on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of <u>The Wall Street Journal</u>).

## 4. EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(a) arising out of, based upon or attributable to the gaining of any profit or advantage to which any final adjudication establishes the **Insured** was not legally entitled;

(b) arising out of, based upon or attributable to: (i) the purchase or sale by an **Insured** of securities of the **Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law if any final adjudication establishes that such Section 16(b) violation occurred; or (ii) the payment to any **Insured** of any remuneration without the previous approval of the stockholders of the **Company**, if any final adjudication establishes such payment was illegal;

(c) arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent or dishonest act, or any willful violation of any statute, rule or law, if any final adjudication establishes that such deliberate criminal, deliberate fraudulent or dishonest act or willful violation of statute, rule or law was committed;

(d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Act(s)** alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this **D&O Coverage Section** is a renewal or replacement of in whole or in part or which it may succeed in time;

(e) alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (i) litigation; or (ii) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging any **Wrongful Act** which is the same or **Related Wrongful Act(s)** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f) with respect to an **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if any **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this **D&O Coverage Section**.

(g) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Individual Insured** serving in any capacity, other than as an **Executive** or **Employee** of a **Company**, or as an **Outside Entity Executive** of an **Outside Entity**;

(h) for any **Wrongful Act** arising out of an **Individual Insured** serving in a capacity as an **Outside Entity Executive** of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, the **Company**, or any **Executive** of the **Outside Entity** or the **Company**; provided, however, this exclusion shall not apply to:

(i) any **Claim** brought by an **Executive** of an **Outside Entity** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** that is covered by this **D&O Coverage Section**;

(ii) in any bankruptcy proceeding by or against an **Outside Entity**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Outside Entity**;

95727 (9/07)                                      6                          **D&O COVERAGE SECTION**
© All rights reserved.

WESI000036

(iii) any **Claim** brought by any past **Executive** of an **Outside Entity** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for an **Outside Entity** for at least four (4) years prior to such **Claim** being first made against any person; or

(iv) any **Claim** brought by an **Executive** of an **Outside Entity** formed and operating in a **Foreign Jurisdiction** against any **Outside Entity Executive** of such **Outside Entity**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(i) which is brought by or on behalf of a **Company** or any **Individual Insured**, other than an **Employee** of a **Company**; or which is brought by any security holder of the **Company**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Company** or any **Executive** of a **Company**; provided, however, this exclusion shall not apply to:

(i) any **Claim** brought by an **Individual Insured** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** which is covered by this policy;

(ii) in any bankruptcy proceeding by or against a **Company**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Company**;

(iii) any **Claim** brought by any past **Executive** of a **Company** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for a **Company** for at least four (4) years prior to such **Claim** being first made against any person; or

(iv) any **Claim** brought by an **Executive** of a **Company** formed and operating in a **Foreign Jurisdiction** against such **Company** or any **Executive** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(j) alleging, arising out of, based upon or attributable to any public offering of securities by a **Company**, an **Outside Entity** or an **Affiliate** or alleging a purchase or sale of such securities subsequent to such public offering; provided, however, this exclusion will not apply to:

(i) any purchase or sale of securities exempted pursuant to Section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; provided, however, the **Named Entity** shall give the **Insurer** written notice of any public offering exempted pursuant to Section 3(b), together with full particulars and as soon as practicable, but not later than thirty (30) days after the effective date of the public offering;

(ii) any public offering of securities (other than a public offering described in subparagraph 4(j)(i) above), as well as any purchase or sale of such securities subsequent to such public offering, in the event that within thirty (30) days prior to the effective time of such public offering: (1) the **Named Entity** shall give the **Insurer** written notice of such public offering together with full particulars and underwriting information required thereto; and (2) the **Named Entity** accepts such terms, conditions and additional premium required by the **Insurer** for such coverage. Such coverage is also subject to the **Named Entity** paying when due any such additional premium. In the event the **Company** gives written notice with full particulars and underwriting information pursuant to subpart 4(j)(ii)(1) above, then the **Insurer** must offer a quote for coverage under this paragraph; or

D&O COVERAGE SECTION
© All rights reserved.

WESI000037

(iii) any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the **Insured's** preparations to commence an initial public offering (**"IPO"**) and which occurred at any time prior to 12:01 a.m. on the date the initial public offering commences (**"IPO Effective Time"**), including any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the road show; provided, however that the coverage otherwise afforded under this subparagraph (iii) shall be deemed to be void *ab initio* effective the **IPO Effective Time**; provided further, however, that coverage shall not be deemed void *ab initio* if (1) the **Claim** is first made and reported pursuant to Clause 6(a) of the **General Terms and Conditions** prior to the **IPO Effective Time**, and (2) a public company D&O policy is not applicable to such **Claim**;

(k) alleging, arising out of, based upon or attributable to the purchase by a **Company** of securities of a **"Publicly Traded Entity"** in a transaction which resulted, or would result, in such entity becoming an **Affiliate** or a **Subsidiary** of a **Company**; provided, however, this exclusion shall not apply in the event that within thirty (30) days prior to it becoming an **Affiliate** or **Subsidiary**, the **Named Entity** gives written notice of the transaction to the **Insurer** together with full particulars and underwriting information required and agrees to any additional premium or amendment of the provisions of this **D&O Coverage Section** required by the **Insurer** relating to the transaction. Further, coverage as shall be afforded to the transaction is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to the transaction. An entity is a **Publicly Traded Entity** if any securities of such entity have previously been subject to a public offering;

(l) for bodily injury, sickness, disease or death of any person, or damage to, loss of use of or destruction of any tangible property; provided, however, this exclusion shall not apply to **Securities Claims**;

(m) for emotional distress or mental anguish, or for injury from libel or slander, or defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to any **Securities Claim**;

(n) for: (i) any actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, however, this exclusion shall not apply to:

    (1) **Non-Indemnifiable Loss**, other than **Non-Indemnifiable Loss** constituting **Cleanup Costs**; or

    (2) **Loss** in connection with a **Securities Claim**, other than **Loss** constituting **Clean-up Costs**;

(o) for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law;

(p) alleging, arising out of, based upon or attributable to the ownership, management, maintenance or control by the **Company** of any captive insurance company or entity, including, but not limited, to any **Claim** alleging the insolvency or bankruptcy of the **Named Entity** as a result of such ownership, operation, management or control;

(q) alleging, arising out of, based upon, or attributable to the employment of any individual or any employment practice, including, but not limited to, wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment-related claim;

(r) alleging, arising out of, based upon, or attributable to a **Third Party Violation**; provided, however, this exclusion shall not apply to a **Securities Claim**;

(s) alleging, arising out of, based upon, or attributable to:

    (i) payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time domestic or foreign governmental or armed services officials, agents, representatives, employees or any members of their family or any entity with which they are affiliated;

D&O COVERAGE SECTION
© All rights reserved.

WESI000038

(ii)  payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time officials, directors, agents, partners, representatives, members, principal shareholders, owners or employees, or affiliates (as that term is defined in the Securities Exchange Act of 1934, including any of their officers, directors, agents, owners, partners, representatives, principal shareholders or employees) of any customers of the **Company** or any members of their family or any entity with which they are affiliated; or

(iii)  political contributions, whether domestic or foreign; or

(t)  with respect to Coverage B(i) only:

(i)  for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights;

(ii)  for any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

(iii)  alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Company** or any other **Insured** under any express contract or agreement; provided, however, this exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement; or

(iv)  seeking fines or penalties or non-monetary relief against the **Company**; provided, however, that this exclusion shall not apply to any **Securities Claim**.

For the purpose of determining the applicability of the foregoing Exclusions, other than exclusions 4(d), 4(e), 4(h), 4(i) and 4(t): (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured**; and (2) only facts pertaining to and knowledge possessed by any past, present or future chief executive officer, chief operating officer or chief financial officer (or equivalent positions) of the **Company** shall be imputed to the **Company**.

## 5.  LIMIT OF LIABILITY

The following provisions shall apply in addition to the provisions of Clause 4. of the **General Terms and Conditions**:

### CRISISFUND® INSURANCE

The maximum limit of the **Insurer's** liability for all **Crisis Management Loss** arising from all **Crisis Management Events** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 7(b) of the Declarations as the **Crisis Management Fund**. This **Crisis Management Fund** shall be the maximum limit of the **Insurer** under this **D&O Coverage Section** for **Crisis Management Loss**, regardless of the number of **Crisis Management Events** occurring during the **Policy Period**; provided, however, the **Crisis Management Fund** shall be part of and not in addition to the **Policy Aggregate Limit of Liability** stated in the Item 7(a) of the Declarations and any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **D&O Coverage Section** as set forth in Item 3 of the Declarations.

### COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND

The maximum limit of the **Insurer's** liability for **Costs of Investigation** arising from all **Company Shareholder Derivative Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 7(d) of the Declarations (the "**Costs of Investigation Sublimit of Liability**"). The **Costs of Investigation Sublimit of Liability** is the maximum limit of the **Insurer** under this **D&O Coverage Section** for **Costs of Investigation** regardless of the number of such **Company Shareholder Derivative Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), or the number of **Executives** subject to such **Company Shareholder Derivative Investigations**; provided, however, that the **Costs of Investigation Sublimit of Liability** shall be part of and not in addition to the **Policy Aggregate Limit of Liability** set forth in Item 7(a) of the Declarations and any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **D&O Coverage Section** as set forth in Item 3 of the Declarations.

D&O COVERAGE SECTION
© All rights reserved.

WESI000039

**PUNITIVE DAMAGES SUBLIMIT OF LIABILITY**

If Item 7(c) of the Declarations indicates that the **D&O Punitive Damages Sublimit of Liability** was elected, then the **D&O Punitive Damages Sublimit of Liability** is the limit of the **Insurer's** liability for punitive, exemplary and multiple damages under this **D&O Coverage Section**. If Item 7(c) of the Declarations indicates that a **Shared Punitive Damages Sublimit of Liability** was elected, then the **Shared Punitive Damages Sublimit of Liability** is the limit of the **Insurer's** liability under both this **D&O Coverage Section** and the **EPL Coverage Section** combined for punitive, exemplary and multiple damages. If Item 7(c) of the Declarations indicates that no sublimit of liability is applicable to punitive damages, then neither the **D&O Punitive Damages Sublimit of Liability** nor the **Shared Punitive Damages Sublimit of Liability** is applicable to punitive, exemplary and multiple damages under this **D&O Coverage Section**. The **D&O Punitive Damages Sublimit of Liability** and the **Shared Punitive Damages Sublimit of Liability**, if applicable, shall be a part of and not in addition to **Policy Aggregate Limit of Liability** stated in the Item 7(a) of the Declarations and any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **D&O Coverage Section** as set forth in Item 3 of the Declarations.

**6. RETENTION CLAUSE**

The following provision shall apply in addition to the provisions of Clause 5. RETENTION of the **General Terms and Conditions**:

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount stated in Item 3 of the Declarations for this **D&O Coverage Section**, such Retention amount to be borne by the **Company** and/or the **Insureds** and shall remain uninsured, with regard to: (i) all **Indemnifiable Loss**; and (ii) **Loss** of the **Company**. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Act(s)**.

It is further understood and agreed that in the event the **Company** is unable to pay an applicable Retention amount due to **Financial Insolvency**, then the **Insurer** shall commence advancing **Loss** within the Retention; provided, however, that the **Insurer** shall be entitled to recover the amount of **Loss** advanced within the Retention from the **Company** pursuant to Clause 10. SUBROGATION of the **General Terms and Conditions**.

No Retention amount is applicable to **Crisis Management Loss** or **Non-Indemnifiable Loss**.

**7. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of the **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Entity** on behalf of all **Insureds** to the **Insurer** pursuant to the notice provisions of Clause 12 of the **General Terms and Conditions**. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against an **Insured** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the **Insurer** with respect to such **Claim**. Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent. The assumption of the defense of the **Claim** shall be effective upon written confirmation sent thereof by the **Insurer** to the **Named Entity**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of any **Claim**, subject to the provisions of this Clause 7; provided, however, the **Insurer** shall not be obligated to defend such **Claim** after the **Policy Aggregate Limit of Liability** or any applicable **Separate Limit of Liability** or **Shared Limit of Liability** have been exhausted.

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 7, the **Insurer** nevertheless shall advance, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or the **Company**, severally according to their respective interests, in the event and to the extent that any such **Insured** or the **Company** shall not be entitled under the terms and conditions of this **D&O Coverage Section**  to payment of such **Loss**.

D&O COVERAGE SECTION
© All rights reserved.

WESI000040

The **Insurer** shall have the right to fully and effectively associate with each and every **Insured** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Insured** agrees to provide such information as the **Insurer** may reasonably require and to give the **Insurer** full cooperation, including:

(a)  cooperating with and helping the **Insurer**:

    (i)  in making settlements, subject to subparagraph 7(b) below;

    (ii)  in enforcing any legal rights the **Insured** may have against anyone who may be liable to the **Insured**;

    (iii)  by attending depositions, hearings and trials; and

    (iv)  by securing and giving evidence, and obtaining the attendance of witnesses; and

(b)  taking such actions which, in such **Insured's** judgment, are deemed necessary and practicable to prevent or limit **Loss** arising from any **Wrongful Act**.

Additionally, the **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. If the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of the **Insurer**, then the **Insurer** shall not have any obligation to pay **Loss** with respect to such **Claim**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this **D&O Coverage Section**. The **Insurer** shall not unreasonably withhold any consent required under this **D&O Coverage Section**, provided that the **Insurer**, when it has not assumed the defense of a **Claim** pursuant to this Clause 7, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim**, and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Loss** is not covered under the terms of this **D&O Coverage Section**. In addition, the **Insured** shall not take any action, without the **Insurer's** written consent, which prejudices the **Insurer's** rights under this **D&O Coverage Section**.

This Clause 7 shall not be applicable to **Crisis Management Loss**.

## 8.  COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND COVERAGE PROVISION

It is understood and agreed that the **Company** shall be entitled to payment under Coverage D of this **D&O Coverage Section** for reimbursement of its covered **Costs of Investigation** ninety (90) days after: (i) the **Company** has made its final decision not to bring a civil proceeding in a court of law against any of its **Executives**, and (ii) such decision has been communicated to the shareholders who made the **Derivative Demand** upon the **Company**. However, such payment shall be subject to an undertaking by the **Company**, in a form acceptable to the **Insurer**, that the **Company** shall return to the **Insurer** such payment in the event any **Company** or any shareholder of the **Company** brings a **Claim** alleging, arising out of, based upon or attributable to any **Wrongful Acts** which were the subject of the **Derivative Demand**.

Nothing in this **D&O Coverage Section**, including Coverage D, shall be construed to afford coverage under this **D&O Coverage Section** for any **Claim** brought by the **Company** against one or more of its own **Executives**, other than **Costs of Investigation** incurred in a covered **Company Shareholder Derivative Investigation**. Payment of any **Costs of Investigation** under this **D&O Coverage Section** shall not waive any of the **Insurer's** rights under this policy or at law.

## 9.  PRE-AUTHORIZED DEFENSE ATTORNEYS FOR SECURITIES CLAIMS

This Clause 9 applies only to **Securities Claims**.

Affixed as Appendix A hereto and made a part of this **D&O Coverage Section** is a list of Panel Counsel law firms ("**Panel Counsel Firms**") from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** against an **Insured** pursuant to the terms set forth in this Clause.

In the event the **Insurer** has assumed the defense pursuant to Clause 7. of this **D&O Coverage Section**, then the **Insurer** shall select a **Panel Counsel Firm** to defend the **Insureds**. In the event the **Insureds** are already defending a **Securities Claim**, then the **Insureds** shall select a Panel Counsel Firm to defend the **Insureds**.

D&O COVERAGE SECTION
© All rights reserved.

WESI000041

The selection of the **Panel Counsel Firm**, whether done by the **Insurer** or the **Insureds**, shall be from the list of **Panel Counsel Firms** designated for the type of **Claim** and be from the jurisdiction in which the **Securities Claim** is brought. In the event a **Securities Claim** is brought in a jurisdiction not included on the appropriate list, the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is maintained or where the corporate headquarters or state of formation of the **Named Entity** is located. In such instance, however, the **Insurer** shall, at the written request of the **Named Entity**, assign a non-Panel Counsel Firm of the **Insurer's** choice in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Securities Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Securities Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select (in the case of the **Insured** defending the **Claim**), or cause the **Insurer** to select (in the case of the **Insurer** defending the **Claim**), a **Panel Counsel Firm** different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made during the **Policy Period** to the **Panel Counsel Firms** listed in Appendix A without the consent of the **Named Entity**.

## 10. REPRESENTATIONS AND SEVERABILITY

In granting coverage under this **D&O Coverage Section**, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application** for this **D&O Coverage Section** as being accurate and complete. All such statements and representations are the basis of this **D&O Coverage Section** and are to be considered as incorporated into this **D&O Coverage Section**.

The **Insureds** agree that in the event that the particulars and statements contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under the policy, then this **D&O Coverage Section** shall be void *ab initio* as to any **Insured** who knew as of the inception date of the **Policy Period** of the facts that were not accurately and completely disclosed in the **Application** (whether or not **Insured** knew that such facts were not accurately and completely disclosed in the **Application**). Solely for purposes of determining whether this **D&O Coverage Section** shall be void *ab initio* as to an **Insured**, such aforesaid knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

## 11. ORDER OF PAYMENTS

In the event of **Loss** arising from any **Claim** for which payment is due under the provisions of this **D&O Coverage Section** but which **Loss**, in the aggregate, exceeds the remaining available **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **D&O Coverage Section**, then the **Insurer** shall:

(a) first pay such **Loss** for which coverage is provided under Coverage A of this **D&O Coverage Section**, then with respect to whatever remaining amount of the applicable **Separate Limit of Liability** or **Shared Limit of Liability** is available after payment of such **Loss**,

(b) then pay such **Loss** for which coverage is provided under Coverage B(ii) of this **D&O Coverage Section**, and

(c) then pay such **Loss** for which coverage is provided under Coverage B(i), C or D of this **D&O Coverage Section**.

In the event of **Loss** arising from a **Claim** for which payment is due under the provisions of this **D&O Coverage Section** (including those circumstances described in the first paragraph of this Clause 11), the **Insurer** shall at the written request of the **Named Entity**:

(a) first pay such **Loss** for which coverage is provided under Coverage A of this **D&O Coverage Section**, then

(b) either pay or hold payment for such **Loss** for which coverage is provided under Coverage B, C or D of this **D&O Coverage Section**.

D&O COVERAGE SECTION
© All rights reserved.

WESI000042

In the event that the **Insurer** withholds payment under Coverage B, C or D of this **D&O Coverage Section** pursuant to the above request, then the **Insurer** shall at any time in the future, at the request of the **Named Entity**, release such **Loss** payment to the **Company**, or make such **Loss** payment directly to the **Individual Insured** in the event of covered **Loss** under any **Claim** covered under this **D&O Coverage Section** pursuant to Coverage A of this **D&O Coverage Section**.

The **Financial Insolvency** of any **Company** or any **Individual Insured** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this **D&O Coverage Section** pursuant to this Clause 11.

D&O COVERAGE SECTION
℗ All rights reserved.

WESI000043

**APPENDIX   A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is accessible through our online Panel Counsel Directory at http://www.aig.com/us/panelcounseldirectory.  To access the applicable online Panel Counsel Directory, please go to the website and click on the "Directors & Officers (Securities Claims)" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

© All rights reserved.

WESI000044

**APPENDIX  B**
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is accessible through our online Panel Counsel Directory at http://www. aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website, click on the "Public and Private Companies (Employment Practices Liability)" link and then select the applicable Panel Counsel Directory, either the "4-97 Monoline/Public Companies" link or the "Private Edge" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Revised (6/08)                              © All rights reserved.

WESI000045

**APPENDIX D**
**CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION**

I. **DEFINITIONS**

(a) **"Crisis Management Event"** means one of the following events which, in the good faith opinion of the **Company**, did cause or is reasonably likely to cause a **Material Effect**:

1. Management Crisis:

   The death, incapacity or criminal indictment of any **Executive** of the **Company**, or any **Employee** on whom the **Company** maintains key person life insurance.

2. Employee Layoffs:

   The public announcement of layoffs of **Employees** of the Company.

3. Debt Default:

   The public announcement that the **Company** had defaulted or intends to default on its debt.

4. Bankruptcy:

   The public announcement that the **Company** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of the **Company**; or the imminence of bankruptcy proceedings, whether voluntary or involuntary.

5. Mass Tort:

   The public announcement or accusation that a **Company** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

6. Regulatory Crisis:

   The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against a **Company**.

The descriptions in the headings of the **Crisis Management Events** are solely for convenience and form no part of the terms and conditions of coverage.

A **Crisis Management Event** shall first commence when the **Company** or any of its **Executives** shall first become aware of the event during the **Policy Period** and shall conclude at the earliest of the time when the **Crisis Management Firm** advises the **Company** that the crisis no longer exists or when the **Crisis Management Fund** has been exhausted.

(b) **"Crisis Management Firm"** means any public relations firm, crisis management firm or law firm listed below in Section III of this Appendix D. Any **"Crisis Management Firm"** may be hired by the **Company** or its **Executives** or **Employees** to perform **Crisis Management Services** without further approval by the Insurer.

(c) **"Crisis Management Loss"** means the following amounts incurred during the pendency of or within 90 days prior to and in anticipation of, the **Crisis Management Event**, regardless of whether a **Claim** is ever made against an Insured arising from the **Crisis Management Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**:

(1) amounts for which the **Company** is legally liable for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Company** arising from a **Crisis Management Event**; and

WESI000046

(2) amounts for which the **Company** is legally liable for the reasonable and necessary printing, advertising, mailing of materials, or travel by **Executives**, **Employees** or agents of the **Company** or the **Crisis Management Firm**, in connection with the **Crisis Management Event**.

(d) **"Crisis Management Services"** means those services performed by a **Crisis Management Firm** in advising the **Company** or any of its **Executives** or **Employees** on minimizing potential harm to the **Company** arising from the **Crisis Management Event**, including but not limited to maintaining and restoring public confidence in the **Company**.

(e) **"Material Effect"** means the publication of unfavorable information regarding the **Company** which can reasonably be considered to lessen public confidence in the competence of the **Company**. Such publication must in occur in either:

(1) a daily newspaper of general circulation in the geographic area of the **Company**, or

(2) a radio or television news report on a **Company** received in the geographic area of the **Company**.

## II. EXCLUSIONS

The term **Crisis Management Event** shall not include any event relating to:

1. any pending or prior litigation as of the **Continuity Date** for the **D&O Coverage Section** indicated in Item 3 of the Declarations;

2. any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

3. the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**, or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; or

4. the hazardous properties of nuclear materials.

## III. PRE-APPROVED CRISIS FIRMS

For all Crisis Management Events, Crisis Management Firm(s) means any public relations firm listed in (1) - (8) below:

1. Abernathy MacGregor Group, Inc.
   501 Madison Avenue
   New York, New York 10022
   (212) 371-5999
   Contacts:  James T. MacGregor              (jtm@abmac.com)
              Rhoda Barnat                    (rb@abmac.com)

2. Burson-Marsteller
   230 Park Avenue South
   New York, New York 10003-1566
   (212) 614-5236
   Contact:   Michael Claes                  (Michael.Claes@bm.com)

3. Kekst and Company
   437 Madison Avenue
   New York, New York 10022
   (212) 521-4800
   Contacts:  Jim Fingeroth                  (Jim-Fingeroth@kekst.com)
              Lissa Perlman                  (Lissa-Perlman@kekst.com)

WESI000047

4.  Patton Boggs, LLP
    2550 M Street, N.W.
    Washington D.C. 20037
    (202) 457-6040
    Contact:    Thomas Boggs, Esq.                    (tboggs@pattonboggs.com)

5.  Reputation Partners, LLC
    105 West Adams Street, Suite 2220
    Chicago, IL 60603-6265
    (312) 222-9887
    Contacts:  Nick Kalm                              (nick@reputationpartners.com)
               Jane Devron                            (jane@reputationpartners.com)

6.  Robinson Lerer & Montgomery
    1345 Avenue of the Americas, 4th Floor
    New York, New York 10105
    646-805-2000
    Contact:    Michael Gross                         (mgross@rlmnet.com)

7.  Sard Verbinnen & Co.
    630 Third Avenue, 9th Floor
    New York, New York 10017
    (212) 687-8080
    Contacts:  George Sard                            (gsard@sardverb.com)
               Paul Verbinnen                         (pverbinnen@sardverb.com)

8.  Sitrick And Company
    1840 Century Park East, Suite 800
    Los Angeles, CA 90067
    (310) 788-2850
    Contact:    Michael Sitrick                       (mike sitrick@sitrick.com)

WESI000048

ENDORSEMENT# *1*

This endorsement, effective   *12:01 AM    November 30, 2015*      forms a part of
policy number   *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (ALL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A. alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not limited to:

(1) **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or on behalf of, the **Company**, or discharged or dispersed therefrom; or

(2) **Nuclear Material** contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the **Company**; or

(3) the furnishing by an **Insured** or the **Company** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**; or

(4) **Claims**  for damage or other injury to the **Company** or its shareholders which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**.

B. (1) which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or,

(2) with respect to which: (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

**"Hazardous Properties**" include radioactive, toxic or explosive properties.

**"Nuclear Facility"** means:

(a) any nuclear reactor;

(b) any equipment or device designed or used for

(1) separating the isotopes of uranium or plutonium,
(2) processing or utilizing spent fuel, or
(3) handling, processing or packaging wastes;

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material  if at any time the total amount of such material in the custody of the Insured at the

Ⓒ All rights reserved.
*END 001*

WESI000049

premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**"Nuclear Material"** means source material, special nuclear material or byproduct material.

**"Nuclear Reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**"Source Material,"** **"Special Nuclear Material,"** and **"Byproduct Material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Spent Fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

**"Waste"** means any waste material (1) containing by product material and (2) resulting from the operation by any person or organization of any **Nuclear Facility** included within the definition of nuclear facility under paragraph (a) or (b) thereof.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 001*

WESI000050

ENDORSEMENT# *2*

This endorsement, effective   *12:01 AM    November 30, 2015*        forms a part of
policy number   *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

**UTAH CANCELLATION/NONRENEWAL AMENDATORY ENDORSEMENT**

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance
company which issued this policy; and 2) "you", "your", "named Insured", "First Named Insured",
and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured,
or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or
entities afforded coverage under the policy.

It is hereby agreed that this insurance policy, if in effect for sixty (60) days or more, may not be
cancelled by the Insurer except for failure to pay a premium when due or for one of the following
reasons:

1.  Material misrepresentation;

2.  Substantial breaches of contractual duties, conditions or warranties;

3.  Attainment of the age specified as the terminal age for coverage (notice is necessary,
    see Notice Section below);

4.  With automobile insurance revocation or suspension of the driver's license of the
    named Insured or any other person who customarily drives the car;

5.  Substantial change in the risk assumed, unless the Insurer should reasonably have
    foreseen the change or contemplated the risk when entering into the contract.

Insurance policies in effect for less than sixty (60) days may be cancelled for any reason provided
the policy is not a renewal.

**NOTICE OF CANCELLATION/NONRENEWAL**

A.  Cancellation, except for nonpayment of premium, is effective thirty (30) days after the
    delivery or first class mailing of a written notice to the policyholder.

B.  Cancellation for nonpayment of premium is effective ten (10) days after delivery or first
    class mailing of the notice. This notice shall include a statement of the reason for
    cancellation.

C.  The above sections do not apply to any insurance contract that has not been previously
    renewed if the contract has been in effect less than sixty (60) days when the notice of
    cancellation is mailed or delivered. Cancellation in this circumstance is effective at least
    ten (10) days after delivery to the Insured of a written notice. If notice is sent by first
    class mail, postage prepaid, to the Insured at his last known address, delivery is
    considered accomplished after the passing of the statutory mailing time.

D.  If the Insurer elects not to renew this policy, the Insurer will give, mail or deliver
    written notice of nonrenewal to the first Named Insured at least thirty (30) days prior to
    the expiration date of the policy.

E.  However, the Insurer need not give, mail or deliver this notice if:

    i.   The Insurer or a company within the same insurance group has offered to issue a
         renewal policy; or

© All rights reserved.
*END 002*

69105 (11/97)

WESI000051

<u>ENDORSEMENT#</u> *2*    **(continued)**

    ii.    The first Named Insured has obtained, or has agreed in writing to obtain replacement coverage.

    iii.    The first Named Insured has failed to pay any renewal premium due, provided that notice of such premium is provided, no more than forty five (45) and not less than fourteen (14), days prior to the expiration of the policy.

F.    The Insurer shall provide to the first Named Insured at the mailing address shown on the policy written notice of premium increase, change in deductible, reduction in limits or coverage not less than thirty (30) days prior to the expiration date of the policy.

If the Insurer fails to provide such notice, the new terms or rates do not take effect until thirty (30) days after the notice is delivered or sent by first class mail. In which case the Insured may elect to cancel the renewal policy at anytime during the thirty (30) days.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS  REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 002*

WESI000052

ENDORSEMENT#  *3*

This endorsement, effective   *12:01 AM    November 30, 2015*          forms a part of
policy number   *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, PA*

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
### AMENDATORY ENDORSEMENT
### UTAH

This endorsement modifies insurance provided under the following:

PRIVATEEDGE PLUS <sup>SM</sup>

This policy is amended as follows:

1. The definition of **Loss** in the **DEFINITIONS** Clause of the **D&O**, **EPL**, **FLI**, **MPL** and **CCP Coverage Sections**, if purchased, is modified to the extent necessary to provide the following:

   To the extent coverage is provided for punitive, exemplary and multiple damages, such coverage shall no apply to **Claims** which are governed by the laws of the State of Utah.

2. Clause 10. **SUBROGATION** of the **General Terms and Conditions**, is modified to the extent necessary to provide the following:

   The **Insurer** shall be entitled to a recovery only after the **Insureds** have been made whole from a covered **Loss**.

3. If the **KRE Coverage Section** is purchased, Paragraph (p) Subrogation, of Clause 7. **GENERAL CONDITIONS** of the **KRE Coverage Section** is modified to the extent necessary to provide the following:

   The **Insurer** shall be entitled to a recovery only after the **Insured Person(s)** have been made whole from a covered **Loss**.

4. If the **KRE Coverage Section** is purchased, the first sentence of Paragraph (s) Choice of Law and Forum, of Clause 7. **GENERAL CONDITIONS** of the **KRE Coverage Section** is deleted in its entirety and replaced by the following:

   The construction, validity and performance of this **KRE Coverage Section** shall be governed by the laws of the state indicated

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 003*

95801 (9/07)                          Page 1 of 1

WESI000053

ENDORSEMENT# *4*

This endorsement, effective    *12:01 AM      November 30, 2015*      forms a part of
policy number    *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, PA*

### FLSA AND RELATED EXCLUSIONS AMENDED
### (D&O AND EPL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), the policy is amended as follows:

1.  Clause 4. EXCLUSIONS of the **D&O Coverage Section** (if purchased) is amended by deleting Exclusion (o) in its entirety.

2.  Clause 3. EXCLUSIONS of the **EPL Coverage Section** (if purchased) is amended by deleting Exclusions (g) and (h) in their entirety.

3.  In Clause 4. EXCLUSIONS of the **D&O Coverage Section** (if purchased) and Clause 3. EXCLUSIONS of the **EPL Coverage Section** (if purchased), the following exclusion is added at the end thereof:

    (FL-1)  for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law.

    It is acknowledged that **Claims** for violation(s) of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statutory law or common law," as such quoted language is used in the immediately-preceding paragraph, include, without limitation, any and all **Claims** which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

    (1)  the refusal, failure or inability of any **Insured(s)** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);

    (2)  improper deductions from pay taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**; or

    (3)  failure to provide or enforce legally required meal or rest break periods;

    Notwithstanding the foregoing, with respect to the **EPL Coverage Section**, this exclusion (FL-1) shall not apply to the extent that a **Claim** is for **Retaliation**.

© All rights reserved.
*END 004*

WESI000054

<u>**ENDORSEMENT#**</u>  *4*     (continued)

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 004*

WESI000055

**ENDORSEMENT# 5**

This endorsement, effective   *12:01 AM    November 30, 2015*   forms a part of
policy number   *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

**NOTICE OF CLAIM**
**(REPORTING BY E-MAIL)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.   *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of Claim Reporting under this policy, such notice may also be given in writing pursuant to the policy's other terms and conditions to the Insurer by email at the following email address: c-claim@aig.com

Your email must reference the policy number for this policy. The date of the Insurer's receipt of the emailed notice shall constitute the date of notice.

In addition to Notice of Claim Reporting via email, notice may also be given to the Insurer by mailing such notice to: AIG Property Casualty, Financial Lines Claims, P.O. Box 25947, Shawnee Mission, KS 66225 or faxing such notice to (866) 227-1750.

2.   *Definitions*: For this endorsement only, the following definitions shall apply:

(a)   "Insurer" means the "Insurer," "Underwriter" or "Company" or other name specifically ascribed in this policy as the insurance company or underwriter for this policy.

(b)   "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of loss" or other reference in the policy designated for reporting of claims, loss or occurrences or situations that may give rise or result in loss under this policy.

(c)   "Policy" means the policy, bond or other insurance product to which this endorsement is attached.

3.   This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage Section, if any, provided by this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 005*

99758 (8/08)                                      Page 1 of 1

This endorsement, effective   *12:01 AM   November 30, 2015*   forms a part of
policy number   *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ECONOMIC SANCTIONS ENDORSEMENT**

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 006*

WESI000057

ENDORSEMENT#  *7*

This endorsement, effective   *12:01 AM*   *November 30, 2015*   forms a part of
policy number   *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

### CONDUCT EXCLUSIONS AMENDED
### (FINAL ADJUDICATION OTHER THAN A COVERAGE
### PROCEEDING INITIATED BY INSURER)
### (D&O AND EPL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1.   In Clause 4. **EXCLUSIONS** of the **D&O Coverage Section**, paragraphs (a), (b) and (c) are deleted in their entirety and replaced with the following:

    (a) arising out of, based upon or attributable to the gaining of any profit or advantage to which any final adjudication in an action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under the policy establishes the **Insured** was not legally entitled;

    (b) arising out of, based upon or attributable to: (1) the purchase or sale by an **Insured** of securities of the **Company** within the meaning of Section16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law if any final adjudication in an action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under the policy establishes that such 16(b) violation occurred; or (2) the payment to any **Insured** of any remuneration without the previous approval of the stockholders of the **Company**, once any final adjudication in an action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under the policy establishes that such payment was illegal;

    (c) arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act, or dishonest act or any willful violation of any statute, rule or law, if any final adjudication in an action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under the policy establishes that such deliberate criminal or deliberate fraudulent act, or dishonest act or willful violation of any statute, rule or law, was committed;

2.   In Clause 3. **EXCLUSIONS** of the **EPL Coverage Section**, paragraph (a) is deleted in its entirety and replaced with the following:

    (a) arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act by the **Insured**, if any final adjudication in an action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under the policy establishes that such deliberate criminal or deliberate fraudulent act was committed;

© All rights reserved.
*END 007*

WESI000058

<u>ENDORSEMENT#</u>   *7*     (continued)

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 007*

WESI000059

**ENDORSEMENT#** *8*

This endorsement, effective *12:01 AM   November 30, 2015*   forms a part of policy number *27082029*
issued to *WASATCH PROPERTY MANAGEMENT, INC.*

by *National Union Fire Insurance Company of Pittsburgh, PA*

### TIE-IN OF LIMITS ENDORSEMENT
### (COMMON CLAIMS)
### (ALL COVERAGE SECTIONS)

In consideration of the premium charged it is hereby understood and agreed that with respect to any **Claim** (and/or all related **Claims**) in which at least one person/entity claimed against is an **Insured** under a **Coverage Section** of this policy and at least one person/entity claimed against is an **Insured** under the *PrivateEdge Plus Policy* Policy No. # *27063099* (or any renewal or replacement of such policy or any policy which succeeds it in time), issued by the **Insurer** to *Wasatch Premier Properties, LLC*, the combined aggregate limit of liability under both policies for all **Loss** arising from such **Claim(s)** combined shall be *$1,000,000*. This limitation shall apply even if both policies have been triggered due to a **Claim** made against the same person/entity but alleging **Wrongful Acts** both in his/her capacity as an **Insured** of *Wasatch Premier Properties, LLC* and as an **Insured** of the **Company**.

Nothing in this endorsement shall be construed to increase the **Insurer's Policy Aggregate Limit of Liability** or any applicable **Separate Limit of Liability** or **Shared Limit of Liability** under this policy as stated in the Declarations of this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 008*
Page 1 of 1

100689 (11/08)

WESI000060

ENDORSEMENT# *9*

This endorsement, effective *12:01 AM   November 30, 2015*   forms a part of policy number *27082029*
issued to *WASATCH PROPERTY MANAGEMENT, INC.*

by *National Union Fire Insurance Company of Pittsburgh, PA*

**SEVERABILITY OF THE APPLICATION ENDORSEMENT
(NON-RESCINDABLE - FULL INDIVIDUAL SEVERABILITY;
TOP 3 COMPANY POSITIONS IMPUTED TO COMPANY)
(D&O AND EPL COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1. Clause 10. **"REPRESENTATIONS AND SEVERABILITY"** of the **D&O Coverage Section** is deleted in its entirety and replaced with the following:

**10. REPRESENTATIONS AND SEVERABILITY**

In granting coverage under this **D&O Coverage Section**, it is agreed that the **Insurer** has relied upon the statements, warranties and representations contained in the **Application** for this **D&O Coverage Section** as being accurate and complete. All such statements and representations are the basis of this **D&O Coverage Section** and are to be considered as incorporated into this **D&O Coverage Section**.

With respect to any statements, warranties and representations contained in the **Application**, and solely with respect to the issue of whether coverage shall be afforded under this endorsement pursuant to subparagraphs (1), (2) and (3) below, no knowledge possessed by an **Individual Insured** shall be imputed to any other **Individual Insured**. However, in the event that any of the statements, warranties or representations is not accurately and completely disclosed in the **Application** and materially affects either the acceptance of the risk or the hazard assumed by the **Insurer**, no coverage shall be afforded for any **Claim** alleging, arising out of, based upon, attributable to or in consequence of the subject matter of any incomplete or inaccurate statements, warranties or representations under:

(1) Clause 1. **INSURING AGREEMENTS**, COVERAGE A, with respect to any **Individual Insured** who knew of such inaccurate or incomplete statements, warranties or representations;

(2) Clause 1. **INSURING AGREEMENTS**, Coverage B(ii), with respect to any **Company** to the extent it indemnifies any **Individual Insured** referenced in (1), above; and

(3) Clause 1. **INSURING AGREEMENTS**, Coverage B(i), with respect to any **Company** if any past or present chief executive officer, chief operating officer or chief financial officer of the **Company** knew of such inaccurate or incomplete statements, warranties or representations,

whether or not such **Individual Insured** knew that such facts were not accurately and completely disclosed in the **Application**.

The **Insurer** shall not be entitled under any circumstances to rescind coverage under the Policy with respect to any **Insured**, but such coverage will be subject to all other terms, conditions and exclusions of the policy.

© All rights reserved.
*END 009*

WESI000061

2.    Clause 8. **"REPRESENTATIONS AND SEVERABILITY"** of the **EPL Coverage Section** is deleted in its entirety and replaced with the following:

**8.    REPRESENTATIONS AND SEVERABILITY**

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application** for this **EPL Coverage Section** as being accurate and complete. All such statements and representations are the basis of this **EPL Coverage Section** and are to be considered as incorporated into this **EPL Coverage Section**.

With respect to any statements, warranties and representations contained in the Application, and solely with respect to the issue of whether coverage shall be afforded under this endorsement pursuant to subparagraphs (1), (2) and (3) below, no knowledge possessed by an **Individual Insured** shall be imputed to any other **Individual Insured**. However, in the event that any of the statements, warranties or representations is not accurately and completely disclosed in the **Application** and materially affects either the acceptance of the risk or the hazard assumed by the **Insurer**, no coverage shall be afforded for any **Claim** alleging, arising out of, based upon, attributable to or in consequence of subject matter of any incomplete or inaccurate statements, warranties or representations with respect to:

(1)    any **Individual Insured** who knew as of the inception date of the **Policy Period** the facts that were not accurately and completely disclosed in the application;

(2)    any **Company** to the extent it indemnifies any **Individual Insured** referenced in subparagraph (1) above; and

(3)    any **Company** if any past or present chief executive officer, chief operating officer or chief financial officer of the **Company** knew of such inaccurate or incomplete statements, warranties or representations,

whether or not such **Individual Insured** knew that such facts were not accurately and completely disclosed in the **Application**.

The **Insurer** shall not be entitled under any circumstances to rescind coverage under the Policy with respect to any **Insured**, but such coverage will be subject to all other terms, conditions and exclusions of the policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 009*

WESI000062

ENDORSEMENT# *10*

This endorsement, effective   *12:01 AM*   *November 30, 2015*   forms a part of
policy number   *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

**LIBERALIZATION ENDORSEMENT**
**(D&O AND EPL COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that, in the event that
the **Insurer** shall announce either: (1) a new private company insurance policy form that covers
Director and Officer Liability and/or Employment Practices Liability; or (2) an enhancement of
coverage endorsement to the **D&O Coverage Section** or **EPL Coverage Section**, which is to be made
available to all **Insureds** and for which no additional premium is required, then the **Named Entity**
shall have the right to such new policy or such new coverage enhancement endorsement; provided
that the **Named Entity** has requested in writing such new policy or such new coverage enhancement
and subject to all underwriting information or particulars as the **Insurer** may require for such new
policy or enhanced coverage.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 010*

101286 (3/09)                                    Page 1 of 1

WESI000063

ENDORSEMENT#   *11*

This endorsement, effective   *12:01 AM     November 30, 2015*      forms a part of
policy number   *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, PA*

## STATE AMENDATORY INCONSISTENT

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  In the event that there is an inconsistency between any: (a) state amendatory attached
    to this policy, or any other wording attached to this policy to comply with applicable
    law; and (b) any other term, condition or limitation of this policy; then, to the extent
    permitted by law, subject to the limitations below, the Insurer will resolve the
    inconsistency by applying the terms, conditions or limitations that are more favorable to
    the policyholder.

2.  This endorsement shall not apply to the extent that: (a) any state amendatory or other
    wording expressly limits coverage in order to comply with applicable law, or (b) any
    such amendatory or other compliance wording amends language applicable to premium.
    In such events, the state amendatory or other compliance wording will govern over any
    other term, condition or limitation of the policy.

3.  "Policyholder" means the first Named Entity, Named Organization, Named Corporation,
    Named Sponsor, Named Insured or other policyholder designated in Item 1 of the
    Declarations of this policy.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 011*

WESI000064

This endorsement, effective at   *12:01 AM   November 30, 2015*   forms a part of
Policy number   *27082029*
Issued to:   *WASATCH PROPERTY MANAGEMENT, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, PA*

## TERRORISM EXCLUSION – CERTIFIED ACTS ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

### I. Certified Acts of Terrorism Exclusion

This insurance does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of an **act of terrorism** as defined in the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2015 (hereinafter, "TRIA") regardless of any other cause or event contributing concurrently or in any sequence with an **act of terrorism.**

**Act of terrorism** means any act that is certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security and the Attorney General of the United States:

**A.**  to be an act of terrorism;

**B.**  to be a violent act or an act that is dangerous to:

   **1.** human life;

   **2.** property; or

   **3.** infrastructure;

**C.**  to have resulted in damage within the United States, or outside of the United States in the case of:

   **1.**   an air carrier or vessel [described in TRIA]; or

   **2.**   the premises of a United States mission; and

**D.**  to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**II.**  With respect to commercial property policies:

**A.**  If an **act of terrorism** results in an ensuing fire, this Policy covers such loss or damage caused by such fire following, subject to the Policy's terms and conditions, **but only if** the covered property insured hereunder is located in a state of the United States, the District of Columbia, Puerto Rico, or a territory or possession of the United States that, pursuant to the applicable standard fire policy statute, regulation or other law, prohibits the exclusion of fire following an

❂ All rights reserved.
*END 012*

118951 (1/15)                            Page 1 of 2

WESI000065

**act of terrorism**. Such coverage for fire following an **act of terrorism** applies only to direct physical loss or damage to covered property insured hereunder, and to no other coverage provided by the Policy.

**B.** Notwithstanding Subsection **II.A.** above, to the extent not prohibited by the law of the jurisdiction to which this Policy is subject, this Policy does not cover fire following an **act of terrorism** that involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of any nuclear reaction; radioactive materials or **nuclear materials** in any form and from any source; radionuclides; radiation emitted from any radioactive source whether natural or manmade; electromagnetic pulses; and/or pathogenic or poisonous chemical or **biological** materials, whether natural, manmade, living or dead.

**C.** Notwithstanding any other valuation provision of this Policy to the contrary, any covered property insured hereunder that sustains loss or damage due to fire following an **act of terrorism**, covered pursuant to Subsection **II.A.** above, shall be valued at Actual Cash Value at the time and place of the loss.

**III. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Policy, such as losses excluded by a nuclear exclusion, pollution exclusion or war exclusion.

**IV. Definitions:** The following definitions apply to this endorsement:

**A. Nuclear materials** means **source material**, **special nuclear material** or **by-product material**. **Source material**, **special nuclear material**, and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**B. Biological** materials include all microorganisms, viruses, rickettsia, prions, nucleic acids, toxins, toxin-producing agents, and poisons produced by biological organisms.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 012*

WESI000066

ENDORSEMENT# *13*

This endorsement, effective   *12:01 AM     November 30, 2015*        forms a part of
policy number    *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, PA*

### INSURED V. INSURED EXCLUSION
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that in Clause 4. EXCLUSIONS of the **D&O Coverage Section**, paragraph (i) is deleted in its entirety and replaced as follows:

(i)   which is brought by or on behalf of a **Company** or any **Individual Insured**, other than an **Employee** of a **Company**; or which is brought by any security holder of the **Company**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of any **Company** or any **Executive** of a **Company**; provided, however, this exclusion shall not apply to:

   (i)   any **Claim** brought by an **Individual Insured** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** that is covered by this policy;

   (ii)   in any bankruptcy proceeding by or against a **Company**, any **Claim** brought by the examiner, trustee, receiver, liquidator, or rehabilitator (or any assignee thereof) of such **Company**;

   (iii)   any **Claim** brought by any past **Executive** of a **Company** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for a **Company** for at least three (3) years prior to such **Claim** being first made against any person; or

   (iv)   any **Claim** brought by an **Executive** of a **Company** formed and operating in a **Foreign Jurisdiction** against such **Organization** or any **Executive** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

   (v)   any **Executive** engaging in any protected "whistleblower" activity specified in 18 U.S.C. 1514A(a) or any other similar "whistleblower" protection provided under any state, local or foreign securities laws.

   The foregoing subparagraph shall not apply where the actions of any **Executive** includes the filing of any proceeding or voluntarily testifying, voluntarily participating in or voluntarily assisting (other than de minimus assistance) in the filing or prosecution of any proceeding against an **Insured** relating to any violation of any rule or regulation of the Securities and Exchange Commission or any similar provision of any federal, state, local or foreign rule or law relating to fraud against shareholders, other than such actions in connection with a

© All rights reserved.
*END 013*

WESI000067

<u>**ENDORSEMENT#**</u>  *13*    (continued)

proceeding that is brought by the Securities and Exchange Commission, any similar state, local or foreign regulatory body that regulates securities, or any state, local or foreign law enforcement authority.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 013*

WESI000068

ENDORSEMENT# *14*

This endorsement, effective   *12:01 AM*    *November 30, 2015*    forms a part of policy number   *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, PA*

**EXTRADITION COVERAGE**
**(D&O COVERAGE SECTION)**

In consideration of the premium charged, it is understood and agreed that, solely with respect to such coverage as is provided by the **D&O Coverage Section**, and solely where permitted by law, the **D&O Coverage Section** is amended as follows:

1.   Clause 2. **DEFINITIONS**, paragraph (b)("**Claim**") is amended by appending the following to the end thereof:

"**Claim**" also means any:

(a)   official request for **Extradition** of any **Individual Insured**; or

(b)   the execution of a warrant for the arrest of an **Individual Insured** where such execution is an element of **Extradition**.

2.   Clause 2. **DEFINITIONS**, paragraph (k)("**Defense Costs**") is amended by appending the following to the end thereof:

"**Defense Costs**" also means reasonable and necessary fees, costs and expenses incurred through legal counsel and consented to by the **Insurer** resulting from an **Individual Insured** lawfully:

(a)   opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of that **Individual Insured**; or

(b)   appealing any order or other grant of **Extradition** of that **Individual Insured**.

3.   Clause 2. **DEFINITIONS** is amended by appending the following to the end thereof:

"**Extradition**" means any formal process by which an **Individual Insured** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

4.   Clause 9. **PRE-AUTHORIZED DEFENSE ATTORNEYS FOR SECURITIES CLAIMS** does not apply to **Defense Costs** solely relating to **Extradition** even if the underlying **Wrongful Acts** relate to a **Securities Claim.**


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE


© All rights reserved.
*END 014*

WESI000069

ENDORSEMENT#  *15*

This endorsement, effective   *12:01 AM     November 30, 2015*       forms a part of
policy number   *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, PA*

### PROFESSIONAL ERRORS & OMISSIONS EXCLUSION ENDORSEMENT
### (WITH SECURITIES CLAIM CARVEBACK)
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall
not be liable to make any payment for **Loss** in connection with any **Claim(s)** made against any
**Insured(s)** alleging, arising out of, based upon or attributable to any **Insured(s)'** performance of or
failure to perform professional services for others for a fee, or any act(s), error(s) or omission(s)
relating thereto; provided, however, this exclusion shall not apply to any **Securities Claim**.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 015*

98962 (4/08)                                    Page 1 of 1

WESI000070

ENDORSEMENT#  *16*

This endorsement, effective  *12:01 AM    November 30, 2015*    forms a part of
policy number  *27082029*
issued to  *WASATCH PROPERTY MANAGEMENT, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, PA*

**CLAUSE 7 AMENDED**
**(ADVANCEMENT OF DEFENSE COSTS - 90 DAYS)**
**(D&O COVERAGE SECTION)**

In consideration of the premium charged, it is hereby understood and agreed that Clause 7.
**DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE
COSTS)** of the **D&O Coverage Section** is amended by deleting the third full paragraph thereof in its
entirety and replacing it with the following:

> When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 7, the
> **Insurer** nevertheless shall advance, at the written request of the **Insured**, **Defense Costs** every
> ninety (90) days. Such advanced payments by the **Insurer**  shall be repaid to the **Insurer** by
> each and every **Insured** or the **Company**, severally according to their respective interests, in
> the event and to the extent that any such **Insured** or the **Company** shall not be entitled under
> the terms and conditions of this **D&O Coverage Section** to payment of such **Loss**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 016*

101082 (2/09)                              Page 1 of 1

WESI000071

ENDORSEMENT# *17*

This endorsement, effective  *12:01 AM*   *November 30, 2015*   forms a part of
policy number  *27082029*
issued to  *WASATCH PROPERTY MANAGEMENT, INC.*

by  *National Union Fire Insurance Company of Pittsburgh, PA*

## SECURITIES CLAIMS SEPARATE RETENTION
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that Clause 6.
**RETENTION CLAUSE** of the **D&O Coverage Section** is amended by adding the following paragraph
at the end thereof:

> Notwithstanding the foregoing, with regard to any **Securities Claim**, the **Insurer** shall only be
> liable for the amount of **Loss** arising from such **Securities Claim** which is in excess of a
> Retention amount of *$150,000*, such Retention amount to be borne by the **Company** and/or
> the **Insureds** and shall remain uninsured, with regard to: (i) all **Indemnifiable Loss**; and (ii) **Loss**
> of the **Company**. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging
> the same **Wrongful Act** or **Related Wrongful Acts**. In the event a **Claim** triggers more than one
> applicable retention amount, only the highest such amount shall apply, which amount shall
> apply to all **Loss** under such **Claim**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 017*

99184 (5/08)                    Page 1 of 1

WESI000072

**ENDORSEMENT#** *18*

This endorsement, effective   *12:01 AM     November 30, 2015*       forms a part of
policy number   *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

### DEFENSE COSTS PROVISION AMENDATORY
### (ADVANCEMENT OF DEFENSE COSTS - 90 DAYS)
### (EPL COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that Clause 6.
**DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE
COSTS)** of the **EPL Coverage Section** is amended by deleting the third full paragraph thereof in its
entirety and replacing it with the following:

> When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 6, the
> **Insurer** nevertheless shall advance, at the written request of the **Insured**, **Defense Costs** every
> ninety (90) days. Such advanced payments by the **Insurer**   shall be repaid to the **Insurer** by
> each and every **Insured** or the **Company**, severally according to their respective interests, in
> the event and to the extent that any such **Insured** or the **Company** shall not be entitled under
> the terms and conditions of this **EPL Coverage Section** to payment of such **Loss**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 018*

WESI000073

**ENDORSEMENT#** *19*

This endorsement, effective  *12:01 AM*      *November 30, 2015*   forms a part of
policy number    *27082029*
issued to      *WASATCH PROPERTY MANAGEMENT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**SEPARATE RETENTION FOR MULTIPLE PLAINTIFF CLAIMS**
(DEFINITION TO INCLUDE THREE OR MORE COMPLAINANTS)
(EPL COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that Clause
5. **RETENTION CLAUSE** of the **EPL Coverage Section** is amended by adding the following
paragraph at the end thereof:

> Notwithstanding the foregoing, with regard to any **Multiple Plaintiff Claim**, the **Insurer**
> shall only be liable for the amount of **Loss** arising from such **Multiple Plaintiff Claim**
> which is in excess of a Retention amount of $250,000, such Retention amount to be
> borne by the **Company** and/or the **Insureds** and shall remain uninsured, with regard to:
> (i) all **Indemnifiable Loss**; and (ii) **Loss** of the **Company**. A single Retention amount shall
> apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related
> Wrongful Acts**.   In the event a **Claim** triggers more than one applicable retention
> amount, only the highest such amount shall apply, which amount shall apply to all **Loss**
> under such **Claim**.

For purposes of this endorsement only, the term **"Multiple Plaintiff Claim"** means any
**Claim** brought (i) by or on behalf of an actual or alleged class (whether or not certified as
such); (ii) by or on behalf of three or more complainants, plaintiffs or potentially aggrieved
parties.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

M115712 (00/00)          © All rights reserved.          Page **1** of **1**

WESI000074

**ENDORSEMENT#** *20*

This endorsement, effective *12:01 AM    November 30, 2015* forms a part of policy number *27082029* issued to *WASATCH PROPERTY MANAGEMENT, INC.*

by *National Union Fire Insurance Company of Pittsburgh, PA*

### CALIFORNIA EMPLOYMENT PRACTICES CLAIMS
### SEPARATE RETENTION
### (EPL COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that Clause 5. **RETENTION CLAUSE** of the **General Terms and Conditions** is amended by adding the following paragraph at the end thereof:

    (c)  Solely with respect to the EPL Coverage Section, the following shall apply:

        Notwithstanding the foregoing, with regard to any **California Employment Practices Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from such **California Employment Practices Claim** which is in excess of a Retention amount of *$100,000*, such Retention amount to be borne by the **Company** and/or the **Insureds** and shall remain uninsured, with regard to: (i) all **Indemnifiable Loss**; and (i) **Loss** of the **Company**. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**. In the event a **Claim** triggers more than one applicable retention amount, only the highest such amount shall apply, which amount shall apply to all **Loss** under such **Claim**.

For purposes of this endorsement only, the term **"California Employment Practices Claim"** shall mean any **Claim(s)** under the **EPL Coverage Section** subject to California jurisdiction and/or California law.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 020*

M112262                                                  1

WESI000075

ENDORSEMENT# *21*

This endorsement, effective   *12:01 AM   November 30, 2015*   forms a part of
policy number   *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

### THIRD PARTY VIOLATION CLAIMS - SEPARATE RETENTION
### (EPL COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that Clause 5.
**RETENTION CLAUSE** of the **EPL Coverage Section** is amended by adding the following paragraph at
the end thereof:

Notwithstanding the foregoing, with regard to any **Third Party Violation Claim**, the **Insurer**
shall only be liable for the amount of **Loss** arising from such **Third Party Violation Claim** which
is in excess of a Retention amount of *$150,000*, such Retention amount to be borne by the
**Company** and/or the **Insureds** and shall remain uninsured, with regard to: all (i) **Indemnifiable
Loss**; and (ii) **Loss** of the **Company**. A single Retention amount shall apply to **Loss** arising
from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**. In the event a
**Claim** triggers more than one applicable retention amount, only the highest such amount shall
apply, which amount shall apply to all **Loss** under such **Claim**.

For purposes of this endorsement only, the term **"Third Party Violation Claim"** means any **Claim**
alleging a **Third Party Violation**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 021*

WESI000076

ENDORSEMENT#   *22*

This endorsement, effective   *12:01 AM   November 30, 2015*   forms a part of
policy number   *27082029*
issued to   *WASATCH PROPERTY MANAGEMENT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

**FORMS INDEX ENDORSEMENT**

The contents of the Policy are comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| *91222* | *04/13* | *Policy Holder Notices* |
| *95862* | *09/07* | *PrivateEdge Plus Declarations - Countrywide (Admitted)* |
| *95726* | *9/07* | *General Terms and Conditions (Admitted)* |
| *95728* | *9/07* | *Employment Practices Liability Insurance ("Epl Coverage Section")* |
| *95727* | *09/07* | *Directors, Officers And Private Company Liability Insurance ("D&O Coverage Section")* |
| | *6/08* | *Employment Practices Claim Panel Counsel* |
| *96311* | *02/08* | *Appendix D Crisis Management Coverage For D&O Coverage Section* |
| *APPMAN* | *6/08* | *Securities Claim Panel Counsel List* |
| *95737* | *09/07* | *Nuclear Energy Liability Exclusion Endorsement (All Coverage Sections)* |
| *69105* | *11/97* | *Utah Cancellation/Nonrenewal Amendatory Endorsement* |
| *95801* | *09/07* | *Utah Amendatory Endorsement* |
| *97629* | *03/08* | *FLSA And Related Exclusions Amended (D&O and EPL Coverage Sections)* |
| *99758* | *8/08* | *Notice Of Claim (Reporting By E-Mail)* |
| *89644* | *6/13* | *Economic Sanctions Endorsement* |
| *102331* | *08/09* | *Conduct Exclusions Amended (Final Adjudication Other Than A Coverage Proceeding Initiated By Insurer) (D&O and EPL Coverage Sections)* |
| *100689* | *11/08* | *Tie-In Of Limits Endorsement (Common Claims) (All Coverage Sections)* |
| *98966* | *04/08* | *Severability Of The Application Endorsement (Non-Rescindable - Full Individual Severability; Top 3 Company Positions Imputed To Company)(D&O and EPL Coverage Sections)* |

© All rights reserved.
*END 022*

78859 (10/01)                         Page  1 of  2

WESI000077

**ENDORSEMENT#** *22*  (continued)

| 101286 | 03/09 | Liberalization Endorsement (D&O and EPL Coverage Sections) |
| 94039 | 05/07 | State Amendatory Inconsistent |
| 118951 | 1/15 | Terrorism Exclusion - Certified Acts |
| 105048 | 04/10 | Insured V. Insured Exclusion (D&O Coverage Section) |
| 105118 | 04/10 | Extradition Coverage(D&O Coverage Section) |
| 98962 | 04/08 | Professional Errors & Omissions Exclusion Endorsement(With Securities Claim Carveback)(D&O Coverage Section) |
| 101082 | 02/09 | Clause 7 Amended(Advancement Of Defense Costs - 90 Days)(D&O Coverage Section) |
| 99184 | 05/08 | Securities Claims Separate Retention(D&O Coverage Section) |
| 101081 | 2/09 | Defense Costs Provision Amendatory(Advancement Of Defense Costs - 90 Days)(Epl Coverage Section) |
| M115712 | 00/00 | SEPARATE RETENTION FOR MULTIPLE PLAINTIFF CLAIMS |
| M112262 | | California Employment Practices Claims Separate Retention (Epl Coverage Section) |
| 99194 | 5/08 | Third Party Violation Claims - Separate Retention(Epl Coverage Section) |
| 78859 | 10/01 | Forms Index |
| 60378 | 05/94 | UT Addendum To The Application |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 022*

WESI000078

## UTAH ADDENDUM TO THE APPLICATION

The Application and all relevant documents will be attached to the policy at the time of delivery.

60378 (5/94)

WESI000079



Name of Insurance Company to which Application is made (herein called the "Insurer")

# PrivateEdgePlus℠ Application
### Management Liability, Professional Liability, Crime and Kidnap Ransom/Extortion Coverage for Private Companies

**NOTICES:**
**[THE FOLLOWING NOTICES ARE INAPPLICABLE TO THE CRIME COVERAGE SECTION AND KIDNAP AND RANSOM/EXTORTION COVERAGE SECTION]**

**IF A POLICY IS ISSUED, DEFENSE COSTS WILL REDUCE THE LIMITS OF LIABILITY (AND, THEREFORE, AMOUNTS AVAILABLE TO RESPOND TO SETTLEMENTS AND JUDGMENTS) AND WILL BE APPLIED AGAINST APPLICABLE RETENTIONS.**

**IF A POLICY IS ISSUED, COVERAGE WILL BE GENERALLY LIMITED TO LOSS FROM CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD AND REPORTED TO THE INSURER AS THE POLICY REQUIRES.**

## Section A.  GENERAL INFORMATION
1.  Name of Applicant: <u>Wasatch Property Management</u>

   Address of Named Applicant: <u>595 South Riverwoods Parkway, Suite 400, Logan, UT 84321</u>

   Primary Website: <u>www.wasatchgroup.com</u>

2.  State of Incorporation: <u>Utah</u>

3.  Years of Operation: <u>Since 3/15/1991</u>

4.  Type of Business Entity (please check applicable description):

   ☒ Corporation      ☐ Limited Liability Company      ☐ Sole Proprietorship
   ☐ Other (please specify: ____)

5.  Nature of Business: <u>Real estate, property management</u>

6.  Primary SIC Code(s): ____

7.  Number of Locations:      Domestic (within the U.S., Canada and territories): ____
                              Foreign: <u>0</u>

8.  Name of Parent Corporation (if not Applicant): ____      If not applicable, please check here ☐.
   Address of Parent Corporation: ____

## Section B.  FINANCIAL INFORMATION
Please provide the following financial information for the Applicant and its Subsidiaries.
*Information must be based on the most recent audited financials or interim financials if audited financials are not available.*

1.  Please provide the following Financial Information for the Applicant and its Subsidiaries.

| Based on Financial Statements Dated: | (Year/Month) |
|---|---|
| Total Assets | $ |
| Total Liabilities | $ |
| Total Revenues/Contributions | $ |
| ☐ Net Income or ☐ Net Loss | $ |
| Cashflow from Operations | $ |

WESI000080

**CHARTIS**

2.  Has the Applicant or any of its Subsidiaries changed auditors in the past year? ☐ Yes ☒ No   ☐ N/A
If "Yes," please provide complete details.

### Section C.  COMPANY INFORMATION

1.  Please list all direct and indirect Subsidiaries.  If included as an attachment herein, check here ☒.
If not applicable, please check here ☐.

| Name | Business or Type of Operation | Percentage of Ownership | Date Acquired or Created | Services Performed |
|------|-------------------------------|-------------------------|--------------------------|--------------------|
| ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ |

Are you requesting coverage to be extended to all Subsidiaries? ☒ Yes ☐ No

2.  Is the Applicant or any of its Subsidiaries involved in any joint ventures, general partnerships or limited partnerships? ☐ Yes ☒ No

3.  Has the Applicant or any of its Subsidiaries had any mergers, acquisitions or consolidations in the past twenty four (24) months? ☐ Yes ☒ No

4.  Are there any plans for a future merger, acquisition or consolidation of or by the Applicant or any of its Subsidiaries in the next twelve (12) months? ☐ Yes ☒ No
If "Yes," have these plans been approved by any of the following?  Please check all that apply.
☐ Board of Directors   ☐ Shareholders

5.  Has the Applicant or any of its Subsidiaries had any private placement or other offering of securities within the last twelve (12) months, or anticipate having any private placements or other offering of securities within the next twelve(12) months? ☐ Yes ☐ No

### Section D.  CLAIM REPORTING PROCEDURES

1.  Within the Applicant and its Subsidiaries, where or to whom are lawsuits, administrative charges and demand letters reported?
General Counsel: ____   Human Resources: ____ Risk Management: X   Other: ____

2.  Does the Applicant have a mechanism in place for its operating companies to immediately report lawsuits, administrative charges and demand letter to a corporate office of General Counsel, Human Resources or Risk Management? ☒ Yes ☐ No

3.  Name of Risk Manager and/or General Counsel (or equivalent position) and number of years in current position:
Name: Rick Johnson   Title: Risk Manager   Years in Current Position: 10
E-mail Address: rjohnson@netwasatch.com   Phone Number: 801-961-1077

### Section E.  CLAIMS HISTORY INFORMATION

*Note:   Answer the following questions 1 through 7 for only those coverage types the Applicant does not currently maintain insurance and is now applying for under this application.  If Applicant currently maintains insurance coverage for the coverage type(s) it is applying for under this application check the applicable N/A box):*

1.  Please provide on a separate attachment full details of all inquiries, investigations, grievance filings or other administrative hearings filed during the last five (5) years or currently before any local, state or federal agency governing employer responsibility to employees.  (If none, check here ☐)

2.  Has there been, or is there now pending any claim(s), suit(s), investigation(s) or action(s) against the Applicant, its Subsidiaries, or any individual or other entity proposed for insurance arising out of:  (i) any director, officer, trustee, employed lawyer, employee, employee benefit plan, professional liability or entity liability matter, including securities matters and/or employment matters; or (ii) any matter claimed against any person proposed for insurance in his or her capacity under the proposed policy?
Please answer with regard to:

| | | | |
|---|---|---|---|
| D&O and Private Company Liability | Yes ☐ | No ☐ | N/A ☐ |
| Employment Practices Liability | Yes ☐ | No ☐ | N/A ☐ |
| Fiduciary Liability | Yes ☐ | No ☐ | N/A ☐ |
| Employed Lawyers Professional Liability | Yes ☐ | No ☐ | N/A ☐ |

96309 (10/07)                          Page 2 of 15                          ©All rights reserved.

WESI000081

Miscellaneous Professional Liability      Yes ☐   No ☐   N/A ☐
(If "Yes" was checked with respect to any of the above, please attach complete details regarding those claims, suits, investigations or actions.)

3. Does the Applicant, its Subsidiaries, or any director, officer, trustee, employed lawyer or employee of the Applicant know of any act, error or omission, which could give rise to a claim(s), suit(s) or action(s) under the proposed policy with regard to:
    D&O and Private Company Liability      Yes ☐   No ☐   N/A ☐
    Employment Practices Liability      Yes ☐   No ☐   N/A ☐
    Fiduciary Liability      Yes ☐   No ☐   N/A ☐
    Employed Lawyers Professional Liability Yes ☐   No ☐   N/A ☐
    Miscellaneous Professional Liability      Yes ☐   No ☐   N/A ☐
(If "Yes" was checked with respect to any of the above, please attach complete details.)

4. Has the Applicant, any of its Subsidiaries or any director and/or officer:
    a. Been involved in any antitrust, copyright or patent litigation?      Yes ☐   No ☐   N/A ☐
    b. Been charged in any civil or criminal action or administrative proceeding with a violation of any federal or state antitrust or fair trade law?      Yes ☐   No ☐   N/A ☐
    c. Been charged in any civil or criminal action or administrative proceeding with a violation of any federal or state securities law or regulation?      Yes ☐   No ☐   N/A ☐
    d. Been involved in any representative actions, class actions, or derivative suits?    Yes ☐   No ☐   N/A ☐
    e. Been charged in any federal or state proceeding citing a violation of anti-harassment or anti-discrimination law?      Yes ☐   No ☐   N/A ☐

5. *Please answer if applying for Employed Lawyers Coverage:* Has any Corporate Counsel been the subject of a reprimand or disciplined by, or refuse admission to a bar association, court or administrative agency?
Yes ☐   No ☐   N/A ☐ (If "Yes", please attach complete details.)

6. *Please answer if applying for Miscellaneous Professional Liability Coverage:* Has any director, officer, partner, manager, employee or agent of the Applicant been the subject of any disciplinary investigation as a result of professional activity?
Yes ☐   No ☐   N/A ☐ (If "Yes", attach copies of all significant documents relating to such investigation(s) and describe the underlying conduct.)

7. *Please answer if applying for Fiduciary Liability:* Has there been or is there pending any inquiry or investigation, or any violation of ERISA[1] or any similar common or statutory law of the United States, Canada or any state or other jurisdiction anywhere in the world, to which an Applicant's employee benefit plan is subject?
Yes ☐   No ☐   N/A ☐ (If "Yes", please attach complete details.)

*It is agreed that with respect to Questions 1 through 7 above, if such claim(s), suit(s), investigation(s), action(s), proceeding(s), inquiry, violation, knowledge, information or involvement exists, then such claim(s), suit(s), investigation(s), action(s), proceeding(s) or inquiry and any claim, action, suit, investigations, proceeding or inquiry arising therefrom or arising from such violation, knowledge, information or involvement is excluded from the proposed coverage.*

**Section F. DIRECTORS AND OFFICERS INFORMATION** Coverage Requested? ☒ Yes ☐ No
Please complete this Section if applying for this coverage.

1. Stock Ownership
    a. Are any of the Applicant's securities or those of its Subsidiaries publicly traded or the subject of a "shelf registration?" ☐ Yes ☒ No
       Exchange(s): ____      Ticker Symbol(s): ____
    b. Total number of Applicant's voting shareholders: ____
    c. Total number of Applicant's voting shares owned by its Directors and Officers (direct and beneficial):
     ____
    d. Does any shareholder of the Applicant own five percent (5%) or more of the voting shares directly or

---

[1] Employee Retirement Income Security Act of 1974 and including any amendment or revision thereto.
96309 (10/07)          **Page 3 of 15**          ©All rights reserved.

WESI000082

**CHARTIS**

beneficially?
☐ Yes  ☐ No
If "Yes," please designate name and percentage of holdings.  <u>N/A.</u>
If included as an attachment herein, check here ☐.

    e.  Is any of the Applicant's stock held by an Employee Stock Ownership Plan? ☐ Yes ☐ No
        If "Yes," what is the percentage? <u>N/A</u>%  Is it leveraged? ☐ Yes ☐ No

    f.  Does the Applicant or any of its Subsidiaries have a portion of its private company debt purchased by the public? ☐ Yes ☐ No
        If "Yes," please provide the amount:  $____
        If "Yes," please provide the Debt Rating:  ____

2.  Attach a complete list of all Directors of the Applicant by name, affiliation and date of nomination to the Board.

3.  Has the Applicant experienced changes to its Board of Directors or to its Key Executives over the past year?
☐ Yes ☐ No
If "Yes," please attach complete details.

4.  Does the Applicant have any of the following Committees?  Please check all that apply.
☐ Audit      ☐ Compensation      ☐ Nominating

5.  Does the Applicant's charter or by-laws contain indemnification provisions? ☒ Yes ☐ No

**Section G.  EMPLOYMENT PRACTICES INFORMATION**  Coverage Requested? ☐ Yes ☐ No
Please complete this Section if applying for this coverage.

Please provide the following information regarding employees including Directors and Officers of the Applicant and all other entities applying for coverage:

1.  Enter the TOTAL number of employees (by type) in the boxes below.
    *Note: Seasonal, Temporary and Leased Employees to be included as Part-Time employees (Non-Union if Domestic)*
    **Number Employees in ALL STATES/JURISDICTIONS:**

|  | Domestic | | Foreign |
|---|---|---|---|
|  | Union | Non-Union |  |
| Full Time |  | 675 |  |
| Part Time |  |  |  |
| Total Number of Independent Contractors |  |  |  |

2.  Enter the number of employees (by type) in the specified jurisdictions ONLY in the boxes below.
    *Note: Seasonal, Temporary and Leased Employees to be included as Part-Time employees (Non-Union if Domestic)*
    **Number of Employees located in CALIFORNIA ONLY:**

|  | Domestic | |
|---|---|---|
|  | Union | Non-Union |
| Full Time |  |  |
| Part Time |  |  |
| Total Number of Independent Contractors |  |  |

WESI000083

CHARTIS

Number of Employees located in DISTRICT OF COLUMBIA, FLORIDA, MICHIGAN & TEXAS ONLY (collectively):

|  | Domestic | |
| --- | --- | --- |
|  | Union | Non-Union |
| Full Time | N/A | N/A |
| Part Time |  |  |
| Total Number of Independent Contractors |  | 0 |

3.  For the past 3 years, what has been the annual percentage turnover rate of employees (all locations)?
    Domestic: Year ___, ___%       Year ___, ___%       Year ___, ___%
    Foreign:  Year N/A, ___%       Year N/A, ___%       Year N/A, ___%

4.  Does the Applicant and any of its Subsidiaries have a Human Resources or Personnel Department?
    ☒ Yes ☐ No
    If "No", does the Applicant and any of its Subsidiaries have other designated/qualified staff member(s) serving the equivalent function?          ☐ Yes ☐ No
    If "No", how are these issues handled and by whom?  Please attach complete details.

5.  Does the Applicant and any of its Subsidiaries have a human resources manual or equivalent written management guidelines? ☒ Yes ☐ No
    If "Yes" does it address the following issues?

    | | |
    | --- | --- |
    | Legally prohibited Discrimination | ☒ Yes ☐ No |
    | Sexual Harassment | ☒ Yes ☐ No |
    | Compliance with the Americans with Disabilities Act | ☒ Yes ☐ No |
    | Compliance with the 1991 Civil Rights Act | ☒ Yes ☐ No |
    | Compliance with the Family Medical Leave Act | ☒ Yes ☐ No |
    | Employee disciplinary actions | ☒ Yes ☐ No |
    | Terminations, layoffs and early retirements | ☒ Yes ☐ No |
    | Employee appraisals / reviews | ☒ Yes ☐ No |

    For all "No" answers, how are these issues handled and by whom?  Please attach complete details.

6.  Has Legal Counsel reviewed the HR Guidelines in the last two (2) years?     ☒ Yes ☐ No

7.  Does the Applicant and any of its Subsidiaries have an Employee Handbook?     ☒ Yes ☐ No
    If "Yes," is the Employment Handbook distributed to all employees or maintained on an Internet location informing employees of their employment rights? ☒ Yes ☐ No

8.  Has the Applicant and any of its Subsidiaries implemented and adopted anti-discrimination/harassment policies? ☒ Yes ☐ No

9.  Is there a formalized process in place for reporting complaints/ harassment?     ☒ Yes ☐ No
    If "Yes," do employees know this action will not result in a retaliatory action?     ☒ Yes ☐ No

10. Are employment issues relating to terminations, discriminations, sexual harassment, layoffs, transfers, or promotions handled by the Human Resources Department, Outside Counsel and/or the Legal Department?
    ☒ Yes ☐ No

11. Is the Applicant or any of its Subsidiaries currently undergoing or does the Applicant or any of its Subsidiaries contemplate undergoing during the next twelve (12) months any employee layoffs or early retirements (including ones resulting from any type of company restructuring or office, plant or store closing)?☐ Yes ☒ No
    If "Yes", please attach complete details.

    a.      Have there been any structured layoffs in the past twenty four (24) months? ☐ Yes ☒ No
            If "Yes," what percentage of employees? ☐ 1-10%     ☐ 11-25%     ☐ Over 25%

    b.      Did the Applicant or any of its Subsidiaries use Outside Counsel during the lay off procedure? ☐ Yes ☒ No

    c.      Were severance packages offered in exchange for releases not to sue? ☐ Yes ☐ No
            If "No" please attach complete details

    d.      Please provide the number of layoffs that have occurred or are about to occur. ____

WESI000084

**CHARTIS**

e. Does the Applicant or any of its Subsidiaries have procedures in place to assist terminated or laid off employees find work? ☐ Yes ☐ No

**Section H.  FIDUCIARY LIABILITY INFORMATION**  Coverage Requested? ☐ Yes ☐ No
Please complete this Section if applying for this coverage.

1.  List of Plans for which coverage is requested:

| Full name of Plans to be covered | Total assets (market value) | Number of Plan participants | Type of Plan (W = welfare benefit) (DC = defined contribution) (DB = defined benefit) (Other = please describe) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

(List any additional Plans on an attachment. If there is an attachment, check here ☐ )

2.  If any plan for which coverage is requested holds or invests in securities of the Applicant or of any Subsidiary or affiliate, please provide details, including name of plan, number of shares held, and most recent share value.  If no such securities, check here ☐ None

3.  Are assets managed by an investment manager as defined in ERISA? ☐ Yes ☐ No
If "No," or if only some assets are invested by an investment manager as defined in ERISA, please provide details on an attachment.

4.  How often is the performance of the plans' investment managers reviewed?
☐ At least semi-annually ☐ Less than semi-annually (please describe) ____

5.  How often do the fiduciaries establish or amend the investment manager's guidelines and goals for the plans?
☐ At least annually ☐ Less than annually (please describe) ____

6.  Do you follow a written procedure to determine the reasonableness of all plan fees, including revenue sharing arrangements? ☐ Yes ☐ No  If "No", please attach full details.

7.  Is any plan a multiemployer or multiple employer plan? ☐ Yes ☐ No
(If "Yes," list and identify the types of plans on an attachment.)

8.  Please list all third party investment, actuarial, legal, administrative and benefits consulting service providers. ____  If no such service providers, check here ☐ None

9.  In the past twenty four (24) months has there been, or, in the next twelve (12) months is there anticipated, any amendment that has resulted in or is expected to result in any reduction or cessation of benefits or benefit accruals, including but not limited to an increase in participants' share of costs? ☐ Yes ☐ No.  (If "Yes," identify the plans and attach a description of the amendments.)

10.  Has any plan (or portion of a plan) been spun off (sold), transferred or terminated or is any such transaction contemplated? ☐ Yes ☑ No. (If "Yes," attach the following information for such plans: date (or anticipated date) of spin-off sale or termination; whether assets have been fully distributed or reverted to a party other than the plan participants; and name of annuity provider, if benefits have been secured by annuities.)

  ©All rights reserved.

WESI000085



Question 11 applies only to defined benefit plans.  If not applicable, check here ☐

11. a.  Are all defined benefit plans adequately funded in accordance with ERISA or any applicable similar common or statutory law of the United States, Canada or any state or other jurisdiction anywhere in the world, as attested to by an actuary? ☐ Yes ☐ No.  (If "No," attach complete details.)

   b.  Are there any overdue employer contributions for any plan, or has any plan requested or contemplated filing a request for a waiver of contributions? ☐ Yes ☐ No.  (If "Yes," attach complete details, including the plan name and the amount of any overdue employer contributions for each such plan.)

   c.  Is any plan a cash balance or pension equity plan, or is any conversion to such plan being considered? ☐ Yes ☐ No.  (If "Yes," attach complete details, including copies of any descriptive literature distributed to plan participants, and descriptions of any grandfather provisions.)

**Section I. CRIME INFORMATION** Coverage Requested? ☐ Yes ☐ No
Please complete this Section if applying for this coverage.

1.  Has the Applicant experienced any of the following losses in the past six years or if in business less than six years, since the date of formation (whether insured or not):
   Employee Theft?                                              ☐ Yes ☐ No
   Forgery or Alteration?                                       ☐ Yes ☐ No
   Theft of Money and Securities (Inside/Outside)?              ☐ Yes ☐ No
   Any Other Crime or Fidelity related losses?     ☐ Yes ☐ No
   (If "Yes" to any of the above please attach complete details).

2.  Applicant's total number of locations?  _____
   State _____ County _____  Number of Locations _____  _____
   State _____ County _____  Number of Locations _____  _____

3.  Applicant's total number of employees?  _____

4.  U.S.: ____      Canadian:   ____     Foreign: ____

5.  Of the total employees listed above, how many employees handle, have access to or maintain records of money, securities or other property including, but not limited to, directors, officers, trustees and any person handling or having access to employee welfare or benefit plan assets? ____

6.  Does the Applicant have cash exposures that exceed the lowest deductible amount of the current   Crime/Fidelity policy? ☐ Yes ☐ No  (If "Yes", please complete the High Cash Questionnaire)

7.  Does the Applicant have precious metals, precious or semi-precious stones, pearls, furs, or articles containing such materials exposure that exceed the lowest deductible amount of the current Crime/Fidelity policy? ☐ Yes ☐ No  (If "Yes," please complete the Precious Metals Questionnaire)

8.  Are corporate credit, debit, charge or purchasing cards used?
   a.  Number of Cards:  ____
   b.  Maximum limit allowed under card:  ____
   c.  Controls in place for preventing and identifying unauthorized transactions: ____

9.  Does the Applicant have access to client's funds/property (including money, securities, inventory, high value property, banking systems, wire transfer systems, computer systems & sensitive data, etc.)? ☐ Yes ☐ No
   a.  What type of property and dollar amount of value: ____
   b.  Number of employees who will be performing work for your client(s): ____
   c.  Total number of clients: ____

10. Are all checks countersigned?    ☐ Yes ☐ No
   a.  Over what amount is a dual signature required? $____
   b.  If there is no countersignature, who signs the Applicant's checks? ____
   c.  Are checks signed only by the owner(s) of the company? ☐ Yes ☐ No
11. Is an approved voucher or Positive Pay system used? ☐ Yes ☐ No

©All rights reserved.

WESI000086



12. Are check signers instructed to require that all checks be accompanied by properly approved vouchers and/or invoices?   ☐ Yes ☐ No

13. Are systems designed so that no employee can control a process from beginning to end (i.e. request a check, approve a voucher and sign a check)?   ☐ Yes ☐ No

14. Are bank accounts reconciled on a monthly basis?   ☐ Yes ☐ No
    a.   If not, how often? ____

15. Are those who reconcile bank statements prohibited from:
    a.   Handling deposits in the accounts they reconcile?   ☐ Yes ☑ No
    b.   Signing checks? ☐ Yes ☐ No

16. Does a second person review the reconciliation with supporting documentation on a monthly basis and initial their approval of the information?   ☐ Yes ☐ No

17. How often and by whom are audits of cash and accounts performed? ____

18. How often and by whom are inventory counts conducted? ____

19. Is there a CPA letter to management relating to internal control weaknesses? ☐ Yes ☐ No
    (If "Yes" please provide a copy of the letter)

20. If no CPA letter to management was issued, did the CPA make recommendations for improvement in internal control procedures informally? ☐ Yes ☐ No   (If "Yes", please provide complete details)

21. Is there an internal audit department? ☐ Yes ☐ No
    a.   Are all locations audited by the internal audit staff? ☐ Yes ☐ No  (If "No", please explain)
    b.   How often? ____

22. Are background checks performed on all new hires?  Check all that apply:
    ☐ Criminal  ☐ Prior Employment  ☐ Credit History  ☐ References  ☐ Drug Testing

23. Are mid-employment screenings performed when employees are promoted to sensitive positions?
    ☐ Yes ☐ No

24. Are employees' building access cards denied immediately upon termination and are all procurement, credit cards, etc. cancelled? ☐ Yes ☐ No ☐ N/A

25. Are newly hired employees provided with a copy the organization's fraud policy identifying and explaining conflicts of interest and other prohibited behavior? ☐ Yes ☐ No

26. Are employees required to complete conflict of interest disclosure forms annually? ☐ Yes ☐ No
    a.   Is there a system in place that allows for the reporting of suspicious activity and/or unauthorized transactions confidentially? ☐ Yes ☐ No
    b.   If "Yes" describe the procedure for investigating these reports: ____
27. Are background checks performed on vendors in order to determine ownership and financial capability prior to doing business with them and is there dual control over this process so one employee cannot set up a fictitious vendor in the system without being detected? ☐ Yes ☐ No

28. Is an authorized vendor list utilized and updated annually for all purchases, with competitive bidding required over stated amounts? ☐ Yes ☐ No

29. Are vendors provided with the Applicant's a statement of conflict of interest and gift policy (prohibiting gifts of any significant value)? ☐ Yes ☐ No

30. What is the daily average number and dollar volume of wire transfers? ____

31. What is the maximum dollar volume that may be transferred per day? ____

WESI000087

**CHARTIS**

32. Is approval by more than one person required to initiate a wire transfer? ☐ Yes ☐ No

33. Does the Applicant's financial institution call an employee other than one who requested the transfer before acting on the request? ☐ Yes ☐ No

34. Does the Applicant receive hard copy confirmations on all wire transfers and are they sent directly to a department not authorized to initiate transfers? ☐ Yes ☐ No

35. Are computer system access codes and passwords changed at least every 60 days? ☐ Yes ☐ No

36. Do any non-employees have access to the computer systems? ☐ Yes ☐ No  (If Yes, please explain)

37. Does the Applicant sponsor any employee welfare or retirement plan(s) for its employees? ☐ Yes ☐ No

38. List all sponsored employee welfare or retirement plan(s) that are required to be bonded by ERISA. (Please provide an attachment)

39. List all entities to be included as joint insureds:  (Please provide an attachment)
   a. Are all entities listed owned, controlled or operated by the first named insured? ☐ Yes ☐ No
   b. Does the information in this application and any attachments include information for all joint insureds to be covered? ☐ Yes ☐ No
   c. If not, provide details for each listed entity by separate attachment

**Section J. MISCELLANEOUS PROFESSIONAL LIABILITY** Coverage Requested? ☐ Yes ☐ No
Please complete this Section if applying for this coverage.

1. Please describe business activities and any anticipated changes to same: ____

2. Please provide gross annual revenues, including those of any entity listed in Section C Question #1

| | Year | Revenues | Percentage from Foreign |
|---|---|---|---|
| Past Fiscal Year | | $ | % |
| Current Fiscal Year | | $ | % |
| Projected Fiscal Year | | $ | % |

3. For the activities of the Applicant in Section A and Subsidiaries listed in Section C indicate the percentage of revenue derived therefrom:

| Activity | Percentage of Revenue |
|---|---|
| | % |
| | % |

(List any additional activities on an attachment. If there is an attachment, check here ☐ )

96309 (10/07)                    Page 9 of 15                    ©All rights reserved.

WESI000088

**CHARTIS**

4. List the Applicants five largest projects over the past year:

| Client | Services Performed | Revenue |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

5. Please provide the percentage of the Applicant's services rendered to each category based on the clients revenue size:

| Percentage of Services | Size of Clients |
|---|---|
| % | Individuals |
| % | Less than $50 million |
| % | $50-$500 million |
| % | Greater than $500 million |

6. For what percentage range does the Applicant use a written contract:
   ☐ 0%  ☐ 1-24%  ☐ 25-49%  ☐ 50-74%  ☐ 75-99%  ☐ 100%
   (Please attach a copy of your standard contract)

7. For what percentage range is the standard contract modified:
   ☐ 0%  ☐ 1-24%  ☐ 25-49%  ☐ 50-74%  ☐ 75-99%  ☐ 100%

8. For what percentage range does the Applicant subcontract work to others:
   ☐ 0%  ☐ 1-24%  ☐ 25-49%  ☐ 50-74%  ☐ 75-99%  ☐ 100%

9. If the response to Question 8 is not "0%", then describe services and percentage of total revenue   subcontracted.

| Services Subcontracted | Percentage of Revenue Subcontracted |
|---|---|
| | |
| | |
| | |
| | |

10. Is evidence of insurance requested of all subcontractors?   ☐ Yes ☐ No

11. Attach a description of your practices concerning risk management. ☐ (Check if attached)

12. Please provide the following information: ☐ (Check if resumes attached)

| Partners/Principals/Key Professionals | Professional Qualifications | Years of Experience |
|---|---|---|
| | | |
| | | |
| | | |

**Section K.  CORPORATE COUNSEL PREMIER LIABILITY** Coverage Requested?  Yes ☐  No ☐
Please complete this Section if applying for this coverage.

WESI000089



1. Please provide the number of lawyers employed by the Applicant in their capacity as such and the number of independent contractors contracted by the Applicant (please include Subsidiaries if seeking coverage for such): Employed _____   Subcontracted _____

2. Please enter the percentage of legal staff with the following:
   0-5 Years overall legal experience _____
   5-10 Yeas overall legal experience _____
   10+ Years overall legal experience _____

3. Are there any employed lawyer's outside of the Applicant's Legal Department, Office of the General Counsel or equivalent department or office?   Yes ☐ No ☐
   If "Yes," please attach complete details.

4. Please describe the type of work performed by Employed Lawyer's in the following areas:

| | |
|---|---|
| Moonlighting | |
| *Pro Bono* | |
| Corporate Counsel | |

5. Does any employed lawyer serve on the Board of Directors or equivalent governing body of the Applicant or any of its Subsidiaries? ☐ Yes ☐ No

6. Does the Applicant or any of its Subsidiaries permit or require employed lawyers to issue written legal opinions to outside parties in connection with sales, acquisitions or other transactions? ☐ Yes ☐ No

7. Does any employed lawyer serve on a due diligence committee or perform legal services regarding any merger, acquisition or a consolidation of or by the Applicant or any of its Subsidiaries? ☐ Yes ☐ No

8. Do the Applicant's employed lawyers appear in court on behalf of the Applicant or any of its Subsidiaries or any other party? ☐ Yes ☐ No

9. Does the employed lawyer provide personal legal services with respect to criminal, matrimonial or intellectual property law or estate/financial planning? ☐ Yes ☐ No

**Section L.  KIDNAP & RANSOM/EXTORTION** Coverage Requested?  Yes ☐ No ☐
Please complete this Section if applying for this coverage.

1. List locations of all resident employees and the number of employees at each country. Please include the USA. (A resident employee is any employee who resides in any one country for more then 6 cumulative months over a one year period of time). Please attach a separate schedule if necessary.

| COUNTRY | TOTAL # | | COUNTRY | TOTAL # |
|---|---|---|---|---|
| USA | | | | |
| | | | | |
| | | | | |

Is coverage desired for any of the following: independent contractors, leased or temporary employees, volunteers or students?  Yes ☐ No ☐
If Yes, please include these persons in the overall employee count above and specify classification(s) to be included in the quotations: _____

WESI000090

**CHARTIS**

2. List anticipated foreign travel by specific country and number of employees traveling to each country.  This would include all Non-US based citizens traveling to the USA.  (Travel means less than 6 months cumulative travel over a one year period of time).  Please attach a separate schedule if necessary.

| SPECIFIC COUNTRY | # OF EMPLOYEES |
|---|---|
|  |  |
|  |  |
|  |  |

Is coverage desired for any of the following: independent contractors, (leased or temporary employees, volunteers or students? Yes ☐  No ☐
If Yes, please include these persons in the overall employee count above and specify classification(s) to be included in the quotations: ____

3.  Has the Applicant or any person(s) to be covered under this policy ever received an actual, attempted or threatened kidnapping, extortion, detention, or hijacking attempt?                         Yes ☐  No ☐

4.  Please state any special security precautions or attach details: ____

5. Please list Director of Security and/or Risk Management contacts (Please include telephone number):
   Name: ____ Telephone: ____

**Section M.  REQUESTED POLICY COVERAGE DETAILS**
1.  Aggregate Limit Of Liability Requested for all Coverage Sections, other than Crime and Kidnap & Ransom/Extortion: $2,000,000.00 ($1,000,000.00 Anually)

2. Limits of Liability And Retention For Directors and Officers, Employment Practices, Fiduciary and Employed Lawyers Liability:

| Coverage | Separate Limit of Liability Requested: | Shared Limit of Liability Requested (Indicate coverages to be shared - n/a for Crime & KRE) | Retention Requested |
|---|---|---|---|
| Directors and Officers |  | $2,000,000.00 Shared with EPL | $25,000.00 |
| Employment Practices |  | $2,000,000.00 Shared with D & O | $75,000.00 |
| Fiduciary Liability |  |  |  |
| Miscellaneous Professional |  |  |  |
| Employed Lawyers |  |  |  |

3. Crime Limits of Liability and Deductibles:

| Insuring Agreement | Per Occurrence Limit of Liability | Deductible |
|---|---|---|
| Employee Theft | $____ | $____ |
| Forgery or Alteration | $____ | $____ |
| Inside Premises-Theft of Money &  Securities | $____ | $____ |
| Inside Premises - Robbery or Safe Burglary | $____ | $____ |
| Outside the Premises | $____ | $____ |
| Computer Fraud | $____ | $____ |
| Money Orders & Counterfeit Paper Currency | $____ | $____ |
| Clients Property | $____ | $____ |
| Funds Transfer Fraud | $____ | $____ |
| Guest Property | $____ | $____ |

WESI000091

**CHARTIS**

4. Kidnap and Ransom/Extortion Limit of Insurance for each Loss component: $ ____

## Section N. CURRENT INSURANCE DETAILS

| Coverage | Does the Applicant currently have such insurance? | Current Policy Expiration Date | Current Limit | Current Retention | Current Carrier | Continuity Date | Loss Experience in prior 3 years? If Yes attach details |
|---|---|---|---|---|---|---|---|
| Directors and Officers | ☒ Yes ☐ No | 10/31/14 | 1,000,000 | 25,000 | Ntl. Union | 10/31/14 | |
| Employment Practices | ☒ Yes ☐ No | | 1,000,000 | 25,000 | Ntl. Union | | |
| Fiduciary Liability | ☐ Yes ☐ No | | | | | | |
| Miscellaneous Professional Liability | ☐ Yes ☐ No | | | | | | |
| Employed Lawyers | ☐ Yes ☐ No | | | | | | |
| Kidnap and Ransom/Extortion | ☐ Yes ☐ No | | | | | | |
| Crime | ☐ Yes ☐ No | | | | | | |

*\* For MPL Submissions please provide five (5) years of historical information.*

1. Has any insurance carrier refused, canceled or non-renewed any Directors, Officer, Employment Practices, Fiduciary Liability, Miscellaneous Professional Liability or Employed Lawyers insurance coverage*? ☐ Yes ☒ No
   **\*MISSOURI APPLICANTS NEED NOT REPLY.** If "Yes," attach complete details including when and reason(s).
   **WE MAY REQUIRE THE FOLLOWING ADDITIONAL INFORMATION:**
   - Completed, Signed and Currently Dated Original Application.
   - Latest Applicant Financial Statement (with Treasurers Warranty Letter if not audited.)
   - Mainform Application from current carrier (if applicable.)
   - List of all Directors, Officers and Trustees of the Applicant and as to each provide any affiliation with other corporations.
   - For the five largest Pension Plans (in terms of total assets), copies of the latest CPA-audited financial statements, with investment portfolios. (If Plan assets are held in a master trust, submit master trust investment portfolio. If exempt from filing audited financial statements, then please submit the most recent Form 5500 for each such plan, with all attachments.)
   - For each Plan whose assets at any time within twelve (12) months prior to the inception date of this policy was comprised of ten percent (10%) or more of securities of the Applicant or any subsidiary or affiliate thereof, the latest CPA-audited financial statement (with investment portfolio). For any such plan, also a three year history of the "per-share" value, as well as the per-share value at the time shares were first purchased for the plan.
   - Written Plan description and latest financial statement, if applicable, for any non-qualified plans.
   - Specimen of Standard Contract
   - Marketing Material
   - Resumes of Key Professionals
   - MPL Supplemental Application (Subject to Class of Business)

NOTICE TO APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR, CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME AND MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO ARKANSAS, NEW MEXICO AND WEST VIRGINIA APPLICANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT, OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.
NOTICE TO COLORADO APPLICANTS: IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AUTHORITIES.
NOTICE TO DISTRICT OF COLUMBIA APPLICANTS: WARNING: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.
NOTICE TO FLORIDA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY IN THE THIRD DEGREE.
NOTICE TO KENTUCKY APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR

WESI000092



**CHARTIS**

OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

**NOTICE TO LOUISIANA APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**NOTICE TO MAINE APPLICANTS:** IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS.

**NOTICE TO MARYLAND APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WILLFULLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY AND WILLFULLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**NOTICE TO MINNESOTA APPLICANTS:** A PERSON WHO FILES A CLAIM WITH INTENT TO DEFRAUD OR HELPS COMMIT A FRAUD AGAINST AN INSURER IS GUILTY OF A CRIME.

**NOTICE TO NEW JERSEY APPLICANTS:** ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO NEW YORK APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

**NOTICE TO OHIO APPLICANTS:** ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

**NOTICE TO OKLAHOMA APPLICANTS:** WARNING: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY (365:15-1-10, 36 §3613.1).

**NOTICE TO OREGON APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR, CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH MAY BE A CRIME AND MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO PENNSYLVANIA APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO TENNESSEE, VIRGINIA AND WASHINGTON APPLICANTS:** IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

**NOTICE TO VERMONT APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR, CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH MAY BE A CRIME AND MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

Signed_____

Attest_____

(Applicant)

Date_____

Producer_____

Title_____          License_____

#_____

(Must be signed by President, Chairman,
Chief          Executive          Officer          or          Chief          Financial          Officer)

Address_____

THE FOLLOWING APPLIES TO APPLICANTS LOCATED IN THE STATES OF AR, MO, NY, NM and RI:

Please read the following statement carefully and sign where indicated. If a policy is issued, this signed statement will be attached to the policy.

The undersigned authorized officer of the Applicant hereby acknowledges that he/she is aware that the limit of liability contained in this policy shall be reduced, and may be completely exhausted, by the costs of legal defense and, in such

WESI000093

**CHARTIS**

event, the insurer shall not be liable for the costs of legal defense or for the amount of any judgment or settlement to the extent that such exceeds the limit of liability of this policy.

The undersigned authorized officer of the Applicant hereby acknowledges that he/she is aware that legal defense costs that are incurred shall be applied against the retention amount.

Signed_____
      (Applicant)

Date_____

Title_____
     (Must be signed by President, Chairman,
     Chief Executive Officer or Chief Financial Officer)

WESI000094

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

# G B D H

## Goldstein, Borgen, Dardarian & Ho

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

December 20, 2022

**Via E-Mail Only**

Joseph Salazar                                    Joe.Salazar@lewisbrisbois.com
Ryan Matthews                          Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

Re:   Rule 26(a) Disclosures for Defendants; Proposed Meet and Confer Regarding
       Supplementation

Dear Ryan,

I write to address two discovery-related issues.  I have tried several times to reach you over the last two weeks on other matters, without success.

Kindly respond to this correspondence by December 30, 2022, so that we can timely meet and confer and assess the need for discovery motions to compel Defendants to comply with their discovery obligations.

## 1.   Initial Disclosures under Rule 26(a)

First, Plaintiffs request that the Defendants who were added to this case in the Fifth Amended Complaint (ECF No. 136) prepare their Rule 26(a) disclosures and provide them to Plaintiffs in a timely manner.  Rule 26(a)(1)(A) requires that a party, without awaiting a discovery request, disclose (as relevant here): (1) individuals likely to have discoverable information, (2) copies of documents that the party is likely to use to support its claims or defenses, and (3) copies of any insurance agreements applicable to the case.

Rule 26(a)(1)(D) required the new defendants to make those disclosures within 30 days of receive service of the complaint and summons.  We have not received initial disclosures from any of those defendants.

With a court-ordered settlement conference on the horizon and the private mediation plans that we have discussed, it is particularly important for Defendants to disclose applicable insurance agreements without any further delay, and in any event no later than December 31, 2022.  To be clear, Defendants must provide copies of *all* applicable insurance agreements in place for any part of the liability period in this case (April 4, 2005, to the present).

We are willing to meet and confer about the schedule for Defendants to comply with the other components of their initial disclosure duties under Rule 26(a)(1)(A).

### 2. Supplementation

Second, we request that the Parties meet and confer to set a plan for supplementation of data and documents pursuant to Defendants' duties under Rule 26(e).

For the Yardi data, the Parties will need to reach out to Fitech Gelb and work with them to set a schedule. Let's touch base first to agree on a plan that will work for both sides.

Plaintiffs also request that Defendants supplement their productions in response to Terry Requests for Production 126 through 130 (Set 10, served on January 14, 2022) related to named Plaintiffs and current and former tenants who Plaintiffs have disclosed as witnesses. We suggest that Defendants make one supplemental production early on in the discovery period (*e.g.*, in January) and another supplemental production this summer.

Over the coming weeks, Plaintiffs will be reviewing the discovery records in this action to determine what other supplementation is necessary. We will follow up with you accordingly.

We look forward to hearing back from you and to working with you on these issues.

Sincerely,

Anne P. Bellows

cc:    Amber Hendrick
       Jahmy Graham
       Andrew Wolff
       Brenna Wood-Fitzpatrick
       Jesse Newmark
       Henrissa Bassey
       Laura Ho
       Stephanie Tilden
       Jocelyn Larkin
       Lindsay Nako

# EXHIBIT D

**Lindsay Nako**

| | |
|---|---|
| **From:** | Lindsay Nako |
| **Sent:** | Wednesday, January 11, 2023 3:27 PM |
| **To:** | Ryan.Matthews@lewisbrisbois.com; jahmy.graham@nelsonmullins.com |
| **Cc:** | Anne Bellows |
| **Subject:** | RE: Terry v. Wasatch - Agenda for 1/11 call |

Ryan and Jahmy,

Thanks for the call this afternoon. Here is a brief summary of our discussion. Please send any corrections that you may have.

1. Insurance policies required by Rule 26
    a. Defendants will be producing additional insurance agreements, including the Lexington Insurance policy.
    b. Ryan has a call with the client on Friday, 2 pm PT. He will send an email update on the status of production after the call.
2. Initial disclosures for the new defendants
    a. The defendants added in the Fifth Amended Complaint are adopting the initial disclosures made by the original Defendants on Dec. 16, 2016. They will not be producing any new information.
    b. Defendants are planning to produce individual management agreements between the property owners and Wasatch Property Management.
3. Supplementation of Yardi data
    a. Anne will reach out to Fitech Gelb to set up a joint call to start planning for supplemental production.
4. Supplementation of RFPDs 125-130
    a. Anne clarified that the request for supplementation includes RFPD 125, as well as 126-130.
    b. Ryan confirmed that Defendants will supplement those responses by Wednesday, January 18.
5. Plaintiff Terry's Third Set of Interrogatories
    a. Ryan confirmed that Defendants' response will be produced on  Monday, January 16.
6. Plaintiff Terry's Eleventh Set of RFPDs
    a. Ryan confirmed that Defendants' production will be produced on Thursday, January 19.
7. Hayward Village's discovery responses – Jahmy and Ryan will confer about Hayward Village's responses. Jahmy will contact Lindsay on Thursday to let her know whether to expect separate discovery responses from Hayward Village.

Thanks,
Lindsay

**Lindsay Nako** (she/her)│ **Impact Fund**
P: 510 845 3473 x. 307

---

**From:** Lindsay Nako
**Sent:** Tuesday, January 10, 2023 4:04 PM
**To:** Ryan.Matthews@lewisbrisbois.com; jahmy.graham@nelsonmullins.com
**Cc:** Anne Bellows <abellows@gbdhlegal.com>
**Subject:** Terry v. Wasatch - Agenda for 1/11 call

Hi Ryan and Jahmy,

Here is an agenda and some additional information for our call tomorrow at 1 pm.

1. Insurance policies required by Rule 26
   a. I believe the only insurance document that we have received to date is the attached document (WESI000001-094).
   b. Defendants' initial disclosures (also attached) reference a Commercial General Liability policy issued by Lexington Insurance Company. We have not received a copy of that policy.
   c. Please provide the Lexington policy and all other insurance agreements under which an insurance business may be liable to satisfy all or part of the judgment in this action or to indemnify or reimburse for payments made to satisfy the judgment, pursuant to Rule 26(a)(1)(A)(iv).
2. Initial disclosures for the new defendants
   a. Plaintiffs presume that the Defendants added in the Fifth Amended Complaint adopt the initial disclosures made by the original Defendants (attached). If this is the case, please confirm.
3. Supplementation of Yardi data
   a. Parties need to discuss a schedule for contacting Fitech Gelb.
4. Supplementation of RFPDs 126-130
   a. Defendants need to provide a timeline for production of supplemental documents.
5. Plaintiff Terry's Third Set of Interrogatories
   a. Response is due on  Monday, January 16
6. Plaintiff Terry's Eleventh Set of RFPDs
   a. Production is due on Thursday, January 19

If you have anything to add to the agenda, let us know.

Thanks,
Lindsay

**Lindsay Nako** | **Impact Fund**
2080 Addison Street, Suite 5│Berkeley, CA 94704
P: 510 845 3473 x. 307
Pronouns: she/her
Website | Map | Email



*This message is intended for the named recipients only. It may contain information protected by attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT E

**Lindsay Nako**

---

| | |
|---|---|
| **From:** | Lindsay Nako |
| **Sent:** | Wednesday, January 18, 2023 1:29 PM |
| **To:** | Ryan.Matthews@lewisbrisbois.com; jahmy.graham@nelsonmullins.com |
| **Cc:** | Anne Bellows |
| **Subject:** | RE: Terry v. Wasatch - Agenda for 1/18 call |

Dear Ryan and Jamy,

Thanks for the call this afternoon. Here is a brief summary of our discussion. Please send any corrections that you may have.

1. Insurance policies required by Rule 26
   a. Defendants are still looking for relevant policies starting in 2011. They have had some difficulty accessing the older policies and continue working on getting them.
   b. Plaintiffs will send over a joint discovery letter tomorrow afternoon for filing on Friday.
2. Supplementation of Yardi data
   a. Plaintiffs have reached out to Fitech Gelb to set up a joint call to start planning for supplemental production.
3. Supplementation of RFPDs 125-130
   a. Defendants will not be able to supplement production today. They have requested tenant files from the individual properties but have not received any yet. They will produce the documents on a rolling basis.
4. Plaintiff Terry's Eleventh Set of RFPDs
   a. Defendants are on track for production tomorrow, Thursday, January 19.
5. Hayward Village's discovery responses
   a. Defendants are still determining whether Hayward Village will provide separate discovery responses, update next week.

Best,
Lindsay

**Lindsay Nako** (she/her) │ **Impact Fund**
P: 510 845 3473 x. 307

---

**From:** Lindsay Nako
**Sent:** Tuesday, January 17, 2023 4:47 PM
**To:** Ryan.Matthews@lewisbrisbois.com; jahmy.graham@nelsonmullins.com
**Cc:** Anne Bellows <abellows@gbdhlegal.com>
**Subject:** Terry v. Wasatch - Agenda for 1/18 call

Dear Ryan and Jahmy,

Here is the agenda for our meeting tomorrow at 1 pm. Let me know if there is anything you would like to add.

1. Insurance policies required by Rule 26
   a. Defendants failed to provide an update on their production of additional insurance agreements on Friday, January 13, as promised.
   b. Plaintiffs request that all insurance agreements be produced by 5 pm tomorrow, Wednesday, January 18. We are preparing a joint discovery letter to circulate on Thursday morning for filing on Friday.

2. Supplementation of Yardi data
   a. Plaintiffs to provide update on contact with Fitech Gelb to set up a joint call and start planning for supplemental production.
3. Supplementation of RFPDs 125-130
   a. Defendants agreed to supplement their production by tomorrow, Wednesday, January 18.
4. Plaintiff Terry's Third Set of Interrogatories
   a. Plaintiffs agreed to a short extension of time to today, Tuesday, January 17. Defendants' responses have not yet been received by Plaintiffs.
   b. Plaintiffs request that Defendants serve their interrogatory responses no later than 5 pm tomorrow, Wednesday, January 18. We are preparing a joint discovery letter to circulate on Thursday morning for filing on Friday.
5. Plaintiff Terry's Eleventh Set of RFPDs
   a. Defendants' production is due on Thursday, January 19.
6. Hayward Village's discovery responses
   a. Defendants to provide update on whether Hayward Village will provide separate discovery responses.

Thanks,
Lindsay

**Lindsay Nako** │ **Impact Fund**
2080 Addison Street, Suite 5 │ Berkeley, CA 94704
P: 510 845 3473 x. 307
Pronouns: she/her
Website │ Map │ Email



*This message is intended for the named recipients only. It may contain information protected by attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT F

**Lindsay Nako**

―――――――――――――――――――――――――――――――――――――――――――――――

| | |
|---|---|
| **From:** | Lindsay Nako |
| **Sent:** | Wednesday, January 25, 2023 3:48 PM |
| **To:** | Ryan.Matthews@lewisbrisbois.com; jahmy.graham@nelsonmullins.com |
| **Cc:** | Anne Bellows |
| **Subject:** | RE: Terry v. Wasatch - Agenda for 1/25 call |

Ryan and Jahmy,

Thanks for the call this afternoon. My notes of our discussion are in blue below. Please send any corrections you may have.

1. Follow up on last week's responses to Terry RFPDs, Set 11, and Livingston Interrogatories, Set 3
    a. Plaintiffs have reviewed Defendants' responses and request the following responsive documents:
        i. Housing Choice Voucher ASA Letter
        ii. Housing Voucher Additional Services Agreement Letter – Visual Quick Step
        iii. How To Video for Housing Choice Voucher ASA Letter
        iv. Written communications to Section 8 tenants referenced in Defendants' response to Interrogatory No. 6
    b. Ryan said Defendants will gather these documents and endeavor to produce them by the end of the week (COB on Friday, 1/27).
2. Insurance policies required by Rule 26
    a. Hearing with Judge Barnes continued to 2/3 (Correction: Hearing is on 2/10)
    b. Meet & confer re updated joint statement, due 1/27 (Correction: Deadline is 2/3)
    c. Check-in re pre-2011 insurance agreements
    d. Ryan said Wasatch Property Management has pulled and reviewed insurance agreements going back to 2013. The agreements are currently being Bates stamped and may be produced by COB today (Weds, 1/25).
    e. Because WPM changed insurance brokers in 2013, they are having difficulty locating insurance agreements from before 2013 and may not be able to find/produce them.
    f. Ryan has asked all defendants to search for insurance agreements back to 2005, but has not received any documents yet.
3. Supplementation of Yardi data
    a. Call with Fitech Gelb tentatively set for Thursday, 2/26 at 12 pm PT – Ryan to confirm availability
    b. Ryan confirmed availability. Call with Fitech Gelb is on for 2/26 at 12 pm PT.
4. Supplementation of tenant files (RFPDs 125-130)
    a. Plaintiffs request an update on Defendants' production schedule
    b. Ryan had no update but will provide a written update shortly, hopefully by the end of this week. No progress yet but since the last production was in April 2022, he does not know if there are many more documents to produce.
5. Hayward Village's discovery responses
    a. Jahmy to provide update on whether Hayward Village will provide separate discovery responses
    b. Jahmy plans to send separate discovery responses for the damages discovery requests served over the last few weeks. Anne and Lindsay agreed to an extension to Tues, 2/7.

Thanks,
Lindsay

**Lindsay Nako** (she/her) | **Impact Fund**

P: 510 845 3473 x. 307

---

**From:** Lindsay Nako
**Sent:** Tuesday, January 24, 2023 3:27 PM
**To:** Ryan.Matthews@lewisbrisbois.com; jahmy.graham@nelsonmullins.com
**Cc:** Anne Bellows <abellows@gbdhlegal.com>
**Subject:** Terry v. Wasatch - Agenda for 1/25 call

Dear Ryan and Jahmy,

Looking forward to our call tomorrow, January 25. Here is a proposed agenda. If you have anything to add, let me know.

1. Follow up on last week's responses to Terry RFPDs, Set 11, and Livingston Interrogatories, Set 3
   a. Plaintiffs have reviewed Defendants' responses and request the following responsive documents:
      i. Housing Choice Voucher ASA Letter
      ii. Housing Voucher Additional Services Agreement Letter – Visual Quick Step
      iii. How To Video for Housing Choice Voucher ASA Letter
      iv. Written communications to Section 8 tenants referenced in Defendants' response to Interrogatory No. 6
2. Insurance policies required by Rule 26
   a. Hearing with Judge Barnes continued to 2/3
   b. Meet & confer re updated joint statement, due 1/27
   c. Check-in re pre-2011 insurance agreements
3. Supplementation of Yardi data
   a. Call with Fitech Gelb tentatively set for Thursday, 2/26 at 12 pm PT – Ryan to confirm availability
4. Supplementation of tenant files (RFPDs 125-130)
   a. Plaintiffs request an update on Defendantsproduction schedule
5. Hayward Village's discovery responses
   a. Jahmy to provide update on whether Hayward Village will provide separate discovery responses

Thanks,
Lindsay

**Lindsay Nako** (she/her) | **Impact Fund**
P: 510 845 3473 x. 307