Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | (Fax) (510) 835-1417

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Telephone: (510) 834-3300 | (Fax) (510) 834-3377

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Telephone: (510) 437-1863 | (Fax) (510) 437-9164

Jocelyn Larkin (SBN 110817)
jlarkin@impactfund.org
Lindsay Nako (SBN 239090)
lnako@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473 | (Fax) (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>       Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE REMEDIES**<br><br>Date:    December 8, 2023<br>Time:    10:00 a.m.<br>Dept:    Courtroom 3, 15th Floor<br>Before: Hon. Kimberly J. Mueller<br><br>Trial Date:   None Set |

1    LOGAN PARK APARTMENTS, LLC, LOGAN
     PARK APARTMENTS, LP, ASPEN PARK
2    HOLDINGS, LLC, BELLWOOD JERRON
     HOLDINGS, LLC, BELLWOOD JERRON
3    APARTMENTS, LP, BENT TREE
     APARTMENTS, LLC, CALIFORNIA PLACE
4    APARTMENTS, LLC, CAMELOT LAKES
     HOLDINGS, LLC, CANYON CLUB HOLDINGS,
5    LLC, COURTYARD AT CENTRAL PARK
     APARTMENTS, LLC, CREEKSIDE HOLDINGS,
6    LTD, HAYWARD SENIOR APARTMENTS, LP,
     HERITAGE PARK APARTMENTS, LP, OAK
7    VALLEY APARTMENTS, LLC, OAK VALLEY
     HOLDINGS, LP, PEPPERTREE APARTMENT
8    HOLDINGS, LP, PIEDMONT APARTMENTS,
     LP, POINT NATOMAS APARTMENTS, LLC,
9    POINT NATOMAS APARTMENTS, LP, RIVER
     OAKS HOLDINGS, LLC, SHADOW WAY
10   APARTMENTS, LP, SPRING VILLA
     APARTMENTS, LP, SUN VALLEY HOLDINGS,
11   LTD, VILLAGE GROVE APARTMENTS, LP,
     WASATCH QUAIL RUN GP, LLC, WASATCH
12   PREMIER PROPERTIES, LLC, WASATCH
     POOL HOLDINGS III, LLC,
13   and DOES 1-4,

14         Defendants.

885819.11

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...........................................................................................1

II.    PROCEDURAL BACKGROUND ..................................................................2

    A.    Certified Class Claims ........................................................................2

    B.    The Court's Finding of Liability on the Class Breach of Contract and UCL
        Claims..................................................................................................3

    C.    Remedies Discovery Regarding the Class Damages and Restitution ...................4

III.   STATEMENT OF FACTS .............................................................................5

    A.    The Undisputed Facts Establish the Amount of Excess Rent Class Members
        Paid. .....................................................................................................5

    B.    Wasatch's Incorrect Argument that It Can Deduct Its Costs from Class Damages
        and Restitution Does Not Create a Dispute of Fact..................................6

    C.    Plaintiffs' Prejudgment Interest Calculations Are Undisputed. ............................7

IV.    LEGAL STANDARD .....................................................................................8

V.     ARGUMENT .................................................................................................8

    A.    As a Matter of Law, the Amount of Contract Damages Owed to Class Members
        Is the Undisputed Amount of Excess Rent Class Members Paid. .........................9

    B.    Restoring The Full Amount of Additional Service Charges Paid by Class
        Members Is Also Proper Under the Unfair Competition Law. .............................10

    C.    As a Matter of Law, Defendants Are Not Entitled to Deduct the Costs of
        Providing Renters' Insurance and Media Packages from Amounts Owed to Class
        Members. ............................................................................................11

        1.    There Is No Legal Basis for Reducing Damages for Wasatch's Breach of
            Contract by the Costs Defendants' Incurred to Provide Services. ............12

        2.    Similarly, the UCL Does Not Support Reducing Restitution to Plaintiffs
            for the Illegal Excess Rent They Paid to Wasatch. .................................14

    D.    The Court Should Award the Class a Prejudgment Interest Rate of 10% Per
        Annum. ..............................................................................................14

VI.    CONCLUSION ............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................................................ 8

*Ariba, Inc. v. Nat'l Grid Corp. of the Philippines,*
No. C 09-4495 RS, 2010 WL 5477761 (N.D. Cal. Dec. 30, 2010) ......................... 8

*Boyce v. Indep. Brewers United Corp.,*
223 F. Supp. 3d 942 (N.D. Cal. 2016) ............................................................... 8, 10

*Evanston Ins. Co. v. OEA, Inc.,*
566 F.3d 915 (9th Cir. 2009) ................................................................................ 15

*In re First Alliance Mortg. Co.,*
471 F.3d 977 (9th Cir. 2006) ................................................................................ 12

*Kelly v. Denault,*
374 F. Supp. 3d 884 (N.D. Cal. 2018) .................................................................. 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) ................................................................................................ 8

*In re River Park Square Project Bond Litig.,*
No. CS-01-0127-EFS, 2003 WL 27374985 (E.D. Wash. Aug. 1, 2003) ................. 9

*Rodman v. Safeway Inc.,*
125 F. Supp. 3d 922 (N.D. Cal. 2015), aff'd, 694 F. App'x 612 (9th Cir. 2017).............. 8, 10

*Schneider v. County of San Diego,*
285 F.3d 784 (9th Cir. 2002) ................................................................................ 14

*Unocal Corp. v. United States,*
222 F.3d 528 (9th Cir. 2000) ................................................................................ 14

**California Cases**

*B. C. Richter Contracting Co. v. Con'l Cas. Co.,*
230 Cal. App. 2d 491 (1964) ............................................................................. 9, 12

*BSD, Inc. v. Equilon Enters., LLC,*
No. C 10-05223 SBA, 2013 WL 942605 (N.D. Cal. Mar. 11, 2013) ....................... 9

*Cortez v. Purolator Air Filtration Prods. Co.,*
23 Cal. 4th 163 (2000) ......................................................................................... 11

*People ex rel. Kennedy v. Beaumont Inv., Ltd.,*
    111 Cal. App. 4th 102, *as modified on denial of reh'g* (2003)..........................................11, 14

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) ....................................................................................................11

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.,*
    34 Cal. 4th 960 (2004) ...............................................................................................12, 13

*Nelson v. Spence,*
    182 Cal. App. 2d 493 (1960) ......................................................................................9, 12

*San Pasqual Band of Mission Indians v. State of California,*
    241 Cal. App. 4th 746 (2015) ..............................................................................................9

*Teachers' Ret. Bd. v. Genest,*
    154 Cal. App. 4th 1012 (2007) ..........................................................................................15

**Federal Statutes**

42 U.S.C. § 1437 f(c)(1)-(3) .......................................................................................................12

False Claims Act........................................................................................................................2

Unfair Competition Law.................................................................................................*passim*

**State Statutes**

Cal. Bus. & Prof. Code
    § 17200 ...............................................................................................................................2
    § 17203 .............................................................................................................................11

Cal. Civ. Code
    § 1638 ................................................................................................................................9
    § 3287(a) ....................................................................................................................14, 15
    § 3287(b) ..........................................................................................................................15
    § 3289 ..............................................................................................................................15
    § 3289(b) .............................................................................................................7, 14, 15
    § 3300 ................................................................................................................................2

**Rules**

Fed. R. Civ. P.
    23(b)(3)...........................................................................................................................2, 5
    56(a) ..................................................................................................................................8

iii

Pls.' Mem. of P. & A. in Supp. of Mot. for Partial Summ. J. re Remedies – Case No. 2:15-CV-00799 KJM-DB

885819.11

**Regulations**

24 C.F.R.

§ 982.308(f)(2) ................................................................................................. 13
§ 982.451(b)(4)(ii) ........................................................................................... 11
§ 982.503-982.508 ........................................................................................... 12

iv

Pls.' Mem. of P. & A. in Supp. of Mot. for Partial Summ. J. re Remedies – Case No. 2:15-CV-00799 KJM-DB

885819.11

# I.   **INTRODUCTION**

In this certified class action, the Court has already ruled that Defendant Wasatch Property Management ("Wasatch") has unlawfully charged Section 8 tenants prohibited excess rent in the form of "additional service charges" for items such as parking, in-unit washers and dryers, media packages, and renters' insurance.  Summ. J. Order 12, ECF No. 278.  The Court held that Wasatch's uniform and undisputed practices requiring Section 8 tenants to pay additional service charges to continue living in their homes made the additional charges unlawful excess rent amounts that violated both the Housing Assistance Payment Contracts ("HAP Contracts") and federal law.  *Id.*  Accordingly, the Court found that Plaintiffs established liability on the class-wide claims for breach of contract and violation of the Unfair Competition Law ("UCL").  *Id.* at 13-14.  The Court also held that "Plaintiffs were damaged in the amount of excess rent they were required to pay, which the court will determine in the second phase of this litigation."  *Id.*

The amount of class damages on the claims is ripe for partial summary judgment because there are no disputes of material fact as to the amounts that class members paid to Wasatch for these additional service charges.  The sole dispute regarding class damages is a purely legal question of whether Wasatch can deduct its costs for providing renters' insurance and media packages from the class's recovery.  The HAP Contract, California law governing contract damages and restitution of unlawful rent charges, and this Court's own orders all compel a rejection of Wasatch's contention that it can deduct those costs.  Consequently, the class is entitled to $2,800,185, the full amount paid by class members as excess rent in the form of additional service charges during the relevant period, plus prejudgment interest of $2,062,690 as of July 20, 2023 and $767.17 per day thereafter.[1]

Because the amount of class recovery may be determined as a matter of law on the undisputed factual record, Plaintiffs respectfully request that the Court grant partial summary judgment in these amounts.

---

[1] Plaintiffs have identified an additional 28 tenants who may qualify as class members, and whose payments are not included in these calculations.  Plaintiffs are working with the Parties' jointly retained data expert on this issue and expect to receive confirmation in the coming weeks if these 28 tenants qualify as class members.  If so, Plaintiffs will provide updated calculations incorporating those tenants' data.

885819.11

## II.    PROCEDURAL BACKGROUND

This case presents qui tam claims under the False Claims Act and class claims on behalf of two certified California classes, all based on Defendants' unlawful practices in collecting charges from Section 8 tenants in addition to the tenants' share of rent under the federally mandated HAP Contracts. *See generally* Summ. J. Order, ECF No. 278.  The case is currently in Phase 1, which addresses merits issues.[2]  *See* Order 5-6, ECF No. 135 (bifurcating the case).  Trial on outstanding merits issues, including class damages on the two claims for which the Court has already found liability, is anticipated to take place early next year.  *See* Stip. & Order 2, ECF No. 312 (setting final pretrial conference for December 1, 2023).  The instant motion seeks to streamline that trial by moving for summary judgment on the issue of class damages.

### A.    Certified Class Claims

On behalf of the certified California classes, Plaintiffs assert claims for (1) breach of contract, California Civil Code section 3300 *et seq.*; (2) violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750 *et seq.*; and (3) violation of the Unfair Competition Law ("UCL"), California Business and Professions Code section 17200 *et seq.*  As relevant here, the Court certified a Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)") class for damages or restitution consisting of tenants who, since April 14, 2011:

> (1) have been tenants at any of Defendants' California properties; (2) have participated in the 'Section 8' Housing Choice Voucher Program in connection with their tenancies at the California properties; and (3) have paid additional charges set forth in Additional Services Agreements in excess of their individual portions of the contract set forth in the HAP Contract.

Class Cert. Order 13, 37, ECF No. 92; Order 10, ECF No. 114 (clarifying the class period).  Plaintiffs' unopposed request to narrow the class period by setting an end date of November 23, 2022 is currently pending before the Court.  Mot. for Leave to Amend Compl., ECF No. 314.

---

[2] Phase 2, which will commence after the Phase 1 trial, will address vicarious liability, FCA penalties, and trebling of the FCA damages.  Order 5-6, ECF No. 135.

885819.11

**B.**      **The Court's Finding of Liability on the Class Breach of Contract and UCL Claims**

On November 23, 2022, the Court granted partial summary judgment to Plaintiffs and ruled that, as applied to Section 8 tenants, "the additional charges outlined in the Additional Service Agreement constitute impermissible rent in violation of both the HAP Contracts and federal law."  Summ. J. Order 13, ECF No. 278.  This ruling rested on undisputed facts demonstrating that Wasatch (1) used standard forms that conflated additional service charges with rent, (2) applied tenant payments so that any unpaid additional service charges were deemed unpaid rent, (3) required tenants to pay the additional charges for the duration of the lease and treated nonpayment of the charges as a default under the lease, and (4) served pay or quit notices on Section 8 tenants for nonpayment of additional service charges.  *Id.* at 9-13.

The Court also held that Plaintiffs established liability on the certified class claims for breach of contract and violation of the Unfair Competition Law.  Summ. J. Order 13-14.  The breach of contract claim is premised on Wasatch's violation of the HAP Contract.  Part C of the HAP Contract, known as the Tenancy Addendum, creates rights enforceable by the tenants and controls over any conflicting lease provisions or agreements between a Section 8 tenant and landlord.  *See id.* at 13; HAP Contract, Part C, ¶¶ 2(b), 14(b).[3]  As the Court explained, under the Tenancy Addendum, "the total paid by the tenant and the government may not exceed the maximum rent specified in the contract."  Summ. J. Order 13 (citing 24 C.F.R. § 982.451 and HAP Contract, Part C, ¶ 5).  Based on its finding that the additional service charges constituted unlawful excess rent, the Court awarded summary judgment as to liability on the class claims.  *Id.*  The Court further held that "Plaintiffs were damaged in the amount of excess rent they were required to pay, which the court will determine in the second phase of this litigation."  *Id.* at 13-14.

The Court likewise determined that Plaintiffs established liability on the class UCL claims, as Wasatch's "practice of treating [additional service] charges as rent, including requiring tenants to pay the charges or face eviction, violate federal regulations governing the Section 8 program."  Summ. J. Order 14 (citing 24 C.F.R. § 982.451(b)(4)(i)-(ii)).  The Court further held that Plaintiffs "suffered injury in the

---

[3] Bellows Declaration Exhibit 7 collects versions of the HAP Contract that were used by the U.S. Department of Housing and Urban Development over the period relevant to this case, as drawn from tenant documents produced by Wasatch. Citations to the HAP Contract will use the paragraph numbering reflected in the April 2015 version at pages 25-36 of Bellows Declaration Exhibit 7 with the initial bates WEAU00024213.

1    form of lost money or property as a result of defendants' unlawful practice of requiring plaintiffs to pay

2    additional charges beyond their share of rent set out in the HAP contracts," with the exact amount to be

3    determined in the remedies phase.  *Id.*

4    **C.      Remedies Discovery Regarding the Class Damages and Restitution**

5           Following the summary judgment order, the Court held a scheduling conference on December 2,

6    2022 to set deadlines for remedies discovery and the final pretrial conference.  On a meet and confer call

7    prior to that conference, Wasatch informed Plaintiffs for the first time that it would seek to reduce class

8    damages and restitution based on its costs of providing the additional services.  Bellows Decl. ¶ 2, filed

9    herewith.  Plaintiffs responded that Wasatch's costs were irrelevant to the calculation of damages and

10   restitution and requested that Wasatch provide authority for their position.  *Id.* at ¶  3.  Wasatch did not

11   respond to the request for authority.  *Id.*  The Parties agreed upon, and presented to the Court, a schedule

12   for remedies discovery to enable: an update to the data production from Wasatch's Yardi property

13   management database; discovery regarding the costs that Wasatch contends are relevant to calculating

14   the class's recovery; discovery regarding policy changes that Wasatch represented it was implementing

15   in response to the Court's summary judgment order; and expert disclosures regarding remedies issues.

16   *Id.* ¶ 4.  At the scheduling conference, the Court ordered the deadlines agreed upon by the Parties.  *See*

17   Minute Order, ECF No. 279 (setting deadlines).

18          Subsequently, Wasatch narrowed its cost-deduction argument to only two of the services at issue:

19   renters' insurance and media packages.  The Parties formalized this narrowed scope by stipulation, which

20   the Court signed on May 19, 2023.  Stip. & Order Re Damages Calc., ECF No. 308.

21          Fact discovery on remedies closed on June 16, 2023.  Stip. & Order to Extend Disc. Deadlines,

22   ECF No. 310.  The Parties disclosed expert reports regarding remedies on July 20, 2023.  Expert

23   discovery regarding remedies closed on September 8, 2023.[4]  Stip. & Order to Extend Expert & Pretrial

24   Deadlines, ECF No. 312.  The Final Pre-Trial Conference is set for December 1, 2023.  *Id.*

25

26   _____

27   [4] Plaintiffs have requested an extension of the discovery deadline for the limited purpose of allowing
     Wasatch to complete its production of documents responsive a subpoena to Wasatch's retained
     expert, James McCurley.  Am. Mot. to Compel, ECF No. 320.  This request and the motion to compel
28   production of the outstanding documents is set for hearing before Magistrate Judge Deborah Barnes on
     October 13, 2023.  *Id.*  The documents at issue go to evaluating McCurley's compliance with the

4

885819.11

1    As the record developed during remedies discovery reveals that there are no material factual

2    disputes related to class damages and restitution, and in compliance with the Court's order that "[a]ll

3    purely legal issues are to be resolved by timely pretrial motions" (Standing Scheduling Order 4, ECF No.

4    280), Plaintiffs bring this Motion for Partial Summary Judgment on Class Damages and Restitution.

### III.    STATEMENT OF FACTS

6    **A.    The Undisputed Facts Establish the Amount of Excess Rent Class Members Paid.**

7    The Court's summary judgment ruling on liability for the class breach of contract and UCL

8    claims was based on an undisputed record regarding uniform policies in place throughout the class

9    period.  *See* Summ. J. Order 3-5 *and record citations therein.*  Those policies and practices continued

10   unchanged until November 30, 2022, when Wasatch instituted the first of several changes made as a

11   result of the Court's November 23, 2022 summary judgment order.  Statement of Undisputed Facts, Fact

12   Nos. ("UF #") 1-2, filed herewith.  While Plaintiffs contend that Defendants' policy changes have been

13   insufficient to fully sever the causal link between tenants' payment of additional service charges and their

14   right to live in and make use of their rental unit, *see* Summ. J. Order 10-12 (defining rent), for the sake of

15   efficiency and clarity Plaintiffs have narrowed their damages claims to the period for which the facts

16   underlying the Court's finding of liability were unchanged, *i.e.*, the period ending on November 30,

17   2022.  *See* Mot. to Amend Compl., ECF No. 314 (seeking leave to amend the complaint accordingly and

18   to set a corresponding end date to the class definition).

19   The additional service charges paid by members of the Rule 23(b)(3) class during the class period

20   are documented in the tenant ledger data maintained by Defendants in their Yardi property management

21   database, which records all charges and payments to tenants.  UF 3.  There is no dispute as to the

22   accuracy of the Yardi ledger data.  *See* UF 6.

23   Plaintiffs' forensic accounting expert David Breshears analyzed the produced ledger data using

24   reliable methods and calculated that class members paid $2,800,185 in additional service charges for the

25   period from May 2011[5] through November 2022.  *See* UF 8.  Of that amount, $91,978 in class member

26   _____

27   standards of forensic accounting and do not affect any factual issues relevant to this Motion.

28   [5] Because the class period starts in the middle of the month (April 14, 2011) and Breshears'
     calculations are made on a monthly basis, Breshears calculated damages beginning in May 2011, the

payments are related to media or cable packages, and $1,088,081 are related to renters' insurance.  UF 9-10.  The remaining $1,620,126 in class member payments were for other additional service charges, which are not affected by Wasatch's requested cost deductions.  UF 11.  Although afforded an opportunity to disclose a rebuttal expert report, Wasatch has not disputed these calculations or amounts.  *See* Scheduling Orders, ECF Nos. 279 & 312 (providing for an expert rebuttal deadline); Bellows Decl. ¶ 26.

Plaintiffs recently discovered that the Yardi data produced in this action does not include a small number of tenants (28, as compared to over 2,500 class members) who have been identified as potential class members.  Bellows Decl. ¶ 12.  Plaintiffs are working with the jointly retained data expert to investigate whether these tenants in fact qualify as class members, and if so, obtain updated ledger and other data for these tenants.  *Id.* ¶ 13; Gelb Decl. ¶ 4.  If any of the additional 28 tenants do qualify as class members, Plaintiffs will update Breshears' calculations and so inform the Court.  Bellows Decl. ¶ 13.

## B.   **Wasatch's Incorrect Argument that It Can Deduct Its Costs from Class Damages and Restitution Does Not Create a Dispute of Fact.**

Wasatch's argument that it may deduct the costs it paid for renters' insurance and media packages is a pure legal argument, which does not create any material factual dispute.

Wasatch's evidence in support of its attempt to deduct costs from the class recovery is limited.  The sole calculations regarding those costs are contained in a spreadsheet, created by Wasatch employees for purposes of this litigation, that purports to summarize payments and costs related to renters' insurance and media packages on an individual class-member basis.[6]  Johnson 30(b)(6) Dep. 59:1-60:2, 72:17-73:2  Bellows Decl. Ex 2 (discussing the spreadsheet).

Wasatch also disclosed a three-page expert report by forensic accountant James McCurley.[7]  *See* Bellows Decl. Ex. 12.  McCurley does not offer any calculations—neither regarding renters'

---

first full month of the class period.  *See* Breshears Decl. ¶ 38 & Ex. 2.

[6] While Plaintiffs describe the spreadsheet for purposes of summarizing the record related to class damages, they do not concede that this document is admissible evidence nor that the numbers it contains are reliable and accurate.

[7] While Plaintiffs describe McCurley's report for purposes of summarizing the record related to class

insurance and media package payments by class members, nor regarding the alleged costs of providing those services. *See id.* at 1-2. Instead, McCurley describes his understanding that the Yardi data is "accurate and reliable" and states his belief that "specific payment amounts by tenants and the direct cost of both renters' insurance and media packages to Wasatch are readily available and can be reasonably measured during the relevant period." *Id.* at 2.

McCurley's report also provides a conclusory opinion that "a reasonable estimate of the damages incurred by the tenants for renter's insurance and media packages is the difference between the amounts paid to Wasatch as additional monthly service charges and the cost of those services incurred by Wasatch." *See id.* In deposition, McCurley admitted that he did not review any HAP Contracts in connection with this case, and that the terms of the HAP Contract had no bearing on his opinion. McCurley Dep. 88:1-10, 97:12-16, Bellows Decl. Ex. 6. Though he purported to opine on the measure of damages, McCurley also testified that whether "tenants were damaged in the amount of the excess rent they were required to pay," as the Court held in its Summary Judgment Order at 13, was "outside of his scope," though he "would not disagree with the Court, either way." McCurley Dep. 85:4-13, 122:6-123:16; *see also id.* at 85:4-87:8 (testifying that that passage of the Court's order did not inform his report in any way). McCurley's report does not offer an opinion on the measure of "excess rent." *See* McCurley Report.

In sum, none of Wasatch's evidence related to damages creates a genuine dispute of fact regarding the amount of additional service charges (*i.e.*, the amounts that this Court has already held constitute excess rent) paid by class members.

C.    **Plaintiffs' Prejudgment Interest Calculations Are Undisputed.**

Neither the HAP Contracts nor Wasatch's tenant leases provide a rate of interest. UF 13-14. Accordingly, Plaintiffs' expert David Breshears has calculated prejudgment interest on the excess rent payments from the date of payment using the rate of 10% per annum, as authorized by California Civil Code § 3289(b). *See* Sec. V.D. *infra.* As of July 20, 2023, the date of Breshears' damages report, prejudgment interest had accrued on class damages in the amount of $2,062,690. UF 15. Interest after

damages, they do not concede any aspect of the admissibility of the opinions set out in the report.

July 20, 2023 is accumulating at a rate of $767.17 per day.  UF 16.  Wasatch has offered no evidence to dispute these interest calculations.  Bellows Decl. ¶ 26.  If any of the additional 28 tenants qualify as class members, these calculations can be updated to include the prejudgment interest accruing on their damages.  UF 18-19.

## IV.   LEGAL STANDARD

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" as to a claim or defense, or "part of [a] claim or defense." Fed. R. Civ. P. 56(a).  The Court must view the factual record in the light most favorable to the non-moving party and draw all reasonable inferences in their favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law determines "which facts are material." *Id.*

## V.   ARGUMENT

The undisputed $2,800,185[8] of unlawful excess rent that class members paid to Wasatch in the form of additional service charges should be returned to class members as damages for Wasatch's breach of contract and restitution for Wasatch's violation of the UCL, with interest at 10% per annum through the date of judgment.  Both the Court's summary judgment order and California law on contract damages and UCL restitution require this result.  Because the correct method for measuring damages is a pure legal question and there are no relevant disputes of fact, the Court should award summary judgment to Plaintiffs on the amount of class damages and the measure of prejudgment interest.  *See Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 942-43 (N.D. Cal. 2015), aff'd, 694 F. App'x 612 (9th Cir. 2017) (granting summary judgment on method of calculating contract damages and prejudgment interest); *Boyce v. Indep. Brewers United Corp.*, 223 F. Supp. 3d 942, 943 (N.D. Cal. 2016) (determining the proper method of calculating damages on summary judgment); *Ariba, Inc. v.*

---

[8] Subject to adjustment if some of the additional 28 tenants identified after Breshears' calculations are confirmed to qualify as class members.

*Nat'l Grid Corp. of the Philippines*, No. C 09-4495 RS, 2010 WL 5477761 at \*3 (N.D. Cal. Dec. 30, 2010) (granting summary judgment on the amount of damages where party's damages calculation was easily confirmed by contract documents); *BSD, Inc. v. Equilon Enters.*, *LLC*, No. C 10-05223 SBA, 2013 WL 942605 (N.D. Cal. Mar. 11, 2013) (entering summary judgment on amount of damages for breach of contract); *In re River Park Square Project Bond Litig.*, No. CS-01-0127-EFS, 2003 WL 27374985, \*1 (E.D. Wash. Aug. 1, 2003) (describing the "method for measuring damages" as a "pure legal question").

A.  **As a Matter of Law, the Amount of Contract Damages Owed to Class Members Is the Undisputed Amount of Excess Rent Class Members Paid.**

The language of the HAP Contract fully resolves the measure of damages on the class contract claim.  The Tenancy Addendum—the portion of the HAP Contract that is controlling and enforceable by the tenants, and under which the contract claim arises (*see* Summ. J. Order 13-14 *& citations therein*)—prescribes the remedy when an owner breaches the HAP Contract by collecting excess rent.  HAP Contract, Part C, ¶ 5(f).  Namely, "[t]he owner must immediately return any excess rent payment to the tenant."  *Id*.  Here, the Court has already found that "the additional charges outlined in the Additional Services Agreements constitute impermissible rent" in violation of the HAP Contracts.  Summ. J. Order 13.  Those payments must be returned in full to the class.

California law requires that this unambiguous remedy control the measure of damages here.  Witkin, Summary 11th Contracts § 880 (2022) (courts enforce contract provisions that specify "particular remedies to be available in the event of a breach."); *San Pasqual Band of Mission Indians v. State of California*, 241 Cal. App. 4th 746, 758 (2015) ("The contract may specify particular remedies to be available in the event of a breach, in addition to or in substitution for those otherwise afforded by law.") (citations omitted); Cal. Civ. Code § 1638 (an unambiguous contract must be enforced according to its terms).  Here, where the contractual provision is clear and mandatory—"[t]he owner *must* immediately return any excess rent payments" (HAP Contract, Part C, ¶ 5(f))—that provision governs to the exclusion of any other remedial theories.  *See Nelson v. Spence*, 182 Cal. App. 2d 493, 497-98 (1960) (a remedial provision in a contract will control where its language is mandatory); *see also*, *e.g.*, *B. C. Richter Contracting Co. v. Con'l Cas. Co.*, 230 Cal. App. 2d 491,

1  500–01 (1964) (a party could not rely on quantum meruit to seek recovery inconsistent with the
2  remedy specified by the contract).

3      The Court's summary judgment order indicated the same conclusion.  After finding liability,
4  the Court noted that "Plaintiffs were **damaged in the amount of the excess rent they were required**
5  **to pay**, which the court will determine in the second phase of this litigation."  Summ. J. Order 13-14
6  (emphasis added).  As the Court has already held that the additional charges were excess rent,
7  Plaintiffs' undisputed calculation of those payments from the first full month of the class period
8  through November 2022 is the measure of damages for the class breach of contract claim.

9      That there are 28 additional tenants who may qualify as members of the class does not create a
10  dispute of fact.  The calculation of these possible class members' damages would proceed in the same
11  manner as Plaintiffs' undisputed method of calculating damages for the other class members: their
12  damages equal the amount of Additional Service charges they paid from May 2011 through November
13  2022, which can be readily calculated based on data in Wasatch's Yardi database.  Summary judgment
14  on the method for calculating class damages is appropriate now, as is a ruling on the amount of
15  damages owed to the class members who have already been identified.  *See Rodman*, 125 F. Supp. 3d
16  at 933-35 (granting summary judgment on damages model, which could be "calculated
17  mechanically"); *Boyce*, 223 F. Supp. 3d at 943 (determining the proper method of calculating damages
18  on summary judgment).  Plaintiffs will provide updated calculations to the Court, if appropriate, as
19  soon as they are available, or otherwise confirm that no updates are necessary.

20      Because there is no dispute as to the amounts paid by class members as excess rent in the form
21  of additional service charges, this amount, as a matter of law, is the amount of damages owed to the
22  class for their breach of contract claim.

23  **B.**  **Restoring The Full Amount of Additional Service Charges Paid by Class Members Is**
       **Also Proper Under the Unfair Competition Law.**
24
25      The undisputed amount of excess rent paid by class members to Wasatch between May 2011
       and November 2022 is also the appropriate amount of restitution due to class members as a
26
       consequence of Wasatch's violation of the UCL.  This result follows from the Court's order granting
27
28  summary judgment on Plaintiffs' UCL claim, which is in accord with California case law.

10

The Court's summary judgment order correctly defined Plaintiffs' injury under the UCL as the "lost money or property as a result of defendants' unlawful practice of requiring plaintiffs to pay additional charges beyond their share of rent set out in the HAP contracts."  Summ. J. Order 14. Because there is no dispute about the amounts of money or property class members lost as unlawful excess rent paid to Wasatch, this sum is the appropriate amount of class restitution.

The Court's ruling accords with case law regarding restitution under the UCL.  The UCL allows courts to "make such orders or judgments . . . as may be necessary . . . to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."  Cal. Bus. & Prof. Code § 17203; *see also Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 180 (2000) (the court's discretion to award restitution under § 17203 is "very broad").  Class members have a recognized interest in the excess rent charges they paid as a result of Wasatch's unlawful practice of charging unlawful excess rent, which under both the Tenancy Addendum and federal regulation must be immediately returned to them.  *See* 24 C.F.R. § 982.451(b)(4)(ii) (an owner "must immediately return any excess rent payment to the tenant."); HAP Contract, Part C, ¶ 5(f) (same).  Full restitution of the unlawful excess rent collected by Wasatch, *i.e.*, the additional service charges paid, would "restore the status quo by returning to the Plaintiff funds in which he or she has an ownership interest."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003).

The return of unauthorized rent charges paid as UCL restitution was approved in *People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 135, *as modified on denial of reh'g* (2003).  In that case, a California court of appeal affirmed the restitution of rents paid to a defendant landlord in excess of amounts allowed by local regulations because doing so "accomplishe[d] the statutory objective of restoring to the victims sums acquired through defendants' unfair practices."  *Id.*

Thus, either as damages or as restitution, class members are entitled to receive the full amount of excess rent they paid as a result of Wasatch's unlawful practices.

C.   **As a Matter of Law, Wasatch Is Not Entitled to Deduct the Costs of Providing Renters' Insurance and Media Packages from Amounts Owed to Class Members.**

Although Wasatch argues that it is entitled to deduct from the class recovery the costs of

11

providing renters' insurance and media packages to class members, there is no basis in law or contract for this argument.  Any evidence Wasatch may have as to costs is thus irrelevant for the purposes of measuring contract damages or restitution under the UCL.  Wasatch's erroneous theory cannot be presented to the jury and does not prevent summary judgment on the amount of class wide damages or restitution.  *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 1003 (9th Cir. 2006) (a jury cannot base a damages calculation on an improper theory of damages).

### 1. There Is No Legal Basis for Reducing Damages for Wasatch's Breach of Contract by the Costs Defendants' Incurred to Provide Services.

Wasatch has intimated that measuring damages as the full amount of excess rent would represent a "windfall" to class members because it grants class members more than the benefit of their bargain.  Bellows Decl. ¶ 6.  This theory must be rejected because the mandatory provisions of the Tenancy Addendum require the remedy requested by Plaintiffs—the return of the "excess rent payments to the tenant[s]."  HAP Contract, Part C, ¶ 5(f).  For all the reasons outlined above, California law accords the unambiguous, mandatory language of the Tenancy Addendum controlling authority on this issue.  *See* Sec. V.A, *supra*.  Other remedial theories must be rejected as irrelevant. *See Nelson*, 182 Cal. App. 2d at 497-98; *B. C. Richter Contracting Co.*, 230 Cal. App. 2d at 500–01.

Wasatch's theory is also fatally flawed in other respects.  The assumption that the "benefit of the bargain" must take into account the costs to Wasatch to provide the services misunderstands the actual bargain and breach at issue.  *See Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 971 (2004) (in determining damages "the first question is: What performance did the parties bargain for?").  The limitations on rent that the Section 8 tenant could be required to pay, set at a portion of a total rent amount deemed reasonable by the public housing agencies administering the Section 8 program, is at the very heart of the bargain captured in the HAP Contract.  *See* 42 U.S.C. § 1437f(c)(1)-(3) (the HAP Contract "establish[es] the maximum monthly rent … the owner is entitled to receive" and the tenants' share is calculated according to federal law); 24 C.F.R. §§ 982.503-982.508 (requiring PHA to determine reasonable rent and tenants' share of rent); *see also Kelly v. Denault*, 374 F. Supp. 3d 884, 892 (N.D. Cal. 2018) (the collection of excess side-payments "affect[s] one of the most basic terms of the Contract") (quoting *U.S. ex rel Sutton v. Reynolds*, 564 F. Supp. 2d

1183, 1189 (D. Or. 2007).  Those limitations go to the very purpose of the program: to provide

affordable housing to low-income tenants.  *See U.S. ex rel. Carmichael v. Gregory¸* 270 F. Supp. 3d

67, 71 (D.D.C. 2017) (purpose of Section 8 program of "aiding low-income families in obtaining a

decent place to live" is "clearly undermined" when tenants are charged excess rent) (quoting 42 U.S.C.

§ 1437f(a)).  For this reason, they are enshrined in the Tenancy Addendum, which strictly prohibits

owners from "charg[ing] or accept[ing], from the family or from any other source, any payment for

rent of the unit in addition to the rent to owner."  HAP Contract, Section C, ¶ 5(e).  This is the

performance that Wasatch bargained for.  The required "return of the excess rent payments" restores

class members to the benefits the HAP Contract secured on their behalf.  *Id.* ¶ 5(f); *see Lewis Jorge*

*Constr. Mgt., Inc*, 34 Cal. 4th at 971.

Wasatch's position relies on its unfounded belief that the additional charges can only be

understood as consideration for the amenities and services listed on the ASAs.  That is an assumption

that the Court has twice "'rejected outright.'"  *See* Summ. J. Order 10 (quoting and citing Order on

Mot. to Dismiss 6, ECF No. 61).  Moreover, to the extent there is a conflict between the Tenancy

Addendum and any other agreement between the landlord and tenant, the Tenancy Addendum prevails.

HAP Contract, Section C, ¶ 14(b)[9]; 24 C.F.R. § 982.308(f)(2).

There is no "windfall" to tenants by enforcing their federally protected rights.  Wasatch—not

class members—implemented policies treating the additional charges as rent, and it did so for its own

business advantage in eliciting payments from tenants.  *See, e.g.*, Johnson Decl. ¶ 8, ECF No. 78-4

("Over the course of many years, it has been our experience that Section 8 tenants are motivated to

stay in the Section 8 Program and, given the chance, will clear up shortfalls.").  As the Court held,

these improper policies violated class members' rights under the HAP Contract.  Summ. J. Order 12.

For all of these reasons, Wasatch's incorrect legal contention that it should be allowed to

deduct its costs of providing renters' insurance and media packages from the contract damages owed to

---

[9] "In the case of any conflict between the provisions of the tenancy addendum as required by HUD, and any other provisions of the lease or any other agreement between the owner and the tenant, the requirements of the HUD-required tenancy addendum shall control."

885819.11

class members does not create a dispute of material fact, and summary judgment is proper on the amount of class contract damages.

### 2. Similarly, the UCL Does Not Support Reducing Restitution to Plaintiffs for the Illegal Excess Rent They Paid to Wasatch.

Neither the UCL nor the Court's Summary Judgment Order support Wasatch's attempt to consider their costs in determining the amount of restitution owed to the class.  The Court found that class members' injury was the "lost money or property as a result of defendants' unlawful practice." Summ. J. Order 14.  Consequently, the amount required to restore the victims of Wasatch's unlawful practice to the status quo is the amount of the unlawful excess rent.

Where, as here, restitution is a remedy for Wasatch's statutory violation, courts "are not concerned with restoring the violator to the status quo ante." *People ex rel. Kennedy*, 111 Cal. App. 4th at 134-35.  Rather, the goal of restitution is "to again place the *victim* in possession of that money." *Id.* (emphasis in original) (citing *Cortez*, 23 Cal. 4th at 177).  As a result, the Court should restore class members' interests in the excess rent they lost to Wasatch without considering any amounts Wasatch paid as part of their unlawful practice.

### D. The Court Should Award the Class a Prejudgment Interest Rate of 10% Per Annum.

As discussed above, class members are entitled to contract damages as a matter of law in the amount of $2,800,185, plus any additional amounts for recently identified potential class members. California law also entitles class members to prejudgment interest on those contract damages at a rate of 10% per annum.  *See* Cal. Civ. Code §§ 3287(a), 3289(b).  Because the calculation of this interest is not in dispute, the Court should award Plaintiffs prejudgment interest in the amount of $2,062,690 for interest accrued through July 20, 2023, plus daily accumulating interest of $767.16 until the date of judgment, plus prejudgment interest on the damages of any confirmed additional class members.

Prejudgment interest "serves to compensate [the prevailing wronged party] for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *Schneider v. County of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002) (internal quotation omitted).  California Civil Code section 3287(a) mandates an award of prejudgment interest "whenever a plaintiff prevails in a breach of

14

885819.11

contract claim for an amount of damages that is certain or is capable of being made certain by calculation." *Unocal Corp. v. United States*, 222 F.3d 528, 541 (9th Cir. 2000).  Section 3287(a) allows recovery of interest from the time the creditor's right to recover is vested, meaning "the time that the amount of damages become certain or capable of being made certain, not the time liability to pay those amounts is determined." *Evanston Ins. Co. v. OEA, Inc.*, 566 F.3d 915, 921 (9th Cir. 2009).  Where the rate of prejudgment interest is not specified in a contract, California law applies a prejudgment interest rate of 10% per annum.  Cal. Civ. Code § 3289; *see Teachers' Ret. Bd. v. Genest*, 154 Cal. App. 4th 1012, 1045 (2007).

As discussed above, the amount of class members' damages is certain and capable of being made certain, making an award of prejudgment interest appropriate. Cal. Civ. Code § 3287(a).  Class members' right to recover began on the date that they paid the unlawful charges, at which time the amount of damages became "capable of being made certain."  *See Evanston*, 566 F.3d at 921.  Neither the HAP Contracts nor Wasatch's tenant leases specify an interest rate for damages in the event of breach.  UF 13-14.  Accordingly, the class is entitled to prejudgment interest at a rate of ten percent, calculated from the day class members paid the unlawful charges until the day judgment is entered.

Plaintiffs have produced an expert report calculating prejudgment interest using the rate of 10% per annum, as authorized by California Civil Code section 3289(b).  *See* Breshears Decl. at 3.  The report also calculates the daily accumulating interest, as authorized by California Civil Code section 3287(b).  *Id*.  According to the Breshears report, the total interest due to the class from the date of payment through the date of his report, July 20, 2023, is $ 2,062,690.  *Id*.  Interest after July 20, 2023 is accumulating at a rate of $767.17 per day.[10]  *Id*.  Wasatch has not offered any evidence to dispute these interest calculations.  UF 12.

## VI.   **CONCLUSION**

For the reasons described above, Plaintiffs respectfully request that the Court grant their motion for partial summary judgment and order Wasatch to pay $2,800,185 as damages and restitution plus

---

[10] Plaintiffs will update both the total prejudgment interest owed and the daily rate if any of the recently-identified 28 tenants qualify as class members.

885819.11

$2,062,690 in interest through July 20, 2023, and $767.17 per day in interest between July 20, 2023, and the date of judgment.  Additionally, Plaintiffs request that the Court order that, should any of the additional 28 tenants be determined to be class members, Wasatch is to pay damages and restitution, plus interest, to each of these remaining class members according to the same method of calculation applied to the rest of the class.

Dated:  October 6, 2023

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

Anne P. Bellows

Attorneys for Plaintiffs and Relators

885819.11