Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | (Fax) (510) 835-1417

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Telephone: (510) 834-3300 | (Fax) (510) 834-3377

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Telephone: (510) 437-1863 | (Fax) (510) 437-9164

Jocelyn Larkin (SBN 110817)
jlarkin@impactfund.org
Lindsay Nako (SBN 239090)
lnako@impactfund.org
THE IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473 | (Fax) (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**DECLARATION OF DAVID BRESHEARS**<br><br>Date:       December 8, 2023<br>Time:       10:00 a.m.<br>Dept:       Courtroom 3, 15th Floor<br>Before:   Hon. Judge Kimberly J. Mueller<br><br>Trial Date:    None Set |

LOGAN PARK APARTMENTS, LLC, LOGAN
PARK APARTMENTS, LP, ASPEN PARK
HOLDINGS, LLC, BELLWOOD JERRON
HOLDINGS, LLC, BELLWOOD JERRON
APARTMENTS, LP, BENT TREE
APARTMENTS, LLC, CALIFORNIA PLACE
APARTMENTS, LLC, CAMELOT LAKES
HOLDINGS, LLC, CANYON CLUB HOLDINGS,
LLC, COURTYARD AT CENTRAL PARK
APARTMENTS, LLC, CREEKSIDE HOLDINGS,
LTD, HAYWARD SENIOR APARTMENTS, LP,
HERITAGE PARK APARTMENTS, LP, OAK
VALLEY APARTMENTS, LLC, OAK VALLEY
HOLDINGS, LP, PEPPERTREE APARTMENT
HOLDINGS, LP, PIEDMONT APARTMENTS,
LP, POINT NATOMAS APARTMENTS, LLC,
POINT NATOMAS APARTMENTS, LP, RIVER
OAKS HOLDINGS, LLC, SHADOW WAY
APARTMENTS, LP, SPRING VILLA
APARTMENTS, LP, SUN VALLEY HOLDINGS,
LTD, VILLAGE GROVE APARTMENTS, LP,
WASATCH QUAIL RUN GP, LLC, WASATCH
PREMIER PROPERTIES, LLC, WASATCH
POOL HOLDINGS III, LLC,
and DOES 1-4,

　　　Defendants.

886086.1

I, David Breshears, declare as follows:

**Introduction**

1. The facts set forth herein are personally known to me, and I have firsthand knowledge of the same. If called as a witness, I could and would competently testify herein.

2. The opinions expressed in this report are my present opinions subject to the following reservations. Amendments or additions to this report may be required as a result of developments prior to or at trial, including, but not limited to, the discovery of new evidence, expert discovery, and/or the testimony of any other witness in deposition or at trial.

3. I anticipate using at trial selected exhibits attached to this report, documents reviewed in connection with their preparation, enhanced graphic versions of selected exhibits included in this report (i.e., redrafted to improve their presentation quality) and additional graphics illustrating concepts described in this report.

**Assignment**

4. I have been retained by Plaintiffs' Counsel in the matter of *United States ex rel. Denika Terry, et al. vs. Wasatch Advantage Group, LLC, et al.* Plaintiffs and Relators Denika Terry, Roy Huskey III, and Tamera Livingston, who currently reside or have resided in Defendants' rental properties and are or were Section 8 tenants, have alleged that Defendants' policy and practice of charging and collecting additional service payments from Section 8 tenants beyond the rent amounts agreed to in their Housing Assistance Payment Contracts is unlawful. I understand the Court held on November 23, 2022 that Defendants' additional service charges to Section 8 tenants are unlawful excess rent charges, and that it found that Plaintiffs had established liability on the certified California class claims for breach of contract and violation of the Unfair Competition Law.[1]  I understand that the amount Defendants owe to the California class will be resolved at trial, along with liability and damages for the remaining claims in the case.

5. I previously issued an expert report, dated January 28, 2022, where I reviewed records from Defendants' centralized Yardi property management database to (a) assess the extent of additional service charges to and payments by Class Members[2], (b) assess the extent of additional service charges to and payments by Section 8 tenants, as well as housing assistance payments made by the Section 8 program on behalf of relevant tenants for the

---

[1] Order on Summary Judgment at 9-14, ECF No. 278.
[2] I understand that Class Members are Section 8 tenants at Defendants' California properties who have paid additional service charges since April 14, 2011.

False Claims Act, and (c) determine the extent of renter's insurance payments to Defendants by Section 8 tenants who were subject to Defendants' policy of requiring tenants to have renter's insurance, according to the assumptions I was provided by Plaintiffs' Counsel.

6. For purposes of this report, I have been asked to review the records from Defendants' centralized Yardi property management database, as they relate to Class Members' claims for breach of contract, violation of the Unfair Competition Law, Bus. & Profs. Code §§ 17200 et seq., and violation of the Consumer Legal Remedies Act, Civil Code § 1750, to assess the extent of charges made to Section 8 tenants pursuant to additional service agreements, and amounts paid by Section 8 tenants towards additional service charges during the class period. Class Members are current and former tenants of Defendants' California rental properties who have both participated in Section 8 in connection with their tenancies and paid additional service charges from April 14, 2011. These additional service charges include (a) renter's insurance, (b) washer/dryer rental, (c) covered parking charges, (d) media package, (e) garage rental, (f) pet rent, (g) month to month fee, (h) rent plus service, (i) storage rental, (j) security alarm system, (k) uncovered parking, and (l) common garage.

7. I have also been asked to review the records from Defendants' centralized property management database as they relate to the alleged violation of the False Claims Act, 32 U.S.C. § 3729(a) ("FCA"), to assess the extent of additional service charges and payments by Section 8 tenants, and the amount of housing assistance payments made by the Section 8 program on behalf of relevant tenants at Wasatch's properties in California, Arizona, Utah, and Washington during the FCA liability period.

8. If additional data or other information is provided, or if there are any rulings or findings by the Court relevant to my analysis, I can update my analysis accordingly.

**Summary of Expert Qualifications**

9. I am a Certified Public Accountant, licensed in the State of California, and Certified in Financial Forensics. I am currently a partner at Hemming Morse, LLP, CPAs, Forensic and Financial Consultants. My work in the accounting profession includes experience as an auditor and as a consultant. My expert qualifications, including my testimony, are described in **Exhibit A** hereto.

10. I have been a forensic and financial consultant for over 20 years, specializing in litigation consulting, economic and financial research, and database analysis. I have consulted on and/or testified in over 450 matters involving class action-related disputes, including those arising under state and federal law. I have performed analyses for large and small companies in the private sector, public companies, and government agencies. These have involved

reviewing contemporaneous cost accounting systems and their structures, as well as analyzing voluminous system generated records as they relate to the facts at issue in each case.

11. My firm has been compensated for my review and analysis in this matter at my standard hourly rate of $570 per hour. Others have assisted me in my work and my firm has been compensated for their work at their standard hourly rates.

**Summary of Opinions**

12. I have calculated, based on the payments for additional service charges in the tenant ledger files, the following amounts paid by 2,545 Class Members in California from May 2011 through November 2022, totaling $2,800,185.

| Additional Service Charge | Payments |
|---|---|
| Media Package (Cable) Payments | $      91,978 |
| Common Garage Payments | $           75 |
| Garage Rental Payments | $    229,246 |
| Renter's Insurance Payments | $ 1,088,081 |
| Month to Month Fee Payments | $      1,389 |
| Covered Parking Payments | $    491,243 |
| Pet Rent Payments | $    133,190 |
| Rent Plus Service Payments | $      70,281 |
| Storage Rental Payments | $      76,939 |
| Washer/Dryer Rental Payments | $    617,763 |
| **Total** | **$ 2,800,185** |

13. Based on these payments (as discussed above in paragraph 12), I have calculated, through July 20, 2023, simple interest at 10% of approximately $2,062,690, or alternatively, simple interest at 7% of approximately $1,443,883.

| Prejudgment Interest | Additional Service Payments | Interest | Total | Daily Interest Thereafter |
|---|---|---|---|---|
| 10% | $          2,800,185 | $ 2,062,690 | $ 4,862,875 | $          767.17 |

| Prejudgment Interest | Additional Service Payments | Interest | Total | Daily Interest Thereafter |
|---|---|---|---|---|
| 7% | $          2,800,185 | $ 1,443,883 | $ 4,244,068 | $          537.02 |

14. I have calculated, based on the payments for Housing Assistance Charges in the tenant ledger files, the following housing assistance payments made by the Section 8 program on behalf of

6,026 tenants who were charged for additional service charges in California, Washington, Utah, and Arizona from February 2006 through November 2022.

| Year | Number of Tenants | Number of Housing Assistance Payments[3] | Amount of Housing Assistance Payments |
|------|------------------|------------------------------------------|----------------------------------------|
| 2006 | 1,145 | 9,558 | $ 4,548,021 |
| 2007 | 1,252 | 10,020 | $ 5,146,636 |
| 2008 | 1,053 | 9,446 | $ 5,192,774 |
| 2009 | 1,080 | 9,276 | $ 5,304,396 |
| 2010 | 1,108 | 9,623 | $ 5,530,475 |
| 2011 | 1,090 | 10,264 | $ 5,967,870 |
| 2012 | 1,183 | 10,639 | $ 6,259,570 |
| 2013 | 1,269 | 11,552 | $ 6,949,909 |
| 2014 | 1,357 | 12,031 | $ 7,296,888 |
| 2015 | 1,499 | 12,654 | $ 8,084,145 |
| 2016 | 1,602 | 14,168 | $ 9,448,787 |
| 2017 | 1,074 | 9,655 | $ 6,555,656 |
| 2018 | 1,004 | 9,627 | $ 6,887,373 |
| 2019 | 988 | 9,605 | $ 7,244,066 |
| 2020 | 920 | 7,927 | $ 6,521,480 |
| 2021 | 845 | 8,076 | $ 7,056,789 |
| 2022 | 903 | 8,219 | $ 7,547,372 |
| **Total** | **6,026** | **172,340** | **$ 111,542,206** |

15. Of the $111,542,206 in housing assistance payments, I have calculated, based on data in the tenant ledger files, the following numbers and amounts related to tenants at properties not participating in the federal Low Income Housing Tax Credit Program who paid renter's insurance fees to Defendants while subject to a requirement to maintain renter's insurance, using two alternative time-periods.

| Time Period | Number of Tenants | Number of Housing Assistance Payments | Renter's Insurance Payments By Tenants | Amount of Housing Assistance Payments |
|-------------|-------------------|---------------------------------------|----------------------------------------|----------------------------------------|
| Feb. 2006 to Nov. 2020 | 3,405 | 94,083 | $1,425,207 | $56,167,995 |
| *Or* | | | | |
| Dec. 2011 to Nov. 2020 | 1,959 | 52,907 | $858,624 | $34,201,478 |

---

[3] The number of Housing Assistance Payments for the relevant time periods has been calculated as the number of tenant months with a net Housing Assistance Payment.  Because each of these months included a net Housing Assistance Payment, these numbers may be conservative as multiple payments within a month would only be counted as one payment.

16. Of the $111,542,206 in Housing Assistance Payments calculated in paragraph 14 above, I have calculated, based on data in the tenant ledger files, the following numbers and amounts related to tenants who paid washer/dryer rental fees to Defendants in violation of the governing Housing Assistance Payments Contract, Part A, "Utilities and Appliances" section, using two alternative time-periods.   I am informed that the relevant language in the Housing Assistance Payments Contract was changed effective July 1, 2019.  Therefore, I have excluded washer and dryer charges and payments after June 30, 2019.

| Time Period | Number of Tenants | Number of Housing Assistance Payments | Washer/Dryer Rental Payments by Tenants | Amount of Housing Assistance Payments |
|---|---|---|---|---|
| Feb. 2006 to June 2019 | 945 | 26,559 | $1,034,122 | $15,531,301 |
| *Or* | | | | |
| Aug. 2017 to June 2019 | 296 | 4,058 | $144,043 | $2,533,557 |

17. Of the $111,542,206 in Housing Assistance Payments, I have calculated, based on data in the tenant ledger files, the following numbers and amounts related to tenants who, based on assumptions provided to me by counsel, I understand to have paid media package fees, washer/dryer rental fees, and/or parking-related fees to Defendants while subject to a requirement to pay these mandatory charges from February 2006 through December 2022.

| Property Name | Mandatory Charge | Number of Tenants | Number of Housing Assistance Payments | Additional Service Payments by Tenants | Amount of Housing Assistance Payments |
|---|---|---|---|---|---|
| Broadmoor Village Apartments | Media Package | 11 | 232 | $ 20,535 | $ 194,735 |
| Canyon Ridge Apartments | Media Package | 37 | 608 | $ 44,337 | $ 613,627 |
| Courtyard at Central Park | Media Package | 285 | 6,093 | $ 215,671 | $ 2,882,983 |
| Devonshire Court East | Media Package | 2 | 7 | $ 623 | $ 5,750 |
| Devonshire Court West | Media Package | 2 | 48 | $ 4,536 | $ 10,210 |
| Falls at Hunters Pointe | Media Package | 5 | 119 | $ 10,322 | $ 120,750 |
| Goldstone Place Apartments | Media Package | 2 | 16 | $ 400 | $ 5,731 |
| Landing at Fancher Creek | Media Package | 538 | 13,489 | $ 475,914 | $ 6,086,540 |
| Lofts at 7800 | Media Package | 1 | 3 | $ 217 | $ 2,992 |
| Metropolitan Place Apartments | Media Package | 2 | 48 | $ 3,792 | $ 63,474 |
| Rio Seco Apartments | Media Package | 37 | 575 | $ 36,358 | $ 386,280 |
| California Place Apartments | Washer/Dryer | 22 | 323 | $ 12,977 | $ 184,607 |
| Chesapeake Commons Apartments | Washer/Dryer | 177 | 6,717 | $ 238,819 | $ 3,853,109 |
| Chesapeake Commons Apartments | Parking | 72 | 775 | $ 8,249 | $ 456,506 |
| Crossroads Apartments | Parking | 44 | 1,530 | $ 17,678 | $ 867,633 |
| Promontory Point Apartments | Parking | 8 | 192 | $ 3,825 | $ 148,579 |
| Revo 225 | Parking | 1 | 24 | $ 1,240 | $ 38,568 |
| **Combined[4]** | | **1,174** | **30,038** | **$ 1,095,493** | **$ 15,473,573** |

18. As an alternative, I have calculated, based on data in the tenant ledger files, the following numbers and amounts related to tenants who, based on assumptions provided to me by counsel, I understand to have paid media package fees, washer/dryer rental fees, parking-related fees, and/or security alarm system fees to Defendants while subject to a requirement to pay these mandatory charges from December 2011 through December 2022.

---

[4] As some Section 8 tenants were assessed multiple mandatory additional service charges, the "combined" line does not double count these tenants and housing assistance payments.

| Property Name | Mandatory Charge | Number of Tenants | Number of Housing Assistance Payments | Additional Service Payments by Tenants | Amount of Housing Assistance Payments |
|---|---|---|---|---|---|
| Broadmoor Village Apartments | Media Package | 11 | 232 | $ 20,535 | $ 194,735 |
| Canyon Ridge Apartments | Media Package | 37 | 608 | $ 44,337 | $ 613,627 |
| Courtyard at Central Park | Media Package | 56 | 349 | $ 13,754 | $ 177,517 |
| Devonshire Court East | Media Package | 2 | 7 | $ 623 | $ 5,750 |
| Devonshire Court West | Media Package | 2 | 48 | $ 4,536 | $ 10,210 |
| Falls at Hunters Pointe | Media Package | 5 | 119 | $ 10,322 | $ 120,750 |
| Landing at Fancher Creek | Media Package | 134 | 812 | $ 29,560 | $ 376,048 |
| Lofts at 7800 | Media Package | 1 | 3 | $ 217 | $ 2,992 |
| Metropolitan Place Apartments | Media Package | 2 | 48 | $ 3,792 | $ 63,474 |
| Rio Seco Apartments | Media Package | 37 | 575 | $ 36,358 | $ 386,280 |
| California Place Apartments | Washer/Dryer | 22 | 323 | $ 12,977 | $ 184,607 |
| Chesapeake Commons Apartments | Washer/Dryer | 131 | 4,069 | $ 145,188 | $ 2,447,453 |
| Chesapeake Commons Apartments | Parking | 72 | 775 | $ 8,249 | $ 456,506 |
| Crossroads Apartments | Parking | 37 | 1,231 | $ 14,459 | $ 704,204 |
| Promontory Point Apartments | Parking | 8 | 192 | $ 3,825 | $ 148,579 |
| Revo 225 | Parking | 1 | 24 | $ 1,240 | $ 38,568 |
| **Combined**[5] | | **486** | **8,654** | **$ 349,972** | **$ 5,482,799** |

**Evidence Considered**

19. In undertaking my assignment, I have considered information from a variety of sources, each of which is of a type that is reasonably relied upon by experts in my field. Those sources are identified throughout this report, as well as **Exhibit B** to this report.

20. On July 13, 2023 and July 17, 2023, I was provided with 75 .csv files from "Data05_TenantLedgers_07.13.2023_6lt.csv" through "Data05_TenantLedgers_07.13.2023_wh.csv" and "Data05_TenantLedgers_07.17.2023_Enclave.csv." It is my understanding that these files, which were provided by property, reflect tenant ledger data for each of Defendant's Section 8 tenants since April 2005 who has been assessed one of the additional service charges at issue in this litigation.

21. I was provided with the Excel file "Data5_TenantLedgersDataDefinitions 12.06.2021.xlsx," which contains definition of fields and certain codes used in the Data5 files.

22. I have also been provided with the files "Data_ChargeCodeMapping_032723.csv," which contains a description of the charge codes appearing in the ledger data, and

---

[5] As some Section 8 tenants were assessed multiple mandatory additional service charges, the "combined" line does not double count these tenants and housing assistance payments.

"Data_ChargeCode_Data_Definitions.xlsx," which provides definitions for the Charge Code Mapping file.

23.  I participated in three conference calls regarding the Data5 files with John Bailey at FitechGelb, who I understand was retained jointly by the Parties to assist them in identifying and extracting data, including ledger data, from Defendants' Yardi database. During those calls, Mr. Bailey answered my questions about the organization of the ledger data in the Data5 files, the nature of the codes in the data, and a general understanding of the relationship between different kinds of records in the data.

24. I was provided with the Excel file "Data03_PropertyInfo_032723.csv," which contains the addresses of the properties in the ledger data.

25. I have been provided with an Excel file "ClassList_From_04012011" that I understand is a list of 2,478 Class Members. However, for purposes of this report, I have been asked to assume that the 2,545 California tenants with at least one month from May 2011 through November 2022 with both a Housing Assistance Charge and an additional service charge found in the tenant ledger files are Class Members.[6] If additional data or other information is provided, I can update my analysis accordingly.

26. I have been provided with Defendants' Amended Responses to Plaintiff Roy Huskey III's Interrogatories, Set Six.  The response to Interrogatory No. 23 lists the properties and related periods in which they participated in the federal Low Income Housing Tax Credit Program.

27. I was provided with Defendants' Third Amended Response to Huskey Interrogatory 18, which lists properties that Defendants represent have had mandatory charges.

28. I was further provided with the following deposition transcripts: Janae Jarvis (September 10, 2021 and September 14, 2021), Jarom Johnson (July 19, 2021 and November 10, 2021), and David Tanforan (August 9, 2017).

**Basis of Opinions**

29. The tenant ledger files (as discussed above in paragraph 20) contain, among other data, the following information: (a) property code, (b) tenant code, (c) charge code, (d) original control, (e) item date post date, (f) date received, (g) post month, (h) charge amount, and (i) receipt amount.

30. For purposes of this report, I have identified charges to be the first instance of each unique original control starting with a "C" and the related charge amount to be in the "charge amount" field of the tenant ledger files. It appears that charges that increase a tenant code's

---

[6] Plaintiffs' Counsel informed me that tenant Dominick Turo (i.e., t0124185) has opted out of the Class. His data has been excluded from the totals I have calculated for Class Members.

balance are reflected as positive charge amounts. I have assumed the related month to be that of the item date post date.

31. I have identified receipts (or payments) to be those entries with an original control starting with a "R" and the related receipt amount to be in the "receipt amount" field of the tenant ledger files. It appears that receipts that decrease a tenant code's balance are reflected as positive receipt amounts. I have assumed the related month to be that of the date received.

32. With respect to the receipts, I have also identified which entries appear to reflect payments and which appear to reflect non-cash credits. If a receipt's original control matches to another receipt with the same original control as well as a charge code of "bad" (i.e., Bad Debt Write Off), I have assumed the related receipt amount is a non-cash credit; otherwise, I have assumed the related receipt amount is a payment.

33. Unless otherwise noted, my analyses are based on tenant codes and months in the tenant ledger files with (a) a net charge amount (i.e., greater than zero) related to the charge code of "renthap" (i.e., Housing Assistance Charge) and (b) a net charge amount related to the additional service charge codes. I am informed by Plaintiffs' Counsel that the additional service charge codes, as discussed above in paragraph 6, are as follows: (c) "insur" or Renter's Insurance (d) "wash" or Washer/Dryer Rental, (e) "park" or Covered Parking Charges, (f) "cable" or Media Package, (g) "garage" or Garage Rental, (h) "pet' or Pet Rent, (i) "media" or also Media Package, (j) "mtm" or Month to Month Fee, (k) "rentplus" or Rent Plus Service, (l) "xins" or Renter's Insurance – DO NOT USE, (m) "storage" or Storage Rental, (n) "alarm" or Security Alarm System, (o) "uncpark" or Uncovered Parking, and (p) "cgarage" or Common Garage.

34. Based on my review of the tenant ledger files, it appears that the Housing Assistance Charge code was not in use prior to February of 2006.

35. For each tenant code and month with a net Housing Assistance Charge as well as net additional service charges, I have summarized the charge amounts and the receipt amounts less any related Bad Debt Write Off (as discussed above in paragraph 32) by charge code.

**Expert Opinions**

### A.  California Class Damages and Interest

36. Beginning from the month of May 2011, the additional service *charges* assessed on Class Members by Defendants total $2,807,541 through the month of November 2022.  The $2,807,541 in charges relates to 2,545 Class Members. I have summarized these charge amounts by year and additional service charge. (See **Exhibit 1**.)

37. Based on Class Members and months from May 2011 through November 2022, I have noted that, on average, the assessed additional service charges are approximately 22.14% of the sum of Monthly Rent Charges (i.e., "rent"), Onsite Utility Collection charges (i.e., "conserve"), and assessed additional service charges.

38. Beginning from the month of May 2011, the additional service *payments* made on Class Members' accounts total approximately $2,800,185 through the month of November 2022.[7,8] I have summarized these payments by year and additional service charge. (See **Exhibit 2**.)

39. For purposes of this report, I have been asked by Plaintiffs' Counsel to calculate simple interest at 10% on these additional service payments made on Class Members' accounts (as discussed above in paragraph 38) from the end of each month through July 20, 2023. Interest at 10% totals approximately $2,062,690.

40. As an alternative, I have been asked by Plaintiffs' Counsel to calculate simple interest at 7% on these additional service payments made on Class Members' accounts (as discussed above in paragraph 38) from the end of each month through July 20, 2023. Interest at 7% totals approximately $1,443,883.

## B. FCA Damages and Related Numbers

41. Beginning from the month of February 2006, the additional service charges assessed by Defendants in all relevant states total approximately $6,844,580 through the month of November 2022. I have summarized these charge amounts by year and additional service charge. (See **Exhibit 3**.)

42. Based on tenant codes and months from February 2006 through November 2022 in all relevant states, I have noted that, on average, the assessed additional service *charges* are approximately 22.73% of the sum of Monthly Rent Charges (i.e., "rent"), any Onsite Utility Collection charges (i.e., "conserve"), and assessed additional service charges.

43. Beginning from the month of February 2006, the additional service *payments* made on tenants' accounts in all relevant states total approximately $6,827,317 through the month of November 2022. I have summarized these payments by year and additional service charge. (See **Exhibit 4**.)

---

[7] For the month of April 2011, some, or all, of approximately $27,168 in additional service payments could relate to Class Members' accounts beginning from April 14, 2011.

[8] Unless otherwise noted, if the net payment by additional service charge and tenant for the related period (e.g., from the month of February 2006 through the month of November 2022) is less than $0 (e.g., write-offs or credits in excess of those amounts paid in months included in my analysis), it has been excluded from the additional service payments made on tenants' accounts.

44. For the 173,095 months related to 6,026 tenant codes in all relevant states from February of 2006 through November of 2022, the Housing Assistance Charges assessed by Defendants total approximately $111,867,023. The Housing Assistance Payments made on behalf of tenants total approximately $111,542,206.[9] I have summarized these amounts by year. (See **Exhibit 5**.)

45. I understand the Court found in its summary judgment order that Defendants required tenants at properties not participating in the federal Low Income Housing Tax Credit Program to have renter's insurance in violation of the governing Housing Assistance Payments Contracts and federal law.[10]  Such tenants paid renter's insurance charges of approximately $1,425,207, which relates to 3,405 tenants over 94,083 months from February 2006 through November 2020 with (a) a net charge amount related to the charge code of "renthap," (b) a net charge amount related to the charge code of "insur," and (c) a net receipt amount related to the charge code of "renthap."  The related Housing Assistance Charges paid on behalf of these tenants total approximately $56,167,995. I have summarized these amounts by year. (See **Exhibit 6**.)

46. During a shorter subset of time, from December 2011 through November 2020, such tenants paid renter's insurance charges of approximately $858,624, which relates to 1,959 tenants over 52,907 months. The related Housing Assistance Charges paid on behalf of these tenants total approximately $34,201,478. I have summarized these amounts by year (See **Exhibit 7**.)

47. I understand that the Court held in its summary judgment order that Defendants' washer/dryer rental charges to Section 8 tenants for the period from February 2006 to June 2019 violated the governing Housing Assistance Payments Contracts and applicable regulation.[11]  Such tenants paid washer/dryer rental charges of approximately $1,034,122, which relates to 945 tenants over 26,559 months from February 2006 through June 2019 with (a) a net charge amount related to the charge code of "renthap," (b) a net charge amount related to the charge code of "wash," and (c) a net receipt amount related to the charge code of "renthap." The related Housing Assistance Charges paid on behalf of these tenants total approximately $15,531,301. I have summarized these amounts by year. (See **Exhibit 8**.)

48. During a shorter subset of time, from August 2017 through June 2019, such tenants paid washer/dryer Rental charges of approximately $144,043, which relates to 296 tenants over

---

[9] Unless otherwise noted, if the net payment by a tenant for the related period (e.g., from the month of February 2006 through the month of November 2022) is less than $0, it has been excluded from the Housing Assistance Charges paid on behalf of tenants.

[10] Order on Summary Judgment at 15-16, ECF No. 278.

[11] Order on Summary Judgment at 14-15, ECF No. 278.

4,058 months. The related Housing Assistance Charges paid on behalf of these tenants total approximately $2,533,557. I have summarized these amounts by year. (See **Exhibit 9**.)

49. My understanding from Plaintiffs' Counsel and the evidence from the case they provided me[12] is that certain properties and time periods have had mandatory additional service charges for cable or media packages, parking, or washers and dryers. It is my understanding from Plaintiffs' Counsel that Plaintiffs contend that Section 8 tenants were subject to mandatory additional service charges for cable or media packages, parking, or washers and dryers at the following properties for the time periods indicated:

---

[12] *See* Defs.' 3rd Further Am. Resp. to Huskey Interrog. 18 (responding to Plaintiffs' interrogatory with a list of twenty Wasatch-managed properties that have required mandatory additional service charges at any point during times relevant to this case); Jarvis Dep. 35:4-37:5, Sept. 10, 2021 (explaining that Wasatch tenants are sometimes required to pay parking and media package charges as a condition of leasing); *id.* at 48:6-16 (explaining that media charges, including internet, media packages, and cable, are "sometimes required as a condition of leasing," depending on the property, and listing some of the properties with required charges); *id.* at 53:1-54:5 (confirming that, after 2019, a media package charge became mandatory at Devonshire Court at move-in or lease renewal); *id.* at 61:24-62:23 (explaining that the media package charge at Falls at Hunters Pointe became mandatory at some point and remained mandatory until the property was sold); *id.* at 55:10-56:12 (confirming that the media package charge became mandatory at Broadmoor Village Apartments at some point and discussing the roll out process); *id.* at 61:1-64:13 (listing some Wasatch properties with mandatory media packages and some with optional media packages); Jarvis Dep. 397:14-402:15, Sept. 14, 2021 (discussing mandatory charges at Chesapeake Commons Apartments); Johnson Dep. 187:16-20, July 19, 2021 ("So some of our projects have required parking as a result of the building type or the parking allocation at the community."); *id.* at 185:11-186:5 (describing mandatory parking charges at Chesapeake Commons Apartments): *id.* at 214:15-215:13 (explaining that some properties have mandatory media or cable charges); Johnson Dep. 15:20-25, Nov. 10, 2021 (listing Wasatch properties with mandatory media charges); Tanforan Dep. 81:10-84:5, Aug. 9, 2017 (stating that mandatory covered parking charges can apply to Wasatch tenants depending on the property and time period); *id.* at 92:25-96:14 (explaining that washer and dryer charges are required at Chesapeake Commons Apartments at move-in).

| Property Name | Mandatory Charge | Time Period the Charge Was Mandatory |
|---|---|---|
| Broadmoor Village Apts. | Media Package | 5/1/2018 - 6/30/2021 |
| Canyon Ridge Apts. | Media Package | 10/1/2020 - 1/17/2023 |
| Courtyard at Central Park | Media Package | 2/1/2006 - 7/31/2012 |
| Devonshire Court East | Media Package | 4/1/2019 - 1/17/2023 |
| Devonshire Court West | Media Package | 3/1/2019 - 1/17/2023 |
| Falls at Hunters Pointe | Media Package | 10/1/2018 - 1/17/2023 |
| Goldstone Place Apts. | Media Package | 2/1/2006 - 12/31/2015 |
| Landing at Fancher Creek | Media Package | 2/1/2006 - 6/30/2012 |
| Lofts at 7800 | Media Package | 8/1/2014 - 1/17/2023 |
| Metropolitan Place Apts. | Media Package | 11/1/2019 - 1/17/2023 |
| Rio Seco Apts. | Media Package | 9/1/2020 - 1/17/2023 |
| California Place Apts. | Washer/Dryer | 7/1/2015 - 1/31/2017 |
| Chesapeake Commons Apts. | Washer/Dryer | 2/1/2006 - 5/30/2016 |
| Chesapeake Commons Apts. | Parking | 6/1/2015 - 5/30/2016 |
| Crossroads Apts. | Parking | 2/1/2008 - 1/17/2023 |
| Promontory Point Apts. | Parking | 4/1/2020 - 1/17/2023 |
| Revo 225 | Parking | 1/1/2021 - 1/17/2023 |

50. Using the assumptions set out in paragraph 49, I have calculated the following amounts paid by tenants participating in the Section 8 program (as indicated by a net charge amount related to the charge code of "renthap") while subject to the requirement to pay a mandatory additional service charge.  I have used for these calculations payments related to the charge codes of   (a) "cable" and "media;" (b) "wash;" or (c) "park," "cgarage," "garage," and "uncpark;" (based on the related mandatory charge). [13] (See **Exhibits 10 – 12**.)

---

[13] As some Section 8 tenants were assessed multiple mandatory additional service charges, the "combined" line does not double count these tenants and housing assistance payments.

| Property Name | Mandatory Charge | Time Period the Charge Was Mandatory | Number of Tenants | Number of Housing Assistance Payments | Additional Service Payments by Tenants | Amount of Housing Assistance Payments |
|---|---|---|---|---|---|---|
| Broadmoor Village Apartments | Media Package | 5/1/2018 - 6/30/2021 | 11 | 232 | $ 20,535 | $ 194,735 |
| Canyon Ridge Apartments | Media Package | 10/1/2020 - 1/17/2023 | 37 | 608 | $ 44,337 | $ 613,627 |
| Courtyard at Central Park | Media Package | 2/1/2006 - 7/31/2012 | 285 | 6,093 | $ 215,671 | $ 2,882,983 |
| Devonshire Court East | Media Package | 4/1/2019 - 1/17/2023 | 2 | 7 | $ 623 | $ 5,750 |
| Devonshire Court West | Media Package | 3/1/2019 - 1/17/2023 | 2 | 48 | $ 4,536 | $ 10,210 |
| Falls at Hunters Pointe | Media Package | 10/1/2018 - 1/17/2023 | 5 | 119 | $ 10,322 | $ 120,750 |
| Goldstone Place Apartments | Media Package | 2/1/2006 - 12/31/2015 | 2 | 16 | $ 400 | $ 5,731 |
| Landing at Fancher Creek | Media Package | 2/1/2006 - 6/30/2012 | 538 | 13,489 | $ 475,914 | $ 6,086,540 |
| Lofts at 7800 | Media Package | 8/1/2014 - 1/17/2023 | 1 | 3 | $ 217 | $ 2,992 |
| Metropolitan Place Apartments | Media Package | 11/1/2019 - 1/17/2023 | 2 | 48 | $ 3,792 | $ 63,474 |
| Rio Seco Apartments | Media Package | 9/1/2020 - 1/17/2023 | 37 | 575 | $ 36,358 | $ 386,280 |
| California Place Apartments | Washer/Dryer | 7/1/2015 - 1/31/2017 | 22 | 323 | $ 12,977 | $ 184,607 |
| Chesapeake Commons Apartments | Washer/Dryer | 2/1/2006 - 5/30/2016 | 177 | 6,717 | $ 238,819 | $ 3,853,109 |
| Chesapeake Commons Apartments | Parking | 6/1/2015 - 5/30/2016 | 72 | 775 | $ 8,249 | $ 456,506 |
| Crossroads Apartments | Parking | 2/1/2008 - 1/17/2023 | 44 | 1,530 | $ 17,678 | $ 867,633 |
| Promontory Point Apartments | Parking | 4/1/2020 - 1/17/2023 | 8 | 192 | $ 3,825 | $ 148,579 |
| Revo 225 | Parking | 1/1/2021 - 1/17/2023 | 1 | 24 | $ 1,240 | $ 38,568 |
| **Combined** | | | **1,174** | **30,038** | **$1,095,493** | **$15,473,573** |

51. Using the assumptions set out in paragraph 49, but under this an alternative scenario excluding payments prior to December 2011, I have calculated the following amounts paid by tenants participating in the Section 8 program (as indicated by a net charge amount related to the charge code of "renthap") while subject to the requirement to pay a mandatory additional service charge.  I have used for these calculations payments related to the charge codes of   (a) "cable" and "media;" (b) "wash;" or (c) "park," "cgarage," "garage," and "uncpark;" (based on the related mandatory charge).[14] (See **Exhibits 13 – 15**.)

---

[14] As some Section 8 tenants were assessed multiple mandatory additional service charges, the "combined" line does not double count these tenants and housing assistance payments.

| Property Name | Mandatory Charge | Time Period the Charge Was Mandatory | Number of Tenants | Number of Housing Assistance Payments | Additional Service Payments by Tenants | Amount of Housing Assistance Payments |
|---|---|---|---|---|---|---|
| Broadmoor Village Apartments | Media Package | 5/1/2018 - 6/30/2021 | 11 | 232 | $ 20,535 | $ 194,735 |
| Canyon Ridge Apartments | Media Package | 10/1/2020 - 1/17/2023 | 37 | 608 | $ 44,337 | $ 613,627 |
| Courtyard at Central Park | Media Package | 12/1/2011 - 7/31/2012 | 56 | 349 | $ 13,754 | $ 177,517 |
| Devonshire Court East | Media Package | 4/1/2019 - 1/17/2023 | 2 | 7 | $ 623 | $ 5,750 |
| Devonshire Court West | Media Package | 3/1/2019 - 1/17/2023 | 2 | 48 | $ 4,536 | $ 10,210 |
| Falls at Hunters Pointe | Media Package | 10/1/2018 - 1/17/2023 | 5 | 119 | $ 10,322 | $ 120,750 |
| Landing at Fancher Creek | Media Package | 12/1/2011 - 6/30/2012 | 134 | 812 | $ 29,560 | $ 376,048 |
| Lofts at 7800 | Media Package | 8/1/2014 - 1/17/2023 | 1 | 3 | $ 217 | $ 2,992 |
| Metropolitan Place Apartments | Media Package | 11/1/2019 - 1/17/2023 | 2 | 48 | $ 3,792 | $ 63,474 |
| Rio Seco Apartments | Media Package | 9/1/2020 - 1/17/2023 | 37 | 575 | $ 36,358 | $ 386,280 |
| California Place Apartments | Washer/Dryer | 7/1/2015 - 1/31/2017 | 22 | 323 | $ 12,977 | $ 184,607 |
| Chesapeake Commons Apartments | Washer/Dryer | 12/1/2011 - 5/30/2016 | 131 | 4,069 | $ 145,188 | $ 2,447,453 |
| Chesapeake Commons Apartments | Parking | 6/1/2015 - 5/30/2016 | 72 | 775 | $ 8,249 | $ 456,506 |
| Crossroads Apartments | Parking | 12/1/2011 - 1/17/2023 | 37 | 1,231 | $ 14,459 | $ 704,204 |
| Promontory Point Apartments | Parking | 4/1/2020 - 1/17/2023 | 8 | 192 | $ 3,825 | $ 148,579 |
| Revo 225 | Parking | 1/1/2021 - 1/17/2023 | 1 | 24 | $ 1,240 | $ 38,568 |
| **Combined** | | | **486** | **8,654** | **$ 349,972** | **$ 5,482,799** |

52. If the jury finds liability under the False Claims Act as to all Additional Service Charges, I understand that damages may be measured as the sum of all Housing Assistance Payments from February 2006 to November 30, 2022. As set out in paragraphs 14 and 44, above, that amount is $111,542,206.

53. If the jury finds liability as to only subsets of the Additional Service Charges, Housing Assistance Payments may need to be reconciled to avoid double counting, as some Section 8 tenants were assessed multiple Additional Service Charges that may be the basis for liability. In the Appendix below, I provide charts that can be used to calculate damages without double counting Housing Assistance Payments.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed on July 20, 2023 at Concord, California.

David M. Breshears, CPA/CFF

**APPENDIX - Alternative Calculations for FCA Damages**

1.      Plaintiffs' Main Theory

I understand that Plaintiffs contend that Defendants are liable under the False Claims Act for each Housing Assistance Payment they have received for a Section 8 tenant who was assessed an Additional Service Charge from February 2006 through November 30, 2022.  I have calculated the following totals related to this theory:

Table 1:  Calculations Related to All Additional Service Charges from February 2006 to November 30, 2022

| Charges Included | Number of Tenants | Number of Housing Assistance Payments | Relevant Additional Service Payments | Amount of Housing Assistance Payments |
|---|---|---|---|---|
| All Additional Service Charges Assessed on Section 8 Tenants (Feb. 2006 to Nov. 2022) | 6,026 | 172,340 | $6,827,317 | $111,542,206 |

2.      Plaintiffs' More Narrow Alternative Theories

I understand that Plaintiffs alternatively contend that Defendants are liable under the False Claims Act for Housing Assistance Payments related to the following charges: (1) Washer and Dryer Charges that are not authorized by the "Utilities and Appliances" Section of the HAP Contract; and/or (2) charges that Section 8 tenants were required to incur as a condition of leasing, including renters' insurance, media packages, parking, or washers and dryers at certain properties.

The jury can use the tables below to assess damages if it finds liability based on either or both of these narrower theories.  I provide two sets of tables.  The first shows the totals for each of the theories, alone and combined[15], using the full time-period alleged by Plaintiffs for each theory.  The second version uses the shortest time-periods that could be at issue.

Table 2:  Calculations Related to Unauthorized Washer/Dryer Charges & Mandatory Charges – Full Time Period

---

[15] As some Section 8 tenants were assessed multiple mandatory additional service charges, the "combined" line does not double count these tenants and housing assistance payments.

| Charges Included | Number of Tenants | Number of Housing Assistance Payments | Relevant Additional Service Payments | Amount of Housing Assistance Payments |
|---|---|---|---|---|
| Unauthorized Washer and Dryer Charges (Feb. 2006 to June 2019) | 945 | 26,559 | $  1,034,122 | $  15,531,301 |
| Mandatory Charges (Feb. 2006 to Dec. 2022) | 3,523 | 97,821 | $  2,520,699 | $  58,690,954 |
| **Combined** | **4,039** | **110,664** | **$  3,303,026** | **$  66,486,144** |

Table 3:  Calculations Related to Unauthorized Washer/Dryer Charges & Mandatory Charges – Shortest Time Periods

| Charges Included | Number of Tenants | Number of Housing Assistance Payments | Relevant Additional Service Payments | Amount of Housing Assistance Payments |
|---|---|---|---|---|
| Unauthorized Washer and Dryer Charges (Aug. 2017 to June 2019) | 296 | 4,058 | $  144,043 | $  2,533,557 |
| Mandatory Charges (Dec. 2011 to Dec. 2022) | 2,042 | 55,366 | $  1,208,595 | $  36,107,722 |
| **Combined** | **2,232** | **58,111** | **$  1,352,638** | **$  37,831,815** |

Mandatory Charges Include:

- Required Renters' Insurance at all properties not participating in the Low-Income Housing Tax Credit Program – (2/1/2006 – 11/30/2020)
- Broadmoor Village Apartments – Mandatory Cable/Media (5/1/2018 – 6/30/2021)
- Canyon Ridge Apartments – Mandatory Cable/Media (10/1/2020 – 1/17/2023)
- Courtyard at Central Park – Mandatory Cable/Media (2/1/2006 – 7/31/2012)
- Devonshire Court East – Mandatory Cable/Media (4/1/2019 – 1/17/2023)
- Devonshire Court West – Mandatory Cable/Media (3/1/2019 – 1/17/2023)
- Falls at Hunters Pointe – Mandatory Cable/Media (10/1/2018 – 1/17/2023)
- Goldstone Place Apartments – Mandatory Cable/Media (2/1/2006 – 12/31/2015)
- Landing at Fancher Creek – Mandatory Cable/Media (2/1/2006 – 6/30/2012)
- Lofts at 7800 – Mandatory Cable/Media (8/1/2014 – 1/17/2023)
- Metropolitan Place Apartments – Mandatory Cable/Media (11/1/2019 – 1/17/2023)
- Rio Seco Apartments – Mandatory Cable/Media (9/1/2020 – 1/17/2023)

- California Place Apartments – Mandatory Washer/Dryer (7/1/2015 – 1/31/2017)
- Chesapeake Commons Apartments – Mandatory Washer/Dryer (2/1/2006 – 5/30/2016)
- Chesapeake Commons Apartments – Mandatory Parking (6/1/2015 – 5/30/2016)
- Crossroads Apartments – Mandatory Parking (2/1/2008 – 1/17/2023)
- Promontory Point Apartments – Mandatory Parking (4/1/2020 – 1/17/2023)
- Revo 225 – Mandatory Parking (1/1/2021 – 1/17/2023)



**CONCORD OFFICE**
1390 Willow Pass Road | Suite 410
Concord, CA 94520
T: 415.836.4000
F: 415.777.2062

# DAVID M. BRESHEARS, CPA/CFF

HEMMING.COM

## Employment & Education

| | |
|---|---|
| 2012 – Present | Hemming Morse, LLP<br>Certified Public Accountants,<br>Forensic and Financial Consultants<br>Partner |
| 1999 – 2011 | Hemming Morse, Inc.<br>Director, 2011<br>Manager, 2006-2010<br>Associate<br>Staff Accountant |
| 1998 | California State University, Chico<br>B.S. Accounting |

## Professional & Service Affiliations

- Certified Public Accountant, State of California
  – Since 2006

- Certified in Financial Forensics
  – Since 2008

- American Institute of Certified Public Accountants

- California Society of Certified Public Accountants

- Association of Certified Fraud Examiners
  – Associate Member

## Presentations & Seminars

- "E-Discovery & Electronically Stored Information 101"
  Beeson Tayer & Bodine, May 2013

- "How to Collect, Produce, and Use E-Documents: A Practical Primer", BASF - Labor & Employment Conference, Yosemite, February 2013

- "Forensic Accounting for Today's Busiest Practice Areas", Continuing Education of the Bar-California, March 2012

- "Utilizing Experts in Wage and Hour Litigation"
  Buchalter Nemer, July 2011

- "Class Action Employment Litigation"
  California Socity of Certified Public Accountants-State Steering Committee, August 2010

- Adjunct Professor, Golden Gate University, Wage & Hour Damages, Spring 2009, Fall 2009, Spring 2010

# HEMMING | MORSE
### FORENSIC & FINANCIAL CONSULTANTS

**CONCORD OFFICE**
1390 Willow Pass Road | Suite 410
Concord, CA 94520
T: 415.836.4000
F: 415.777.2062

## DAVID M. BRESHEARS, CPA/CFF

HEMMING.COM

## Testimony

### Trial

- Munguia-Brown et al. v. Equity Residential et al (2023), U.S. District Court, Northern District Of California Oakland Division, Case No. 4:16-cv-01225-JSW-TSH

- Jose Hernandez v. The Bundox Restaurant Corp. (2019), Superior Court of the State of California County of San Francisco, Case No. CGC-18-570243

- William Lloyd Helmick, et al. v. Air Methods Corporation (2019), Superior Court of the State of California County of Alameda, Case No. RG13665373

- Julie Gunther v. Alaska Airlines, Inc. et al (2019) Superior Court of the State of California County of San Diego North County Branch Case No. 37-2017-00037849-CU-OE-NC

### Deposition

- LBF Travel Management Corp., and Michael Thomas v. Thomas DeRosa (2023), United States District Court, Southern District of California, Case No. 3:20-cv-02404-MMA-AGS

- Sally Packard et al. v. Saddleback Memorial Medical Center (2022), Superior Court of California, County of Orange, Case No. 30-2017-00952714-CU-OE-CXC

- Cody Lopez et al. v. Giorgio Armani Corp. (2022), Superior Court of California, County of Los Angeles, Central District, Case No. BC717329

- Chacon et al. v. Express Fashion Operations, LLC. (2022), United States District Court, Central District of California, Case No. 8:19-cv-00564

- Cody Meeks et al. v. Skywest Airlines, Inc. (2021), U.S. District Court, Northern District Of California, Case No. 17-cv-01012-JD

- Munguia-Brown et al. v. Equity Residential et al (2021), U.S. District Court, Northern District Of California Oakland Division, Case No. 4:16-cv-01225-JSW-TSH

- Hernan Hernandez, et al. v. Restoration Hardware,Inc. and HomeDeliveryLink, Inc. (2021), Superior Court of California, County of San Bernardino Case CIVDS1723322

- Yessica Rodriguez, et al. v. California Payroll Group, Inc., et al. (2021), Superior Court of the State of California, County of San Bernardino, Case No CIVDS1829017

- Sandy Duvet, et al. v. Pine Valley Center for Rehabilitation and Nursing (2021), Superior Court of California, County of San Bernardino Case CIVDS1723322

- Omid Ahmad v. Lyft, Inc. (2020), The American Arbitration Association, Case No. 01-20-0001-7550



**CURRICULUM VITAE**

**CONCORD OFFICE**
1390 Willow Pass Road | Suite 410
Concord, CA 94520
T: 415.836.4000
F: 415.777.2062

# DAVID M. BRESHEARS, CPA/CFF

HEMMING.COM

**Testimony** continued

**Deposition**

- Hernandez-Angel v. The Bundox Restaurant Corporation (2019), Superior Court Of The State Of California County Of San Francisco, Case No. CGC-18-570243

- Nicole Lopes, et al. v. Kohl's Department Stores, Inc. (2019), Superior Court of the State of California County of Alameda, Case No. RG08380189

- Paulette Diaz, et al. v. MDC Restaurants, LLC, et al (2019), Eighth Judicial District Court In and For Clark County, State of Nevada, Case No. A-14-701633

- Julie Gunther v. Alaska Airlines, Inc. et al (2019) Superior Court of the State of California County of San Diego North County Branch Case No. 37-2017-00037849-CU-OE-NC

- Matthew Carr, et al. v. Flower Foods, Inc. and Flowers Baking Co. of Oxford, LLC (2019) U.S. District Court, Eastern District of Pennsylvania Case No. 15-6391

- Luke Boulange, et al. v. Flower Foods, Inc. and Flowers Baking Co. of Oxford, LLC (2019) U.S. District Court, District of New Jersey Case No. 16-2581

- Abdul Nevarez et al v. Forty Niners Football Company, LLC. (2018) U.S. District Court, Northern District of California, San Jose Division, Case No. 5:16-cv-07013-LHK

- William Lloyd Helmick, et al. v. Air Methods Corporation (2018) Superior Court of the State of California County of Alameda, Case No. RG13665373

- Melissa J. Clothier, et al v. Spar Marketing Services, Inc. (2018), Superior Court of the State of California County of Alameda, Case No. RG12639317

- Michael Carrow, et al v. FedEx Ground Package Systems, Inc., (2018), U.S. District Court, District of New Jersey, Case No. 1:16-cv-3026-RBK-JS

- Paula L. Blair, et al v. Rent-A-Center, Inc., (2018) U.S. District Court, Northern District of California, San Francisco Division, Case No. 3:17-cv-02335-WHA

- Nick Neff, et al. v. Flower Foods, Inc., Lepage Bakeries Inc., and CK Sales Co., LLC (2018) U.S. District Court, District of Vermont Case No. 5:15-cv-00254

- Timothy Noll, et al. v. Flower Foods, Inc., Lepage Bakeries Inc., and CK Sales Co., LLC (2018) U.S. District Court, District of Maine Case No. 1:15-cv-00493-JAW

- Som Swamy, et al. v. Title Source, Inc (2018) U.S. District Court, Northern District of California Case No. 17-CV-01175-JCS

**CURRICULUM VITAE**

# HEMMING | MORSE
## FORENSIC & FINANCIAL CONSULTANTS

**CONCORD OFFICE**
1390 Willow Pass Road | Suite 410
Concord, CA 94520
T: 415.836.4000
F: 415.777.2062

## DAVID M. BRESHEARS, CPA/CFF

HEMMING.COM

### Selected Case Experience

- Engaged as damage expert by plaintiff, to analyze and quantify; meal and rest period claims, improper distribution of gratuities, and off-the-clock hours, for an upscale restaurant chain.

- Engaged as damage expert by defendant, a farm labor contractor, to evaluate claims related to off-the-clock hours worked and expense reimbursement for small tools for over 20,000 employees.

- Engaged as neutral accounting expert by plaintiff and defendant to calculate potential unpaid hours worked and additional overtime premiums for commission bonuses, for a manufacturing/engineering firm.

- Expert for the plaintiff. Retained to determine the frequency and magnitude of time shaving claims of a mid-size manufacturing firm.

- Provided consulting services to defense counsel in a class-action wage and hour matter, which alleged that hundreds of County employees were paid improper overtime wages under the FLSA. Prepared analyses using hours worked records, compensation data, employee records, and other data to determine the proper calculation of employees' regular rate of pay and related overtime compensation.

- Assisted counsel in preparing a case involving unpaid overtime, meal and rest break violations, and off-theclock time for an employee of a hotel chain. Reviewed employment history fi les, time records, and other documents to determine the number of potential violations and to quantify damages.

- Assisted expert for plaintiffs' counsel in a class-action wage and hour matter, which alleged that over 250 small business banking officers were improperly classified as exempt. Reviewed statistical sample of hours worked, salary and commission related earnings, paid time off records, and other data to determine the damages related to unpaid overtime and missed meal breaks.

- Assisted expert for plaintiffs' counsel in a class action matter against a fortune 500 company, which alleged that a class of several hundred individuals was misclassified as independent contractors in the state of Washington. Prepared analysis of average earnings across all class members and performed comparison to national averages for similarly situated employees and independent businesses. Performed business valuation services to determine economic value of independent contractor assets and to incorporate any discounts that may apply related to the controls and requirements of the customer/employer operating agreement.

- Assisted expert for plaintiffs' counsel in a class-action matter against a Fortune 500 company, which alleged that over 75,000 California employees were required to pool their tips with supervisory employees in direct violation of the California Labor Code.

# HEMMING | MORSE
## FORENSIC & FINANCIAL CONSULTANTS

**CONCORD OFFICE**
1390 Willow Pass Road | Suite 410
Concord, CA 94520
T: 415.836.4000
F: 415.777.2062

## DAVID M. BRESHEARS, CPA/CFF

HEMMING.COM

### Selected Case Experience continued

- Provided consulting services to plaintiffs' counsel in a class-action wage and hour matter, which alleged that hundreds of employees were not paid the proper "living wage" in accordance with the company's contractual obligation. Created a database of hours worked and earnings information from paper and electronic records, and then providing damages estimates based on a variety of assumptions and legal theories.

- Advised counsel on class certification issues by applying economic and statistical approaches to analyze evidence relating to class member variation, if any, and to determine both liability and damages.

- Consulted for Health Provider in a dispute involving a guaranteed maximum price contract for the construction of various structures. Assisted the expert in analyzing construction costs incurred and calculating the amount due to the general contractor.

- Performed statistical and contractual analysis for labor settlement or arbitration purposes, including analysis of pay and benefits, job content, productivity, labor costs, and profitability.

- Consulted clients in their efforts to identify overpayments of construction projects; discover errors and identify unreasonable project charges; identify weaknesses in contractual agreements; reduce risks of fraud, waste, and abuse; and recover payments made in error.

- Prepared financial analyses in connection with assignments involving fraud, contract disputes and lost profits.

- Performed extensive research for a variety of cases, including cases involving fraud, contract disputes, and lost profits.

- Created various databases and/or tested the accuracy of databases created by others in order to assimilate large amounts of information to be presented in a meaningful manner.

- Managed audit engagements from planning to reporting, including delegation and review of staff assignments and control of time and expenses.

- Prepared and examined financial reports including research and analysis of technical accounting issues.

- Analyzed client accounting systems and related controls and developed specific recommendations for improvements.

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**
**Exhibit B: Evidence Considered**


Data05_TenantLedgers_07.13.2023_6lt.csv
Data05_TenantLedgers_07.13.2023_a8t.csv
Data05_TenantLedgers_07.13.2023_ap.csv
Data05_TenantLedgers_07.13.2023_art.csv
Data05_TenantLedgers_07.13.2023_art2.csv
Data05_TenantLedgers_07.13.2023_av.csv
Data05_TenantLedgers_07.13.2023_az.csv
Data05_TenantLedgers_07.13.2023_bp.csv
Data05_TenantLedgers_07.13.2023_br.csv
Data05_TenantLedgers_07.13.2023_bs.csv
Data05_TenantLedgers_07.13.2023_bt.csv
Data05_TenantLedgers_07.13.2023_bu.csv
Data05_TenantLedgers_07.13.2023_bwt.csv
Data05_TenantLedgers_07.13.2023_ca.csv
Data05_TenantLedgers_07.13.2023_cc.csv
Data05_TenantLedgers_07.13.2023_clt.csv
Data05_TenantLedgers_07.13.2023_cm.csv
Data05_TenantLedgers_07.13.2023_cn.csv
Data05_TenantLedgers_07.13.2023_cp.csv
Data05_TenantLedgers_07.13.2023_cr.csv
Data05_TenantLedgers_07.13.2023_cv.csv
Data05_TenantLedgers_07.13.2023_cy.csv
Data05_TenantLedgers_07.13.2023_de.csv
Data05_TenantLedgers_07.13.2023_dw.csv
Data05_TenantLedgers_07.13.2023_falls.csv
Data05_TenantLedgers_07.13.2023_fc.csv
Data05_TenantLedgers_07.13.2023_fot.csv
Data05_TenantLedgers_07.13.2023_fs.csv
Data05_TenantLedgers_07.13.2023_fvt.csv
Data05_TenantLedgers_07.13.2023_glt.csv
Data05_TenantLedgers_07.13.2023_go.csv
Data05_TenantLedgers_07.13.2023_gp.csv
Data05_TenantLedgers_07.13.2023_het.csv
Data05_TenantLedgers_07.13.2023_hp.csv
Data05_TenantLedgers_07.13.2023_hvt.csv
Data05_TenantLedgers_07.13.2023_jpt.csv
Data05_TenantLedgers_07.13.2023_kst.csv
Data05_TenantLedgers_07.13.2023_lofts.csv
Data05_TenantLedgers_07.13.2023_lp.csv
Data05_TenantLedgers_07.13.2023_lpt.csv
Data05_TenantLedgers_07.13.2023_mht.csv
Data05_TenantLedgers_07.13.2023_mp.csv
Data05_TenantLedgers_07.13.2023_op.csv
Data05_TenantLedgers_07.13.2023_ov.csv
Data05_TenantLedgers_07.13.2023_p1.csv
Data05_TenantLedgers_07.13.2023_p3.csv

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**
**Exhibit B: Evidence Considered**

Data05_TenantLedgers_07.13.2023_pmt.csv
Data05_TenantLedgers_07.13.2023_pn.csv
Data05_TenantLedgers_07.13.2023_pnt.csv
Data05_TenantLedgers_07.13.2023_pp.csv
Data05_TenantLedgers_07.13.2023_pst.csv
Data05_TenantLedgers_07.13.2023_pvt.csv
Data05_TenantLedgers_07.13.2023_qrt.csv
Data05_TenantLedgers_07.13.2023_rc.csv
Data05_TenantLedgers_07.13.2023_rm.csv
Data05_TenantLedgers_07.13.2023_ro.csv
Data05_TenantLedgers_07.13.2023_rp.csv
Data05_TenantLedgers_07.13.2023_rs.csv
Data05_TenantLedgers_07.13.2023_rst.csv
Data05_TenantLedgers_07.13.2023_rvt.csv
Data05_TenantLedgers_07.13.2023_rw.csv
Data05_TenantLedgers_07.13.2023_sa.csv
Data05_TenantLedgers_07.13.2023_sgt.csv
Data05_TenantLedgers_07.13.2023_spt.csv
Data05_TenantLedgers_07.13.2023_su.csv
Data05_TenantLedgers_07.13.2023_sun.csv
Data05_TenantLedgers_07.13.2023_sv.csv
Data05_TenantLedgers_07.13.2023_svt.csv
Data05_TenantLedgers_07.13.2023_sw.csv
Data05_TenantLedgers_07.13.2023_swt.csv
Data05_TenantLedgers_07.13.2023_tvt.csv
Data05_TenantLedgers_07.13.2023_vet.csv
Data05_TenantLedgers_07.13.2023_vit.csv
Data05_TenantLedgers_07.13.2023_wh.csv
Data05_TenantLedgers_07.17.2023_ENCLAVE
Data5_TenantLedgersDataDefinitions12.06.2021.xlsx
Data_ChargeCodeMapping_032723.csv
Data_ChargeCode_Data_Definitions.xlsx
Data03_PropertyInfo_032723.csv
ClassList_From_04012011.csv
Defendants Amended Responses to Plaintiff Roy Huskey III's Interrogatories, Set Six
Order on Summary Judgment ECF No. 278
Deposition transcripts: Janae Jarvis (September 10, 2021 and September 14, 2021)
Deposition transcripts: Jarom Johnson (July 19, 2021 and November 10, 2021)
Deposition transcripts: David Tanforan (August 9, 2017)
Defs.' 3rd Further Am. Resp. to Huskey Interrog. 18

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**
**Exhibit 1: Additional Service Charges from Month of May 2011 through Month of November 2022 for Assumed Class Members**

| Year | Security Alarm System Charges | Media Package (Cable) Charges | Common Garage Charges | Garage Rental Charges | Renter's Insurance Charges | Media Package Charges | Month to Month Fee Charges | Covered Parking Charges | Pet Rent Charges | Rent Plus Service Charges | Storage Rental Charges | Uncovered Parking Charges | Washer/Dryer Rental Charges | Renter's Insurance - Do Not Use Charges | Total Additional Service Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2011 | $ - | $ 55,005 | $ - | $ 32,252 | $ 73,366 | $ - | $ 677 | $ 14,190 | $ 6,876 | $ - | $ 1,400 | $ - | $ 44,630 | $ - | $ 228,395 |
| 2012 | $ - | $ 37,234 | $ - | $ 42,565 | $ 129,885 | $ - | $ 348 | $ 18,900 | $ 9,093 | $ - | $ 2,980 | $ - | $ 72,245 | $ - | $ 313,250 |
| 2013 | $ - | $ - | $ - | $ 39,510 | $ 144,073 | $ - | $ - | $ 18,328 | $ 10,016 | $ - | $ 3,438 | $ - | $ 76,105 | $ - | $ 291,470 |
| 2014 | $ - | $ - | $ - | $ 28,310 | $ 153,844 | $ - | $ 490 | $ 19,702 | $ 10,494 | $ 2,275 | $ 3,711 | $ - | $ 78,188 | $ - | $ 297,013 |
| 2015 | $ - | $ - | $ - | $ 17,532 | $ 158,376 | $ - | $ 174 | $ 27,578 | $ 14,696 | $ 12,170 | $ 5,551 | $ - | $ 89,531 | $ - | $ 325,608 |
| 2016 | $ - | $ - | $ - | $ 8,581 | $ 156,716 | $ - | $ - | $ 33,183 | $ 12,929 | $ 22,878 | $ 4,519 | $ - | $ 101,126 | $ - | $ 339,932 |
| 2017 | $ - | $ - | $ - | $ 10,118 | $ 85,986 | $ - | $ - | $ 41,517 | $ 10,758 | $ 12,593 | $ 4,893 | $ - | $ 53,634 | $ - | $ 219,500 |
| 2018 | $ - | $ - | $ - | $ 10,518 | $ 83,082 | $ - | $ - | $ 47,728 | $ 10,610 | $ 6,357 | $ 6,781 | $ - | $ 34,515 | $ - | $ 199,591 |
| 2019 | $ - | $ - | $ 75 | $ 8,484 | $ 76,439 | $ - | $ - | $ 54,171 | $ 12,427 | $ 4,480 | $ 6,919 | $ - | $ 20,452 | $ - | $ 183,447 |
| 2020 | $ - | $ - | $ - | $ 8,483 | $ 26,707 | $ - | $ - | $ 65,293 | $ 12,838 | $ 4,235 | $ 11,425 | $ - | $ 17,886 | $ - | $ 146,868 |
| 2021 | $ - | $ - | $ - | $ 11,695 | $ 240 | $ - | $ - | $ 76,074 | $ 11,426 | $ 3,471 | $ 12,825 | $ - | $ 16,476 | $ - | $ 132,206 |
| 2022 | $ - | $ - | $ - | $ 11,197 | $ 952 | $ - | $ - | $ 76,038 | $ 12,348 | $ 2,689 | $ 13,321 | $ - | $ 13,715 | $ - | $ 130,261 |
| Total | $ - | $ 92,239 | $ 75 | $ 229,246 | $ 1,089,666 | $ - | $ 1,688 | $ 492,701 | $ 134,512 | $ 71,148 | $ 77,763 | $ - | $ 618,503 | $ - | $ 2,807,541 |

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**
**Exhibit 2: Additional Service Payments from Post Month of May 2011 through Month of November 2022 for Assumed Class Members**

| Year | Security Alarm System Payments | Media Package (Cable) Payments | Common Garage Payments | Garage Rental Payments | Renter's Insurance Payments | Media Package Payments | Month to Month Fee Payments | Covered Parking Payments | Pet Rent Payments | Rent Plus Service Payments | Storage Rental Payments | Uncovered Parking Payments | Washer/Dryer Rental Payments | Renter's Insurance - Do Not Use Payments | Total Additional Service Payments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2011 | $ - | $ 54,931 | $ - | $ 32,252 | $ 73,332 | $ - | $ 378 | $ 14,180 | $ 6,876 | $ - | $ 1,400 | $ - | $ 44,630 | $ - | $ 227,978 |
| 2012 | $ - | $ 37,048 | $ - | $ 42,565 | $ 129,799 | $ - | $ 348 | $ 18,900 | $ 9,093 | $ - | $ 2,980 | $ - | $ 72,245 | $ - | $ 312,978 |
| 2013 | $ - | $ - | $ - | $ 39,510 | $ 144,086 | $ - | $ - | $ 18,328 | $ 9,976 | $ - | $ 3,438 | $ - | $ 76,105 | $ - | $ 291,444 |
| 2014 | $ - | $ - | $ - | $ 28,310 | $ 153,842 | $ - | $ 490 | $ 19,702 | $ 10,494 | $ 2,255 | $ 3,711 | $ - | $ 78,168 | $ - | $ 296,972 |
| 2015 | $ - | $ - | $ - | $ 17,532 | $ 158,141 | $ - | $ 174 | $ 27,548 | $ 14,591 | $ 12,116 | $ 5,551 | $ - | $ 89,431 | $ - | $ 325,083 |
| 2016 | $ - | $ - | $ - | $ 8,581 | $ 156,438 | $ - | $ - | $ 33,097 | $ 12,329 | $ 22,632 | $ 4,519 | $ - | $ 100,936 | $ - | $ 338,532 |
| 2017 | $ - | $ - | $ - | $ 10,118 | $ 85,693 | $ - | $ - | $ 41,465 | $ 10,512 | $ 12,512 | $ 4,874 | $ - | $ 53,354 | $ - | $ 218,529 |
| 2018 | $ - | $ - | $ - | $ 10,518 | $ 82,839 | $ - | $ - | $ 47,548 | $ 10,435 | $ 6,335 | $ 6,053 | $ - | $ 34,515 | $ - | $ 198,242 |
| 2019 | $ - | $ - | $ 75 | $ 8,484 | $ 76,135 | $ - | $ - | $ 53,946 | $ 12,427 | $ 4,455 | $ 6,919 | $ - | $ 20,452 | $ - | $ 182,894 |
| 2020 | $ - | $ - | $ - | $ 8,483 | $ 26,582 | $ - | $ - | $ 65,163 | $ 12,838 | $ 4,171 | $ 11,394 | $ - | $ 17,736 | $ - | $ 146,367 |
| 2021 | $ - | $ - | $ - | $ 11,695 | $ 240 | $ - | $ - | $ 76,027 | $ 11,351 | $ 3,320 | $ 12,819 | $ - | $ 16,476 | $ - | $ 131,928 |
| 2022 | $ - | $ - | $ - | $ 11,197 | $ 952 | $ - | $ - | $ 75,338 | $ 12,268 | $ 2,486 | $ 13,281 | $ - | $ 13,715 | $ - | $ 129,238 |
| Total | $ - | $ 91,978 | $ 75 | $ 229,246 | $ 1,088,081 | $ - | $ 1,389 | $ 491,243 | $ 133,190 | $ 70,281 | $ 76,939 | $ - | $ 617,763 | $ - | $ 2,800,185 |

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**
**Exhibit 3: Additional Service Charges from Month of February 2006 through Month of November 2022**

| Year | Security Alarm System Charges | Media Package (Cable) Charges | Common Garage Charges | Garage Rental Charges | Renter's Insurance Charges | Media Package Charges | Month to Month Fee Charges | Covered Parking Charges | Pet Rent Charges | Rent Plus Service Charges | Storage Rental Charges | Uncovered Parking Charges | Washer/Dryer Rental Charges | Renter's Insurance - Do Not Use Charges | Total Additional Service Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2006 | $ 12,431 | $ 128,596 | $ - | $ 48,600 | $ 100,872 | $ - | $ 17,171 | $ 36,605 | $ 15,440 | $ - | $ - | $ 1,139 | $ 38,837 | $ 21,469 | $ 421,158 |
| 2007 | $ 11,650 | $ 131,641 | $ - | $ 46,496 | $ 110,762 | $ - | $ 23,137 | $ 49,315 | $ 16,888 | $ - | $ 60 | $ 678 | $ 40,566 | $ 18,825 | $ 450,017 |
| 2008 | $ 5,990 | $ 119,729 | $ - | $ 49,502 | $ 116,919 | $ - | $ 33,168 | $ 40,507 | $ 12,122 | $ - | $ 931 | $ 655 | $ 45,970 | $ 8,241 | $ 433,734 |
| 2009 | $ 1,040 | $ 108,364 | $ - | $ 42,629 | $ 123,546 | $ - | $ 12,231 | $ 37,998 | $ 12,975 | $ - | $ 1,860 | $ 600 | $ 52,433 | $ 34 | $ 393,710 |
| 2010 | $ 465 | $ 91,199 | $ - | $ 41,369 | $ 128,016 | $ - | $ 5,601 | $ 39,763 | $ 14,964 | $ - | $ 2,090 | $ 746 | $ 58,187 | $ - | $ 382,400 |
| 2011 | $ - | $ 81,464 | $ - | $ 47,467 | $ 137,445 | $ - | $ 5,183 | $ 41,625 | $ 18,571 | $ - | $ 2,540 | $ 1,205 | $ 79,303 | $ - | $ 414,802 |
| 2012 | $ - | $ 37,234 | $ - | $ 45,610 | $ 157,596 | $ - | $ 1,112 | $ 35,154 | $ 17,337 | $ - | $ 3,784 | $ 1,104 | $ 91,520 | $ - | $ 390,451 |
| 2013 | $ - | $ - | $ - | $ 42,910 | $ 174,353 | $ - | $ 794 | $ 34,157 | $ 18,939 | $ - | $ 4,382 | $ 912 | $ 94,219 | $ - | $ 370,666 |
| 2014 | $ - | $ - | $ 998 | $ 30,845 | $ 183,814 | $ - | $ 2,187 | $ 37,729 | $ 18,714 | $ 3,706 | $ 4,037 | $ 600 | $ 95,362 | $ - | $ 377,991 |
| 2015 | $ - | $ 51 | $ 720 | $ 20,997 | $ 186,900 | $ 956 | $ 1,341 | $ 48,741 | $ 27,206 | $ 16,061 | $ 5,914 | $ 390 | $ 109,958 | $ - | $ 419,235 |
| 2016 | $ - | $ - | $ 810 | $ 11,906 | $ 202,974 | $ 6,568 | $ 203 | $ 59,316 | $ 29,842 | $ 32,236 | $ 4,933 | $ - | $ 130,922 | $ - | $ 479,711 |
| 2017 | $ - | $ - | $ 990 | $ 12,218 | $ 128,100 | $ 8,983 | $ 571 | $ 61,696 | $ 23,375 | $ 21,537 | $ 5,751 | $ 53 | $ 88,696 | $ - | $ 351,971 |
| 2018 | $ - | $ 1,947 | $ 1,140 | $ 12,618 | $ 126,004 | $ 16,677 | $ - | $ 67,307 | $ 23,075 | $ 10,192 | $ 8,809 | $ 480 | $ 74,633 | $ - | $ 342,882 |
| 2019 | $ - | $ 7,685 | $ 525 | $ 10,209 | $ 122,777 | $ 31,343 | $ 617 | $ 76,698 | $ 25,382 | $ 8,632 | $ 9,019 | $ 270 | $ 69,666 | $ - | $ 362,824 |
| 2020 | $ - | $ 7,731 | $ - | $ 9,983 | $ 46,231 | $ 44,842 | $ - | $ 91,622 | $ 24,938 | $ 8,529 | $ 12,277 | $ - | $ 78,552 | $ - | $ 324,703 |
| 2021 | $ - | $ 4,437 | $ 1,320 | $ 13,195 | $ 1,158 | $ 149,330 | $ - | $ 113,356 | $ 23,712 | $ 8,345 | $ 13,918 | $ - | $ 100,277 | $ - | $ 429,049 |
| 2022 | $ - | $ 1,706 | $ 760 | $ 12,322 | $ 6,142 | $ 201,456 | $ 894 | $ 118,790 | $ 26,112 | $ 8,247 | $ 16,502 | $ - | $ 106,346 | $ - | $ 499,277 |
| Total | $ 31,576 | $ 721,783 | $ 7,263 | $ 498,876 | $ 2,053,608 | $ 460,157 | $ 104,210 | $ 990,379 | $ 349,591 | $ 117,486 | $ 96,806 | $ 8,832 | $ 1,355,446 | $ 48,569 | $ 6,844,580 |

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**
**Exhibit 4: Additional Service Payments from Post Month of February 2006 through Month of November 2022**

| Year | Security Alarm System Payments | Media Package (Cable) Payments | Common Garage Payments | Garage Rental Payments | Renter's Insurance Payments | Media Package Payments | Month to Month Fee Payments | Covered Parking Payments | Pet Rent Payments | Rent Plus Service Payments | Storage Rental Payments | Uncovered Parking Payments | Washer/Dryer Rental Payments | Renter's Insurance - Do Not Use Payments | Total Additional Service Payments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2006 | $ 12,443 | $ 128,226 | $ - | $ 48,587 | $ 100,740 | $ - | $ 17,171 | $ 36,609 | $ 15,440 | $ - | $ - | $ 1,139 | $ 38,783 | $ 21,469 | $ 420,606 |
| 2007 | $ 11,650 | $ 131,260 | $ - | $ 46,561 | $ 110,681 | $ - | $ 23,137 | $ 49,327 | $ 16,888 | $ - | $ 60 | $ 678 | $ 40,481 | $ 18,825 | $ 449,548 |
| 2008 | $ 5,990 | $ 119,557 | $ - | $ 49,454 | $ 116,621 | $ - | $ 32,981 | $ 40,504 | $ 12,122 | $ - | $ 931 | $ 655 | $ 45,920 | $ 8,241 | $ 432,976 |
| 2009 | $ 1,040 | $ 108,164 | $ - | $ 42,629 | $ 123,378 | $ - | $ 12,219 | $ 37,976 | $ 12,975 | $ - | $ 1,860 | $ 600 | $ 52,392 | $ 34 | $ 393,267 |
| 2010 | $ 465 | $ 91,121 | $ - | $ 41,393 | $ 127,981 | $ - | $ 5,478 | $ 39,771 | $ 14,964 | $ - | $ 2,040 | $ 775 | $ 58,187 | $ - | $ 382,175 |
| 2011 | $ - | $ 81,387 | $ - | $ 47,455 | $ 137,414 | $ - | $ 4,884 | $ 41,583 | $ 18,571 | $ - | $ 2,540 | $ 1,205 | $ 79,207 | $ - | $ 414,245 |
| 2012 | $ - | $ 37,048 | $ - | $ 45,610 | $ 157,497 | $ - | $ 1,112 | $ 35,154 | $ 17,337 | $ - | $ 3,784 | $ 1,104 | $ 91,475 | $ - | $ 390,120 |
| 2013 | $ - | $ - | $ - | $ 42,910 | $ 174,353 | $ - | $ 794 | $ 34,157 | $ 18,899 | $ - | $ 4,382 | $ 912 | $ 94,221 | $ - | $ 370,629 |
| 2014 | $ - | $ - | $ 998 | $ 30,845 | $ 183,812 | $ - | $ 2,187 | $ 37,729 | $ 18,714 | $ 3,686 | $ 4,037 | $ 600 | $ 95,517 | $ - | $ 378,124 |
| 2015 | $ - | $ 51 | $ 720 | $ 20,997 | $ 186,657 | $ 956 | $ 1,341 | $ 48,656 | $ 27,101 | $ 15,988 | $ 5,914 | $ 390 | $ 109,770 | $ - | $ 418,540 |
| 2016 | $ - | $ - | $ 810 | $ 11,906 | $ 202,567 | $ 6,568 | $ 203 | $ 59,196 | $ 29,192 | $ 31,898 | $ 4,519 | $ - | $ 130,732 | $ - | $ 477,592 |
| 2017 | $ - | $ - | $ 990 | $ 12,218 | $ 127,751 | $ 8,983 | $ 571 | $ 61,644 | $ 23,129 | $ 21,379 | $ 5,209 | $ 53 | $ 88,386 | $ - | $ 350,314 |
| 2018 | $ - | $ 1,972 | $ 1,140 | $ 12,618 | $ 125,695 | $ 16,677 | $ - | $ 67,064 | $ 22,880 | $ 10,168 | $ 6,804 | $ 480 | $ 74,573 | $ - | $ 340,071 |
| 2019 | $ - | $ 7,690 | $ 525 | $ 10,172 | $ 122,459 | $ 31,343 | $ 617 | $ 76,473 | $ 25,312 | $ 8,598 | $ 7,730 | $ 261 | $ 69,666 | $ - | $ 360,847 |
| 2020 | $ - | $ 7,731 | $ - | $ 9,983 | $ 46,078 | $ 44,656 | $ - | $ 91,482 | $ 24,938 | $ 8,474 | $ 11,894 | $ - | $ 78,392 | $ - | $ 323,627 |
| 2021 | $ - | $ 4,437 | $ 1,320 | $ 13,195 | $ 1,158 | $ 149,182 | $ - | $ 113,309 | $ 23,637 | $ 8,148 | $ 13,913 | $ - | $ 100,277 | $ - | $ 428,577 |
| 2022 | $ - | $ 1,706 | $ 760 | $ 12,322 | $ 6,142 | $ 201,133 | $ 700 | $ 117,956 | $ 25,934 | $ 7,923 | $ 15,180 | $ - | $ 106,302 | $ - | $ 496,058 |
| Total | $ 31,588 | $ 720,349 | $ 7,263 | $ 498,855 | $ 2,050,987 | $ 459,499 | $ 103,394 | $ 988,590 | $ 348,033 | $ 116,261 | $ 90,797 | $ 8,852 | $ 1,354,282 | $ 48,569 | $ 6,827,317 |

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**
**Exhibit 5: Calculations Related to All Section 8 Tenants Who Paid**
**Additional Charges from February 2006 through November 2022**

| Year | Number of Tenants (1) | Number of Housing Assistance Payments | Amount of Additional Charges Paid by Tenants | Amount of Housing Assistance Payments |
|---|---|---|---|---|
| 2006 | 1,145 | 9,558 | $ 420,606 | $ 4,548,021 |
| 2007 | 1,252 | 10,020 | $ 449,548 | $ 5,146,636 |
| 2008 | 1,053 | 9,446 | $ 432,976 | $ 5,192,774 |
| 2009 | 1,080 | 9,276 | $ 393,267 | $ 5,304,396 |
| 2010 | 1,108 | 9,623 | $ 382,175 | $ 5,530,475 |
| 2011 | 1,090 | 10,264 | $ 414,245 | $ 5,967,870 |
| 2012 | 1,183 | 10,639 | $ 390,120 | $ 6,259,570 |
| 2013 | 1,269 | 11,552 | $ 370,629 | $ 6,949,909 |
| 2014 | 1,357 | 12,031 | $ 378,124 | $ 7,296,888 |
| 2015 | 1,499 | 12,654 | $ 418,540 | $ 8,084,145 |
| 2016 | 1,602 | 14,168 | $ 477,592 | $ 9,448,787 |
| 2017 | 1,074 | 9,655 | $ 350,314 | $ 6,555,656 |
| 2018 | 1,004 | 9,627 | $ 340,071 | $ 6,887,373 |
| 2019 | 988 | 9,605 | $ 360,847 | $ 7,244,066 |
| 2020 | 920 | 7,927 | $ 323,627 | $ 6,521,480 |
| 2021 | 845 | 8,076 | $ 428,577 | $ 7,056,789 |
| 2022 | 903 | 8,219 | $ 496,058 | $ 7,547,372 |
| Total | 6,026 | 172,340 | $ 6,827,317 | $ 111,542,206 |

(1) Tenants may be affected in more than one year.

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**

**Exhibit 6: Calculations Related to Section 8 Tenants Who Paid Required Renters' Insurance Payments from February 2006 through November 2020**

| Year | Number of Tenants (1) | Number of Housing Assistance Payments | Renter's Insurance Payments by Tenants | Amount of Housing Assistance Payments |
|---|---|---|---|---|
| 2006 | 899 | 7,391 | $ 99,440 | $ 3,540,897 |
| 2007 | 894 | 7,260 | $ 99,883 | $ 3,701,892 |
| 2008 | 783 | 6,777 | $ 92,117 | $ 3,721,259 |
| 2009 | 770 | 6,832 | $ 92,577 | $ 3,774,642 |
| 2010 | 791 | 6,684 | $ 92,761 | $ 3,708,139 |
| 2011 | 732 | 6,776 | $ 98,738 | $ 3,829,490 |
| 2012 | 694 | 6,308 | $ 103,719 | $ 3,629,790 |
| 2013 | 705 | 6,495 | $ 107,555 | $ 3,816,587 |
| 2014 | 695 | 6,423 | $ 106,544 | $ 3,799,920 |
| 2015 | 721 | 5,982 | $ 98,933 | $ 3,735,108 |
| 2016 | 716 | 6,409 | $ 101,580 | $ 4,143,894 |
| 2017 | 690 | 6,058 | $ 97,393 | $ 3,988,069 |
| 2018 | 621 | 5,986 | $ 96,148 | $ 4,131,017 |
| 2019 | 647 | 6,252 | $ 99,719 | $ 4,610,099 |
| 2020 | 455 | 2,450 | $ 38,100 | $ 2,037,190 |
| Total | 3,405 | 94,083 | $ 1,425,207 | $ 56,167,995 |

(1) Tenants may be affected in more than one year.

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**

**Exhibit 7: Calculations Related to Section 8 Tenants Who Paid Required Renters' Insurance Payments from December 2011 through November 2020**

| Year | No. of Tenants (1) | Number of Housing Assistance Payments | Renter's Insurance Payments by Tenants | Amount of Housing Assistance Payments |
|------|------|------|------|------|
| 2011 | 550 | 544 | $ 8,932 | $ 309,803 |
| 2012 | 694 | 6,308 | $ 103,719 | $ 3,629,790 |
| 2013 | 705 | 6,495 | $ 107,555 | $ 3,816,587 |
| 2014 | 695 | 6,423 | $ 106,544 | $ 3,799,920 |
| 2015 | 721 | 5,982 | $ 98,933 | $ 3,735,108 |
| 2016 | 716 | 6,409 | $ 101,580 | $ 4,143,894 |
| 2017 | 690 | 6,058 | $ 97,393 | $ 3,988,069 |
| 2018 | 621 | 5,986 | $ 96,148 | $ 4,131,017 |
| 2019 | 647 | 6,252 | $ 99,719 | $ 4,610,099 |
| 2020 | 455 | 2,450 | $ 38,100 | $ 2,037,190 |
| Total | 1,959 | 52,907 | $ 858,624 | $ 34,201,478 |

(1) Tenants may be affected in more than one year.

Terry, et al. vs. Wasatch Advantage Group, LLC, et al.
**Exhibit 8: Calculations Related to Section 8 Tenants Who Paid Washer/Dryer Charges from February 2006 through June 2019**

| Year | Number of Tenants (1) | Number of Housing Assistance Payments | Washer/Dryer Rental Payments by Tenants | Amount of Housing Assistance Payments |
|------|------|------|------|------|
| 2006 | 123 | 1,048 | $ 38,963 | $ 484,385 |
| 2007 | 135 | 1,059 | $ 40,481 | $ 528,843 |
| 2008 | 120 | 1,073 | $ 46,005 | $ 557,244 |
| 2009 | 135 | 1,154 | $ 52,392 | $ 615,441 |
| 2010 | 174 | 1,415 | $ 58,217 | $ 776,140 |
| 2011 | 214 | 2,003 | $ 79,207 | $ 1,124,842 |
| 2012 | 254 | 2,377 | $ 91,475 | $ 1,388,800 |
| 2013 | 267 | 2,470 | $ 94,191 | $ 1,477,177 |
| 2014 | 271 | 2,479 | $ 95,365 | $ 1,466,597 |
| 2015 | 325 | 2,835 | $ 109,840 | $ 1,725,543 |
| 2016 | 368 | 3,198 | $ 130,762 | $ 2,004,645 |
| 2017 | 251 | 2,336 | $ 88,386 | $ 1,426,757 |
| 2018 | 225 | 2,089 | $ 74,573 | $ 1,305,915 |
| 2019 | 184 | 1,023 | $ 34,265 | $ 648,971 |
| Total | 945 | 26,559 | $ 1,034,122 | $ 15,531,301 |

(1) Tenants may be affected in more than one year.

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**
**Exhibit 9: Calculations Related to Section 8 Tenants Who Paid Washer/Dryer Charges from**
**August 2017 through June 2019**

| Year | Number of Tenants (1) | Number of Housing Assistance Payments | Washer/Dryer Rental Payments by Tenants | Amount of Housing Assistance Payments |
|---|---|---|---|---|
| 2017 | 220 | 946 | $ 35,205 | $ 578,670 |
| 2018 | 225 | 2,089 | $ 74,573 | $ 1,305,915 |
| 2019 | 184 | 1,023 | $ 34,265 | $ 648,971 |
| Total | 296 | 4,058 | $ 144,043 | $ 2,533,557 |

(1) Tenants may be affected in more than one year.

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**

**Exhibit 10: Mandatory Media Package Payments from Month of February 2006 through Month of December 2022**

| Property Name | Number of Tenants | Number of Housing Assistance Payments | Media Package Payments by Tenants | Amount of Housing Assistance Payments |
|---|---|---|---|---|
| Broadmoor Village Apartments | 11 | 232 | $ 20,535 | $ 194,735 |
| Canyon Ridge Apartments | 37 | 608 | $ 44,337 | $ 613,627 |
| Courtyard at Central Park | 285 | 6,093 | $ 215,671 | $ 2,882,983 |
| Devonshire Court East | 2 | 7 | $ 623 | $ 5,750 |
| Devonshire Court West | 2 | 48 | $ 4,536 | $ 10,210 |
| Falls at Hunters Pointe | 5 | 119 | $ 10,322 | $ 120,750 |
| Goldstone Place Apartments | 2 | 16 | $ 400 | $ 5,731 |
| Landing at Fancher Creek | 538 | 13,489 | $ 475,914 | $ 6,086,540 |
| Lofts at 7800 | 1 | 3 | $ 217 | $ 2,992 |
| Metropolitan Place Apartments | 2 | 48 | $ 3,792 | $ 63,474 |
| Rio Seco Apartments | 37 | 575 | $ 36,358 | $ 386,280 |
| Total | 922 | 21,238 | $ 812,705 | $ 10,373,072 |

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**

**Exhibit 11: Mandatory Washer/Dryer Rental Payments from Month of February 2006 through Month of December 2022**

| Property Name | Number of Tenants | Number of Housing Assistance Payments | Washer/Dryer Rental Payments by Tenants | Amount of Housing Assistance Payments |
|---|---|---|---|---|
| California Place Apartments | 22 | 323 | $ 12,977 | $ 184,607 |
| Chesapeake Commons Apartments | 177 | 6,717 | $ 238,819 | $ 3,853,109 |
| Total | 199 | 7,040 | $ 251,796 | $ 4,037,716 |

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**

**Exhibit 12: Mandatory Parking-Related Payments from Month of February 2006 through Month of December 2022**

| Property Name | Number of Tenants | Number of Housing Assistance Payments | Parking-Related Payments by Tenants | Amount of Housing Assistance Payments |
|---|---|---|---|---|
| Chesapeake Commons Apartments | 72 | 775 | $ 8,249 | $ 456,506 |
| Crossroads Apartments | 44 | 1,530 | $ 17,678 | $ 867,633 |
| Promontory Point Apartments | 8 | 192 | $ 3,825 | $ 148,579 |
| Revo 225 | 1 | 24 | $ 1,240 | $ 38,568 |
| Total | 125 | 2,521 | $ 30,992 | $ 1,511,286 |

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**

**Exhibit 13: Mandatory Media Package Payments from Month of December 2011 through Month of December 2022**

| Property Name | Number of Tenants | Number of Housing Assistance Payments | Media Package Payments by Tenants | Amount of Housing Assistance Payments |
|---|---|---|---|---|
| Broadmoor Village Apartments | 11 | 232 | $ 20,535 | $ 194,735 |
| Canyon Ridge Apartments | 37 | 608 | $ 44,337 | $ 613,627 |
| Courtyard at Central Park | 56 | 349 | $ 13,754 | $ 177,517 |
| Devonshire Court East | 2 | 7 | $ 623 | $ 5,750 |
| Devonshire Court West | 2 | 48 | $ 4,536 | $ 10,210 |
| Falls at Hunters Pointe | 5 | 119 | $ 10,322 | $ 120,750 |
| Landing at Fancher Creek | 134 | 812 | $ 29,560 | $ 376,048 |
| Lofts at 7800 | 1 | 3 | $ 217 | $ 2,992 |
| Metropolitan Place Apartments | 2 | 48 | $ 3,792 | $ 63,474 |
| Rio Seco Apartments | 37 | 575 | $ 36,358 | $ 386,280 |
| Total | 287 | 2,801 | $ 164,034 | $ 1,951,383 |

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**

**Exhibit 14: Mandatory Washer/Dryer Rental Payments from Month of December 2011 through Month of December 2022**

| Property Name | Number of Tenants | Number of Housing Assistance Payments | Washer/Dryer Rental Payments by Tenants | Amount of Housing Assistance Payments |
|---|---|---|---|---|
| California Place Apartments | 22 | 323 | $ 12,977 | $ 184,607 |
| Chesapeake Commons Apartments | 131 | 4,069 | $ 145,188 | $ 2,447,453 |
| Total | 153 | 4,392 | $ 158,166 | $ 2,632,060 |

**Terry, et al. vs. Wasatch Advantage Group, LLC, et al.**

**Exhibit 15: Mandatory Parking-Related Payments from Month of December 2011 through Month of December 2022**

| Property Name | Number of Tenants | Number of Housing Assistance Payments | Parking-Related Payments by Tenants | Amount of Housing Assistance Payments |
|---|---|---|---|---|
| Chesapeake Commons Apartments | 72 | 775 | $ 8,249 | $ 456,506 |
| Crossroads Apartments | 37 | 1,231 | $ 14,459 | $ 704,204 |
| Promontory Point Apartments | 8 | 192 | $ 3,825 | $ 148,579 |
| Revo 225 | 1 | 24 | $ 1,240 | $ 38,568 |
| Total | 118 | 2,222 | $ 27,772 | $ 1,347,857 |