Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | (Fax) (510) 835-1417

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Telephone: (510) 834-3300 | (Fax) (510) 834-3377

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Telephone: (510) 437-1863 | (Fax) (510) 437-9164

Jocelyn Larkin (SBN 110817)
jlarkin@impactfund.org
Lindsay Nako (SBN 239090)
lnako@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473 | (Fax) (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE REMEDIES**<br><br>Date: December 8, 2023<br>Time: 10:00 a.m.<br>Dept: Courtroom 3, 15th Floor<br>Before: Hon. Kimberly J. Mueller<br><br>Trial Date: None Set |

887294.9

Pls.' Reply in Supp. of Mot. for Partial Summ. J. Re Remedies – Case No. 2:15-CV-00799 KJM-DB

| | |
|---|---|
| 1 | LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON APARTMENTS, LP, BENT TREE APARTMENTS, LLC, CALIFORNIA PLACE APARTMENTS, LLC, CAMELOT LAKES HOLDINGS, LLC, CANYON CLUB HOLDINGS, LLC, COURTYARD AT CENTRAL PARK APARTMENTS, LLC, CREEKSIDE HOLDINGS, LTD, HAYWARD SENIOR APARTMENTS, LP, HERITAGE PARK APARTMENTS, LP, OAK VALLEY APARTMENTS, LLC, OAK VALLEY HOLDINGS, LP, PEPPERTREE APARTMENT HOLDINGS, LP, PIEDMONT APARTMENTS, LP, POINT NATOMAS APARTMENTS, LLC, POINT NATOMAS APARTMENTS, LP, RIVER OAKS HOLDINGS, LLC, SHADOW WAY APARTMENTS, LP, SPRING VILLA APARTMENTS, LP, SUN VALLEY HOLDINGS, LTD, VILLAGE GROVE APARTMENTS, LP, WASATCH QUAIL RUN GP, LLC, WASATCH PREMIER PROPERTIES, LLC, WASATCH POOL HOLDINGS III, LLC, and DOES 1-4,<br><br>    Defendants. |

I.       **INTRODUCTION**

Defendants Wasatch Advantage Group, LLC, *et al.*, ("Wasatch") offer little opposition to Plaintiffs' Motion for Partial Summary Judgment re Remedies.  The Parties agree on the facts necessary to determine class damages and restitution arising from Wasatch's breach of the HAP Contract and violation of California's Unfair Competition Law, and they agree on the legal standard for prejudgment interest.  The Court may resolve the few remaining issues of law on the undisputed factual record:

*First,* as there are no disputes of fact to be resolved by a jury, the Court can and should answer the pure legal question of how contract damages will be calculated.

*Second,* the Court's contract damages ruling is governed by the terms of the HAP Contract, which directs that property owners who have collected excess rent "must immediately return any excess rent payment to the tenant."  HAP Contract, Part C, ¶ 5(f), Bellows Decl. Ex. 7, ECF No. 323-3. Neither the HAP Contract nor California contract law principles permit Wasatch to retain the cost of providing additional services, and Wasatch misapplies the "benefit of the bargain" principle in arguing otherwise.

*Third,* the Court should also hold that full restitution of the unlawful excess rent charges is the appropriate measure of restitution in this case on the class Unfair Competition Law claim.  Wasatch does not offer any argument to the contrary.

*Fourth*, Wasatch's objection to Plaintiffs' request for prejudgment interest is based on a misunderstanding of Plaintiffs' methodology.  The Parties agree that prejudgment interest begins to accrue when each class member's damage is incurred.

The Court should award the class the full amount of additional service charges paid by class members as excess rent during the relevant period, plus prejudgment interest at a rate of 10% per annum.  These amounts total $2,800,185 in contract damages and restitution for the known class members and $2,062,690 in prejudgment interest as of July 20, 2023, and $767.17 per day thereafter.[1]

---

[1] Plaintiffs have not yet resolved the status of the additional 28 tenants who may qualify as class members.  When their status is confirmed, Plaintiffs will provide any necessary updates incorporating those tenants' data.

## II.    ARGUMENT

**A.    As a Matter of Law, the Class Damages for the Breach of Contract Claim Are Equal to the Undisputed Full Amount of Additional Service Charges that Class Members Paid.**

Wasatch's Opposition confirms that there are no material disputes of fact to be resolved by a jury regarding the amount of class damages on the breach of contract claim.  As a matter of law, the Court should resolve this issue now by applying the mandatory and explicit remedy provided by the HAP Contract: the full "return [of] any excess rent payment to the tenant."  *See* HAP Contract, Part C, ¶ 5(f); *see also* Summ. J. Order 13-14, ECF No. 278 ("Plaintiffs were damaged in the amount of the excess rent they were required to pay . . . .").

**1.    The Measure of Class Damages for Wasatch's Violation of the HAP Contract Presents a Pure Question of Law, Not a Dispute of Fact.**

Wasatch admits every fact relevant to the calculation of class damages.  *See generally* Defs.' Opp'n to Pls.' Statement of Undisputed Facts ("Def. Opp'n to UF"), ECF No. 326-1.  Wasatch agrees that the policies and practices underlying the Court's liability ruling continued without change until November 30, 2022, the end of the class damages period sought by this Motion.  Def. Opp'n to UF 1. Wasatch agrees that Plaintiffs' expert David Breshears correctly calculated the amount of additional service charges paid by class members based on accurate and authentic data from Wasatch's property management database.  Def. Opp'n to UF 3-11.  Wasatch agrees that class members paid $2,800,185 in additional service charges from May 2011 through November 2022.  Def. Opp'n to UF 8.  Wasatch has not identified *any* disputed facts that require resolution by a jury.[2]  *Cf.* L.R. 260(b) (allowing a party opposing a motion for summary judgment to file a "Statement of Disputed Facts" identifying disputed material facts precluding summary judgment).

---

[2] Though Wasatch submitted James McCurley's expert report and entire deposition transcript with its Opposition, it did not cite those materials for any factual assertion.  *See* Matthews Decl. Exs. B, C, ECF No. 326-3; Opp'n 6, ECF No. 326.  Plaintiffs have already explained that McCurley's testimony does not create a material dispute of fact.  *See* Pls. Mem. of P. & A. 6-7, ECF No. 323-1.  Wasatch has not argued otherwise, nor has it cited to "particular parts" of the expert report and deposition transcript it submitted, contrary to the requirements of Federal Rule of Civil Procedure 56(c)(1)(A).  The Court should therefore disregard the materials.  Plaintiffs reserve all objections related to the admissibility at trial of McCurley's report, opinions, and testimony.

The only issue that Wasatch raises as to the amount of class damages is whether Wasatch is legally allowed to deduct the cost of providing renters' insurance and media packages from class damages. As the proper method of measuring contract damages on an undisputed record is a pure question of law, this dispute must be resolved by the Court. *See e.g.*, *Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 933 (N.D. Cal. 2015) (resolving measure of contract damages in a class case at summary judgment and rejecting as a matter of law the defendant's attempt to "introduce additional damages offsets into the calculation"); *Switzer v. Wood*, 35 Cal. App. 5th 116, 125 (2019), *as modified* (May 10, 2019) ("A question of the proper measure of damages in a particular case is . . . an issue of law"); *Toscano v. Greene Music*, 124 Cal. App. 4th 685, 691 (2004) (the measure of damages "is a question of law" while "[t]he amount of damages, on the other hand, is a fact question"); Pls. Mem. of P. & A. 7-8 (collecting cases).

Wasatch cites *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal. App. 3d 442, 455 (1990) in an attempt to argue that a dispute over the approach to measuring damages should be resolved by a jury rather than the Court. However, even the quote chosen by Wasatch highlights "[t]he *rules of law* governing the recovery of damages for breach of contract" and the responsibility of "the court" to apply those rules to "the special circumstances of the particular case." *Id.*, *quoted in* Opp'n 6 (emphasis added). Even Wasatch's own authorities agree that whether Wasatch can deduct its costs from class damages is a question of law, rather than a dispute of fact.

2. **As Required by the HAP Contract, the Measure of Contract Damages in This Case is the Full Amount of Additional Service Charges Paid by the Class.**

As Plaintiffs explained in their opening brief, the HAP Contract sets the remedy for the collection of excess rent payments: the immediate return of any excess rent payment to the tenant. HAP Contract, Part C, ¶ 5(f) *discussed in* Pls. Mem. of P. & A. 9-10. California law grants this remedy controlling effect. *San Pasqual Band of Mission Indians v. State of California*, 241 Cal. App. 4th 746, 758 (2015); *Nelson v. Spence*, 182 Cal. App. 2d 493, 497-98 (1960). This Court has already ruled that "the additional charges outlined in the Additional Service Agreements constituted impermissible rent in violation of both the HAP Contracts and federal law" and that class members were "damaged in the amount of excess rent they were required to pay." Summ. J. Order 13-14.

3

Therefore, the measure of class damages for Wasatch's breach of the HAP Contract is the full $2,800,185 in payments made by class members from May 1, 2011 through November 30, 2022.  *See* Defs.' Opp'n to UF 8 (admitting this amount is undisputed).

Entirely ignoring this provision and the Court's ruling at summary judgment on liability, Wasatch argues that the "benefit of the bargain" principle somehow requires the deduction of the cost of providing renters' insurance and media packages from class damages.  As Plaintiffs explained in their opening brief, not only is this theory irrelevant given the explicit requirements of the HAP Contract, it is also wrong in its own right.  *See* Pls. Mem. of P. & A. 12-14.

Wasatch fundamentally misconceives the bargain at issue.  The relevant contract here is the HAP Contract—and specifically the Tenancy Addendum contained in Part C, which secures the rights of Section 8 tenants.  A core benefit to Section 8 tenants bargained for in the HAP Contract, consistent with federal law, is the limitation on the tenant's share of rent.  *See Kelly v. Denault*, 374 F. Supp. 3d 884, 892 (N.D. Cal. 2018) (the collection of excess side-payments "affect[s] one of the most basic terms of the Contract") (quoting *U.S. ex rel Sutton v. Reynolds*, 564 F. Supp. 2d 1183, 1189 (D. Or. 2007)).  Requiring the property owner to return the full amount of excess rent payments secures the benefit of *that bargain* for Section 8 tenants.  *See* HAP Contract, Section C, ¶ 5(e) (prohibiting the owner from "charg[ing] or accepting[ing], from the family or from any other source, any payment for rent of the unit in addition to the rent to owner").

Wasatch's focus on the "tangible benefits as a result of the Additional Service[s] Agreements" (Opp'n at 6) elides the Court's finding that the charges on the Additional Services Agreement were, in fact, rent.  *See* Summ. J. Order 13 ("For these reasons, the court finds the additional charges outlined in the Additional Services Agreements constitute impermissible rent in violation of both the HAP contracts and federal law.").  Those excess rent charges were unlawful under the HAP Contract, full stop.  The HAP Contract controls over any contrary obligations of the Additional Services Agreement. HAP Contract, Section C, ¶ 14(b); 24 C.F.R. § 982.308(f)(2).  Wasatch's focus on the benefit of the bargain from the Additional Services Agreement is thus doubly wrong—Wasatch's breach relates to a different contract and a different bargain, and in any event the HAP Contract's prohibition on excess rent controls over any inconsistent terms of the Additional Services Agreement.

In the end, both the remedy mandated by the HAP Contract and the "benefit of the bargain" principle point to the same result: the measure of damages must be the full amount of excess rent payments made by class members, as the full reimbursement of those payments is necessary to vindicate the limitations on the tenants' share of the rent which are crucial to the purpose and design of the HAP Contract.  *See Kelly*, 374 F. Supp. 3d at 892.

### B. Full Restitution of Excess Rent Payments Made by Class Members Is Also Proper Under the Unfair Competition Law.

Wasatch mounts no opposition to awarding the class the full amount of excess rent payments pursuant to the Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq.* ("UCL").  The UCL authorizes the Court to enter orders necessary to return to class members "any money or property, real or personal, which may have been acquired by means of such unfair competition."  Cal. Bus. & Prof. Code § 17203.  "The object of restitution [under the UCL] is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003).  Here, class members' ownership interest in the excess rent payments they made is established by their entitlement, both by federal regulation and by the terms of the HAP Contract, to the immediate return of those payments. *See* 24 C.F.R. § 982.451(b)(4)(ii) (an owner "must immediately return any excess rent payment to the tenant."); HAP Contract, Part C, ¶ 5(f) (same).  In this context, full restitution of those amounts is the most appropriate remedy.  *See People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 135, as modified on denial of reh'g (2003) (affirming order requiring restitution of unauthorized rent charges).

### C. Wasatch's Misunderstanding of Plaintiffs' Prejudgment Interest Calculations Do Not Create a Dispute of Fact.

Wasatch does not dispute Plaintiffs' entitlement to prejudgment interest, nor do the Parties disagree on the method of calculating prejudgment interest.[3]  Wasatch's sole opposition to Plaintiffs'

---

[3] Plaintiffs agree that prejudgment interest must be based on the actual amount of damages.  *See* Opp'n 6.  However, since that amount may be determined as a matter of law based on the present Motion, that is no bar to determining prejudgment interest.

request arises from its misunderstanding of Plaintiffs' method of calculating prejudgment interest. Wasatch asserts that "Plaintiffs' expert, David Breshears, conducted his simple interest calculations . . . under the assumption that the entirety of Plaintiffs' proposed $2,800,185.00 in damages accrued in April, 2011." Opp'n 2. That argument is meritless on its face. Plaintiffs' contract damages total $2,800,185 (two million, eight hundred thousand, one hundred and eighty-five dollars). Pls. Mem. of P. & A. 5. Ten percent of that is $280,018.50 (two hundred, eighty thousand, eighteen dollars and fifty cents). The damages period used by Breshears is about 12 years long (May 2011 to July 2023). Simple interest at ten percent per annum of the $2,800,185 total contract damages over twelve years would be $3,360,222[4] in prejudgment interest, not the requested $2,062,690. *See* Pls.' Mem. of P. & A. 7. Wasatch's argument also makes no sense as to the daily interest calculation. Simple math shows that the daily interest after July 20, 2023 on the $2,800,185, at 10% per annum, is $767.17 per day.[5]

In other words, there is no legal dispute here, as the Parties agree on when the right to prejudgment interest accrues. As Plaintiffs state in their opening brief, "Class members' right to recover *began on the date that they paid the unlawful charges* . . . ." Pls. Mem. of P. & A. 15 (emphasis added). Wasatch agrees. *See* Opp'n 7 ("Defendants have no objection to [Plaintiffs' method of calculating damages] . . . provided that prejudgment interest—at the time of judgment—is calculated on an individualized basis from when each Plaintiffs' damages were incurred.").

There is also no factual dispute, as Plaintiffs' expert calculated prejudgment interest based on the timing of payments made by class members. As described by Breshears, "For purposes of this report, I have been asked by Plaintiffs' Counsel to calculate simple interest of 10% on these additional service payments made on Class Members' accounts . . . *from the end of each month* through July 20, 2023."[6] Breshears Decl. ¶ 39, ECF No. 323-4 (emphasis added). Breshears' interest calculations start

---

[4] *I.e.* ($2,800,185 x 10%) x 12 years = $3,360,222.

[5] *I.e.* ($2,800,185 x 10%) / 365 days = $767.17 (rounded down).

[6] As Plaintiffs explained in their opening brief, Mr. Breshears performed his calculations on a monthly basis. *See* Pls.' Mem. of P.& A. at 5, n.5. He thus conservatively started prejudgment interest calculations for each payment as of the "end of each month" in which the payment was made. *See* Breshears Decl. at ¶ 39.

6

Pls.' Reply in Supp. of Mot. for Partial Summ. J. Re Remedies – Case No. 2:15-cv-00799 KJM-DB

887294.9

"from the end of each month" in which additional service payment were made on class members' accounts—not from April 4, 2011.  *Cf.* Opp'n 6-7.

Accordingly, Plaintiffs' Statement of Undisputed Facts provided a calculation of prejudgment interest using a 10% per annum interest rate based on "the date of payment."  Pls.' Statement of Undisputed Facts 15, 16, & 19, ECF No. 323-2.  Despite purporting to dispute the facts related to prejudgment interest, Wasatch's response agrees that "class members' entitlement must be evaluated based on when the damages were incurred."   Def. Opp'n to UF 15, 16, & 19.

Because David Breshears correctly calculated prejudgment interest under the legal standard that both Parties agree is applicable, the Court should award Plaintiffs $2,062,690 in prejudgment interest through July 20, 2023, and $767.17 per day from July 20, 2023, to the date of judgment.

### III.  CONCLUSION

For the reasons described above, Plaintiffs respectfully request that the Court grant their Motion for Partial Summary Judgment on the amount of class damages, restitution, and prejudgment interest.

Dated:  October 30, 2023

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/ Anne P. Bellows*
Anne P. Bellows

Attorneys for Plaintiffs and Relators