Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800 | Fax: (510) 835-1417

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Tel: (510) 834-3300 | Fax: (510) 834-3377

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Tel: (510) 437-1863 | Fax: (510) 437-9164

Jocelyn Larkin (SBN 110817)
jlarkin@impactfund.org
Lindsay Nako (SBN 239090)
lnako@impactfund.org
THE IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473 | Fax: (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' OPPOSITION TO SELECTED DEFENDANTS'** *EX PARTE* **APPLICATION FOR 90-DAY CONTINUANCE OF PRETRIAL DEADLINES**<br><br>Date:   None<br><br>Before:  Hon. Kimberly J. Mueller<br><br>Trial Date:   None Set |

| | |
|---|---|
| 1 | LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON APARTMENTS, LP, BENT TREE APARTMENTS, LLC, CALIFORNIA PLACE APARTMENTS, LLC, CAMELOT LAKES HOLDINGS, LLC, CANYON CLUB HOLDINGS, LLC, COURTYARD AT CENTRAL PARK APARTMENTS, LLC, CREEKSIDE HOLDINGS, LTD, HAYWARD SENIOR APARTMENTS, LP, HERITAGE PARK APARTMENTS, LP, OAK VALLEY APARTMENTS, LLC, OAK VALLEY HOLDINGS, LP, PEPPERTREE APARTMENT HOLDINGS, LP, PIEDMONT APARTMENTS, LP, POINT NATOMAS APARTMENTS, LLC, POINT NATOMAS APARTMENTS, LP, RIVER OAKS HOLDINGS, LLC, SHADOW WAY APARTMENTS, LP, SPRING VILLA APARTMENTS, LP, SUN VALLEY HOLDINGS, LTD, VILLAGE GROVE APARTMENTS, LP, WASATCH QUAIL RUN GP, LLC, WASATCH PREMIER PROPERTIES, LLC, WASATCH POOL HOLDINGS III, LLC, and DOES 1-4,<br><br>      Defendants. |

I.  INTRODUCTION

Nearly nine years into this action and days from the twice-delayed deadline for the Parties' pre-trial filings for Phase 1, twelve Defendants associated with the Wasatch Group have changed their counsel and moved *ex parte* to extend the pre-trial deadlines by 90 days. This ask is particularly shocking after the events of the last two months. At the December 8, 2023 hearing, defense counsel—acting on behalf of all Defendants—raised the prospect of new counsel substituting in for some of the defendant entities, and the Court offered the current February 16 Final Pretrial Conference date as the later option to accommodate any new counsel. *See* Minute Order, ECF No. 332. After the December 8 hearing, Plaintiffs offered to meet and confer with the new counsel but were told that there would be no substitution and that current counsel Lewis Brisbois Bisgaard & Smith LLP would continue to act as lead counsel for all Defendants at trial. *See* Stipulation and [Proposed] Order Setting Pretrial Conference, ECF No. 335.

A request to change the Court's scheduling order requires a showing of good cause. Fed. R. Civ. Proc. 16(b)(4). Neither the twelve Defendants ("WAG Defendants"[1]) nor their new counsel have displayed the diligence necessary to support a change in the scheduling order under Federal Rule of Civil Procedure 16. Their eleventh-hour request instead bears the marks of gamesmanship and bad faith.

The WAG Defendants' citations to the Bifurcation Order and the alleged conflict they purport to have recently discovered only undermines their request. The Bifurcation Order has been in place since August 16, 2021, and was stipulated to by three of the WAG Defendants: Wasatch Advantage Group, Wasatch Pool Holdings, and Chesapeake Apartment Holdings, LLC. Stip. and

---

[1] The *ex parte* papers refer to this group as the "Owner Defendants," but new counsel Arnall Golden Gregory LLP only represents the ownership entities associated with the Wasatch family of companies ("Wasatch Group"), including Wasatch Advantage Group ("WAG"). New counsel appears not to be in communication with the owner entities no longer affiliated with the Wasatch Group, and therefore cannot speak for them. Absent a notice of substitution, and contrary to the WAG Defendants' claim that the non-affiliated own entities "appear to be unrepresented" and may be "deprived of a defense," the record indicates that these entities continue to be represented by Lewis Brisbois. *See* Answer to Sixth Amended Complaint, ECF No. 333 (filed December 14, 2023). Plaintiffs therefore refer to the twelve Defendants seeking a delay as the "WAG Defendants."

Order Granting Leave to File Fifth Amended Complaint, Bifurcating the Case for Discovery and Trial, and Vacating Case Deadlines ("Bifurcation Order"), ECF No. 135.  Significantly, the Bifurcation Order deliberately reserves all agency and corporate relationship issues for the next phase of this litigation (known as Phase 2).  The remaining WAG Defendants confirmed their agreement with the Bifurcation Order in the January 25, 2022 Stipulation and Order Modifying Class Certification Order, ECF No. 226 ("The extent of each Defendant's vicarious liability for that conduct can be manageably tried in Phase 2[.]").  The WAG Defendants do not identify any conflict of interest that could arise during the upcoming Phase 1 trial, yet they seek to throw off all pretrial deadlines to accommodate their new choice of counsel.

Plaintiffs strongly oppose any change to the Final Pretrial Conference date and believe that any extension to the pretrial filings is unwarranted.  Accordingly, Plaintiffs request that the Court deny the *ex parte* application in full.

## II.     BACKGROUND

### A.     There Is No New or Unexpected Conflict of Interest Among Defendants, and There Is No Trial-Related Conflict.

In their *ex parte* application, for the first time, the WAG Defendants assert that their last-minute substitution of counsel is necessary because they purportedly learned of a conflict of interest on December 4, 2023.  *See* Mem. of Pts. and Authority, ECF No. 349, p.5.  The WAG Defendants had made no mention of this conflict in their January 26 meet and confer with Plaintiffs about their requested continuance.  Declaration of Anne Bellows in Opposition to the Selected Defendants' *Ex Parte* Application for Continuance of Pretrial Deadlines ("Bellows Decl."), filed herewith, ¶ 12.  *See also id.*, Exh. 7, p. 1-2 (January 29, 2024 email from Richard T. Collins).

From its filing in 2015, this case has always included both Wasatch Property Management and Wasatch-affiliated limited liability companies that own the properties where the unlawful side charges to Section 8 tenants took place.  *See* Complaint, ECF No. 1.  The conflict allegedly discovered by Defendants on December 4, 2023 is neither new nor unexpected, and it has nothing to

do with the Phase 1 trial.[2]

In the spring and summer of 2021, the Parties created and stipulated to a bifurcation of issues that structured the litigation to *first* resolve the question of whether Wasatch Property Management's practices gave rise to liability on the class claims and under the False Claims Act ("FCA"), ***and then*** conduct discovery and litigate the question of who is liable for the class claims and whether any additional Defendants are liable under the FCA.[3]  Bifurcation Order, ECF No. 135.  Based on discussions between counsel, Plaintiffs have always understood that one of Defendants' purposes in proposing this bifurcation was their strategic choice to defer issues giving rise to potential conflicts and maintain unified representation on the substantive merits issues.  Bellows Decl. ¶ 3.  *See also* Stipulation and Order Modifying Class Certification Order, ECF No. 226 ("[T]he claims in the case turn on Wasatch Property Management's conduct. The claims regarding all other Defendants' liability result from their contractual and corporate relationships to [WPM].").

The sole conflict of interest that the WAG Defendants cite falls squarely within the scope of the issues reserved for Phase 2: whether the owners alone are liable to class members under the HAP Contract, or whether, as Plaintiffs have alleged and anticipate proving in Phase 2, all Defendants are liable under alter ego principles, joint venture liability, or other grounds.  *See* Bifurcation Order at 6, ECF No. 135; Sixth Amended Complaint, ¶¶ 102-126, ECF No. 331.

---

[2] Notably, the WAG Defendants' assertion that their interests fundamentally diverge from those of Wasatch Property Management is undercut by the reality that only entities associated with the Wasatch family of companies are seeking separate counsel, and that their notices of substitution are all signed by Dell Loy Hansen, who is described on Wasatch's website as the "Founder and Chief Executive Officer of the Wasatch Group."  *See* https://www.wasatchgroup.com/our-founder/ (last accessed Jan. 30, 2024); Notices of Substitution, ECF Nos. 337-348.  The same website lists Wasatch Property Management as a "division" of the Wasatch Group.  *See* https://www.wasatchgroup.com/divisions/ (last accessed Jan. 30, 2024).

[3] The Bifurcation Order contemplates that the upcoming Phase 1 trial will adjudicate Wasatch Property Management's liability under the False Claims Act.  WAG Defendants do not, and cannot, claim that this raises any conflict of interest.  It is not a defense to the FCA that an entity is acting as an agent for others.  *See* 31 U.S.C. § 3729(a)(1) ("any person" who presents a false claim is liable under the FCA); *see also U.S. ex rel. Haskins v. Omega Inst.*, Inc., 11 F. Supp. 2d 555, 563-65 (D.N.J. 1998) (citing Restatement (Second) of Agency § 348)).  To the extent that the WAG Defendants may face vicarious liability under the FCA, their interests are aligned with Wasatch Property Management in seeking to defeat Plaintiffs' claims in the Phase 1 trial.

More than a year ago, the Court held that the class had established liability on the breach of contract and UCL claims in its order granting summary judgment to Plaintiffs on November 23, 2022. ECF No. 278. Ever since then, it has been apparent that there will be a Phase 2 of the litigation to determine who is liable on those claims. *See* Bifurcation Order at 6, ECF No. 135. No Defendant has raised any issue with the bifurcation since, nor is there any. As to the Phase 1 class claims, liability is established and only the amount of damages is potentially at issue (depending on the court's ruling on Plaintiffs' pending Motion for Partial Summary Judgment Re Remedies, ECF No. 323). Wasatch Property Management has the same interest as all owner Defendants in defeating liability for the False Claims Act and limiting any damages for the class claims. Again, Defendants made the strategic decision to first try these issues based on WPM's conduct in Phase 1, before addressing the liability of individual defendants in Phase 2. Notably, owner Defendant Hayward Senior Apartments, LP, did make the choice to retain separate counsel in April 2022 and has continued to support the bifurcation. *See* Defendant Hayward Senior Apartments, LP's Notice of Motion to Join in [Defendants'] Motion for Summary Judgment, ECF No. 244 ("Bifurcating the litigation as proposed was appropriate . . . because it would serve both the convenience of the Parties and judicial economy[.]").

The WAG Defendants are of course welcome to retain their counsel of choice to advance their interests and participate in the Phase 1 trial as they see fit, but there is no merit to their assertions that an unforeseen conflict of interest forced them to retain new counsel at the last minute or that the alleged conflict constitutes good cause to modify the pretrial schedule.

**B.     Neither the WAG Defendants nor Their New Counsel Have Acted with Diligence.**

The first public participation in this case by WAG Defendants' new counsel, Arnall Golden Gregory LLP, took place close to a year ago when partner Orlando Cabrera attended the March 15, 2023 Settlement Conference as "Consulting Counsel for Wasatch Property Management." *See* ECF No. 293. However, that was not a one-off incident. In July 2023, Mr. Cabrera offered edits on a fact stipulation being negotiated by the Parties about tenant Housing Assistance Payment Contracts. Bellows Decl. ¶ 4.

1   Plaintiffs learned about the potential retention of new litigation counsel on December 8,
2   2023, the morning of the hearing on Plaintiffs' Motion for Partial Summary Judgment on Remedies.
3   Bellows Decl., Exh. 1 (December 8, 2023 email from Ryan Matthews).  Defense counsel Ryan
4   Matthews of Lewis Brisbois informed Plaintiffs by email that multiple Defendants were planning to
5   retain separate counsel, "who are likely to substitute in next week." *Id.*  The new counsel was
6   already identified at that point—Mr. Matthews informed Plaintiffs in conversation outside the
7   courtroom that the new counsel was Mr. Cabrera's firm, Arnall Golden Gregory.  Bellows Decl. ¶ 5.

8   Mr. Matthews informed the Court of the prospective substitution of new counsel at the
9   December 8 hearing after Plaintiffs asked the Court to put the Final Pretrial Conference back on
10  calendar.  ECF No. 332.  Though the Court set the Final Pretrial Conference for January 26, 2024, it
11  "acknowledged Mr. Matthew's comments that new counsel may be substituting into this action[.]"
12  *Id.*  In response to Mr. Matthews's comments, the Court provided the Parties with two instructions:
13  (1) it permitted the Parties to identify their anticipated motions *in limine* in their Joint Pretrial
14  Statement, rather than file them in conjunction with the Statement; and (2) it permitted the Parties to
15  continue the Final Pretrial Conference to February 16, 2024, "if new counsel comes into the case and
16  more time is needed." *Id.*

17  Following the December 8 hearing, Plaintiffs repeatedly offered to meet and confer with both
18  Mr. Matthews and the new counsel regarding the pretrial schedule.  Bellows Decl., Exh. 2 (email
19  chain containing multiple requests to meet and confer with new counsel).  However, only Mr.
20  Matthews attended the Parties' meet and confer call on December 14, during which he informed
21  Plaintiffs that the new counsel may associate in, rather than substituting in.  Bellows Decl., ¶ 7.  He
22  also agreed that the upcoming False Claims Act trial would focus on the conduct of Wasatch
23  Property Management.  *Id*.  In drafting the stipulation to set the date of the Final Pretrial Conference,
24  Mr. Matthews confirmed that Lewis Brisbois would be serving as lead counsel for all Defendants at
25  the Phase 1 trial.  *Id.* ¶ 8.  Plaintiffs again repeated their offer, via Mr. Matthews, to meet and confer
26  with the new counsel in the connection with the stipulation, to no avail.  Bellows Decl. Exh. 4
27  (December 18, 2024 email from Anne Bellows).

28  Based on Lewis Brisbois's representations, the Parties prepared and filed a Stipulation and

5

1  Proposed Order Setting Pretrial Conference, which proposed moving the Final Pretrial Conference to
2  February 16, 2024, with a Joint Pretrial Statement filed no later than February 2, 2024.  ECF No. 335
3  (filed on December 21, 2023).  In the filed stipulation, Defendants stated that they "anticipated that
4  additional counsel may be joining the case to represent certain Defendant entities," but that
5  "following further consideration, Defendants have agreed that Joseph Salazar and Ryan Matthews of
6  Lewis Brisbois will serve as lead counsel for all Defendants at trial[.]"  *Id.*  The Court signed the
7  stipulation and order on January 5, 2024.  ECF No. 336.

8        Although the *ex parte* application claims that Arnall Golden Gregory was only formally
9  retained on January 19, their involvement in trial preparation appears to predate that event by weeks,
10 if not longer.  *See* Bellows Decl., Exh. 5, p. 3 (January 5, 2024 email from Ryan Matthews
11 explaining that he could not meet agreed-upon deadlines for exchanging pretrial information because
12 "new counsel is still getting up to speed, so I've been a bit hamstrung pulling the trigger on different
13 decisions").  Yet while working on the case behind the scenes, Arnall Golden Gregory did not file a
14 notice of appearance or take any steps to continue the impending pretrial deadlines.

15       Plaintiffs heard nothing more about new counsel until January 24, the day after Plaintiffs
16 provided Defendants with a draft of the Joint Pretrial Statement.  Bellows Decl., Exh. 6 (January 23,
17 2024 email from Anne Bellows).  By email, Mr. Matthews informed Plaintiffs that attorneys from
18 Arnall Golden Gregory would be "taking over representation of a number of Defendants in this
19 case."  Bellows Decl., Exh. 7, p. 5 (January 24, 2024 email from Ryan Matthews).

20       On January 26, the Parties, including new counsel for the WAG Defendants and Mr.
21 Matthews, met and conferred.  Bellows Decl. ¶¶ 11-13.  While counsel for the WAG Defendants
22 requested a 90-day continuance of the Final Pretrial Conference and Joint Pretrial Statement, at no
23 point did counsel mention that they believed there was a conflict of interest between their clients and
24 Wasatch Property Management.  *Id.* ¶ 12.  For his part, Mr. Matthews confirmed that Wasatch
25 Property Management was still planning to provide a response to Plaintiffs' proposed fact stipulation
26 and exchange lists of witnesses, exhibits, and deposition designations early the week of January 29.
27 *Id.* ¶ 13.  Mr. Matthews indicated that he had been working on Defendants' witness, exhibit, and
28 deposition designation lists for months.  *Id.*  Plaintiffs and Mr. Matthews agreed that it would still be

productive for their parties to behave as if their Joint Pretrial Statement would be filed on February 2.  *Id.*

On January 29, Plaintiffs provided all Defendants with drafts of their lists of witnesses, exhibits, and deposition designations.  Bellows Decl., Exh. 8 (January 29, 2024 email from Anne Bellows).  The WAG Defendants filed their *ex parte* application minutes later.  Bellows Decl., Exh. 9 (ECF No. 349, *Ex Parte* Application for 90 Day Continuance).  Plaintiffs received Wasatch Property Management's draft lists of witnesses and exhibits on January 30.  Bellows Decl., Exh. 10 (January 30, 2024 email from Ryan Matthews).

## III. ARGUMENT

### A. The *Ex Parte* Application Should Be Rejected for Lack of Diligence, the Foundational Requirement Under Federal Rule of Civil Procedure 16.

Federal Rule of Civil Procedure 16(b)(4) requires that, once a scheduling order has been filed, the "schedule may be modified only for good cause and with the judge's consent."  The Ninth Circuit has held that "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992), cited in *Beard v. Cty. of Stanislaus*, No. 1:21-cv-00841, 2022 WL 12073987, at *6 (E.D. Cal. Oct. 20, 2022).  "[I]f the party seeking modification 'was not diligent, the inquiry should end.'" *Beard*, 2022 WL 12073987, at *6 (quoting *Johnson*, 975 F.2d at 609).  In other contexts,[4] Local Rule 144(d) requires that "[c]ounsel shall seek to obtain a necessary extension from the Court or from other counsel or parties in an action as soon as the need for an extension becomes apparent."  E.D. Cal. L.R. 144(d).

Neither the WAG Defendants nor their new counsel demonstrated diligence in seeking this modification to the scheduling order.  The WAG Defendants have been actively involved in litigating this case through their prior counsel for years now.  Wasatch Advantage Group and two of

---

[4] Local Rule 144(a) indicates that it addresses requests for extensions of time to respond to complaints, cross-claims or counterclaims, interrogatories, requests for admissions, and requests for production of documents.  *Beard*, 2022 WL 12073987, at *5 ("Plaintiffs' motion to modify the schedule and/or sanctions motions are not expressly contemplated by this section.").

7

1  the other WAG Defendants were represented and party to the case when all Parties negotiated and
2  drafted the Bifurcation Order, ECF No. 135, and all WAG Defendants confirmed their agreement to
3  the bifurcation by stipulation and order in early 2022, ECF No. 226.  All Defendants, including the
4  twelve now seeking a last-minute extension, have therefore long been on notice of the agreed-upon
5  structure of the litigation and the approaching trial.[5]  Arnall Golden Gregory partner Orlando
6  Cabrera, and possibly others at his firm, began consulting with Defendants on this case sometime
7  before March 15, 2023.

8        The WAG Defendants and their new counsel's extraordinary and unjustifiable delay since December 8 is alone more than enough reason to deny the *ex parte* application.  The Court specifically proposed the February 16, 2024 Final Pretrial Conference date to accommodate the entrance of new counsel, and Plaintiffs repeatedly offered to meet and confer with them to discuss the schedule for preparing pretrial filings.  *See* Bellows Decl., ¶ 6, Exh. 2.  Defendants instead claimed there would be no substitution of counsel and committed to the current deadlines.  ECF No. 335.  Arnall Golden Gregory has been in contact with Mr. Matthews at least throughout the period since the December 8 hearing.  Yet they waited to announce themselves to Plaintiffs' counsel until January 24—just nine days before the deadline for the Joint Pretrial Statement and the day after Plaintiffs provided Defendants with their portions of the Joint Pretrial Statement.  Bellows Decl., Exh. 7, p. 5.  Even at that late date, AGG did not request a continuance, instead waiting for the meet and confer call on January 26.  *See* Bellows Decl., Exh. 7.

20        Similarly, the WAG Defendants provide no explanation for why they delayed almost two months—from allegedly being informed of a conflict on December 4, 2023, until January 29, 2024—to provide any notice to Plaintiffs of this issue.  Nor do they provide any explanation for why Lewis Brisbois represented to all parties and the Court, days after allegedly informing the WAG Defendants of a conflict, that they would continue to represent all Defendants at the Phase 1 trial.

25        Because the WAG Defendants and their counsel cannot satisfy the diligence requirement of

---

[5] The Court granted partial summary judgment on merits issues over a year ago on November 23, 2022.  ECF No. 278.  Remedies discovery closed approximately five months ago on September 8, 2023.  ECF No. 312.

Rule 16, "'the inquiry should end.'" *See Beard*, 2022 WL 12073987, at *6 (quoting *Johnson*, 975 F.2d at 609).

B. **The WAG Defendants' Gamesmanship Should Not Be Rewarded.**

The timeline described above is inconsistent with good faith. The WAG Defendants and their new counsel had every reason and opportunity to meet and confer with Plaintiffs following the December 8, 2023 hearing to raise their concerns about the size of the record and their need for additional time to prepare. Instead, they waited until just days before the Joint Pretrial Statement to seek this extension. Where, as here, a party "waits until the eleventh hour for tactical reasons, or otherwise acts carelessly or in bad faith," amendment of the scheduling order is properly rejected. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 4954634, at *2 (N.D. Cal. Oct. 1, 2014); *see also, e.g.*, *Garmon Corp. v. HealthyPets, Inc.*, No. 518CV00809ODWSHKX, 2019 WL 5784215, at *2 (C.D. Cal. Nov. 6, 2019) ("Such a delay of months . . . smells of gamesmanship and, at best, reflects a lack of diligence.") (rejecting motion to amend scheduling order).

The WAG Defendants lack of action also led Plaintiffs to provide their portions of the Joint Pretrial Statement and lists of witnesses, exhibits, and deposition designations in good faith. Granting a blanket 90-day continuance now would prejudice Plaintiffs by providing all Defendants additional months to prepare for trial without providing Plaintiffs with reciprocal information. *See Malone v. U.S. Postal Service*, 833 F.2d 128, 131 (9th Cir. 1987) ("In determining whether a defendant has been prejudiced, we examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case.").

C. <u>**Delaying the Long-Awaited Trial Would Constitute Serious Prejudice.**</u>

Courts "set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken seriously by the parties." *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005). "Courts set such schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to." *Id.* at 1062. This is particularly true in this Court "because the Eastern District of California is one of the busiest

federal jurisdictions in the United States and its District Judges carry the heaviest caseloads in the nation[.]" *Ansolabehere v. Dollar General Corp.*, No. 1:19-cv-01017, 2021 WL 1564450, at *5 (E.D. Cal. Apr. 21, 2021). Losing their Final Pretrial Conference date could delay the Parties' upcoming trial for even more than 90 days.

## CONCLUSION

For all the reasons set out above, Plaintiffs request that the Court deny the WAG Defendants' *ex parte* application for a 90-day continuation of the Final Pretrial Conference and related dates.

Dated: January 31, 2024       Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

 */s/ Anne P. Bellows*
   Anne P. Bellows

Attorneys for Plaintiffs and Relators
and the Certified Classes