1  Laura L. Ho (SBN 173179)
   lho@gbdhlegal.com
2  Anne Bellows (SBN 293722)
   abellows@gbdhlegal.com
3  Stephanie Tilden (SBN 341486)
   stilden@gbdhlegal.com
4  GOLDSTEIN, BORGEN, DARDARIAN & HO
   155 Grand Avenue, Suite 900
5  Oakland, CA 94612
   Tel: (510) 763-9800 | Fax: (510) 835-1417
6
   Andrew Wolff (SBN 195092)
7  andrew@awolfflaw.com
   LAW OFFICES OF ANDREW WOLFF, PC
8  1615 Broadway, 4th Floor
   Oakland, CA 94612
9  Tel: (510) 834-3300 | Fax: (510) 834-3377

10 Jesse Newmark (SBN 247488)
   jessenewmark@centrolegal.org
11 CENTRO LEGAL DE LA RAZA
   3022 International Blvd., Suite 410
12 Oakland, CA 94601
   Tel: (510) 437-1863 | Fax: (510) 437-9164
13
   Jocelyn Larkin (SBN 110817)
14 jlarkin@impactfund.org
   Lindsay Nako (SBN 239090)
15 lnako@impactfund.org
   IMPACT FUND
16 2080 Addison Street, Suite 5
   Berkeley, CA 94704
17 Tel: (510) 845-3473 | Fax: (510) 845-3654

18 Attorneys for Plaintiffs and Relators and the Certified Classes

19                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA
20                        SACRAMENTO DIVISION

21

22 UNITED STATES OF AMERICA, *ex rel.*        Case No.: 2:15-CV-00799-KJM-DB
   DENIKA TERRY, ROY HUSKEY III, and
23 TAMERA LIVINGSTON, and each of them for    CLASS ACTION
   themselves individually, and for all other persons
24 similarly situated and on behalf of the UNITED    **JOINT PRETRIAL STATEMENT FOR**
   STATES OF AMERICA                                 **PHASE I TRIAL**
25
            Plaintiffs/Relators,             Date:    February 16, 2024
26                                           Time:    10:00 a.m.
   vs.                                       Dept:    Courtroom 3, 15th Floor
27                                           Before:  Hon. Chief Judge Kimberly J. Mueller
   WASATCH ADVANTAGE GROUP, LLC,
28 WASATCH PROPERTY MANAGEMENT, INC.,        Trial Date:   None Set
   WASATCH POOL HOLDINGS, LLC,

1  CHESAPEAKE APARTMENT HOLDINGS, LLC,
   LOGAN PARK APARTMENTS, LLC, LOGAN
2  PARK APARTMENTS, LP, ASPEN PARK
   HOLDINGS, LLC, BELLWOOD JERRON
3  HOLDINGS, LLC, BELLWOOD JERRON
   APARTMENTS, LP, BENT TREE
4  APARTMENTS, LLC, CALIFORNIA PLACE
   APARTMENTS, LLC, CAMELOT LAKES
5  HOLDINGS, LLC, CANYON CLUB HOLDINGS,
   LLC, COURTYARD AT CENTRAL PARK
6  APARTMENTS, LLC, CREEKSIDE HOLDINGS,
   LTD, HAYWARD SENIOR APARTMENTS, LP,
7  HERITAGE PARK APARTMENTS, LP, OAK
   VALLEY APARTMENTS, LLC, OAK VALLEY
8  HOLDINGS, LP, PEPPERTREE APARTMENT
   HOLDINGS, LP, PIEDMONT APARTMENTS,
9  LP, POINT NATOMAS APARTMENTS, LLC,
   POINT NATOMAS APARTMENTS, LP, RIVER
10 OAKS HOLDINGS, LLC, SHADOW WAY
   APARTMENTS, LP, SPRING VILLA
11 APARTMENTS, LP, SUN VALLEY HOLDINGS,
   LTD, VILLAGE GROVE APARTMENTS, LP,
12 WASATCH QUAIL RUN GP, LLC, WASATCH
   PREMIER PROPERTIES, LLC, WASATCH
13 POOL HOLDINGS III, LLC,
   and DOES 1-4,
14
        Defendants.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PRETRIAL STATEMENT FOR PHASE I TRIAL– CASE NO. 2:15-CV-00799 KJM-DB

Plaintiffs-Relators Denika Terry, Roy Huskey III, and Tamera Livingston ("Plaintiffs"), and

Defendants Wasatch Property Management (collectively "WPM Defendants")[1], and Defendants

Wasatch Advantage Group, LLC, Chesapeake Apartment Holdings, LLC, Aspen Park Holdings, LLC,

Bent Tree Apartments, LLC, California Place Apartments, LLC, Canyon Club Holdings, LLC,

Courtyard At Central Park Apartments, LLC, Creekside Holdings, LTD, River Oaks Holdings, LLC,

Wasatch Premier Properties, LLC, Wasatch Pool Holdings III, LLC, Wasatch Pool Holdings, LLC,

and Camelot Lakes Holdings, LLC (collectively "Owner Defendants") submit this joint pretrial

statement for Phase 1 pursuant to Local Rule 281.[2]

---

[1] **Owner Defendants' statement:** The following 10 property owner defendants have not yet retained independent legal counsel: Logan Park Apartments, LLC, Bellwood Jerron Holdings, LLC, Heritage Park Apartments, LP, Oak Valley Apartments, LLC, Peppertree Apartment Holdings, LP, Point Natomas Apartments, LLC, Shadow Way Apartments, LP, Sun Valley Holdings, LTD, Village Grove Apartments, LP, and  Wasatch Quail Run GP, LLC, and the following eight property owner defendants – Logan Park Apartments, LP, Bellwood Jerron Holdings, LP, Oak Valley Holdings LP, Piedmont Apartments, LP, Point Natomas Apartments, LP, Sun Valley Holdings, LP, Spring Villa Apartments LP, and Hayward Senior Apartments, L.P., underwent some form of a change of ownership during the litigation and are no longer associated with the other defendants and have not yet retained independent legal counsel, with the exception of defendant Hayward Senior Apartments, L.P., who is represented by Jahmy Stanford Graham of Nelson Mullins Riley & Scarborough LLP.

**Plaintiffs' statement:**  The 10 property owner defendants about which "Owner Defendants" express concern in this footnote are all represented in this case by Lewis Brisbois Bisgaard & Smith LLP ("Lewis Brisbois"), and have been for years.  Lewis Brisbois filed Answers for each of them, including most recently on December 14, 2023.  ECF No. 333. There is no notice of withdrawal or substitution on the docket to suggest that this representation has ended.  Hayward Senior Apartments, LP,'s additional counsel, Jahmy Graham, has indicated to Plaintiffs that he does not intend to participate personally in the Phase 1 trial; according to the docket and Plaintiffs' understanding, Hayward Senior Apartments, LP continues to also be represented by Lewis Brisbois.  Plaintiffs note the term "Owner Defendants" is misleading as that group only includes a subset of the owner entities; therefore, Plaintiffs use the term "WAG Owner Defendants."

[2] This Court has bifurcated the case for discovery and trial.  *See* Order Grant'g Leave File Fifth Am. Compl., Bifurcating Case for Disc. & Tr. ("Bifurcation Order") 5-6, ECF No. 135.  The case is currently in Phase 1, which addresses Wasatch Property Management's liability under the False Claims Act, whether Wasatch Property Management's acts give rise to liability on the class claims, and the amount of damages and restitution under both the False Claims Act and the class claims.  *Id.* at 5.  Phase 2 will begin when Phase 1 proceedings are complete and shall address "the liability of any and all Defendant entities for the Class Claims based on alter ego liability, the single enterprise doctrine, agency principles, and Defendants' receipt of a benefit from the unlawful charges; any vicarious liability attributable to other Defendants named as to the False Claims Act claim; and penalties and treble damages under the False Claims Act." *Id.* at 6, ECF No. 135.  The Court has already resolved liability and damages for the Class's contract claims.  *See* Order Grant'g Pls.' Mot. for Partial Summ. J. re Remedies ("Summ. J. Re Remedies Order"), ECF No. 352.

891885.12

1. **Jurisdiction and Venue**

    a. **Plaintiffs' and WPM Defendants' Statement**

    This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs bring this action pursuant to the United States False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* The Court has authority to exercise jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a) because Defendants do business in its jurisdictional area, and some of the alleged unlawful conduct, including the execution of some of the contracts at issue in this action, occurred within its jurisdictional area.

    b. **Plaintiffs' Additional Statement**

    The WAG Owner Defendants first asserted that they "contest jurisdiction" in their edits to this document at 4pm on February 1, 2024, the day before filing. They did not provide any indication of their grounds for contesting jurisdiction. Plaintiffs are unaware of any possible good faith basis for such a position. To the extent their objection relates to personal jurisdiction, it has been waived. *See* Fed. R. Civ. P. 12(b)(2), (h) (personal jurisdiction defenses waived if not timely raised as of the time the party files a responsive pleading).

    As detailed in Plaintiffs' opposition to the WAG Owner Defendants' *Ex Parte* Application, ECF No. 350, the WAG Owner Defendants have been actively involved in litigating this case throughout this litigation. The Defendants associated with the Wasatch Group are simply substituting counsel on the eve of trial. Each of the WAG Owner Defendants was either party to the original stipulation to the bifurcation process described above, or specifically agreed to the bifurcation in later stipulations adopted by the Court. All Defendants made a strategic choice to do so and have Lewis Brisbois represent them jointly as counsel through Phase 1.

    c. **Owner Defendants' Statement**

    Owner Defendants contest jurisdiction and cannot take a further position on jurisdiction until they and their newly substituted counsel have had adequate time to review the evidence and court record in this matter. Owner Defendants will be prepared to submit a supplemental statement as to their jurisdictional challenges should the Court grant their motion seeking a short continuance of the

2

1  final pretrial conference, or to further express their challenges with a trial brief, witnesses and

2  evidence, and oral argument at the Phase 1 trial.

3      Not all Owner Defendants do business in this jurisdiction.

4  **2.    Jury and Non-Jury Trial**

5      **a.    Plaintiffs' and WPM Defendants' Joint Statement**

6      The Parties have each demanded a jury trial.  Sixth Am. Compl., ECF No. 331; Answer to

7  Sixth Am. Compl., ECF No. 333; Wasatch Prop. Mgmt., Inc.'s Answer to Sixth Am. Compl., ECF No.

8  334.  A jury trial is proper on the FCA claim.  *Trustees ex rel. N. Cal. Gen. Teamsters Sec. Fund v.*

9  *Fresno French Bread Bakery, Inc.*, No. 1:12-cv-0187 BAM, 2012 WL 5304765, at *2 (E.D. Cal. Oct.

10  25, 2012) (citing *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990))

11  (describing right to jury trial "where legal rights are at issue").

12      Plaintiffs' certified class claims for injunctive relief under the California Unfair Competition

13  Law ("UCL") and the California Consumer Legal Remedies Act ("CLRA") are equitable in nature and

14  therefore are to be tried to the Court.  *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir.

15  2001) (equitable issues may be tried to the judge).  The Parties propose that the injunctive relief trial

16  immediately follow the conclusion of the jury trial on the FCA claim.  Any factual issues that are

17  common to both the legal and equitable claims in this case must be heard by the jury and the jury's

18  determinations will be treated as binding.  *See Beacon Theater, Inc. v. Westover*, 359 U.S. 500 (1959);

19  *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989).

20      **b.    Plaintiffs' Additional Statement**

21      The WAG Owner Defendants' "consent" is not required for the Court to conduct the Phase 1

22  trial under the well-established principles that legal claims are tried to a jury and equitable claims are

23  tried to the court.  Like the other Parties, the WAG Owner Defendants are subject to the Court's

24  scheduling order and reasonable management of this case.  *See generally* Fed. R. Civ. P. 16.

25  Moreover, the WAG Owner Defendants, along with the WPM Defendants, specifically stipulated to

26  the current pretrial schedule on December 21, 2023.  *See* ECF No. 335.  For all the reasons set out in

27  their opposition to the WAG Owner Defendants' *Ex Parte* Application, Plaintiffs oppose any

28  continuation of the pretrial deadlines as unwarranted under Rule 16 and prejudicial to Plaintiffs.  *See*

1 | ECF No. 350.

2 |      Even if their consent were required, WAG Owner Defendants have consented to the current

3 | bifurcation as to all claims and their due process rights are not jeopardized by the reasonable strategic

4 | decision they made to do so.  The three WAG Owner Defendants named as to the False Claims Act

5 | claim—Wasatch Advantage Group, Wasatch Pool Holdings, and Chesapeake Apartment Holdings

6 | LLC—negotiated and stipulated to the present bifurcation of the case in 2021.  *See* Stip. and Order

7 | Grant'g Leave to File Fifth Am. Compl., Bifurcate the Case for Disc. And Tr., and Vacating Case

8 | Deadlines ("Bifurcation Order") ECF No. 135.  All WAG Owner Defendants subsequently confirmed

9 | their consent to the bifurcation of the class claims.  *See* ECF No. 220 at 6 ("The extent of each

10 | Defendant's vicarious liability for [Wasatch Property Management's] conduct can be manageably tried

11 | in Phase 2").  Plaintiffs address the propriety of bifurcation further in Section 7, *infra.*

12 | **c.**   **Owner Defendants' Statement**

13 |      Owner Defendants are unable to consent to the order and conduct of trial as set forth in this

14 | report, and specifically to bifurcation of trial that deprives defendants of their due process rights, until

15 | they and their newly substituted counsel have had adequate time to review the evidence and court

16 | record in this matter.[3]

17 | **3.**   **Undisputed Facts**

18 | **a.**   **Plaintiffs' Statement**

19 |      There are numerous undisputed facts already established by Defendants' responses to

20 | Plaintiffs' statements of material fact in connection with the three dispositive motions ruled on by this

21 | Court.   *See* Defs.' Response to Plaintiffs' Statement of Undisputed Material Facts, ECF No. 258-1;

22 | Defs.' Response to Plaintiffs' Statement of Disputed Facts, ECF No. 263-4; Defs.' Opp. to Plaintiffs'

23 | Statement of Undisputed Material Facts re Remedies, ECF No. 326-1.  Based on those undisputed facts

24 | and other discovery materials, Plaintiffs have proposed the fact stipulations set out in **Exhibit A**

25 | hereto.  Plaintiffs provided the vast majority of these proposals to Defendants on October 23, 2023,

26 | and provided 8 additional proposed stipulated facts to Defendants on January 25, 2024.

27 |

28 | [3] Owner Defendants have specifically requested that Arnall Golden Gregory LLP ("AGG") represent their interests at trial as lead trial counsel.

891885.12

1    Contrary to the WAG Owner Defendants' suggestion below, they have been represented and

2    party to all fact stipulations and statements of undisputed facts in this litigation.  *See* ECF Nos. 258-1,

3    263-4, and 326-1 (all filed on behalf of all Defendants).  The WAG Owner Defendants' substitution of

4    counsel on the eve of trial has no impact on their prior statements.  *See* ECF No. 350.

5        **b.    Owner Defendants' Statement**

6        Owner Defendants are unable to stipulate to the 70 statements fact and law proposed by

7    Plaintiffs until they and their newly substituted counsel have had adequate time to review the evidence

8    and court record in this matter, which includes 27 depositions, and more than 11 terabytes of

9    documents have been produced and are stored on three separate external hard drives.  One of the hard

10   drives alone contains more than three million pages of documents, with a Bates range of WESI

11   0000001—WESI 3005207.  Additionally, tens of thousands of pages of lease documents, HAP

12   Contracts, additional services agreements, and other rental-related documents from numerous

13   properties have been produced.  Further, Plaintiffs were provided access to WPM's Yardi system,

14   which contains essentially every piece of data retained on tenants.  The numerous different data pulls

15   from Yardi are available on a server being maintained by a jointly retained independent Yardi

16   consultant, GelbGroup.  This action also consists of hundreds of docket entries, numerous written

17   discovery requests and responses, and expert reports.

18       Owner Defendants note further that any stipulations to which they are not in privity are not

19   binding as to them, and that any stipulations that impair their substantive rights require their express

20   consent, which consent they have not given to any attorney in this action. *See Assocs. Disc. Corp. v.*

21   *Goldman,* 524 F.2d 1051, 1053 (3d Cir. 1975); *Sur. Ins. Co. of California v. Williams,* 729 F.2d 581,

22   583 (8th Cir. 1984).

23   **4.    Disputed Facts**

24       **a.    False Claims Act (Jury)**

25           **i.    Plaintiffs' and WPM Defendants' Statement**

26   Plaintiffs contend that Wasatch Property Management ("Wasatch") violated the FCA by

27

28

knowingly submitting false or fraudulent claims for U.S. Government funds.[4]  Wasatch Property

Management certified in its Housing Assistance Payments ("HAP") Contracts that it would not receive

additional payment or other consideration for rent of the unit beyond the rent agreed to in the HAP

Contract, despite maintaining policies and practices that required Section 8 tenants to pay renters'

insurance and other required charges, and despite charging Section 8 tenants for washer and dryer

appliances without authorization in the HAP Contract.  The following facts relevant to the FCA claim

are disputed:

> (1)    Whether Wasatch acted with actual knowledge, reckless disregard, or deliberate

ignorance of the falsity of its HAP Contract certifications that Defendants would not receive additional

payment or other consideration for rent of the unit beyond the amount of rent to owner specified in

each HAP Contract, despite requiring Section 8 tenants to pay additional service charges to live in their

units;

> (2)    Whether Wasatch was placed on notice that its policies and practices related to charging

Section 8 tenants additional service fees violated the HAP Contract and the rules governing the Section

8 program;

> (3)    Whether, despite being put on notice that its policies and practices related to additional

service charges to Section 8 tenants violated program rules and HAP Contract certifications, Wasatch

Property Management nonetheless failed to cure the violations;

---

[4] The Phase 1 trial on the False Claims Act claim solely concerns Wasatch Property Management's liability.  ECF No. 135 at 5.  The liability of any other Defendants for Wasatch Property Management's conduct is reserved for Phase 2.  *See id.* at 6.

Owner Defendants are concerned that, as the case has developed, the bifurcation of the case without allowing them to participate in the liability determination jeopardizes their due process rights.  The bifurcation is premised upon a stipulation that compromises the rights of defendants who were not parties to the case or who did not consent to the stipulations, notwithstanding Plaintiffs' insistence to the contrary.

Plaintiffs' view is that the WAG Owner Defendants have never been denied the opportunity to participate in the liability determination; to the contrary, they have been actively represented in this case by counsel opposing liability at every step.  The WAG Owner Defendants have all expressly consented to the bifurcation of the case, as Plaintiffs set out in Sections 2, 7, and 18 of this Joint Pretrial Statement.  All Defendants made a strategic choice to have Lewis Brisbois jointly represent them as counsel through Phase 1 of this process.  Lewis Brisbois continues to contest liability on behalf of all Defendants. *See* ECF No. 350.

891885.12

1   (4)     Whether Wasatch Property Management maintained a policy exempting Section 8

2   tenants from mandatory additional service charges;

3   (5)     Whether the Wasatch Property Management's false certifications of compliance with

4   the HAP Contract and Section 8 program rules were material to (i.e., had a "natural tendency to

5   influence" or were "capable of influencing") the payment of U.S. Government funds pursuant to

6   individual HAP Contracts;

7   (6)     The number of false claims submitted by Wasatch Property Management for payment

8   with U.S. Government funds;

9   (7)     The amount of the United States' damages resulting from payments made as a result of

10   Wasatch Property Management's false claims.

11   (8)     Whether the six-year or 10-year statute of limitations applies to Plaintiff-Relators' cause

12   of action under 31 U.S.C. § 3731(b).

13   Contrary to the Owner Defendants' suggestion below, they have been represented parties and

14   actively involved in this litigation for years now.  The Owner Defendants have therefore had more than

15   ample time to review the evidence and court record in this matter.  *See* ECF No. 350.

16   **ii.     Owner Defendants' Statement**

17   Owner Defendants cannot rule out any disputed facts until they and their newly substituted

18   counsel have had adequate time to review the evidence and court record in this matter (see section 3,

19   above).

20   **b.     Liability Under the Consumer Legal Remedies Act (Judge)**

21   **i.     Plaintiffs' and WPM Defendants' Statement**

22   (1)     Whether Wasatch's representation that it was lawfully allowed to demand payment of

23   additional services charges through policies that treated the charges as rent was likely to mislead a

24   reasonable consumer;

25   (2)     Whether a reasonable person would attach importance to the existence or non-existence

26   of Wasatch's representation that it was lawfully allowed to demand payment for additional services

27   charges through policies that treated the charges as rent;

28

7

891885.12

(3)     Whether Wasatch knew or had reason to know that Section 8 tenants attach importance to its representation that it was lawfully allowed to demand payment for additional service charges through policies that treated the charges as rent;

(4)     Whether Wasatch continues to represent that it is lawfully allowed to demand payment of additional services charges through policies that continue to treat the charges as rent.

(5)     Whether a lease of real property constitutes a transaction for goods or services under the Consumer Legal Remedies Act.  (Plaintiffs regard this as a legal issue, and one that Defendants have waived, as addressed in Plaintiffs' Points of Law.)

Contrary to the Owner Defendants' suggestion below, they have been represented parties and actively involved in this litigation for years now.  The Owner Defendants have therefore had more than ample time to review the evidence and court record in this matter.  *See* ECF No. 350.

### ii.    **Owner Defendants' Statement**

Owner Defendants are unable to identify the triable issues for Plaintiffs' CLRA claim until they and their newly substituted counsel have had adequate time to review the evidence and court record in this matter.

### c.    **Injunctive Relief Under the UCL and CLRA (Judge)**

### i.    **Plaintiffs' and WPM's Statement**

The Court has already ruled that Wasatch is liable under the UCL.  Summ. J. Order at 14, 16, ECF No. 278.  During the bench trial portion of the Phase 1 trial, the Court will determine if Wasatch is also liable under the CLRA.  The following disputed facts are relevant to whether injunctive relief is appropriate under either statute:

(1)     Whether Wasatch's collection of excess rent, including its practices around collecting payment for additional service charges, has irreparably injured members of the class;

(2)     Whether Wasatch's practices around collecting payment for additional service charges have harmed the Section 8 program's goals of secure and stable housing;

(3)     Whether damages alone are inadequate to compensate for the injury Wasatch's practices caused to class members;

(4)     Whether the changes Wasatch made to its practices after the Court's November 23,

891885.12

2022 Summary Judgment Order were sufficient to cure the violation, or whether Wasatch's forms and practices continue to treat additional service charges as rent;

(5)     Whether Wasatch can easily revert its Payment Priority Sequence, which they changed after this Court's November 23, 2022 Summary Judgment Order, to a Payment Priority Sequence that applies tenant payments to additional service charges first before applying payments to rent;

(6)     Whether Wasatch can easily revert to practices requiring Section 8 tenants to pay additional service charges as a condition of leasing;

(7)     Whether Wasatch's one-time letter sent to Section 8 tenants and Wasatch property employees stating that additional service charges must be optional for Section 8 tenants is sufficient to continue to prevent Wasatch from making additional service charges mandatory for Section 8 tenant;

(8)     Whether Wasatch has enacted policies around collecting payment for additional service charges to ensure that they could have the power of the courts to collect on unpaid amounts, including for additional service fees;

(9)     Whether Wasatch's practice of treating additional service charges like rent created a financial burden for Section 8 tenants;

(10)     Whether injunctive relief is warranted after balancing the hardships to Defendants and the plaintiff class;

(11)     Whether preventing Defendants from exceeding rent limitations under the HAP Contracts through their practices related to additional service charges advances the public interest, including the goals of the Section 8 program.

Contrary to the Owner Defendants' suggestion below, they have been represented parties and actively involved in this litigation for years now.  The Owner Defendants have therefore had more than ample time to review the evidence and court record in this matter.  *See* ECF No. 350.

### ii.     <u>Owner Defendants' Statement</u>

Owner Defendants are unable to identify the triable issues for Plaintiffs' claims for injunctive relief under the UCL and CLRA until they and their newly substituted counsel have had adequate time to review the evidence and court record in this matter.

891885.12

5.      **Disputed Evidentiary Issues**

a.      **Plaintiffs' Proposed Evidentiary Motions**

Plaintiffs intend to file the following Motions:

(1)      Request for Judicial Notice of Public Documents

(2)      Motion in Limine Regarding Summary Judgment Findings and Defendants' Admissions of Undisputed Facts

(3)      Motion in Limine to Exclude Reference to Issues Reserved for Phase 2 of this Litigation

(4)      Motion in Limine Regarding FCA Remedies

(5)      Motion in Limine Regarding Government Non-Intervention

(6)      Motion in Limine to Exclude Irrelevant Personal Information About Plaintiffs and Tenant Witnesses

(7)      Motion in Limine to Exclude the Expert Report and Testimony of Robert S. Griswold

(8)      Motion in Limine Regarding the Examination of Witnesses Associated with Defendants

Contrary to the WAG Owner Defendants' suggestion below, they have been represented parties and actively involved in this litigation for years now.  The WAG Owner Defendants have therefore had more than ample time to review the evidence and court record in this matter.  *See* ECF No. 350.

b.      **WPM Defendants' Statement**

Defendant Wasatch Property Management, Inc. intends to file the following Motions:

(1) Preclude Expert from Testifying re Damages to United States

(2) Preclude Introduction of Hearsay HUD Video Exhibit

(3) Preclude Hearsay Evidence re Conversations Between WPM Personnel and Non-Witness Tenants

(4) Preclude Reference to WPM Personnel Filling Out HAP Contracts

(5) Preclude Speculative Testimony re Knowledge of WPM Personnel

(6) Preclude Reference to Renters' Insurance Being Required at LIHTC Properties

(7) Preclude Reference to Actual Evictions for Non-Payment of Additional Service Charges

(8) Preclude Reference to Established Violations of Law Prior to 11/22/2023

(9) Preclude Introduction of Expert Reports

(10)    Preclude Introduction of Hearsay News Article Exhibits

**c.**      **Owner Defendants' Statement**

Owner Defendants are unable to identify the evidentiary issues until they and their newly substituted counsel have had adequate time to review the evidence and court record in this matter. Owner Defendants contend that disputed evidentiary issues at trial should be resolved pursuant to Fed. R. Evid. 104 before the introduction or exclusion of the disputed evidence.

**6.**      **Special Factual Information in Contract Actions**

**a.**      **Plaintiffs' and WPM Defendants' Statement**

There are no longer any contract issues to be tried in Phase 1 as the Court has now resolved both the existence of liability (ECF No. 278) and the amount of class damages under the HAP Contract (ECF No. 352).  Which Defendants are liable to the class for those damages is reserve for Phase 2 of the litigation.  Bifurcation Order 6 ECF No. 135.

**b.**      **Owner Defendants' Statement**

Owner Defendants are aware of the Court's February 1, 2024, Order on Plaintiffs' Motion for Summary Judgment as to the measure of damages and the prejudgment interest rate on the contract claim (ECF No. 352) but are unable to articulate a position on these matters until they and their newly substituted counsel have had adequate time to review the evidence and court record in this matter.

**7.**      **Relief Sought**

**a.**      **Qui Tam Claims**

**i.**      **Plaintiffs and WPM Defendants' Joint Statement**

Under the FCA, Plaintiffs as relators on behalf of the U.S. government seek:  (1) damages corresponding to the housing assistance payments made to Defendants for Section 8 tenants as to whom Wasatch Property Management submitted  false claims; (2) trebling of those damages and imposition of penalties pursuant to 31 U.S.C. § 3729(a)(1); (3) an award to Relators of the maximum amount allowed pursuant to 31 U.S.C. § 3730(d)(2) upon recovery by the United States; and (4) an

891885.12

1    award of attorneys' fees, costs, and expenses against Defendants pursuant to 31 U.S.C. § 3730(d)(2).

2        Of these remedies, only the amount of damages is at issue in the upcoming Phase 1 trial.  That

3    issue will be tried to the jury along with liability under the FCA.

4        ii.    **Plaintiffs' Additional Statement**

5        The WAG Owner Defendants have chosen this portion of the Pretrial Statement to suggest,

6    without explanation, that their Due Process rights are compromised by the bifurcation with respect to

7    the FCA claim.  This position is without merit.

8        Preliminarily, Plaintiffs note that among WAG Owner Defendants, only Wasatch Advantage

9    Group, Wasatch Pool Holdings, and Chesapeake Apartment Holdings LLC are named as to the FCA

10   Claim.  *See* Sixth Amended Complaint 39 ECF No. 331.  All three stipulated to the bifurcation of the

11   case two and a half years ago, on August 5, 2021.  ECF No. 135.

12       Under the Bifurcation Order, as relevant here, the Phase 1 trial will determine "Whether

13   Wasatch Property Management is liable under the False Claims Act" and "the amount of actual

14   damages . . . to remedy any and all violations under the False Claims Act."  *Id.* at 5.  Phase 2 will

15   address "any vicarious liability attributable to other Defendants named as to the False Claims Act

16   claim."  As the Parties explained in the stipulation to bifurcate the case:

17
18            Wasatch Property Management is the entity that signs all leases,
             Additional Service Agreements, and HAP Contracts, manages the
19           properties where Defendants' Section 8 tenants live, and charges and
             collects the additional service charges whose legality is at issue in each of
20           the claims.  Therefore, the claims in the case turn on Wasatch Property
             Management's conduct.  The claims regarding all other Defendants'
21           liability result from their contractual and corporate relationships to
             Wasatch Property Management.

22   *Id.* at 4.  This bifurcation was proper under Federal Rule of Civil Procedure 42 and does not offend due

23   process.  *See Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir.), *opinion amended on*

24   *denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001) ("Under Rule 42(b), the district court has broad

25   discretion to bifurcate a trial to permit deferral of costly and possibly unnecessary proceedings pending

26   resolution of potentially dispositive preliminary issues."); *Exxon v. Sofec, Inc.*, 54 F.3d 570, 575-576

27   (9th Cir. 1995) (same) (rejecting an argument that a decision to bifurcate the trial denied a party due

28   process).

891885.12

Because the actions and scienter of Wasatch Property Management—on which the existence of a False Claims Act violation turn—do not overlap in any respect with the agency and corporate issues that will determine the vicarious liability of Wasatch Advantage Group, Wasatch Pool Holdings, and Chesapeake Apartment Holdings, the Bifurcation Order correctly "preserve[s] separate questions for separate fact finders and is thus consistent with the Seventh Amendment." *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 543 (N.D. Cal. 2012) (citation omitted). Those three entities' "due process rights are adequately protected" here where they maintain the right to participate in the Phase 1 trial to attempt to defeat any liability finding, and if they are unsuccessful in that, they will "have ample opportunity" to contest their vicarious liability in Phase 2. *See id.* at 544. Indeed, *Plaintiffs* would be gravely prejudiced by any change in this structure of the litigation as their discovery regarding issues relevant to WAG Defendants' vicarious liability have been deferred to Phase 2. *See* ECF No. 135 at 5 ("this case shall be bifurcated for both discovery and trial as follows: . . . "). Again, the three WAG Owner Defendants named as to the FCA claim were represented parties to the original stipulation to bifurcate the trial in this way, over two and a half years ago. *See* ECF No. 135. Their decision to substitute counsel on the eve of trial does not retract their strategic decision to try the case in this manner, and therefore raises no due process issues. *See* ECF No. 350

### iii.   **Owner Defendants' Statement**

As it currently stands, the upcoming Phase 1 trial will address liability and damages under the FCA as to Wasatch Property Management, pursuant to an order premised upon a stipulation that compromises the rights of defendants who were not parties to the case or who did not consent to the stipulations. Due Process requires that the question of Owner Defendants' liability be tried with that of Wasatch Property Management. Owner Defendants are unable to articulate a position on the FCA law and issues related to this case until they and their newly substituted counsel have had adequate time to review the evidence and court record in this matter. For that reason, Owner Defendants cannot subscribe to Plaintiffs' limited explanation of the statute, and would reserve the right to develop the legal arguments as they pertain to this case further. However, the elements that Plaintiffs must prove, particularly scienter and materiality, emphasize the necessity for Owner Defendants' participation in the Phase 1 trial.

13

891885.12

Owner Defendants are otherwise unable to articulate a position on the remedies sought by plaintiffs, until they and their newly substituted counsel have had adequate time to review the evidence and court record in this matter.

### b.   Class Claims

#### i.   Plaintiffs and WPM Defendants' Statement

The amount of Class damages for breach of contract claims has been resolved by summary judgment.  See Summ. J. Re Remedies Order ECF No. 352.

On behalf of the injunctive relief class certified under Rule 23(b)(2), Plaintiffs seek injunctive relief pursuant to the UCL and the CLRA to ensure that Defendants do not require any of their Section 8 tenants to agree to or pay any additional service fees in order remain in their homes, and to ensure that Defendants' current and future Section 8 tenants are fully and adequately informed of their rights with regard to additional service charges.  Issues related to injunctive relief will be tried to the Court in the upcoming Phase 1 bench trial.

At the conclusion of the case, Plaintiffs will also seek attorneys' fees, costs, and expenses for their work on behalf of both classes pursuant to California Code of Civil Procedure section 1021.5, California Civil Code section 1780(e), a common fund theory, and Plaintiffs' and class members' leases.

Contrary to the Owner Defendants' suggestion below, they have been represented parties and actively involved in this litigation for years now.  The Owner Defendants have therefore had more than ample time to review the evidence and court record in this matter.  *See* ECF No. 350.

#### ii.   Owner Defendants' Statement

Owner Defendants are unable to articulate a position on the relief sought by Plaintiffs until they and their newly substituted counsel have had adequate time to review the evidence and court record in this matter.  However, Owner Defendants dispute that "Defendants" collectively entered into leases with all class members. Furthermore, Owner defendants have preliminary information that places into dispute certain of the named plaintiffs' standing and capacity to serve as representatives of the class, including whether each of the named plaintiffs lived at a property owned by the Owner Defendants at

14

891885.12

the time of the alleged wrongful conduct.

**8.**     **Points of Law**

Plaintiffs' statement on Points of Law is set out in **Exhibit B** attached hereto.

WPM Defendants' statement on Points of Law is set out in **Exhibit C** attached hereto.

Owner Defendants are unable to articulate a position on the multiple points of law at issue in this case until they and their newly substituted counsel have had adequate time to review the evidence and court record in this matter.

**9.**     **Abandoned Issues**

As to the False Claims Act, Plaintiffs are not pursuing liability as to charges made to Section 8 tenants that were not a condition of leasing, except for washer and dryer charges that were made without authorization in the "Utilities and Appliances" section of the HAP Contract prior to July 1, 2019.

**10.**    **Witnesses**

Plaintiffs' list of prospective witnesses is set out at **Exhibit D** hereto.

WPM Defendants' list of prospective witnesses is set out at **Exhibit E** hereto.

Owner Defendants are unable to identify trial witnesses until they and their newly substituted counsel have had adequate time to review the evidence and court record in this matter.

**11.**    **Exhibits – Schedules and Summaries**

Plaintiffs' list of documents and other exhibits to be offered at trial is set out at **Exhibit F** hereto.

WPM Defendants' list of documents and other exhibits to be offered at trial is set out at **Exhibit G** hereto.

Owner Defendants are unable to identify trial exhibits until they and their newly substituted counsel have had adequate time to review the evidence and court record in this matter.

**12.**    **Discovery Documents**

Plaintiffs' list of deposition excerpts to be offered at trial is set out at **Exhibit H** hereto, and their list of discovery excerpts to be offered at trial is set out at **Exhibit I** hereto.

WPM Defendants' list of deposition and discovery excerpts to be offered at trial is set out at

891885.12

**Exhibit J** hereto.

Owner Defendants are unable to identify discovery documents and depositions to be introduced at trial until they and their newly substituted counsel have had adequate time to review the evidence and court record in this matter.

**13.     Further Discovery or Motions**

None.

**14.     Stipulations**

The Parties have not reached any stipulations.

**15.     Amendments – Dismissals**

None.

**16.     Settlement Negotiations**

The Parties attended a court-ordered settlement conference on March 15, 2023, which concluded unsuccessfully after only a few hours.

Plaintiffs are open to pursuing further settlement negotiations and have suggested to Defendants that the Parties attend private mediation.

**17.     Agreed Statements**

The Parties agree that it is neither feasible nor advisable to present any part of the action upon an Agreed Statement of Facts.

**18.     Separate Trial of Issues**

    **a.     Plaintiffs and WPM Defendants' Statement**

The Court bifurcated this case for discovery and trial in August 2021.  Bifurcation Order, ECF No. 135.  The case is currently in Phase 1, which addresses Wasatch Property Management's liability under the FCA, liability on the class claims, and the amount of actual damages and restitution on all claims.  *Id.* at 5, ECF No. 135.  Additionally, the Parties agree that Plaintiffs' injunctive relief claims against all Defendants named as to the class claims are ripe for trial at this time.

The Court has already found liability on the class claims for breach of contract and violation of the ECF and ruled on the amount of damages and interest on the class contract claims.  Summ. J. Order, ECF No. 278, Summ J. Re Remedies Order, ECF No 352.

891885.12

The jury trial portion of the Phase 1 trial will determine whether Wasatch Property Management is liable under the FCA, and if so, the amount of damages.

The bench trial portion of the Phase 1 trial, which Plaintiffs and WPM Defendants propose should immediately follow the jury trial, will address injunctive relief issues, including Wasatch Property Management's liability under the CLRA.

**b.      Plaintiffs' Separate Statement**

As discussed above, there is no due process issue.  The three WAG Owner Defendants who are named as to the FCA Claim negotiated and stipulated to the bifurcation process through their prior counsel.  *See* ECF No. 135.  All WAG Owner Defendants subsequently confirmed their consent to the bifurcation of the class claims.  *See* ECF No. 220 at 6 ("The extent of each Defendant's vicarious liability for [Wasatch Property Management's] conduct can be manageably tried in Phase 2"). WAG Owner Defendants' prior counsel continues to deny liability on behalf of all Defendants in Phase 1. Further, the Bifurcation Order was proper under Federal Rule of Civil Procedure 42 and raises no due process concerns, even independent of the WAG Owner Defendants' express consent to its terms.

The Defendants associated with Wasatch Group are simply substituting counsel on the eve of trial, and can of course participate in Phase 1 as they see fit.  Again, as represented parties actively involved in this litigation for years now, the WAG Owner Defendants have had ample time to review the evidence and court record in this matter.  *See* ECF No. 350

**c.      Owner Defendants' Statement**

For the reasons stated, due process requires that Owner Defendants participate in Phase 1. The bifurcation is premised upon a stipulation that compromises the rights of defendants who were not parties to the case or who did not consent to the stipulations.

Owner Defendants are unable to consent to the order and conduct of trial as set forth in this report until they and their newly substituted counsel have had adequate time to review the evidence and court record in this matter.

**19.    Impartial Experts – Limitation of Experts**

**a.      Plaintiffs' and WPM Defendants' Joint Statement**

Neither Plaintiffs nor WPM Defendants request the appointment by the Court of an impartial

891885.12

1  witness.  Plaintiffs and WPM Defendants also agree that no limitation on the number of expert

2  witnesses is necessary, in light of the short list of experts disclosed by the Parties.

3        **b.**    **Plaintiffs' Separate Statement**

4       Plaintiffs have disclosed two experts: David Breshears, a forensic accountant, and MaryAnn

5  Russ, an expert in federal affordable housing programs, including the Section 8 Housing Choice

6  Voucher program.

7       Contrary to the WAG Owner Defendants' suggestion below, they have been represented parties

8  and actively involved in this litigation for years now.  The WAG Owner Defendants have therefore had

9  more than ample time to review the evidence and court record in this matter.  *See* ECF No. 350.

10  Through prior counsel, the WAG Owner Defendants have already consulted with and hired experts

11  who they defended at deposition and for whom they have provided expert reports.

12        **c.**    **Owner Defendants' Statement**

13       Owner Defendants are unable to take a position with respect to expert witnesses for trial until

14  they and their newly substituted counsel have had adequate time to review the evidence and court

15  record in this matter, particularly expert reports and depositions, and for Owner Defendants to consult

16  with experts.

17  **20.**    **Attorneys' Fees**

18       Plaintiffs seek attorneys' fees, costs, and expenses for the class claims pursuant to California

19  Code of Civil Procedure section 1021.5, California Civil Code section 1780(e), a common fund theory,

20  and Plaintiffs' and class members' leases.  Additionally, Plaintiffs will seek appropriate attorneys'

21  fees, costs, and expenses under 31 U.S.C. § 3730(d)(2).  Plaintiffs will move for attorneys' fees

22  following the entry of judgment.  *See* L.R. 293.

23  **21.**    **Trial Exhibits – Special Handling**

24       None.

25  **22.**    **Trial Protective Order**

26       None.

27

28

891885.12

**23.**   <u>**Miscellaneous**</u>

     **a.**   <u>**Plaintiffs' Statement Regarding Supplemental Class Notice**</u>

Notice was issued to members of the Rule 23(b)(3) class in the spring of 2020.  As the class claims were continuing in nature, the Parties agreed in their September 30, 2021 Joint Status Report to issue supplemental class notice "following the Court's ruling on the summary judgment motions and prior to the Phase 1 trial."  Joint Status Report 6, ECF No. 140. The Parties now have a complete class list for all members of the Rule 23(b)(3) class, which now has an end date for both class membership and damages as of November 30, 2022.  *See* Order Grant'g Mot. Leave Amend Compl. & Alter Class Cut-off Date 4, ECF No. 329 (granting request to set November 30, 2022 as the class cut-off date); Notice re Updated Class Damages Calcs. in Supp. of Pls.' Mot. Partial Summ. J. re Remedies 1, ECF No. 328 (describing resolution of investigation into potential additional class members).

Plaintiffs provided Defendants with a proposed stipulation for supplemental class notice on December 18, 2023.  Plaintiffs proposed a notice period of 35 days (the same period as previously used), with the same methods used in 2020, and a notice form based on the previous form with adjustments corresponding to developments in the litigation.  WPM Defendants have not responded on this issue, despite multiple inquiries and follow-up emails and phone calls from Plaintiffs.

New counsel for WAG Owner Defendants have informed Plaintiffs that they cannot agree to the Stipulation for Supplemental Class Notice because new counsel is insufficiently familiar with the case.  Plaintiffs note that WAG Owner Defendants have been represented parties in this litigation for years now.

Plaintiffs respectfully request that the Court set a deadline of Friday, February 23, 2024, for the Parties to submit their notice proposals for Court approval.  Plaintiffs believe the Parties should be able to stipulate to the notice proposal Plaintiffs have already made. If the Parties are unable to agree to a notice proposal, they should provide their separate proposals to the Court by that date.

891885.12

Dated: February 2, 2024                  Respectfully submitted,

                                         GOLDSTEIN, BORGEN, DARDARIAN & HO


                                         /s/ Anne P. Bellows
                                         Anne P. Bellows

                                         Attorneys for Plaintiffs and Relators

Dated: February 2, 2024                  Respectfully submitted,

                                         LEWIS BRISBOIS BISGAARD & SMITH


                                         /s/ Ryan Matthews (as authorized 2/2/24)
                                         Ryan Matthews

                                         Attorneys for WPM Defendants

Dated:  February 2, 2024                 Respectfully submitted,

                                         ARNALL GOLDEN GREGORY


                                         /s/ Richard Collins (as authorized 2/2/24)
                                         Richard Collins

                                         Attorneys for Owner Defendants

891885.12

# EXHIBIT A

Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800 | Fax: (510) 835-1417

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Tel: (510) 834-3300 | Fax: (510) 834-3377

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Tel: (510) 437-1863 | Fax: (510) 437-9164

Jocelyn Larkin (SBN 110817)
jlarkin@impactfund.org
Lindsay Nako (SBN 239090)
lnako@impactfund.org
THE IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473 | Fax: (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>        Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' PROPOSED FACT STIPULATIONS**<br><br>Date:    Feb. 16, 2024<br>Time:    10:00 am<br>Dept:    Courtroom 3, 15th Floor<br>Before:  Hon. Kimberley J. Mueller<br><br>Trial Date:    None Set |

893227.1

1  LOGAN PARK APARTMENTS, LLC, LOGAN
   PARK APARTMENTS, LP, ASPEN PARK
2  HOLDINGS, LLC, BELLWOOD JERRON
   HOLDINGS, LLC, BELLWOOD JERRON
3  APARTMENTS, LP, BENT TREE
   APARTMENTS, LLC, CALIFORNIA PLACE
4  APARTMENTS, LLC, CAMELOT LAKES
   HOLDINGS, LLC, CANYON CLUB HOLDINGS,
5  LLC, COURTYARD AT CENTRAL PARK
   APARTMENTS, LLC, CREEKSIDE HOLDINGS,
6  LTD, HAYWARD SENIOR APARTMENTS, LP,
   HERITAGE PARK APARTMENTS, LP, OAK
7  VALLEY APARTMENTS, LLC, OAK VALLEY
   HOLDINGS, LP, PEPPERTREE APARTMENT
8  HOLDINGS, LP, PIEDMONT APARTMENTS,
   LP, POINT NATOMAS APARTMENTS, LLC,
9  POINT NATOMAS APARTMENTS, LP, RIVER
   OAKS HOLDINGS, LLC, SHADOW WAY
10 APARTMENTS, LP, SPRING VILLA
   APARTMENTS, LP, SUN VALLEY HOLDINGS,
11 LTD, VILLAGE GROVE APARTMENTS, LP,
   WASATCH QUAIL RUN GP, LLC, WASATCH
12 PREMIER PROPERTIES, LLC, WASATCH
   POOL HOLDINGS III, LLC,
13 and DOES 1-4,

14     Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

893227.1

## PLAINTIFFS' PROPOSED FACT STIPULATIONS

Plaintiffs have proposed the following fact stipulations addressing undisputed facts established in summary judgment briefing or the discovery record. Plaintiffs provided the large majority of these proposals to Defendants on October 23, 2023, and provided 8 additional proposed stipulated facts to Defendants on January 25, 2024.

### Definitions

1.      Defendant Wasatch Property Management, Inc., ("Wasatch") manages residential apartment communities in California, Utah, Arizona, and Washington.

2.      "Section 8" is a federal program that provides rental assistance to low-income tenants. The Section 8 program is authorized by federal law (42 U.S.C. §1437f(o)) and is also known as the Housing Choice Voucher program.

3.      "Additional Service Charges" are the charges Wasatch made to tenants for renters' insurance, washer/dryer rental, covered parking, media, garage rental, pet rent, month-to-month fees, RentPlus, storage rental, security alarm systems, uncovered parking, and common garage access.

4.      "Additional Services Agreements" are the contracts with the same name created by Wasatch and attached to lease agreements at the Subject Properties. Additional Services Agreements list the rules that Wasatch applied to its Additional Service Charges.

5.      "Relevant Tenants" are all tenants who lived at a Wasatch property while participating in the Section 8 program and being charged Additional Service Charges at any time from February 1, 2006[1], to December 31, 2022.

6.      "Subject Properties" are properties managed by Wasatch where Relevant Tenants were charged Additional Service Charges at any time from February 1, 2006, to December 31, 2022. This is a list of the Subject Properties:

| Property Name | Location |
|---|---|
| 600 Lofts | Salt Lake City, UT |
| Arcadia | Sandy, UT |

[1] The earliest data available on Section 8 tenant charges begins on February 1, 2006.

1

893227.1

| | |
|---|---|
| Arcadia II | Sandy, UT |
| Arroyo Vista Apartments | Glendale, AZ |
| Aspen Park Apartments | Sacramento, CA |
| Avenue 8 Studios | Las Vegas, NV |
| Aztec Springs Apartments | Mesa, AZ |
| Bellwood Park Apartments | Sacramento, CA |
| Bent Tree Apartments | Sacramento, CA |
| Bridges at Five Oaks Apartments | Highlands, CA |
| Brighton Place Apartments | Midvale, UT |
| Broadmoor Village Apartments | West Jordan, UT |
| Brookside Apartments | Phoenix, AZ |
| Burnett Station Apartments | Renton, WA |
| California Place Apartments | Sacramento, CA |
| Canyon Club Apartments | Oceanside, CA |
| Canyon Ridge Apartments | Surprise, CA |
| Chesapeake Commons Apartments | Rancho Cordova, CA |
| Cimarron Place Apartments | Tucson, CA |
| City Lofts | Salt Lake City, UT |
| Courtyard at Central Park | Fresno, CA |
| Creekside Villa Apartments | San Diego, CA |
| Crossroads Apartments | West Valley, UT |
| Devonshire Court East | North Logan, UT |
| Devonshire Court West | North Logan, UT |
| Enclave at 1400 South | Salt Lake City, UT |
| Falls at Hunters Pointe | Sandy, UT |
| Florentine Villas | Midvale, UT |

2

893227.1

| | |
|---|---|
| Four Seasons at Southtowne | South Jordan, UT |
| Garden Lofts | Salt Lake City, UT |
| Glen Oaks Apartments | Glendale, AZ |
| Goldstone Place Apartments | Clearfield, UT |
| Hayward Village Tax Credit | Hayward, CA |
| Heritage Park Tax Credit | Norco, CA |
| Heron Pointe Apartments | Fresno, CA |
| Jerron Place | Sacramento, CA |
| Kimpton Square | Midvale, UT |
| Landing at Fancher Creek | Fresno, CA |
| Lofts at 7800 | Midvale, UT |
| Logan Park | Sacramento, CA |
| Meadows at Homestead | Logan, UT |
| Metropolitan Place Apartments | Renton, UT |
| Oak Valley Apartments | North Highlands, UT |
| Overlook at Pantano | Tucson, AZ |
| Palladio Apartments – Phase 1 | Salt Lake City, UT |
| Peppertree Apartment Holdings | Spring Valley, CA |
| Piedmont Apartments | Oakland, CA |
| Point Natomas Apartments | Sacramento, CA |
| Promontory Point Apartments | Sandy, UT |
| Providence Place | Salt Lake City, UT |
| Quail Run Apartments | Santa Rosa, CA |
| Ranchwood Apartments | Glendale, AZ |
| Remington Apartments | Midvale, UT |
| Revo 225 | Renton, WA |

893227.1

| Rio Seco Apartments | Tucson, AZ |
| River Oaks Apartments | Hanford, CA |
| River Point Apartments | Tucson, AZ |
| Sands Apartments | Mesa, AZ |
| Shadow Way Apartments | Oceanside, CA |
| Spring Villas Apartments | Spring Valley, CA |
| Springwood Apartments | Bountiful, UT |
| Sun Valley Apartments | Sacramento, CA |
| The Reserve at View 78 | Midvale, UT |
| The Sage | American Fork, IT |
| Tuscany Villas | Midvale, UT |
| Veranda | Draper, UT |
| Village Grove Apartments | Escondido, CA |
| Wasatch Hills Apartments | Renton, WA |

7.     "Pay or Quit Notices" are written communications that Wasatch uses to tell tenants that, to avoid eviction proceedings, they must either pay an overdue amount or move out of their apartment within a certain number of days.  "Pay or Quit Notices" have different names, including notices to "Pay or Vacate," "Pay Rent or Quit," "Comply with Financial Covenant of Lease or Quit," and "Comply with Lease or Quit" (when the compliance is payment), as well as the untitled Arizona form notice asking for the same actions.

**Relevant Time Period**

8.     Unless otherwise specified, all stipulated facts are true for the entirety of the period starting on February 1, 2006, through the date that this document is signed.

**Relevant Properties**

9.     Unless otherwise specified, all stipulated facts are true for all Subject Properties.

---

4

893227.1

**The Section 8 Program**

10.     The Section 8 program helps low-income families find safe and affordable housing by using federal funds to subsidize the cost of renting privately owned housing units.  [24 C.F.R. § 982.1(a)(1)]

11.     The Section 8 program is funded by the United States Department of Housing and Urban Development ("HUD") and administered by local public housing agencies ("PHAs").  [42 U.S.C. § 1437f(o); 24 C.F.R. §§ 982.101(a), 982.51]

12.     The Section 8 program is governed by federal regulations with limited areas for PHAs to make decisions and exercise discretion. [*See* 24 C.F.R. § 982]

13.     PHAs review applications from tenants and approve eligible tenants and tenant families to participate in the Section 8 program.  Approved tenants receive a voucher that they can use to pay a portion of the monthly rent for a privately owned unit.  The tenant must pay the rest of the monthly rent.

14.     When an approved tenant finds a housing unit to rent, the PHA must decide whether the monthly rent charged by the property owner is reasonable.  [24 C.F.R. § 983.303]  The approved monthly rent is known as the "initial rent to owner."  [24 C.F.R. §§ 983.301, 983.302]  The rent to owner can be increased over time.  [24 C.F.R. § 983.302]  The PHA must approve each rent increase.  [24 C.F.R. § 983.302]

15.     A Section 8 tenant's share of the monthly rent depends on their income.  [42 U.S.C. §§ 1437f(o)(2)(A), (B); 24 C.F.R. § 982.1(a)(3)]  HUD defines how PHAs calculate the tenant's share.  [42 U.S.C. §§ 1437f(o)(2), (3); 24 C.F.R. §§ 982.1(a)(3), 982.505]  The monthly amount paid by the tenant is known as the "tenant rent."  If the tenant has little or no income, their tenant rent will be $0.

16.     The PHA uses federal money to pay the rest of the monthly rent.  [Housing and Community Development Act of 1974, PL 93–383 (S 3066), 88 Stat. 633]  This payment is known as the "housing assistance payment" or "HAP rent."  [42 U.S.C. § 1437f(o)(10)(D); 24 C.F.R. § 982.4]  If the tenant has little or no income, the HAP rent will pay all of the monthly rent for the unit.

17.     The tenant and the PHA each pay their share to the owner each month in separate payments.  [24 C.F.R. § 983.353(b)(1); 24 C.F.R. § 983.351(b)]  The total rent received by the owner may not exceed the rent to owner approved by the PHA.  [24 C.F.R. §§ 983.303]

18.     Section 8 tenants who are evicted for failing to pay their tenant rent will be removed from the Section 8 program and lose their rent voucher.  [Defs.' Response to Pls.' SUMF ¶ 20, ECF No. 258-1; Johnson Dep. 125:17-128:16, July 19, 2021; Johnson Decl. in Supp. of Defs.' Opp'n to Mot. Class Cert. ¶ 8, ECF No. 78-4]

### The Housing Assistance Payments Contract

19.     Property owners participate in the Section 8 program by agreeing to rent a housing unit to an approved tenant.  The owner's participation in the program must follow the rules listed in the Housing Assistance Payments Contract ("HAP Contract").  The owner and the PHA both sign the HAP Contract before the tenant moves into the unit.  [HAP Contract, Part B ¶1a]  The HAP Contract lasts for the whole time the tenant lives in the unit while participating in the Section 8 program.  The owner must follow the rules listed in the HAP Contract, even when they are different from other agreements between the owner and the tenant, including the lease agreement.

20.     The HAP Contract is a standard form contract created by HUD, also known as Form HUD-52641.  There have been multiple versions of the HAP Contract between February 2006 and today.  Examples of all versions of the HAP Contract since February 2006 are attached in Exhibit __.

21.     All PHAs must use the standard form HAP Contract.  PHAs may not change any of the parts of the HAP Contract that are important to this case.   [HAP Contract cover page, "Use of this form"; 24 CFR 982.451]

22.     All HAP Contracts contain three parts: Part A ("Contract Information"), Part B ("Body of Contract"), and Part C ("Tenancy Addendum").

23.     Part A of the HAP Contract, Contract Information, states the rent to owner and the HAP rent payment for the rental unit.  The difference between the rent to owner and the HAP payment is the tenant rent.

24.     In Part B of the HAP Contract, the Body of the Contract, the owner promises to follow all Section 8 program requirements.

25.     Part C of the HAP Contract, the Tenancy Addendum, describes the rights of the tenant and their family under the HAP Contract and the Section 8 program.

## Wasatch's Rental Practices for Section 8 Tenants

26.     Wasatch requires every tenant, including Relevant Tenants, to sign a Residential Lease Agreement and Additional Services Agreement before they can move into a rental unit. [Defs.' Response to Pls.' SUMF ¶¶ 1–2, ECF No. 258-1]

27.     Wasatch signed a HAP Contract for each unit rented to a Relevant Tenant when the tenant signed their first Residential Lease Agreement.  [Defs.' Response to Pls.' SUMF ¶¶ 1–2, ECF No. 258-1]

28.     For each Relevant Tenant, the local PHA approved the rent to owner in the HAP Contract.  The local PHA also approved the amount of the HAP rent payment that it would transfer to Wasatch each month and the amount of tenant rent that the Relevant Tenant would pay to Wasatch each month.  Wasatch was aware of the rent to owner, the HAP rent payment, and the tenant rent for each unit rented to a Relevant Tenant.

## Wasatch's Additional Service Charges

29.     Wasatch charged Additional Service Charges to Relevant Tenants in addition to the rent to owner amount authorized by the HAP Contract.  [Defs.' Response to Pls.' SUMF ¶ 7, Defs' Resp. to Terry Request for Admiss, Set 2, No. 11]

30.     Wasatch collected Additional Service Charges from Relevant Tenants in addition to the rent to owner amount authorized by the HAP Contract.  [Defs.' Response to Pls.' SUMF ¶ 7, Defs' Resp. to Terry Request for Admiss, Set 2, No. 11]

31.     Before January 17, 2023, Wasatch required Relevant Tenants to pay Additional Services Charges for the period of time covered by their Residential Lease Agreement.  Wasatch did not allow Relevant Tenants to cancel early.  [Jarvis Dep. 18:15, May 18, 2023; Jarvis Dep. Ex. 74]

**Wasatch's Treatment of Additional Service Charges in Its Standard Rental Forms**

32.     Wasatch's form Residential Lease Agreement includes a page entitled "Monthly Cost Breakdown" that combines "base rent" and Additional Service Charges in the tenant's "Total Monthly Obligation."  The Agreement instructs tenants that "[y]our monthly payment is due and payable . . . on or before the 1st day of each month."  [Defs.' Response to Pls.' SUMF ¶ 12]  An example of the Residential Lease Agreement is attached as Exhibit __.

33.     Wasatch's form Renewal Notification Letter describes Additional Service Charges as part of the tenant's "new rental rate," stating: "When you renew your lease, your new rental rate will be $_____, this rate includes rent and any applicable service items (such as parking, renter's insurance, pet, etc)."  [Defs.' Response to Pls.' SUMF ¶ 13]   An example of the Renewal Notification Letter is attached as Exhibit __.

34.     Wasatch's form Move-In Cost Sheet combines rent and Additional Service Charges in multiple places.  The Cost Sheet states: "Your total monthly obligation will be $____, not including utilities" (providing a number that combines monthly rent and Additional Service Charges).  The Cost Sheet lists a single amount for "Rent and Additional Services" for the first month.  The amount listed as "Total Move in & First Month's Rent" includes Additional Service Charges. [Defs.' Response to Pls.' SUMF ¶ 14]  An example of the Move-In Cost Sheet is attached as Exhibit __.

35.     Wasatch's form Monthly Statement of Rental Account tells tenants that "[t]he first of the month is quickly approaching and rent will be due," then provides a "Total Due" that includes Additional Service Charges.  The Monthly Statement of Rental Account also tells tenants that they will have to pay a late fee if the Total Due "is not paid by 5:00 pm on the 3rd."  [Defs.' Response to Pls.' SUMF ¶ 15]  An example of the Monthly Statement of Rental Account is attached as Exhibit __.

**Wasatch's Policies for Collecting Unpaid Additional Service Charges**

*Defendants' Payment Sequence Policy*

36.     Before November 30, 2022, Wasatch used a payment sequence policy to set the rules for how tenant payments must be applied to outstanding charges on the tenant ledger.  There is a

8

written document that describes the payment sequence policy.  It is called the "Payment Sequence for Receipting Payments."  Under Wasatch's payment sequence policy, Wasatch first used tenant payments to pay any unpaid Additional Service Charges.  Once all Additional Service Charges were paid, then Wasatch used tenant payments to pay any unpaid base rent charges.  The payment sequence policy is attached as Exhibit __.  [Defs.' Response to Pls.' SUMF ¶ 18; Defs.' Further Amended Response to Livingston Interrog. No. 6]

37.    The Payment Sequence for Receipting Documents states: "The computer is programmed to apply all payments to all items other than RENT first, leaving any delinquent portion as RENT owed.  In most areas that Wasatch operates in, properties can only go to court for RENT and not for depositions, additional service items (pet, parking, storage, etc.)."  In this document, "go to court" means starting eviction proceedings against a tenant.

38.    On November 30, 2022, Wasatch changed its payment sequence policy for all tenants, including Relevant Tenants.  The new payment sequence policy requires Wasatch to use tenant payments to pay any unpaid base rent charges first.  Once all base rent charges are paid, then Wasatch can use tenant payments to pay any unpaid Additional Service Charges.  [Defs.' Further Amended Response to Livingston Interrog. No. 6]

***Policies Regarding Outstanding Tenant Balances***

39.    When tenants have unpaid amounts of less than $100, Wasatch's policy is to send tenants "notice that future rents will not be accepted unless paid in full."  This means that tenants must pay all unpaid charges, including Additional Service Charges, before Wasatch will allow them to pay rent.  [Defs.' Response to Pls.' SUMF ¶ 25]

40.    When tenants have unpaid amounts of $100 or more, Wasatch's policy is to send a Pay or Quit Notice, even where some or all of the $100 balance is unpaid Additional Service Charges.  [Order, ECF No. 278 at p. 13]

41.    Wasatch routinely sends Pay or Quit Notices to tenants, where the amount demanded includes unpaid Additional Service Charges.  [Defs.' Response to Pls.' SUMF ¶ 27]  Examples of Wasatch's commonly used Pay or Quit Notices are attached as Exhibit __.

42.     In California, Wasatch uses a standard Pay or Quit Notice for non-rent charges that is called "Three Day Notice to Perform Financial Covenant or Quit."  [Defs.' Response to Pls.' SUMF ¶ 29]  An example of the Three Day Notice to Perform Financial Covenant or Quit is attached as Exhibit __.

43.     Wasatch uses Pay or Quit Notices to help collect unpaid amounts under $100 from tenants, including Relevant Tenants. [Defs.' Response to Pls.' SUMF ¶ 30]

44.     Wasatch has sent Pay or Quit Notices to Relevant Tenants for amounts of less than $100, where the amount demanded includes or is all Additional Service Charges.  [Defs.' Response to Pls.' SUMF ¶ 31]

**Wasatch's Practices Related to the Section 8 Program**

45.     Wasatch has filled out Part A of the HAP Contract for each HAP Contract they signed, including identifying the monthly base rent amount as the "initial rent to owner."

46.     Wasatch has never included Additional Service Charges in the "initial rent to owner" or later rent to owner amounts approved by PHAs.

47.     Wasatch did not ask the PHAs whether the Section 8 program allows it to charge Relevant Tenants Additional Service Charges.  [Jarvis Dep. 133:3-14, Aug. 10, 2017]

48.     Wasatch has not told PHAs how its Additional Service Agreements or Additional Service Charges work at its Subject Properties.  [Johnson Dep. 72:16-21, July 19, 2021]

49.     Wasatch has not received any communications from HUD indicating that HUD approves of Wasatch's practice of charging Section 8 tenants for Additional Service Charges in addition to the rent to owner.  [Defs' Resp. to Terry RFA 16]

50.     Before this lawsuit, Wasatch never investigated whether its policies and practices related to Additional Service Charges comply with the requirements of the Section 8 program. [Defendants' Further Supplemental Responses to Terry Interrogatory No. 24.]

51.     Before this lawsuit, Wasatch never sought advice of legal counsel as to whether its policies and practices related to Additional Service Charges comply with the requirements of the Section 8 program.  [Defendants' Further Supplemental Responses to Terry Interrogatory No. 24.]

893227.1

52.     Wasatch never provided training for its officers or employees regarding the requirements of the Section 8 program.  [Defendants' Response to Terry RFA 4]

### The HAP Contract and Wasatch's Washer and Dryer Charges

53.     Before July 1, 2019, Section 8 of Part A of the HAP Contract, titled "Utilities and Appliances," included the following directions: "The owner shall provide or pay for the utilities and appliances indicated below by an 'O'.  The tenant shall provide or pay for the utilities or appliances indicated below by a 'T'.  Unless otherwise specified below, the owner shall pay for all utilities and appliances provided by the owner."  These directions are in every HAP Contract completed before July 1, 2019.  [Defs.' Resp. to SUMF ¶ 33]

54.     After the instructions, Section 8 includes a table of utilities and appliances that the property owner must fill out.  Wasatch has never listed in-unit washers and dryers in the Section 8 table or anywhere else in the HAP Contract.  [Defs.' Resp. to SUMF ¶¶ 34, 35]

### Wasatch's Mandatory Renters' Insurance Requirement

55.     Until December 2019, Wasatch required tenants to buy renters' insurance before they could move into any of the Subject Properties, except for those participating in the Low-Income Housing Tax Credit Program.  Tenants, including Relevant Tenants, made additional payments for renters' insurance beyond the rent to owner.  These additional payments either went to Wasatch as an Additional Service Charge or to a third-party insurer.  [Order, Dkt. No. 278 at pp. 15-16]

56.     In December 2019, Wasatch changed its policy to make renters' insurance optional.  Wasatch applied the new policy in new leases and lease renewals signed after December 2019.  [Defs.' Resp. to SUMF ¶ 37]

57.     The Subject Properties participating in the Low-Income Housing Tax Credit Program are:

| Property Name | Location | Period of Participation |
|---|---|---|
| 600 Lofts | Salt Lake City, UT | Jun 2017 - Present |
| Arcadia | Sandy, UT | Feb 2018 - Present |
| Arcadia II | Sandy, UT | Jan 2021 - Present |

| Bellwood Park Apartments | Sacramento, CA | Nov 2010 - Sept 2018 |
|---|---|---|
| Enclave at 1400 South | Salt Lake City, UT | Jul 2015 - Present |
| Bridges at Five Oaks | North Highlands, CA | Dec 2010 - Sept 2018 |
| Florentine Villas | Midvale, UT | Mar 2010 - Present |
| Garden Lofts | Salt Lake City, UT | Nov 2019 - Present |
| Heritage Park-Tax Credit | Norco, CA | Jul 2007 - Present |
| Hayward Village Tax Credit | Hayward, CA | Oct 2006 - Dec 2020 |
| Jerron Place | Sacramento, CA | Oct 2010 - Sept 2018 |
| Kimpton Square | Midvale, UT | Jan 2017 - Present |
| Logan Park | Sacramento, CA | Jun 1999 - Nov 2016 |
| Piedmont Apartment | Oakland, CA | Apr 2012 - Feb 2021 |
| Point Natomas Apartments | Sacramento, CA | Apr 2007 - Nov 2016 |
| Peppertree Apartment | Spring Valley, CA | Jan 2013 - Present |
| Providence Place | Salt Lake City, UT | Dec 2011 - Present |
| Quail Run Apartments | Santa Rosa, CA | Jan 2011 - Mar 2014 |
| The Reserve at View 78 | Midvale, UT | Mar 2020 - Present |
| Springwood Apartments | Bountiful, UT | Oct 2005 - Nov 2020 |
| Spring Villas Apartments | Spring Valley, CA | Jul 2006 - Present |
| Shadow Way Apartments | Oceanside, CA | Mar 2009 - Present |
| Tuscany Villas | Midvale, UT | Apr 2012 - Present |
| Veranda | Draper, UT | Jan 2018 - Present |
| Village Grove Apartment | Escondido, CA | Apr 2013 - Present |

### **Wasatch's Other Mandatory Additional Service Charges**

58.     Wasatch required tenants to pay mandatory Additional Service Charges for cable/media packages, parking, and washers and dryers at the properties listed below:

12

893227.1

| Property Name | Add'l Service Charge | Period of Mandatory Charge |
|---|---|---|
| Broadmoor Village Apartments | media package | May 1, 2018 - Jun 30, 2021 |
| Canyon Ridge Apartments | media package | Oct 1, 2020 - Jan 17, 2023 |
| Courtyard at Central Park | media package | Feb 1, 2008 - Jan 17, 2023 |
| Devonshire Court East | media package | Apr 1, 2019 - Jan 17, 2023 |
| Devonshire Court West | media package | Mar 1, 2019 - Jan 17, 2023 |
| Falls and Hunter Point | media package | Oct 1, 2018 - Jan 17, 2023 |
| Goldstone Place Apartments | media package | Feb 1, 2006 - Dec 31, 2015 |
| Landing a Fancher Creek | media package | Feb 1, 2006 - Jun 30, 2012 |
| Lofts at 7800 | media package | Aug 1, 2014 - Jan 17, 2023 |
| Metropolitan Place Apartments | media package | Nov 1, 2019 - Jan 17, 2023 |
| Rio Seco Apartments | media package | Sept 1, 2020 - Jan 17, 2023 |
| California Place Apartments | washer/dryer | Jul 1, 2015 - Jan 31, 2017 |
| Chesapeake Commons Apartments | washer/dryer | Feb 1, 2006 - May 30, 2016 |
| Chesapeake Commons Apartments | parking | Jun 1, 2015 - May 30, 2016 |
| Crossroads Apartments | parking | Feb 1, 2008 - Jan 17, 2023 |
| Promontory Apartments | parking | Apr 1, 2020 - Jan 17, 2023 |
| Revo 225 | parking | Jan 1, 2021 - Jan 17, 2023 |

59.     In January 2023, Wasatch created a written policy saying that Section 8 tenants did not have to pay mandatory charges.  Before January 2023, Wasatch did not have any written documents saying that Section 8 tenants did not have to pay mandatory charges.  [Defs.' Resp. to Terry RFA No. 17]

60.     In April 2016, the Sacramento Housing and Redevelopment Agency contacted Wasatch with concerns that mandatory washer and dryer charges at Chesapeake Commons violated the rules of the affordable housing bond program.

61.     Following the April 2016 inquiry from the Sacramento Housing and Redevelopment Agency, Wasatch ceased mandatory washer and dryer charges and mandatory parking charges at Chesapeake Commons.

62.     Relators and Wasatch began exchanging information, documents, and testimony from witnesses about the claims in this case in 2017.  In court cases, this exchange of information is called the "discovery" process.

63.     The first time Wasatch told Plaintiffs in the discovery process that it had an exemption from mandatory charges for Section 8 tenants was the summer of 2021. [Defs.' Resp. to Disputed Fact No. 8, ECF No. 263-4]

### Wasatch's Yardi Database

64.     Since at least February 1, 2006, Wasatch has kept data related to its residential properties and tenants, including Relevant Tenants, in a central database called Yardi.  The Yardi data includes tenant ledgers showing all charges to tenants and payments from tenants.  [Joint Fact Stip. Re Yardi Data, ¶¶ 9, 23]

65.     After this case was filed, Plaintiffs and Wasatch jointly hired a data firm, Gelbgroup Consulting, to figure out the type of data available in Wasatch's Yardi database, and to extract data from that database and provide it to Plaintiffs and Wasatch.  [Joint Fact Stip. Re Yardi Data, ¶ 10]

66.     Gelbgroup Consulting provided the datasets listed in Exhibit __.  All datasets listed in Exhibit ___ are accurate and authentic excerpts of data from Wasatch's Yardi database.  [Joint Fact Stip. re Yardi Data, ¶¶ 18-33; Gelb Oct. 2022 Decl. ¶¶ 7-10]

67.     Gelbgroup Consulting identified Yardi tenant ledger data for Relevant Tenants and provided it to Plaintiffs and Wasatch.  Plaintiffs' forensic accounting expert, David Breshears, then analyzed the data.  [Joint Fact Stip. Re: Yardi Data, ¶ 23; Gelb Oct. 2022 Dec. ¶¶ 7-8]

68.     Tenant charges and payments in Wasatch's Yardi tenant ledger data are labeled with individual "charge codes."  The following charge codes are Additional Service Charges:  [Joint Fact Stip. re Yardi Data ¶ 14]

- Security alarm (charge code "alarm")

- Cable package (charge code "cable")

- Common garage (charge code "garage")

- Furniture (charge code "furn")

- Renters' insurance (charge code "insur")

- Media Package (charge code "media")

- Month-to-month fees (charge code "mtm")

- Covered parking (charge code "park")

- Pet rent (charge code "pet")

- Storage (charge code "storage")

- Uncovered parking (charge code "uncpark")

- In-unit washer and dryer (charge code "wash")

- RentPlus (charge code "rentplus")

69.     Since February 2006, Wasatch has used the charge code "rentHAP" to identify HAP rent payments received from PHAs.  All "rentHAP" charges recorded on tenant ledgers in the Yardi data are charges that Wasatch made to PHAs under a HAP Contract that was current and binding at the time of the charge.  [Joint Fact Stip. Re: Yardi Data, ¶ 15; Defs.' Resp. to Terry RFA 44.]

**Authenticity of Documents**

70.     Plaintiffs and Wasatch stipulate to the authenticity of all documents produced by Plaintiffs and Wasatch in this case, *U.S. ex rel. Terry v. Wasatch Advantage Group, LLC*, Case No. 2:15-CV-00799-KJM-DB, proceeding in the United States District Court for the Eastern District of California.

---

# EXHIBIT B

Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | (Fax) (510) 835-1417

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Telephone: (510) 834-3300 | (Fax) (510) 834-3377

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Telephone: (510) 437-1863 | (Fax) (510) 437-9164

Jocelyn Larkin (SBN 110817)
jlarkin@impactfund.org
Lindsay Nako (SBN 239090)
lnako@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473 | (Fax) (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' SEPARATE STATEMENT ON POINTS OF LAW**<br><br>Date:  February 16, 2024<br>Time:  10:00 am<br>Dept:  Courtroom 3, 15th Floor<br>Before:  Hon. Chief Judge Kimberly J. Mueller<br><br>Trial Date:  None Set |

1   LOGAN PARK APARTMENTS, LLC, LOGAN
    PARK APARTMENTS, LP, ASPEN PARK
2   HOLDINGS, LLC, BELLWOOD JERRON
    HOLDINGS, LLC, BELLWOOD JERRON
3   APARTMENTS, LP, BENT TREE
    APARTMENTS, LLC, CALIFORNIA PLACE
4   APARTMENTS, LLC, CAMELOT LAKES
    HOLDINGS, LLC, CANYON CLUB HOLDINGS,
5   LLC, COURTYARD AT CENTRAL PARK
    APARTMENTS, LLC, CREEKSIDE HOLDINGS,
6   LTD, HAYWARD SENIOR APARTMENTS, LP,
    HERITAGE PARK APARTMENTS, LP, OAK
7   VALLEY APARTMENTS, LLC, OAK VALLEY
    HOLDINGS, LP, PEPPERTREE APARTMENT
8   HOLDINGS, LP, PIEDMONT APARTMENTS,
    LP, POINT NATOMAS APARTMENTS, LLC,
9   POINT NATOMAS APARTMENTS, LP, RIVER
    OAKS HOLDINGS, LLC, SHADOW WAY
10  APARTMENTS, LP, SPRING VILLA
    APARTMENTS, LP, SUN VALLEY HOLDINGS,
11  LTD, VILLAGE GROVE APARTMENTS, LP,
    WASATCH QUAIL RUN GP, LLC, WASATCH
12  PREMIER PROPERTIES, LLC, WASATCH
    POOL HOLDINGS III, LLC,
13  and DOES 1-4,

14          Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiffs' Separate Statement on Points of Law**

Pursuant to Local Rule 181(b)(8), Plaintiffs provide the following statement regarding points of law bearing on their claims at trial.

**A.    False Claims Act**

A defendant is liable under the FCA if it "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a)(1)(A).  The elements of an FCA claim are "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis.*, 862 F.3d 890, 902 (9th Cir. 2017).

**1.    Falsity**

The existence of "a false statement or fraudulent course of conduct" may be demonstrated by false certifications or by promissory fraud.  *United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 675-76 (9th Cir. 2018) (express false certification); *Campie*, 862 F.3d at 902 (promissory fraud).

"Express false certification involves an entity's representation of compliance with the law as part of the process for submitting a claim when it is actually not compliant."  *Silingo*, 904 F.3d at 675-76.  Wasatch certified in HAP Contracts that, "[e]xcept for the rent to owner, the owner has not received and will not receive any payments or other consideration ... for rental of the contract unit during the HAP contract term."  HAP Contract Part B, ¶ 8(d); *see also* Part B ¶ 6(a) & Part C ¶¶ 5(e)-(f) (limiting rent to the amount approved by the public housing agency, prohibiting additional rent charges, and requiring the immediate return of excess rent payments to the tenants).  A landlord's collection of excess rent violates its certification in the HAP Contract and establishes the falsity element under an express false certification approach.  *See Silingo*, 904 F.3d at 675-76; *see also United States ex rel. Oliver v. Parsons, Co*., 195 F.3d 457, 463 (9th Cir. 1999) (the element of falsity "is determined by whether [the defendant's] representations were accurate in light of applicable law."); *United States ex rel. Ellis v. Jing Shu Zheng*, No. 2:16-cv-01447-APG-NJK, 2018 WL 1074483, at *3 (D. Nev. Feb. 26, 2018) ("*Ellis I*"), *aff'd sub nom. Ellis v. Zheng*, 799 F. App'x 551 (9th Cir. 2020) ("*Ellis II*") (falsity established where landlord collect excess rent despite certifications and promises in the HAP Contract).

1    Under a promissory fraud approach, "'liability will attach to each claim submitted to the

2    government under a contract, when the contract or extension of the government benefit was originally

3    obtained through false statements or fraudulent conduct.'"  *Kelly v. Denault*, 374 F. Supp. 3d 884, 889

4    (N.D. Cal. 2018) (quoting *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th

5    Cir. 2006)).  "'In other words, subsequent claims are false because of an *original fraud*,'" which may

6    include a false certification material to the defendant's participation in the program.  *Campie*, 862 F.3d

7    at 902, 904 (quoting *Hendow*, 461 F.3d at 1173) (concluding that the relators' allegations of false

8    certifications "satisfied the falsity requirement under a theory of promissory fraud," with the result that

9    "each claim was fraudulent even if false representations were not made therein").

10    The Court already determined at summary judgment that Wasatch unlawfully charged Section

11    8 tenants excess rent by (1) treating additional service charges as rent, (2) requiring tenants to purchase

12    renters' insurance as a condition of leasing, and (3) making unauthorized washer and dryer charges that

13    were not disclosed on the HAP Contract.  Summ. J. Order 9-16, ECF No. 278.  This ruling establishes

14    the falsity of Wasatch's certifications in the HAP Contracts that it would not receive excess rent from

15    relevant tenants, as Wasatch was "actually not compliant" with the rent limitation that was the subject

16    of its certification.  *See Silingo*, 904 F.3d at 675-76; *see also, e.g.*, *U.S. ex rel. Sutton v. Reynolds*, 564

17    F. Supp. 2d 1183, 1187 (D. Or. 2007) (holding that collection of excess rent from Section 8 tenants

18    satisfied falsity requirement); *Ellis I*, 2018 WL 1074483, at *3 (same).

19    **2.    Scienter**

20    To find liability, the jury must conclude that Wasatch "knowingly" presented false or

21    fraudulent claims for payment.  *See Godecke ex rel. United States v. Kinetic Concepts, Inc.*, 937 F.3d

22    1201, 1211 (9th Cir. 2019) (citing 31 U.S.C. § 3729(a)(1)(A)).  "'Knowingly' is defined as having:

23    (1) actual knowledge of the information; (2) deliberate ignorance of the truth or falsity of the

24    information; or (3) reckless disregard of the truth or falsity of the information."  *Id.* (citing 31 U.S.C.

25    § 3729(b)(1)(A)).  This standard does not require "proof of specific intent to defraud." 31 U.S.C.

26    § 3729(b)(1)(B).

27    Recipients of federal funds have "some duty to make a limited inquiry so as to be reasonably

28    certain they are entitled to the money they seek."  *Godecke*, 937 F.3d at 1211 (quotation marks &

1   citation omitted).  "'Protection of the public fisc requires that those who seek public funds act with

2   scrupulous regard for the requirements of the law ....  Those who deal with the Government are

3   expected to know the law and may not rely on the conduct of Government agents contrary to law.'"

4   *United States ex rel. Hagood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416, 1422 (9th Cir. 1991)

5   (quoting *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 63 (1984)).

6       **3.   <u>Materiality</u>**

7       "Material" is defined in the FCA as "having a natural tendency to influence, or be capable of

8   influencing, the payment or receipt of money or property."  31 U.S.C. § 3729(b)(4).  This is an

9   objective test.  *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 (2016)

10  ("*Escobar*") (citing "common law antecedents" setting objective "reasonable person" standards for

11  evaluating materiality); *United States ex rel. Feldman v. van Gorp*, 697 F.3d 78, 95 (2d Cir. 2012)

12  ("[T]he test for materiality is an objective one.").  "A materiality inquiry under the FCA is a holistic,

13  totality-of-the-circumstances examination[.]" *United States ex rel. Int'l Bhd. of Elec. Workers Loc.*

14  *Union No. 98 v. Farfield Co.*, 5 F.4th 315, 342 (3d Cir. 2021); *Escobar*, 579 U.S. at 191 (citing

15  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 39 (2011)).

16      Some of the non-exhaustive factors that may support a finding of materiality include (1) the

17  government's designation of a program requirement as a "condition of payment," *Escobar*, 579 U.S. at

18  190 (noting this factor is "relevant to but not dispositive of the materiality inquiry"); (2) the magnitude

19  of the violation, *id.* at 194; (3) the misrepresentation undermines the purpose of the program or affects

20  the essence of the bargain, *United States ex rel. Carmichael v. Gregory*, 270 F. Supp. 3d 67, 71

21  (D.D.C. 2017) ("*Carmichael*"); *Escobar*, 579 U.S. at 193 n.5; and (4) the government's track record of

22  enforcing the requirement at issue, *id.* at 195.

23      The design and structure of the Section 8 program and the HAP Contract are relevant to the

24  materiality inquiry at trial.  Section 8 landlords' certification in the HAP Contract that they will not

25  collect excess rent, and their compliance with that promise, are express conditions of payment.  HAP

26  Contract Part 6 ¶ 7(b).  The prohibition on collecting excess rent is further underscored by federal

27  regulations.  24 C.F.R. § 982.451(b)(4)(ii).  Federal regulations prohibit approval of a Section 8

28  tenancy "unless the rent is reasonable."  24 C.F.R. 982.1(a)(2).  In this context, courts have found no

3

1    room for doubt "that the amount of rent [to be] charged is a 'material' term" of the Section 8 program.

2    *Carmichael*, 270 F. Supp. 3d at 71.  Indeed, the "collection of excess rent 'affect[s] one of the most

3    basic terms of the [HAP] Contract.'"  *Kelly*, 374 F. Supp. 3d at 892 (quoting *Sutton*, 564 F. Supp. 2d at

4    1189).  "Most importantly, the Section 8 voucher program exists to aid low-income families in

5    obtaining housing, 'and that purpose is clearly undermined when a program participant overcharges a

6    beneficiary of the program.'"  *Id.* (quoting *Carmichael*, 270 F. Supp. 3d at 71).

7    **4.**    <u>**Claims**</u>

8    The final element of the FCA is the presentation of a claim for payment of federal funds.  *See*

9    *Campie*, 862 F.3d at 902, 907.  A claim for payment arises "whenever the government is asked to 'pay

10    out or forfeit moneys due.'"  *Hendow*, 461 F.3d at 1173 (citation omitted).  Claims may be actionable

11    although made to a grantee or other recipient that is charged with implementing a federally funded

12    program.  *See* 31 U.S.C. § 3729(b)(2)(A)(ii).  The Ninth Circuit recognizes that each housing

13    assistance payment received by a Section 8 landlord constitutes "its own 'claim against the government

14    fisc'" and thus its own separate FCA violation.  *Ellis II*, 799 F. App'x at 552 (citing *Hendow*, 461 F.3d

15    at 1177).

16    **5.**    <u>**Damages**</u>

17    If the jury finds liability under the FCA, then it will be tasked with determining actual damages

18    sustained by the government.  31 U.S.C. § 3729(a)(1).  A landlord who charges unlawful excess rent in

19    violation of the HAP Contract is not entitled to receive any housing assistance payments; accordingly,

20    the government's actual damages under the FCA are equal to "the entire amount [the owner] received

21    from the government."  *Ellis II*, 799 F. App'x at 552 (citing *United States v. Mackby*, 339 F.3d 1013,

22    1018-19 (9th Cir. 2003)).

23    **B.**    <u>**Consumer Legal Remedies Act**</u>

24    California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

25    practices," including specific acts, such as "misrepresenting the source, sponsorship, approval, or

26    certification of goods and services."  Cal. Civ. Code § 1770(a)(2).  Because Plaintiffs solely seek

27    injunctive relief under the CLRA, this claim will be tried to the Court along with injunctive relief

28    under the UCL.

4

To prove their CLRA claim, Plaintiffs must first prove that the Named Plaintiffs have "lost money or property," which requires Plaintiffs to demonstrate "some form of economic injury" as a result of Wasatch's unlawful practices, although "the quantum of lost money or property necessary to show standing is only so much as would suffice to establish [Article III] injury in fact." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (citations omitted); *see also Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 724 (2018); Cal. Civ. Code § 1780(a).

To find that Defendants have classwide liability under the CLRA, the Court must determine whether: (1) Named Plaintiffs suffered economic injury as a result of Wasatch's unlawful practice (*see Hinojos*, 718 F. 3d at 1104); (2) class members entered into a transaction intended to result or that results in the sale or lease of goods or services for personal, family, or household purposes (Cal. Civ. Code § 1770(a)); (3) Defendants "[m]isrepresent[ed] the source, sponsorship, approval, or certification of goods and services" (Cal. Civ. Code § 1780(a)(2)); and (4) the misrepresentation was material (*see Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1258 (2018)).  Plaintiffs do *not* need to show actual reliance for every class member.  Rather, classwide "reliance may be inferred when the facts show that material misrepresentations were made to the entire class." *Kreuger v. Wyeth*, 396 F. Supp. 3d 931, 942 (S.D. Cal. 2019) (citing *In re Vioxx*, 180 Cal. App. 4th 116, 129 (2009)).

### 1.    <u>Named Plaintiffs' Standing</u>

To establish standing under the CLRA, Named Plaintiffs must establish both that they were "exposed to an unlawful practice" and that they experienced "some kind of damage" as a result.  *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009); Cal. Civ. Code § 1780(a).  Plaintiffs are not required to show that the misrepresentation was the "sole or even the decisive cause of the injury-producing conduct." *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020-21 (9th Cir. 2020) (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326-27 (2011)).

The Court's November 23, 2023 Order has already found that Plaintiffs were injured by Wasatch's practices: Plaintiffs "have suffered injury in the form of lost money or property as a result of defendants' unlawful practice" under the UCL.  Summ. J. Order 14, ECF No. 278.  "Because the

'any damage' standard [of the CLRA] includes even minor pecuniary damage ... any plaintiff who has standing under the UCL's ... 'lost money or property' requirement will, *a fortiori*, have suffered 'any damage' for purposes of establishing CLRA standing." *Hinojos*, 718 F.3d at 1108.  Thus, this element has been satisfied.

### 2.   Transaction For Goods or Services with Wasatch

The Court will determine as a matter of fact if class members entered into a transaction for goods or services with Wasatch.  California Civil Code section 1761(e) broadly defines a "'transaction' as 'an agreement between a consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement.'" *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 869 (2002) (quoting Cal. Civ. Code § 1761(e)).

It is undisputed that Wasatch Property Management, acting for other Defendants, executed leases with all class members.  A lease for residential housing is understood under California law to be an agreement for a "package of goods and services." *Green v. Superior Court*, 10 Cal. 3d 616, 623 (1974).

Defendants have waived any argument on the dispositive question of whether, as a matter of law, the lease of real property constitutes a transaction for goods or services under the CLRA, by failing to raise the issue prior to the dispositive motion deadline.  *See Shewbridge v. El Dorado Irrigation Dist.*, No. CIV S−05−0740 FCD EFB, 2007 WL 1294392, at *3 (E.D. Cal. Apr. 30, 2007) (citing *North Pacifica, LLC v. City of Pacifica*, 366 F.Supp.2d 927, 930 (N.D. Cal. 2005) (finding defendant, who raised res judicata defense for first time at trial's damages phase, waived defense)). The Court's Standing Scheduling Order (ECF No-144, Oct. 28, 2021) cautioned parties that "failure to raise a dispositive legal issue that could have been tendered to the court by proper pretrial motion prior to the dispositive motion cut−off date may constitute waiver of such issue."

Additionally, it is undisputed that Wasatch Property Management, acting for other Defendants, executed Additional Service Agreements with class members putatively for the provision of goods (washers and dryers) and services (media packages and the RentPlus credit reporting service).  *See* Cal. Civ. Code § 1761(a) & (b).

### 3. <u>Misrepresentation of the Source, Sponsorship, Approval, or Certification of Goods or Services</u>

Plaintiffs contend that Defendants misrepresented that they were lawfully entitled to demand and collect the additional service charges, even though they were impermissible excess rent.  The Court has already determined that Wasatch Property Management's practice of collecting additional service charges was unlawful excess rent.  Summ. J. Order 9-13, ECF No. 278.  It is undisputed that Wasatch Property Management represented that it was lawfully allowed to demand and collect the additional service charges from class members.  This is conduct that was likely to mislead a reasonable consumer.  *See Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006), *as modified on denial of reh'g* (Jan. 31, 2006) (conduct that is "likely to mislead a reasonable consumer" violates the CLRA) (internal citation & quotation marks omitted).

### 4. <u>Materiality</u>

The Court can determine if Wasatch's misrepresentations caused injury on a classwide basis by finding that Wasatch's misrepresentations were material.  *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282 (2002).  To find that a misrepresentation was material, the Court will decide if a "'reasonable [person] would attach importance to its existence or nonexistence'" in deciding to enter into a transaction.  *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 522 (C.D. Cal. 2015) (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011)).  Alternatively, the Court can find that the misrepresentation was material if Wasatch knew or had reason to know that tenants attach importance to the representation. *See Hinojos*, 718 F. 3d at 1107.

### C. <u>Injunctive Relief</u>

During the bench trial portion of Phase 1, Plaintiffs will seek injunctive relief on behalf of the certified Rule 23(b)(2) class to prevent the recurrence of Wasatch's violations of the UCL and the CLRA.

The UCL authorizes courts to "make such orders or judgments," including injunctions, "as may be necessary to prevent the use or employment by [the defendant] of any practice which constitutes unfair competition."  Cal. Bus. & Prof. Code § 17203.  The Court's remedial power under this provision "is extraordinarily broad."  *People v. JTH Tax, Inc.*, 212 Cal. App. 4th 1219, 1257 (2013)

1 (affirming injunctive relief order) (internal citation & quotation marks omitted). The Court has already

2 held that Wasatch violated the UCL through its unlawful practices of (1) treating additional service

3 charges as rent, and (2) requiring tenants to incur additional service charges as a condition of leasing.[1]

4 Summ. J. Order 14, 16, ECF NO. 278.

5        Similarly, a court may enjoin "methods, acts, or practices" determined to be unlawful under the

6 CLRA.  Cal. Civ. Code § 1780(a)(2).  If Wasatch is found liable under the CLRA, this claim will

7 provide a further basis for injunctive relief.

8        To support their request for injunctive relief, Plaintiffs must also show (1) irreparable injury,

9 (2) the inadequacy of legal remedies such as damages, (3) that "considering the balance of hardships

10 between the plaintiff and defendant, a remedy in equity is warranted," and (4) that "the public interest

11 would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,

12 391 (2006).

13        After the Court's November 2022 summary judgment ruling, Wasatch altered some of the

14 policies and practices challenged in this case, while leaving others intact.  Plaintiffs will seek

15 injunctive relief on the basis that (1) Wasatch has refused to alter some of the policies that require

16 tenants to pay additional services charges in order to continue living in their units, and (2) Wasatch

17 could easily resume the practices and policies that it has altered as a result of this Court's summary

18 judgment ruling.  A defendant's voluntary cessation of the challenged conduct will not moot a claim

19 for injunctive relief unless the defendant can demonstrate that "it is 'absolutely clear' that the allegedly

20 wrongful behavior will not recur[.]"  *Rosemere Neighborhood Ass'n v. U.S. Env't Prot. Agency*, 581

21 F.3d 1169, 1173 (9th Cir. 2009).

---

[1] The Court's summary judgment ruling only addressed the mandatory renters' insurance requirement, as disputes of fact remained about whether Section 8 tenants were required to incur other charges as a condition of leasing.  *See* Pls.' Mem. P. & A. in Supp. of Mot. Partial Summ. J. 2 n.1, ECF No. 242-1; Defs.' Mem. P. & A. in Supp. of Mot. Summ. J. 1-2, ECF No. 241 (both identify disputes of fact regarding other mandatory charges).

Dated: February 2, 2024

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

/s/ *Anne P. Bellows*

Anne P. Bellows

Attorneys for Plaintiffs and Relators

9

893216.3

# EXHIBIT C

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH A. SALAZAR JR., SB# 169551
   E-Mail: Joe.Salazar@lewisbrisbois.com
RYAN MATTHEWS, SB# 311674
   E-Mail: Ryan.Matthews@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
Sacramento, California 95833
Telephone: 916.564.5400
Facsimile: 916.564.5444

Attorneys for Defendants, WASATCH
PROPERTY MANAGEMENT, INC., LOGAN
PARK APARTMENTS, LLC, LOGAN PARK
APARTMENTS, LP, BELLWOOD JERRON
HOLDINGS, LLC, BELLWOOD JERRON
APARTMENTS, LP, CAMELOT LAKES
HOLDINGS, LLC, HAYWARD SENIOR
APARTMENTS, LP, HERITAGE PARK
APARTMENTS, LP, OAK VALLEY
APARTMENTS, LLC, OAK VALLEY
HOLDINGS, LP, PEPPERTREE APARTMENT
HOLDINGS, LP, PIEDMONT APARTMENTS,
LP, POINT NATOMAS APARTMENTS, LLC,
POINT NATOMAS APARTMENTS, LP,
SHADOW WAY APARTMENTS, LP, SPRING
VILLA APARTMENTS, LP, SUN VALLEY
HOLDINGS, LTD, VILLAGE GROVE
APARTMENTS, LP, WASATCH QUAIL RUN
GP, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA,<br><br>          Plaintiffs/Relators,<br><br>        vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, | CASE NO. 2:15-cv-00799-KJM-DB<br><br>**DEFENDANT WASATCH PROPERTY MANAGEMENT, INC.'S POINT OF LAW**<br><br>Date:     February 16, 2024<br>Time:    10:00 a.m.<br>Crtrm.:  3<br><br>The Hon. Kimberly J. Mueller<br><br>Trial Date:     None Set |

LEWIS
BRISBOIS

1  LLC, LOGAN PARK APARTMENTS, LLC,
   LOGAN PARK APARTMENTS, LP, ASPEN
2  PARK HOLDINGS, LLC, BELLWOOD
   JERRON HOLDINGS, LLC, BELLWOOD
3  JERRON APARTMENTS, LP, BENT TREE
   APARTMENTS, LLC, CALIFORNIA
4  PLACE APARTMENTS, LLC, CAMELOT
   LAKES HOLDINGS, LLC, CANYON CLUB
5  HOLDINGS, LLC, COURTYARD AT
   CENTRAL PARK APARTMENTS, LLC,
6  CREEKSIDE HOLDINGS, LTD,
   HAYWARD SENIOR APARTMENTS, LP,
7  HERITAGE PARK APARTMENTS, LP,
   OAK VALLEY APARTMENTS, LLC, OAK
8  VALLEY HOLDINGS, LP, PEPPERTREE
   APARTMENT HOLDINGS, LP, PIEDMONT
9  APARTMENTS, LP, POINT NATOMAS
   APARTMENTS, LLC, POINT NATOMAS
10 APARTMENTS, LP, RIVER OAKS
   HOLDINGS, LLC, SHADOW WAY
11 APARTMENTS, LP, SPRING VILLA
   APARTMENTS, LP, SUN VALLEY
12 HOLDINGS, LTD, VILLAGE GROVE
   APARTMENTS, LP, WASATCH QUAIL
13 RUN GP, LLC, WASATCH PREMIER
   PROPERTIES, LLC, WASATCH POOL
14 HOLDINGS III, LLC, and DOES 1-4

15        Defendants.

16

17        **Defendant's Separate Statement on Points of Law**

18        Pursuant to Local Rule 181(b)(8), Defendant provide the following statement regarding

19 points of law bearing on their claims at trial.

20        Defendant Wasatch Property Management, Inc. joins in principle with Plaintiffs' recitation

21 of the points of law at issue in the upcoming Phase I trial, without waiver of any right to separately

22 brief those issues in greater detail consistent with Local Rule 181(b)(8). Defendant offers two

23 additional points of law: one relating to Plaintiffs' cause of action under the Consumer Legal

24 Remedies Act, and the other relating to the Statute of Limitations under the False Claims Act.

25        A.    Whether the Lease of Real Property Constitutes a Transaction for Goods or

26              Services under the Consumer Legal Remedies Act

27        Plaintiffs contend that the practices at issue are actionable under the Consumer Legal

28 Remedies Act. The Consumer Legal Remedies Act provides a right of action for certain unlawful

1  practices related to "transaction[s] intended to result or that result[] in the sale or lease of goods or

2  services to any consumer." Cal. Civ. Code § 1770(a). Residential property like apartments are not

3  considered tangible chattel such that they could be defined as a "good" under a CLRA. *Cornu v.*

4  *Norton Cmty. Apartments*, *L.P.,* No. B207802, 2009 WL 1961013, at *6 Cal. Ct. App. July 9,

5  2009). Additionally, this Court has explicitly found that the payments at issue in this case were not

6  for "services", but instead were solely for "rent". (Order Granting Plaintiffs' Motion for Summary

7  Adjudication, Dkt. #352.) If the practices at issue do not concern a "transaction[s] intended to

8  result or that result[] in the sale or lease of goods or services to any consumer", Plaintiffs cannot

9  prevail under the Consumer Legal Remedies Act.

10        Plaintiffs contend that any argument that the practices at issue are not actionable because

11  they are related to a "transaction[s] intended to result or that result[] in the sale or lease of goods

12  or services to any consumer" is waived because it was not raised as a dispositive motion. This

13  argument fails to take into account the fact that it was this Court's ruling on Plaintiffs' dispositive

14  motions that gives rise to this argument in the first place—that the transactions in question were

15  not for goods or services, but in fact, were only rent, and that to the extent they concerned goods

16  or services, those concerns were "hidden benefits" of the transactions. (Order Granting Plaintiffs'

17  Motion for Summary Adjudication, Dkt. #352.) Defendants argued to the contrary, and thus could

18  not have raised this issue prior to the Court's ruling, which came long after the dispositive motion

19  cutoff.

20        B.   <u>Whether the Six Year or 10 Year Statute of Limitations Applies to Plaintiff-</u>

21             <u>Relators' Cause of Action Under the False Claims Act</u>

22        Defendant anticipates that Plaintiffs will seek damages for allegedly false claims for

23  federal funds under the False Claims Act that date back as far as 2005. Under 31 U.S.C. section

24  3731(b), a civil action under the False Claims may not be brought "(1) more than 6 years after the

25  date on which the violation of section 3729 is committed, or (2) more than 3 years after the date

26  when facts material to the right of action are known or reasonably should have been known by the

27  official of the United States charged with responsibility to act in the circumstances, but in no event

28  more than 10 years after the date on which the violation is committed, whichever occurs last." 31

1   U.S.C. § 3731(b). Plaintiffs have not alleged any facts to extend the statute of limitations beyond

2   the 6 years permitted by the statute.

3

4   DATED:  February 2, 2024                    LEWIS BRISBOIS BISGAARD & SMITH LLP

5

6

7                                            By:      /s/ Ryan Matthews
                                                  RYAN MATTHEWS
8                                                 Attorneys for Defendants, WASATCH
                                                  PROPERTY MANAGEMENT, INC., LOGAN
9                                                 PARK APARTMENTS, LLC, LOGAN PARK
                                                  APARTMENTS, LP, BELLWOOD JERRON
10                                                HOLDINGS, LLC, BELLWOOD JERRON
                                                  APARTMENTS, LP, CAMELOT LAKES
11                                                HOLDINGS, LLC, HAYWARD SENIOR
                                                  APARTMENTS, LP, HERITAGE PARK
12                                                APARTMENTS, LP, OAK VALLEY
                                                  APARTMENTS, LLC, OAK VALLEY
13                                                HOLDINGS, LP, PEPPERTREE APARTMENT
                                                  HOLDINGS, LP, PIEDMONT APARTMENTS,
14                                                LP, POINT NATOMAS APARTMENTS, LLC,
                                                  POINT NATOMAS APARTMENTS, LP,
15                                                SHADOW WAY APARTMENTS, LP, SPRING
                                                  VILLA APARTMENTS, LP, SUN VALLEY
16                                                HOLDINGS, LTD, VILLAGE GROVE
                                                  APARTMENTS, LP, WASATCH QUAIL RUN
17                                                GP, LLC

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WASATCH PROPERTY MANAGEMENT, INC.'S POINT OF LAW

# EXHIBIT D

**Plaintiffs' and Relators' Witness List**

Witnesses associated with Wasatch Property Management
Jarom Johnson
Janae Johnson
Shawn Fetter
Brad Mishler
David Tanforan
Sylvia Gamboa
Tyler Raymond
Katie Dao
David Scharlach

Expert witnesses
David Breshears
MaryAnn Russ

Plaintiffs/Relators
Denika Terry
Roy Huskey III
Tamera Livingston

Current and former Wasatch tenants
Tania Borjas
Elizabeth Brooks
Brittney Bryson
Jerame Carter
Frances Crawley
Mike Cremer
Charles Crooks
Dana Davis-Lobo
Bobby Hanselman
Patricia Henderson
Denise Higgins
Ashley Mays
Edward McIlroy
Jamila Meadors
Douglas Peterson
Abraham Sheriff

Zakiyiah Smith
Maureen Stevens
Vicky Lynn Teista
Christopher Toney
James Walton
Marsha Young
Wendy Cottingham
Alicia Lee
Timothy Naerebout
Kassandra Olvera
Penny Paxman
Sylvia Rubio
Damon Weathersby

Current and former Public Housing Authority Employees
Barbara Cavey
Shannon Fox
Jacqueline Rojas
Jodi Parker
Mary Rizzo Shuman
Cheryl Syme
Sonia Ramirez
Sylvia de Leon

Other witnesses
Geoffrey Gelb
John Bailey
Scott Grimes

# EXHIBIT E

## Wasatch Property Management: Witness List

### Plaintiffs

Tamera Livingston
Roy Huskey III
Denika Terry

### Wasatch Property Management-Related Witnesses

Jarom Johnson
Janae Jarvis
Sean Fetter
Brad Mishler
Dave Tanforan
Warren Smith

### Expert Witnesses

Robert Griswold
James McCurley

### Housing Authority Employees

Barbara Cavey
Shannon Fox
Jacqueline Rojas
Jodi Parker
Mary Rizzo Shuman
Cheryl Syme

135524573.1

# EXHIBIT F

**Plaintiffs' and Relators' Exhibit List**

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 1 | Undated | File Cover Commission Sheet, Bates No. AP000389 (Jarvis Ex. 44) |
| 2 | 7/7/2016 | July 2016 Marketing Plan for Heritage Park, Bates No. CL00000026 (Jarvis Ex. 39) |
| 3 | 8/2/2016 | August 2, 2016 letter from Lori Hassell, Bates No. CP000465 (Tanforan Ex. 12) |
| 4 | 7/4/1905 | Initial Lease Agreement on Bond Year 2012, Bates Nos. CP006427-715 (Tanforan Ex. 23) |
| 5 | 9/5/2014 | Residential Rental Agreement and Lease Packet re: Damon Weathersby, Sep. 05, 2014, Bates Nos. CP009321-34 |
| 6 | 8/9/2016 | Eviction Warning and Three-Day Notice to Pay Rent or Quit re: Damon Weathersby, Aug. 9, 2016, Bates Nos. CP009381-82 |
| 7 | 8/16/2014 | Request for Tenancy Approval re: Damon Weathersby, Aug. 16, 2014, Bates Nos. CP009398-410 |
| 8 | 7/17/2014 | Voucher - Resident's Copy, Bates Nos. CP009411-13 |
| 9 | Undated | Balance Due Notice re: Damon Weathersby, Bates No. CP009414 |
| 10 | 1/9/2016 | Eviction Warning re: Damon Weathersby, Bates No. CP009418 |
| 11 | 1/4/2016 | Three-Day Notice to Pay Rent or Quit Notice re: Damon Weathersby, Bates No. CP009420 |
| 12 | 9/17/2014 | SHRA Lease Supplemental Agreement and HAP contract re: Damon Weathersby, Sep. 17, 2014, Bates Nos. CP009433-49 |
| 13 | Undated | Balance Due Notice re: Damon Weathersby, Bates No. CP009451 |
| 14 | 8/1/2012 | Residential Rental Agreement, Addenda, ASA re: Tamera Livingston, Aug. 01, 2012, Bates Nos. CPC038943-56 |
| 15 | 12/23/2014 | 90 Day Notice of Termination of Tenancy re: Tamera Livingston, Dec. 23, 2014, Bates Nos. CPC038970-72 |
| 16 | 8/25/2012 | HAP Contract re: Tamera Livingston, Aug. 25, 2012, Bates Nos. CPC038995-39000 |
| 17 | 7/11/2012 | Request for Tenancy Approval re: Tamera Livingston, Jul. 11, 2012, Bates Nos. CPC039007-08 |
| 18 | 9/17/2014 | Balance Due Notice re: Tamera Livingston, Sep. 17, 2014, Bates Nos. CPC039080-81 |
| 19 | 5/8/2013 | Resident Ledger re: Tamera Livingston, May. 08, 2013, Bates Nos. CPC039140-44 |
| 20 | 2/4/2015 | 3 Day Notice to Pay or Quit re: Tamera Livingston, Feb. 04, 2015, Bates Nos. CPC039152-53 |
| 21 | 6/13/2011 | Lease Packet re: Brittney Bryson, Jun. 13, 2011, Bates Nos. CY008458-81 |
| 22 | 9/28/2011 | Fresno Housing Authority - HAP Contract excerpts re: Brittney Bryson, Sep. 28, 2011, Bates Nos. CY008505-18 |

1

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 23 | 6/13/2011 | Residential Rental Agreement re: Brittney Bryson, Jun. 13, 2011, Bates Nos. CY008543-46 |
| 24 | 10/16/2015 | Three -Day Notice to Pay Rent or Quit re: Jerame Carter, Bates No. CY021313 |
| 25 | 10/4/2015 | Three-Day Notice to Pay Rent or Quit re: Jerame Carter, Bates No. CY021322 |
| 26 | 10/16/2015 | Tenant Ledger re: Jerame Carter, Bates No. CY021314-21 |
| 27 | 8/16/2013 | Lease Packet re: Jerame Carter, Aug. 16, 2013, Bates Nos. CY021399-410 |
| 28 | 8/16/2013 | Residential Rental Agreement re: Jerame Carter, Bates Nos. CY021414-17 |
| 29 | 8/20/2013 | Fresno Housing Authority -- HAP Contract excerpts re: Jerame Carter, Aug. 20, 2013, Bates Nos. CY021433-40 |
| 30 | 2/13/2012 | Rental Agreement and Lease Packet re: Bobby Hanselman, Feb. 13, 2012, Bates Nos. FOT002457-84 |
| 31 | 3/12/2012 | HAP Contract and Lease Supplemental Agreement re: Bobby Hanselman, Mar. 12, 2012, Bates Nos. FOT002593-605 |
| 32 | 1/8/2013 | Residential Rental Agreement and Lease Packet re: Christopher Toney, Jan. 08, 2013, Bates Nos. FOT003386-401 |
| 33 | 2/5/2013 | HAP Contract excerpts re: Christopher Toney, Feb. 05, 2013, Bates Nos. FOT003453-58 |
| 34 | 1/28/2013 | SHRA Lease Supplemental Agreement and HAP Contract excerpts re Christopher Toney, Jan. 28, 2013, Bates Nos. FOT003520-24 |
| 35 | 3/23/2015 | Residential Rental Agreement re: Denise Higgins, Mar. 23, 2015, Bates Nos. LPT008377-83 |
| 36 | 7/15/2013 | Puckett & Redford PLLC "Please Start Eviction Procedures" form, Bates No. MP000673 (Jarvis Ex. 16) |
| 37 | | Housing Choice Voucher Program Guidebook, Chapter 22, Bates Nos. TERRY018054-72 |
| 38 | 1/29/2024 | [Proposed] Consent Orders Granting Substitution of Attorney for Aspen Park Holdings, Bent Tree Apartments, California Place Apartments, Canyon Club Holdings, Chesapeake Apartment Holdings, Courtyard at Central Park Apartments, Creekside Holdings, River Oaks Holdings, Wasatch Advantage Group, Wasatch Pool Holdings III, Wasatch Pool Holdings, and Wasatch Premier Properties, Jan. 29, 204, ECF Nos. 337-48 |
| 39 | | Chart regarding HAP Contract Part A excerpts and washer and dryer charges (Exhibit 46 to Bellows Decl. in Supp. Mot. Part. Summ. J., Apr. 22, 2022, ECF No. 252-6) |
| 40 | 6/3/2015 | June 3, 2015 Notice to pay or vacate letter, Bates No. OP000163 (Fetter Ex. 7) |
| 41 | 5/11/2016 | SHRA Subsidy Adjustment Notice, Bates No. PNT000093 |

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 42 | 9/18/2014 | Residential rental agreement re: Zakiyiah Smith, Sep. 18, 2014, Bates Nos. PNT000157-63 |
| 43 | 11/29/2022 | Payment Sequencing Adjustment - Payment Sequence as of Nov. 29, 2022 - Yardi Voyager - Admin - Accounts and Options - Receivable Accounts, Bates No. POL000007 (Jarvis Ex. 72) |
| 44 | 11/26/2019 | Nov. 26, 2019 email from Rikki Hemsley to All Office, Regionals re: Renters Insurance Requirement Change Information, including attachment, Bates Nos. POL000009-10 (Jarvis Ex. 80) |
| 45 | 1/17/2023 | Jan. 17, 2023 Email from R. Christiansen to R. Matthews, J. Jarvis re: Housing_Voucher_ASA_Letter_All_Properties, including attachment, Bates Nos. POL0002261-2954 (Jarvis Ex. 74) |
| 46 | 1/17/2023 | Jan. 17, 2023 email from D. Withers to All Managers and All Financials re: Housing Choice Voucher Program (formerly Section 8), including attachments, Bates Nos. POL0002966-79 (Jarvis Ex. 77) |
| 47 | 1/17/2023 | Jan. 17, 2023 Email chain from J Jarvis re: Housing Choice Voucher Program (Formally Section 8), Bates No. POL002961 (Jarvis Ex. 75) |
| 48 | 2/15/2023 | Template Letter to Housing Choice Voucher Tenants, Bates No. POL002962 (Jarvis Ex. 76) |
| 49 | 1/17/2023 | Jan. 17, 2023 email from D. Withers to J. Jarvis re: Housing Choice Voucher Policy (003), Bates Nos. POL002995-96 (Jarvis Ex. 79) |
| 50 | 12/5/2022 | Dec. 15, 2022 Email from Rikki Hemsley to Janae Jarvis re: Housing Choice Voucher Program & Policy, Bates Nos. POL003149-50 (Jarvis Ex. 78) |
| 51 | Undated | R. Griswold document production, Bates Nos. RG000001-545 (Griswold Ex. 7) |
| 52 | 1/28/2022 | Jan. 28, 2022 (5:13 p.m.) email from R. Matthews re Draft - Terry v. Wasatch Property Management, et al; Case No. 2:15-cv-00799-KJM-DB – Rule 26 report, Bates Nos. RG000017-24 (Griswold Ex. 15) |
| 53 | 6/24/2020 | June 24, 2020 E-mail re Terry v. Wasatch, et al. - Class Action Litigation - Potential Expert Retention, Bates Nos. RG000025-28 (Griswold Ex. 8) |
| 54 | 1/28/2022 | Jan. 28, 2022 Email (2:10 p.m.) re Terry v. Wasatch - Docs for Disclosure, Bates Nos. RG000043-48 (Griswold Ex. 14) |
| 55 | 1/28/2022 | Jan. 28, 2022 (8:04 a.m.) email re Terry v. Wasatch Property Management, et al, Bates Nos. RG000049-52 (Griswold Ex. 10) |
| 56 | 1/28/2022 | Jan. 28, 2022 (7:30 a.m.) Email (and 8 attachments thereto) re Terry v. Wasatch Property Management, et al, Bates Nos. RG000053-530 (Griswold Ex. 11) |

3

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 57 | 1/27/2022 | Jan. 27, 2022 Email re Terry v. Wasatch Property Management, et al. - Expert Witness Consultation - Confidential -, Bates Nos. RG000531-33 (Griswold Ex. 9) |
| 58 | 1/28/2022 | Jan. 28, 2022 (10:05 a.m.) Email re Terry v. Wasatch - Docs for Disclosure, Bates Nos. RG000535-42 (Griswold Ex. 13) |
| 59 | 1/28/2022 | Jan. 28, 2022 (9:13 a.m.) Email re Terry v. Wasatch Documents, Bates Nos. RG000543-44 (Griswold Ex. 12) |
| 60 | 9/5/2012 | Residential Rental Agreement, Sept. 5, 2012, Bates Nos. TERRY000113-16 |
| 61 | 9/5/2012 | Additional Services Agreement, Sept. 5, 2012, Bates No. TERRY000119 |
| 62 | 3/22/2013 | D. Terry Tenant Ledger, Bates Nos. TERRY000182-87 (Terry Ex. 3 at 47-52) |
| 63 | Various | Terry Residential Rental Agreements and Additional Service Agreements 2010-2011, 2011-2012, 2012-2013; Huskey Residential Rental Agreements and Additional Services Agreements: 2011-2012, 2014-2015, Bates Nos. TERRY000191-206; TERRY000537-52; TERRY000113-26; TERRY000571- 96; TERRY000601-14 |
| 64 | 5/29/2014 | Subsidy Adjustment Notice re: R. Huskey, Bates No. TERRY000359 |
| 65 | 5/29/2014 | Subsidy Adjustment Notice re: R. Huskey, Bates No. TERRY000360 |
| 66 | 5/8/2013 | Subsidy Adjustment Notice re: R. Huskey, Bates No. TERRY000361 |
| 67 | 5/8/2013 | Subsidy Adjustment Notice re: R. Huskey, Bates No. TERRY000362 |
| 68 | 8/2/2012 | Subsidy Adjustment Notice re: R. Huskey, Bates No. TERRY000364 |
| 69 | 8/2/2012 | Subsidy Adjustment Notice re: R. Huskey, Bates No. TERRY000365 |
| 70 | 7/5/2011 | Housing Assistance Payments Contract and Lease re: R. Huskey, Bates No. TERRY000387 |
| 71 | 6/20/2011 | Terms and Conditions of Additional Services Agreement re: R. Huskey, Bates Nos. TERRY000437-38 |
| 72 | 6/30/2011 | Logan Park Community Policies, Bates Nos. TERRY000440-42 |
| 73 | 9/20/2010 | Residential Rental Agreement, Sept. 20, 2010, Bates Nos. TERRY000510-13 |
| 74 | 9/20/2010 | Additional Services Agreement, Sept. 20, 2010, Bates No. TERRY000517 |
| 75 | 8/30/2011 | Residential Rental Agreement dated Aug. 30, 2011, Bates Nos. TERRY000537-40 |
| 76 | 8/30/2011 | Additional Services Agreement, Aug. 30, 2011, Bates No. TERRY000544 |

893086.6

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 77 | 9/5/2012 | Residential Rental Agreement for D. Terry, Bates Nos. TERRY000553-66 (Raymond Ex. 3) |
| 78 | 6/30/2011 | Residential Lease Agreement, Bates Nos. TERRY000571-77 |
| 79 | 6/30/2011 | Additional Services Agreement, Bates No. TERRY000578 |
| 80 | 11/26/2014 | Residential Rental Agreement, Bates Nos. TERRY000601-07 |
| 81 | 11/23/2021 | Press Release, "Chelsea Landlord & Property Manager Agree to $80,000," Bates Nos. TERRY001141-55 |
| 82 | 4/26/2013 | Press Release, "United States Successful In False Claims Act Cases Against Landlords Charging Housing Choice Voucher Tenants Excess Rents," Bates Nos. TERRY001156-57 |
| 83 | 9/16/2015 | Press Release, "Twin City Landlords to Pay $130,000 to Resolve Alleged Section 8 Housing Assistance Violations" Sept 16, 2015; related settlement agreement, Bates Nos. TERRY001160-78 |
| 84 | 8/4/2021 | Press Release, "Tacoma Landlord Agrees to Pay $16,618 for Overcharging Homeless Veteran Tenant and Fraudulently Obtaining Federal Funds," Aug 4, 2021; related settlement agreement, Bates Nos. TERRY001179-95 |
| 85 | 3/6/2020 | Press Release, Chelsea Landlord Agrees to Settle False Claims Act Allegations," Mar. 6, 2020, Bates Nos. TERRY001196-97 |
| 86 | 6/11/2018 | Press Release, "Dorchester Landlords and Property Manager Agree to Settle False Claims Act Allegations," Jun. 11, 2018, Bates Nos. TERRY001198-99 |
| 87 | 3/7/2019 | Press Release, "FHA Program Landlord Agrees to False Claims Act Settlement," Mar. 7, 2019, Bates Nos. TERRY001200-01 |
| 88 | 9/24/2020 | Press Release, "Roxbury Landlord Agrees to Settle False Claims Act Allegations," Sept. 24, 2020, Bates Nos. TERRY001202-03 |
| 89 | 11/28/2016 | Press Release, "Sacramento Landlord Pays $75,000 to settle 'Section8' False Claims Act Allegations," Nov. 28, 2016, Bates Nos. TERRY001204-05 |
| 90 | 12/3/2020 | Press Release, "U.S. Attorney's Office Reaches Settlement Under the False Claims Act Over Allegations that Defendants Collected Excess Rent," Dec. 3, 2020, Bates Nos. TERRY001206-07 |
| 91 | 10/3/2016 | Press Release, "United States Reaches Settlement with Section 8 Landlords," Oct. 3, 2016, Bates Nos. TERRY001208-09 |
| 92 | 8/15/2018 | Press Release, "United States Resolves False Claims Act Investigation Against Landlord Charging Housing Voucher Tenants Excess Rents," Aug. 15, 2018, Bates Nos. TERRY001210-12 |
| 93 | 11/21/2019 | Housing Authority of the County of Alameda (HACA) Housing Choice Voucher Program (excerpts), Nov. 21, 2019, Bates Nos. TERRY001221-22, TERRY001543, TERRY001629, TERRY001644-45 |
| 94 | 8/18/2011 | Subsidy Adjustment Notice to D. Terry from SHRA dated Aug. 18, 2011, Bates No. TERRY00164 (Gamboa Ex. 11) |

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 95 | 2/2/2022 | Housing Authority of the County of Alameda (HACA) Housing Choice Voucher Program (excerpts), Feb. 2, 2022, Bates Nos. TERRY001886-87, TERRY002208, TERRY002294, TERRY002309-10 |
| 96 | 3/8/2023 | Housing Authority of the County of Alameda (HACA) Housing Choice Voucher Program (excerpts), Mar. 8, 2023, Bates Nos. TERRY002608-10, TERRY002923, TERRY003009, TERRY003024-25 |
| 97 | 1/1/2012 | Administrative Plan for the Housing Authority of Fresno County (excerpts), Jan. 1, 2012, Bates Nos. TERRY003407, TERRY003545, TERRY003700 |
| 98 | 1/1/2019 | Administrative Plan for the Housing Authority of Fresno County (excerpts), Jan. 1, 2019, Bates Nos. TERRY003741, TERRY003900-01, TERRY004081 |
| 99 | 1/1/2020 | Administrative Plan for the Housing Authority of Fresno County (excerpts), Jan. 1, 2020, Bates Nos. TERRY004143, TERRY004300-01, TERRY004478-79 |
| 100 | 4/3/2018 | Housing Authority of the City of Glendale's Section 8 Administrative Plan (excerpts), Apr. 3, 2018, Bates Nos. TERRY004948, TERRY005031, TERRY005046-47 |
| 101 | | Subsidy Adjustment Notice to D. Terry and cc Chesapeake Commons from SHRA dated Aug. 16, 2011, Bates No. TERRY00630 |
| 102 | 8/10/2012 | Subsidy Adjustment Notice to D. Terry and cc Chesapeake Commons from SHRA dated Aug. 10, 2012, Bates No. TERRY00631 |
| 103 | 8/10/2012 | Subsidy Adjustment Notice to Chesapeake Commons cc D. Terry from SHRA dated Aug 10, 2012, Bates No. TERRY00632 |
| 104 | 7/1/2018 | Administrative Plan: Housing Choice Voucher Program for the City of Mesa Housing Authority (excerpts), July 1, 2018 (revised), Bates Nos. TERRY007053, TERRY007356, TERRY007357, TERRY007456, TERRY007471-72 |
| 105 | 7/1/2021 | Administrative Plan: Housing Choice Voucher Program for the City of Mesa Housing Authority (excerpts), July 1, 2021 (revised), Bates Nos. TERRY008301, TERRY008608-09, TERRY008711, TERRY008727-28 |
| 106 | 7/1/2022 | Administrative Plan: Housing Choice Voucher Program for the City of Mesa Housing Authority (excerpts), July 1, 2022 (revised), Bates Nos. TERRY008942, TERRY009158-59, TERRY009230, TERRY009242-43 |
| 107 | 4/20/2006 | Administrative Plan from the Oakland Housing Authority (excerpts), Apr. 20, 2006, Bates Nos. TERRY010242, TERRY010311, TERRY010325 |

6

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 108 | 3/24/2014 | Administrative Plan from the Oakland Housing Authority (excerpts), Mar. 24, 2014 (updated), Bates Nos. TERRY010416, TERRY010713, TERRY010798, TERRY010817 |
| 109 | 2/19/2024 | Administrative Plan from the Oakland Housing Authority (excerpts), Feb. 2019 (updated & approved), Bates Nos. TERRY010964, TERRY011244, TERRY011328, TERRY011346 |
| 110 | 12/15/2021 | HCV Administrative Plan for the Oceanside Housing Authority excerpts), Dec. 15, 2021 (effective), Bates Nos. TERRY011631-32, TERRY011961, TERRY012045, TERRY012060-61 |
| 111 | 1/7/2022 | Administrative Plan for the Housing Choice Voucher Program for the Renton Housing Authority (excerpts), Jan. 7, 2022, Bates Nos. TERRY012561, TERRY012866, TERRY012950, TERRY012966-67 |
| 112 | 7/11/1905 | Housing Authority of the County of Sacramento's Administrative Plan for the Housing Choice Voucher Program (excerpts), 2019, Bates Nos. TERRY014358, TERRY014444-45, TERRY014523-24 |
| 113 | 7/14/1905 | Housing Authority of the County of Sacramento's Administrative Plan for the Housing Choice Voucher Program (excerpts), 2022, Bates Nos. TERRY014679, TERRY014769-70, TERRY014851-52 |
| 114 | 7/11/1905 | 2019 Housing Authority of the County of Salt Lake's Housing Connect – Housing Choice Voucher Administrative Plan (excerpts), Bates Nos. TERRY014984, TERRY015205-06, TERRY015271, TERRY015282-83, TERRY015357 |
| 115 | 7/15/1905 | 2023 Housing Authority of the County of Salt Lake's Housing Connect – Housing Choice Voucher Administrative Plan (excerpts), Bates Nos. TERRY015445, TERRY015699-97, TERRY015764, TERRY015777-78 |
| 116 | 6/20/2014 | San Diego Housing Commission Administrative Plan for the Section 8 Rental Assistance Program (excerpts), June 20, 2014, Bates Nos. TERRY016061, TERRY016138-39 |
| 117 | 6/15/2018 | San Diego Housing Commission Administrative Plan for the Section 8 Rental Assistance Program (excerpts), June 15, 2018, Bates Nos. TERRY016685, TERRY016765-66 |
| 118 | 9/9/2021 | San Diego Housing Commission Administrative Plan for the Section 8 Rental Assistance Program (excerpts), Sept. 9, 2021, Bates Nos. TERRY017453, TERRY017534-35 |
| 119 | 7/15/2022 | San Diego Housing Commission Administrative Plan for the Section 8 Rental Assistance Program (excerpts), July 15, 2022, Bates Nos. TERRY017714, TERRY017795-96 |
| 120 | 12/1/2017 | GAO Report To Congress, HCV Program, Dec. 2017, Bates Nos. TERRY017973-8027 |

893086.6

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 121 | 2/8/2023 | Press Release, "Holyoke Landlord Agrees to $15,000 Settlement for FCA Violations," Feb. 8, 2023, Bates Nos. TERRY018104-08 |
| 122 | 7/10/2008 | OIG Fraud Alert: Bulletin on Charging Excess Rent in Housing Choice Voucher Program, July 10, 2008, Bates Nos. TERRY018120-21 |
| 123 | | "Financial Overcharging Schemes" webpage, https://www.hudoig.gov/newsroom/video-library/financial-overcharging-schemes, Bates Nos. TERRY018122-24 |
| 124 | | Video "Financial Overcharging Schemes" https://www.hudoig.gov/newsroom/video-library/financial-overcharging-schemes, Bates No. TERRY018125 |
| 125 | 5/10/2023 | Housing Authority of the County of Alameda (HACA) Housing Choice Voucher Program (excerpts), May 10, 2023, Bates Nos. TERRY018127-28, TERRY018426-27, TERRY018508, TERRY018523-24 |
| 126 | 7/1/2023 | Administrative Plan: Housing Choice Voucher Program for the City of Mesa Housing Authority (excerpts), July 1, 2023 (revised), Bates Nos. TERRY018950, TERRY019174-75, TERRY019246, TERRY019258-59 |
| 127 | 4/11/2023 | Davis Community Housing Authority Administrative Plan for the Housing Choice Voucher Program (excerpts), Mar. 2023 (revised), Apr. 11, 2023, Bates Nos. TERRY019477, TERRY019749, TERRY019827, TERRY019843 |
| 128 | 1/1/2023 | 2023 Administrative Plan for the Housing Authority of the City of Fresno (excerpts), Jan. 1, 2023, Bates Nos. TERRY020061, TERRY020221, TERRY020431-32 |
| 129 | 1/1/2023 | Administrative Plan for the Housing Authority of Fresno County (excerpts), Jan. 1, 2023, Bates Nos. TERRY020530, TERRY020724-25, TERRY020974-75 |
| 130 | 4/23/2024 | Administrative Plan from the Oakland Housing Authority (excerpts), Apr. 2023 (updated & approved), Bates Nos. TERRY021061, TERRY021341, TERRY021426, TERRY021444-45 |
| 131 | 7/15/1905 | Housing Authority of the County of Sacramento's Administrative Plan for the Housing Choice Voucher Program (excerpts), 2023, Bates Nos. TERRY021641, TERRY021732-33, TERRY021815-16 |
| 132 | 11/27/2023 | Housing Authority of Salt Lake City's Administrative Plan for the Housing Choice Voucher Program (excerpts), Nov. 27, 2023, Bates Nos. TERRY021949, TERRY022250, TERRY022330, TERRY022346-47 |
| 133 | 6/15/2023 | San Diego Housing Commission Administrative Plan for the Section 8 Rental Assistance Program (excerpts), June 15, 2023, Bates Nos. TERRY022694, TERRY022776-77 |

893086.6

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 134 | Undated | 3 Day Notice re: D. Terry, Bates No. WAS000001 |
| 135 | 1/7/2013 | 3 Day Notice to Pay or Quit to D. Terry, Bates Nos. WAS000011-12 |
| 136 | 9/15/2012 | Residential Rental Agreement re: D. Terry, Sep. 15, 2012, Bates Nos. WAS000097-100 |
| 137 | 3/7/2013 | Statement for Additional Legal Services re D. Terry, Bates No. WAS000101 |
| 138 | 3/5/2013 | Statement for Legal Services re: D. Terry, Bates No. WAS000102 |
| 139 | 9/5/2012 | Utility Addendum re: D. Terry, Sep. 05, 2012, Bates Nos. WAS000103-04 |
| 140 | 9/5/2012 | Additional Services Agreement re: D. Terry, Bates No. WAS000105 |
| 141 | 9/5/2012 | Lease docs re: D. Terry, Sep. 05, 2012, Bates Nos. WAS000106-13 |
| 142 | 8/10/2012 | SHRA Subsidy Adjustment Notice re: D. Terry, Bates No. WAS000115 |
| 143 | 3/1/2013 | Stipulation in Settlement Chesapeake Commons v. Terry re: D. Terry, Mar. 01, 2013, Bates Nos. WAS000116-20 |
| 144 | 2/5/2013 | Three-Day Notice to Pay Rent or Quit to D. Terry, Bates No. WAS000122 (Terry Ex. 5) |
| 145 | 2/14/2013 | Resident Ledger re: D. Terry, Bates Nos. WAS000123-27 |
| 146 | 2/14/2013 | D. Terry Tenant Ledger, Bates Nos. WAS000123-27 (Terry Ex. 3) |
| 147 | | Notice to D. Terry re Eviction process, Bates No. WAS000128 (Terry Ex. 5, p. 1) |
| 148 | 12/12/2012 | Letter dated Dec. 12, 2012 from Fin. Mgr., Chesapeake Commons Apts. to D. Terry re balance owing, Bates No. WAS000129 |
| 149 | 8/18/2011 | SHRA Subsidy Adjustment Notice re: D. Terry, Bates No. WAS000130 |
| 150 | 10/20/2011 | Notice of Returned Check re: D. Terry, Bates No. WAS000131 |
| 151 | 10/20/2011 | 3 Day Notice to Pay or Quit re: D. Terry, Bates No. WAS000132 |
| 152 | 8/16/2011 | SHRA Subsidy Adjustment Notice re: D. Terry, Bates No. WAS000133 |
| 153 | 2/15/2013 | 3 Day Notice to Pay or Quit to D. Terry, Bates No. WAS000137 |
| 154 | 2/14/2013 | 60 Day Notice to Vacate Guide re: D. Terry, Feb. 14, 2013, Bates Nos. WAS000139-46 |
| 155 | Undated | Monthly Cost Breakdown re: D. Terry, Bates No. WAS000149 |
| 156 | 8/30/2011 | Residential Rental Agreement re: D. Terry, Aug. 30, 2011, Bates Nos. WAS000150-54 |
| 157 | 8/30/2011 | Utility Addendum re: D. Terry, Aug. 30, 2011, Bates Nos. WAS000155-56 |
| 158 | 8/30/2011 | Additional Services Agreement for D. Terry, Bates No. WAS000157 |

9

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 159 | 8/30/2011 | Lease Docs: Addendum A, Mold Disclosure, Pest Control Addendum, etc. re: D. Terry, Aug. 30, 2011, Bates Nos. WAS000158-65 |
| 160 | | Monthly Cost Breakdown for D. Terry, Bates No. WAS000166 |
| 161 | | Monthly Cost Breakdown for D. Terry, Bates No. WAS000168 |
| 162 | 9/20/2010 | Residential Rental Agreement re: D. Terry, Sep. 20, 2010, Bates Nos. WAS000169-73 |
| 163 | 9/20/2010 | Utility Addendum re: D.D. Terry, Sep. 20, 2010, Bates Nos. WAS000174-75 |
| 164 | 9/20/2010 | Additional Services Agreement re: D. Terry, Sep. 20, 2010, Bates Nos. WAS000176-78 |
| 165 | | Lease Docs (Addendum A, Community Policies, Safe Neighborhoods Addendum, Reference Consent Addendum, etc.) re: D. Terry, Bates Nos. WAS000179-93 |
| 166 | 9/11/2010 | Wasatch Move In Statement, Bates No. WAS000200 |
| 167 | 8/18/2010 | Wasatch Move In Statement, Bates No. WAS000201 |
| 168 | 8/2/2010 | Wasatch Move In Statement, Bates No. WAS000202 |
| 169 | 8/30/2010 | Request for Tenancy Approval docs re: D. Terry, Aug. 30, 2010, Bates Nos. WAS000206-09 |
| 170 | 9/26/2010 | HAP Contract for D. Terry, Bates No. WAS000215 |
| 171 | 10/18/2010 | SHRA Lease Supplemental Agreement re: D. Terry, Oct. 18, 2010, Bates Nos. WAS000216-17 |
| 172 | | Initial Lease 2011 (Cover Page, Quality Move In Checklist) re: R. Huskey, Bates Nos. WAS000325-26 |
| 173 | 6/30/2011 | Monthly Cost Breakdown, Bates No. WAS000327 |
| 174 | 6/30/2011 | Residential Rental Agreement re: R. Huskey, Jun. 30, 2011, Bates Nos. WAS000328-34 |
| 175 | 6/30/2011 | Additional Services Agreement, Bates No. WAS000335 |
| 176 | 6/30/2011 | LIHTC Lease Addendum re: R. Huskey, Jun. 30, 2011, Bates Nos. WAS000336-37 |
| 177 | 6/30/2011 | Terms & Conditions of Additional Services Agreement re: R. Huskey, Jun. 30, 2011, Bates Nos. WAS000338-39 |
| 178 | 6/30/2011 | Lease Documents (Addendum A, Logan Park Community Policies, Safe Neighborhoods Addendum, Reference Consent Addendum, etc.) re: R. Huskey, Jun. 30, 2011, Bates Nos. WAS000340-56 |
| 179 | 11/26/2014 | Residential Rental Agreement re: R. Huskey, Nov. 26, 2014, Bates Nos. WAS000358-64 |
| 180 | 11/26/2014 | LIHTC Lease Addendum re: R. Huskey, Nov. 26, 2014, Bates Nos. WAS000365-66 |
| 181 | 11/26/2014 | Additional Services Agreement, Bates No. WAS000367 |
| 182 | 11/26/2014 | Lease Documents (Addendum A, Logan Park Community Policies, Safe Neighborhoods Addendum, File Review Checklist) re: R. Huskey, Nov. 26, 2014, Bates Nos. WAS000368-72 |

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 183 | 7/9/2011 | SHRA HCV Program Lease Supplemental Agreement re: R. Huskey, Jul. 09, 2011, Bates Nos. WAS000374-76 |
| 184 | 7/18/2011 | HAP Contract re: R. Huskey, Jul. 18, 2011, Bates Nos. WAS000377-87 |
| 185 | 8/2/2012 | SHRA Subsidy Adjustment Notice, Bates No. WAS000388 |
| 186 | 5/8/2013 | SHRA Subsidy Adjustment Notice, Bates No. WAS000390 |
| 187 | 5/6/2013 | SHRA Subsidy Adjustment Notice, Bates No. WAS000391 |
| 188 | 5/29/2014 | SHRA Subsidy Adjustment Notice, Bates No. WAS000392 |
| 189 | 5/15/2015 | SHRA Subsidy Adjustment Notice, Bates No. WAS000394 |
| 190 | 1/29/2015 | SHRA Subsidy Adjustment Notice, Bates No. WAS000395 |
| 191 | 7/9/2011 | Lease Supplemental Agreement, Bates Nos. WAS000401-02 (Huskey Ex. 34) |
| 192 | 8/31/2011 | Letter re renters insurance, Bates No. WAS000429 |
| 193 | 6/30/2011 | Wasatch Welcome Letter, Bates No. WAS000439 |
| 194 | 5/27/2011 | Wasatch breakdown of move-in costs, includes renter's insurance, Bates No. WAS000440 |
| 195 |  | Wasatch Property Management Leadership Team, Bates Nos. WCDS 000329-46 (Johnson Ex. 2) |
| 196 | 9/6/2017 | Sep. 6, 2017 email from M. LaFollette to Promontory Point Office re August RI audit, Bates Nos. WCDS 010051-52 |
| 197 | 3/2/2016 | Mar. 2, 2016 email from C. Knowles to S. Stettler, R. Thatcher, J. Johnson re: WPM – Resume, including attachment, Bates Nos. WCDS 019301-25 |
| 198 | 3/21/2017 | Mar. 21, 2017 email from D. Halliday to K. Dao re: Updated Compliance How-Tos, including attachment #TC106 Voucher Rents, Bates Nos. WCDS 032627, WCDS 032644-47 (Johnson Ex. 10) |
| 199 | 6/5/2015 | Jun. 5, 2015 email from K. Dao to B. Mishler, J. Johnson re:, Bates Nos. WCDS 035743-46 (Johnson Ex. 11 & Johnson Ex. 12) |
| 200 | 2/1/2016 | Feb. 1, 2016 email from California Place Manager to K. Dao re: Housing Contracts, Bates No. WCDS 041154 |
| 201 | 4/28/2016 | Apr. 28, 2016 Email from D. Tanforan to B. Johnson, K. Dao, S. Fetter, J. Johnson re: Bond Units Credits, Bates No. WCDS 042227 (Jarvis Ex. 67) |
| 202 | 6/6/2015 | Jun. 6, 2015 Email from D. Tanforan to B. Johnson, K. Dao, S. Fetter, J. Johnson re: Bond Units Credits, Bates Nos. WCDS 044753-56 (Johnson Ex. 24) |
| 203 | 4/22/2019 | Apr. 22, 2019 emails from D. Wiles re: AR Summary, Bates Nos. WCDS 045916-17, WCDS 054797-98, WCDS 972167-68, WCDS 951181-83, WCDS 985185-87 (Jarvis Ex. 85; Fetter Ex. 39; Johnson Ex. 17) |
| 204 | 2/1/2016 | Feb 1, 2016 Email from K. Dao to J. Johnson re: Housing Contracts, Bates No. WCDS 056831 (Johnson Ex. 31) |

11

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 205 | 2/1/2016 | Feb. 1, 2016 email from K. Dao to J. Johnson re: Housing Contracts, with attachment, Bates Nos. WCDS 056831-32 (Dao Ex. 7, Johnson Ex. 31 & Johnson Ex. 32) |
| 206 | Apr. 2015 | HUD form HUD-60641, Bates No. WCDS 056832 (Johnson Ex. 32) |
| 207 | 6/5/2015 | June 5, 2015 email from J. Johnson to K. Dao, J. Jarvis, B. Mishler, R. Thatcher, S. Fetter, and S. Stocker re: Utah Section 8 Rent Increases, Bates No. WCDS 058075 (Jarvis Ex. 48) |
| 208 | 12/1/2017 | Dec. 1, 2017 email from J. Jarvis to S. Evans re: Garden Lofts Due Diligence and attachment entitled Wasatch Resume, Bates Nos. WCDS 060137-38, WCDS 060161-87 |
| 209 | 2/1/2016 | 2/2/16 email from K. Dao re: Housing Contracts, with attachment, Bates Nos. WCDS 063913-14 (Dao Ex. 9) |
| 210 | 2/1/2016 | Feb. 1, 2016 Emails from Chesapeake Commons Financial Re: Tenant Charges, Bates Nos. WCDS 072009-10 |
| 211 | 6/6/2015 | June 5, 2015 email from Scott Stettler [no email subject line, transmitting attachments], Bates No. WCDS 085381 (Fetter Ex. 33) |
| 212 | 5/15/2024 | May 2015 Month End Table of Contents / Agenda, Bates No. WCDS 085382 (Fetter Ex. 34) |
| 213 | 5/15/2024 | Ancillary Revenue Review, May 2015, Bates Nos. WCDS 085404-06 (Fetter Ex. 35) |
| 214 | 5/2/2016 | May 2, 201 email from D. Tanforan Re: Washers Dryers and Parking Chesapeake, Bates No. WCDS 090154 |
| 215 | 2/1/2016 | Feb. 1, 2016 Email from Katie Dao re: Tenant Charges, Bates Nos. WCDS 090168-70 (Dao Ex. 10) |
| 216 | 12/12/2011 | Dec. 12, 2011 email from S. Stettler to B. Mishler re: Updated Budget summary, Bates Nos. WCDS 099711-16 (Mishler Ex. 2) |
| 217 | 5/4/2016 | May 4, 2016 email from Dave Tanforan to J. Johnson, K. Dao re: Washers Dryers and Parking Chesapeake, Bates Nos. WCDS 106748-50 (Johnson Ex. 21) |
| 218 | 1/29/2020 | Jan. 29, 2020 email from I. Furrow to T. Sullins, Bates Nos. WCDS 1138229-31 (Jarvis Ex. 28) |
| 219 | 9/16/2019 | Email from H. Palutke to T. Raymond, re: Terry et al v. Wasatch Advantage Group, LLC et al,, Bates Nos. WCDS 116461-63 |
| 220 | 2/10/2016 | Feb. 10, 2016 letter from T. Raymond to V. Tenerelli re: Investigation of Wasatch, Bates Nos. WCDS 1165354-55 (Johnson Ex. 9) |
| 221 | 4/26/2016 | Apr. 26, 2016 email from T. Raymond to J. Johnson and others re: Qui Tam Case Review, Bates Nos. WCDS 1165467-70 (Raymond Ex. 6, Johnson Ex. 42) |
| 222 | 5/2/2016 | May 2, 2016 email from R. Funk to J. Johnson re: Qui Tam Case Review, Bates Nos. WCDS 1165471-73 (Johnson Ex. 43) |

893086.6

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 223 | 2/10/2016 | Feb 10, 2016 email from R. Funk to T. Raymond re: Huskey Scans and attachment, Bates Nos. WCDS 1165517-20 |
| 224 | 2/10/2016 | Feb. 10, 2016 email from T. Raymond to J. Johnson re: Huskey Scans, with attachment, Bates Nos. WCDS 1165521-24 |
| 225 | 7/3/2016 | July 3, 2016 letter from Phillip A. Talbert, Assistant. U.S. Attorney re: U.S. ex rel. Terry v. Wasatch, No. 2:15-cv-0799 KJM-AC (E.D.C.A.), Bates No. WCDS 1165738 (Raymond Ex. 5) |
| 226 | 2/8/2019 | Feb. 8, 2019 from Tyler J. Raymond re: Summary, Bates Nos. WCDS 1165870-72 (Raymond Ex. 15) |
| 227 | 1/28/2019 | Jan. 28, 2019 email from Marc Treitler re: Case of importance for CAA and NAA, Bates Nos. WCDS 1165987-94 (Raymond Ex. 8) |
| 228 | 9/10/2019 | Email from T. Raymond to M. Treitler, including selected attachments, Bates Nos. WCDS 1166266-80 (Johnson Ex. 45, Raymond Ex. 9) |
| 229 | 9/19/2019 | Sept. 19, 2019 email from Tyler J. Raymond re: Terry et al v. Wasatch Advantage Group, LIC et al; 2:15cv0799-KJM-DB, Bates No. WCDS 1166404 (Raymond Ex. 10) |
| 230 | 9/13/2019 | Sept. 13, 2019 email from T. Raymond to CAA re: Terry et al v. Wasatch Advantage Group, and excerpt of attachment, Bates Nos. WCDS 1166404-08 |
| 231 | 9/17/2019 | Sept. 17, 2019 email from L. Baker to T. Raymond re: Wasatch Property: Additional Service Agreements, Bates Nos. WCDS 1166464-69 (Raymond Ex. 11) |
| 232 | 2/9/2016 | Feb. 9, 2016 Email from T. Raymond re: Huskey Scans, Bates Nos. WCDS 1166470-72 (Raymond Ex. 2) |
| 233 | 9/17/2019 | Sept. 17, 2019 email from L. Baker to T. Raymond re: Wasatch Property: Additional Service Agreements, Bates Nos. WCDS 1167041-46 |
| 234 | 2/25/2019 | Feb. 25, 2019 memo from J. Johnson to California Apartment Association re: Potential Industry Impact of Terry et al v. Wasatch Advantage Group, LLC et al, Bates Nos. WCDS 1167051-59 (Jarvis Ex. 62) |
| 235 | 2/1/2016 | Feb. 1, 2016 email from Logan Park Leasing re: Tenant Charges, Bates Nos. WCDS 117470-71 (Dao Ex. 8) |
| 236 | 5/18/2017 | May 18, 2017 email from Debi Baker re: ** Rent Increases - Section 8 Participates**, Bates No. WCDS 121750 (Jarvis Ex. 49) |
| 237 | 9/24/2015 | Sept. 24, 2015 email from California Place Manager re: Available Units, Bates No. WCDS 1230295 |
| 238 | 4/28/2016 | Apr. 28, 2016 Email from D. Tanforan to Chesapeake Commons Managers re: Bond Units Credits, including attachments, Bates Nos. WCDS 1238213-318 |

13

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 239 | Various | Various emails re: parking at Promontory Point Apartments, Bates Nos. WCDS 1238688-89; WCDS 1455768; WCDS 1450295-98; WCDS 1433035-37; WCDS 1337751-57; WCDS 1313136-38; WCDS 1309940; WCDS 1242865-66 |
| 240 | 12/8/2016 | Dec. 8, 2016 Email from Chesapeake Commons Manager re: Questions from Review, Bates No. WCDS 1313059 |
| 241 | 2/1/2016 | Feb. 1, 2016 email from K. Dao to Cal. Place Manager re: Property Charges with attachment, Bates Nos. WCDS 1318066-68 |
| 242 | 7/4/2015 | 7/14/15 Quote for apartment at California Place, Bates No. WCDS 1327498 |
| 243 | 3/23/2017 | Mar. 23, 2017 email from D. Tanforan to J. Johnson re: Additional Services Sacramento, Bates Nos. WCDS 1472358-59 |
| 244 | 4/14/2016 | Apr. 14, 2016 email from M. Clegg to K. Dao re: California Place Audit and attachment, Bates Nos. WCDS 1480558-59 |
| 245 | 4/19/2016 | Apr. 19, 2016 email from K. Dao to D. Tanforan and J. Johnson re: Cal Place & Bent Tree, Bates Nos. WCDS 1480608-10 |
| 246 | 2/1/2016 | Feb. 1, 2016 email from Chesapeake Commons Financial Manager to K. Dao re: Housing Contracts, Bates No. WCDS 226679 |
| 247 | 2/1/2016 | Feb. 1, 2016 Email from Sun Valley Manager to K. Dao, Bates Nos. WCDS 229769-71 (Johnson Ex. 39) |
| 248 | 2/1/2016 | Feb. 1, 2016 email from K. Dao to Cal. Place Manager re: Property Charges with attachment, Bates Nos. WCDS 229772-74 |
| 249 | 2/1/2016 | Feb. 1, 2016 email from L. Tabler (Chesapeake Commons Financial) to K. Dao, J. Johnson, Chesapeake Commons Manager, Subject: Tenant Charges, 2/1/16, Bates Nos. WCDS 234861-62 (Jarvis Ex. 64) |
| 250 | 6/13/2016 | Jun. 13, 2016 email from Florentine Villas Manager, re: All company totals May 2016, Bates Nos. WCDS 236481-82 (Jarvis Ex. 38) |
| 251 | 9/17/2010 | Sep. 17, 2010 email from B. Mishler to Area Leaders and other WPM staff re: Best Practice Call Minutes 9/16/10, Bates Nos. WCDS 264403-06 (Mishler Ex. 5) |
| 252 | 3/24/2017 | Mar. 24, 2017 email from L. Levanger to J. Johnson re: PEER including attachment "Financial Training Notes Outline", Bates Nos. WCDS 265415-16, WCDS 265420-21 |
| 253 | 9/16/2011 | Sept. 16, 2011 email from Reese Thatcher re: Renters Insurance on Tax Credit/ Important!!!, Bates Nos. WCDS 288818-19 (Jarvis Ex. 33) |
| 254 | 2/1/2016 | Feb. 1, 2016 Email from K. Dao to Logan Park Leasing re: tenant Charges, Bates Nos. WCDS 300625-26 (Jarvis Ex. 66) |
| 255 | 8/12/2014 | Aug. 12, 2014 email from C. Knowles to S. Stettler re: Month End, including attachment, Bates Nos. WCDS 312817-944 |

14

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 256 | 10/15/2020 | Oct. 15, 2020 email from Lofts Financial Manager to RentDynamics employee re: Media Package Question, Bates Nos. WCDS 3207359-61 |
| 257 | 2/23/2017 | Feb. 23, 2017 Email from S. Settler re: RentPlus Report, Bates Nos. WCDS 327944-45 |
| 258 | 2/1/2016 | Feb. 1, 2016 email from California Place Manager to K. Dao re: Tenant Charges, Bates Nos. WCDS 329050-51 (Jarvis Ex. 65) |
| 259 | 12/17/2019 | Housing Authority of Maricopa County Section 8 Voucher Program - Notice of Change, Bates No. WCDS 3343900 |
| 260 | 11/30/2020 | Email chain re Alicia Lee lease renewal, Bates Nos. WCDS 3440369-70 |
| 261 | 11/24/2020 | Housing Authority notice of change in lease and contract, Bates No. WCDS 3440371 |
| 262 | 11/28/2020 | Email chain re Alicia Lee lease renewal, Bates Nos. WCDS 3452610-11 |
| 263 | 2/26/2021 | Feb. 26, 2021 Email from J. Britton re: Florentine Villas Past Due Account, Bates Nos. WCDS 3452785-86 |
| 264 | Undated | Renters' Insurance Requirement Change, Bates No. WCDS 387429 (Johnson Ex. 26) |
| 265 | 11/22/2011 | Nov. 22, 2011 email from R. Hansch to B. Mishler, J. Johnson, and S. Stettler re Wasatch-debulks in Fresno, Bates Nos. WCDS 397714-15 (Johnson Ex. 5) |
| 266 | 11/22/2011 | Nov. 22, 2011 Email from W. Smith to R. Hansch, B. Mishler, S. Stettler, J. Johnson re: Fresno Comcast Bulk Agreement, Bates Nos. WCDS 406006-07 (Johnson Ex. 6) |
| 267 | Undated | Katie Dao - Compliance Director biography, Bates No. WCDS 441746 (Dao Ex. 2) |
| 268 | 2/1/2016 | Feb. 1, 2016 email from K. Dao to Cal. Place Manager and Chesapeake Commons Financial Re: Housing Contracts, Bates Nos. WCDS 519136-37 |
| 269 | 2/1/2016 | Feb. 2, 2016 email from J. Johnson to K. Dao re: Housing Contracts, Bates Nos. WCDS 521498-99 (Johnson Ex. 33) |
| 270 | 5/5/2015 | May 5, 2015 Email from K. Dao re: Section 8 Residents, Bates No. WCDS 547526 (Dao Ex. 3) |
| 271 | 2/13/2019 | Feb. 13, 2019 email from Rikki Hemsley to "All Managers" and "All Financial" re: Financial Forum, including attachment Rent Collection Best Practices How-To, Bates Nos. WCDS 551576-83 (Johnson Ex. 16) |
| 272 | 2/13/2019 | Feb. 13, 2019 email from Rikki Hemsley to "All Managers" and "All Financial" re: Financial Forum, and attachment, Bates Nos. WCDS 551576-83 (Jarvis Ex. 81, Johnson Ex. 16) |
| 273 | 5/29/2015 | May 29, 2015 email from B. Mishler to K. Dao, J. Johnson re: Utah – Section 8, Bates No. WCDS 565328 (Jarvis Ex. 47) |

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 274 | 2/1/2016 | Feb. 1, 2016 email from R. Thatcher re: Investigation by DOJ of imposed charges on properties, Bates Nos. WCDS 640758-59 (Dao Ex. 6) |
| 275 | 2/6/2018 | Feb. 6, 2018 email from B. Stewart to S. Gonzalez, Bates Nos. WCDS 654056-59 (Jarvis Ex. 27) |
| 276 | 4/28/2016 | Apr. 28, 2016 email from B. Johnson to K. Dao, D. Tanforan, and J. Johnson re: Bond Units Credits, Bates Nos. WCDS 682424-26 |
| 277 | 4/28/2016 | Spreadsheet, Bates No. WCDS 682529 (Jarvis Ex. 68) |
| 278 | 12/5/2015 | December 5, 2015 email from M. LaFollette to Canyon Club Office re: November RI audit, Bates Nos. WCDS 719978-79 |
| 279 | Undated | Renters Insurance Is Mandatory !!!!, Bates No. WCDS 791693 (Jarvis Ex. 30) |
| 280 | 6/5/2020 | Jun. 5, 2020 email from Devonshire Manager attaching draft FAQ re: Xfinity package, Bates Nos. WCDS 856225-26 |
| 281 | 2/20/2019 | Feb. 20, 2019 email from J. Miller to K. Manduca, J.B. Johnson, and Z. Haycock re: Devonshire Bulk, with attachment, Bates Nos. WCDS 876414-17 (Jarvis Ex. 24, Jarvis Ex. 25) |
| 282 | 11/30/2020 | Email chain re Alicia Lee lease renewal re: Alicia Lee, Nov. 30, 2020, Bates Nos. WCDS3340369-70 |
| 283 | 9/3/2020 | Residential Rental Agreement, W9, Request for Tenancy Approval, Voucher re: Kassandra Olvera, Sep. 03, 2020, Bates Nos. WCDS3440203-22 |
| 284 | 9/3/2020 | Residential Rental Agreement, W9, Voucher form re: Kassandra Olvera, Sep. 03, 2020, Bates Nos. WCDS3440226-46 |
| 285 | 10/27/2020 | lease and utilities and appliances section of hap contract re: Kassandra Olvera, Oct. 27, 2020, Bates Nos. WCDS3440250-51 |
| 286 | 10/23/2020 | Residential Rental Agreement re: Kassandra Olvera, Oct. 23, 2020, Bates Nos. WCDS3440302-19 |
| 287 | 9/25/2015 | HAP contract re: Kassandra Olvera, Sep. 25, 2015, Bates Nos. WCDS3440322-33 |
| 288 | 11/28/2020 | Email chain re Alicia Lee lease renewal re: Alicia Lee, Nov. 28, 2020, Bates Nos. WCDS3452610-11 |
| 289 | 2/26/2021 | Final Notice of Account Balance re: Penny Paxman, Feb. 26, 2021, Bates Nos. WCDS3452785-86 |
| 290 | 4/25/2016 | Apr. 25, 2016 email from M. Tran re: Chesapeake Commons tenant issue, Bates Nos. WEAU00005586-89 (Dao Ex. 4) |
| 291 | 4/16/2024 | Apr. 15, 2016 email from M. Tran re: Bond Rents, Bates Nos. WEAU00011197-200 (Dao Ex. 5) |
| 292 | 3/20/2006 | Completing the Delinquency Tracker, Bates Nos. WTM000098-99 (Fetter Ex. 23) |
| 293 | 5/1/2021 | Invoice for Payment of Non-Rent Amounts From Renton, WA May/June 2021, Bates No. WTM000109 (Fetter Ex. 29, Fetter Ex. 30) |

16

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 294 | Various | Compilation of sample move-in cost forms, Bates Nos. AP000080, CY006662, CV000004, PST000063, CP000218, AP000078, CY032954, CV000439, PST003915, CY032794 (Fetter Ex. 41), and OP000179; BR002415 |
| 295 | Various | Collection of eviction notices including rent and additional service fees from produced tenant files (2017 and earlier), Bates Nos. AP000756-66, CPC034205-24, SVT008140-48. |
| 296 | Various | Exemplars of HAP Contract Part A excerpts related to undisclosed washer and dryer charges (Ex. 44 to Bellows Decl. in Supp. Mot. Part. Summ. J., Apr. 22, 2022, ECF No. 252-4), Bates Nos. AZ000162, RM000177-78, ENCLAVE000183-84, RM000305-06, ENCLAVE000307-08, CR000433-34, ENCLAVE000543-44, AV000655-56, PP000682-84, AV000828-29, JPT001506-15, BR002111-12, CAP002158-59, JPT002233-34, BWT002393-95, WEAU005214-15, CAP009788-89, CP0011482-83, AZ0011625, BT012741-42, WEAU00017340-41, WEAU00019492-93, CPC026303-04, WEAU00027536-37, WEAU00027683-84, WEAU00028163-64, WCDS 625193-95, WCDS 1201234-35, WCDS 1277757-58, WCDS 1451231-32 |
| 297 | Various | Compilation of sample Monthly Cost Breakdowns, Bates Nos. BU000353, BU000051, CP00123, CP000225, CV00359, CV005562, MP000479, RO000243, CV005562, R0000243, CP000225, CY033033, CV000359, CP000123, CY032854 |
| 298 | Various | Collection of Pay or Quit Notices from Arizona, Bates Nos. CM000560, RS007132, SA002852, SA003447, AZ000324, RS000370 (Fetter Ex. 28) |
| 299 | Various | Compilation of sample Residential Rental Agreements, Bates Nos. CP000219-23, AV000110-13, CV000535-38, BR000914-18, CP000308-12, MP000052-56, CP000124-28, CV000473-77, RS000071-74, CV000412-16, MP000174-77, CP000263-67, CPC021026-32, WEAU000003566-71, WEAU00035557-61, WCDS0984056-60, LPT000030-36, ENCLAVE000922-28, WEAU00008976-97, BT000107-10, WEAU00000242-60, BT004691-97 |
| 300 | Various | Compilation of sample Housing Assistance Payment Contracts, Bates Nos. CP000688-97, WEAU00000464-75, WEAU00016124-35, WCDS625193-204, WEAU00020649-60, WCDS 1496403-15 |
| 301 | Various | Collection of Consent Forms, Bates Nos. CY032916, CV000011, AP000248, CP000462 (Fetter Ex. 36) |
| 302 | Various | Collection of Three Day Notices to Pay or Vacate from Utah, Bates Nos. ENCLAVE001784, CR001579, SPW004951, SPW002008 (Fetter Ex. 27) |

17

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 303 | Various | Compilation of sample Renewal Notification Letters, Bates Nos. MP000010, BR002219, BR001861, CM003333, RP00376, WAS000919, CR004671, WAS000595, CP014105, CM004363, CM000116 |
| 304 | Various | Compilation of sample Monthly Statement of Rental Account, Bates Nos. MP000723, CR005364, CM000404, BR001475, CV003647, CV005614, CR002390 |
| 305 | Various | Collection of 10-Day Notices to Comply with Lease or Quit Premises, Bates Nos. MP000819, MP000665, MP000119, BU000107 (Fetter Ex. 26) |
| 306 | | Compilation of sample Additional Service Agreements, Bates Nos. AZ003410, AZ003548, RW000204-06, BR000921-23, CP000045-47, CPC000300, RW000160, ENCLAVE000929, MP000180, FALLS00142, WEAU00000249, WEAU00035564, WCDS0984063, WEAU00008084 |
| 307 | Various | Compilation of eviction notices for unpaid additional service fees (Nov. 2022 and later), Bates Nos. TDN000004-000006, TDN000015-000018, TDN000028-000039, TDN000055-000056, TDN000075, TDN000142, TDN000143-45 TDN000159, TDN000160-000161 (Jarvis Ex. 82, Jarvis Ex. 83, Jarvis Ex. 84) |
| 308 | Various | Compilation of Additional Services Agreements for J. Bass, B. Lambert, R. Lewis, C. McKoy, D. Williams, V. Yevdich, A. Mitchell, J. Goodspeed, R. Bennett, N. Pace, A. Chinhugh, S. Cordodor, V. Pierce-Swift, K. Shea, V. Rubio, J. Archibeque, A. Crookston, K. Laing, A. Nissi-Saphir, L. Bond, E. Lowe, H. Amir, M. McArthur, L. Fambrough, A. Lihovidov, N. Bilikas, C. Clark, C. Charns, J. Padilla, and S. Aguilar |
| 309 | | Compilation of eviction notices for unpaid additional service fees from produced tenant files (2017 and earlier), Bates Nos. listed on attached Ex. 1 |
| 310 | Various | Various leasing emails re: media charges at Broadmoor Apartments, Bates Nos.WCDS 849872-7, WCDS 881460, WCDS 1316551-54; WCDS 1316613; WCDS 1352286, WCDS 1415513; WCDS 1419438-40; WCDS 1419791 |
| 311 | Various | Compilation of Arcadia emails related to washers and dryer, Bates Nos. WCDS 1138229-31, WCDS 1177243-44, WCDS 1191263, WCDS 1198076-77, WCDS 1207501, WCDS 1245478-84, WCDS 1246154-55, WCDS 1253238, WCDS 1277723, WCDS 1309799-801, WCDS 1312510-11, WCDS 1323621-22 |

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 312 | Various | Compilation of Florentine Villas emails related to washers and dryers, Bates Nos. WCDS 1227572-73, WCDS 1244817-18, WCDS 1309967-68, WCDS 1309969-70, WCDS 1319495-96, WCDS 1320574-75, WCDS 1325871, WCDS 1332187, WCDS 1340402-04, WCDS 1351647-48, WCDS 1351692-93, WCDS 1357687-88, WCDS 1360286-87, WCDS 1361709-10, WCDS 1361848-49, WCDS 1367971-72, WCDS 1459476 |
| 313 | Various | Collection of Manager Bonus Worksheets, Bates Nos. WCDS 653356-60 (Jarvis Ex. 34) |
| 314 | Various | Collection of emails from Mary LaFollette re: various monthly RI audits, Bates Nos. WCDS 780066-67, WCDS 834752-53, WCDS 753689-90, WCDS 836304-05, WCDS 284249-50, WCDS 318363-64, WCDS 369135-36, WCDS 818313-14, WCDS 751581-82, WCDS 593405-06, WCDS 838747-48, WCDS 750884-85, WCDS 791691-93, WCDS 364368-70, WCDS 290120-21, WCDS 811625-26, WCDS 293589-90, WCDS 751558-59, WCDS 379830-31, WCDS 807958-59, WCDS 290122-23, WCDS 158281-82, WCDS 761906-07, WCDS 835596-97, WCDS 394680-81, WCDS 779720-21, WCDS 806491-92, WCDS 780526-27, WCDS 838306-07, WCDS 834750-51 (Jarvis Ex. 31) |
| 315 | Various | Compilation of emails between Wasatch and local housing agencies, Bates Nos. WEAU00000271-96, WEAU00002454-63, WEAU00002837-41, WEAU00007611-16, WEAU00008961-70, WEAU00018899-907, WEAU00021435-43, WEAU00023246-52, WEAU00026269-77, WEAU00031321-28 |
| 316 | 10/1/2021 | Subpoena To Testify at a Deposition in a Civil Action to Katie Dao (Dao Ex. 1) |
| 317 | 7/28/2017 | Notice of Taking Deposition Pursuant to FRCP 30 with Request for Production of Documents (Fetter Ex. 1) |
| 318 | 10/11/2021 | Second Am. Notice of Dep. (Shawn Fetter) (Fetter Ex. 21) |
| 319 | Undated | Is renters insurance required? (Fetter Ex. 3) |
| 320 | 1/28/2022 | Defs.' Disclosure of Expert Test. Pursuant to Fed. R. Civ. P. 26(a)(2), Jan. 28, 2022 (Griswold Ex. 1) |
| 321 | 1/28/2022 | Jan. 28, 2022 Letter from R. Griswold to J. Salazar and R. Matthews re Terry v. Wasatch Property Management, et al; Case No. 2:15-cv-00799-KJM-.DB - Rule 26 (Griswold Ex. 17) |
| 322 | 2/3/2022 | Subpoena to Produce Docs., Info., or Objects or to Permit Inspection of Premises Civ. Action to Robert S. Griswold, Feb. 3, 2022 (Griswold Ex. 5) |
| 323 | 2/11/2022 | Robert Griswold's Resp. to Pls.' Subpoena Documents Pursuant to Fed. R. Civ. P. 45, Feb. 11, 2022 (Griswold Ex. 6) |
| 324 | 3/3/2022 | Inman Real Estate News for Realtors & Brokers (Griswold Ex. 22) |

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 325 | 3/3/2022 | Inman Real Estate News for Realtors & Brokers Section 8 (Griswold Ex. 23) |
| 326 | 3/15/2022 | Subpoena to Testify at a Deposition in Civil Action to Robert S. Griswold, Mar. 15, 2022 (Griswold Ex. 2) |
| 327 | Undated | List of Robert Griswold Deposition and Trial testimony (Griswold Ex. 3) |
| 328 | Undated | Register of Experts Directory, Robert S. Griswold (Griswold Ex. 4) |
| 329 | Undated | R. Griswold Curriculum Vitae (Griswold Ex. 19) |
| 330 | | Robert Griswold Terms of Engagement, Rev. 1/1/22 (Griswold Ex. 16) |
| 331 | | R.S. Griswold, Property Management Kit for Dummies (4th ed.) (Griswold Ex. 20) |
| 332 | | L. Harmon & R.S. Griswold, Landlords Legal Kit for Dummies (Griswold Ex. 21) |
| 333 | 7/28/2017 | Notice of Taking Deposition Pursuant to FRCP 30 with Request for Production of Documents (Jarvis Ex. 1) |
| 334 | 8/20/2021 | Notice of Deposition of Defendants Wasatch Advantage Group, LLC, Wasatch Property Management, Inc., and Wasatch Pool Holdings, LLC Pursuant to Federal 11 Rule of Civil Procedure 30(b)(6); Notice of Deposition of Janae Jarvis (Jarvis Ex. 23) |
| 335 | 3/20/2023 | Spreadsheet: Data_ChargeCodeMappingPayOrder (Payment Sequence) 032023 (Jarvis Ex. 73) |
| 336 | 5/5/2023 | Plaintiffs' Amended Notice of Date and Time For Federal Rule Of Civil Procedure 30(b)(6) Corporate Deposition(s) of Defendants (Selected Damages Topics) (Jarvis Ex. 69) |
| 337 | Various | Metropolitan Collection, Happy Holidays! Here is a Gift from Us to You! and Renewal Notification to Elena Galura (Jarvis Ex. 17) |
| 338 | | YVS207.02 – "Payment Sequence" for Receipting Payments (Jarvis Ex. 3, Johnson Ex. 13) |
| 339 | 1/29/2016 | Letter from V. Tennerelli (Johnson Ex. 8) |
| 340 | 7/21/2017 | Order on Defendants' Motion to Dismiss, ECF No. 61 (Johnson Ex. 25) |
| 341 | 9/8/2017 | Johnson Decl. in Supp. of Defs.' Opp'n to Mot. for Class Certification, Sept. 8, 2017, ECF No. 78-4 (Johnson Ex. 14) |
| 342 | 5/26/2023 | Plaintiffs' Notice of Federal Rule of Civil Procedure 30(b)(6) Corporate Depositions of Defendants (Damages Topics), May 26, 2023 (Johnson Ex. 69) |
| 343 | Aug. 2009 | Housing Assistance Payments Contract (HAP Contract), Aug. 2009 (Johnson Ex. 3) |
| 344 | 10/11/2021 | Plaintiffs' Notice of Deposition of Tyler Raymond (Raymond Ex. 1) |

20

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 345 | 10/22/2021 | Subpoena to Produce Documents Information, or Objects or to Permit Inspection of Premises in a Civil Action, Oct. 22, 2021 (Scharlach Ex. 2) |
| 346 | 7/28/2017 | Notice of Taking Deposition Pursuant to FRCP 30 with Request for Production of Documents, Jul. 28, 2017 (Tanforan Ex. 1) |
| 347 | 8/6/2017 | Aug. 6, 2017 Email from J. Newmark re: Is Renters Insurance Required, (Tanforan Ex. 2) |
| 348 | 7/9/1905 | Housing Authority of the County of Sacramento's Administrative Plan for the Housing Choice Voucher Program (excerpts), 2017 (Fox Ex. 32) |
| 349 | 1/1/2017 | Administrative Plan for the Housing Authority of Fresno County (excerpts), Jan. 1, 2017 (Cavey Ex. 5) |
| 350 | 7/20/2023 | Expert Report of MaryAnn Russ with exhibits, July 20, 2023 |
| 351 | | Data_ChargeCodeMappingPayOrder(Payment_Sequence)032023 |
| 352 | | Data01_TenantwithHAPandOther_032723 |
| 353 | | Data03_PropertyInfo_032723 |
| 354 | | Data04_TenantLeaseCharges_032723 |
| 355 | | Data21_ChargeTypeAnalysis02092022 |
| 356 | | Data21_ChargeTypeAnalysis_Data_Defeinitions |
| 357 | | Data21_ChargeTypeAnalysis_07.18.2023 |
| 358 | | Excerpt of Data1_TenantswithHAPandOther_082721.csv related to undisclosed washer and dryer charges (Exhibit 45 to Bellows Decl. in Supp. Mot. Part. Summ. J., Apr. 22, 2022, ECF No. 252-5) |
| 359 | | Housing Authority of the County of Alameda (HACA) Housing Choice Voucher Program (excerpts), Jul. 24, 2017 (Rizzo-Shuman Ex 14) |
| 360 | | Tenant ledger for Abraham Sheriff (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 361 | | Tenant ledger for Alicia Lee (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 362 | | Tenant ledger for Ashley Mays (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 363 | | Tenant ledger for Bobby Hanselman (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 364 | | Tenant ledger for Brittney Bryson (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 365 | | Tenant ledger for Charles Crooks (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 366 | | Tenant ledger for Christopher Toney (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 367 | | Tenant ledger for Damon Weathersby (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 368 | | Tenant ledger for Dana Davis-Lobo (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 369 | | Tenant ledger for Denise Higgins (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 370 | | Tenant ledger for Edward Mcilroy (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 371 | | Tenant ledger for Elizabeth Brooks (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 372 | | Tenant ledger for Frances Crawley (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 373 | | Tenant ledger for James Walton (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 374 | | Tenant ledger for Jamila Meadors (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 375 | | Tenant ledger for Jerame Carter (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 376 | | Tenant ledger for Jerame Carter (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 377 | | Tenant ledger for Kassandra Olvera (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 378 | | Tenant ledger for Marsha Young (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 379 | | Tenant ledger for Maureen Stevens (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 380 | | Tenant ledger for Mike Cremer (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 381 | | Tenant ledger for Patricia Henderson (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 382 | | Tenant ledger for Penny Paxman (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 383 | | Tenant ledger for Tania Borjas (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 384 | | Tenant ledger for Timothy Naerebout (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 385 | | Tenant ledger for Vicky Lynn Teista (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 386 | | Tenant ledger for Violet Rubio (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 387 | | Tenant ledger for Wendy Cottingham (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 388 | | Tenant ledger for Zakiyiah Smith (excerpt of Data5 files produced by Fitech Gelb on July 14, 2023) |
| 389 | | Summary of tenant ledger files (Data05, produced by Fitech Gelb on July 14, 2023) |

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 390 | | Breshears, Feb. 25, 2022 Expert Report, without exhibits ("Breshears Feb. 25, 2022 Report) |
| 391 | | Tables summarizing percentage enrollment in selected charges at selected properties as disclosed in Breshears Feb. 25, 2022 Report |
| 392 | | Chart re cable charges at Courtyard at Central Park (Breshears Feb 25, 2022 Report Ex. B.1) |
| 393 | | Chart re cable charges at Landing at Fancher Creek (Breshears Feb 25, 2022 Report Ex. B.2) |
| 394 | | Chart re cable charges at River Oaks (Breshears Feb 25, 2022 Report Ex. B.3) |
| 395 | | Chart re: washer and dryer charges at Chesapeake Commons (Breshears Feb 25, 2022 Report Ex. B.4) |
| 396 | | Chart re: parking charges at Chesapeake Commons (Breshears Feb 25, 2022 Report Ex. B.5) |
| 397 | | Chart re: washer and dryer charges at California Place (Breshears Feb 25, 2022 Report Ex. B.6) |
| 398 | | Chart re: washer and dryer charges at Logan Park (Breshears Feb 25, 2022 Report Ex. B.7) |
| 399 | | Chart re: parking charges at Crossroads Apartments (Breshears Feb 25, 2022 Report Ex. B.9) |
| 400 | | Chart re: parking charges at Promontory Point Apartments (Breshears Feb 25, 2022 Report Ex. B.10) |
| 401 | | Chart re: cable charges at Broadmoor Village Apartments (Breshears Feb 25, 2022 Report Ex. B.15) |
| 402 | | Chart re: cable charges at Canyon Ridge Apartments (Breshears Feb 25, 2022 Report Ex. B.15) |
| 403 | | Chart re: cable charges at Devonshire Court East (Breshears Feb 25, 2022 Report Ex. B.18) |
| 404 | | Chart re: cable charges at Devonshire Court East (Breshears Feb 25, 2022 Report Ex. B.19) |
| 405 | | Chart re: cable charges at Falls at Hunters Pointe (Breshears Feb 25, 2022 Report Ex. B.20) |
| 406 | | Chart re: cable charges at Goldstone (Breshears Feb 25, 2022 Report Ex. B.21) |
| 407 | | Chart re: cable charges at Lofts at 7800 (Breshears Feb 25, 2022 Report Ex. B.22) |
| 408 | | Chart re: cable charges at Metropolitan Place Apartments (Breshears Feb 25, 2022 Report Ex. B.23) |
| 409 | | Chart re: cable charges at Rio Seco (Breshears Feb 25, 2022 Report Ex. B.24) |
| 410 | | Summary of Section 8 and non-Section 8 Tenant Months with ASA Charges by Property and Tenant Month (Breshears Feb 25, 2022 Report Ex. C) |

893086.6

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 411 | | Breshears July 20, 2023 Report |
| 412 | | Breshears curriculum vitae (Breshears July 20, 2023 Report Ex. A) |
| 413 | | Appendix to Breshears July 20, 2023 Report |
| 414 | | Calculations Related to Section 8 Tenants Who Paid Required Renters' Insurance Payments from February 2006 through November 2020 (Breshears July 20, 2023 Report Ex. 6) |
| 415 | | Calculations Related to Section 8 Tenants Who Paid Required Renters' Insurance Payments from November 2011 through November 2020 (Breshears July 20, 2023 Report Ex. 7) |
| 416 | | Calculations Related to Section 8 Tenants Who Paid Washer/Dryer Charges from February 2006 through June 2019 (Breshears July 20, 2023 Report Ex. 8) |
| 417 | | Calculations Related to Section 8 Tenants Who Paid Washer/Dryer Charges from August 2017 through June 2019 (Breshears July 20, 2023 Report Ex. 9) |
| 418 | | Mandatory Media Package Payments from Month of February 2006 through Month of December 2022 (Breshears July 20, 2023 Report Ex. 9) |
| 419 | | Mandatory Washer/Dryer Rental Payments from Month of February 2006 through month of December 2022 (Breshears July 20, 2023 Report Ex. 11) |
| 420 | | Mandatory Parking-Related Payments from Month of February 2006 through Month of December 2022 (Breshears July 20, 2023 Report Ex. 12) |
| 421 | | Mandatory Media Package Payments from Month of December 2011 through Month of December 2022 (Breshears July 20, 2023 Report Ex. 13) |
| 422 | | Mandatory Washer/Dryer Rental Payments from Month of December 2011 through Month of December 2022 (Breshears July 20, 2023 Report Ex. 14) |
| 423 | | Mandatory Parking-Related Payments from Month of December 2011 through Month of December 2022 (Breshears July 20, 2023 Report Ex. 15) |
| 424 | | Tables summarizing Breshears' calculations related to Section 8 tenants paying additional service charges and corresponding housing assistance payments to Defendants as disclosed in Breshears July 20, 2023 Report |
| 425 | 4/1/2023 | HAP Contract and Tenancy Addendum (HUD form 52641), https://www.hud.gov/sites/dfiles/OCHCO/documents/52641.pdf |
| 426 | Undated | Russ Curriculum Vitae |
| 427 | 5/13/2022 | Gelb Decl., May 14, 2022, ECF No. 257-3 |
| 428 | 10/6/2023 | Gelb Decl., Oct 6, 2023, ECF No. 323-5 |
| 429 | 11/22/2023 | Gelb Decl., Nov. 22, 2023, ECF No. 328-1 |

| Pls.' Ex. No. | Doc. Date | Description |
|---|---|---|
| 430 | 11/23/2022 | MSJ Order, ECF No. 278 |
| 431 | 3/29/1977 | Letter from H.U.D. Director C. Lucas to R. Fitzgerald, Mar. 29,1977, Ex. 1 to Req. Judicial Notice, ECF No. 243 |
| 432 | 10/21/1985 | Letter from H.U.D. Branch Chief F. Malone to K. Calhoon, Oct. 21, 1985, Ex. 3 to Req. Judicial Notice, ECF No. 243 |
| 433 | 7/29/1991 | Letter from H.U.D. Director L. Jenkins to M.. Varieur, July 29, 1991, Ex. 2 to Req. Judicial Notice, ECF No. 243 |
| 434 | 3/25/2022 | Jt. Fact Stip. Re: Data Produced from Defs.' Yardi Property Management Database, Mar. 25, 2022 |
| 435 | 5/13/2022 | May 13, 2022 Response by Defendants to Plaintiffs' Statement of Undisputed Facts re Plaintiffs' Motion for Partial Summary Judgment, ECF No. 258-1 |
| 436 | 5/27/2022 | May 27, 2022 Response by Defendants to Plaintiffs' Statement of Disputed Facts re Defendants' Motion for Summary Judgment, ECF No. 263-4 |
| 437 | 5/17/2023 | Stip. & Order Re: Damages Calculation, May 17, 2023, ECF No. 308 |
| 438 | 10/20/2023 | Oct. 20, 2023 Response by Defendants to Plaintiffs' Statement of Undisputed Facts re: Plaintiffs' Motion for Partial Summary Judgment re Remedies, ECF No. 326-1 |
| 439 | | 42 U.S.C.A. § 5301 |
| 440 | | 24 CFR § 982.451 |

893086.6

Exhibit A

Pls.' Ex. 416,
Compilation of eviction notices for unpaid additional service fees
from produced tenant files (2017 and earlier)

AP000662-63, AP000762-63, AP002356, AP002806, BR000003-05, BR002158, BT000178,
BT000189, BT000190, BT000191, BT000505, BT000519, BT000602, BT000603, BT000628,
BT000643, BT003816, BT003841-43, BT003846, BT003862, BT004182, BT004188,
BT004290, BT004295, BT004421, BT004459, BT007015, BT007024, BT008096, BT010946,
BT010954, BT010958, BT010966, BT011015, BT011017, BU000127, CAP004390,
CAP007193, CAP008222, CP009887-88, CP009889-90, CPC000654-55, CPC000656-57,
CPC000658-59, CPC000660-61, CPC009005, CPC010700, CPC015825, CPC016159,
CPC016980, CPC020517, CPC021867-68, CPC023341, CPC023342, CPC023344, CPC026834,
CPC028201, CPC033675, CPC033676, CPC033677, CPC033678, CPC034580, CPC034581,
CPC034585, CPC034586, CPC034660, CPC036853-54, CPC036904, CPC036928, CPC036933,
CPC036945, CPC036953, CPC036974, CPC038384, CPC038385, CPC039842-43, CR000522,
CR001502, CR001579, CR002292, CR002303, CR002306, CR002406, CR003352, CR003358,
CR003583, CR003699, CR003815, CR004019, CR004397, CR004733, CR004939, CV000502-
03, CV002104-05, CV002536, CV002966, CV003577, CV004056, CV004356, CV005701,
CV005707, CV006060, CY002348, CY005083, CY017492, CY021234, CY021482, CY021493,
CY026242, ENCLAVE000317, ENCLAVE000320, ENCLAVE001666, ENCLAVE001667,
ENCLAVE001669, ENCLAVE001671, ENCLAVE001672, ENCLAVE001674,
ENCLAVE001784, ENCLAVE001790, ENCLAVE001792, ENCLAVE002677,
ENCLAVE002833, ENCLAVE003290, ENCLAVE003896, ENCLAVE003898,
ENCLAVE003899, FOT001104, MP000119, MP000128, MP000196, MP000327, MP000599,
MP000663, MP000665, MP000691, MP000703, MP000716, MP000764, MP000819,
MP000866, PP000518, SPW000805, SPW001965, SPW001966, SPW001975, SPW001980,
SPW001983, SPW001988, SPW001989, SPW002008, SPW002765, SPW003135, SPW003185,
SPW004039, SPW004085, SPW004951, SPW004971, SPW005455, SPW005654, SPW005925,
SPW005992, SPW006003, SPW006004, SPW006264, SPW006437, SVT002679-80,
SVT002688, SVT002748, SVT003843, SVT003884, SWT000374, SWT002357, SWT002824,
SWT003319, SWT003323, SWT003325, SWT003390, SWT003599, SWT003636,
SWT004032, SWT004525, SWT004539, SWT004576, SWT004582, SWT004586,
SWT004588, SWT004607, SWT004615, SWT004618, SWT004622, SWT004631,
SWT004635, SWT004650, SWT004657, SWT004661, SWT004671, SWT004674,
SWT004675, SWT004679, SWT004684, SWT004972, SWT004975, SWT004999,
SWT005015, SWT005018, SWT005020, SWT005023, SWT005025, SWT005028,
SWT005037, SWT005039, SWT005050, SWT005058, SWT005060, SWT005062,
SWT005063, SWT005065, SWT005074, SWT005084, SWT005085, SWT005088,
SWT005101, SWT005661, SWT005668, SWT005682, SWT005683, SWT005684,
SWT005710, SWT005747, SWT005862, SWT006370, SWT006371, SWT006379,
SWT006393, SWT006402, SWT006425, SWT006659, SWT006662, SWT006853,
SWT006876, SWT007480, SWT007481, SWT007484, SWT007485, SWT007499,
SWT007684, SWT007689, SWT007693, SWT007696, SWT007698, SWT007703,
SWT007710, SWT007711, SWT007716, SWT007722, SWT007723, SWT007748, SWT007924,

26

SWT007928, SWT007932, SWT008223, SWT008279, SWT008589, SWT008594,
SWT008598, SWT008601, SWT008604, SWT008608, SWT008611, SWT008612, SWT008615,
SWT008618, SWT008619, SWT008626, SWT008628, SWT008635, SWT008638,
SWT008643, SWT008644, SWT008645, SWT008657, SWT008661, SWT008670,
SWT008671, SWT008676, SWT008680, SWT009043, SWT009318, SWT009322,
SWT009324, SWT009329, SWT009335, SWT009337, SWT009340, SWT009341,
SWT009359, SWT009364, SWT009366, SWT009369, SWT009381, SWT009385,
SWT009387, SWT009388, SWT009680, SWT009683, SWT009688, SWT009694,
SWT009697, SWT009701, SWT009705, SWT009716, SWT009718, SWT009739,
SWT009745, SWT010043, SWT010047, SWT010374, SWT010377, SWT010382,
SWT010386, SWT010390, SWT010394, SWT010397, SWT010400, SWT010403, SWT010411,
SWT010518, SWT010530, SWT010532, SWT010533, SWT010536, SWT010549, SWT011019,
SWT011244, SWT011271, SWT011675, SWT011676, SWT011677, SWT012386, SWT012414,
SWT012421, SWT012957, SWT012982, SWT012984, SWT012985, SWT012994,
SWT013014, SWT013016, SWT013020, SWT013022, SWT013032, SWT013368,
SWT013654, SWT014378, SWT015070, SWT015090, SWT015996, VIT002190, VIT004784

893086.6

# EXHIBIT G

**WPM Proposed Exhibit List:**

| Number | Description | Citation |
|---|---|---|
| 301 | Denika Terry Lease Agreement | Exhibit to Plaintiffs' Sixth Amended Complaint. |
| 302 | Denika Terry HAP Contract | Exhibit to Plaintiffs' Sixth Amended Complaint. |
| 303 | Denika Terry ASA | Exhibit to Plaintiffs' Sixth Amended Complaint. |
| 304 | Denika Terry 3-Day Notices | Exhibit to Plaintiffs' Sixth Amended Complaint. |
| 305 | Denika Terry Ledger | Yardi Data from GelbGroup |
| 306 | Roy Huskey III Lease Agreement | Exhibit to Plaintiffs' Sixth Amended Complaint. |
| 307 | Roy Huskey III HAP Contract | Exhibit to Plaintiffs' Sixth Amended Complaint. |
| 308 | Roy Huskey III ASA | Exhibit to Plaintiffs' Sixth Amended Complaint. |
| 309 | Roy Huskey III 3-Day Notice | Exhibit to Plaintiffs' Sixth Amended Complaint. |
| 310 | Roy Huskey III Ledger | Yardi Data from GelbGroup |
| 311 | Tamera Livingston Lease Agreement | Exhibit to Plaintiffs' Sixth Amended Complaint. |
| 312 | Tamera Livingston HAP Contract | Exhibit to Plaintiffs' Sixth Amended Complaint. |
| 313 | Tamera Livingston ASA | Exhibit to Plaintiffs' Sixth Amended Complaint. |
| 314 | Tamera Livingston 3-Day Notice | Exhibit to Plaintiffs' Sixth Amended Complaint. |
| 315 | Tamera Livingston Ledger | Yardi Data |
| 316 | Correspondence Between WPM and Roy Huskey III | Deposition of Roy Huskey, Exh. 38. |
| 317 | Correspondence Between WPM and Denika Terry | Deposition of Denika Terry, Exh. 182, 188. |
| 318 | WPM Additional Services Agreement Presented to Jacqueline Rojas | Deposition of Jacqueline Rojas, Exh. 6. |
| 319 | WPM Additional Services Agreement Presented to Jodi Parker | Deposition of Jodi Parker, Exh. 6. |
| 320 | WPM Additional Services Agreement Presented to Barbara Cavey | Deposition of Barbara Cavey, Exh. 3. |
| 321 | Yardi Data re Rates of Enrollment by Class Members in Renters' Insurance Services, By Property, By Year | Yardi Data, GelbGroup |
| 322 | Yardi Data re Rates of Enrollment by Class Members in Parking Services, By Property, By Year | Yardi Data, GelbGroup |

| 323 | Yardi Data re Rates of Enrollment by Class Members in Media Package Services, By Property, By Year | Yardi Data, GelbGroup |
|---|---|---|
| 324 | Yardi Data re Rates of Enrollment by Class Members in Washer/Dryer Services, By Property, By Year | Yardi Data, GelbGroup |
| 325 | Exhibits re Costs Incurred to Provide Renters' Insurance to Tenants | Deposition of Jarom Johnson as PMK for WPM, Exh. 70-79. |
| 326 | Exhibits re Costs Incurred to Provide Media Packages to Tenants | Deposition of Jarom Johnson as PMK for WPM, Exh. 76-83. |
| 327 | Policy Change Document re WPM Tenant Payment Sequence | Deposition of Janae Jarvis as PMK for WPM, Exh. 72. |
| 328 | Payment Priority Sequence | Deposition of Janae Jarvis, Exh. 3. |
| 329 | Notice to Tenants re Additional Services Remaining Optional | Deposition of Janae Jarvis as PMK for WPM re Actions Taken Post 11/22/2022, Exh. 76. |
| 330 | Email to Staff re Policy of Additional Service Agreements Remaining Optional | Deposition of Janae Jarvis as PMK for WPM re Actions Taken Post 11/22/2022, Exh. 78 |
| 331 | Property Management for Dummies by Robert Griswold | Expert Report of Robert Griswold |
| 332 | Declaration of Shannon Fox | Exhibit to Defendants' Motion for Summary Adjudication. |
| 333 | Policy re Additional Service Agreements | Deposition of Janae Jarvis as PMK for WPM re Actions Taken Post 11/22/2022, Exh. 77 |
|  |  |  |

# EXHIBIT H

**Plaintiffs' and Relators' Deposition Designations**

Pursuant to Local Rules 281(b)(12), Plaintiffs provide the following designations of deposition testimony to be used at trial.  In addition to Cover Pages, Reporter's Certificates and the witness's swearing in, Plaintiffs designate, by page and line number, the testimony of:

**Dao, Katie - Nov. 3, 2021**

  7:6-14
  9:21-10:5
  10:15-14:9
  17:1-18:6
  19:7-20:12
  20:24-21:8
  22:15-24:17
  27:18-31:12
  34:2-16
  36:19-37:22
  37:25-38:22
  46:25-47:22
  48:23-49:10
  49:19-52:4
  52:14-54:2
  68:11-71:9
  73:23-75:20
  80:17-21
  86:3-98:13
  99:13-116:12
  116:21-119:6
  120:6-14
  121:11-125:20
  126:2-15
  127:8-24
  131:15-134:17
  135:11-14
  150:19-21
  152:2-153:22


**Fetter, Shawn – Aug. 11, 2017**

  5:2-4
  10:1-11:8

**<u>Fetter, Shawn – Aug. 11, 2017 (continued)</u>**

     11:20-24

     12:19-22

     13:10-14:12

     14:15-27:21

     28:4-36:22

     38:22-40:24

     42:12-43:19

     44:12-20

     47:10-50:18

     50:24-52:18

     52:23-54:12

     55:3-57:6

     57:15-58:12

     59:7-20

     70:3-72:10

     72:21-73:19

     73:22-77:9

     80:1-83:13

     85:8-12

     88:13-93:19

     94:6-96:5

     98:1-99:1

     100:14-110:8

     112:7-113:3

     116:16-117:22

     119:8-120:8

     121:13-126:23

     127:1-13

     127:16-128:7

     137:4-139:14

     140:13-16

     142:5-19

     142:21-144:21

     145:24-147:3

     151:2-154:22

     158:18-159:15

     159:18-161:21

     163:15-165:13

     173:1-18

**Fetter, Shawn – Aug. 11, 2017 (continued)**

177:13-178:21
181:11-185:10
196:23-197:7
198:8-20
200:22-201:22
203:24-207:23
208:7-209:3
210:14-212:13
212:23-214:6
226:19-227:14

**Fetter, Shawn –Oct. 27, 2021**

8:3-22
11:22-13:4
13:25-15:12
16:8-17:15
18:19-28:24
29:8-30:3
30:15-35:10
35:21-37:17
37:20-39:11
46:6-24
50:20-60:10
60:25-70:18
77:13-77:25
78:18-79:25
82:6-84:1
90:25-91:3
99:7-116:18
117:5-124:15
124:25-126:24
127:2-128:19
129:3-24
131:1-134:4
138:3-139:3
142:10-144:16
146:6-147:13
152:22-155:18
157:15-25

**Fetter, Shawn – Oct. 27, 2021 (continued)**

    158:7-16
    159:10-162:8
    162:11-16
    163:1-4
    163:21-166:11
    166:14-169:1
    169:8-14
    170:5-11
    171:15-173:13
    174:4-175:3
    175:12-16
    176:20-23
    177:4-8
    177:14-178:4
    181:8-20
    182:3-15
    183:10-19
    184:11-185:25
    186:8-23
    187:4-9
    187:19-188:9
    189:14-192:22
    193:4-18
    194:8-195:15
    195:18-25
    196:15-22
    197:5-25
    198:13-199:17
    200:21-201:3
    201:14-21
    202:2-203:11
    204:20-205:15
    206:4-10
    208:21-209:12
    210:1-213:11
    214:4-215:11
    221:2-222:20
    244:5-9
    266:11-25

890841.15

**Fetter, Shawn –Oct. 27, 2021 (continued)**
270:7-272:13
279:1-281:19

**Fetter, Shawn –Oct. 28, 2021**
302:5-308:17
308:22-313:15
315:16-21
317:22-322:6
323:11-329:11
329:14-334:8
334:10-340:22
341:11-347:12
348:9-350:11
351:1-355:19
356:7-11
356:23-361:3
362:13:17
363:18-364:23
391:24-393:7
396:17-397:18
400:17-405:18
409:19-410:13
411:20-413:25
414:20-415:7
415:16-419:1
419:5-18
420:4-14
420:24-433:23
434:3-23
435:2-437:22
437:24-441:9
441:22-447:20
447:23-460:12
461:3-463:18
464:1-467:8
467:12-468:16
469:13-473:1
473:16-474:21
479:23-480:25

**Fetter, Shawn –Oct. 28, 2021 (continued)**

      492:8-498:17

      499:11-503:7

      503:12-509:19

      510:2-516:3

      516:8-518:22

      519:10-23

**Jarvis, Janae – Aug. 10, 2017**

      5:3-21

      6:22-8:16

      11:7-12:7

      15:8-22:19

      23:5-25:20

      26:22-27:21

      28:1-29:17

      33:3-39:16

      40:1-41:20

      52:4-54:10

      55:15-57:24

      58:20-59:7

      60:24-64:21

      68:1-15

      71:1-6

      91:7-20

      92:11-97:6

      103:2 -104:10

      109:4-110:10

      111:16-113:2

      113:12-114:5

      115:5-116:3

      122:11-123:1

      124:24-125:19

      130:17-132:12

      133:3-6

      133:15-24

      144:25-154:7

      157:3-158:14

      158:19-160:1

      162:7-166:3

**Jarvis, Janae – Aug. 10, 2017 (continued)**

     166:12-23
     167:13-24
     190:20-191:20
     194:21-22
     196:21-198:9
     198:12-199:21
     202:8-206:4
     211:2-212:1
     212:6-18
     214:11
     216:4-217:21
     223:4-224:22
     226:4-235:7
     243:21-245:17
     250:7-251:23
     252:8-254:9

**Jarvis, Janae – Sept. 10, 2021**

     8:3-17
     9:8-10:7
     10:18-23
     11:5-24
     12:8-15
     12:22-13:9
     14:4-24:21
     27:24-34:18
     35:6-43:3
     45:11-19
     46:4-47:10
     48:6-49:18
     50:9-57:24
     60:24-64:23
     67:23-74:2
     76:10-17
     76:25-77:12
     84:6-87:6
     88:10-90:9
     90:13-93:25
     99:8-100:5

890841.15

**Jarvis, Janae – Sept. 10, 2021 (continued)**

    100:12-102:8
    107:1-16
    108:10-110:16
    110:19-123:8
    125:4-132:14
    132:22-133:7
    134:10-135:20
    136:17-137:13
    137:24-141:21
    142:13-153:25
    162:5-24
    176:3-19
    179:4-180:8
    185:19-188:8
    195:21-196:7
    200:16-202:17
    204:6-206:22
    208:16-211:20
    212:5-20
    214:13-220:12
    220:17-223:25
    227:6-228:7
    228:16-232:11
    232:19-233:2
    233:14-235:24
    238:3-13
    239:9-19
    240:6-18
    241:12-242:2
    244:6-14
    244:20-245:3
    245:23-246:5
    246:13-248:8

**Jarvis, Janae – Sept. 14, 2021**

    255:1-22
    256:10-25
    257:1-24
    258:13-259:11

890841.15

**Jarvis, Janae – Sept. 14, 2021 (continued)**

 259:24-260:18
 271:3-273:5
 274:3-275:7
 275:14-20
 276:21-278:23
 280:3-282:24
 283:18-22
 284:7-298:20
 299:23-300:22
 301:1-307:1
 307:13-309:13
 310:10-312:7
 312:10-315:23
 318:18-321:9
 321:19-21
 323:13-325:12
 325:25-328:14
 329:2-17
 339:25-341:6
 342:19-345:18
 348:15-355:3
 355:10-356:8
 359:3-360:1
 364:3-365:14
 367:2-371:15
 375:24-377:2
 394:7-395:12
 395:21-402:9
 403:4-15
 404:4-406:15
 407:1-414:9
 415:13-420:2
 430:17-431:15
 432:13-433:17

**Jarvis, Janae (30(b)(6) designee) – May 18, 2023**

 9:3-16
 9:25-12:16
 12:21-13:4

**Jarvis, Janae (30(b)(6) designee) – May 18, 2023 (continued)**

14:14-17:15

17:18-24:5

24:11-29:20

31:2-33:25

34:9-37:8

37:24-39:16

42:6-46:4

46:24-47:23

49:22-56:19

59:4-18

60:22-66:3

67:11-68:17

69:1-17

70:6-9

70:21-71:7

72:10-16

72:25-73:5

74:2-78:17

79:22-80:11

80:19-83:14

83:19-85:16

86:6-9

86:16-87:17

87:21-96:5

96:10-98:15

99:9-101:8

102:7-22

103:16-108:11

110:20-111:3

111:6-11

112:13-113:1

113:16-114:14

117:23-118:16

125:21-126:3

128:24-129:20

131:7 -132:17

140:7-141:12

141:17-144:7

145:10-15

890841.15

**Jarvis, Janae (30(b)(6) designee) – May 18, 2023 (continued)**
      145:18-147:25
      149:22-150:12
      153:7-155:2
      155:17-160:6
      160:14-18
      162:1-168:3
      177:7-18
      178:1-24
      180:2-21

**Johnson, Jarom – July 19, 2021**
      9:12-15
      9:20-23
      16:25-19:25
      24:9-25:24
      26:4-27:6
      31:1-32:4
      34:23-25
      35:20-36:23
      37:5-38:24
      42:25-43:20
      49:1-9
      51:4-52:24
      54:21-56:3
      57:1-59:9
      69:4-70:7
      71:1-73:1
      75:12-82:17
      83:13-86:9
      87:11-88:17
      90:23-93:14
      99:24-101:13
      109:3-16
      110:17-111:3
      112:17-113:5
      114:5-119:20
      120:2-123:3
      124:23-126:14
      126:25-132:3

**Johnson, Jarom – July 19, 2021 (continued)**

    133:5-136:7
    136:15-137:4
    137:16-138:6
    139:24-141:23
    145:15-146:25
    151:20-154:24
    157:24-12
    172:17-173:5
    173:21-180:10
    182:2-183:5
    184:19-186:5
    188:3-189:9
    192:6-194:6
    195:16-196:2
    197:25-198:8
    198:22-202:8
    214:15-24
    215:14-18
    227:2-229:14
    241:11-243:12
    244:9-245:8
    245:19-247:18
    248:5-251:2

**Johnson, Jarom – Nov. 10, 2021**

    6:15-18
    9:1-10:6
    16:18-17:3
    22:20-32:22
    36:8-40:6
    40:11-48:4
    50:20-23
    51:2-52:13
    53:5-58:18
    59:16-60:4
    60:14-23
    62:20-65:23
    66:3-70:14
    72:2-74:17

**Johnson, Jarom – Nov. 10, 2021 (continued)**

      75:16-76:19

      78:15-81:25

      82:2-83:9

      85:7-86:13

      86:20-88:11

**Mishler, Bradley – Nov. 19, 2021**

      5:12-21

      13:19 -14:6

      14:16-23

      20:12-14

      21:17-22:7

      22:21-23:7

      24:4-8

      24:16-25:3

      25:13-26:1

      26:7-27:5

      29:23-30:22

      32:20-23

      59:20-60:2

      88:24-89:9

      90:21-92:5

      92:25-93:20

      94:2-7

      94:16-95:9

      95:19-96:8

      97:11-16

      97:22-98:2

      98:9-13

      99:25-100:19

      101:10-13

      101:20-23

      106:11-107:8

      109:8-25

      113:18-21

      117:1-118:18

      119:20-121:23

      130:1-8

      131:5-132:18

**<u>Mishler, Bradley – Nov. 19, 2021 (continued)</u>**

     133:5-22
     134:1-8
     134:12-137:17
     138:10-13
     139:4-142:4
     143:18-144:1
     144:13-145:8
     146:8-150:2

**<u>Raymond, Tyler – Dec. 7, 2021</u>**

     25:25-26:4
     31:15-33:8
     34:23-40:14
     41:2-49:17
     51:14-55:6
     56:12-62:17
     63:3-86:1
     86:19-88:22
     90:24-117:10
     118:6-134:22
     135:9-146:6
     146:7-148:14
     150:19-153:4
     157:2-14
     159:10-161:24
     163:13-166:16
     168:9-169:18
     170:13-177:8
     192:21-193:10

**<u>Scharlach, David – Dec. 8, 2021</u>**

     6:14-18
     11:8-14
     15:21-16:15
     18:11-19:9
     22:5-24:18
     31:18-32:21
     34:25-35:3
     38:14-39:7

890841.15

**<u>Scharlach, David – Dec. 8, 2021 (continued)</u>**

      40:24-42:22

      43:7-45:4

      45:15-46:21

      50:7-51:2

      51:9-52:18

**<u>Tanforan, David, - Aug. 9, 2017</u>**

      7:1-7

      8:20-9:11

      18:7-24

      19:21-20:2

      21:4-6

      23:5-7

      24:11-25

      27:16-29:6

      30:10-31:22

      32:1-33:25

      36:14-37:6

      37:1-6212:1

      38:14-19

      47:8-48:1

      48:11-21

      49:16-54:4

      65:1-4

      66:18-67:5

      68:12-16

      72:21-73:3

      74:17-80:24

      81:10-83:20

      84:8-19

      86:8-20

      87:3-10

      92:4-93:23

      95:13-96:10

      96:15-99:11

      108:8-109:9

      109:12-110:2

      111:18-112:16

      117:25-119:11

**Tanforan, David, - Aug. 9, 2017 (continued)**

       123:4-124:10

       124:13-125:8

       127:22-128:3

       129:15-130:1

       138:23-140:17

       145:4-20

       151:9-12

       152:2-12

       154:23-25

       155:7-156:11

       160:15-20

       162:24-163:15

       167:6-23

       172:19-22

       173:1-20

       174:11-177:23

       178:16-21

       179:10-180:22

       181:12-182:6

       190:17-192:3

       195:3-196:21

       196:23

       197:24-25

       199:15-200:16

       206:11-208:14

       208:17-211:1

       211:5-17

       213:21-215:12

       218:17-25

       219:19-220:2

       222:22-223:16

       226:4-227:20

890841.15

# EXHIBIT I

**Plaintiffs' and Relators' Designation of Written Discovery Requests and Responses**

Pursuant to Local Rules 281(b)(12), Plaintiffs provide the following designations of written discovery responses to be used at trial.  In addition to cover pages, signatures pages, definitions, and verifications, Plaintiffs designate the following requests and responses:

<u>Interrogatory Responses</u>

Defendants' Responses to Plaintiff Roy Huskey III's Interrogatories, Set One, September 17, 2020:

    2

Defendants Further Supplemental Responses to Plaintiff Denika Terry's Interrogatories Set Two No.'s 24 and 25, January 29, 2021:

    24

    25

Defendants' Responses to Plaintiff Roy Huskey III's Interrogatories, Set Five, August 27, 2021:

    18

    19

    20

    22

Defendants' Amended Responses to Plaintiff Roy Huskey III's Interrogatories, Set Five, November 8, 2021:

    18

Defendants' Further Amended Responses to Plaintiff Roy Huskey III's Interrogatories, Set Five, November 17, 2021:

    20

Defendants' Third Further Amended Responses to Plaintiff Roy Huskey III's Interrogatories, Set Five, January 14, 2022:

    18

Defendants' Responses to Plaintiff Tamera Livingston's Interrogatories, Set Three, January 17, 2023:

    7

Defendants' Further Amended Response to Plaintiff Tamera Livingston's Interrogatories, Set

Three No. 6 Only, May 24, 2023:
     6

<u>Responses to Requests for Admission</u>

Defendants' Responses to Plaintiff Denika Terry's Request for Admissions, Set One, September 17, 2020:
     4
     11 (erroneously labeled 7)

Defendants' Responses to Plaintiff Denika Terry's Request for Admissions, Set Two, July 19, 2021:
     11
     12
     14

Defendants' Responses to Plaintiff Denika Terry's Request for Admissions, Set Three, August 27, 2021:
     16

Defendants' Responses to Plaintiff Denika Terry's Request for Admissions, Set Four, November 15, 2021:
     17
     26
     31
     32
     33
     34

Defendants' Responses to Plaintiff Denika Terry's Request for Admissions, Set Five, December 16, 2021:
     37
     41
     42
     44
     45
     47
     48
     50

Defendants' Responses to Plaintiff Denika Terry's Request for Admissions, Set Eight, May 1, 2023:

     61

     63

     64

     65

     66

     67

     68

<u>Responses to Requests for Admission Regarding Genuineness of Documents</u>

Defendants' Responses to Plaintiff Roy Huskey III's Requests for Admissions Re Genuineness of Documents, Set One, June 7, 2021:

     1-64

Defendants' Amended Responses to Plaintiff Roy Huskey III's Requests for Admissions Re Genuineness of Documents, Set One, August 27, 2021:

     62 (misnumbered in Defendant's  responses as Request for Admission No. 1)

     63 (misnumbered in Defendant's  responses as Request for Admission No. 2)

     64 (misnumbered in Defendant's  responses as Request for Admission No. 3)

Defendants' Responses to Plaintiff Roy Huskey III's Requests for Admissions Re Genuineness of Documents, Set Two, December 13, 2021:

     65-71

Defendants' Responses to Plaintiff Roy Huskey III's Requests for Admissions Re Genuineness of Documents, Set Three, January 14, 2022:

     72-73

# EXHIBIT J

1 **LEWIS BRISBOIS BISGAARD & SMITH** LLP
JOSEPH A. SALAZAR JR., SB# 169551
2   E-Mail: Joe.Salazar@lewisbrisbois.com
RYAN MATTHEWS, SB# 311674
3   E-Mail: Ryan.Matthews@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
4 Sacramento, California 95833
Telephone: 916.564.5400
5 Facsimile: 916.564.5444

6 Attorneys for Defendants, WASATCH
PROPERTY MANAGEMENT, INC., LOGAN
7 PARK APARTMENTS, LLC, LOGAN PARK
APARTMENTS, LP, BELLWOOD JERRON
8 HOLDINGS, LLC, BELLWOOD JERRON
APARTMENTS, LP, CAMELOT LAKES
9 HOLDINGS, LLC, HAYWARD SENIOR
APARTMENTS, LP, HERITAGE PARK
10 APARTMENTS, LP, OAK VALLEY
APARTMENTS, LLC, OAK VALLEY
11 HOLDINGS, LP, PEPPERTREE APARTMENT
HOLDINGS, LP, PIEDMONT APARTMENTS,
12 LP, POINT NATOMAS APARTMENTS, LLC,
POINT NATOMAS APARTMENTS, LP,
13 SHADOW WAY APARTMENTS, LP, SPRING
VILLA APARTMENTS, LP, SUN VALLEY
14 HOLDINGS, LTD, VILLAGE GROVE
APARTMENTS, LP, WASATCH QUAIL RUN
15 GP, LLC

16

17 **UNITED STATES DISTRICT COURT**

18 **EASTERN DISTRICT OF CALIFORNIA**

19 **SACRAMENTO DIVISION**

20

21 UNITED STATES OF AMERICA, ex rel. | CASE NO. 2:15-cv-00799-KJM-DB
DENIKA TERRY, ROY HUSKEY III, and
22 TAMERA LIVINGSTON, and each of them | **DEFENDANT DEPOSITION**
for themselves individually, and for all other | **DESIGNATIONS**
23 persons similarly situated and on behalf of the
UNITED STATES OF AMERICA, | The Hon. Kimberly J. Mueller
24
Plaintiffs/Relators, | Trial Date:       None Set
25
vs.
26
WASATCH ADVANTAGE GROUP, LLC,
27 WASATCH PROPERTY MANAGEMENT,
INC., WASATCH POOL HOLDINGS, LLC,
28 CHESAPEAKE APARTMENT HOLDINGS,

135801379.1

1

Case No. 2:15-cv-00799-KJM-DB

LEWIS
BRISBOIS

1  LLC, LOGAN PARK APARTMENTS, LLC,
   LOGAN PARK APARTMENTS, LP, ASPEN
2  PARK HOLDINGS, LLC, BELLWOOD
   JERRON HOLDINGS, LLC, BELLWOOD
3  JERRON APARTMENTS, LP, BENT TREE
   APARTMENTS, LLC, CALIFORNIA
4  PLACE APARTMENTS, LLC, CAMELOT
   LAKES HOLDINGS, LLC, CANYON CLUB
5  HOLDINGS, LLC, COURTYARD AT
   CENTRAL PARK APARTMENTS, LLC,
6  CREEKSIDE HOLDINGS, LTD,
   HAYWARD SENIOR APARTMENTS, LP,
7  HERITAGE PARK APARTMENTS, LP,
   OAK VALLEY APARTMENTS, LLC, OAK
8  VALLEY HOLDINGS, LP, PEPPERTREE
   APARTMENT HOLDINGS, LP, PIEDMONT
9  APARTMENTS, LP, POINT NATOMAS
   APARTMENTS, LLC, POINT NATOMAS
10 APARTMENTS, LP, RIVER OAKS
   HOLDINGS, LLC, SHADOW WAY
11 APARTMENTS, LP, SPRING VILLA
   APARTMENTS, LP, SUN VALLEY
12 HOLDINGS, LTD, VILLAGE GROVE
   APARTMENTS, LP, WASATCH QUAIL
13 RUN GP, LLC, WASATCH PREMIER
   PROPERTIES, LLC, WASATCH POOL
14 HOLDINGS III, LLC, and DOES 1-4

15          Defendants.

16

17          Pursuant to Local Rules 281(b)(12), Defendant provide the following designations of

18 deposition testimony to be used at trial.  In addition to Cover Pages, Reporter's Certificates and

19 the witness's swearing in, Defendant designate, by page and line number, the testimony of:

20 **Cheryl Syme**

21          8:21—21:15

22          26:14—32:8

23 **Barbara Cavey**

24          7:9—23:30

25          38:1—45:12

26 **Jacqueline Rojas**

27          7:12—27:25

28          45:11—56:14

LEWIS
BRISBOIS

135801379.1

Case No. 2:15-cv-00799-KJM-DB

DEFENDANT DEPOSITION DESIGNATIONS

1 | **Jodi Parker**

2 |       8:16—27:19

3 |       55:10—59:25

4 |

5 | DATED:  February 2, 2024                LEWIS BRISBOIS BISGAARD & SMITH LLP

6 |

7 |                                         By:    /s/ Ryan Matthews

8 |                                         RYAN MATTHEWS
                                            Attorneys for Defendants, WASATCH

9 |                                         PROPERTY MANAGEMENT, INC., LOGAN
                                            PARK APARTMENTS, LLC, LOGAN PARK

10 |                                        APARTMENTS, LP, BELLWOOD JERRON
                                           HOLDINGS, LLC, BELLWOOD JERRON

11 |                                        APARTMENTS, LP, CAMELOT LAKES
                                           HOLDINGS, LLC, HAYWARD SENIOR

12 |                                        APARTMENTS, LP, HERITAGE PARK
                                           APARTMENTS, LP, OAK VALLEY

13 |                                        APARTMENTS, LLC, OAK VALLEY
                                           HOLDINGS, LP, PEPPERTREE APARTMENT

14 |                                        HOLDINGS, LP, PIEDMONT APARTMENTS,
                                           LP, POINT NATOMAS APARTMENTS, LLC,

15 |                                        POINT NATOMAS APARTMENTS, LP,
                                           SHADOW WAY APARTMENTS, LP, SPRING

16 |                                        VILLA APARTMENTS, LP, SUN VALLEY
                                           HOLDINGS, LTD, VILLAGE GROVE

17 |                                        APARTMENTS, LP, WASATCH QUAIL RUN
                                           GP, LLC

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

LEWIS
BRISBOIS