Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | (Fax) (510) 835-1417

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Telephone: (510) 834-3300 | (Fax) (510) 834-3377

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Telephone: (510) 437-1863 | (Fax) (510) 437-9164

Lindsay Nako (SBN 239090)
lnako@impactfund.org
Lori Rifkin (SBN 244081)
lrifkin@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473 | Fax: (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes
*[Additional Counsel for Relators listed on following page]*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**SUPPLEMENTAL JOINT PRETRIAL STATEMENT AND PARTIES' REQUEST TO SET MOTION IN LIMINE SCHEDULE**<br><br>Before: Hon. Chief Judge Kimberly J. Mueller<br><br>Trial Date:   None Set |

1 | LOGAN PARK APARTMENTS, LLC, LOGAN
PARK APARTMENTS, LP, ASPEN PARK
2 | HOLDINGS, LLC, BELLWOOD JERRON
HOLDINGS, LLC, BELLWOOD JERRON
3 | APARTMENTS, LP, BENT TREE
APARTMENTS, LLC, CALIFORNIA PLACE
4 | APARTMENTS, LLC, CAMELOT LAKES
HOLDINGS, LLC, CANYON CLUB HOLDINGS,
5 | LLC, COURTYARD AT CENTRAL PARK
APARTMENTS, LLC, CREEKSIDE HOLDINGS,
6 | LTD, HAYWARD SENIOR APARTMENTS, LP,
HERITAGE PARK APARTMENTS, LP, OAK
7 | VALLEY APARTMENTS, LLC, OAK VALLEY
HOLDINGS, LP, PEPPERTREE APARTMENT
8 | HOLDINGS, LP, PIEDMONT APARTMENTS,
LP, POINT NATOMAS APARTMENTS, LLC,
9 | POINT NATOMAS APARTMENTS, LP, RIVER
OAKS HOLDINGS, LLC, SHADOW WAY
10 | APARTMENTS, LP, SPRING VILLA
APARTMENTS, LP, SUN VALLEY HOLDINGS,
11 | LTD, VILLAGE GROVE APARTMENTS, LP,
WASATCH QUAIL RUN GP, LLC, WASATCH
12 | PREMIER PROPERTIES, LLC, WASATCH
POOL HOLDINGS III, LLC,
13 | and DOES 1-4,

14 |        Defendants.

15

16 | Lawrence Anthony Organ (SBN 175503)
larry@civilrightsca.com
17 | CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue,
18 | San Anselmo, CA 94960-2610
Phone: 415-453-4740 | Fax: 415-785-7352

19 | Attorneys for Relators

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

A.   Supplemental Class Notice ................................................................................1

B.   Mediation .............................................................................................................1

C.   Trial Setting and Length ....................................................................................1

    1.   Plaintiffs' Statement in Support of the July 30 Trial Date ................................1

        a.   Two Weeks Is Sufficient to Try the FCA Claim to the Jury. .................1

            i.   The Element of Falsity Has Already Been Resolved. ...............1

            ii.   The Remaining Factual Issues May Be Efficiently Tried. .........2

            iii.   The Remaining Factual Issues Can Be Narrowed Further by Stipulations. ...............................................................................4

        b.   A July 30 Trial Date Leaves Sufficient Time for Any Mediation..........4

        c.   Alternative Trial Dates Would Unnecessarily Delay Trial. ...................5

        d.   The Court Should Not Undo the Bifurcation Order and Phased Trials, As Defendants' Request Is Improper, Untimely, and Without Merit. .........................................................................................5

    2.   Owner and Non-Owner Defendants' Statement .................................................6

        a.   Trial Cannot Be Completed in the Time Plaintiffs Estimate..................6

    3.   Defendant WPM's Statement .............................................................................8

D.   Motions in Limine ...............................................................................................9

    1.   Plaintiffs' Proposal ..............................................................................................9

    2.   All Defendants' Proposal ....................................................................................9

897148.6

The Parties submit this Supplemental Joint Pretrial Statement pursuant to the Court's orders on the record at the Final Pretrial Conference for the Phase 1 trial held on March 29, 2024.  Additionally, the Parties request that the Court set a briefing schedule for the motions in limine but the Parties do not agree on the number or length of briefs, nor the timing for hearing.  They set forth their competing schedules in section D below.

**A.**     **Supplemental Class Notice**

There are no disputes regarding supplemental class notice.  The Parties have now filed a stipulation and proposed order for supplemental notice to the Rule 23(b)(3) class.

The Parties note that, as there are no remaining issues in Phase 1 related to the Rule 23(b)(3) class, the timing of the Phase 1 trial does not depend in any way on the completion of supplemental class notice.

**B.**     **Mediation**

The Parties have agreed to private mediation with the Hon. Jay Gandhi no later than July 17 and are working to confirm a mediation date of June 20.  Judge Gandhi has additional dates available in June and July, and the Parties are exploring the possibility of reserving a second day.

**C.**     **Trial Setting and Length**

**1.**     **Plaintiffs' Statement in Support of the July 30 Trial Date**

Plaintiffs respectfully ask the Court to confirm the July 30 trial date reserved at the Pretrial Conference for the jury trial on Wasatch Property Management's ("WPM's") liability under the False Claims Act ("FCA").  (The three-day bench trial on injunctive relief may be deferred until a suitable opening on the Court's calendar this fall.)

**a.**     **Two Weeks Is Sufficient to Try the FCA Claim to the Jury.**

Two weeks will be sufficient for the Parties to try the remaining issues in the FCA cause of action, for the reasons set out below.

**i.**     **The Element of Falsity Has Already Been Resolved.**

First, a significant aspect of the case has already been resolved.  As all Parties agreed in the Amended Pretrial Statement, the element of falsity is satisfied by certifications of compliance with a

897148.6

contractual or legal requirement when the defendant is not in fact compliant.[1]  This Court has already held—based on an undisputed record regarding WPM's portfolio-wide practices—that the additional service charges constitute unlawful excess rent in violation of the HAP Contract and federal law.  *See* Summ. J. Order 12-13, 18, ECF No. 278.  This same determination resolves the issue of whether WPM falsely certified that it would not receive excess rent payments.[2]  *See, e.g.*, *United States ex rel. Ellis v. Jing Shu Zheng*, No. 2:16-cv-01447-APG-NJK, 2018 WL 1074483, at *3 (D. Nev. Feb. 26, 2018) (falsity established where landlord collects excess rent despite certifications and promises in the HAP Contract).

Defendants appear to believe they can relitigate the legality of the additional services at trial. This mistaken conclusion renders their trial estimates unreliable.

WAG Defendants[3] argue that falsity will continue to be at issue at trial even if the Court's ruling from summary judgment remains undisturbed, but they identify no specific factual disputes that could affect this element.  They suggest that variations in state law could somehow be relevant, but they do not explain how *state* housing law could affect falsity where the Court has already held that the additional service charges violated *federal law* and the federally-mandated HAP Contract.

### ii.    The Remaining Factual Issues May Be Efficiently Tried.

The remaining factual issues will turn on largely uniform evidence:  the knowledge or reckless indifference of senior WPM personnel regarding compliance with Section 8 program rules, the significance of the rent limitations in the Section 8 program, undisputed admissions by Defendants regarding the existence of mandatory charges at specific properties in four different states, and Defendants' claim that WPM had an undocumented practice of excepting Section 8 tenants from the

---

[1] *See* Pls.' Points of Law 1, ECF No. 378 Ex. B (citing *inter alia United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 675-76 (9th Cir. 2018)); WPM Defs.' Points of Law 8, ECF No. 378 Ex. C (noting the Parties' agreement that "under the FCA, a 'false' certification claim rests on an entity's representation that it has complied with the federal statutes, regulations, or terms governing their contractual agreement, when, in fact they had not so complied"); WAG Defs.' Points of Law 7, ECF No. 378 Ex. D (same).

[2] It is undisputed that WPM signed all the relevant HAP Contracts, which contain the certification that it would not receive additional rent or other consideration for rental of the unit beyond rent to owner. *See* Bifurcation Order 4, ECF No. 135.

[3] The group of Defendants represented by Arnall, Golden, and Gregory LLP ("AGG").

requirement to enroll in mandatory charges.  *See* Am. Pretrial Statement 16-21, ECF No. 378
(Plaintiffs and WPM identifying eight disputed facts for the FCA claim; WAG Defendants identifying
numerous additional "disputes" related to whether the additional service charges were lawful, despite
that issue being already resolved by the Court at summary judgment).

Accordingly, the witness lists for both Plaintiffs and WPM Defendants focus on half a dozen
current and former WPM employees, the three Plaintiffs-Relators, and three disclosed experts.[4]
Plaintiffs also plan to briefly call three to five non-Plaintiff tenants for direct exams estimated at about
twenty minutes each.

The possibility of testimony by employees of public housing authorities ("PHAs") does not
require a longer trial.  Defendants have only named six PHA employees on their witness list; even if all
of them testify, their testimony does not require a trial of more than two weeks.   WAG suggest that the
jury must consider the "claims submission process" and each PHA's distinct "processes for entering
into the HAP Contract and paying the claim."  However, neither the submission of the HAP Contracts
nor their execution and payment by the PHAs are in dispute.[5]  As to the materiality of WPM's
violations of its certifications in the HAP Contract, that issue primarily turns on the significance in the
Section 8 program of the uniform federal requirement that landlords must not receive excess rent
payments beyond the agreed upon rent to owner.  Possible testimony by up to six PHA witnesses on
that issue would not extend the trial beyond the two weeks proposed.

Plaintiffs are confident that each side can fully present its case in a week's time, even after
setting aside time for voir dire, opening, and closing arguments.

---

[4] WPM Defendants have listed a fourth expert, James McCurley, but his report related only to the class
damages, an issue already resolved by the Court.

[5] All Defendants have admitted that (1) WPM signed a HAP Contract for each Section 8 tenant at its
properties (Defs.' Resp. to Pls.' Statement of Undisputed Material Facts ¶ 1, ECF No. 258-1; Stip. and
Order re Bifurcation 4, ECF No. 135); (2) that relevant tenants may be identified through the existence
on their ledgers of both "rentHAP" charges and additional service charges (Jt. Fact Stip. re Yardi Data
¶ 15, ECF No. 242-4); (3) and that WPM "has never included additional service charges in the 'rent to
owner' amount submitted to local PHAs in HAP Contracts and other required Section 8 documents"
(Defs.' Resp. to Pls.' Statement of Undisputed Material Facts ¶ 7, ECF No. 258-1).

897148.6

### iii. The Remaining Factual Issues Can Be Narrowed Further by Stipulations.

A significant number of facts relevant to the issues at trial are largely or entirely undisputed. Plaintiffs previously proposed numerous fact stipulations based on Defendants' prior admissions and discovery responses, but Defendants have declined to enter into any fact stipulations—even as to something as basic as the authenticity of documents. Plaintiffs have also invited Defendants to propose fact stipulations related to PHAs in order to streamline trial, but so far have not received a response.

Defendants' refusal to stipulate to undisputed facts should not be accepted as a basis for requiring this Court and a jury to sit for additional time, nor should it become a reason for delaying trial.

### b. A July 30 Trial Date Leaves Sufficient Time for Any Mediation.

A July 30 trial date is consistent with the mediation plan agreed upon by the Parties for the following reasons: (1) the Parties have already engaged in substantial written settlement exchanges throughout 2023; (2) the Parties already met once in a settlement conference in March 2023; (3) Mr. Cabrera from AGG was involved that settlement conference; (4) the Parties are represented by multiple lawyers per group, so trial preparation can continue while mediation takes place; (5) the Parties have proposed pre-trial briefing deadlines and hearing dates that do not conflict with the mediation dates; and (6) the Parties have chosen a mediator who can devote multiple days to the mediation before July 30 if the Parties determine that would be productive.

In addition, while Plaintiffs are willing to devote the time and expense necessary for a productive mediation, it should not impede the timing of the trial. This case has been pending for almost a decade. The Parties first attempted to mediate through the Voluntary Dispute Resolution Program, on February 27, 2017. Plaintiffs invited Defendants to mediation and proposed a list of mediators in May 2019, but Defendants declined. Plaintiffs again proposed private mediation in December 2022 following the Court's summary judgment ruling, but Defendants did not respond. The Parties then attended a court-ordered settlement conference in March 2023, which ended after an hour and a half. Plaintiffs again proposed private mediation in August 2023. Defendants did not respond to

4

Supp. Joint Pretrial Stmt. and Parties' Req. to set Mot. in Limine Schedule - Case No. 2:15-cv-00799 KJM-DB

this invitation until November 2023, and then after Plaintiffs proposed mediation dates, they failed to respond at all.  Accordingly, Plaintiffs strongly believe that Defendants should not use any further mediation efforts as a basis for delaying trial beyond the July 30 date.

### c.   Alternative Trial Dates Would Unnecessarily Delay Trial.

Defendants' demand for a seven- or eight-week trial appears calculated to maximize delay. Plaintiffs understand that Defendants are not available for an October trial date.  Defendants propose starting this trial in November to accommodate the length of trial they envision, but this would require the jury and the Court to sit through the Thanksgiving and/or winter holidays.  Also, Plaintiffs' trial counsel Larry Organ is unavailable for trial in November due to a previously scheduled complex class action trial in state court that has been consolidated with an enforcement action by the California Civil Rights Department.  Defendants also suggest January 2025 to start trial, but given the many delays that have already occurred in this long-running case and all the other reasons set out above, Plaintiffs respectfully request that the Court confirm the July 30 date.

### d.   The Court Should Not Undo the Bifurcation Order and Phased Trials, As Defendants' Request Is Improper, Untimely, and Without Merit.

Lastly, WAG Defendants seek to undo the Court's order bifurcating the case and try the liability of additional defendants under the FCA in the upcoming trial.  This effort is procedurally improper, untimely, and without merit, and should therefore be rejected as a basis for seeking a longer trial window.  Defendants long ago waived reconsideration of the bifurcation order for the reasons Plaintiffs laid out in the Amended Pretrial Statement.  Nor have Defendants acted diligently to place the issue before the Court after becoming aware of their alleged concerns in late 2023.

Bifurcation was proper under Rule 42, does not offend due process, and was stipulated to by all Defendants to the FCA claim.  *See* Amended Pretrial Statement 3-4, 31-32, ECF No. 378.  Requiring Plaintiffs to try their vicarious liability claims against those additional Defendants without any opportunity for discovery on their corporate and contractual relationships with WPM would be deeply prejudicial.

WAG Defendants erroneously assert that WPM did not present false claims to the government because the owners on whose behalf WPM was acting are the true parties to the HAP Contract.  In

5

Supp. Joint Pretrial Stmt. and Parties' Req. to set Mot. in Limine Schedule - Case No. 2:15-cv-00799 KJM-DB

897148.6

fact, all Defendants have admitted through stipulation that "Wasatch Property Management is the entity that signs all leases, Additional Services, *and HAP Contracts*," confirming that WPM did in fact present the false claims. *See* Bifurcation Stip. and Order 4, ECF No. 135 (emphasis added); Stip. and Order Amending Class Cert. Order 4, ECF NO. 226.  Moreover, it is not a defense to the FCA that an entity is acting as an agent for others. *See* 31 U.S.C. § 3729(a)(1) ("any person" who presents a false claim is liable under the FCA); *U.S. ex rel. Haskins v. Omega Inst*., Inc., 11 F. Supp. 2d 555, 563-65 (D.N.J. 1998) (citing Restatement (Second) of Agency § 348)).  Plaintiffs agree that the owners may be vicariously liable for WPM's submission of false claims on their behalf, but that reality does not require any alteration to the well-supported Bifurcation Order to which all FCA Defendants stipulated nearly three years ago as vicarious liability rests on separate facts that may be determined by a separate fact-finder.  WAG Defendants can defend against FCA liability at all stages of the case, as they have done throughout.

2. <u>Owner and Non-Owner Defendants' Statement</u>[6]

Owner and Non-Owner Defendants request that the Court set trial on November 5, 12 or 19, or December 3, 10, 17, 2024, or January 7, 14, 2025. Owner and Non-Owner Defendants cannot agree to the October 8th trial date due to lead trial counsel on Plaintiffs' False Claims Act claims, Sara Lord's, unavailability October 9-25, 2024, for a long-planned, non-refundable international trip. For the reasons below, the July 30th date is impractical for this case.

a. <u>Trial Cannot Be Completed in the Time Plaintiffs Estimate</u>

Owner and Non-Owner Defendants understand that the Court's weekly trial schedule is as follows: Mondays, 1:30 PM - 4:30 PM, Tuesdays, Wednesdays, and Thursdays, 8:30 AM - 1:30 PM, and dark on Fridays. We strongly disagree that the trial of Plaintiffs' FCA case can be completed in the two weeks that Plaintiffs estimate. Assuming the Court would allow a July 30th trial to run through

---

[6] "Owner and Non-Owner Defendants" refers to Defendants Wasatch Advantage Group, LLC, Wasatch Premier Properties, LLC, Wasatch Pool Holdings, LLC, Wasatch Pool Holdings III, LLC ("Non-Owner Defendants"), and Aspen Park Holdings, LLC, Bent Tree Apartments, LLC, California Place Apartments, LLC, Camelot Lakes Holdings, LLC, Canyon Club Holdings, LLC, Chesapeake Apartment Holdings, LLC, Courtyard at Central Park Apartments, LLC, Creekside Holdings, LTD, River Oaks Holdings, LLC, Heritage Park Apartments, LP, Peppertree Apartment Holdings, LP, Shadow Way Apartments, LP, and Wasatch Quail Run GP, LLC ("Owner Defendants").

1    Monday, August 12th, and given the Court's pending trial on August 13th, that would leave the parties

2    with only four full trial days and two half-days. There is no realistic way for the parties to get through

3    *voir dire*, opening statements, all the evidence, and closing arguments in that time, even if we

4    anticipated a trial such as the one Plaintiffs envision.

5           Owner and Non-Owner Defendants anticipate calling witnesses and introducing evidence as to

6    each property implicated by plaintiffs' FCA claims, as indicated in our attachment to the joint pretrial

7    statement. Owner and Non-Owner Defendants estimate it will take a minimum of 12-14 days to put on

8    their defense. When factoring in the Court's trial schedule, the evidence to be introduced by Plaintiffs

9    and all Defendants, the additional time for *voir dire*, opening statements and closing arguments, Owner

10   and Non-Owner Defendants estimate this trial will last 7-8 weeks. These estimates are real and the

11   result of a reasoned analysis of the issues to be tried in Phase 1, the number of properties at issue, the

12   number of witnesses to be called, and the extent of documentary evidence to be introduced. Defendants

13   are not trying to delay trial, but rather, are honoring their obligation to the Court in their estimation of

14   the length of trial.

15          As is now very clear, Plaintiffs and Defendants have very different theories concerning this

16   case, stemming largely but not wholly from our dispute regarding the definition of "rent" that should

17   apply under the FCA claim and the liability being alleged. Plaintiffs' unreasonable estimate of a two-

18   week trial appears to rest on a belief they will not be held to their burden of proving each element of

19   their claims as to each property and as to each proper Defendant. Regardless of whether a definition of

20   rent based on policies and practices was appropriate under the breach of contract and UCL claims, it

21   cannot be applied to a claim under the FCA, which looks to the specific requirements governing the

22   contractual relationship and submission of the claim. In this case, that includes the specific

23   requirements and definitions that are laid out in the statute and regulations, and that govern the HAP

24   Contract.

25          Even if, however, the case is to be tried on the basis of the definition of rent that Plaintiffs have

26   urged to date, this case cannot be completed in two weeks. The parties' dispute on this point stems

27   from our different understandings of the liability that can be alleged under the FCA. First, to the extent

28   that Plaintiffs' case rests on a definition of rent based on policies and practices, the definitions of

7

897148.6

"falsity" and "materiality" under the FCA will be affected by the housing laws in each of the four states in which the Defendants own properties.[7]  As a result, Owner and Non-Owner Defendants do not agree to Plaintiffs' characterization that the issue of "falsity" has been resolved. (*See supra* Section C.1.a.i.) In fact, Owner and Non-Owner Defendants expect that the question of "falsity" will be a key element in dispute at any upcoming trial.

Second, "materiality" under the FCA requires examination of the claims submission process and the expectations governing the submission. Every PHA has its own Admin Plan, including its own processes for entering into the HAP Contract and paying the claim.

Third, Defendants also disagree with Plaintiffs' assertion that "WPM witnesses have testified that this alleged policy applied equally to all properties," as either a statement of fact or – more importantly – as a basis for curtailing the proof required in this case. This is not a single enterprise case involving thousands of claims submitted under the same terms and conditions, but a case in which Plaintiffs are seeking to hold multiple owners in four states liable for hundreds of millions of dollars by extrapolating from the alleged policies and practices at a few properties in one part of California and applying them across the board. With so much at stake for Defendants, we cannot agree that this case can be summarily tried based on an untested unitary theory of the case.

Last, the bifurcation of the case between Phase 1 and Phase 2 rests on the belief that this case rises and falls on Defendant WPM's actions. It does not and it cannot. WPM is not a party to the HAP Contracts. The owners, not WPM, are the presenters of the claims. Because of that indisputable fact, the owners must participate in Phase 1 of the trial.

### 3.   Defendant WPM's Statement

Defendant WPM joins in full with the Owner and Non-Owner Defendants' Statement, and agrees with all of the concerns raised regarding the impracticability of completing this jury trial in less than two weeks.

Beyond that, Defendant WPM is available for trial on any of the Owner and Non-Owner Defendants' proposed dates: November 5, 12, or 19, 2024.  Defendant is further available for trial for

---

[7] Owner and Non-Owner Defendants disagree that this is the case, but if the case is to be tried on this basis, these are the questions that will arise for our case.

much of the month of January, beginning Monday, January 6th.

**D.** **Motions in Limine**

The Parties jointly request that the Court set a schedule for filing and briefing motions in limine. Plaintiffs also respectfully request that the Court set page limits. The Parties' proposals are set out below.

**1.** **Plaintiffs' Proposal**

Plaintiffs reiterate their proposal in the Amended Pretrial Statement that each group of represented parties be permitted to file no more than 10 motions in limine, limited to 5 pages per motion and opposition (excluding the notice of motion and supporting evidence). That would give Defendants 20 total moving briefs and 20 opposition briefs. That is a total of 200 pages—100 pages for moving papers and 100 pages for opposition—from the Defendants. With Plaintiffs' anticipated ten motions and 20 oppositions, that is a total of 150 additional pages, for a total of 350 pages of briefing on motions in limine for Phase 1. These page limits are sufficient for argument, and more would be unduly burdensome to the Parties and the Court.

Plaintiffs propose the following briefing schedule to allow the Court to hear and decide motions that will impact the scope of the trial sufficiently in advance of trial to allow the Parties to tailor their trial preparation and their settlement efforts accordingly. The Court would first hear the nine motions affecting the scope of trial, including: all Parties' motions related to experts, all Parties' motions related to the impact of the Court's prior summary judgment ruling, and Plaintiffs' motions to exclude untimely disclosed evidence and witnesses and to exclude reference to issues reserved for Phase 2 of the litigation.

Motions in limine affecting the scope of trial: opening briefs due on April 19, 2024; opposing briefs due May 3, 2024; a hearing on May 17, 2024.

All other motions in limine: opening briefs due on June 24, 2024; opposing briefs due July 8, 2024; a hearing on July 19, 2024.

**2.** **All Defendants' Proposal**

All Defendants request that the parties be permitted to file the motions *in limine* described in their joint pretrial statement, and that this Court's standing order govern the length and format of those

1  motions. Owner and Non-Owner Defendants object to any limitation on their right to file of motions *in*

2  *limine* based on the number or nature of motions filed by Defendant WPM. Owner and Non-Owner

3  Defendants request that that Court set the deadlines for filing of motions *in limine* and responses

4  contingent on the trial date (*e.g.*, *x* number of days before trial).

5

6  Dated: April 12, 2024                       Respectfully submitted,

7                                              GOLDSTEIN, BORGEN, DARDARIAN & HO

8                                              */s/ Anne P. Bellows*

9                                              Anne P. Bellows

10                                             Attorneys for PLAINTIFFS and RELATORS

11 Dated: April 12, 2024                       Respectfully submitted,

12                                             LEWIS BRISBOIS BISGAARD & SMITH LLP

13                                             */s/ Ryan Matthews* (as authorized 4/12/24)

14                                             Ryan Matthews

15                                             Attorneys for WPM Defendants WASATCH
                                               PROPERTY MANAGEMENT, INC., LOGAN
                                               PARK APARTMENTS, LLC, LOGAN PARK
16                                             APARTMENTS, LP, BELLWOOD JERRON
                                               HOLDINGS, LLC, BELLWOOD JERRON
17                                             APARTMENTS, LP, HAYWARD SENIOR
                                               APARTMENTS, LP, OAK VALLEY
18                                             APARTMENTS, LLC, OAK VALLEY
                                               HOLDINGS, LP, PIEDMONT APARTMENTS,
19                                             LP, POINT NATOMAS APARTMENTS, LLC,
                                               POINT NATOMAS APARTMENTS, LP,
20                                             SPRING VILLA APARTMENTS, LP, SUN
                                               VALLEY HOLDINGS, LTD, VILLAGE
21                                             GROVE APARTMENTS, LP

22 Dated: April 12, 2024                       Respectfully submitted,

23                                             ARNALL GOLDEN GREGORY LLP

24
                                               */s/ Richard Collins* (as authorized 4/12/24)
25                                             Richard Collins

26                                             Attorneys for ASPEN PARK HOLDINGS, LLC;
                                               BENT TREE APARTMENTS, LLC;
27                                             CAMELOT LAKE HOLDINGS, LLC;
                                               CALIFORNIA PLACE APARTMENTS, LLC;
28                                             CANYON CLUB HOLDINGS, LLC;

10

1                                        CHESAPEAKE APARTMENT HOLDINGS, LLC; COURTYARD AT CENTRAL PARK APARTMENTS, LLC; CREEKSIDE HOLDINGS, LTD; HERITAGE PARK APARTMENTS, LP; PEPPERTREE APARTMENT HOLDINGS, LP; RIVER OAKS HOLDINGS, LLC; SHADOW WAY APARTMENTS, LP; WASATCH ADVANTAGE GROUP, LLC; WASATCH PREMIER PROPERTIES, LLC; WASATCH QUAIL RUN GP, LLC; WASATCH POOL HOLDINGS, LLC; WASATCH POOL HOLDINGS III, LLC

897148.6