ARNALL GOLDEN GREGORY LLP
Richard T. Collins (Bar No. 166577)
rich.collins@agg.com
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, D.C. 20037
Telephone: (202) 677-4030

Attorney for Defendants:

ASPEN PARK HOLDINGS, LLC; BENT TREE
APARTMENTS, LLC; CAMELOT LAKE HOLDINGS,
LLC; CALIFORNIA PLACE APARTMENTS, LLC;
CANYON CLUB HOLDINGS, LLC; CHESAPEAKE
APARTMENT HOLDINGS, LLC; COURTYARD AT
CENTRAL PARK APARTMENTS, LLC; CREEKSIDE
HOLDINGS, LTD; HERITAGE PARK APARTMENTS,
LP; PEPPERTREE APARTMENT HOLDINGS, LP;
RIVER OAKS HOLDINGS, LLC; SHADOW WAY
APARTMENTS, LP; WASATCH ADVANTAGE GROUP,
LLC; WASATCH PREMIER PROPERTIES, LLC;
WASATCH QUAIL RUN GP, LLC; WASATCH POOL
HOLDINGS, LLC; WASATCH POOL HOLDINGS III,
LLC

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

UNITED STATES OF AMERICA, *ex rel.*
DENIKA TERRY, ROY HUSKEY III, and
TAMERA LIVINGSTON, and each of them for
themselves individually, and for all other persons
similarly situated and on behalf of the UNITED
STATES OF AMERICA

      Plaintiffs/Relators,

vs.

WASATCH ADVANTAGE GROUP, LLC,
WASATCH PROPERTY MANAGEMENT,
INC., WASATCH POOL HOLDINGS, LLC,
CHESAPEAKE APARTMENT HOLDINGS,
LLC, LOGAN PARK APARTMENTS, LLC,
LOGAN PARK APARTMENTS, LP, ASPEN
PARK HOLDINGS, LLC, BELLWOOD
JERRON HOLDINGS, LLC, BELLWOOD
JERRON APARTMENTS, LP, BENT TREE
APARTMENTS, LLC, CALIFORNIA PLACE
APARTMENTS, LLC, CAMELOT LAKES
HOLDINGS, LLC, CANYON CLUB
HOLDINGS, LLC, COURTYARD AT
CENTRAL PARK APARTMENTS, LLC,
CREEKSIDE HOLDINGS, LTD, HAYWARD

Case No.: 2:15-CV-00799-KJM-DB

CLASS ACTION

**OWNER AND NON-OWNER
DEFENDANTS' MEMORANDUM IN
SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS**

Date:   May 17, 2024
Time:  10:00 AM
Dept:  Courtroom 3, 15th Floor
Before: Hon. Kimberley J. Mueller

Trial Date:  None Set

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

1  SENIOR APARTMENTS, LP, HERITAGE
   PARK APARTMENTS, LP, OAK VALLEY
2  APARTMENTS, LLC, OAK VALLEY
   HOLDINGS, LP, PEPPERTREE APARTMENT
3  HOLDINGS, LP, PIEDMONT APARTMENTS,
   LP, POINT NATOMAS APARTMENTS, LLC,
4  POINT NATOMAS APARTMENTS, LP,
   RIVER OAKS HOLDINGS, LLC, SHADOW
5  WAY APARTMENTS, LP, SPRING VILLA
   APARTMENTS, LP, SUN VALLEY
6  HOLDINGS, LTD, VILLAGE GROVE
   APARTMENTS, LP, WASATCH QUAIL RUN
7  GP, LLC, WASATCH PREMIER
   PROPERTIES, LLC, WASATCH POOL
8  HOLDINGS III, LLC,
   and DOES 1-4,
9
        Defendants.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677.4030
WWW.AGG.COM

OWNER AND NON-OWNER DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL STANDARD AND TIMELINESS ........................................................ 2

III.    ARGUMENT ...................................................................................................... 4

    A.      Plaintiffs' Claims Against FCA Defendants Wasatch Advantage Group,
          LLC, Wasatch Pool Holdings, LLC, and Chesapeake Apartment Holdings,
          LLC For Violations of the False Claims Act Should be Dismissed. ...................... 4

          1.      Statement of the Laws Governing the Case. ................................................ 4

          i.      The False Claims Act. ................................................................................. 4

          ii.     The Statutory, Regulatory and Contractual Frameworks Governing
               the HCV Program .......................................................................................... 7

          2.      Plaintiffs' Have Failed to Allege the Required Elements of an FCA
               Violation ......................................................................................................... 10

          ii.     Plaintiffs' Failure to Allege Fraud Against the "FCA Defendants." ........ 16

    B.      Plaintiffs' State Law Causes of Action Should be Dismissed. .......................... 17

IV.     CONCLUSION ................................................................................................. 20

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677.4030
WWW.AGG.COM

OWNER AND NON-OWNER DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ................................................................................................ 19

*Arizona v. California*,
   460 U.S. 605 (1983) ................................................................................................ 20

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ................................... 2, 3

*Askins v. U.S. Department of Homeland Security*,
   899 F.3d 1035 (9th Cir. 2018) ............................................................................... 20

*U.S. ex rel. Benitez v. Galliano, LLC*,
   No. 215CV01688LDGNJK, 2018 WL 2247279 (D. Nev. Jan. 26, 2018) ............. 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 555 (2007) ......................................................................................... 3

*Buck v. Am. Airlines, Inc.*,
   476 F.3d 29 (1st Cir. 2007) .................................................................................... 19

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*,
   637 F.3d 1047, 1063 n.4 (9th Cir. 2011) ................................................................. 2

*U.S. ex rel. Capriola v. Brightstar Educ. Grp., Inc.*,
   2013 WL 1499319 (E.D. Cal. Apr. 11, 2013) ....................................................... 17

*U.S. ex rel. Carmichael v. Gregory*,
   270 F. Supp. 3d 67 (D.D.C. 2017) ........................................................................ 13

*Chavez v. U.S.*,
   683 F.3d 1102 (9th Cir. 2012) ................................................................................. 2

*Coleman v. Hernandez*,
   490 F. Supp. 2d 278 (D. Conn. 2007) ................................................................... 15

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000) ............................................................................................... 20

*Cummings v. Hale*,
   No. 15-CV-04723-JCS, 2017 WL 3669622 (N.D. Cal. May 17, 2017), *report
   and recomm. adopted sub nom. U.S. ex rel. Cummings v. Hale*, No. 15-CV-
   04723-VC, 2017 WL 3669553 (N.D. Cal. Aug. 16, 2017) .................................. 13

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

*Doe v. Gormley*,
   No. CV ADC-15-2183, 2016 WL 4400301 (D. Md. Aug. 17, 2016) ................................... 14

*U.S. ex rel. Gionson v. NVWM Realty, LLC*,
   No. 218CV01409GMNGWF, 2019 WL 2617816 (D. Nev. June 25, 2019) ....................... 13

*In re GlenFed, Inc. Securities Litigation*,
   42 F.3d 1541 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*
   *as recognized in Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001) ......................... 12

*Green v. Konover Residential Corp.*,
   1997 WL 736528 (D. Conn. 1997) ................................................................... 19

*U.S. ex rel. Hendow v. University of Phoenix*,
   461 F.3d 1166 (9th Cir. 2006) ............................................................. 4, 5, 12

*Hill v. Richardson*,
   7 F.3d 656 (7th Cir. 1993) ....................................................................... 18

*U.S. ex rel. Holmes v. Win Win Real Estate, Inc.*,
   No. 13-02149, 2015 WL 6150594 (D. Nev. Oct. 19, 2015) ..................................... 14

*Janakes v. U.S. Postal Service*,
   768 F.2d 1091 (9th Cir. 1985) ................................................................... 18

*U.S. ex rel. Juan v. Regents of Univ. of California*,
   2018 WL 6168529 (N.D. Cal. Nov. 26, 2018), aff'd sub nom., 806 F. App'x
   596 (9th Cir. 2020) ............................................................................... 17

*Kelly v. Denault*,
   374 F. Supp. 3d 884 (N.D. Cal. 2018) ......................................................... 13

*Kirby v. Richmond Redevelopment and Hous. Auth.*,
   2005 WL 5864797 (E.D. Va. 2005) ........................................................... 19, 20

*U.S. ex rel. Lee v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) ................................................................... 17

*Leeson v. Transamerica Disability Income Plan*,
   671 F.3d 969 (9th Cir. 2012) ................................................................... 18

*U.S. ex rel. Mathis v. Mr. Property, Inc.*,
   No. 14-00245, 2015 WL 1034332 (D. Nev. Mar. 10, 2015) ................................... 14

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) ................................................................... 3

*Mocha Gunaratna v. Dr. Dennis Gross Skincare, LLC.*,
   No. CV202311MWFGJSX, 2024 WL 650422 (C.D. Cal. Jan. 26, 2024) ....................... 3

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

v

*Murphy v. National Collegiate Athletic Ass'n,*
  584 U.S. 453 (2018) ........................................................................................ 20

*Nelson v. City of Irvine,*
  143 F.3d 1196 (9th Cir. 1998) ............................................................................. 3

*U.S. ex rel. Price v. Peters,*
  66 F. Supp. 3d 1141 (C.D. Ill. 2013) .................................................................. 14

*Rescue Army v. Municipal Court of City of Los Angeles,*
  28 Cal.2d 460 (1946) ...................................................................................... 18

*Reyes-Garay, et al. v. Integrand Assurance Co. et al.,*
  818 F.Supp.2d 414 (Dist. P.R. 2011) ...................................................... 10, 19, 20

*U.S. ex rel. Richards v. R & T Invs. LLC,*
  29 F. Supp. 3d 553 (W.D. Pa. 2014) .................................................................. 14

*Richardson v. U.S.,*
  943 F.2d 1107 (9th Cir. 1991) ........................................................................... 18

*U.S. ex rel. Salvatore v. Fleming,*
  No. CIV.A. 11-1157, 2015 WL 1326327 (W.D. Pa. Feb. 23, 2015) ......................... 14

*U.S. ex rel. Schutte v. SuperValu, Inc.,*
  598 U.S. 739 (2023) .................................................................................... 6, 16

*Skyware, Inc. v. Abramson,*
  2012 WL 1980258 (N.D. Cal. 2012) ................................................................... 18

*U.S. ex rel. Stearns v. Lane,*
  No. 2:08-CV-175, 2010 WL 3702538 (D. Vt. Sept. 15, 2010) .......................... 14, 15

*U.S. ex rel. Sutton v. Reynolds,*
  564 F. Supp. 2d 1183 (D. Or. 2007) ................................................................... 14

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007) ....................................................................... 11, 16

*Thornton v. Portola Del Sol Operator, LLC,*
  No. 221CV01123APGBNW, 2023 WL 7412491 (D. Nev. Nov. 9, 2023) ................... 13

*U.S. ex rel. Tran v. Computer Scis. Corp.,*
  53 F. Supp. 3d 104 (D.D.C. 2014) ....................................................................... 4

*U.S. v. Aerojet Rocketdyne Holdings, Inc.,*
  381 F. Supp. 3d 1240 (E.D. Cal. 2019) ........................................................... 5, 15

*U.S. v. Baran,*
  No. CV1402639RGKAJWX, 2015 WL 5446833 (C.D. Cal. Aug. 28, 2015) ............... 14

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 2037
TELEPHONE (202) 677-4030
WWW.AGG.COM

*Ebeid ex rel. U.S. v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010)...................................................................................... 5, 12

*U.S. v. Sci. App. Int'l Corp.*,
    626 F.3d 1257 (D.C. Cir. 2010) ...................................................................................... 5

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
    579 U.S. 176 (2016) ............................................................................................ 4, 5, 6, 15

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)...................................................................................... 11

*Volis v. City of Los Angeles Housing Authority*,
    2014 WL 12704885 (C.D. Cal. 2014). Case ................................................................ 18

*U.S. ex rel. Wade v. DBS Invs., LLC*,
    No. 11-CV-20155, 2012 WL 3759015 (S.D. Fla. Aug. 29, 2012).............................. 14

*Willy v. Coastal Corp.*,
    503 U.S. 131 (1992) ...................................................................................................... 18

**Statutes**

31 U.S.C. § 3729 ................................................................................................. 4, 5, 6, 11, 15

42 U.S.C. § 1437f ....................................................................................... 1, 4, 7, 16, 18, 20

42 U.S.C. § 1437 .................................................................................................................. 7, 19

Claire M. Sylvia, The False Claims Act ................................................................................ 17

**Other Authorities**

24 CFR Part 982.................................................................................................... 1, 4, 11, 16

24 CFR § 5.603 ....................................................................................................................... 7

24 CFR § 305 ........................................................................................................................ 10

24 CFR § 982.1 ....................................................................................................................... 7

24 CFR § 982.4 .................................................................................................................... 7, 8

24 CFR § 982.302 ................................................................................................. 9, 10, 11, 16

24 CFR § 982.305 ..................................................................................................... 9, 10, 11

24 CFR § 982.309 ................................................................................................................... 7

24 CFR § 982.311 ................................................................................................................... 7

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 877.4030
WWW.AGG.COM

24 CFR § 982.401 ................................................................................................ 8, 9

24 CFR § 982.451 .............................................................................................. 10, 11

24 CFR §982.456 ...................................................................................... 10, 19, 20

24 CFR § 982.505 ................................................................................................. 10

24 CFR § 982.507 ........................................................................................ 7, 8, 10

24 CFR § 982.510 ................................................................................................... 9

24 CFR § 982.514 .............................................................................................. 7, 8

24 CFR § 982.515 .................................................................................................... 7

24 CFR § 982.517 ................................................................................................... 8

Fed. R. Civ. P. 9 .................................................................................................... 16

Fed. R. Civ. P. 12 ............................................................................................... 1, 2

Fed. R. Civ. P. 54 ................................................................................................. 20

U.S. Const. art. VI, cl. 2 ...................................................................................... 20

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

OWNER AND NON-OWNER DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

## I.    INTRODUCTION

In their First Cause of Action, Plaintiffs allege that the six named "FCA Defendants" defrauded the United States by presenting false or fraudulent claims to the United States Department of Housing and Urban Development (HUD) for payment under the federal Housing Choice Voucher (HCV) program, in violation of the False Claims Act (FCA). Plaintiffs are tenants whose housing is subsidized by the government through the HCV program, which is enacted at 42 USC § 1437f(o)(2) and governed largely by the regulations at 24 CFR Part 982. The FCA Defendants are two Owner Defendants, who rent to HCV tenants, and four non-Owner Defendants.[1] Pursuant to Fed. R. Civ. P. 12(c), FCA Defendants Wasatch Advantage Group, LLC, Wasatch Pool Holdings, LLC, and Chesapeake Apartment Holdings, LLC hereby move for judgment on the pleadings and dismissal of Plaintiffs' First Cause of Action, which is legally insufficient to state a claim as to each of them. Further, these FCA Defendants, as well as the other Owner and Non-Owner Defendants,[2] also hereby move for judgment on the pleadings and dismissal of Plaintiffs' state law claims, which are also legally deficient, as described in further detail below.

Plaintiffs allege that the FCA Defendants defrauded the United States by charging them for optional amenities beyond the amenities included in the amount of the "rent to owner" that the Owner Defendants and the Public Housing Authority (PHA) agreed to in the respective Housing Assistance Payment (HAP) Contracts, and treating these charges as "rent" under the lease. Without alleging violations of the specific regulations governing the HCV program, Plaintiffs further allege that the FCA Defendants certified that, "[e]xcept for the rent to owner, the owner has not received and will not receive any payments or other consideration … for rental of the contract unit during the

---

[1] The FCA Defendants are Wasatch Advantage Group, LLC; Wasatch Property Management; Wasatch Pool Holdings, LLC; Chesapeake Apartment Holdings, LLC; Logan Park Apartments, LLC; and Logan Park Apartments, LP.

[2] **Non-Owner Defendants** include Wasatch Advantage Group, LLC, Wasatch Premier Properties, LLC, Wasatch Pool Holdings, LLC, Wasatch Pool Holdings III, LLC; and **Owner Defendants** included Aspen Park Holdings, LLC, Bent Tree Apartments, LLC, California Place Apartments, LLC, Camelot Lakes Holdings, LLC, Canyon Club Holdings, LLC, Chesapeake Apartment Holdings, LLC, Courtyard at Central Park Apartments, LLC, Creekside Holdings, LTD, River Oaks Holdings, LLC, Heritage Park Apartments, LP, Peppertree Apartment Holdings, LP, Shadow Way Apartments, LP, and Wasatch Quail Run GP, LLC.

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

HAP Contract term." HAP, Part B, ¶ 8(d); Sixth Amended Complaint ("SAC"), ECF 331 at ¶ 237. Plaintiffs also allege that, but for these certifications, the PHAs would not have paid the rental subsidies for HCV tenants at the Owner Defendants' properties.[3] As a result, Plaintiffs argue, the government was defrauded in the full amount of all the payments that the PHAs made on behalf of all the HCV tenants at Defendants' properties between 2006 and November 30, 2022. (SAC, ¶ 244.)

While Plaintiffs have cast this as a False Claims Act lawsuit, their claim really concerns the Owner Defendants' alleged policies and practices regarding tenant payments, which they allege generally are "unlawful." Plaintiffs have transformed a landlord-tenant dispute over legitimate charges for additional amenities into a claim that the government was defrauded of hundreds of millions of dollars in federal housing assistance payments under the HCV program. The fact that the FCA is an inapt vehicle for this purpose in this case is evident on the face of the pleadings.

## II.    LEGAL STANDARD AND TIMELINESS

A party may move for judgment on the pleadings after the pleadings are closed, but before trial and early enough not to delay trial. Fed. R. Civ. P. 12(c). No trial date has been set in this case and this motion is being filed more than three months before the earliest date contemplated by the Court.[4] A motion under Rule 12(c) tests the legal sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1063 n.4 (9th Cir. 2011). Analysis under Rule 12(c) is "substantially identical" to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy. *See Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Mere

---

[3] Notably, and as discussed further *infra*, Plaintiffs never allege that the Defendant Owners *failed to disclose* the additional charges to the PHAs.

[4] Plaintiffs themselves moved for partial summary judgment on remedies after the Court's dispositive motion deadline and just two months before the Court's previous Final Pretrial Conference date of December 1, 2023. (ECF 323). Plaintiffs' stated reason for so moving (*i.e.,* that the "motion seeks to streamline that trial by moving for summary judgment on the issue of class damages.") applies equally to the instant motion.

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677.4030
WWW.AGG.COM

conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of action" are not sufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A motion for judgment on the pleadings is "properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998). Judgment on the pleadings is also proper when there is either a "lack of cognizable legal theory" or the "absence of sufficient facts alleged under a cognizable legal theory." *Mocha Gunaratna v. Dr. Dennis Gross Skincare, LLC.*, No. CV202311MWFGJSX, 2024 WL 650422, at *1 (C.D. Cal. Jan. 26, 2024) (quoting *Balistreti v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Plaintiff did not move for summary judgment on their FCA claim (ECF No. 242-1 at 10 n.1), and as the respective parties prepared for trial, critical issues became apparent, which resulted in Lewis Brisbois identifying a conflict of interest amongst defendants. (ECF No. 349-2 at 3). After becoming engaged on January 19, 2024, undersigned counsel requested a 90-day continuance of the Final Pretrial Conference and associated deadlines, which was opposed by Plaintiffs, (ECF Nos. 349 and 350), and the Court granted a 45-day continuance. (ECF No. 356). The FCA Defendants have "good cause" to modify the Court's scheduling order, because they have been diligent in seeking the relief requested herein, and have worked diligently to review the record and evidence in the case, have resolved entity ownership and representation issues not previously addressed, have submitted, with counsel for Plaintiffs and WPM, two joint pretrial statement submissions, as well as a subsequent joint pretrial statement as directed by the Court (ECF Nos. 352 and 378), and have participated in the Final Pretrial Conference on March 29, 2024. (ECF No. 380).

Further, the Court's scheduling order has been modified several times throughout this litigation, at the requests of Plaintiffs and Defendants. As a result, there is good cause to hear this motion, which is necessary to streamline the issues for trial, while such consideration would be consistent with prior practices in this litigation.

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

## III.   ARGUMENT

**A. Plaintiffs' Claims Against FCA Defendants Wasatch Advantage Group, LLC, Wasatch Pool Holdings, LLC, and Chesapeake Apartment Holdings, LLC For Violations of the False Claims Act Should be Dismissed.**

### 1.   Statement of the Laws Governing the Case.

#### i.   The False Claims Act.

The FCA was enacted to allow the federal government to recover losses sustained as a result of fraud. *See* 31 USC § 3729 *et seq.* The SAC alleges violations of 31 USC § 3729(a), but does not specify which of the seven violations (31 USC § 3729(a)(1)(A)-(G)) under the Act provides the basis for the claim. (SAC, at ¶¶ 231-245.) In ¶ 232, however, Plaintiffs state that the FCA "provides that any person who 'knowingly presents a false or fraudulent claim for payment or approval' to the United States is liable." (SAC, at ¶ 232.) Thus, Defendants infer that Plaintiffs intend for their cause of action to lie under 31 USC § 3729(a)(1)(A), which imposes liability on anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A); *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 193 (2016).

Plaintiffs only allege, however, that the FCA Defendants presented a false or fraudulent claim; *not* that they caused a false or fraudulent claim to be presented. (SAC, at ¶¶232, 239.) As a result, *based on their complaint*, Plaintiffs have *only* alleged *direct* liability by the *presenter* of the claim, not that any person or entity *caused* the presentation of a false or fraudulent claim. Under the statute, 42 USC §§ 1437f(f)(1) and 1437f(o)(2), the regulations, 24 CFR Part 982, and the HAP Contract, the only presenter of the claim – and the only party to the HAP Contract other than the PHA - is the owner of the property.

Claims under § 3729(a)(1)(A), or "presentment" claims, require that: "(1) the defendant submitted or caused to be submitted a claim to the government, (2) the claim was false, and (3) the defendant knew the claim was false." *See U.S. ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104, 117, 121-22 (D.D.C. 2014). A *false* claim requires: "(1) a false statement (or fraudulent course of conduct), (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1174

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

4

(9th Cir. 2006). A false or fraudulent claim may be based on: (1) a false certification, or (2) promissory fraud, also known as fraud in the inducement. *U.S. v. Aerojet Rocketdyne Holdings, Inc.*, 381 F. Supp. 3d 1240, 1245 (E.D. Cal. 2019); *see U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170-71 (9th Cir. 2006). A false certification claim rests on a false certification of compliance with the applicable federal statutes, regulations, or contractual terms, *U.S. v. Sci. App. Int'l Corp.*, 626 F.3d 1257, 1266 (D.C. Cir. 2010), and requires the plaintiff to allege that "(1) the Defendants explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though Defendants were not in compliance with that law, rule or regulation." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). The promissory fraud approach is broader and "holds that liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct." *Aerojet,* 381 F.Supp.3d at 1246; *See Hendow*, 461 F.3d at 1173. Under either approach, however, "the essential elements of [FCA] liability remain the same: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Hendow,* 461 F.3d at 1174. Regardless of whether Plaintiffs rely on a false certification or promissory fraud for their claim, the purported falsity turns on the HCV program requirements.

FCA liability for violations of statutory or regulatory requirements requires that the requirements were "material" to the decision to pay the claim. *See Escobar*, 579 U.S. at 181. Materiality, which is defined as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property," 31 U.S.C. § 3729(b)(4), is a "demanding" and "rigorous" standard. *See id.* at 194, 195 n.6. An actionable "false" representation or certification, therefore, is one that was "material" to the decision to pay the claim. A representation or certification is "material" if it was a necessary factor in the decision to pay the claim. Conversely, a false certification may not be actionable if the regulation or contractual requirement the claimant had falsely certified to was not a governing factor in the government's decision to pay the claim. *See*

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP

A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW., SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677.4030
WWW.AGG.COM

*generally Escobar*, 579 U.S. at 194. In both cases, however, the key questions are whether or not the government-payor knew of the alleged noncompliance, and whether or how that would have affected the decision to pay the claim.

Finally, FCA liability attaches to a false certification claim if "the defendant knowingly violated a requirement that the defendant *knows* is material to the Government's payment decision." *Id.* at 181. "Knowingly" means that a person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 USC § 3729(b)(1)(A). In *U.S. ex rel. Schutte v. SuperValu, Inc.*, the Supreme Court held that "[t]he FCA's scienter element refers to respondents' knowledge and subjective beliefs — not to what an objectively reasonable person may have known or believed." *U.S. ex rel. Schutte v. SuperValu, Inc.*, 598 U.S. 739, 749 (2023). Whether a person acted with scienter turns "on what the defendant knew when presenting the claim." *Id.* at 752.

Thus, in a presentment claim, all three elements – falsity, materiality, and scienter – turn on the requirements for payment, the defendants' compliance with those requirements, and the weight the government ascribes to those requirements in deciding whether to pay the claim. Putting aside the fact that Plaintiffs incorrectly allege that the FAC Defendants submitted claims under HAP Contacts with HUD, when in fact the HAP Contracts are with the PHAs, ( SAC, ¶¶236, 237,) the SAC fails even to identify the statutory, regulatory, and contractual requirements governing the HCV program, much less to allege how the FCA Defendants violated these requirements. Instead, Plaintiffs' FCA claim rests on (1) a definition of rent in the HCV program that does not exist in any statute, regulation, or the HAP Contract; (2) unalleged facts (*e.g., Plaintiffs fail to allege that the FCA Defendants concealed the additional charges from the PHAs*); and (3) unfounded speculation based on unalleged facts.[5]

---

[5] These defects in the SAC are particularly noteworthy because this is the *Sixth* Amended Complaint and other than adding the term "FCA" before the word "Defendants" in the Fifth Amended Complaint, Plaintiffs have not changed or added to their FCA claim in any meaningful respect. Plaintiffs' failure to amend or add evidence to support their allegations in their First Cause of Action – despite having received extensive discovery since filing the Original Complaint – is telling.

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

### ii.     The Statutory, Regulatory and Contractual Frameworks Governing the HCV Program.

The HCV program provides "tenant-based assistance" that enables low-income tenants to lease units on the private market, as long as the owner is willing to accept HCV tenants. *See* 42 USC §§ 1437f(f)(1) and (7) and 1437f(a) and (o)(2); 24 CFR § 982.1(b). Because the program depends on the willingness of private owners to rent to low-income tenants, it is designed to enable low-income tenants to meet the financial requirements for occupancy of a particular dwelling unit on the same basis as unassisted tenants.

Plaintiffs' claim that the stand-alone word "rent" is not defined anywhere in the relevant statutes or regulations is a red herring. In the context of federally-assisted housing, the word "rent" covers different types of subsidized tenancies under different programs with different requirements. Thus, the HCV regulations specifically define "rent to owner," "fair market rent," "family rent to owner," "gross rent," "initial rent to owner," and "reasonable rent," *as well as* such program-related terms as "family share," "housing assistance payment," "payment standard," and "utility allowance." *See* 24 CFR §§ 982.4(b), 982.309, 982.311, 982.507, 982.514, and 982.515. Other programs, such as the public housing program in 42 USC § 1437, frame "rent" differently. *See* 24 CFR § 5.603. In fact, both the public housing regulations and the HCV regulations expressly exclude the HCV program from the public housing definitions of "tenant rent," and "utility reimbursement," even though "utility reimbursement" is a term under both programs. *See id.*; 24 CFR § 982.4(a)(2).

The operative term under the HCV program is "*rent to owner*," which specifies that the rental amount is "for the unit." 24 CFR § 982.4(b).[6] "Rent to owner" has a specific meaning under the HCV program and is established individually in each case by what is included in the payment amount that is agreed to *by each owner and the PHA* in each HAP Contract. Under the HCV

---

[6] The word "rent," or some variation of (e.g., "rental," or "rented") appears in the HAP Contract 57 times. In 31 instances, the phrase is "rent to owner." In 15 instances, the word "rent" appears in a section, paragraph, or sentence clearly referring to the "rent to owner." The phrase "excess rent" appears once – in Part C of the HAP Contract.  The other 10 or so instances where the word "rent" appears include, e.g., "rent subsidy;" "unpaid rent;" "Changes in Lease or Rent," etc.

7

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677.4030
WWW.AGG.COM

program, the "owner" is "any person or entity with the legal right to lease or sublease a unit to a participant." 24 CFR § 982.4(b). "Rent to owner" or "[t]he total monthly rent payable to the owner under the lease for the unit," is the "payment for any housing services, maintenance and utilities that the owner is required to provide and pay for." 24 CFR §§ 982.4(b) and 982.507. The "housing services, maintenance and utilities" that the owner is *required* to pay for are specifically spelled out in the HCV Housing Quality Standards (HQS).[7] 24 CFR §§ 982.4(b) and 982.401 et seq. The "gross rent" is defined as "the sum of" the "rent to owner," plus any "utility allowance." 24 CFR § 982.4(b). The "utility allowance" that is reflected in the "gross rent" covers the cost of the utilities "that are necessary in the locality to provide housing that complies with the housing quality standards," and may not include "any allowance for non-essential utility costs, such as costs of cable or satellite television." 24 CFR § 982.517(a)(1) and (b)(2)(i). If all the utilities are included in the "rent to owner," the "rent to owner" and the "gross rent" are the same.[8]

The HQS-required amenities and services that *must be included* in the "rent to owner" are: hot and cold running water in both the bathroom and kitchen, including an adequate source of safe drinking water in the bathroom and kitchen; its own functioning bathroom or sanitary facility that is in proper operating condition and usable in privacy, containing a sink, a bathtub or shower, and an interior flushable toilet; smoke detectors; a living room and a kitchen area with a sink, cooking appliance, refrigerator, food preparation area, and food storage area; at least one bedroom or living/sleeping room for each two persons; standard carbon monoxide detectors; two working outlets or one working outlet and a permanent light within all habitable rooms; properly protected outlets; where applicable, a permanently installed heating source; a guardrail when there is an elevated walking surface with a drop off of 30 inches or greater; and a permanently mounted light

---

[7] For this reason, Plaintiffs' argument throughout this case that charges for in-unit washers and dryers, which are not included in the HQS, were required to be disclosed in the RFTA and the HAP Contract because they are "appliances" also fails. As the 2019 changes to both HUD-proscribed forms make clear, the *only* appliances the owner is "required" to provide are the refrigerator and range/microwave.

[8] The "utility reimbursement" is the amount of the "utility allowance" not included in the "rent to owner" and may be paid either to the family or to the utility supplier. 24 CFR § 982.514(b)-(c).

8

fixture in the kitchen and each bathroom. 24 CFR § 982.401.

In addition to the HQS-required amenities and services, however, the term "rent to owner" also encompasses any additional items and services that "are customarily included in rent in the locality or provided at no additional cost to unsubsidized tenants in the premises." 24 CFR § 982.510(c). In other words, the federal government does not subsidize amenities and services outside the HQS, *unless* the owner provides them at no additional charge, or as part of the rent.

If the owner provides amenities and services that are outside the HQS, such as reserved parking spaces, covered parking, internet access, cable, dish services, pet fees in-unit washers and dryers, in-unit dishwashers, credit checks, renter's insurance*, the owner *must* make them available to assisted tenants on the same basis that they are offered to unassisted tenants. Additional amenities and services may be included in the overall lease agreement between the owner and tenant, but are *not* included in the "rent to owner" in the HAP Contract because they are not part of HQS certification and do not affect the rent *for the unit*.

Before the PHA will approve a lease and execute a HAP Contract with the owner, the owner and the family must complete the Request For Tenancy Approval (RFTA), a PHA form that requires the owner and tenant to identify which utilities, other costs, and appliances are to be paid by the owner and which by the tenant.[9] The appliances and utilities that are required to be allocated between the owner and the family are the amenities and services required by the HQS, and the utilities are the utilities that are necessary to comply with the HQS. The tenant then submits the RFTA, along with a copy of the lease, including the HUD-prescribed tenancy addendum and other addenda that may be required under state or local law*, to the PHA. *See* 24 CFR § 982.302(c). The PHA may enter into a HAP Contract only if (a) the PHA has inspected and found that the unit meets the HQS, 24 CFR § 982.305(a)(2); (b) the gross rent for the unit is within the PHA's published

---

[9] Until 2019, the RFTA form and the HAP Contract (*see infra*) both stated that: "Unless otherwise specified below, the owner shall pay for all utilities and appliances provided by the owner." Since then, the form has stated: "Unless otherwise specified below, the owner shall pay for all utilities and provide the refrigerator and range/microwave."

9

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 877-4030
WWW.AGG.COM

payment standard for the family, 24 CFR § 982.505, or does not exceed 40 percent of the family's monthly adjusted income, 24 CFR § 305(a)(5); (c) the gross rent for the unit is reasonable, 24 CFR § 982.507(b)(1)-(2), and (d) the PHA has approved the lease.

Part A of the HAP Contract requires the owner to identify which appliances and utilities are to be paid by the owner and which by the tenant, and mirrors the respective owner and tenant responsibilities identified in the RFTA for the unit. Part B establishes the terms and conditions for the HAP Contract. Thus, the owner must maintain the contract unit and the premises in accordance with the HQS, and provide all utilities needed to comply with the HQS throughout the term of the lease. HAP Contract, Part B ¶ 3. The owner certifications include that: "Except for the *rent to owner*, the owner has not received and will not receive any payments or other consideration (from the family, the PHA, HUD, or any other public or private source) for *rental of the contract unit* during the HAP Contract term." HAP Contract, Part B, ¶ 8 (d) (emphasis added).

Part C of the HAP Contract, and its corollary in the lease, the HUD-form Tenancy Addendum, contain identical language but serve different purposes. Part C is between the PHA and Owner and the tenant has no rights under any part of the HAP Contract, including without limitation, Part C. 24 CFR § 982.456(c); *Reyes-Garay, et al. v. Integrand Assurance Co. et al.*, 818 F.Supp.2d 414 (Dist. P.R. 2011). The Tenancy Addendum, which must be made part of the lease, gives the tenant the right to demand the return of "any excess rent payment [for the unit]," which is defined as "any payment for rent of the unit in addition to the rent to owner." Part C ¶ 5(e), (f).

The PHA will not make any payment to the owner until the HAP Contract has been executed, will not execute the HAP Contract unless it has received and approved a copy of the lease agreement and all addenda, and must retain a copy of the executed lease and addenda for three (3) years after the lease has terminated. 24 CFR §§ 982.158(e)(1), 982.302(c), 982.305(c)(2).

### 2.    Plaintiffs' Have Failed to Allege the Required Elements of an FCA Violation

Plaintiffs have imported a non-legal, non-regulatory definition of "rent" into 24 CFR § 982.451(b)(4)(ii), which bars owners from demanding or accepting any rent payment from the tenant

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

in excess of the rent to owner. In fact, other than referring to 24 CFR Part 982 generally, 24 CFR § 982.451 is the *only* regulatory provision that is mentioned in the SAC. Using Plaintiff's definition, *which appears nowhere outside of this case*, Plaintiffs allege that charges for additional amenities outside of the HQS amenities subsidized by the government were "unlawful rent" under the HAP Contract. In effect, they further allege that *if* the PHAs had known of the additional charges, they would not have made HCV housing assistance payments to the Owner Defendants.[10] SAC, at ¶ 244.

a.       <em>Plaintiffs Have Failed to Allege Falsity.</em>

While Plaintiffs have alleged that "false or fraudulent claims" were presented, they have not actually alleged "falsity," but left it to be inferred from their allegations that Defendants' "demands" for payment of the additional charges were "unlawful." (*See* SAC, at ¶¶ 231-245.) However, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The pleading must provide an "account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).

Plaintiffs do not allege, as the statute states, that the FCA Defendants "knowingly present[ed] . . . a false or fraudulent claim for payment or approval." 31 USC § 3729(a)(1)(A). Instead, Plaintiffs allege that the FCA Defendants "agreed" and "also certified" to the terms of the HAP Contract, which they incorrectly allege was with HUD, rather than the PHA,[11] (SAC at ¶¶ 236-238); that they made "unlawful demands for collection of additional rent payments, (SAC at ¶¶ 239-240); and that the "representations and agreements" in the HAP Contracts with HUD, as well as their "endorsement

---

[10] Plaintiffs do not, however, allege the necessary predicate fact for this allegation – *i.e.,* that the additional services agreements were not disclosed to the PHAs. As discussed, *infra*, owners are required to provide the PHAs with the lease agreements before the PHA will execute the HAP Contract, and the PHA is required to keep a copy of the *executed* lease for at least three years after it has ended. 24 CFR §§ 982.158(e)(1), 982.302(c), 982. 305(c)(2) (emphasis added).

[11] In fact, as discussed *infra,* only two of the named "FCA Defendants" – specifically, only the actual Owners of the properties, Chesapeake Apartment Holdings, LLC and Logan Park, LLC – entered into and were parties to the HAP Contracts.

11

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677.4030
WWW.AGG.COM

and presentation for payment of each assistance check for each month" were "false claims[s] or representation[s] to the United States. (SAC at ¶¶ 242-243.)[12]

Plaintiffs fail to allege what is false or misleading about any statement, certification or representation, and *why* it is false. *See In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). Plaintiffs do not identify the specific content of the alleged false representations, the specific acts engaged in by any of the named Defendants, or how the charges for additional amenities violated any federal law or regulation. Instead, Plaintiffs create their own definition of rent, fit it to the additional service charges, and label the charges for these services "unlawful rent." On this slight basis, Plaintiffs allege that the "representations and agreements that FCA Defendants provided in their HAP Contracts," as well as their "endorsement and presentation for payment of each assistance check for each month," constituted "separate false claim[s] or representation[s] to the United States." (SAC at ¶¶ 242-243.)

A claim of "falsity" under the FCA does not rest on the subjective definition of a key term that has been designed to fit the Plaintiffs' claim, but on the statutes and regulations governing the contractual relationship between the government (*i.e.,* the PHA) and the claimant. Here, whether there has been an "excess rent payment" turns on what is covered by the "rent to owner" in the HAP Contract. To have alleged "falsity," Plaintiffs must have alleged that the charges for additional amenities were precluded by, or violated the HCV statutory and regulatory requirements governing the HAP Contract. *Ebeid*, 616 F.3d 993, 998 (9th Cir. 2010); *Hendow*, 461 F.3d at 1174.

Both Congress and HUD have clearly defined the HCV "rent to owner" as the total cost of the items and services listed in the HQS, plus any additional items and services customarily included in rent in the locality or provided at no additional cost to unassisted tenants. (*See, supra,* Section

---

[12] It is not clear whether Plaintiffs are relying on a false certification claim, a promissory fraud-in-the-inducement claim, or both. In either case, however, their allegations rest on the same allegation of falsity, which is based on the singular definition of "rent" advanced by Plaintiffs, and not on the regulatory and contractual definition of "rent to owner," which is the operative term under the HCV program.

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW., SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

III(A)(1)(ii).) Under this clear regulatory guidance, "excess rent" or unlawful "side payments" are *undisclosed* additional charges for items and services, that are in addition to the charges that the owner and the PHA have already agreed are included in the PHA's calculation of "rent to owner." Examples of "unlawful rent" under the HAP include, *e.g.*, a surcharge by the owner for the tenant to occupy or make full use of the unit or property; an additional charge for water or electricity usage; an additional charge for services like sewer and trash; an additional charge for an appliance required under the HQS, such as a stove or refrigerator; an additional charge for storage, or a charge for items and services that unassisted tenants are not also required to pay.

The courts that have addressed FCA false certification claims based on a HAP Contract have uniformly followed this approach, finding that "excess rent payments" are extra charges for items and services that are *already or should have been* included in the "rent to owner." *See, e.g., Thornton v. Portola Del Sol Operator, LLC*, No. 221CV01123APGBNW, 2023 WL 7412491, at *2 (D. Nev. Nov. 9, 2023) (owner required tenant to pay common area maintenance fees); *U.S. ex rel. Gionson v. NVWM Realty, LLC*, No. 218CV01409GMNGWF, 2019 WL 2617816, at *2 (D. Nev. June 25, 2019) (HAP Contract provided that owner was responsible for sewer and trash payments, but owner charged tenant $35 a month for these services); *Kelly v. Denault*, 374 F. Supp. 3d 884, 888 (N.D. Cal. 2018) (owner increased tenants' share of the water bill to 60%; increased the rent without seeking prior approval or notifying the PHA; and demanded $1,200 in allegedly delinquent utility payments); *U.S. ex rel. Benitez v. Galliano, LLC*, No. 215CV01688LDGNJK, 2018 WL 2247279, at *5 (D. Nev. Jan. 26, 2018) (HAP Contract rent to owner included fees for sewer and trash; landlord required tenant to sign separate agreement to pay higher amount, including for sewer and trash); *U.S. ex rel. Carmichael v. Gregory*, 270 F. Supp. 3d 67, 71–72 (D.D.C. 2017) (owner required tenant to execute undisclosed revised leases for monthly rents in excess of the amount permitted under the HAP Contract); *Cummings v. Hale*, No. 15-CV-04723-JCS, 2017 WL 3669622, at *2 (N.D. Cal. May 17, 2017), *report and recomm. adopted sub nom. U.S. ex rel. Cummings v. Hale*, No. 15-CV-04723-VC, 2017 WL 3669553 (N.D. Cal. Aug. 16, 2017) (under the HAP

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677.4030
WWW.AGG.COM

13

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW., SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 877-4030
WWW.AGG.COM

Contract, owner "agreed to pay for all utility and garbage service" for the apartment, but tenant paid for the utility and garbage service for the unit she was renting and also another unit, which she was not renting); *Doe v. Gormley*, No. CV ADC-15-2183, 2016 WL 4400301, at *1 (D. Md. Aug. 17, 2016) (after signing the lease and the HAP Contract, owner required tenant to pay an additional $411.00 per month); *U.S. v. Baran*, No. CV1402639RGKAJWX, 2015 WL 5446833, at *2 (C.D. Cal. Aug. 28, 2015) (owner demanded that tenant "pay extra rent directly to Defendant on the side;" side agreement was never disclosed to the PHA, and PHA continued to pay the rent agreed to in the HAP Contract); *U.S. ex rel. Salvatore v. Fleming*, No. CIV.A. 11-1157, 2015 WL 1326327, at *1–2 (W.D. Pa. Feb. 23, 2015), *report and recommendation adopted*, No. CIV.A. 11-1157, 2015 WL 1384653 (W.D. Pa. Mar. 25, 2015) (owner agreed to HAP rent and to pay for water and sewage; then required tenant to pay higher, unapproved rent, as well as water and sewage costs); *U.S. ex rel. Mathis v. Mr. Property, Inc.*, No. 14-00245, 2015 WL 1034332, at *5 (D. Nev. Mar. 10, 2015) (owner charged tenant $150 for pool maintenance fees); *U.S. ex rel. Holmes v. Win Win Real Estate, Inc.*, No. 13-02149, 2015 WL 6150594, at *5 (D. Nev. Oct. 19, 2015) (owner charged tenant for homeowner association fees and property management fees); *U.S. ex rel. Richards v. R & T Invs. LLC*, 29 F. Supp. 3d 553, 555–56 (W.D. Pa. 2014) (owner refused to pay for water and sewage agreed to in the HAP Contract, and required tenant to pay higher rent than the PHA had approved for the unit); *U.S. ex rel. Price v. Peters*, 66 F. Supp. 3d 1141, 1149 (C.D. Ill. 2013) (owner required tenant to make extra payments use of storage shed "that was part of the dwelling unit premises"); *U.S. ex rel. Wade v. DBS Invs., LLC*, No. 11-CV-20155, 2012 WL 3759015, at *3 (S.D. Fla. Aug. 29, 2012) (owner entered into an alternative lease with tenant for rent in excess of the amount approved by the HCV Program); *U.S. ex rel. Stearns v. Lane*, No. 2:08-CV-175, 2010 WL 3702538, at *1–2 (D. Vt. Sept. 15, 2010) (HAP rent included water charges and trash removal; owner required tenant to pay higher rent than PHA had approved, plus $50 for water); *U.S. ex rel. Sutton v. Reynolds*, 564 F. Supp. 2d 1183, 1187, 1189 (D. Or. 2007) (issue of fact existed as to whether charges for landscaping services were for increased taxes and utilities, which would have made them "side

14

rent"); *Coleman v. Hernandez*, 490 F. Supp. 2d 278, 280 (D. Conn. 2007) (landlord charged "additional rent" for water usage that was included in the PHA's calculation of the "rent to owner" and the "utility allowance").

The HAP Contract is between the owner and the PHA, not HUD. (*See e.g.*, SAC, Exhibit E, at 82.) The lease agreement is between the owner and the tenant. (*See e.g.*, *Id.* at 97 and Exhibit H at 137.) The Additional Services Agreement is between the owner and the tenant, and is part of the lease. (*See e.g.*, SAC, Exhibit H, at 141.) The services and amenities in the Additional Services Contracts are not included in the services and amenities required by the HQS or in the "rent to owner" under the HAP Contract (*see supra* Section III(A)(1)(ii)); nor have Plaintiffs alleged that the services and amenities in the Additional Services Contracts are provided to unassisted tenants on a different basis than HCV tenants. As a result, Plaintiffs have not alleged that these services are part of any "rent to owner" that is expressed in the HAP Contract; thus the charges are not "excess rent," and the certifications that the owners have not received any other payment or consideration for rental of the contract units are true and accurate as a matter of law.

     b.  *Plaintiffs Have Failed to Allege Materiality.*

Plaintiffs have also failed to allege that the alleged false or fraudulent claims were material. A falsehood is material if it has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Materiality looks to the effect on the behavior of the recipient of the alleged misrepresentation. *See Escobar,* 579 U.S. at 193. Evidence relevant to the materiality inquiry includes whether the government has knowledge of the alleged noncompliance. *Aerojet*, 381 F. Supp. 3d at 1246. There is no allegation in the SAC that the FCA Defendants failed to disclose the Additional Services Agreements to any of the PHAs, or that the PHAs were unaware that the owners charged for additional amenities and services.

An unfounded allegation that "the money … for the payment would not have been paid to the Defendants absent these false claims and fraudulent conduct" is not sufficient to meet the pleading requirements for materiality. ¶ 244. First, Plaintiffs have not alleged that charges for

ARNALL GOLDEN GREGORY LLP

A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW., SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 877-4030
WWW.AGG.COM

additional services outside the HQS requirements violate any requirements in 42 USC § 1437f(o), 24 CFR Part 982, or the HAP Contract. Second, Plaintiffs have not alleged that the Additional Services Agreements were not disclosed to the PHAs.[13]

Plaintiffs have failed to allege materiality and failed to allege the necessary predicate facts for a finding of materiality (*i.e.,* that the additional services agreements were concealed from the PHAs).

### c.    *Plaintiffs have Failed to Allege Scienter.*

Plaintiffs have also failed to plead that FCA Defendants possessed the scienter necessary to find a violation of the FCA. Plaintiffs have insisted that the claims were false or fraudulent based on a non-statutory, non-regulatory definition of "rent" that appears only in this case. Because "scienter" turns on what the defendants knew when presenting the claim, Plaintiffs cannot claim that the FCA Defendants' knowingly made false or fraudulent representations and certifications based on a subjective definition of "rent" that has no basis in the statute or regulations governing the HCV program. *See SuperValu, Inc.*, 598 U.S. at 749 ("[t]he FCA's scienter element refers to respondents' knowledge and subjective beliefs — not to what an objectively reasonable person may have known or believed.").

Accordingly, Plaintiffs have failed to allege that FCA Defendants knowingly presented a false claim to the government.

### ii.    **Plaintiffs' Failure to Allege Fraud Against the "FCA Defendants."**

The SAC alleges simply that the "FCA Defendants" violated the FCA, and fails to allege any particular defendant's involvement in the alleged scheme. A plaintiff must, at a minimum, identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Swartz,* 476 F.3d at 764. Fed. R. Civ. P. 9(b) "does not allow a complaint to merely lump multiple defendants together [i.e.,

---

[13] Each PHA specifies the procedure for requesting approval of the tenancy in its HUD-approved annual PHA Administrative Plan, and the request must be submitted in the form and manner required by the PHA. 24 CFR § 982.302(d). Only after the PHA has inspected the unit and approved the lease, will the PHA execute a HAP Contract with the owner.

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW., SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

"group pleading"] but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *U.S. ex rel. Juan v. Regents of Univ. of California*, 2018 WL 6168529, at *2 (N.D. Cal. Nov. 26, 2018), aff'd sub nom., 806 F. App'x 596 (9th Cir. 2020), (quoting *U.S. ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997–98 (9th Cir. 2011)); *see also* Claire M. Sylvia, The False Claims Act: Fraud Against the Government § 10:64 (4th ed. 2023). In the FCA context, it is particularly important that the relator raise allegations that each defendant itself violated a provision of the FCA. *See, e.g.*, *U.S. ex rel. Capriola v. Brightstar Educ. Grp., Inc.*, 2013 WL 1499319, at *10 (E.D. Cal. Apr. 11, 2013); *see also Corinthian Colleges*, 655 F.3d at 998 (dismissal appropriate where "[c]omplaint provides no additional detail as to the nature of the [i]ndividual [d]efendants' involvement in the fraudulent acts, but simply attributes wholesale all of the allegations against [one defendant] to the [i]ndividual [d]efendants").

First, as noted earlier, Plaintiffs have alleged only *direct* liability on the part of the FCA Defendants, *i.e.,* that they *presented* false or fraudulent claims, not that any of the defendants *caused* false or fraudulent claims to be presented. As a result of the Plaintiffs' pleading decisions, the only FCA Defendants who can be found liable under the FCA are the *presenters of the claims*. Both by law and under the HAP Contract, the presenters of the claims for payment are the owners of the property. Neither Wasatch Advantage Group, nor Wasatch Pool Holdings, are the owners of any real property involved in this case and, thus, they cannot be found liable under Plaintiffs' First Cause of Action.

Second, because Plaintiffs failed to allege that any FCA Defendant *caused* the submission of any false or fraudulent claims, Wasatch Advantage Group and Wasatch Pool Holdings also cannot be found liable under any theory of indirect liability.

**B. Plaintiffs' State Law Causes of Action Should be Dismissed.**

Plaintiffs' class claims under state law, alleging breach of written contract and violations of CLRA and UCL, stem from the assertion that defendants breached the HAP contracts by charging

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW., SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677.4030
WWW.AGG.COM

17

excess rent in violation of the federal HCV Program, also known as the HCV Program, overseen by HUD. (ECF 1, Compl.; ECF 331, SAC.) The class comprises individuals "who […] have participated in the 'Section 8' Housing Choice Voucher Program in connection with their tenancies at the California properties[…] and have paid additional charges set forth in Additional Services Agreements in excess of their individual portions of the contract set forth in the HAP Contracts." (*See* ECF 92, CCO; ECF 226, MCCO.)

Following partial summary judgment on liability, the Court determined that "additional charges outlined in the Additional Services Agreements constitute impermissible rent in violation of both the HAP contracts and federal law." (ECF 278, MSJO at 13:13-15) Subsequently, on partial summary judgment on remedies, Plaintiffs argued that these additional charges "constitute impermissible rent under HCV contracts and applicable regulations, and defendants therefore violated HCV contracts [] under the federal program." (ECF 352, MSJO – Remedies at 1:20-23)

The fundamental problem with Plaintiffs' state law claims is their lack of standing or a private right of action or remedy under the HAP contracts.[14] Specifically, "[f]ederal courts have consistently held that no private right of action arises under 42 U.S.C. § 1437f, the statute that authorizes housing assistance payments." *Volis v. City of Los Angeles Housing Authority*, 2014 WL 12704885, at *5 (C.D. Cal. 2014). Case law firmly establishes this principle, holding that HUD, as the administering agency, is responsible for enforcing HAP contracts, thus precluding private enforcement. *See, e.g., Hill v. Richardson*, 7 F.3d 656, 658 (7th Cir. 1993) ("[Section] 1437f does

---

[14] *Skyware, Inc. v. Abramson*, 2012 WL 1980258, at *1 (N.D. Cal. 2012) ("It is incumbent on the court to evaluate whether a litigant has standing, and the court may at any time dismiss claims sua sponte if the court determines that a litigant lacks standing."); *Willy v. Coastal Corp.*, 503 U.S. 131, 136-137 (1992) (federal courts are courts of limited jurisdiction; they possess only that power authorized by Constitution and statute); *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) ("federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists" over a given claim); *Richardson v. U.S.*, 943 F.2d 1107, 1113 (9th Cir. 1991) ("Subject matter jurisdiction cannot be conferred upon the courts by the actions of the parties and principles of estoppel and waiver do not apply."); *Janakes v. U.S. Postal Service*, 768 F.2d 1091 (9th Cir. 1985) ("parties cannot by stipulation or waiver grant or deny federal subject matter jurisdiction"); *Rescue Army v. Municipal Court of City of Los Angeles*, 28 Cal.2d 460, 464 (1946) ("A court has jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and it must have authority to decide that question in the first instance.").

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW., SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

not create a private right of action."); *Kirby v. Richmond Redevelopment and Hous. Auth.*, 2005 WL 5864797, *6-7 (E.D. Va. 2005) ("No express private right of action exists in [the Housing Act] or regulations enabling a voucher participant to enforce the provisions."); *Green v. Konover Residential Corp.*, 1997 WL 736528, at *8 (D. Conn. 1997) (finding no private right of action exists under Section 1437 because Congress' intention was that "HUD should enforce the required conditions by asserting its rights under the HAP contracts, thereby foreclosing private enforcement of the requirements under the Housing Act"); *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 (1st Cir. 2007) ("Regulations alone cannot create private rights of action; the source of the right must be a statute."); *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.").

Moreover, federal regulations "clearly state that tenants do not have a right to enforce [HAP contract] claims against HUD, the PHA or landlord." *Reyes-Garay v. Integrand Assur. Co.*, 818 F.Supp.2d 414, 432 (D.P.R. 2011). For instance, relevant regulations explicitly provide that a voucher tenant "is not a party to or a third party beneficiary of the HAP contract[,]"; "the family may not exercise any right or remedy against the owner under the HAP contract" [24 CFR § 982.456(b)(1)]; and "[t]he HAP contract shall not be construed as creating any right of the family or other third party (other than HUD) to enforce any provision of the HAP contract, or to assert any claim against HUD, the PHA or the owner under the HAP contract." 24 CFR § 982.456(c).

Equally important, an HCV tenant cannot use a lease's tenancy addendum to circumvent this legal preclusion of a private right of action. *See, e.g., Reyes-Garay*, 818 F.Supp.2d at 431-432 (rejecting plaintiffs' argument that 24 CFR § 982.456(b)(2) and the tenancy addendum allowed tenants to enforce the HAP contracts). Accordingly, federal statutory, regulatory, and case authority are conclusive that Plaintiffs do not have standing, any federal or state right of action, private or otherwise, to enforce the HAP contracts nor any remedy under federal or state law for an alleged breach of a HAP Contract, therefore, this Court lacks jurisdiction over the state law claims relating

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW , SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677 -4030
WWW.AGG.COM

19

1  to the HAP Contracts.

2       Additionally, Plaintiffs' state law claims for excess rent under the HAP Contracts are

3  preempted by federal law. The Supremacy Clause dictates that federal law is "the supreme Law of

4  the Land; and the Judges in every State shall be bound thereby." U.S. Const. art. VI, cl. 2. "This

5  means that when federal and state law conflict, federal law prevails and state law is preempted."

6  *Murphy v. National Collegiate Athletic Ass'n*, 584 U.S. 453, 471 (2018); *see also*, *Crosby v. Nat'l*

7  *Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("Even without an express provision for

8  preemption … state law is naturally preempted to the extent of any conflict with a federal statute.").

9  Here, the state law claims directly conflict with the above federal statute, regulations, and case law

10  confirming the absence of a private right of action to enforce HAP contracts. *See*, *e.g.*, 42 U.S.C. §

11  1437f; 24 CFR § 982.456(b)(1) and (c); *Reyes-Garay*, 818 F.Supp.2d at 431-432; *Kirby*, 2005 WL

12  5864797, *6-7. As a result, the state law claims are preempted.

13

14      Furthermore, district courts retain discretionary authority to revise interim orders before the

15  entry of a final judgment. *See*, *e.g.*, Fed. R. Civ. P. 54(b) ("any order or other decision, however

16  designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all

17  the parties does not end the action as to any of the claims or parties and may be revised at any time

18  before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

19  While the law of the case doctrine states that a court should not reopen issues decided in earlier

20  stages of the same litigation, the doctrine does not apply if the court is "convinced that [its prior

21  decision] is clearly erroneous and would work a manifest injustice." *Arizona v. California*, 460 U.S.

22  605, 618, n.8 (1983); *see also Askins v. U.S. Department of Homeland Security*, 899 F.3d 1035,

23  1042 (9th Cir. 2018) ("The law of the case doctrine does not preclude a court from reassessing its

24  own legal rulings in the same case."). Given the legal landscape and the absence of viable state law

25  claims in this action, Plaintiffs' state law claims for enforcement of the HAP contracts should be

26  dismissed.

27

28                         **IV.    CONCLUSION**

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677.4030
WWW.AGG.COM

This Motion is based on the Notice of Motion and Motion, the pleadings and record in the case, and any oral argument to be presented at the hearing on the motion.

Dated: April 12, 2024                    **ARNALL GOLDEN GREGORY LLP**


By: */s/ Richard T. Collins*
      Richard T. Collins
      Attorneys for Defendants:

      ASPEN PARK HOLDINGS, LLC; BENT TREE
      APARTMENTS, LLC; CAMELOT LAKE
      HOLDINGS, LLC; CALIFORNIA PLACE
      APARTMENTS, LLC; CANYON CLUB
      HOLDINGS, LLC; CHESAPEAKE
      APARTMENT HOLDINGS, LLC;
      COURTYARD AT CENTRAL PARK
      APARTMENTS, LLC; CREEKSIDE
      HOLDINGS, LTD; HERITAGE PARK
      APARTMENTS, LP; PEPPERTREE
      APARTMENT HOLDINGS, LP; RIVER OAKS
      HOLDINGS, LLC; SHADOW WAY
      APARTMENTS, LP; WASATCH
      ADVANTAGE GROUP, LLC; WASATCH
      PREMIER PROPERTIES, LLC; WASATCH
      QUAIL RUN GP, LLC; WASATCH POOL
      HOLDINGS, LLC; WASATCH POOL
      HOLDINGS III, LLC

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 877.4030
WWW.AGG.COM

OWNER AND NON-OWNER DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS