ARNALL GOLDEN GREGORY LLP
Richard T. Collins (Bar No. 166577)
rich.collins@agg.com
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, D.C. 20037
Telephone: (202) 677-4030

Attorney for Defendants:

ASPEN PARK HOLDINGS, LLC; BENT TREE
APARTMENTS, LLC; CAMELOT LAKE HOLDINGS,
LLC; CALIFORNIA PLACE APARTMENTS, LLC;
CANYON CLUB HOLDINGS, LLC; CHESAPEAKE
APARTMENT HOLDINGS, LLC; COURTYARD AT
CENTRAL PARK APARTMENTS, LLC; CREEKSIDE
HOLDINGS, LTD; HERITAGE PARK APARTMENTS,
LP; PEPPERTREE APARTMENT HOLDINGS, LP;
RIVER OAKS HOLDINGS, LLC; SHADOW WAY
APARTMENTS, LP; WASATCH ADVANTAGE GROUP,
LLC; WASATCH PREMIER PROPERTIES, LLC;
WASATCH QUAIL RUN GP, LLC; WASATCH POOL
HOLDINGS, LLC; WASATCH POOL HOLDINGS III,
LLC

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA | Case No.: 2:15-CV-00799-KJM-DB |
| | CLASS ACTION |
| Plaintiffs/Relators, | **OWNER AND NON-OWNER DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO MODIFY THE COURT'S AUGUST 16, 2021, BIFURCATION ORDER** |
| vs. | |
| WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON APARTMENTS, LP, BENT TREE APARTMENTS, LLC, CALIFORNIA PLACE APARTMENTS, LLC, CAMELOT LAKES HOLDINGS, LLC, CANYON CLUB HOLDINGS, LLC, COURTYARD AT CENTRAL PARK APARTMENTS, LLC, CREEKSIDE HOLDINGS, LTD, HAYWARD | Date:   May 17, 2024<br>Time:   10:00 AM<br>Dept:   Courtroom 3, 15th Floor<br>Before: Hon. Kimberley J. Mueller<br><br>Trial Date:   None Set |

SENIOR APARTMENTS, LP, HERITAGE PARK APARTMENTS, LP, OAK VALLEY APARTMENTS, LLC, OAK VALLEY HOLDINGS, LP, PEPPERTREE APARTMENT HOLDINGS, LP, PIEDMONT APARTMENTS, LP, POINT NATOMAS APARTMENTS, LLC, POINT NATOMAS APARTMENTS, LP, RIVER OAKS HOLDINGS, LLC, SHADOW WAY APARTMENTS, LP, SPRING VILLA APARTMENTS, LP, SUN VALLEY HOLDINGS, LTD, VILLAGE GROVE APARTMENTS, LP, WASATCH QUAIL RUN GP, LLC, WASATCH PREMIER PROPERTIES, LLC, WASATCH POOL HOLDINGS III, LLC, and DOES 1-4,

Defendants.

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE: (202) 877.4030
WWW.AGG.COM

## I.   INTRODUCTION

Owner and Non-Owner Defendants hereby request that the Court modify its August 16, 2021, Order bifurcating the case for discovery and trial by consolidating the defendants together for one trial and subjecting the parties and evidence to the same fact-finder or jury. (*See* Stipulation and Order Granting Leave to File Fifth Amended Complaint, Bifurcating the Case for Discovery and Trial, and Vacating Case Deadlines, ECF 135, hereinafter "Bifurcation Order".) Based on the current procedural posture of this case, the Bifurcation Order no longer serves the duel aims of judicial economy and avoiding prejudice.

## II.   PROCEDURAL POSTURE

This motion is non-dispositive and, therefore, timely and not contrary to the Court's previously issued scheduling orders. (*See e.g.*, ECF Nos. 103, 111, 126, 130, 132, 237, 279, 307, and 312.). Further, the Court can entertain requests to bifurcate or consolidate trials (as the case is here) under Fed. R. Civ. P. 42 up until the time of trial. *See Linton v. Angie's Inc.*, 288 F.R.D. 432, 434 (D.S.D. 2012), *aff'd sub nom. Heil v. Belle Starr Saloon & Casino, Inc.*, No. CIV. 09-5074-JLV, 2013 WL 943754 (D.S.D. Mar. 11, 2013) ("As the issues are generally not completely framed until after the scheduling deadlines have passed, it makes sense that a motion for consolidation would be made after the deadline for filing motions has passed but before trial."). As of this filing, a trial date has not been set and the Court has not issued a final pretrial order. Accordingly, now is the appropriate time for the Court to re-examine the issue of bifurcation, particularly in light of Plaintiffs' stated intentions for the Phase 1 trial.

Even if this motion was to be construed as a motion to modify the Court's previously issued scheduling order, Owner and Non-Owner Defendants maintain that there exists sufficient good cause for modification. Owner and Non-Owner Defendants were informed of a conflict of interest between Wasatch Property Management, Inc. ("WPM") and the remaining defendants on December 4, 2023, by their former counsel, Lewis Brisbois Bisgaard & Smith, LLP ("Lewis Brisbois"). (*See* Ex Parte Application For Brief 90-Day Continuance of the Final Pretrial

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677.4030
WWW.AGG.COM

Conference and All Associated Deadlines, ECF 349 at 4.) This conflict stems from the divergence of interests between WPM, as the property manager, and Owner and Non-Owner Defendants, which consist of legally distinct entities, who either: (1) directly own or owned property; (2) hold ownership interests in entities that own property; (3) have been dissolved as a matter of state law; or (4) own no real or personal property at all. (*See* Joint Pretrial Statement, ECF 378 at 7 n.5.)

A party may demonstrate "good cause" by promptly and diligently seeking to amend the scheduling order or explaining why circumstances beyond that party's control prevented compliance. *See B&G Foods N. Am., Inc. v. Embry*, No. 2:20-CV-00526-KJM-DB, 2024 WL 325364, at *1 (E.D. Cal. Jan. 29, 2024). "The court's decision is one of discretion," and while "[p]rejudice to another party may reinforce the court's decision to deny leave to amend . . . [the] Rule 16's standard primarily considers the diligence of the party seeking the amendment." *Id.* (internal quotes omitted).

Owner and Non-Owner Defendants have demonstrated diligence in seeking the relief requested herein. After becoming engaged on January 19, 2024, counsel for Owner and Non-Owner Defendants requested a 90-day continuance of the Final Pretrial Conference and associated deadlines, which was opposed by Plaintiffs. (*See* ECF Nos. 349 and 350). The Court granted Owner and Non-Owner Defendants a 45-day continuance, (ECF No. 356,) and since joining the case, counsel for Owner and Non-Defendants have (1) worked expeditiously to review the lengthy record, extensive documentary evidence, and deposition testimony; (2) worked collaboratively with counsel for Plaintiffs and WPM on two joint pretrial statement submissions, as well as a subsequent joint pretrial statement as directed by the Court (ECF Nos. 352 and 378); (3) worked to determine and resolve entity ownership and representation issues not previously addressed since the filing of the original complaint or subsequent amended complaints (ECF No. 368); and (4) attended the Final Pretrial Conference on March 29, 2024. (ECF No. 380).

Plaintiffs did not move for summary judgment on their FCA claim (ECF No. 242-1 at 10 n.1), and as a result, critical logistic issues arose related to Plaintiffs' intended presentation of their

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

FCA claim as the parties prepared for trial, which resulted in Lewis Brisbois identifying a conflict of interest amongst defendants. (ECF No. 349-2 at 3). After Lewis Brisbois disclosed the conflict, the conferences of counsel and competing positions set forth in the Joint Pretrial Statements have highlighted the necessity of modifying the Bifurcation Order to avoid the risk that Owner and Non-Owner Defendants will be severely prejudiced and deprived of their constitutional rights, as elaborated below. (*See infra* IV. Argument.)

Owner and Non-Owner Defendants diligently seek the requested relief, and there would be no prejudice to Plaintiffs. Plaintiffs have indicated they will argue in opposition to this motion that consolidating the Phase 1 and Phase 2 trials would necessitate reopening discovery. But Plaintiffs already intended to seek more discovery after the Phase 1 trial (*see* Bifurcation Order, ECF No. 135 at 6), they have stated that they intend to seek to re-open discovery and pursue relief against Owner and Non-Owner Defendants in a Phase 2 proceeding (*see e.g.*, ECF No. 378 at 34). Therefore, Plaintiffs would not be prejudiced even if the Court's consolidation of the Phase 1 and Phase 2 trials prompts Plaintiffs to seek to reopen discovery. Additionally, because no firm trial date has been set, Owner and Non-Owner Defendants' motion simply offers Plaintiffs the opportunity to seek discovery at this juncture that they already intended to seek later. (*See e.g.*, ECF No. 135 at 6 and 350 at 5.)

The Court's scheduling orders have been modified several times throughout this litigation at the requests of Plaintiffs and Defendants. This motion identifies key issues that require the Court's resolution because they directly impact how any subsequent trial(s) will proceed. There is good cause for the Court to hear this motion because the issues raised are critical to resolution of this litigation, and consideration of the issues presented would be consistent with prior practices applied to this litigation by all parties who previously sought to modify the Court's scheduling orders.

### III.     LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 42(b), "[f]or convenience, to avoid prejudice, or to expedite and

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). However, "when ordering a separate trial, the court must preserve any federal right to a jury trial." *Id.* The Seventh Amendment provides that "no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. And, "[i]n the context of a bifurcated trial, questions in a single suit can only be tried by different juries if they are so distinct and separable from the others that a trial of [them] alone may be had without injustice." *See U.S. v. J-M Mfg. Co., Inc.*, No. EDCV 06-55-GW(PJWX), 2018 WL 705532, at *6 (C.D. Cal. Jan. 31, 2018) (quoting *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1127 (7th Cir. 1999)) (internal quotes omitted).

Court's have found that "[b]ifurcation is inappropriate where the issues are so intertwined that separating them would tend to create confusion and uncertainty." *Est. of Hill by & through Grube v. NaphCare, Inc.*, No. 2:20-CV-00410-MKD, 2022 WL 2177679, at *2 (E.D. Wash. June 14, 2022) (internal quotes omitted). Further, courts often consider the following factors in determining whether to bifurcate proceedings:

> (1) whether the issues are significantly different from one another;
> (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted.

*NaphCare, Inc.*, 2022 WL 2177679 at *2.

## IV.    ARGUMENT

Under the current posture of this litigation, particularly with respect to trial of Plaintiffs' FCA claim, continuing with a bifurcation of these proceedings would unfairly prejudice Owner and Non-Owner Defendants by depriving them of their Seventh Amendment right to a trial by jury and create unnecessary confusion for the trier of fact. Plaintiffs have alleged that only the following six defendants have violated the FCA: Wasatch Advantage Group, LLC, Wasatch

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

Property Management, Inc., Wasatch Pool Holdings, LLC, Chesapeake Apartment Holdings, LLC, Logan Park Apartments, LLC, and Logan Park Apartments LP ("The FCA Defendants"). (*See* Sixth Amended Complaint ("SAC"), ECF No. 331 at 41.) This subset of defendants, as well as the FCA allegations specifically, presents several issues with respect to continuing with a bifurcated Phase 1 trial solely focused on WPM's liability.

First, Plaintiffs have not differentiated between the FCA Defendants in terms of what conduct was performed by what entity. (*See* SAC ¶¶231-245.) Each defendant in this litigation is a separate and distinct corporate entity, limited liability company, or limited partnership. While Plaintiffs claim that this case turns on WPM's conduct (*see* ECF No. 350 at 5), that theory does not align with specific allegations regarding the FCA claim that Plaintiffs intend to try. (*See* SAC ¶¶231-245.) For example, Plaintiffs and Owner and Non-Owner Defendants all acknowledged in their respective Points of Law filed with the Amended Joint Pretrial Statement, that FCA liability can attach to a party that *knowingly* presents or *causes* to be presented, a false claim for payment or approval to the government. (*See* ECF No. 378 at 67 and 115) (emphases added).  In the SAC, however, Plaintiffs have not charged FCA Defendants with *causing* a false claim to be presented. (*See* SAC ¶¶231-245.) Yet, Plaintiffs' still claim that they seek to hold non-WPM Defendants liable through a vicarious liability theory. (*See* ECF No. 378 at 33.)

Plaintiffs' failure to identify which FCA Defendants knowingly submitted false claims creates an issue in the context of a bifurcated proceeding because it is unclear how Plaintiffs intend to hold the non-WPM FCA Defendants liable in this case. All of the FCA Defendants have been charged with the same alleged wrongful conduct, and as currently situated, a Phase 1 trial will only adjudicate claims against one of these FCA Defendants. If WPM is found liable in a Phase 1 trial, under the current bifurcated model, Plaintiffs would likely seek to apply findings of fact in Phase 1 to any subsequent Phase 2 trial. To the extent that Plaintiffs seek to impose liability on WPM for submitting false claims to the government in a Phase 1 trial and then subsequently seek to hold the non-WPM FCA Defendants liable for *causing* false claim(s) to be submitted

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677.4030
WWW.AGG.COM

through WPM in a Phase 2 trial (even though such conduct is not alleged in Plaintiffs' FCA cause of action), the non-WPM FCA Defendants would necessarily be deprived of their right to defend themselves against all of the elements needed to establish a FCA violation, such as falsity and materiality, if they are not parties in a Phase 1 trial. (*See* Owner and Non-Owner Defendants' Points of Law, ECF 378 at 115-118 (describing elements of an FCA claim).) Thus, non-WPM FCA Defendants would face a scenario in Phase 2, where Plaintiffs allege that they caused false claims to be submitted through WPM, where key claims of falsity and materiality would already have been decided in a prior proceeding (i.e., Phase 1) for which they were not a named party.

Separately, if Plaintiffs seek to hold WPM liable in Phase 1, and then argue in Phase 2 that the non-WPM entities, not just those named in the FCA cause of action, are all liable, regardless of what entities owned property, submitted false claims to the government, or caused false claims to be submitted to the government, under a single enterprise theory, vicarious liability theory, or an alter ego theory, then a Phase 1 trial against WPM necessarily implicates the rights of all of the non-WPM Defendants by unlawfully treating them as WPM alter ego entities. Under this scenario, all non-WPM Defendants would face a Phase 2 trial where key findings of fact that attribute liability to them would have been made in a prior proceeding for which they were not named parties.

In short, to the extent Plaintiffs intend to apply findings of fact in a Phase 1 trial against WPM in any subsequent Phase 2 trial against the non-WPM Defendants, such a maneuver would deprive the non-WPM Defendants of their Seventh Amendment right to defend themselves at trial against key factual and legal findings that are in dispute. Mere participation by counsel for the non-WPM Defendants during the Phase 1 trial would not resolve this issue. If the non-WPM Defendants are not technically named parties in the trial itself, Owner and Non-Owner Defendants would be prejudiced in their counsel's ability to object, participate, or appeal any adverse decision or ruling.

If Plaintiffs do not intend to apply findings of fact from a Phase 1 trial in a Phase 2

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW., SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

proceeding, bifurcation would still contravene the stated goals of Rule 42 because the parties would be necessarily submitting evidence in Phase 2 that is inextricably intertwined with the Phase 1 trial, which would risk contradictory results from two different triers of fact.

Plaintiffs seek to hold WPM liable for conduct related to 68 different properties. (*See* Plaintiffs' Proposed Fact Stipulations, ECF No. 378 at 49.) However, many of these properties are owned by entities not named in Plaintiffs' FCA cause of action. Plaintiffs stated in their opposition to certain Defendants' Ex Parte Application for a 90 Day Continuance that they intend to hold "all Defendants" liable under alter ego principles, joint venture liability, or other grounds. (See ECF No. 350, at 5.) It is unclear, therefore, how Plaintiffs intend to seek FCA liability against Owner or Non-Owner Defendants not named in Plaintiffs' FCA cause of action who otherwise owned property and contracted with WPM, or how Plaintiffs intend to seek liability against defendants who neither owned property nor contracted with WPM. Should Plaintiffs oppose this contention in their response to this motion on the grounds that those questions have been bifurcated to Phase 2, that argument exemplifies the exact challenge posed by bifurcation at this time. If Owner and Non-Owner Defendants do not know how Plaintiffs intend to seek liability against them in Phase 2, Owner and Non-Owner Defendants have no way of knowing the implications of a Phase 1 trial or how they would be impacted by a finding of liability against WPM.

Lastly, the certifications at issue in determining WPM's liability under the FCA as a non-owner and property manager are the same certifications that would be at issue in any subsequent Phase 2 trial against owner and other non-owner entities. (*See* SAC, ¶¶231-245 (identifying the HAP Contracts as the certification.) Therefore, during a Phase 1 trial, Plaintiffs will necessarily need to put on evidence regarding the property owners themselves, which are the entities that actually made the certifications to the PHAs as parties to the HAP Contracts. (*See e.g.* SAC, Exhibit E, at 82 (showing Logan Park Apartments as "Owner" signed the HAP Contract for Plaintiff Roy Huskey).) Presenting evidence regarding non-WPM Defendants' culpability during a trial solely focused on WPM's liability will create unnecessary confusion for the jury.

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW., SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

1  Further, counsel for Plaintiffs have represented to Defendants' counsel that they intend to

2  seek liability against WPM based on a theory implicating "company-wide" practices and policies.

3  (*See* R. Collins Decl., Exhibit 1 at 4.) Such a theory would require evidence of WPM's

4  relationship not only with the non-WPM FCA Defendants but also the other defendants not named

5  in the FCA claim who may directly own real property subject to Plaintiffs' FCA claims. Plaintiffs

6  would thereby be able to use the bifurcation as a shield to limit their burden of proof during a

7  Phase 1 trial by introducing a theory to the jury that implicates the non-WPM Defendants, yet

8  simultaneously argue they do not have to meet any burden of proof as to those defendants, because

9  "only WPM" is on trial. The issue of liability for the FCA Defendants, and possibly every non-

10  WPM Defendant, are so intertwined with Plaintiffs' intended Phase 1 trial presentation that a

11  Phase 1 trial only against WPM would cause confusion and uncertainty for the trier of fact. *See*

12  *NaphCare, Inc.*, 2022 WL 2177679 at *2 ("[b]ifurcation is inappropriate where the issues are so

13  intertwined that separating them would tend to create confusion and uncertainty.").

14  As of this filing, a trial date has not been set and a final pretrial order has not been issued.

15  Plaintiffs would not be prejudiced by modifying the Bifurcation Order because re-opening

16  discovery, if Plaintiffs wish to do so, would enable them to pursue the discovery now that they

17  already intended to pursue at a later date for the Phase 2 trial.

### V.    CONCLUSION

Based on the foregoing, Owner and Non-Owner Defendants hereby request that the Court

modify its August 16, 2021, Order bifurcating the case for discovery and trial by consolidating the

defendants together for one trial and subjecting the parties and evidence to the same fact-finder or

jury.

1

2

Dated: April 12, 2024                         **ARNALL GOLDEN GREGORY LLP**

3

4

By:  */s/ Richard T. Collins*
          Richard T. Collins
          Attorneys for Defendants:

5

6

ASPEN PARK HOLDINGS, LLC; BENT TREE
APARTMENTS, LLC; CAMELOT LAKE
HOLDINGS, LLC; CALIFORNIA PLACE
APARTMENTS, LLC; CANYON CLUB
HOLDINGS, LLC; CHESAPEAKE
APARTMENT HOLDINGS, LLC;
COURTYARD AT CENTRAL PARK
APARTMENTS, LLC; CREEKSIDE
HOLDINGS, LTD; HERITAGE PARK
APARTMENTS, LP; PEPPERTREE
APARTMENT HOLDINGS, LP; RIVER OAKS
HOLDINGS, LLC; SHADOW WAY
APARTMENTS, LP; WASATCH
ADVANTAGE GROUP, LLC; WASATCH
PREMIER PROPERTIES, LLC; WASATCH
QUAIL RUN GP, LLC; WASATCH POOL
HOLDINGS, LLC; WASATCH POOL
HOLDINGS III, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE (202) 677-4030
WWW.AGG.COM

Owner And Non-Owner Defendants' Motion to Modify the Court's August 16, 2021 Bifurcation Order