Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800 | Fax (510) 835-1417

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Tel: (510) 834-3300 | Fax (510) 834-3377

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Tel: (510) 437-1863 | Fax (510) 437-9164

Attorneys for Plaintiffs and Relators and the Certified Classes
*[Additional Counsel for Relators listed on following page]*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON APARTMENTS, LP, BENT TREE APARTMENTS, LLC, CALIFORNIA PLACE APARTMENTS, LLC, CAMELOT LAKES HOLDINGS, LLC, CANYON | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:     May 17, 2024<br>Time:     10:00am<br>Dept:     Courtroom 3, 15th Floor<br>Before:   Hon. Chief Judge Kimberly J. Mueller<br><br>Trial Date:    None Set |

1    CLUB HOLDINGS, LLC, COURTYARD AT
     CENTRAL PARK APARTMENTS, LLC,
2    CREEKSIDE HOLDINGS, LTD, HAYWARD
     SENIOR APARTMENTS, LP, HERITAGE PARK
3    APARTMENTS, LP, OAK VALLEY
     APARTMENTS, LLC, OAK VALLEY HOLDINGS,
4    LP, PEPPERTREE APARTMENT HOLDINGS, LP,
     PIEDMONT APARTMENTS, LP, POINT
5    NATOMAS APARTMENTS, LLC, POINT
     NATOMAS APARTMENTS, LP, RIVER OAKS
6    HOLDINGS, LLC, SHADOW WAY
     APARTMENTS, LP, SPRING VILLA
7    APARTMENTS, LP, SUN VALLEY HOLDINGS,
     LTD, VILLAGE GROVE APARTMENTS, LP,
8    WASATCH QUAIL RUN GP, LLC, WASATCH
     PREMIER PROPERTIES, LLC, WASATCH POOL
9    HOLDINGS III, LLC,
     and DOES 1-4,
10
           Defendants.
11

12   Lindsay Nako (SBN 239090)
     lnako@impactfund.org
13   Lori Rifkin (SBN 244081)
     lrifkin@impactfund.org
14   Fawn Rajbhandari-Korr (SBN 315888)
     fkorr@impactfund.org
15   Meredith Dixon (SBN 346864)
     mdixon@impactfund.org
16   IMPACT FUND
     2080 Addison Street, Suite 5
17   Berkeley, CA 94704
     Tel: (510) 845-3473 | Fax: (510) 845-3654

18   Attorneys for Plaintiffs and Relators and the Certified Classes

19

20   Lawrence Anthony Organ (SBN 175503)
     larry@civilrightsca.com
21   CALIFORNIA CIVIL RIGHTS LAW GROUP
     332 San Anselmo Avenue
22   San Anselmo, CA 94960-2610
     Tel: 415-453-4740 | Fax: 415-785-7352

23   Attorneys for Relators

24

25

26

27

28

897461.8

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................1

II. BACKGROUND .................................................................................................1

    A. Relevant Procedural History ......................................................................1

    B. Moving Defendants' Lack of Diligence......................................................2

III. ARGUMENT .....................................................................................................4

    A. The Court Should Deny Moving Defendants' Motion for Judgment on the Pleadings as Extravagantly Untimely Under the Scheduling Orders and Rule 12(c). ..........4

    B. Moving Defendants' Arguments for Judgment on the Pleadings Lack Merit.......................6

        1. Judgment on the Pleadings for the False Claims Act Is Unsupported. ...................7

            a. Plaintiffs Have Adequately Pled—And Now Proven—Falsity. .................7

                i. The Allegations Support False Certification and Promissory Fraud.................7

                ii. Falsity Is Also Established by this Court's Summary Judgment Ruling and Defendants' Judicially Noticeable Admissions.................9

                iii. Moving Defendants' Attacks on This Court's Ruling Are Meritless. ............ 11

            b. Plaintiffs Have Adequately Pled Materiality. ............................................. 13

            c. Plaintiffs Have Adequately Pled Scienter. ................................................. 15

            d. Plaintiffs Adequately Allege Liability as to All the FCA Defendants. ...... 16

        2. The Court Has Jurisdiction over the Plaintiffs' State Law Claims........................ 18

            a. Plaintiffs Properly Brought State Law Causes of Action.......................... 18

            b. Plaintiffs' State Law Claims Are Not Preempted..................................... 20

IV. CONCLUSION ................................................................................................ 20

i

897461.8

1

## <u>TABLE OF AUTHORITIES</u>

2

3
**Page(s)**

**Federal Cases**

4

5
*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ........................................................................................................ 19

6

7
*Am. Soc. of Mech. Eng'rs v. Hydrolevel Corp.*,
  456 U.S. 556 (1982) ........................................................................................................ 18

8

9
*United States ex rel. Benitez v. Galliano, LLC*,
  No. 215-CV-01688, 2018 WL 2247279 (D. Nev. Jan. 26, 2018) ................................... 17

10
*Buck v. American Airlines, Inc.*,
  476 F.3d 29 (1st Cir. 2007) ............................................................................................. 19

11

12
*United States ex rel. Campie v. Gilead Scis.*,
  862 F.3d 890 (9th Cir. 2017) ............................................................................................. 7

13

14
*United States ex rel. Capriola v. Brightstar Educ. Grp., Inc.*,
  No. 1:11-CV-00135, 2013 WL 1499319 (E.D. Cal. Apr. 11, 2013) ............................... 18

15
*United States ex rel. Carmichael v. Gregory*,
  270 F. Supp. 3d 67 (D.D.C. 2017).................................................................................... 13

16

17
*Castillo-Antonio v. Iqbal*,
  No. 14-cv-03316, 2017 WL 3335682 (N.D. Cal. Aug. 4, 2017) ....................................... 5

18

19
*Chamberlan v. Ford Motor Co.*,
  314 F. Supp. 2d 953 (N.D. Cal. 2004).............................................................................. 20

20
*Coll. Loan Corp. v. SLM Corp., a Del. Corp.*,
  396 F.3d 588 (4th Cir. 2005) ........................................................................................... 20

21

22
*United States ex rel. Ellis v. Jing Shu Zheng*,
  No. 216CV01447, 2018 WL 1074483 (D. Nev. Feb. 26, 2018) ................................. 8, 10, 14, 17

23

24
*English v. Gen. Elec. Co.*,
  496 U.S. 72 (1990) .......................................................................................................... 20

25
*Est. of Smith v. Cash Money Recs., Inc.*,
  No. 14CV2703, 2018 WL 2224993 (S.D.N.Y. May 15, 2018)........................................... 6

26

27
*United States ex rel. Feldman v. van Gorp*,
  697 F.3d 78 (2d Cir. 2012) .............................................................................................. 13

28

897461.8

*Fleming v. Pickard,*
   581 F.3d 922 (9th Cir. 2009) ......................................................................... 6

*Foster v. Nevada,*
   No. 219-CV00969, 2022 WL 4112246 (D. Nev. Aug. 15, 2022) ................................. 4, 5

*Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.,*
   304 F.R.D. 170 (S.D.N.Y. 2014) ...................................................................... 4

*Garza v. Nat'l R.R. Passenger Corp.,*
   418 F. Supp. 3d 644 (W.D. Wash. 2019) ............................................................ 20

*Geier v. American Honda Motor Co.,*
   529 U.S. 861 (2000) .................................................................................... 20

*Gerritsen v. Warner Bros. Ent. Inc.,*
   112 F. Supp. 3d 1011 (C.D. Cal. 2015) .............................................................. 8

*United States ex rel. Ginger v. Ensign Grp., Inc.,*
   No. 815-CV-00389, 2022 WL 4110166 (C.D. Cal. Mar. 10, 2022) .............................. 17

*Green v. Konover Residential Corp.,*
   1997 WL 736528 (D. Conn. Nov. 24, 1997) ......................................................... 19

*Harris v. County of Orange,*
   682 F.3d 1126 ..................................................................................... 7, 11

*United States ex rel. Haskins v. Omega Inst.,*
   Inc., 11 F. Supp. 2d 555 (D.N.J. 1998) .............................................................. 17

*Hill v. Richardson,*
   7 F.3d 656 (7th Cir. 1993) ........................................................................... 19

*Hines v. Davidowitz,*
   312 U.S. 52 (1941) .................................................................................... 20

*Hollins v. Walmart Inc.,*
   67 F.4th 1011 (9th Cir. 2023) ........................................................................ 20

*United States ex rel. Holmes v. Win Win Real Est., Inc.,*
   No. 213CV02149, 2015 WL 6150594 (D. Nev. Oct. 19, 2015) .......................... 12, 14, 16

*Ideal Steel Supply Corp. v. Anza,*
   652 F.3d 310 (2d Cir. 2011) .......................................................................... 6

*Johnson v. Mammoth Recreations, Inc.,*
   975 F.2d 604 (9th Cir. 1992) ......................................................................... 4

*United States ex rel. Juan v. Regents of Univ. of Cal.,*
   No. 16-CV-04934-CW, 2018 WL 6168529 (N.D. Cal. Nov. 26, 2018) ......................... 18

iii

*Kelly v. Denault,*
   374 F. Supp. 3d 884 (N.D. Cal. 2018)..................................................................... 8, 13

*Kirby v. Richmond Redevelopment & Hous. Auth.,*
   No. 3:04-CV-791, 2005 WL 5864797 (E.D. Va. Sept. 28, 2005)................................... 19

*Kristensen v. Credit Payment Servs. Inc.,*
   No. 212-CV00528, 2015 WL 12966283 (D. Nev. Mar. 17, 2015) .................................. 4

*Link v. Wabash R. Co.,*
   370 U.S. 626 (1962) ............................................................................................. 5

*Longberg v. City of Riverside,*
   300 F. Supp. 2d 942 (C.D. Cal. 2004) ..................................................................... 6

*United States ex rel. Mathis v. Mr. Prop., Inc.,*
   No. 2:14-CV-00245, 2015 WL 1034332 (D. Nev. Mar. 10, 2015)................................ 12

*Matrixx Initiatives, Inc. v. Siracusano,*
   563 U.S. 27 (2011) ............................................................................................. 14

*Murphy v. Dep't of Air Force,*
   326 F.R.D. 47 (D.D.C. 2018) ................................................................................. 6

*United States ex rel. Oliver v. Parsons, Co.,*
   195 F.3d 457 (9th Cir. 1999)................................................................................. 7

*Onyx Pharms., Inc. v. Bayer Corp.,*
   No. C-09-2145, 2011 WL 4527402 (N.D. Cal. Sept. 21, 2011)..................................... 5

*United States ex rel. Price v. Peters,*
   66 F. Supp. 3d 1141 (C.D. Ill. 2013) ..................................................................... 12

*Reyes-Gray v. Integrand Assurance Company,*
   818 F. Supp. 2d 414 (D.P.R. 2011). ...................................................................... 19

*United States ex rel. Rosales v. San Francisco Hous. Auth.,*
   173 F. Supp. 2d 987 (N.D. Cal. 2001)................................................................... 17

*United States ex rel. Schutte v. SuperValu Inc.,*
   598 U.S. 739 (2023) ..................................................................................... 15, 16

*United States ex rel. Silingo v. Wellpoint, Inc.,*
   904 F.3d 667 (9th Cir. 2018).................................................................. 7, 8, 10, 16

*United States ex rel. Sutton v. Reynolds,*
   564 F. Supp. 2d 1183 (D. Or. 2007)................................................................. 13, 16

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) ............................................................................... 16

897461.8

*Sweden v. Melius,*
   No. CV 14-04492, 2015 WL 7573622 (C.D. Cal. Nov. 25, 2015) ................................................ 5

*United States v. Aerojet Rocketdyne Holdings, Inc.,*
   381 F. Supp. 3d 1240 (E.D. Cal. 2019) ...................................................................... 14

*United States v. Baran,*
   No. CV1402639RGKAJWX, 2015 WL 5446833 (C.D. Cal. Aug. 28, 2015) ........................... 16

*United States v. Corinthian,*
   655 F.3d 984 (9th Cir. 2011) ........................................................................................ 18

*Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.,*
   953 F.3d 1108 (9th Cir. 2020) ...................................................................................... 15

*Universal Health Servs., Inc. v. United States ex rel. Escobar,*
   579 U.S. 176 (2016) .......................................................................................... 9, 13, 14

*Velez v. Cuyahoga Metro. Hous. Auth.,*
   795 F.3d 578 (6th Cir. 2015) .................................................................... 11, 12, 13, 14

*Volis v. City of Los Angeles Hous. Auth.,*
   2014 WL 12704885 (C.D. Cal. Jan. 7, 2014) .......................................................... 19

*Winter Enters., LLC. V. W. Bend. Mut. Ins. Co.,*
   No. 1:17-cv-360, 2019 WL 3413907 (S.D. Ohio July 29, 2019) .............................. 4, 6

*Zone Sports Ctr., LLC v. Rodriguez,*
   No. 1:11-CV-00622, 2016 WL 224093 (E.D. Cal. Jan. 19, 2016) ............................... 4

**Federal Statutes**

False Claims Act ...................................................................................................... *passim*

31 U.S.C.
   § 3729(a)(1) ........................................................................................................ 17
   § 3729(a)(1)(A) ..................................................................................................... 7
   § 3729(b)(1)(B) ................................................................................................... 15
   § 3729(b)(4) ........................................................................................................ 13

42 U.S.C.
   § 1437f .................................................................................................................. 19
   § 1437f(a) ............................................................................................................ 13

897461.8

**Rules**

Fed. R. Civ. P.
8 ................................................................................................................. 18
9(b) ...................................................................................................... 7, 15, 16
12(c) ........................................................................................................ *passim*
16 ................................................................................................................... 4
16(b)(4) ........................................................................................................... 4
30(b)(6) ........................................................................................................... 3

Fed. R. Ev.
201(b)(2) ........................................................................................................ 11

**Regulations**

24 C.F.R.
§ 982.4 ........................................................................................................... 12
§ 982.162(a)(2) ........................................................................................ 14, 18
§ 982.305(a)(3) .............................................................................................. 18
§ 982.308(f) ................................................................................................... 18
§ 982.308(f)(2) ............................................................................................... 19
§ 982.451 ....................................................................................................... 14
§ 982.451(b)(4)(ii) ........................................................................................... 9
§ 982.456(b)(2) .............................................................................................. 19

**Other Authorities**

5C Wright & Miller, *Federal Practice and Procedure* § 1367 .......................... 5

897461.8

# I.   **INTRODUCTION**

The Court should reject this extraordinarily untimely Motion for Judgment on the Pleadings, filed eight years into active litigation, two years after the dispositive motion deadline, and two weeks after the Final Pretrial Conference for the Phase 1 trial.  Faced with an imminent trial on a well-developed record, Defendants improperly ask the Court to turn back the clock and ignore its existing rulings on dispositive motions, Defendants' own judicial admissions, and the evidentiary record.

Not only did Defendants have ample opportunity to raise dispositive arguments before the April 2022 deadline—in fact all Defendants in the case *did* previously litigate some of the same issues that the subset of Defendants filing this Motion  ("Moving Defendants") now seek to reopen.  Represented by their former counsel Lewis Brisbois, Defendants filed both a motion to dismiss and a motion for summary judgment on all claims, arguing (as Moving Defendants do again) that the additional service fees charged to Section 8 tenants cannot be considered rent charges in violation of the HAP Contract and federal law. Defendants' motion for summary judgment also argued that tenants did not have a right to enforce the HAP Contract.  The Court rightly rejected both arguments.  Summ. J. Order 9-14, ECF No. 278.  Defendants present no legitimate basis to relitigate those issues or challenge any other aspect of the pleadings at this late stage.

The Court should deny the instant motion due to its untimeliness alone.  If the Court does reach the merits, it should deny the motion because the operative complaint, together with Defendants' judicially noticeable admissions, establish that Plaintiffs have alleged meritorious claims.

# II.   **BACKGROUND**

## A.   **Relevant Procedural History**

This case has been actively litigated since June 2016, when summons were issued to the six original Defendants, and the only FCA Defendants: Wasatch Property Management, Inc. ("WPM"), Wasatch Advantage Group, LLC, Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings LLC, Logan Park Apartments, LLC, and Logan Park Apartments, LP (collectively, "FCA Defendants").  *See* ECF Nos. 1, 2. In its July 21, 2017 order on the motion to dismiss, the Court summarized the core of Plaintiffs' claims: that the additional service fees "constitute impermissible rent under the Section 8 contracts and regulations, and

897461.8

1  defendants therefore violated the Section 8 contracts and submitted false claims for reimbursement under

2  the federal program." ECF No. 61.

3      Phase 1 fact discovery regarding liability closed on February 18, 2022, expert discovery closed on

4  March 21, 2022, and the deadline to file a dispositive motion was April 22, 2022. ECF Nos. 219, 237. On

5  the dispositive motion deadline, the Parties filed cross motions for summary judgment. ECF Nos. 241,

6  242. In arguing that the additional service fees at issue in this case were not rent, Defendants' motion

7  (brought by all Defendants, including Moving Defendants) extensively reviewed Section 8 regulations and

8  program structure, including the Housing Quality Standards, the HAP Contract, and the term "rent to

9  owner." ECF No. 241 at 3-7.

10      On November 23, 2022, the Court issued granted Plaintiffs' partial summary judgment motion in

11  its entirety. Summ. J. Order 18. Applying the federal common law definition of "rent," the Court held that

12  the additional service fees were unlawful excess rent due to WPM's undisputed policies and practices

13  which required Section 8 tenants to pay those charges to maintain their tenancies. *Id.* at 12-13.

14      The Parties proceeded to remedies discovery. The Court did not set a dispositive motion deadline

15  regarding remedies. *See* ECF No. 279. Plaintiffs moved for partial summary judgment regarding remedies

16  on October 6, 2023, following the close of expert discovery, when it became clear that there was no factual

17  dispute affecting the proper calculation of class damages. *See* ECF No. 323. The Court granted Plaintiffs'

18  motion on February 1, 2024. ECF No. 352.

19      The Court held the Final Pretrial Conference for the Phase 1 trial on March 29, 2024 and discussed

20  setting trial as early as July 30, 2024. ECF No. 380; Final Pretrial Conf. Tr., 23:11-15, ECF No. 384. The

21  Parties are currently awaiting a confirmation of this date. *See* Suppl. Joint Pretrial Statement, ECF No. 386.

22  **B.    Moving Defendants' Lack of Diligence**

23      Through their former counsel, FCA Defendants have defended against the claims in this litigation

24  since they were summoned in June 2016. FCA Defendants filed both their answer and a motion to dismiss

25  on September 14, 2016. ECF Nos. 26-27. The remaining Moving Defendants (except Wasatch Quail Run

26  GP LLC) filed their answers through Lewis Brisbois between November 29, 2021 and January 28, 2022.

27  ECF Nos. 167, 187, 201, 205, 232. All Defendants filed a single motion for summary judgment on the

28  dispositive motion deadline of April 22, 2022.

Over a year ago, Orlando Cabrera of Arnall, Golden & Gregory ("AGG") became involved in the defense of this case. Mr. Cabrera attended the March 2023 settlement conference as "Consulting Counsel for Wasatch Property Management." ECF No. 293. Two months later, he also attended the Rule 30(b)(6) deposition of Janae Jarvis, the President of WPM. *See* Decl. of Anne Bellows, filed herewith, ¶ 1 & Ex. A. Mr. Cabrera also edited a draft stipulation regarding HAP Contracts in the summer of 2023. Bellows Decl. Opp'n *Ex Parte* Appl. ¶ 4, ECF No. 350-1.

At the hearing on Plaintiffs' motion for partial summary judgment regarding remedies on December 8, 2023, defense counsel Ryan Matthews informed Plaintiffs and the Court that new counsel may be substituting in for some of the entities. *See* ECF No. 332. In a conversation outside the courtroom, Mr. Matthews identified the new counsel as Mr. Cabrera's law firm. Bellows Decl. Opp'n *Ex Parte* Appl. ¶ 5, ECF No. 350-1. Two weeks later, Mr. Matthews informed Plaintiffs and the Court that Lewis Brisbois would serve as trial counsel for all Defendants after all. ECF No. 335.

On January 29, however, twelve Defendants substituted in AGG as counsel[1] and filed an *ex parte* application for a 90-day continuance. ECF No. 349. With that filing, Defendants claimed for the first time that Lewis Brisbois could not represent all Defendants due to a purported conflict of interest disclosed on December 4, 2023—though they did not explain why they had later agreed that Lewis Brisbois would serve as lead counsel for all Defendants at trial. *Compare id.* at 5 *with* ECF No. 335. Noting the "last-minute request," the Court granted a shorter six-week continuance. ECF No. 356.

Moving Defendants filed the instant motion on April 12, 2024—more than a year after Mr. Cabrera made his first appearance in this case as "Consulting Counsel for Wasatch Property Management," two years after the dispositive motion deadline for Phase 1 merits, two years after all Defendants filed their motion for summary judgment, and approaching eight years after the FCA Defendants filed their first answer and their motion to dismiss to the original Complaint.

---

[1] The January 29 notices of substitution were all signed by Dell Loy Hansen, the "President and Chief Executive Officer of the Wasatch Group." *See* https://www.wasatchgroup.com/our-founder/ (last accessed Apr. 17, 2024); Notices of Substitution, ECF Nos. 337-48. WPM is a "division" of the Wasatch Group. *See* https://www.wasatchgroup.com/divisions/ (last accessed Apr. 17, 2024).

### III.   ARGUMENT

**A.   The Court Should Deny Moving Defendants' Motion for Judgment on the Pleadings as Extravagantly Untimely Under the Scheduling Orders and Rule 12(c).**

This Motion is irredeemably late under both the Court's scheduling orders and Rule 12(c).

A scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "Rule 16's 'good cause' standard primarily considers the diligence of the party seeking the amendment."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Moving Defendants cannot show good cause to permit the filing of a dispositive motion two years after the April 22, 2022 deadline.  *See* ECF No. 237; *Winter Enters., LLC. V. W. Bend. Mut. Ins. Co.*, No. 1:17-cv-360, 2019 WL 3413907, at *2 (S.D. Ohio July 29, 2019) (Rule 12(c) motion was untimely when filed "over two months after the deadline for dispositive motions" and Defendants could have raised the arguments in their summary judgment motion).  As justification for their bold request, Moving Defendants point to their own decision to change counsel just days before the pretrial filing deadline.  *See* Mem. P. & A. re Mot. for J. on the Pleadings ("MJOP") 3, ECF No. 387-1.  But "[s]ubstitution of new counsel is not grounds to grant a motion which could have and should have been filed within the deadlines established by the court's scheduling order."  *Kristensen v. Credit Payment Servs. Inc.*, No. 212-CV00528, 2015 WL 12966283, at *1 (D. Nev. Mar. 17, 2015); *see also Foster v. Nevada*, No. 219-CV00969, 2022 WL 4112246 (D. Nev. Aug. 15, 2022) (reassignment of case to new attorney after first attorney failed to timely file motion was not good cause to modify scheduling order).

Any claim to diligence is defeated by the reality that  Moving Defendants' new arguments regarding the sufficiency of the pleadings are necessarily "based on information that the party knew, or should have known, in advance of the motion deadline."  *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 174-75 (S.D.N.Y. 2014) (citations and quotations omitted).  "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  *Johnson*, 975 F.2d at 609.  Contrary to Moving Defendants' focus on AGG's actions after entering the case, the diligence inquiry focuses on the *party* rather than their counsel.  *See, e.g., Zone Sports Ctr., LLC v. Rodriguez*, No. 1:11-CV-00622, 2016 WL 224093, at *5 (E.D. Cal. Jan. 19, 2016) ("An eleventh-hour case evaluation by newly retained counsel ... does not demonstrate diligence during the course of the litigation.").  Further, Moving

1   Defendants have not shown even that AGG acted diligently, as the Motion was filed more than a year after

2   AGG's first involvement in the case, over four months after Defendants first disclosed their plans to

3   substitute in AGG as counsel, and two weeks after the Final Pretrial Conference.  *See* ECF Nos. 293, 332.

4         Moving Defendants attempt to excuse their extraordinary delay based on a still-unidentified conflict

5   of interest among Defendants, which they allege their prior counsel discovered during trial preparation.

6   But Moving Defendants do not claim this sudden revelation was based on any new information they could

7   not have discovered earlier—nor that the alleged conflict somehow prevented them from timely raising any

8   of the arguments made in the Motion.  Attorney mistake is not grounds for relief from the scheduling order.

9   *See, e.g.*, *Onyx Pharms., Inc. v. Bayer Corp.*, No. C-09-2145, 2011 WL 4527402, at *2 (N.D. Cal. Sept. 21,

10   2011) ("Carelessness and/or change in litigation strategy do not amount to diligence."); *Castillo-Antonio v.*

11   *Iqbal*, No. 14-cv-03316, 2017 WL 3335682, at *3 (N.D. Cal. Aug. 4, 2017) ("The Ninth Circuit has

12   repeatedly 'refus[ed] to provide relief on account of excusable neglect to ... attorney-based mistakes of

13   law.'" (citing cases)); *Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962) (A party who "voluntarily chose

14   this attorney as his representative in the action . . . cannot now avoid the consequences of the acts or

15   omissions of this freely selected agent.").

16         The Motion is also untimely under Rule 12(c) to the extent it results in a postponement of trial,

17   which is set to begin as early as July 2024.  *See* Final Pretrial Conf. Tr., 23:11-15, ECF No. 384.  The Court

18   already understandably expressed concern that it "may take some time" to consider Moving Defendants'

19   belated motions.  *Id.* 19:9-13, 20:3-4.  To avoid any delay to the trial, the Court should swiftly deny this

20   motion on untimeliness alone.  *See, e.g.*, *Foster*, 2022 WL 4112246 at *1 (August 2022 order finding Rule

21   12(c) motion was untimely where trial was set for April 2023); *Sweden v. Melius*, No. CV 14-04492, 2015

22   WL 7573622, at *7 (C.D. Cal. Nov. 25, 2015) (delay in filing 12(c) motion was excessive where motion

23   was scheduled to be heard one week after date of required meeting of counsel before Final Pretrial

24   Conference); 5C Wright & Miller, *Federal Practice and Procedure* § 1367 ("If a party engages in

25   excessive delay before moving under Rule 12(c), the district court may refuse to hear the [12(c)] motion on

26   the ground that its consideration will delay or interfere with the commencement of the trial.").  Full

27   consideration of the merits of the motion will needlessly consume Court resources and may delay trial

28   while the Court hears argument on the motion and addresses the myriad, unsubstantiated arguments

Moving Defendants have trotted out at the final hour.

Filing a motion for judgment on the pleadings well after the close of discovery is also antithetical to the purpose of Rule 12(c), which is designed to identify questions of law that can be resolved at the pleading stage, and before the parties undertake extensive discovery. *See Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018) (Jackson, J.) (Rule 12(c) motions are intended to isolate questions of law where "the pleadings demonstrate that there are no meaningful disputes as to the facts such that the complaint's claims are ripe to be resolved at this very early stage in the litigation."). Courts recognize that a Rule 12(c) motion filed after discovery often no longer makes sense as discovery may have filled any "perceived gaps in the [c]omplaint." *See Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 325 (2d Cir. 2011); *see also Est. of Smith v. Cash Money Recs., Inc.*, No. 14CV2703, 2018 WL 2224993, at *3-4 (S.D.N.Y. May 15, 2018) (denying a Rule 12(c) motion where "*four years* of intervening discovery have corrected Drake's pleading error."); *Winter Enterps.*, 2019 WL 3413907, at *2 ("permitting Defendant to seek a ruling on a substantial portion of Plaintiff's claims after the close of discovery and submission of expert reports, based solely on the second amended complaint ... would prejudice the Plaintiff."). For all these reasons, the Court should resolve this Motion by denying it as untimely.

## B. __Moving Defendants' Arguments for Judgment on the Pleadings Lack Merit.__

If the Court does reach the merits, it should deny the motion because the pleadings and judicially noticeable facts, including Defendants' own admissions, establish that Plaintiffs' claims have merit and should proceed to trial.[2] On a motion for judgment on the pleadings, all factual allegations in the complaint must be accepted as true and construed "in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Judgment on the pleadings is only proper where "there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.* In addition to the pleadings, the Court may "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

---

[2] Alternatively, the Court can grant leave to amend so that Plaintiffs may allege the judicially noticeable facts discussed below and other facts developed through discovery within the four corners of the complaint. *See Longberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004).

1.      **Judgment on the Pleadings for the False Claims Act Is Unsupported.**

Plaintiffs are poised to begin the Phase 1 trial on the False Claims Act against WPM with a well-developed record supporting every element of the FCA.  *See* Am. Joint Statement, ECF No. 378.  The allegations in the operative complaint more than adequately support Plaintiffs' claim, and they are further supplemented by Defendants' judicially noticeable admissions.

A defendant is liable under the FCA if it "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).  The elements of an FCA claim are "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis.*, 862 F.3d 890, 902 (9th Cir. 2017).  FCA violations must be pled with particularity under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). *Id.* at 898.

a.      **Plaintiffs Have Adequately Pled—And Now Proven—Falsity.**

The element of falsity may be shown through false certifications or by promissory fraud. *United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 675-76 (9th Cir. 2018) (express false certification); *Campie*, 862 F.3d at 902 (promissory fraud).  Under either theory, falsity turns on whether the relevant "representations were accurate in light of applicable law." *United States ex rel. Oliver v. Parsons, Co.*, 195 F.3d 457, 463 (9th Cir. 1999).  Here, the gravamen of the falsity is established through the allegation that WPM unlawfully collected excess rent—an allegation the Court has already held to be substantiated as a matter of fact and law. *See* Summ. J. Order 12-13, ECF No. 278.

i.      **The Allegations Support False Certification and Promissory Fraud.**

"Express false certification involves an entity's representation of compliance with the law as part of the process for submitting a claim when it is actually not compliant." *Silingo*, 904 F.3d at 675-76. Plaintiffs have alleged that FCA Defendants certified, in all HAP Contracts for their Section 8 tenants across the Subject Properties,[3] that "[e]xcept for the rent to owner, the owner has not received and will not

---

[3] "Subject Properties" refer to "all properties managed by Defendant Wasatch Property Management during all relevant times in this action and that had one or more Section 8 tenants who were charged additional rent amounts beyond the amounts set forth in the HAP Contracts."  6th Am. Compl. ("6AC") ¶ 24, ECF No. 331.  Additional rent refers to charges listed on the additional services agreements, including washers and dryers, renters insurance, parking, and internet and cable. *Id.* at ¶¶ 11-12.

receive any payment or other consideration ... for rental of the contract unit during the HAP contract term."
6AC ¶ 238.  Plaintiffs have also extensively alleged that FCA Defendants[4] violated this certification by
collecting additional rent amounts in the form of additional service charges.  Plaintiffs specify the relevant
charges and detail at length the policies that render them excess rent—including eviction threats, standard
forms and practices treating the charges as rent, and requirements to enroll in the charges.  *Id.* at ¶¶ 11-13,
24, 127-151, 240-241.  These allegations clearly identify both the relevant "representation of compliance
with the law" and the falsity of that representation.  *See Silingo*, 904 F.3d at 675-76; *United States ex rel.*
*Ellis v. Jing Shu Zheng*, No. 216CV01447, 2018 WL 1074483, at *3 (D. Nev. Feb. 26, 2018) ("*Ellis I*"),
*aff'd sub nom. Ellis v. Zheng*, 799 F. App'x 551 (9th Cir. 2020) (holding that collection of excess rent from
Section 8 tenants established the falsity of the landlord's certifications in the HAP Contract).

Falsity is shown under a promissory fraud approach "when the contract or extension of the
government benefit was originally obtained through false statements or fraudulent conduct."  *Kelly v.*
*Denault*, 374 F. Supp. 3d 884, 889 (N.D. Cal. 2018) (quoting *United States ex rel. Hendow v. Univ. of*
*Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006)).  Here, promissory fraud is supported by the allegations that
(1) the HAP Contract requires that the owner must comply with "all provisions of the HAP Contract" to
receive housing assistance payments (*see* 6AC ¶ 75), (2) the HAP Contract expressly limits rent to the
amount of "rent to owner" specified in the contract and bars the collection of excess rent, additional
payments for rental of the unit, or unauthorized appliance charges (*see id.* ¶¶ 67, 71, 73, 74, 236-38), and
(3) contrary to the promises and representations in the HAP Contract, FCA Defendants charged and
collected excess rent from their Section 8 tenants in the form of additional service charges, due to the
policies and practices identified above (*see id.* ¶¶ 11-13, 127-151, 240-241).

Moving Defendants' assertion that "Plaintiffs fail to allege what is false or misleading about any
statement, certification or representation, and *why* it is false" thus appears to willfully overlook the actual

---

[4] Defendants' admissions in the stipulation that resulted in the bifurcation of the case establish that
WPM signed the HAP Contract and managed the properties.  Bifurcation Stip. & Order 4, ECF No.
135.  The Court may take judicial notice of these admissions.  *See Gerritsen v. Warner Bros. Ent. Inc.*,
112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) ("It is well established that a court can take judicial
notice of its own files and records under [Federal] Rule [of Evidence] 201.").  As addressed below in
Section III.B.1.d, this admission together with the allegations of the complaint plainly establish that
Wasatch Property Management acted on behalf of the other FCA Defendants.

allegations.  *See* MJOP 12 (citation omitted).  There is nothing complicated or opaque here: FCA Defendants certified and promised in the HAP Contracts that they would not receive additional rent beyond the agreed-upon amount (6AC ¶¶ 67, 71, 73, 74, 236-38), but did in fact collect excess rent (*id.* ¶¶ 11-13, 127-151, 240-241).  The complaint plainly alleges both "the specific content of the alleged false representations" by identifying the relevant HAP Contract provisions, as well as "the specific acts engaged in" by FCA Defendants by describing the policies and practices that made their additional service charges unlawful excess rent.  *Cf.* MJOP 12 (claiming otherwise).

Nor are Plaintiffs limited to alleging violations of statutory or regulatory requirements.  It is well settled that falsity may also be premised on contractual provisions.  *See, e.g.*, *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 181 (2016) ("*Escobar*") (the FCA permits liability for implied false certifications of compliance with "a statutory, regulatory, or *contractual* requirement") (emphasis added).  Regardless, the key false promises made in the applicable HAP Contracts are functionally identical to 24 C.F.R. § 982.451(b)(4)(ii)—namely that the owner will "not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to owner" and will "immediately return any excess rent payment to the tenant."  *Compare* 6AC ¶ 73 & Ex. A, Terry 2010 HAP Contract Part C, ¶¶ 5(e) & (6) *with id.* ¶ 72 (quoting 24 C.F.R. § 982.451(b)(4)(ii)); *see also* Summ. J. Order 9-10 (noting "[b]oth the HAP Contracts and federal regulations" clearly state this requirement).

### ii. Falsity Is Also Established by this Court's Summary Judgment Ruling and Defendants' Judicially Noticeable Admissions.

In ruling on summary judgment, the Court analyzed the statutory and regulatory framework of the Section 8 program and applicable federal law and held that "the definition of rent properly turns on a tenant's right 'to live in and make use' of a unit," and that "conditioning living in a unit on the payment of [additional service] fees may convert those fees into unlawful rent."  Summ. J. Order 12 (citing *Velez v. Cuyahoga Metro. Hous. Auth.*, 795 F.3d 578, 584 (6th Cir. 2015)).  Based on the undisputed record showing that WPM conflated additional service charges with rent on standard forms, applied a payment sequence that converted the unpaid charges into unpaid rent, and required tenants to pay the charges to avoid eviction, the Court held that the charges "constitute impermissible rent in violation of both the HAP

897461.8

Contracts and federal law." Summ. J. Order 3-5, 13. The Court further held that the unauthorized washer and dryer fees and the renters' insurance requirement were also unlawful excess rent on independent grounds. *Id.* at 14-16. These holdings establish the falsity of the certifications and promises in the HAP Contracts that WPM would not collect additional rent payments. *See Silingo*, 904 F.3d at 675-76; *Ellis I*, 2018 WL 1074483, at *3.

Defendants' judicially noticeable admissions fully answer any demand for additional detail regarding the false statements or fraudulent conduct at issue in this case. Those admissions establish, *inter alia*, that (1) WPM executed a HAP Contract "[f]or each tenant participating in the Section 8 program ('Section 8 tenant') at a property managed by WPM throughout the Relevant Period" (*i.e.*, from April 14, 2005 to the present), Defs.' Resp. U.F. ¶ 1, ECF No. 258-1; (2) WPM "has never included additional service charges in the 'rent to owner' amount submitted to local [public housing authorities] in HAP Contracts and other required Section 8 documents," despite charging thousands of Section 8 tenants additional service charges, *id.* ¶¶ 6-7; (3) WPM "uniformly did not specify in Part A [of the HAP Contract] that tenants were required to pay fees for in-unit washers and dryers" despite Section 8 tenants paying fees for those appliances separately from rent, *id.* ¶¶ 32-34; and (4) WPM's ledger data identifies Section 8 tenants who have paid additional service charges, *id.* ¶ 35 & Joint Fact. Stip. re Yardi Data ¶¶ 14-15, ECF No. 242-4.

In addition, all Defendants admitted to the practices that the Court relied on in determining that Section 8 tenants were required to pay the additional service charges to continue living in their units, including: (5) WPM required Section 8 tenants to pay the additional service fees "throughout the terms covered by the tenants' leases," Defs.' Resp. U.F. ¶ 5, ECF No. 258-1; (6) WPM used a payment allocation method that applies payments first to additional service charges to "ensur[e] that any outstanding amounts are designated unpaid rent and can be sought through eviction proceedings," *id.* ¶¶ 16-18; (7) WPM viewed "a failure to pay additional service charges as a default under the lease," *id.* ¶¶ 8-10; (8) WPM served pay or quit notices on Section 8 tenants requiring them to pay amounts including additional service charges to avoid eviction, and had a policy of refusing to accept rent if small amounts, including additional service charges, remained unpaid, *id.* ¶¶ 23-31; and (9) WPM used standard forms "combin[ing] rent and additional charges" and describing the fees as "part of the total monthly obligation due" or part of the

897461.8

"rental rate," *id.* ¶¶ 11-15 *cited in* Summ. J. Order 12.  Defendants also admitted that at some properties tenants "were required to enter into [Additional Service Agreements] for one or more specific amenities as a condition of leasing," though both Parties acknowledged a dispute of fact regarding whether, as Plaintiffs allege, Section 8 tenants were subject to this requirement.  *See* Defs.' Statement U.F. ¶ 29, ECF No. 241-17; Pls.' Mem. P. & A. Supp. Mot. Partial Summ. J. 2 n.1, ECF No. 242-1; 6AC ¶¶ 144-151.  Then, last fall, all Defendants also admitted that the "policies and practices related to Additional Service Charges assessed on Section 8 tenants, which were established in the prior summary judgment briefing (see Summ. J. Order ECF No. 278), continued without change until November 30, 2022."[5]  Defs.' Opp'n U.F. Re: Remedies ¶ 1, ECF No. 326-1.

The Court may judicially notice these admissions and consider them on a Rule 12(c) motion without converting it to a summary judgment motion.  *See Harris*, 682 F.3d at 1132.  "[U]ndisputed matter of public record, including documents on file in federal or state courts" are proper subjects of judicial notice.  *Id.* (citation omitted); Fed. R. Ev. 201(b)(2).  The formal and unequivocal admissions of undisputed facts made by all Defendants through counsel are now a matter of public record and beyond dispute.

### iii.    <u>Moving Defendants' Attacks on This Court's Ruling Are Meritless.</u>

Moving Defendants' real dispute with Plaintiffs' allegations of falsity is their view that the additional service charges at issue cannot constitute unlawful excess rent under federal law and the HAP Contracts.  *See* MJOP 7-15.  Contrary to Moving Defendants' position, this Court's ruling that "the definition of rent properly turns on a tenant's right to 'live in and make use' of a unit" correctly applies federal law and is fully consistent with the Section 8 program's statutory and regulatory framework.  *See* Summ. J. Order 12, 2, 9-13; *Velez*, 795 F.3d at 586.

Moving Defendants' emphasize the term "rent to owner" does not advance their cause.  "Rent to owner" is the amount of monthly rent agreed to in the HAP Contract.  *See* 6AC Ex. A, Terry 2010 HAP Contract Part C ¶¶ 4, 17.  But the key language in the HAP Contract prohibiting additional rent charges turns on the broader concept of payments for rental of the unit: "[e]xcept for the rent to owner, the owner

---

[5] The operative complaint details the limited changes implemented by WPM.  *See* 6AC ¶¶ 14-15. Plaintiffs also allege that most of the policies and practices that the Court found to convert additional services charges into rent are still in place.  *Id.* ¶¶ 16-20.

has not received and will not receive *any payments or other consideration … for rental of the contract unit*," (*id.* Part B ¶ 8(d)), and the owner "may not charge or accept ... *any payment for rent of the unit* in addition to rent the rent to owner" and "must immediately return *any excess rent payment* to the tenant," (*id.* Part C ¶ 5(f)).  This language supports the Court's application of the federal common law meaning of rent "turning on a tenant's right to 'live in and make use' of a unit."  *See* Summ. J. Order 12; *Velez*, 795 F.3d at 586 ("The definition of rent encompasses all monies paid in consideration for the periodic use of property not simply the discrete charge labelled as rent in a lease agreement.").

The "housing quality standards" ("HQS") are not relevant to the issues in this case, contrary to Moving Defendants' argument that fees for items outside of the HQS cannot constitute rent.  The HQS are "[t]he HUD minimum quality standards for housing assisted under the Section 8 tenant-based programs." 6AC Ex. A, Terry 2010 HAP Contract Part C ¶ 17; *accord* 24 C.F.R. § 982.4.  While the HAP Contract requires owners to "maintain the contract unit and premises" in accordance with the HQS, nothing in the HAP Contract or federal law limits the meaning of "rent" to the minimum set by those standards.  6AC Ex. A, Terry 2010 HAP Contract Part B ¶ 3.

None of the cases cited by Moving Defendants support their novel theory limiting the meaning of rent to items in the HQS—indeed, none *even mention* the HQS in analyzing whether the charges at issue were excess rent.  *See cases cited in* MJOP 13-15.  In fact, a number of their cases find that fees for services or amenities not listed in the HQS inspection checklist to be unlawful excess rent. *Compare* HQS Inspection Checklist, Form HUD-52580 (4/2023), https://www.hud.gov/sites/dfiles/ OCHCO/documents/52580.pdf, *with United States ex rel. Holmes v. Win Win Real Est., Inc.*, No. 213CV02149, 2015 WL 6150594, at \*1, \*3-4 (D. Nev. Oct. 19, 2015) (HOA and property management fees agreed to in lease); *United States ex rel. Mathis v. Mr. Prop., Inc.*, No. 2:14-CV-00245, 2015 WL 1034332, at \*4 (D. Nev. Mar. 10, 2015) (pool maintenance fees); *United States ex rel. Price v. Peters*, 66 F. Supp. 3d 1141, 1149 (C.D. Ill. 2013) (storage shed).

This Court and others have rightly held that whether additional charges amount to unlawful additional rent depends not on labels, but on substance.  *See* Summ. J. Order 10 ("'[C]ourts consistently have held that extra charges, even when labeled as additional amenities, can constitute illegal side payments,'" collecting cases and quoting Order on Mot. Dismiss 6, ECF No. 61); *Velez*, 795 F.3d at 585-86

897461.8

1  (fees that were not optional and which could be the basis for eviction according to the lease were rent

2  charges, regardless of nomenclature).  This approach correctly applies the language of the HAP Contract

3  and federal law, and Moving Defendants err in arguing otherwise.

4  **b.** **Plaintiffs Have Adequately Pled Materiality.**

5  False claims are material if they have "a natural tendency to influence, or be capable of influencing,

6  the payment or receipt of money or property."  31 U.S.C. § 3729(b)(4).  Materiality is an objective

7  determination.  *Escobar*, 579 U.S. at 193 (citing the common law objective "reasonable person" standards

8  for evaluating materiality); *United States ex rel. Feldman v. van Gorp*, 697 F.3d 78, 95 (2d Cir. 2012).

9  Factors supporting materiality include whether the Government has designated the requirement affected by

10  the false statement a "condition of payment," or whether the requirement goes to the "essence of the

11  bargain."  *Escobar*, 579 U.S. at 190, 193 n.5.

12  Numerous courts have held that additional rent charges are a material violation of the HAP

13  Contract.  The Section 8 program "exists '[f]or the purpose of aiding low-income families in obtaining a

14  decent place to live," 42 U.S.C. § 1437f(a), and that purpose is clearly undermined when a program

15  participant overcharges a beneficiary of the program.'"  *United States ex rel. Carmichael v. Gregory*, 270

16  F. Supp. 3d 67, 71 (D.D.C. 2017) (finding no room for "doubt that the amount of rent [] charged is a

17  'material' term") (citing *Escobar*, 579 U.S. at 182); *accord Kelly*, 374 F. Supp. 3d at 892 ("The amount of

18  a Section 8 recipient's monthly payment is []material to the government's payment decision."); *Sutton*, 564

19  F. Supp. 2d at 1189 (finding materiality satisfied in granting summary judgment).

20  The violations alleged by Plaintiffs satisfy the materiality requirement of the FCA.  As set out

21  above, Plaintiffs have established that WPM charged excess rent through additional service charges in

22  violation of its certifications and promises in the HAP Contract.  *See* Sec. III.B.1.iii *supra*.  This fraudulent

23  conduct "affected one of the most basic terms of the HAP Contract," *United States ex rel. Sutton v.*

24  *Reynolds*, 564 F. Supp. 2d 1183, 1189 (D. Or. 2007), and "clearly undermined" the Section 8 program's

25  purpose, *Carmichael*, 270 F. Supp. 3d at 71.  *See also Escobar*, 579 U.S. at 193 n.5 (materiality may be

26  found where the false statement goes to the "essence of the bargain").  Plaintiffs also alleged that

27  compliance with the rent limitations was a "condition of payment," *see id.* at 190; 6AC ¶ 75 (quoting HAP

28  Contract, Part B, ¶ 7(b)); *see also, e.g., Ellis I*, 2018 WL 1074483, at *4 (citing HAP Contract, Part B,

1  ¶ 7(b) in finding "no genuine issue of fact" regarding materiality), and that "the money which HUD

2  disbursed to local public housing agencies for the payment of Section 8 housing assistance would not have

3  been paid to the Defendants absent these false claims and fraudulent conduct."  6AC ¶ 244.

4          Materiality under the FCA does not require an allegation that the existence of the additional service

5  charges were concealed from public housing agencies ("PHAs").  *See, e.g.*, *Holmes*, 2015 WL 6150594, at

6  *3-5 (granting summary judgment on FCA claim to relator notwithstanding defendants' evidence that

7  excess charges were disclosed in lease provided to the public housing authority).  The only case Moving

8  Defendants offer on this point merely observes that "whether the government has knowledge of the alleged

9  noncompliance" may be "relevant to the materiality inquiry," along with other factors.  *See United States v.*

10  *Aerojet Rocketdyne Holdings, Inc.*, 381 F. Supp. 3d 1240, 1246 (E.D. Cal. 2019) *cited in* MJOP 15.  This is

11  in line with the Supreme Court's decisive rejection of "[a]ny approach that designates a single fact or

12  occurrence as always determinative" of materiality.  *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S.

13  27, 39 (2011) *cited in Escobar*, 579 U.S. at 191.

14          Additionally, PHA knowledge of the mere existence of the fees is of limited relevance, as Plaintiffs

15  do not contend that *any* additional service fee necessarily violates the HAP Contract.  Rather, the illegality

16  of the fees turns on WPM's conduct requiring tenants to pay the fees to lease or remain in their apartments.

17  *See* Summ. J. Order 9 (noting the distinction).

18          Finally, Moving Defendants' focus on alleged disclosure of fees to PHAs, which are local

19  government entities, ignores that PHA knowledge cannot resolve whether WPM's violations were material

20  to the *federal* government.  It is the federally mandated HAP Contract, based on federal regulation, which

21  sets the strict rule prohibiting charges for rental of the unit beyond the approved rent to owner.  *See* 6AC

22  ¶¶ 63-75 (Section 8 program is governed by federal law, regulation, and the federally mandated HAP

23  Contract, which includes the certifications and promises at issue in this case); 24 C.F.R. § 982.451.  PHAs

24  have no discretion to deviate from this requirement.  *See id.*; 24 C.F.R. § 982.162(a)(2); *Velez*, 795 F.3d at

25  581, 584-86 (fees were rent under the Section 8 program notwithstanding the public housing agency's

26  policy of not counting them as rent); *Holmes*, 2015 WL 6150594, at *3-5 (the PHA's approval of lease

27  containing the additional fees did not preclude FCA liability).  Analyzing materiality from the perspective

28  of the federal government is particularly appropriate in light of Congressional intent "'to reach all types of

14

1  fraud, without qualification, that might result in financial loss to the Government.'"  *Winter ex rel. United*

2  *States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1116 (9th Cir. 2020) (quoting *United*

3  *States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968)).  As argued above, the excess rent charges

4  undermined the purpose federal program and violated core federal rules used to accomplish that purpose.

5  For all of these reasons, Plaintiffs have adequately alleged materiality.

6               **c.    Plaintiffs Have Adequately Pled Scienter.**

7        "[E]ither actual knowledge, deliberate ignorance, or recklessness will suffice" to establish the

8  necessary scienter to support liability under the False Claims Act.  *United States ex rel. Schutte v.*

9  *SuperValu Inc.*, 598 U.S. 739, 750 (2023) (scienter adequately alleged notwithstanding the ambiguity of the

10  key legal phrase).  This standard does not require "proof of specific intent to defraud."  31 U.S.C.

11  § 3729(b)(1)(B).  Scienter "may be alleged generally."  Fed. R. Civ. P. 9(b).

12        Moving Defendants make a single argument regarding scienter: that FCA Defendants cannot have

13  known the fees were unlawful because (they claim) the Court's legal ruling on the meaning of rent is

14  "subjective" and "has no basis in the statute or regulations governing the HCV program."  MJOP 16, ECF

15  No. 387-1.  This accusation is unfounded, as described above.  The Court should disregard this argument

16  and Moving Defendants' conclusory attack on scienter as unsupported.

17        The operative complaint alleges that FCA Defendants entered into HAP Contracts for their Section

18  8 tenants.  6AC ¶¶ 83, 84; *see also* Defs.' Resp. U.F. ¶ 1, ECF No. 258-1.  Those contracts set the amount

19  of rent to owner and contain the prohibition on excess rent, including the required certification that

20  "[e]xcept for the rent to owner, the owner has not received and will not receive any payment or other

21  consideration ... for rental of the contract unit."  6AC ¶¶ 73-74, 238.  The plain language of this certification

22  makes clear that Defendants could not charge additional fees as part of the "consideration ... for rental of

23  the contract unit."  Drawing all reasonable inferences in favor of Plaintiffs as required on a Rule 12(c)

24  motion, it is not difficult to conclude that in requiring Section 8 tenants to agree to additional fees as a

25  condition of leasing or to avoid eviction, Wasatch Property Management "knowingly" violated this

26  certification —that is, it acted with "actual knowledge, deliberate ignorance, or recklessness."[6]  *See Schutte,*

27

28  _____

[6] Once again, Defendants' judicially noticeable admissions further support scienter.  *See* Defs.' Resp.
D.F. No. 1, ECF No. 263-4 (agreeing that key Wasatch Property Management personnel understood

598 U.S. at 750; 6AC ¶¶ 21, 64-75, 127-151, 233, 235-241.  Indeed, courts have found scienter supported based on the clarity of the HAP Contract's prohibition on additional rent.  *See, e.g.*, *Sutton*, 564 F. Supp. 2d at 1188 (finding "no doubt that the [HAP] Contract limited the rent Defendant could collect from Plaintiffs" and "that Defendant knew of the limitation," in denying defendant's motion for summary judgment); *United States v. Baran*, No. CV1402639RGKAJWX, 2015 WL 5446833, at *5 (C.D. Cal. Aug. 28, 2015) (adequate allegations of scienter based on Defendants' agreement to the terms of the HAP Contract); *Holmes*, 2015 WL 6150594, at *5 (no genuine dispute that landlords "deliberately ignored or recklessly disregarded" the clear terms of the HAP Contract and other PHA documents).

### d.  Plaintiffs Adequately Allege Liability as to All the FCA Defendants.

Moving Defendants overreach in arguing that Rule 9(b) prohibits all group allegations.  Under Rule 9(b), the complaint must "inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).  However, specific allegations regarding each defendant's role are only required to the extent the defendants are "differently situated."  *Silingo*, 904 F.3d at 677 (group allegations appropriate where defendants were "largely 'alleged to have engaged in precisely the same conduct'") (citation omitted).

The allegations and Defendants' judicially noticeable admissions "inform each defendant separately of the allegations surrounding [its] alleged participation in the fraud."  *See Swartz*, 476 F.3d at 764-65 (citation omitted).  As Defendants admit, "Wasatch Property Management is the entity that signs all leases, Additional Service Agreements, and HAP Contracts, manages the properties where Defendants' Section 8 tenants live, and charges and collects the additional service charges whose legality is at issue in each of the claims."  Bifurcation Stip. & Order 4, ECF No. 135; *see also* 6AC ¶¶ 24, 28, 29, 30, 31, 127-151 (reflecting WPM's management of the properties and describing the policies and practices at issue); Defs.' Resp. U.F. ¶¶ 7-42, ECF No. 258-1 (admitting WPM's policies and practices).

WPM, of course, may be directly liable for its role in submitting false claims.  *See* 31 U.S.C. § 3729(a)(1) ("any person" who presents a false claim is liable under the FCA); *see also United States ex*

---

"that mandatory charges outside of rent to owner are not permitted under the Section 8 program").

897461.8

1    *rel. Haskins v. Omega Inst.*, Inc., 11 F. Supp. 2d 555, 563-65 (D.N.J. 1998) (citing Restatement (Second) of

2    Agency § 348) (agents are liable for their own participation in fraud).

3          The other FCA Defendants—Wasatch Advantage Group, LLC, Wasatch Pool Holdings, LLC,

4    Chesapeake Apartment Holdings, LLC, Logan Park Apartments, LLC, and Logan Park Apartments, LP—

5    are owners of some of the properties.[7]  6AC ¶¶ 26-32; *see also id.* at Ex. A, Terry 2010 HAP Contract,

6    Part B ¶ 10(a) (defining "owner" to include "a principal or other interested party").  As owners, they are

7    bound by the HAP Contracts signed by their agents and liable for false statements made in those contracts.

8    *See Ellis I*, 2018 WL 1074483, at *2-3 (owner liable for the agent's violations of the FCA, where agent

9    signed the HAP Contract, managed property, and "took care of everything" for the owner); *United States*

10   *ex rel. Benitez v. Galliano, LLC*, No. 215-CV-01688, 2018 WL 2247279, at *6 (D. Nev. Jan. 26, 2018)

11   (agent's false statement in the HAP Contract attributable to the owner); *see also* WAG Defs.' *Ex Parte*

12   Appl. Continuance 8, ECF No. 349 (discussing the entities' "respective roles as "property manager and

13   property owners.").  "So long as the agent has actual or apparent authority to bind the entity, the fraud of

14   the agent is sufficient to support civil liability against the entity."  *United States ex rel. Rosales v. San*

15   *Francisco Hous. Auth.*, 173 F. Supp. 2d 987, 1003 (N.D. Cal. 2001) (citing *Am. Soc. of Mech. Eng'rs v.*

16   *Hydrolevel Corp.*, 456 U.S. 556, 568 (1982)).  These FCA Defendants thus received adequate notice of

17   their role as owners and principals.

18          In addition to principal-agent liability, Plaintiffs have alleged alter ego, single enterprise, and joint

19   venture liability.  6AC ¶¶ 102-126.  Courts recognize that group pleading is appropriate for such liability.

20   *See, e.g.*, *United States ex rel. Ginger v. Ensign Grp., Inc.*, No. 815-CV-00389, 2022 WL 4110166, at *3-4

21   (C.D. Cal. Mar. 10, 2022) (accepting group pleading in FCA case based on alter ego allegations).  Moving

22   Defendants do not dispute the adequacy of these allegations.

23          Moving Defendants' authorities are inapposite.  *United States ex rel. Capriola v. Brightstar Educ.*

24

---

25   [7] Without any citation to pleadings or judicially noticeable facts, Moving Defendants assert that
26   "Neither Wasatch Advantage Group, nor Wasatch Pool Holdings, are the owners of any real property
     involved in this case."  MJOP 17, ECF No. 387-1.  But Defendants' answers admitted that both are
27   entities "used to own and/or manage properties" including the properties at issue here.  *See* 6AC ¶ 32;
     Answer 6AC ¶ 32, ECF No. 333 (admission for Wasatch Pool Holdings); 5th Am. Compl. ¶ 19, ECF
28   No. 136; FCA Defs.' Answer 5th Am. Compl. ¶ 19, ECF No. 138 (admission for Wasatch Advantage
     Group).

897461.8

*Grp., Inc.*, No. 1:11-CV-00135, 2013 WL 1499319, at *1-2, 9, 10 & n.4 (E.D. Cal. Apr. 11, 2013) found inadequate allegations to support liability against a third-party entity that completed verifications, where that entity was not a party to the contracts containing the false statements nor alleged to have any vicarious liability based on the violations of its co-defendant.  *United States ex rel. Juan v. Regents of Univ. of Cal.*, No. 16-CV-04934-CW, 2018 WL 6168529, at *1 (N.D. Cal. Nov. 26, 2018) dismissed the claims where the allegations were "too vague or conclusory to satisfy even Rule 8's liberal pleading requirements."  And *United States v. Corinthian*, 655 F.3d 984, 997-8 (9th Cir. 2011) addressed allegations regarding individual board directors, again without any vicarious liability theory at issue.

Moving Defendants cite no authority for their claim that to allege vicarious liability under the FCA, a complaint must allege that a defendant "caused" false claims to be presented.  Neither logic nor law supports their position.  Under principles of agency, for example, a principal is bound by their agent's conduct whether or not the principal specifically directed the unlawful conduct.  *See, e.g.*, *Am. Soc. of Mech. Eng'rs*, 456 U.S. at 566, (discussing examples of agency liability, including where "a principal is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority").  Plaintiffs have adequately alleged that WPM presented false claims when it executed the HAP Contracts and received payments and that other FCA Defendants are vicariously liable for this conduct.

### 2.    The Court Has Jurisdiction over the Plaintiffs' State Law Claims

Moving Defendants' last-ditch effort to dismiss Plaintiffs' state law claims is meritless.

#### a.    Plaintiffs Properly Brought State Law Causes of Action

Moving Defendants rely on the incorrect premise that Plaintiffs brought causes of action for a breach of the HAP Contract between owners and the PHAs or directly under the statute or regulations governing Section 8.  MJOP 18.  These assertions mischaracterize Plaintiffs' state law claims.

First, Plaintiffs brought state contract claims based on Defendants' breach of the tenancy addendum, which is both part of the HAP Contract and part of the lease between the owners and the tenants.  6AC ¶¶ 246-252; 24 C.F.R. §§ 982.162(a)(2), 982.305(a)(3), 982.308(f).  Both federal regulation and the HAP Contract are crystal clear that tenants may enforce the tenancy addendum against the owner.  24 C.F.R. § 982.308(f)(2); 6AC Ex. A, Terry 2010 HAP Contract Part C, ¶ 2b.  All Defendants conceded this point at summary judgment.  *See* Summ J. Order 13 (citing Defs.' Mot. Summ. J. 14).

18

1    To support their argument, Moving Defendants cite irrelevant regulatory language that Plaintiffs

2    are not parties to or third-party beneficiaries of HAP Contracts between owners and the PHAs (*see* MJOP

3    19, citing 24 C.F.R. §§ 982.456(b)(1), (c)), while ignoring language in the same regulation that tenants *can*

4    enforce the tenancy addendum.  24 C.F.R. § 982.456(b)(2) ("The tenant may exercise any right or remedy

5    against the owner under the lease between the tenant and the owner, including enforcement of the owner's

6    obligations under the tenancy addendum").  Moving Defendants misleadingly cite *Reyes-Gray v. Integrand*

7    *Assurance Company*, which holds only that the Housing Act "does not expressly grant a private right of

8    action to individuals who are suing HUD over the poor quality of their Section 8 housing."  818 F. Supp.

9    2d 414, 430 (D.P.R. 2011).  *Reyes* did not address or cast doubt on the right of the tenant to enforce the

10   tenancy addendum against the owner.

11   Similarly, nothing in the cases or regulations cited by Moving Defendants foreclose CLRA and

12   UCL claims incorporating Defendants' violation of federal regulations to show that their practices are

13   unlawful or deceptive.  Rather, the cases are cabined to the distinct question of whether Section 8 tenants

14   have a cause of action directly under the Housing Act.  *See Volis v. City of Los Angeles Hous. Auth.*, 2014

15   WL 12704885, at *5 (C.D. Cal. Jan. 7, 2014) (no federal private right of action to enforce HQS

16   requirements); *Green v. Konover Residential Corp.*, 1997 WL 736528, at *8-*9 (D. Conn. Nov. 24, 1997)

17   (same, noting availability of state law "breach of contract and tort theories"); *Kirby v. Richmond*

18   *Redevelopment & Hous. Auth.*, No. 3:04-CV-791, 2005 WL 5864797, at *5 (E.D. Va. Sept. 28, 2005),

19   aff'd, 194 F. App'x 105 (4th Cir. 2006) (no private tenant right of action to sue PHAs under 42 U.S.C. §

20   1437f), *Hill v. Richardson*, 7 F.3d 656, 658 (7th Cir. 1993) (same).[8]

21   Moving Defendants fail to address the actual causes of action in this case, and their motion to

22   dismiss Plaintiffs' state law claims should be denied.

23

24

---

25   [8] Defendants' citations to cases outside of the housing context are similarly irrelevant: *Buck v.*

26   *American Airlines, Inc.*, 476 F.3d 29, 34-35 (1st Cir. 2007) explained that consumers did not have a
     federal private right of action under the Airline Deregulation Act to enforce regulations on Airlines,
     and then explained that the consumers' state law causes of action were explicitly preempted by the

27   ADA; *Alexander v. Sandoval*, 532 U.S. 275, 293 (2001) holds that there is no "freestanding" federal
     private right of action to enforce disparate-impact regulations under Title VI of the Civil Rights Act of

28   1964.

897461.8

### b.   Plaintiffs' State Law Claims Are Not Preempted

Moving Defendants similarly fail to raise a colorable argument that Plaintiffs' state law claims are preempted by federal law.  MJOP 20.  As an initial matter, preemption is an affirmative defense which Defendants waived by failing to raise it in their answers to Plaintiffs' complaints or, at the latest, before the summary judgment deadline.  *See Garza v. Nat'l R.R. Passenger Corp.*, 418 F. Supp. 3d 644, 649 (W.D. Wash. 2019) (*citing* inter alia *Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) and *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993)).

Though they appear to invoke conflict preemption, Moving Defendants have not met their burden to show how Plaintiffs' state law claims conflict in any way with federal law.  *See Hollins v. Walmart Inc.*, 67 F.4th 1011, 1018 (9th Cir. 2023) (Defendants have burden of proof to establish preemption).  Courts can find state law to be conflict preempted where it is "impossible ... to comply with both state and federal requirements," *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *see also Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 957 (N.D. Cal. 2004) (Plaintiffs' UCL claims were not conflict preempted by Motor Vehicle Safety Act).  But Defendants cannot explain how enforcing the tenancy addendum or the prohibition against excess rent, both of which are created by federal law, conflicts with federal law.  *Id.* at 962, citing *Geier v. American Honda Motor Co*, 529 U.S. 861, 885 (2000) ("There must be 'clear evidence' of such a conflict.").

Moving Defendants cite no support for their argument that the absence of a direct federal cause of action preempts state law causes of action.  To the contrary, courts recognize that "the availability of a state law claim is even more important in an area where no federal private right of action exists."  *Coll. Loan Corp. v. SLM Corp., a Del. Corp.*, 396 F.3d 588, 598 (4th Cir. 2005).  Plaintiffs' state law claims are not preempted and should not be dismissed on this basis.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court deny the Motion for Judgment on the Pleadings.

897461.8

Dated: April 26, 2024

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

/s/ Anne P. Bellows
Anne P. Bellows

*Attorneys for Plaintiffs and Relators*

21