Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800 | Fax (510) 835-1417

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Tel: (510) 834-3300 | Fax (510) 834-3377

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Tel: (510) 437-1863 | Fax (510) 437-9164

Attorneys for Plaintiffs and Relators and the Certified Classes
*[Additional Counsel for Relators listed on following page]*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON APARTMENTS, LP, BENT TREE APARTMENTS, LLC, CALIFORNIA PLACE APARTMENTS, LLC, CAMELOT LAKES HOLDINGS, LLC, CANYON | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO MODIFY THE COURT'S AUGUST 16, 2021 BIFURCATION ORDER**<br><br>Date:     May 17, 2024<br>Time:    10:00am<br>Dept:    Courtroom 3, 15th Floor<br>Before:  Hon. Chief Judge Kimberly J. Mueller<br><br>Trial Date:    None Set |

| | |
|---|---|
| 1 | CLUB HOLDINGS, LLC, COURTYARD AT CENTRAL PARK APARTMENTS, LLC, |
| 2 | CREEKSIDE HOLDINGS, LTD, HAYWARD SENIOR APARTMENTS, LP, HERITAGE PARK |
| 3 | APARTMENTS, LP, OAK VALLEY APARTMENTS, LLC, OAK VALLEY HOLDINGS, |
| 4 | LP, PEPPERTREE APARTMENT HOLDINGS, LP, PIEDMONT APARTMENTS, LP, POINT |
| 5 | NATOMAS APARTMENTS, LLC, POINT NATOMAS APARTMENTS, LP, RIVER OAKS |
| 6 | HOLDINGS, LLC, SHADOW WAY APARTMENTS, LP, SPRING VILLA |
| 7 | APARTMENTS, LP, SUN VALLEY HOLDINGS, LTD, VILLAGE GROVE APARTMENTS, LP, |
| 8 | WASATCH QUAIL RUN GP, LLC, WASATCH PREMIER PROPERTIES, LLC, WASATCH POOL |
| 9 | HOLDINGS III, LLC, and DOES 1-4, |
| 10 | |
| 11 | Defendants. |

Lindsay Nako (SBN 239090)
lnako@impactfund.org
Lori Rifkin (SBN 244081)
lrifkin@impactfund.org
Fawn Rajbhandari-Korr (SBN 315888)
fkorr@impactfund.org
Meredith Dixon (SBN 346864)
mdixon@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473 | Fax: (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes

Lawrence Anthony Organ (SBN 175503)
larry@civilrightsca.com
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, CA 94960-2610
Tel: 415-453-4740 | Fax: 415-785-7352

Attorneys for Relators

# TABLE OF CONTENTS

Page

A. Introduction ...................................................................................................................... 1

B. Factual and Procedural Background .................................................................................. 2

C. Argument ........................................................................................................................... 5

    1. Moving Defendants' Motion Fails to Satisfy the Threshold Criteria for Reconsideration of the Bifurcation Order. ................................................................. 5

        a. Reconsideration Is Not Warranted Under Rule 54(b). .................... 6

        b. The Motion is Untimely under Rule 42. ......................................... 7

        c. Rule 16 Does Not Apply to or Support this Motion. ...................... 8

    2. The Stipulated Bifurcation Order Preserves Defendants' Seventh Amendment Rights. ................................................................................................. 8

    3. The Rule 42 Factors Support Maintaining the Stipulated Bifurcation Order. ....................................................................................................................... 10

        a. Phase 1 and Phase 2 Issues are Clearly Separable. ........................ 11

        b. Expediency and Judicial Economy Favor Bifurcation. ................. 11

        c. Bifurcation Will Avoid Jury Confusion. ....................................... 12

        d. Bifurcation Does Not Prejudice Defendants; Belated Consolidation Would Prejudice Plaintiffs. .................................... 13

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Aoki v. Gilbert*,
   No. 2:11-CV-02797-TLN-CKD, 2015 WL 5734626 (E.D. Cal. Sept. 28, 2015) ............... 2, 10

*Arredondo v. Delano Farms Co.*,
   No. CV F 09-01247-LJO, 2012 WL 2358594 (E.D. Cal. June 20, 2012) .............................. 12

*Arthur Young & Co. v. U. S. Dist. Ct.*,
   549 F.2d 686 (9th Cir. 1977) .............................................................................................. 9

*Blyden v. Mancusi*,
   186 F.3d 252 (2d Cir. 1999) .............................................................................................. 9

*United States ex rel. Campie v. Gilead Scis.*,
   862 F.3d 890 (9th Cir. 2017) ............................................................................................. 9

*Casey v. Albertson's Inc.*,
   362 F.3d 1254 (9th Cir. 2004) ........................................................................................... 7

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
   254 F.3d 882 (9th Cir. 2001) ............................................................................................. 6

*Engleson v. Burlington N. R. Co.*,
   972 F.2d 1038 (9th Cir. 1992) ........................................................................................... 7

*In re EPD Inv. Co., LLC*,
   No. BR 12-02424 ER, 2019 WL 4233575 (C.D. Cal. June 4, 2019) ................................ 10

*Feature Realty, Inc. v. City of Spokane*,
   331 F.3d 1082 (9th Cir. 2003) ........................................................................................... 7

*Heil v. Belle Starr Saloon & Casino, Inc.*,
   No. CIV. 09-5074-JLV, 2013 WL 943754 (D.S.D. Mar. 11, 2013) .................................. 8

*Jinro Am. Inc. v. Secure Inv., Inc.*,
   266 F.3d 993 (9th Cir. 2001) ............................................................................................ 11

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ............................................................................................. 8

*KRL v. Moore*,
   No. CIVS992437-DFL-DAD, 2006 WL 8446328 (E.D. Cal. May 15, 2006) .................. 7

*Link v. Wabash R. Co.*,
   370 U.S. 626 (1962) ........................................................................................................... 7

*Linton v. Angie's Inc.*,
    288 F.R.D. 432 (D.S.D. 2012) .......................................................................................... 7, 8

*Lutz v. Glendale Union High Sch.*,
    403 F.3d 1061 (9th Cir. 2005) ................................................................................................ 9

*Lyons v. Baughman*,
    No. CIV. S-01-412 LKK/KJM P., 2007 WL 1378022 (E.D. Cal. May 10, 2007) .................... 5

*Onyx Pharms., Inc. v. Bayer Corp.*,
    No. C-09-2145 EMC, 2011 WL 4527402 (N.D. Cal. Sept. 21, 2011) ...................................... 8

*Sants v. Seipert*,
    No. 215CV00355KJMCKD, 2021 WL 465292 (E.D. Cal. Feb. 9, 2021) ................................ 6

*Spears v. Adamson*,
    No. 3:04CV-0087-LRH-RAM, 2009 WL 948544 (D. Nev. Apr. 6, 2009) ............................ 12

*Stiles v. Walmart, Inc.*,
    No. 214CV02234DADDMC, 2023 WL 2575792 (E.D. Cal. Mar. 20, 2023) .......................... 7

*United States v. AseraCare Inc*,
    No. 2:12-CV-KOB, 2015 WL 12830401 (N.D. Ala. May 20, 2015) ...................................... 11

*United States v. J-M Mfg. Co., Inc.*,
    No. EDCV 06-55-GW(PJWX), 2018 WL 705532 (C.D. Cal. Jan. 31, 2018) .................... 9, 11

*Wong v. Regents of Univ. of California*,
    410 F.3d 1052 (9th Cir. 2005) .............................................................................................. 14

**State Cases**

*Associated Vendors, Inc. v. Oakland Meat Company*,
    210 Cal. App. 2d 825 (Cal. Ct. App. 1962) .......................................................................... 12

**Federal Statutes**

California's Unfair Competition Law ............................................................................................ 4

Consumer Legal Remedies Act ..................................................................................................... 4

False Claims Act ............................................................................................................. 1, 2, 9, 11

**Rules**

Fed. R. Civ. P.
   16 ........................................................................................................................................8
   42 ................................................................................................................................*passim*
   42(b) ............................................................................................................................10, 11
   54(b) ..................................................................................................................................5, 6
   60(b)(1) .................................................................................................................................7

Fed. R. Evid.
   105 .....................................................................................................................................13

L.R.
   230(j) .................................................................................................................................5, 6

**Regulations**

Am. Joint Pretrial Statement, ECF No. 378 ....................................................................................4

Pretrial Statement, ECF No. 386 ....................................................................................................4

**Constitutional Provisions**

U.S. Const. Amendment VII ................................................................................................*passim*

**Other Authorities**

9A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2388 (3d ed., Apr.
   2023 Update) ............................................................................................................................11

# MEMORANDUM OF POINTS AND AUTHORITIES

## A.  Introduction

Three years ago, Defendants proposed bifurcating this case, citing their preference to avoid disclosing information about their corporate structure and financial holdings from discovery until after any finding of liability.  *See* ECF No. 135 ("Stipulated Bifurcation Order"); Declaration of Anne Bellows in Support of Plaintiffs-Relators' Opposition to Defendants' Motion to Modify Bifurcation Order ("Bellows Decl."), filed herewith, at ¶¶ 6-8.  However, with the Phase 1 False Claims Act trial imminent, and having successfully avoided producing this information for years, a subset of Defendants ("Moving Defendants") now ask the Court to reverse the bifurcation the Defendants to the FCA claims ("FCA Defendants") requested and stipulated to.  In an about-face, Moving Defendants argue that the forthcoming trial must encompass the liability of all Defendants named as to the False Claims Act ("FCA Defendants") and therefore trial should be delayed for an undefined period to complete discovery on issues previously reserved for Phase 2.  Moving Defendants' arguments for undoing bifurcation and upending trial are untimely and meritless.

Moving Defendants do not offer any legitimate bases for the Court to reconsider the Stipulated Bifurcation Order at this time.  Their motion does not cite new evidence or facts or any change in controlling law.  Rather, Moving Defendants vaguely allege that they discovered a conflict of interest—for which they have provided no supporting details or evidence—more than four months ago, which led to their retention of new counsel.  New counsel's reconsideration their clients' earlier election to bifurcate does not make their motion either timely or proper under the standards for reconsideration.

Moving Defendants' arguments also fail on the merits.  The Stipulated Bifurcation Order does not violate any Defendant's Seventh Amendment rights nor require the re-litigation of any issues by a subsequent fact-finder.  The Phase 1 jury will make findings of fact and liability as to whether the actions of a single Defendant, Wasatch Property Management ("WPM"), violated the False Claims Act.  *See* ECF No. 135 at 7.  Phase 2 will examine the "wholly distinct" issue of whether non-WPM Defendants are also liable based *solely* on "their contractual and corporate relationships to Wasatch Property Management." *Id.* at 8.  Phases 1 and 2 thus address separate issues and will not require

1

overlapping determinations by a trier of fact.  Bifurcating a case into two phases and trials does not run afoul of the Seventh Amendment simply because some of the same evidence may be presented to a subsequent factfinder.  Rather, the Seventh Amendment prohibits reconsideration of any essential issues determined by the first jury.  Here, Defendants' Seventh Amendment rights are preserved.

Finally, the four factors set out in Rule 42 support bifurcation in this case.  *See Aoki v. Gilbert*, No. 2:11-CV-02797-TLN-CKD, 2015 WL 5734626, at *4 (E.D. Cal. Sept. 28, 2015) (describing Rule 42 factors as including "whether the issues are clearly separable, and whether bifurcation would increase convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the parties.").  First, the question of whether WPM's actions violated the False Claims Act is clearly separable from the issue of secondary liability on the FCA claim for the other named Defendants based on agency, alter ego, or joint venture theories, which need only be reached if WPM's liability is established through the Phase 1 trial.  *See* ECF No. 135 at 7-8.  Second, as the Stipulated Bifurcation Order correctly recognizes, bifurcation serves judicial economy because "eliminating Phase 2 issues from the Phase 1 trial will significantly shorten and simplify the proceedings." *Id.* at 6.  Third, bifurcation will avoid jury confusion by delaying presentation of complex evidence relevant only to corporate structure and financial responsibility until it is necessary, if at all.  Finally, reversing the Stipulated Bifurcation Order at the eleventh hour would prejudice Plaintiffs by prolonging the proceedings and delaying their day in court on the underlying liability for the FCA claim, possibly for years, while requiring them to incur additional sizable discovery and expert witness costs that may have otherwise been unnecessary.

For all of these reasons, Moving Defendants' motion to modify the Stipulated Bifurcation Order should be denied.

**B.     Factual and Procedural Background**

Plaintiffs and Relators, on behalf of themselves and the certified classes, and on behalf of the United States ("Plaintiffs"), filed their qui tam complaint in this action on April 14, 2015.  ECF No. 1.  All six FCA Defendants in the operative complaint, ECF No. 331, were also named in the original complaint, ECF No.1: Wasatch Advantage Group, LLC, Wasatch Pool Holdings, LLC, Chesapeake

1  Apartment Holdings, LLC,[1] Logan Park Apartments, LLC, and Logan Park Apartments, LP,
2  (collectively, "FCA Owner Defendants"), and WPM (collectively "FCA Defendants").

3        In 2021, Plaintiffs propounded discovery that included requests for production and
4  interrogatories aimed at obtaining information about the corporate structures and nature of the
5  relationships and financial holdings among Defendants. Bellows Decl. ¶ 7. Plaintiffs sought
6  information about Defendants' corporate structures and contractual relationships in order to establish
7  each Defendant's potential liability for the unlawful conduct alleged based on vicarious liability
8  theories including agency, alter ego, single enterprise doctrine, and the existence of a joint venture.[2]
9  Defendants objected to Plaintiffs' requests and largely refused to provide responsive documents or
10 substantive interrogatory responses. *Id.* Citing the goal of avoiding discovery into Defendants'
11 corporate and financial issues, Defendants proposed that the parties agree to bifurcate the case into two
12 phases. *Id.* at ¶¶ 6-8. Namely, Defendants proposed that discovery into their relationships, corporate
13 structures, and financial holdings take place only if liability was determined as t the core substative
14 issues of the case. *Id*. at ¶¶ 3-8. To keep the case moving forward as efficiently as possible, including
15 "reach[ing] early resolution of the merits issue at the center of the case," Plaintiffs stipulated to the
16 bifurcation request. ECF No. 134 at 5:23-26; Bellows Decl. ¶ 9.

17       Based on FCA Defendants' clear admission that "Wasatch Property Management is the entity
18 that signs all leases, Additional Service Agreements, and HAP Contracts, manages the properties
19 where Defendants' Section 8 tenants live, and charges and collects the additional service charges
20 whose legality is at issue in each of the claims," the parties determined that "the claims in the case turn
21 on Wasatch Property Management's conduct." ECF No. 134 at 6:1-4; *see also* Stip. and Order
22 Modifying the Class Cert. Order, ECF No. 226 at 4:25-5:2 (same, signed by all Defendants). Thus, the
23 parties agreed that Phase 1 would focus only on whether WPM's actions gave rise to liability on the
24 class claims, whether WPM was liable under the FCA, and the amount of damages or restitution

---

[1] The Stipulated Bifurcation Order provided that the Defendant previously listed as "Chesapeake Common Holdings LLC" would be corrected to "Chesapeake Apartment Holdings, LLC." *See* ECF No. 135 at 5.

[2] Plaintiffs use "vicarious liability" herein as an umbrella term for these various FCA liability theories, consistent with the use of the term in the Stipulated Bifurcation Order. *See* ECF No. 135 at 6:23 & 8:7-8.

1  necessary to remedy those violations.  *Id.* at 6:9-12.  If liability any of the claims in Phase 1, Phase 2
2  would turn to liability "result[ing] from [other Defendants'] contractual and corporate relationships to
3  Wasatch Property Management," as well as penalties and treble damages under the FCA  *Id.* at 6:4-16.
4  All FCA Owner Defendants were represented parties to these admissions and joint stipulation, filed
5  August 5, 2021.  *Id.*

6       The Court entered the Stipulated Bifurcation Order on August 16, 2021.  ECF No. 135.  The
7  parties proceeded through the rest of Phase 1 discovery in reliance on the Stipulated Bifurcation Order,
8  meaning that Plaintiffs did not conduct further discovery on the nature of Defendants' corporate
9  structures and relationships to each other.  The parties briefed dispositive motions on the Phase 1
10 liability issues, and the Court granted partial summary judgment for Plaintiffs and the certified classes
11 on the illegality of the additional service charges as well as liability for breach of contract and violation
12 of California's Unfair Competition Law.  ECF No. 278 at 9-16, 18.  Pursuant to the Stipulated
13 Bifurcation Order, the Phase 1 trial proceedings will include a jury trial to determine WPM's liability
14 under the FCA and the amount of actual damages for any FCA violations and a bench trial to
15 determine whether WPM's practices violate the Consumer Legal Remedies Act. .  *See* ECF No. 135 at
16 5.  Additionally, although injunctive relief is not expressly assigned to either phase in the Stipulated
17 Bifurcation Order, Plaintiffs and WPM agree that "Plaintiffs' injunctive relief claims against WPM are
18 ripe" and may be tried to the Court as part of the Phase 1 bench trial proceedings.  *See* Am. Joint
19 Pretrial Statement, ECF No. 378 at 38:11-23; *see also* Supp. Jt. Pretrial Statement, ECF No. 386 at
20 1:18-21 (discussing Plaintiffs' proposed timing for the jury and bench trial).

21      On December 8, 2023, at the hearing on Plaintiffs' motion for partial summary judgment
22 regarding remedies, Defendants' counsel informed Plaintiffs and the Court that new counsel may be
23 substituting in for some of the Defendant entities. As a result, the Court offered pretrial conference
24 date of February 16, 2024.  The Court's Standing Order indicated that trial on the Phase 1 issues could
25 then be scheduled between April 16 and June 15, 2024.  *See* Standing Order ¶ 10 ("The parties should
26 be prepared to confirm a trial date within 60 to 120 days from the date of the final pretrial conference,
27 and should be available for trial accordingly.").  Plaintiffs prepared their pretrial filings and trial
28 strategy for Phase 1 pursuant to the terms of the Stipulated Bifurcation Order.

On January 29, 2024, twelve of the Moving Defendants filed several motions for substitution of counsel and an *ex parte* application for a 90-day continuance of the final pretrial conference and all associated filing deadlines. ECF Nos. 337-349. In their *ex parte* application, these Defendants indicated they were aware of the Stipulated Bifurcation Order and attested that they sought only a "brief continuance" so that they could meaningfully participate in the Phase 1 trial. *See* ECF No. 349. at 7, 11-12. Noting that this was a "last minute" request, the Court granted a shorter 45-day extension and re-set the Final Pretrial Conference for March 29, 2024. ECF No. 356. As the Court noted at the Final Pretrial Conference, Moving Defendants did not file a motion for reconsideration of the Stipulated Bifurcation Order during that extension of time. *See* ECF No. 349 (Final Pretrial Conference Tr., March 29, 2024, at 8:6-9:23). Instead, Moving Defendants waited another two weeks after the Final Pretrial Conference to file the present motion, finally filing their request for reconsideration three years after entrance of the Stipulated Bifurcation Order, four months after the substitution of Moving Defendants' counsel, and just three months before the July 30, 2024 trial date offered by the Court in the Final Pretrial Conference. *Id.* at 23:11-15.

**C.** **Argument**

    **1.** **Moving Defendants' Motion Fails to Satisfy the Threshold Criteria for Reconsideration of the Bifurcation Order.**

Although Moving Defendants frame their request as a motion to consolidate under Rule 42 or a motion to modify the scheduling order, they are asking the Court to reconsider the Stipulated Bifurcation Order. *See* Defs.' Mot. to Modify Bifurcation Order ("Mot.") at 1. Requests for reconsideration or modification of interlocutory orders are governed by the standards of Local Rule 230(j) and Federal Rule of Civil Procedure 54(b). *See Lyons v. Baughman*, No. CIV. S-01-412 LKK/KJM P., 2007 WL 1378022, at *1 (E.D. Cal. May 10, 2007) (construing a motion for reconsideration as a motion under Rule 54(b)). As set forth below, none of these procedural vehicles support Moving Defendants' belated request that the Court reconsider or modify the Stipulated Bifurcation Order.

### a. Reconsideration Is Not Warranted Under Rule 54(b).

A court may reconsider an order under its inherent power and Rule 54(b). *See* Fed. R. Civ. P. 54(b); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). With respect to interlocutory orders, "[r]econsideration is ordinarily appropriate only when controlling law has changed, if new evidence has become available, or when necessary to correct a clear error or prevent manifest injustice." *Sants v. Seipert*, No. 215CV00355KJMCKD, 2021 WL 465292, at *6 (E.D. Cal. Feb. 9, 2021). This Court's Local Rules require the moving party to provide "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion." *See id.* (applying L.R. 230(j) to request for reconsideration of interlocutory order); L.R. 230(j).

Moving Defendants have no legitimate grounds for moving the Court on the eve of trial to reconsider the Stipulated Bifurcation Order. Moving Defendants have not identified any change in controlling law, new evidence, clear error, or manifest injustice relating to the Order. Indeed, Moving Defendants fail to identify a single piece of information related to bifurcation that was unavailable to them at the time of the Order or in the three years since. Because all of the arguments that Moving Defendants put forth in their motion were available to them at the time they sought and stipulated to the Order, reconsideration is not warranted. *See Sants*, 2021 WL 465292, at *6 ("In the absence of new evidence or a change in the law, a party may not use a motion for reconsideration to raise arguments or present new evidence for the first time when it could reasonably have been raised earlier in the litigation.").

Moving Defendants' sole justification for bringing this motion now is that Defendants "were informed of a conflict of interest between WPM and the remaining defendants on December 4, 2023, by their former counsel." *See* Mot. at 2-3. Moving Defendants have failed to specifically describe the conflict, explain why it took eight years to come to light, or justify their failure to act earlier to secure appropriate representation in light of the "divergence of interests" among the entities based on their different corporate roles—which is information that Defendants have known all along. Moving Defendants do not allege that discovery of new facts or evidence gave rise to this conflict, nor do they identify any material change in circumstances, other than their decision to hire new counsel.

Moving Defendants' late retention of new counsel is not grounds for reconsideration, even if their new counsel would have made different strategic decisions about bifurcation based on their evaluation of the facts and evidence. It is well settled that a party who "voluntarily chose this attorney as his representative in the action ... cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962). "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Id.*; *See also Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (rejecting Feature Realty's argument that 'newly discovered evidence' existed where former counsel was on notice of relevant facts and noting "Feature Realty's former lawyer knew of the assurances when they were made, in October 1998, and that knowledge is properly attributable to Feature Realty itself."). Nor would Defendants' counsel's earlier failure to identify a potential conflict—a fact that has not actually been established or even asserted here—justify their attempt three years later to undo the Stipulated Bifurcation Order. The Ninth Circuit has repeatedly rejected motions for reconsideration based on attorney error or neglect. *See, e.g.*, *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004) (denying relief from judgment even where plaintiff asserted her prior counsel committed malpractice); *Engleson v. Burlington N. R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992) ("Neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1).").

### b.     The Motion is Untimely under Rule 42.

Moving Defendants assert that a motion to consolidate proceedings under Rule 42 is appropriate "up until the time of trial." Mot. at 2. However, "[d]elay in seeking consolidation is a common ground for denial." *KRL v. Moore*, No. CIVS992437-DFL-DAD, 2006 WL 8446328, at *1 (E.D. Cal. May 15, 2006). *See also Stiles v. Walmart, Inc.*, No. 214CV02234DADDMC, 2023 WL 2575792, at *1 (E.D. Cal. Mar. 20, 2023) (denying motion to consolidate where the defendant's request "essentially comes at the eleventh hour, on the eve of these key pretrial dates and deadlines, and the court's granting of such request would necessarily cause substantial delay in the trial of this nearly-decade-old case"). Moving Defendants' reliance upon *Linton v. Angie's Inc.* for the proposition

that a motion to consolidate is proper "up until the time of trial" is misplaced. 288 F.R.D. 432, 434 (D.S.D. 2012), *aff'd sub nom*. *Heil v. Belle Starr Saloon & Casino, Inc.*, No. CIV. 09-5074-JLV, 2013 WL 943754 (D.S.D. Mar. 11, 2013). The *Linton* Court found that the case was "not ripe for trial" and the Rule 42 motion to consolidate would have been timely under the court's scheduling order had the defendant in the second action brought the motion. *Id.* at 434 n.1, 438 n.2. Here, to the contrary, the Phase 1 issues are ripe for trial and the Court has indicated that trial could proceed as soon as July 30, 2024.

### c. Rule 16 Does Not Apply to or Support this Motion.

Defendants' alternative framing of their motion as a request to modify the scheduling order under Rule 16 is also unavailing. As a preliminary matter, it is nonsensical because the instant motion is not related to the scheduling order in this case; rather, as set forth above, it seeks reconsideration of the Court's earlier Order. Even if Rule 16 did apply, the Rule 16 good cause standard focuses on the diligence of the party seeking to amend the scheduling order and the reasons for seeking modification. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("[T]he focus of the inquiry is upon the moving party's reasons for seeking modification .... If that party was not diligent, the inquiry should end."). Given that three years have lapsed since the Court entered the Stipulated Bifurcation Order, and there have been no relevant changes during that time, Moving Defendants have not demonstrated diligence in seeking relief. As with motions for reconsideration, the desire to change litigation strategy or tactics is not a factor supporting good cause under the Rule 16 analysis. *Onyx Pharms., Inc. v. Bayer Corp.*, No. C-09-2145 EMC, 2011 WL 4527402, at *2 (N.D. Cal. Sept. 21, 2011) ("Carelessness and/or change in litigation strategy do not amount to diligence.").

Because Defendants do not satisfy the threshold criteria to bring their motion before the Court, it should be denied. However, as discussed below, even if Defendants had timely raised their arguments, modification of the Stipulated Bifurcation Order is not appropriate.

### 2. The Stipulated Bifurcation Order Preserves Defendants' Seventh Amendment Rights.

The Seventh Amendment provides, in pertinent part, that "no fact tried by a jury shall be otherwise reexamined in any Court of the United States." U.S. Const. amend. VII. There is no

absolute right to a single jury trial on all issues. *Arthur Young & Co. v. U. S. Dist. Ct*., 549 F.2d 686, 692–93 (9th Cir. 1977) (the court must preserve any federal right to a jury trial when ordering a separate trial), citing *Gasoline Prod. Co. v. Champlin Ref. Co*., 283 U.S. 494 (1931). In the bifurcation context, the Seventh Amendment has been interpreted to prohibit the *same issue* from being reexamined by separate juries. *United States v. J-M Mfg. Co., Inc*., No. EDCV 06-55-GW(PJWX), 2018 WL 705532, at *10 (C.D. Cal. Jan. 31, 2018); *Blyden v. Mancusi*, 186 F.3d 252, 268 (2d Cir. 1999). This prohibition on reexamination prevents "having two juries decide the same essential issues," but does not keep separate juries from considering some of the same evidence. *J-M Mfg. Co., Inc*., 2018 WL 705532, at *10 quoting *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 587 F. Supp. 1112, 1117 (D. Del. 1984). Multiple trials risk violating the Seventh Amendment only where they involve "interwoven" issues that cannot be resolved without revisiting, and effectively re-deciding, the same factual questions in each. *Id.* at *10, citing *Gasoline Prod. Co*, 283 U.S. 494. *See also Lutz v. Glendale Union High Sch*., 403 F.3d 1061, 1067 n.6 (9th Cir. 2005) (finding "no bar" to separate trials on liability and damages where the issues were "sufficiently distinct").

In the present case, Phase 1 and Phase 2 do not involve "interwoven" issues that require the factfinder to re-decide the same factual questions in each phase. The jury in Phase 1 will decide whether Wasatch Property Management violated the False Claims Act based upon its conduct, policies, and practices. ECF No. 135 at 7.[3] If WPM is found to have violated the False Claims Act, the Phase 2 factfinder will decide whether the corporate structure or nature of FCA Owner Defendants' relationship with WPM establishes liability against the FCA Owner Defendants. *Id.* at 8. The FCA Defendants recognized this distinction when they voluntarily narrowed the scope of the FCA claim in Phase 1 to a single actor (WPM) and reserved the question of whether that liability also binds FCA Owner Defendants for Phase 2.[4] *See id.* at 6 ("[T]he proposed bifurcation preserves all parties' federal

---

[3] The elements of an FCA claim are "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis*., 862 F.3d 890, 902 (9th Cir. 2017).

[4] To clarify, the FCA claim is asserted only against WPM and the FCA Owner Defendants named in the operative complaint. ECF No. 331 at 41. Pursuant to the Stipulated Bifurcation Order, Phase 2 will address the liability of non-WPM Defendants for various claims under alter ego, vicariously

jury rights because the issues to be tried in Phase 2 will not require reexamination of any issue tried to a jury in Phase 1.").

Moving Defendants claim that bifurcation violates their Seventh Amendment rights because "mere participation" of FCA Owner Defendants counsel in the Phase 1 trial does not enable the FCA Owner Defendants to defend themselves against liability, fully participate in trial, or appeal any adverse ruling. Mot at 7. There is no basis for this claim. FCA Owner Defendants are named parties in this case and with respect to the FCA claim. While only WPM's liability is being determined during Phase 1, the Court has already established that FCA Owner Defendants may participate in the Phase 1 trial. FCA Owner Defendants will have the same ability to appeal issues from Phase 1 following a final judgment as they would in a consolidated trial. Thus, FCA Owner Defendants' concern that, following a finding of liability against WPM, they are also vulnerable to findings of vicarious liability, does not implicate the Seventh Amendment.

### 3. The Rule 42 Factors Support Maintaining the Stipulated Bifurcation Order.

The district court has broad discretion under Rule 42(b) to bifurcate proceedings "[f]or convenience or to avoid prejudice, or to expedite or economize." Fed. R. Civ. P. 42(b). Courts consider several factors in determining whether bifurcation is appropriate, including "whether the issues are clearly separable, and whether bifurcation would increase convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the parties." *Aoki*, 2015 WL 5734626, at *4. These considerations "are all in the alternative[,]" and "the presence of only one may be sufficient to sustain an order for a separate trial." *In re EPD Inv. Co., LLC,* No. BR 12-02424 ER, 2019 WL 4233575, at *1 (C.D. Cal. June 4, 2019). The facts relating to bifurcation have not changed since the parties stipulated to this litigation structure in 2021, and each Rule 42 factor continues to support the Stipulated Bifurcation Order.

---

liability, single enterprise, and joint venture agency principles. ECF 135 at 6. Liability for the non-FCA claims considered in Phase 2 will include consideration of liability as to additional Owner Defendants, but liability for the FCA claim will include consideration of liability only as to FCA Owner Defendants. *Id.*

### a. Phase 1 and Phase 2 Issues are Clearly Separable.

As explained in Section III.B, *supra* at pp. 8-10, the Phase 1 and Phase 2 issues are clearly separate and do not require the presentation of overlapping evidence. The issue in the Phase 1 trial is whether WPM, through its own conduct, violated the False Claims Act. ECF No. 135 at 6. This evidence will focus on WPM's actions, policies, and practices, but will <u>not</u> include evidence of FCA Owner Defendants' corporate structure or relationship with WPM. Phase 2 will then consider whether the FCA Owner Defendants "are liable for any violations of the False Claims Act found in Phase 1 based on alter ego liability, the single enterprise doctrine, the existence of a joint venture [or] agency principles" to facilitate the entry of a judgment after the calculation of statutory remedies under the False Claims Act. ECF No. 135 at 6:7-16. Accordingly, the Phase 2 evidence will focus narrowly on the corporate relationships between WPM and the FCA Owner Defendants, and will not involve the redetermination of any Phase 1 issues.

### b. Expediency and Judicial Economy Favor Bifurcation.

Judicial economy is a controlling consideration under Rule 42(b). 9A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2388 (3d ed., Apr. 2023 Update); *Liberty Mut. Ins. Co. v. Hawaiya Techs., Inc.*, No. 18-00410 HG-WRP, 2021 WL 54503, at *2 (D. Haw. 2021) ("[I]t is the interest of efficient judicial administration that is controlling under the rule, rather than the wishes of the parties."). The Ninth Circuit has recognized that separate trials may avoid "costly and possibly unnecessary proceedings [through] resolution of potentially dispositive preliminary issues." *Jinro Am. Inc. v. Secure Inv., Inc.*, 266 F.3d 993, 998 (9th Cir.), amended on denial of reh'g, 272 F.3d 1289 (9th Cir. 2001). For this reason, courts routinely bifurcate cases where a first phase will eliminate a dispositive issue. *See, e.g., J-M Mfg. Co., Inc.*, 2018 WL 705532 (False Claims Act case bifurcated to allow for a Phase 1 liability adjudication by jury before damages in Phase 2); *United States v. AseraCare Inc*, No. 2:12-CV-KOB, 2015 WL 12830401 (N.D. Ala. May 20, 2015) (bifurcating proceedings into one phase on the falsity element of the False Claims Act claim and a second phase on the other elements of the FCA claim and all other claims).

The same judicial economy considerations merit bifurcation here. Bifurcated proceedings potentially save the parties and the Court substantial time and costs by resolving FCA liability against

1  WPM, based on WPM's conduct and scienter, in a Phase 1 trial.  ECF No. 135 at 6.  The same benefits
2  accrue to potential jurors who will be spared an unnecessarily lengthy trial.

### c. Bifurcation Will Avoid Jury Confusion.

Moving Defendants claim that there will be "unnecessary confusion for the trier of fact" because "Plaintiffs have not differentiated between the FCA Defendants in terms of what conduct was performed by what entity" and "Plaintiffs have not charged FCA Defendants with causing a false claim to be presented."[5]  Mot. at 5-6.  Moving Defendants' motion itself creates unwarranted confusion by raising the specter of issues that the parties fully resolved through the Stipulated Bifurcation Order.  The parties, including all FCA Defendants, agreed that the *only* conduct at issue in the Phase 1 trial is the conduct of Wasatch Property Management and that the vicarious liability issues regarding the other FCA Defendants in Phase 2 will be based on their corporate and contractual relationships with Wasatch Property Management.  ECF No. 135 at 6.

Indeed, this two-phase trial will minimize jury confusion for precisely the reasons Moving Defendants raise.  Phase 1, as it is currently defined, avoids wading into a trove of evidence concerning the FCA Defendants' corporate structure and relationships.  For example, the seminal case on alter ego liability, *Associated Vendors, Inc. v. Oakland Meat Company*, sets out over twenty factors courts can consider, such as entities' corporate structure, funds, assets, formalities, tax information, and financial accounting.  210 Cal. App. 2d 825, 840 (Cal. Ct. App. 1962).  This type of evidence, including any evidence relating to agency, the single enterprise doctrine, or the existence of a joint venture, is irrelevant to a jury's liability determination based on the actions of WPM alone.  Presentation of such evidence could certainly confuse the jury.  *See Spears v. Adamson*, No. 3:04CV-0087-LRH-RAM, 2009 WL 948544, at *1 (D. Nev. Apr. 6, 2009) ("the presentation of evidence relating to [defendant's] financial status [in the liability phase was] likely to unnecessarily confuse and mislead the jury"); *Arredondo v. Delano Farms Co.*, No. CV F 09-01247-LJO, 2012 WL 2358594, at *12 (E.D. Cal. June 20, 2012) (separation of trials would avoid potential jury confusion because the issues and presentation of evidence are distinct).  As set forth in detail above, the Phase 1 and Phase 2

---

[5] These accusations are unfounded for the reasons set out in Plaintiffs' Opposition to the Motion for Judgment on the Pleadings.

issues are separate, and the evidence related to corporate structure and relationships could be voluminous and complex. There is no reason to present this evidence to the jury during Phase 1. Bifurcation will avoid the risk of jury confusion. To the extent that FCA Owner Defendants' participation in the Phase 1 trial needs to be explained to the jury, this can be accomplished through jury instructions. Mot. at 5; *see* Fed. R. Evid. 105.

### d. **Bifurcation Does Not Prejudice Defendants; Belated Consolidation Would Prejudice Plaintiffs.**

Maintaining bifurcation, particularly at this stage of litigation, does not prejudice any Defendants. FCA Defendants proposed and stipulated to the Stipulated Bifurcation Order, which crafted terms to protect the interests of all parties while advancing litigation toward a timely resolution. All parties litigated in reliance on the agreed-upon bifurcated litigation structure for the last three years. There is no prejudice in maintaining the status quo. Bifurcation may also encourage the Parties to reach a global resolution without needing to commence Phase 2 by resolving all issues as to WPM's direct liability, and therefore enabling the parties to engage in more productive settlement negotiations.

On the other hand, consolidating the proceedings at this juncture will substantially prejudice Plaintiffs. Plaintiffs have been preparing for trial, including preparing pretrial documents, exhibits, witnesses, and strategy, based on the bifurcated structure. Eliminating the bifurcation could delay trial for years in this decade-old case, which may also impede witness testimony availability considering many Section 8 tenants have moved away or moved from Defendants' properties. Moreover, instead of moving closer to resolution of the case, the parties would be forced back into potentially unnecessary and costly discovery. Opening fact discovery into Defendants' corporate structure will certainly give rise to additional delays and disputes for the Court to resolve, including likely motions to compel, if the history of discovery in this case is any indication. *See. e.g.* ECF Nos. 319, 313, 303, 300, 296, 292, 284, 217, 197, 165, 156. 152, 148, & 115; *see also* Bellows Decl. at ¶ 11. The bifurcation of the case prevented Plaintiffs from timely completing this discovery alongside the merits issues during the prior discovery period. Now, after successfully putting of that discovery for years, Moving Defendants seek to use that deferred discovery to delay trial, again for years. This kind of

"[d]isruption to the schedule of the court and other parties ... is not harmless." *See Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005).

Lastly, it is unclear if Moving Defendants' proposal would require a delay to the injunctive relief trial. If Moving Defendants are proposing that this too be delayed, the injunctive relief class would receive no protection from the ongoing unlawful practices, including Wasatch Property Management's continued service of eviction notices requiring tenants to pay additional service charges or face eviction. ECF No. 331.

All of these factors weigh heavily against reconsideration or modification of the Stipulated Bifurcation Order on the eve of trial.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Modify the Court's August 16. 2021 Stipulated Bifurcation Order should be denied.

Dated: April 26, 2024

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/ Anne P. Bellows*
Anne P. Bellows

*Attorneys for Plaintiffs and Relators*