Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800 | Fax (510) 835-1417

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Tel: (510) 834-3300 | Fax (510) 834-3377

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Tel: (510) 437-1863 | Fax (510) 437-9164

Attorneys for Plaintiffs and Relators and the Certified Classes
*[Additional Counsel for Relators listed on following page]*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON APARTMENTS, LP, BENT TREE APARTMENTS, LLC, CALIFORNIA PLACE APARTMENTS, LLC, CAMELOT LAKES HOLDINGS, LLC, CANYON | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**DECLARATION OF ANNE BELLOWS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO MODIFY BIFURCATION ORDER**<br><br>Date:   May 17, 2024<br>Time:   10:00am<br>Dept:   Courtroom 3, 15th Floor<br>Before: Hon. Chief Judge Kimberly J. Mueller<br><br>Trial Date:   None Set |

CLUB HOLDINGS, LLC, COURTYARD AT CENTRAL PARK APARTMENTS, LLC, CREEKSIDE HOLDINGS, LTD, HAYWARD SENIOR APARTMENTS, LP, HERITAGE PARK APARTMENTS, LP, OAK VALLEY APARTMENTS, LLC, OAK VALLEY HOLDINGS, LP, PEPPERTREE APARTMENT HOLDINGS, LP, PIEDMONT APARTMENTS, LP, POINT NATOMAS APARTMENTS, LLC, POINT NATOMAS APARTMENTS, LP, RIVER OAKS HOLDINGS, LLC, SHADOW WAY APARTMENTS, LP, SPRING VILLA APARTMENTS, LP, SUN VALLEY HOLDINGS, LTD, VILLAGE GROVE APARTMENTS, LP, WASATCH QUAIL RUN GP, LLC, WASATCH PREMIER PROPERTIES, LLC, WASATCH POOL HOLDINGS III, LLC, and DOES 1-4,

  Defendants.

Lindsay Nako (SBN 239090)
lnako@impactfund.org
Lori Rifkin (SBN 244081)
lrifkin@impactfund.org
Fawn Rajbhandari-Korr (SBN 315888)
fkorr@impactfund.org
Meredith Dixon (SBN 346864)
mdixon@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473 | Fax: (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes


Lawrence Anthony Organ (SBN 175503)
larry@civilrightsca.com
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, CA 94960-2610
Tel: 415-453-4740 | Fax: 415-785-7352

Attorneys for Relators

I, Anne P. Bellows, declare as follows:

1. I am a member in good standing of the Bar of the State of California and I am a partner at the law firm Goldstein, Borgen, Dardarian & Ho in Oakland, California. My firm is lead counsel for Plaintiffs-Relators and we have been appointed Class Counsel in this action along with the Law Offices of Andrew Wolff, PC, Centro Legal de la Raza, and the Impact Fund.

2. I am the attorney primarily responsible for meeting and conferring with counsel for Defendants. Lewis Brisbois Bisgaard & Smith LLP was sole counsel of record for Defendants until the end of January 2024.

3. In the spring and summer of 2021, all Defendants were represented by Lewis Brisbois. During that time period, Defendants' counsel proposed bifurcating the issues in this case into two Phases.

4. Pursuant to agreements resulting from the Defendants' and Plaintiffs' counsel meeting and conferring, Plaintiffs' counsel created and stipulated to the Stipulation and Order Granting Leave to File Fifth Amended Complaint, Bifurcating the Case for Discovery and Trial and Vacating Case Deadlines filed August 6, 2021 (ECF No.134). The Court entered the stipulation as an order on August 16, 2021 (ECF No. 135) ("Stipulated Bifurcation Order").

5. In relevant part, the Stipulated Bifurcation Order outlines a bifurcation of issues that structured the litigation to first resolve the question of whether Wasatch Property Management's practices gave rise to liability on the class claims and under the False Claims Act ("FCA") (identified as Phase 1), and then conduct discovery and litigate the question of who is liable for the class claims and whether any additional Defendants are liable under the FCA (identified as Phase 2).

6. At the time Defendants proposed bifurcation, Defendants' counsel Ryan Matthews, of Lewis Brisbois, explained during the meet and confer process that they desired to avoid discovery into their relationships to each other, corporate structures, and financial holdings, unless and until after liability was determined as to the core substantive issues of the case, as referenced in ECF 135 at 3:23-26.

7. I understood Defendants' position to be related to a discovery dispute between the parties that is described at length in a June 22, 2021 letter to Lewis Brisbois. A true and correct copy

of the letter from Anne Bellows to Ryan Mathews and Joseph Salazar of Lewis Brisbois Bisgaard & Smith LLP dated June 22, 2021 is attached as **Exhibit A**. In sum, after learning of Defendants' different ownership interests, Plaintiffs had propounded discovery regarding the nature of Defendants' corporate structures and relationships to each other, and Defendants' financial holdings. Defendants refused to provide responsive documents and information relating to these topics. For example, on June 7, 2021, Defendants responded to Denika Terry's Request for Production of Documents (Set 4) and Roy Huskey III's Interrogatories (Set 3) and objected to all but two of Plaintiffs' requests as overbroad, unduly burdensome, harassing, invasive of Defendants' right to financial privacy, demanding disclosure of trade secrets, and not reasonably calculated to lead to the discovery of admissible evidence based on the operative complaint.

8. Additionally, based on my discussions Mr. Matthews, it is my understanding that another of Defendants' purposes in proposing this bifurcation was to defer issues giving rise to potential conflicts and maintain unified representation on the substantive merits issues.

9. The discovery history of this case includes numerous additional discovery disputes between the Parties that have led to requests for Court intervention. The Parties required court intervention on at least 12 occasions to obtain responsive information from Defendants, over their objections. These disputes, at times, necessitated the extension of the discovery deadlines. On all occasions these disputes expended significant resources to litigate and used Court time and resources as well.

I declare under penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct, and that this Declaration was executed this 26th day of April, 2024, in Oakland, California.

*/s/ Anne P. Bellows*
Anne P. Bellows

*Attorneys for Plaintiffs and Relators*

# EXHIBIT A

**G | B | D | H**

**Goldstein, Borgen, Dardarian & Ho**

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

June 22, 2021

**VIA EMAIL ONLY**

Joseph Salazar  Joe.Salazar@lewisbrisbois.com
Ryan Matthews  Ryan.Matthews@lewisbrisbois.com
Lewis Brisbois
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

Re: **Proposal for Stipulation to Amend the Complaint; Defendants' Insufficient Production in Response to Terry RFP Set 4 and Huskey Interrogatory Set 3**

Dear Ryan:

As you are aware, on June 7, 2021, Defendants provided discovery responses identifying for the first time in this litigation that the "subject properties" at issue in the California class claims are owned by 23 different entities, including 22 that are not named Defendants.[1] Now that the true identity of these owners has come to light, we propose that the Parties file a stipulation to amend the complaint to name the true owners as Defendants as to the class claims only.

If Defendants do not agree to the stipulation, Plaintiffs will file a motion for leave to amend the complaint, and they will also need to continue to pursue discovery regarding corporate structure and relationships among Defendants and their affiliates. On that point, Plaintiffs request that Defendants remedy their insufficient production in response to Terry's 4th Set of Requests for Production ("RFP Set 4") and Huskey's 3rd Set of Interrogatories ("Interrogatory Set 3"), both related to Defendants' corporate structure and relationships. This letter serves to summarize the background of the present dispute, address the importance of discovery on corporate structure to this case, and reiterate Plaintiffs' ongoing request for data on the subject.

I.   Background

The operative complaint names the following Defendants:  Wasatch Advantage Group, LLC, Wasatch Property Management, Inc., Wasatch Pool Holdings, LLC, Chesapeake Commons Holdings, LLC, Logan Park Apartments, LLC, and Logan Park Apartments, LP, and Does 1-30. Pls.' Fourth Amended Complaint ("4AC") at ¶ 1. Plaintiffs allege that these "Defendants own,

---

[1] Plaintiffs named "Chesapeake Commons Holdings, LLC" as a Defendant, but in their response to Huskey Interrogatory 15, Defendants identify the relevant entity a "Chesapeake Apartments Holdings, LLC." Defendants had never informed Plaintiffs of the mistake in the name, and made admissions about the named Defendant in their answer.

rent, and/or manage residential apartment units throughout the western United States, including properties in California, Utah, Arizona and Washington." 4AC at ¶ 2; *see also* 4AC at ¶ 16 ("Defendants own and manage, or at relevant times have owned and managed, 69 apartment communities with 16,344 units across five western states . . . "); ¶ 17 (Defendants were the owners and property managers, or the agents or employees of the owners and property managers, of the Subject Properties, during all time periods relevant herein"); ¶ 18 ("Defendants owned, controlled, and managed the Subject Properties"). Plaintiffs further allege that Defendants "were parties to parties to standard form Housing Assistance Payments Contractors ("HAP Contracts") . . . pursuant to the Section 8 program." 4AC at ¶ 10. Plaintiffs also made specific allegations regarding the individually named Defendants, including allegations that Wasatch Advantage Group, LLC and Wasatch Pool Holdings, LLC, are entities "used by Defendants to own and/or manage properties." 4AC at ¶¶ 19, 25.

In their Answer to the Fourth Amended Complaint, Defendants admitted "that some of the named defendants are owners of the Subject Properties." Answer to 4AC at ¶ 17. Defendants also admitted the allegations that Wasatch Advantage Group LLC is an entity "used by Defendants to own and/or manage properties." *Compare* 4AC at ¶ 19, *with* 4AC at ¶ 25. Oddly, the Answer also states that Defendants lack sufficient knowledge to admit or deny other allegations regarding the nature of Defendants' own business. *Compare, e.g.*, 4AC at ¶¶ 17, 25, *with* Answer to 4AC at ¶¶ 17, 25.

Defendants produced 986,852 pages of documents between October 24, 2020 and April 9, 2021. In April, while reviewing some of those documents, Plaintiffs' counsel discovered a pair of audited financial statements that Defendants had provided to a local government agency. Those financial statements identified Wasatch Pool Holdings and two of its wholly owned subsidiaries (Wasatch Pool Holdings III and Wasatch Pool Holdings IV ("WPH III" and "WPH IV" respectively)) as owner(s) of some of the Subject Properties, and Wasatch Premier Properties ("WPP") as the owner of other Subject Properties. *See* WEAU00004194-4213; WEAU00004214-4241. Plaintiffs were not previously aware of the existence of potential ownership interests of Wasatch Pool Holdings III and IV and Wasatch Premier Properties.

On April 22, 2021, Plaintiffs served on Defendants Terry Requests for Production Set 4, and Huskey Interrogatories Set 3, both addressing the corporate structure and relationships among Defendants and their affiliates. After requesting an extension, Defendants served their responses on June 7, 2021. In their sole substantive response, Defendants provided a list of of legal entities that own individual Wasatch properties in response to Huskey Interrogatory 15. Of the 53 properties listed in Defendants' response to Interrogatory 15, Plaintiffs have identified 24 properties located in California, which are owned by 23 different entities:

| California Property | Owner Disclosed in Response to Huskey Interrogatory 15 |
|---|---|
| Aspen Park Apartments | Aspen Park Holdings, LLC |
| Bellwood Park Apartments | Bellwood Jerron Apartments, LLC |
| Bent Tree Apartments | Bent Tree Apartments, LLC |
| Bridges at Five Oaks | Oak Valley Holdings, LP |
| California Place Apartments | California Place Apartments, LLC |

Joseph Salazar -3- June 22, 2021
Ryan Matthews

| | |
|---|---|
| Canyon Club Apartments | Canyon Club Holdings, LLC |
| Chesapeake Commons Apartments | Chesapeake Apartment Holdings, LLC |
| Courtyard at Central Park | Courtyard at Central Park Apartments |
| Creekside Villa Apartments | Creekside Holdings, LTD |
| Hayward Village Tax Credit | Hayward Senior Apartments, LP |
| Heritage Park – Tax Credit | Heritage Park Apartments, LP |
| Jerron Place | Bellwood Jerron Apartments, LP |
| Landing at Fancher Creek | Camelot Lakes Holdings, LLC |
| Logan Park | Logan Park Apartments, LP |
| Oak Valley Apartments | Oak Valley Apartments, LLC |
| Peppertree Apartment Holding, LP | Peppertree Apartment Holdings, LP |
| Piedmont Apartments, LP | Piedmont Apartments, LP |
| Point Natomas Apartments | Point Natomas Apartments, LP |
| Quail Run Apartments | Wasatch Quail Run GP, LLC |
| River Oaks Apartments | River Oaks Holdings, LLC |
| Shadow Way Apartments | Shadow Way Apartments, LP |
| Spring Villas Apartments, LP | Spring Villa Apartments, LP |
| Sun Valley Apartments | Sun Valley Holdings, LTD |
| Village Grove Apartments | Village Grove Apartments, LP |

## II.     Amending the Complaint

Now that the entities in the table listed above and WPP, WPH III, and WPH IV have come to light, Plaintiffs request that Defendants stipulate to an amendment of the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) to add the newly discovered entities as Defendants.  If you are amenable to this suggestion, we will send you a draft amended complaint, with amendments limited to the following: addition of the new Defendants (*i.e.*, WPP, WPH III, WPH IV, and the entities listed in the table above), and incorporation the April 11, 2014 start date for the class period established by the Court at ECF 114.

The simplest and most expedient method of addressing the omitted Defendants would be for the Parties to stipulate to the filing of the Fifth Amended Complaint.  *See* Fed. R. Civ. P. 15(a)(2) (permitting filing of amended pleadings on stipulation of the parties); *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1006-07 & n.3 (9th Cir. 2015) (discuss amendment by stipulation).  Alternatively, if Defendants do not wish to stipulate to the amendment, Plaintiffs will move the Court under Rules 16(b)(4) and 15(a)(2) for leave to file a Fifth Amended Complaint.

Courts routinely find under Rule 16(b)(4) that plaintiffs have shown good cause to file an amended complaint beyond the time contemplated in the scheduling order where they seek to amend add new defendants based on information that recently came to light in discovery.  *See, e.g.*, *Copart, Inc. v. Sparta Consulting, Inc.*, No. 214CV00046-KJM-CKD, 2016 WL 3126108, at *4 (E.D. Cal. June 2, 2016) (finding good cause to allow amendment of the complaint despite approaching discovery deadline where the plaintiff "moved promptly to amend when it obtained sufficient information to support the addition of the new [defendants]"); *M.H. v. Cty. of Alameda*, No. 11-2868, 2012 WL 5835732, at *3 (N.D. Cal. Nov. 16, 2012) ("This Court has

Joseph Salazar  -4-  June 22, 2021
Ryan Matthews

specifically recognized that a plaintiff has good cause to amend a complaint to add defendants if the identities of those defendants were unknown prior to discovery."). Plaintiffs diligently sought to clarify the true identities of the owners after discovering documents raising questions as to named Defendants' ownership of the Subject Properties. We will diligently seek leave to amend the complaint to name the owners and holding companies that, per Defendants' own documents and discovery responses, appear to have some ownership interest in the Subject Properties.

Plaintiffs' request to amend the complaint will also easily satisfy the demands of Rule 15, as "[i]n the Ninth Circuit, Rule 15 is applied with 'extreme liberality.'" *Copart*, 2016 WL 3126108 at *4 (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). "Prejudice is the factor that weighs most heavily in the Rule 15 analysis." *Id.* at *5. In *Copart*, Judge Mueller found that any prejudice caused to existing and newly added defendants could be adequately remedied by amendments to the scheduling order. *See id.* at *5-6. In *Copart*, the plaintiffs sought to add both additional defendants *and new claims*, and the parties anticipated the need for discovery on the new claims. *See id.* Here, by contrast, the claims are unchanged, and it appears that all of the relevant *conduct* in the case (if not the relevant ownership) is attributable to existing Defendants. Plaintiffs do not anticipate that adding the missing Defendants would necessitate lengthy extensions to the discovery deadline.

### III.   Discovery Dispute

Unless the Parties are unable to reach a stipulation to allow amendment of the complaint, as discussed above (in which case we anticipate that we can significantly narrow our discovery requests), Defendants must provide the discovery sought by Terry Requests for Production Set 4 and Huskey Interrogatories Set 3.

Terry Requests for Production Set 4 includes fourteen requests for each Defendant's certificate of incorporation or formation, audited financial statements, and tax returns from 2005 to the present, as well as each Wasatch Property-Owning Entity's organizational chart or structure and minutes, summaries, or reports of their boards of directors meetings. Plaintiffs also requested any contracts or agreements between Wasatch Property Management and any Wasatch Property-Owning Entity, and documents sufficient to identify: all direct and indirect owners of subject properties; any sale or other real estate transaction involving any of the properties; the first date of purchase of any subject property by Defendants; the relationship between Defendant and third-parties RentDynamics, RentPlus, Conservice, and any third-party entity contracted to offer renters' insurance to tenants at the subject properties; and any and all property management databases used by Defendants.

Huskey Interrogatory Set 3 includes eleven interrogatories requesting verified information as to: any loans made among Defendants; contractual agreements made by any Defendant with a third party on behalf of another Defendant; ownership interests and other affiliate relationships among certain named entities and all Wasatch Property-Owning Entities; transfers of assets among entities; officers and employees of more than one of certain named entities; lists of bank accounts maintained by each Wasatch Property-Owning entity and their gross income, net profits, and total expenses; any employee benefits programs or job-training programs offered by Defendants; and owners of all subject properties.

Joseph Salazar -5- June 22, 2021
Ryan Matthews

     Defendants' response to Terry RFP Set 4, served on June 7, 2021, objected to all but two of Plaintiffs' requests as overbroad, unduly burdensome, harassing, invasive of Defendants' right to financial privacy, demanding disclosure of trade secrets, and not reasonably calculated to lead to the discovery of admissible evidence based on the operative complaint.  Defendants also objected to certain requests as requiring them to produce documents related to third parties that were not in their custody or control.

     Defendants also objected on the same day to Huskey Interrogatory Set 3 on the same grounds as they did to Terry RFP 4.  Defendants also issued specific objections to Interrogatory 13 and 14 as unduly invasive of employee privacy and vagueness, respectively.  As discussed above, Defendants provided a single substantive response to Huskey Interrogatory 15; however, even that response failed to provide the information requested by the Interrogatory.

### a. The Discovery Requested is Relevant to Disputed Issues in the Case

     Defendants' objection that the requests are not calculated to lead to the discovery of admissible evidence "based on the allegations contained in Plaintiffs' operative complaint" is without merit.  Plaintiffs' requests all go to the question of corporate structure, which is necessary to determine the relationships among the several Defendants and their affiliates.  This information will be critical at summary judgment and trial to establish each Defendant's liability for the unlawful conduct alleged and ascertain whether one Defendant is the alter ego of the others (or the alter ego of the owner-entities).

     To the extent Defendants believe that Plaintiffs may not conduct discovery into Defendants' corporate structure and relationships because alter ego liability was not explicitly pleaded in the operative complaint, they are mistaken.  First, the discovery sought regarding Defendants' corporate relationships and structure is relevant to each entity's liability under the Unfair Competition Law ("UCL"), with or without alter ego liability.  *See Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1336-37 (2009) (holding agent liable under the UCL where the agent participated in the unlawful conduct and, based on the entities' corporate relationships, received a benefit from the allegedly unlawful charges).

     The evidence is also relevant to determine whether Defendants are alter egos of each other and their affiliates.  In their response to Interrogatory 15, Defendants notably provided a list of legal entities that are not named Defendants but could be found liable for Defendants' conduct.  Further information is necessary to establish whether these and other entities, including named Defendants, are possible alter egos of one another used to evade liability.  *See, e.g.*, *In re Schwartzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010); *United States v. Healthwin-Midtown Convalescent Hosp. & Rehab. Ctr., Inc.*, 511 F. Supp. 416 (C.D. Cal. 1981), *aff'd*, 685 F.2d 448 (9th Cir. 1982).  Discovery of relevant and admissible evidence as to whether one Defendant is the alter ego of others is warranted at this stage of litigation because "[w]hether an alter ego relationship exists between two entities is 'primarily a question of fact.'" *MGA Entm't Inc. v. Hartford Ins. Grp.*, No. ED-CV-080457-DOC, 2012 WL 12894053, at *9 (C.D. Cal. Jan. 27, 2012) (quoting *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1248 (1991)).  Contrary to Defendants' supposition, alter ego liability need not be explicitly alleged in the complaint.  *Id.* at *6-7 ("[T]he law does not require a party to adequately plead in the

Joseph Salazar  -6-  June 22, 2021
Ryan Matthews

complaint the alter ego and joint venture theories in order to advance these theories at summary judgment.").

Paragraph 17 of the Fourth Amended Complaint (4AC) alleges that "Defendants were the owners and property managers, *or the agents or employees of the owners and property managers*, or the Subject Properties. 4AC ¶ 17. Courts have found similar allegations sufficient to put alter ego at issue. *See Greenspan*, 185 Cal. App. 4th. at 1444 (holding that arbitrator could have found that alter ego was sufficiently pled where the complaint alleged "defendant was 'the *agent,* servant, employee, partner, associate, joint venturer, co-participant *and/or principal* of the remaining defendants.'"). In their Answer, Defendants "admit[ted] that some of the named defendants are owners of the Subject Properties," but denied the remainder of paragraph 17 on the basis that they "lack[ed] sufficient knowledge" to admit or deny. Answer to 4AC ¶ 17. Defendants also "admit[ted] the allegations" against Wasatch Advantage Group; however, they "den[ied]" the relevant allegations against Wasatch Pool Holdings. Answer to 4AC ¶¶ 19, 25. Plaintiffs' allegations, and Defendants' denials, sufficiently put Defendants' corporate structure, including any alter ego theories, at issue. *See Gordon*, 33 Cal. 2d at 523 (1949) (defendants' denials were enough to put alter ego liability at issue).

### b. Defendants' Remaining Objections Are Without Merit

Defendants also assert boilerplate objections that the requests are "overbroad" and "unduly burdensome." These boilerplate objections are improper. *See* Fed. R. Civ. P. 34(b)(2)(B); *Ramirez v. Cty. of L.A.*, 231 F.R.D. 407, 409 (C.D. Cal. 2005) ("Most of defendants' objections are too general to merit consideration and are therefore waived."); *Cengage Learning, Inc. v. Davis Textbooks*, No. 2:15-cv-2401 TLN AC, 2016 U.S. Dist. LEXIS 126686, at *3 (E.D. Cal. Sep. 16, 2016) ("General or boilerplate objections, e.g., those based on broad assertions of vagueness, overbreadth or burdensomeness, are improper and do not meet this standard, especially when a party fails to submit any evidentiary declarations supporting such objections.").

Defendants also assert objections based on "financial privacy" and "trade secrets." Defendants' assertion of "trade secrets" is unexplained—nor is it apparent how the relationships among Defendants and their affiliates could qualify as a trade secret. Even assuming Defendants' premise is correct, trade secrets and confidential commercial information "have widely been held to be discoverable upon appropriate findings and with an appropriate protective order." *MDK, Inc. v. Mike's Train House*, 27 F.3d 116, 120 (4th Cir. 1994). Moreover, "[t]ax returns and related documents do not enjoy an absolute privilege from discovery," and can be ordered produced where a need for the documents is established. *A. Farber and Partners, Inc. v. Garber,* 234 F.R.D. 186, 190-91 (C.D. Cal. 2006) (compelling production of tax returns relevant to alter ego allegations). As discussed above, this information is directly relevant to show Defendants' liability for the unlawful side charges at issue in this case. And the Parties have entered into a stipulated protective order that enable Defendants to designate documents and data as "confidential" and limit its disclosure, which should be sufficient to resolve any privacy concerns.

Finally, Defendants' accusation that the discovery requests are harassing is completely unfounded. As described in Section I above, evidence has recently come to light calling into

question the relationships and identities of the relevant corporate entities. The evidence sought by Terry Requests for Production Set 4 and Huskey Interrogatories Set 4 is directly relevant to Defendants' liability.

### c. Defendants' Responses to Huskey Interrogatory 15 and Terry RFP 61 are Insufficient.

Huskey Interrogatory 15 requested Defendants to "[l]ist all owners of each Subject Property from April 2005 to present by legal name of the entity and any aliases; name of the property; date of acquisition and, if relevant, disposition of the property; and whether the owner is or was an Affiliate of any Defendant." Defendants provided a list of property names, and a corresponding list of owner entities, but they did not provide the dates of acquisition and disposition, identify any changes in ownership from April 2005 to the present, or identify whether the owner is an affiliate of any Defendant. Please supplement your response to provide this information.

Relatedly, Terry RFP 61 requests "[d]ocuments sufficient to identify all the direct and indirect owners of the Subject Properties during any time from April 1, 2005 to present, including the legal identity of the entity that owns each property and all members or owners of that entity." Defendants objected on the grounds discussed above, and additionally objected "to the extent this Request requires Defendants to produce documents relating to third parties which are not in Defendants' custody or control." Defs.' Response to RFP 61. As discussed in Plaintiffs' April 28, 2021 meet and confer letter, Defendants have previously disclosed that they maintain information regarding the ownership of their apartment communities in a common database, separate from Yardi. Contrary to Defendants' objections, based on Defendants' prior statements, it appeared that the centrally managed database *is* within Defendants' custody or control. Plaintiffs reiterate our request to meet and confer with Defendants regarding this database to determine what data regarding property-ownership it maintains so that we can obtain a production that is responsive to RFP 61.

We look forward to discussing these issues with you at the earliest opportunity.

Sincerely,

Anne P. Bellows

cc: Andrew Wolff
Brenna Wood-Fitzpatrick
Jesse Newmark
Laura Ho
Kristen Burzynski