ARNALL GOLDEN GREGORY LLP
Richard T. Collins (Bar No. 166577)
rich.collins@agg.com
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, D.C. 20037
Telephone: (202) 677-4030

Attorney for Defendants:

ASPEN PARK HOLDINGS, LLC; BENT TREE APARTMENTS, LLC; CAMELOT LAKE HOLDINGS, LLC; CALIFORNIA PLACE APARTMENTS, LLC; CANYON CLUB HOLDINGS, LLC; CHESAPEAKE APARTMENT HOLDINGS, LLC; COURTYARD AT CENTRAL PARK APARTMENTS, LLC; CREEKSIDE HOLDINGS, LTD; HERITAGE PARK APARTMENTS, LP; PEPPERTREE APARTMENT HOLDINGS, LP; RIVER OAKS HOLDINGS, LLC; SHADOW WAY APARTMENTS, LP; WASATCH ADVANTAGE GROUP, LLC; WASATCH PREMIER PROPERTIES, LLC; WASATCH QUAIL RUN GP, LLC; WASATCH POOL HOLDINGS, LLC; WASATCH POOL HOLDINGS III, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON APARTMENTS, LP, BENT TREE APARTMENTS, LLC, CALIFORNIA PLACE APARTMENTS, LLC, CAMELOT LAKES HOLDINGS, LLC, CANYON CLUB HOLDINGS, LLC, COURTYARD AT CENTRAL PARK APARTMENTS, LLC, CREEKSIDE HOLDINGS, LTD, HAYWARD | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**OWNER AND NON-OWNER DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO MODIFY THE COURT'S AUGUST 16, 2021, BIFURCATION ORDER**<br><br>Date:    May 17, 2024<br>Time:   10:00 AM<br>Dept:    Courtroom 3, 15th Floor<br>Before: Hon. Kimberly J. Mueller<br><br>Trial Date:   None Set |

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10 | SENIOR APARTMENTS, LP, HERITAGE PARK APARTMENTS, LP, OAK VALLEY APARTMENTS, LLC, OAK VALLEY HOLDINGS, LP, PEPPERTREE APARTMENT HOLDINGS, LP, PIEDMONT APARTMENTS, LP, POINT NATOMAS APARTMENTS, LLC, POINT NATOMAS APARTMENTS, LP, RIVER OAKS HOLDINGS, LLC, SHADOW WAY APARTMENTS, LP, SPRING VILLA APARTMENTS, LP, SUN VALLEY HOLDINGS, LTD, VILLAGE GROVE APARTMENTS, LP, WASATCH QUAIL RUN GP, LLC, WASATCH PREMIER PROPERTIES, LLC, WASATCH POOL HOLDINGS III, LLC,<br>and DOES 1-4,<br><br>        Defendants. |

1

Owner And Non-Owner Defendants' Reply Brief In Support of Motion to Modify the Court's August 16, 2021 Bifurcation Order

## I. INTRODUCTION

Owner and Non-Owner Defendants' Motion to Modify the Court's August 16, 2021 Bifurcation Order is timely and may be considered by this Court. Plaintiffs' Opposition fails to acknowledge, or in the alternative, chooses to ignore, the clear risks of juror confusion, inefficiency, and the implications for the Seventh Amendment of continuing to bifurcate this case in the current manner. A Phase 1 trial where only one defendant, Wasatch Property Management, Inc. ("WPM") will be tried, even though five other defendants are subject to the same exact allegations regarding False Claims Act ("FCA") violations, would unfairly prejudice Defendants and create unnecessary confusion for the trier of fact. (*See* Owner and Non-Owner Defendants' Motion to Modify the Court's August 16, 2021 Bifurcation Order, ECF Nos. 388, 388-1 (the "Motion"); *and* Sixth Amended Complaint ("SAC"), ECF No. 331 ¶¶231-245)). Bifurcating the case in this manner will unfairly prejudice the Owner and Non-Owner Defendants because Plaintiffs seek to prove their case at trial based on an alleged but as-yet-proven theory of "company-wide" practices and policies, which will necessarily require evidence regarding the non-WPM defendants. (ECF No. 388-1 at 10.) Further, this prejudice is only compounded by Plaintiffs' stated intent to impute any potential finding of liability against WPM in Phase 1 to the other non-WPM defendants in Phase 2, regardless of whether those defendants are named in the FCA cause of action or even currently named as defendants in the SAC. Plaintiffs' arguments to the contrary are unavailing, as discussed below.

## II. ARGUMENT

**1. Owner and Non-Owner Defendants' Motion to Modify the Court's August 16, 2021 Bifurcation Order is timely and can be considered by this Court.**

This motion is timely because it is non-dispositive, and thus not contrary to the Court's previously issued scheduling orders, and timely under Fed. R. Civ. P. 42, which permits courts to entertain requests to bifurcate or consolidate trials (as the case is here) up until the time of trial. *See* Fed. R. Civ. P. 42; *see also Mascarenas v. Boyd*, No. 222CV00999RGKPLA, 2023 WL 2628617, at *1 (C.D. Cal. Mar. 2, 2023) (finding on March 2, 2023 that it was too early to decide whether to

2

OWNER AND NON-OWNER DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO MODIFY THE COURT'S AUGUST 16, 2021 BIFURCATION ORDER

bifurcate a May 23, 2023 trial, where "it is too early for the Court to speculate what arguments either party will make at trial, particularly when neither party has likely cemented their own arguments."). Plaintiffs' attempt to distinguish the *Linton* case is unpersuasive. While the *Linton* court identified as dicta that the Rule 42 motion to consolidate would have been timely had it been filed by the plaintiff in the second action, the court further determined that the plaintiff's motion upon which it was ruling was timely because "Rule 42 implies that cases may be joined after the deadline for filing motions has passed as the rule contemplates consolidation of cases only for trial," and "[i]n a recent case in this district, . . . the district court granted a motion to consolidate nine months after the deadline set in the scheduling order". *See Linton v. Angie's Inc.*, 288 F.R.D. 432, 434 (D.S.D. 2012), *aff'd sub nom. Heil v. Belle Starr Saloon & Casino, Inc.*, No. CIV. 09-5074-JLV, 2013 WL 943754 (D.S.D. Mar. 11, 2013). Further, in both cases, discovery had closed but no trial date had been set. *See Linton*, 288 F.R.D. at 438. Similarly here, and as of this filing, no trial date has been set and a final pretrial order has not been issued.

To the extent the Court considers this motion a motion to reconsider its prior bifurcation order, rather than a motion to consolidate Phase 1 and Phase 2 pursuant to Rule 42, Owner and Non-Owner Defendants' motion includes the specific changes in circumstances, which were not present to the Court or parties at the time of the August 16, 2021 order to bifurcate this case. Specifically, Owner and Non-Owner Defendants' memorandum in support of their motion outlines the disclosure of the conflict of interest on or about December 4, 2023, and Plaintiffs' stated theory of the case and trial plans, which were only communicated to defendants during the joint pretrial statement meet and conferral process, and which constitute new circumstances that have created the significant risk of prejudice to defendants if the trial proceeds as currently bifurcated. (*See* Memo. ISO Motion, ECF 388-1 at 3-4, 10.)

While Plaintiffs claim that Owner and Non-Owner Defendants have failed to "specifically" describe the conflict of interest, this is not the case. Under the California Rules of Professional

3

OWNER AND NON-OWNER DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO MODIFY THE COURT'S AUGUST 16, 2021 BIFURCATION ORDER

Conduct ("Cal R. Prof. Conduct"), which apply in this Court (*see* Loc. R. 180(e)), Rule 1.7 prohibits a lawyer from representing a client if the representation is directly adverse to another client in the same or separate matter, absent informed written consent. *See* Cal. R. Prof. Conduct 1.7(a). However, even with informed written consent, a lawyer still cannot represent a client if that representation involves the assertion of a claim by one client against another client who is also represented by that same lawyer in the same litigation. *See* Cal. R. Prof. Conduct 1.7(d). Such is the case here, where WPM as the property manager, and Owner and Non-Owner Defendants, hold divergent interests, which will result in adverse claims and arguments concerning culpability if WPM is found liable at trial. Plaintiffs ignore or seek to diminish the clear applicability of Rule 1.7, apparently because it contradicts their theory that all defendants are a single enterprise. In fact, however, each defendant in this litigation is a separate and distinct corporate entity, limited liability company, or limited partnership.

Additionally, Owner and Non-Owner defendants, in particular, are not all similarly situated, where these legally distinct entities either: (1) directly own or owned real property; (2) hold limited partnership interests in entities that own real property; (3) have been dissolved as a matter of state law; or (4) own no real or personal property at all. Furthermore, to the extent that Plaintiffs' proposed definition of "rent" rests on the Court's grant of partial summary judgment under California's Unfair Competition Law, the properties at issue are in four different states with different state laws and under the jurisdiction of multiple PHAs, which may have different procedures for submitting and having lease agreements approved. Despite these distinctions, Plaintiffs seek to group all defendants and properties together, which is evident by the group pleading included in the Sixth Amended Complaint and Plaintiffs' apparent trial strategy. (*See* Memo. ISO Motion, ECF 388-1 at 10.)

Accordingly, now is the appropriate time for the Court to re-examine the issue of bifurcation, particularly in light of Plaintiffs' stated intentions for Phase 1 and Phase 2.

**2.  Bifurcation Does Not Preserve Owner and Non-Owner Defendants' Seventh Amendment Rights**

4

Owner And Non-Owner Defendants' Reply Brief In Support Of Motion to Modify the Court's August 16, 2021 Bifurcation Order

Owner and Non-Owner Defendants' Seventh Amendment rights would be violated if this case proceeds under the current bifurcation order. In opposition, Plaintiffs claim that:

> In the present case, Phase 1 and Phase 2 do not involve "interwoven" issues that require the factfinder to re-decide the same factual questions in each phase. The jury in Phase 1 will decide whether Wasatch Property Management violated the False Claims Act based upon its conduct, policies, and practices. ECF No. 135 at 7.3 If WPM is found to have violated the False Claims Act, the Phase 2 factfinder will decide whether the corporate structure or nature of FCA Owner Defendants' relationship with WPM establishes liability against the FCA Owner Defendants. *Id.* at 8.

(*See* Pltf. Opp., ECF 393 at 15.) However, this argument is inconsistent with the allegations in Plaintiffs' own Complaint. (*See* Memo. ISO Motion, ECF 388-1 at 9.) In comparison, Plaintiffs' own SAC alleges all FCA Defendants allegedly submitted false claims to the government without identifying specific conduct by any single defendant. (SAC, ECF No. 331 ¶¶231-245.) Plaintiffs have amended their complaint six times, most recently as of November 2023, and have not changed the language of their FCA allegations to reflect specific conduct of any of the individual FCA Defendants. Plaintiffs' arguments also ignore Plaintiffs' own stated intent to impute a finding of liability against WPM in Phase 1 against all of the non-WPM defendants in any Phase 2 proceeding and the lack of clarity regarding how they intend to accomplish this. (*See* Memo. ISO Motion, ECF 388-1 at 7-10.) Plaintiffs now appear to argue that, in fact, they are not alleging the non-WPM FCA Defendants actually made false claims to the government. (Pltf. Opp., ECF No. 393 at 14-17.) More pertinently, however, this apparent assertion further supports the motion to consolidate because Plaintiffs' own theory of the case and trial strategy remains unclear and evasive. (Compare *id.* with SAC, ECF No. 331 ¶¶231-245). Considering Plaintiffs' SAC, Phase 1 and Phase 2 clearly involve interwoven issues; and the lack of clarity regarding Plaintiffs' allegations only supports consolidating the phases into one trial.

Owner and Non-Owner Defendants also stated in support of their motion that mere participation in a Phase 1 trial, where Owner and Non-Owner Defendants were not technically named parties in the trial itself, would be prejudicial because it would limit Owner and Non-Owner

5

Owner And Non-Owner Defendants' Reply Brief In Support of Motion to Modify the Court's August 16, 2021 Bifurcation Order

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE: (202) 677.4030
WWW.AGG.COM

Defendants counsel's ability to object, participate, or appeal any adverse decision or ruling. In response, Plaintiffs' argue that Owner and Non-Owner Defendants have "no basis for this claim." (*See* Pltf. Opp., ECF 393 at 16.)

Plaintiffs are incorrect. In fact, "[m]erely because a party appears in the district court proceedings does not mean that the party automatically has standing to appeal the judgment rendered by that court." *VP Properties & Devs., LLLP v. Seneca Specialty Ins. Co.*, 645 F. App'x 912, 914–15 (11th Cir. 2016) (citing *Scottsdale Insurance Co. v. Knox Park Construction, Inc.*, 488 F.3d 680, 684 (5th Cir.2007). "In general, to have standing to appeal one must have been a party at the time judgment was entered and must be aggrieved by the decision being appealed." *Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 966 (9th Cir. 1981). Thus, Owner and Non-Owner Defendants are concerned that Plaintiffs will take findings of fact from Phase 1 and apply those findings against *all of the non-WPM defendants* in Phase 2, even though Plaintiffs' own Complaint does not appear to support any findings on this basis. Under this scenario, should Phase 1 result in a finding of liability against WPM, Plaintiffs could then seek to prevent Owner and Non-Owner Defendants from challenging findings from Phase 1 in Phase 2 or on appeal by relying on the Seventh Amendment or by challenging Owner and Non-Owner Defendants' standing to appeal. This is particularly concerning where Plaintiffs' SAC alleges direct FCA violations against all FCA Defendants, not just WPM.

Thus, the inconsistency between Plaintiffs' SAC allegations and their stated framework for Phase 1 and Phase 2, directly implicate Owner and Non-Owner Defendants' Seventh Amendment rights. Applying findings from Phase 1 to Phase 2 as Plaintiffs seek to do will deprive Owner and Non-Owner Defendants' of the ability to dispute or challenge those Phase 1 findings where Plaintiffs' allegations against them substantially overlap with the allegations against WPM.

### 3. The Rule 42 Factors Do Not Support Bifurcation

The current bifurcation contravenes the stated goals of Rule 42. Plaintiffs claim that Phase

6

OWNER AND NON-OWNER DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO MODIFY THE COURT'S AUGUST 16, 2021 BIFURCATION ORDER

1 and Phase 2 issues are "clearly separable," and accuse Owner and Non-Owner Defendants of confusing the issues. (Pltf. Opp., ECF No. 393 at 17-18.) However, the unspecific allegations included in Plaintiffs' SAC and Plaintiffs' stated intent to apply any finding of liability against WPM against the remaining defendants, would necessarily include, overlapping facts, evidence, and witnesses between Phase 1 and Phase 2. Plaintiffs seek to hold WPM liable for conduct related to 68 different properties, (*see* Plaintiffs' Proposed Fact Stipulations, ECF No. 378 at 49), and it is unclear how Plaintiffs intend to seek FCA liability against Owner or Non-Owner Defendants not named in Plaintiffs' FCA cause of action who otherwise owned property and contracted with WPM, or how Plaintiffs intend to seek liability against defendants who neither owned property nor contracted with WPM.

Further, the HAP Contract certifications at issue in determining WPM's liability would also be at issue in any subsequent Phase 2 trial against owner and other non-owner entities. (*See* Memo. ISO Motion, ECF 388-1 at 9-10.) Despite Plaintiffs' current framing of the Phase 2 trial, Plaintiffs have alleged that five non-WPM, FCA Defendants *directly* submitted false statements to the government. (*See* SAC ¶¶231-245.) Thus, any Phase 2 trial would necessarily have to include these allegations because Plaintiffs have not withdrawn them, with the result that the arguments in Phase 2 would substantially overlap with - and relitigate - arguments and factual disputes at issue in Phase 1 against WPM. The issue of liability for the FCA Defendants, and possibly every non-WPM Defendant, are so intertwined with Plaintiffs' intended Phase 1 trial presentation that a Phase 1 trial only against WPM would cause confusion and uncertainty for the trier of fact in Phase 1 or Phase 2.

Finally, Plaintiffs' contention that they will be prejudiced by a delay in proceeding with the Phase 1 trial, misses the forest for the trees. While it is possible that a Phase 1 trial could occur before a consolidated trial, it is more likely that re-opening discovery and consolidating Phase 1 and Phase 2 will be more efficient than holding two separate trials and empaneling two separate juries.

*See Morgan v. Napolitano*, No. CIV. S-09-2649 LKK, 2012 WL 4755034, at *3 (E.D. Cal. Oct. 4, 2012) (deciding to try two cases together because a consolidated trial would take place sooner than a standalone second trial, even if the consolidated trial would be delayed).

### III.     CONCLUSION

Based on the foregoing, Owner and Non-Owner Defendants hereby request that the Court modify its August 16, 2021, Order bifurcating the case for discovery and trial by consolidating the defendants together for one trial and subjecting the parties and evidence to the same fact-finder or jury.

Dated: May 6, 2024                              **ARNALL GOLDEN GREGORY LLP**

By: */s/ Richard T. Collins*
    Richard T. Collins
    Attorneys for Defendants:

ASPEN PARK HOLDINGS, LLC; BENT TREE APARTMENTS, LLC; CAMELOT LAKE HOLDINGS, LLC; CALIFORNIA PLACE APARTMENTS, LLC; CANYON CLUB HOLDINGS, LLC; CHESAPEAKE APARTMENT HOLDINGS, LLC; COURTYARD AT CENTRAL PARK APARTMENTS, LLC; CREEKSIDE HOLDINGS, LTD; HERITAGE PARK APARTMENTS, LP; PEPPERTREE APARTMENT HOLDINGS, LP; RIVER OAKS HOLDINGS, LLC; SHADOW WAY APARTMENTS, LP; WASATCH ADVANTAGE GROUP, LLC; WASATCH PREMIER PROPERTIES, LLC; WASATCH QUAIL RUN GP, LLC; WASATCH POOL HOLDINGS, LLC; WASATCH POOL HOLDINGS III, LLC