ARNALL GOLDEN GREGORY LLP
Richard T. Collins (Bar No. 166577)
rich.collins@agg.com
2100 Pennsylvania Avenue, NW
Suite 350S
Washington, D.C. 20037
Telephone: (202) 677-4030

Attorney for Defendants:

ASPEN PARK HOLDINGS, LLC; BENT TREE APARTMENTS, LLC; CAMELOT LAKE HOLDINGS, LLC; CALIFORNIA PLACE APARTMENTS, LLC; CANYON CLUB HOLDINGS, LLC; CHESAPEAKE APARTMENT HOLDINGS, LLC; COURTYARD AT CENTRAL PARK APARTMENTS, LLC; CREEKSIDE HOLDINGS, LTD; HERITAGE PARK APARTMENTS, LP; PEPPERTREE APARTMENT HOLDINGS, LP; RIVER OAKS HOLDINGS, LLC; SHADOW WAY APARTMENTS, LP; WASATCH ADVANTAGE GROUP, LLC; WASATCH PREMIER PROPERTIES, LLC; WASATCH QUAIL RUN GP, LLC; WASATCH POOL HOLDINGS, LLC; WASATCH POOL HOLDINGS III, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON APARTMENTS, LP, BENT TREE APARTMENTS, LLC, CALIFORNIA PLACE APARTMENTS, LLC, CAMELOT LAKES HOLDINGS, LLC, CANYON CLUB HOLDINGS, LLC, COURTYARD AT CENTRAL PARK APARTMENTS, LLC, CREEKSIDE HOLDINGS, LTD, HAYWARD | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**OWNER AND NON-OWNER DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:   May 17, 2024<br>Time:   10:00 AM<br>Dept:   Courtroom 3, 15th Floor<br>Before: Hon. Kimberly J. Mueller<br><br>Trial Date:   None Set |

SENIOR APARTMENTS, LP, HERITAGE PARK APARTMENTS, LP, OAK VALLEY APARTMENTS, LLC, OAK VALLEY HOLDINGS, LP, PEPPERTREE APARTMENT HOLDINGS, LP, PIEDMONT APARTMENTS, LP, POINT NATOMAS APARTMENTS, LLC, POINT NATOMAS APARTMENTS, LP, RIVER OAKS HOLDINGS, LLC, SHADOW WAY APARTMENTS, LP, SPRING VILLA APARTMENTS, LP, SUN VALLEY HOLDINGS, LTD, VILLAGE GROVE APARTMENTS, LP, WASATCH QUAIL RUN GP, LLC, WASATCH PREMIER PROPERTIES, LLC, WASATCH POOL HOLDINGS III, LLC, and DOES 1-4,

      Defendants.

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE: (202) 677.4030
WWW.AGG.COM

ii

OWNER AND NON-OWNER DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................ iii

I.      INTRODUCTION ........................................................................................................ 1

II.     ARGUMENT ................................................................................................................. 1

     A.     Owner and Non-Owner Defendants' Motion Is Timely and Can Be Considered by The Court. ............................................................................... 1

     B.     Plaintiffs' Claims Against FCA Defendants Wasatch Advantage Group, LLC, Wasatch Pool Holdings, LLC, and Chesapeake Apartment Holdings, LLC For Violations of The False Claims Act Should be Dismissed. ..................... 2

     C.     Plaintiffs' State Law Causes of Action Should be Dismissed. ............................... 7

III.    CONCLUSION ............................................................................................................ 10

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE: (202) 677.4030
WWW.AGG.COM

## I. INTRODUCTION

Wasatch Advantage Group, LLC, Wasatch Pool Holdings, LLC, and Chesapeake Apartment Holdings, LLC ("FCA Defendants"), along with all Owner and Non-Owner Defendants, moved for judgment on the pleadings and dismissal of Plaintiffs' First Cause of Action alleging False Claims Act ("FCA") violations and state law claims. (*See* Memo. ISO Motion, ECF 387-1.) Dismissal is warranted as Plaintiffs fail to allege the required elements of an FCA violation and lack standing for the state law claims, especially where preempted by federal law. (*Id.*) Plaintiffs' opposition fails to address the significant pleading deficiencies requiring dismissal, as detailed below.

## II. ARGUMENT

### A. Owner and Non-Owner Defendants' Motion Is Timely and Can Be Considered by The Court.

A party may move for judgment on the pleadings after the pleadings are closed, but before trial and early enough not to delay trial. Fed. R. Civ. P. 12(c). No trial date has been set in this case and this motion is being filed more than three months before the earliest trial date contemplated by the Court. All briefing related to this motion will be before the Court as of this reply on May 6, 2024, which is more than two and half months before the earliest trial date contemplated by the Court, i.e. July 30, 2024, and approximately six months prior to the later contemplated date. (*See* ECF 380.) The motion is also currently set for a hearing on May 17, 2024. Based on the forgoing, this motion can be heard and adjudicated by the Court well in advance of any trial date and does not risk delaying the trial. Thus, this motion complies with the only timing restriction included in Rule 12(c).

Additionally, motions for judgment on the pleadings pursuant to Rule 12(c) can be, and are, considered by courts following the close of discovery and ruling on summary judgment motions. *See Doutherd v. Montesdeoca*, No. 2:17-CV-02225, 2021 WL 1784917, at *4 (E.D. Cal. May 5, 2021); *see also Thomas v. Duvall*, No. 3:16-CV-00451, 2021 WL 1225938, at *2 (M.D. Pa. Apr. 1, 2021) (finding when motions for judgment on the pleadings are "filed after the close of discovery and after the dispositive motions deadline, courts have uniformly held that where the matter has not

yet been 'scheduled ... for trial ... [a motion for judgment on the pleadings] [ha]s undoubtedly' been filed early enough not to delay trial").

Further, to the extent it is necessary, there is also "good cause" to modify the Court's scheduling order in order for the Court to hear this motion, which is necessary to streamline the issues for trial, and such consideration would be consistent with prior practices in this litigation, where the scheduling order has previously been modified at the requests of both Plaintiffs and Defendants.[1]

**B.  Plaintiffs' Claims Against FCA Defendants Wasatch Advantage Group, LLC, Wasatch Pool Holdings, LLC, and Chesapeake Apartment Holdings, LLC For Violations of The False Claims Act Should be Dismissed.**

Plaintiffs' FCA claim turns on whether the charges for additional services and amenities were "excess rent payments" beyond the "rent to owner" for the unit agreed to in the Housing Assistance Payments (HAP) Contracts between the Owner Defendants and the Public Housing Authorities (PHAs). Plaintiffs' Opposition – like their Sixth Amended Complaint (SAC) – ignores the extensive statutory and regulatory framework governing the program, which includes the specific definition of the "rent to owner" for the unit, which is the operative term for purposes of their claim under the False Claims Act (FCA).

"Rent to owner" is the "total monthly rent payable to the owner under the lease *for the unit*" and covers "payment for any housing services, maintenance and utilities that the owner is required to provide and pay for." 24 CFR § 982.4(b) (emphasis added). The "housing services, maintenance and utilities" that the owner is required to provide and pay for are specifically spelled out in the Housing Quality Standards (HQS). 24 CFR §§ 982.4(b), 982.401. Far from being "not relevant" as Plaintiffs assert, the HQS identify the amenities, including the utilities, that are included in the subsidized rent to owner. 24 CFR 982.517(b)(2)(i). Amenities beyond those required by the HQS

---

[1] Plaintiffs' arguments that Mr. Orlando Cabrera's involvement in 2023 somehow negates the good cause for the Court to hear this motion are misplaced. Prior to January 19, 2024, Mr. Cabrera, and thus Arnall Golden Gregory LLP, were previously only engaged to advise on housing policies and regulations, and the impact of potential settlement discussions regarding the same. *See* Exhibit A, Decl. Orlando J. Cabrera.

are included the "rent to owner" *if* they "are customarily included in rent in the locality or provided at no additional cost to unsubsidized tenants in the premises." 24 CFR § 982.510(c). "Excess rent payments" under a HAP Contract, therefore, are charges for items that are already included in or should have been covered by the specific "rent to owner" amount that is agreed to in the individual contract. (*See cases cited in Defendants' Motion,* ECF 387-1 at 13-15.) Thus, for example, whether charges for in-unit washers and dryers, which are not required by the HQS, were "excess rent payments" does not turn on whether they were included in the "appliances" listed in the HAP contract, but on whether they were customarily included in the rent in the locality or provided to unassisted tenants at no additional charge. *See* 24 CFR § 982.510(c).

Contrary to Plaintiffs' arguments, the Court's prior rulings do not establish "falsity" for purposes of their FCA claim. The Court found that additional services charges constituted "unlawful rent" under the state's Unfair Competition Law (UCL), based on a definition of rent that "turns" on the tenant's right "to live in and make use of the unit," and Plaintiffs' assertion, which is tied to that definition, that an owner's "conditioning living in a unit on the payment of [additional services] fees may convert those fees into unlawful rent." (*See* Pltf. Opp., ECF 392 at 17.) An actionable false claim under the FCA requires a false certification or promise of compliance with the applicable *federal* statutes, regulations, or contractual terms, not an alleged falsehood that relies on a finding under a state statute. *See U.S. v. Sci. Applications Int'l Corp.,* 626 F.3d 1257, 1266 (D.C. Cir. 2010); *Ebeid ex rel. U.S. v. Lungwitz,* 616 F.3d 993, 998 (9th Cir. 2010). A state law finding that payments were unlawfully converted into "rent" as defined for purposes of the state claims does not constitute a finding that they were "excess rent payments" under the federal statutes and regulations governing the HAP Contract, not only with respect to Plaintiffs' California-based FCA claims, *but even more particularly with respect to their FCA claims involving properties in Utah, Arizona, and Washington*.

Plaintiffs argue, however, that because the HAP Contract refers to payments "for the rental of the contract unit," and "for rent of the unit," the definition of rent as turning on the tenant's "right

3

to live in and make use of the unit" applies to the HAP contract. First, under the HCV Program, rent to the owner "for the unit" covers the items and services in the HQS, any other items and services that the owner includes in the rent, and the utilities necessary to provide housing that complies with the HQS. *See* 24 CFR §§ 982.4(b), 982.401, 982.510(c), 982.517(b)(2)(i). Second, –amenities such as parking spaces, resident pet fees, cable and internet packages, storage units, in-unit washers and dryers, dishwashers, renter's insurance, credit monitoring, *etc.* are expressly not required by the HQS, and/or are not part of the rent *for the unit*. Third, the operative factor in Plaintiffs' definition is whether the amenities were conditions of occupancy, the failure to pay for which could support an action for eviction. As to each of the amenities identified in the SAC, Plaintiffs have failed to specifically allege the predicate facts necessary to make their claim, *e.g.,* that they were *unlawful* conditions to lease the unit; that they were *required,* not optional, under the lease; and/or that they involved payments *to the owners.* Fourth, Plaintiffs have not alleged that any Defendants ever evicted or attempted to evict any tenant for failure to pay the additional services fees. Finally, Plaintiffs' definition of "rent" disregards the fact that a central purpose of the HCV program is to provide assisted tenants with housing *choices,* which include the choices whether to contract for an additional amenity, whether to rent the unit subject to the owner's conditions, and/or whether to find another unit to rent.

To satisfy the falsity element of an FCA claim, the statement or conduct alleged must represent an objective falsehood, *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc*., 525 F.3d 370, 376 (4th Cir. 2008); *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999). "An FCA relator cannot base a fraud claim on nothing more than his own interpretation of an imprecise contractual provision." *See, e.g., United States v. Triple Canopy, Inc.,* 775 F.3d 628, 635 (4th Cir. 2015), *Wilson,* 525 F.3d at 377. This is even more true, where, as here, Plaintiffs' case rests on their own introduction and interpretation of a term ("unlawful rent") that does not appear in the contract or the underlying regulations, and the interpretations of the actual contractual terms ("owner," "tenant," "HAP, " "HQS," "rent reasonableness," "lease," "rent," "rent to owner" and

4

ARNALL GOLDEN GREGORY LLP
A LIMITED LIABILITY PARTNERSHIP
2100 PENNSYLVANIA AVENUE, NW, SUITE 350S
WASHINGTON, DC 20037
TELEPHONE: (202) 677.4030
WWW.AGG.COM

"excess rent payments") are clear from the statutes and regulations governing the HAP Contract. *See also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 792 (4th Cir. 1999) (fraud is limited to "expressions of fact which (1) admit of being adjudged true or false in a way that (2) admit of empirical verification").

Further, Plaintiffs utterly fail to allege materiality in their First Cause of Action. In response to Defendants' Motion for Judgment on the Pleadings, they simply argue that the alleged falsity was material to the decisions to pay the claims. Materiality is a "demanding" and "rigorous" standard, that looks to the effect on the behavior of the recipient/payor of the alleged misrepresentation. *See Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 193-94 (2016). A representation or certification is "material" if it goes "to the essence of the bargain," *i.e.,* that it was a necessary factor in the decision to pay the claim. Plaintiffs argue in response that (1) materiality does not require that the alleged falsity was concealed from the PHAs; (2) that whether the PHAs knew of the additional fees is of limited relevance; and (3) that the PHAs' knowledge cannot resolve whether the alleged violations were material to the *federal* government. (*See* Pltf. Opp., ECF 392 at 14-15 (emphasis in original).) These claims make no sense whatsoever.

First, evidence of whether the PHAs *knew* of the additional charges is necessitated by Plaintiffs' own allegation that "the money … for the payment would not have been paid to the Defendants absent these false claims and fraudulent conduct." SAC, ¶ 244. Plaintiffs clearly imply that the PHAs did not know of the charges because, if they had, they would not have paid the claims – but they fail to allege the predicate that either that the PHAs were unaware of the charges or the Defendants concealed the charges. Plaintiffs' argument here is puzzling in light of the fact that the Court's ruling on partial summary judgment specifically identified the issue of whether Defendants disclosed the charges to the PHAs as a disputed issue of fact with respect to the FCA. (*See* Summary Judgment Order, ECF 278 at 17.)

Second, the assertion that whether the PHA knew of the charges was of limited relevance because the alleged "illegality" of the charges turns on whether they were *required* in order to lease

OWNER AND NON-OWNER DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

or remain in their apartments makes no sense on its face or in light of the allegations in the SAC. Plaintiffs' assertion only underscores the unworkability of a definition of "rent" that requires the payor to determine whether a particular charge was a condition of occupancy, and whether the tenant's failure to pay the charge could result in eviction - – both of which are outside the scope of the HAP Contract. The HAP Contract defines the relationship between the owner and the PHA – it does not limit the owner and the tenant from agreeing to other conditions for the lease. Finally, the PHA will not execute the HAP Contract until it has received and approved a copy of the lease and must retain a copy of the executed lease for three years after the lease has terminated. 24 CFR §§ 982.158(e)(1), 982.302(c), 982.305(c)(2).

Third, it is not clear what Plaintiffs mean by arguing that the PHAs, as local government entities, cannot resolve whether the alleged falsehoods were material to the federal government. All PHAs with HCV programs are authorized by the U.S. Department of Housing and Urban Development (HUD). 42 U.S.C. §1437a(b)(6) and 24 CFR §§ 982.4(b), 982.51. Every PHA must comply with "HUD regulations and other HUD requirements for the program," which "are issued by HUD headquarters, as regulations, Federal Register notices or other binding program directives," 24 CFR § 982.52, and "must adopt a written administrative plan that establishes local policies for administration of the program in accordance with HUD requirements." 24 CFR § 982.54. The PHA enters into an annual contributions contract (ACC) with HUD, under which HUD makes payments to the PHA, over a specified term, for housing assistance payments to owners, and the PHA, agrees to administer the program in accordance with HUD regulations and requirements. 24 CFR § 982.151. The HAP Contract is between the owner and the PHA, and the PHA is the payor of the claim. To the extent that materiality looks to the behavior of the recipient of the claim, the PHA is that entity, and, without more, its decision must be presumed to reflect the requirements of the federal government. Plaintiffs have made no allegation that any *PHA* has failed to act in accordance with HUD regulations and requirements.

Plaintiffs' scienter argument boils down to their assertion that the additional services fees

OWNER AND NON-OWNER DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

were additional rent under the HAP Contract. Because they are asserting a non-statutory, non-regulatory definition of "rent" that is based on external factors, including a chain of possible, but not established, circumstances, and appears only in this case, they cannot claim that Defendants knew that the additional charges were additional rent prohibited under the HAP Contract.

Finally, Defendants have alleged only direct liability under the FCA and only as to the so-called "FCA Defendants." Despite this, however, they propose to find, not only the named FCA Defendants, but all the named Defendants, and even possibly other owners who have not been named, indirectly liable for actions they allege were carried out by Defendant WPM. First, the First Cause of Action does not distinguish between the named Defendants, does not allege a single act by any named FCA Defendant, and simply attributes all of the allegations to all of the Defendants. Second, Plaintiffs seek to extend liability to all Defendants, whether they are named as FCA Defendants or not, based not on any role in the alleged activity, but on their alleged corporate relationships with WPM. Having failed even to name these other entities in the First Cause of Action, however, Plaintiffs are barred from alleging that these entities should be liable under the SAC. For all these reasons, the Court should dismiss Plaintiffs' First Cause of Action.

C.   **Plaintiffs' State Law Causes of Action Should be Dismissed.**

Plaintiffs' opposition fails to address the substantial legal and substantive issues inherent in their state law claims. They attempt to sidestep these problems by asserting that their claims are rooted in the alleged breach of the tenancy addendum. However, this argument misapplies the applicable federal law, which Plaintiffs conveniently label as "irrelevant." (Pltf. Opp., ECF 392 at 27.) Plaintiffs allege that defendants breached the HAP Contracts (entered into by certain defendants and the applicable PHAs) by charging excess rent in violation of the federally regulated HCV Program overseen by HUD and administered by PHAs. Plaintiffs' state law claims are based on this alleged breach. The state law claims should be dismissed because Plaintiffs cannot sue to enforce the terms of a HAP Contract, a contract which they are not parties to, and which they are precluded from enforcing under federal law.

Congress, the courts, and HUD have unequivocally spoken on this matter: HCV tenants lack standing or a private right of action under the HAP Contracts, and they are not parties or third-party beneficiaries to such agreements. A HAP Contract is a contract between a PHA and an owner. Plaintiffs, as tenants, are parties only to the lease agreements, which include the tenancy addendum; however, Plaintiffs, as tenants, cannot be, and are not, parties to the HAP Contracts. While Plaintiffs may sue an owner for alleged breach of the lease, they cannot sue for alleged breach of the HAP Contract. Despite Plaintiffs claims to the contrary, federal regulations do not allow for a tenant to sue an owner to enforce the HAP Contract. *See* 24 CFR § 982.456(c). In fact, the regulation that Plaintiffs' claim is "irrelevant" explicitly prohibits tenants from suing the owner to enforce the HAP Contract. *Id.* ("The HAP contract shall not be construed as creating any right of the family or other third party (other than HUD) to enforce any provision of the HAP contract, or to assert any claim against HUD, the PHA or the owner under the HAP contract.").

Specifically, "[f]ederal courts have consistently held that no private right of action arises under 42 U.S.C. § 1437f, the statute that authorizes housing assistance payments." *Volis v. City of Los Angeles Housing Authority*, 2014 WL 12704885, at *5 (C.D. Cal. 2014); *see also*, *Kirby v. Richmond Redevelopment and Hous. Auth.*, 2005 WL 5864797, *6-7 (E.D. Va. 2005) ("No express private right of action exists in [the Housing Act] or the regulations enabling a voucher participant to enforce the provisions."); *Green v. Konover Residential Corp.*, 1997 WL 736528, at *8 (D. Conn. 1997) (finding no private right of action exists under Section 1437 because Congress' intention was that "HUD should enforce the required conditions by asserting its rights under the HAP contracts, thereby foreclosing private enforcement of the requirements under the Housing Act.").

Likewise, federal regulations "clearly state that tenants do not have a right to enforce [HAP contract] claims against HUD, the PHA or landlord." *Reyes-Garay v. Integrand Assur. Co.*, 818 F.Supp.2d 414, 432 (D.P.R. 2011). Indeed, relevant regulations explicitly provide that a voucher tenant "is not a party to or a third party beneficiary of the HAP contract[,]"; "the family may not exercise any right or remedy against the owner under the HAP contract" [24 CFR § 982.456(b)(1)];

8

and "[t]he HAP contract shall not be construed as creating any right of the family or other third party (other than HUD) to enforce any provision of the HAP contract, or to assert any claim against HUD, the PHA or the owner under the HAP contract." 24 CFR § 982.456(c). The foregoing is fatal to Plaintiffs' state law claims for alleged breach of the HAP Contracts.

Plaintiffs' dismissal of the above federal regulations as "irrelevant" (Pltf. Opp., ECF 392 at 27) reveals a fundamental lack of legal reasoning. Plaintiffs' case is based on these regulations, which directly refute Plaintiffs' argument by clarifying their lack of standing to enforce HAP Contracts. Just because the regulations do not support Plaintiffs' narrative, does not mean they are irrelevant. Similarly, Plaintiffs' reliance on defendants' supposed concession at summary judgment regarding tenants' rights (Pltf. Opp. 392, at 26) falls short, as the Court, not parties or counsel, ultimately determines jurisdiction and standing. *See, e.g., Skyware, Inc. v. Abramson*, 2012 WL 1980258, at *1 (N.D. Cal. 2012) ("It is incumbent on the court to evaluate whether a litigant has standing, and the court may at any time dismiss claims *sua sponte* if the court determines that a litigant lacks standing."); *Richardson v. U.S.*, 943 F.2d 1107, 1113 (9th Cir. 1991) ("Subject matter jurisdiction cannot be conferred upon the courts by the actions of the parties and principles of estoppel and waiver do not apply."); *Janakes v. U.S. Postal Service*, 768 F.2d 1091 (9th Cir. 1985) ("parties cannot by stipulation or waiver grant or deny federal subject matter jurisdiction").

Moreover, Plaintiffs' contention that "*Reyes* did not address or cast doubt on the right of the tenant to enforce the tenancy addendum against the owner," (Pltf. Opp., ECF 392 at 27), is incorrect and contrary to the holding in that case. In fact, *Reyes-Garay* confirmed that HCV tenants cannot use the tenancy addendum to enforce HAP Contracts against PHAs or landlords. *Reyes-Garay*, 818 F.Supp.2d 414, 429-433 (D.P.R. 2011). In that case, HCV tenants sued the landlord and PHA based, in large part, on the tenancy addendum attached to the lease agreements. *Id.* The court rejected plaintiffs' arguments and granted defendants' motion to dismiss with prejudice. *Id.* In doing so, the court confirmed that the tenancy addendum does not grant HCV tenants the standing or a private right of action to sue PHAs or landlords for an alleged breach of a HAP Contract. *Id.* Notably, the

9

one case cited by the parties on this issue underscores and supports defendants' position; specifically, HCV tenants cannot use a tenancy addendum to enforce HAP Contracts against PHAs or landlords.

Plaintiffs' state law claims for excess rent under the HAP Contracts are also preempted by federal law, a defense Plaintiffs incorrectly claim was waived. (Pltf. Opp., ECF 392 at 28). "In the Ninth Circuit, preemption defenses can be raised for the first time in a motion for judgment on the pleadings if there is no prejudice to the plaintiff." *Salazar v. Driver Provider Phoenix LLC*, 2023 WL 167021, at *1 (D. Ariz. 2023). Here, there is no prejudice to Plaintiffs as preemption would have been effective from the outset of the case, and Plaintiffs' argument to the contrary lacks merit. *See, e.g., Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) ("Appellants may not demonstrate prejudice based solely on the untimely assertion of res judicata because this affirmative defense would have been dispositive had [Defendant] asserted it when the action was filed."); *Wyshak v. City Nat. Bank*, 607 F.2d 824, 826 (9th Cir. 1979) (holding that plaintiff was not prejudiced by assertion of statute of limitations defense in amended answer because the defense would have been "effective at the outset of [plaintiff's] suit.").

Furthermore, Plaintiffs' contention that defendants have not shown how the state law claims are preempted by federal law is unfounded. "Inasmuch as federal law cannot be curtailed, circumvented or extended by state law, the point of inquiry is whether state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Time, Inc. v. T.I.M.E. Inc.*, 123 F.Supp. 446, 451 (9th Cir. 1954). This is precisely the situation here. Plaintiffs' state law claims are in direct conflict with Congress and HUD's purposes and objectives in enacting the Housing Act and related regulations, which explicitly state that HCV tenants lack standing or a private right of action under the HAP Contracts, and they are not parties or third-party beneficiaries to such agreements. *See, e.g.*, 42 U.S.C. § 1437f; 24 CFR § 982.456(b)(1) and (c). As a result, Plaintiffs' state law claims for enforcement of the HAP Contracts should be dismissed.

### III.  CONCLUSION

10

Based on the facts and arguments outlined above, as well as those included with Defendants' Motion for, and Memorandum in Support of, Judgment on the Pleadings (ECF Nos. 387 and 387-1), FCA Defendants and Owner and Non-Owner Defendants respectfully requests that the Court grant their motion for judgment on the pleadings.

Dated: May 6, 2024                    **ARNALL GOLDEN GREGORY LLP**

By: */s/ Richard T. Collins*
    Richard T. Collins
    Attorneys for Defendants:

ASPEN PARK HOLDINGS, LLC; BENT TREE APARTMENTS, LLC; CAMELOT LAKE HOLDINGS, LLC; CALIFORNIA PLACE APARTMENTS, LLC; CANYON CLUB HOLDINGS, LLC; CHESAPEAKE APARTMENT HOLDINGS, LLC; COURTYARD AT CENTRAL PARK APARTMENTS, LLC; CREEKSIDE HOLDINGS, LTD; HERITAGE PARK APARTMENTS, LP; PEPPERTREE APARTMENT HOLDINGS, LP; RIVER OAKS HOLDINGS, LLC; SHADOW WAY APARTMENTS, LP; WASATCH ADVANTAGE GROUP, LLC; WASATCH PREMIER PROPERTIES, LLC; WASATCH QUAIL RUN GP, LLC; WASATCH POOL HOLDINGS, LLC; WASATCH POOL HOLDINGS III, LLC