Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne P. Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie E. Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800 | Fax: (510) 835-1417

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Tel: (510) 437-1863 | Fax: (510) 437-9164

Lindsay Nako (SBN 239090)
lnako@impactfund.org
Lori Rifkin (SBN 244081)
lrifkin@impactfund.org
Fawn Rajbhandari-Korr (SBN 315888)
fkorr@impactfund.org
Meredith Dixon (SBN 346864)
mdixon@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473 | Fax: (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes
*[Additional Counsel for Relators listed on following page]*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**DECLARATION OF ANNE BELLOWS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Date:    October 4, 2024<br>Time:    10:00 a.m.<br>Dept:    Courtroom 3, 15th Floor<br>Before:  Hon. Chief Judge Kimberly J. Mueller |

907844.1

DECLARATION OF ANNE BELLOWS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT – CASE NO. 2:15-CV-00799 KJM-DB

1   APARTMENTS, LP, BENT TREE
    APARTMENTS, LLC, CALIFORNIA PLACE
2   APARTMENTS, LLC, CAMELOT LAKES
    HOLDINGS, LLC, CANYON CLUB HOLDINGS,
3   LLC, COURTYARD AT CENTRAL PARK
    APARTMENTS, LLC, CREEKSIDE HOLDINGS,
4   LTD, HAYWARD SENIOR APARTMENTS, LP,
    HERITAGE PARK APARTMENTS, LP, OAK
5   VALLEY APARTMENTS, LLC, OAK VALLEY
    HOLDINGS, LP, PEPPERTREE APARTMENT
6   HOLDINGS, LP, PIEDMONT APARTMENTS,
    LP, POINT NATOMAS APARTMENTS, LLC,
7   POINT NATOMAS APARTMENTS, LP, RIVER
    OAKS HOLDINGS, LLC, SHADOW WAY
8   APARTMENTS, LP, SPRING VILLA
    APARTMENTS, LP, SUN VALLEY HOLDINGS,
9   LTD, VILLAGE GROVE APARTMENTS, LP,
    WASATCH QUAIL RUN GP, LLC, WASATCH
10  PREMIER PROPERTIES, LLC, WASATCH
    POOL HOLDINGS III, LLC,
11  and DOES 1-4,

12        Defendants.

13

14  Andrew Wolff (SBN 195092)
    andrew@awolfflaw.com
15  LAW OFFICES OF ANDREW WOLFF, PC
    1615 Broadway, 4th Floor
16  Oakland, CA 94612
    Tel: (510) 834-3300 | Fax: (510) 834-3377
17

18  Attorneys for Plaintiffs and Relators and the Certified Classes

19  Lawrence Anthony Organ (SBN 175503)
    larry@civilrightsca.com
20  Marqui Hood (SBN 214718)
    marqui@civilrightsca.com
21  CALIFORNIA CIVIL RIGHTS LAW GROUP
    332 San Anselmo Avenue
22  San Anselmo, CA 94960-2610
    Tel: (415) 453-4740 | Fax: (415) 785-7352
23

24  Attorneys for Relators

25

26

27

28

I, Anne P. Bellows, declare as follows:

1.    I am a member of good standing of the Bar of the State of California, and I am a partner at the law firm Goldstein, Borgen, Dardarian & Ho ("GBDH") in Oakland, California.  My firm is lead counsel for Plaintiffs-Relators, and we have been appointed Class Counsel in this action along with the Law Offices of Andrew Wolff, PC, Centro Legal de la Raza, and the Impact Fund.  I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  This declaration is made on personal knowledge and summarizes information from the docket and file in this case, with which I am familiar.

2.    I am attaching a true and correct copy of the Settlement Agreement as **Exhibit A** hereto.  The Settlement Agreement has been executed by Wasatch Property Management and most other Defendants.  I understand that Defendants anticipate providing the remaining signatures.  We expect to file the fully executed settlement with the Court the week of September 3, 2024.

3.    GBDH long has been recognized as one of the leading plaintiffs' class action firms in the country.  The firm handles cutting-edge, high impact cases challenging abuses against employees, people with disabilities, consumers, tenants, and voters.  For over five decades, GBDH has litigated some of the largest and most difficult class actions across the country, recovering hundreds of millions of dollars for its clients and achieving game changing and long-lasting changes in a variety of industries.  A copy of GBDH's bio is attached hereto as **Exhibit B**.

4.    I joined GBDH as an associate in 2017 and became a partner in January 2022.  My practice focuses on housing, consumer, and voting rights.  My recent cases include a landmark California Supreme Court victory for plaintiffs under the California Voting Rights Act, *Pico Neighborhood Association v. City of Santa Monica*,  15 Cal. 5th 292 (2023), and a trial victory on behalf of over a hundred thousand tenants in a class action challenging unlawful late fees imposed by one of the country's largest landlords, *Munguia-Brown, et al. v. Equity Residential et al.*, Case No. 16-cv-01225-JSW (N.D. Cal.).  Prior to joining GBDH, I litigated fair housing cases at another civil rights law firm and at the San Francisco-based non-profit Public Advocates, Inc.  I also served as a law clerk for the Honorable Eric L. Clay on the U.S. Court of Appeals for the Sixth Circuit.

5.    Additional attorneys at GBDH who worked on this case include named partner Laura L.

Ho and associate Stephanie Tilden.  Ms. Ho has been a partner at GBDH since 2005 and a named partner since 2017.  Ms. Ho is a highly experienced and successful class action and public interest litigator who has won numerous awards and recovered over a hundred million dollars for class members in employment and consumer cases and millions of dollars in previous False Claims Act actions.  Ms. Ho serves on the Executive Board of the College of Labor and Employment Law, the Civil Local Rules Attorney Advisory Committee for the Northern District of California, and has served in numerous leadership positions in professional and non-profit organizations.  She is a frequent contributor to legal treatises and speaker on continuing education panels.  Stephanie Tilden joined GBDH after graduating from UC Berkeley School of Law in 2021, where she won numerous awards for academic excellence and served as the Senior Notes Editor for the California Law Review.  At GBDH, she represents employees and consumers in class action cases and has been invited to speak on class action topics.

6.      I, and my firm, recommend approval of the proposed Settlement Agreement of the Class claims, which we consider to be an outstanding result for both certified classes.  The Settlement will achieve injunctive relief for the Class that will ensure cessation of the practices complained of in the operative Complaint, including ensuring that Additional Services Charges are optional for Section 8 tenants at Wasatch properties in California, and cannot be used as a basis for evicting or threatening to evict these tenants.  The injunctive relief provisions encompass every major component of injunctive relief that we would have requested at the Phase 1 bench trial, securing critical protections for Section 8 tenants.  The Settlement also fully reimburses all members of the Reimbursement Class for the Additional Services Charges they paid from May 1, 2011 to November 30, 2022, as well as providing payment of interest on that amount at an approximately 9% rate through July 27, 2024 (the date the Memorandum of Understanding containing the principle settlement terms was executed).

**Case History**

7.      Plaintiffs Denika Terry and Roy Huskey III filed their original *qui tam* and putative class action complaint on April 14, 2015, alleging violation of the federal False Claims Act and class claims under three California laws.  ECF No. 1.  On June 9, 2016, the United States declined to

1    intervene in the FCA claim.  ECF No. 18.  After the complaint was unsealed, Plaintiffs filed an

2    amended complaint.  ECF No. 25.  On September 14, 2016, Defendants filed an answer to the first

3    amended complaint as well as a motion to dismiss.  ECF Nos. 26-27.

4           8.     After Defendants' motion to dismiss was fully briefed and pending in this Court, the

5    parties exchanged initial disclosures and pursued discovery.  *See, e.g.*, ECF No. 101 at 6-7.  The file

6    reflects that both parties provided initial disclosures, propounded written discovery requests, and filed

7    motions to compel with the Court.  The Court granted Plaintiffs' motion to compel Defendants to

8    produce tenant files for Section 8 tenants, resulting in Defendants' production of hundreds of

9    thousands of pages of Section 8 tenant files.  *See* ECF Nos. 47, 48.  During this pre-class certification

10   period, Defendants noticed and took the depositions of both named Plaintiffs at that time (Denika

11   Terry and Roy Huskey) as well eight public housing authorities in California and Utah.  *See* ECF Nos.

12   43-46, 49.  Plaintiffs took Rule 30(b)(6) depositions of officers and managers of Wasatch Property

13   Management Janae Javis, Shawn Fetter, and David Tanforan.

14          9.     On July 21, 2017, the Court granted in part and denied in part Defendants' motion to

15   dismiss.  ECF No. 61.  Plaintiffs filed a Second Amended Complaint on August 4, 2017, ECF No. 66,

16   and Defendants filed an answer to on August 18, 2017.  ECF No. 70.  On August 25, 2017, following

17   over a year of discovery, Plaintiffs moved to file a Third Amended Complaint, ECF No. 71-2, and to

18   certify two California classes: an Injunctive Relief Class pursuant to Rule 23(b)(2) and a

19   Reimbursement Class pursuant to Rule 23(b)(3).  ECF No. 72-1.

20         10.    On July 30, 2018, the Court certified the Reimbursement Class, and conditionally

21   certified the Injunctive Relief Class pending substitution of a new class representative.  ECF No. 92.

22   The Injunctive Relief Class conditional certification took effect on August 29, 2018, when the parties

23   stipulated to the filing of the Third Amended Complaint to add Plaintiff Tamera Livingston as the class

24   representative for the Injunctive Relief Class.  ECF No. 94.

25         11.    Defendants petitioned the Ninth Circuit for interlocutory review of this Court's class

26   certification order pursuant to Rule 23(f) on August 13, 2018, and Plaintiffs filed a response on August

27   27, 2018.  Ninth Circuit denied the petition for interlocutory review on October 17, 2018.

28         12.    My firm and I joined the case in March 2019. We were appointed as additional class

907844.1

counsel on May 15, 2019. ECF Nos. 104-06.

13.     When we joined the case, Defendants were refusing to compile the class list for purposes of notice, arguing that Plaintiffs should compile the information from the hundreds of thousands of pages of tenant files that defendants had produced approximately two years earlier. After extended meet and confer about that issue, Defendants agreed to pull the class list from their centralized Yardi property management database; however, the parties were unable to resolve their disagreement about the length of the class period under the class definition.

14.     One June 14, 2019, in order to move the class notice process forward, Plaintiffs filed a Motion for Clarification or Amendment of the Class Definition, Compilation of the Class List, and Approval of Class Notice. *See* ECF No. 107. The Court granted the motion on January 15, 2020, enabling class notice to go forward. ECF No. 114.

15.     Merits discovery, which began after the Court granted the class certification order and lasted until March 18, 2022, was extensive, hard-fought, and critical to building the case. Plaintiffs' discovery efforts focused on Defendants' policies, training materials, practices, and communications related to charging Section 8 tenants for additional service fees, as well as relevant data from Defendants' centralized database.

16.     During merits discovery, Plaintiffs propounded 10 sets of requests for production, 10 sets of interrogatories, and 7 sets of requests for admission (excluding requests for admission concerning authenticity). Defendants frequently delayed in producing documents or providing adequate discovery responses, requiring significant meet and confer engagement and ultimately numerous motions to compel to overcome Defendants' resistance or unresponsiveness. To satisfy their document production responsibilities for electronically stored information, Defendants ultimately chose to make voluminous email productions without conducting their own review for relevance or responsiveness. Plaintiffs received 2.8 million documents requiring hundreds of hours of document review. While burdensome, this review yielded important evidence.

17.     Beginning before I joined the case, and continuing well into merits discovery, Class Counsel also analyzed the voluminous tenant files produced by Defendants during the pre-class certification discovery period. The tenant files provided critical evidence that we returned to many

1  times throughout the case and relied on to demonstrate consistent practices and standard forms across

2  Defendants' portfolio.

3        18.    When possible, the parties sought to address discovery cooperatively.  This is

4  exemplified in the parties' joint retention of a data consultant to extract relevant datasets from

5  Defendants' Yardi property management database.  Through that collaborative effort, Plaintiffs

6  obtained data that was necessary to identify relevant properties and to calculate relevant charges and

7  payments for affected tenants based on the centrally maintained tenant ledgers.  *See, e.g.*, ECF Nos.

8  323-4, 323-5 (authenticating data and providing calculations of class damages).

9        19.    Depositions during merits discovery included:  Jarom Johnson and Bradley Mishler,

10  both the former Chief Operating Officers of Wasatch Property Management; two Rule 30(b)(6)

11  depositions on topics encompassing Wasatch's policies and practices related to charging Section 8

12  tenants for additional service fees, their standard forms, and compliance systems; fact depositions of

13  Wasatch Property Management President Janae Jarvis, Executive Vice President Shawn Fetter, former

14  Compliance Director Katie Dao, Wasatch Associate General Counsel Tyler Raymond, and outside

15  counsel David Scharlach.  Depositions of Mr. Raymond and Mr. Scharlach, both attorneys, followed

16  Defendants' waiver of attorney-client privilege regarding Section 8 tenants and additional service

17  charges during Mr. Johnson's deposition.  In total, Plaintiffs took ten days of fact depositions during

18  merits discovery, with some witnesses sitting for multiple days.

19        20.    Class Counsel also interviewed at least sixty Section 8 tenants, most of them class

20  members, regarding their experiences with additional service charges at Defendants' properties.  More

21  than two dozen of these tenants agreed to testify at trial and were listed on Plaintiffs' updates to their

22  Rule 26(a) disclosures.

23        21.    During the merits discovery period, Plaintiffs sought discovery regarding the entities

24  that held the subject properties and the corporate relationships among various Defendants.  Defendants

25  provided, for the first time, the identity of the property owners, but they opposed any other discovery

26  into their corporate relationships.  Through extensive meet and confer, the parties reached a stipulation

27  to (1) allow the filing of the Fifth Amended Complaint to specifically name the California property

28  owners as Defendants to the class claims and (2) bifurcate the proceedings to address liability

regarding Wasatch Property Management's conduct in Phase 1 and litigate secondary liability theories in Phase 2. ECF Nos. 134, 135. Following filing and service of the Fifth Amended Complaint, the parties filed a stipulation amending the class certification order to include the new Defendants, which the Court granted on January 25, 2022. ECF Nos. 220, 226.

22. The merits discovery period also included expert work. Both Plaintiffs and Defendants disclosed expert reports on January 28, 2022. Plaintiffs additionally disclosed a rebuttal report on February 25, 2022 and deposed Defendants' disclosed expert on merits issues, Robert Griswold.

23. On April 22, 2022, the parties filed cross summary judgment motions. Plaintiffs sought partial summary judgment on whether Defendants' additional service charges violated the Housing Assistance Payments Contracts and federal law, as well as liability on the class claims for breach of contract and violation of the Unfair Competition law. ECF No. 242. Defendants sought summary judgment on the basis that the charges were lawful, or, in the alternative, decertification of the classes. ECF No. 241. The hearing on the cross motions was held on July 8, 2022. ECF No. 268.

24. On November 23, 2022, the Court granted Plaintiffs' motion for partial summary judgment and denied Defendants' cross motion. ECF No. 278. In granting Plaintiffs' motion, the Court held that Defendant Wasatch Property Management impermissibly treats additional services charges for Class members as rent in violation of federal law and the HAP contracts. *Id.* at 13. The Court therefore found Wasatch Property Management's practices gave rise to liability on the Class breach of contract and UCL claims. *Id*. at 14-15.

25. Shortly after the Court's summary judgment ruling, Defendants informed Plaintiffs that they were making policy changes based on the ruling, though they did not voluntarily provide any details. Defendants also raised for the first time that they would seek to reduce the amount of the class recovery by their costs related to the services. At the status conference on December 2, 2022, the parties proposed and the Court adopted a timeline for remedies discovery that would allow both parties to address these issues, as well as other issues affecting injunctive relief and damages, and to update Defendants' data productions. *See* ECF No. 279. The Court and the parties discussed the settlement procedures and the Court arranged for a settlement conference supervised by a magistrate. *See id.*; ECF No. 281.

26.     On February 28, 2023, the parties submitted confidential settlement briefs, ECF Nos. 288 & 289, and they attended a settlement conference on March 15, 2023, before Chief Magistrate Judge Carolyn K. Delaney.  *See* ECF No. 293.  The case did not settle.

27.     Remedies discovery lasted from December 2022 to September 8, 2023.  *See* ECF No. 312.  During remedies discovery, Plaintiffs conducted additional Rule 30(b)(6) depositions, served additional requests for production of documents and written discovery, disclosed two expert reports addressing remedies, and deposed Defendants' disclosed damages expert for the class claims, James McCurley.  This period of discovery also gave rise to multiple discovery disputes, requiring Plaintiffs to bring five separate motions to compel.  *See* ECF Nos. 284, 292, 296, 313, 319.

28.     Following weeks of attempting to get a response from Defendants on a proposed stipulation to allow the filing of the Sixth Amended Complaint to address factual changes that had occurred since the Court's summary judgment ruling, Plaintiffs filed a motion for leave to file the amended complaint on August 18, 2023.  *See* ECF Nos. 314-15, *see especially* ECF No. 314-1 ¶¶ 6-9, 13-16 (describing Plaintiffs' efforts to meet and confer).  Defendants did not oppose the motion and the Court granted it on November 27, 2023.  ECF No. 329.

29.     On October 6, 2023, Plaintiffs filed a Motion for Partial Summary Adjudication regarding class remedies, and the Court heard argument on this motion on December 8, 2023.  ECF Nos. 323 & 332.  At that hearing, the Court scheduled a final pretrial conference for January 26, 2024, which was later moved by stipulation to February 16, 2024.  ECF Nos. 332 & 336.

30.     During the December 8, 2023 hearing, Defendants informed the Court and Plaintiffs' counsel that they intended to add additional counsel for certain Defendants prior to trial.  *See id*. Almost two months later, on January 29, 2024, Defendants filed motions proposing to substitute counsel for twelve Defendants, and the new counsel moved *ex parte* for a 90-day continuance of the final pretrial conference and all associated filing deadlines.  ECF Nos. 337-349.

31.     On February 1, 2024, the Court granted Plaintiffs' motion for partial summary judgment as to the measure of damages and the prejudgment interest rate on the contract claim.  ECF No. 352 at 6.

32.     On February 2, 2024, the parties filed a joint pretrial statement.  ECF No. 353.  On

February 5, 2024, the Court continued the pretrial conference for 45 days, until March 29, 2024. ECF No. 356. Prior to the final pretrial conference, the parties filed an amended joint pretrial statement on March 15, 2024. ECF No. 378. On March 29, 2024, the Court held the final pretrial conference, identified a potential trial start date of July 30, 2024, and directed the parties to meet and confer on certain identified topics and submit a supplemental pretrial statement by April 12, 2024. ECF No. 380. As part of this supplemental statement, Defendants objected to a trial date of July 30, 2024, and contended that "trial will last 7-8 weeks." ECF No. 386 at 10. On the same date the parties filed this supplemental statement, Defendants also moved for reconsideration of the Court's August 16, 2021 Order that had bifurcated the litigation proceedings into two phases, and moved for judgment on the pleadings with respect to the FCA claim and dismissal with respect to Plaintiffs' class claims. ECF Nos. 387-388. Plaintiffs filed oppositions to these motions on April 26, 2024. ECF Nos. 392-393. The Court entered a Final Pretrial Order on May 7, 2024 setting jury trial on the FCA claim to begin on July 30, 2024 and last approximately two weeks. ECF No. 396 at 16. On May 21, the Court rejected Defendants' motions to reconsider the bifurcation order and for judgment on the pleadings. ECF Nos. 398-399.

33.     On June 7, 2024, the parties filed 24 total motions *in limine*, ECF Nos. 404-427, followed by oppositions on June 21, 2024, ECF Nos. 437-450, 453-466, 468, and replies on July 1, 2024. ECF Nos. 476-490,492-497. The Court heard argument on the motions *in limine* on July 11, 2024 and issued written rulings on July 18, 2024. ECF Nos. 511, 527, 528.

34.     Meanwhile, the parties agreed to attend a two-day in person mediation with the Honorable Jay C. Gandhi (Ret.) of JAMS on June 20 and 21, 2024, and submitted mediation briefs on June 10, 2024. The mediation concluded without a settlement agreement, but the parties continued to work with Judge Gandhi. *See* ECF No. 472.

35.     On the same day mediation ended, June 21, 2024, Defendants filed a motion to dismiss the class claims for lack of subject matter jurisdiction. ECF No. 470. Plaintiffs opposed the motion on July 12, 2024, ECF No. 510, and the Court set the motion for hearing on July 29, 2024 during the Further Final Pretrial Conference. ECF No. 506.

36.     Plaintiffs continued intensive trial preparation work until the eve of trial, including

planning the trial presentation, preparing witness exams, issuing trial subpoenas and contacting

witnesses, preparing witnesses, and preparing exhibits. The parties also completed numerous filings,

including a third joint pretrial statement, additional joint statements in response to Court orders

following hearing on the motions *in limine*, proposed jury instructions and oppositions, proposed voir

dire, proposed verdict forms, objections to exhibit lists, and final trial briefs. ECF Nos. 475, 513-526,

530-40.

37.    After the mediation, the parties continued to engage with Judge Gandhi and, following

the motions *in limine* hearing on July 11, began negotiating directly, exchanging a series of proposals

and demands. On Saturday, July 27, 2024, the parties filed a notice of settlement of the action along

with a memorandum of understanding setting for the principal settlement terms. ECF No. 541.

**Settlement Agreement**

38.    The Settlement achieves comprehensive injunctive relief for the Injunctive Relief Class

of current and future California Section 8 tenants at Wasatch properties and provides full

reimbursement with interest to the Reimbursement Class of California Section 8 tenants who paid

additional service charges at Wasatch properties during the class period.

39.    In my opinion the injunctive relief achieved for the class is excellent—and crucial to

protecting Section 8 tenants from excess charges for renting the unit. The policy changes Plaintiffs

secured through the settlement provide Section 8 tenants with clear information about the optional

nature of the charges, preclude Wasatch Property Management from requiring Section 8 tenants to

agree to charges as a requirement of leasing, and ensure that Section 8 tenants are not threatened with

eviction for unpaid additional charges. Defendants' agreement that the Court will retain jurisdiction to

enforce the settlement for a period of five years also provides the Class an important tool for

accountability.

40.    The outcome for the Reimbursement Class is likewise exceptional. The settlement

provides for full reimbursement of additional service charges paid by class members. According to

records provided from Wasatch and as found by the Court in its February 1, 2024 Order, that amount is

$2,803,080. ECF No. 352 at 5.

41.    Reimbursement Class members will also receive interest on the additional services

charges from the Qualified Settlement Fund that will be determined by pro rata distribution based on the proportion of each class member's total additional service charges. Ex. A at 19-20. This results in interest payments to Class members at an approximately 9% interest rate, and totals approximately $2,052,000. While this is not the same as the total prejudgment interest calculated at a 10 percent rate, as granted by the Court in its February 1, 2024 Order, I believe the difference is substantially outweighed by the value of the injunctive relief obtained and the ability of Reimbursement Class Members to receive payment in 2025 rather than the delay of years that would occur if the case were litigated through all Phases and probable appeal. Moreover, the approximately 9% interest that class members receive is *after* accounting for costs of settlement administration and service payments, which are appropriate costs to come from the class recovery.

42. In order to most effectively administer the Settlement, optimize the likelihood of Class members cashing checks, and ensure that each Reimbursement Class member receives substantial value for their release of claims, all Reimbursement Class members will receive payments of at least $100 (combined reimbursement and interest).

43. Reimbursement Class members are not required to submit claims in order to receive their settlement payments. Because the actual amounts of additional service charges paid by each Reimbursement Class member during the relevant period were established through Plaintiff's successful motion for partial summary judgment regarding remedies, *see* ECF No. 352 at 5-6, there is no need for Class members to go through an additional verification process. Rather, Reimbursement Class members who do not opt out will automatically be paid through the settlement administration process.

44. The Settlement sets out a payment schedule that ensures that Reimbursement Class Members will timely receive their payment following final approval of the Settlement by the Court. The payment schedule, set out in in Exhibit A at 27, is divided into three payments:

      a. The first payment of $5,500,000 by September 25, 2024 is to be allocated to the damages and fees for the FCA Claim, partially satisfying that claim.

      b. The second payment of $5,500,000 by February 1, 2025 will be made to the Qualified Settlement Fund to cover payments to class members, costs and expenses

907844.1

1    of administration, and just $500,000 of Class Counsel's attorneys' fees, costs, and

2    expenses.

3        c.   The third payment of $5,500,000 by February 1, 2026 will provide $1,500,000 to

4    satisfy the remaining FCA recovery and the remaining fees, costs, and expenses for

5    the FCA claim, and up to $4,000,000 for the remainder of Class Counsel's fees,

6    costs, and expenses for the class claims.

7    **Settlement Administration & Notice**

8        45.    The total cost estimate for settlement administration is $130,000.  This includes the

9    estimated cost of $75,000 to retain Verita (formerly KCC) to administer the settlement and the cost of

10   $55,000 to retain Claims Advocacy Group (CAG) to provide individualized benefits consultations to

11   class members.

12       46.    The Parties have agreed on Verita (formerly KCC), a well-regarded national settlement

13   administrator, to be the Settlement Administrator.  Exh. A at 12.  The Court previously appointed

14   Verita to administer two earlier rounds of notice to the certified classes.  ECF Nos. 114, 391.

15       47.    To provide Reimbursement Class members with resources to ensure that any public

16   benefits they receive are not adversely affected by the settlement payments, the proposed noticed

17   program also includes retention of CAG to provide individual government benefits consultations to

18   interested Reimbursement Class members and to prepare an information sheet on how the settlement

19   payments could affect public benefits.  The information sheet will be distributed with the

20   Reimbursement Class notice.  Additionally,  Reimbursement Class members can request a decreased

21   settlement payment amount or decline payment.

22   **Service Awards**

23       48.    In my opinion, the requested service awards of $5,000 to Plaintiffs Terry, Huskey, and

24   Livingston are fair and reasonable to compensate them for the critical role they played in bringing this

25   case on behalf of other similarly situated tenants, and for the time and effort they expended to help

26   secure the result obtained for the classes over the many-year duration of this lawsuit.  As Class

27   Representatives, they shouldered additional responsibilities and risked retaliation in order to ensure

28   that class members would no longer be subjected to Defendants' unlawful actions.

49.    On multiple occasions, I and other class counsel consulted with the Class Representatives on factual issues, including for example their experiences as Wasatch tenants and their interactions with Wasatch employees, to inform our discovery and other litigation efforts. Their contributions were valuable. Had the case not settled, the Class Representatives would have given important testimony at trial. Additionally, the Class Representatives demonstrated significant commitment to the case. Each monitored the progress of the litigation, and I spoke to them often about case updates. They attended multiple substantive hearings, including the hearings on both of Plaintiffs' motions for partial summary judgment. They also participated in settlement discussions and strategy and showed commitment to ensuring that the classes were fully reimbursed for past payments as well as fully protected from future violations. This active participation by each Class Representative in the case was crucial to the success of the litigation and result achieved.

50.    I also observed during our many conversations of the years the stress the Class Representatives experienced related to their involvement in this litigation. For example, on several occasions Plaintiff Livingston shared concerns about retaliation against her by Defendants. In some cases, we provided counseling and connected her with resources, and on at least one occasion Class Counsel worked with opposing counsel to ensure that the issue was properly addressed.

**Attorneys' Fees and Costs**

51.    The Settlement permits Class Counsel to seek up to $4,500,000 in reasonable attorneys' fees and costs for litigation of the class claims through noticed motion, pursuant to Federal Rule of Civil Procedure 23(h), applicable California fee-shifting law, and class members' leases. Exh. A at 10. Defendants agree to pay the amounts of fees and costs approved by the Court. *Id.* There will be no reversion of any funds from the Settlement to Defendants.

52.    Plaintiffs will file a separate motion for the requested attorneys' fees, costs, and expenses 30 days prior to the opt-out deadline so that Class members will have an opportunity to inspect Class Counsel's fee application prior to the deadline for submitting objections or requests for exclusion. At this time, Plaintiffs do not seek approval of the fees and costs, but only ask that the Court include the fee request in the Notice so that the Class can be informed of the provision.

53.    Class Counsel will seek attorneys' fees on a lodestar basis for time attributable to the

1    class claims, together with their costs and expenses attributable to class claims.  Because the class

2    claims had extensive factual and legal overlap with the False Claims Act, Class Counsel will seek fees

3    and costs from the class settlement for:

4              a.  Work and expenses attributable solely to class issues, such as notice costs, the class

5                  certification motion, and the motion for summary judgment on class damages;

6              b.  Work and expenses attributable to both class claims and the FCA, which will be

7                  split in half for purposes of fee and cost calculations.

8          54.    I estimate Class Counsel's costs and expenses attributable to the class claims to be

9    approximately $350,000.  This number encompasses deposition costs, expert fees, court fees and costs,

10   costs of two rounds of pre-settlement class notice, necessary travel, preparation of exhibits for trial,

11   legal research, mediation costs, document management costs for the extensive document production,

12   and other standard litigation expenses.  This amount is reasonable in light of the extensive litigation

13   that was necessary to bring this case to resolution.

14         55.    I estimate that Class Counsel's current lodestar attributable to the class claims, after an

15   initial round of billing judgment, is more than $3.2 million using rates based on those awarded in the

16   Eastern District of California.[1]  These rates are significantly below Class Counsel's hourly rates in the

17   Northern District of California, which yield a current lodestar attributable to the class claims in the

18   range of $6.1 million.  Class Counsel will also seek an appropriate multiplier to compensate counsel

19   for the contingency risk they accepted in litigating this high-risk case for nine years without

20   compensation, for the difficulty and complexity of the case and the skill demonstrated by counsel, and

21   for the excellent result and comprehensive relief obtained for the certified classes. The

22   lodestar/multiplier approach yields a reasonable fee that is greater than the approximately $4,150,000

23   fee award that Class Counsel seeks.

24         56.    Over the last five and a half years, GBDH has spent more than ten thousand hours

25   litigating this hard fought, complex, and important case.   This is in addition to time spent by co-

26   _____

27   [1] This estimate includes fees incurred by my firm, the Impact Fund, Centro Legal de la Raza, and the
     Law Offices of Andrew Wolff.  In preparation for the jury trial, we brought on trial counsel from the
28   California Civil Rights Law Group, led by Lawrence Organ.  That firm's work was solely for the False
     Claims Act and is not counted towards the Class Fees.

1   counsel on this matter. I estimate that more than half the time Class Counsel spent litigating the case is

2   attributable to the class claims.

3       57.    Class Counsel's lodestar is supported by detailed and contemporaneously maintained

4   billing records of time reasonably spent litigating this case for over 9 years. Class Counsel has

5   incurred and will incur additional time in this case, including, but not limited to: finalizing the

6   Settlement Agreement, preparing the motion for preliminary approval and supporting documents,

7   preparing a motion for fees, working with the Settlement Administrator and responding to Class

8   member inquiries, preparing the motion for final approval, and ensuring that the Settlement funds are

9   timely and correctly disbursed.

10      58.    Plaintiffs and Class Counsel vigorously litigated the class claims on behalf of the

11  certified classes over nine years, including obtaining class certification, conducting extensive

12  discovery, and successfully moving for summary adjudication as to Defendant Wasatch Property

13  Management's violation of California law and the damages to which the Reimbursement Class was

14  entitled based on those claims. As the Court is aware, the case was hard-fought by Defendants.

15  Plaintiffs' devoted efforts over the course of the case enabled them to obtain a settlement providing full

16  injunctive relief and essentially complete monetary recovery for class members.

17  **Federal False Claims Act Settlement**

18      59.    The settlement of the FCA claim brought as part of this litigation is set forth in **Exhibit**

19  **A**, attached hereto, at 26-27.

20      60.    Based on communications between my office and the United States Attorneys' Office

21  for the Eastern District of California, I understand that the United States is expected to file a consent to

22  the dismissal of the FCA claim on these terms.  The United States Attorneys' Office for the Eastern

23  District of California was involved in the settlement negotiations leading to the execution of the

24  Memorandum of Understanding, including with regard to the amount of the settlement funds to be

25  allocated to each claim. In my opinion, the FCA settlement is a fair resolution in this non-intervened

26  case of contested claims that were on the verge of jury trial after nearly a decade of litigation.

27  Plaintiffs-Relators faced significant risk on this claim at trial. Liability was likely to turn on the jury's

28  credibility determinations related to testimony regarding scienter and Wasatch Property Management's

alleged unwritten policies.  The claim also entailed both trial and legal risk related to Defendants'

argument that the housing authorities tasked with signing HAP Contracts and making subsidy

payments had never taken any action to address Defendants' allegedly unlawful additional service

policies.  Moreover, even if Plaintiffs-Relators had prevailed at the Phase 1 trial, they would still have

a Phase 2 trial that could have been years away, and likely appeals to fight through.  Given these risks

and considerations, I consider the FCA recovery that we achieved through settlement to be a strong

and positive result.  Moreover, Plaintiffs-Relators' work has resulted in important and positive changes

to the Section 8 Additional Services Charges across the Defendants' portfolio in four states, advancing

the U.S. government's interest in protecting Section 8 tenants from excess charges as required by the

HAP Contract.  The FCA settlement also ensures that the U.S. government is compensated millions of

dollars within 18 months' time.

61.    The validity of the settlement of the class claims does not depend on the validity of the

settlement of the FCA claim, and vice versa.

I declare under penalty of perjury under the laws of the State of California and of the United

States that the foregoing is true and correct, and that this declaration was executed this 30th day of

August, 2024, in Oakland, California.

Anne P. Bellows

Attorneys for Plaintiffs and Relators
and the Certified Classes

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne P. Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie E. Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800 | Fax: (510) 835-1417

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Tel: (510) 437-1863 | Fax: (510) 437-9164

Lindsay Nako (SBN 239090)
lnako@impactfund.org
Lori Rifkin (SBN 244081)
lrifkin@impactfund.org
Fawn Rajbhandari-Korr (SBN 315888)
fkorr@impactfund.org
Meredith Dixon (SBN 346864)
mdixon@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473 | Fax: (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes
*[Additional Counsel for Relators listed on following page]*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>        Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON | Case No.: 2:15-CV-00799-KJM-SCR<br><br>CLASS ACTION<br><br>**SETTLEMENT AGREEMENT** |

Bellows Decl. Ex. A, page 1

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

1  HOLDINGS, LLC, BELLWOOD JERRON
   APARTMENTS, LP, BENT TREE
2  APARTMENTS, LLC, CALIFORNIA PLACE
   APARTMENTS, LLC, CAMELOT LAKES
3  HOLDINGS, LLC, CANYON CLUB HOLDINGS,
   LLC, COURTYARD AT CENTRAL PARK
4  APARTMENTS, LLC, CREEKSIDE HOLDINGS,
   LTD, HAYWARD SENIOR APARTMENTS, LP,
5  HERITAGE PARK APARTMENTS, LP, OAK
   VALLEY APARTMENTS, LLC, OAK VALLEY
6  HOLDINGS, LP, PEPPERTREE APARTMENT
   HOLDINGS, LP, PIEDMONT APARTMENTS,
7  LP, POINT NATOMAS APARTMENTS, LLC,
   POINT NATOMAS APARTMENTS, LP, RIVER
8  OAKS HOLDINGS, LLC, SHADOW WAY
   APARTMENTS, LP, SPRING VILLA
9  APARTMENTS, LP, SUN VALLEY HOLDINGS,
   LTD, VILLAGE GROVE APARTMENTS, LP,
10 WASATCH QUAIL RUN GP, LLC, WASATCH
   PREMIER PROPERTIES, LLC, WASATCH
11 POOL HOLDINGS III, LLC,
   and DOES 1-4,
12
        Defendants.
13

14

15 Andrew Wolff (SBN 195092)
   andrew@awolfflaw.com
16 LAW OFFICES OF ANDREW WOLFF, PC
   1615 Broadway, 4th Floor
17 Oakland, CA 94612
   Tel: (510) 834-3300 | Fax: (510) 834-3377
18
   Attorneys for Plaintiffs and Relators and the Certified Classes
19

20 Lawrence Anthony Organ (SBN 175503)
   larry@civilrightsca.com
21 Marqui Hood (SBN 214718)
   marqui@civilrightsca.com
22 CALIFORNIA CIVIL RIGHTS LAW GROUP
   332 San Anselmo Avenue
23 San Anselmo, CA 94960-2610
   Tel: (415) 453-4740 | Fax: (415) 785-7352
24
   Attorneys for Relators
25

26

27

28

Bellows Decl. Ex. A, page 2

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

# SETTLEMENT AGREEMENT

## I. <u>RECITALS</u>

1. This Settlement Agreement ("Agreement") is made and entered into between Named Plaintiffs and Relators Denika Terry, Roy Huskey III, and Tamera Livingston (collectively "Plaintiffs" or "Relators") on behalf of themselves as Relators and the two California classes (Reimbursement Class and Injunctive Relief Class) defined below, and Defendants Wasatch Advantage Group, LLC, Wasatch Property Management, Inc., Wasatch Pool Holdings, LLC, Chesapeake Apartments, LLC,[1] Logan Park Apartments, LLC, Logan Park Apartments, LP, Aspen Park Holdings, LLC, Bellwood Jerron Holdings, LLC, Bellwood Jerron Apartments, LP, Bent Tree Apartments, LLC, California Place Apartments, LLC, Camelot Lakes Holdings, LLC, Canyon Club Holdings, LLC, Courtyard at Central Park Apartments, LLC, Creekside Holdings, Ltd, Hayward Senior Apartments, LP, Heritage Park Apartments, LP, Oak Valley Apartments, LLC, Oak Valley Apartments, LP, Peppertree Apartment Holdings, LP, Piedmont Apartments, LP, Point Natomas Apartments, LLC, Point Natomas Apartments, LP, River Oaks Holdings, LLC, Shadow Way Apartments, LP, Spring Villa Apartments, LP, Sun Valley Holdings, Ltd, Village Grove Apartments, LP, Wasatch Quail Run GP, LLC, Wasatch Premier Properties, LLC, and Wasatch Pool Holdings III, LLC (collectively "Defendants"), as well as the entities listed in Exhibit 3.

2. On April 14, 2015, Named Plaintiffs and Relators Denika Terry and Roy Huskey III filed under seal an action against some of the Defendants, in the United States District Court for the Eastern District of California, Sacramento Division ("Court"), titled *United States ex rel. Terry, et al. v. Wasatch Advantage Group, et al.*, Case No. 2:15-CV-00799-KJM-DB (E.D. Cal.) (the "Litigation" or "Action"). *See* ECF No. 1. The Action alleged California state-law class claims for breach of contract and violation of the state's Unfair Competition Law and Consumer Legal Remedies Act ("Class Claims"), as well as a claim brought by Relators on behalf of the United States Government under the False Claims Act ("FCA Claim"). On June 9, 2016, the United States notified the Court that it declined to intervene in the FCA case. *See* ECF No. 18 at 2.

---

[1] The relevant legal entity that owns/manages Chesapeake Commons Apartments is correctly identified as Chesapeake Apartments, LLC, and not Chesapeake Apartments Holdings, LLC.

Bellows Decl. Ex. A, page 3

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

3.      On July 12, 2018, the Court granted Plaintiffs' motion for class certification of their state law claims, certifying a class for damages or restitution pursuant to Federal Rule of Civil Procedure ("Rule") 23(b)(3) ("Reimbursement Class").  The Court also conditionally certified a Rule 23(b)(2) class for declaratory and injunctive relief ("Injunctive Relief Class"), subject to Plaintiffs' substituting a new class representative with standing for declaratory and injunctive relief.  The Court defined the Injunctive Relief Class as:

> All persons who: (1) are or will become tenants at any of Defendants' California properties; (2) participate or will participate in the "Section 8" Housing Choice Voucher Program in connection with their tenancies at the California properties; and (3) pay or will pay additional charges set forth in Additional Services Agreements in excess of their individual portions of the contract rent set forth in the HAP Contracts.

*See* ECF No. 92.

4.      On September 20, 2018, Plaintiffs filed their Fourth Amended Complaint adding Plaintiff Tamera Livingston to the case.  *See* ECF No. 98.

5.      On November 23, 2022, the Court granted Plaintiffs' motion for partial summary judgment as to Wasatch Property Management, Inc.'s liability for the breach of contract and UCL class claims.  *See* ECF No. 278.

6.      On November 27, 2023, the Court set November 30, 2022, as the end date for class damages and membership and defined the Reimbursement Class as:

> All persons who, in the time period starting on April 14, 2011 (four years prior to the date of filing the initial Complaint in this action) through November 30, 2022, (1) have been tenants at any of Defendants' California properties; (2) have participated in the "Section 8" Housing Choice Voucher Program in connection with their tenancies at the California properties; and (3) have paid additional charges set forth in Additional Services Agreements in excess of their individual portions of the contract rent set forth in the HAP Contracts.

*See* ECF No. 329.

7.      On July 27, 2024, the Parties executed a Memorandum of Understanding ("Memorandum") setting forth the principal terms of a settlement and filed a Notice of Settlement with the Court.  *See* ECF No. 541.

8.      The Parties agreed that the Memorandum contains the material terms of the settlement and is enforceable unless and until superseded by execution of a long-form settlement agreement.  The Parties agreed that they would execute such an agreement, signed by all Parties by August 26, 2024

Bellows Decl. Ex. A, page 4

DocuSign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

(within 30 days of execution of the Memorandum).  The Parties agreed that they would then present the agreement to the Court for court approval of the settlement of the Class Claims, and to the United States Government (through the U.S. Attorney's Office for the Eastern District of California) to request government consent to the settlement of the FCA Claim as required by 31 U.S.C. § 3730.

9.      Defendants deny any and all liability to the Named Plaintiffs and Relators, and to the Classes, and deny that they violated any federal or state laws or regulations or applicable county or city codes and regulations.  The claims, liabilities, damages and/or causes of action this settlement disposes of and/or merges into the judgment include all claims based on misstatements of any kind, all alleged overcharges, all alleged accounting inadequacies, bodily or mental injuries and emotional distress, all damage to property, including loss of use of property, all threatened evictions, constructive evictions, or other impairments, invasions, or interference with the tenants' occupancy and enjoyment of the premises, all lease violations, and any and all other violations of any common law or statutory duty, whether arising under federal, state or local law, and any and all claims, liabilities, damages and/or causes of action that could have been alleged in any pleading this settlement encompasses, or which could have been added to any such pleading by amendment, including amendment according to proof after trial.

10.     This Agreement contains the full and complete settlement of the Class Claims and of the FCA Claim, as set forth in detail below.  The total amount to be paid in settlement and for release of all claims including those outlined above is $16,500,000, allocated $9.5 million to the class action claims and $7 million to the FCA claim.  This Agreement supersedes the Memorandum and contains all operative terms of the Parties' agreement to resolve this matter.  If there is a conflict between the Agreement and the Memorandum, the Agreement prevails.

## II.    DEFINITIONS

In addition to the terms defined above in the Recitals, the following definitions apply:

1.      **Additional Service Charges** are all charges to all tenants for services listed in Additional Services Agreements ("Additional Services Agreements"), including, as defined in 24 C.F.R. § 982.4(b), tenants receiving tenant-based assistance under Section 1437f(o)(2) of the United States Housing Act of 1937 ("Housing Act of 1937") ("HCV Tenants").

Bellows Decl. Ex. A, page 5

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

2.    **Class Counsel** are Goldstein, Borgen, Dardarian & Ho, Centro Legal de la Raza, Impact Fund, and Law Offices of Andrew Wolff, including the attorneys at each firm and organization, as approved by this Court.

3.    **Class Member** means a person who is a member of either or both Classes or, if such person is incapacitated or deceased, the person's legal guardian, executor, heir, or successor in interest.

4.    **Class Representatives** are Denika Terry, Roy Huskey III, and Tamera Livingston for the Reimbursement Class, and Tamera Livingston for the Injunctive Relief Class, as approved by this Court.

5.    **Complaints** means all complaints filed in this Action.

6.    **Defense Counsel** are Lewis Brisbois Bisgaard & Smith LLP and Arnold Golden Gregory LLP, including the attorneys at each firm.

7.    **Effective Date** is either (a) the date 31 days after the Court has entered a final approval order and judgment if there is no appeal from or requests for review of the order and judgment, or (b) if there is an appeal or request for review, the date on which the order and judgment has been affirmed by the court of last resort for that appeal or review, or the date of denial of review or exhaustion of all appellate remedies.

8.    **Injunctive Relief Class Member** means a person who is a member of the Injunctive Relief Class as of the date of preliminary approval of this settlement by the Court or, if such person is incapacitated or deceased, the person's legal guardian, executor, heir, or successor in interest.

9.    **Participating Class Member** means a person who is a member of the Reimbursement Class and who does not submit a timely and valid opt-out request or, if such person is incapacitated or deceased, the person's legal guardian, executor, heir, or successor in interest.

10.    **Parties** are the Plaintiffs and Defendants.

11.    **Reimbursement Class Member** means a person who is a member of the Reimbursement Class or, if such person is incapacitated or deceased, the person's legal guardian, executor, heir, or successor in interest.

12.    **Reimbursement Class Period** is April 14, 2011, through November 30, 2022, as defined by the Court in its orders.

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

13.    **Owner** shall have the same meaning as set forth at 42 U.S.C. 1437f(f) and 24 C.F.R. 982.4(b).

14.    **Relators' Counsel** are Goldstein, Borgen, Dardarian & Ho, California Civil Rights Law Group, Centro Legal de la Raza, Impact Fund, and Law Offices of Andrew Wolff, including the attorneys at each firm and organization.

### III.    CALIFORNIA CLASS CLAIMS SETTLEMENT

**A.    Injunctive Relief**

"Injunctive Relief Defendants" means: (1) Wasatch Property Management, Inc., and any successor in interest thereof; and (2) any Owner of a California property currently managed by Wasatch Property Management, Inc., which include the following Defendants and properties: Aspen Park Holdings, LLC, Bent Tree Apartments, LLC, California Place Apartments, LLC, Canyon Club Holdings, LLC, Chesapeake Apartments, LLC, Courtyard at Central Park Apartments, LLC, Creekside Holdings, Ltd., Heritage Park Apartments, LP, River Oaks Holdings, LLC, Village Grove Apartments, LP, Heron Pointe Apartments, LLC, Shadow Way Apartments, LP, and Peppertree Apartment Holdings, LP.  The Injunctive Relief Defendants shall implement all terms of the injunctive relief set forth below with respect to the Injunctive Relief Class by no later than September 25, 2024 (within 60 days of execution of the Memorandum).  The injunctive relief requirements for a California property owner and property will cease upon the sale of that real property provided that: (1) the transaction is at arm's length to an unrelated third-party purchaser; and (2) Wasatch Property Management, Inc., and any successor in interest thereof or other affiliated entity, no longer has any control or management over the property or the policies imposed on the tenants following the sale.

By September 25, 2024, Defendant Wasatch Property Management, Inc., shall also file with the Court, on its own behalf and as property manager for all Injunctive Relief Defendants currently managed by Wasatch Property Management, Inc., a declaration describing the implementation of all injunctive relief set forth below and attaching: copies of all pertinent revised forms, documents, and policies; representative samples of communications sent to Defendants' personnel; representative samples of communications sent to HCV Tenants; and representative samples of any documents and communications used to obtain fresh consent from HCV Tenants.

Bellows Decl. Ex. A, page 7

DocuSign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

1   All terms of the injunctive relief are material to this Agreement.

2   The following provisions are not intended to conflict with federal law and regulations, which

3   still apply to all leasing arrangements that Wasatch Property Management, Inc., enters into on behalf of

4   Owners.  None of the terms of the Injunctive Relief set forth herein shall be construed as preventing

5   Injunctive Relief Defendants from charging HCV Tenants for additional services under any agreement,

6   including Additional Services Agreements setting forth Additional Service Charges, or to require any

7   action that does not comply with the United States Housing Act of 1937, 26 U.S.C. § 42, 24 C.F.R.

8   Parts 5, 888, 903, and 982, or 26 CFR 1.42-1 et seq., state laws and regulations, and applicable local

9   codes and regulations.

10   **1.      Revise Documents to Separate Optional Charges and Rent**

11   Injunctive Relief Defendants shall remove from their form documents all language that

12   describes Additional Service Charges as part of HCV Tenants' "total monthly obligation" or "rental

13   rate," as those terms are used in Injunctive Relief Defendants' form documents, or that combines those

14   optional separate charges with rent in any other manner.

15   Injunctive Relief Defendants will revise their rental agreements, monthly cost breakdown

16   forms, renewal notification letters, and move-in cost sheets to make clear that Additional Service

17   Charges are not a component of or combined with rent and are optional separate charges.

18   **2.      Inform HCV Tenants that Charges Are Optional and Not a Basis for Eviction**

19   Injunctive Relief Defendants shall revise their rental policies to ensure that HCV Tenants and

20   Injunctive Relief Defendants' property personnel are informed that Additional Service Charges are

21   optional charges and that unpaid charges will not form the basis for any threat of eviction or eviction

22   proceedings.

23   Defendants shall ensure that HCV Tenants and property personnel are informed that unpaid

24   Additional Service Charges (1) may not be a basis for the landlord's service of any "pay or quit"

25   notice, (2) may not be grounds for the landlord's refusal of a rent payment, and (3) may not be a basis

26   for the filing of any eviction proceedings.

27   "Eviction proceeding" shall mean the filing of an unlawful detainer action undertaken under the

28   laws of the State of California.  No Defendant shall be deemed to have violated Section III.A.2. of this

Bellows Decl. Ex. A, page 8

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

1  Agreement if the Defendant seeks to collect unpaid Additional Service Charges as consumer debt

2  entirely separate from the rental agreement and any eviction proceeding, and without any connection

3  or threat to the tenants' right to remain in their housing.

4         This Agreement does not address eviction notices or proceedings based on a tenant's refusal to

5  relinquish any service under their control, after failing to pay for that service.

6         **3.**    **Inform HCV Tenants of Policy Changes and Their Rights**

7         Injunctive Relief Defendants shall fully inform the following individuals of the changes to

8  Injunctive Relief Defendants' policies and the HCV Tenants' rights with respect to Additional Service

9  Charges: (a) existing HCV Tenants, (b) HCV tenants seeking to renew their leases, and (c) applicants

10  for HCV tenancies.  These communications will include, in clear and accessible language that:

11        a.    Additional Service Charges are *not* part of the rent or "rent to owner" for the unit, and

12              additional services are optional at the choice of the tenant;

13        b.    Non-payment of an Additional Service Charge (1) will not be a basis for the landlord's

14              service of any "pay or quit" notice, (2) may not be grounds for the landlord's refusal of

15              a rent payment, and (3) may not be a basis for the filing of any eviction proceedings;

16              and

17        c.    All payments received from tenants will first be applied to rent charges and thereafter to

18              Additional Service Charges (if applicable).

19  Injunctive Relief Defendants shall clearly and concisely state this information in a notice to

20  current HCV Tenants and in all future Additional Services Agreements.

21         **4.**    **Obtain Consent to Charges from Current HCV Tenants**

22         Injunctive Relief Defendants shall also obtain fresh consent to the Additional Service Charges

23  from existing HCV Tenants at the time of lease renewal.  At the time of lease renewal for HCV

24  Tenants, Injunctive Relief Defendants will disclose the relevant policies governing Additional Service

25  Charges, inform the tenants that the additional services are optional, and then ask tenants to consent to

26  their Additional Service Charges.  For purposes of this term, "consent" may be evidenced by the

27  tenant's execution of an Additional Services Agreement or other similarly named agreement, so long

28  as the agreement states clearly that the additional services are optional.

Bellows Decl. Ex. A, page 9

DocuSign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

**B.    Class Settlement Amount**

Defendants shall pay $9,500,000 to the Reimbursement Class as the entirety of the monetary compensation to resolve the Class Claims ("Class Settlement Amount").  The Class Settlement Amount includes: (1) $5,000,000 for (a) individual payments to Participating Class Members, (b) any service awards approved by the Court, and (c) all costs and expenses actually incurred by and to be paid to the settlement administrator for performance of the tasks detailed below ("Administration Expenses"), as well as costs to pay a third-party to provide government benefit program eligibility advice to Reimbursement Class Members as discussed in Section III.D.4 below; and (2) $4,500,000 for the maximum amount of reasonable attorneys' fees, litigation costs, and expenses incurred in connection with the Class Claims that Class Counsel may ask the Court to approve ("Class Attorneys' Fees and Costs").

**1.    No Reversion**

There will be no reversion of any funds to Defendants under any circumstances.  *See* Section III.G.3.c below.

**2.    Reimbursement Class Net Payment**

The total amount of individual payments to Participating Members of the Reimbursement Class shall be $5,000,000 minus Administration Expenses, as well as costs to pay a third-party to provide government benefit program eligibility advice as discussed in Section III.D.4 below, and any service awards approved by the Court ("Reimbursement Class Net Payment").

**3.    Class Attorneys' Fees & Costs**

Plaintiffs will file a motion with the Court for an award of Class Attorneys' Fees and Costs, not to exceed $4,500,000.  All Class Attorneys' Fees and Costs are included in the total Class Settlement Amount.  Defendants shall pay the amounts approved by the Court and bear their own attorneys' fees and costs in the Litigation.

**4.    Service Awards**

Named Plaintiffs may request service awards of up to $5,000 each from the Court for their efforts and risks on behalf of the Classes in litigating this Action, and as consideration for executing a broader release of claims than the other Class Members.  All service awards approved by the Court are

Bellows Decl. Ex. A, page 10

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

1 included in the total Class Settlement Amount.  Each Named Plaintiff will be solely liable for any and

2 all taxes associated with any service award.

3 **C.    Releases**

4      **1.        Injunctive Relief Class Release**

5      Plaintiffs and all Injunctive Relief Class Members shall fully release Defendants and Heron

6 Pointe Apartments, LLC from any claims for injunctive relief arising from the facts alleged in each of

7 the Complaints that were filed in this Litigation through July 27, 2024 (the date the Memorandum was

8 executed).  This is the full and entire scope of the release for Injunctive Relief Class Members,

9 notwithstanding any other term or language in this Agreement.

10      **2.        Reimbursement Class Release**

11      Plaintiffs and all Reimbursement Class Members who do not submit timely and valid opt-out

12 requests shall fully release Defendants from any claims for monetary damages arising from breach of

13 contract, violation of California's Unfair Competition Law, and violation of California's Consumer

14 Legal Remedies Act based on the facts alleged in the Complaints in this Litigation through July 27,

15 2024 (the date the Memorandum was executed).  This is the full and entire scope of the release for

16 Reimbursement Class Members, notwithstanding any other term or language in this Agreement.

17      **3.        Named Plaintiffs' Releases & Section 1542 Waiver**

18      In exchange for their ability to apply for service awards separate from their individual

19 payments as Reimbursement Class Members, Named Plaintiffs also waive all rights under Section

20 1542 of the California Civil Code, which provides as follows: "A general release does not extend to

21 claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the

22 time of executing the release and that, if known by him or her, would have materially affected his or

23 her settlement with the debtor or released party."

24 **D.    Administration & CAFA Notice**

25      **1.        CAFA Notice**

26      Within 10 days of the filing of a motion for preliminary approval of this Agreement,

27 Defendants shall provide any required CAFA Notice of this Agreement to the appropriate federal and

28 state officials, pursuant to 28 U.S.C. § 1715(b).

Bellows Decl. Ex. A, page 11

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

**2.     Qualified Settlement Fund**

Prior to Defendants' February 1, 2025 payment as set forth in Section V.B.2 below, the Settlement Administrator shall establish an escrow account to receive all payments for the Class Settlement Amount.

**3.     Settlement Administrator**

The Parties shall retain independent settlement administrator Verita (formerly KCC) or such other neutral administrator as is mutually agreed to by the Parties ("Settlement Administrator").  Verita is experienced and qualified in the administration of class notice and monetary settlement distribution, and has provided prior Court-approved notices to the Classes in this Litigation.  The Settlement Administrator shall perform the following tasks in compliance with the Agreement:

1.   Locate Class Members' residential addresses;

2.   Distribute settlement notice to Class Members in the form approved by the Court;

3.   Answer inquiries from Class Members and forward such inquiries to Class Counsel;

4.   Arrange for tracing of Class Members for whom settlement notice or individual payments are returned as undeliverable;

5.   Obtain supplemental information from Class Members, as necessary;

6.   Receive and provide to the Parties and the Court any opt-out requests or objections;

7.   Resolve any disputes as to estimated individual payments, with input from Counsel;

8.   Administer and distribute individual payments, along with any necessary tax forms;

9.   Establish a settlement website, phone number, and email address as detailed below;

10.  Translate the Court-approved settlement notices into Spanish and make them available on the settlement website;

11.  For the final approval hearing, timely provide a declaration of due diligence and compliance with all settlement administration terms of this Agreement; and

12.  All other duties the Parties agree are necessary to carry out all terms of this Agreement.

The Settlement Administrator shall be paid its Administration Expenses, which it has agreed shall be no more than $75,000, from the Class Settlement Amount.

Should the Settlement Administrator need more time than is provided under this Agreement to

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

1  complete any of its obligations, the Settlement Administrator may request such additional time in

2  writing to Class Counsel and Defense Counsel, with an explanation of the need for additional time.  If

3  Class Counsel or Defense Counsel do not agree in writing to the Settlement Administrator's request,

4  the Administrator, Class Counsel, or Defense Counsel may seek such additional time from the Court.

5          **4.      Benefits Consultations**

6          Plaintiffs shall retain independent benefits consulting firm Claimant Advocacy Group ("CAG")

7  to provide Reimbursement Class Members with the opportunity for pre-paid one-on-one consultations

8  to inform them of the potential effects of their individual settlement payments on their continued

9  eligibility for government benefit programs.  CAG is experienced and qualified in providing benefits

10  consultations in class action and other large volume litigation.

11          CAG shall be paid $55,000 from the Class Settlement Amount.

12  **E.      Settlement Notice**

13          **1.      Form of Notice**

14          The proposed forms of the settlement notice are attached as **Exhibits 1** and **2** ("Settlement

15  Notices").  Exhibit 1 is the proposed Settlement Notice for all Reimbursement Class Members,

16  whether or not they are also Injunctive Relief Class Members.  This Notice for Reimbursement Class

17  Members will also include an insert from Claimant Advocacy Group about the potential impact of the

18  individual payments on public benefits and the opportunity for pre-paid one-on-one consultations

19  about such impacts.  Plaintiffs will provide this insert to the Court by September 23, 2024—the date a

20  reply would be due in support of their motion for preliminary approval.   Exhibit 2 is the proposed

21  Settlement Notice for individuals who are only Injunctive Relief Class Members and will not be

22  receiving an individual payment.  The Parties agree that the Notices conform to all applicable

23  requirements of the Federal Rules of Civil Procedure, the United States Constitution (including Due

24  Process Clauses), and all other applicable law, but are subject to approval and revision, in manner and

25  form, by the Court.

26          The Settlement Notices do and shall, at a minimum:

27          a.      Contain a plain and concise description of the Action, Classes certified, and

28                  proposed Agreement;

Bellows Decl. Ex. A, page 13

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

b.    Describe the relief provided by and claims released in the proposed Agreement;

c.    Inform Reimbursement Class Members of their estimated individual payments;

d.    Inform all Class Members of their right to object to the proposed Agreement, and the deadlines and procedures for doing so;

e.    Inform Reimbursement Class Members of their right to dispute their individual payment or opt out of the proposed Agreement as to the Reimbursement Class, and the deadlines and procedures for doing so;

f.    Inform all Class Members of the maximum amounts of Class Attorneys' Fees and Costs and service awards that Class Counsel and the Named Plaintiffs may seek;

g.    Inform Reimbursement Class Members of the availability of pre-paid one-on-one benefits consultations with the Claimant Advocacy Group;

h.    Inform Reimbursement Class Members that, if they do not opt out, they will be sent their estimated individual payment under the proposed Agreement, unless they opt to receive a lower payment;

i.    Inform Injunctive Relief Class Members of the injunctive relief provided in the proposed Agreement and how to dispute whether they should be part of the Reimbursement Class;

j.    State that any relief to Class Members is contingent on the Court's final approval of the proposed Agreement; and

k.    Contain an advisement in Spanish about how to get access to the Notices, Agreement, and case information in Spanish.

**2.    <u>Class List</u>**

Within 14 days of the Court's preliminary approval order, Defendants shall provide to the Settlement Administrator a list with the most current and complete information for each Class Member ("Class List"), including each Class Member's name and last known residential addresses, email addresses, social security number (if possible), and telephone numbers.

Settlement Notice will be mailed to the individuals identified as the "primary resident" in the Yardi database.

Bellows Decl. Ex. A, page 14

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

**3.**    <u>Time & Manner of Notice</u>

After receiving the Class List, the Settlement Administrator will first update all Class Member addresses using the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service and then, within 14 days of receipt of the Class List, shall send the Settlement Notices to all Class Members, by first-class U.S. mail to the best-known mailing address from the Class List or as provided by the NCOA, and to any email addresses from the Class List. If the Class List does not provide a mailing address for any Class Member, the Settlement Administrator may use any information or resource reasonably available to identify such addresses.

In the event of returned or non-deliverable Settlement Notices, the Settlement Administrator shall make reasonable efforts, including the use of skip-tracing services offered by publicly available databases, to locate Class Members and re-send the Settlement Notices. It will be conclusively presumed that a Class Member's Settlement Notice was received if the Notice has not been returned within 21 days of the original mailing of the Notice to the Class Member.

In the event the procedures set forth herein are followed and a Reimbursement Class Member later asserts that they did not receive the Settlement Notice, the Class Member will remain a Participating Class Member and will be bound by all terms of the Agreement and the Court's final approval order and judgment.

**4.**    <u>Settlement Website, Phone Number, and Email Address</u>

Prior to distribution of the Settlement Notice, the Settlement Administrator shall establish a website that will inform the Classes of the terms of this Agreement, their rights, applicable dates and deadlines, and contact information for the Settlement Administrator and Class Counsel. Participating Class Members will be able to use the website to request lower or no settlement payments and at least one alternative electronic payment option. It will also be accessible for users with disabilities. The website will also make available for review and download in PDF format:

      a.     The Settlement Notices in English and Spanish;

      b.     The Agreement;

      c.     The Court's preliminary approval order and publicly filed papers in support;

      d.     The Sixth Amended Complaint;

Bellows Decl. Ex. A, page 15

e.    When they become available, the motion(s) for final approval, Class Attorneys' Fees and Costs, and service awards, and publicly filed papers in support; and

f.    All other documents or material agreed upon by the Parties or required by the Court.

Prior to the distribution of the Settlement Notices, the Settlement Administrator shall also establish a toll-free telephone number and an email address, through which members of the Classes may obtain information about the Action in English and Spanish, submit inquiries regarding the Agreement, and request a mailed copy of the Settlement Notice. The website, telephone number, and email address shall remain active until 30 days after the Administrator has completed its obligations under this Agreement.

Class Counsel may communicate with Class Members via email, phone, and text to direct them to the settlement website, phone number, and email.

**F.**     **Objections & Opt-Out Requests**

    **1.**     **Response Deadline**

Class Members must submit any opt-out request, objection to the Agreement, or dispute as to exclusion from or estimated individual payment for the Reimbursement Class within 60 days of the date that the Settlement Administrator mails Settlement Notice, or if a Notice is re-mailed within 14 days of the date that the Administrator re-mails the Notice, whichever is later ("Response Deadline").

    **2.**     **Objections**

Any Class Member who has not submitted a timely and valid opt-out request, as set forth below, may object to this Agreement in whole or part. To do so, the Class Member must submit their objection to the Settlement Administrator in writing via first class mail or by email to the settlement email address. The objection must:

a.    Be postmarked or emailed before the Response Deadline;

b.    Include the case name and number;

c.    Include the Class Member's name, address, and telephone number;

d.    Be personally signed (handwritten or typed) by the Class Member;

e.    State in clear and concise terms why the Class Member believes that the Agreement is not in the best interests of the Class and the reasons why the Agreement should

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

not be approved, including the specific legal and factual bases for the objection; and

     f.    State whether the objection applies only to the Class Member, to a subset of the Classes, to the Reimbursement Class, to the Injunctive Relief Class, or to both.

If a Class Member who submits a timely and valid objection also wishes to appear at the final approval hearing, in person or through an attorney, they must *also* file, at the same time as they submit their objection, a notice of intent to appear.  Unless otherwise ordered by the Court, Class Members shall not be entitled to speak at the final approval hearing unless they have submitted a timely and valid objection and notice of intent to appear.

Any Class Member who does not provide a timely and valid objection as set forth above, or who does not make a record of their objection at the final approval hearing as permitted by the Court, shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the Agreement.  If a Class Member withdraws a timely and valid objection before final approval, the objection shall be treated as though it had not been made.

In their motion for preliminary approval, Plaintiffs shall request that the Court allow any party to file a reply to any objection, no later than 7 days before the final approval hearing, or as the Court may otherwise order.

    **3.**    **Opt-Out Requests**

As set forth below, Reimbursement Class Members shall have the right to opt out of the Reimbursement Class.  If a Reimbursement Class Member wishes to opt out and not be bound by the terms of this Agreement as to the Reimbursement Class, they must submit an opt-out request in writing to the Settlement Administrator via first class mail or by email to the settlement email address.  The opt-out request must:

    g.    Be postmarked or emailed before the Response Deadline;

    h.    Include the case name and number;

    i.    Include the Reimbursement Class Member's name, address, and telephone number;

    j.    Be personally signed (handwritten or typed) by the Reimbursement Class Member;

    k.    Contain a clear request that the individual would like to opt out or be excluded from the Agreement as to the Reimbursement Class, by use of those words or other words

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

clearly indicating a desire not to participate in the Agreement as to the Reimbursement Class.

Reimbursement Class Members must opt out of the Reimbursement Class individually. So-called "mass" or "class" opt outs, whether filed by third parties on behalf of a "mass" or "class" of Reimbursement Class Members or for multiple Reimbursement Class Members where no personal statement has been signed by each and every individual Class Member, are not valid or allowed.

Any Reimbursement Class Member who timely and properly submits on opt-out request in compliance with these requirements will:

     a.    Not be entitled to any payment under the Agreement;

     b.    Not be bound by the Reimbursement Class release or other terms of this Agreement or the final approval order and judgment as to the Reimbursement Class; and

     c.    Not be permitted to object to any part of the Agreement that relates exclusively to the Reimbursement Class.

All Reimbursement Class Members who fail to submit a valid and timely opt-out request shall be sent an individual payment and be bound by the Reimbursement Class release and all other terms of this Agreement and the final approval order and judgment.

Injunctive Relief Class Members may not opt out of the Injunctive Relief Class.

### 4.   **Administration**

The Settlement Administrator shall promptly provide copies of all opt-out requests, objections, and any related correspondence from Class Members to Class Counsel and Defense Counsel. Within 14 days of the Response Deadline, the Settlement Administrator shall provide to Class Counsel and Defense Counsel a complete list of opt-out requests and objections.

If the Settlement Administrator determines that an opt-out request or objection submitted by a Class Member before the Response Deadline is deficient, then within 7 days of receipt, the Settlement Administrator shall mail a deficiency letter to the Class Member identifying the problem. The Class Member must cure any deficiency in writing via first class mail or by email to the settlement email address, postmarked or emailed within 7 days of mailing of the deficiency letter.

Bellows Decl. Ex. A, page 18

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

## G. Individual Payments

### 1. Recipients & Charges Encompassed

Payments will be made to the individuals identified as the "primary resident" in the Yardi database.

The Additional Service Charges that were included in the court's summary judgment orders, and are included in the individual payments below, are those that the Reimbursement Class Member paid, according to their tenant ledger, for the following services listed in Defendants' Additional Services Agreements: media packages, common garage, garage rental, renter's insurance, month-to-month fee, covered parking, pet rent, Rent Plus service, storage rental, and washer/dryer rental.

### 2. Calculation

#### a. Estimated Individual Payments

Class Counsel shall provide the Settlement Administrator, for each Reimbursement Class Member, the amount of Additional Service Charges that they paid during the Reimbursement Class Period, according to their tenant ledger of monthly payments from May 2011 through November 2022, as well as the amount of interest on those payments through July 27, 2024.

As part of their Settlement Notice, each Reimbursement Class Member shall be informed of their "Estimated Individual Payment," which shall include: (1) the full amount of the Additional Service Charges paid by the Class Member during the Reimbursement Class Period, according to their tenant ledger of monthly payments from May 2011 through November 2022; and (2) the Class Member's estimated pro rata share of the interest on that amount through July 27, 2024.  However, if the total amount of the charges and interest for a Reimbursement Class Member is less than $100, the Class Member shall receive a minimum individual payment of $100.  Accordingly, the Notice shall inform each Class Member that: "If your total estimated payment is less than $100, you will receive a minimum payment of $100."

Each Reimbursement Class Member's estimated pro rata share of interest will be calculated by: (1) dividing the amount of interest owed to the Class Member by the total interest owed to all Reimbursement Class Members, to determine the Class Member's estimated percentage share of the total interest owed; (2) subtracting all Additional Service Charges included in the Estimated Individual

Bellows Decl. Ex. A, page 19

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

1  Payments from the Reimbursement Class Net Payment, to determine the estimated total amount left for

2  interest payments; (3) multiplying that estimated total amount left for interest payments by the Class

3  Member's estimated percentage share of the total interest; and (4) adjusting those amounts to account

4  for the $100 minimum individual payments.

5  **b.   Disputes**

6  Any person who does not receive an Estimated Individual Payment as a Reimbursement Class

7  Member, but who believes they are a Reimbursement Class Member under the Court's definition, is

8  entitled to dispute their exclusion from the Reimbursement Class.  Any Reimbursement Class Member

9  is also entitled to dispute the amount of their Estimated Individual Payment, if they believe it does not

10  accurately reflect the Additional Service Charges they paid, plus pro rata interest, during the

11  Reimbursement Class Period.  For a dispute to be valid, the individual must submit their dispute in

12  writing via first class mail or by email to the settlement email address.  The dispute must:

13  a.   Be postmarked or emailed before the Response Deadline;

14  b.   Include the case name and number;

15  c.   Include the Class Member's name, address, and telephone number;

16  d.   Be personally signed (handwritten or typed) by the Class Member;

17  e.   State in clear and concise terms the nature of the dispute; and

18  f.   Include any evidence in support of the dispute.

19  Within 7 days of receiving a timely and valid dispute, the Settlement Administrator shall

20  review the dispute and all evidence in support, provide notice to Class Counsel and Defense Counsel

21  of the dispute, and advise Counsel as to whether it needs additional information prior to making a

22  decision.  Within 7 days of such notice, Class Counsel and Defense Counsel shall provide the

23  Settlement Administrator with their position or positions on the dispute and any additional information

24  requested, which they will endeavor in good faith to agree upon.  Within 7 days of Counsels' response,

25  the Settlement Administrator shall make a decision on the dispute and inform the individual and

26  Counsel of that decision.  Any disputes resolved to add Reimbursement Class Members or change

27  Estimated Individual Payments will be accounted for in calculating final individual payments.

28  The Administrator's decisions on disputes, Estimated Individual Payments, and final individual

Bellows Decl. Ex. A, page 20

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

1  payments shall be final and binding on all Reimbursement Class Members and not subject to appeal.

2         c.    **Final Individual Payments**

3         As detailed below, each Participating Class Member shall receive a check or electronic

4  payment for their "Final Individual Payment," which shall include: (1) the full amount of the

5  Additional Service Charges paid by the Class Member during the Reimbursement Class Period,

6  according to their tenant ledger of monthly payments from May 2011 through November 2022; and

7  (2) the Class Member's final pro rata share of the interest on that amount through July 27, 2024.

8  However, if the total amount of the charges and interest for a Reimbursement Class Member is less

9  than $100, the Class Member shall receive a minimum Final Individual Payment of $100, as explained

10  in the Notice.  Also, if any Participating Class Member has requested a lower individual payment, as

11  set forth above, the Final Individual Payment shall be reduced to the requested amount.

12         Each Participating Class Member's final pro rata share of interest will be calculated by:

13  (1) dividing the amount of interest owed to the Participating Class Member by the total interest owed

14  to all Participating Class Members, to determine the Participating Class Member's percentage share of

15  the total interest owed; (2) subtracting all Additional Service Charges included in the Final Individual

16  Payments from the Reimbursement Class Net Payment, to determine the total amount left for interest

17  payments; (3) multiplying that total amount left for interest payments by the Participating Class

18  Member's percentage share of the total interest; and (4) adjusting those amounts to account for the

19  $100 minimum individual payments and any reduced amounts requested.

20         3.    **Distribution**

21         a.    **Time & Manner of Payment**

22         Within 28 days of the Effective Date of the Agreement, the Settlement Administrator shall send

23  an electronic payment if requested, or a check by first-class U.S. mail to the best-known address for

24  each Participating Class Member, for the Final Individual Payment.  All checks shall be negotiable for

25  no more than 180 days from the date of mailing.  Along with each electronic payment and check, the

26  Settlement Administrator shall provide any and all appropriate tax forms, and a letter that separately

27  lists (1) the total amount of the payment to reimburse paid Additional Service Charges, and (2) the

28  total amount of the payment for interest.

Bellows Decl. Ex. A, page 21

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

If the Settlement Administrator is not able to send the electronic payments and checks by this deadline, it shall inform Class Counsel and Defense Counsel and provide an approximate date by which the Final Individual Payments will be sent.  Under no circumstances shall the Settlement Administrator distribute electronic payments and checks until all timely and valid disputes have been resolved, opt-out requests have been accounted for, and objections have been considered, and Final Individual Payments have been calculated.

If any Participating Class Member is incapacitated or deceased, payment shall be made to the trust or estate of that Class Member and delivered to the trustor, executor, or administrator of that trust or estate, unless the Settlement Administrator has received an affidavit or declaration pursuant to California Probate Code § 13101, in which case payment shall be made to the affiants or declarants.

In its declaration for final approval, the Settlement Administrator shall verify its distribution of the Final Individual Payments as set forth above.

### b.    Returned or Uncashed Payments

For each check returned to the Settlement Administrator as undeliverable, the Administrator shall, within 20 days, conduct one or more computer database traces for the Participating Class Member and re-mail the check to any additional address obtained.  All returned checks for Participating Class Members for whom no additional address is obtained shall be held by the Settlement Administrator for 90 days.  If no claim is made for a check during this time period, the check amount shall become part of the funds to be allocated as cy pres as set forth below.

Each Participating Class Member must cash their check within 180 days of its mailing.  If a check is re-mailed after being returned as undeliverable, as set forth above, the re-mailed check will have a void date of either 180 days after the initial check mailing date or 60 days after the re-mailing, whichever is later.  If any Participating Class Member's check is not cashed 90 days after the initial check mailing, the Settlement Administrator will send the Participating Class Member a letter informing them that, unless the check is cashed by the deadline, it will expire and become non-negotiable.  In the letter, the Settlement Administrator will offer to replace the check if it was lost or misplaced but not cashed.  All checks that remain uncashed by the deadline shall become part of the funds to be allocated as cy pres as set forth below.

Bellows Decl. Ex. A, page 22

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

1    If electronic payment fails, the Settlement Administrator will send a check pursuant to the

2    procedures above.

3                    **c.      Fees, Costs, or Awards Not Approved**

4    If the Court does not approve any amount of the Class Attorneys' Fees and Costs or service

5    awards requested, and Plaintiffs or Class Counsel do not appeal any such reduction, then those

6    amounts shall become part of the funds to be allocated as cy pres as set forth below.  If Plaintiffs or

7    Class Counsel do appeal any such reduction, the Settlement Administrator shall withhold the amount

8    of the reduction until the appeal is finally resolved, then allocate those funds in compliance with the

9    order on appeal.

10                    **d.      Cy Pres**

11    All funds that remain to be allocated by the end of the deadlines to cash Final Individual

12    Payment checks as set forth above will first be used to pay any otherwise valid Final Individual

13    Payments that were excluded from the initial payments due to any error or omission.  If the funds that

14    remain are not sufficient to pay for all such Final Individual Payments, the Final Individual Payments

15    shall be paid pro rata from the funds that remain.  Any funds that remain after these payments are made

16    will, subject to Court approval, be allocated as cy pres awards in equal portions to the following 26

17    U.S.C. § 501(c)(3) non-profit organizations that provide free legal services to HCV Tenants in the

18    areas where Defendants' California properties are located: Bay Area Legal Aid; Central California

19    Legal Services; Inland County Legal Services; Legal Services of Northern California; Legal Aid

20    Society of San Diego; Legal Aid of Sonoma County.

21            **4.      Tax Treatment**

22    The Settlement Administrator shall be responsible for issuing and providing all appropriate tax

23    forms for all payments made under this Agreement.  The Parties' and Settlement Administrator's

24    understanding is that the amount of each Final Individual Payment that is reimbursement of Additional

25    Service Charges paid by that Participating Class Member is non-taxable reimbursement for those

26    amounts paid, and therefore not subject to an IRS Form 1099.  The Settlement Administrator will issue

27    appropriate IRS Form 1099s to Participating Class Members for any interest paid in excess of $600.

28            Notwithstanding the above, each Participating Class Member and every other recipient of a

Bellows Decl. Ex. A, page 23

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

1  payment under this Agreement shall be solely responsible for the payment of any taxes due in

2  connection with the payment and any liability for failure to do so.  Participating Class Members who

3  may have questions about their tax liability, if any, should consult independent tax counsel.

4  　　　　**Circular 230 Disclaimer**.  Each of the Parties acknowledges and agrees that: (1) no provision

5  of this Agreement, and no written communication or disclosure between or among the Parties or their

6  Counsel and other advisers is or was intended to be, nor shall any such communication or disclosure

7  constitute or be construed or be relied upon as, tax advice within the meaning of U.S. Treasury

8  Circular 230 (31 CFR part 10, as amended); (2) each Party (a) has relied exclusively upon their own

9  independent legal and tax advisors for advice in connection with this Agreement, (b) has not entered

10  into this Agreement based upon the recommendation of any other Party or any Counsel or advisor to

11  any other Party, and (c) is not entitled to rely upon any communication or disclosure by any other

12  Counsel or advisor to any other Party to avoid any tax penalty that may be imposed on that Party; and

13  (3) no attorney or advisor to any other Party hereto has imposed any limitation that protects the

14  confidentiality of any such attorney's or advisor's tax strategies (regardless of whether such limitation

15  is legally binding) upon disclosure by the Party of the tax treatment or tax structure of any transaction,

16  including any transaction contemplated by this Agreement.  Neither Class Counsel nor Defendants or

17  their Counsel are responsible for providing tax or financial advice, and Plaintiffs and Class Members

18  are advised to seek independent professional advice as to the tax or financial consequences of any

19  payment they receive, or may receive, as Plaintiffs or Class Members.

20  **H.**　　**Settlement Approval & Dismissal**

21  　　　　**1.**　　**Preliminary Approval**

22  　　　　A preliminary approval hearing is set for October 4, 2024.  By no later than August 30, 2024,

23  Plaintiffs shall file their motion for preliminary approval of the Agreement.  Plaintiffs shall request a

24  preliminary approval order that:

25  　　　　　　1.　　Finds that the requirements for preliminary approval are satisfied, including that the

26  　　　　　　　　Agreement should be preliminarily approved as fair, reasonable, and adequate;

27  　　　　　　2.　　Appoints Verita (or another independent administrator) as the Settlement Administrator;

28  　　　　　　3.　　Directs the Parties to provide Settlement Notices in the forms approved by the Court;

Bellows Decl. Ex. A, page 24

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

4.    Provides for objection, dispute, and opt-out procedures as approved by the Court; and

5.    Schedules a final approval hearing and all dates for filing documents in support.

Defendants shall file a notice of non-opposition to the motion for preliminary approval.  This Agreement shall remain in full force and effect if the Court grants preliminary and final approval of the Agreement but establishes procedures for Settlement Notices or Class Member objections, opt-out requests, or disputes different than those requested by the Parties.

**2.    Final Approval**

The final approval hearing shall be on the date set by the Court, scheduled to take place after the expiration of the 90-day notice period required for any CAFA Notice.  Plaintiffs shall timely file their motion for final approval.  Plaintiffs shall request a final approval order and judgment that:

1.    Finds that the requirements for final approval are satisfied, including that the Agreement should be finally approved as fair, reasonable, and adequate;

2.    Finds that the Settlement Notices provided were the best notices practicable and in full compliance with California law, federal law, and due process;

3.    Authorizes distribution of the Final Individual Payments to Participating Class Members;

4.    Sets the amount of Class Attorneys' Fees and Costs and any service awards;

5.    Schedules a final compliance hearing;

6.    Retains jurisdiction to administer, enforce, and interpret the Agreement and for any other necessary purpose; and

7.    Constitutes a judgment within the meaning and for purposes of Rule 54.

Defendants shall file a notice of non-opposition to the motion for final approval

**3.    Dismissal**

Upon final approval of the settlement by the Court, Plaintiffs agree to ask the Court to dismiss all Class Claims with prejudice.  However, the Court shall retain jurisdiction to administer, enforce, and interpret the Agreement.

Bellows Decl. Ex. A, page 25

## IV.     FCA CLAIM SETTLEMENT

**A.     FCA Settlement Amount**

Defendants will pay a total of $7,000,000 as the entirety of the monetary compensation to resolve Plaintiffs' FCA Claim and in full satisfaction of the FCA claims that were asserted or could have been asserted in the Litigation ("FCA Settlement Amount"). The FCA Settlement Amount includes $3,500,000 in damages for the FCA Claim to be paid to the U.S. Government ("FCA Damages"), inclusive of the Relators' share of those damages to be paid to the Relators by the U.S. Government ("FCA Relators' Share"), and $3,500,000 to Relators' Counsel for statutory attorneys' fees, litigation costs, and expenses related to the FCA Claim ("FCA Attorneys' Fees and Costs").

**B.     Relators' Share**

Defendants do not oppose Relators' agreement with the U.S. Government establishing the FCA Relators' Share of the FCA Damages pursuant to 31 U.S. § 3730(d)(2).

**C.     FCA Attorneys' Fees & Costs**

Defendants will pay Relators' Counsel $3,500,000 for the FCA Attorneys' Fees and Costs that are included in the total FCA Settlement Amount of $7,000,000. Defendants shall bear their own attorneys' fees and costs in the Litigation.

**D.     Government Approval**

The Parties understand that the U.S. Government has reviewed this Agreement and will consent to dismissal of the FCA Claim on the terms of the Agreement.

**E.     FCA Release**

In consideration of the FCA Settlement Amount provided by Defendants for the FCA Claim, Relators on behalf of themselves, their heirs, spouses, executors, administrators, attorneys, agents, assigns, and any entities or businesses in which any of them have a controlling ownership interest, shall waive, fully release, and forever discharge Defendants, and the Owners of properties where Relators had alleged FCA violations as listed in Exhibit 3, from any claims under the False Claims Act, 31 U.S.C. § 3729 et seq., that were or could have been raised by Relators in this Litigation.

Bellows Decl. Ex. A, page 26

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

**F.     Dismissal**

Plaintiffs agree to move to dismiss the FCA Claim with prejudice by September 10, 2024 (within 45 days of execution of the Memorandum).  The dismissal shall be without prejudice to the United States.

## V.     PAYMENT AND ALLOCATION OF TOTAL SETTLEMENT AMOUNT

**A.     Schedule of Payments**

Defendants will pay the total settlement amount of $16,500,000 due under this Agreement, inclusive of the Class Settlement Amount and the FCA Settlement Amount, on the following schedule:

1.     First payment of $5,500,000 by no later than September 25, 2024;

2.     Second payment of $5,500,000 by no later than February 1, 2025; and

3.     Third payment of $5,500,000 by no later than February 1, 2026.

The undersigned Defendants agree that Defendants Logan Park Apartments, LP, Bellwood Jerron Apartments, LP, Oak Valley Apartments, LP, Point Natomas Apartments, LP, Hayward Senior Apartments, LP, and Piedmont Apartments, LP are indemnified by third parties not named in this action from any payment obligations of the Defendants hereunder.

**B.     Payment Methods & Allocation**

**1.     First Payment**

By September 25, 2024, Defendants will pay:

a.     $2,750,000 of the FCA Damages to the U.S. Government, inclusive of $825,000 of the FCA Relators' Share, by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of California;

b.     $2,750,000 of the FCA Attorneys' Fees and Costs to Relators' Counsel, by electronic funds transfer pursuant to written instructions provided by Relators' Counsel.

**2.     Second Payment**

By February 1, 2025, Defendants will pay $5,500,000 to the Settlement Administrator, who will place the funds in a Qualified Settlement Fund.  After receipt of those funds, and within 28 days

Bellows Decl. Ex. A, page 27

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

after the Effective Date, the Settlement Administrator shall distribute:

      a.    $500,000 of the Class Attorneys' Fees and Costs, or if the amount approved by the Court is less, the lesser approved amount, to Class Counsel by electronic funds transfer pursuant to written instructions provided by Class Counsel;

      b.    No more than $75,000 for Administration Expenses to the Settlement Administrator;

      c.    No more than $55,000 to CAG for pre-paid one-on-one consultations to inform Reimbursement Class Members of the potential effects of their individual settlement payments on their continued eligibility for government benefit programs;

      d.    The amount of any service awards approved by the Court; and,

      e.    All remaining amounts of the second payment of $5,500,000 to the Reimbursement Class Net Payment, to be distributed as detailed above in Section III.G.3.

**3.**     <u>**Third Payment**</u>

By February 1, 2026, Defendants will pay:

      a.    The remaining $750,000 of the FCA Damages to the U.S. Government, inclusive of the remaining $225,000 of the FCA Relators' Share, by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of California;

      b.    The remaining $750,000 of the FCA Attorneys' Fees and Costs to Relators' Counsel, by electronic funds transfer pursuant to written instructions provided by Relators' Counsel; and

      a.    The remaining $4,000,000 to the Settlement Administrator.  Within 3 days of receipt, the Settlement Administrator shall distribute the remaining amount of Court-approved Class Attorneys' Fees and Costs not yet distributed pursuant to Section V.B.2.a above to Class Counsel.

      b.    All remaining funds will be allocated as cy pres as set forth in Section III.G.3.c.

**C.**     <u>**Failure to Pay**</u>

In the event that any of Defendants' payments required under this Agreement are not timely

Bellows Decl. Ex. A, page 28

DocuSign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

1   made, are clawed back for any reason, or are otherwise defaulted on, Defendants shall be jointly

2   obligated for ensuring that a full replacement payment is made within 14 days by one or more of the

3   Defendants.  Defendants shall also be jointly obligated to pay interest on any payments not made by

4   the deadlines set forth herein at the applicable federal post-judgment interest rate on the overdue

5   amount in the manner described by 29 U.S.C. § 1961 and the Eastern District's guidance on post-

6   judgment interest rates, calculated on a daily basis for the time period that begins on the date the

7   payment was due and ends when payment is made, including the 14-day replacement period.

## VI.    TABLE OF RELEVANT DATES

| Event | Deadline | Date |
|---|---|---|
| Class Releases end date | The date the Memorandum was executed | July 27, 2024 |
| Plaintiffs file preliminary approval motion | No later than August 30, 2024 | Aug. 30, 2024 |
| Defendants provide any required CAFA Notice | Within 10 days of the filing of motion for preliminary approval | Sept. 9, 2024 |
| Plaintiffs request dismissal of FCA Claim | Within 45 days of execution of the Memorandum | Sept. 10, 2024 |
| Defendants implement and provide confirmation of injunctive relief | Within 60 days of execution of the Memorandum | Sept. 25, 2024 |
| First settlement payment by Defendants | Within 60 days of execution of the Memorandum | Sept. 25, 2024 |
| Preliminary approval hearing | October 4, 2024 | Oct. 4, 2024 |
| Preliminary approval order ("P.A.") | | **TBD** |
| Administrator establishes settlement website, phone number, and email | Prior to distribution of the Settlement Notices | After P.A. |
| Defendants provide updated Class List to the Administrator | Within 14 days of the preliminary approval order | P.A. + 14 |
| Administrator mails Settlement Notices | Within 14 days of receipt of Class List | P.A. + 28 |

Bellows Decl. Ex. A, page 29

DocuSign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

| Conclusively presumed Settlement Notice received if Notice is not returned | Within 21 days of the original mailing of the Settlement Notices | P.A. + 49 |
|---|---|---|
| Class Member Response Deadline | Later of 60 days from mailing of Notice or 14 days from remailing | P.A. + 88 |
| Administrator notifies Class Member if response is deficient | Within 7 days of receipt of deficient response | |
| Class Member deadline to cure any deficiency | Within 7 days of mailing of the deficiency letter | |
| Administrator reviews any Class Member dispute, gives notice to Counsel | Within 7 days of receipt of timely and valid dispute | |
| Counsel provides Administrator with position(s) on dispute, any info. needed | Within 7 days of Administrator notice of the dispute | |
| Administrator makes final decision and informs the individual with the dispute | Within 7 days of Counsels' response to notice of dispute | |
| Administrator provides Counsel a list of opt-out requests and objections | Within 14 days of Response Deadline | P.A. + 102 |
| Any party may respond to an objection, as the Court allows | 7 days before the final approval hearing | F.A.H. - 7 |
| Administrator establishes Qualified Settlement Fund | Prior to Defendants' February 1, 2025 payment | Before Feb. 1, 2025 |
| Second settlement payment by Defendants | February 1, 2025 | Feb. 1, 2025 |
| Administrator declaration of compliance for final approval hearing | Timely provide for the final approval hearing | Before F.A.H. |
| Final approval hearing ("F.A.H.") | After expiration of the 90-day period for any CAFA Notice | **TBD** |
| Final approval order ("F.A.") | | **TBD** |
| Plaintiffs request dismissal of Class Claims | Upon final approval of the Agreement by the Court | F.A. |
| Effective Date ("E.D.") | 31 days after final approval, or end of any appeal or review | F.A. + 31 (or end of appeal) |
| Administrator sends Final Individual Payments to Participating Class Members | Within 28 days of Effective Date | E.D. + 28 |

Bellows Decl. Ex. A, page 30

DocuSign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

| Administrator re-mails any checks returned as undeliverable | Within 20 days of return of any check as undeliverable | |
| Administrator holds returned Checks that cannot be re-mailed | 90 days from return of any check that cannot be re-mailed | |
| Administrator gives notice of uncashed checks to Participating Class Members | 90 days after the initial check mailing if check not cashed | E.D. + 118 |
| Participating Class Member deadline to cash checks | 180 days from the date of initial check mailing | E.D. + 208 |
| Participating Class Member deadline to cash re-mailed Checks (if longer) | 60 days from the check re-mailing | |
| Third settlement payment by Defendants | February 1, 2026 | Feb. 1, 2026 |
| Cy pres allocation | After check-cashing deadlines | **TBD** |
| Administrator may end the settlement website, phone number, and email | 30 days after the Administrator completes its obligations | **TBD** |
| End of Court jurisdiction to enforce terms of the Agreement | 5 years from execution of Memorandum | July 26, 2029 |

## VII.   OTHER TERMS

**A.   Severability of the Settlement of the Class Claims & the FCA Claim**

### 1.   Non-Approval

The settlement of the Class Claims shall be considered null and void if (a) the Court should for any reason decline to approve the settlement of the Class Claims, (b) the Court should for any reason fail to enter a judgment and dismissal with prejudice of the Class Claims, or (c) the judgment and dismissal of the Class Claims is reversed, modified, or declared or rendered void.  The settlement of the FCA Claim shall be considered null and void if (a) the Court should for any reason fail to enter a judgment and dismissal with prejudice of the FCA Claim, or (b) the judgment and dismissal of the FCA Claim is reversed, modified, or declared or rendered void.  The validity of the settlement of the Class Claims does not depend on the validity of the settlement of the FCA Claim and the validity of the settlement of the FCA Claim does not depend on the validity of the settlement of the Class Claims.

SETTLEMENT AGREEMENT – CASE NO. 2:15-CV-00799 KJM-SCR
4879-6762-0830.V1

Bellows Decl. Ex. A, page 31

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

### 2. Severability

If any provision, paragraph, clause, or sentence in this Agreement is declared to be illegal, void, invalid, or unenforceable by the Court or other authority with jurisdiction thereof, the remaining provisions, paragraphs, clauses and sentences shall be severable and shall remain in full force and effect. The Parties agree that a void or invalid paragraph, clause, or provision shall not affect the validity or enforceability of the remaining provisions of this Agreement.

### B. Enforcement

### 1. No Admission of Liability

Nothing in this Agreement shall be construed to be an admission by Defendants of any wrongdoing or noncompliance with any federal, state, or local law, rule, ordinance, constitution, statute, contract, public policy, tort law, common law, or any other unlawful conduct, liability, wrongdoing, fraud, falsity, or breach of any duty owed to any party whatsoever. Defendants specifically deny any wrongdoing with respect to each and every claim set forth in the Litigation.

### 2. Governing Law

This Agreement is made and entered into in the State of California and shall be governed by the laws of the State of California, without regard to conflict of law principles, in all respects, including execution, interpretation, performance, and enforcement.

### 3. Attorneys' Fees & Costs

A Party to this Agreement shall be entitled to recover reasonable attorneys' fees and costs from any other Party for any successful actions taken to enforce this Agreement, including any failure to pay as set forth in Section V.A.

### 4. Continuing Jurisdiction

The Parties agree that the Court shall retain jurisdiction to enforce the terms of the Agreement for a period of 5 years from July 27, 2024 (the date of execution of the Memorandum).

### 5. Successors & Assigns

This Agreement shall be binding upon and inure to the benefit of the Parties, Participating Class Members, and Injunctive Relief Class Members and their respective present and former heirs, trustees, executors, administrators, representatives, officers, directors, shareholders, agents, employees,

Bellows Decl. Ex. A, page 32

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

insurers, attorneys, accountants, auditors, advisors, consultants, pension and welfare benefit plans, fiduciaries, parent companies, subsidiaries, divisions, affiliates, related companies, joint ventures, general and limited partners, predecessors, successors, and assigns, although not specifically named herein.

**C.**   **Duties of the Parties**

      **1.**   **No Retaliation or Influence**

      Defendants understand and acknowledge that they have a legal obligation not to retaliate against any Class Member who elects to participate in, opt out of, or object to the settlement of the Class Claims.  Defendants will refer any Class Member inquiries regarding this Agreement to the Settlement Administrator or Class Counsel and will not discourage or encourage, directly or indirectly, Class Member participation in, opting out of, or objection to the settlement of the Class Claims.

**D.**   **Execution & Construction**

      **1.**   **Representation**

      The Parties to this Agreement are represented by Counsel and have had an opportunity to consult with their Counsel prior to signing.

      **2.**   **Authority to Bind**

      All persons executing this Agreement for Defendants hereby warrant and promise that they are authorized to sign this Agreement on behalf of, and to bind, Defendants.

      **3.**   **Execution**

      This Agreement shall become effective upon its execution by all of the persons for whom signature spaces have been provided below.  The Parties may execute this Agreement in counterparts, any or all of which may be by facsimile or PDF or electronic copies or signatures.  Execution of counterparts shall have the same force and effect as if all Parties had signed the same document.

      **4.**   **Warranty**

      The Parties represent and declare that in executing this Agreement they rely solely upon their own judgment, belief and knowledge, and on the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims.

      The Parties further represent and warrant that they have carefully read this Agreement and

Bellows Decl. Ex. A, page 33

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

know and understand its contents, and that they sign this Agreement freely and voluntarily.

## 5. **Interpretation**

The language of this Agreement shall be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties. The headings in this Agreement are solely for convenience and will not be considered in its interpretation. Where required by context, the plural includes the singular and vice versa, and the terms "and" and "or" shall mean "and/or." This Agreement is the product of negotiation and joint drafting so that any ambiguity shall not be construed against a Party.

## 6. **Modification**

This Agreement may not be changed, altered, or modified except in writing signed by the Parties and approved by the Court. The Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

## 7. **Integration Clause**

This Agreement constitutes the full and entire agreement between the Parties relating to the settlement of the Action and the transactions contemplated thereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written, and whether by a Party or such Party's legal counsel, are hereby superseded. No rights under this Agreement may be waived except in writing. The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

## 8. **Calculation of Time**

All time listed in this Agreement is in calendar days unless expressly stated otherwise. Time is calculated by (a) excluding the day of the event that triggers the period, (b) counting every day, including intermediate Saturdays, Sundays, and legal holidays, and (c) including the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

By signing below, the persons executing this Agreement represent that they have full authority to bind the Parties listed under their signatures.

Bellows Decl. Ex. A, page 34

Docusign Envelope ID: 8D72FBAD-0656-46CB-82DB-8AC36AB608BD

1  Dated: _8/30/2024_____, 2024        By: _____
                                                    Denika Terry, Plaintiff and Relator
2

3  Dated: _8/30/2024_____, 2024        By: _____
                                                    Roy Huskey III, Plaintiff and Relator
4

5
   Dated: _8/30/2024_____, 2024        By: _____
6                                                   Tamera Livingston, Plaintiff and Relator

7

8  Dated: _____, 2024          By: _____

9                                              Name: _____
                                               for Defendants WASATCH ADVANTAGE
10                                             GROUP, LLC; CHESAPEAKE
                                               APARTMENT HOLDINGS, LLC; ASPEN
11                                             PARK HOLDINGS, LLC; BENT TREE
                                               APARTMENTS, LLC; CALIFORNIA
12                                             PLACE APARTMENTS, LLC; CANYON
                                               CLUB HOLDINGS, LLC; COURTYARD
13                                             AT CENTRAL PARK APARTMENTS,
                                               LLC; CREEKSIDE HOLDINGS, LTD;
14                                             RIVER OAKS HOLDINGS, LLC;
                                               WASATCH PREMIER PROPERTIES, LLC;
15                                             WASATCH POOL HOLDINGS III, LLC;
                                               WASATCH POOL HOLDINGS, LLC;
16                                             CAMELOT LAKES HOLDINGS, LLC;
                                               HERITAGE PARK APARTMENTS, LP;
17                                             PEPPERTREE APARTMENT HOLDINGS,
                                               LP; SHADOW WAY APARTMENTS, LP;
18                                             WASATCH QUAIL RUN GP, LLC
19

20

21

22  Dated: _____, 2024         By: _____

23                                             Name: _____
                                               for Defendants WASATCH PROPERTY
24                                             MANAGEMENT, INC., LOGAN PARK
                                               APARTMENTS, LLC, LOGAN PARK
25                                             APARTMENTS, LP, BELLWOOD JERRON
                                               HOLDINGS, LLC, BELLWOOD JERRON
26                                             APARTMENTS, LP, HAYWARD SENIOR
                                               APARTMENTS, LP, OAK VALLEY
27                                             APARTMENTS, LLC, OAK VALLEY
                                               HOLDINGS, LP, PIEDMONT
28

33

Bellows Decl. Ex. A, page 35

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

Dated: _____, 2024     By: _____
                                        Denika Terry, Plaintiff and Relator

Dated: _____, 2024     By: _____
                                        Roy Huskey III, Plaintiff and Relator

Dated: _____, 2024     By: _____
                                        Tamera Livingston, Plaintiff and Relator

Dated: ____8/30/2024____, 2024     By: _____
                                        *Dell Loy Hansen*
                                        DB21EF75BD684DF...

                                    Name: __Dell Loy Hansen_____
                                    for Defendants WASATCH ADVANTAGE
                                    GROUP, LLC; CHESAPEAKE
                                    APARTMENT HOLDINGS, LLC; ASPEN
                                    PARK HOLDINGS, LLC; BENT TREE
                                    APARTMENTS, LLC; CALIFORNIA
                                    PLACE APARTMENTS, LLC; CANYON
                                    CLUB HOLDINGS, LLC; COURTYARD
                                    AT CENTRAL PARK APARTMENTS,
                                    LLC; CREEKSIDE HOLDINGS, LTD;
                                    RIVER OAKS HOLDINGS, LLC;
                                    WASATCH PREMIER PROPERTIES, LLC;
                                    WASATCH POOL HOLDINGS III, LLC;
                                    WASATCH POOL HOLDINGS, LLC;
                                    CAMELOT LAKES HOLDINGS, LLC;
                                    HERITAGE PARK APARTMENTS, LP;
                                    PEPPERTREE APARTMENT HOLDINGS,
                                    LP; SHADOW WAY APARTMENTS, LP;
                                    WASATCH QUAIL RUN GP, LLC

Dated: ____8/30/2024____, 2024     By: _____
                                        *Dell Loy Hansen*
                                        DB21EF75BD684DF...

                                    Name: __Dell Loy Hansen_____
                                    for Defendants WASATCH PROPERTY
                                    MANAGEMENT, INC., LOGAN PARK
                                    APARTMENTS, LLC, LOGAN PARK
                                    APARTMENTS, LP, BELLWOOD JERRON
                                    HOLDINGS, LLC, BELLWOOD JERRON
                                    APARTMENTS, LP, HAYWARD SENIOR
                                    APARTMENTS, LP, OAK VALLEY
                                    APARTMENTS, LLC, OAK VALLEY
                                    HOLDINGS, LP, PIEDMONT

33

Bellows Decl. Ex. A, page 36

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

APARTMENTS, LP, POINT NATOMAS APARTMENTS, LLC, POINT NATOMAS APARTMENTS, LP, SPRING VILLA APARTMENTS, LP, SUN VALLEY HOLDINGS, LTD, VILLAGE GROVE APARTMENTS, LP

Dated: _____8/30/2024_____, 2024

By: _Dell Loy Hansen_____

Name: ___Dell Loy Hansen_____
for ARROYO VISTA HOLDINGS, LLC, AZTEC PREMIER, LLC, BRIGHTON PLACE HOLDINGS, LLC, BROADMOOR VILLAGE APARTMENTS, LLC, BROOKSIDE HOLDINGS, INC., WASATCH PREMIER BURNETT, LLC, BROOKSIDE-PREMIER, LLC, CIMARRON PLACE APARTMENTS, LLC, CROSSROADS APARTMENT HOLDINGS, LLC, THE FALLS AT HUNTERS POINTE HOLDINGS, LLC, SOUTHTOWNE APARTMENTS, LLC, GLEN OAKS APARTMENT HOLDINGS, LLC LAYTON APARTMENT HOLDINGS, LLC, HERON POINTE APARTMENTS, LLC WASATCH PREMIER METROPOLITAN, LLC, WASATCH POOL HOLDINGS IV, LLC PALLADIO HOLDING, LLC, PROMONTORY-PREMIER, LLC. RANCHWOOD APARTMENT HOLDINGS, LLC REMINGTON HOLDINGS, LLC, RENAISSANCE URBAN LIVING, LLC, RIO SECO PREMIER, LLC RIVER POINT APARTMENTS, LLC, SANDS APARTMENT HOLDINGS, LLC, AXIS GRAND HOLDINGS, LLC

Dated: _____8/30/2024_____, 2024

By: _Jeff Nielson_____

Name: ___Jeff Nielson_____
for 616 SOUTH HOLDINGS, LP, ARCADIA HOLDINGS, LP ARCADIA II HOLDINGS, LP,  1700 SOUTH HOLDINGS, LP,  VILLAS AT 1400 SOUTH HOLDINGS, LP,  GARDEN LOFTS HOLDINGS LP,  KIMPTON

34

Bellows Decl. Ex. A, page 37

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

SQUARE APARTMENTS LP,  N-1
HOLDINGS, LLC,  JORDAN BLUFFS
HOLDINGS, LP, AF 600 HOLDINGS LP,
TUSCANY VILLAS HOLDINGS, LP,
VERANDA HOLDINGS, LP

Dated: _____8/30/2024_____, 2024

By: _____
    EADCA363971F487...

Name: __Kipling Sheppard_____
for FLORENTINE VILLAS HOLDINGS,
LP, LOGAN HOMESTEAD
APARTMENTS, LP, PROVIDENCE
PLACE HOLDINGS, LP, SPRINGWOOD
HOLDINGS, LP

Dated: _____8/30/2024_____, 2024

By: ___Paul Willie_____
    924E102838BB459...

Name: __Paul Willie_____
for DEVONSHIRE COURT
CONDOMINIUMS, LLC


Approved as to Form:


Dated: _____, 2024        By: _____
                                        Jesse Newmark
                                        Centro Legal de la Raza
                                        Attorneys for Plaintiffs and Relators

Dated: _____, 2024        By: _____
                                        Ryan Matthews
                                        Joseph A. Salazar Jr.
                                        Lewis Brisbois Bisgaard & Smith, LLP,
                                        for Defendants WASATCH PROPERTY
                                        MANAGEMENT, INC., LOGAN PARK
                                        APARTMENTS, LLC, LOGAN PARK
                                        APARTMENTS, LP, BELLWOOD
                                        JERRON HOLDINGS, LLC,
                                        BELLWOOD JERRON
                                        APARTMENTS, LP, HAYWARD
                                        SENIOR APARTMENTS, LP, OAK
                                        VALLEY APARTMENTS, LLC, OAK
                                        VALLEY HOLDINGS, LP,
                                        PIEDMONT APARTMENTS, LP,
                                        POINT NATOMAS APARTMENTS,
                                        LLC, POINT NATOMAS

35

Bellows Decl. Ex. A, page 38

Docusign Envelope ID: 8D72FBAD-0656-46CB-82DB-8AC36AB608BD

SQUARE APARTMENTS LP,  N-1
HOLDINGS, LLC,  JORDAN BLUFFS
HOLDINGS, LP, AF 600 HOLDINGS LP,
TUSCANY VILLAS HOLDINGS, LP,
VERANDA HOLDINGS, LP

Dated: _____, 2024        By: _____

Name: _____
for FLORENTINE VILLAS HOLDINGS,
LP, LOGAN HOMESTEAD
APARTMENTS, LP, PROVIDENCE
PLACE HOLDINGS, LP, SPRINGWOOD
HOLDINGS, LP

Dated: _____, 2024        By: _____

Name: _____
for DEVONSHIRE COURT
CONDOMINIUMS, LLC

Approved as to Form:

Dated: 8/30/2024 _____, 2024        By: _____
DocuSigned by:
Jesse Newmark
EA61D3A1252C4DF...
Jesse Newmark
Centro Legal de la Raza
Attorneys for Plaintiffs and Relators

Dated: _____, 2024        By: _____
Ryan Matthews
Joseph A. Salazar Jr.
Lewis Brisbois Bisgaard & Smith, LLP,
for Defendants WASATCH PROPERTY
MANAGEMENT, INC., LOGAN PARK
APARTMENTS, LLC, LOGAN PARK
APARTMENTS, LP, BELLWOOD
JERRON HOLDINGS, LLC,
BELLWOOD JERRON
APARTMENTS, LP, HAYWARD
SENIOR APARTMENTS, LP, OAK
VALLEY APARTMENTS, LLC, OAK
VALLEY HOLDINGS, LP,
PIEDMONT APARTMENTS, LP,
POINT NATOMAS APARTMENTS,
LLC, POINT NATOMAS

Bellows Decl. Ex. A, page 39

Docusign Envelope ID: AEAA9E76-205B-487E-8086-D8859952879A

1  SQUARE APARTMENTS LP, N-1
2  HOLDINGS, LLC, JORDAN BLUFFS
   HOLDINGS, LP, AF 600 HOLDINGS LP,
3  TUSCANY VILLAS HOLDINGS, LP,
   VERANDA HOLDINGS, LP
4  Dated: ___8/30/2024___, 2024    By: _____
5                                       EADCA363971F487...
6  Name: __Kipling Sheppard__
   for FLORENTINE VILLAS HOLDINGS,
7  LP, LOGAN HOMESTEAD
   APARTMENTS, LP, PROVIDENCE
8  PLACE HOLDINGS, LP, SPRINGWOOD
   HOLDINGS, LP
9  Dated: ___8/30/2024___, 2024    By: __Paul Willie__
10                                      924E102838BB459...
11 Name: __Paul Willie__
   for DEVONSHIRE COURT
12 CONDOMINIUMS, LLC

13

14 Approved as to Form:

15

16 Dated: _____, 2024    By: _____
17                                      Jesse Newmark
                                        Centro Legal de la Raza
18                                      Attorneys for Plaintiffs and Relators
19 Dated: _____, 2024    By: __Ryan Matthews__   Solely on behalf of
20                                      Ryan Matthews       Wasatch Property
                                        Joseph A. Salazar Jr.  Management, Inc.
21                                      Lewis Brisbois Bisgaard & Smith, LLP,
                                        for Defendants WASATCH PROPERTY
22                                      MANAGEMENT, INC.,
23
24
25
26
27
28

35

Docusign Envelope ID: AEAA9E76-205B-487E-8086-D8859952879A

1

2

3

4
Dated: _____, 2024          By: _____

5                                          Richard T. Collins
                                           Damon D. Eisenbrey
6                                          Arnall Golden Gregory LLP, for
                                           Defendants WASATCH ADVANTAGE
7                                          GROUP, LLC; CHESAPEAKE
                                           APARTMENT HOLDINGS, LLC;
8                                          ASPEN PARK HOLDINGS, LLC;
                                           BENT TREE APARTMENTS, LLC;
9                                          CALIFORNIA PLACE
                                           APARTMENTS, LLC; CANYON
10                                         CLUB HOLDINGS, LLC;
                                           COURTYARD AT CENTRAL PARK
11                                         APARTMENTS, LLC; CREEKSIDE
                                           HOLDINGS, LTD; RIVER OAKS
12                                         HOLDINGS, LLC; WASATCH
                                           PREMIER PROPERTIES, LLC;
13                                         WASATCH POOL HOLDINGS III,
                                           LLC; WASATCH POOL HOLDINGS,
14                                         LLC; CAMELOT LAKES HOLDINGS,
                                           LLC; HERITAGE PARK
15                                         APARTMENTS, LP; PEPPERTREE
                                           APARTMENT HOLDINGS, LP;
16                                         SHADOW WAY APARTMENTS, LP;
                                           WASATCH QUAIL RUN GP, LLC
17

18

19
Dated: _____, 2024          By: _____

20                                         Richard T. Collins
                                           Damon D. Eisenbrey
21                                         Arnall Golden Gregory LLP, for
                                           ARROYO VISTA HOLDINGS, LLC,
22                                         AZTEC PREMIER, LLC, BRIGHTON
                                           PLACE HOLDINGS, LLC,
23                                         BROADMOOR VILLAGE
                                           APARTMENTS, LLC, BROOKSIDE
24                                         HOLDINGS, INC., WASATCH
                                           PREMIER BURNETT, LLC,
25                                         BROOKSIDE-PREMIER, LLC,
                                           CIMARRON PLACE APARTMENTS,
26                                         LLC, CROSSROADS APARTMENT
                                           HOLDINGS, LLC, THE FALLS AT
27                                         HUNTERS POINTE HOLDINGS, LLC,
28

36

Bellows Decl. Ex. A, page 41

APARTMENTS, LP, SPRING VILLA
APARTMENTS, LP, SUN VALLEY
HOLDINGS, LTD, VILLAGE GROVE
APARTMENTS, LP

Dated: _____, 2024         By: _____

Richard T. Collins
Damon D. Eisenbrey
Arnall Golden Gregory LLP, for
Defendants WASATCH ADVANTAGE
GROUP, LLC; CHESAPEAKE
APARTMENT HOLDINGS, LLC;
ASPEN PARK HOLDINGS, LLC;
BENT TREE APARTMENTS, LLC;
CALIFORNIA PLACE
APARTMENTS, LLC; CANYON
CLUB HOLDINGS, LLC;
COURTYARD AT CENTRAL PARK
APARTMENTS, LLC; CREEKSIDE
HOLDINGS, LTD; RIVER OAKS
HOLDINGS, LLC; WASATCH
PREMIER PROPERTIES, LLC;
WASATCH POOL HOLDINGS III,
LLC; WASATCH POOL HOLDINGS,
LLC; CAMELOT LAKES HOLDINGS,
LLC; HERITAGE PARK
APARTMENTS, LP; PEPPERTREE
APARTMENT HOLDINGS, LP;
SHADOW WAY APARTMENTS, LP;
WASATCH QUAIL RUN GP, LLC

Dated: _____, 2024         By: _____

Richard T. Collins
Damon D. Eisenbrey
Arnall Golden Gregory LLP, for
ARROYO VISTA HOLDINGS, LLC,
AZTEC PREMIER, LLC, BRIGHTON
PLACE HOLDINGS, LLC,
BROADMOOR VILLAGE
APARTMENTS, LLC, BROOKSIDE
HOLDINGS, INC., WASATCH
PREMIER BURNETT, LLC,
BROOKSIDE-PREMIER, LLC,
CIMARRON PLACE APARTMENTS,
LLC, CROSSROADS APARTMENT
HOLDINGS, LLC, THE FALLS AT
HUNTERS POINTE HOLDINGS, LLC,

36

Bellows Decl. Ex. A, page 42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

SOUTHTOWNE APARTMENTS, LLC,
GLEN OAKS APARTMENT
HOLDINGS, LLC LAYTON
APARTMENT HOLDINGS, LLC,
HERON POINTE APARTMENTS, LLC
WASATCH PREMIER
METROPOLITAN, LLC, WASATCH
POOL HOLDINGS IV, LLC
PALLADIO HOLDING, LLC,
PROMONTORY-PREMIER, LLC.
RANCHWOOD APARTMENT
HOLDINGS, LLC REMINGTON
HOLDINGS, LLC, RENAISSANCE
URBAN LIVING, LLC, RIO SECO
PREMIER, LLC RIVER POINT
APARTMENTS, LLC, SANDS
APARTMENT HOLDINGS, LLC,
AXIS GRAND HOLDINGS, LLC, 616
SOUTH HOLDINGS, LP, ARCADIA
HOLDINGS, LP ARCADIA II
HOLDINGS, LP,  1700 SOUTH
HOLDINGS, LP,  VILLAS AT 1400
SOUTH HOLDINGS, LP,  GARDEN
LOFTS HOLDINGS LP,  KIMPTON
SQUARE APARTMENTS LP,  N-1
HOLDINGS, LLC,  JORDAN BLUFFS
HOLDINGS, LP, AF 600 HOLDINGS
LP, TUSCANY VILLAS HOLDINGS,
LP, VERANDA HOLDINGS, LP,
FLORENTINE VILLAS HOLDINGS,
LP, LOGAN HOMESTEAD
APARTMENTS, LP, PROVIDENCE
PLACE HOLDINGS, LP,
SPRINGWOOD HOLDINGS, LP,
DEVONSHIRE COURT
CONDOMINIUMS, LLC

22
23
24
25
26
27
28

Bellows Decl. Ex. A, page 43

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

# Exhibit 1

# Notice for Reimbursement Class Members

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786



United States District Court
*U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*
Case No. 15-cv-00799-KJM

# Class Action Notice

## *Authorized by the U.S. District Court*

| | | |
|---|---|---|
| **Records show that you are a Section 8 tenant who paid additional service charges at a Wasatch property in California between April 14, 2011, and November 30, 2022.** | **There is a $5 million settlement of a lawsuit.**<br><br>**You have the right to receive a payment.** | **Read this notice to learn about your rights.** |

### Important things to know:

- **Your total estimated payment is $[XXXX]. If this amount is less than $100, you will receive a payment of $100.**

- Unless you opt out, you will automatically receive a payment and you will be part of the settlement.

- You can call [phone] to find out if payment could affect whether you qualify for government benefits programs (like Section 8, Medi-Cal, or CalFresh) or the amount of benefits you receive. This service is **free** to you.

- Wasatch will make changes to its additional services policies for California properties. Additional services must be **optional** for Section 8 tenants.

- For more details about the case and the settlement, go to: [website].

### Para asistencia en español, por favor llame [phone] o visite [website].

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

# About This Notice

## Why did I get this notice?

There is a proposed settlement of a class action lawsuit. The case was brought on behalf of Section 8 tenants who paid additional service fees at Wasatch properties in California from April 14, 2011, to November 30, 2022.

**You received this notice because you are a member of this group of Section 8 tenants, called the "class."** This notice describes the proposed settlement, explains your rights, and helps you decide what to do next.

## What do I do next?

Read this notice and decide if you want to:

| Options | More information about each option |
|---|---|
| **Do Nothing** | If you do nothing, you will receive a check in the mail and will be part of the settlement. |
| **Select a Different Payment Option** | You can request to be paid [digital payment option] instead of by check. You can also request to receive a lower amount if you believe payment will affect your eligibility for government benefits. |
| **Opt Out** | Opting out means you won't receive any payment and won't be part of the class. You would have the right to file your own lawsuit for damages against Wasatch or the other Defendants. You cannot opt out of the policy changes required by the settlement. |
| **Object** | Stay in the class, but tell the Court that you don't like the settlement. If the Court approves the settlement, you will still receive payment. |

## Key dates

Deadline to opt out or object: **[date]**
Settlement approval hearing: **[date]**
Deadline to select a different payment option: **[date]**

Bellows Decl. Ex. A, page 46

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

# About the Lawsuit

## What is this lawsuit about?

This lawsuit is about whether Wasatch's policies requiring Section 8 tenants at its California properties to pay for "additional services" beyond the allowed rent amount violated federal and California laws. Examples of additional services are in-unit washers & dryers, parking, storage space, media packages, and renter's insurance.

Wasatch and the other Defendants deny that they did anything wrong.

### What is a class action settlement?
A class action settlement is an agreement between parties to resolve the case. Settlements can provide money to class members and changes to practices that caused harm.

## Why is there a settlement in this lawsuit?

In July 2024, the parties agreed to a settlement to end the lawsuit. Both sides want to avoid the risk, delay, and expense of more litigation.

## What happens next?

You can receive all or part of your payment and be part of the settlement, meaning that you give up your ability to sue Wasatch and the other Defendants for damages on these same issues. You can choose not to be part of the settlement, which means you will not receive any payment, but you would still be able to bring your own lawsuit for damages. This is called "opting out." You can also object to the settlement if you don't like it.

### Where can I learn more?
You can get a complete copy of the proposed settlement and other key documents in this lawsuit at: [website]

Wasatch will also change its additional services policies at California properties. You cannot opt out of these policy changes.

Because a class action decides the rights of all class members, the Court must approve the settlement. Payments will be made only after the Court approves the settlement. If the Court does not approve the settlement, the settlement will not happen and the lawsuit will continue.

3     *U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*, Case No. 15-cv-00799-KJM

Bellows Decl. Ex. A, page 47

The Court will hold a hearing about whether to approve the settlement.

The hearing will be on [date] at [time] at:
Robert T. Matsui United States Courthouse
Courtroom 3, 15th Floor
501 I Street, Sacramento, CA 95814

The scheduled hearing date could change. You can check the date at: [website].

You can attend the settlement approval hearing. You can also ask the Court for permission to speak and express your opinion about the settlement. You can also hire your own lawyer at your own expense.

# About the Settlement

## How does settlement affect Wasatch's additional services policies?

The settlement requires Wasatch to inform current Section 8 tenants at its California properties that additional services (such as parking, media packages, renters' insurance, and in-unit washers & dryers) are **optional,** are not part of the rent, and cannot be required to rent an apartment. Wasatch must give Section 8 tenants **a new choice** upon renewal whether or not to enroll in additional services, and tenants can cancel them at any time. All payments will be applied first towards rent, then to additional service fees. **Wasatch cannot evict Section 8 tenants for unpaid additional services fees.** However, Wasatch can use other legal remedies to collect unpaid fees for additional services that tenants enroll in and refuse to give up.

## What money does the settlement provide?

Defendants will pay $5 million into a settlement fund. This money will be used to reimburse class members for all additional service fees they paid to Wasatch between May 1, 2011, and November 30, 2022. Class members will also receive interest as part of the settlement payment, which is payment of additional money because of the time tenants have waited to be reimbursed by Wasatch for the additional service fees.

The money in the settlement fund will also be used to pay to administer this settlement (expected to be approximately $[dollar amount]), and to make $5,000 payments to each of the three tenants the Court appointed to represent the interests of the class for the time and effort they put into the

4    *U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*, Case No. 15-cv-00799-KJM

case and the risks they took.  The Court has to approve these costs.

Class members will "release" their claims as part of the settlement, which means they cannot sue Wasatch or the other Defendants for the same issues in this lawsuit. You can read the full terms of the settlement at: [website].

If there is money left over in the settlement fund after all the payments are made, it will be donated to legal aid organizations in California that provide free legal services, including to Section 8 tenants in the regions where Wasatch has properties.

## How do I get paid?

If the Court approves the settlement, you do not need to do anything. You will receive a check in the mail and be bound by the settlement.

If you want to receive your full payment [by digital payment option] or request to be paid a lower amount, you can do that by going to: [website] or calling: [number].

## How much will I be paid?

Wasatch's records show that you were the primary resident and paid monthly additional service charges between May 1, 2011, and November 30, 2022. Your settlement payment is equal to the amount of additional service charges you paid during this period, plus interest.

| Your estimated payment is: | |
|---|---|
| Reimbursement | $ |
| Interest | $ |
| **Total:** | $ |

If your total estimated payment is less than $100, you will receive a minimum payment of $100.

## When will I be paid?

Class members cannot be paid until at least 30 days after the Court approves the settlement. If there are no delays, payments will be made in spring 2025.

Please update your contact information with the settlement administrator at [website].

5    *U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*, Case No. 15-cv-00799-KJM

Bellows Decl. Ex. A, page 49

## What if my estimated payment is wrong?

If you think the estimated payment amount above is wrong, you can dispute it by sending a letter or email by [date] to:

[Settlement Administrator]
[Street address, City, State, Zip Code] [Email]

Your written dispute must include:
(1) the case name and number;
(2) your full name and all other names used while living at Wasatch properties;
(3) your address, phone number, and email address (if you have one);
(4) a description of your dispute and supporting documents or other evidence (if you have them); and
(5) your signature (either handwritten or typed).

## Do I have to pay taxes on the settlement payment?

If the **interest** amount listed above is more than $600, you will receive a tax form (IRS Form 1099). A copy of the tax form will also be sent to the IRS. IRS Form 1099 does not apply to the reimbursement portion of the payment. If you would like tax advice, you can contact a qualified tax advisor. The lawyers in this case and the settlement administrator cannot give you tax advice.

## Will the payment affect my ability to receive government benefits?

Government benefits programs provide support like food, housing, healthcare, and financial assistance.  In California, these programs include Section 8, Medi-Cal, Medicare, MAGI-Medi-Cal, CalWORKS, CalFresh, Section 8, SSI/SSP/SSDI, In-Home Supportive Services, and WIC.

As part of the settlement, you can get free advice about whether the settlement payment may affect your eligibility for government benefits programs or the amount of benefits you receive. You can choose whether to receive the full payment, a lower payment, or no payment.

**To get advice about whether payment will affect your government benefits, you can call [number].  This is free to all class members.**

Bellows Decl. Ex. A, page 50

## Do I have a lawyer in this lawsuit?

In a class action, the court appoints lawyers to represent the interests of all the class members. For this case, the court appointed the following lawyers:

| | |
|---|---|
| Laura L. Ho, Esq.<br>Anne Bellows, Esq.<br>Stephanie Tilden, Esq.<br>GOLDSTEIN, BORGEN, DARDARIAN & HO<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612<br>(510) 763-9800 | Lindsay Nako, Esq.<br>Lori Rifkin, Esq.<br>Fawn Rajbhandari-Korr, Esq.<br>Meredith Dixon, Esq.<br>IMPACT FUND<br>2080 Addison Street, Suite 5<br>Berkeley, CA 947104<br>(510) 845-3473 |
| Andrew Wolff, Esq.<br>LAW OFFICES OF ANDREW WOLFF, PC<br>1615 Broadway, 4th Floor<br>Oakland, CA 94612<br>(510) 834-3300 | Jesse Newmark, Esq.<br>CENTRO LEGAL DE LA RAZA<br>3400 E. 12th Street<br>Oakland, CA 94601<br>(510) 437-1863 |

You can also hire your own lawyer at your own expense.

## Do I have to pay the lawyers in this lawsuit?

So far, your lawyers have not been paid any money for their work or expenses. Lawyers' fees and costs will be paid as part of the Settlement. **You do not have to pay anything to the lawyers.**

The settlement allows the Court to approve a payment to the lawyers of up to $4.5 million.  This is called "attorneys' fees and costs," and it pays the lawyers for their work and expenses they paid. This amount is separate from the $5 million settlement fund for class members.

# Opting Out of the Settlement

## What if I don't want to be part of this settlement?

You can opt out of the settlement. If you opt out, you will not receive a payment, but you will have the right to file your own case for damages against Wasatch or the other Defendants. You cannot opt out of the additional services policy changes at Wasatch properties in California.

7     *U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*, Case No. 15-cv-00799-KJM

Bellows Decl. Ex. A, page 51

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

To opt out, you must mail or email your request to opt out by [date] to:

> [Settlement Administrator]
> [Street address, City, State, Zip Code] [Email]

Include the case name and number, your full name and all other names used while living at Wasatch properties, address, phone number, email (if you have one), and your signature (handwritten or typed).

# Objecting to the Settlement

**What if I disagree with the settlement?**

If you disagree with any part of the settlement but don't want to opt out, you can object. You must say why you think the Court should not approve the settlement and whether your objection applies to just you, a part of the class, or the entire class. The Court will consider this when it decides whether to approve or reject the settlement. The Court cannot change the settlement. You can, but don't have to, hire a lawyer to help you with an objection.

To object, you must mail or email your objection by [date] to:

> [Settlement Administrator]
> [Street address, City, State, Zip Code] [Email]

Your written objection must include:
(1)  the case name and number;
(2)  your full name and all other names used while living at Wasatch properties;
(3)  your address, phone number, and email (if you have one);
(4)  the reasons why you think the agreement should not be approved;
(5)  whether you or your lawyer intend to appear at the settlement approval hearing and your lawyer's name; and
(6)  your signature (handwritten or typed).

# Key Resources

- All settlement documents can be found here: [website]
- For questions about the settlement, call: [phone]
- For free advice about your government benefits, call: [phone]
- You are welcome to contact the Settlement Administrator or attorneys listed above with any questions. Please do not contact the court.
- **Para asistencia en español, por favor llame [phone] o visite [website]**

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

# Exhibit 2

# Notice for Injunctive Relief Class Members

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786



United States District Court
*U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*
Case No. 15-cv-00799-KJM

# Class Action Notice

## *Authorized by the U.S. District Court*

**Records show that you are a Section 8 tenant who lives at a Wasatch property in California.**



**There is a settlement of a lawsuit that requires Wasatch to make changes at your property.**

**Read this notice to learn about your rights.**

### Important things to know:

- There is a proposed settlement of a class action lawsuit brought by Section 8 tenants who paid or may have to pay additional service charges at Wasatch properties in California.

- The settlement changes Wasatch's policies on additional service charges for Section 8 tenants.  **Additional service charges must be optional, can be cancelled any time, and generally cannot be a reason for eviction or a pay or quit notice**.

- You will be given a new choice whether or not to enroll in additional services.

- You can learn more about the case and the settlement at: [website].

### Key dates

Deadline for Wasatch policy changes: **[date]**
Deadline to object: **[date]**
Settlement approval hearing: **[date]**

**Para asistencia en español, por favor llame [phone]
o visite [website].**

Bellows Decl. Ex. A, page 54

# About the Lawsuit

## What is this lawsuit about?

This lawsuit is about whether Wasatch's policies requiring Section 8 tenants at its California properties to pay for "additional services" beyond the allowed rent amount violated federal and California laws. Examples of additional services are in-unit washers & dryers, parking, storage space, media packages, and renter's insurance.

### What is a class action settlement?
A class action settlement is an agreement between the parties to resolve the case. Settlements can provide money to class members and changes to practices that caused harm.

Wasatch and the other Defendants deny that they did anything wrong.

## Why is there a settlement in this lawsuit?

In July 2024, the parties agreed to a settlement to end the lawsuit. Both sides want to avoid the risk, delay, and expense of more litigation.

## What happens next?

Wasatch will make changes to its additional services policies at California properties by September 25, 2024.

Because a class action decides the rights of all class members, the Court must approve the settlement. If the Court does not approve the settlement, the settlement will not happen and the lawsuit will continue.

### Where can I learn more?
You can get a complete copy of the proposed settlement and other key documents in this lawsuit at:
[website]

The Court will hold a hearing about whether to approve the settlement.

The hearing will be on [date] at [time] at:
Robert T. Matsui United States Courthouse
Courtroom 3, 15th Floor
501 I Street, Sacramento, CA 95814

The scheduled hearing date could change. You can check the date at: [website]. You can attend the hearing. You can also ask the Court for permission to speak and express your opinion about the settlement. You can also hire your own lawyer at your own expense.

2    *U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*, Case No. 15-cv-00799-KJM

Bellows Decl. Ex. A, page 55

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

# About the Settlement

## How does settlement affect Wasatch's additional services policies?

The settlement requires Wasatch to inform current Section 8 tenants at its California properties that additional services (such as parking, media packages, renters' insurance, and in-unit washers & dryers) are **optional,** are not part of the rent, and cannot be required to rent an apartment. Wasatch must give Section 8 tenants **a new choice** upon renewal whether or not to enroll in additional services, and tenants can cancel them at any time. All payments will be applied first towards rent, then to additional service fees. **Wasatch cannot evict Section 8 tenants for unpaid additional services fees.** However, Wasatch can use other legal remedies to collect unpaid fees for additional services that tenants enroll in and refuse to give up.

## What money does the settlement provide?

Defendants will pay $5 million into a settlement fund. This money will be used to reimburse class members who paid additional service fees to Wasatch between May 1, 2011, and November 30, 2022, plus interest.

**According to Wasatch's records, you did not pay additional service fees during this time period and will not receive money from the settlement. You can call [phone number] if you believe you paid additional fees and should be reimbursed under the settlement.**

## Do I have a lawyer in this lawsuit?

In a class action, the court appoints lawyers to represent the interests of all the class members. For this case, the court appointed the following lawyers:

| | |
|---|---|
| Laura L. Ho, Esq.<br>Anne Bellows, Esq.<br>Stephanie Tilden, Esq.<br>GOLDSTEIN, BORGEN, DARDARIAN & HO<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612<br>(510) 763-9800<br>[website] | Lindsay Nako, Esq.<br>Lori Rifkin, Esq.<br>Fawn Rajbhandari-Korr, Esq.<br>Meredith Dixon, Esq.<br>IMPACT FUND<br>2080 Addison Street, Suite 5<br>Berkeley, CA 947104<br>(510) 845-3473 |
| Andrew Wolff, Esq.<br>LAW OFFICES OF ANDREW WOLFF, PC<br>1615 Broadway, 4th Floor<br>Oakland, CA 94612<br>(510) 834-3300 | Jesse Newmark, Esq.<br>CENTRO LEGAL DE LA RAZA<br>3400 E. 12th Street<br>Oakland, CA 94601<br>(510) 437-1863 |

Bellows Decl. Ex. A, page 56

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

You can also hire your own lawyer at your own expense.

## Do I have to pay the lawyers in this lawsuit?

So far, your lawyers have not been paid any money for their work or expenses. Lawyers' fees and costs will be paid as part of the Settlement. **You do not have to pay anything to the lawyers.**

The settlement allows the Court to approve a payment to the lawyers of up to $4.5 million.  This is called "attorneys' fees and costs," and it pays the lawyers for their work and expenses they paid.

# Objecting to the Settlement

## What if I disagree with the settlement?

If you disagree with any part of the settlement, you can object. You must say why you think the Court should not approve the settlement and whether your objection applies to just you, a part of the class, or the entire class. The Court will consider this when it decides whether to approve or reject the entire settlement. The Court cannot change the settlement. You can, but don't have to, hire a lawyer to help you with an objection.

To object, you must mail or email your objection by [date] to:

[Settlement Administrator]
[Street address, City, State, Zip Code] [Email]

Your written objection must include:
(1)  the case name and number;
(2) your full name and all other names used while living at Wasatch properties;
(3) your address, phone number, and email address (if you have one);
(4) the reasons why you think the settlement should not be approved;
(5) whether either you or your lawyer intend to appear at the settlement approval hearing and your lawyer's name; and
(6) your signature (handwritten or typed).

# Key Resources

- All settlement documents can be found here: [website]
- If you believe you may be eligible for reimbursement of additional service fees, call the Settlement Administrator at: [phone]
- You are welcome to contact the Settlement Administrator or attorneys listed above with any questions. Please do not contact the court.
- **Para asistencia en español, por favor llame [phone] o visite [website]**

4      *U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*, Case No. 15-cv-00799-KJM

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

# Exhibit 3

# Additional Parties to False Claims Act Release

Bellows Decl. Ex. A, page 58

| No. | Property Name | Entity Name | Location |
|-----|---------------|-------------|----------|
| 1 | 600 Lofts | 616 South Holdings, LP | Salt Lake City, UT |
| 2 | Arcadia | Arcadia Holdings, LP | Sandy, UT |
| 3 | Arcadia II | Arcadia II Holdings, LP | Sandy, UT |
| 4 | Arroyo Vista Apartments | Arroyo Vista Holdings, LLC | Glendale, AZ |
| 5 | Aztec Springs Apartments | Aztec Premier, LLC | Mesa, AZ |
| 6 | Brighton Place Apartments | Brighton Place Holdings, LLC | Midvale, UT |
| 7 | Broadmoor Village Apartments | Broadmoor Village Apartments, LLC | West Jordan, UT |
| 8 | Brookside Apartments | Brookside Holdings, Inc. | Phoenix, AZ |
| 9 | Burnett Station Apartments | Wasatch Premier Burnett, LLC | Renton, WA |
| 10 | Canyon Ridge Apartments | Brookside-Premier, LLC | Surprise, AZ |
| 11 | Cimarron Place Apartments | Cimarron Place Apartments, LLC | Tucson, AZ |
| 12 | City Lofts | 1700 South Holdings, LP | Salt Lake City, UT |
| 13 | Crossroads Apartments | Crossroads Apartment Holdings, LLC | West Valley, UT |
| 14 | Devonshire Court East | Devonshire Court Condominiums, LLC | North Logan, UT |
| 15 | Devonshire Court West | Devonshire Court Condominiums, LLC | North Logan, UT |
| 16 | Enclave at 1400 South | Villas at 1400 South Holdings, LP | Salt Lake City, UT |
| 17 | Falls at Hunters Pointe | The Falls at Hunters Pointe Holdings, LLC | Sandy, UT |
| 18 | Florentine Villas | Florentine Villas Holdings, LP | Midvale, UT |
| 19 | Four Seasons at Southtowne | Southtowne Apartments, LLC | South Jordan, UT |
| 20 | Garden Lofts | Garden Lofts Holdings LP | Salt Lake City, UT |

4882-3615-8430.v1

| 21 | Glen Oaks Apartments | Glen Oaks Apartment Holdings, LLC | Glendale, AZ |
|----|----------------------|-----------------------------------|--------------|
| 22 | Goldstone Place Apartments | Layton Apartment Holdings, LLC | Clearfield, UT |
| 23 | Heron Pointe Apartments | Heron Pointe Apartments, LLC | Fresno, CA |
| 24 | Kimpton Square | Kimpton Square Apartments LP | Midvale, UT |
| 25 | Lofts at 7800 | N-1 Holdings, LLC | Midvale, UT |
| 26 | Meadows at Homestead | Logan Homestead Apartments, LP | Logan, UT |
| 27 | Metropolitan Place Apartments | Wasatch Premier Metropolitan, LLC | Renton, UT |
| 28 | Overlook at Pantano | Wasatch Pool Holdings IV, LLC | Tucson, AZ |
| 29 | Palladio Apartments – Phase 1 | Palladio Holding, LLC | Salt Lake City, UT |
| 30 | Promontory Point Apartments | Promontory-Premier, LLC | Sandy, UT |
| 31 | Providence Place | Providence Place Holdings, LP | Salt Lake City, UT |
| 32 | Ranchwood Apartments | Ranchwood Apartment Holdings, LLC | Glendale, AZ |
| 33 | Remington Apartments | Remington Holdings, LLC | Midvale, UT |
| 34 | Revo 225 | Renaissance Urban Living, LLC | Renton, WA |
| 35 | Rio Seco Apartments | Rio Seco Premier, LLC | Tucson, AZ |
| 36 | River Point Apartments | River Point Apartments, LLC | Tucson, AZ |
| 37 | Sands Apartments | Sands Apartment Holdings, LLC | Mesa, AZ |
| 38 | Springwood Apartments | Springwood Holdings, LP | Bountiful, UT |
| 39 | The Reserve at View 78 | Jordan Bluffs Holdings, LP | Midvale, UT |
| 40 | The Sage | AF 600 Holdings LP | American Fork, IT |

Bellows Decl. Ex. A, page 60

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

| 41 | Tuscany Villas | Tuscany Villas Holdings, LP | Midvale, UT |
| 42 | Veranda | Veranda Holdings, LP | Draper, UT |
| 43 | Wasatch Hills Apartments | Axis Grand Holdings, LLC | Renton, WA |

3

4882-3615-8430.v1

Bellows Decl. Ex. A, page 61

# GOLDSTEIN, BORGEN, DARDARIAN & HO

155 Grand Ave, Suite 900 ♦ Oakland, CA 94612
(510) 763-9800 ♦ (510) 835-1417 (fax)
www.gbdhlegal.com

Goldstein, Borgen, Dardarian & Ho ("GBDH") concentrates on complex and class action litigation on the plaintiff side, including wage and hour, disability access, employment discrimination, consumer protection, voting rights, housing rights, and other public interest litigation. GBDH, founded in 1972, is one of the most successful private plaintiffs' public interest firms in the country. The firm has a national practice and regularly litigates class action lawsuits in California, and has also litigated class actions in Arizona, Florida, Georgia, Iowa, Illinois, Massachusetts, Missouri, Michigan, Minnesota, Maryland, Nebraska, Oregon, New York, Pennsylvania, Tennessee, Texas, and Washington.

GBDH is one of the leading plaintiffs' firms litigating wage and hour class and collective actions in California and nationally. The firm has successfully litigated cases on behalf of workers improperly denied overtime and other compensation in numerous wage and hour class and collective actions, including *Garcia v. Oracle* ($35 million settlement), *Rosenberg v. IBM* ($65 million settlement), *Butler v. Countrywide* ($30 million settlement), *Lin v. Siebel* ($27.5 million settlement), *Bullock v. Automobile Club* ($19.5 million settlement), *Contreras v. Bank of America* ($16.65 million settlement), *Reni v. Reach* ($15 million settlement), and *Mousai v. E-Loan* ($13.6 million settlement). The firm has also played a part in strengthening the wage and hour laws for workers by submitting friends of the court briefs in several California Supreme Court cases.

GBDH also has an active docket of significant and life changing disability access class actions. The firm has been instrumental in negotiating landmark agreements on behalf of persons with vision impairments resulting in the installation of "talking ATMs" at thousands of Bank of America, Wells Fargo, Chase, 7-11 and Citibank locations across the country and ensuring that persons with vision impairments receive banking materials in alternative formats, such as Braille and large print. The firm has also successfully litigated other cases involving access to public accommodations of behalf of persons with disabilities, including a class action against Macy's Department stores brought on behalf of persons with mobility disabilities. The firm recently obtained a watershed class action settlement requiring the Forty Niners to make Levi's Stadium accessible to persons with mobility disabilities and their companions and to compensate persons with mobility disabilities who were denied full and equal access to the Stadium through the creation of a $24 million damages fund – the largest ever obtained in a case against a public accommodation under the Americans with Disabilities Act. In addition, the firm has successfully litigated cases involving access to public pedestrian facilities, including a class action settlement in *Willits v. City of Los Angeles*. The landmark settlement requires the City of Los Angeles to pay $1.4 billion to make its sidewalks, curb ramps, crosswalks, and other walkways accessible to individuals with mobility disabilities. GBDH has also secured settlements requiring other jurisdictions to make their pedestrian rights of way accessible, including San Jose, Boston, Long Beach, Seattle, and Portland.

In the largest monetary recovery ever recovered against a private-sector company in a gender discrimination case brought under Title VII of the Civil Rights Act of 1964, GBDH obtained $250 million and injunctive relief for a class of women who were denied or deterred from positions as State Farm insurance sales agents (*Kraszewski v. State Farm General Ins., Co.*). GBDH also obtained the largest monetary recovery at the time in a Title VII race discrimination case (*Haynes v. Shoney's, Inc.*), in which $132.5 million and broad injunctive relief were obtained on behalf of a class of African American employees and applicants. GBDH also negotiated an $87.5 million settlement on behalf of women employees and applicants for sales positions at Home Depot stores in its Western Division (*Butler, et al. v. Home Depot, Inc.*). GBDH also recovered $80 million in a sex discrimination class action against Lucky Stores, Inc. (*Stender v. Lucky Stores, Inc.*) and $81.5 million in a gender discrimination class action against Publix Super Markets, Florida's largest private employer (*Shores v. Publix Super Markets, Inc.*). Other significant employment discrimination successes include *Tucker v Walgreens* ($20 million settlement); *Rice v. Southern California Edison* ($18.25 million settlement) and *Mitchell v. Metropolitan Life Ins. Co., dba MetLife* ($13.4 million settlement).

GBDH also litigated the largest public accommodations case to date under Title II of the 1964 Civil Rights Act (*Ridgeway v. Denny's*).  This class action brought on behalf of African American customers of Denny's Restaurants in California resulted in a $34.8 million settlement and established a monitoring system, training and other injunctive relief measures to assure that African American customers of Denny's nationwide receive non-discriminatory service in the future.

GBDH's recent consumer cases have included a $16 million settlement for Apple in-app subscribers in California, a $10 million settlement against Twilio for alleged privacy violations, and an $11 million settlement with American Airlines that resulted  in refunds to passengers for improperly charged checked bag fees.

GBDH has also been instrumental in enforcing voting rights in California, playing a central appellate counsel role that resulted in the California Supreme Court's decision in *Pico Neighborhood Association v. Santa Monica*, which recognized the expansive protections of the California Voting Rights Act.   The firm has secured electoral changes on behalf of Asian American and Latine voters under the California Voting Rights Act, including winning at trial in 2018 and on a post-trial appeal in 2020 against the City of Santa Clara for its continued use of at-large elections despite evidence that the at-large system disenfranchised Asian American voters.  GBDH has also litigated and settled CVRA cases against the cities of Anaheim, Cypress, Palmdale, Sunnyvale, and the AC Transit District, and multiple school districts.

GBDH's most recent victory came from a 2023 class action bench trial against Equity Residential, the largest residential landlord in the United States,  in a long-running case challenging the fee that Equity has charged more than 190,000 of its California tenants for late payment of rent.  The court recently ruled that the late fee violates California law and has ordered Equity to pay restitution to tenants who paid the late fee since September 2010.

In a tradition of taking on the hardest cases, GBDH also has successfully litigated Clean Water Act cases challenging excessive discharges of selenium into San Francisco Bay by Unocal, Tosco and Exxon Oil Companies, and a case brought against Dow Chemical Co., under California's Proposition 65 to prohibit the discharge of carcinogens and other toxics into a drinking water source for Contra Costa County, California.

GBDH has long been recognized as one of the top plaintiffs' firms in the country.  GBDH was named one of California's "Top Boutiques" by the Daily Journal in 2022.  In 2020, GBDH was named the sole recipient of the National Asian Pacific American Bar Association's APA-Owned Law Firm of the Year Award, recognizing GBDH's strong commitment to the Asian Pacific American community, and in 2023 was recognized by Asian Law Alliance as its Legal Impact Honoree for its work on behalf of Asian American voters.  In 2011 and 2012, the Recorder recognized the firm as one of the top ten "Leading Employment Practices" for plaintiffs in the Bay Area.  The firms' partners are regularly recognized as "Superlawyers."  As early as July 1992, *The National Law Journal* ("A National Who's Who of the Top Lawyers in Employment Litigation") stated that GBDH was, "In a league of their own on the plaintiffs' side, handling the largest class actions nationwide."  A 1995 *Business Week* article called GBDH "the swat team of bias litigation," noting that in the prior three years, the firm "ha[d] collected more than $600 million in damages and legal fees from companies its clients have sued for discrimination."  Every year since 2004, GBDH partners have been recognized as "SuperLawyers," and GBDH partners have been awarded the "CLAY" (California Lawyer Attorneys of the Year) in 2000, 2008, and 2014 (by *California Lawyer* magazine), for "extraordinary achievement."

Bellows Decl. Ex. B, page 2