UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America ex rel. Denika Terry, et al.,<br><br>                    Plaintiffs,<br><br>         v.<br><br>Wasatch Advantage Group, LLC et al.,<br><br>                    Defendants. | No. 2:15-cv-00799-KJM-SCR<br><br>ORDER |

  As explained in this order, the court **grants** the unopposed motions for preliminary approval of the parties' proposed settlement and to dismiss the claim under the False Claims Act.

**I. BACKGROUND**

  Plaintiffs receive rental assistance through the federal program commonly known as "Section 8." *See* Order (Nov. 23, 2022) at 2, ECF No. 278. They allege in this action that defendants charge more than the maximum rents permitted by the defendants' contracts with local housing authorities and in violation of regulations adopted by the federal Department of Housing and Urban Development. *See id.* at 3. In short, they say, defendants imposed additional charges for insurance and amenities like covered parking and washers and driers, and although these charges were billed separately from the rent and were not called "rent," they operated as additional rent, both practically and legally speaking. *See id.* at 9–13.

This court previously certified two classes of similarly situated tenants: an injunction class under Rule 23(b)(2) and a damages class under Rule 23(b)(3). *See generally* Order (July 30, 2018), ECF No. 92; Order (Jan. 25, 2022), ECF No. 226. The court also granted partial summary judgment to plaintiffs on disputes related to both liability and damages. *See generally* Order (Nov. 23, 2022), ECF No. 278; Order (Feb. 1, 2024), ECF No. 352. The parties litigated many other pretrial motions as well, including motions to dismiss under Rule 12(b)(6) or for lack of jurisdiction,[1] for leave to amend the pleadings,[2] seeking or opposing discovery,[3] for judgment on the pleadings,[4] and for reconsideration.[5] *See also* Bellows Decl. ¶¶ 7–31, ECF No. 544-2 (summarizing pretrial disputes and related motion practice). Defendants also unsuccessfully sought the Ninth Circuit's permission to pursue an early appeal of this court's order on class certification. *See* Order (9th Cir. Oct. 17, 2018), ECF No. 100.

The court set trial on several claims against Wasatch Property Management to begin in July 2023, and as the trial date neared, the parties accelerated litigation of the case. *See, e.g.*, Mins., ECF No. 511; Order (July 18, 2024), ECF No. 527; Order (July 18, 2024), ECF No. 528; Objections, ECF Nos. 516, 520, 522, 533, 535, 537, 538; *see also* Bellows Decl. ¶¶ 32–36 (summarizing trial preparation efforts). In the meantime, the parties attended private mediation with Jay C. Gandhi, a former Magistrate Judge of the Central District of California. *See, e.g.*, Notice, ECF No. 472. Counsel met with the mediator in person over two days and continued settlement discussions over the following month. *See* Mem. Prelim. Cert. at 6, ECF No. 544-1. They eventually reached an agreement and filed a notice of settlement just two days before the first day of trial. *See* Notice of Settlement, ECF No. 541.

---

[1] *See generally* Order (July 21, 2017), ECF No. 61; Mot. Dismiss, ECF No. 470, *withdrawn*, ECF No. 545.

[2] *See generally, e.g.*, Order (July 30, 2018), ECF No. 92; Order (Nov. 27, 2023), ECF No. 329.

[3] *See generally, e.g.*, Order (Aug. 14, 2017), ECF No. 69; Order (June 15, 2020), ECF No. 122; Order (Feb. 7, 2023), ECF No. 287; Order (Apr. 7, 2023), ECF No. 299; Order (May 16, 2023), ECF No. 306; Order (Oct. 11, 2023), ECF No. 324.

[4] *See generally* Order (May 21, 2024), ECF No. 399.

[5] *See generally* Order (May 21, 2024), ECF No. 398.

The settlement agreement offers both injunctive and monetary relief to the tenant classes. First, Wasatch Property Management and the defendants who own California properties managed by Wasatch have agreed to take measures designed to ensure members of the injunction class are no longer required to pay the disputed service charges. *See* Settlement Agreement at 7–9,[6] Bellows Decl. Ex. A, ECF No. 544-2. These defendants will delete form language suggesting the charges are mandatory, and they will otherwise revise rental agreements and other documents to make clear the charges "are not a component of or combined with rent and are optional separate charges." *Id.* at 8. They will inform tenants the charges "will not form the basis for any threat of eviction or eviction proceedings" and obtain consent to those charges from class members whose leases renew. *Id.* at 8–9. Defendants also have agreed to give the court and plaintiffs' counsel confirmation when they have made these changes, and they have agreed this court will retain jurisdiction to enforce the settlement agreement for five years. *See id.* at 5, 30.

Second, defendants will pay $5 million into a fund for reimbursing the charges tenants paid between May 2011 and November 2022, plus interest. *See id.* at 4, 10, 19–20; *see also* Bellows Decl. ¶ 41 (summarizing interest calculation). No class member will receive less than $100. *See* Settlement Agreement at 19; Bellows Decl. ¶ 42. Class members will not need to file or verify any claims to obtain these payments. *See* Bellows Decl. ¶ 43. The parties also have agreed to retain a consultant to address any questions or concerns class members have about whether their settlement payments will make them ineligible for a government benefits program. *See id.* ¶ 47. If funds go unpaid, they will not revert to defendants, but will instead be paid to *cy pres* legal aid organizations that serve tenants in Section 8 housing programs. *See* Settlement Agreement at 22–23. Finally, each of the named plaintiffs will receive additional awards of $5,000. *See* Bellows Decl. ¶ 48; Settlement Agreement at 10–11.

Third, defendants have agreed to pay $4.5 million to cover attorneys' fees and costs incurred by the counsel who litigated the claims on behalf of the two classes. *See* Settlement Agreement at 10. Plaintiffs' counsel will not receive those funds automatically; payment is

---

[6] Pages cited here are those displayed at the bottom right of the page as "Bellows Decl. Ex. A, page [#]."

conditional on the court's approval through a motion for fees and costs. *See id.*; *see also* Bellows Decl. ¶ 51. A court award below $4.5 million would not result in the repayment or reversion or any money to defendants, but rather an additional payment to the *cy pres* recipients. *See* Settlement Agreement at 10, 23; Bellows Decl. ¶ 51.

Finally, defendants have agreed to pay $3.5 million to the United States to resolve the claims plaintiffs assert on behalf of the United States as relators under the False Claims Act. *See* Settlement Agreement at 26–29. They also have agreed to pay $3.5 million to plaintiffs' counsel as a statutory award of attorneys' fees and costs under the False Claims Act. *See id.*[7] After plaintiffs filed their motion for preliminary approval and a copy of the settlement agreement, the United States Attorney for the Eastern District of California gave notice that the United States Attorney General consents to the dismissal of the False Claims Act claim under the terms of the settlement agreement. *See* Consent, ECF No. 552 ("[T]he United States Attorney General consents to the dismissal of this action without prejudice to the rights of the United States, based on its determination that such a dismissal is commensurate with the public interest and that the matter does not warrant the continued expenditure of government resources in light of the Settlement Agreement between Plaintiffs-Relators and Defendants.").

Plaintiffs now move for an order granting preliminary approval of the settlement agreement under Federal Rule of Civil Procedure 23(e) and dismissal of the False Claims Act claims under 31 U.S.C. § 3730(b)(1). *See generally* Mot. Prelim. Approval, ECF No. 544; Mem. Prelim. Approval, ECF No. 544-1; Mot. Dismiss, ECF No. 549. Defendants do not oppose either motion. *See* Not. Non-Opp'n, ECF No. 551. The court submits the matter without holding a hearing and vacates the hearing currently set for November 7, 2024.

---

[7] The government declined to intervene in this action, so plaintiffs maintained the action in the name of the United States as relators. *See* 31 U.S.C. § 3730(b)(1). When the government does not intervene in a False Claims Act case and the case is settled, "the person . . . settling the claim shall receive . . . an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(2). "All such expenses, fees, and costs shall be awarded against the defendant." *Id.*

## II. CLASS SETTLEMENT

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  The court must give notice of the proposed settlement to the class or proposed class, but not before determining it "will likely be able to" both (1) "certify the class for purposes of the judgment on proposal" and (2) "approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B).

The first requirement, likelihood of class certification, requires the plaintiffs to satisfy the four prerequisites of Rule 23(a) and show their claim fits within one of the three categories of Rule 23(b).  *See Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020).  This court has already certified the classes in question; litigation as a class is appropriate under Rules 23(a) and (b).

The second requirement, likely approval under Rule 23(e)(2), focuses on the fairness of the settlement for absent class members.  The court must consider these standards even whereas here it has already certified a class.  *See Briseno v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021).  The question is whether the court is likely to ultimately conclude the proposed settlement "is fair, reasonable, and adequate, after considering whether:"

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and

5

|   |   |   |
|---|---|---|
| | (D) | the proposal treats class members equitably relative to each other. |

Fed. R. Civ. P. 23(e)(2). "In this Circuit, a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight '*Churchill* factors'":

| | (1) | the strength of the plaintiff's case; |
|---|---|---|
| | (2) | the risk, expense, complexity, and likely duration of further litigation; |
| | (3) | the risk of maintaining class action status throughout the trial; |
| | (4) | the amount offered in settlement; |
| | (5) | the extent of discovery completed and the stage of the proceedings; |
| | (6) | the experience and views of counsel; |
| | (7) | the presence of a governmental participant; and |
| | (8) | the reaction of the class members of the proposed settlement. |

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (line breaks added) (quoting *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 946 (9th Cir. 2011), in turn quoting *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also* Fed. R. Civ. P. 23, Advisory Committee's Notes to 2018 Amendment (explaining factors listed in Rule 23(e)(2) not intended to "displace" factors identified in existing judicial decisions).

The court finds the settlement agreement proposed in this case is likely to be approved finally as "fair, reasonable and adequate" by the standard of Rule 23(e)(2). As summarized above, the court has presided over this case for several years as counsel litigated capably and vigorously on behalf of the plaintiffs and class. Much less taxing pretrial litigation and discovery has sufficed in other cases to show a settlement is likely to meet the requirements of Rule 23(e)(2). *See, e.g.*, *Greer v. Dick's Sporting Goods, Inc.*, No. 15-01063, 2019 WL 4034478, at *3 (E.D. Cal. Aug. 27, 2019). Counsel also negotiated the proposed settlement agreement at arm's length before an experienced mediator. The parties' participation in mediation, combined with their simultaneously vigorous efforts in litigation, "tends to support the conclusion that the

settlement process was not collusive." *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012). The terms of the proposed settlement agreement, if finally approved, are also favorable to the class. The agreement would both fully reimburse class members for their expenses and ensure defendants do not impose similar charges in the future. The agreement also avoids what in all likelihood would have been a complex, hard-fought, two-phase trial. *See* Fed. R. Civ. P. 23(e)(2)(C)(i) (requiring court to consider any "costs" and "delay" avoided by settlement agreement). It both reduces uncertainty and hastens relief to the classes.

The proposed fee award is large in comparison to the amount due to class members. It exceeds the so-called "benchmark" figure, i.e., 25 percent of the total settlement value. *See In re Easysaver Rewards Litig.*, 906 F. 3d 747, 754 (9th Cir. 2018). But the proposed fee is subject to this court's approval in response to a noticed motion, to be filed in the future, and if the court does not approve the whole fee as proposed, the difference will not revert to defendants, but rather will be paid to *cy pres* legal aid organizations. This structure—combined with the many years this case has been pending and the extensive pretrial litigation it has demanded—suggests the proposed fee award, despite its relatively large size, is not a "subtle sign[] that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect their negotiations." *Bluetooth*, 654 F.3d at 946.

This court and others have occasionally expressed concerns with awards paid to named plaintiffs, like the $5,000 awards proposed in this case. *See, e.g.*, *Mostajo v. Nationwide Mut. Ins. Co.*, No. 17-00350, 2022 WL 3141879, at *7 (E.D. Cal. Aug. 5, 2022) ("If class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." (alteration omitted) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). But in this case, the proposed incentive awards are likely appropriate to compensate the named plaintiffs for their participation in lengthy litigation and the reputational risks associated with attaching one's name to a lawsuit and related consequences as persons who may continue to seek housing in the rental market. District courts, including this court, have

7

given final approval to similar awards when they are justified at the final approval stage. *See, e.g.*, *Borelli v. Black Diamond Aggregates, Inc.*, No. 14-02093, 2021 WL 5139610, at *7 (E.D. Cal. Nov. 4, 2021) (collecting authority and summarizing relevant factors).

Finally, only one of the three commonly cited "red flags" of collusion among the *Churchill* factors might be cause for concern here: defendants' agreement not to contest the proposed fee, cost and incentive awards. *See Kim*, 8 F.4th at 1180; *Bluetooth*, 654 F.3d at 947. But as noted above, any amounts the court does not award to plaintiffs' counsel will not revert to defendants, and no awards will be paid before the court approves them as reasonable. For these reasons, the risk of collusion is low despite the defendants' agreement not to contest the proposed attorneys' fees, costs, and incentive awards.

Having found the proposed agreement is likely to be finally approved, "[t]he court must direct notice in a reasonable manner to all class members who would be bound." Fed. R. Civ. P. 23(e)(1)(B). The notice must state in plain, easily understood language:

    (i)    the nature of the action;

    (ii)    the definition of the class certified;

    (iii)    the class claims, issues, or defenses;

    (iv)    that a class member may enter an appearance through an attorney if the member so desires;

    (v)    that the court will exclude from the class any member who requests exclusion;

    (vi)    the time and manner for requesting exclusion; and

    (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Further, when "the class action was previously certified under Rule 23(b)(3)," as is true in this case, "the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." Fed. R. Civ. P. 23(e)(4).

1    The court has reviewed the proposed class notices.  *See* Bellows Decl. Ex. A at 44–52
2 (proposed damages class notice); *id.* Ex. A at 54–57 (injunction class notice).  To the parties'
3 credit, those notices employ unusually clear and straightforward language to describe this case,
4 the proposed settlement, the class members' options and the other information required by Rule
5 23(c)(B)(i).  The court grants the unopposed motion for preliminary approval, and approves the
6 proposed notices.

7    **III.    FALSE CLAIMS ACT**

8    Plaintiffs also move to dismiss their claims under the False Claims Act; they request
9 dismissal with prejudice as to the named plaintiffs but dismissal without prejudice as to the
10 United States.  Mot. Dismiss at 2.  Claims pursued in the name of the United States under the
11 False Claims Act "may be dismissed only if the court and the Attorney General give written
12 consent to the dismissal and their reasons for consenting."  31 U.S.C. § 3730(b)(1).

13    As noted above, the United States has given written notice of its consent and reasons, i.e.,
14 "a dismissal is commensurate with the public interest" and "the matter does not warrant the
15 continued expenditure of government resources in light of the Settlement Agreement."  ECF
16 No. 552.  Federal courts appear not to have considered what "reasons" might be appropriate to
17 give "consent" to a dismissal under § 3730(b)(1).  The context of the consent requirement
18 suggests it was intended at least in part to ensure valid claims are not abandoned or settled on
19 terms that are unjustly favorable to the defense.  The hard-fought nature of this litigation,
20 plaintiffs' counsel's adequate representation, and the terms of the settlement agreement show
21 consent is appropriate in this case.

22    In addition to dismissal, plaintiffs request a partial judgment under Federal Rule of Civil
23 Procedure 54(b).  Under that rule, "[w]hen an action presents more than one claim for relief . . .
24 the court may direct entry of a final judgment as to one or more, but fewer than all, claims or
25 parties only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ.
26 P. 54(b).  Given the potential for wasteful or duplicative appeals, the Ninth Circuit has instructed
27 /////

district courts to "bear in mind what [it] said in *Morrison-Knudson Co., Inc. v. Archer*" when considering a Rule 54(b) motion:

> The trial court should not direct entry of judgment under Rule 54(b) unless it has made specific findings setting forth the reasons for its order. Those findings should include a determination whether, upon any review of the judgment entered under the rule, the appellate court will be required to address legal or factual issues that are similar to those contained in the claims still pending before the trial court. A similarity of legal or factual issues will weigh heavily against entry of judgment under the rule, and in such cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and unjust result, documented by further and specific findings.

*Frank Briscoe Co., Inc. v. Morrison-Knudsen, Co., Inc.*, 776 F.2d 1414, 1416 (9th Cir. 1985) (quoting 655 F.2d 962, 965 (9th Cir. 1981)). There is no reason to delay judgment of the claims under the False Claims Act in this case. The parties have reached a settlement agreement. There is no risk that any "appellate court will be required to address legal or factual issues" like those involved in the pending class claims. *Id.* (quoting *Morrison-Knudsen*, 655 F.2d at 965)

Finally, plaintiffs request "the Court retain jurisdiction over the [False Claims Act] claim to oversee implementation of the Settlement Agreement's provisions regarding the False Claims Act." Mot. Dismiss at 2. The court grants that request here given its familiarity with the claims and litigation and in the interest of justly and efficiently ensuring compliance with the terms of the settlement agreement. *Cf. Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) (noting district court would have "ancillary jurisdiction" over disputes regarding compliance with settlement agreement after "retaining jurisdiction" over agreement).

### IV.     CONCLUSION

For the reasons above, the court **grants** the unopposed motions for preliminary certification (ECF No. 544) and to dismiss the FCA claim (ECF No. 549). The hearing previously set for November 7, 2024, is **vacated**.

The parties must comply with the terms of the Settlement Agreement applicable to the FCA claim. The court retains jurisdiction over the FCA claim to the extent needed to enforce the

settlement.  The FCA claim against the FCA Defendants is hereby **dismissed** with prejudice as to plaintiffs and without prejudice as to the United States.

The court further appoints Verita as Settlement Administrator, authorizes the provision of notices attached to the Settlement to Reimbursement and Injunctive Relief Class members, and approves the objection and opt-out provisions described in the Settlement.  The court also adopts the following schedule and deadlines:

- Within fourteen days, defendants shall provide an updated class list to the Administrator.
- Within fourteen days of receipt of the class list, the Administrator shall mail settlement notices.
- Motions for attorneys' fees and costs shall be filed no later than thirty days after notices are mailed.
- Class member responses are due either (1) sixty days after notices are mailed, or (2) fourteen days are remailing, whichever date is later.
- By February 1, 2025, defendants shall make the second settlement payment, fully funding the class settlement fund.
- A final approval hearing is set for **January 23, 2025** at 10:00 a.m. before the undersigned.
- The parties may respond to any objections no later than seven days before the final approval hearing.

The court **denies as moot** the motions and requests at ECF Nos. 407, 409, 416, 417, 418, 419, 420, 424, 428 and 500.

This order resolves ECF Nos. 407, 409, 416, 417, 418, 419, 420, 428, 424, 500, 544 and 549.  IT IS SO ORDERED.

DATED: October 24, 2024.

SENIOR UNITED STATES DISTRICT JUDGE