1   Laura L. Ho (SBN 173179)
    lho@gbdhlegal.com
2   Anne P. Bellows (SBN 293722)
    abellows@gbdhlegal.com
3   Stephanie E. Tilden (SBN 341486)
    stilden@gbdhlegal.com
4   GOLDSTEIN, BORGEN, DARDARIAN & HO
    155 Grand Avenue, Suite 900
5   Oakland, CA 94612
    Tel: (510) 763-9800 | Fax: (510) 835-1417
6
    Jesse Newmark (SBN 247488)
7   jessenewmark@centrolegal.org
    CENTRO LEGAL DE LA RAZA
8   3022 International Blvd., Suite 410
    Oakland, CA 94601
9   Tel: (510) 437-1863 | Fax: (510) 437-9164

10  Lindsay Nako (SBN 239090)
    lnako@impactfund.org
11  Lori Rifkin (SBN 244081)
    lrifkin@impactfund.org
12  Fawn Rajbhandari-Korr (SBN 315888)
    fkorr@impactfund.org
13  Meredith Dixon (SBN 346864)
    mdixon@impactfund.org
14  IMPACT FUND
    2080 Addison Street, Suite 5
15  Berkeley, CA 94704
    Tel: (510) 845-3473 | Fax: (510) 845-3654
16
    Attorneys for Plaintiffs and Relators and the Certified Classes
    *[Additional Counsel listed on following page]*
17

                    **UNITED STATES DISTRICT COURT**
18                  **EASTERN DISTRICT OF CALIFORNIA**
                         **SACRAMENTO DIVISION**
19

| | |
|---|---|
| 20  UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA | Case No.: 2:15-CV-00799-KJM-SCR |
| 21 | CLASS ACTION |
| 22 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| 23      Plaintiffs/Relators, | |
| 24  vs. | |
| 25  WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK | Date:    January 23, 2025<br>Time:    10:00 a.m.<br>Dept:    Courtroom 3, 15th Floor<br>Before:  Hon. Chief Judge Kimberly J. Mueller |
| 26 | |
| 27 | |
| 28 | |

1   HOLDINGS, LLC, BELLWOOD JERRON
     HOLDINGS, LLC, BELLWOOD JERRON
2   APARTMENTS, LP, BENT TREE
     APARTMENTS, LLC, CALIFORNIA PLACE
3   APARTMENTS, LLC, CAMELOT LAKES
     HOLDINGS, LLC, CANYON CLUB HOLDINGS,
4   LLC, COURTYARD AT CENTRAL PARK
     APARTMENTS, LLC, CREEKSIDE HOLDINGS,
5   LTD, HAYWARD SENIOR APARTMENTS, LP,
     HERITAGE PARK APARTMENTS, LP, OAK
6   VALLEY APARTMENTS, LLC, OAK VALLEY
     HOLDINGS, LP, PEPPERTREE APARTMENT
7   HOLDINGS, LP, PIEDMONT APARTMENTS,
     LP, POINT NATOMAS APARTMENTS, LLC,
8   POINT NATOMAS APARTMENTS, LP, RIVER
     OAKS HOLDINGS, LLC, SHADOW WAY
9   APARTMENTS, LP, SPRING VILLA
     APARTMENTS, LP, SUN VALLEY HOLDINGS,
10  LTD, VILLAGE GROVE APARTMENTS, LP,
     WASATCH QUAIL RUN GP, LLC, WASATCH
11  PREMIER PROPERTIES, LLC, WASATCH
     POOL HOLDINGS III, LLC,
12  and DOES 1-4,

13        Defendants.

14

15  Andrew Wolff (SBN 195092)
     andrew@awolfflaw.com
16  LAW OFFICES OF ANDREW WOLFF, PC
     1615 Broadway, 4th Floor
17  Oakland, CA 94612
     Tel: (510) 834-3300 | Fax: (510) 834-3377
18
     Attorneys for Plaintiffs and Relators and the Certified Classes
19

20  Lawrence Anthony Organ (SBN 175503)
     larry@civilrightsca.com
21  Marqui Hood (SBN 214718)
     marqui@civilrightsca.com
22  CALIFORNIA CIVIL RIGHTS LAW GROUP
     332 San Anselmo Avenue
23  San Anselmo, CA 94960-2610
     Tel: (415) 453-4740 | Fax: (415) 785-7352
24
25  Attorneys for Relators

26

27

28

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ...................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ................................................. 1

III.   SUMMARY OF PROPOSED CLASS SETTLEMENT ............................................ 4

    A.    Injunctive Relief ............................................................................................ 4

    B.    Monetary Relief ............................................................................................. 5

    C.    Attorneys' Fees and Costs for Class Claims ................................................. 7

    D.    Federal False Claims Act Settlement ............................................................ 7

IV.   ARGUMENT .............................................................................................................. 8

    A.    The Proposed Settlement is Fair, Adequate, and Reasonable. ...................... 8

        1.    The Settlement Was Reached as a Result of Arms-Length Negotiations Between Experienced Counsel After Almost a Decade of Highly Contested Litigation.... 8

        2.    The Settlement Achieves Essentially Full Relief for the Class. ......................... 10

        3.    The Settlement's Proposed Service Payments, Attorneys' Fees, and *Cy Pres* Allocation Support Final Approval of the Settlement. ...................................... 11

            a.    Service Payments to Class Representatives ........................................... 11

            b.    Attorneys' Fees and Costs ..................................................................... 13

            c.    *Cy Pres* ................................................................................................ 13

        4.    The Class Notice and Settlement Administration Process are Reasonable and Adequate. ................................................................................ 14

    B.    The Interests of the Class are Consistent with the FCA Settlement Agreement. ........... 15

V.    CONCLUSION .......................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*,
    913 F. Supp. 2d 964 (E.D. Cal. 2012)................................................................................ 8

*Baron v. HryeCar, Inc.*,
    No. 2:21-CV-06918-FWS-JC, 2024 WL 3504234 (C.D. Cal. Jul. 19, 2024)................................... 16

*Borelli v. Black Diamond Aggregates, Inc.*,
    No. 2:14-CV-02093-KJM-KJN, 2021 WL 2025402 (E.D. Cal. May 5, 2021) ................................ 11

*Briseño v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021)........................................................................................ 8

*Cheng Jiangchen v. Rentech, Inc.*,
    No. CV 17-1490-GW(FFMX), 2019 WL 5173771  (C.D. Cal. Oct. 10, 2019)................................ 16

*Churchill Vill., LLC, v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ........................................................................................ 14

*Cooks v. TNG GP*,
    No. 2:16-CV-01160-KJM-AC, 2020 WL 5535397 (E.D. Cal. Sept. 15, 2020) ........................ 11, 14

*Dennis v. Kellog Co.*,
    697 F.3d 858 (9th Cir. 2012)......................................................................................... 14

*Emmons v. Quest Diagnostics Clinical Laby's, Inc.*,
    No. 1:13-CV-00474-DAD-BAM, 2017 WL 749018 (E.D. Cal. Feb. 27, 2017) ........................... 13

*Greer v. Dick's Sporting Good, Inc.*,
    No. 215-CV-01063-KJM-CKD, 2019 WL 4034478 (E.D. Cal. Aug. 26, 2019)............................. 9

*Hale v. Manna Pro Prods., LLC*,
    No. 2:18-CV-00209-KJM-DB, 2020 WL 3642490 (E.D. Cal. Jul. 6, 2020).......................... 8, 11, 12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 2008)........................................................................................ 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2021)......................................................................................... 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018)......................................................................................... 10

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................... 9

*Rodriguez v. Kraft Foods Grp., Inc.*,
    No. 1:14-CV-1137-LJO-EPG, 2016 WL 5844378 (E.D. Cal. 2016)........................................ 13

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)...................................................................................... 9, 14

*Six Mexican Workers v. Ariz. Citrus Growers*,
   904 F.3d 1301 (9th Cir. 1990)............................................................................................ 14

*Smothers v. NorthStar Alarm Servs., LLC*,
   No. 2:17-CV-00548-KJM-KJN, 2020 WL 1532058 (E.D. Cal. Mar. 31, 2020) ...................... 12

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)............................................................................................ 12

*Stemple v. RingCentral, Inc.*,
   No. 18-CV-04909-LB, 2019 WL 3842091 (N.D. Cal. Aug. 15, 2019) ................................... 9

*Stoddart v. Express Servs.*,
   No. 2:12-CV-01054-KJM-CKD, 2021 WL 5761083 (E.D. Cal. Dec. 3, 2021) ...................... 13

*Villegas v. J.P. Morgan Chase & Co.*,
   No. CV 09-00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ......................................... 9

*Wal-Mart v. Dukes*,
   564 U.S. 338 (2011) ......................................................................................................... 14

**Statutes**

28 U.S.C. § 1715(b)................................................................................................................... 3

**Federal Rules**

Fed. R. Civ. P. 23(c)................................................................................................................ 14

Fed. R. Civ. P. 23(e)........................................................................................................... 8, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Denika Terry, Roy Huskey III, and Tamera Livingston, on behalf of themselves and the certified classes, move for final approval of the proposed class action settlement agreement between Plaintiffs and all Defendants in this case.  The terms of the settlement are fully set forth in the settlement agreement, attached as **Exhibit A** to the Declaration of Lori Rifkin in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Rifkin Decl."), filed herewith ("Exh. A").[1]

The settlement provides injunctive relief that addresses Defendants' challenged practices, satisfying the claims of the certified Rule 23(b)(2) Class ("Injunctive Relief Class").  The settlement also fully reimburses all members of the certified Rule 23(b)(3) Class ("Reimbursement Class") for all monthly "additional service" charges they paid between May 2011 and November 2022 with interest on that amount at a rate of approximately nine percent (9%) through July 27, 2024.  The settlement also resolved Relators' claim under the False Claims Act ("FCA"), which the Court dismissed on October 25, 2024.  *See* ECF No. 562.

On October 25, 2024, the Court granted preliminary approval of the class settlement and directed notice to both classes, approving the notice procedures and schedule agreed to in the proposed settlement.  ECF No. 562.  Class notice was timely mailed on November 22, 2024, and the objection and opt out deadline is January 21, 2025.  Class members have already been utilizing the class notice website and contacting class counsel, the settlement administrator, and Claimant Advocacy Group (the government benefits consultant).  To date, the reaction of the class has been uniformly positive. Plaintiffs will provide updated information on the notice process to the Court prior to the final approval hearing.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are tenants who receive rental assistance through the federally subsidized Section 8

---

[1] Plaintiffs filed a partially executed copy of this agreement with their Motion for Preliminary Approval, and subsequently filed a fully executed copy after all Defendants had signed.  *See* Supplemental Declaration of Anne Bellows in Support of Motion for Preliminary Approval (ECF No. 553), Exh. A.  For the Court's convenience, Plaintiffs resubmit the fully executed agreement as Exhibit A to the Rifkin Declaration and cite to this document throughout the motion.

Housing Choice Voucher Program.  ECF No. 278 at 1:17–18.  They challenged Defendants' policies and practices as charging rent beyond what was approved by the Section 8 program in violation of federal and California laws.  *See id.* at 1:18–23.  Plaintiffs alleged that Defendants required Section 8 tenants to pay additional charges for insurance and amenities as a condition of renting or to avoid eviction, despite promising the U.S. Government not to charge more than the specific rent amounts approved by the Section 8 program.  *See id.* at 9:17–22.  Defendants disputed Plaintiffs' allegations and claims.

This action involves nearly a decade of litigation, which Plaintiffs laid out extensively in their Motion for Preliminary Approval of Class Action Settlement, ECF No. 544-1 at 8–12, and also review in their forthcoming Motion for Reasonable Attorney's Fees, Costs, and Expenses, to be filed on December 20, 2024.  As particularly relevant for this Court's consideration of whether it should find the class action settlement fair, adequate, and reasonable for purposes of final approval, the procedural history in this case involved multiple dispositive motions; a contested class certification motion and subsequent petition for interlocutory review pursuant to Rule 23(f); extensive and contested discovery, including 23 depositions, review of hundreds of thousands pages of documents, numerous motions to compel, and expert reports and discovery; two rounds of class notice and interviews with dozens of potential tenant witnesses; unsuccessful mediation in 2017 and judicially supervised settlement conference in March 2023; submission of pre-trial filings including joint pretrial statements, exhibit and witness lists, motions *in limine*, proposed jury instructions, and trial briefs; late-stage motions by Defendants for judgment as a matter of law, reconsideration of this Court's bifurcation order, and dismissal for lack of subject matter jurisdiction; a two-day mediation in June 2024 before a retired federal Magistrate Judge; and another month of contentious arms-length negotiations while the parties prepared for trial, including issuing subpoenas to all witnesses.  ECF No. 544-2 ¶ 36; ECF No. 544-7 ¶ 7.

On Saturday, July 27, 2024, just two days before trial was scheduled to begin, the parties filed a notice of settlement of the action along with a memorandum of understanding setting forth the principal settlement terms.  ECF No. 541.  The parties then negotiated a long-form settlement

agreement consistent with the principal settlement terms.  Rifkin Decl. ¶ 4.  Plaintiffs drafted two proposed class notices, for the Reimbursement and Injunctive Relief Classes.  *Id.* ¶ 5.  Pursuant to the settlement, Claimant Advocacy Group was retained to prepare a government benefits information sheet to be mailed to Reimbursement Class members and to provide optional individual consultations to Reimbursement Class members regarding the potential effects of a settlement payment on their eligibility for government benefits.  *Id.* ¶ 6; Exh. A at 13.[2]  The Reimbursement Class notice makes clear that these optional consultations are pre-paid as part of the settlement, and Reimbursement Class members do not need to pay anything for a consultation.  Exh. A at 13.

On August 30, 2024, Plaintiffs moved for preliminary approval of the settlement, including appointment of Verita as the settlement administrator and approval of the proposed class notice program.  ECF No. 544.

On September 9, 2024, pursuant to paragraph III.D.1 of the settlement agreement and in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b), Defendants provided a notice of the proposed settlement to the Attorney General of the United States and the attorneys general of the states and jurisdictions in which class members reside or may reside.  ECF No. 557; Exh. A at 11.

On September 25, 2024, Defendants filed a Notice of Implementation of Injunctive Relief Terms including copies of relevant documentation, pursuant to paragraph III.A of the settlement agreement, supplemented by a second Notice on October 24, 2024.  ECF Nos. 555, 561; Exh. A at 7-9.  Defendants also made the first payment of $5,500,000 on September 25, 2024, in accordance with the settlement.  Exh. A. at 27; Rifkin Decl. ¶ 10.

The Court preliminarily approved the settlement and granted Plaintiffs' unopposed motion to dismiss the False Claims Act claim, on October 25, 2024.  ECF No. 562.  The Court also appointed Verita as settlement administrator and authorized the notice program, including mailing notices to the Reimbursement and Injunctive Relief Class members.  *See id.* at 11.

Following the Court's preliminary approval order, the parties have met all relevant deadlines

---

[2] Exhibit A page numbers refer to the consecutive pagination at the bottom right-hand corner.

for implementing the terms of the settlement.  *See* ECF No. 562 at 11.  Defendants submitted an updated class list to Verita by November 7, 2024, in accordance with the Court's Order.  Declaration of Gio Santiago Re: Notice Procedures ("Santiago Decl.") ¶ 2.  Plaintiffs worked with Verita to finalize class notices for both the Injunctive Relief Class and the Reimbursement Class, as well as the settlement website.  Rifkin Decl. ¶ 11.  Verita mailed the approved notices on November 22, 2024.  Santiago Decl. ¶¶ 3–4.

The deadline for Reimbursement Class members to submit objections or opt out is January 21, 2025.  *See* ECF No. 562 at 11.  As of the date of this filing, neither Verita nor class counsel have received any objections and or requests to opt out.  Santiago Decl. ¶¶ 10–11; Rifkin Decl. ¶ 13.  Dozens of Class members have contacted Verita and Class Counsel to update their addresses and ask questions about the settlement process.  Rifkin Decl. ¶ 13; Santiago Decl. ¶ 7.  Class member responses have been uniformly positive, and many expressed their appreciation for the settlement.  Rifkin Decl. ¶ 13.  Nineteen Class members have also had individual benefits consultation with CAG.  Rifkin Decl. ¶ 12.

Injunctive Relief Class members may object to the terms of the settlement but cannot opt out of the settlement.  Exh. A at 16–18.  The deadline for Injunctive Class members to submit objections is also January 21, 2025.  To date, no Injunctive Relief Class members have objected to the terms of the settlement agreement.  Rifkin Decl. ¶ 13; Santiago Decl. ¶ 11.

Plaintiffs anticipate filing their motion for attorney's fees and costs by December 20, 2024, in accordance with the Court's order.  *See* ECF No. 562 at 11.

## III.   SUMMARY OF PROPOSED CLASS SETTLEMENT

The settlement achieves comprehensive injunctive relief for the Injunctive Relief Class and provides full reimbursement with substantial interest to the Reimbursement Class, which constitutes all of the class relief sought by Plaintiffs in the operative complaint.  *See* ECF No. 331 at 49–50.

### A.   Injunctive Relief

Pursuant to the terms of the settlement, on September 25, 2024, Wasatch Property Management and Defendants owning California properties managed by Wasatch Property Management submitted

their Notice of Implementation of Injunctive Relief Terms, supplemented by a second Notice on October 24, 2024. *See* ECF Nos. 555, 561; Exh. A at 7–9. Defendants attested that Injunctive Relief Class members are no longer required to pay additional service charges, and that Defendants have revised their documents to make clear that additional service charges are optional. ECF No. 555. Defendants also attested that they have issued communications to Section 8 tenants explaining that additional service charges are optional and cannot be the basis for eviction, and that they have revised rental policies to ensure that property management staff understand these changes regarding additional service charges. *See* ECF Nos. 555, 561. Defendants provided copies of the updated documents and attested that they will seek fresh consent from Injunctive Relief Class members to additional service charges at the time of their lease renewals. *See id.*

In consideration for this relief, the settlement provides that Injunctive Relief Class members will release Defendants from any claims for injunctive relief arising from the facts alleged in the complaints in this case through July 27, 2024. Exh. A at 11. The Court retains jurisdiction to enforce the settlement for a period of five years. *Id.* at 32.

**B.  Monetary Relief**

The settlement requires Defendants pay $5,000,000 to a Qualified Settlement Fund that will be used to fully reimburse all Reimbursement Class members for monthly additional services charges paid to Wasatch between May 2011 and November 2022. Exh. A at 10, 19. Reimbursement Class members will also receive interest on the additional services charges from the Qualified Settlement Fund, determined by a pro rata distribution based on the proportion of each Class member's interest at a 10% rate to the total interest amount owed to the class. *Id.* at 19–21. This results in interest payments to Class members at an interest rate of approximately nine percent (9%).[3] In order to most effectively administer the settlement, optimize the likelihood of Class members cashing checks, and ensure that each Reimbursement Class member receives substantial value for their release of claims, the settlement provides that each Reimbursement Class member will receive at least $100 (combined

---

[3] The Settlement Administrator will issue appropriate tax forms for the interest payments to Reimbursement Class members. Exh. A at 23-24.

reimbursement and interest).  ECF No. 544-2 ¶ 42.  The costs of settlement administration[4] and proposed service payments of $5,000 to each of the three class representatives will also be paid from the Qualified Settlement Fund.  Exh. A. at 10–11.

Reimbursement Class members are not required to submit claims to receive their settlement payments.  ECF No. 544-2 ¶ 43.  Because the actual amounts of additional service charges paid by individual Reimbursement Class members during the relevant period were established through Plaintiffs' successful motion for partial summary judgment regarding remedies, *see* ECF No. 352 at 5–6, there is no need for Class members to go through an additional verification process.  ECF No. 544-2 ¶ 43.  Reimbursement Class members who do not opt out will automatically receive a settlement payment.  *Id.*

In order to address questions about how settlement payments may affect Reimbursement Class members' ongoing eligibility for government benefits programs with income limits (such as the Section 8 Housing Choice Voucher Program), class counsel retained the Claimant Advocacy Group to create a customized government benefits information sheet and to offer individual consultations to interested Reimbursement Class members.  ECF No. 544-2 ¶ 47; Rifkin Decl. ¶ 7.  As part of the notice program approved by the Court, ECF No. 562 at 9, Verita mailed the government benefits information sheet with the Reimbursement Class notice on November 22, 2024; it is also available on the settlement website.  Rifkin Decl. ¶ 7; Santiago Decl. ¶¶ 3–4, 6.  The Reimbursement Class notice and settlement website provide contact information for the optional individual benefits consultations and inform Reimbursement Class members that this service is free to them.  Santiago Decl. ¶¶ 3, 6.  Reimbursement Class members may also request a lower settlement payment amount or to decline payment to avoid negative impacts on their eligibility for government benefits.  Exh. A at 14; Santiago Decl. ¶¶ 8–9.

There will be no reversion of monies from the Qualified Settlement Fund to Defendants.  Checks will be valid for at least 180 days, and any uncashed checks will be distributed through *cy pres*

---

[4] The total cost estimate for settlement administration is $130,000, which includes the cost of offering Class members the individual government benefits consultations described herein.  ECF No. 544-2 ¶ 45; Exh. A at 12-13.

to designated legal aid organizations serving Section 8 tenants in each of the California regions in which Wasatch manages properties. Exh. A at 22–23.

The release of claims by Reimbursement Class members is limited to claims for monetary damages arising from the class claims alleged (state law claims for breach of contract and violation of California's Unfair Competition Law and Consumer Legal Remedies Act) and based on the facts alleged in the complaints, through July 27, 2024. Exh. A at 11. Reimbursement Class members may object to or opt out of the settlement with respect to the monetary relief and corollary release of claims. *Id.* at 16–18. To date, no Reimbursement Class members have objected, and no Reimbursement Class members have opted out. Santiago Decl. ¶¶ 10–11.

**C.    Attorneys' Fees and Costs for Class Claims**

The settlement permits class counsel to seek up to $4,500,000 in reasonable attorneys' fees and costs for litigation of the class claims through noticed motion, pursuant to Federal Rule of Civil Procedure 23(h) and applicable California fee-shifting statutes. Exh. A at 10. Defendants agree to pay the amounts of fees and costs approved by the Court. *Id.* There will be no reversion of any funds from the settlement to Defendants. *Id.*

**D.    Federal False Claims Act Settlement**

This litigation included an FCA claim brought by Plaintiffs-Relators Ms. Terry, Mr. Huskey, and Ms. Livingston on behalf of the United States. ECF No. 331. The FCA claim has also been resolved through settlement, with Defendants agreeing to pay $3,500,000 in damages to the U.S. Government, inclusive of the Relators' share, and $3,500,000 to Relators' counsel for statutory attorneys' fees and costs related to the FCA claim. *See* Exh. A at 26–27. The United States Attorneys' Office for the Eastern District of California filed a consent on behalf of the United States to the Relators' dismissal of the FCA claims (ECF No. 552), and this Court granted the Relator's unopposed motion to dismiss the FCA claim on October 25, 2024.

Although the Court does not apply the Rule 23(e) analysis to settlement of the FCA claim, the Rule 23(e)(2) determination of whether the class action settlement is fair, reasonable, and adequate includes consideration of "any agreement made in connection with the proposal," which here includes

1  the FCA settlement.  Fed. R. Civ. Proc. 23(e)(2)(C)(iv) (referencing Rule 23(e)(3)).

2  **IV.**   <u>**ARGUMENT**</u>

3      **A.**   **The Proposed Settlement is Fair, Adequate, and Reasonable.**

4          The Ninth Circuit has affirmed the "strong judicial policy that favors settlements, particularly

5  where complex class action litigation is concerned."  *Briseño v. Henderson*, 998 F.3d 1014, 1031 (9th

6  Cir. 2021) (internal quotations and citations omitted).  The Court previously certified classes in this

7  matter under Rule 23(b)(2) and (3), ECF No. 92, "so need not find anew that the settlement class[es]

8  meet[] the certification requirements."  *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 974

9  (E.D. Cal. 2012).

10         Court approval of a proposed settlement is appropriate if the settlement is "fair, adequate, and

11 reasonable" under Rule 23(e)(2).  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946

12 (9th Cir. 2021).  Rule 23(e)(2) requires the Court to consider whether representation of the class was

13 adequate; whether the proposal was negotiated at arm's length; the adequacy of the relief provided for

14 the class; and the treatment of Class members relative to each other.

15         In addition, under Ninth Circuit caselaw, the Court reviews the strength of Plaintiffs' case; risk,

16 expense, complexity, and likely duration of further litigation; risk of maintaining class action status

17 throughout trial; amount offered in settlement; extent of discovery completed and stage of the

18 proceedings; experience and views of counsel; presence of a governmental participant; and reaction of

19 Class members to the proposed settlement.  *Id*.  *See also Briseño*, 998 F.3d at 1023–25 (holding that

20 courts must apply the *Bluetooth* factors in evaluating post-class certification settlements under Rule

21 23(e)(2)); *Hale v. Manna Pro Prods., LLC*, No. 2:18-CV-00209-KJM-DB, 2020 WL 3642490, at *3

22 (E.D. Cal. Jul. 6, 2020) (observing that Ninth Circuit factors "substantively track those provided in the

23 2018 amendments to Rule 23(e)(2)").

24      **1.**   **The Settlement Was Reached as a Result of Arms-Length Negotiations Between
             Experienced Counsel After Almost a Decade of Highly Contested Litigation.**

25
           The Court may begin with a presumption of fairness where, as here, the settlement results from

26 an arms-length negotiation conducted by competent counsel.  *See Stemple v. RingCentral, Inc.*, No.

27 18-CV-04909-LB, 2019 WL 3842091, at *5 (N.D. Cal. Aug. 15, 2019) ("Where a settlement is the

28

product of arms-length negotiations conducted by capable and experienced counsel, the court begins

its analysis with a presumption that the settlement is fair and reasonable."); *Nat'l Rural*

*Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement

following sufficient discovery and genuine arms-length negotiation is presumed fair.").

This case's procedural history demonstrates the highly adversarial nature of the litigation, lack

of collusion in the settlement process, and the adequacy of class counsel's representation.  *See* ECF

No. 562 at 6 ("As summarized above, the court has presided over this case for several years as counsel

litigated capably and vigorously on behalf of the plaintiffs and class.").  *See also, e.g.*, *Rodriguez v. W.*

*Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an

arms-length, non-collusive, negotiated resolution."); *Greer v. Dick's Sporting Good, Inc.*, No. 215-

CV-01063-KJM-CKD, 2019 WL 4034478, at *5 (E.D. Cal. Aug. 26, 2019) (finding adequate

representation for purposes of settlement where "class counsel undertook significant discovery" and

"successfully moved for class certification"); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261,

2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (finding use of experienced private mediator

supports conclusion that settlement process was not collusive).

As the Court found in its preliminary approval order, "[m]uch less taxing pretrial litigation and

discovery has sufficed in other cases to show a settlement is likely to meet the requirements of Rule

23(e)(2)."  ECF No. 562 at 6.

Although Plaintiffs won partial summary judgment as to Defendant Wasatch Property

Management's liability for violation of California laws and as to the calculation of damages, Plaintiffs

still faced considerable expense, delay, risk, and complexity in the continuing litigation of the class

claims.  ECF No. 544-2 ¶ 25.  Defendants filed a motion to dismiss the class claims based on a

purported lack of subject matter jurisdiction by this Court that was set for hearing on July 29, 2024,

prior to the start of the Phase 1 trial.[5]  The Phase 1 trial was to include a bench trial on Wasatch

Property Management's liability under the Consumer Legal Remedies Act and class injunctive relief,

entailing both risk on those issues and the time and expense associated with staffing trial and

---

[5] Plaintiffs opposed this motion, ECF No. 510, and Defendants have now withdrawn it.  ECF No. 545.

proffering witnesses, including expert witnesses.  *See* ECF No. 135 at 7.  Then, regardless of the outcome of the bench trial, Plaintiffs faced Phase 2 of the case to determine whether the remaining defendants could be held liable for Wasatch Property Management's legal violations.  ECF No. 544-2 ¶ 60.  Phase 2 would include extensive discovery, motion practice, and potentially another jury trial to determine liability based on alter ego theories, the single enterprise doctrine, agency principles, and Defendants' receipt of a benefit from the unlawful charges.  *See* ECF No. 135 at 7–8.  Delving into sensitive information about the finances and corporate structure of a network of privately held companies would be hard fought and likely last for years.  ECF No. 544-2 ¶ 60.  Defendants were also likely to continue to challenge Plaintiffs' ability to litigate their claims, including trying to decertify the class and dismiss claims.  *Id.*

Finally, Defendants made abundantly clear in their filings and court appearances leading up to the Phase 1 trial that they disputed the Court's legal rulings on Plaintiffs' class claims and intended to appeal those rulings as soon as procedurally possible.  *See* ECF No. 544-2 ¶ 60.  Balancing the near-total recovery through settlement of the class claims against these additional years of litigation before Class members would receive actual compensation, as well as the risk of loss on appeal, Plaintiffs and their counsel, who have extensive experience in complex class action litigation, agreed to accept and propose to the Court this excellent settlement of the Class claims.  *Id.* ¶ 6; ECF No. 544-7 ¶ 8; ECF No. 544-6 ¶ 4.

### 2.      The Settlement Achieves Essentially Full Relief for the Class.

The settlement is fair, reasonable, and adequate because it provides nearly complete relief to the certified classes.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 610 (9th Cir. 2018) ("Terming the settlement a 'compromise' of claims, although true of most class action settlements, is largely inapt here. . . . [T]he class members generally 'are made whole' by the settlement.'").

The injunctive relief provisions ensure that Section 8 tenants at Wasatch properties in California cannot be forced to pay additional service charges as a condition of renting and cannot be evicted or threatened with eviction for failing to pay these charges.  This injunctive relief is worth

millions of dollars to the Section 8 tenants living at Wasatch properties now and in the future, as reflected by the amount that the Reimbursement Class paid in additional service charges over the Reimbursement Class period.  *See* ECF No. 352 at 6 (finding the total measure of damages from excess rent paid over the class period amounts to $2,803,080).  The settlement's injunctive relief plan is enforceable in this Court for five years and enforceable through a new lawsuit if Defendants return to their illegal policies at any time after that.  This relief is exactly what Plaintiffs sought in bringing this action almost ten years ago.

The monetary relief provisions provide that all Reimbursement Class members will receive back 100 percent of the additional service charges found by this Court to violate the law, and they will also receive interest accrued on the reimbursement payments at a rate of approximately 9 percent *after* accounting for settlement administration and service payments, essentially matching the relief they could get through a judgment.  *See* ECF No. 352 at 5–6 (holding Plaintiffs are entitled to complete recovery of the excess rent and prejudgment interest at a rate of 10 percent).  Each Reimbursement Class member is treated equally under the settlement.

    **3.**    **The Settlement's Proposed Service Payments, Attorneys' Fees, and *Cy Pres* Allocation Support Final Approval of the Settlement.**

In addition to achieving almost complete relief for the Classes after more than nine years of contested litigation and contentious negotiation, the settlement's provisions for proposed service payments of $5,000 to each Class Representative, application for statutory attorneys' fees and costs not to exceed $4,500,000, and *cy pres* allocation of any remainder also support the Court's final approval of the settlement.  *See, e.g., Borelli v. Black Diamond Aggregates, Inc.*, No. 2:14-CV-02093-KJM-KJN, 2021 WL 2025402, at *6–8 (E.D. Cal. May 5, 2021) (examining these factors for potential "red flags" at preliminary approval stage); *Cooks v. TNG GP*, No. 2:16-CV-01160-KJM-AC, 2020 WL 5535397, at *9 (E.D. Cal. Sept. 15, 2020) (same); *Hale*, 2020 WL 3642490, at *11–12 (same).

    **a.**    **Service Payments to Class Representatives**

The Reimbursement Class has been informed that the proposed settlement would provide service payments of $5,000 to each of the three Class Representatives in recognition of the significant time and effort they contributed on behalf of the certified classes over the long course of this litigation,

which is detailed in the declarations of the Class Representatives.  Exh. A at 10.  *See* ECF Nos. 544-3,
544-4, 544-5.  District courts, including this Court, have approved such awards when they are justified.
*See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that class representatives are
eligible for reasonable service payments); *Hale*, 2020 WL 3642490, at *12 ("Generally, incentive
awards in the $5,000 range are presumptively reasonable.").  The Court here found that the proposed
service payments of $5,000 are "likely appropriate to compensate the named plaintiffs for their
participation in lengthy litigation and the reputational risks associated with attaching one's name to a
lawsuit and related consequences as persons who may continue to seek housing in the rental market."
ECF No. 562 at 7.

   Each Class Representative has put significant time into the investigation, prosecution, and
settlement of this case over almost a decade, and is providing a full release of their claims in exchange
for the ability to apply for service payments.  *See* ECF Nos. 544-2 ¶¶ 48–50; 544-3 ¶¶ 3–18; 544-4
¶¶ 3–22; 544-5 ¶¶ 3–20; Exh. A at 11.  Further, as low-income and Section 8 tenants living in regions
impacted by the housing crisis and lack of affordable housing, the Class Representatives took
significant risks in publicly filing suit against their landlords as named plaintiffs.  *See* ECF No. 544-2
¶ 50; ECF No. 544-6 ¶ 28.

   The requested service payment is also reasonable in relation to the significant recovery Class
Representatives achieved on behalf of the class: the $15,000 requested in service payments represents
only 0.3% of the $5 million class settlement fund, and Class Representatives also obtained
comprehensive injunctive relief for the class.  *See Hale*, 2020 WL 3642490, at *12 ("[A]n incentive
award must be modest compared to the total settlement fund."); *Smothers v. NorthStar Alarm Servs.*,
*LLC*, No. 2:17-CV-00548-KJM-KJN, 2020 WL 1532058, at *11 (E.D. Cal. Mar. 31, 2020) (approving
a $10,000 service payment per plaintiff for a total of $20,000 where the total settlement amount was
$1.8 million); *Rodriguez v. Kraft Foods Grp., Inc.*, No. 1:14-CV-1137-LJO-EPG, 2016 WL 5844378
at *16 (E.D. Cal. 2016) (approving service payment of $10,000 to plaintiff where the award was less
than 0.5% of gross settlement).

   A service payment of $5,000 per Class Representative is well within the range of service

payments approved in similarly complex and protracted cases.  *See, e.g.*, *Stoddart v. Express Servs.*, No. 2:12-CV-01054-KJM-CKD, 2021 WL 5761083, at *3 (E.D. Cal. Dec. 3, 2021) (approving a $10,000 service payment where the named plaintiff provided support to the case for "nearly ten years"); *Emmons v. Quest Diagnostics Clinical Laby's, Inc.*, No. 1:13-CV-00474-DAD-BAM, 2017 WL 749018, at *9 (E.D. Cal. Feb. 27, 2017) (awarding enhancement payment of $8,000 to each plaintiff when each conducted 30 to 40 hours of work on the case).

### b.      Attorneys' Fees and Costs

Plaintiffs will file a separate motion for attorneys' fees and costs on December 20, 2024, which is thirty days prior to the deadline for objecting or opting out, so that the members of the certified classes will have an opportunity to inspect class counsel's fee application in deciding whether to submit objections or opt-out requests.  Rifkin Decl. ¶ 14.  Class counsel will seek fees, costs, and expenses costs not to exceed $4,500,000 in compensation for the thousands of hours of work and significant out-of-pocket costs they devoted to litigating this important and high-risk case over the last decade.  As the Court noted in its preliminary approval order, the fact that any unawarded amount will not revert to Defendants reinforces the lack of collusion between Plaintiffs and Defendants.  *See* ECF No. 562 at 8; Exh. A at 10.  Additional facts and argument in support of class counsel's request for fees and costs will be provided in Plaintiffs' forthcoming motion.

### c.      *Cy Pres*

The settlement provides for the *cy pres* donation of any uncashed checks or unawarded remainder from the $9,500,000 total class settlement to legal aid organizations directly serving Section 8 tenants in each of the California regions in which Wasatch manages properties.  ECF No. 544-6 ¶ 31; Exh. A at 23 (designating Bay Area Legal Aid, Central California Legal Services, Inland County Legal Services, Legal Services of Northern California, Legal Aid Society of San Diego, Legal Aid of Sonoma County).  This squarely accords with the requirement that "a *cy pres* award must qualify as 'the next best distribution' to giving the funds directly to class members."  *Dennis v. Kellog Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.3d 1301, 1308 (9th Cir. 1990)).  This distribution protects against any reversion to Defendants and ensures that

funds will continue to benefit low-income and Section 8 California tenants in need of legal advice and assistance with housing issues who are similarly situated to the plaintiff classes.  *See Cooks*, 2020 WL 5535397, at *9 (finding *cy pres* distribution of unclaimed funds to nonprofit satisfied guiding principles where it benefited "California workers in need of legal advice relating to employment disputes, precisely the class of plaintiffs and type of claims in the instant suit").

### 4.    The Class Notice and Settlement Administration Process are Reasonable and Adequate.

 "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 2008), *overruled on other grounds by Wal-Mart v. Dukes*, 564 U.S. 338 (2011).  Before settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(A); *see Rodriguez*, 563 F.3d at 962.  For a Rule 23(b)(3) class, notice must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., LLC, v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations omitted).

The Court appointed Verita to be the Settlement Administrator and approved the proposed class notices to the Reimbursement and Injunctive Relief Classes.  ECF No. 562 at 9, 11.  Before mailing the notices, Verita reviewed all Class member addresses for currentness using the National Change of Address Database in accordance with the settlement.  Santiago Decl. ¶ 2; Exh. A at 15.  Verita mailed out the two approved notices on November 22, 2024.  Santiago Decl. ¶¶ 3–4.  In the event of returned or deliverable notices, Verita will make reasonable efforts to locate Class members and re-send the notices, including the use of skip-tracing services offered by publicly available databases.  *Id.* ¶ 5; Exh. A at 13, 45–57 (class notices).

To avoid confusion, tenants who are members of both the Reimbursement Class and the Injunctive Relief Class were mailed the Reimbursement Class notice, which provides information about both injunctive relief and reimbursements.  Tenants who are members of only the Injunctive

Relief Class were mailed the Injunctive Relief Class Notice.  The Injunctive Relief Class notice focuses on information about injunctive relief, though it does include information about monetary relief so that Class members will be fully informed when deciding if they wish to object.  Santiago Decl. ¶ 4, Exhs. A, B.

Verita has established a website (www.wasatchsettlement.com) with applicable dates and deadlines; links to the notices, the settlement, and other case documents; and contact information for the Settlement Administrator and class counsel pursuant to the Settlement Agreement.  Santiago Decl. ¶ 6; Exh. A at 15–16.  Verita has also set up a toll-free telephone number and email address, through which Class members may obtain information about the settlement; submit inquiries, challenges to individual estimated payment amounts, opt-out requests, and objections; and request additional mailed copies of the notice.  Santiago Decl. ¶ 7; Exh. A at 16.  Class member engagement with these resources has been high.  To date, the website has been viewed 342 times, Verita has received 49 contacts from Class members, including 8 requests for electronic payment, and no requests to opt out.  Santiago Decl. ¶¶ 6–9.  There have been no objections to the settlement.  *Id.* ¶ 11.

As described above, the notice program also included a government benefits fact sheet distributed with the Reimbursement Class notice and the opportunity for Reimbursement Class members to receive pre-paid individualized consultations regarding potential effects of settlement payments on their eligibility for government benefits.  ECF No. 544-2 ¶ 47; Rifkin Decl. ¶ 7. Engagement with CAG has also been high.  CAG has provided individual benefits consultations to nineteen Class members as of the date of this filing.  Rifkin Decl. ¶ 12.

**B.     The Interests of the Class are Consistent with the FCA Settlement Agreement.**

Under Rule 23(e)(2)(C)(iv), the Court takes the FCA settlement into account when determining whether the class settlement is fair, reasonable, and adequate.  *See Baron v. HryeCar, Inc.*, No. 2:21-CV-06918-FWS-JC, 2024 WL 3504234, at *10 (C.D. Cal. Jul. 19, 2024).  The agreement to settle the FCA claim as part of the overall resolution of this lawsuit does not weigh against approval of the class action settlement.  *See id.* ("[T]he court finds that the parties' termination agreement does not weigh against approval of the Proposed Settlement Agreement."); *Cheng Jiangchen v. Rentech, Inc.*, No. CV

17-1490-GW(FFMX), 2019 WL 5173771, at * 7 (C.D. Cal. Oct. 10, 2019) (finding additional confidential agreement "does not weigh against preliminary approval").  Plaintiffs and class counsel vigorously litigated the class claims on behalf of the certified classes for almost a decade, including conducting extensive discovery, obtaining class certification, and successfully moving for summary judgment as to Defendant Wasatch Property Management's violations of California law and the damages to which the Reimbursement Class was entitled based on those claims.  ECF No. 544-2 ¶ 58.  Plaintiffs negotiated a settlement that included full injunctive relief and recovery of all additional services charges paid by the Reimbursement Class, along with almost all of the interest owed on those damages.  *Id.*; ECF No. 544-7 ¶ 8; ECF No. 544-6 ¶ 4.  The validity of the settlement of the class claims does not depend on the validity of the settlement of the FCA claim, and vice versa.  ECF No. 544-6 ¶ 4.

## V. **CONCLUSION**

For the reasons set forth above, the proposed settlement Agreement is fair, adequate, and reasonable.  Accordingly, Plaintiffs request that the Court enter the Proposed Order filed herewith granting final approval of the settlement.

Dated:  December 19, 2024

Respectfully submitted,

Meredith Dixon

_____
Meredith Dixon
Attorneys for Plaintiffs and Relators
and the Certified Classes