Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne P. Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie E. Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800 | Fax: (510) 835-1417

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Tel: (510) 437-1863 | Fax: (510) 437-9164

Lindsay Nako (SBN 239090)
lnako@impactfund.org
Lori Rifkin (SBN 244081)
lrifkin@impactfund.org
Fawn Rajbhandari-Korr (SBN 315888)
fkorr@impactfund.org
Meredith Dixon (SBN 346864)
mdixon@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473 | Fax: (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes
*[Additional Counsel listed on following page]*

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

UNITED STATES OF AMERICA, *ex rel.*
DENIKA TERRY, ROY HUSKEY III, and
TAMERA LIVINGSTON, and each of them for
themselves individually, and for all other persons
similarly situated and on behalf of the UNITED
STATES OF AMERICA

        Plaintiffs/Relators,

vs.

WASATCH ADVANTAGE GROUP, LLC,
WASATCH PROPERTY MANAGEMENT, INC.,
WASATCH POOL HOLDINGS, LLC,
CHESAPEAKE APARTMENT HOLDINGS, LLC,
LOGAN PARK APARTMENTS, LLC, LOGAN
PARK APARTMENTS, LP, ASPEN PARK

Case No.: 2:15-CV-00799-KJM-SCR

CLASS ACTION

**DECLARATION OF LORI RIFKIN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT**

Date:     January 23, 2025
Time:    10:00 a.m.
Dept:     Courtroom 3, 15th Floor
Before:  Hon. Chief Judge Kimberly J. Mueller

1 | HOLDINGS, LLC, BELLWOOD JERRON
2 | HOLDINGS, LLC, BELLWOOD JERRON
   | APARTMENTS, LP, BENT TREE
3 | APARTMENTS, LLC, CALIFORNIA PLACE
   | APARTMENTS, LLC, CAMELOT LAKES
4 | HOLDINGS, LLC, CANYON CLUB HOLDINGS,
   | LLC, COURTYARD AT CENTRAL PARK
5 | APARTMENTS, LLC, CREEKSIDE HOLDINGS,
   | LTD, HAYWARD SENIOR APARTMENTS, LP,
6 | HERITAGE PARK APARTMENTS, LP, OAK
   | VALLEY APARTMENTS, LLC, OAK VALLEY
7 | HOLDINGS, LP, PEPPERTREE APARTMENT
   | HOLDINGS, LP, PIEDMONT APARTMENTS,
8 | LP, POINT NATOMAS APARTMENTS, LLC,
   | POINT NATOMAS APARTMENTS, LP, RIVER
9 | OAKS HOLDINGS, LLC, SHADOW WAY
   | APARTMENTS, LP, SPRING VILLA
10 | APARTMENTS, LP, SUN VALLEY HOLDINGS,
    | LTD, VILLAGE GROVE APARTMENTS, LP,
11 | WASATCH QUAIL RUN GP, LLC, WASATCH
    | PREMIER PROPERTIES, LLC, WASATCH
12 | POOL HOLDINGS III, LLC,
    | and DOES 1-4,

13 |        Defendants.

15 | Andrew Wolff (SBN 195092)
    | andrew@awolfflaw.com
16 | LAW OFFICES OF ANDREW WOLFF, PC
    | 1615 Broadway, 4th Floor
17 | Oakland, CA 94612
    | Tel: (510) 834-3300 | Fax: (510) 834-3377
18 |
    | Attorneys for Plaintiffs and Relators and the Certified Classes
19 |

20 | Lawrence Anthony Organ (SBN 175503)
    | larry@civilrightsca.com
21 | Marqui Hood (SBN 214718)
    | marqui@civilrightsca.com
22 | CALIFORNIA CIVIL RIGHTS LAW GROUP
    | 332 San Anselmo Avenue
23 | San Anselmo, CA 94960-2610
    | Tel: (415) 453-4740 | Fax: (415) 785-7352
24 |
25 | Attorneys for Relators

## DECLARATION OF LORI RIFKIN

I, Lori Rifkin, declare as follows:

1.  I am a member of good standing of the Bar of the State of California, and I am the Director of Litigation at the Impact Fund in Berkeley, California.  Impact Fund has been appointed class counsel in this action along with the law firm Goldstein, Borgen, Dardarian & Ho, the Law Offices of Andrew Wolff, PC, and Centro Legal de la Raza.  I submit this declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement.  This declaration is made on personal knowledge and summarizes information from the docket and file in this case, with which I am familiar.

2.  I am attaching a true and correct copy of the settlement agreement as **Exhibit A** hereto.

3.  I, and my cocounsel, recommend final approval of the proposed settlement agreement of the class claims, which we consider to be an outstanding result for both certified classes.  The settlement has achieved injunctive relief for the class that will ensure cessation of the practices complained of in the operative Complaint, including ensuring that Additional Services Charges are optional for Section 8 tenants at Wasatch properties in California, and cannot be used as a basis for evicting or threatening to evict these tenants.  The injunctive relief provisions encompass every major component of injunctive relief that we would have requested at the Phase 1 bench trial, securing critical protections for Section 8 tenants.  The settlement also fully reimburses all members of the Reimbursement Class for the Additional Services Charges they paid from May 1, 2011 to November 30, 2022, as well as providing payment of interest on that amount at an approximately 9% rate through July 27, 2024 (the date the Memorandum of Understanding containing the principal settlement terms was executed).

4.  After the parties filed their notice of settlement including the memorandum of understanding on July 27, 2024 (ECF No. 541), Plaintiffs and Defendants continued to meet to negotiate a long form settlement agreement consistent with the principal

1

DECLARATION OF LORI RIFKIN IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:15-CV-00799 KJM-SCR

1    settlement terms.

2    5.    While the parties were negotiating a long form settlement agreement, Plaintiffs drafted

3          two class notices: one to be distributed to the Reimbursement Class, and one to be

4          distributed to the Injunctive Relief Class.

5    6.    Pursuant to the settlement, class counsel retained an independent benefits consulting

6          firm, Claimant Advocacy Group ("CAG"), to provide optional, pre-paid individual

7          consultations to Reimbursement Class members regarding how a settlement payment

8          could affect government benefits eligibility.

9    7.    Class counsel also retained CAG to draft a customized government benefits information

10         sheet with general information about public benefits eligibility and receiving settlement

11         payments.  This information sheet was distributed with the Reimbursement Class notice

12         and remains available on the settlement website.

13   8.    Plaintiffs and most Defendants executed the settlement agreement on August 30, 2024.

14         At this time, a number of Defendants which had been sold during the course of the

15         litigation did not execute the agreement.  Counsel for these Defendants assured

16         Plaintiffs the remaining signatures would be executed shortly thereafter.

17   9.    The parties received the final signatures from the remaining defendants and filed the

18         fully executed agreement on September 16, 2024.

19   10.   Defendants made the first payment of $5,500,000 to class counsel's client trust fund

20         account on September 25, 2024.

21   11.   Following the Court's Order granting preliminary approval of the settlement on October

22         25, 2024, class counsel worked with Verita to finalize class notices for both the

23         Injunctive Relief Class and the Reimbursement Class and finalized the settlement

24         website.

25   12.   CAG has provided weekly reports on class member outreach, including information

26         about how many consultations they have had and the outcome of those consultations. 19

27         Reimbursement Class members have utilized CAG's public benefits counseling as of

28

the date of this declaration.

13. As of the date of this declaration, 6 class members have reached out to class counsel regarding the settlement.  No class members have requested to opt out, and no class members have objected to the settlement. Responses from class members have been uniformly positive, and many have expressed their appreciation for the settlement.

14. Plaintiffs will file a separate motion for attorneys' fees and costs on December 20, 2024, which is thirty days prior to the deadline for objecting or opting out, so that the members of the certified classes will have an opportunity to inspect class counsel's fee application in deciding whether to submit objections or opt-out requests.

Dated:  December 19, 2024

Respectfully submitted,

_____
Lori Rifkin
IMPACT FUND
Attorneys for Plaintiffs and Relators
and the Certified Classes

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne P. Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie E. Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800 | Fax: (510) 835-1417

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Tel: (510) 437-1863 | Fax: (510) 437-9164

Lindsay Nako (SBN 239090)
lnako@impactfund.org
Lori Rifkin (SBN 244081)
lrifkin@impactfund.org
Fawn Rajbhandari-Korr (SBN 315888)
fkorr@impactfund.org
Meredith Dixon (SBN 346864)
mdixon@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473 | Fax: (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes
*[Additional Counsel for Relators listed on following page]*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>       Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON | Case No.: 2:15-CV-00799-KJM-SCR<br><br>CLASS ACTION<br><br>**SETTLEMENT AGREEMENT** |

Suppl. Bellows Decl. Ex. A, page 1

HOLDINGS, LLC, BELLWOOD JERRON
APARTMENTS, LP, BENT TREE
APARTMENTS, LLC, CALIFORNIA PLACE
APARTMENTS, LLC, CAMELOT LAKES
HOLDINGS, LLC, CANYON CLUB HOLDINGS,
LLC, COURTYARD AT CENTRAL PARK
APARTMENTS, LLC, CREEKSIDE HOLDINGS,
LTD, HAYWARD SENIOR APARTMENTS, LP,
HERITAGE PARK APARTMENTS, LP, OAK
VALLEY APARTMENTS, LLC, OAK VALLEY
HOLDINGS, LP, PEPPERTREE APARTMENT
HOLDINGS, LP, PIEDMONT APARTMENTS,
LP, POINT NATOMAS APARTMENTS, LLC,
POINT NATOMAS APARTMENTS, LP, RIVER
OAKS HOLDINGS, LLC, SHADOW WAY
APARTMENTS, LP, SPRING VILLA
APARTMENTS, LP, SUN VALLEY HOLDINGS,
LTD, VILLAGE GROVE APARTMENTS, LP,
WASATCH QUAIL RUN GP, LLC, WASATCH
PREMIER PROPERTIES, LLC, WASATCH
POOL HOLDINGS III, LLC,
and DOES 1-4,

     Defendants.

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Tel: (510) 834-3300 | Fax: (510) 834-3377

Attorneys for Plaintiffs and Relators and the Certified Classes


Lawrence Anthony Organ (SBN 175503)
larry@civilrightsca.com
Marqui Hood (SBN 214718)
marqui@civilrightsca.com
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, CA 94960-2610
Tel: (415) 453-4740 | Fax: (415) 785-7352

Attorneys for Relators

Suppl. Bellows Decl. Ex. A, page 2

# SETTLEMENT AGREEMENT

## I.  RECITALS

1.    This Settlement Agreement ("Agreement") is made and entered into between Named Plaintiffs and Relators Denika Terry, Roy Huskey III, and Tamera Livingston (collectively "Plaintiffs" or "Relators") on behalf of themselves as Relators and the two California classes (Reimbursement Class and Injunctive Relief Class) defined below, and Defendants Wasatch Advantage Group, LLC, Wasatch Property Management, Inc., Wasatch Pool Holdings, LLC, Chesapeake Apartments, LLC,[1] Logan Park Apartments, LLC, Logan Park Apartments, LP, Aspen Park Holdings, LLC, Bellwood Jerron Holdings, LLC, Bellwood Jerron Apartments, LP, Bent Tree Apartments, LLC, California Place Apartments, LLC, Camelot Lakes Holdings, LLC, Canyon Club Holdings, LLC, Courtyard at Central Park Apartments, LLC, Creekside Holdings, Ltd, Hayward Senior Apartments, LP, Heritage Park Apartments, LP, Oak Valley Apartments, LLC, Oak Valley Apartments, LP, Peppertree Apartment Holdings, LP, Piedmont Apartments, LP, Point Natomas Apartments, LLC, Point Natomas Apartments, LP, River Oaks Holdings, LLC, Shadow Way Apartments, LP, Spring Villa Apartments, LP, Sun Valley Holdings, Ltd, Village Grove Apartments, LP, Wasatch Quail Run GP, LLC, Wasatch Premier Properties, LLC, and Wasatch Pool Holdings III, LLC (collectively "Defendants"), as well as the entities listed in Exhibit 3.

2.    On April 14, 2015, Named Plaintiffs and Relators Denika Terry and Roy Huskey III filed under seal an action against some of the Defendants, in the United States District Court for the Eastern District of California, Sacramento Division ("Court"), titled *United States ex rel. Terry, et al. v. Wasatch Advantage Group, et al.*, Case No. 2:15-CV-00799-KJM-DB (E.D. Cal.) (the "Litigation" or "Action").  *See* ECF No. 1.  The Action alleged California state-law class claims for breach of contract and violation of the state's Unfair Competition Law and Consumer Legal Remedies Act ("Class Claims"), as well as a claim brought by Relators on behalf of the United States Government under the False Claims Act ("FCA Claim").  On June 9, 2016, the United States notified the Court that it declined to intervene in the FCA case.  *See* ECF No. 18 at 2.

---

[1] The relevant legal entity that owns/manages Chesapeake Commons Apartments is correctly identified as Chesapeake Apartments, LLC, and not Chesapeake Apartments Holdings, LLC.

Suppl. Bellows Decl. Ex. A, page 3

3. On July 12, 2018, the Court granted Plaintiffs' motion for class certification of their state law claims, certifying a class for damages or restitution pursuant to Federal Rule of Civil Procedure ("Rule") 23(b)(3) ("Reimbursement Class"). The Court also conditionally certified a Rule 23(b)(2) class for declaratory and injunctive relief ("Injunctive Relief Class"), subject to Plaintiffs' substituting a new class representative with standing for declaratory and injunctive relief. The Court defined the Injunctive Relief Class as:

> All persons who: (1) are or will become tenants at any of Defendants' California properties; (2) participate or will participate in the "Section 8" Housing Choice Voucher Program in connection with their tenancies at the California properties; and (3) pay or will pay additional charges set forth in Additional Services Agreements in excess of their individual portions of the contract rent set forth in the HAP Contracts.

*See* ECF No. 92.

4. On September 20, 2018, Plaintiffs filed their Fourth Amended Complaint adding Plaintiff Tamera Livingston to the case. *See* ECF No. 98.

5. On November 23, 2022, the Court granted Plaintiffs' motion for partial summary judgment as to Wasatch Property Management, Inc.'s liability for the breach of contract and UCL class claims. *See* ECF No. 278.

6. On November 27, 2023, the Court set November 30, 2022, as the end date for class damages and membership and defined the Reimbursement Class as:

> All persons who, in the time period starting on April 14, 2011 (four years prior to the date of filing the initial Complaint in this action) through November 30, 2022, (1) have been tenants at any of Defendants' California properties; (2) have participated in the "Section 8" Housing Choice Voucher Program in connection with their tenancies at the California properties; and (3) have paid additional charges set forth in Additional Services Agreements in excess of their individual portions of the contract rent set forth in the HAP Contracts.

*See* ECF No. 329.

7. On July 27, 2024, the Parties executed a Memorandum of Understanding ("Memorandum") setting forth the principal terms of a settlement and filed a Notice of Settlement with the Court. *See* ECF No. 541.

8. The Parties agreed that the Memorandum contains the material terms of the settlement and is enforceable unless and until superseded by execution of a long-form settlement agreement. The Parties agreed that they would execute such an agreement, signed by all Parties by August 26, 2024

2

Suppl. Bellows Decl. Ex. A, page 4

(within 30 days of execution of the Memorandum). The Parties agreed that they would then present the agreement to the Court for court approval of the settlement of the Class Claims, and to the United States Government (through the U.S. Attorney's Office for the Eastern District of California) to request government consent to the settlement of the FCA Claim as required by 31 U.S.C. § 3730.

9. Defendants deny any and all liability to the Named Plaintiffs and Relators, and to the Classes, and deny that they violated any federal or state laws or regulations or applicable county or city codes and regulations. The claims, liabilities, damages and/or causes of action this settlement disposes of and/or merges into the judgment include all claims based on misstatements of any kind, all alleged overcharges, all alleged accounting inadequacies, bodily or mental injuries and emotional distress, all damage to property, including loss of use of property, all threatened evictions, constructive evictions, or other impairments, invasions, or interference with the tenants' occupancy and enjoyment of the premises, all lease violations, and any and all other violations of any common law or statutory duty, whether arising under federal, state or local law, and any and all claims, liabilities, damages and/or causes of action that could have been alleged in any pleading this settlement encompasses, or which could have been added to any such pleading by amendment, including amendment according to proof after trial.

10. This Agreement contains the full and complete settlement of the Class Claims and of the FCA Claim, as set forth in detail below. The total amount to be paid in settlement and for release of all claims including those outlined above is $16,500,000, allocated $9.5 million to the class action claims and $7 million to the FCA claim. This Agreement supersedes the Memorandum and contains all operative terms of the Parties' agreement to resolve this matter. If there is a conflict between the Agreement and the Memorandum, the Agreement prevails.

## II. DEFINITIONS

In addition to the terms defined above in the Recitals, the following definitions apply:

1. **Additional Service Charges** are all charges to all tenants for services listed in Additional Services Agreements ("Additional Services Agreements"), including, as defined in 24 C.F.R. § 982.4(b), tenants receiving tenant-based assistance under Section 1437f(o)(2) of the United States Housing Act of 1937 ("Housing Act of 1937") ("HCV Tenants").

Suppl. Bellows Decl. Ex. A, page 5

2.     **Class Counsel** are Goldstein, Borgen, Dardarian & Ho, Centro Legal de la Raza, Impact Fund, and Law Offices of Andrew Wolff, including the attorneys at each firm and organization, as approved by this Court.

3.     **Class Member** means a person who is a member of either or both Classes or, if such person is incapacitated or deceased, the person's legal guardian, executor, heir, or successor in interest.

4.     **Class Representatives** are Denika Terry, Roy Huskey III, and Tamera Livingston for the Reimbursement Class, and Tamera Livingston for the Injunctive Relief Class, as approved by this Court.

5.     **Complaints** means all complaints filed in this Action.

6.     **Defense Counsel** are Lewis Brisbois Bisgaard & Smith LLP and Arnold Golden Gregory LLP, including the attorneys at each firm.

7.     **Effective Date** is either (a) the date 31 days after the Court has entered a final approval order and judgment if there is no appeal from or requests for review of the order and judgment, or (b) if there is an appeal or request for review, the date on which the order and judgment has been affirmed by the court of last resort for that appeal or review, or the date of denial of review or exhaustion of all appellate remedies.

8.     **Injunctive Relief Class Member** means a person who is a member of the Injunctive Relief Class as of the date of preliminary approval of this settlement by the Court or, if such person is incapacitated or deceased, the person's legal guardian, executor, heir, or successor in interest.

9.     **Participating Class Member** means a person who is a member of the Reimbursement Class and who does not submit a timely and valid opt-out request or, if such person is incapacitated or deceased, the person's legal guardian, executor, heir, or successor in interest.

10.     **Parties** are the Plaintiffs and Defendants.

11.     **Reimbursement Class Member** means a person who is a member of the Reimbursement Class or, if such person is incapacitated or deceased, the person's legal guardian, executor, heir, or successor in interest.

12.     **Reimbursement Class Period** is April 14, 2011, through November 30, 2022, as defined by the Court in its orders.

4

Suppl. Bellows Decl. Ex. A, page 6

13. **Owner** shall have the same meaning as set forth at 42 U.S.C. 1437f(f) and 24 C.F.R. 982.4(b).

14. **Relators' Counsel** are Goldstein, Borgen, Dardarian & Ho, California Civil Rights Law Group, Centro Legal de la Raza, Impact Fund, and Law Offices of Andrew Wolff, including the attorneys at each firm and organization.

### III.    CALIFORNIA CLASS CLAIMS SETTLEMENT

#### A.    Injunctive Relief

"Injunctive Relief Defendants" means: (1) Wasatch Property Management, Inc., and any successor in interest thereof; and (2) any Owner of a California property currently managed by Wasatch Property Management, Inc., which include the following Defendants and properties: Aspen Park Holdings, LLC, Bent Tree Apartments, LLC, California Place Apartments, LLC, Canyon Club Holdings, LLC, Chesapeake Apartments, LLC, Courtyard at Central Park Apartments, LLC, Creekside Holdings, Ltd., Heritage Park Apartments, LP, River Oaks Holdings, LLC, Village Grove Apartments, LP, Heron Pointe Apartments, LLC, Shadow Way Apartments, LP, and Peppertree Apartment Holdings, LP. The Injunctive Relief Defendants shall implement all terms of the injunctive relief set forth below with respect to the Injunctive Relief Class by no later than September 25, 2024 (within 60 days of execution of the Memorandum). The injunctive relief requirements for a California property owner and property will cease upon the sale of that real property provided that: (1) the transaction is at arm's length to an unrelated third-party purchaser; and (2) Wasatch Property Management, Inc., and any successor in interest thereof or other affiliated entity, no longer has any control or management over the property or the policies imposed on the tenants following the sale.

By September 25, 2024, Defendant Wasatch Property Management, Inc., shall also file with the Court, on its own behalf and as property manager for all Injunctive Relief Defendants currently managed by Wasatch Property Management, Inc., a declaration describing the implementation of all injunctive relief set forth below and attaching: copies of all pertinent revised forms, documents, and policies; representative samples of communications sent to Defendants' personnel; representative samples of communications sent to HCV Tenants; and representative samples of any documents and communications used to obtain fresh consent from HCV Tenants.

Suppl. Bellows Decl. Ex. A, page 7

All terms of the injunctive relief are material to this Agreement.

The following provisions are not intended to conflict with federal law and regulations, which still apply to all leasing arrangements that Wasatch Property Management, Inc., enters into on behalf of Owners.  None of the terms of the Injunctive Relief set forth herein shall be construed as preventing Injunctive Relief Defendants from charging HCV Tenants for additional services under any agreement, including Additional Services Agreements setting forth Additional Service Charges, or to require any action that does not comply with the United States Housing Act of 1937, 26 U.S.C. § 42, 24 C.F.R. Parts 5, 888, 903, and 982, or 26 CFR 1.42-1 et seq., state laws and regulations, and applicable local codes and regulations.

**1.  Revise Documents to Separate Optional Charges and Rent**

Injunctive Relief Defendants shall remove from their form documents all language that describes Additional Service Charges as part of HCV Tenants' "total monthly obligation" or "rental rate," as those terms are used in Injunctive Relief Defendants' form documents, or that combines those optional separate charges with rent in any other manner.

Injunctive Relief Defendants will revise their rental agreements, monthly cost breakdown forms, renewal notification letters, and move-in cost sheets to make clear that Additional Service Charges are not a component of or combined with rent and are optional separate charges.

**2.  Inform HCV Tenants that Charges Are Optional and Not a Basis for Eviction**

Injunctive Relief Defendants shall revise their rental policies to ensure that HCV Tenants and Injunctive Relief Defendants' property personnel are informed that Additional Service Charges are optional charges and that unpaid charges will not form the basis for any threat of eviction or eviction proceedings.

Defendants shall ensure that HCV Tenants and property personnel are informed that unpaid Additional Service Charges (1) may not be a basis for the landlord's service of any "pay or quit" notice, (2) may not be grounds for the landlord's refusal of a rent payment, and (3) may not be a basis for the filing of any eviction proceedings.

"Eviction proceeding" shall mean the filing of an unlawful detainer action undertaken under the laws of the State of California.  No Defendant shall be deemed to have violated Section III.A.2. of this

Suppl. Bellows Decl. Ex. A, page 8

Agreement if the Defendant seeks to collect unpaid Additional Service Charges as consumer debt entirely separate from the rental agreement and any eviction proceeding, and without any connection or threat to the tenants' right to remain in their housing.

This Agreement does not address eviction notices or proceedings based on a tenant's refusal to relinquish any service under their control, after failing to pay for that service.

**3.   Inform HCV Tenants of Policy Changes and Their Rights**

Injunctive Relief Defendants shall fully inform the following individuals of the changes to Injunctive Relief Defendants' policies and the HCV Tenants' rights with respect to Additional Service Charges: (a) existing HCV Tenants, (b) HCV tenants seeking to renew their leases, and (c) applicants for HCV tenancies.  These communications will include, in clear and accessible language that:

a.   Additional Service Charges are *not* part of the rent or "rent to owner" for the unit, and additional services are optional at the choice of the tenant;

b.   Non-payment of an Additional Service Charge (1) will not be a basis for the landlord's service of any "pay or quit" notice, (2) may not be grounds for the landlord's refusal of a rent payment, and (3) may not be a basis for the filing of any eviction proceedings; and

c.   All payments received from tenants will first be applied to rent charges and thereafter to Additional Service Charges (if applicable).

Injunctive Relief Defendants shall clearly and concisely state this information in a notice to current HCV Tenants and in all future Additional Services Agreements.

**4.   Obtain Consent to Charges from Current HCV Tenants**

Injunctive Relief Defendants shall also obtain fresh consent to the Additional Service Charges from existing HCV Tenants at the time of lease renewal.  At the time of lease renewal for HCV Tenants, Injunctive Relief Defendants will disclose the relevant policies governing Additional Service Charges, inform the tenants that the additional services are optional, and then ask tenants to consent to their Additional Service Charges.  For purposes of this term, "consent" may be evidenced by the tenant's execution of an Additional Services Agreement or other similarly named agreement, so long as the agreement states clearly that the additional services are optional.

Suppl. Bellows Decl. Ex. A, page 9

**B.**     **Class Settlement Amount**

    Defendants shall pay $9,500,000 to the Reimbursement Class as the entirety of the monetary compensation to resolve the Class Claims ("Class Settlement Amount"). The Class Settlement Amount includes: (1) $5,000,000 for (a) individual payments to Participating Class Members, (b) any service awards approved by the Court, and (c) all costs and expenses actually incurred by and to be paid to the settlement administrator for performance of the tasks detailed below ("Administration Expenses"), as well as costs to pay a third-party to provide government benefit program eligibility advice to Reimbursement Class Members as discussed in Section III.D.4 below; and (2) $4,500,000 for the maximum amount of reasonable attorneys' fees, litigation costs, and expenses incurred in connection with the Class Claims that Class Counsel may ask the Court to approve ("Class Attorneys' Fees and Costs").

    **1.**     **No Reversion**

    There will be no reversion of any funds to Defendants under any circumstances. *See* Section III.G.3.c below.

    **2.**     **Reimbursement Class Net Payment**

    The total amount of individual payments to Participating Members of the Reimbursement Class shall be $5,000,000 minus Administration Expenses, as well as costs to pay a third-party to provide government benefit program eligibility advice as discussed in Section III.D.4 below, and any service awards approved by the Court ("Reimbursement Class Net Payment").

    **3.**     **Class Attorneys' Fees & Costs**

    Plaintiffs will file a motion with the Court for an award of Class Attorneys' Fees and Costs, not to exceed $4,500,000. All Class Attorneys' Fees and Costs are included in the total Class Settlement Amount. Defendants shall pay the amounts approved by the Court and bear their own attorneys' fees and costs in the Litigation.

    **4.**     **Service Awards**

    Named Plaintiffs may request service awards of up to $5,000 each from the Court for their efforts and risks on behalf of the Classes in litigating this Action, and as consideration for executing a broader release of claims than the other Class Members. All service awards approved by the Court are

Suppl. Bellows Decl. Ex. A, page 10

included in the total Class Settlement Amount.  Each Named Plaintiff will be solely liable for any and all taxes associated with any service award.

**C.**     **Releases**

    **1.**     **Injunctive Relief Class Release**

Plaintiffs and all Injunctive Relief Class Members shall fully release Defendants and Heron Pointe Apartments, LLC from any claims for injunctive relief arising from the facts alleged in each of the Complaints that were filed in this Litigation through July 27, 2024 (the date the Memorandum was executed).  This is the full and entire scope of the release for Injunctive Relief Class Members, notwithstanding any other term or language in this Agreement.

    **2.**     **Reimbursement Class Release**

Plaintiffs and all Reimbursement Class Members who do not submit timely and valid opt-out requests shall fully release Defendants from any claims for monetary damages arising from breach of contract, violation of California's Unfair Competition Law, and violation of California's Consumer Legal Remedies Act based on the facts alleged in the Complaints in this Litigation through July 27, 2024 (the date the Memorandum was executed).  This is the full and entire scope of the release for Reimbursement Class Members, notwithstanding any other term or language in this Agreement.

    **3.**     **Named Plaintiffs' Releases & Section 1542 Waiver**

In exchange for their ability to apply for service awards separate from their individual payments as Reimbursement Class Members, Named Plaintiffs also waive all rights under Section 1542 of the California Civil Code, which provides as follows: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

**D.**     **Administration & CAFA Notice**

    **1.**     **CAFA Notice**

Within 10 days of the filing of a motion for preliminary approval of this Agreement, Defendants shall provide any required CAFA Notice of this Agreement to the appropriate federal and state officials, pursuant to 28 U.S.C. § 1715(b).

Suppl. Bellows Decl. Ex. A, page 11

2. **Qualified Settlement Fund**

Prior to Defendants' February 1, 2025 payment as set forth in Section V.B.2 below, the Settlement Administrator shall establish an escrow account to receive all payments for the Class Settlement Amount.

3. **Settlement Administrator**

The Parties shall retain independent settlement administrator Verita (formerly KCC) or such other neutral administrator as is mutually agreed to by the Parties ("Settlement Administrator"). Verita is experienced and qualified in the administration of class notice and monetary settlement distribution, and has provided prior Court-approved notices to the Classes in this Litigation. The Settlement Administrator shall perform the following tasks in compliance with the Agreement:

1. Locate Class Members' residential addresses;

2. Distribute settlement notice to Class Members in the form approved by the Court;

3. Answer inquiries from Class Members and forward such inquiries to Class Counsel;

4. Arrange for tracing of Class Members for whom settlement notice or individual payments are returned as undeliverable;

5. Obtain supplemental information from Class Members, as necessary;

6. Receive and provide to the Parties and the Court any opt-out requests or objections;

7. Resolve any disputes as to estimated individual payments, with input from Counsel;

8. Administer and distribute individual payments, along with any necessary tax forms;

9. Establish a settlement website, phone number, and email address as detailed below;

10. Translate the Court-approved settlement notices into Spanish and make them available on the settlement website;

11. For the final approval hearing, timely provide a declaration of due diligence and compliance with all settlement administration terms of this Agreement; and

12. All other duties the Parties agree are necessary to carry out all terms of this Agreement.

The Settlement Administrator shall be paid its Administration Expenses, which it has agreed shall be no more than $75,000, from the Class Settlement Amount.

Should the Settlement Administrator need more time than is provided under this Agreement to

10

Suppl. Bellows Decl. Ex. A, page 12

complete any of its obligations, the Settlement Administrator may request such additional time in writing to Class Counsel and Defense Counsel, with an explanation of the need for additional time.  If Class Counsel or Defense Counsel do not agree in writing to the Settlement Administrator's request, the Administrator, Class Counsel, or Defense Counsel may seek such additional time from the Court.

### 4.   Benefits Consultations

Plaintiffs shall retain independent benefits consulting firm Claimant Advocacy Group ("CAG") to provide Reimbursement Class Members with the opportunity for pre-paid one-on-one consultations to inform them of the potential effects of their individual settlement payments on their continued eligibility for government benefit programs.  CAG is experienced and qualified in providing benefits consultations in class action and other large volume litigation.

CAG shall be paid $55,000 from the Class Settlement Amount.

### E.   Settlement Notice

### 1.   Form of Notice

The proposed forms of the settlement notice are attached as **Exhibits 1** and **2** ("Settlement Notices").  Exhibit 1 is the proposed Settlement Notice for all Reimbursement Class Members, whether or not they are also Injunctive Relief Class Members.  This Notice for Reimbursement Class Members will also include an insert from Claimant Advocacy Group about the potential impact of the individual payments on public benefits and the opportunity for pre-paid one-on-one consultations about such impacts.  Plaintiffs will provide this insert to the Court by September 23, 2024—the date a reply would be due in support of their motion for preliminary approval.   Exhibit 2 is the proposed Settlement Notice for individuals who are only Injunctive Relief Class Members and will not be receiving an individual payment.  The Parties agree that the Notices conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clauses), and all other applicable law, but are subject to approval and revision, in manner and form, by the Court.

The Settlement Notices do and shall, at a minimum:

    a.   Contain a plain and concise description of the Action, Classes certified, and proposed Agreement;

Suppl. Bellows Decl. Ex. A, page 13

      b.    Describe the relief provided by and claims released in the proposed Agreement;

      c.    Inform Reimbursement Class Members of their estimated individual payments;

      d.    Inform all Class Members of their right to object to the proposed Agreement, and the deadlines and procedures for doing so;

      e.    Inform Reimbursement Class Members of their right to dispute their individual payment or opt out of the proposed Agreement as to the Reimbursement Class, and the deadlines and procedures for doing so;

      f.    Inform all Class Members of the maximum amounts of Class Attorneys' Fees and Costs and service awards that Class Counsel and the Named Plaintiffs may seek;

      g.    Inform Reimbursement Class Members of the availability of pre-paid one-on-one benefits consultations with the Claimant Advocacy Group;

      h.    Inform Reimbursement Class Members that, if they do not opt out, they will be sent their estimated individual payment under the proposed Agreement, unless they opt to receive a lower payment;

      i.    Inform Injunctive Relief Class Members of the injunctive relief provided in the proposed Agreement and how to dispute whether they should be part of the Reimbursement Class;

      j.    State that any relief to Class Members is contingent on the Court's final approval of the proposed Agreement; and

      k.    Contain an advisement in Spanish about how to get access to the Notices, Agreement, and case information in Spanish.

**2.**     <u>**Class List**</u>

Within 14 days of the Court's preliminary approval order, Defendants shall provide to the Settlement Administrator a list with the most current and complete information for each Class Member ("Class List"), including each Class Member's name and last known residential addresses, email addresses, social security number (if possible), and telephone numbers.

Settlement Notice will be mailed to the individuals identified as the "primary resident" in the Yardi database.

Suppl. Bellows Decl. Ex. A, page 14

**3. Time & Manner of Notice**

After receiving the Class List, the Settlement Administrator will first update all Class Member addresses using the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service and then, within 14 days of receipt of the Class List, shall send the Settlement Notices to all Class Members, by first-class U.S. mail to the best-known mailing address from the Class List or as provided by the NCOA, and to any email addresses from the Class List. If the Class List does not provide a mailing address for any Class Member, the Settlement Administrator may use any information or resource reasonably available to identify such addresses.

In the event of returned or non-deliverable Settlement Notices, the Settlement Administrator shall make reasonable efforts, including the use of skip-tracing services offered by publicly available databases, to locate Class Members and re-send the Settlement Notices. It will be conclusively presumed that a Class Member's Settlement Notice was received if the Notice has not been returned within 21 days of the original mailing of the Notice to the Class Member.

In the event the procedures set forth herein are followed and a Reimbursement Class Member later asserts that they did not receive the Settlement Notice, the Class Member will remain a Participating Class Member and will be bound by all terms of the Agreement and the Court's final approval order and judgment.

**4. Settlement Website, Phone Number, and Email Address**

Prior to distribution of the Settlement Notice, the Settlement Administrator shall establish a website that will inform the Classes of the terms of this Agreement, their rights, applicable dates and deadlines, and contact information for the Settlement Administrator and Class Counsel. Participating Class Members will be able to use the website to request lower or no settlement payments and at least one alternative electronic payment option. It will also be accessible for users with disabilities. The website will also make available for review and download in PDF format:

     a.    The Settlement Notices in English and Spanish;

     b.    The Agreement;

     c.    The Court's preliminary approval order and publicly filed papers in support;

     d.    The Sixth Amended Complaint;

Suppl. Bellows Decl. Ex. A, page 15

e.  When they become available, the motion(s) for final approval, Class Attorneys'
Fees and Costs, and service awards, and publicly filed papers in support; and

f.  All other documents or material agreed upon by the Parties or required by the Court.

Prior to the distribution of the Settlement Notices, the Settlement Administrator shall also establish a toll-free telephone number and an email address, through which members of the Classes may obtain information about the Action in English and Spanish, submit inquiries regarding the Agreement, and request a mailed copy of the Settlement Notice.  The website, telephone number, and email address shall remain active until 30 days after the Administrator has completed its obligations under this Agreement.

Class Counsel may communicate with Class Members via email, phone, and text to direct them to the settlement website, phone number, and email.

**F.  Objections & Opt-Out Requests**

**1.  Response Deadline**

Class Members must submit any opt-out request, objection to the Agreement, or dispute as to exclusion from or estimated individual payment for the Reimbursement Class within 60 days of the date that the Settlement Administrator mails Settlement Notice, or if a Notice is re-mailed within 14 days of the date that the Administrator re-mails the Notice, whichever is later ("Response Deadline").

**2.  Objections**

Any Class Member who has not submitted a timely and valid opt-out request, as set forth below, may object to this Agreement in whole or part.  To do so, the Class Member must submit their objection to the Settlement Administrator in writing via first class mail or by email to the settlement email address.  The objection must:

a.  Be postmarked or emailed before the Response Deadline;

b.  Include the case name and number;

c.  Include the Class Member's name, address, and telephone number;

d.  Be personally signed (handwritten or typed) by the Class Member;

e.  State in clear and concise terms why the Class Member believes that the Agreement is not in the best interests of the Class and the reasons why the Agreement should

14

Suppl. Bellows Decl. Ex. A, page 16

1                       not be approved, including the specific legal and factual bases for the objection; and

2        f.     State whether the objection applies only to the Class Member, to a subset of the

3                 Classes, to the Reimbursement Class, to the Injunctive Relief Class, or to both.

4       If a Class Member who submits a timely and valid objection also wishes to appear at the final

5  approval hearing, in person or through an attorney, they must *also* file, at the same time as they submit

6  their objection, a notice of intent to appear.  Unless otherwise ordered by the Court, Class Members

7  shall not be entitled to speak at the final approval hearing unless they have submitted a timely and

8  valid objection and notice of intent to appear.

9       Any Class Member who does not provide a timely and valid objection as set forth above, or

10  who does not make a record of their objection at the final approval hearing as permitted by the Court,

11  shall be deemed to have waived any objection and shall forever be foreclosed from making any

12  objection to the Agreement.  If a Class Member withdraws a timely and valid objection before final

13  approval, the objection shall be treated as though it had not been made.

14       In their motion for preliminary approval, Plaintiffs shall request that the Court allow any party

15  to file a reply to any objection, no later than 7 days before the final approval hearing, or as the Court

16  may otherwise order.

17      **3.**     **Opt-Out Requests**

18       As set forth below, Reimbursement Class Members shall have the right to opt out of the

19  Reimbursement Class.  If a Reimbursement Class Member wishes to opt out and not be bound by the

20  terms of this Agreement as to the Reimbursement Class, they must submit an opt-out request in writing

21  to the Settlement Administrator via first class mail or by email to the settlement email address.  The

22  opt-out request must:

23        g.     Be postmarked or emailed before the Response Deadline;

24        h.     Include the case name and number;

25        i.     Include the Reimbursement Class Member's name, address, and telephone number;

26        j.     Be personally signed (handwritten or typed) by the Reimbursement Class Member;

27        k.     Contain a clear request that the individual would like to opt out or be excluded from

28                 the Agreement as to the Reimbursement Class, by use of those words or other words

Suppl. Bellows Decl. Ex. A, page 17

1    clearly indicating a desire not to participate in the Agreement as to the
2    Reimbursement Class.

3    Reimbursement Class Members must opt out of the Reimbursement Class individually.  So-
4    called "mass" or "class" opt outs, whether filed by third parties on behalf of a "mass" or "class" of
5    Reimbursement Class Members or for multiple Reimbursement Class Members where no personal
6    statement has been signed by each and every individual Class Member, are not valid or allowed.

7    Any Reimbursement Class Member who timely and properly submits on opt-out request in
8    compliance with these requirements will:

9        a.    Not be entitled to any payment under the Agreement;

10       b.    Not be bound by the Reimbursement Class release or other terms of this Agreement
11             or the final approval order and judgment as to the Reimbursement Class; and

12       c.    Not be permitted to object to any part of the Agreement that relates exclusively to
13             the Reimbursement Class.

14   All Reimbursement Class Members who fail to submit a valid and timely opt-out request shall
15   be sent an individual payment and be bound by the Reimbursement Class release and all other terms of
16   this Agreement and the final approval order and judgment.

17   Injunctive Relief Class Members may not opt out of the Injunctive Relief Class.

18   **4.    Administration**

19   The Settlement Administrator shall promptly provide copies of all opt-out requests, objections,
20   and any related correspondence from Class Members to Class Counsel and Defense Counsel.  Within
21   14 days of the Response Deadline, the Settlement Administrator shall provide to Class Counsel and
22   Defense Counsel a complete list of opt-out requests and objections.

23   If the Settlement Administrator determines that an opt-out request or objection submitted by a
24   Class Member before the Response Deadline is deficient, then within 7 days of receipt, the Settlement
25   Administrator shall mail a deficiency letter to the Class Member identifying the problem.  The Class
26   Member must cure any deficiency in writing via first class mail or by email to the settlement email
27   address, postmarked or emailed within 7 days of mailing of the deficiency letter.

28

Suppl. Bellows Decl. Ex. A, page 18

**G.** **Individual Payments**

    **1.** **Recipients & Charges Encompassed**

Payments will be made to the individuals identified as the "primary resident" in the Yardi database.

The Additional Service Charges that were included in the court's summary judgment orders, and are included in the individual payments below, are those that the Reimbursement Class Member paid, according to their tenant ledger, for the following services listed in Defendants' Additional Services Agreements: media packages, common garage, garage rental, renter's insurance, month-to-month fee, covered parking, pet rent, Rent Plus service, storage rental, and washer/dryer rental.

    **2.** **Calculation**

        **a.** **Estimated Individual Payments**

Class Counsel shall provide the Settlement Administrator, for each Reimbursement Class Member, the amount of Additional Service Charges that they paid during the Reimbursement Class Period, according to their tenant ledger of monthly payments from May 2011 through November 2022, as well as the amount of interest on those payments through July 27, 2024.

As part of their Settlement Notice, each Reimbursement Class Member shall be informed of their "Estimated Individual Payment," which shall include: (1) the full amount of the Additional Service Charges paid by the Class Member during the Reimbursement Class Period, according to their tenant ledger of monthly payments from May 2011 through November 2022; and (2) the Class Member's estimated pro rata share of the interest on that amount through July 27, 2024.  However, if the total amount of the charges and interest for a Reimbursement Class Member is less than $100, the Class Member shall receive a minimum individual payment of $100.  Accordingly, the Notice shall inform each Class Member that: "If your total estimated payment is less than $100, you will receive a minimum payment of $100."

Each Reimbursement Class Member's estimated pro rata share of interest will be calculated by: (1) dividing the amount of interest owed to the Class Member by the total interest owed to all Reimbursement Class Members, to determine the Class Member's estimated percentage share of the total interest owed; (2) subtracting all Additional Service Charges included in the Estimated Individual

Suppl. Bellows Decl. Ex. A, page 19

Payments from the Reimbursement Class Net Payment, to determine the estimated total amount left for interest payments; (3) multiplying that estimated total amount left for interest payments by the Class Member's estimated percentage share of the total interest; and (4) adjusting those amounts to account for the $100 minimum individual payments.

### b.    Disputes

Any person who does not receive an Estimated Individual Payment as a Reimbursement Class Member, but who believes they are a Reimbursement Class Member under the Court's definition, is entitled to dispute their exclusion from the Reimbursement Class.  Any Reimbursement Class Member is also entitled to dispute the amount of their Estimated Individual Payment, if they believe it does not accurately reflect the Additional Service Charges they paid, plus pro rata interest, during the Reimbursement Class Period.  For a dispute to be valid, the individual must submit their dispute in writing via first class mail or by email to the settlement email address.  The dispute must:

      a.    Be postmarked or emailed before the Response Deadline;

      b.    Include the case name and number;

      c.    Include the Class Member's name, address, and telephone number;

      d.    Be personally signed (handwritten or typed) by the Class Member;

      e.    State in clear and concise terms the nature of the dispute; and

      f.    Include any evidence in support of the dispute.

Within 7 days of receiving a timely and valid dispute, the Settlement Administrator shall review the dispute and all evidence in support, provide notice to Class Counsel and Defense Counsel of the dispute, and advise Counsel as to whether it needs additional information prior to making a decision.  Within 7 days of such notice, Class Counsel and Defense Counsel shall provide the Settlement Administrator with their position or positions on the dispute and any additional information requested, which they will endeavor in good faith to agree upon.  Within 7 days of Counsels' response, the Settlement Administrator shall make a decision on the dispute and inform the individual and Counsel of that decision.  Any disputes resolved to add Reimbursement Class Members or change Estimated Individual Payments will be accounted for in calculating final individual payments.

The Administrator's decisions on disputes, Estimated Individual Payments, and final individual

Suppl. Bellows Decl. Ex. A, page 20

payments shall be final and binding on all Reimbursement Class Members and not subject to appeal.

### c.     **Final Individual Payments**

As detailed below, each Participating Class Member shall receive a check or electronic payment for their "Final Individual Payment," which shall include: (1) the full amount of the Additional Service Charges paid by the Class Member during the Reimbursement Class Period, according to their tenant ledger of monthly payments from May 2011 through November 2022; and (2) the Class Member's final pro rata share of the interest on that amount through July 27, 2024. However, if the total amount of the charges and interest for a Reimbursement Class Member is less than $100, the Class Member shall receive a minimum Final Individual Payment of $100, as explained in the Notice.  Also, if any Participating Class Member has requested a lower individual payment, as set forth above, the Final Individual Payment shall be reduced to the requested amount.

Each Participating Class Member's final pro rata share of interest will be calculated by: (1) dividing the amount of interest owed to the Participating Class Member by the total interest owed to all Participating Class Members, to determine the Participating Class Member's percentage share of the total interest owed; (2) subtracting all Additional Service Charges included in the Final Individual Payments from the Reimbursement Class Net Payment, to determine the total amount left for interest payments; (3) multiplying that total amount left for interest payments by the Participating Class Member's percentage share of the total interest; and (4) adjusting those amounts to account for the $100 minimum individual payments and any reduced amounts requested.

### 3.     **Distribution**

### a.     **Time & Manner of Payment**

Within 28 days of the Effective Date of the Agreement, the Settlement Administrator shall send an electronic payment if requested, or a check by first-class U.S. mail to the best-known address for each Participating Class Member, for the Final Individual Payment.  All checks shall be negotiable for no more than 180 days from the date of mailing.  Along with each electronic payment and check, the Settlement Administrator shall provide any and all appropriate tax forms, and a letter that separately lists (1) the total amount of the payment to reimburse paid Additional Service Charges, and (2) the total amount of the payment for interest.

Suppl. Bellows Decl. Ex. A, page 21

If the Settlement Administrator is not able to send the electronic payments and checks by this deadline, it shall inform Class Counsel and Defense Counsel and provide an approximate date by which the Final Individual Payments will be sent.  Under no circumstances shall the Settlement Administrator distribute electronic payments and checks until all timely and valid disputes have been resolved, opt-out requests have been accounted for, and objections have been considered, and Final Individual Payments have been calculated.

If any Participating Class Member is incapacitated or deceased, payment shall be made to the trust or estate of that Class Member and delivered to the trustor, executor, or administrator of that trust or estate, unless the Settlement Administrator has received an affidavit or declaration pursuant to California Probate Code § 13101, in which case payment shall be made to the affiants or declarants.

In its declaration for final approval, the Settlement Administrator shall verify its distribution of the Final Individual Payments as set forth above.

### b. Returned or Uncashed Payments

For each check returned to the Settlement Administrator as undeliverable, the Administrator shall, within 20 days, conduct one or more computer database traces for the Participating Class Member and re-mail the check to any additional address obtained.  All returned checks for Participating Class Members for whom no additional address is obtained shall be held by the Settlement Administrator for 90 days.  If no claim is made for a check during this time period, the check amount shall become part of the funds to be allocated as cy pres as set forth below.

Each Participating Class Member must cash their check within 180 days of its mailing.  If a check is re-mailed after being returned as undeliverable, as set forth above, the re-mailed check will have a void date of either 180 days after the initial check mailing date or 60 days after the re-mailing, whichever is later.  If any Participating Class Member's check is not cashed 90 days after the initial check mailing, the Settlement Administrator will send the Participating Class Member a letter informing them that, unless the check is cashed by the deadline, it will expire and become non-negotiable.  In the letter, the Settlement Administrator will offer to replace the check if it was lost or misplaced but not cashed.  All checks that remain uncashed by the deadline shall become part of the funds to be allocated as cy pres as set forth below.

Suppl. Bellows Decl. Ex. A, page 22

If electronic payment fails, the Settlement Administrator will send a check pursuant to the procedures above.

### c.   Fees, Costs, or Awards Not Approved

If the Court does not approve any amount of the Class Attorneys' Fees and Costs or service awards requested, and Plaintiffs or Class Counsel do not appeal any such reduction, then those amounts shall become part of the funds to be allocated as cy pres as set forth below.  If Plaintiffs or Class Counsel do appeal any such reduction, the Settlement Administrator shall withhold the amount of the reduction until the appeal is finally resolved, then allocate those funds in compliance with the order on appeal.

### d.   Cy Pres

All funds that remain to be allocated by the end of the deadlines to cash Final Individual Payment checks as set forth above will first be used to pay any otherwise valid Final Individual Payments that were excluded from the initial payments due to any error or omission.  If the funds that remain are not sufficient to pay for all such Final Individual Payments, the Final Individual Payments shall be paid pro rata from the funds that remain.  Any funds that remain after these payments are made will, subject to Court approval, be allocated as cy pres awards in equal portions to the following 26 U.S.C. § 501(c)(3) non-profit organizations that provide free legal services to HCV Tenants in the areas where Defendants' California properties are located: Bay Area Legal Aid; Central California Legal Services; Inland County Legal Services; Legal Services of Northern California; Legal Aid Society of San Diego; Legal Aid of Sonoma County.

### 4.   Tax Treatment

The Settlement Administrator shall be responsible for issuing and providing all appropriate tax forms for all payments made under this Agreement.  The Parties' and Settlement Administrator's understanding is that the amount of each Final Individual Payment that is reimbursement of Additional Service Charges paid by that Participating Class Member is non-taxable reimbursement for those amounts paid, and therefore not subject to an IRS Form 1099.  The Settlement Administrator will issue appropriate IRS Form 1099s to Participating Class Members for any interest paid in excess of $600.

Notwithstanding the above, each Participating Class Member and every other recipient of a

Suppl. Bellows Decl. Ex. A, page 23

payment under this Agreement shall be solely responsible for the payment of any taxes due in connection with the payment and any liability for failure to do so. Participating Class Members who may have questions about their tax liability, if any, should consult independent tax counsel.

**Circular 230 Disclaimer**. Each of the Parties acknowledges and agrees that: (1) no provision of this Agreement, and no written communication or disclosure between or among the Parties or their Counsel and other advisers is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of U.S. Treasury Circular 230 (31 CFR part 10, as amended); (2) each Party (a) has relied exclusively upon their own independent legal and tax advisors for advice in connection with this Agreement, (b) has not entered into this Agreement based upon the recommendation of any other Party or any Counsel or advisor to any other Party, and (c) is not entitled to rely upon any communication or disclosure by any other Counsel or advisor to any other Party to avoid any tax penalty that may be imposed on that Party; and (3) no attorney or advisor to any other Party hereto has imposed any limitation that protects the confidentiality of any such attorney's or advisor's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the Party of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Agreement. Neither Class Counsel nor Defendants or their Counsel are responsible for providing tax or financial advice, and Plaintiffs and Class Members are advised to seek independent professional advice as to the tax or financial consequences of any payment they receive, or may receive, as Plaintiffs or Class Members.

**H.**    <u>**Settlement Approval & Dismissal**</u>

    **1.**    <u>**Preliminary Approval**</u>

A preliminary approval hearing is set for October 4, 2024. By no later than August 30, 2024, Plaintiffs shall file their motion for preliminary approval of the Agreement. Plaintiffs shall request a preliminary approval order that:

    1.    Finds that the requirements for preliminary approval are satisfied, including that the Agreement should be preliminarily approved as fair, reasonable, and adequate;

    2.    Appoints Verita (or another independent administrator) as the Settlement Administrator;

    3.    Directs the Parties to provide Settlement Notices in the forms approved by the Court;

22

Suppl. Bellows Decl. Ex. A, page 24

4.   Provides for objection, dispute, and opt-out procedures as approved by the Court; and

5.   Schedules a final approval hearing and all dates for filing documents in support.

Defendants shall file a notice of non-opposition to the motion for preliminary approval.  This Agreement shall remain in full force and effect if the Court grants preliminary and final approval of the Agreement but establishes procedures for Settlement Notices or Class Member objections, opt-out requests, or disputes different than those requested by the Parties.

**2.      Final Approval**

The final approval hearing shall be on the date set by the Court, scheduled to take place after the expiration of the 90-day notice period required for any CAFA Notice.  Plaintiffs shall timely file their motion for final approval.  Plaintiffs shall request a final approval order and judgment that:

1.   Finds that the requirements for final approval are satisfied, including that the Agreement should be finally approved as fair, reasonable, and adequate;

2.   Finds that the Settlement Notices provided were the best notices practicable and in full compliance with California law, federal law, and due process;

3.   Authorizes distribution of the Final Individual Payments to Participating Class Members;

4.   Sets the amount of Class Attorneys' Fees and Costs and any service awards;

5.   Schedules a final compliance hearing;

6.   Retains jurisdiction to administer, enforce, and interpret the Agreement and for any other necessary purpose; and

7.   Constitutes a judgment within the meaning and for purposes of Rule 54.

Defendants shall file a notice of non-opposition to the motion for final approval

**3.      Dismissal**

Upon final approval of the settlement by the Court, Plaintiffs agree to ask the Court to dismiss all Class Claims with prejudice.  However, the Court shall retain jurisdiction to administer, enforce, and interpret the Agreement.

Suppl. Bellows Decl. Ex. A, page 25

## IV.    FCA CLAIM SETTLEMENT

**A.    FCA Settlement Amount**

Defendants will pay a total of $7,000,000 as the entirety of the monetary compensation to resolve Plaintiffs' FCA Claim and in full satisfaction of the FCA claims that were asserted or could have been asserted in the Litigation ("FCA Settlement Amount").  The FCA Settlement Amount includes $3,500,000 in damages for the FCA Claim to be paid to the U.S. Government ("FCA Damages"), inclusive of the Relators' share of those damages to be paid to the Relators by the U.S. Government ("FCA Relators' Share"), and $3,500,000 to Relators' Counsel for statutory attorneys' fees, litigation costs, and expenses related to the FCA Claim ("FCA Attorneys' Fees and Costs").

**B.    Relators' Share**

Defendants do not oppose Relators' agreement with the U.S. Government establishing the FCA Relators' Share of the FCA Damages pursuant to 31 U.S. § 3730(d)(2).

**C.    FCA Attorneys' Fees & Costs**

Defendants will pay Relators' Counsel $3,500,000 for the FCA Attorneys' Fees and Costs that are included in the total FCA Settlement Amount of $7,000,000.  Defendants shall bear their own attorneys' fees and costs in the Litigation.

**D.    Government Approval**

The Parties understand that the U.S. Government has reviewed this Agreement and will consent to dismissal of the FCA Claim on the terms of the Agreement.

**E.    FCA Release**

In consideration of the FCA Settlement Amount provided by Defendants for the FCA Claim, Relators on behalf of themselves, their heirs, spouses, executors, administrators, attorneys, agents, assigns, and any entities or businesses in which any of them have a controlling ownership interest, shall waive, fully release, and forever discharge Defendants, and the Owners of properties where Relators had alleged FCA violations as listed in Exhibit 3, from any claims under the False Claims Act, 31 U.S.C. § 3729 et seq., that were or could have been raised by Relators in this Litigation.

Suppl. Bellows Decl. Ex. A, page 26

**F.    Dismissal**

Plaintiffs agree to move to dismiss the FCA Claim with prejudice by September 10, 2024 (within 45 days of execution of the Memorandum).  The dismissal shall be without prejudice to the United States.

**V.    PAYMENT AND ALLOCATION OF TOTAL SETTLEMENT AMOUNT**

**A.    Schedule of Payments**

Defendants will pay the total settlement amount of $16,500,000 due under this Agreement, inclusive of the Class Settlement Amount and the FCA Settlement Amount, on the following schedule:

1.    First payment of $5,500,000 by no later than September 25, 2024;

2.    Second payment of $5,500,000 by no later than February 1, 2025; and

3.    Third payment of $5,500,000 by no later than February 1, 2026.

The undersigned Defendants agree that Defendants Logan Park Apartments, LP, Bellwood Jerron Apartments, LP, Oak Valley Apartments, LP, Point Natomas Apartments, LP, Hayward Senior Apartments, LP, and Piedmont Apartments, LP are indemnified by third parties not named in this action from any payment obligations of the Defendants hereunder.

**B.    Payment Methods & Allocation**

**1.    First Payment**

By September 25, 2024, Defendants will pay:

a.    $2,750,000 of the FCA Damages to the U.S. Government, inclusive of $825,000 of the FCA Relators' Share, by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of California;

b.    $2,750,000 of the FCA Attorneys' Fees and Costs to Relators' Counsel, by electronic funds transfer pursuant to written instructions provided by Relators' Counsel.

**2.    Second Payment**

By February 1, 2025, Defendants will pay $5,500,000 to the Settlement Administrator, who will place the funds in a Qualified Settlement Fund.  After receipt of those funds, and within 28 days

Suppl. Bellows Decl. Ex. A, page 27

after the Effective Date, the Settlement Administrator shall distribute:

    a.    $500,000 of the Class Attorneys' Fees and Costs, or if the amount approved by the Court is less, the lesser approved amount, to Class Counsel by electronic funds transfer pursuant to written instructions provided by Class Counsel;

    b.    No more than $75,000 for Administration Expenses to the Settlement Administrator;

    c.    No more than $55,000 to CAG for pre-paid one-on-one consultations to inform Reimbursement Class Members of the potential effects of their individual settlement payments on their continued eligibility for government benefit programs;

    d.    The amount of any service awards approved by the Court; and,

    e.    All remaining amounts of the second payment of $5,500,000 to the Reimbursement Class Net Payment, to be distributed as detailed above in Section III.G.3.

**3.**     <u>**Third Payment**</u>

By February 1, 2026, Defendants will pay:

    a.    The remaining $750,000 of the FCA Damages to the U.S. Government, inclusive of the remaining $225,000 of the FCA Relators' Share, by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of California;

    b.    The remaining $750,000 of the FCA Attorneys' Fees and Costs to Relators' Counsel, by electronic funds transfer pursuant to written instructions provided by Relators' Counsel; and

    a.    The remaining $4,000,000 to the Settlement Administrator.  Within 3 days of receipt, the Settlement Administrator shall distribute the remaining amount of Court-approved Class Attorneys' Fees and Costs not yet distributed pursuant to Section V.B.2.a above to Class Counsel.

    b.    All remaining funds will be allocated as cy pres as set forth in Section III.G.3.c.

**C.**     <u>**Failure to Pay**</u>

In the event that any of Defendants' payments required under this Agreement are not timely

Suppl. Bellows Decl. Ex. A, page 28

made, are clawed back for any reason, or are otherwise defaulted on, Defendants shall be jointly obligated for ensuring that a full replacement payment is made within 14 days by one or more of the Defendants.  Defendants shall also be jointly obligated to pay interest on any payments not made by the deadlines set forth herein at the applicable federal post-judgment interest rate on the overdue amount in the manner described by 29 U.S.C. § 1961 and the Eastern District's guidance on post-judgment interest rates, calculated on a daily basis for the time period that begins on the date the payment was due and ends when payment is made, including the 14-day replacement period.

## VI.   TABLE OF RELEVANT DATES

| Event | Deadline | Date |
|---|---|---|
| Class Releases end date | The date the Memorandum was executed | July 27, 2024 |
| Plaintiffs file preliminary approval motion | No later than August 30, 2024 | Aug. 30, 2024 |
| Defendants provide any required CAFA Notice | Within 10 days of the filing of motion for preliminary approval | Sept. 9, 2024 |
| Plaintiffs request dismissal of FCA Claim | Within 45 days of execution of the Memorandum | Sept. 10, 2024 |
| Defendants implement and provide confirmation of injunctive relief | Within 60 days of execution of the Memorandum | Sept. 25, 2024 |
| First settlement payment by Defendants | Within 60 days of execution of the Memorandum | Sept. 25, 2024 |
| Preliminary approval hearing | October 4, 2024 | Oct. 4, 2024 |
| Preliminary approval order ("P.A.") | | **TBD** |
| Administrator establishes settlement website, phone number, and email | Prior to distribution of the Settlement Notices | After P.A. |
| Defendants provide updated Class List to the Administrator | Within 14 days of the preliminary approval order | P.A. + 14 |
| Administrator mails Settlement Notices | Within 14 days of receipt of Class List | P.A. + 28 |

Suppl. Bellows Decl. Ex. A, page 29

| Conclusively presumed Settlement Notice received if Notice is not returned | Within 21 days of the original mailing of the Settlement Notices | P.A. + 49 |
|---|---|---|
| Class Member Response Deadline | Later of 60 days from mailing of Notice or 14 days from remailing | P.A. + 88 |
| Administrator notifies Class Member if response is deficient | Within 7 days of receipt of deficient response | |
| Class Member deadline to cure any deficiency | Within 7 days of mailing of the deficiency letter | |
| Administrator reviews any Class Member dispute, gives notice to Counsel | Within 7 days of receipt of timely and valid dispute | |
| Counsel provides Administrator with position(s) on dispute, any info. needed | Within 7 days of Administrator notice of the dispute | |
| Administrator makes final decision and informs the individual with the dispute | Within 7 days of Counsels' response to notice of dispute | |
| Administrator provides Counsel a list of opt-out requests and objections | Within 14 days of Response Deadline | P.A. + 102 |
| Any party may respond to an objection, as the Court allows | 7 days before the final approval hearing | F.A.H. - 7 |
| Administrator establishes Qualified Settlement Fund | Prior to Defendants' February 1, 2025 payment | Before Feb. 1, 2025 |
| Second settlement payment by Defendants | February 1, 2025 | Feb. 1, 2025 |
| Administrator declaration of compliance for final approval hearing | Timely provide for the final approval hearing | Before F.A.H. |
| Final approval hearing ("F.A.H.") | After expiration of the 90-day period for any CAFA Notice | **TBD** |
| Final approval order ("F.A.") | | **TBD** |
| Plaintiffs request dismissal of Class Claims | Upon final approval of the Agreement by the Court | F.A. |
| Effective Date ("E.D.") | 31 days after final approval, or end of any appeal or review | F.A. + 31 (or end of appeal) |
| Administrator sends Final Individual Payments to Participating Class Members | Within 28 days of Effective Date | E.D. + 28 |

28

Suppl. Bellows Decl. Ex. A, page 30

| | | |
|---|---|---|
| Administrator re-mails any checks returned as undeliverable | Within 20 days of return of any check as undeliverable | |
| Administrator holds returned Checks that cannot be re-mailed | 90 days from return of any check that cannot be re-mailed | |
| Administrator gives notice of uncashed checks to Participating Class Members | 90 days after the initial check mailing if check not cashed | E.D. + 118 |
| Participating Class Member deadline to cash checks | 180 days from the date of initial check mailing | E.D. + 208 |
| Participating Class Member deadline to cash re-mailed Checks (if longer) | 60 days from the check re-mailing | |
| Third settlement payment by Defendants | February 1, 2026 | Feb. 1, 2026 |
| Cy pres allocation | After check-cashing deadlines | **TBD** |
| Administrator may end the settlement website, phone number, and email | 30 days after the Administrator completes its obligations | **TBD** |
| End of Court jurisdiction to enforce terms of the Agreement | 5 years from execution of Memorandum | July 26, 2029 |

## VII.   OTHER TERMS

**A.**   **Severability of the Settlement of the Class Claims & the FCA Claim**

**1.**   **Non-Approval**

The settlement of the Class Claims shall be considered null and void if (a) the Court should for any reason decline to approve the settlement of the Class Claims, (b) the Court should for any reason fail to enter a judgment and dismissal with prejudice of the Class Claims, or (c) the judgment and dismissal of the Class Claims is reversed, modified, or declared or rendered void.  The settlement of the FCA Claim shall be considered null and void if (a) the Court should for any reason fail to enter a judgment and dismissal with prejudice of the FCA Claim, or (b) the judgment and dismissal of the FCA Claim is reversed, modified, or declared or rendered void.  The validity of the settlement of the Class Claims does not depend on the validity of the settlement of the FCA Claim and the validity of the settlement of the FCA Claim does not depend on the validity of the settlement of the Class Claims.

Suppl. Bellows Decl. Ex. A, page 31

**2. Severability**

If any provision, paragraph, clause, or sentence in this Agreement is declared to be illegal, void, invalid, or unenforceable by the Court or other authority with jurisdiction thereof, the remaining provisions, paragraphs, clauses and sentences shall be severable and shall remain in full force and effect.  The Parties agree that a void or invalid paragraph, clause, or provision shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**B. Enforcement**

**1. No Admission of Liability**

Nothing in this Agreement shall be construed to be an admission by Defendants of any wrongdoing or noncompliance with any federal, state, or local law, rule, ordinance, constitution, statute, contract, public policy, tort law, common law, or any other unlawful conduct, liability, wrongdoing, fraud, falsity, or breach of any duty owed to any party whatsoever.  Defendants specifically deny any wrongdoing with respect to each and every claim set forth in the Litigation.

**2. Governing Law**

This Agreement is made and entered into in the State of California and shall be governed by the laws of the State of California, without regard to conflict of law principles, in all respects, including execution, interpretation, performance, and enforcement.

**3. Attorneys' Fees & Costs**

A Party to this Agreement shall be entitled to recover reasonable attorneys' fees and costs from any other Party for any successful actions taken to enforce this Agreement, including any failure to pay as set forth in Section V.A.

**4. Continuing Jurisdiction**

The Parties agree that the Court shall retain jurisdiction to enforce the terms of the Agreement for a period of 5 years from July 27, 2024 (the date of execution of the Memorandum).

**5. Successors & Assigns**

This Agreement shall be binding upon and inure to the benefit of the Parties, Participating Class Members, and Injunctive Relief Class Members and their respective present and former heirs, trustees, executors, administrators, representatives, officers, directors, shareholders, agents, employees,

Suppl. Bellows Decl. Ex. A, page 32

insurers, attorneys, accountants, auditors, advisors, consultants, pension and welfare benefit plans, fiduciaries, parent companies, subsidiaries, divisions, affiliates, related companies, joint ventures, general and limited partners, predecessors, successors, and assigns, although not specifically named herein.

**C.**    **Duties of the Parties**

    **1.**    **No Retaliation or Influence**

        Defendants understand and acknowledge that they have a legal obligation not to retaliate against any Class Member who elects to participate in, opt out of, or object to the settlement of the Class Claims.  Defendants will refer any Class Member inquiries regarding this Agreement to the Settlement Administrator or Class Counsel and will not discourage or encourage, directly or indirectly, Class Member participation in, opting out of, or objection to the settlement of the Class Claims.

**D.**    **Execution & Construction**

    **1.**    **Representation**

        The Parties to this Agreement are represented by Counsel and have had an opportunity to consult with their Counsel prior to signing.

    **2.**    **Authority to Bind**

        All persons executing this Agreement for Defendants hereby warrant and promise that they are authorized to sign this Agreement on behalf of, and to bind, Defendants.

    **3.**    **Execution**

        This Agreement shall become effective upon its execution by all of the persons for whom signature spaces have been provided below.  The Parties may execute this Agreement in counterparts, any or all of which may be by facsimile or PDF or electronic copies or signatures.  Execution of counterparts shall have the same force and effect as if all Parties had signed the same document.

    **4.**    **Warranty**

        The Parties represent and declare that in executing this Agreement they rely solely upon their own judgment, belief and knowledge, and on the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims.

        The Parties further represent and warrant that they have carefully read this Agreement and

Suppl. Bellows Decl. Ex. A, page 33

know and understand its contents, and that they sign this Agreement freely and voluntarily.

**5.** **Interpretation**

The language of this Agreement shall be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties. The headings in this Agreement are solely for convenience and will not be considered in its interpretation. Where required by context, the plural includes the singular and vice versa, and the terms "and" and "or" shall mean "and/or." This Agreement is the product of negotiation and joint drafting so that any ambiguity shall not be construed against a Party.

**6.** **Modification**

This Agreement may not be changed, altered, or modified except in writing signed by the Parties and approved by the Court. The Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

**7.** **Integration Clause**

This Agreement constitutes the full and entire agreement between the Parties relating to the settlement of the Action and the transactions contemplated thereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written, and whether by a Party or such Party's legal counsel, are hereby superseded. No rights under this Agreement may be waived except in writing. The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

**8.** **Calculation of Time**

All time listed in this Agreement is in calendar days unless expressly stated otherwise. Time is calculated by (a) excluding the day of the event that triggers the period, (b) counting every day, including intermediate Saturdays, Sundays, and legal holidays, and (c) including the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

By signing below, the persons executing this Agreement represent that they have full authority to bind the Parties listed under their signatures.

Suppl. Bellows Decl. Ex. A, page 34

Docusign Envelope ID: 8D72FBAD-0656-46CB-82DB-8AC36AB608BD

1    Dated: 8/30/2024 _____, 2024    By: Denika Terry _____
                                                Denika Terry, Plaintiff and Relator
2

3    Dated: 8/30/2024 _____, 2024    By: Roy L. Huskey _____
                                                Roy Huskey III, Plaintiff and Relator
4

5    Dated: 8/30/2024 _____, 2024    By: TAMERA LIVINGSTON _____
                                                Tamera Livingston, Plaintiff and Relator
6

7

8    Dated: _____, 2024             By: _____

9                                         Name: _____
10                                        for Defendants WASATCH ADVANTAGE
                                          GROUP, LLC; CHESAPEAKE
11                                        APARTMENT HOLDINGS, LLC; ASPEN
                                          PARK HOLDINGS, LLC; BENT TREE
12                                        APARTMENTS, LLC; CALIFORNIA
                                          PLACE APARTMENTS, LLC; CANYON
13                                        CLUB HOLDINGS, LLC; COURTYARD
                                          AT CENTRAL PARK APARTMENTS,
14                                        LLC; CREEKSIDE HOLDINGS, LTD;
                                          RIVER OAKS HOLDINGS, LLC;
15                                        WASATCH PREMIER PROPERTIES, LLC;
                                          WASATCH POOL HOLDINGS III, LLC;
16                                        WASATCH POOL HOLDINGS, LLC;
                                          CAMELOT LAKES HOLDINGS, LLC;
17                                        HERITAGE PARK APARTMENTS, LP;
                                          PEPPERTREE APARTMENT HOLDINGS,
18                                        LP; SHADOW WAY APARTMENTS, LP;
                                          WASATCH QUAIL RUN GP, LLC
19

20

21

22   Dated: _____, 2024             By: _____

23                                        Name: _____
                                          for Defendants WASATCH PROPERTY
24                                        MANAGEMENT, INC., LOGAN PARK
                                          APARTMENTS, LLC, LOGAN PARK
25                                        APARTMENTS, LP, BELLWOOD JERRON
                                          HOLDINGS, LLC, BELLWOOD JERRON
26                                        APARTMENTS, LP, HAYWARD SENIOR
                                          APARTMENTS, LP, OAK VALLEY
27                                        APARTMENTS, LLC, OAK VALLEY
                                          HOLDINGS, LP, PIEDMONT
28

Suppl. Bellows Decl. Ex. A, page 35

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

1   Dated: _____, 2024        By: _____
                                              Denika Terry, Plaintiff and Relator
2

3   Dated: _____, 2024        By: _____
                                              Roy Huskey III, Plaintiff and Relator
4

5   Dated: _____, 2024        By: _____
                                              Tamera Livingston, Plaintiff and Relator
6

7

8   Dated: ___8/30/2024___, 2024          By: _*Dell Loy Hansen*_____
                                              DB21EF75BD684DF...
9
                                          Name: __Dell Loy Hansen_____
10                                        for Defendants WASATCH ADVANTAGE
                                          GROUP, LLC; CHESAPEAKE
11                                        APARTMENT HOLDINGS, LLC; ASPEN
                                          PARK HOLDINGS, LLC; BENT TREE
12                                        APARTMENTS, LLC; CALIFORNIA
                                          PLACE APARTMENTS, LLC; CANYON
13                                        CLUB HOLDINGS, LLC; COURTYARD
                                          AT CENTRAL PARK APARTMENTS,
14                                        LLC; CREEKSIDE HOLDINGS, LTD;
                                          RIVER OAKS HOLDINGS, LLC;
15                                        WASATCH PREMIER PROPERTIES, LLC;
                                          WASATCH POOL HOLDINGS III, LLC;
16                                        WASATCH POOL HOLDINGS, LLC;
                                          CAMELOT LAKES HOLDINGS, LLC;
17                                        HERITAGE PARK APARTMENTS, LP;
                                          PEPPERTREE APARTMENT HOLDINGS,
18                                        LP; SHADOW WAY APARTMENTS, LP;
                                          WASATCH QUAIL RUN GP, LLC
19

20

21

22  Dated: ___8/30/2024___, 2024          By: _*Dell Loy Hansen*_____
                                              DB21EF75BD684DF...
23
                                          Name: __Dell Loy Hansen_____
24                                        for Defendants WASATCH PROPERTY
                                          MANAGEMENT, INC., LOGAN PARK
25                                        APARTMENTS, LLC, LOGAN PARK
                                          APARTMENTS, LP, BELLWOOD JERRON
26                                        HOLDINGS, LLC, BELLWOOD JERRON
                                          APARTMENTS, LP, HAYWARD SENIOR
27                                        APARTMENTS, LP, OAK VALLEY
                                          APARTMENTS, LLC, OAK VALLEY
28                                        HOLDINGS, LP, PIEDMONT

                                    33

Suppl. Bellows Decl. Ex. A, page 36

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786



1  APARTMENTS, LP, POINT NATOMAS
2  APARTMENTS, LLC, POINT NATOMAS
   APARTMENTS, LP, SPRING VILLA
3  APARTMENTS, LP, SUN VALLEY
   HOLDINGS, LTD, VILLAGE GROVE
4  APARTMENTS, LP

5
   Dated: _____8/30/2024_____, 2024   By: _Dell Loy Hansen_____
6                                            └ DB21EF75BD684DF...

7  Name: ___Dell Loy Hansen_____
   for ARROYO VISTA HOLDINGS, LLC,
8  AZTEC PREMIER, LLC, BRIGHTON
   PLACE HOLDINGS, LLC, BROADMOOR
9  VILLAGE APARTMENTS, LLC,
   BROOKSIDE HOLDINGS, INC.,
10 WASATCH PREMIER BURNETT, LLC,
   BROOKSIDE-PREMIER, LLC,
11 CIMARRON PLACE APARTMENTS, LLC,
   CROSSROADS APARTMENT
12 HOLDINGS, LLC, THE FALLS AT
   HUNTERS POINTE HOLDINGS, LLC,
13 SOUTHTOWNE APARTMENTS, LLC,
   GLEN OAKS APARTMENT HOLDINGS,
14 LLC LAYTON APARTMENT HOLDINGS,
   LLC, HERON POINTE APARTMENTS,
15 LLC WASATCH PREMIER
   METROPOLITAN, LLC, WASATCH POOL
16 HOLDINGS IV, LLC PALLADIO
   HOLDING, LLC, PROMONTORY-
17 PREMIER, LLC. RANCHWOOD
   APARTMENT HOLDINGS, LLC
18 REMINGTON HOLDINGS, LLC,
   RENAISSANCE URBAN LIVING, LLC,
19 RIO SECO PREMIER, LLC RIVER POINT
   APARTMENTS, LLC, SANDS
20 APARTMENT HOLDINGS, LLC, AXIS
   GRAND HOLDINGS, LLC
21
22
23
   Dated: _____8/30/2024_____, 2024   By: _Jeff Nelson_____
24                                           └ 7C33EC275711425...

25 Name: ___Jeff Nielson_____
   for 616 SOUTH HOLDINGS, LP,
26 ARCADIA HOLDINGS, LP ARCADIA II
   HOLDINGS, LP,  1700 SOUTH
27 HOLDINGS, LP,  VILLAS AT 1400
   SOUTH HOLDINGS, LP,  GARDEN
28 LOFTS HOLDINGS LP,  KIMPTON

34

Suppl. Bellows Decl. Ex. A, page 37

Docusign Envelope ID: A690BD7B-DB55-40F9-ACEB-B2F476203786

SQUARE APARTMENTS LP,  N-1
HOLDINGS, LLC,  JORDAN BLUFFS
HOLDINGS, LP, AF 600 HOLDINGS LP,
TUSCANY VILLAS HOLDINGS, LP,
VERANDA HOLDINGS, LP

Dated: _____8/30/2024_____, 2024     By: _____

Name: __Kipling Sheppard_____
for FLORENTINE VILLAS HOLDINGS,
LP, LOGAN HOMESTEAD
APARTMENTS, LP, PROVIDENCE
PLACE HOLDINGS, LP, SPRINGWOOD
HOLDINGS, LP

Dated: _____8/30/2024_____, 2024     By: _____

Name: __Paul Willie_____
for DEVONSHIRE COURT
CONDOMINIUMS, LLC

Approved as to Form:

Dated: _____, 2024     By: _____
                                      Jesse Newmark
                                      Centro Legal de la Raza
                                      Attorneys for Plaintiffs and Relators

Dated: _____, 2024     By: _____
                                      Ryan Matthews
                                      Joseph A. Salazar Jr.
                                      Lewis Brisbois Bisgaard & Smith, LLP,
                                      for Defendants WASATCH PROPERTY
                                      MANAGEMENT, INC., LOGAN PARK
                                      APARTMENTS, LLC, LOGAN PARK
                                      APARTMENTS, LP, BELLWOOD
                                      JERRON HOLDINGS, LLC,
                                      BELLWOOD JERRON
                                      APARTMENTS, LP, HAYWARD
                                      SENIOR APARTMENTS, LP, OAK
                                      VALLEY APARTMENTS, LLC, OAK
                                      VALLEY HOLDINGS, LP,
                                      PIEDMONT APARTMENTS, LP,
                                      POINT NATOMAS APARTMENTS,
                                      LLC, POINT NATOMAS

35

Suppl. Bellows Decl. Ex. A, page 38

Docusign Envelope ID: 8D72FBAD-0656-46CB-82DB-8AC36AB608BD

1  SQUARE APARTMENTS LP,  N-1
2  HOLDINGS, LLC,  JORDAN BLUFFS
   HOLDINGS, LP, AF 600 HOLDINGS LP,
3  TUSCANY VILLAS HOLDINGS, LP,
   VERANDA HOLDINGS, LP
4
   Dated: _____, 2024        By: _____
5
6  Name: _____
   for FLORENTINE VILLAS HOLDINGS,
7  LP, LOGAN HOMESTEAD
   APARTMENTS, LP, PROVIDENCE
8  PLACE HOLDINGS, LP, SPRINGWOOD
   HOLDINGS, LP
9
   Dated: _____, 2024        By: _____
10
11 Name: _____
   for DEVONSHIRE COURT
12 CONDOMINIUMS, LLC
13
14 Approved as to Form:
15
16 Dated: 8/30/2024_____, 2024        By: _____
                                            Jesse Newmark
17                                          Centro Legal de la Raza
18                                          Attorneys for Plaintiffs and Relators

19 Dated: _____, 2024        By: _____
                                            Ryan Matthews
20                                          Joseph A. Salazar Jr.
                                            Lewis Brisbois Bisgaard & Smith, LLP,
21                                          for Defendants WASATCH PROPERTY
                                            MANAGEMENT, INC., LOGAN PARK
22                                          APARTMENTS, LLC, LOGAN PARK
                                            APARTMENTS, LP, BELLWOOD
23                                          JERRON HOLDINGS, LLC,
                                            BELLWOOD JERRON
24                                          APARTMENTS, LP, HAYWARD
                                            SENIOR APARTMENTS, LP, OAK
25                                          VALLEY APARTMENTS, LLC, OAK
                                            VALLEY HOLDINGS, LP,
26                                          PIEDMONT APARTMENTS, LP,
                                            POINT NATOMAS APARTMENTS,
27                                          LLC, POINT NATOMAS
28

35

Suppl. Bellows Decl. Ex. A, page 39

Docusign Envelope ID: D31631D1-1C2D-4344-9CAC-41AE70904C00

SQUARE APARTMENTS LP, N-1 HOLDINGS, LLC, JORDAN BLUFFS HOLDINGS, LP, AF 600 HOLDINGS LP, TUSCANY VILLAS HOLDINGS, LP, VERANDA HOLDINGS, LP

Dated: _____8/30/2024_____, 2024

By: _____

Name: __Kipling Sheppard__

for FLORENTINE VILLAS HOLDINGS, LP, LOGAN HOMESTEAD APARTMENTS, LP, PROVIDENCE PLACE HOLDINGS, LP, SPRINGWOOD HOLDINGS, LP

Dated: _____8/30/2024_____, 2024

By: _____

Name: __Paul Willie__

for DEVONSHIRE COURT CONDOMINIUMS, LLC

Approved as to Form:

Dated: _____, 2024

By: _____
Jesse Newmark
Centro Legal de la Raza
Attorneys for Plaintiffs and Relators

Dated: _____9/13/2024_____, 2024

By: _____
Ryan Matthews
Joseph A. Salazar Jr.
Lewis Brisbois Bisgaard & Smith, LLP, for Defendants WASATCH PROPERTY MANAGEMENT, INC., LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON APARTMENTS, LP, HAYWARD SENIOR APARTMENTS, LP, OAK VALLEY APARTMENTS, LLC, OAK VALLEY HOLDINGS, LP, PIEDMONT APARTMENTS, LP, POINT NATOMAS APARTMENTS, LLC, POINT NATOMAS

35

Suppl. Bellows Decl. Ex. A, page 40

Docusign Envelope ID: D31631D1-1C2D-4344-9CAC-41AE70904C00

APARTMENTS, LP, SPRING VILLA
APARTMENTS, LP, SUN VALLEY
HOLDINGS, LTD, VILLAGE GROVE
APARTMENTS, LP

Dated: _____, 2024        By: _____

Richard T. Collins
Damon D. Eisenbrey
Arnall Golden Gregory LLP, for
Defendants WASATCH ADVANTAGE
GROUP, LLC; CHESAPEAKE
APARTMENT HOLDINGS, LLC;
ASPEN PARK HOLDINGS, LLC;
BENT TREE APARTMENTS, LLC;
CALIFORNIA PLACE
APARTMENTS, LLC; CANYON
CLUB HOLDINGS, LLC;
COURTYARD AT CENTRAL PARK
APARTMENTS, LLC; CREEKSIDE
HOLDINGS, LTD; RIVER OAKS
HOLDINGS, LLC; WASATCH
PREMIER PROPERTIES, LLC;
WASATCH POOL HOLDINGS III,
LLC; WASATCH POOL HOLDINGS,
LLC; CAMELOT LAKES HOLDINGS,
LLC; HERITAGE PARK
APARTMENTS, LP; PEPPERTREE
APARTMENT HOLDINGS, LP;
SHADOW WAY APARTMENTS, LP;
WASATCH QUAIL RUN GP, LLC

Dated: _____, 2024        By: _____

Richard T. Collins
Damon D. Eisenbrey
Arnall Golden Gregory LLP, for
ARROYO VISTA HOLDINGS, LLC,
AZTEC PREMIER, LLC, BRIGHTON
PLACE HOLDINGS, LLC,
BROADMOOR VILLAGE
APARTMENTS, LLC, BROOKSIDE
HOLDINGS, INC., WASATCH
PREMIER BURNETT, LLC,
BROOKSIDE-PREMIER, LLC,
CIMARRON PLACE APARTMENTS,
LLC, CROSSROADS APARTMENT
HOLDINGS, LLC, THE FALLS AT
HUNTERS POINTE HOLDINGS, LLC,

36

Suppl. Bellows Decl. Ex. A, page 41

APARTMENTS, LP, SPRING VILLA
APARTMENTS, LP, SUN VALLEY
HOLDINGS, LTD, VILLAGE GROVE
APARTMENTS, LP

Dated: _____, 2024        By: _____
                                            Richard T. Collins
                                            Damon D. Eisenbrey
                                            Arnall Golden Gregory LLP, for
                                            Defendants WASATCH ADVANTAGE
                                            GROUP, LLC; CHESAPEAKE
                                            APARTMENT HOLDINGS, LLC;
                                            ASPEN PARK HOLDINGS, LLC;
                                            BENT TREE APARTMENTS, LLC;
                                            CALIFORNIA PLACE
                                            APARTMENTS, LLC; CANYON
                                            CLUB HOLDINGS, LLC;
                                            COURTYARD AT CENTRAL PARK
                                            APARTMENTS, LLC; CREEKSIDE
                                            HOLDINGS, LTD; RIVER OAKS
                                            HOLDINGS, LLC; WASATCH
                                            PREMIER PROPERTIES, LLC;
                                            WASATCH POOL HOLDINGS III,
                                            LLC; WASATCH POOL HOLDINGS,
                                            LLC; CAMELOT LAKES HOLDINGS,
                                            LLC; HERITAGE PARK
                                            APARTMENTS, LP; PEPPERTREE
                                            APARTMENT HOLDINGS, LP;
                                            SHADOW WAY APARTMENTS, LP;
                                            WASATCH QUAIL RUN GP, LLC

Dated: _____, 2024        By: _____
                                            Richard T. Collins
                                            Damon D. Eisenbrey
                                            Arnall Golden Gregory LLP, for
                                            ARROYO VISTA HOLDINGS, LLC,
                                            AZTEC PREMIER, LLC, BRIGHTON
                                            PLACE HOLDINGS, LLC,
                                            BROADMOOR VILLAGE
                                            APARTMENTS, LLC, BROOKSIDE
                                            HOLDINGS, INC., WASATCH
                                            PREMIER BURNETT, LLC,
                                            BROOKSIDE-PREMIER, LLC,
                                            CIMARRON PLACE APARTMENTS,
                                            LLC, CROSSROADS APARTMENT
                                            HOLDINGS, LLC, THE FALLS AT
                                            HUNTERS POINTE HOLDINGS, LLC,

36

Suppl. Bellows Decl. Ex. A, page 42

1                              SOUTHTOWNE APARTMENTS, LLC,
GLEN OAKS APARTMENT
2                              HOLDINGS, LLC LAYTON
APARTMENT HOLDINGS, LLC,
3                              HERON POINTE APARTMENTS, LLC
WASATCH PREMIER
4                              METROPOLITAN, LLC, WASATCH
POOL HOLDINGS IV, LLC
5                              PALLADIO HOLDING, LLC,
PROMONTORY-PREMIER, LLC.
6                              RANCHWOOD APARTMENT
HOLDINGS, LLC REMINGTON
7                              HOLDINGS, LLC, RENAISSANCE
URBAN LIVING, LLC, RIO SECO
8                              PREMIER, LLC RIVER POINT
APARTMENTS, LLC, SANDS
9                              APARTMENT HOLDINGS, LLC,
AXIS GRAND HOLDINGS, LLC, 616
10                           SOUTH HOLDINGS, LP, ARCADIA
HOLDINGS, LP ARCADIA II
11                           HOLDINGS, LP, 1700 SOUTH
HOLDINGS, LP, VILLAS AT 1400
12                           SOUTH HOLDINGS, LP, GARDEN
LOFTS HOLDINGS LP, KIMPTON
13                           SQUARE APARTMENTS LP, N-1
HOLDINGS, LLC, JORDAN BLUFFS
14                           HOLDINGS, LP, AF 600 HOLDINGS
LP, TUSCANY VILLAS HOLDINGS,
15                           LP, VERANDA HOLDINGS, LP,
FLORENTINE VILLAS HOLDINGS,
16                           LP, LOGAN HOMESTEAD
APARTMENTS, LP, PROVIDENCE
17                           PLACE HOLDINGS, LP,
SPRINGWOOD HOLDINGS, LP,
18                           DEVONSHIRE COURT
CONDOMINIUMS, LLC

19

20

21

22

23

24

25

26

27

28

Suppl. Bellows Decl. Ex. A, page 43

# Exhibit 1

# Notice for Reimbursement Class Members



United States District Court
*U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*
Case No. 15-cv-00799-KJM

# Class Action Notice

## *Authorized by the U.S. District Court*

| **Records show that you are a Section 8 tenant who paid additional service charges at a Wasatch property in California between April 14, 2011, and November 30, 2022.** | **There is a $5 million settlement of a lawsuit.** <br><br> **You have the right to receive a payment.** | **Read this notice to learn about your rights.** |
|---|---|---|

### Important things to know:

- **Your total estimated payment is $[XXXX]. If this amount is less than $100, you will receive a payment of $100.**

- Unless you opt out, you will automatically receive a payment and you will be part of the settlement.

- You can call [phone] to find out if payment could affect whether you qualify for government benefits programs (like Section 8, Medi-Cal, or CalFresh) or the amount of benefits you receive. This service is **free** to you.

- Wasatch will make changes to its additional services policies for California properties. Additional services must be **optional** for Section 8 tenants.

- For more details about the case and the settlement, go to: [website].

### Para asistencia en español, por favor llame [phone] o visite [website].

Suppl. Bellows Decl. Ex. A, page 45

# About This Notice

## Why did I get this notice?

There is a proposed settlement of a class action lawsuit. The case was brought on behalf of Section 8 tenants who paid additional service fees at Wasatch properties in California from April 14, 2011, to November 30, 2022.

**You received this notice because you are a member of this group of Section 8 tenants, called the "class."** This notice describes the proposed settlement, explains your rights, and helps you decide what to do next.

## What do I do next?

Read this notice and decide if you want to:

| Options | More information about each option |
|---|---|
| **Do Nothing** | If you do nothing, you will receive a check in the mail and will be part of the settlement. |
| **Select a Different Payment Option** | You can request to be paid [digital payment option] instead of by check. You can also request to receive a lower amount if you believe payment will affect your eligibility for government benefits. |
| **Opt Out** | Opting out means you won't receive any payment and won't be part of the class. You would have the right to file your own lawsuit for damages against Wasatch or the other Defendants. You cannot opt out of the policy changes required by the settlement. |
| **Object** | Stay in the class, but tell the Court that you don't like the settlement. If the Court approves the settlement, you will still receive payment. |

## Key dates

Deadline to opt out or object: **[date]**
Settlement approval hearing: **[date]**
Deadline to select a different payment option: **[date]**

2  *U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*, Case No. 15-cv-00799-KJM

Suppl. Bellows Decl. Ex. A, page 46

# About the Lawsuit

## What is this lawsuit about?

This lawsuit is about whether Wasatch's policies requiring Section 8 tenants at its California properties to pay for "additional services" beyond the allowed rent amount violated federal and California laws. Examples of additional services are in-unit washers & dryers, parking, storage space, media packages, and renter's insurance.

Wasatch and the other Defendants deny that they did anything wrong.

### What is a class action settlement?
A class action settlement is an agreement between parties to resolve the case. Settlements can provide money to class members and changes to practices that caused harm.

## Why is there a settlement in this lawsuit?

In July 2024, the parties agreed to a settlement to end the lawsuit. Both sides want to avoid the risk, delay, and expense of more litigation.

## What happens next?

You can receive all or part of your payment and be part of the settlement, meaning that you give up your ability to sue Wasatch and the other Defendants for damages on these same issues. You can choose not to be part of the settlement, which means you will not receive any payment, but you would still be able to bring your own lawsuit for damages. This is called "opting out."  You can also object to the settlement if you don't like it.

### Where can I learn more?
You can get a complete copy of the proposed settlement and other key documents in this lawsuit at:  [website]

Wasatch will also change its additional services policies at California properties. You cannot opt out of these policy changes.

Because a class action decides the rights of all class members, the Court must approve the settlement. Payments will be made only after the Court approves the settlement. If the Court does not approve the settlement, the settlement will not happen and the lawsuit will continue.

Suppl. Bellows Decl. Ex. A, page 47

The Court will hold a hearing about whether to approve the settlement.

The hearing will be on [date] at [time] at:
Robert T. Matsui United States Courthouse
Courtroom 3, 15th Floor
501 I Street, Sacramento, CA 95814

The scheduled hearing date could change. You can check the date at: [website].

You can attend the settlement approval hearing. You can also ask the Court for permission to speak and express your opinion about the settlement. You can also hire your own lawyer at your own expense.

# About the Settlement

## How does settlement affect Wasatch's additional services policies?

The settlement requires Wasatch to inform current Section 8 tenants at its California properties that additional services (such as parking, media packages, renters' insurance, and in-unit washers & dryers) are **optional,** are not part of the rent, and cannot be required to rent an apartment. Wasatch must give Section 8 tenants **a new choice** upon renewal whether or not to enroll in additional services, and tenants can cancel them at any time. All payments will be applied first towards rent, then to additional service fees. **Wasatch cannot evict Section 8 tenants for unpaid additional services fees.** However, Wasatch can use other legal remedies to collect unpaid fees for additional services that tenants enroll in and refuse to give up.

## What money does the settlement provide?

Defendants will pay $5 million into a settlement fund. This money will be used to reimburse class members for all additional service fees they paid to Wasatch between May 1, 2011, and November 30, 2022. Class members will also receive interest as part of the settlement payment, which is payment of additional money because of the time tenants have waited to be reimbursed by Wasatch for the additional service fees.

The money in the settlement fund will also be used to pay to administer this settlement (expected to be approximately $[dollar amount]), and to make $5,000 payments to each of the three tenants the Court appointed to represent the interests of the class for the time and effort they put into the

4     *U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*, Case No. 15-cv-00799-KJM

case and the risks they took. The Court has to approve these costs.

Class members will "release" their claims as part of the settlement, which means they cannot sue Wasatch or the other Defendants for the same issues in this lawsuit. You can read the full terms of the settlement at: [website].

If there is money left over in the settlement fund after all the payments are made, it will be donated to legal aid organizations in California that provide free legal services, including to Section 8 tenants in the regions where Wasatch has properties.

## How do I get paid?

If the Court approves the settlement, you do not need to do anything. You will receive a check in the mail and be bound by the settlement.

If you want to receive your full payment [by digital payment option] or request to be paid a lower amount, you can do that by going to: [website] or calling: [number].

## How much will I be paid?

Wasatch's records show that you were the primary resident and paid monthly additional service charges between May 1, 2011, and November 30, 2022. Your settlement payment is equal to the amount of additional service charges you paid during this period, plus interest.

| Your estimated payment is: | |
|---|---|
| Reimbursement | $ |
| Interest | $ |
| **Total:** | $ |

If your total estimated payment is less than $100, you will receive a minimum payment of $100.

## When will I be paid?

Class members cannot be paid until at least 30 days after the Court approves the settlement. If there are no delays, payments will be made in spring 2025.

Please update your contact information with the settlement administrator at [website].

5     *U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*, Case No. 15-cv-00799-KJM

Suppl. Bellows Decl. Ex. A, page 49

## What if my estimated payment is wrong?

If you think the estimated payment amount above is wrong, you can dispute it by sending a letter or email by [date] to:

[Settlement Administrator]
[Street address, City, State, Zip Code] [Email]

Your written dispute must include:
(1) the case name and number;
(2) your full name and all other names used while living at Wasatch properties;
(3) your address, phone number, and email address (if you have one);
(4) a description of your dispute and supporting documents or other evidence (if you have them); and
(5) your signature (either handwritten or typed).

## Do I have to pay taxes on the settlement payment?

If the **interest** amount listed above is more than $600, you will receive a tax form (IRS Form 1099). A copy of the tax form will also be sent to the IRS. IRS Form 1099 does not apply to the reimbursement portion of the payment. If you would like tax advice, you can contact a qualified tax advisor. The lawyers in this case and the settlement administrator cannot give you tax advice.

## Will the payment affect my ability to receive government benefits?

Government benefits programs provide support like food, housing, healthcare, and financial assistance.  In California, these programs include Section 8, Medi-Cal, Medicare, MAGI-Medi-Cal, CalWORKS, CalFresh, Section 8, SSI/SSP/SSDI, In-Home Supportive Services, and WIC.

As part of the settlement, you can get free advice about whether the settlement payment may affect your eligibility for government benefits programs or the amount of benefits you receive. You can choose whether to receive the full payment, a lower payment, or no payment.

**To get advice about whether payment will affect your government benefits, you can call [number].  This is free to all class members.**

## Do I have a lawyer in this lawsuit?

In a class action, the court appoints lawyers to represent the interests of all the class members. For this case, the court appointed the following lawyers:

| | |
|---|---|
| Laura L. Ho, Esq.<br>Anne Bellows, Esq.<br>Stephanie Tilden, Esq.<br>GOLDSTEIN, BORGEN, DARDARIAN & HO<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612<br>(510) 763-9800 | Lindsay Nako, Esq.<br>Lori Rifkin, Esq.<br>Fawn Rajbhandari-Korr, Esq.<br>Meredith Dixon, Esq.<br>IMPACT FUND<br>2080 Addison Street, Suite 5<br>Berkeley, CA 947104<br>(510) 845-3473 |
| Andrew Wolff, Esq.<br>LAW OFFICES OF ANDREW WOLFF, PC<br>1615 Broadway, 4th Floor<br>Oakland, CA 94612<br>(510) 834-3300 | Jesse Newmark, Esq.<br>CENTRO LEGAL DE LA RAZA<br>3400 E. 12th Street<br>Oakland, CA 94601<br>(510) 437-1863 |

You can also hire your own lawyer at your own expense.

## Do I have to pay the lawyers in this lawsuit?

So far, your lawyers have not been paid any money for their work or expenses. Lawyers' fees and costs will be paid as part of the Settlement. **You do not have to pay anything to the lawyers.**

The settlement allows the Court to approve a payment to the lawyers of up to $4.5 million.  This is called "attorneys' fees and costs," and it pays the lawyers for their work and expenses they paid. This amount is separate from the $5 million settlement fund for class members.

# Opting Out of the Settlement

## What if I don't want to be part of this settlement?

You can opt out of the settlement. If you opt out, you will not receive a payment, but you will have the right to file your own case for damages against Wasatch or the other Defendants. You cannot opt out of the additional services policy changes at Wasatch properties in California.

7     *U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*, Case No. 15-cv-00799-KJM

To opt out, you must mail or email your request to opt out by [date] to:

[Settlement Administrator]
[Street address, City, State, Zip Code] [Email]

Include the case name and number, your full name and all other names used while living at Wasatch properties, address, phone number, email (if you have one), and your signature (handwritten or typed).

# Objecting to the Settlement

## What if I disagree with the settlement?

If you disagree with any part of the settlement but don't want to opt out, you can object. You must say why you think the Court should not approve the settlement and whether your objection applies to just you, a part of the class, or the entire class. The Court will consider this when it decides whether to approve or reject the settlement. The Court cannot change the settlement. You can, but don't have to, hire a lawyer to help you with an objection.

To object, you must mail or email your objection by [date] to:

[Settlement Administrator]
[Street address, City, State, Zip Code] [Email]

Your written objection must include:
(1)  the case name and number;
(2) your full name and all other names used while living at Wasatch properties;
(3) your address, phone number, and email (if you have one);
(4) the reasons why you think the agreement should not be approved;
(5) whether you or your lawyer intend to appear at the settlement approval hearing and your lawyer's name; and
(6) your signature (handwritten or typed).

# Key Resources

- All settlement documents can be found here: [website]
- For questions about the settlement, call: [phone]
- For free advice about your government benefits, call: [phone]
- You are welcome to contact the Settlement Administrator or attorneys listed above with any questions. Please do not contact the court.
- **Para asistencia en español, por favor llame [phone] o visite [website]**

Suppl. Bellows Decl. Ex. A, page 52

# Exhibit 2

# Notice for Injunctive Relief Class Members

Suppl. Bellows Decl. Ex. A, page 53



United States District Court
*U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*
Case No. 15-cv-00799-KJM

# Class Action Notice

## *Authorized by the U.S. District Court*

| Records show that you are a Section 8 tenant who lives at a Wasatch property in California. | There is a settlement of a lawsuit that requires Wasatch to make changes at your property. | Read this notice to learn about your rights. |




### Important things to know:

- There is a proposed settlement of a class action lawsuit brought by Section 8 tenants who paid or may have to pay additional service charges at Wasatch properties in California.

- The settlement changes Wasatch's policies on additional service charges for Section 8 tenants. **Additional service charges must be optional, can be cancelled any time, and generally cannot be a reason for eviction or a pay or quit notice**.

- You will be given a new choice whether or not to enroll in additional services.

- You can learn more about the case and the settlement at: [website].

### Key dates

Deadline for Wasatch policy changes: **[date]**
Deadline to object: **[date]**
Settlement approval hearing: **[date]**

**Para asistencia en español, por favor llame [phone]
o visite [website].**

# About the Lawsuit

## What is this lawsuit about?

This lawsuit is about whether Wasatch's policies requiring Section 8 tenants at its California properties to pay for "additional services" beyond the allowed rent amount violated federal and California laws. Examples of additional services are in-unit washers & dryers, parking, storage space, media packages, and renter's insurance.

**What is a class action settlement?**
A class action settlement is an agreement between the parties to resolve the case. Settlements can provide money to class members and changes to practices that caused harm.

Wasatch and the other Defendants deny that they did anything wrong.

## Why is there a settlement in this lawsuit?

In July 2024, the parties agreed to a settlement to end the lawsuit. Both sides want to avoid the risk, delay, and expense of more litigation.

## What happens next?

Wasatch will make changes to its additional services policies at California properties by September 25, 2024.

Because a class action decides the rights of all class members, the Court must approve the settlement. If the Court does not approve the settlement, the settlement will not happen and the lawsuit will continue.

**Where can I learn more?**
You can get a complete copy of the proposed settlement and other key documents in this lawsuit at:
[website]

The Court will hold a hearing about whether to approve the settlement.

The hearing will be on [date] at [time] at:
Robert T. Matsui United States Courthouse
Courtroom 3, 15th Floor
501 I Street, Sacramento, CA 95814

The scheduled hearing date could change. You can check the date at: [website]. You can attend the hearing. You can also ask the Court for permission to speak and express your opinion about the settlement. You can also hire your own lawyer at your own expense.

2      *U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*, Case No. 15-cv-00799-KJM

# About the Settlement

## How does settlement affect Wasatch's additional services policies?

The settlement requires Wasatch to inform current Section 8 tenants at its California properties that additional services (such as parking, media packages, renters' insurance, and in-unit washers & dryers) are **optional,** are not part of the rent, and cannot be required to rent an apartment. Wasatch must give Section 8 tenants **a new choice** upon renewal whether or not to enroll in additional services, and tenants can cancel them at any time. All payments will be applied first towards rent, then to additional service fees. **Wasatch cannot evict Section 8 tenants for unpaid additional services fees.** However, Wasatch can use other legal remedies to collect unpaid fees for additional services that tenants enroll in and refuse to give up.

## What money does the settlement provide?

Defendants will pay $5 million into a settlement fund. This money will be used to reimburse class members who paid additional service fees to Wasatch between May 1, 2011, and November 30, 2022, plus interest.

**According to Wasatch's records, you did not pay additional service fees during this time period and will not receive money from the settlement. You can call [phone number] if you believe you paid additional fees and should be reimbursed under the settlement.**

## Do I have a lawyer in this lawsuit?

In a class action, the court appoints lawyers to represent the interests of all the class members. For this case, the court appointed the following lawyers:

| | |
|---|---|
| Laura L. Ho, Esq.<br>Anne Bellows, Esq.<br>Stephanie Tilden, Esq.<br>GOLDSTEIN, BORGEN, DARDARIAN & HO<br>155 Grand Avenue, Suite 900<br>Oakland, CA 94612<br>(510) 763-9800<br>[website] | Lindsay Nako, Esq.<br>Lori Rifkin, Esq.<br>Fawn Rajbhandari-Korr, Esq.<br>Meredith Dixon, Esq.<br>IMPACT FUND<br>2080 Addison Street, Suite 5<br>Berkeley, CA 947104<br>(510) 845-3473 |
| Andrew Wolff, Esq.<br>LAW OFFICES OF ANDREW WOLFF, PC<br>1615 Broadway, 4th Floor<br>Oakland, CA 94612<br>(510) 834-3300 | Jesse Newmark, Esq.<br>CENTRO LEGAL DE LA RAZA<br>3400 E. 12th Street<br>Oakland, CA 94601<br>(510) 437-1863 |

You can also hire your own lawyer at your own expense.

## Do I have to pay the lawyers in this lawsuit?

So far, your lawyers have not been paid any money for their work or expenses. Lawyers' fees and costs will be paid as part of the Settlement. **You do not have to pay anything to the lawyers.**

The settlement allows the Court to approve a payment to the lawyers of up to $4.5 million.  This is called "attorneys' fees and costs," and it pays the lawyers for their work and expenses they paid.

# Objecting to the Settlement

## What if I disagree with the settlement?

If you disagree with any part of the settlement, you can object. You must say why you think the Court should not approve the settlement and whether your objection applies to just you, a part of the class, or the entire class. The Court will consider this when it decides whether to approve or reject the entire settlement. The Court cannot change the settlement. You can, but don't have to, hire a lawyer to help you with an objection.

To object, you must mail or email your objection by [date] to:

[Settlement Administrator]
[Street address, City, State, Zip Code] [Email]

Your written objection must include:
(1)  the case name and number;
(2) your full name and all other names used while living at Wasatch properties;
(3) your address, phone number, and email address (if you have one);
(4) the reasons why you think the settlement should not be approved;
(5) whether either you or your lawyer intend to appear at the settlement approval hearing and your lawyer's name; and
(6) your signature (handwritten or typed).

# Key Resources

- All settlement documents can be found here: [website]
- If you believe you may be eligible for reimbursement of additional service fees, call the Settlement Administrator at: [phone]
- You are welcome to contact the Settlement Administrator or attorneys listed above with any questions. Please do not contact the court.
- **Para asistencia en español, por favor llame [phone] o visite [website]**

4      *U.S. ex rel. Terry v. Wasatch Advantage Group, LLC, et al.*, Case No. 15-cv-00799-KJM

# Exhibit 3

# Additional Parties to False Claims Act Release

Suppl. Bellows Decl. Ex. A, page 58

| No. | Property Name | Entity Name | Location |
|-----|---------------|-------------|----------|
| 1 | 600 Lofts | 616 South Holdings, LP | Salt Lake City, UT |
| 2 | Arcadia | Arcadia Holdings, LP | Sandy, UT |
| 3 | Arcadia II | Arcadia II Holdings, LP | Sandy, UT |
| 4 | Arroyo Vista Apartments | Arroyo Vista Holdings, LLC | Glendale, AZ |
| 5 | Aztec Springs Apartments | Aztec Premier, LLC | Mesa, AZ |
| 6 | Brighton Place Apartments | Brighton Place Holdings, LLC | Midvale, UT |
| 7 | Broadmoor Village Apartments | Broadmoor Village Apartments, LLC | West Jordan, UT |
| 8 | Brookside Apartments | Brookside Holdings, Inc. | Phoenix, AZ |
| 9 | Burnett Station Apartments | Wasatch Premier Burnett, LLC | Renton, WA |
| 10 | Canyon Ridge Apartments | Brookside-Premier, LLC | Surprise, AZ |
| 11 | Cimarron Place Apartments | Cimarron Place Apartments, LLC | Tucson, AZ |
| 12 | City Lofts | 1700 South Holdings, LP | Salt Lake City, UT |
| 13 | Crossroads Apartments | Crossroads Apartment Holdings, LLC | West Valley, UT |
| 14 | Devonshire Court East | Devonshire Court Condominiums, LLC | North Logan, UT |
| 15 | Devonshire Court West | Devonshire Court Condominiums, LLC | North Logan, UT |
| 16 | Enclave at 1400 South | Villas at 1400 South Holdings, LP | Salt Lake City, UT |
| 17 | Falls at Hunters Pointe | The Falls at Hunters Pointe Holdings, LLC | Sandy, UT |
| 18 | Florentine Villas | Florentine Villas Holdings, LP | Midvale, UT |
| 19 | Four Seasons at Southtowne | Southtowne Apartments, LLC | South Jordan, UT |
| 20 | Garden Lofts | Garden Lofts Holdings LP | Salt Lake City, UT |

1

Suppl. Bellows Decl. Ex. A, page 59

| 21 | Glen Oaks Apartments | Glen Oaks Apartment Holdings, LLC | Glendale, AZ |
| 22 | Goldstone Place Apartments | Layton Apartment Holdings, LLC | Clearfield, UT |
| 23 | Heron Pointe Apartments | Heron Pointe Apartments, LLC | Fresno, CA |
| 24 | Kimpton Square | Kimpton Square Apartments LP | Midvale, UT |
| 25 | Lofts at 7800 | N-1 Holdings, LLC | Midvale, UT |
| 26 | Meadows at Homestead | Logan Homestead Apartments, LP | Logan, UT |
| 27 | Metropolitan Place Apartments | Wasatch Premier Metropolitan, LLC | Renton, UT |
| 28 | Overlook at Pantano | Wasatch Pool Holdings IV, LLC | Tucson, AZ |
| 29 | Palladio Apartments – Phase 1 | Palladio Holding, LLC | Salt Lake City, UT |
| 30 | Promontory Point Apartments | Promontory-Premier, LLC | Sandy, UT |
| 31 | Providence Place | Providence Place Holdings, LP | Salt Lake City, UT |
| 32 | Ranchwood Apartments | Ranchwood Apartment Holdings, LLC | Glendale, AZ |
| 33 | Remington Apartments | Remington Holdings, LLC | Midvale, UT |
| 34 | Revo 225 | Renaissance Urban Living, LLC | Renton, WA |
| 35 | Rio Seco Apartments | Rio Seco Premier, LLC | Tucson, AZ |
| 36 | River Point Apartments | River Point Apartments, LLC | Tucson, AZ |
| 37 | Sands Apartments | Sands Apartment Holdings, LLC | Mesa, AZ |
| 38 | Springwood Apartments | Springwood Holdings, LP | Bountiful, UT |
| 39 | The Reserve at View 78 | Jordan Bluffs Holdings, LP | Midvale, UT |
| 40 | The Sage | AF 600 Holdings LP | American Fork, IT |

2

Suppl. Bellows Decl. Ex. A, page 60

| 41 | Tuscany Villas | Tuscany Villas Holdings, LP | Midvale, UT |
| 42 | Veranda | Veranda Holdings, LP | Draper, UT |
| 43 | Wasatch Hills Apartments | Axis Grand Holdings, LLC | Renton, WA |

3

Suppl. Bellows Decl. Ex. A, page 61