Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne P. Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie E. Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800 | Fax: (510) 835-1417

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3400 E. 12th Street
Oakland, CA 94601
Tel: (510) 437-1863

Lindsay Nako (SBN 239090)
lnako@impactfund.org
Lori Rifkin (SBN 244081)
lrifkin@impactfund.org
Fawn Rajbhandari-Korr (SBN 315888)
fkorr@impactfund.org
Meredith Dixon (SBN 346864)
mdixon@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473 | Fax: (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes
*[Additional Counsel for Relators listed on following page]*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA | Case No.: 2:15-CV-00799-KJM-SCR |
| | CLASS ACTION |
| Plaintiffs/Relators, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REASONABLE FEES, COSTS, AND EXPENSES** |
| vs. | Date:    Jan. 23, 2025 |
| WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON | Time:    10:00 a.m. Dept:    Court 3, 15th Floor Before: Hon. Chief Judge Kimberly J. Mueller |

APARTMENTS, LP, BENT TREE
APARTMENTS, LLC, CALIFORNIA PLACE
APARTMENTS, LLC, CAMELOT LAKES
HOLDINGS, LLC, CANYON CLUB HOLDINGS,
LLC, COURTYARD AT CENTRAL PARK
APARTMENTS, LLC, CREEKSIDE HOLDINGS,
LTD, HAYWARD SENIOR APARTMENTS, LP,
HERITAGE PARK APARTMENTS, LP, OAK
VALLEY APARTMENTS, LLC, OAK VALLEY
HOLDINGS, LP, PEPPERTREE APARTMENT
HOLDINGS, LP, PIEDMONT APARTMENTS,
LP, POINT NATOMAS APARTMENTS, LLC,
POINT NATOMAS APARTMENTS, LP, RIVER
OAKS HOLDINGS, LLC, SHADOW WAY
APARTMENTS, LP, SPRING VILLA
APARTMENTS, LP, SUN VALLEY HOLDINGS,
LTD, VILLAGE GROVE APARTMENTS, LP,
WASATCH QUAIL RUN GP, LLC, WASATCH
PREMIER PROPERTIES, LLC, WASATCH
POOL HOLDINGS III, LLC,
and DOES 1-4,

     Defendants.

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Tel: (510) 834-3300 | Fax: (510) 834-3377

Attorneys for Plaintiffs and Relators and the Certified Classes

Lawrence Anthony Organ (SBN 175503)
larry@civilrightsca.com
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, CA 94960-2610
Tel: (415) 453-4740 | Fax: (415) 785-7352

Attorneys for Relators

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................... 1

II. BACKGROUND ................................................................................................... 2

    A.  The Settlement Achieved Outstanding Results for the Certified Classes. ..................... 2

        1.  Injunctive and Monetary Relief ................................................... 2

        2.  Attorneys' Fees, Costs, and Expenses .................................... 2

    B.  The Results Achieved Reflect Years of Dedicated and Skilled Litigation by Class Counsel. ................................................................................. 3

        1.  Case Initiation through Class Certification (Oct. 2013 through Oct. 2018) ....... 4

        2.  Discovery, Bifurcation, and Summary Judgment (Nov. 2018 to Feb. 2024) ..... 5

        3.  Remedies Discovery, Summary Judgment on Class Damages, and Initial Trial Preparation (Dec. 2022 through Feb. 1, 2024) ................. 7

        4.  Pretrial Proceedings and Settlement (Feb. 2, 2024 through Jul. 27, 2024) ....... 8

        5.  Settlement Agreement and Approval Proceedings (Jul. 28, 2024 to Present). ................................................................................. 9

III. ARGUMENT ....................................................................................................... 10

    A.  Class Counsel's Fees and Costs Are Proper Under Fee Shifting Principles. ............... 10

        1.  Fee Shifting Applies to the Class Claims Successfully Litigated by Plaintiffs. ................................................................................. 10

        2.  Plaintiffs' Lodestar is Reasonable. ................................................ 13

            a.  Class Counsel's Hours are Reasonable. .................................. 14

            b.  Class Counsel's Requested Rates are Reasonable ....................... 15

        3.  A Lodestar Multiplier of 1.5 or More Would Be Appropriate in this Case. ................................................................................. 17

    B.  A Percent-of-Fund Cross Check Affirms the Reasonableness of the Award. .............. 19

    C.  Class Counsel's Litigation Costs and Expenses Are Recoverable and Reasonable. ................................................................................. 20

IV. CONCLUSION .................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Safe Streets USA, LLC*,
  No. 2:18-CV-00323-KJM-JDP, 2024 WL 4826446 (E.D. Cal. Nov. 19, 2024) ..................... 16, 17

*Avery v. Akima Support Operations, LLC*,
  No. 2:19-CV-00924-DAD-AC, 2022 WL 4473211 (E.D. Cal. Sept. 26, 2022) ........................... 16

*Bennett v. SimplexGrinnell LP*,
  No. 3:11-cv-01854-JST, 2015 WL 12932332 (N.D. Cal. Sept. 3, 2015) ...................................... 20

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...................................................................................... 10, 14, 17, 19

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986) ...................................................................................................................... 19

*Cooks v. TNG GP*,
  No. 2:16-CV-01160-KJM-AC, 2021 WL 5139613 (E.D. Cal. Nov. 4, 2021) .................. 16, 17, 18

*Gutierrez v. Wells Fargo Bank, N.A*,
  No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ........................................ 18

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...................................................................................................................... 16

*Kelly v. Denault*,
  374 F. Supp. 3d 884 (N.D. Cal. 2018) ......................................................................................... 11

*McCown v. City of Fontana*,
  565 F.3d 1097 (9th Cir. 2009) ...................................................................................................... 13

*Milburn v. PetSmart, Inc.*,
  No. 118CV00535DADSKO, 2019 WL 5566313 (E.D. Cal. Oct. 29, 2019) ........................... 16, 21

*Miller v. CEVA Logistics USA, Inc.*,
  No. 2:13-cv-01321-TLN-CKD, 2015 WL 4730176 (E.D. Cal. Aug. 10, 2015) ........................... 20

*Moore v. James H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) ........................................................................................................ 14

*Mostajo v. Nationwide Mut. Ins. Co.*,
  No. 2:17-CV-00350-DAD-AC, 2023 WL 2918657 (E.D. Cal. Apr. 12, 2023) ...................... 16, 17

*Nat'l Fed'n of the Blind v. Target Corp.*,
  No. C 06-01802 MHP, 2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) ........................................... 18

*In re Optical Disk Drive Prods. Antitrust Litig.*,
   959 F.3d 922 (9th Cir. 2020) ................................................................... 20

*Ramirez v. Merrill Gardens, LLC*,
   No. 1:22-CV-00542-SAB, 2024 WL 3011142 (E.D. Cal. June 11, 2024) ...................................... 16

*Ridgeway v. Wal-Mart Stores, Inc.*,
   269 F. Supp. 3d 975 (N.D. Cal. 2017) ................................................... 15, 18

*Rodriguez v. Cnty. of Los Angeles*,
   96 F. Supp. 3d 1012 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018) ........................... 17, 18

*Smothers v. NorthStar Alarm Servs., LLC*,
   No. 217CV00548KJMKJN, 2020 WL 1532058 (E.D. Cal. Mar. 31, 2020) ........................... 16

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................ 19, 20

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990) ................................................................. 15

*Velez v. Bakken*,
   No. 2:17-cv-00960-WBS-KJN, 2019 WL 358703 (E.D. Cal. Jan. 29, 2019) ............................ 20

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .............................................................. 19

**State Cases**

*Broughton v. Cigna Healthplans of Cal.*,
   21 Cal. 4th 1066 (1999) ..................................................................... 11

*Children's Hops. & Med. Ctr. v. Bonta*,
   97 Cal. App. 4th 740 (2007) ................................................................ 15

*City of Oakland v. Oakland Police & Fire Ret. Sys.*,
   29 Cal. App. 5th 688 (2018) ................................................................ 12

*Collins v. City of Los Angeles*,
   205 Cal. App. 4th 140 (2012) .............................................................. 13

*In re Conservatorship of Whitley*,
   50 Cal. 4th 1206 (2010) ..................................................................... 12

*Estrada v. FedEx*,
   154 Cal. App. 4th 1 (2007) ................................................................. 12

*Graham v. DaimlerChrysler Corp.*,
   34 Cal. 4th 553 (2004) ................................................................. 12, 14, 17

*Holguin v. Dish Network LLC,*
  229 Cal. App. 4th 1310 (2014) ............................................................. 13

*Kerkeles v. City of San Jose,*
  243 Cal. App. 4th 88 (2015) ................................................................. 14

*Ketchum v. Moses,*
  24 Cal. 4th 1122 (2001) .......................................................... 14, 17, 18

*Kim v. Euromotors W./The Auto Gallery,*
  149 Cal. App. 4th 170 (2007) ............................................................... 11

*Monterey/Santa Cruz etc. Trades Council v. Cypress Marina Heights LP,*
  191 Cal. App. 4th 1500 (2011) ............................................................. 12

*Peak-Las Positas Partners v. Bollag,*
  172 Cal. App. 4th 101 (2009) ............................................................... 15

*Pellegrino v. Robert Half Int'l, Inc.,*
  182 Cal. App. 4th 278 (2010) ............................................................... 18

*Serrano v. Unruh,*
  32 Cal. 3d 621 (1982) .......................................................................... 15

*Syers Props. III, Inc. v. Rankin,*
  226 Cal. App. 4th 691 (2014) ................................................................. 3

*Woodland Hills Residents Ass'n, Inc. v. City Council,*
  23 Cal. 3d 917 (1979) .......................................................................... 11

**Federal Statutes**

42 U.S.C. § 1437f(a) ........................................................................... 2, 11

False Claims Act ..................................................................................... 3

**State Statutes**

Cal. Civ. Code
  § 1021.5 ....................................................................... 10, 11, 12, 13
  § 1780(e) ............................................................................................. 11

Consumer Legal Remedies Act ............................................................. 10

Unfair Competition Law ......................................................................... 12

912593.9

**Rules**

Fed. R. Civ. P.

23(b)(3) ..............................................................................................................2
23(f) ....................................................................................................................5
23(h) ..........................................................................................................10, 20
30(b)(6) ...........................................................................................................6, 7

**Regulations**

24 C.F.R. § 982.1(a)(1) ............................................................................................2

## I.   <u>INTRODUCTION</u>

Through tireless advocacy for over a decade and numerous important litigation victories, Plaintiffs achieved a truly remarkable settlement of the Class Claims.  The Settlement Agreement secures robust injunctive relief protecting Class Members from excess rent charges, affirming this crucial protection in the Section 8 program.  The Settlement Agreement also provides full damages to Reimbursement Class members and nearly complete prejudgment interest.  Achieving this outstanding outcome was not easy.  It required thousands of hours of skilled work by Class Counsel, burdensome litigation demands, and significant contingency risk, among other challenges.

Plaintiffs respectfully request that the Court award Class Counsel $312,0000 in costs and $4,188,000 in attorneys' fees, equal to the full $4.5 million set aside for this purpose in the Settlement Agreement.  Both the lodestar and percent-of-recovery methods confirm that this amount appropriately compensates Class Counsel for their herculean effort necessary to the exceptional result obtained.

Class Counsel's post-billing judgment lodestar attributable to the Class Claims (*i.e.*, after deducting time for the FCA claim) is $3,297,856.55 as November 30, 2024.  Declaration of Anne Bellows, filed herewith, ¶ 11 ("Bellows Decl.").  Class Counsel anticipate that they will have accrued another $40,000 in lodestar by the end of the distribution of Class Member awards. *Id.*  The requested fee award of $4,188,000 reflects an effective multiplier of approximately 1.28 on pre-settlement fees, although the record in this case would easily support a multiplier of 1.5, or even higher.

A percent-of-recovery cross check confirms that the fee is reasonable in this case.  Plaintiffs value the injunctive relief achieved under the Settlement Agreement at $1,215,000, yielding a total monetary value of the class settlement at $10,715,000.  The requested fee award of $4,188,000, which will not reduce the Class Recovery if granted in full, is 39% of that amount.  This upward departure is well warranted in this case, where Class Counsel expended thousands of hours on this challenging case, taking on significant risk, and achieved a superb result for the Certified Classes.

## II.   BACKGROUND

### A.   The Settlement Achieved Outstanding Results for the Certified Classes.

The provisions of the Settlement Agreement resolving the Class Claims are discussed at length in Plaintiffs' Motion for Final Approval of Class Action Settlement.  *See* ECF No. 563-1 at 4:21-7:15, 10:19-14:5 & record citations therein.  The provisions embody essentially full relief for the Classes.

#### 1.   Injunctive and Monetary Relief

The injunctive relief puts a decisive and enforceable end to Defendants' illegal and harmful practices that required Section 8 tenants to pay additional fees to begin or maintain their tenancy.  The Court discussed these practices in its November 23, 2023 partial summary judgment order.  Order 3:1-5:10, 11:20-13:16, ECF No. 278.  The Settlement Agreement ensures that additional fees are fully optional for Section 8 tenants, that nonpayment of those fees does not jeopardize tenancy, and that Section 8 tenants are fully informed of these protections.  *See* Settlement Agreement at 7-9.[1]  Not only does this remedial relief fully cure the violation underlying Plaintiffs' claims, it furthers the important purpose of the Section 8 program to provide affordable, secure housing to some of the lowest-income households in our society.  *See* 42 U.S.C. § 1437f(a); 24 C.F.R. § 982.1(a)(1).

The monetary relief achieved by the Settlement Agreement for the Rule 23(b)(3) class is equally robust, providing full damages and prejudgment interest at approximately 9%.  *See* ECF No. 563-1 at 5:16-22 & record citations therein.  These payments effectively implement the Court's order on Plaintiffs' motion for partial summary judgment regarding remedies.  *See* ECF No. 352 at 5:14-6:15  The Qualified Settlement Fund also covers the settlement notice costs and counseling for class members regarding any impact their individual settlement payments might have on their government benefits.  *See* Settlement Agreement at 10, 13.

#### 2.   Attorneys' Fees, Costs, and Expenses

The Settlement Agreement allocates $4.5 million for payment of attorneys' fees, costs, and expenses on the Class Claims.  Settlement Agreement at 10.  This amount is non-reversionary; any unawarded portion goes to *cy pres*.  *Id.* at 10, 23.  The Settlement Agreement *does not* include a clear

---

[1] Page numbers for the Settlement Agreement refer to the consecutive pagination at the bottom right corner of Exhibit A to the Declaration of Lori Rifkin in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, ECF No. 563-2.

sailing provision; Defendants remain free to file an opposition. *See id.* at 10. As part of the settlement, Defendants requested a payment plan of three roughly equal payments. *Id.* at 27. In order to ensure the Reimbursement Class would timely receive full payment, Class Counsel agreed to delay receiving the bulk of their fees and costs until the last payment, scheduled to occur in 2026. *Id.* at 27-28.

**B.** **The Results Achieved Reflect Years of Dedicated and Skilled Litigation by Class Counsel.**

Achieving this superlative result required thousands of hours of work addressing a large factual record and the full gamut of pretrial procedures. In all, Class Counsel have devoted over 8,000 hours to the Class Claims, after reductions for billing judgment. *See* Bellows Decl. ¶¶ 11, 17-27. These hours exclude time devoted to the concurrently-litigated False Claims Act claim. *Id.* ¶ 17-20. Class Counsel's hours and lodestar using local rates, summarized by task categories, are as follows:

| Task Description | Hours | Lodestar |
|---|---|---|
| Case Administration | 60.8 | $ 29,552.36 |
| Fact Investigation | 505.7 | $ 151,930.18 |
| Analysis, Strategy, and Legal Research | 527.4 | $ 216,766.58 |
| Experts & Consultants | 173.4 | $ 84,313.45 |
| Settlement | 470.8 | $ 235,783.59 |
| Pleadings | 297.7 | $ 132,205.30 |
| Court Mandated Conferences | 33.3 | $ 17,496.15 |
| Summary Judgment Motions | 690.4 | $ 287,872.33 |
| Other Written Motions or Submissions | 113.3 | $ 46,900.79 |
| Class Action Procedures | 965.4 | $ 464,876.56 |
| Other Discovery | 290.3 | $ 139,134.27 |
| Written Discovery | 74.1 | $ 32,953.60 |
| Requests for Production and Document Productions | 170.2 | $ 70,060.13 |
| Document review | 805.7 | $ 187,773.91 |
| Depositions | 619.5 | $ 271,853.19 |
| Expert Depositions | 79.2 | $ 35,623.34 |
| Discovery Motions | 204.4 | $ 85,351.33 |
| Trial Preparation Re Fact Witnesses | 415.2 | $ 166,313.41 |
| Trial Preparation Re Expert Witnesses | 110.2 | $ 51,903.25 |
| Written Motions or Submissions for Trial | 522.6 | $ 218,690.95 |
| Other Trial Preparation and Support | 727.5 | $ 290,599.06 |
| Trial and Hearing Attendance | 47.8 | $ 20,620.46 |
| Post-Trial Motions | 128.0 | $ 59,282.38 |
| **Total** | **8,032.8** | **$ 3,297,856.55** |

*Id.* ¶¶ 26-27 & Ex. 1. Class Counsel have also paid $311,878.10 in costs, including expert costs, to litigate the Class Claims, taking the risk that they would never recover these substantial amounts. *Id.* ¶

13.  Plaintiffs provide an overview of Class Counsel's work on the Class Claims immediately below.[2]

**1.    Case Initiation through Class Certification (Oct. 2013 through Oct. 2018)**

In October 2013, Denika Terry contacted the Law Offices of Andrew Wolff to discuss her experience as a Wasatch Property Management tenant.  Decl. of Andrew Wolff, filed herewith, ¶ 17, ("Wolff Decl.")  After initial fact and legal investigation, the Law Offices of Andrew Wolff brought on Centro Legal de la Raza as co-counsel for the prospective case.  *Id.*; Decl. of Jesse Newmark, filed herewith, ¶ 20, ("Newmark Decl.").  The two organizations investigated Wasatch's practices, developed the claims, and drafted and filed the complaint.  Wolff Decl. ¶ 18, Newmark Decl. ¶ 20.

After the complaint was unsealed in the summer of 2016, Plaintiffs amended the complaint, defended against Defendants' motion to dismiss, and undertook class discovery.  ECF Nos. 18-70; Wolff Decl. ¶ 19; Newmark Decl. ¶ 21.  Discovery even at that early stage required significant effort. Class Counsel litigated multiple discovery motions (ECF Nos. 44, 45, 47, 56, 58, 59, 62, 63, 65), defended Plaintiffs Terry and Huskey in deposition, and deposed three corporate designees. Defendants and Class Counsel also took eight third-party depositions of representatives of local housing authorities.  Wolff Decl. ¶¶ 20, 21; Newmark Decl. ¶ 22.  Additionally, after Class Counsel successfully moved to compel production of responsive documents, Defendants produced over 360,000 pages of tenant files from Section 8 tenants, which provided crucial evidence for the depositions, class certification motion, motion to amend the complaint to cover Defendants' properties statewide, and merits proceedings later in the case.  Newmark Decl. ¶ 22.

Class Counsel filed motions for class certification and for leave to amend the complaint on August 25, 2017.  ECF No. 71, 72. The Parties also engaged in mediation but did not reach a settlement.  Newmark Decl. ¶ 25.  After the Court granted the motions but conditioned certification of the injunctive relief class on substitution of an appropriate class representative, Class Counsel added Tamera Livingston as a class representative via stipulation and the Third Amended Complaint.  *See*

---

[2] Class Counsel provide a detailed summary of their work and the corresponding fees in the accompanying declarations.  *See* Bellows Decl. ¶¶ 28-105, Newmark Decl. ¶¶ 11, 18-54, Nako Decl. ¶¶ 14-41, and Wolff Decl. ¶¶ 15-33.  These summaries are an adequate basis for the Motion under California law, which does not require the submission of time records.  *See Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 699-700 (2014) (collecting authorities).  Additionally, should the Court order it, Class Counsel are prepared to submit their detailed records for *in camera* review.

ECF Nos. 92, 94.  Class Counsel then opposed Defendants' Rule 23(f) petition to the Ninth Circuit, which denied that petition on October 17, 2018.  ECF No. 100.

Collectively, Class Counsel devoted 553.3 hours to the Class Claims during this phase. Newmark Decl. ¶ 29, Wolff Decl. ¶ 27.

    **2.**     <u>**Discovery, Bifurcation, and Summary Judgment (Nov. 2018 to Feb. 2024)**</u>

The Ninth Circuit's rejection of Defendants' Rule 23(f) petition did not end the Parties' dispute about class certification.  Defendants initially refused to identify class members or provide their contact information for class notice.  Bellows Decl. ¶ 36  After Class Counsel overcame that obstacle, Defendants then disputed the class period, requiring Plaintiffs to move for clarification or amendment of the class definition and for approval of class notice.  *Id.* ¶¶ 36-37; ECF No. 107.   The Court granted that motion on January 15, 2020, and Class Counsel managed the notice process, including numerous communications with class members.  ECF No. 114; Bellows Decl. ¶ 39.

At the same time, Class Counsel began merits discovery.  Plaintiffs sought document and data production, both requiring extensive meet and confer efforts and multiple motions to compel.  Bellows Decl. ¶ 43.  To resolve the deadlock regarding the production of data from Defendants' centralized property management software, Plaintiffs worked collaboratively with Defendants to hire a joint third-party expert to manage the identification and production of responsive data.  *Id.*  Plaintiffs also worked extensively with Defendants to elicit the production of electronically stored documents, a process that involved numerous meet and confer calls, revisions to proposed search protocols, and repeated follow-ups.  *Id.* ¶ 44.  Eventually, Defendants elected to produce a high volume of documents without first reviewing for responsiveness, resulting in the production of over 2.5 million pages of documents.  *Id.* In total, Class Counsel devoted approximately 800 hours attributed to the Class Claims to reviewing the produced tenant files and the electronic productions made during subsequent phases.  *Id.* ¶ 27. While time consuming, this document review yielded crucial evidence supporting the Class Claims.

Plaintiffs' discovery efforts regarding Defendants' corporate structure gave rise to a dispute with Defendants, who lodged objections and largely declined to provide the requested discovery beyond listing, for the first time, the names of the entities that owned the properties where California class members lived.  *Id.* ¶ 51.  The Parties resolved the impasse by agreeing to bifurcate the case,

deferring the corporate structure issues to a subsequent phase, and stipulating to the filing of the Fifth Amended Complaint to add the previously undisclosed owner entities as Defendants.  ECF No. 135. Despite retaining the same counsel to represent them, the new Defendants did not waive personal service, forcing Plaintiffs to expend numerous hours repeatedly attempting service. ECF Nos. 157-163, 175-186, 192, 224, 227-229.  After all Defendants were served, the Parties stipulated to amending the class certification order.  ECF No. 226.

Meanwhile, discovery continued apace.  During merits discovery, Plaintiffs propounded 104 requests for production, 48 interrogatories, 60 requests for admission, and 71 requests for admission regarding authenticity.  Bellows Decl. ¶ 40.  Plaintiffs also took numerous depositions, including two Rule 30(b)(6) depositions, as well as fact depositions of current and former Wasatch Property Management executives. Bellows Decl. ¶ 49; Nako Decl. ¶ 19.  After Defendants waived attorney-client privilege, Plaintiffs also deposed Defendants' in-house and outside counsel.  Bellows Decl. ¶ 50.

During this period, Class Counsel also interviewed dozens of Section 8 tenants of Wasatch properties to gather information about Defendants' practices and identify potential trial witnesses.  *Id.* ¶ 55.  More than twenty tenants agreed to be disclosed as potential witnesses.  *Id.*  Class Counsel also extensively researched the U.S. Department of Urban and Housing Development's policies and practices related to the Section 8 program, gathered and analyzed dozens of local housing authority administrative plans, and conducted in-depth legal research on the Class Claims. *Id.* ¶ 56.

Though Class Counsel sought to resolve discovery issues collaboratively with opposing counsel to the extent possible, in order to address delays and impasses Plaintiffs filed numerous motions to compel and informal discovery letters during the merits phase, particularly as the discovery cut-off approached without Defendants completing important productions or fully responding to key written discovery.  Bellows Decl. ¶ 42; Nako Decl. ¶¶ 17, 20; *see, e.g.*, Mots. Compel, ECF Nos. 115, 152, 156, 197, 284, 292, 296, 313, 319 & Informal Discovery Statements, ECF Nos. 118, 148, 154, 165.  Defendants repeatedly indicated in their portions of the joint statements that they did not oppose production, without an explanation for why they had not yet done so; as a result, the magistrate judge repeatedly extended the fact discovery deadline.  *See* ECF Nos. 170 191, 203.

The Parties also disclosed expert reports on January 28, 2022, and Plaintiffs disclosed a rebuttal

report on February 25, 2022.  Bellows Decl. ¶ 57.  Class Counsel deposed Defendants' expert in March 2022.  Nako Decl. ¶ 21.  Class Counsel also drafted a fact stipulation describing and providing definitions for the data produced by the joint expert.  Bellows Decl. ¶ 57; ECF No. 242-4.

Following the completion of fact and expert discovery, the Parties filed cross-motions for summary judgment.  ECF Nos. 241, 242.  Defendants' motion also requested decertification of the classes.  ECF No. 241.  This proved to be a critical juncture in the case.  On November 22, 2022, the Court granted Plaintiffs' motion "in its entirety," finding liability on the class breach of contract and UCL claims.  ECF No. 278.  The Court denied Defendants' motion and request for decertification.  *Id.*

Class Counsel spent 3,698.1 hours on the Class Claims during this phase.  Bellows Decl. ¶ 61.

### 3.  Remedies Discovery, Summary Judgment on Class Damages, and Initial Trial Preparation (Dec. 2022 through Feb. 1, 2024)

Immediately after the Court's order, as the Parties prepared for remedies discovery, Defendants raised a new argument that they would seek to reduce the class damages by their costs in providing services to the tenants.  Bellows Decl. ¶¶ 62-63.  They also indicated that they were altering some of their policies and practices, but declined to provide any details, requiring Plaintiffs to issue formal discovery on the issue.  *Id.*  Class Counsel explained to Defendants that their effort to reduce damages was legally baseless and invited them to drop that issue to limit litigation costs and fees.  *Id*. Ex. 2. Class Counsel also sought to work with Defendants on the policy changes they would need to make to come into compliance, but Defendants declined to engage with them on this issue.  *Id*. Ex. 3.

The Parties attended a settlement conference on March 15, 2023, for which Class Counsel and Class Representatives extensively prepared.  ECF No. 293; Bellows Decl. ¶ 67.  Defendants terminated the conference early in the day, bringing efforts at resolution to an abrupt halt.  Bellows Decl. ¶ 68.

During remedies discovery, Plaintiffs issued discovery requests, took two further Rule 30(b)(6) depositions, and disclosed expert reports on both damages and injunctive relief issues.  Bellows Decl. ¶¶ 70, 71; Nako Decl. ¶ 25-28.  Defendants disclosed an expert accountant to support their bid to reduce class damages; Plaintiffs conducted discovery regarding his work and deposed him.  Bellows Decl. ¶ 73.  This discovery period also gave rise to numerous discovery disputes, requiring five motions to compel. *See* ECF Nos. 284, 292, 296, 313, 319.  Plaintiffs also conducted further fact

1   investigation and tenant interviews regarding Defendants' policy changes.  *Id*. ¶ 71.

2      During the summer of 2023, Plaintiffs also sought Defendants' agreement to the filing of a

3   Sixth Amended Complaint to reflect Defendants' recent changes to their policies and cut off damages.

4   Bellows Decl. ¶ 75.  Defendants did not respond, requiring Plaintiffs to file a motion for leave to

5   amend.  ECF Nos. 314, 315.  The Court granted that motion on November 22, 2023.  ECF No. 329.

6      On August 25, 2023, Plaintiffs sent a letter inviting Defendants to mediation to see if the

7   Parties could resolve the case before December 1, 2023.  Bellows Decl. ¶ 76.  Plaintiffs cautioned

8   Defendants that litigating the claims to judgment would significantly increase their financial exposure

9   for Plaintiffs' fees and costs.  *Id*.  Defendants did not agree to mediation.

10     On October 6, 2023, Plaintiffs filed a motion for partial summary judgment on the measure of

11  class damages.  ECF No. 323.  The Court granted that motion on February 1, 2024.  ECF No. 352.

12     As expert discovery was wrapping up and while Plaintiffs' motions were pending, Class

13  Counsel began preparing their pretrial filings, including drafting proposed fact stipulations, developing

14  the exhibit list, analyzing and designating deposition testimony, designating discovery responses,

15  conducting outreach to class members and local housing authorities to develop the witness list, and

16  drafting motions in limine.  Bellows Decl. ¶¶ 78-79.  On the eve of the pretrial filing deadline, twelve

17  defendants substituted in new counsel (later called "ONO Defendants"), who immediately moved *ex*

18  *parte* to continue the final pretrial conference by 90 days, which Plaintiffs opposed.  ECF Nos. 337-

19  349.  The Parties filed their first pretrial joint statement on February 2, 2024; the following week, the

20  Court continued the final pretrial conference to March 29, 2024 and ordered the Parties to file an

21  amended joint statement on March 15.  ECF Nos. 353, 356.

22     Class Counsel spent 1,810.4 hours on the Class Claims during this phase.  Bellows Decl. ¶ 81.

23     **4.    Pretrial Proceedings and Settlement (Feb. 2, 2024 through Jul. 27, 2024)**

24     The entry of the new counsel for the ONO Defendants resulted in contentious pretrial filings,

25  requiring extensive work by Class Counsel to address and counter each of the arguments raised by the

26  new counsel.  Bellows Decl. ¶ 80; .ECF Nos. 349, 350, 353, 368, 370, 378, 387, 388, 392, 393.  Even

27  after the final pretrial conference, the Parties filed three additional joint statements addressing disputes

28  on April 12, June 28, and July 17, 2024.  ECF Nos. 386, 475, 526.  Plaintiffs filed 9 motions in limine

1   and a request for judicial notice, opposed numerous motions in limine from both sets of Defendants,

2   and completed other required pretrial filings including objections to exhibits and final trial briefs.  ECF

3   Nos. 404-431, 437-450, 476-477, 480, 482, 484-486, 488-491, 522-526.

4        During this period, ONO Defendants also filed three high-stakes motions—for judgment on the

5   pleadings, for reconsideration of the bifurcation order, and for dismissal of the state-law claims.  ECF

6   Nos. 387, 388, 470.  Class Counsel opposed these significant motions, obtaining favorable rulings to

7   the first two, while the third was withdrawn by Defendants after settlement.  ECF Nos. 398, 399, 545.

8        Throughout this period, Class Counsel were also busy with key trial preparation tasks,

9   including drafting exams, subpoenaing and preparing trial witnesses, preparing exhibits, and planning

10   their trial presentation to support the class requests for injunctive relief.  Bellows Decl. ¶¶ 86, 89.

11       The Parties reinitiated settlement discussions.  Class Counsel prepared a mediation brief and

12   attended a two-day in-person mediation on June 20-21, 2024, but could not yet reach agreement.  ECF

13   No. 472.  Following mediation, Class Counsel continued trial preparation and settlement discussions

14   on parallel tracks.  Bellows Decl. ¶ 88.  Settlement talks accelerated following the hearing on the

15   Parties' motions in limine on July 11, 2024.  Nako Decl. ¶ 35.  On July 27, 2024, the Parties reached a

16   settlement in principle, embodied in a four-page memorandum of understanding.  ECF No. 541.

17       Class Counsel spent 1,371.9 hours on the Class Claims during this phase.  Bellows Decl. ¶ 91.

18       **5.** **Settlement Agreement and Approval Proceedings (Jul. 28, 2024 to Present).**

19       After filing the notice of settlement, Class Counsel turned to negotiating and drafting a long-

20   form settlement agreement to ensure that the relief obtained for the Certified Classes was fully secured

21   and enforceable.  Newmark Decl. ¶ 49  Even with the memorandum of understanding in place,

22   negotiating all of the complex terms of the 32-page final settlement required over a month of drafting

23   and revisions, with constant and time-consuming written and verbal discussions between Defendants

24   and Class Counsel.  *Id.*; *see* Settlement Agreement.  As outlined above, the final settlement agreement,

25   Settlement provides essentially full relief to the certified classes, vindicating their claims.  *See* Sec.

26   II.A, *supra*.  At the same time, Class Counsel prepared a motion for preliminary approval of the class

27   settlement, which the Court granted on October 25, 2024.  ECF Nos. 544, 562.  Class Counsel

28   continued their advocacy for the class, working to ensure effective administration of settlement notice,

1   responding to class member questions, and meeting and conferring with Defendants to ensure that the

2   injunctive relief was fully implemented.  Nako Decl. ¶ 38; Newmark Decl. ¶ 50.  Class Counsel also

3   prepared their motion for final settlement approval (ECF No. 563) and the present motion.

4          Class Counsel devoted 599 hours to the Class Claims from July 28 through November 30,

5   2024.  Bellows Decl. ¶ 95.  Class Counsel estimate that by the close of class settlement administration

6   they will have spent an additional 80 hours at a blended rate of $500 on the final approval motion, fees

7   motion, notice administration, and distribution of class member payments.  *Id.* ¶ 96.

8                           **III.   ARGUMENT**

9          "[T]he court may award reasonable attorney's fees and nontaxable costs that are authorized by

10   law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  In approving fees under a class action

11   settlement, the Court has "an independent obligation to ensure that the award ... is reasonable."  *In re*

12   *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("*In re Bluetooth*").  Plaintiffs

13   respectfully request an award of $4.5 million in fees, costs and expenses, reflecting costs and expenses

14   of $312,000 and fees of $4,188,000.  These amounts are amply justified on this record.

15   **A.   Class Counsel's Fees and Costs Are Proper Under Fee Shifting Principles.**

16          **1.   Fee Shifting Applies to the Class Claims Successfully Litigated by Plaintiffs.**

17          The Court has the discretion to select its method of fee calculation in this case.  *See In re*

18   *Bluetooth*, 654 F.3d at 942.  A lodestar approach is supported by the fee-shifting authorities applicable

19   to the Class Claims, including the Consumer Legal Remedies Act ("CLRA"), California Code of Civil

20   Procedure section 1021.5, and Class Members' leases.  *See In re Bluetooth*, 654 F.3d at 941, 943 (the

21   lodestar approach "is appropriate in class actions brought under fee shifting statutes").  Plaintiffs

22   briefly address each source of fee shifting.

23          ***CLRA.***  Civil Code section 1780 subdivision (e) provides that "[t]he court shall award court

24   costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."  *See*

25   *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1086 (1999) (explaining that the fee

26   shifting provision of Civ. Code section 1780(e) "is integral to making the CLRA an effective piece of

27   consumer legislation").  Even in the context of a pretrial settlement, courts have observed that an

28   award of fees to the prevailing plaintiff on a CLRA claim is "mandatory."  *Kim v. Euromotors W./The*

*Auto Gallery*, 149 Cal. App. 4th 170, 178-79 (2007).  In this case, the complete injunctive relief achieved by Plaintiffs on the CLRA claim easily satisfies the standard for a "prevailing plaintiff." *See id.* at 179-80 (adopting a functional definition of prevailing plaintiff based on whether the plaintiff achieved "most or all" of the relief sought on the claim) (citation omitted).

**Code of Civil Procedure 1021.5.**  A court may award attorneys' fees to a successful party in (1) any action that has resulted in the enforcement of an important right affecting the public interest, if: (2) a significant benefit, whether pecuniary or non-pecuniary, has been conferred on the general public or a large class of persons; (3) the necessity and financial burden of private enforcement are such as to make the award appropriate; and (4) such fees should not in the interest of justice be paid out of the recovery.  Cal. Civ. Proc. Code § 1021.5.  This fee-shifting doctrine "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions," and that without fee shifting "private actions to enforce such important public policies will as a practical matter frequently be infeasible." *Woodland Hills Residents Ass'n, Inc. v. City Council*, 23 Cal. 3d 917, 933 (1979).  Plaintiffs' tireless litigation resulting in essentially full relief for the certified classes of very low-income tenants satisfies each requirement of section 1021.5.

*First*, in vindicating the right of Section 8 tenants to be protected from unapproved rent charges, Plaintiffs enforced a right that is of paramount importance in the "achievement of [the] fundamental legislative goals" of the Section 8 program.  *See Woodland Hills*, 23 Cal. 3d at 936; 42 U.S.C. § 1437f(a); *Kelly v. Denault*, 374 F. Supp. 3d 884, 892 (N.D. Cal. 2018) ("the Section 8 voucher program exists to aid low-income families in obtaining housing, 'and that purpose is clearly undermined when a program participant overcharges a beneficiary of the program.'") (citation omitted). The enforcement of this important right was achieved both through the injunctive relief authorized by the Unfair Competition Law and through the award of damages and interest on the breach of contract claims; Section 1021.5 fee shifting applies equally to both claims.  *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 562, 578 (2004), *as modified* (Jan. 12, 2005) ("It is well settled that attorney fees under section 1021.5 may be awarded for consumer class action suits benefiting a large number of people.") (holding Section 1021.5 fees could be awarded for success

obtained as a result of "a single breach of express warranty cause of action").

*Second*, both the important injunctive relief provisions in the Final Settlement Agreement and the near-complete monetary relief confer "a significant benefit" on "a large class of persons," collectively numbering thousands of current and former Section 8 tenants. *See Monterey/Santa Cruz etc. Trades Council v. Cypress Marina Heights LP*, 191 Cal. App. 4th 1500, 1523 (2011) (the "large class of persons" requirement was satisfied in case involving class of 900 construction workers).

*Third*, the necessity and financial burden of private enforcement makes an award appropriate in this case, as government agencies failed to take any actions to investigate or enforce class members' rights, and the financial burden on Plaintiffs is clear where their counsel dedicated thousands of hours over a decade on a contingency basis in order to vindicate claims that Defendants claimed throughout to be legally baseless, and these costs dwarf "the expected value of the litigant's own monetary award." *See In re Conservatorship of Whitley*, 50 Cal. 4th 1206, 1216 (2010). The Named Plaintiffs' ultimate recovery on the Class Claims, which exceeded any risk-adjusted expected value both at the outset and at critical junctures throughout, totaled only around $20,000 in damages[3] plus prejudgment interest—an amount dwarfed by the lodestar and costs incurred by Class Counsel over the last ten years. Similarly, as evidenced by the ultimate numbers, the expected value of the class recovery did not "exceed[] by a substantial margin the actual litigation costs" related to the Class Claims. *See id.* (quoting *Los Angeles Police Protective League v. City of Los Angeles*, 188 Cal. App. 3d 1, 9-10 (1986)). In these circumstances, courts hold that the class is entitled to "the bounty of a court-awarded fee in order to encourage litigation of the sort involved in this case." *City of Oakland v. Oakland Police & Fire Ret. Sys.*, 29 Cal. App. 5th 688, 699-700 (2018); *see e.g.*, *Estrada v. FedEx*, 154 Cal. App. 4th 1, 16-17 (2007) (Section 1021.5 satisfied because plaintiff pursued claims not only on his own behalf, but also for past and present drivers, ultimately obtained more than $5 million for 209 drivers, and counsel's lodestar was more than $5.56 million).

*Fourth*, the interests of justice compel a determination that the fee award should not be taken from the class recovery. *See* Cal. Civ. Proc. Code § 1021.5. "The court must exercise its discretion [in

---

[3] Denika Terry's total damages are $2,487.09, Roy Huskey III's total damages are $6,893.32, and Tamera Livingston's total damages are $11,386.30. Bellows Decl. ¶ 106.

912593.9

applying this factor] in accordance with the statutory objective of encouraging public interest litigation that would not be pursued absent the prospect of a fee award." *Collins v. City of Los Angeles*, 205 Cal. App. 4th 140, 157 (2012). These considerations weigh heavily in favor of a fee award here. Low-income tenants face many barriers to bringing legal challenges to unlawful practices, and few if any attorneys will find it "'economically feasible' to provide services to low-income clients without a fee-shifting provision[.]" *See McCown v. City of Fontana*, 565 F.3d 1097, 1104 (9th Cir. 2009) (citation omitted). Moreover, in this case Plaintiffs were able to secure a Settlement Agreement that fully protected the class monetary recovery while securing separate funds for the attorneys' fee award.

*Class Member Leases.* Application of fee shifting principles is further supported by the Wasatch Property Management form lease, applicable to all class members. The lease provides that in any action "relating to the occupancy of the premises, construing the provisions of this Agreement, or because of any default hereunder," the "prevailing party shall be entitled to the payment of reasonable costs, expenses and attorneys fees."[4] Bellows Decl. Ex. 4 at 3, 20. Because the Tenancy Addendum to the HAP Contract was required to be made a part of the lease, this provision extends to the violation of that Addendum's prohibition on excess rent charges. Bellows Decl. Ex. 5 at 8, 20. Thus, awarding fees on a lodestar, fee-shifting basis is also supported by the lease. *See, e.g.*, *Holguin v. Dish Network LLC*, 229 Cal. App. 4th 1310, 1329 (2014) (fees under contract calculated with lodestar method).

### 2.  Plaintiffs' Lodestar is Reasonable.

The lodestar method "begins with a touchstone or lodestar figure" based on the reasonable number of hours worked multiplied by "prevailing hourly rates" for the attorneys and their staff. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32 (2001); *see also Graham*, 34 Cal. 4th at 579-80 (2004); *In re Bluetooth*, 654 F.3d at 941 (same). Class Counsel's lodestar for their work on the Class Claims through November 30, 2024, after billing judgment, is $3,297,856.55. Bellows Decl. ¶ 11. Additionally, Plaintiffs estimate that by the end of class distribution they will have incurred another $40,000 in fees, corresponding to 80 hours at a blended rate of $500. *Id.*

---

[4] The lease provision limits attorneys' fees to $1,000.00 "unless otherwise provided by law." *Id.* There is no limitation on costs and expenses. *See id.* Because the fee shifting statutes identified above allow the award of fees on a lodestar basis without limitation, this case falls in the "unless otherwise provided by law" clause and the $1,000 limit does not apply. *See id.*

13

### a.     Class Counsel's Hours are Reasonable.

"[A]n attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*" on a matter.  *Ketchum*, 24 Cal. 4th at 1133 (emphasis in original); *see also Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (citation omitted) (time reasonably spent encompasses "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest[.]").  "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."  *Kerkeles v. City of San Jose*, 243 Cal. App. 4th 88, 104 (2015) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

The hours dedicated by Class Counsel to prosecuting the Class Claims in this hard fought, complex, and fact intensive case easily clear any reasonableness review.  As detailed above and in the supporting attorney declarations, Class Counsel's work on this case addressed every facet of pre- and post-filing investigation, pleading, discovery, class certification procedures, motion practice, and trial preparation.  *See* Sec. II.B, *supra*; *see also* Prelim. Approval Order, 7:14-15 (acknowledging "the many years this case has been pending and the extensive pretrial litigation it has demanded").  In Class Counsel's judgment, each of the tasks they undertook was necessary to advance the litigation.  *See* Bellows Decl. ¶ 12; Newmark Decl. ¶ 8; Nako Decl. ¶ 9; Wolff Decl. ¶ 15.

Though Plaintiffs sought to work cooperatively with Defendants—and succeeded in notable areas like the joint retention of a data expert and the negotiation of the stipulation to bifurcate the case and allow amendment of the complaint (and later the class certification order)—in most areas of the litigation Class Counsel had to fight to overcome Defendants' intransigence and at times glaring unresponsiveness.  A defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."  *Serrano v. Unruh*, 32 Cal. 3d 621, 638 (1982) (citation omitted); *Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 113 (2009) (affirming the trial court's finding that the defendant's "vigorous defense necessitated a great deal of work by experienced attorneys").  Notably, in February 2023, following the Court's order granting Plaintiffs' partial summary judgment motion on liability, Plaintiffs clearly set out for Defendants both the

monetary and injunctive relief flowing from the Court's finding of liability. *See* Bellows Decl. Exs. 2, 3. Defendants insisted on continuing to fight both monetary and injunctive relief, however, requiring Plaintiffs to complete remedies discovery on class issues, including expert disclosures and discovery, move for partial summary judgment on class damages, and prepare for a bench trial on their injunctive relief claims. *See* Secs. II.B.3 & II.B.4, *supra.* Defendants' intransigence only increased throughout this period. After the ONO Defendants brought in new counsel, busy pre-trial preparations became a blizzard of substantive motions and contentious joint filings and trial preparation.

Class Counsel's exercise of billing judgment further supports a finding that their hours are reasonable. Plaintiffs deducted 943 hours (corresponding to $335,349.75 in fees) based on line-item review. *See* Bellows Decl. ¶¶ 22-23. Additionally, Plaintiffs applied a further 5% across-the-board reduction to account for any residual inefficiencies or unnecessary redundancies. *Id.*; *see Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975, 990-91 (N.D. Cal. 2017) (approving voluntary 5% across-the-board cut). Overall, Class Counsel's billing judgment reduced their lodestar on the Class Claims by $509,011.15, which is 13.4% of our initial lodestar of $3,806,867.70. Bellows Decl. ¶ 25.

Accordingly, the Court should find that the time spent by Class Counsel was reasonable.

### b.      Class Counsel's Requested Rates are Reasonable.

Requested hourly rates are reasonable if they are "within the range of reasonable rates charged by and judicially awarded to comparable attorneys for comparable work." *Children's Hops. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 783 (2007). "[R]ate determinations in other cases ... are satisfactory evidence of the prevailing market rate." *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In complex litigation like this case, the appropriate benchmark is rates for attorneys engaged in "equally complex" matters. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.4 (1983) (citation omitted).

Plaintiffs request compensation at billing rates based on other class action and comparably complex cases in the Eastern District of California. The requested rates are set out in Appendix A to this brief. Plaintiffs seek hourly rates of $320 to $695 for attorneys, and rates of $75-$250 for other staff. These rates are consistent with those awarded in the Eastern District of California in recent years. *See, e.g.*, *Smothers v. NorthStar Alarm Servs., LLC*, No. 217CV00548KJMKJN, 2020 WL

1532058, at *9 (E.D. Cal. Mar. 31, 2020) (using hourly rates ranging from $300 to $695 for attorneys).

Multiple cases support rates of $600-$695 for the most experienced attorneys on the team, each with thirty or more years of experience. *See id.* at *9 ($695 per hour for attorney with "nearly 30 years of experience); *Anderson v. Safe Streets USA, LLC*, No. 2:18-CV-00323-KJM-JDP, 2024 WL 4826446, at *3 (E.D. Cal. Nov. 19, 2024) ($650 to $750 per hour for attorneys with 30 years of experience); *Mostajo v. Nationwide Mut. Ins. Co.*, No. 2:17-CV-00350-DAD-AC, 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023) (same).

Hourly rates of $535 to $570 for attorneys with 17 to 26 years of experience also fall in the range of rates set in other cases. *See Ramirez v. Merrill Gardens, LLC*, No. 1:22-CV-00542-SAB, 2024 WL 3011142, at *27 (E.D. Cal. June 11, 2024) ($550 hourly rate for attorney with 17 years of experience)*; Avery v. Akima Support Operations, LLC*, No. 2:19-CV-00924-DAD-AC, 2022 WL 4473211, at *13 (E.D. Cal. Sept. 26, 2022) ($650 hourly rate for attorney with 23 years of experience); *Cooks v. TNG GP*, No. 2:16-CV-01160-KJM-AC, 2021 WL 5139613, at *6 (E.D. Cal. Nov. 4, 2021) ("Associates with ten to twenty years of experience have been awarded rates between $550 to $575;" and applying $660 hourly rate for attorneys "with between twenty and thirty years of experience").

Plaintiffs request rates of $460 to $495 for attorneys with 9 to 12 years of experience, including GBDH partner and lead counsel Anne Bellows. These rates are likewise supported by recent orders. *See, e.g.*, *Smothers*, 2020 WL 1532058, at *9 ($495 per hour for partner with 11 years of experience); *Milburn v. PetSmart, Inc.*, No. 118CV00535DADSKO, 2019 WL 5566313, at *10 (E.D. Cal. Oct. 29, 2019) ($495 hourly rate for associates with 7 to 11 years of experience).

The proposed hourly rates of $320 to $450 for associates, $150 for law clerks, and $75 to $200 for case clerks and paralegals are all within the range of recent orders as well. *See Anderson*, 2024 WL 4826446, at *3 ($375 hourly rate for attorney with 3 years of experience); *Mostajo*, 2023 WL 2918657 at *11 (approving "a paralegal with an hourly rate of $200; a law clerk with an hourly rate of $200; a third-year attorney with an hourly rate of $375"); *Cooks*, 2021 WL 5139613, at *6 ("Courts in the Eastern District have accepted hourly rates between $370 and $495 for associates"). Case law also supports the proposed blended rate of $500 for estimated remaining hours. *See Cooks*, 2021 WL 5139613, at *6 (approving $500 blended rate for remaining work).

**3.      A Lodestar Multiplier of 1.5 or More Would Be Appropriate in this Case.**

After the lodestar is determined, "the court may adjust it upward or downward by an appropriate negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth*, 654 F.3d at 941-42 (citation omitted); *accord Ketchum*, 24 Cal.4th at 1132 (also noting "the extent to which the  nature of the litigation precluded other employment by the attorneys").  Here, each of these factors weigh strongly in favor of a multiplier of 1.5 of more—well above the effective multiplier of approximately 1.28 requested by Plaintiffs.

Class Counsel obtained a truly superlative result for the certified classes—notwithstanding the challenging and complex nature of the issues in the case.  *See* Section II.A, *supra.*  As the Ninth Circuit has instructed, "[f]oremost among these considerations" affecting the multiplier "is the benefit obtained for the class." *In re Bluetooth*, 654 F.3d at 942.  Complete injunctive relief, full damages, and close to full prejudgment interest all qualify as an "exceptional benefit" for the class meriting a corresponding enhancement. *See Graham*, 34 Cal. 4th at 582.  Plaintiffs' achievement is particularly outstanding in light of the difficult and complex issues in the case.  Those challenges, and "counsel's demonstrated skill" in overcoming them, support a significant multiplier.  *See Rodriguez v. Cnty. of Los Angeles*, 96 F. Supp. 3d 1012, 1025 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018); *see also* Prelim. Approval Order 6:21-23 ("the court has presided over this case for several years as counsel litigated capably and vigorously on behalf of the plaintiffs and class").

Similarly, Class Counsel assumed significant risk of never receiving payment in accepting and litigating this case for a decade on a contingency basis.  California law recognizes that a multiplier "reflecting the risk that the attorney will not receive payment if the suit does not succeed, constitutes earned compensation." *Ketchum*, 24 Cal. 4th at 1138; *see also id.* at 1136 ("The experience of the marketplace indicates that lawyers generally will not provide legal representation on a contingent basis unless they receive a premium for taking that risk.'"); *see, e.g.*, *Gutierrez v. Wells Fargo Bank, N.A*, No. C 07-05923 WHA, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015) (awarding 2.0 multiplier solely based on the "seven-year risk of nonpayment and delay in fees," though other factors weighed against a multiplier).  Moreover, the intensive demands of the litigation precluded counsel from

accepting other prospective income-generating work, thus magnifying the risk.  *See Ketchum*, 24 Cal. 4th at 1132; Bellows Decl. ¶ 104; Newmark Decl. ¶ 57; Nako Decl. ¶ 44; Wolff Decl. ¶ 35.

On similar records, courts have awarded lodestar multipliers of 1.5 to 2.0.  *See, e.g.*, *Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975, 995-99 (N.D. Cal. 2017) (applying California law) (awarding 2.0 multiplier based on "contingent risk, the novelty, difficulty and complexity of the litigation, and the preclusion of other employment"); *Rodriguez*, 96 F. Supp. 3d at 1025 (2.0 multiplier was justified under California law due to the "financial risk Plaintiffs' counsel assumed in litigating this case on a contingency basis, the difficulty of this case, and based on counsel's demonstrated skill."); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 291-93 (2010) (affirming a 1.75 multiplier based on difficulty of the issues, contingency risk, and results achieved); *Cooks*, 2021 WL 5139613, at *7 (1.97 multiplier based on quality of representation, contingency risk, and benefit to the class); *Nat'l Fed'n of the Blind v. Target Corp.*, No. C 06-01802 MHP, 2009 WL 2390261, at *7-*9 (N.D. Cal. Aug. 3, 2009) (applying California law and awarding a 1.65 lodestar multiplier based on "the scope and significance of plaintiffs' victory," counsel's skill, the preclusion of other employment, and contingency risk).  Plaintiffs respectfully submit that a comparable multiplier is appropriate here.

Plaintiffs only request a multiplier on lodestar for the Class Claims accrued through the date of the Notice of Settlement (July 27, 2024), which is $ 3,012,924.48.  Bellows Decl. ¶ 97.  Applying a relatively conservative multiplier of 1.5 results in $4,519,386.72 in pre-settlement fees.[5]  Class Counsel's lodestar for all subsequent work on the Class Claims, including estimated remaining fees, totals $327,263.38.  *See id.*  Summing these numbers, a fee award of $4,846,650.10 would be proper here.[6]  The amount afforded under the settlement, however, is less.  After deducting Class Counsel's costs and expenses from the $4.5 million reserved for fees and costs, Plaintiffs seek a fee award of $4,188,121.90 in fees, corresponding to an effective multiplier of 1.28 on pre-settlement lodestar.

---

[5] Indeed, Plaintiffs' pre-settlement fees alone justify a full award of $4.5 million to Class Counsel, without taking into account all of the necessary work completed over the last four months or Class Counsel's compensable costs and expenses.

[6] Nor should this amount be reduced based on the size of the class recovery.  *See City of Riverside v. Rivera*, 477 U.S. 561, 574-79 (1986) (affirming fee award ten times greater than monetary recovery; rejecting notion that the fee award need be proportionate to monetary relief where "the plaintiff secures important social benefits that are not reflect in nominal or relatively small damages awards.").

**B.**     **A Percent-of-Fund Cross Check Affirms the Reasonableness of the Award.**

Plaintiffs' requested fee award is also reasonable if cross-checked against the percent-of-recovery method.  *See In re Bluetooth*, 654 F.3d at 944 (district courts may cross-check lodestar calculations with the percent-of-fund method).  The 25% benchmark rate is not rigid, but rather "a starting point for analysis." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).  Ultimately, the fee percentage approved by the Court "must be supported by findings that take into account all of the circumstances of the case." *Id.*

In calculating the value of the settlement, the Court should include all monetary relief on the Class Claims, including fees and costs, as well as the value of the injunctive relief obtained by Plaintiffs.  Because the injunctive relief applies to all additional services offered to Defendants' Section 8 tenants in California, and this case provides a clear historical record on the amount of such fees, it is possible to "accurately ascertain[]" the value of that relief for class members.  *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003).  The Court has already found it to be undisputed that "class members paid a total $2,800,185 in additional service charges" during the 11.5-year period from May 2011 through November 2022, which corresponds to an average of about $243,000 per year.  *See* Summ. J. Order re Remedies 2:16-18, ECF No. 352.  Multiplying that yearly average by the five-year period in which the Court will retain jurisdiction to enforce the settlement yields a value of $1,215,000.  This conservative amount does not account for increasing amenity fees in an era of inflation, nor is it able to incorporate the abstract value of reducing eviction threats and non-subsidized housing costs for a highly vulnerable population.  Therefore, it is appropriate to value the class settlement at $10,715,000 (including the $5 million qualified settlement fund, the $4.5 million for fees and costs, and the $1.215 million valuation of the injunctive relief).  *See Staton*, 327 F.3d at 974.  Plaintiffs' requested fee award of $4,188,000 is 39% of that amount.

An upward departure to 39% of the value of the class settlement is well justified on this record.  Under Ninth Circuit precedent, an upward departure from the benchmark may be justified by a non-exhaustive list of factors, including whether counsel achieved "exceptional results for the class," risk accepted by class counsel including by litigating the case on a contingency basis, benefits achieved beyond the cash settlement fund, and "the burdens class counsel experienced while litigating the case."

1   *See In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020).  For all the

2   same reasons discussed above in the multiplier analysis, these factors strongly support an upward

3   departure from the benchmark.  Crucially, a 39% fee recovery **will not reduce** the class monetary

4   recovery, further supporting the requested upward departure.

5        Taking all of these factors into account, a fee award of 39% of the monetary value of the Class

6   Settlement is well-supported and within the range awarded in comparable cases.  *See, e.g.*, *Miller v.*

7   *CEVA Logistics USA, Inc.*, No. 2:13-cv-01321-TLN-CKD, 2015 WL 4730176, at *8 (E.D. Cal. Aug.

8   10, 2015) ("California district courts usually award attorneys' fees in the range of 30-40% in wage and

9   hour class actions that result in the recovery of a common fund under $10 million"); *Bennett v.*

10   *SimplexGrinnell LP*, No. 3:11-cv-01854-JST, 2015 WL 12932332, at *6 (N.D. Cal. Sept. 3, 2015)

11   (approving fees of 38.8% of $4.9 million settlement in prevailing wage case); *see also Velez v. Bakken*,

12   No. 2:17-cv-00960-WBS-KJN, 2019 WL 358703, at *2 (E.D. Cal. Jan. 29, 2019) (contingency fee

13   case on behalf of a minor) (approving fees of 40% of recovery, plus costs, based on counsel's

14   experience with similar cases, the amount of time counsel spent investigating the claims, and the risk

15   counsel took in pursuing the action on a contingency basis).

16   **C.**    **<u>Class Counsel's Litigation Costs and Expenses Are Recoverable and Reasonable.</u>**

17        The Settlement Agreement also provides for reimbursement of Class Counsel's litigation costs

18   and expenses from the $4.5 million set aside.  Settlement Agreement at 10.  Awarding the $312,000 in

19   out-of-pocket costs for the Class Claims is proper under class members' leases, Rule 23(h), and

20   precedent.  *See* Sec. III.A.1, *supra*; Fed. R. Civ. P. 23(h) (allowing award of nontaxable costs);

21   *Millburn*, 2019 WL 5566313, at *10 (citation omitted) (class counsel may recover "typical out-of-

22   pocket expenses that are charged to a fee paying client" if they are reasonable and necessary).

23   Plaintiffs' costs and expenses include standard travel costs, filing and court fees, online legal research,

24   costs associated with class notice, experts and consultants, mediation fees, service costs, and other

25   costs that would be charged to a fee-paying client.  *See id.*; Bellows Decl. ¶ 13.

26                      **IV.**   **<u>CONCLUSION</u>**

27        For all the reasons set out above, Plaintiffs respectfully request that the Court order payment of

28   $4.5 million to Class Counsel for their fees, costs, and expenses incurred related to the Class Claims.

Dated: December 20, 2024

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/ Anne P. Bellows*
Anne P. Bellows

Attorneys for Plaintiffs and Relators
and the Certified Classes

912593.9

# APPENDIX A

| GBDH | | |
|---|---|---|
| Attorney or Biller | Years of Experience | Hourly Rate |
| Laura Ho, Shareholder | 30 | $695 |
| Anne Bellows, Partner | 11 | $495 |
| Kristen Burzynski, Associate | 8 | $450 |
| Beth Holtzman, Associate | 7 | $440 |
| Stephanie Tilden, Associate | 3 | $345 |
| Celina Malavé, Associate | 2 | $320 |
| Scott Grimes, Statistician | 20 | $250 |
| Scott Grimes, Paralegal | 35 | $200 |
| Damon Valdez, Paralegal | 21 | $200 |
| Christian Giannini, Paralegal | 5 | $100 |
| Gouri Chakraborty, Case Clerk | 3 | $75 |
| Law Clerks | | $150 |
| **Law Offices of Andrew Wolff** | | |
| Attorney or Biller | Years of Experience | Hourly Rate |
| Andrew Wolff, Principal | 26 | $570 |
| David Lavine, Associate | 31 | $600 |
| Christopher Beatty, Associate | 17 | $535 |
| Tony Ruch, Associate | 18 | $550 |
| Jocelyn Sperling, Contract Attorney | 24 | $570 |
| Brenna Wood Fitzpatrick, Associate | 5 | $380 |
| **Centro Legal de la Raza** | | |
| Attorney or Biller | Years of Experience | Hourly Rate |
| Jesse Newmark, Litigation Director | 18 | $550 |
| Henrissa Bassey, Staff Attorney | 9 | $460 |
| Law Clerk | | $150 |
| **Impact Fund** | | |
| Attorney or Biller | Years of Experience | Hourly Rate |
| Jocelyn Larkin, Of Counsel & former Executive Director | 41 | $695 |
| Lindsay Nako, Executive Director | 19 | $550 |
| Lori Rifkin, Litigation Director | 20 | $550 |
| Fawn Rajbhandari-Korr, Training Director & Staff Attorney | 12 | $495 |
| David Nahmias, Staff Attorney | 6 | $410 |
| Andrea Núñez, Fellow | 4 | $360 |
| Rianna Hidalgo, Fellow | 3 | $345 |
| Meredith Dixon, Staff Attorney | 2 | $320 |

| Anna Chau, Paralegal | 3 | $100 |
|---|---|---|
| Kat Vidt, Paralegal | 3 | $100 |
| Luna Khalil, Paralegal | 3 | $100 |
| Law Clerks | | $150 |