Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Anne P. Bellows (SBN 293722)
abellows@gbdhlegal.com
Stephanie E. Tilden (SBN 341486)
stilden@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800 ǀ Fax: (510) 835-1417

Jesse Newmark (SBN 247488)
jessenewmark@centrolegal.org
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Tel: (510) 437-1863 ǀ Fax: (510) 437-9164

Lindsay Nako (SBN 239090)
lnako@impactfund.org
Lori Rifkin (SBN 244081)
lrifkin@impactfund.org
Fawn Rajbhandari-Korr (SBN 315888)
fkorr@impactfund.org
Meredith Dixon (SBN 346864)
mdixon@impactfund.org
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473 ǀ Fax: (510) 845-3654

Attorneys for Plaintiffs and Relators and the Certified Classes
*[Additional Counsel listed on following page]*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENIKA TERRY, ROY HUSKEY III, and TAMERA LIVINGSTON, and each of them for themselves individually, and for all other persons similarly situated and on behalf of the UNITED STATES OF AMERICA<br><br>      Plaintiffs/Relators,<br><br>vs.<br><br>WASATCH ADVANTAGE GROUP, LLC, WASATCH PROPERTY MANAGEMENT, INC., WASATCH POOL HOLDINGS, LLC, CHESAPEAKE APARTMENT HOLDINGS, LLC, LOGAN PARK APARTMENTS, LLC, LOGAN PARK APARTMENTS, LP, ASPEN PARK HOLDINGS, LLC, BELLWOOD JERRON HOLDINGS, LLC, BELLWOOD JERRON | Case No.: 2:15-CV-00799-KJM-DB<br><br>CLASS ACTION<br><br>**DECLARATION OF JESSE NEWMARK IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR REASONABLE FEES, COSTS, AND EXPENSES**<br><br>Date:   Jan. 23, 2025<br>Time:  10:00 a.m.<br>Dept:   Court 3, 15th Floor<br>Before: Hon. Chief Judge Kimberly J. Mueller |

| | |
|---|---|
| 1 | APARTMENTS, LP, BENT TREE APARTMENTS, LLC, CALIFORNIA PLACE |
| 2 | APARTMENTS, LLC, CAMELOT LAKES HOLDINGS, LLC, CANYON CLUB HOLDINGS, |
| 3 | LLC, COURTYARD AT CENTRAL PARK APARTMENTS, LLC, CREEKSIDE HOLDINGS, |
| 4 | LTD, HAYWARD SENIOR APARTMENTS, LP, HERITAGE PARK APARTMENTS, LP, OAK |
| 5 | VALLEY APARTMENTS, LLC, OAK VALLEY HOLDINGS, LP, PEPPERTREE APARTMENT |
| 6 | HOLDINGS, LP, PIEDMONT APARTMENTS, LP, POINT NATOMAS APARTMENTS, LLC, |
| 7 | POINT NATOMAS APARTMENTS, LP, RIVER OAKS HOLDINGS, LLC, SHADOW WAY |
| 8 | APARTMENTS, LP, SPRING VILLA APARTMENTS, LP, SUN VALLEY HOLDINGS, |
| 9 | LTD, VILLAGE GROVE APARTMENTS, LP, WASATCH QUAIL RUN GP, LLC, WASATCH |
| 10 | PREMIER PROPERTIES, LLC, WASATCH POOL HOLDINGS III, LLC, |
| 11 | and DOES 1-4, |
| 12 | Defendants. |

Andrew Wolff (SBN 195092)
andrew@awolfflaw.com
LAW OFFICES OF ANDREW WOLFF, PC
1615 Broadway, 4th Floor
Oakland, CA 94612
Tel: (510) 834-3300 | Fax: (510) 834-3377

Attorneys for Plaintiffs and Relators and the Certified Classes

Lawrence Anthony Organ (SBN 175503)
larry@civilrightsca.com
Marqui Hood (SBN 214718)
marqui@civilrightsca.com
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, CA 94960-2610
Tel: (415) 453-4740 | Fax: (415) 785-7352

Attorneys for Relators

I, Jesse Newmark, declare as follows:

1. I am an attorney admitted to practice before all Courts of the State of California, the Eastern and Northern Districts of California, the Ninth Circuit Court of Appeals, and the United States Supreme Court. I am a member in good standing of the California State Bar, and counsel of record for Plaintiffs and the Classes in this case. I have personal knowledge of all of the facts set forth in this Declaration unless otherwise stated, and I am competent to testify to these facts if called on to do so.

2. I am the Litigation Director at Centro Legal de la Raza. I have been lead counsel for Centro Legal in this case for more than a decade, since we joined the Law Offices of Andrew Wolff in investigating the facts underlying this action in April 2014. The Court appointed Centro Legal and I as Class Counsel when it certified the Classes on July 30, 2018. I have been closely involved in every aspect of this litigation over the past ten years.

## THE SETTLEMENT

3. For all of the reasons set forth in my declaration in support of preliminary approval, ECF No. 544-6, I believe the proposed settlement is an outstanding result for the Classes. Both the injunctive and monetary terms of the settlement provide all, or nearly all, of the relief that the Classes could have won if Plaintiffs succeeded at trial and on appeal.

4. As of the date of this filing, dozens of Class Members have contacted Class Counsel or the settlement administrator, including to update their addresses and ask questions about the settlement process. Class Member responses have been uniformly positive, and many expressed their appreciation for the settlement. No one has objected to or opted out of the settlement. This overwhelming support for the settlement also weighs in favor of final approval.

## SERVICE AWARDS

5. As detailed in my declaration in support of preliminary approval, I believe the requested service awards are fair and reasonable given the excellent results for the Classes, the efforts taken and sacrifices made by the Class Representatives, and their complete releases of all claims.

## ATTORNEYS' FEES & COSTS

6. For more than a decade, Centro Legal staff have investigated and litigated this hard-fought, complex, and important case for Section 8 tenants. Along with our co-counsel, we: thoroughly

investigated the underlying facts; conducted extensive discovery and document review; successfully litigated contested class certification, summary judgment, and other motions; and fully prepared witnesses and evidence for trial. As the Court is aware, Defendants' vigorously contested all liability. Nonetheless, Plaintiffs' and Class Counsel's efforts over the past decade enabled us finally to obtain a settlement providing full injunctive relief and almost complete monetary recovery for Class Members.

7. Centro Legal staff contemporaneously recorded all of their time worked on this case, using attorney billing software. For each task performed, staff accounted for their time in 1/10th of an hour (6-minute) increments or shorter, and included a brief narrative description of the work performed. Staff did not "block bill." To ensure efficiency at Centro Legal and with co-counsel, Class Counsel have coordinated their work closely and divided it in a manner so as to avoid duplication.

8. I have generated a report with each Centro Legal staff member's time records for this case through November 30, 2024. The entries and hours are an accurate representation of the actual time that we spent working on this matter. I have reviewed all of the entries and believe the hours expended were reasonable and necessary to the success of this litigation. I am prepared to submit these time records to the Court for *in camera* review upon request.

9. As of November 30, 2024, Centro Legal staff had devoted approximately 1,889.6 hours to this litigation. I estimate that approximately 1,026.9 (54.3%) of these hours were committed to litigating the class claims (rather than Plaintiffs' False Claims Act claim).

10. As detailed in the Declaration of Anne Bellows in support of these motions, each Class Counsel has exercised reasonable billing judgment by reviewing all of the detailed time records at our respective firms and organizations, and implementing a comprehensive set of billing judgment rules. The exercise of such billing judgment by Centro Legal resulted in: a reduction of our total hours by approximately 19.6%, to 1518.9 total hours; and a reduction of our hours towards the class claims by approximately 20.3%, to 818.6 hours.

11. The chart below provides the detailed lodestar information for Centro Legal staff after the exercise of reasonable billing judgment, and including only hours committed to litigating the class claims, with 2024 hourly billing rates based on rates approved by this Court for the Eastern District of California:

| Centro Legal Lodestar (for class claims only, after billing judgment, with E.D. Cal. rates) | | | | | |
|---|---|---|---|---|---|
| Staff | Years of Experience | Position | Hours | E.D. Cal. Rate | Lodestar |
| Newmark, Jesse | 18 | Litigation Director | 741.7 | $ 550 | $ 407,941.88 |
| Bassey, Henrissa | 9 | Directing Attorney | 31.0 | $ 460 | $ 14,246.20 |
| Felder Heim, Lee Ann | 3 | Law Clerk | 45.9 | $ 150 | $ 6,882.75 |
| | | Total: | 818.6 | | $ 429,070.83 |

12. I have provided a detailed description of Centro Legal and the credentials and experience for myself and the other Centro Legal staff who worked on this case, in my declaration in support of preliminary approval. *See* ECF No. 544-6 at 7-9.

13. Briefly, I have practiced law in California for over eighteen years, since graduating from Harvard Law School in 2006. As Litigation Director for Centro Legal since 2013, I have developed and managed Centro Legal's entire affirmative and impact litigation docket for more than a decade now. I am lead counsel for Centro Legal and have been appointed as class counsel in numerous regional and nationwide class actions in state and federal court. I have also completed two federal clerkships, for Judge Richard A. Paez on the Ninth Circuit Court of Appeals and Judge Dean D. Pregerson for the Central District of California. I have been lead counsel for Centro Legal and actively involved in all aspects of this litigation since April 2014, as discussed more below.

14. Henrissa Bassey, now the Directing Attorney for Bet Tzedek's Preventing and Ending Homelessness Project, graduated from the American University Washington College of Law in 2015 after receiving a Master of Public Health from U.C. Berkeley. She worked on this case during her time at Centro Legal as our Tenants' Rights Directing Attorney. Relevant to the class claims, Ms. Bassey led Centro Legal's team in conducting class member interviews and preparing their declarations. She also conducted extensive research and drafted a memorandum related to our communications with the local housing authorities, which played a crucial role in this case.

15. Lee Ann Felder Heim, now an Immigrants' Rights Staff Attorney at the Asian Law Caucus, graduated from U.C. Berkeley in 2021. She worked on this case during her time at Centro

Legal as a law clerk. Ms. Felder Heim researched and drafted three memoranda on important legal issues for Plaintiffs' claims that informed our dispositive motions and strategy throughout the case.

16. State and federal courts throughout Northern California have regularly awarded attorneys' fees to Centro Legal using hourly rates based on the LSI Laffey Matrix. *See, e.g.*, *Torres v. Cook*, No. 22CV00672 (Mendocino County Super. May 6, 2024) ("The Court finds that the following hourly rates [based on the 2023-24 Laffey Matrix] are reasonable . . . [including] $878 for attorney Jesse Newmark," and "awards a multiplier of 1.5 . . . because of the degree of success achieved, quality of representation, contingent risk, and delay in payment."); *Vasquez v. Libre by Nexus, Inc.*, No. 17-CV-00755 CW, 2023 WL 360242 (N.D. Cal. Jan. 23, 2023), *aff'd sub nom.*, *Vasquez v. Donovan*, No. 23-15278, 2024 WL 2874152 (9th Cir. June 7, 2024) ("The Court finds that the requested hourly rate[] of $829 [for Jesse Newmark is] . . . reasonable in light of the [2022-23] Laffey Matrix and Class Counsel's experience."); *Hernandez v. Grubmarket, Inc.*, Nos. RG20071436 & RG20052426, 2022 WL 14893432 (Alameda County Super. Sept. 15, 2022) (granting final approval of attorneys' fees based on the 2021-22 Laffey Matrix hourly rate of $764 for Jesse Newmark); *Flamenco v. Township Bldg. Servs.*, No. CGC-18-567076 (San Francisco Super. Jan. 5, 2023) (approving attorneys' fees at default judgment based on 2021-22 Laffey Matrix hourly rates); *Brown v. Upside Gading, LP*, No. RG18928503 (Alameda County Super. Sept. 1, 2021) (granting final approval of attorneys' fees "based on Counsel's reasonable hourly rates" using the 2020-21 Laffey Matrix); *Cruz v. Las Montañas*, No. MSC17-00330 (Contra Costa County Super. March 12, 2021) (granting final approval of attorneys' fees approximating the lodestar based on 2020-21 Laffey Matrix hourly rates).

17. The regular hourly rates for Jesse Newmark, Henrissa Bassey, and Lee Ann Felder Heim would therefore typically be at least approximately $950, $840, and $260 respectively in Northern California, based on the 2024-25 Laffey Matrix. However, all Class Counsel have substantially lowered our hourly rates for purposes of these motions, based on hourly rates approved by this Court for the Eastern District of California. As detailed in the table above, the hourly rates (and years of experience to date) used to calculate Centro Legal's lodestar for purposes of these motions are: $550 for Jesse Newmark (18 years), $460 for Henrissa Bassey (9 years), and $150 for Lee Ann Felder Heim (3 years, but billed as a law clerk).

**CENTRO LEGAL'S LITIGATION ROLE AND TASKS**

18. I was the lead counsel for Centro Legal on this litigation. In addition to my own legal work, I supervised the Centro Legal attorneys, paralegals, and law clerks who performed work necessary to litigate this case, prepare it for trial, and negotiate the settlement. Together with the other Class Counsel in this case, I also helped to develop and implement our overall litigation and settlement strategy. Using the task categorization system described in Anne Bellows' declaration, the chart below summarizes the distribution of Centro Legal's time across the categories of litigation tasks:

| Task Code | Description | Hours | Lodestar |
|---|---|---|---|
| L100 | Case Administration | 6.6 | $ 3,605.25 |
| L110 | Fact Investigation | 33.1 | $ 17,020.20 |
| L120 | Analysis, Strategy, and Legal Research | 62.9 | $ 16,218.88 |
| L130 | Experts & Consultants | 8.7 | $ 4,755.23 |
| L160 | Settlement | 96.9 | $ 53,321.13 |
| L210 | Pleadings | 49.4 | $ 27,143.88 |
| L230 | Court Mandated Conferences | 13.4 | $ 7,393.38 |
| L240 | Summary Judgment Motions | 40.3 | $ 22,073.25 |
| L250 | Other Written Motions or Submissions | 2.1 | $ 1,149.50 |
| L260 | Class Action Procedures | 128.3 | $ 70,537.50 |
| L300 | Other Discovery | 6.8 | $ 3,701.68 |
| L310 | Written Discovery | 3.9 | $ 2,142.25 |
| L320 | Requests for Production and Document Productions | 2.9 | $ 1,619.75 |
| L325 | Document review | 30.1 | $ 16,563.25 |
| L330 | Depositions | 72.1 | $ 39,588.88 |
| L340 | Expert Depositions | 4.0 | $ 2,220.63 |
| L350 | Discovery Motions | 3.5 | $ 1,907.13 |
| L410 | Trial Preparation Re Fact Witnesses | 109.4 | $ 58,819.73 |
| L420 | Trial Preparation Re Expert Witnesses | 16.2 | $ 8,882.50 |
| L430 | Written Motions or Submissions for Trial | 57.8 | $ 31,794.13 |

| L440 | Other Trial Preparation and Support | 60.8 | $ 33,413.88 |
|---|---|---|---|
| L450 | Trial and Hearing Attendance | 8.5 | $ 4,650.25 |
| L460 | Post-Trial Motions | 1.0 | $ 548.63 |
| **Total** | | **818.6** | **$ 429,070.83** |

19. A summary of Centro Legal's work performed on the case is as follows:

**Case Investigation, Class Discovery and Certification, Defendants' Rule 23(f) Petition (Oct. 2013 to Oct. 2018)**

20. In April 2014, Centro Legal joined the Law Offices of Andrew Wolff ("Wolff") to begin investigating this prospective class action. From 2014 to 2015, our two organizations investigated Defendants' practices, developed Plaintiffs' legal claims, and drafted and filed the complaint. In doing so, we conducted outreach to potential tenant witnesses and class representatives at Defendants' properties, and consulted with attorney and agency experts on claim and case strategy.

21. After the complaint was unsealed in 2016, Centro Legal and Wolff worked together to prepare and begin implementing a class discovery plan, file an amended complaint, and defend against Defendants' motion to dismiss. I was the lead attorney in researching and drafting the opposition to Defendants' motion and preparing our oral argument. During this time, we also drafted and revised initial disclosures and joint statements, negotiated a protective order, prepared for and attended status conferences, and engaged in meet and confer efforts with Defendants.

22. Through August 2017, Centro Legal and Wolff continued to engage in effort-intensive class discovery. We propounded and responded to written discovery, litigated multiple discovery motions, defended Plaintiffs' depositions, deposed three of Defendants' corporate designees, and along with Defendants took eight third-party depositions of representatives of local housing authorities. Additionally, after we successfully moved to compel production of responsive documents, Defendants produced over 360,000 pages of tenant files from Section 8 tenants, which provided crucial evidence for the depositions, class certification motion, motion to amend the complaint, and throughout the litigation. We also filed a Second Amended Complaint, after the Court granted in part and denied in part Defendants' motion to dismiss, allowing Plaintiffs to continue with all of their claims.

23. I was the lead attorney in preparing for the local housing authority depositions, which required careful review of dozens of versions of Section 8 administrative plans and other housing authority documents. I prepared comprehensive outlines and exhibits for the depositions, and then continuously revised them to address issues that arose through the testimony. Centro Legal attorneys took all four of the depositions for the local housing authorities in California.

24. I was also the lead attorney for the review of the over 360,000 pages of Section 8 tenant files. Simply working with the documents was time-intensive, as Defendants produced a single massive PDF file for each of their properties. However, I was able to painstakingly review and analyze the documents. This enabled me to understand and outline Defendants' policies and practices through the years and across their properties, and extract the evidence we needed to litigate all aspects of the case. For instance, I relied on this review to prepare the deposition outline and exhibits for Wasatch corporate designee David Tanforan, which helped us to secure Tanforan's admissions as to Defendants' application of their relevant policies and practices to Section 8 tenants. This was critical because Defendants' other corporate officers later claimed that Defendants had an unwritten exception to these problematic policies and practices for Section 8 tenants. We were able to call on Tanforan's testimony to help Plaintiffs win at summary judgment, and planned to do the same at trial.

25. During this time, Centro Legal and Wolff also participated in a mediation with V. Blair Shahbazian, through the Eastern District of California's Voluntary Dispute Resolution Program.

26. Centro Legal and Wolff then moved to file a Third Amended Complaint and certify the two California Classes. Using the evidence we obtained through the depositions and document review, we were able to expand the geographic scope of the class claims from the Sacramento-area to statewide, certify the two Classes, and add Tamera Livingston as a Class Representative for the Rule 23(b)(2) Class.

27. I was actively involved in all aspects of the motions to amend and for class certification. I was also the lead attorney in: researching and consulting with attorney and agency experts to develop the legal theories underlying our class claims; preparing the evidence of Defendants' form documents to show their common policies and practices across the California properties, and drafting relevant portions of the certification motion and reply brief.

28. In 2018, Centro Legal and Wolff successfully opposed Defendants' Rule 23(f) petition to the Ninth Circuit for interlocutory review of the Court's class certification order. I contributed extensively to researching and drafting our opposition. We also continued to engage in discovery and document review, filed a Fourth Amended Complaint, prepared for and attended status conference hearings, regularly met and conferred with Defendants' counsel, and began preparing our trial strategy.

29. In total, I estimate that Centro Legal devoted 180.6 hours to the class claims during this period, after the exercise of billing judgment as set forth above.

**Class Notice, Merits Discovery, Bifurcation, Summary Judgment on Liability**

**(Nov. 2018 to Nov. 2022)**

30. From January to April 2019, I was the lead attorney in developing and executing our plan to add Class Counsel Goldstein, Borgen, Dardarian & Ho ("GBDH"). I worked extensively to organize and prepare the evidence and summaries of the claims, defenses, and other issues in this case, to assist GBDH in making its decision to join as counsel and to be meaningfully prepared to enter into the litigation. We also communicated and met regularly with GBDH attorneys, particularly Anne Bellows and Laura Ho, to gather and provide additional information, evidence, and research needed, and to discuss GBDH's decision to join the case and the litigation strategy moving forward.

31. I continued to be actively involved in and support all aspects of the class litigation during this time, including: resolving disputes with Defendants to obtain the class list, drafting and translating the class notice, successfully moving to clarify the class definition and approve the class notice, and distributing the class notice.

32. I also assisted extensively in our merits and expert discovery, which included numerous depositions, expert reports and rebuttals, substantial written discovery and regular meet and confer calls with Defendants' counsel, many informal discovery letters, and multiple motions to compel to address delays and impasses. In particular, I continued to lead on addressing local housing authority issues and incorporating Defendants' tenant file documents throughout these discovery efforts. For instance, to prepare for the depositions, I led a team of Centro Legal staff in drafting summaries of the local housing authority depositions. I then personally drafted a detailed analysis of the testimony and its impact. I also pulled critical evidence from the tenant files to use as exhibits in the depositions,

revised and drafted portions of deposition outlines, and assisted at many of the depositions so I could help address issues as they arose. I also helped to decide our strategy and revise documents as we resolved a discovery impasse regarding Defendants' corporate structure by negotiating stipulations to bifurcate the case, allow filing of a Fifth Amended Complaint to add previously undisclosed owner entities as Defendants, and amend the class certification order.

33. During this time, I also assisted in Class Counsel's work with Defendants and a joint third-party expert to manage and review the production of responsive data from Defendants' property management software, and to develop and revise ESI protocols that led to Defendants' production of over 2.5 million pages of documents. I personally drafted our ESI document review plan, led a training for the document review, helped lead Class Counsel's sample review of those documents, and participated in and supervised Centro Legal's team in our share of the document review.

34. During this period, Class Counsel also interviewed dozens of Defendants' Section 8 tenants to gather information about Defendants' practices and identify potential trial witnesses, and conducted in-depth legal research on all aspects of the class claims. I helped draft the documents needed for these interviews, then led Centro Legal's team on the interviews. I also supervised the Centro Legal law clerk who drafted detailed memoranda on three key legal issues for the class claims.

35. I was actively involved as well in all aspects of Plaintiffs' successful motion for summary judgment and opposition to Defendants' cross-motion. I assisted in developing our strategy and reviewed and revised all documents. I also personally researched and drafted sections and prepared exhibits addressing local housing authority issues and evidence from Defendants' tenant files. During this period, I was also the lead attorney in responding to opposing counsel and arguing before the Court as to Plaintiffs' request for the Impact Fund to join as Class Counsel.

36. In total, I estimate that Centro Legal devoted 210.6 hours to the class claims during this period, after the exercise of billing judgment as set forth above.

**Remedies Discovery, Summary Judgment on Class Damages, Initial Trial Preparation (Dec. 2022 to Feb. 1, 2024)**

37. After the Court's summary judgment ruling, I assisted in all aspects of Plaintiffs' remedies discovery, as Class Counsel worked to establish the damages owed and have Defendants

9

implement necessary policy changes for the Classes.  As Defendants insisted that class damages should be offset by costs and were uncooperative on policy changes, this required extensive formal discovery, including written discovery, several motions to compel, further Rule 30(b)(6) and expert depositions, and expert reports.  During this period, I was the lead attorney in addressing the policy changes that we believed were required by the Court's summary judgment order.  I personally drafted a memorandum analyzing the impact of the Court's order on Defendants' policies and practices, and a plan and script for advising and investigating Defendants' policy changes with Class Members.  I was also actively involved in the expert reports and depositions, with a focus on portions regarding Defendants' policies and practices and local housing authority issues.

38. During this period, I also assisted in our efforts to again mediate the case, at a settlement conference in March 2023.  In particular, I took lead roles in researching insurance coverage issues, preparing our clients at multiple meetings, investigating public benefit and tax issues, and communicating with the United States Attorneys' Office on issues relevant to the class claims.

39. I also assisted with our successful motions for partial summary judgment on the amount of class damages and to file a Sixth Amended Complaint, to reflect Defendants' recent policy changes and set a cut-off date for damages.

40. In total, I estimate that Centro Legal devoted 143.7 hours to the class claims during this period, after the exercise of billing judgment as set forth above.

### Pretrial Proceedings, Trial Preparation, and Mediation
### (Feb. 2, 2024 to July 27, 2024)

41. With trial fast approaching, I was actively involved in all of Class Counsel's pretrial work, including: drafting and attempting to meet and confer with Defendants on pretrial statements and proposed fact stipulations; developing exhibit and witness lists; analyzing and designating deposition testimony and discovery responses; preparing and opposing motions in limine; and objecting to Defendants' exhibits and witnesses.  In particular, I was the lead attorney in preparing and responding to portions of lists and designations involving local housing authority witnesses and evidence, and Defendants' corporate officer and witness David Tanforan.  For the local housing authorities, this required significant legal research and time-consuming outreach to current and former

agency staff and counsel. I also co-led our outreach to attorney and agency experts on various legal issues relevant to the class claims.

42. I was one of the lead attorneys tasked with representing Class Counsel and addressing the Court and opposing counsel on various items at the pretrial conference. I also drafted the reply brief and argued a complex motion in limine addressing the significance of the Court's summary judgment ruling, which was crucial to our case and implicated various other motions in limine as well.

43. During this period, I also assisted in opposing Defendants' motions for judgment on the pleadings, for reconsideration of the bifurcation order, and for dismissal of the state-law claims. In particular, I drafted sections of our opposition briefs that addressed the parties' actions prior to bifurcation. I also researched and drafted an outline for and portions of our opposition to the motion to dismiss for lack of subject matter jurisdiction.

44. As one of the three senior attorneys who Class Counsel collectively decided would be trial counsel, I was deeply involved in all aspects of trial preparation, including preparing exhibits, drafting witness examinations and cross-examinations, subpoenaing and preparing trial witnesses, and planning our trial presentation to support the class requests for injunctive relief.

45. In particular, I was responsible for all local housing authority witnesses and key corporate witness David Tanforan, who we planned to call as our first Defendant witness. Along with Anne Bellows, I also worked to prepare and was available to present our remedies expert MaryAnn Russ. Developing and preparing for the examinations and cross-examinations of local housing authority witnesses required further time-intensive outreach to current and former agency staff and counsel, careful review of updated administrative plans and related documents, drafting outreach and interview scripts, and numerous phone and video meetings. I also continued to monitor HUD policy and promulgations, and was the lead attorney in communicating with the United States Attorneys' Office on several issues impacting our class claims.

46. Once we had completed our witness outreach and trial strategy, I drafted comprehensive direct examinations and prepared exhibits for David Tanforan and the three local housing authority witnesses who Plaintiffs intended to call. I also prepared to cross-examine any other local housing authority witnesses called by Defendants.

47. I was also actively involved in the reinitiated settlement discussions and preparations for the two-day mediation in June 2024. After the mediation, I was at times the lead attorney for ongoing communications with the mediator and opposing counsel, and made substantial revisions to the injunctive relief in particular as we negotiated and executed the memorandum of understanding.

48. In total, I estimate that Centro Legal devoted 185.8 hours to the class claims during this period, after the exercise of billing judgment as set forth above.

## Settlement Agreement and Approval Proceedings
## (July 28, 2024 to Present)

49. I was the lead attorney for Class Counsel in drafting and negotiating the long-form settlement agreement, to ensure that the class relief was fully secured and enforceable. As discussed in detail in our preliminary approval motion, the final settlement agreement provides essentially full relief to the Classes. Even with the memorandum of understanding in place, negotiating all of the complex terms of the 32-page settlement required over a month of drafting and revisions, with constant and time-consuming written and verbal discussions between Class Counsel and Defendants.

50. I have also been the lead attorney for Class Counsel in communicating with Defendants to ensure that the settlement is fully implemented, including reviewing and assessing their compliance with all terms of the injunctive relief, obtaining updated class lists and information for the settlement notices and payments, negotiating with Defendants on relevant dates and decisions, and otherwise working to ensure Defendants' compliance with the settlement payments and all other deadlines.

51. For Class Counsel's preliminary approval motion, I drafted the detailed pre-2019 procedural history for the motion after carefully reviewing the written correspondence and documents from that time period. I also drafted my declaration in support of the motion, which required a careful review of Centro Legal's time records and costs over more than a decade of litigation. Since the court granted preliminary approval, I have personally reviewed and responded to Class Member inquiries.

52. For the present motions for final approval and reasonable fees, costs, and expenses, I have reviewed and revised all of our documents, and drafted this declaration in support. This required my continued careful review of the decade of Centro Legal time records in this case, to exercise reasonable billing judgment as discussed above.

53. In total, I estimate that Centro Legal devoted 97.9 hours to the class claims during this period, after the exercise of billing judgment as set forth above.

54. As detailed in the declaration of Anne Bellows, I anticipate that we will devote substantial additional time to this litigation before the case is complete, including continuing to work with the settlement administrator, respond to Class Member inquiries, and ensure that the settlement funds are timely and correctly disbursed.

## MULTIPLIER FACTORS

55. When Centro Legal joined Wolff in this litigation in 2014, it was clear to us that this was a uniquely complex and risky case. Our own research and consultations with attorney and agency experts confirmed that there was little precedent or analysis of illegal "side payments" and policies like those at issue here, and no other case had challenged them on a class-wide basis. We determined that the litigation would likely turn on the details of Defendants' practices, and this Court's rulings on contested legal issues. Accordingly, we knew that this litigation was extremely risky, with the very significant possibility that we would spend thousands of hours and hundreds of thousands of dollars to litigate the class claims but recover nothing. Nonetheless, Centro Legal and our co-counsel devoted more than a decade of our time and resources to this case, on a wholly contingent basis.

56. As the case continued, the complexity and difficulty of the class claims became only more apparent. The U.S. Department of Housing and Urban Development declined to provide any guidance on the contested legal issues, and several local housing authority representatives testified that they did not object to Defendants' policies or practices. Given these developments, Defendants repeatedly requested that we dismiss the case. While we strongly disagreed with Defendants' position, we recognized the very significant risk that the Court would rule for Defendants as a matter of law and that we would lose entirely on the class claims.

57. At Centro Legal, I am the only staff person with regular capacity to litigate our class action cases and other impact litigation. Centro Legal staff primarily provide direct legal services to individual tenant, worker, and immigrant clients, so are not generally available to assist me. Litigating this case therefore substantially precluded me and Centro Legal from taking on other affirmative cases over the past decade. As a nonprofit organization, Centro Legal depends on attorneys' fees from cases

like this one to continue providing free legal services to our clients, particularly since many of our impact cases and the vast majority of our direct legal services do not result in any attorneys' fees at all. All fees and costs awarded to Centro Legal will be used to fund our ongoing work for low-income clients and communities who would not otherwise have access to legal representation.

58. We litigated this case for the past ten years, with no guarantee of any recovery, because of its importance and the benefits we believed it could bring to the thousands of Section 8 tenants who had faced or continued to face excess rent charges beyond what the government determined they could afford, and the potential threat of losing their homes if they were unable to pay those charges. Instead, those tenants will now have a choice to reject any additional charges for services they do not want, and will not face eviction threats or the risk of homelessness if they cannot afford to pay such charges. I also believe that the successful outcome of this litigation is likely to lead other property owners to modify their practices, and therefore may benefit many other Section 8 tenants nationwide.

I declare under penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct, and that this Declaration was executed on December 20, 2024, in Oakland, California.

_____
Jesse Newmark