UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America ex rel. Denika Terry, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Wasatch Advantage Group, LLC et al.,<br><br>Defendants. | No. 2:15-cv-00799-KJM-SCR<br><br>ORDER |

As explained in this order, the court **grants** the unopposed motions for final approval of the class action settlement and for attorneys' fees and costs.

## I. BACKGROUND

The court has discussed plaintiffs' allegations, the procedural history of this case and the parties' settlement agreement in its previous orders; it incorporates those discussions in this order without repeating them. *See, e.g.*, Order (July 30, 2018) at 2–5, ECF No. 92; Order (Nov. 23, 2022) at 2–6, ECF No. 278; Order (Oct. 25, 2024) at 1–4, ECF No. 562. By way of brief summary, the members of the plaintiff classes are tenants who received assistance through the federally subsidized Section 8 Housing Choice Voucher Program. Order (Nov. 23, 2022) at 1. They alleged defendants violated federal and California law by charging rent beyond what the

1  voucher program allowed. *See id.* Plaintiffs also asserted claims as relators on behalf of the
2  United States under the False Claims Act (FCA). *See id.* at 1, 5–6.

3        This court certified two classes: an injunction class under Rule 23(b)(2) and a damages
4  class under Rule 23(b)(3). *See generally* Order (July 30, 2018); Order (Jan. 25, 2022), ECF No.
5  226. After extensive pretrial litigation, which included motions to dismiss, to amend the
6  pleadings, seeking and opposing discovery, and summary judgment, among others, the court
7  scheduled a trial on several claims against Wasatch Property Management to begin in July 2024.
8  *See* Order (Oct. 25, 2024) at 2 & nn.1–5. The parties also attended private mediation. *See, e.g.*,
9  Notice, ECF No. 472. They reached an agreement and filed a notice of settlement two days
10 before the first day of trial. *See* Notice of Settlement, ECF No. 541.

11       The settlement agreement offers both injunctive and monetary relief to the tenant classes.
12 First, defendants agreed to take measures designed to ensure members of the injunction class are
13 no longer required to pay the charges at the foundation of plaintiffs' legal claims. *See* Settlement
14 Agreement at 7–9,[1] Rifkin Decl. Ex. A, ECF No. 563-2; Final Approval Mem. at 4–5, ECF No.
15 563-1. Defendants gave notice that they had implemented these measures in September and
16 October 2024. *See* Notices of Implementation, ECF Nos. 555, 561.

17       Second, defendants agreed to pay $5 million into a fund for reimbursing the charges
18 tenants paid between May 2011 and November 2022, plus interest. *See* Settlement Agreement at
19 4, 10, 19–20. No class member would receive less than $100. *See id.* at 19. Class members will
20 not need to file or verify any claims to obtain these payments. *See* Bellows Decl. ¶ 43, ECF No.
21 544-2. The parties also have agreed to retain a consultant to answer questions from class
22 members about whether their settlement payments will make them ineligible for a government
23 benefits program, with the costs of the consultation paid from the settlement fund. *See id.* ¶ 47.
24 If any settlement funds go unpaid, they will not revert to defendants, but rather will be paid to
25 cy pres legal aid organizations that serve tenants in Section 8 housing programs. *See* Settlement

---

[1] Pages cited here are those displayed at the bottom right of the page as "Suppl. Bellows Decl. Ex. A, page [#]."

1  Agreement at 23.  Each of the named plaintiffs will receive additional awards of $5,000.  *See*
2  Bellows Decl. ¶ 48; Settlement Agreement at 10–11.

3  Third, defendants have agreed to pay up to $4.5 million to cover attorneys' fees and costs
4  incurred by the counsel who litigated the claims on behalf of the two classes.  *See* Settlement
5  Agreement at 10.  Payment is conditional on the court's approval through a motion for fees and
6  costs.  *See id.*; *see also* Bellows Decl. ¶ 51.  A court award below $4.5 million would not result in
7  the repayment or reversion or any money to defendants, but rather an additional payment to the cy
8  pres recipients.  *See* Settlement Agreement at 10, 23; Bellows Decl. ¶ 51.

9  Finally, the settlement agreement included provisions resolving the claim plaintiffs
10  asserted on behalf of the United States under the FCA, i.e., that defendants had submitted claims
11  for federal reimbursements based on false representations about the alleged side payments.  *See*
12  Settlement Agreement at 26–29; *see also* Sixth Am. Compl. ¶¶ 235–45, ECF No. 331.  The
13  United States Attorney for the Eastern District of California gave notice that the United States
14  Attorney General consents to the dismissal of the FCA claim under the terms of the settlement
15  agreement.  *See* Consent, ECF No. 552.

16  The court granted plaintiffs' unopposed motions to dismiss their claim under the FCA and
17  to approve the proposed class settlement on a preliminary basis under Rule 23(e).  *See generally*
18  Order (Oct. 25, 2024).  The court also approved the proposed notice to class members.  *See id.* at
19  8–9.  According to class counsel, the class members' responses to the proposed settlement
20  agreement have been "uniformly positive."  Rifkin Decl. ¶ 13; *see also* Suppl. Rifkin Decl. ¶ 3,
21  ECF No. 566 (same).  Counsel represented at the final approval hearing that no class members
22  have objected and three class members have opted out of the settlement agreement.  Nineteen
23  members of the reimbursement class had taken advantage of the public benefits consulting as of
24  late 2024.  Rifkin Decl. ¶ 12.  Now that the deadline for objections has passed, plaintiffs seek
25  final approval of the proposed settlement agreement.  *See generally* Approval Mot., ECF No. 563;
26  Approval Mem., ECF No. 563-1.

27  As the settlement agreement permits, class counsel also have filed a motion seeking an
28  award of their fees and costs.  *See generally* Fee Mot., ECF No. 654; Fee Mem., ECF No. 564-1.

3

1  They seek reimbursement of $312,000 in costs and $4,188,000 in attorneys' fees, $4.5 million in
2  total. *See* Fees Mem. at 1. They contend that award is reasonable both under the "lodestar"
3  method, i.e., based on counsel's hourly rates and the time they have devoted to this case, and
4  based on the value of the relief they obtained for the plaintiff class. *See id.*

5  Defendants opposed neither the motion for final approval nor the motion for fees and
6  costs. The court held a hearing on January 23, 2025. Jesse Newmark, Lori Rifkin, Laura Ho and
7  Lindsey Nako appeared for the plaintiffs and classes. Ryan Matthews, Richard Collins and Justin
8  Ferraro appeared for the defense. Plaintiff Roy Huskey III and defense representative Janae
9  Jarvis also attended the hearing.

## II.  CLASS SETTLEMENT

"The claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The court may approve a settlement agreement that would bind class members "only after a hearing and only after finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In deciding whether a proposed settlement agreement is "fair, reasonable, and adequate," the court considers whether, under Rule 23(e)(2):

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and

/////

|   |   |
|---|---|
| | (D) the proposal treats class members equitably relative to each other. |

*Id.* "In this Circuit, a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight '*Churchill* factors'":

    (1) the strength of the plaintiff's case;

    (2) the risk, expense, complexity, and likely duration of further litigation;

    (3) the risk of maintaining class action status throughout the trial;

    (4) the amount offered in settlement;

    (5) the extent of discovery completed and the stage of the proceedings;

    (6) the experience and views of counsel;

    (7) the presence of a governmental participant; and

    (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (line breaks added) (quoting *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 946 (9th Cir. 2011), in turn quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also* Fed. R. Civ. P. 23, Advisory Committee's Notes to 2018 Amendment (explaining factors listed in Rule 23(e)(2) not intended to "displace" factors identified in existing judicial decisions).

    After considering these factors, for the reasons in this court's order granting preliminary approval, the court finds now as a final matter that the proposed agreement is fair, reasonable and adequate. *See* Order (Oct. 25, 2024) at 6–8. No problems or unexpected developments arose in administering the settlement agreement. No class members objected, only three class members opted out of the settlement, and in general, class members responded positively when they learned about the agreement. These developments confirm the court's preliminary assessment of the settlement agreement as a fair, reasonable and adequate resolution of this hard-fought and long-pending litigation. The court therefore grants the motion for final approval of the proposed settlement agreement.

### III. FEES AND COSTS

The "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010)). Plaintiffs in this case asserted a claim under the California Consumer Legal Remedies Act (CLRA), and that statute includes a fee-shifting provision. Under California Civil Code section 1780(e), a court "shall award court costs and attorney's fees to a prevailing plaintiff." That provision, like all others within the CLRA, must "be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760. California courts have held that an award of fees and costs is "mandatory" under section 1780(e), even if the parties resolve the case by entering a settlement agreement. *Kim v. Euromotors W./The Auto Gallery*, 149 Cal. App. 4th 170, 178–79 (2007). Class counsel is therefore entitled to an award of costs and fees if the plaintiff classes were the "prevailing party" under the CLRA.

The CLRA does not define the phrase "prevailing party." California courts have adopted a "pragmatic approach" for deciding who prevailed: the prevailing party is the party that "realized its litigation objective." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 150 (2006) (quoting *Castro v. Superior Court*, 116 Cal. App. 4th 1010, 1019 (2004)). Under this rule, "[p]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in the suit." *Id.* at 153 (emphasis omitted) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The plaintiff classes in this case fit that description. In their CLRA claim, they alleged defendants had wrongfully persuaded them to pay excessive rent by requiring illegal "side payments." Sixth Am. Compl. ¶ 261. Under the settlement agreement, defendants have agreed not to charge the disputed fees, to make clear that these charges are not a part of the rent, and to reimburse the members of the class for the fees they paid, plus interest. *See* Settlement

1  Agreement at 7–11. Plaintiffs are entitled to a reasonable award of attorneys' fees and costs
2  under the CLRA.[2]

3  "The determination of what constitutes a reasonable fee generally 'begins with the
4  lodestar, i.e., the number of hours reasonably expended multiplied by the reasonable hourly
5  rate.'" *Graciano*, 144 Cal. App. 4th at 154 (quoting *PLCM Grp., Inc. v. Drexler*, 22 Cal. 4th
6  1084, 1095 (2000)). For each attorney, the court first determines what hourly rate is reasonable,
7  i.e., by estimating the prevailing rate for similar work in the same community. *See Ketchum v.
8  Moses*, 24 Cal. 4th 1122, 1132 (2001). The court then multiplies that reasonable rate by the
9  number of hours the attorney reasonably devoted to the case, excluding any inefficient or
10 duplicative efforts. *Id.* The result, the "lodestar," may be adjusted upward or downward as the
11 circumstances require. *See id.* For example, a higher fee might be warranted in light of "(1) the
12 novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the
13 extent to which the nature of the litigation precluded other employment by the attorneys, [or]
14 (4) the contingent nature of the fee award." *Id.* "In effect, the court determines, retrospectively,
15 whether the litigation involved a contingent risk or required extraordinary legal skill justifying
16 augmentation of the unadorned lodestar in order to approximate the fair market rate for such
17 services." *Id.*

18 **A.   Reasonable Rates**

19 Many attorneys, paralegals, clerks, and other staff have devoted their time to this case
20 over the many years it has been pending. A chart showing all proposed rates, including the
21 number of hours billed by each person, is shown on pages 3–4 of the declaration of Anne Bellows
22 at ECF No. 564-2.

23 Class counsel proposes the highest hourly rates for the most experienced attorneys who
24 worked on the case, including three who now have at least thirty years' experience and who filled
25 strategic or leadership roles. *See* Bellows Decl. ¶¶ 11, 29.a; Wolff Decl. ¶¶ 6, 10, ECF No. 564-

---

[2] The court need not and does not decide whether plaintiffs would also be entitled to an award of fees and costs under Civil Code section 1021.5 or their lease agreements, as they contend they are. *See* Fee Mem. at 11–13.

5; Nako Decl. ¶ 11.b, ECF No. 564-4.  For these attorneys, counsel proposes hourly rates between $600 and $695.  *See* Bellows Decl. ¶ 11.

Counsel requests hourly rates between $550 and $570 for five attorneys with eighteen to twenty-six years' experience.  *See id.*  These attorneys oversaw significant parts of the case, including initial investigations, discovery, class certification and trial preparation.  *See* Wolff Decl. ¶¶ 7–8, 11; Newmark Decl. ¶ 13; Nako Decl. ¶¶ 10–11.

Next, counsel proposes hourly rates between $400 and $535 for seven attorneys with more than five years' experience, including Anne Bellows, a partner at Goldstein Borgen Dardarian & Ho with primary responsibility for running the litigation.  *See* Bellows Decl. ¶¶ 11, 29.b; *see also* Wolff Decl. ¶¶ 6, 9; Newmark Decl. ¶¶ 11, 14; Nako Decl. ¶¶ 10–11.

For attorneys with five years' experience or less, class counsel proposes rates between $300 and $400 per hour.  *See* Bellows Decl. ¶ 11; Wolff Decl. ¶¶ 6, 12; Nako Decl. ¶¶ 10–11.  Although the attorneys in this group had less experience than others who represented the class, they made meaningful professional contributions to the case, including, for example, Stephanie Tilden, an experienced writer and 2021 law school graduate who drafted correspondence, motions and stipulations, among other work.  *See* Bellows Decl. ¶ 29.e.

Class counsel also requests fees for the time of several paralegals, including some with more than twenty years' experience.  *See id.* ¶ 11.  For the most experienced of these paralegals, including one who also holds a master's degree in statistics, counsel proposes hourly rates of $200 or more.  *See id.* ¶ 29.h.  For others with less experience, they propose hourly rates between $100 and $150.  *See id.* ¶ 11.

Finally, class counsel proposes hourly rates of $75 for a case clerk and $150 for four law school students who worked on the case as law clerks before their law school graduations.  *See id.* ¶ 29.g–h; Newmark Decl. ¶¶ 11, 15; Nako Decl. ¶ 11.i.

Courts often evaluate proposed hourly rates by reviewing the rates that other judges in the same district and courthouse have approved in similar cases.  *See, e.g.*, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008).  Judges within this District's Sacramento courthouse have approved a relatively wide range of hourly rates in recent years, depending on

the type of case and its complexity. *See, e.g.*, *Goodson v. County of Plumas*, No. 18-03105, 2024 WL 99847, at *3 (E.D. Cal. Jan. 9, 2024) (collecting cases); *Diaz v. United Parcel Serv., Inc.*, No. 22-00246, 2023 WL 8622325, at *17 (E.D. Cal. Dec. 13, 2023) (same). At the higher end of this spectrum, courts have awarded fees based on hourly rates between $600 and $700 per hour for attorneys with thirty years' experience or more who represent clients in class actions and complex civil cases. *See, e.g.*, *Anderson v. Safe Streets USA, LLC*, No. 18-00323, 2024 WL 4826446, at *3 (E.D. Cal. Nov. 19, 2024); *Goodson*, 2024 WL 99847, at *4; *Diaz*, 2023 WL 8622325, at *17; *Cooks v. TNG GP*, No. 16- 01160, 2021 WL 5139613, at *6 (E.D. Cal. Nov. 4, 2021). Courts commonly award rates between $500 and $600 per hour in complex civil cases for attorneys with multiple decades' experience, but hourly rates between $400 and $500 are more common. *See, e.g.*, *Goodson*, 2024 WL 99847, at *4; *Diaz*, 2023 WL 8622325, at *17; *Cooks*, 2021 WL 5139613, at *6. Attorneys with less than ten years' experience usually are awarded fees based on hourly rates between $200 and $400. *See id.* Paralegals are compensated reasonably between $100 and $250 per hour within this District, depending on experience. *See, e.g.*, *Mostajo v. Nationwide Mut. Ins. Co.*, No. 17-00350, 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023); *Rosenof v. Kijakazi*, No. 20-01491, 2022 WL 2442235, at *3 (E.D. Cal. July 5, 2022). Courts within this District and the broader Ninth Circuit also have issued orders compensating the time of certified law school students and pre-graduation law clerks between $125 and $150 per hour. *See, e.g.*, *Mohamed v. Barr*, 562 F. Supp. 3d 1128, 1135 & n.2 (E.D. Cal. 2022).

Having reviewed these previous decisions, the court finds class counsel's proposed hourly rates are reasonable for complex civil cases and class actions litigated within this district between 2015 and 2025.

**B.     Reasonable Hours**

As noted in the background section above, this case included some state-law claims on behalf of a class and one federal claim on behalf of the United States under the FCA. Class counsel correctly limits their fee request to the hours they spent litigating claims on behalf of the class; they do not request compensation for the time they devoted to the FCA claim. *See* Bellows Decl. ¶¶ 16–17; *see also Graciano*, 144 Cal. App. 4th at 157 ("In calculating the lodestar amount

9

in this case, the court should have considered whether it could segregate the work [plaintiff's] counsel performed on causes of action for which she was entitled to fees from those for which she was not.").

Class counsel identified "at a high level the litigation tasks . . . that were solely relevant to either the Class Claims [or] to the FCA Claim." Bellows Decl. ¶ 17. Tasks that were solely relevant to the class claims included, for example, researching and drafting the motion for class certification, meeting and conferring with the defense about the class membership and notice, managing the notice process, amending the class certification order, conducting discovery related to the amount of damages to the class, legal research and motion practice related to the state law claims, and time spent opposing defendants' partial motion for summary judgment on class damages. *See id.* ¶ 18. Counsel requests full compensation for the time they spent on tasks that were related to the class claims only. Most work, however, could not be neatly divided between the FCA and class claims, such as counsel's efforts to develop the record about defendants' policies, pursue discovery, and work related to the parties' experts, among other things. *See id.* ¶ 20. Class counsel proposes a fifty-fifty split for this time: half of it would be compensated and half would not. *See id.* In total, this exercise resulted in an estimate of approximately 9,400 hours (about 53% of the total) allocated to the class claims and 8,200 hours (about 47% of the total) allocated to the FCA claim. *See id.* ¶ 21.

Next, counsel reviewed their timesheets to identify any tasks they would not include in their request for fees and costs. *See id*. ¶ 22. They decided on several across-the-board exclusions. For example, they decided to request compensation for only two attorneys per deposition or meeting, *see id.* ¶¶ 22.a–b; they decided not to request compensation for "onboarding new staff onto the case," *id.* ¶ 22.c; and they do not request compensation for filing and serving documents, negotiating and drafting co-counsel agreements, or speaking to the media, *id.* ¶ 22.d–f. They also excluded all time spent on tasks that took six minutes or less and all time recorded by attorneys or staff members who spent less than fifty total hours on the case. *See id.* ¶ 22.g–h. Each attorney also made further line-by-line cuts using their individual judgment. *Id.* ¶ 22.i. These reductions resulted in the elimination of nearly 1,000 hours from class counsel's

time records. *See id.* Finally, class counsel imposed a five percent across-the-board reduction. *See id.* ¶ 24. In total, these reductions leave just over 8,000 hours for which class counsel seeks compensation. *See id.* ¶ 11.

Class counsel have not submitted line-by-line timesheets to show how they allocated those 8,000 hours given the potential that disclosing these records could reveal client confidences or confidential attorney work product. *See id.* ¶ 15. Counsel does offer, however, a generalized summary of how they allocated their time. Attorneys used the American Bar Association's standard task codes to track their work in this action. *See id.* ¶ 26; *see also* American Bar Association, *Litigation Code Set, Uniform Task-Based Management System* (*UTBMS*)."[3] For example, they used the category "Pleadings" to designate time spent drafting the complaint and its amendments, opposing motions to dismiss, and performing similar work. Bellows Decl. Ex. 1 at 2, ECF No. 564-2. A complete table of the category-by-category breakdown is shown on pages 9–10 of the Declaration of Anne Bellows. To summarize, class counsel recorded the most time (nearly 1,000 hours) in the category for "Class Action Procedures," which includes time spent moving for class certification, opposing defendant's petition for appellate review under Rule 23(f), meeting and conferring with defendants about the class notice and class membership, administering the settlement agreement, and performing other similar work. Bellows Decl. ¶¶ 26–27 & Ex. 1 at 3. Counsel also recorded several hundred hours in each of the categories for document review; other trial preparation and support; summary judgment motions; depositions; analysis, strategy and legal research; written motions or submissions for trial; and fact investigation. *See id.* ¶ 27.

Having reviewed counsel's records and summaries of their time, the court finds the proposed hours were well within the bounds of what was reasonable in this matter. Counsel for both the plaintiff classes and the defense litigated vigorously on behalf of their clients over nearly a decade. *See, e.g.*, *Serrano v. Unruh*, 32 Cal. 3d 621, 638 & n.26 (1982) (collecting authority showing vigorously contested litigation can justify substantial attorneys' fee awards). The court

---

[3] https://www.americanbar.org/groups/litigation/resources/uniform-task-based-management-system/litigation-code-set/ (visited Jan. 15, 2025).

hesitates to second-guess the judgment of experienced class counsel in the allocation of their time, given their success in obtaining a favorable settlement for the class on the eve of trial. *See Moreno*, 534 F.3d at 1112 (advising district courts to "defer to the winning lawyer's professional judgment as to how much time . . . was required").[4]

### C.     Adjustment

Multiplying the rates and hours approved in the previous two sections results in a lodestar fee of about $3.3 million. *See* Bellows Decl. ¶ 11. Class counsel requests an upward adjustment of that lodestar fee to about $4.2 million, which would represent an effective enhancement of about 27–28 percent. *See* Fee Mem. at 17–18. Class counsel argues an even larger upward adjustment of fifty percent or more could be justified in this case given the "superlative result for the certified classes" in the face of "challenging and complex" issues and to account for counsel's agreement to accept this case on a contingency basis. *Id.* at 17. For that reason, counsel argues the 27–28 percent adjustment they propose is particularly reasonable. *See id.* Counsel also argues the agreement to accept the representation in this case prevented them from taking on other cases. *See id.* at 17–18.

The court agrees each of these considerations can weigh in favor of an upward adjustment. *See Ketchum*, 24 Cal. 4th at 1132 (listing relevant factors); *see also, e.g.*, *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 809 (9th Cir. 2018) (affirming a 100% enhancement based on substantial financial risk to counsel, difficulties unique to the case, "aggressive opposition," and loss of other opportunities); *Goodson*, 2024 WL 99847, at *5 (applying a 50% enhancement to compensate counsel "for taking on the representation despite the risk of a defense verdict" and "to recognize counsel's skill in litigating the case through trial"). The court need not and does not decide whether a fifty percent or larger enhancement would also be appropriate. The effective multiplier of about 27–28 percent counsel proposes is justified given the complexity and length of this litigation, the loss of other opportunities, the favorable result obtained for the class via

---

[4] Because the court finds the lodestar fee is reasonable on its own terms, it is not necessary to decide whether the fee is also reasonable when compared to the value of the settlement to the class.

settlement, and class counsel's willingness to take the case on a contingency basis. The court therefore grants class counsel's request for an attorneys' fees award of $4,188,000.

### D. Costs

In addition to attorneys' fees, the Federal Rules allow an award of costs reasonably incurred, including nontaxable costs, if authorized by law or the parties' agreement. *See* Fed. R. Civ. P. 23(h). The court has reviewed class counsel's request for an award of $312,000 in litigation costs. *See* Fee Mem. at 20; Bellows Decl. ¶ 13. Those costs are reasonable for litigation of this duration and complexity. *See, e.g.*, *Pena v. Taylor Farms Pac., Inc.*, No. 13-01282, 2021 WL 916257, at *7 (E.D. Cal. Mar. 10, 2021) (approving an award of more than $230,000 in similar costs in contested class action); *Greer v. Dick's Sporting Goods, Inc.*, No. 15-01063, 2020 WL 5535399, at *11 (E.D. Cal. Sept. 15, 2020) (granting request for approximately $200,000 in similar costs in contested class action). The court therefore grants the request for an award of costs.

## IV. CONCLUSION

The motions for final approval (ECF No. 563) and for fees and costs in the total amount of $4,500,000 (ECF No. 564) are **granted**:

- The court **approves** service payments of $5,000 each to Class Representatives Denika Terry, Roy Huskey III, and Tamera Livingston pursuant to the terms of the settlement and for their service as Class Representatives;
- The court **authorizes** distribution of payments to Reimbursement Class Members as set forth in the settlement;
- The court **approves** the cy pres distribution of any funds remaining following distribution as set forth in the settlement, to: Bay Area Legal Aid; Central California Legal Services; Inland County Legal Services; Legal Services of Northern California; Legal Aid Society of San Diego; and Legal Aid of Sonoma County;
- The court **orders** payment of $4.5 million in attorneys' fees, costs, and expenses to Class Counsel consistent with the schedule set forth in the settlement agreement;

13

- The parties and the settlement administrator shall perform their respective obligations under the terms of the settlement agreement, including by meeting all payment and reporting deadlines therein;
- This order constitutes a judgment within the meaning and for purposes of Federal Rule of Civil Procedure 54, and the matter is **dismissed**, except that the court retains jurisdiction to enforce the agreement for a period of five years, as described in the settlement agreement.
- A final compliance hearing for is set for **Thursday, March 5, 2026 at 10:00 a.m.** before the undersigned, after all funds are to have been distributed pursuant to the schedule set forth in the settlement agreement. The parties may file a joint request to vacate the final compliance hearing supported by declarations attesting final compliance.

IT IS SO ORDERED.

DATED: February 4, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE